████████████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | |
| Plaintiffs, | |
| v. | |
| ALCON LENSX, INC., ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | C.A. No. 20-842 (CFC) **JURY TRIAL DEMANDED** PUBLIC REDACTED VERSION |
| Defendants. | |
| ALCON INC., ALCON LENSX, INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | |
| Counter-Plaintiffs, | |
| v. | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC. | |
| Counter-Defendants. | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT ................................................................................1

II. STATEMENT OF FACTS ........................................................................2

    A. The FLACS Market ........................................................................2

    B. J&J Vision's Copyrighted Code ..................................................5

    C. Alcon's Theft of J&J Vision's Code..........................................5

III. ARGUMENT ................................................................................................8

    A. J&J Vision is overwhelmingly likely to succeed on the merits ................................................................................................9

        i. J&J Vision owns the infringed copyrights ......................9

        ii. The copyrights are valid ................................................10

        iii. Alcon copied original elements of J&J Vision's works.................................................................................11

        iv. Alcon continues to infringe J&J Vision's copyrights .......................................................................13

    B. J&J Vision will be irreparably harmed absent an injunction ...............................................................................14

        i. Alcon's infringement causes J&J Vision significant competitive harm ........................................15

        ii. J&J Vision's injuries are difficult, if not impossible, to measure ..................................................16

        iii. Alcon's infringement causes J&J Vision's losses..........18

        iv. J&J Vision's request is timely.......................................18

    C. The balance of the harms favors injunctive relief ....................21

    D. The requested injunction will not harm the public interest ......22

IV. CONCLUSION.................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Accusoft Corp. v. Quest Diagnostics, Inc.,*
  No. 12-40007-FDS, 2012 WL 1358662 (D. Mass. Apr. 18, 2012) ... 19, 20, 21, 22

*Apple Computer, Inc. v. Franklin Computing Corp.,*
  714 F.2d 1240 (3d Cir. 1983) ............................................................. 15, 22

*Apple Inc. v. Samsung Elecs. Co.,*
  809 F.3d 633 (Fed. Cir. 2015) ........................................................... 17, 18

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,*
  229 F.3d 254 (3d Cir. 2000) ............................................................... 19, 20

*Bucklew v. Hawkins, Ash, Baptie & Co.,*
  329 F.3d 923 (7th Cir. 2003) ....................................................................12

*Butamax™ Advanced Biofuels LLC v. Gevo, Inc.,*
  868 F. Supp. 2d 359 (D. Del. 2012) ..........................................................15

*CJ Prods. LLC v. Snuggly Plushez LLC,*
  809 F. Supp. 2d 127 (E.D.N.Y. 2011) ......................................................10

*Dam Things from Den. v. Russ Berrie & Co.,*
  290 F.3d 548 (3d Cir. 2002) ........................................................................9

*DC Comics v. Towle,*
  802 F.3d 1012 (9th Cir. 2015) ..................................................................14

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
  307 F.3d 197 (3d Cir. 2002) .............................................................. 13, 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ........................................................................... 10, 11

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,*
  25 F.3d 119 (2d Cir. 1994) ........................................................................19

*Gen. Universal Sys., Inc. v. Lee,*
  379 F.3d 131 (5th Cir. 2004) ....................................................................12

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  No. 15-1031-SLR, 2016 WL 3143824 (D. Del. June 2, 2016)............................19

*Hybritech Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988)................................................................18

*In re McGraw-Hill Global Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018)........................................................................9

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)......................................................................18

*Metalcraft of Mayville, Inc. v. Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017)............................................................ 16, 17

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.
  Co.*,
  290 F.3d 578 (3d Cir. 2002)......................................................................21

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990)......................................................................21

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017).................................................................. 9, 14

*Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*,
  560 F.3d 53 (1st Cir. 2009)........................................................................11

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018)................................................................ 11, 12

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019)......................................................................18

*Trebro Mfg., Inc. v. FireFly Equip., LLC*,
  748 F.3d 1159 (Fed. Cir. 2014)................................................................17

