## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON LENSX, INC., ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) |
| ALCON INC., ALCON LENSX, INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC. <br><br> Counter-Defendants. | |

## **STIPULATED PROTECTIVE ORDER**

Plaintiffs and Counterclaim Defendants AMO Development, LLC, AMO

Manufacturing USA, LLC, AMO Sales and Service, Inc., and Johnson & Johnson

Surgical Vision, Inc. (collectively, "J&J Surgical Vision") and Defendants and Counterclaim Plaintiffs Alcon Inc., Alcon LenSx, Inc., Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC, (collectively, "Alcon") (J&J Surgical Vision and Alcon, each, a "Party") assert that they possess confidential information in the form of trade secrets or other confidential and proprietary business, research, development, financial, personal, and/or technical information related to the subject matter of the above-captioned litigation ("Action" or "Proceeding"). The Parties recognize that it may be necessary to disclose certain of the asserted confidential information during the course of this litigation. As a result, the Parties desire limiting disclosure and preventing use of such information for any purposes other than the prosecution and defense of this litigation. In addition, the Parties contemplate that non-parties may produce confidential information. Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Parties, by and through their respective undersigned counsel, hereby stipulate and agree to the request for, and entry of, the following Protective Order (hereinafter, "Order").

## 1.     SCOPE

(a)     This Order governs all Confidential Material, including "Highly Confidential Material—Attorney Eyes Only" and "Confidential Source Code—Attorney Eyes Only," designated pursuant to this Order.

(i) "Confidential Material" means any hardcopy or electronic document, information, testimony (*i.e.*, depositions, declarations, or other pre-trial statements in this Proceeding), and all copies, data, extracts, compilations, summaries, reports, and information obtained, derived, or generated from such material that the Designating Party reasonably believes to be entitled to confidential treatment under Federal Rules of Civil Procedure 26(c)(1)(G) or other applicable laws or regulations. Confidential Material includes, but is not limited to, trade secrets (as defined in the Uniform Trade Secrets Act); other confidential research, development, or commercial information; all information that, if disclosed, could result in competitive, commercial, or business harm; and any person's personal identifying information, financial information, medical/insurance information, or other information that is private under applicable laws or regulations.

(ii) "Highly Confidential Material—Attorney Eyes Only" means Confidential Material that the Designating Party reasonably believes to contain information the disclosure of which would cause the Designating Party serious competitive and commercial harm, including core technical documents describing the functionality of the accused products, financial information, and future business plans. Unless

otherwise specified, provisions in this Order regarding "Confidential Material" shall also encompass "Highly Confidential Material— Attorney Eyes Only."

(iii)   "Confidential Source Code—Attorney Eyes Only" means Confidential Material that comprises or includes confidential, proprietary, or trade secret Source Code, as detailed herein, as well as in the Parties' Pre-Discovery Confidentiality Agreement, adopted herein by reference and attached as Exhibit C.   "Source Code" shall mean source code (*i.e.*, computer instructions and data definitions expressed in a human-readable form), as well as any and all programmer notes, annotations, files, and other comments of any type describing, explaining, and/or accompanying the code.   Unless otherwise specified, provisions in this Order regarding "Confidential Material" shall also encompass "Confidential Source Code—Attorney Eyes Only."

(b)   This Order is binding upon all current and future Parties in this Action (including their respective corporate parents, subsidiaries, affiliates, successors, and attorneys and all other representatives or agents), their counsel, and all signatories to Exhibit A, the Non-Disclosure Agreement (deemed to be part of this Order), and all other persons or entities authorized under this Order or any other Order of this Court to receive or view Confidential Material.

(c)     The entry of this Order does not preclude any Party in this Action from seeking further order of this Court, including modification of this Order, or from objecting to discovery that the Party believes to be improper.

(d)     Nothing herein shall be construed as an admission or concession by a Designating Party that any Confidential Material constitutes relevant, material, or admissible evidence in this matter.

## 2.     DESIGNATION OF CONFIDENTIAL MATERIAL; FAILURE TO MAKE DESIGNATIONS

(a)     *Documents Produced in Image, PDF, or Hardcopy Form ("Image").* The Designating Party shall place on each page the following legend: SUBJECT TO PROTECTIVE ORDER; or ATTORNEY EYES ONLY, SUBJECT TO PROTECTIVE ORDER.  The legend shall not obscure any content of the original document. Any person making a copy of the Image, if authorized under this Order, shall ensure that the same legend shows on the copy.

(b)     *Documents Produced in Native Format ("Native File").* A Designating Party shall rename each Native File to include, at the end of the file name and prior to the file extension, the following language: PROTECTED or PROTECTED—ATTORNEY EYES ONLY. Any person making any copy of the Native File, if authorized under this Order, shall not rename the file.

(c)     *Deposition Testimony and Exhibits.*

(i)     Following any deposition and for 30 days after the Parties' counsel have received from the court reporter a final copy of a deposition transcript, all testimony, transcripts, and exhibits shall constitute Confidential Material. Thereafter, the transcript, or portions of transcripts, or exhibits designated as Confidential Material shall remain subject to this Order. In addition, no further actions need be taken regarding any exhibit previously designated as Confidential Material.

(ii)     Confidential Material designated before or at a deposition shall not be shown to a witness who is not a Qualified Person as described below, and persons attending the deposition who are not Qualified Persons may be excluded from the portions of the deposition during which Confidential Material is disclosed.

(iii)     Deposition transcript or exhibit pages containing Confidential Material shall be separately bound by the court reporter, who must affix to the top of each page the legend "SUBJECT TO PROTECTIVE ORDER" or "ATTORNEY EYES ONLY, SUBJECT TO PROTECTIVE ORDER."

(d)     *Pleadings, Motion Papers, and Written Discovery Papers.*

(i)     A Party may designate as Confidential Material portions of pleadings, motion papers (written motions, affidavits and/or declarations, and briefs), and written discovery papers (requests and responses).

6

(ii)   A Party preparing written papers containing Confidential Information must file and redact such papers in accordance with Paragraph 17 of the Parties' Scheduling Order. If feasible, the Confidential Material shall be bound separately from material not entitled to protection.

(e)   *Other Confidential Material.* For Confidential Material in a form not addressed above (*e.g.*, DVDs, portable hard drives, or other tangible items), the Designating Party shall affix in a prominent place on the exterior of the items the legend "SUBJECT TO PROTECTIVE ORDER, PRODUCED BY [PARTY NAME] IN *AMO DEVELOPMENT LLC v. ALCON LENSX INC*., D. Del. No. 20-842 (CFC)"; or "ATTORNEY EYES ONLY, SUBJECT TO PROTECTIVE ORDER, PRODUCED BY [PARTY NAME] IN *AMO DEVELOPMENT v. ALCON LENSX INC*., D. Del. No. 20-842 (CFC)". If feasible, the legend shall identify the portions constituting Confidential Materials.