## STATUTES

17 U.S.C. § 101 ................................................................................13

17 U.S.C. § 106 ................................................................................14

17 U.S.C. § 410(c) ...................................................................................................10

17 U.S.C. § 602(a)(2)...............................................................................................14

I. **NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT**

When J&J Vision[1] filed its amended complaint alleging copyright infringement against Alcon[2] last fall, it did so because there were suspicious similarities between Alcon's product and its own.  But J&J Vision's subsequent inspection of Alcon's confidential source code has revealed theft and deception on a grand and shocking scale—of the type usually found in paperback novels and Hollywood movies, not real-life disputes between publicly traded companies.  Alcon didn't just take a few of J&J Vision's ideas, or bits and pieces of code.  Rather, Alcon stole J&J Vision's software wholesale to build its laser cataract surgery product, including cutting and pasting over twenty-five thousand lines of J&J Vision's computer code.  Alcon then tried to cover its tracks, by changing dates and comments to make it appear the code originated with Alcon rather than J&J Vision.  But the copying was so pervasive that Alcon missed some of it, leaving smoking guns behind.  In all, the evidence of widespread copying is overwhelming.

Every laser surgery system Alcon sells infringes J&J Vision's copyrights.  And through those unlawful acts, Alcon is stealing J&J Vision's customers.  The pernicious impact of Alcon's infringement is not fleeting, or readily quantifiable.

---

[1] "J&J Vision" refers to the plaintiffs, which are subsidiaries of Johnson & Johnson.
[2] "Alcon" refers to the defendants.

██████████████████████████████████████

Rather, because J&J Vision realizes most revenues from per-procedure fees and consumable sales after its laser equipment is sold (in a razor/razor-blade type model), and because customers purchasing one seller's laser system are effectively committed to that seller's product line for years to come, every infringing sale today will cause long-term harm to J&J Vision.

J&J Vision accordingly seeks a preliminary injunction preventing Alcon from distributing any new laser systems with infringing code. Given the market—with two primary competitors, few unit sales, a long but uncertain useful life where most revenues are realized after the initial sale, and strong customer loyalty—monetary relief cannot make J&J Vision whole. The relief J&J Vision now seeks is tailored to enjoin only new systems, so doctors already using Alcon's lasers will not be affected. But Alcon should not be allowed to further parlay its infringement into even more system sales to J&J Vision's lasting detriment. Equity demands an injunction.

## II.   STATEMENT OF FACTS

### A.   The FLACS Market

This dispute involves the two largest competitors in the femtosecond laser-assisted cataract surgery ("FLACS") market: J&J Vision, which manufactures the Catalys™ Precision Laser System, and Alcon, which manufactures the LenSx® Laser System. Cuzick Decl. ¶ 18. Femtosecond lasers use ultrafast pulses to create

██████████████████████████████████████

"bubbles" close together in eye tissue, creating an incision.  These systems perform customized incision patterns "with an absolutely precise control only a computer can provide."  Homer Decl. Ex. 37 at 11.

Most customers choose between Catalys and LenSx systems.  Cuzick Decl. ¶ 18.  Competition to place FLACS systems is fierce, because every installation brings significant, long-term benefits for the seller, in at least four ways.  Cuzick Decl. ¶¶ 19, 21.

*First*, FLACS systems are typically distributed under a "razor/razor-blade" pricing model, where most revenues and profits are realized after installation, rather than from the sale of the laser system itself.  Vellturo Decl. ¶¶ 50-53; Cuzick Decl. ¶¶ 9-11.  These include per-procedure fees charged each time the system is used.  Vellturo Decl. ¶ 65.  In addition, purchasers of one company's FLACS systems are more likely to buy consumable equipment used in cataract surgery, like intraocular lenses, from that same company.  Vellturo Decl. ¶¶ 25, 51, 69; Cuzick Decl. ¶¶ 8, 10. ████████████████████████████████████████████

████████████████████████████████████  Cuzick Decl. ¶ 11.  Thus, the initial equipment sale is by far the most important event in the lifecycle of the product.  Vellturo Decl. ¶ 52.

*Second*, once installed, FLACS systems last a long time.  Given how relatively new this technology is, a unit's actual useful life remains to be seen.  It is

[REDACTED]

likely a decade or more; [REDACTED]

[REDACTED]   Cuzick Decl. ¶ 16; Vellturo Decl. ¶¶ 21, 71.  Even when customers replace FLACS systems, they are likely to exhibit brand loyalty, because surgeons prefer to use familiar equipment.  Cuzick Decl. ¶ 17.  For the same reason, new surgeons may prefer to purchase the system on which they were trained.  Vellturo Decl. ¶ 57.  Once a surgery center chooses one system over another, that customer could be lost for years, if not forever.