(f)   *Confidential Material Disclosed by a Non-Party.*

i)   For 30 days after a non-party makes disclosures in this Proceeding, the entire disclosure shall be treated as Confidential Material under this Order.

ii)   Within the 30-day period, the non-party or a Party in this Action may notify all other Parties that all or specific portions of the disclosure are

Confidential Material. Thereafter, the designated portions shall remain subject to this Order.

        iii)    In the event that a Party is required, by a valid discovery request or the Scheduling Order (D.I. 61), to produce a non-party's Confidential Material in its possession (other than information produced in this litigation by a non-party), and the Party is subject to an agreement with the non-party not to produce the non-party's Confidential Information, then the Party shall:

        (a)    promptly provide the non-party with a copy of this Order, the Scheduling Order (D.I. 61) or relevant discovery request(s), and a reasonably specific description of the information requested; and

        (b)    make the information requested available for inspection by the non-party.

        iv)    If the non-party fails to object or seek a protective order from the court within fourteen (14) days of receiving the notice and accompanying information, the Party may produce the non-party's Confidential Material responsive to the discovery request.  If the non-party timely seeks a protective order, the Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the non-party before a determination by the court.

Absent a court order to the contrary, the non-party shall bear the burden and expense of seeking protection in this court of its Confidential Material.

(g)   *Disclosure of Confidential Material Without Confidential Designation.*

(i)   Disclosure of Confidential Material without the required confidentiality designation shall not be a waiver in whole or in part of the Disclosing Party's claim of confidentiality, either as to the specific Confidential Material disclosed or as to the same or related subject matter. This paragraph and its subparts shall be interpreted to provide the maximum confidentiality protection allowed under applicable law.

(ii)   After discovering a failure to make a confidentiality designation, the Disclosing Party may give written notice that the material is Confidential Material. Receiving Parties then shall treat the material as confidential until the Parties agree otherwise, or the Court resolves the issue. The Disclosing Party may reproduce the material with the appropriate confidentiality legend, and each Receiving Party then shall return or destroy all copies of the identified material, including that held by persons to whom the Party distributed the material.

## 3.   REQUIRED HANDLING OF CONFIDENTIAL MATERIAL

(a)   Confidential Material shall not be disclosed to anyone for any purpose other than as necessary to support or defend against the claims or defenses in this Action, and, in that limited context, shall be disclosed only to Qualified Persons as

set out below. Confidential Material shall not be used for any business, competitive, or other non-litigation purpose.

(b)     Each Party and its counsel, and each Qualified Person identified in subparagraphs 4(a) through 4(h), Paragraph 5 (other than the Court), and Paragraph 6 (other than the Court), including any person or entity acting on behalf of, or for the benefit of, that Qualified Person, (i) shall not permit or enable unauthorized dissemination of Confidential Material to anyone; and (ii) shall take all necessary and prudent measures to preserve the security of Confidential Material, including measures to minimize risks of hacking of, and other unauthorized access to, systems on which Confidential Material is stored or through which it is transmitted.

(c)     If Confidential Material is disclosed in a manner not authorized by this Order, or if an attempt is made to hack or otherwise gain unauthorized access to a system containing Confidential Material (jointly, "unauthorized actions"), each Party or Qualified Person with knowledge of the unauthorized actions immediately shall take necessary and prudent remedial measures to prevent their reoccurrence and promptly shall inform the Designating Party of such remedial measures and of all facts relating to the unauthorized actions, including identification of all Confidential Material disclosed.

(d)     Nothing in this Order shall limit any Designating Party's use of its own documents, including disclosure of its own Confidential Material to any person for any purpose.

(e)     Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

## 4.     QUALIFIED PERSONS WITH RESPECT TO CONFIDENTIAL MATERIAL

Subject to Paragraph 3 above, Confidential Material (as distinct from Highly Confidential Material—Attorney Eyes Only, covered in Paragraph 5 below, and Confidential Source Code—Attorney Eyes Only, covered in Paragraph 6 below) may be disclosed only to the following Qualified Persons:

(a)     For each Party, up to four (4) specifically identified in-house counsel, disclosed in advance to the other Party, provided that each signs a copy of Exhibit A;

11

(b)     The Parties' outside counsel of record in the Current Litigations, including counsel's partners, employees, and agents of the respective law firms assisting in the Current Litigations;

(c)     Professional litigation support vendors who are under a duty of confidentiality, including, but not limited to, outside copy services, graphics support, translators, interpreters, discovery hosting, jury consultants, and mock jurors; provided, however, that mock jurors may access Confidential Material only after signing a copy of Exhibit A;

(d)     Consultants (*i.e.*, experts or professionals whom counsel has retained to provide professional advice or services to assist in preparation for the trial of the Action, whether or not designated as a testifying expert) assisting in the Current Litigations, and their clerical or support staff who are under a duty of confidentiality, but only if (1) the Consultant has been pre-approved according to Paragraph 10; (2) the Consultant has first signed a copy of Exhibit A; (3) the Consultant is not a Competitor of the Designating Party; and (4) counsel for the Party retaining the Consultant, after duly diligent inquiry, does not know of any instance in which the Consultant has been found to be in violation of the terms of a protective order in any legal proceeding.

(e)     A witness designated to testify on a Party's behalf at a deposition or pre-trial hearing pursuant to Rule 30(b)(6), but only with respect to Confidential

12

Material produced by the Party designating that witness. This provision does not preclude the Designating Party from objecting to or moving to preclude disclosure to any witness, or from seeking amendment of this provision in the future.

(f)     A person identified in the Confidential Material as an author, source, addressee, or recipient of the material or who already has a lawfully acquired copy of it or, in the case of a witness at deposition, a person who is reasonably believed to be an author of the Confidential Material or who, based on his/her deposition testimony, reasonably appears to have knowledge relating thereto;

(g)     Any other person mutually agreed upon among the Parties, but only if that person has signed a copy of Exhibit A;

(h)     Any mediators or arbitrators selected to assist in resolution of this matter, and their personnel actively engaged in assisting them, if they have signed a copy of Exhibit A; and

(i)     The Court or any Court personnel, including any court reporters or videographers.

## 5.     QUALIFIED PERSONS WITH RESPECT TO HIGHLY CONFIDENTIAL MATERIAL—ATTORNEY EYES ONLY

Subject to Paragraph 3 above, Highly Confidential Material—Attorney Eyes Only may be disclosed only to the following Qualified Persons:

(a)     For each Party, three (3) in-house attorneys representing the Party in this Proceeding, to be disclosed in writing to the other Party in advance of any disclosure, and only after signing a copy of Exhibit A; and

(b)     The Qualified Persons described in Paragraphs 4(b) through 4(i) above.

## 6.    QUALIFIED PERSONS WITH RESPECT TO CONFIDENTIAL SOURCE CODE—ATTORNEY EYES ONLY

The Parties' Pre-Discovery Confidentiality Agreement, attached as Exhibit C and incorporated herein by reference, governs the disclosure, use of and access to Confidential Source Code—Attorney Eyes Only, subject to the following limitations detailed herein.