*Third*, after installation, each system will perform thousands of procedures over its decade-plus lifetime, generating [REDACTED] in ongoing revenues.  Vellturo Decl. ¶¶ 20-22.  At the same time, there are few opportunities to place new systems.  In 2019, fewer than [REDACTED] were installed in the United States, and fewer than [REDACTED] in the rest of the world.  Vellturo Decl. ¶ 52.

*Fourth*, placing a FLACS system creates additional "network effects," including long-term sales relationships, brand recognition and loyalty, and goodwill towards the company and its products.  Cuzick Decl. ¶¶ 12, 22; Vellturo Decl. ¶¶ 54-58, 75.

In short, every lost system sale will harm J&J Vision, in significant but difficult-to-quantify ways, for years to come.

███████████████████████████████████████

### B.   J&J Vision's Copyrighted Code

The copyrights asserted here are in the operating software for J&J Vision's iFS® femtosecond laser system, mainly used for LASIK surgery.  Cuzick Decl. ¶ 20. That software is like the operating system for a computer—it manages the laser's functions, including directing the laser's movement.  Schmidt Decl. ¶¶ 51-52, 57, 65, 78; Homer Decl. Ex. 25.  The iFS was first developed by IntraLase, founded in 1997 by Ron Kurtz and Tibor Juhasz.  Homer Decl. Exs. 1-2.  Johnson & Johnson acquired IntraLase's successor, plaintiff AMO Development LLC, in 2017.  Homer Decl. Exs. 3, 5-6, 8.

Different programmers contributed to the iFS software over time.  Version 2.02, released around January 2009, includes code written by Peter Goldstein, Biren Mehta, Imre Hegedus, Kostadin Vardin, and Rick Duff.  Schmidt Decl. ¶¶ 61-63; Mehta Decl. ¶¶ 5-6.  That software was the product of years of research and development, including continual design, development, testing, and enhancement. Schmidt Decl. ¶¶ 76-77; Mehta Decl. ¶¶ 8-9.

### C.   Alcon's Theft of J&J Vision's Code

Kurtz left IntraLase, and in 2008 founded LenSx.  He quickly hired several former colleagues, including Juhasz (as LenSx's CTO), Vardin (as Principal Software Engineer), Goldstein, and Hegedus.  D.I. 23 ¶ 95; Homer Decl. Ex. 23; D.I.

██████████████████████████████████████

25-4; Schmidt Decl. ¶ 92.  In 2009, LenSx received FDA approval for its FLACS product.  D.I. 23 ¶ 97.  The next year, Alcon acquired LenSx.  D.I. 23 ¶ 83.

LenSx, like iFS, relies on operating software.  The parties to this suit exchanged source code in late 2020.  The ensuing inspection revealed piracy of a nearly unfathomable scale.  Plainly, one or more of the poached employees stole an electronic copy of the iFS source code (close to Version 2.02) and took it to Alcon.  Schmidt Decl. ¶¶ 10-15.  Alcon then incorporated the iFS software's creative ████████████████ and copied over twenty-five thousand lines of source code, including the purely descriptive programmer's annotations (or "comments"), to develop the LenSx software.  *See, e.g.*, Schmidt Decl. ¶¶ 93-98, 101-107; Baer Decl. ¶ 49.  In fact, the LenSx software suspiciously starts at ████████—a number close to the iFS version ██████ that appears to have been stolen— not 1.00 like most new programs.  Schmidt Decl. ¶¶ 82-84, 87.

Alcon clearly knew how insidious its theft was, and tried to hide it.  For instance, the left image below is from J&J Vision's code, and the right from Alcon's.  As shown, Alcon copied J&J Vision's code nearly verbatim, but changed the date █



█████ (leaving the month and day as is), to make it seem like it was created after LenSx was founded.  Schmidt Decl. ¶¶ 174-176.[3]



But there were times Alcon failed to cover its tracks.  For instance, the following excerpts are *identical*, including the unusual spacing in the comments, █████ ████████████████████████, and a date ████████████████████ ██████████ *before LenSx was founded* (in 2008).  Schmidt Decl. ¶ 105; Mehta Decl. ¶ 7; D.I. 25 ¶ 79.