(a)     For each Party, Confidential Source Code—Attorney Eyes Only may be disclosed to the same three (3) in-house attorneys representing the Party in this Proceeding detailed in Paragraph 5 (a);

(b)     Confidential Source Code—Attorney Eyes Only may be used in connection with any of the claims or defenses asserted in this Action.

(c)     The Parties agree that for the purposes of this Protective Order, the following sentences of the Parties' Pre-Discovery Confidentiality Agreement shall be modified as follows:

14

| Paragraph No. | Original Sentence | Modified Sentence |
|---|---|---|
| ¶ 13(a) | "The Vendor will create eight local source code machines (the 'Local Review Machines')." | "The Vendor will create at least eight and no more than twelve local source code machines (the 'Local Review Machines')." |
| ¶ 13(a) | "Each Receiving Party will receive four Local Review Machines, along with the credentials necessary to access those machines, to distribute amongst its team and experts as it sees fit, provided that only approved individuals discussed in Paragraph 12 have access to the Local Review Machines and the distribution is done in accordance to the terms agreed to herein." | "Each Receiving Party will receive at least four, and no more than six, Local Review Machines, along with the credentials necessary to access those machines, to distribute amongst its team and experts as it sees fit, provided that only approved individuals discussed in Paragraph 12 have access to the Local Review Machines and the distribution is done in accordance to the terms agreed to herein. Each Receiving Party may, at its own cost, direct the Vendor to create up to eight total Local Review Machines for the purpose of enabling access for up to eight approved individuals pursuant to Paragraph 12." |
| ¶ 13(d) | "Such notes shall be subject to the use and disclosure provisions of this Confidentiality Agreement and will not be subject to review by the Producing Party." | "Because such notes shall be subject to the use and disclosure provisions of this Confidentiality Agreement and will not be subject to review by the Producing Party, such notes shall be for the sole use of the Receiving Party and not used to recreate the Producing Party's Source |

| | | Code for use outside the Source Code inspection." |
|---|---|---|
| ¶ 13(f)(i) | "Absent a showing that more is reasonably necessary for purposes of this matter, no more than 1,500 pages of the total Source Code may be in printed form at any one time, and all printed Source Code shall be logged by the Receiving Party." | "Absent a showing that more is reasonably necessary for purposes of this matter, no more than 2,500 pages of the total Source Code may be in printed form at any one time, and all printed Source Code shall be logged by the Receiving Party." |
| ¶ 12 | N/A | Add paragraph 12(f): "(i) any current officer, director or employee of the Producing Party or original source of the information, and their outside counsel; (ii) any former officer, director or employee of the Producing Party who was employed by the Disclosing Party when the Protected Information was created or last modified, and their outside counsel; (iii) any person designated by the Disclosing Party to provide testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; and (iv) any person who authored, previously received or was directly involved in the specific matter(s) addressed in the Protected Information as evident from its face or reasonably certain in view of other testimony or evidence, and their outside counsel. Persons authorized to view |

| | | |
|---|---|---|
| | | Protected Information pursuant to this sub-paragraph (f) shall not retain or be given copies of the Protected Information<br><br>except while in the presence of counsel." |
| ¶ 13(f)(ii) | N/A | Add paragraph 13(f)(ii)(3): "Through the use of digital streaming to persons authorized to view Protected Information under Paragraph 12 so long as no digital copy of the Protected Information is made that enables future use. |
| ¶ 13 | N/A | Add paragraph 13(g): "The Receiving Party may coordinate with the Vendor to retrieve copies of documents from the Local Review Machines comprising: (i) the raw output of any analysis performed by a software review tool installed on the Local Review Machines under paragraph 13(e), so long as any code contained in such output only contains excerpts that already exist in printed, Bates stamped form pursuant to Paragraph 13(f), or (ii) work product of one or more reviewer of the Reviewing Party, so long as any code contained in such work product only contains excerpts that already exist in printed, Bates stamped form pursuant to Paragraph 13(f). |

|  |  | All such documents shall be considered work product of the Receiving Party and treated as Protected Information in accordance with this Confidentiality Agreement. Prior to providing such documents to the Receiving Party, the Vendor must mark each page with 'CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY'." |
|--|--|--|

(d)     With the exception of the express modifications to the Parties' Pre-Discovery Confidentiality Agreement specified in this Paragraph, to the extent that a provision contained in the Pre-Discovery Confidentiality Agreement conflicts with a provision in this Agreement, as it applies to Source Code only, the Pre-Discovery Confidentiality Agreement governs.

## 7.     PROSECUTION BAR

Any individual who receives Highly Confidential Material—Attorney Eyes Only or Confidential Source Code—Attorney Eyes Only shall not be involved in the prosecution of patents or patent applications relating to femtosecond laser-based cataract or LASIK eye surgery systems, including without limitation the patents asserted in this Action and any patent or application claiming priority to or otherwise related to the patents asserted in this Action, before any foreign or domestic agency,

including the United States Patent and Trademark Office. For purposes of this paragraph, "prosecution" shall be defined as directly or indirectly drafting or amending patent claims, or advising others who are drafting or amending patent claims regarding the scope of said patent claims. However, the term "prosecution" as used in this paragraph excludes representing a party in connection with post-grant challenges to the validity of a patent before a domestic or foreign agency (including but not limited to *inter partes* reexaminations, *inter partes* review, post grant review, oppositions to European patents, and patent nullity litigation). This Prosecution Bar shall end two years after final termination of this Action, including appeals.

## 8.   CHALLENGES TO DESIGNATIONS

(a)    If a Party challenges a designation, the challenged material shall be treated as Confidential Material until the Parties agree otherwise in writing or this Court issues an order that the material is not confidential.

(b)    To challenge confidentiality designations, a Party shall identify in writing the specific Confidential Material (by production number, if possible) to which each challenge pertains, and the specific bases for each challenge. After receiving the challenges, the Designating Party shall have 14 days to state in writing whether the designations will be maintained or withdrawn. If the Parties cannot resolve all disputes after meeting and conferring, the Designating Party may raise

the dispute with the Court in accordance with the discovery dispute procedures set forth in the Parties' Scheduling Order.

(c)     No Party to this Action shall be obligated to challenge the propriety of any designation by any Designating Party, and a failure to do so shall not constitute a waiver or in any way preclude a subsequent challenge in this or any other action to the propriety of such designation.

## 9.   USE OF CONFIDENTIAL MATERIAL IN COURT PRIOR TO TRIAL

(a)     No Party may file with the Court Confidential Material of any other Party except when required for motions or other pending matters in the Action.

(b)     The Party seeking to file Confidential Material shall first meet and confer with the Designating Party to identify procedures, consistent with applicable court requirements, for filing Confidential Material with the Court.