---

[3] To improve readability, these demonstrative excerpts of Alcon's code have been retyped from the paper copies produced by Alcon.  *See* Schmidt Decl. ¶ 11 n.9.

Alcon's copying was so widespread and indiscriminate that it even copied J&J Vision code that went ***completely unused*** in the LenSx, presumably because it was sometimes easier to copy everything, rather than only what was needed.  Schmidt Decl. ¶¶ 150-155, 168-171, 177-179.  Alcon's copying was so pervasive, it even copied ***typos***.  Schmidt Decl. ¶¶ 107, 162, 178.

These examples are the tip of the iceberg; as detailed in the Schmidt and Baer declarations, the current LenSx code includes huge swaths of J&J Vision code written over a decade ago.   Schmidt Decl. Appx. C (36 pages of side-by-side comparisons); Baer Decl. ¶¶ 4, 25-26, 40-54.  Overall, Alcon's current codebase includes a whopping ***26,845*** lines of code stolen ***verbatim*** from J&J Vision.  Baer Decl. ¶¶ 48-53.  And this vastly understates Alcon's theft, since it only counts exact copies, not lines with superficial changes, of which there are many.  Baer Decl. ¶¶ 46, 50.

## III.   ARGUMENT

The Court evaluates preliminary injunction motions under a four-part test: (1) a reasonable probability of success on the merits; (2) irreparable injury to the movant

by denial of relief; (3) whether preliminary relief will cause even greater harm to the nonmoving party; and (4) whether preliminary relief is in the public interest. *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 556 (3d Cir. 2002). A movant must meet a "threshold" showing for the first two factors—of a "significantly better than negligible" chance on the merits and that irreparable harm is "more likely than not." *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The Court then balances all four factors, such that a strong merits showing requires a lesser showing on the other factors. *Id.*

## A.   J&J Vision is overwhelmingly likely to succeed on the merits

To establish copyright infringement, one must prove (1) ownership of a valid copyright and (2) copying of the copyrighted work's original elements. *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 66-67 (3d Cir. 2018).

### i.   J&J Vision owns the infringed copyrights

Alcon's LenSx incorporates protected elements of iFS software through at least Version 2.02. Schmidt Decl. ¶¶ 103-107, 128, 131-133. Each contributor to that version of source code—Goldstein, Vardin, Hegedus, Mehta, and Duff—was an employee, making his contributions works for hire, or a contractor, who assigned his rights to J&J Vision's predecessors. Schmidt Decl. ¶¶ 63-64; Homer Decl. Exs. 13-15, 17-21, 23-24; Mehta Decl. ¶¶ 5, 10; *see* 17 U.S.C. § 201(b). Finally, corporate

transactions confirm that a J&J Vision subsidiary, plaintiff AMO Development LLC, now owns the copyrights.  Homer Decl. Ex. 12.

### ii.    The copyrights are valid

"To qualify for copyright protection, a work must be original to the author," *i.e.*, it must have been "independently created by the author (as opposed to copied from other works)," and "possess at least some minimal degree of creativity."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).[5]  The "vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  *Id.*

J&J Vision registered the infringed copyrights before it sued,[6] which creates a presumption of validity that Alcon must rebut.  17 U.S.C. § 410(c); *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143 (E.D.N.Y. 2011).  But the copyrights' validity is manifest even without that presumption.

The iFS software was independently created by J&J Vision.  Mehta Decl. ¶ 8; Schmidt Decl. ¶¶ 62-64.  Its authors were J&J Vision employees or contractors. Homer Decl. Exs. 13, 15, 17-18, 20-21, 23-24; Mehta Decl. ¶ 5.  Ensuring the program could safely perform sophisticated laser operations on human eyes with a high degree of reliability required substantial discretion, judgment, and creativity.

---

[5] This brief cleans up quotations and citations, and adds emphasis, throughout.

[6] D.I. 16-1 at Exs. Q-HH.