## 10.   APPROVAL TO ACCESS CONFIDENTIAL INFORMATION

Prior to disclosing Confidential Information to any outside experts or consultants, the expert or consultant shall read this Agreement, and the Party seeking to disclose such information shall provide written notice to the Party that produced it (the "Producing Party") that includes: (i) the name of the person; (ii) the present employer and title of the person; (iii) an up-to-date curriculum vitae; (iv) a list of current and past consulting relationships undertaken within the last four (4) years (including an identification of each entity consulted, dates of the beginning and end

of the consultancy, and identification of any litigation matters in which the consultant or expert has testified, by way of expert report, deposition, or testimony at a hearing or trial), but excluding legal consulting roles, the existence of which are protected from disclosure under the attorney work-product doctrine; and (v) a signed copy of Exhibit A. Within five (5) business days of receiving this information, the Producing Party may, in good faith, object in writing to its disclosure to the proposed expert or consultant for good cause. In the absence of any objection at the end of the five (5) business day period, the expert or consultant shall be deemed approved under this Agreement. There shall be no disclosure of Confidential Information to the disclosed expert or consultant prior to the expiration of this five (5) business day period. If an objection is made, the Parties shall meet and confer within four (4) business days after the objection and attempt in good faith to resolve the dispute informally, and if the dispute cannot be resolved, the objecting party shall file a motion with the Court within 14 days after the objection. Confidential Information shall not be disclosed to the expert or consultant until the objection is resolved or if no motion is filed within the 14-day period. To the extent the outside expert or consultant is or may be a non-testifying expert consulted by counsel, no Party will be deemed to have waived privilege by disclosing the name of a non-testifying expert to whom counsel intends to show Confidential Information. No non-testifying expert

disclosed pursuant to this Paragraph will be subject to deposition or subpoena as a witness based solely on the fact that he/she was the subject of such disclosure.

## 11. ORDERS, SUBPOENAS, OR REQUESTS FROM NON-PARTIES

If a person or entity serves a Party in this action with a request, subpoena, or order ("demand") for disclosure of Confidential Material of a Designating Party, the Party receiving the demand, if not prohibited under applicable law and within 48 hours of receipt, shall deliver a copy of the demand to the Designating Party's counsel. The Party shall not disclose any Confidential Material prior to the date specified for disclosure. In its sole discretion and at its own cost, the Designating Party may oppose or seek to limit the demand in any legal manner. The Party who received the demand shall not oppose or otherwise interfere with the Designating Party's actions.

## 12. REDACTIONS

(a)     Prior to any discovery-related disclosure or production, the Producing Party may redact information or material that is protected from disclosure by applicable privilege or immunity (*see* Exhibit B of this Order), that is governed by any applicable privacy law or regulation, or that any Order entered in this Action allows to be redacted.

(b)     *Methods of Redaction.*

22

(i)     Each redaction in a TIFF-image shall be indicated clearly on the Image as being based on "Privilege" or "Other." "Other" may include information reflecting personal identifying or personal medical information or financial information not relating to the products at issue in this case.

(ii)    For Native Files requiring redaction, redacted text shall be replaced with the terms "Privilege" or "Other," and the Producing Party shall produce the redacted file either in native format or in an authorized TIFF-image format.

(iii)   For metadata fields requiring redaction, field content shall be replaced by the term "Redacted," and the modified field shall be included in any required .dat file.

(c)    The terms of sub-paragraph 2(g) above (Disclosure of Confidential Material Without Confidential Designation) and of Exhibit B, Paragraph 3 (Privileged Information) shall apply to any unintentional failure to redact information.

## 13.    DISPOSITION OF CONFIDENTIAL MATERIAL

(a)     After final disposition of any appeals or after the time for filing any appeal has passed, each Party in the Action promptly shall return to the Designating Party its Confidential Material (including on any litigation-support application or in

the possession, custody, or control of any person to whom the Party distributed Confidential Material), shall destroy it, or otherwise shall comply with an applicable order of the Court. Within 30 days of any such action, the Party shall certify in writing to the Designating Party that the required return or destruction has been completed.

(b)     As exceptions to the above requirements:

(i)     Outside counsel of record in the Current Litigations may retain Confidential Material in copies of pleadings, motions, or other court-filed papers, in official transcripts and exhibits thereto, and in attorney work product, including counsels' email and document management systems. Counsel shall continue to treat all such materials as Confidential Material pursuant to the requirements of this Order.

(ii)     Confidential Material stored on backup storage media is sequestered. If such data is restored from backup media, the Receiving Party or its agent must promptly return or destroy the restored Confidential Material and provide the certification required in Paragraph 13(a) above.

(iii)     This Order shall continue to apply to any such materials retained by counsel.

**14.     ORDER SURVIVES TERMINATION OF ACTION**

This Order constitutes an enforceable agreement between the Parties, their

agents, and their attorneys and shall be binding after termination of this Action. To

enforce this Order, the Court shall retain jurisdiction over any person or entity in

receipt of Confidential Material.

**15.     OTHER PROCEEDINGS**

By entering this Order and limiting the disclosure of information in this case,

the Court does not intend to preclude another court from finding that information

may be relevant and subject to disclosure in another case. Any person or Party

subject to this Order who becomes subject to a motion to disclose another Party's

information designated as confidential pursuant to this Order shall promptly notify

that Party of the motion so that the Party may have an opportunity to appear and be

heard on whether that information should be disclosed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer A. Ward*
_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
jward@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Carolyn M. Homer
Holly K. Victorson
Ashley Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms

SHAW KELLER LLP

*/s/ John W. Shaw*
_____
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
I.M. Pei Building
1105 North Market Street
12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

*Attorneys for Defendants and Counterclaim*
*Plaintiffs Alcon LenSx, Inc., Alcon Vision,*
*LLC, Alcon Laboratories, Inc. and Alcon*
*Research, LLC*

OF COUNSEL:

Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Gregg F. LoCascio
Noah S. Frank
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Kristen P.L. Reichenbach

LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

February 26, 2021

SO ORDERED this _____ day of February, 2021.


_____
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC<br>and AMO SALES AND SERVICE,<br>INC.,<br><br>          Plaintiffs,<br><br>    v.<br><br>ALCON LENSX, INC.,<br>ALCON VISION, LLC,<br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LLC,<br><br>          Defendants. | C.A. No. 20-842 (CFC)<br><br>**ENDORSEMENT OF<br>PROTECTIVE ORDER** |
| ALCON INC., ALCON LENSX, INC.,<br>ALCON RESEARCH, LLC, and<br>ALCON VISION, LLC,<br><br>          Counter-Plaintiffs,<br><br>    v.<br><br>AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC<br>AMO SALES AND SERVICE, INC.,<br>and JOHNSON & JOHNSON<br>SURGICAL VISION, INC.<br><br>          Counter-Defendants. | |

## EXHIBIT A: NON-DISCLOSURE AGREEMENT

1

I hereby attest that I understand that information or documents designated as Confidential Material are provided to me subject to the Order dated _____, 2020 (the "Order"), in the above-captioned action ("the Action") that I have been given a copy of and have read the Order; and that I agree to be bound by its terms. I also understand that my signature below indicates my agreement to be bound by the Order and is a prerequisite to my review of any information or documents designated as Confidential Material pursuant to the Order.