███████████████████████████████████████████

Schmidt Decl. ¶¶ 65-77; Mehta Decl. ¶ 9; *see Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 61 (1st Cir. 2009).

The programmers also creatively designed the iFS program's directory structure. Schmidt Decl. ¶¶ 72-75; Mehta Decl. ¶ 9. Indeed, after Alcon's theft, J&J Vision released a new iFS version that substantially reorganized that structure, proving that the programmers had creative latitude in arranging the original software. Schmidt Decl. ¶¶ 73-75; *see Feist*, 499 U.S. at 348 (creative arrangement of elements is copyrightable). J&J Vision also made creative choices in the implementing code. ████████████████████████████████████

████████████████████████████████████ Schmidt Decl. ¶ 68. The programmers also wrote creative comments to document their thinking and help others better understand the code. Schmidt Decl. ¶¶ 14, 71.

### iii.   Alcon copied original elements of J&J Vision's works

Copying of original elements of a work can be shown through (a) "actual copying" and (b) "material appropriation" of the work. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018).

***Actual copying.*** Actual copying "focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Id.* It can be proven by showing the defendant had ***access*** to the copyrighted work and ***probative similarity***

suggesting the infringing work results from copying rather than independent creation. *See id.* at 173.

Access is easy to prove. *See Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 141 (5th Cir. 2004) (only "a reasonable opportunity to view" required). Goldstein, Vardin, and Hegedus each had access to the iFS source code while at J&J Vision. Schmidt Decl. ¶¶ 61, 63; Mehta Decl. ¶ 6. All three left J&J Vision for Alcon to work as programmers. D.I. 23 ¶ 95; Schmidt Decl. ¶¶ 61, 88, 92. Accordingly, Alcon had access to J&J Vision's code.

Probative similarity is also straightforward. Alcon's code contains scores of telltale signs of copying, including the examples above. *See, e.g.*, Schmidt Decl. ¶¶ 10-15, 174-176; Baer Decl. ¶¶ 34-36, 38-39, 45, 51-53; *see Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 926 (7th Cir. 2003) (where similarities are of an "arbitrary character . . . an inference of copying may be drawn"). The evidence allows only one reasonable conclusion: actual copying.

***Material appropriation.*** Under the material appropriation prong, the inquiry is whether the accused work is "substantially similar" to the copyrighted work's protected elements. *Tanksley*, 902 F.3d at 174. Alcon appropriated the iFS software's overall structure and organization, and reams of creative code, including the programmers' creative comments. The copied code includes ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Schmidt Decl. ¶¶ 101-143. ▮▮▮▮▮▮▮



Schmidt Decl. ¶¶ 144-149

Baer Decl. ¶¶ 46 n.28, 49, 51

. Alcon likewise copied

. Schmidt Decl. ¶¶ 156-162.  These are but a few examples of Alcon's ubiquitous copying.  *See* Schmidt Decl. Appx. C.  The material appropriation prong is easily satisfied.

### iv.   Alcon continues to infringe J&J Vision's copyrights

It is unlawful to "infringe any of the copyright owner's . . . exclusive rights," including the rights to reproduce, distribute, or prepare derivative works based on a copyrighted work.  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

By incorporating iFS code and replicating the iFS , Alcon has prepared an infringing derivative work.  *See* 17 U.S.C. § 101 (defining a "derivative work" as a "work based upon one or more preexisting works").  In *Dun & Bradstreet*, the defendant created an infringing derivative work by including two of plaintiff's *commands* in its computer program.  307 F.3d at 212.  That pales in comparison to Alcon's misappropriation of over twenty-five thousand lines of J&J

13

Vision's code, across hundreds of files, and its creative ████████████████.

Baer Decl. ¶¶ 34-36, 41, 49.  That Alcon did not copy all of J&J Vision's code, added

its own code, or rearranged or renamed some of the infringing code, is irrelevant.

*Dun & Bradstreet*, 307 F.3d at 213-14 (finding infringement where defendant

"rearranged some of the words in the plagiarizing program or altered or replaced one

or more components").

Alcon continues to infringe J&J Vision's exclusive reproduction right every

time it copies the LenSx software, including when developing new versions and

compiling and installing the software onto LenSx machines; those copies include

J&J Vision's copyrighted code.  *See DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th

Cir. 2015).  Alcon also infringes J&J Vision's exclusive distribution right every time

it delivers or exports a LenSx machine with the infringing software to a customer.