I further agree that I shall not use Confidential Material for any purpose other than as authorized in the Order and that, except as explicitly authorized in the Order, I shall not disclose Confidential Material, in any form whatsoever, to others.

I further agree to return or destroy Confidential Material in my possession, custody, or control in the manner and time specified by the Order.

I further agree and attest to my understanding that my obligation to honor the confidentiality of such Confidential Material will continue even after this Action concludes.

I further agree and attest to my understanding that, if I fail to abide by the terms of the Order, I may be subject to sanctions, including contempt of court, for such failure. I agree to be subject to the jurisdiction of the above-identified Court for the purposes of any proceedings relating to enforcement of the Order. I further agree

to be bound by and to comply with the terms of the Order as soon as I sign this

Agreement, regardless of whether the Order has been entered by the Court.

Date: _____

By:   _____

## EXHIBIT B: PRIVILEGED INFORMATION

This Exhibit is Exhibit B to the Stipulated Protective Order and shall be deemed to be incorporated in the Order as if set forth there in full.

**1.   SPECIFIC PRIVILEGE LOG PROTOCOLS**

(a)   Privilege logs provided in lieu of producing requested documents shall be produced no more than 30 days after substantial completion of document production, or at another time agreed to by the Parties. In the event that documents are produced thereafter, the Parties agree to update their privilege logs within a reasonable amount of time, and in no event later than 7 days prior to the end of fact discovery. Privilege logs shall be produced in native Excel format.

(b)   No Party shall be required to list on a privilege log any privileged or work-product documents prepared for the prosecution or defense of this Action or constituting or disclosing communications within clients or between clients and their counsel related to this Action. No Party shall be required to list on a privilege log any privileged documents prepared on or after March 24, 2020.

(c)   If a document containing Privileged Information is part of an email thread as described in the parties' ESI Protocol, a Producing Party shall list on the privilege log only the most-inclusive email in the thread and shall include in

4

a separate column on the log all information in the ALL_PARTICIPANTS field for that email.

(d)   If application of Rule 26(b)(5) results in a document-by-document listing of some or all Privileged Information, the entry for each document shall list the following information available for the document:

(i)     the beginning production number of the document;

(ii)    the nature of the privilege asserted (*e.g.*, "attorney-client privilege" or "attorney work product");

(iii)   if known, name(s) of the author(s) of the document;

(A)   If a document is an email thread, the name of the author on the most inclusive email in the thread shall be listed;

(iv)   if known, name(s) of the recipient(s) (*i.e.*, persons shown in the TO, CC, and BCC fields)

(A)   If the document is an email chain, name(s) of the recipient(s) on the most recent email in the chain shall be listed, and the content of the ALL_PARTICIPANTS field shall be set out in a separate column;

(v)    if known, the date the document was created, sent (if applicable), and last modified (if applicable);

(vi)   the document type by file extension;

(vii)   the custodian(s) of the document; and

(viii)  a brief description of the nature and purpose of the communication (*e.g.*, communication seeking legal advice, communication providing legal advice, communication regarding legal advice provided by counsel), as well as the general subject matter of the communication without disclosing any privileged or protected information, in a manner that will enable other parties to assess the claim.

## 2.   DISCLOSED PRIVILEGED INFORMATION

(a)   The Parties have agreed that, in this lawsuit, they do not intend to disclose Privileged Information. Pursuant to Federal Rule of Evidence 502(d) and 28 U.S. Code § 1738, any disclosure of Privileged Information ("Disclosed Privileged Information") shall not constitute in this or any other action a waiver or forfeiture of any privilege otherwise attaching to the Disclosed Privileged Information and its subject matter.

(b)   Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

(c)   Any party receiving materials that reasonably appear to be Privileged Information shall not copy, distribute, or otherwise use such materials in any

manner and shall provide prompt notice to the Producing Party to afford an opportunity to request return of the materials.

(d)   If a Disclosing Party notifies the Receiving Party that Privileged Information has been disclosed:

(i)   the Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Disclosed Privileged Information, unless the Parties agree, or the Court orders, otherwise;

(ii)   the Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Disclosed Privileged Information that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

(iii)   the Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) business days:

(A)   return, destroy, or delete all Disclosed Privileged Information and all notes or other work product revealing its content in the possession, custody, or control of the Receiving Party, its attorneys, or any person to whom the Party provided the Disclosed Privileged Information, and

(B)   provide a certification of counsel that all Disclosed Privileged Information has been returned, destroyed, or deleted.

    (C)    For purposes of this Order, Disclosed Privileged Information that is not reasonably accessible under Federal Rules of Civil Procedure 26(b)(2)(B) because it is stored by the Receiving Party on backup storage media is deemed to be sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Disclosed Privileged Information.

(e)    To contest the claim of attorney-client privilege or work product protection, the Receiving Party may—within five (5) business days of receipt of the notice of disclosure—raise the dispute with the Court in accordance with the discovery dispute procedures set forth at Paragraph 15 of the Scheduling Order ("Disclosure Motion").

    (i)    The Disclosing Party shall retain the burden of establishing its privilege or work product claims.

    (ii)    The Disclosure Motion shall be filed or lodged conditionally under seal; any Disclosed Privileged Information attached to or disclosed in the submission shall be deemed submitted solely for the Court's *in camera* review.

    (iii)    The Disclosure Motion shall not assert as a ground for entry of such an Order the fact or circumstances of the production of Disclosed Privileged Information.

8

> (iv)   Pending resolution of the Disclosure Motion, the Receiving Party must not use the contested information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed motion.

(f)   *Rule 502*. Federal Rule of Evidence ("FRE") 502(b) is inapplicable to Disclosed Privileged Information, which shall receive the maximum protection afforded by FRE 502(d). Under FRE 502(d) and 28 U.S. Code § 1738, this Order shall be enforceable and granted full faith and credit in all other state and federal proceedings. Any subsequent conflict of law analysis shall apply the law most protective of privilege and work product.

EXHIBIT C

## CONFIDENTIALITY AGREEMENT

Alcon Inc. and its affiliates, including but not limited to, Alcon Laboratories, Inc., Alcon Research, LLC, Alcon LenSx, Inc., Alcon Vision, LLC, Alcon Pharma GmbH, Alcon AG, Alcon Eye Care UK Limited, and Alcon SA (collectively, "Alcon") and Johnson & Johnson Surgical Vision, Inc. and its affiliates, including but not limited to AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc. (collectively, "JJSV") (with Alcon, the "Parties") enter into this Confidentiality Agreement to preserve the confidentiality of the Parties' source code exchanged during pre-discovery source code review.  To preserve the confidential or proprietary status of such information, each party, through its respective outside counsel, agrees as follows:

### Definitions

1.      "Protected Information" shall refer to all documents or source code, which contain non-public, confidential information and/or trade secrets designated pursuant to Paragraph 6 of this Confidentiality Agreement.  This Confidentiality Agreement also governs the treatment of any secondary material, such as pleadings, written discovery, expert reports, notes, summaries or any other materials that contain, describe, or reflect such Protected Information.  Protected Information shall not include documents that have been disseminated to customers or the public without a confidentiality designation.