*See* 17 U.S.C. §§ 106, 602(a)(2).[7]  The same is true each time it develops, compiles,

or distributes software updates or patches containing J&J Vision's copyrighted code.

### B.    J&J Vision will be irreparably harmed absent an injunction

A movant must show "it is more likely than not to suffer irreparable harm in

the absence of preliminary relief."  *See Reilly*, 858 F.3d at 179.  Every infringing

---

[7] All LenSx systems are made in, and exported from, the United States.  D.I. 25
(Am. Answer) ¶¶ 77, 104.

system Alcon delivers today will cause J&J Vision incalculable harm for years to come.

### i.   Alcon's infringement causes J&J Vision significant competitive harm

J&J Vision and Alcon are "direct competitors in a marketplace," which "weighs heavily in favor of a finding of irreparable injury." *Butamax™ Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 374 (D. Del. 2012).

The facts here are similar to *Apple Computer, Inc. v. Franklin Computing Corp.*, 714 F.2d 1240 (3d Cir. 1983). There the Third Circuit reversed the denial of a preliminary injunction barring the sale of computers including "virtually identical" software to that created by the plaintiff. *Id.* at 1245, 1255. The court reasoned that "the jeopardy to [plaintiff]'s investment and competitive position caused by [defendant]'s wholesale copying of many of its . . . programs would satisfy the requirement of irreparable harm needed to support a preliminary injunction." *Id.* at 1254.[8] The same is true here—J&J Vision invested years designing, writing, testing, and improving its software before Alcon plagiarized it. Alcon is now using that stolen code to permanently displace sales by J&J Vision, its biggest competitor. *Apple Computer* strongly supports a finding of irreparable harm.

---

[8] *Apple Computer* reached this conclusion "even without the presumption of irreparable harm." 714 F.2d at 1254.

15

██████████████████████████████████████

### ii.   J&J Vision's injuries are difficult, if not impossible, to measure

The full scope of injury to J&J Vision is immeasurable—another basis for irreparable harm. *See Metalcraft of Mayville, Inc. v. Toro Co*., 848 F.3d 1358, 1368 (Fed. Cir. 2017) ("Where the injury cannot be quantified, . . . the harm cannot be adequately compensated and is irreparable."). As noted, J&J Vision distributes its Catalys system under a "razor/razor-blade" model where the system is sold at a relatively low profit margin, with the vast majority of revenues and profits realized based on per-procedure fees and consumable sales over the system's life. Cuzick Decl. ¶¶ 9-11; Vellturo Decl. ¶¶ 50-53.

Measuring these lost revenues is difficult, if not impossible, as it depends on a number of unknown and unknowable factors, such as the number of patients who will be treated using a given FLACS system. Cuzick Decl. ¶ 21; Vellturo Decl. ¶¶ 30, 73-74. Usage volume depends on factors as variable as the product's (unknown) lifespan, doctors' willingness to recommend FLACS procedures, and the availability of insurance and government reimbursement. Cuzick Decl. ¶¶ 16, 21, 24-25; Vellturo Decl. ¶¶ 30, 73-74. Indeed, because the COVID-19 pandemic disproportionately affects the elderly, demand for cataract procedures has been suppressed; it is impossible to predict how demand will rebound. Cuzick Decl. ¶ 24.

███████████████████████████████████████

Moreover, even when initial contracts have expired, doctors and surgery centers are unlikely to switch away from a familiar system. Cuzick Decl. ¶ 17; Vellturo Decl. ¶¶ 56-57. And, purchasers of one system are, all else being equal, more likely to purchase other cataract products from that same manufacturer. Cuzick Decl. ¶¶ 8, 10; Vellturo Decl. ¶¶ 69-72. In addition, doctors that use a FLACS system develop brand recognition and loyalty, and often write about their experience. Cuzick Decl. ¶ 26; Vellturo Decl. ¶ 75. Thus, each lost sale causes J&J Vision reputational harm; a surgeon who does not use a J&J Vision system cannot recommend it. Cuzick Decl. ¶ 26. The Federal Circuit has repeatedly held that where there are such "ecosystem effects" or "network effects" on downstream sales, sales-based losses are "very difficult to calculate," and irreparable through monetary damages. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 644-45 (Fed. Cir. 2015); *see also Metalcraft of Mayville*, 848 F.3d at 1368 (same).