2.      "Producing Party" shall refer to any party to this Agreement, or to any third party, who discloses, produces, or makes available for inspection any Protected Information.

3.      "Receiving Party" shall refer to any party who receives Protected Information from a Producing Party.

4.      The "Current Litigations" are *AMO Development, LLC et al. v. Alcon LenSx, Inc. et al.*, No. 20-842-CFC (D. Del.); *AMO Development, LLC v. Alcon Pharma GmbH and Alcon AG*, Case No. 7 O 70/20 at Landgericht Mannheim (District Court Mannheim); and *Alcon Eye Care UK Limited & Anor v. AMO Development, LLC* (Claim No. HP-2020-000028).

**Computation of Time**

5.      The computation of any period of time prescribed or allowed by this Confidentiality Agreement shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

**Designation of Protected Information**

6.      With respect to all source code made available for inspection under this Confidentiality Agreement, the Producing Party may designate such information and items as:

(a)      "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" if it comprises or includes confidential, proprietary, or trade secret Source Code. "Source Code" shall mean source code (*i.e.,* computer instructions and data definitions expressed in a human-readable form), as well as any and all programmer notes, annotations, files, and other comments of any type describing, explaining, and/or accompanying the code.  Provisions regarding the inspection of Source Code are outlined in Paragraph 13.

7.      For the purposes of this Confidentiality Agreement, material marked "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" will be referred to as "Protected Information." The Producing Party will use reasonable care to avoid designating any

document or information as Protected Information that is not entitled to such designation or that is generally available to the public. The burden of proving the confidentiality of any information shall remain with the party or third party making such designation. The restrictions and obligations set forth in this Confidentiality Agreement relating to Protected Information shall not apply to any information which (i) a party produces without any confidentiality designation, provided that the party does not subsequently designate such information pursuant to this Confidentiality Agreement; (ii) the Parties agree, or a court rules, is already public knowledge or has become public knowledge, other than as a result of disclosure by the Receiving Party; or (iii) is in the Receiving Party's legitimate possession independent of receiving such information from the Producing Party. Nothing in this Confidentiality Agreement prevents the Producing Party from producing such information under a different confidentiality designation or in a different format (*i.e.*, by means of production rather than inspection).

(a)     *Documents filed in court*. Any document to be filed in court, which contains any Protected Information shall be filed under seal pursuant to the applicable local rules. The confidentiality designation shall be included on the first page of such documents. Where possible, only the portions of papers containing Protected Information shall be requested to be placed under seal when filed with or submitted to a court, and a redacted public version shall also be filed.  When filing any materials under seal, on the day the materials are filed under seal, the filing party shall submit a version containing unapplied proposed redactions to the party whose Protected Information is contained within the original document. The non-filing party will review and approve or revise the proposed redactions within three (3) business days of receiving them.  The filing party will then submit a public version of the filing to the court within the timeline required by the relevant local rules.

8.      The scope of this Confidentiality Agreement shall be understood to encompass not only those items or things which are expressly designated "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" but also all documents, copies, excerpts, photographs, abstracts, notes, and summaries containing "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" information, as well as testimony and oral communications containing such information.  A Party shall not be obligated to challenge the propriety of any designation of items or things at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

**Permitted Disclosure and Use of Protected Information**

9.      Protected Information shall not be distributed, disclosed or made available to anyone except as expressly provided in this Confidentiality Agreement.  A Producing Party may allow exceptions to the restrictions on access and disclosure of its own Protected Information. Such exceptions must be provided in writing to all parties.

10.      Protected Information disclosed under this Confidentiality Agreement may only be used to support, or defend against, the copyright infringement claims noticed in Mr. Warren Foust's July 14, 2020 correspondence, which is at issue in the Current Litigations.  The Parties will endeavor to incorporate these terms into the protective order in any of the Current Litigations that involve such copyright infringement claims or defenses.  Notwithstanding the foregoing, the confidentiality restrictions on the Protected Information agreed to herein shall remain binding on the Parties and individuals under Paragraphs 14 and 15.  Upon termination of the Current Litigations, any Protected Information that does not belong to the Receiving Party shall be destroyed within 60 days and certification of such destruction should also be provided by that date.

4

Attorney work product, pleadings, depositions, or expert reports containing Protected Information need not be destroyed.

**Secure Storage of Protected Information**

11.     Protected Information must be stored and maintained by a Receiving Party in a secure location and manner that ensures that access is limited exclusively to the persons authorized under this Confidentiality Agreement.

**Persons Who May Access Protected Information**

12.     Absent the express written consent of the Producing Party, or as further limited by this order or further court order, only the individuals specified in Paragraph 12(a)-(e) (and subject to the provisions of Paragraphs 14 and 15 below) shall have access to materials designated "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY."

        (a)     Outside counsel for the Parties, including any contract attorneys, paralegals, technology specialists, and clerical employees of their respective law firms assisting in the Current Litigations;

        (b)     Outside experts and consultants of the Receiving Party who have been pre-approved in accordance with Paragraph 15, and their support staff and clerical employees assisting in the Current Litigations;

        (c)     A court or adjudicatory body, its personnel, the jury, court reporters and/or videographers who record testimony or other proceedings related to the Current Litigations;

(d)      Professional litigation support vendors, including but not limited to copy, graphics, translation, database and/or trial support, and jury consulting services ("Professional Vendor"), who shall be provided a copy of this Confidentiality Agreement and execute Exhibit A, in accordance with Paragraph 14 below; and

(e)      Any mediator, arbitrator, or court-appointed neutral for the Current Litigations, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Confidentiality Agreement.