These long-term, impossible-to-measure harms are particularly acute because so few FLACS systems are installed each year. Vellturo Decl. ¶¶ 31, 52. As a result, "opportunities to attract customers and make sales are . . . scarce" so that "a single lost sale is a sizeable percentage of the yearly market in this area." *See Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (finding irreparable harm based on "likely loss of market share and customers" in the "small, niche sod harvester market").

███████████████████████████████████████

Preliminary relief is therefore critical; sales by Alcon between now and final judgment will allow it to gain new, lasting footholds at surgery centers throughout the world, where its infringing products will generate profits and goodwill for Alcon—instead of J&J Vision—for years to come.

### iii.   Alcon's infringement causes J&J Vision's losses

J&J Vision's injuries are "causally attributable" to Alcon's infringement. *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019). **Alcon** believed there was value to J&J Vision's code; otherwise it would not have copied massive sections into its software. *See Apple*, 809 F.3d at 643. And the infringing software is critical—the LenSx would not operate without it. Schmidt Decl. ¶¶ 15, 18, 78, 100, 145-149; Velturo Decl. ¶ 60; *cf. Apple*, 809 F.3d at 640 (requiring only "some connection between the harm alleged and the infringing acts").

### iv.   J&J Vision's request is timely

Based on arguments in its recent pleadings, Alcon may argue that J&J Vision was aware of possible similarities between Alcon's LenSx and J&J Vision's iFS system before bringing suit. But mere delay does not bar preliminary relief. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726-27 (3d Cir. 2004) ("The claim that . . . delay bars preliminary relief is not consistent with the law of this Circuit"); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) ("[A] showing

████████████████████████████████████

of delay does not preclude, *as a matter of law*, a determination of irreparable harm.").

And any such argument here fails for at least two reasons.

**First**, J&J Vision had no way to know the ***magnitude*** of Alcon's copying until

it gained access to Alcon's source code at the end of November.  As the Third Circuit

has stressed, "a delay caused by a plaintiff's good faith efforts to investigate an

infringement ***or to determine how serious an infringement is*** does not preclude a

finding of irreparable harm." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229

F.3d 254, 264 (3d Cir. 2000); *see also Fisher-Price, Inc. v. Well-Made Toy Mfg.*

*Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) ("Delay in filing suit will not rebut the

presumption of irreparable harm ***if the plaintiff does not know how severe the***

***infringement is***.").

For example, in *Hologic, Inc. v. Minerva Surgical, Inc.*, No. 15-1031-SLR,

2016 WL 3143824, at *10 (D. Del. June 2, 2016), the Court found the "delay" factor

neutral, even though the plaintiff had "some notice and knowledge" of the infringing

product three or four years before suing, because it did not obtain a device to

"analyze whether there was a good faith basis for infringement" until three months

before suit.  Similarly, in *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007-

FDS, 2012 WL 1358662 (D. Mass. Apr. 18, 2012), the court held that the risk of

irreparable harm was "sufficient to support a limited, prospective injunction"

preventing "further distribution" of infringing software program, despite plaintiff's

pre-suit delay.  *Id.* at *8-9.  The court considered delay in bringing suit "not decisive"
where evidence suggested "the degree of infringement was not evident to plaintiff
for several years."  *Id.* at *8.

J&J Vision did not know "how serious an infringement" Alcon was engaged
in before suing.  *See BP Chems.*, 229 F.3d at 264.  A limited examination of the
LenSx system's non-human-readable object code showed suspicious similarities,
leading J&J Vision to sue.  *See* Am. Compl. (D.I. 16) ¶ 98.  But J&J Vision had no
way of knowing how extensive Alcon's copying was until J&J Vision's experts
gained access to Alcon's source code in late November.  Baer Decl. ¶ 22; Schmidt
Decl. ¶¶ 54, 79.  After comparing the code, and investigating the audacious breadth
of Alcon's copying, J&J Vision promptly filed this motion.