**Procedures for Source Code Inspection**

13.      Given the ongoing public health concerns, the Parties have agreed to the following remote inspection protocol.  The Parties agree that willingness to conduct such a remote review during the pandemic does not bind them to doing so once the public health issues recede.  A Producing Party's Source Code (as defined in Paragraph 6(a)) being made available for inspection may be designated as "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY."  Nothing in this section, however, prevents the Producing Party from producing Source Code under a different confidentiality designation or in a different format.  Unless the Producing Party states otherwise, or unless the parties otherwise agree, Source Code shall be subject to the following restrictions and protections:

(a)      The Parties' Source Code will be provided to Special Counsel, Inc., a remote source code vendor (the "Vendor"), who will load the Parties' source code onto a read-only folder (the "Source Code Folder") accessible through virtual machines ("VMs"), set up for each reviewer and managed by the Vendor.  To ensure integrity of the review, the same Source Code Folder will be accessible to all reviewers, through the VMs, who are provided access under this Confidentiality Agreement.  Each Party may also work with

the Vendor to create a folder shared with only the VMs assigned to their reviewers, but inaccessible to the VMs assigned to the opposing party's reviewers, for notes and other review-related files.  Each Party may further work with the Vendor to set up a folder shared with specified VMs assigned to any reviewers from any Party for the purpose of identifying Source Code to be requested pursuant to Paragraph 13(f).  The Parties will provide the Vendor with the identities of individuals who will have access to the source code via the VMs, provided those individuals have been approved as discussed in Paragraph 12.  The Vendor will create eight local source code machines (the "Local Review Machines").  The Local Review Machines will be restricted such that there is no Internet access beyond the white-listed domains necessary for operation of the VM, including use of any software review tools and videoconference monitoring services.  The Local Review Machines will also be configured to disable all USB connections, screenshots, screen sharing, copy/paste, or other ability to transfer any data off of the Local Review Machines.  Each Receiving Party will receive four Local Review Machines, along with the credentials necessary to access those machines, to distribute amongst its team and experts as it sees fit, provided that only approved individuals discussed in Paragraph 12 have access to the Local Review Machines and the distribution is done in accordance to the terms agreed to herein.

(b)     To ensure that the Receiving Party does not have unlimited, unmonitored access to the Producing Party's Source Code, inspections will be monitored remotely by a staff member of the Vendor (the "Review Supervisor").  When an inspection is not taking place, the Vendor shall disable all VM accounts with access to the Source Code Folder.  When the Receiving Party wishes to review the Producing Party's Source Code, the Receiving Party shall provide notice of one (1) business day to the Vendor and Producing

7

Party.  Such notice shall include the estimated start time of the review, estimated duration of the review, identification of the Local Review Machine(s) that will be used, and identification of the individuals who will be reviewing the Producing Party's Source Code. Inspection will occur on a business day during the hours of 9:00 AM through 9:00 PM Eastern Time.  The Vendor, at its discretion, may agree to accommodate reasonable requests to conduct inspections at other times.  Prior to the start of any inspection, the Review Supervisor will send a videoconference invite to the Receiving Party.  At the time of the inspection, to allow the Review Supervisor to visually monitor the inspection, the Receiving Party will connect to the videoconference using the Local Review Machine. Once the Review Supervisor has verified the identity of the reviewer and that no other individuals are able to see the screen of the Local Review Machine, the reviewer's VM account will be enabled and the reviewer may logon to the VM from the Local Review Machine and access the Source Code Folder.  The Receiving Party shall keep the visual stream of the videoconference connected through the duration of the review.  In the event the visual stream is disconnected, an unapproved reviewer appears in the visual stream, or the reviewer leaves the room for more than five (5) minutes, the Review Supervisor may disable the reviewer's account until the connection has been restored, unapproved reviewers have been removed from the reviewing room, or the reviewer has returned.  The camera shall remain on the reviewer, but the camera need only be positioned to observe the conduct of the reviewer in the room but shall not be positioned to see the reviewer's precise keystrokes or what files the reviewer is accessing on the Local Review Machine or the VM.  For avoidance of doubt, the microphone on the Local Review Machine is muted during the inspection.  Any inspection should be conducted from a private place such as a home or office to ensure that only those who have agreed to this Confidentiality Agreement

have access to the Local Review Machines.  Once the review is complete, the reviewer must log out of the Local Review Machine and the VM.

(c)     Although the Review Supervisor may visually monitor the activities of the Receiving Party's representatives during any Source Code review, such monitoring is only to ensure that there is no unauthorized recording, copying, or transmission of the Source Code.  No recordings may be made of any remote inspection video stream, nor shall the monitoring individuals be permitted to report on any activities of the reviewers therein other than as may relate to the above-referenced purpose of the monitoring.  The Vendor shall not monitor the precise keystrokes, mouse clicks, or any other precise activity of any reviewer.  The Local Review Machines and the VMs shall be configured so that the Producing Party may not monitor, or determine, directly or indirectly, (i) the portions of source code viewed by the Receiving Party or (ii) the parameters or results of any searches or analyses performed by the Receiving Party.

(d)     During Source Code inspection, the Receiving Party may take notes about the Source Code on a non-networked laptop or other non-networked personal electronic device, or by pen/pencil and paper.  Such notes shall be subject to the use and disclosure provisions of this Confidentiality Agreement and will not be subject to review by the Producing Party.  During the review, the reviewer may not make phone calls except to other authorized reviewers.  Other than the Local Review Machines and devices used to make phone calls to other authorized reviewers, the reviewers shall not use networked devices of any kind during a Source Code inspection.    The reviewer may leave the room where the review is being conducted to use Internet connected devices or make a private phone call.

9

(e)     The Vendor may load select software tools, agreed on by the Parties, on the VMs.    These software tools may include text editors, source code analysis tools, zip/compression utilities, and multi-file text search tools such as "grep."   Specific tools may include (but not be limited to): Eclipse, Notepad++, Source-Navigator, PowerGrep, ExamDiff Pro, Understand, Beyond Compare, CodeSuite, Sherlock, JPlag, SIM, Git, SVN, or similar programs.   The parties agree that the Vendor may "whitelist" certain IP addresses and/or URLs if needed for functionality of the software tools.   Fully and appropriately licensed copies of the software tools must be provided to the Vendor by the Party wishing to use such tools.   Under no circumstances will a trial version of a software tool be used. In no event shall the Receiving Party use any compilers, interpreters or simulators in connection with the Producing Party's Source Code.

(f)     The Receiving Party shall not e-mail, upload, download, or otherwise electronically transmit or electronically store any Source Code, or make any electronic copies of the Source Code (including, but not limited to, through use of a camera or imaging device) with the exception that the Receiving Party may create a copy of Source Code solely on the VMs (to request paper copies of that Source Code or use analytical tools), but no copies shall be made in an effort to evade security measures described in this section. Paper copies of Source Code shall be subject to the following restrictions:

(i)     The Receiving Party may request paper copies of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial. The Producing Party will Bates number and keep the originals of these printed documents, and one copy shall be made for the Receiving Party within five (5) business days of the Receiving Party's

request. Absent a showing that more is reasonably necessary for purposes of this matter, no more than 1,500 pages of the total Source Code may be in printed form at any one time, and all printed Source Code shall be logged by the Receiving Party. The Producing Party shall provide all such copies of Source Code with bates numbers and the label "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY."