***Second,*** the narrow injunction J&J Vision seeks neutralizes any arguments of
delay.  J&J Vision seeks a limited injunction only preventing sales of ***new*** infringing
systems.  J&J Vision is not seeking to enjoin future procedures on systems Alcon
already sold, or to impound existing systems as permitted by 17 U.S.C. § 503.  *See*
*Accusoft*, 2012 WL 1358662, at *8-9 (adopting a "limited, prospective injunction"
preventing "further distributions" despite pre-suit delay).  But it would violate every
principle of equity to allow Alcon to further parlay its unscrupulous behavior by
allowing it to sell new infringing units, locking J&J Vision out of those accounts for
years—possibly decades—to come.

**C.**     **The balance of the harms favors injunctive relief**

The balance of harms favors J&J Vision.  This factor "ensures that the issuance of an injunction would not harm the infringer more than a denial would harm the [nonmovant]." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

J&J Vision is the victim of Alcon's willful theft of code and ongoing acts of copyright infringement.  It stands to suffer irreparable injury if Alcon's unlawful activity is allowed to continue.  In contrast, any harm to Alcon should be "discounted by the fact that [Alcon] brought [the] injury upon itself." *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *see also Apple Computer*, 714 F.2d at 1255 (rejecting consideration of the injunction's "devastating effect" on the infringer's business).

Moreover, the narrow scope of J&J Vision's requested relief mitigates any harm to Alcon. *See Accusoft*, 2012 WL 1358662, at *9 (balance of hardships favored an injunction "to halt further distributions of the allegedly infringing applications" but "not require [defendant] to recall existing licenses or to return the software itself").  Alcon has already reaped nearly a decade of profits from J&J Vision's software.  And because J&J Vision is not seeking to enjoin use of already-installed LenSx machines—even though they infringe as much as new ones do—Alcon will continue to reap those profits during the pendency of this litigation.  Alcon cannot

21

reasonably complain about being forced to play by the rules—at least for new system sales—moving forward.

### D.     The requested injunction will not harm the public interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer*, 714 F.2d at 1255.

At the same time, prohibiting new infringing sales of Alcon laser systems during this litigation will not harm the public interest. *See Accusoft*, 2012 WL 1358662, at *9 (injury to the public interest "is negated if the court-ordered relief is limited to a prospective injunction against distributions of [the infringing software] to new customers"). Under J&J Vision's requested relief, no doctor or patient will be deprived access to existing Alcon laser systems.[9] For future customers, J&J Vision fully expects it could meet market demand for new units on its own, but even if the case were otherwise, the three other FLACS system suppliers in the market can make up any shortfall. Cuzick Decl. ¶ 28; Vellturo Decl. ¶¶ 43-46. Thus, J&J

---

[9] To be clear, J&J Vision will seek damages for all of Alcon's infringing activities, and reserves the right to ultimately seek a permanent injunction prohibiting all infringement by Alcon, including with respect to its installed base. Moreover, although the preliminary relief J&J Vision seeks is limited, that does not mean J&J Vision acquiesces in Alcon's continued, willful infringement; Alcon should voluntarily cease *all* infringing activities or be prepared to pay the consequences.

████████████████████████████████████████████

Vision's requested relief is narrowly tailored to both to protect its rights and minimize disruption to physicians and patients.

## IV.    CONCLUSION

The Court should issue a preliminary injunction barring Alcon from selling, distributing, or exporting new laser systems with the infringing LenSx software, or from selling, distributing, or exporting such software with the purpose or intent of it being loaded onto new laser systems.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
jward@morrisnichols.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Carolyn M. Homer
Krupa Parikh
Holly K. Victorson
Ashley Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

February 4, 2021

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc., and
Johnson & Johnson Surgical Vision, Inc.*

## **<u>WORD COUNT CERTIFICATION</u>**

The undersigned counsel hereby certifies that the foregoing document contains 4,933 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 4, 2021, upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>David M. Fry, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendants and*<br>*Counterclaim Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Jeannie Heffernan, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendants and*<br>*Counterclaim Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Caroline Lourgos, Esquire<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654<br>*Attorneys for Defendants and*<br>*Counterclaim Plaintiffs* | *VIA ELECTRONIC MAIL* |

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

2