(ii)     Any paper copies of Source Code, and any other documents or things reflecting Source Code that have been designated by the Producing Party as "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" may not be further copied, digitally imaged or otherwise duplicated except:

(1)     Up to five (5) copies may be made by outside counsel for the Receiving Party for the sole purpose of creating paper copies for retention in locked cabinets in multiple offices of outside counsel or offices of experts or consultants who have been pre-approved in accordance with Paragraph 15; and

(2)     In limited excerpts that the Receiving Party believes, in good faith, are necessary to attach as exhibits to or excerpts within expert reports or court filings.  The Receiving Party may file and serve such filings electronically and maintain reasonable electronic copies of such filings, but shall delete all other electronic copies of Source Code from all Receiving Party electronic storage devices.

(iii)      Should the Receiving Party require use of Source Code material at deposition or pre-trial hearing, that party shall identify to the Producing Party the specific printed pages that may be used at such deposition or hearing at least five (5) calendar days before the deposition or pre-trial hearing, and the Producing Party will provide copies of those pages of the Source Code at the deposition or pre-trial hearing, with bates numbers and label "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY."  The Receiving Party may also request that a Local Review Machine be made available for use in a deposition or pre-trial hearing by notifying the Producing Party and Vendor of its intent to use a Local Review Machine at least five (5) business days before the deposition or pre-trial hearing.  Following such notification, the Receiving Party may bring one of the Local Review Machines to the deposition or pre-trial hearing, and the Vendor will be prepared to provide access to the VM through the Local Review Machine during the deposition or hearing.  The monitoring and communication requirements described in Paragraph 13(b) and (d) are inapplicable to review taking place during a deposition or hearing.  In any case, no printed pages of Source Code will be appended to the transcript of the deposition or hearing as an imaged exhibit or otherwise.

(iv)      A Producing Party's Source Code may only be transported by the Receiving Party at the direction of a person authorized under Paragraph 12 above to another person authorized under Paragraph 12 above, on paper via hand carry, Federal Express or other similarly reliable and tracked courier service.

**Approval to Access to Protected Information**

14.     *Professional vendors*.  Anyone authorized to access  "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" material pursuant to Paragraph 12(d) of this Confidentiality Agreement shall read this Confidentiality Agreement and sign the "Undertaking Concerning Information Covered By Confidentiality Agreement," attached as Exhibit A to this Confidentiality Agreement, which shall be retained by the signing party's outside counsel of record in this action.

15.     *Outside experts or consultants*.  Prior to disclosing Protected Information to any outside experts or consultants, the expert or consultant shall read this Confidentiality Agreement and the party seeking to disclose such information shall provide written notice to the Producing Party that includes:  (i) the name of the person; (ii) the present employer and title of the person; (iii) an up-to-date curriculum vitae; (iv) a list of current and past consulting relationships undertaken within the last four (4) years (including an identification of each entity consulted, dates of the beginning and end of the consultancy, and identification of any litigation matters in which the consultant or expert has testified, by way of expert report, deposition, or testimony at a hearing or trial); (v) an indication where the person will access Source Code materials; and (vi) a signed copy of the person's "Undertaking Concerning Information Covered By Confidentiality Agreement," attached as Exhibit A to this Confidentiality Agreement.  Within five (5) business days of receiving this information, the Producing Party may, in good faith, object in writing to its disclosure to the proposed expert or consultant for good cause.  In the absence of any objection at the end of the five (5) business day period, the expert or consultant shall be deemed approved under this Confidentiality Agreement.  There shall be no disclosure of Protected Information to the disclosed expert or consultant prior to the expiration of this five (5) business day period.  If an

13

objection is made, the parties shall meet and confer within four (4) business days after the objection and attempt in good faith to resolve the dispute informally.  Protected Information shall not be disclosed to the expert or consultant until the objection is resolved. To the extent the outside expert or consultant is or may be a non-testifying expert consulted by counsel, no party will be deemed to have waived privilege by disclosing the name of a non-testifying expert to whom counsel intends to show "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" information.  No non-testifying expert disclosed pursuant to this Paragraph will be subject to deposition or subpoena as a witness based solely on the fact that he/she was the subject of such disclosure.

**Unauthorized Access and Violations of Confidentiality Agreement**

16.     Counsel for the Receiving Party shall promptly notify the Producing Party upon becoming aware of any loss, theft and/or unauthorized copying or disclosure of Protected Information.  This notice shall include a description of identification of all known relevant information concerning the nature and circumstances of the unauthorized access (such as the persons responsible for making such unauthorized access and the specific information subjected to unauthorized access).  Receiving Party shall take all steps reasonably necessary and available to retrieve such Protected Information and prevent any further unauthorized access or dissemination.

17.     Each individual who receives any Protected Information pursuant to this Confidentiality Agreement shall be subject to the jurisdiction of the District of Delaware in any action relating to the performance under, compliance with, or violation of this Confidentiality Agreement.  This Confidentiality Agreement does not alter the burden imposed by law on any Party seeking to uphold any limitation on the production or dissemination of materials.

**Restrictions**

18.     Because the parties are competitors, Protected Information that is designated "CONFIDENTIAL SOURCE CODE – OUTSIDE COUNSEL EYES ONLY" may not be used by the Receiving Party for any business, commercial, scientific, competitive, or other purpose whatsoever (including but not limited to research or development), other than what is necessary to support or defend against copyright-related claims or defenses in the Current Litigations.

**Modifications of This Agreement**

19.     Nothing in this Confidentiality Agreement shall preclude any party hereto from seeking relief from, or modifications to, this Confidentiality Agreement.

20.     Any party may terminate this Agreement upon written notice to the other party. Within 60 days of the notice, the Receiving Party must destroy, and provide certification of the destruction, Protected Information as provided in Paragraph 10.

Dated: October 6, 2020

/s/ Noah S. Frank

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
(302) 298-0700

Gregg F. LoCascio, P.C.
Noah S. Frank
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
glocascio@kirkland.com
noah.frank@kirkland.com
(202) 389-5000

Jeannie Heffernan
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
jheffernan@kirkland.com
(212) 446-4800

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
kristen.reichenbach@kirkland.com
(415) 439-1400

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
caroline.lourgos@kirkland.com
(312) 862-2000

*ATTORNEYS FOR DEFENDANTS*

/s/  Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jennifer A. Ward (#6476)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com
jward@mnat.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Carolyn M. Homer
Krupa Parikh
Holly K. Victorson
Ashley Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
Kristine W. Hanson
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

*Attorneys for Plaintiffs*

## EXHIBIT A: UNDERTAKING CONCERNING INFORMATION COVERED BY THE CONFIDENTIALITY AGREEMENT

The undersigned hereby acknowledges that he/she has received and read the Confidentiality Agreement between Alcon and JJSV and understands the terms and agrees to be bound by each of those terms.  Specifically, and without limitation upon such terms, the undersigned agrees not to use or disclose any Protected Information made available to him/her other than in accordance with said Agreement.  The undersigned further submits to the jurisdiction of the United States District Court for the District of Delaware for the purposes of the Confidentiality Agreement.


By:_____        Of: _____
           (signature line)                    (name of employer)


_____        Dated:_____
   (Type or print name of individual)

17