IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,

Defendants.

ALCON INC., ALCON RESEARCH, LLC and ALCON VISION, LLC,

Defendants and Counterclaim Plaintiffs,

v.

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC.,

Plaintiffs and Counterclaim Defendants.

C.A. No. 20-842 (CFC)

**JURY TRIAL DEMANDED**

**ANSWER TO COUNTERCLAIMS AND COUNTER-COUNTERCLAIMS**

Plaintiffs and Declaratory Judgment Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC and AMO Sales and Service, Inc. (collectively, "J&J Vision Plaintiff") and Patent Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J Vision") answer the counterclaims of Defendants and Declaratory Judgment Counterclaim Plaintiffs Alcon Vision, LLC, Alcon Laboratories, Inc. and Alcon Research, LLC (collectively, "Alcon Defendants") and Patent Counterclaim Plaintiffs Alcon Inc., Alcon Research, LLC, and Alcon Vision, LLC (collectively, "Alcon") as follows. To the extent not specifically admitted in the following paragraphs, the allegations in Alcon's Answer to Second Amended Complaint and Counterclaims (D.I. 145) are denied.

**ALCON DEFENDANTS'**
**DECLARATORY JUDGMENT COUNTERCLAIMS**

1. Upon information and belief, J&J Vision Plaintiff admits that Alcon Vision, LLC has a principal place of business at 6201 South Freeway, Fort Worth, Texas. J&J Vision Plaintiff denies the remaining allegations of paragraph 1.

2. Upon information and belief, admitted.

3. Upon information and belief, admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. J&J Vision Plaintiff admits that Alcon Defendants seek declaratory judgment of invalidity and/or noninfringement as to the Asserted Patents including the Palanker Patents and the Culbertson Patents, but J&J Vision Plaintiff denies that any such relief is proper. J&J Vision Plaintiff denies the remaining allegations of paragraph 8.

9. Paragraph 9 states a legal conclusion to which no response is required.

10. J&J Vision Plaintiff admits that AMO Development, LLC ("AMO Development"), AMO Manufacturing USA, LLC ("AMO Manufacturing"), and AMO Sales and Service, Inc. ("AMO Sales and Service") are subject to personal jurisdiction by virtue of filing their Complaint. J&J Vision Plaintiff admits that AMO Development, AMO Manufacturing, and AMO Sales and Service are entities organized under the laws of the State of Delaware. J&J Vision Plaintiff denies the remaining allegations of paragraph 10.

11. J&J Vision Plaintiff admits that AMO Development is the owner by assignment of each of the Asserted Patents. J&J Vision Plaintiff admits that AMO Development, AMO Manufacturing, and AMO Sales and Service own the entire right, title, and interest in and to the Asserted Patents. J&J Vision Plaintiff denies the remaining allegations of paragraph 11.

12. Admitted.

13. Admitted.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. J&J Vision Plaintiff admits that U.S. Patent No. 5,098,426 (the "Sklar Reference") issued on March 24, 1992. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 19 and on that basis denies them.

20. J&J Vision Plaintiff admits that femtosecond lasers emit laser pulses having a duration on the order of femtoseconds ($10^{-15}$ seconds) in length. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 20 and on that basis denies them.

21. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 21 and on that basis denies them.

22. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 22 and on that basis denies them.

23. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 23 and on that basis denies them.

24. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24 and on that basis denies them.

25. J&J Vision Plaintiff admits that U.S. Patent No. 6,325,792 (the "Swinger Reference") issued on December 4, 2001. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 25 and on that basis denies them.

26. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 26 and on that basis denies them.

27. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 27 and on that basis denies them.

28. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 28 and on that basis denies them.

29. J&J Vision Plaintiff admits that International Publication No. WO 94/09849 was published on May 11, 1994. J&J Vision Plaintiff admits that the Sklar Reference issued on March 24, 1992. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 29 and on that basis denies them.

30. J&J Vision Plaintiff admits that the Sklar Reference issued on March 24, 1992. J&J Vision Plaintiff admits that U.S. Patent No. 5,520,679 (the "Lin Reference") issued on May 28, 1996. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 30 and on that basis denies them.

31. J&J Vision Plaintiff admits that the Sklar Reference issued on March 24, 1992. J&J Vision Plaintiff admits the Sklar Reference states: "By laying the template in effect on the computer-generated image of the region, he can then execute a pre-stored program to automatically execute the surgery in a precisely controlled preselected manner." J&J Vision Plaintiff admits that U.S. Patent No. 6,099,522 (the "Knopp Reference") issued on August 8, 2000. J&J Vision Plaintiff admits that the Knopp Reference states: "By contrast, it is the unique integration of

several such diverse aspects (including mapping, imaging, tracking, precision laser cutting and user interface), precisely yet inexpensively, into a fully automated workstation, the uses of which are transparent to the user, that is the main subject of the present invention." J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 31 and on that basis denies them.

32. J&J Vision Plaintiff admits that Joseph Izatt *et al.*, *Micrometer-Scale Resolution Imaging of the Anterior Eye In Vivo With Optical Coherence Tomography*, 112 Arch Opthalmol. 1584–1589 (1994) (the "Izatt Reference") states: "Objective: To demonstrate a new diagnostic technique, optical coherence tomography, for high-resolution cross-sectional imaging of structures in the anterior segment of the human eye in vivo." J&J Vision Plaintiff admits that the Izatt Reference states:

> We have demonstrated high-quality tomographic imaging for the measurement of anterior eye structures and anterior chamber depth, corneal thickness and curvature, the anterior angle and anterior angle region morphologic characteristics, iris structure, and cataract progression in the crystalline lens. These preliminary results suggest the potential of OCT as a diagnostic procedure for ophthalmologic examination of the anterior eye.

J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 32 and on that basis denies them.

33. J&J Vision Plaintiff admits that Reginald Birngruber *et al.*, *In vivo imaging of the development of linear and nonlinear retinal laser effects using optical coherence tomography in correlation with histopathological findings*, 2391 SPIE 21 (1995) states: "The different laser systems and the OCT-device were coupled together using an adjustable beam-splitter enabling OCT-imaging before and immediately after the laser exposure." J&J Vision Plaintiff admits that Stephen Boppart *et al.*, *High-Resolution Optical Coherence Tomography-Guided Laser Ablation of Surgical Tissue*, 82 J. of Surgical Research 275–284 (1999) states: "We have demonstrated the use of high-speed, real-time OCT imaging for guiding the placement and monitoring the dynamic changes of surgical laser ablation in a variety of tissues." J&J Vision Plaintiff admits that European Patent Application No. EP 1231496 A2 was published on August 14, 2002. J&J Vision Plaintiff admits that U.S. Patent Publication No. 2005/0203422 A1 was published on September 15, 2005. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 33 and on that basis denies them.

34. J&J Vision Plaintiff admits that U.S. Patent No. 6,482,199 issued on November 19, 2002. J&J Vision Plaintiff admits that U.S. Patent No. 6,787,733 issued on September 7, 2004. J&J Vision Plaintiff lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 34 and on that basis denies them.

35. J&J Vision Plaintiff admits that Koray Budak *et al.*, *Limbal relaxing incisions with cataract surgery*, 24 J. Cataract Refract. Surg. 503 (1998) (the "Budak Reference") states: "An important goal in cataract surgery is to control and, in some patients, to reduce corneal astigmatism." J&J Vision Plaintiff admits that the Budak Reference states: "The treatment goal is choosing a surgical strategy that permits correction of the patient's total refractive error in one operation." J&J Vision Plaintiff admits that U.S. Patent Publication No. 2005/0241653 A1 (the "Van Heugten Reference") was published on November 3, 2005. J&J Vision Plaintiff admits that the Van Heugten Reference states:

> A process of introducing relaxing incisions into various locations of the eye, which causes the cornea to flatten out in predictable directions, is often used to eliminate astigmatism of the cornea. Such a procedure is often performed at the end of cataract surgery, for example, to eliminate an astigmatism that was induced by the main cataract incision, or that had previously existed.

J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 35 and on that basis denies them.

36. J&J Vision Plaintiff admits that U.S. Patent No. 5,549,632 (the "Lai Reference") issued on August 27, 1996. J&J Vision Plaintiff admits that the Lai Reference states: "In general, excisions in the cornea can be made at effective locations for performing radial keratotomies or making T-cuts, to correct myopia,

hyperopia, or astigmatism (regular or irregular)." J&J Vision Plaintiff admits that the Swinger Reference issued on December 4, 2001. J&J Vision Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 36 and on that basis denies them.

37. J&J Vision Plaintiff admits that the application for the '084 patent published on August 31, 2006. J&J Vision Plaintiff denies the remaining allegations of paragraph 37.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '084 PATENT

38. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

39. Admitted.

40. Admitted.

41. J&J Vision Plaintiff admits that claim 1 of the '084 patent recites:

A system for cataract surgery on an eye, comprising:

a. a pulsed laser configured to produce a treatment beam which creates dielectric breakdown in a focal zone of the treatment beam within one or more tissue structures of a cataractous crystalline lens;

b. a three-dimensional, optical coherence tomography imaging assembly capable of creating a continuous depth profile of the anterior portion of the cataractous crystalline lens, the profile comprising information regarding the location of a capsule of the cataractous crystalline lens and structures within the crystalline lens, by detecting remitted

illumination light from locations distributed throughout a volume of the cataractous crystalline lens, and generating signals based upon the remitted light;

c. an optical scanning system configured to position a focal zone of the treatment beam to a targeted location in three dimensions in the crystalline lens; and

d. one or more controllers operatively coupled to the laser, optical system, and imaging assembly, and programmed to automatically:

i. scan tissues of the patient's eye with the imaging assembly so as to generate image data signals to create a continuous depth profile of at least the anterior portion of the lens;

ii. identify one or more boundaries of the one or more tissue structures of the cataractous crystalline lens based at least in part on the image data;

iii. identify one or more treatment regions based upon the boundaries; and

iv. operate the optical scanning system with the pulsed laser to produce a treatment beam directed in a pattern based on the one or more treatment regions so as to create a capsulotomy in the anterior portion of the lens, the treatment beam having a pulse repetition rate between about 1 kHz and about 1,000 kHz, and a pulse energy between about 1 microjoule and about 30 microjoules.

J&J Vision Plaintiff denies the remaining allegations of paragraph 41.

42. Denied.

43. J&J Vision Plaintiff admits that claim 1 of the '084 patent recites a system with the claim limitations as stated in paragraph 41 of this Answer. J&J Vision Plaintiff denies the remaining allegations of paragraph 43.

44. J&J Vision Plaintiff admits that claim 1 of the ’084 patent recites a system with the claim limitations as stated in paragraph 41 of this Answer. J&J Vision Plaintiff admits that the ’084 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 44.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

**COUNT II**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’084 PATENT**

50. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

51. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’084 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 51.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Admitted.

58. Denied.

59. Denied.

## COUNT III
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '921 PATENT

60. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

61. Admitted.

62. Admitted.

63. J&J Vision Plaintiff admits that claim 1 of the '921 patent recites:

A system for cataract surgery on an eye of a patient, comprising:

> a laser assembly for generating a pulsed laser treatment beam that creates dielectric breakdown in a focal zone of the treatment beam within tissues of the patient's eye so as to effect a cataract surgery procedure;
>
> an optical coherence tomography (OCT) 3-Dimensional imaging system configured for imaging tissue of a cataractous crystalline lens of the patient;
>
> an optical scanning system configured for positioning the focal zone of the treatment beam to targeted locations of the crystalline lens; and

> a computer control system operatively coupled to the laser assembly, the imaging system, and the optical scanning system, and programmed to automatically:
>
> a) acquire image data from locations distributed throughout a volume of the cataractous crystalline lens using the imaging system;
>
> b) construct one or more images of the patient's eye tissues from the image data, comprising an image of at least a portion of the crystalline lens;
>
> c) construct an anterior capsulotomy cutting region based on the image data, the capsulotomy cutting region comprising an anterior cutting boundary axially spaced from a posterior cutting boundary so as to define an axially-elongated cutting zone transecting the anterior capsule; and
>
> d) operate the optical scanning system and laser assembly to direct a treatment beam in a pattern based on the anterior capsulotomy cutting region so as to create an anterior capsulotomy in the crystalline lens.

J&J Vision Plaintiff denies the remaining allegations of paragraph 63.

64. Denied.

65. J&J Vision Plaintiff admits that claim 1 of the '921 patent recites a system with the claim limitations as stated in paragraph 63 of this Answer. J&J Vision Plaintiff denies the remaining allegations of paragraph 65.

66. J&J Vision Plaintiff admits that claim 1 of the '921 patent recites a system with the claim limitations as stated in paragraph 63 of this Answer. J&J Vision Plaintiff admits that the '921 patent specification discloses as a

nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 66.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

**COUNT IV**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’921 PATENT**

72. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

73. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’921 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 73.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Admitted.

80. Denied.

81. Denied.

**COUNT V**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '497 PATENT**

82. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

83. Admitted.

84. Admitted.

85. J&J Vision Plaintiff admits that claim 1 of the '497 patent recites:

> A method of making an incision in eye tissue during a cataract surgical procedure, the method comprising:
>
> > operating an imaging system, coupled to an electronics control system comprising a computer, so as to acquire image data from locations distributed throughout a volume of a crystalline lens of a patient and construct one or more images of the patient's eye tissues from the image data, wherein the one or more images include an image of at least a portion of the crystalline lens;
> >
> > identifying, using the control system, a cutting region based on the image data, the cutting region being at least partially defined by an anterior cutting boundary and a posterior cutting boundary and including a portion of the crystalline lens;
> >
> > generating a beam of light using a pulsed laser system guided by the control system so as to scan the beam in a pattern within the cutting region and segment the crystalline lens into a plurality of pieces for subsequent removal, the segmentation of the crystalline lens including:
> >
> > > focusing the beam at a first focal point located at a first depth in the eye tissue;

> scanning the beam on the eye while focused at the first depth so as to create an incision pattern within the cutting region at the first depth;
>
> focusing the beam at a second focal point located at a second depth in the eye tissue different than the first depth; and
>
> scanning the beam on the eye while focused at the second depth so as to create an incision pattern within the cutting region at the second depth.

J&J Vision Plaintiff denies the remaining allegations of paragraph 85.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

**COUNT VI**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’497 PATENT**

91. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

92. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’497 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 92.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Admitted.

99. Denied.

100. Denied.

**COUNT VII**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’724 PATENT**

101. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

102. Admitted.

103. Admitted.

104. J&J Vision Plaintiff admits that claim 1 of the ’724 patent recites:

> A method for laser cataract surgery that protects the retina of the eye from laser exposure, comprising:
>
> a. generating, using a computer, an image of at least a portion of a crystalline lens of the eye based on detecting remitted light from locations distributed throughout a volume of the crystalline lens;
>
> b. processing data including the image data so as to determine a targeted treatment region in the lens of the eye, wherein the targeted treatment region comprises an axially-elongated cutting zone transecting the anterior capsule and does not transect the posterior capsule of the lens;

c. directing a laser beam, under computer guided control, in a first pattern to photodisrupt at least a portion of lens tissue of the eye to create a light scattering region; and

d. subsequently directing the laser beam, under computer guided control, in a second pattern in lens tissue anterior to the light scattering region so as to photodisrupt at least a portion of the targeted region, thereby effecting patterned laser cutting of lens tissue for subsequent removal of pieces or segments of lens tissue.

J&J Vision Plaintiff denies the remaining allegations of paragraph 104.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

**COUNT VIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’724 PATENT**

110. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

111. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’724 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 111.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Admitted.

118. Denied.

119. Denied.

## COUNT IX
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '001 PATENT

120. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

121. Admitted.

122. Admitted.

123. J&J Vision Plaintiff admits that claim 1 of the '001 patent recites:

> A method for cataract surgery on an eye of a patient using a pulsed laser surgical system, comprising:
>
> > operating an imaging system so as to acquire image data from locations distributed throughout a volume of a cataractous crystalline lens of the patient and construct one or more images of the patient's eye tissues from the image data, wherein the one or more images comprise an image of at least a portion of the crystalline lens;
> >
> > constructing, using a computer system, an anterior capsulotomy cutting region based on the image data, the capsulotomy cutting region comprising an anterior cutting boundary axially spaced from a posterior cutting boundary so as to define an axially-elongated cutting zone transecting the anterior capsule; and

> operating the surgical system to direct a pulsed laser treatment beam in a pattern based on the anterior capsulotomy cutting region so as to create an anterior capsulotomy in the crystalline lens.

J&J Vision Plaintiff denies the remaining allegations of paragraph 123.

124. Denied.

125. Denied.

126. Denied.

127. J&J Vision Plaintiff admits that Alcon Defendants do not infringe the ’001 patent under 35 U.S.C. § 271(f). Although claim 18 of the ’001 patent uses the word “system,” J&J Vision Plaintiff acknowledges this is a typo and has withdrawn its § 271(f) allegations for the ’001 patent. D.I. 28 at 15 n.6. J&J Vision Plaintiff denies the remaining allegations of paragraph 127.

128. Denied.

129. Denied.

## COUNT X
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’001 PATENT

130. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

131. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’001 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 131.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Admitted.

138. Denied.

139. Denied.

**COUNT XI**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’415 PATENT**

140. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

141. Admitted.

142. Admitted.

143. J&J Vision Plaintiff admits that claim 1 of the ’415 patent recites:

A method for incising ocular tissue during a cataract surgical procedure, the method comprising:

operating an imaging device to acquire image data of ocular tissue, the image data including lens interior image data for an interior portion of the lens of a patient’s eye;

processing the image data via a control system so as to generate an anterior capsulotomy scanning pattern for scanning a focal zone of a laser beam for performing an anterior capsulotomy, the imaging device being operatively coupled to the control system;

> generating the laser beam; and
>
> scanning the focal zone of the laser beam in the anterior capsulotomy scanning pattern so as to perform the anterior capsulotomy, wherein positioning of the focal zone is controlled by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 144.

144. Denied.

145. J&J Vision Plaintiff admits that claim 1 of the ’415 patent recites a method with the claim limitations as stated in paragraph 143 of this Answer. J&J Vision Plaintiff denies the remaining allegations of paragraph 145.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

**COUNT XII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’415 PATENT**

150. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

151. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’415 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 151.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Admitted.

157. Denied.

158. Denied.

## COUNT XIII
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '448 PATENT

159. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

160. Admitted.

161. Admitted.

162. J&J Vision Plaintiff admits that claim 1 of the '448 patent recites:

> A laser surgical system for making incisions in ocular tissue during a cataract surgical procedure, the system comprising:
>
> > a laser system comprising a scanning assembly, a laser operable to generate a laser beam configured to incise ocular tissue, and an imaging device; and
> >
> > a control system operably coupled to the laser system and configured to:
> >
> > > operate the imaging device to generate image data for ocular tissue of a patient's eye, the image data including lens interior image data for an interior portion of the lens of the patient's eye;

> process the image data to determine an anterior capsulotomy scanning pattern for scanning a focal zone of the laser beam for performing an anterior capsulotomy; and
>
> operate the laser and the scanning assembly to scan the focal zone of the laser beam in the anterior capsulotomy scanning pattern to perform the anterior capsulotomy,
>
>> wherein positioning of the focal zone is guided by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 162.

163. J&J Vision Plaintiff admits that claim 1 of the '448 patent recites a system with the claim limitations as stated in paragraph 162 of this Answer. J&J Vision Plaintiff admits that the '448 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 163.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

**COUNT XIV**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’448 PATENT**

169. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

170. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’448 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 170.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Admitted.

176. Denied.

177. Denied.

**COUNT XV**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’732 PATENT**

178. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

179. Admitted.

180. Admitted.

181. J&J Vision Plaintiff admits that claim 1 of the ’732 patent recites:

> A laser surgical system for making incisions in ocular tissue during a cataract surgical procedure, the system comprising:
>
> a laser operable to generate a laser beam for incising ocular tissue;
>
> a scanning assembly operable to direct a focal zone of the laser beam to locations within a patient's eye;
>
> an optical coherence tomography (OCT) imaging device; and
>
> a control system operably coupled to the laser, the scanning assembly, and the OCT imaging device; the control system being configured to:
>
> operate the OCT imaging device to generate image data for ocular tissue of the patient, the image data including lens interior image data for an interior portion of the lens of the patient's eye;
>
> process the image data to determine an anterior capsulotomy scanning pattern for scanning the focal zone of the laser beam for performing an anterior capsulotomy; and
>
> operate the laser and the scanning assembly to scan the focal zone of the laser beam in the anterior capsulotomy scanning pattern so as to perform the anterior capsulotomy, wherein positioning of the focal zone is guided by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 181.

182. J&J Vision Plaintiff admits that claim 1 of the '732 patent recites a system with the claim limitations as stated in paragraph 181 of this Answer. J&J Vision Plaintiff admits that the '732 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the

laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 182.

183. Denied.

184. Denied.

185. Denied.

186. Denied.

187. Denied.

## COUNT XVI
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '732 PATENT

188. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

189. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the '732 patent are invalid but denies that Alcon Defendants' allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 189.

190. Denied.

191. Denied.

192. Denied.

193. Denied.

194. Admitted.

195. Denied.

196. Denied.

**COUNT XVII**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’725 PATENT**

197. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

198. Admitted.

199. Admitted.

200. J&J Vision Plaintiff admits that claim 1 of the ’725 patent recites:

> A laser surgical system for making incisions in ocular tissues during a cataract surgical procedure, the system comprising:
>
> a laser system comprising a scanning assembly, a laser operable to generate a laser beam configured to incise ocular tissue;
>
> an imaging device configured to acquire point by point image data from locations distributed throughout a volume of a crystalline lens of the patient and construct one or more images of the patient’s eye tissues from the image data, wherein the one or more images comprise an image of at least a portion of the crystalline lens; and
>
> a control system operably coupled to the laser system and configured to:
>
> operate the imaging device to generate image data for patient’s crystalline lens;
>
> process the image data to identify a location for each of one or more targets in the lens of the patient;
>
> process the image data to determine a treatment scanning pattern for scanning a focal zone of the laser beam for performing one or more incisions in the lens capsule; and
>
> operate the laser and the scanning assembly to scan the focal zone of the laser beam in the treatment scanning

> pattern at each location of the one or more targets, wherein positioning of the focal zone is guided by the control system based on the location of the one or more targets so as to perform the one or more incision in the lens capsule.

J&J Vision Plaintiff denies the remaining allegations of paragraph 200.

201. Denied.

202. J&J Vision Plaintiff admits that claim 1 of the ’725 patent recites a system with the claim limitations as stated in paragraph 200 of this Answer. J&J Vision Plaintiff admits that the ’725 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 202.

203. Denied.

204. Denied.

205. Denied.

206. Denied.

207. Denied.

**COUNT XVIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’725 PATENT**

208. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

209. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’725 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 209.

210. Denied.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. Admitted.

216. Denied.

217. Denied.

**COUNT XIX**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’648 PATENT**

218. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

219. Admitted.

220. Admitted.

221. J&J Vision Plaintiff admits that claim 1 of the ’648 patent recites:

A laser surgical system for making incisions in ocular tissues during a cataract surgical procedure, the system comprising:

a laser system comprising a scanning assembly;

> a laser operable to generate a laser beam configured to incise ocular tissue;
>
> an imaging device configured to acquire image data of at least a portion of the lens; and
>
> a control system operably coupled to the laser system and configured to:
>
> > operate the imaging device to generate image data for the patient's crystalline lens;
> >
> > process the image data to determine an anterior capsule incision scanning pattern for scanning a focal zone of the laser beam for performing an anterior capsule incision; and
> >
> > operate the laser and the scanning assembly to scan the focal zone of the laser beam in the anterior capsule incision scanning pattern to perform the anterior capsule incision, wherein positioning of the focal zone is determined in part by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 221.

222. J&J Vision Plaintiff admits that claim 1 of the '648 patent recites a system with the claim limitations as stated in paragraph 222 of this Answer. J&J Vision Plaintiff admits that the '648 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 222.

223. Denied.

224. Denied.

225. Denied.

226. Denied.

227. Denied.

## COUNT XX
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '648 PATENT

228. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

229. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the '648 patent are invalid but denies that Alcon Defendants' allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 229.

230. Denied.

231. Denied.

232. Denied.

233. Denied.

234. Admitted.

235. Denied.

236. Denied.

## COUNT XXI
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '903 PATENT

237. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

238. Admitted.

239. Admitted.

240. J&J Vision Plaintiff admits that claim 1 of the ’903 patent recites:

A laser surgical system for making incisions in ocular tissues during a cataract surgical procedure, the system comprising:

> a laser system comprising a scanning assembly, a laser operable to generate a laser beam configured to incise ocular tissue;
>
> an imaging device configured to acquire image data from locations distributed throughout a volume of a crystalline lens of the patient and construct one or more images of the patient’s eye tissues from the image data, wherein the one or more images comprise an image of at least a portion of the crystalline lens; and
>
> a control system operably coupled to the laser system and configured to:
>
>> operate the imaging device to generate image data of a continuous depth profile of the volume of the patient’s crystalline lens;
>>
>> identify one or more boundaries of the one or more tissue structures of the crystalline lens based at least in part on the image data;
>>
>> process the image data to determine a lens fragmentation treatment region of the lens of the eye based at least in part upon the one or more boundaries, the lens fragmentation treatment region comprising a posterior cutting boundary located anterior to the posterior capsule of the lens;
>>
>> process the image data to determine a lens fragmentation scanning pattern for scanning a focal zone of the laser beam for performing lens fragmentation, the lens fragmentation pattern comprising a scanning pattern at a plurality of depths within the lens fragmentation treatment region; and

> operate the laser and the scanning assembly to scan the focal zone of the laser beam in the lens fragmentation scanning pattern consecutively at each of the plurality of depths within the lens fragmentation treatment region,
>
> wherein positioning of the focal zone is guided by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 240.

241. Denied.

242. J&J Vision Plaintiff admits that claim 1 of the ’903 patent recites a system with the claim limitations as stated in paragraph 240 of this Answer. J&J Vision Plaintiff admits that the ’903 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 242.

243. Denied.

244. Denied.

245. Denied.

246. Denied.

247. Denied.

## COUNT XXII
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’903 PATENT

248. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

249. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’903 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 249.

250. Denied.

251. Denied.

252. Denied.

253. Denied.

254. Denied.

255. Admitted.

256. Denied.

257. Denied.

## COUNT XXIII
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’904 PATENT

258. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

259. Admitted.

260. Admitted.

261. J&J Vision Plaintiff admits that claim 1 of the ’904 patent recites:

A laser surgical system for making incisions in ocular tissues during a cataract surgical procedure, the system comprising:

a laser system comprising a scanning assembly, a laser operable to generate a laser beam configured to incise ocular tissue;

an imaging device configured to acquire image data from locations distributed throughout a volume of a crystalline lens of the patient and construct one or more images of the patient's eye tissues from the image data, wherein the one or more images comprise an image of at least a portion of the crystalline lens; and

a control system operably coupled to the laser system and configured to:

> operate the imaging device to generate image data of a continuous depth profile of the volume of the patient's crystalline lens;
>
> identify one or more boundaries of crystalline lens based at least in part on the image data;
>
>> process the image data to determine a lens fragmentation scanning pattern for scanning a focal zone of the laser beam for performing lens fragmentation, the lens fragmentation scanning pattern comprising a planar pattern at a first depth and at one or more additional depths anterior to the first depth;
>>
>> process the image data to determine a lens fragmentation treatment region of the lens of the eye based at least in part upon the one or more boundaries;
>>
>> operate the laser and the scanning assembly to scan the focal zone of the laser beam within the lens fragmentation treatment region in the planar pattern at the first depth and to subsequently direct the focal zone of the laser beam at the one or more additional depths anterior to the first depth, thereby effecting patterned laser cutting of lens tissue,

> wherein positioning of the focal zone is guided by the control system based on the image data.

J&J Vision Plaintiff denies the remaining allegations of paragraph 261.

262. Denied.

263. J&J Vision Plaintiff admits that claim 1 of the ’904 patent recites a system with the claim limitations as stated in paragraph 262 of this Answer. J&J Vision Plaintiff admits that the ’904 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 263.

264. Denied.

265. Denied.

266. Denied.

267. Denied.

268. Denied.

## COUNT XXIV
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’904 PATENT

269. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

270. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’904 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 270.

271. Denied.

272. Denied.

273. Denied.

274. Denied.

275. Denied.

276. Admitted.

277. Denied.

278. Denied.

**COUNT XXV**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’023 PATENT**

279. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

280. Admitted.

281. Admitted.

282. J&J Vision Plaintiff admits that claim 1 of the ’023 patent recites:

A cataract surgery scanning system for treating target tissue in one or more of a cornea, limbus or sclera of a patient’s eye, comprising:

a treatment light source for generating a treatment light beam;

> a scanner for deflecting the light beam to form first and second treatment patterns of the treatment light beam under the control of a controller; and
>
> a delivery system comprising the controller operatively coupled to the treatment light source and the scanner, and programmed to: (i) deliver the first treatment pattern to a first target tissue selected from the group consisting of the cornea, limbus and sclera of the patient's eye to form a cataract incision therein that provides access to an eye chamber of the patient's eye, the incision to be formed by delivering the first treatment pattern only partially extending through the target tissue, and (ii) deliver the second treatment pattern to a second target tissue to form a relaxation incision along or near limbus tissue, or along corneal tissue-of the patient's eye.

J&J Vision Plaintiff denies the remaining allegations of paragraph 282.

283. J&J Vision Plaintiff admits that claim 1 of the '023 patent recites a system with the claim limitations as stated in paragraph 282 of this Answer. J&J Vision Plaintiff denies the remaining allegations of paragraph 284.

284. Denied.

285. Denied.

286. Denied.

287. Denied.

**COUNT XXVI**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '023 PATENT**

288. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

289. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’023 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 289.

290. Denied.

291. Denied.

292. Denied.

293. Denied.

294. Admitted.

295. Denied.

296. Denied.

**COUNT XXVII**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’024 PATENT**

297. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

298. Admitted.

299. Admitted.

300. J&J Vision Plaintiff admits that claim 1 of the ’024 patent recites:

> A cataract surgery method of treating target tissue in one or more of a cornea, limbus or sclera of a patient’s eye, comprising:
>
> generating a treatment light beam;
>
> deflecting the treatment light beam using a scanner to form first and second treatment patterns;

> delivering the first treatment pattern to a first target tissue selected from the group consisting of the cornea, limbus and sclera of the patient's eye to form a cataract incision that is sized to provide access to an eye chamber of the patient's eye for lens removal instrumentation; and
>
> delivering the second treatment pattern to a second target tissue to form a relaxation incision along or near limbus tissue or along corneal tissue anterior to the limbus tissue of the patient's eye to reduce astigmatism thereof,
>
> wherein the incision formed by delivering the first treatment pattern only partially extends through the target tissue.

J&J Vision Plaintiff denies the remaining allegations of paragraph 300.

301. J&J Vision Plaintiff admits that claim 1 of the '024 patent recites a method with the claim limitations as stated in paragraph 300 of this Answer. J&J Vision Plaintiff denies the remaining allegations of paragraph 301.

302. Denied.

303. Denied.

304. Denied.

**COUNT XXVIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '024 PATENT**

305. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

306. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the '024 patent are invalid but denies that Alcon Defendants' allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 306.

307. Denied.

308. Denied.

309. Denied.

310. Admitted.

311. Denied.

312. Denied.

## COUNT XXIX
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’356 PATENT

313. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

314. Admitted.

315. Admitted.

316. J&J Vision Plaintiff admits that claim 1 of the ’356 patent recites:

> An optical beam scanning system for incising target tissue in a patient’s eye, the optical beam scanning system comprising:
>
> > a laser source configured to deliver a laser beam comprising a plurality of laser pulses, the laser beam being configured to produce optical breakdown and initiate a plasma-mediated process within the target tissue at a focal spot of the laser beam;
> >
> > an Optical Coherence Tomography (OCT) imaging device configured to generate signals that can be used to create an image of eye tissue that includes the cornea of the patient’s eye;
> >
> > a delivery system for delivering the laser beam to the target tissue to form a cataract incision;

> a scanner operable to scan the focal spot of the laser beam to different locations within the patient's eye; and
>
> a controller operatively coupled to the laser source, the OCT imaging device and the scanner, the optical beam scanning, the controller programmed to:
>
> scan the eye tissue with the OCT device to generate imaging data for the target tissue that includes imaging data for the cornea;
>
> generate an incision pattern based at least in part on the imaging data, the incision pattern forming one or more relaxation incisions into the cornea, wherein each of the relaxation incision extends in an angular direction for a predetermined length less than a full circle, and wherein at least one of the one or more relaxation incisions is a partially penetrating incision that leaves an un-incised tissue thickness; and
>
> scan the focal spot of the laser beam in the incision pattern, wherein the focal spot of the laser beam is guided based on the imaging data so that the focal spot of the laser beam is scanned from a posterior portion of the eye and proceeding anteriorly.

J&J Vision Plaintiff denies the remaining allegations of paragraph 316.

317. J&J Vision Plaintiff admits that claim 1 of the '356 patent recites a system with the claim limitations as stated in paragraph 316 of this Answer. J&J Vision Plaintiff admits that the '356 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 317.

318. Denied.

319. Denied.

320. Denied.

321. Denied.

**COUNT XXX**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’356 PATENT**

322. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

323. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the ’356 patent are invalid but denies that Alcon Defendants’ allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 323.

324. Denied.

325. Denied.

326. Denied.

327. Denied.

328. Admitted.

329. Denied.

330. Denied.

**COUNT XXXI**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’548 PATENT**

331. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

332. Admitted.

333. Admitted.

334. J&J Vision Plaintiff admits that claim 1 of the '548 patent recites:

A scanning system for treating target tissue in a patient's eye, comprising:

a) an ultrafast laser source configured to deliver a laser beam comprising a plurality of laser pulses;

b) an Optical Coherence Tomography (OCT) device configured to generate signals which may be used to create an image of the cornea and limbus of the eye of the patient;

c) a scanner configured to focus and direct the laser beam in a pattern within the cornea or limbus to create incisions therein; and

d) a controller operatively coupled to the laser source and scanner programmed to determine a treatment pattern based upon the signals from the OCT device, the treatment pattern forming a cataract incision in the cornea that provides access for lens removal instrumentation to a crystalline lens of the patient's eye and one or more relaxation incisions in the cornea or limbus, wherein the cataract incision has an arcuate extent of less than 360 degrees in a top view, wherein the cataract incision includes a bevel shape in a cross-sectional view, the bevel shape including a first segment and a second segment which intersect each other at an angle, the cataract incision being entirely located in the cornea and intersecting both an anterior surface and a posterior surface of the cornea, and to control the scanner to scan the position of the laser beam in the treatment pattern.

J&J Vision Plaintiff denies the remaining allegations of paragraph 334.

335. J&J Vision Plaintiff admits that claim 1 of the '548 patent recites a system with the claim limitations as stated in paragraph 334 of this Answer. J&J

Vision Plaintiff admits that the '548 patent specification discloses as a nonlimiting embodiment an optical scanning system that has components shared between the laser and OCT. J&J Vision Plaintiff denies the remaining allegations of paragraph 335.

336. Denied.

337. Denied.

338. Denied.

339. Denied.

**COUNT XXXII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '548 PATENT**

340. J&J Vision Plaintiff incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

341. J&J Vision Plaintiff admits that Alcon Defendants allege that the claims of the '548 patent are invalid but denies that Alcon Defendants' allegations have any merit. J&J Vision Plaintiff denies the remaining allegations of paragraph 341.

342. Denied.

343. Denied.

344. Denied.

345. Denied.

346. Admitted.

347. Denied.

348. Denied.

## ALCON'S PATENT COUNTERCLAIMS

349. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 349 and on that basis denies them.

350. Upon information and belief, admitted.

351. Upon information and belief, admitted.

352. Admitted.

353. Admitted.

354. Admitted.

355. Admitted.

356. Paragraph 356 states a legal conclusion to which no response is required.

357. J&J Vision admits that AMO Development, AMO Manufacturing, and AMO Sales and Service are subject to personal jurisdiction by virtue of filing their Complaint. J&J Vision admits that AMO Development, AMO Manufacturing, and AMO Sales and Service are entities organized under the laws of the State of Delaware. J&J Vision denies the remaining allegations of paragraph 357.

358. J&J Vision admits that AMO Manufacturing makes and supplies the Catalys® Precision Laser System and certain associated consumables, and that AMO Sales and Service sells and offers to sell the Catalys® Precision Laser System and

certain associated consumables in the United States. J&J Vision denies the remaining allegations of paragraph 358.

359. J&J Vision admits that AMO Development is involved in research and development for the Catalys® Precision Laser System. J&J Vision admits that AMO Manufacturing manufactures the Catalys® Precision Laser System in the United States for sale domestically and internationally. J&J Vision admits that AMO Sales and Service is a distributor for the Catalys® Precision Laser System in the United States and is responsible for repair and maintenance of certain Catalys® Precision Laser Systems in the United States. J&J Vision admits that Johnson & Johnson Surgical Vision, Inc. is listed on the FDA's website as the owner/operator of AMO Manufacturing. J&J Vision denies the remaining allegations of paragraph 359.

360. Denied.

361. Admitted.

362. J&J Vision admits that a cataract results from clouding of the crystalline lens of the eye. J&J Vision admits that left untreated, cataracts can impair vision and ultimately result in blindness. J&J Vision admits that the World Health Organization, "Priority eye diseases," available at https://www.who.int/blindness/causes/priority/en/index1.html, states: "According to the latest assessment, cataract is responsible for 51% of world blindness, which represents about 20 million people (2010)." J&J Vision lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph 362 and on that basis denies them.

363. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 363 and on that basis denies them.

364. J&J Vision admits that to restore vision in cataract patients, the diseased lens can be removed and replaced by an artificial intraocular lens. J&J Vision admits that the crystalline lens lies beneath the cornea and is contained within the lens capsule. J&J Vision admits that during manual cataract surgery, the surgeon performs a capsulorhexis, in which a portion of the anterior capsule surrounding the lens is removed, and the surgeon then uses phacoemulsification to break up the diseased lens into smaller pieces so that it can be removed. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 364 and on that basis denies them.

365. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 365 and on that basis denies them.

366. J&J Vision admits that manual cataract surgery involves several challenging steps that require great expertise by the surgeon. J&J Vision admits that a laser can be used to make precise incisions in the cornea, as well as to fragment the lens. J&J Vision admits that laser lens fragmentation can reduce the amount of time and effort required to remove a cataractous lens. J&J Vision lacks knowledge

or information sufficient to form a belief about the truth of the remaining allegations of paragraph 366 and on that basis denies them.

367. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 367 and on that basis denies them.

368. J&J Vision admits that IntraLase Corporation ("IntraLase") was co-founded by Dr. Ron Kurtz and Dr. Tibor Juhasz. J&J Vision admits that IntraLase created and sold computer-controlled ophthalmic lasers for use in LASIK surgery. J&J Vision admits that Advanced Medical Optics, Inc., a predecessor to J&J Vision, acquired IntraLase in 2007. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 368 and on that basis denies them.

369. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 369 and on that basis denies them.

370. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 370 and on that basis denies them.

371. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 371 and on that basis denies them.

372. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 372 and on that basis denies them.

373. J&J Vision admits that Stephen G. Slade, "The LenSx Laser: How the LenSx laser, and laser refractive cataract surgery, impacts the ophthalmic practice," Innovations in Ophthalmology 2011, http://bmctoday.net/innovations2011/digital_supplement/article.asp?f=inno-2011-lensx, states: "The LenSx femtosecond laser not only offers benefits for patients, but it is likely to grow the practice as well," but J&J Vision notes that the article states that the author "serves as the medical director for LenSx Lasers Inc." J&J Vision admits that a press release titled "Alcon to Acquire LenSx Lasers, Inc., Developer of Femtosecond Laser Technology for Increased Precision of Manual Surgical Steps during Cataract Surgery," https://www.businesswire.com/news/home/20100706006475/en/Alcon-Acquire-LenSx-Lasers-Developer-Femtosecond-Laser (July 6, 2010), further quotes Stephen Slade, who according to the article "performed the initial series of LenSx laser procedures in the United States" as stating: "From a patient's perspective, I have never seen the potential benefits of a technology so quickly understood and accepted." J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 373 and on that basis denies them.

374. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 374 and on that basis denies them.

375. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 375 and on that basis denies them.

376. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 376 and on that basis denies them.

377. J&J Vision admits that the LenSx competes against J&J Vision's Catalys® Precision Laser System. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 377 and on that basis denies them.

378. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 378 and on that basis denies them.

379. Denied.

380. J&J Vision admits that the Catalys® Precision Laser System was originally developed by OptiMedica. J&J Vision admits that the Catalys® Precision Laser System was launched in the U.S. in or about early 2012. J&J Vision admits that the LenSx competes against J&J Vision's Catalys® Precision Laser System. J&J Vision admits that it manufactures and sells the Catalys® Precision Laser System. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 380 and on that basis denies them.

381. J&J Vision admits that the Catalys® Precision Laser System combines a femtosecond laser and integrated Optical Coherence Tomography (OCT) imaging

to perform laser cataract surgery. J&J Vision admits that the Catalys® Precision Laser System detects lens tilt and adjusts the safety zones to maximize lens fragmentation volume. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 381 and on that basis denies them.

382. J&J Vision admits that a Catalys® Precision Laser System brochure states: "BACK YOUR OUTCOMES with guided delivery that accounts for lens tilt, eye movement and unique ocular structures." J&J Vision admits that a Catalys® Precision Laser System brochure states: "The CATALYS® System detects lens tilt and adjusts the safety zone accordingly." J&J Vision admits that a Catalys® Precision Laser System brochure states: "If lens tilt is not detected, the volume of lens fragmentation is not optimized." J&J Vision admits that the Catalys® Precision Laser System 2019 Operator Manual states that certain "measurements are taken along a vector orthogonal to the tilt of the lens," including central cornea thickness, lens thickness, and others. J&J Vision admits that the Catalys® Precision Laser System 2019 Operator Manual states that the "Scanned Capsule" Center Method option "uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision denies the remaining allegations of paragraph 382.

383. J&J Vision admits that laser lens fragmentation reduces the amount of potentially damaging ultrasonic energy needed for phacoemulsification. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 383 and on that basis denies them.

384. J&J Vision admits that the LenSx directly competes against J&J Vision's Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 384.

385. J&J Vision admits that Abbott Medical Optics, Inc. is the predecessor of Johnson & Johnson Surgical Vision, Inc. J&J Vision denies the remaining allegations of paragraph 385.

386. Admitted.

387. J&J Vision admits that AMO Development is involved in research and development for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 387.

388. J&J Vision admits that AMO Manufacturing manufactures the Catalys® Precision Laser System and certain associated consumables in the United States and supplies the product for sale abroad. J&J Vision denies the remaining allegations of paragraph 388.

389. J&J Vision admits that Johnson & Johnson Surgical Vision, Inc. is listed on the FDA's website as the owner/operator of AMO Manufacturing. J&J Vision denies the remaining allegations of paragraph 389.

390. J&J Vision admits that AMO Sales and Service offers to sell and sells the Catalys® Precision Laser System and certain associated consumables in the United States and is responsible for repair and maintenance of certain Catalys® Precision Laser Systems in the United States. J&J Vision denies the remaining allegations of paragraph 390.

391. Denied.

392. J&J Vision admits that Alcon identified certain patents Alcon alleged to be infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020. Alcon's Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit 1, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 1 is an accurate copy of Alcon's May 11, 2020 letter and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 392.

393. J&J Vision admits that Alcon provided what it purported to be claim charts for claim 35 of U.S. Patent No. 8,398,236 ("the '236 patent"), claim 7 of U.S. Patent No. 9,849,036 ("the '036 patent"), claim 1 of U.S. Patent No. 9,622,913 ("the '913 patent"), claim 1 of U.S. Patent No. 9,427,356 ("the Alcon '356 patent"), and

claim 1 of U.S. Patent No. 9,456,925 ("the '925 patent") on May 22, 2020. J&J Vision denies the remaining allegations of paragraph 393.

**COUNT XXXIII**
**INFRINGEMENT OF THE '236 PATENT**

394. J&J Vision incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

395. J&J Vision admits that the '236 patent is entitled "Image-Guided Docking For Ophthalmic Surgical Systems," was issued on March 19, 2013, and identifies Adam Juhasz and Kostadin Vardin as named inventors. Alcon's Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit 2, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 2 is an accurate copy of the '236 patent and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 395.

396. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 396 and on that basis denies them.

397. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 397 and on that basis denies them.

398. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 398 and on that basis denies them.

399. Denied.

400. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 400 and on that basis denies them.

401. Admitted.

402. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System uses an Optical Coherence Tomography (OCT) subsystem to create a three-dimensional model of the anterior portion of the eye to guide the laser treatment," and "[t]he system provides for identification of the anterior/posterior surfaces of both the cornea and the lens (INTEGRAL GUIDANCE System imaging)." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states: "After verifying that the video image of the patient's eye is sharp and clear, press the FLUID CONFIRMED button to initiate INTEGRAL GUIDANCE System imaging. A check mark will appear next to the Verify Fluid panel after pressing the FLUID CONFIRMED. The force indicators will also change from only showing a red band to showing yellow, orange, and red bands, indicating different severity levels of forces being exerted by the patient on the disposable lens." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states: "After capturing and locking the suction ring; verifying that the video image of the eye is sharp and clear; and pressing the FLUID CONFIRMED button on the final Docking Screen, the Surface Mapping Review Screen displays, and INTEGRAL

GUIDANCE System imaging begins automatically. The initial Surface Mapping Review Screen displays axial and sagittal cross-section images of the corneal surfaces." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System instructs that one of the steps involved in "Starting and Verifying INTEGRAL GUIDANCE System Imaging" is: "Press the FLUID CONFIRMED button on the final Docking Screen to start INTEGRAL GUIDANCE System imaging," and another step is: "After INTEGRAL GUIDANCE System imaging is complete, view the INTEGRAL GUIDANCE System data on the Surface Mapping Review Screen, and inspect the surface fits and overlaid incision patterns to ensure accuracy." J&J Vision denies the remaining allegations of paragraph 402.

403. Denied.

404. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System uses an Optical Coherence Tomography (OCT) subsystem to create a three-dimensional model of the anterior portion of the eye to guide the laser treatment," and "[t]he system provides for identification of the anterior/posterior surfaces of both the cornea and the lens (INTEGRAL GUIDANCE System imaging)." J&J Vision admits that U.S. Patent No. 10,463,539 ("the '539 patent") states: "[t]he ranging subsystem 46 is configured to measure the spatial disposition of eye structures in three dimensions," "[i]n many embodiments, the ranging subsystem 46 utilizes optical coherence

tomography (OCT) imaging," and "[i]n the embodiment of FIG. 3, the ranging subsystem 46 includes an OCT imaging device." J&J Vision admits that the '539 patent states: "[a]n OCT scan of the eye can be used to measure the spatial disposition (e.g., three dimensional coordinates such as X, Y, and Z of points on boundaries) of structures of interest in the patient's eye 43," and "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 controls the operation of and can receive input from the cutting laser subsystem 44, the ranging subsystem 46, the alignment guidance subsystem 48, the patient interface 52, the control panel/GUI 56, and the user interface devices 58 via the communication paths 60," and "[t]he control electronics 54 can include any suitable components, such as one or more processor, one or more field-programmable gate array (FPGA), and one or more memory storage devices." J&J Vision admits that the '539 patent states: "[a]s an example, such processors include dedicated circuitry, ASICs, combinatorial logic, other programmable processors,

combinations thereof, and the like," and "[o]ne or more of the steps of the method 400 may be performed with the circuitry as described herein, for example one or more of the processor or logic circuitry such as the programmable array logic for field programmable gate array." J&J Vision denies the remaining allegations of paragraph 404.

405. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System consists of three integrated optical subsystems, each controlled and monitored by dedicated electronics," and "[t]he system is controlled by a dedicated field programmable gate array (FPGA) and is accessed via the host computer." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 can include any suitable components, such as one or more processor, one or more field-programmable gate array (FPGA), and one or more memory storage devices," "[a] computer readable medium 57 (also referred to as a database or a memory) is coupled to the processor 55 in order to store data used by the processor and other system elements," and "[t]he memory 57 can be local or distributed as appropriate to the particular application. Memory 57 may include a number of memories including a main random access memory (RAM) for storage

of instructions and data during program execution and a read only memory (ROM) in which fixed instructions are stored." J&J Vision denies the remaining allegations of paragraph 405.

406. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System consists of three integrated optical subsystems, each controlled and monitored by dedicated electronics," and "[t]he system is controlled by a dedicated field programmable gate array (FPGA) and is accessed via the host computer." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 controls the operation of and can receive input from the cutting laser subsystem 44, the ranging subsystem 46, the alignment guidance subsystem 48, the patient interface 52, the control panel/GUI 56, and the user interface devices 58 via the communication paths 60," and "[t]he control electronics 54 can include any suitable components, such as one or more processor, one or more field-programmable gate array (FPGA), and one or more memory storage devices." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 may comprise a processor/controller 55 (referred to herein as a processor) that is used to perform calculations related to system operation and provide control signals to the various system elements." J&J Vision admits that the '539 patent states: "[a]s an example, such processors include dedicated circuitry, ASICs, combinatorial logic, other programmable processors, combinations thereof,

and the like." J&J Vision admits that the '539 patent states: "[t]he memory 57 can be local or distributed as appropriate to the particular application. Memory 57 may include a number of memories including a main random access memory (RAM) for storage of instructions and data during program execution and a read only memory (ROM) in which fixed instructions are stored." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 controls the operation of and can receive input from the cutting laser subsystem 44, the ranging subsystem 46, the alignment guidance subsystem 48, the patient interface 52, the control panel/GUI 56, and the user interface devices 58 via the communication paths 60," and "[t]he communication paths 60 can be implemented in any suitable configuration, including any suitable shared or dedicated communication paths between the control electronics 54 and the respective system components." J&J Vision denies the remaining allegations of paragraph 406.

407. J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision admits

that Figure 2 of the ’539 patent “shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments,” and Figure 3 of the ’539 patent shows “a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments” which includes a “Z-Tscope” 84. J&J Vision admits that the ’539 patent states: “[a]n OCT scan of the eye can be used to measure the spatial disposition (e.g., three dimensional coordinates such as X, Y, and Z of points on boundaries) of structures of interest in the patient’s eye 43.” J&J Vision admits that the ’539 patent states: “The OCT source beam emitted from the OCT light source and detection device 98 is passed through a pickoff/combiner assembly 100, which divides the OCT source beam into a sample beam 102 and a reference portion 104. A significant portion of the sample beam 102 is transmitted through the shared optics 50.” J&J Vision admits that the ’539 patent states: “[s]imilar to the UF laser beam, the OCT sample beam 102 passes through the Z-telescope 84, is redirected by the X-scan device 86 and by the Y-scan device 88, passes through the objective lens assembly 94 and the patient interface 52, and on into the eye 43.” J&J Vision admits that the ’539 patent states: “[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism,” and “[t]he Z-scan

mechanism can be used to vary the depth of the focal point within the eye 43." J&J Vision admits that the '539 patent states: "[t]he Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device." J&J Vision admits that the '539 patent states: "[t]he generated OCT signals that are in turn interpreted by the control electronics to determine the spatial disposition of the structures of interest in the patient's eye 43." J&J Vision denies the remaining allegations of paragraph 407.

408. J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with

many embodiments," and Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments" which includes a "Z-Tscope" 84. J&J Vision admits that the '539 patent states: "[a]n OCT scan of the eye can be used to measure the spatial disposition (e.g., three dimensional coordinates such as X, Y, and Z of points on boundaries) of structures of interest in the patient's eye 43." J&J Vision admits that the '539 patent states: "[t]he ranging subsystem 46 in FIG. 3 includes an OCT light source and detection device 98. The OCT light source and detection device 98 includes a light source that generates and emits an OCT source beam with a suitable broad spectrum." J&J Vision admits that the '539 patent states: "The OCT source beam emitted from the OCT light source and detection device 98 is passed through a pickoff/combiner assembly 100, which divides the OCT source beam into a sample beam 102 and a reference portion 104. A significant portion of the sample beam 102 is transmitted through the shared optics 50." J&J Vision admits that the '539 patent states: "[s]imilar to the UF laser beam, the OCT sample beam 102 passes through the Z-telescope 84, is redirected by the X-scan device 86 and by the Y-scan device 88, passes through the objective lens assembly 94 and the patient interface 52, and on into the eye 43." J&J Vision admits that the '539 patent states: "[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the

shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism," and "[t]he Z-scan mechanism can be used to vary the depth of the focal point within the eye 43." J&J Vision admits that the '539 patent states: "[t]he Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device." J&J Vision admits that the '539 patent states: "[t]he generated OCT signals that are in turn interpreted by the control electronics to determine the spatial disposition of the structures of interest in the patient's eye 43." J&J Vision denies the remaining allegations of paragraph 408.

409. Denied.

410. Denied.

411. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]o protect operating personnel and patients, this manual should be read thoroughly and understood before operation," but denies that such quotation is evidence of inducing infringement. J&J Vision admits that Alcon

identified the '236 patent as allegedly infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020, but J&J Vision denies that the May 11, 2020 letter or any other correspondence provided evidence of infringement or induced infringement. J&J Vision denies the remaining allegations of paragraph 411.

412. J&J Vision admits that a Catalys® Precision Laser System brochure states: "INDICATIONS: The OptiMedica® CATALYS® Precision Laser System is indicated for use in patients undergoing cataract surgery for removal of the crystalline lens. Intended uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single-plane and multi-plane arc cuts/incisions in the cornea, each of which may be performed either individually or consecutively during the same procedure." J&J Vision denies the remaining allegations of paragraph 412.

413. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 413 and on that basis denies them.

414. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 414 and on that basis denies them.

415. Denied.

416. Denied.

417. Denied.

418. Denied.

**COUNT XXXIV**
**INFRINGEMENT OF THE '036 PATENT**

419. J&J Vision incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

420. J&J Vision admits that the '036 patent is entitled "Imaging-Controlled Laser Surgical System," was issued on December 26, 2017, and identifies Gautam Chaudhary, Peter Goldstein, Imre Hegedus, Carlos German Suarez, David Calligori, and Michael Karavitis as named inventors. Alcon's Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit 3, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 3 is an accurate copy of the '036 patent and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 420.

421. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 421 and on that basis denies them.

422. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 422 and on that basis denies them.

423. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 423 and on that basis denies them.

424. Denied.

425. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 425 and on that basis denies them.

426. Admitted.

427. Denied.

428. J&J Vision admits that the ’539 patent states: “[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these.” J&J Vision admits that the ’539 patent states: “[i]n addition, the aiming pattern (using the aim beam 108 described below) need not be identical to the treatment pattern (using the laser pulse beam 66), but can optionally be used to designate the boundaries of the treatment pattern to provide verification that the laser pulse beam 66 will be delivered only within the desired target area for patient safety.” J&J Vision admits that the ’539 patent states: “[t]he positioning and character of the laser pulse beam 66 and/or the scan pattern the laser pulse beam 66 forms on the eye 43 may be further controlled by use of an input device such as a joystick, or any other appropriate user input device (e.g., control panel/GUI 56) to position the patient and/or the optical system.” J&J Vision admits that the ’539 patent states: “[a]dditionally the ranging subsystem such as an OCT can be used to detect features or aspects involved with the patient interface. Features can include fiducials placed on the docking structures and optical structures of the disposable lens such as the location of the anterior and posterior

surfaces." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System uses an Optical Coherence Tomography (OCT) subsystem to create a three-dimensional model of the anterior portion of the eye to guide the laser treatment. The OCT system employs an 820–930 nm spectral domain OCT to create three-dimensional images of anterior ocular structures." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he system's INTEGRAL GUIDANCE System also detects the lens capsule, iris border, and limbus border, providing targeted centration for the capsulotomy." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that

a 2019 Operator Manual for the Catalys® Precision Laser System states, "[i]mportantly, the system-integrated INTEGRAL GUIDANCE System processing ensures that adequate safety margins with respect to iris, lens capsule, and cornea are maintained regardless of eye morphology, orientation, or tilt, thus assuring safe delivery of the treatment laser pulses." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that certain "measurements are taken along a vector orthogonal to the tilt of the lens." J&J Vision admits that the '539 patent states: "[t]he ranging subsystem 46 is configured to measure the spatial disposition of eye structures in three dimensions," and "[o]ptical imaging can be used to provide information about the axial location and shape (and even thickness) of the anterior and posterior lens capsule, the boundaries of the cataract nucleus, as well as the depth of the anterior chamber and features of the cornea. This information may then be loaded into the laser 3-D scanning system or used to generate a three dimensional model/representation/image of the cornea, anterior chamber, and lens of the eye, and used to define the cutting patterns used in the surgical procedure." J&J Vision admits that the images on pages 239 and 240 of D.I. 145 display portions of a Catalys® Precision Laser System brochure. J&J Vision denies the remaining allegations of paragraph 428.

429. J&J Vision admits that Walter Bethke, "A Catalys for Change in Cataract Surgery," Review of Ophthalmology (Oct. 4, 2012),

https://www.reviewofophthalmology.com/article/a-catalys-for-change-in-cataract-surgery, quotes Robert Rivera, MD, a Catalys user from Salt Lake City, as follows: "You get an axial and sagittal view of the structures so, in the case of lens tilt, the laser automatically adjusts for the tilt and tilts the anterior capsulotomy treatment. It also automatically creates a 500-µm safe zone to keep the treatment away from the posterior capsule." J&J Vision admits that Walter Bethke, "Get to Your Femtosecond Options," Review of Ophthalmology (Jul. 6, 2015), https://www.reviewofophthalmology.com/article/get-to-know-your--femtosecond-options, states, "'[the Catalys® Precision Laser System] does a great job figuring out the tilt and position of the lens,' Dr. Koch avers. It will adjust the photodisruption pattern based on any tilt, helping to avoid complications from disrupting the wrong structures." J&J Vision denies the remaining allegations of paragraph 429.

430. J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision denies the remaining allegations of paragraph 432.

431. J&J Vision admits that the images on page 243 of D.I. 145 display two different figures from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 431.

432. J&J Vision admits that Daniel V. Palanker *et al.*, "Femtosecond Laser-Assisted Cataract Surgery with Integrated Optical Coherence Tomography," 2 Sci. Translational Med. 58 (Nov. 17, 2010) (the "Palanker Reference") states that Figure 3(A) in the reference shows "OCT image of the eye with outlined boundaries of the cornea (1 and 2) and lens capsule (3 and 4). The capsulotomy pattern (5) and lens segmentation (6) are shown in solid red," and Figure 3(B) in the reference shows "View of the eye via the near-infrared video camera, with overlaid guidance lines indicating a planned capsulotomy pattern (1) and a boundary of the pupil (2)." J&J Vision admits that the images in paragraph 432 on page 244 of D.I. 145 display Figures 3(A) and 3(B) from the Palanker Reference. J&J Vision denies the remaining allegations of paragraph 432.

433. Admitted.

434. Admitted.

435. J&J Vision admits that the '539 patent states: "[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism," and "[t]he Z-scan mechanism can be

used to vary the depth of the focal point within the eye 43." J&J Vision admits that the '539 patent states: "[u]sing the assembly 62, optical beams can be scanned in the patient's eye 43 in three dimensions: X, Y, Z. For example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments" which includes a "Z-Tscope" 84. J&J Vision admits that the '539 patent states: "Following the beam combiner 82, the laser pulse beam 66 continues through a Z-telescope 84, which is operable to scan focus position of the laser pulse beam 66 in the patient's eye 43 along the Z axis," and "One of the lens groups moves along the Z axis about the collimation position of the Z-telescope 84. In this way, the focus position of the spot in the patient's eye 43 moves along the Z axis." J&J Vision admits that the '539 patent states: "The motion can be nonlinear and directed via a model or a calibration from measurement or a combination of both," and "The Z-telescope 84 functions as z-scan device for scanning the focus point of the laser-pulse beam 66 in the patient's eye 43. The Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next."

J&J Vision admits that the ’539 patent states: “[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the X actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam,” and “[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the Y actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam.” J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the “Capsulotomy (Basic) Screen,” “Circular is the only pattern option” for the “Pattern” parameter, and one of the options for the “Center Method” parameter is “Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy.” J&J Vision denies the remaining allegations of paragraph 435.

436. Denied.

437. Denied.

438. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]o protect operating personnel and patients, this manual should be read thoroughly and understood before operation," but denies that such quotation is evidence of inducing infringement. J&J Vision denies the remaining allegations of paragraph 438.

439. J&J Vision admits that Alcon identified the '036 patent as allegedly infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020, but J&J Vision denies that the May 11, 2020 letter or any other correspondence provided evidence of infringement or induced infringement. J&J Vision denies the remaining allegations of paragraph 439.

440. J&J Vision admits that a Catalys® Precision Laser System brochure states: "INDICATIONS: The OptiMedica® CATALYS® Precision Laser System is indicated for use in patients undergoing cataract surgery for removal of the crystalline lens. Intended uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single-plane and multi-plane arc cuts/incisions in the cornea, each of which may be performed either individually or consecutively during the same procedure." J&J Vision denies the remaining allegations of paragraph 440.

441. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 441 and on that basis denies them.

442. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 442 and on that basis denies them.

443. Denied.

444. Denied.

445. Denied.

446. Denied.

**COUNT XXXV**
**INFRINGEMENT OF THE ’913 PATENT**

447. J&J Vision incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

448. J&J Vision admits that the ’913 patent is entitled “Imaging-Controlled Laser Surgical System,” was issued on April 18, 2017, and identifies Gautam Chaudhary, Peter Goldstein, Imre Hegedus, Carlos German Suarez, David Calligori, and Michael Karavitis as named inventors. Alcon’s Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit 4, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 4 is an accurate copy of the ’913 patent and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 448.

449. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 449 and on that basis denies them.

450. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 450 and on that basis denies them.

451. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 451 and on that basis denies them.

452. Denied.

453. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 453 and on that basis denies them.

454. Admitted.

455. Denied.

456. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he OPTIMEDICA CATALYS® Precision Laser System is an integrated scanning laser system that is used by cataract surgeons to create a precise anterior capsulotomy and/or subsequent fragmentation (phacofragmentation) of the crystalline lens, with or without single plane and multi-plane arc cuts/incisions in the cornea. Treatment is accomplished through the use of ultrafast ($\tau \sim 10^{-13}$s, or hundreds of femtoseconds [FS]) infrared laser pulses." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the

crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments," and Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments." J&J Vision denies the remaining allegations of paragraph 456.

457. J&J Vision admits that Figure 3 of the '539 patent shows a "CUTTING LASER 44." J&J Vision denies the remaining allegations of paragraph 457.

458. J&J Vision admits that the '539 patent states: "[i]n many embodiments, the cutting laser subsystem 44 incorporates femtosecond (FS) laser technology," and "[a]s a non-limiting example, the system 2 can be configured to use a cutting laser subsystem 44 that produces laser pulses having a wavelength from 1020 nm to 1050 nm." J&J Vision admits that the '539 patent states: "[t]he cutting laser subsystem 44 includes an ultrafast (UF) laser 64 (e.g., a femtosecond laser)," and "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the

focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System is classified as a CDRH Class 4 stand-alone laser device, because of intentional laser exposure to the patient's eye. The treatment laser is a diode-pumped solid-state configuration with a 1030 (±5) nm center wavelength incorporating femtosecond (FS) laser technology," and "[t]reatment is accomplished through the use of ultrafast ($\tau \sim 10^{-13}$s, or hundreds of femtoseconds [FS]) infrared laser pulses." J&J Vision admits that the image of a table in paragraph 458 on page 254 of D.I. 145 displays part of the system specifications listed in a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the '539 patent states: "[t]he cutting laser subsystem 44 is controlled by the control electronics 54 and the user, via the control panel/GUI 56 and the user interface devices 58, to create a laser pulse beam 66." J&J Vision denies the remaining allegations of paragraph 458.

459. J&J Vision admits that Figure 3 of the '539 patent shows an "Attenuator 70." J&J Vision admits that the '539 patent states: "[t]he cutting laser subsystem 44 can include control and conditioning components. For example, such control components can include components such as a beam attenuator to control the energy of the laser pulse and the average power of the pulse train," and "[t]he attenuator 70 is used to adjust the transmission of the laser beam and thereby the energy level of

the laser pulses in the laser pulse beam 66." J&J Vision denies the remaining allegations of paragraph 459.

460. J&J Vision admits that the '539 patent states: "[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism," and "[t]he Z-scan mechanism can be used to vary the depth of the focal point within the eye 43." J&J Vision admits that the '539 patent states: "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that the '539 patent states: "[f]ollowing the beam combiner 82, the laser pulse beam 66 continues through a Z-telescope 84, which is operable to scan focus position of the laser pulse beam 66 in the patient's eye 43 along the Z axis," and "[o]ne of the lens groups moves along the Z axis about the collimation position of the Z-telescope 84. In this way, the focus position of the spot in the patient's eye 43 moves along the Z axis." J&J Vision admits that the '539 patent states: "[t]he motion can be nonlinear and directed via a model or a calibration from measurement or a combination of both," and "[t]he Z-telescope 84 functions as z-scan device for scanning the focus point of the laser-pulse beam 66 in the patient's eye 43. The Z-telescope 84 can be controlled

automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the X actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the Y actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that a 2019 Operator

Manual for the Catalys® Precision Laser System states that on the "Capsulotomy Details Screen," "you can select the following parameters," including "Incision Depth—axial extent of capsulotomy cylinder pattern, centered around the detected lens anterior surface." J&J Vision denies the remaining allegations of paragraph 460.

461. J&J Vision admits that the '539 patent states: "[i]n the embodiment of FIG. 3, the ranging subsystem 46 includes an OCT imaging device." J&J Vision admits that the '539 patent states: "[a]n OCT scan of the eye can be used to measure the spatial disposition (e.g., three dimensional coordinates such as X, Y, and Z of points on boundaries) of structures of interest in the patient's eye 43." J&J Vision admits that the '539 patent states: "[t]he ranging subsystem 46 in FIG. 3 includes an OCT light source and detection device 98," and "[t]he ranging subsystem 46 is configured to measure the spatial disposition of eye structures in three dimensions." J&J Vision admits that Figure 2 of the '539 patent "shows a simplified block diagram showing a top level view of the configuration of a laser eye surgery system, in accordance with many embodiments." J&J Vision admits that the '539 patent states: "[t]he control electronics 54 can include any suitable components, such as one or more processor, one or more field-programmable gate array (FPGA), and one or more memory storage devices." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he system is controlled by a

dedicated field programmable gate array (FPGA) and is accessed via the host computer." J&J Vision denies the remaining allegations of paragraph 461.

462. J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision admits that the '539 patent states: "[i]n addition, the aiming pattern (using the aim beam 108 described below) need not be identical to the treatment pattern (using the laser pulse beam 66), but can optionally be used to designate the boundaries of the treatment pattern to provide verification that the laser pulse beam 66 will be delivered only within the desired target area for patient safety." J&J Vision admits that the '539 patent states: "[t]he positioning and character of the laser pulse beam 66 and/or the scan pattern the laser pulse beam 66 forms on the eye 43 may be further controlled by use of an input device such as a joystick, or any other appropriate user input device (e.g., control panel/GUI 56) to position the patient and/or the optical system." J&J Vision admits that the '539 patent states: "[a]dditionally the ranging subsystem such as an OCT can be used to detect features or aspects involved with the patient interface. Features can include fiducials placed on the docking structures and optical structures of the disposable lens such as the location of the anterior and posterior

surfaces." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System uses an Optical Coherence Tomography (OCT) subsystem to create a three-dimensional model of the anterior portion of the eye to guide the laser treatment. The OCT system employs an 820–930 nm spectral domain OCT to create three-dimensional images of anterior ocular structures." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he system's INTEGRAL GUIDANCE System also detects the lens capsule, iris border, and limbus border, providing targeted centration for the capsulotomy." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that

a 2019 Operator Manual for the Catalys® Precision Laser System states, "[i]mportantly, the system-integrated INTEGRAL GUIDANCE System processing ensures that adequate safety margins with respect to iris, lens capsule, and cornea are maintained regardless of eye morphology, orientation, or tilt, thus assuring safe delivery of the treatment laser pulses." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that certain "measurements are taken along a vector orthogonal to the tilt of the lens." J&J Vision admits that the '539 patent states: "[t]he ranging subsystem 46 is configured to measure the spatial disposition of eye structures in three dimensions," and "[o]ptical imaging can be used to provide information about the axial location and shape (and even thickness) of the anterior and posterior lens capsule, the boundaries of the cataract nucleus, as well as the depth of the anterior chamber and features of the cornea. This information may then be loaded into the laser 3-D scanning system or used to generate a three dimensional model/representation/image of the cornea, anterior chamber, and lens of the eye, and used to define the cutting patterns used in the surgical procedure." J&J Vision admits that the images in paragraph 462 on pages 259 and 260 of D.I. 145 display portions of a Catalys® Precision Laser System brochure. J&J Vision denies the remaining allegations of paragraph 462.

463. J&J Vision admits that Walter Bethke, "A Catalys for Change in Cataract Surgery," Review of Ophthalmology (Oct. 4, 2012),

https://www.reviewofophthalmology.com/article/a-catalys-for-change-in-cataract-surgery, quotes Robert Rivera, MD, a Catalys user from Salt Lake City, as follows: "You get an axial and sagittal view of the structures so, in the case of lens tilt, the laser automatically adjusts for the tilt and tilts the anterior capsulotomy treatment. It also automatically creates a 500-µm safe zone to keep the treatment away from the posterior capsule." J&J Vision admits that Walter Bethke, "Get to Your Femtosecond Options," Review of Ophthalmology (Jul. 6, 2015), https://www.reviewofophthalmology.com/article/get-to-know-your--femtosecond-options, states, "'[the Catalys® Precision Laser System] does a great job figuring out the tilt and position of the lens,' Dr. Koch avers. It will adjust the photodisruption pattern based on any tilt, helping to avoid complications from disrupting the wrong structures." J&J Vision denies the remaining allegations of paragraph 463.

464. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy Details Screen," "you can

select the following parameters," including "Incision Depth—axial extent of capsulotomy cylinder pattern, centered around the detected lens anterior surface." J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision denies the remaining allegations of paragraph 464.

465. J&J Vision admits that the images on page 263 of D.I. 145 display two different figures from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the Palanker Reference states that Figure 3(A) in the reference shows "OCT image of the eye with outlined boundaries of the cornea (1 and 2) and lens capsule (3 and 4). The capsulotomy pattern (5) and lens segmentation (6) are shown in solid red," and Figure 3(B) in the reference shows "View of the eye via the near-infrared video camera, with overlaid guidance lines indicating a planned capsulotomy pattern (1) and a boundary of the pupil (2)." J&J Vision admits that the first two images on page 264 of D.I. 145 display Figures 3(A) and 3(B) from the Palanker Reference. J&J Vision admits that the Palanker Reference states that Figure 3(C) in the reference shows "Top view of the circular capsulotomy pattern, a cross-pattern for lens segmentation, and the nucleus

fragmentation pattern." J&J Vision admits that the third image on page 264 of D.I. 145 displays Figure 3(C) from the Palanker Reference. J&J Vision admits that the Palanker Reference states that Figure 3(D) in the reference shows "Three-dimensional representation of the capsulotomy and cross-segmentation patterns in the lens alone (left) and inside the eye (right)." J&J Vision admits that the image on page 265 of D.I. 145 displays Figure 3(D) from the Palanker Reference. J&J Vision denies the remaining allegations of paragraph 465.

466. J&J Vision admits that the '539 patent states: "[t]he shared optics 50 under the control of the control electronics 54 can automatically generate aiming, ranging, and treatment scan patterns. Such patterns can be comprised of a single spot of light, multiple spots of light, a continuous pattern of light, multiple continuous patterns of light, and/or any combination of these." J&J Vision admits that the '539 patent states: "[t]he positioning and character of the laser pulse beam 66 and/or the scan pattern the laser pulse beam 66 forms on the eye 43 may be further controlled by use of an input device such as a joystick, or any other appropriate user input device (e.g., control panel/GUI 56) to position the patient and/or the optical system." J&J Vision admits that the '539 patent states: "[t]he ranging subsystem 46 is configured to measure the spatial disposition of eye structures in three dimensions," and "[o]ptical imaging can be used to provide information about the axial location and shape (and even thickness) of the anterior and posterior lens

capsule, the boundaries of the cataract nucleus, as well as the depth of the anterior chamber and features of the cornea. This information may then be loaded into the laser 3-D scanning system or used to generate a three dimensional model/representation/image of the cornea, anterior chamber, and lens of the eye, and used to define the cutting patterns used in the surgical procedure." J&J Vision admits that the images on pages 266 of D.I. 145 display portions of a Catalys® Precision Laser System brochure. J&J Vision denies the remaining allegations of paragraph 466.

467. J&J Vision admits that the '539 patent states: "[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism," and "[t]he Z-scan mechanism can be used to vary the depth of the focal point within the eye 43." J&J Vision admits that the '539 patent states: "[u]sing the assembly 62, optical beams can be scanned in the patient's eye 43 in three dimensions: X, Y, Z. For example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance

with many embodiments" which includes a "Z-Tscope" 84. J&J Vision admits that the '539 patent states: "Following the beam combiner 82, the laser pulse beam 66 continues through a Z-telescope 84, which is operable to scan focus position of the laser pulse beam 66 in the patient's eye 43 along the Z axis," and "One of the lens groups moves along the Z axis about the collimation position of the Z-telescope 84. In this way, the focus position of the spot in the patient's eye 43 moves along the Z axis." J&J Vision admits that the '539 patent states: "The motion can be nonlinear and directed via a model or a calibration from measurement or a combination of both," and "The Z-telescope 84 functions as z-scan device for scanning the focus point of the laser-pulse beam 66 in the patient's eye 43. The Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the X actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well

known optic moving device. The relationship of the motion of the beam as a function of the motion of the Y actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy Details Screen," "you can select the following parameters," including "Incision Depth—axial extent of capsulotomy cylinder pattern, centered around the detected lens anterior surface." J&J Vision denies the remaining allegations of paragraph 467.

468. J&J Vision admits that the ’539 patent states: “[u]sing the assembly 62, optical beams can be scanned in the patient’s eye 43 in three dimensions: X, Y, Z. For example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma.” J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, “[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin.” J&J Vision denies the remaining allegations of paragraph 468.

469. Denied.

470. Denied.

471. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, “[t]o protect operating personnel and patients, this manual should be read thoroughly and understood before operation,” but denies that such quotation is evidence of inducing infringement. J&J Vision denies the remaining allegations of paragraph 471.

472. J&J Vision admits that Alcon identified the ’913 patent as allegedly infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020, but J&J Vision denies that the May 11, 2020 letter or any other correspondence provided evidence of infringement or induced infringement. J&J Vision denies the remaining allegations of paragraph 472.

473. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 473 and on that basis denies them.

474. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 474 and on that basis denies them.

475. Denied.

476. Denied.

477. Denied.

478. Denied.

**COUNT XXXVI**
**INFRINGEMENT OF THE ’925 PATENT**

479. J&J Vision incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

480. J&J Vision admits that the ’925 patent is entitled “Photodisruptive Laser Treatment of the Crystalline Lens,” was issued on October 4, 2016, and identifies Ronald Kurtz, Ferenc Raksi, and Peter Goldstein as named inventors. Alcon’s Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit

5, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 5 is an accurate copy of the ’925 patent and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 480.

481. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 481 and on that basis denies them.

482. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 482 and on that basis denies them.

483. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 483 and on that basis denies them.

484. Denied.

485. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 485 and on that basis denies them.

486. Admitted.

487. J&J Vision admits that a Catalys® Precision Laser System brochure states: “INDICATIONS: The OptiMedica® CATALYS® Precision Laser System is indicated for use in patients undergoing cataract surgery for removal of the crystalline lens. Intended uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single-plane and multi-plane arc cuts/incisions in the cornea, each of which may be performed either individually or

consecutively during the same procedure." J&J Vision denies the remaining allegations of paragraph 487.

488. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states: "After verifying surface fits, press the APPROVE button on the Surface Mapping Review Screen (all surfaces view) to go to the Incision Review Screens. From the Incision Review Screens, you can:

- Review and verify treatment parameters
- View streaming updates of section scans
- Suppress individual incisions
- Navigate to the Incision Adjustment Screens to adjust treatment parameters."

J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states as one step of "Starting and Verifying INTEGRAL GUIDANCE System Imaging": "When satisfied with the INTEGRAL GUIDANCE System treatment customization, press the APPROVE button on the Surface Mapping Review Screen (all surfaces view) to go to the Incision Review Screens." J&J Vision admits that the image on page 274 of D.I. 145 displays Figure 4.40 from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states as one step of "Starting and Verifying INTEGRAL GUIDANCE System Imaging": "Review

the treatment parameters on the Final Review Screen. If desired, press the BACK button to return to the Incision Review Screen(s). Otherwise, start laser treatment, as described in the following section." J&J Vision admits that the image on page 275 of D.I. 145 displays Figure 4.42 from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 488.

489. J&J Vision admits that a Catalys® Precision Laser System brochure states, "The CATALYS® System detects lens tilt and adjusts the safety zone accordingly," and shows an image with the text "ENTIRE LENS IS OPTIMALLY FRAGMENTED." J&J Vision admits that the image on page 276 of D.I. 145 displays portions of a Catalys® Precision Laser System brochure. J&J Vision admits that the '539 patent states: "[t]he cutting laser subsystem 44 includes an ultrafast (UF) laser 64 (e.g., a femtosecond laser)," and "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that the '539 patent states: "[i]n many embodiments, the shared optics 50 includes scanning mechanisms operable to scan the respective emission in three dimensions. For example, the shared optics can include an XY-scan mechanism(s) and a Z-scan mechanism," and "[t]he Z-scan mechanism can be used to vary the depth of the focal

point within the eye 43." J&J Vision admits that Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments" which includes a "Z-Tscope" 84. J&J Vision admits that the '539 patent states: "Following the beam combiner 82, the laser pulse beam 66 continues through a Z-telescope 84, which is operable to scan focus position of the laser pulse beam 66 in the patient's eye 43 along the Z axis," and "One of the lens groups moves along the Z axis about the collimation position of the Z-telescope 84. In this way, the focus position of the spot in the patient's eye 43 moves along the Z axis." J&J Vision admits that the '539 patent states: "The motion can be nonlinear and directed via a model or a calibration from measurement or a combination of both," and "The Z-telescope 84 functions as z-scan device for scanning the focus point of the laser-pulse beam 66 in the patient's eye 43. The Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the X actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and

used to direct the location of the beam," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the Y actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam." J&J Vision admits that the images on page 278 of D.I. 145 display Figures 4.4 and 4.5 from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the images on page 279 of D.I. 145 display Figure 3.94 and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 489.

490. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy (Basic) Screen," "Circular is the only pattern option" for the "Pattern" parameter, and one of the options for the "Center Method" parameter is "Scanned Capsule—uses the INTEGRAL GUIDANCE System data for the anterior and posterior lens surfaces, and the line connecting the centers of the spheres fitted to these surfaces, to center the capsulotomy." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states that on the "Capsulotomy Details Screen," "you can select the following parameters," including "Incision Depth—axial extent of

capsulotomy cylinder pattern, centered around the detected lens anterior surface." J&J Vision admits that the images on page 280 of D.I. 145 display Figure 3.63 and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the images on page 281 of D.I. 145 display Figure 3.65 and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the images on page 282 of D.I. 145 display Figures 3.69 and 3.95 and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 490.

491. J&J Vision admits that the images on page 283 of D.I. 145 display Figures 4.1 and 4.2 and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the images on page 284 of D.I. 145 display Table 4.1 and Figure 4.3 from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the images on page 285 of D.I. 145 display Figure 4.5 and Table 4.3 from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision denies the remaining allegations of paragraph 491.

492. Denied.

493. Denied.

494. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]o protect operating personnel and patients, this manual should be read thoroughly and understood before operation," but denies that such quotation is evidence of inducing infringement. J&J Vision denies the remaining allegations of paragraph 494.

495. J&J Vision admits that Alcon identified the '925 patent as allegedly infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020, but J&J Vision denies that the May 11, 2020 letter or any other correspondence provided evidence of infringement or induced infringement. J&J Vision denies the remaining allegations of paragraph 495.

496. J&J Vision admits that a Catalys® Precision Laser System brochure states: "INDICATIONS: The OptiMedica® CATALYS® Precision Laser System is indicated for use in patients undergoing cataract surgery for removal of the crystalline lens. Intended uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single-plane and multi-plane arc cuts/incisions in the cornea, each of which may be performed either individually or consecutively during the same procedure." J&J Vision denies the remaining allegations of paragraph 496.

497. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 497 and on that basis denies them.

498. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 498 and on that basis denies them.

499. Denied.

500. Denied.

501. Denied.

502. Denied.

## COUNT XXXVII
## INFRINGEMENT OF THE ALCON '356 PATENT

503. J&J Vision incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.

504. J&J Vision admits that the Alcon '356 patent is entitled "Photodisruptive Laser Fragmentation of Tissue," was issued on August 30, 2016, and identifies Ferenc Raksi as a named inventor. Alcon's Amended Answer and Counterclaims (D.I. 145) does not include an Exhibit 6, and thus J&J Vision lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegation that Exhibit 6 is an accurate copy of the '356 patent and denies it on that basis. J&J Vision denies the remaining allegations of paragraph 504.

505. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 505 and on that basis denies them.

506. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 506 and on that basis denies them.

507. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 507 and on that basis denies them.

508. Denied.

509. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 509 and on that basis denies them.

510. Admitted.

511. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he OPTIMEDICA CATALYS® Precision Laser System is an integrated scanning laser system that is used by cataract surgeons to create a precise anterior capsulotomy and/or subsequent fragmentation (phacofragmentation) of the crystalline lens, with or without single plane and multi-plane arc cuts/incisions in the cornea. Treatment is accomplished through the use of ultrafast ($\tau \sim 10^{-13}$s, or hundreds of femtoseconds [FS]) infrared laser pulses." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision denies the remaining allegations of paragraph 511.

512. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]reatment is accomplished through the use of ultrafast (τ ~$10^{-13}$s, or hundreds of femtoseconds [FS]) infrared laser pulses." J&J Vision admits that the '539 patent states: "[t]he cutting laser subsystem 44 includes an ultrafast (UF) laser 64 (e.g., a femtosecond laser)," and "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that Kendall E. Donaldson *et al.*, "Femtosecond laser-assisted cataract surgery," 39 J. Cataract Refract. Surg. 1753, 1756 (2013) (the "Donaldson Reference") states that as of February 1, 2013, the "Catalys" Femtolaser had a pulse frequency of 120 KHz. J&J Vision denies the remaining allegations of paragraph 512.

513. J&J Vision admits that the '539 patent states: "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he OPTIMEDICA CATALYS® Precision Laser System is an integrated scanning laser system that is used by cataract surgeons to create a precise

anterior capsulotomy and/or subsequent fragmentation (phacofragmentation) of the crystalline lens, with or without single plane and multi-plane arc cuts/incisions in the cornea," and "[t]he on-board Optical Coherence Tomography (OCT) subsystem provides a three-dimensional image of the anterior segment of the eye and guides laser treatment." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows treatment to begin." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System consists of three integrated optical subsystems, each controlled and monitored by dedicated electronics." J&J Vision denies the remaining allegations of paragraph 513.

514. J&J Vision admits that the first image on page 293 of D.I. 145 displays an unlabeled figure and certain screenshot text from a 2019 Operator Manual for the Catalys® Precision Laser System. J&J Vision admits that the second image on page 293 of D.I. 145 displays portions of a Catalys® Precision Laser System brochure. J&J Vision admits that the '539 patent states: "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce

dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that the image on page 294 of D.I. 145 displays Figure 1 from the Donaldson Reference, which the Donaldson Reference describes as "Highly focused femtosecond laser pulses create plasma that rapidly expands in a cavitation bubble, separating target tissue." J&J Vision denies the remaining allegations of paragraph 514.

515. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he OPTIMEDICA CATALYS® Precision Laser System is an integrated scanning laser system that is used by cataract surgeons to create a precise anterior capsulotomy and/or subsequent fragmentation (phacofragmentation) of the crystalline lens, with or without single plane and multi-plane arc cuts/incisions in the cornea," and "[t]he on-board Optical Coherence Tomography (OCT) subsystem provides a three-dimensional image of the anterior segment of the eye and guides laser treatment." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he treatment consists of applying user-defined laser patterns to the crystalline lens, lens capsule, and cornea of the eye to create incisions by applying FS laser pulses, guided by the OCT data. Intended treatment patterns are overlaid on streaming cross-sectional OCT images of the anterior segment for review before the physician allows

treatment to begin." J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]he CATALYS® System consists of three integrated optical subsystems, each controlled and monitored by dedicated electronics." J&J Vision admits that a Catalys® Precision Laser System brochure states, "The CATALYS® System detects lens tilt and adjusts the safety zone accordingly," and shows an image with the text "ENTIRE LENS IS OPTIMALLY FRAGMENTED." J&J Vision admits that the image on page 296 of D.I. 145 displays portions of a Catalys® Precision Laser System brochure. J&J Vision admits that the '539 patent states: "[f]or example, short-pulsed laser light generated by the UF laser 64 can be focused into eye tissue to produce dielectric breakdown to cause photodisruption around the focal point (the focal zone), thereby rupturing the tissue in the vicinity of the photo-induced plasma." J&J Vision admits that the '539 patent states: "[t]he Z-scan mechanism can be used to vary the depth of the focal point within the eye 43." J&J Vision admits that Figure 3 of the '539 patent shows "a simplified block diagram illustrating the configuration of an optical assembly of a laser eye surgery system, in accordance with many embodiments" which includes a "Z-Tscope" 84. J&J Vision admits that the '539 patent states: "Following the beam combiner 82, the laser pulse beam 66 continues through a Z-telescope 84, which is operable to scan focus position of the laser pulse beam 66 in the patient's eye 43 along the Z axis," and "One of the lens groups moves along the Z axis about the

collimation position of the Z-telescope 84. In this way, the focus position of the spot in the patient's eye 43 moves along the Z axis." J&J Vision admits that the '539 patent states: "The motion can be nonlinear and directed via a model or a calibration from measurement or a combination of both," and "The Z-telescope 84 functions as z-scan device for scanning the focus point of the laser-pulse beam 66 in the patient's eye 43. The Z-telescope 84 can be controlled automatically and dynamically by the control electronics 54 and selected to be independent or to interplay with the X and Y scan devices described next." J&J Vision admits that the '539 patent states: "[t]he X-scan device 86 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the X actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam," and "[t]he Y-scan device 88 is controlled by the control electronics 54, and can include suitable components, such as a motor, galvanometer, or any other well known optic moving device. The relationship of the motion of the beam as a function of the motion of the Y actuator does not have to be fixed or linear. Modeling or calibrated measurement of the relationship or a combination of both can be determined and used to direct the location of the beam." J&J Vision denies the remaining allegations of paragraph 515.

516. Denied.

517. Denied.

518. J&J Vision admits that a 2019 Operator Manual for the Catalys® Precision Laser System states, "[t]o protect operating personnel and patients, this manual should be read thoroughly and understood before operation," but denies that such quotation is evidence of inducing infringement. J&J Vision denies the remaining allegations of paragraph 518.

519. J&J Vision admits that Alcon identified the Alcon '356 patent as allegedly infringed by the Catalys® Precision Laser System in a letter dated May 11, 2020, but J&J Vision denies that the May 11, 2020 letter or any other correspondence provided evidence of infringement or induced infringement. J&J Vision denies the remaining allegations of paragraph 519.

520. J&J Vision admits that a Catalys® Precision Laser System brochure states: "INDICATIONS: The OptiMedica® CATALYS® Precision Laser System is indicated for use in patients undergoing cataract surgery for removal of the crystalline lens. Intended uses in cataract surgery include anterior capsulotomy, phacofragmentation, and the creation of single-plane and multi-plane arc cuts/incisions in the cornea, each of which may be performed either individually or consecutively during the same procedure." J&J Vision denies the remaining allegations of paragraph 520.

521. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 521 and on that basis denies them.

522. J&J Vision lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 522 and on that basis denies them.

523. Denied.

524. Denied.

525. Denied.

526. Denied.

## DEFENSES

Subject to the responses above, J&J Vision alleges and asserts the following defenses in response to the allegations in Alcon's counterclaims, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST DEFENSE
## (Non-Infringement)

J&J Vision does not infringe and has not infringed, literally or under the doctrine of equivalents, any valid and enforceable claim of the '236 patent, the '036 patent, the '913 patent, the '925 patent, or the Alcon '356 patent (collectively, the "Alcon Asserted Patents"), directly, contributorily, by inducement, or in any other manner.

**SECOND DEFENSE**
**(Invalidity)**

The claims of the Alcon Asserted Patents are invalid for failure to meet the conditions of patentability and/or requirements set forth in one or more of 35 U.S.C. § 101 *et seq.*, including without limitation §§ 102, 103, and 112, or under any judicially created doctrines of invalidity.

**THIRD DEFENSE**
**(Failure to State a Claim)**

Alcon's counterclaims alleging infringement of the Alcon Asserted Patents fail to allege facts sufficient to state a cause of action and fail to state a claim on which relief may be granted.

**FOURTH DEFENSE**
**(Inequitable Conduct)**

U.S. Patent Nos. 9,456,925 and 9,427,356 are unenforceable due to inequitable conduct for the reasons set forth in paragraphs 12 to 72 of J&J Vision's Counterclaims, below.

**FIFTH DEFENSE**
**(Disclaimer/Prosecution History Estoppel)**

Alcon is barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Alcon Asserted Patents or related patent applications, from asserting any interpretation of any valid, enforceable claims of the Alcon Asserted Patents that would be broad enough to

cover any accused product alleged to infringe the asserted patent, either literally or by application of the doctrine of equivalents.

**SIXTH DEFENSE**
**(Judicial Estoppel)**

Alcon is barred from asserting that the '925 patent adequately discloses creating curved layers using a curved focal plane that tracks the curvature of the eye, based on statements, representations, and admissions made to the Patent Office during prosecution of the Alcon '356 patent. As a result, the claims of the '925 patent are invalid under 35 U.S.C. § 112.

**SEVENTH DEFENSE**
**(Limitation on Damages)**

Alcon's claim for damages, if any, against J&J Vision is limited by 35 U.S.C. §§ 286 and 287.

**EIGHTH DEFENSE**
**(No Injunctive Relief)**

Alcon is not entitled to injunctive relief as it has, at a minimum, an adequate remedy at law for the alleged infringement and no irreparable injury.

**NINTH DEFENSE**
**(Prior Commercial Use)**

J&J Vision and/or its predecessors, in good faith, developed, tested, and used the Catalys® Precision Laser System and the procedures accused by Alcon at least one year prior to the earliest possible effective filing date for the Alcon Asserted

Patents. The Catalys® Precision Laser System has used such accused procedures without abandonment since development. Accordingly, to the extent use of the Catalys® Precision Laser System results in any alleged acts of infringement, J&J Vision is exempt from liability pursuant to 35 U.S.C. § 273.

J&J Vision's predecessor, OptiMedica, began commercial use of OCT-guided femtosecond lasers to perform anterior capsulotomy and lens fragmentation at least as early as 2006. These uses included early development and clinical testing of systems that performed the accused functionalities in or around 2006 or 2007. OptiMedica's OCT-guided femtosecond lasers were described in patents, *e.g.*, U.S. Patent No. 8,394,084, filed January 10, 2005. These commercial uses occurred at least one year prior to the earliest possible effective filing dates of the Alcon Asserted Patents. The methods and systems that were commercially used before the effective filing dates of the Alcon Asserted Patents remained in relevant part largely unmodified until the first Catalys® system was sold publicly in early 2012.

Johnson & Johnson Surgical Vision acquired OptiMedica Corporation in 2017.

## RESERVATION OF RIGHTS

J&J Vision reserves the right to amend this Answer to Alcon's Counterclaims and assert further affirmative defenses in the event that discovery indicates that such would be appropriate.

## COUNTERCLAIMS FOR DECLARATORY RELIEF

For its counterclaims-in-reply against Alcon, J&J Vision alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States, 35 U.S.C. §§ 101 et seq.

## PARTIES

2. AMO Development is a Delaware company with a principal place of business at 1700 East St. Andrew Place, Santa Ana, California. AMO Development is an indirect subsidiary of Johnson & Johnson Surgical Vision, Inc.

3. AMO Manufacturing is a Delaware company with a principal place of business at 510 Cottonwood Drive, Milpitas, California. AMO Manufacturing is an indirect subsidiary of Johnson & Johnson Surgical Vision, Inc.

4. AMO Sales and Service is a Delaware corporation with a principal place of business at 1700 East St. Andrew Place, Santa Ana, California. AMO Sales and Service is an indirect subsidiary of Johnson & Johnson Surgical Vision, Inc.

5. Johnson & Johnson Surgical Vision, Inc. is a Delaware corporation with a principal place of business at 1700 East St. Andrew Place, Santa Ana, California.

6. On information and belief, Alcon Inc. is a Swiss corporation with a principal place of business at Chemin de Blandonnet 8, 1214 Vernier, Geneva, Switzerland.

7. Alcon acquired "LenSx Lasers, Inc." in July 2010 and changed its name to "Alcon LenSx, Inc." in September 2010. In April 2021, during the pendency of this litigation, Alcon LenSx, Inc. merged with and into Alcon Research, LLC. On information and belief, Alcon Research, LLC is a Delaware company with a principal place of business at 6201 South Freeway, Fort Worth, Texas.

8. On information and belief, Alcon Vision, LLC is a Delaware company with a principal place of business at 6201 South Freeway, Fort Worth, Texas.

**JURISDICTION AND VENUE**

9. This action arises under the patent laws of the United States and the Declaratory Judgment Act. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

10. This Court has personal jurisdiction over Alcon because it consented to personal jurisdiction by filing its claims for patent infringement in this Court, in response to which these counterclaims are asserted.

11. Venue is proper in this judicial district pursuant to Alcon's choice of forum for its patent claims and 28 U.S.C. §§ 1391(b)–(c).

**BACKGROUND**

12. Alcon filed counterclaims against J&J Vision on October 30, 2020, asserting that the Catalys® Precision Laser System infringes one or more claims of the Alcon ’356 patent and the ’925 patent. Alcon alleges that it is the assignee of and has the right to sue to recover damages for infringement of those patents.

13. The Alcon ’356 patent issued on August 30, 2016, from U.S. Patent Application No. 14/451,881, filed on August 5, 2014. That application is a continuation of U.S. Patent Application No. 12/351,784, filed on January 9, 2009, which was abandoned. The Alcon ’356 patent identifies Ferenc Raksi as the named inventor.

14. The ’925 patent issued on October 4, 2016, from U.S. Patent Application No. 12/343,418, filed on December 23, 2008. That application is a continuation-in-part of U.S. Patent Application No. 12/205,842, filed on September 5, 2008, which was abandoned. The application for the ’925 patent was published as U.S. Patent Application Pub. No. US 2009/0171327 A1, on July 2, 2009 (“the ’925 application”). The ’925 patent identifies Ronald Kurtz, Ferenc Raksi, and Peter Goldstein as the named inventors.

15. The Alcon ’356 and ’925 patents are unrelated and have different inventive entities. Yet, they both claim methods of laser lens fragmentation, where the laser is scanned along a curved focal plane of the laser optics.

16. During prosecution of the '925 patent, Alcon sought to distinguish the prior art by pointing to the alleged advantages of the invention disclosed in the '925 application, including scanning along a curved focal plane that tracks the natural curvature of the ophthalmic targets, including the lens of the eye. The examiner agreed, and the '925 patent was issued on that basis.

17. During prosecution of the Alcon '356 patent, Alcon was confronted with the '925 application as prior art. In order to obtain the Alcon '356 patent, Alcon needed to downplay what was disclosed in the '925 application. Contrary to what it represented to the examiner handling the '925 prosecution, Alcon told a different examiner handling the Alcon '356 prosecution that the '925 application ***did not*** disclose scanning along a curved focal plane that tracks the natural curvature of the lens. The examiner agreed, and the Alcon '356 patent was issued on that basis.

18. Alcon knew that it was telling two entirely different stories to different patent examiners, in order to obtain the two patents. The Alcon '356 and '925 patents were being prosecuted over the same time period, by the same Alcon representative. In fact, some of the conflicting statements were made within weeks of each other.

19. Alcon's disparate representations to different patent examiners was deliberate and calculated. Alcon consistently described the '925 application one way

during the Alcon '356 prosecution, but it consistently described the '925 application in the opposite way during the concurrent '925 prosecution.

20. The Alcon '356 and '925 patents issued only as a result of Alcon's false and contradictory statements to different examiners handling the two patent prosecutions, and through Alcon's concealment of its conflicting positions from those examiners. In the Alcon '356 prosecution, the examiner allowed the claims in response to Alcon's representation that the '925 application ***does not*** disclose scanning along a curved focal plane that tracks the natural curvature of the lens. By contrast, in the '925 prosecution, the examiner allowed the claims in response to Alcon's representation that the claims were patentable over the prior art because the '925 application ***does*** disclose scanning along a curved focal plane that tracks the natural curvature of the lens.

21. Statements made to the Patent Office by an applicant must either be true or believed to be true. 37 C.F.R. § 11.18(b). Moreover, the Patent Office imposes a duty of candor and good faith on each individual associated with the filing and prosecution of an application, which includes an obligation to disclose information that refutes, or is inconsistent with, a position the applicant takes before the Patent Office. 37 C.F.R. § 1.56. By making misleading and contradictory statements to two different patent examiners, Alcon failed in both respects.

**Prosecution of the Alcon ’356 and ’925 Patents**

22. The Alcon ’356 and ’925 patents were prosecuted by the Director of Intellectual Property for Alcon (specifically, Alcon LenSx, Inc.), Gergely Zimanyi (“Zimanyi”).

23. On August 3, 2011, Zimanyi filed a power of attorney to prosecute the application for the ’925 patent on behalf of Alcon. That same day, Zimanyi filed a power of attorney to prosecute the parent to the Alcon ’356 patent on behalf of Alcon. On August 5, 2014, Zimanyi filed a power of attorney to prosecute the continued application for the Alcon ’356 patent on behalf of Alcon. Zimanyi contemporaneously prosecuted the Alcon ’356 and ’925 patents from 2011 until their issuance in 2016.

24. Zimanyi had a duty of candor and good faith in dealing with the Patent Office, in connection with prosecution of the Alcon ’356 and ’925 patents. That included his duty to disclose information material to patentability, including information that refutes, or is inconsistent with, the positions taken by Alcon before the Patent Office. 37 C.F.R. § 1.56.

25. The application for the ’925 patent was filed on December 23, 2008. Independent claim 1, as originally filed, was directed to a method of treating a crystalline lens of an eye with a laser. Dependent claim 27, as originally filed, recited “[t]he method of claim 1, comprising: forming the incision on a layer-by-

layer basis, wherein one or more layers are at least partially formed along a curved focal plane of a laser delivery system."

26. In the '925 prosecution, following several rounds of rejections, Zimanyi submitted a Response to Office Communication on June 23, 2014. In this submission, claim 1 was amended to further require "forming an incision in the surgical region on a layer-by-layer basis by scanning a laser beam with an XY scanner of a laser delivery optics along a curved focal plane."

27. Just over a month later, on August 5, 2014, Zimanyi filed the application for the Alcon '356 patent. This application was assigned to a different examiner than the one handling the '925 prosecution. Independent claim 1, as originally filed, was directed to a method of fragmenting biological tissue with a laser surgical system. Dependent claim 2 recited: "[t]he method of claim 1, the creating layers comprising: creating curved layers to accommodate the natural curvature of the focal plane of the surgical system."

28. In the Alcon '356 prosecution, Zimanyi submitted a Response to Office Action, on January 27, 2015, in which the claims were amended to specify that the tissue of claim 1 is lens tissue, and that the surgical system of claim 2 is a laser surgical system.

29. The similarities between the claims pending in the Alcon ’356 prosecution and ’925 prosecution as of January 2015 can be seen in the following comparison:

| **Alcon ’356 Prosecution** | **’925 Prosecution** |
|---|---|
| 2. The method of claim 1, the creating layers comprising: creating curved layers to accommodate the ***natural curvature of the focal plane of the laser surgical system***. | 27. The method of claim 1, comprising: forming the incision on a layer-by-layer basis, wherein one or more layers are at least partially formed along a ***curved focal plane of a laser delivery system***. |

30. In the Alcon ’356 prosecution, on March 12, 2015, the examiner rejected the then-pending claims as anticipated by the ’925 application. The examiner stated that the ’925 application “discloses all of the limitations set forth in claim 1, wherein the creating layers (figure 5E) comprises creating the curved layers (262-I) to accommodate a natural curvature of a focal plane of the laser surgical system (paragraph 0032).” The examiner further stated that the ’925 application also discloses the claimed subject matter “wherein the creating layers comprises creating the curved layers (paragraph 0032) to accommodate a natural curvature of a lens (figure 5E, 5E’) of the eye.”

31. In response to the rejection in the Alcon ’356 prosecution, on June 8, 2015, Zimanyi filed a terminal disclaimer in an attempt to overcome the rejection in view of the ’925 application. He also submitted a Response to Final Office Action,

in which claim 1 was amended to require that "the layers are created by scanning the pulsed laser according to the curvature of the focal plane to track the natural curvature of the lens." In his remarks accompanying these amendments, Zimanyi asserted that the inventors had "developed the solution of forming the layer with 'the natural curvature of the lens', as such curved layers will naturally reduce the recognized risk" of cutting into the lens capsule.

32. Less than two weeks later, on June 23, 2015, in the '925 prosecution, Zimanyi submitted a Response to Office Action. He sought to overcome the examiner's rejections by asserting that unlike "the claimed embodiments," the prior art "does not discuss anywhere that ***the shot pattern would follow the shape of the lens*** by forming individual shot-layers that would be curved" (emphasis added). He further sought to distinguish the claimed embodiments by asserting that the prior art "discusses neither the inventive insights, nor the technical know-how necessary to form such ***curved shot-layers to follow the shape of the lens***" (emphasis added).

33. In the Alcon '356 prosecution, Zimanyi submitted a Response to Office Action, on October 30, 2015. In response to another rejection in view of the '925 application, Zimanyi acknowledged that the previously-filed terminal disclaimer was no longer relied upon to overcome the rejection. Instead, he amended claim 1 to recite that "the layers are created by scanning the pulsed layer ***with the optics module according to a curvature of the focal plane of the optics module to***

***track the natural curvature of the lens***" (emphasis added). Zimanyi then stated that the '925 application "does not describe either 'the layers are created by scanning the pulsed laser according to the curvature of the focal plane of the optics module' or 'to track the natural curvature of the lens' at the cited locations." He further stated that "while [0032] does mention the curved focal plane of the laser, ***neither that paragraph nor any other paragraph*** [of the '925 application] ***described the other, equally relevant limitation of 'to track the natural curvature of the lens***'" (emphasis added).

34. Less than three months later, in the '925 prosecution, Zimanyi flatly contradicted what he previously told the examiner handling the Alcon '356 prosecution. In a Response to Office Action in the '925 prosecution, on January 19, 2016, Zimanyi asserted that the pending claims were patentably distinct over the prior art, because "embodiments of ***Applicant's laser delivery optics were designed with a focal plane, curved with a curvature that naturally tracks the curvature of the ophthalmic targets***" (emphasis in original). Zimanyi contrasted this to the cited prior art, which allegedly did not disclose "where an ***individual shot-layer of the 'layer-by-layer patterns' would have been curved 'to follow the shape of the lens***'" (emphasis added). Zimanyi emphasized that an advantage of the invention is that the shortcomings of the prior art "can be solved by designing the ***optics with a curved***

***focal plane that tracks the natural curvature of the ophthalmic targets***" (emphasis added).

35. On May 3, 2016, the examiner handling the Alcon '356 prosecution allowed the pending claims of the Alcon '356 patent. As a reason for allowance, the examiner adopted Zimanyi's reasoning and stated that (emphasis added):

> [T]he prior art does not teach the layers are created with the optics module ***according to a curvature of the focal plane of the optics module and to track the natural curvature of the lens***, since the prior art teaches the curved layers are perpendicular and not according to the curvature of the focal plane. Therefore, there is no suggestion, teaching, or motivation to produce the claimed invention in the prior art.

36. Just over two weeks later, on May 20, 2016, the examiner handling the '925 prosecution allowed the pending claims of the '925 patent. As a reason for allowance, the examiner adopted Zimanyi's reasoning and stated that (emphasis added):

> The References disclosed the forming an incisions [sic] in the surgical region, but neither describes forming these incisions "on a layer-by-layer basis by scanning an laser beam with an XY scanner of a laser delivery optics along ***a curved focal plane of the laser delivery optics*** to form a line of bubbles in each layer without adjusting the Z scanner of the laser delivery optics at a scanning rate of the XY scanner."

**Alcon Made Affirmative Misrepresentations to the Patent Office During Prosecution of the Alcon '356 Patent**

37. Alcon's patent agent Zimanyi made intentional misrepresentations about the '925 application to obtain issuance of the Alcon '356 patent. The Alcon

’356 patent would not have issued but-for these affirmative misrepresentations to the Patent Office.

38. To obtain the Alcon ’356 patent, Zimanyi stated that the ’925 application ***does not*** disclose scanning along a curved focal plane that tracks the natural curvature of the lens. That statement (and others like it during prosecution of the Alcon ’356 patent) were made in bad faith and constitute affirmative acts of egregious misconduct. His conflicting statements made to a different examiner during the ’925 prosecution demonstrate that Zimanyi did not in good faith believe what he told the examiner during the Alcon ’356 prosecution. Zimanyi knew that he made contradictory representations to different examiners and thus these statements were made with knowledge of their falsity.

39. Zimanyi’s affirmative misrepresentations and contradictory statements to different examiners constitute egregious misconduct that are per se material.

40. Zimanyi’s affirmative misrepresentations were also but-for material. Without these misrepresentations, the claims of the Alcon ’356 patent would not have issued. The prosecution history demonstrates that the examiner allowed the claims on the basis of Zimanyi’s false and contradictory statements.

**The Withheld Statements from Prosecution of the ’925 Patent Were Highly Material to the Alcon ’356 Patent**

41. During the Alcon ’356 prosecution, Zimanyi withheld material information about the ’925 application, including the office actions and Alcon’s responses filed during the contemporaneous ’925 prosecution.

42. The examiner rejected claims in the Alcon ’356 prosecution as anticipated by the ’925 application. To overcome these rejections, Zimanyi stated that the ’925 application does not disclose scanning along a curved focal plane that tracks the natural curvature of the lens. His statements led the examiner to allow claims of the Alcon ’356 patent.

43. Zimanyi could not have asserted patentability of the Alcon ’356 patent on such grounds, and the examiner would not have allowed the claims, had Zimanyi disclosed the contradictory statements he made during prosecution of the ’925 patent, namely that the ’925 application discloses scanning along a curved focal plane that tracks the natural curvature of the lens.

44. Zimanyi’s statements in the ’925 prosecution about the disclosure of the ’925 application constituted admissions by Alcon and would have been binding against it during prosecution of the Alcon ’356 patent. Had the examiner been aware of those admissions, he would have maintained his rejection that the claims of the Alcon ’356 patent were not patentable over the prior art ’925 application.

## Alcon Made Affirmative Misrepresentations to the Patent Office During Prosecution of the ’925 Patent

45. Alcon’s patent agent Zimanyi made intentional misrepresentations about the ’925 application to obtain issuance of the ’925 patent. The ’925 patent would not have issued but-for these affirmative misrepresentations to the Patent Office.

46. To obtain the ’925 patent, Zimanyi stated that the ’925 application discloses scanning along a curved focal plane that tracks the natural curvature of the lens. That statement (and others like it during prosecution of the ’925 patent) were made in bad faith and constitute affirmative acts of egregious misconduct. His conflicting statements made to a different examiner during the Alcon ’356 prosecution demonstrate that Zimanyi did not in good faith believe what he told the examiner during the ’925 patent prosecution. Zimanyi knew that he made contradictory representations to different examiners and thus these statements were made with knowledge of their falsity.

47. Zimanyi’s affirmative misrepresentations and contradictory statements to different examiners constitute egregious misconduct that are per se material.

48. Zimanyi’s affirmative misrepresentations were also but-for material. Without these misrepresentations, the claims of the ’925 patent would not have issued. The prosecution history demonstrates that the examiner allowed the claims on the basis of Zimanyi's false and contradictory statements.

**The Withheld Statements from Prosecution of the Alcon ’356 Patent Were Highly Material to the ’925 Patent**

49. During the ’925 prosecution, Zimanyi withheld material information about the ’925 application, including the office actions and Alcon’s responses filed during the contemporaneous Alcon ’356 prosecution.

50. The examiner rejected claims in the ’925 prosecution as anticipated by the prior art. To overcome these rejections, Zimanyi stated that the ’925 application discloses scanning along a curved focal plane that tracks the natural curvature of the lens, in order to distinguish the prior art. His statements led the examiner to allow claims of the ’925 patent.

51. Zimanyi could not have asserted patentability of the ’925 patent on such grounds, and the examiner would not have allowed the claims, had Zimanyi disclosed the contradictory statements he made during prosecution of the Alcon ’356 patent, namely that the ’925 application does not disclose scanning along a curved focal plane that tracks the natural curvature of the lens.

52. Zimanyi’s statements in the Alcon ’356 prosecution about the ’925 application constituted admissions by Alcon and would have been binding against it during prosecution of the ’925 patent. Had the examiner been aware of those admissions, he would have maintained his rejection that the claims of the ’925 patent were not patentable over the prior art and would have rejected the claims for lack of written description.

**Zimanyi Acted with an Intent to Deceive**

53. As described above, Zimanyi intentionally made material misrepresentations and withheld material information from the Patent Office, with an intent to deceive in connection with prosecuting the Alcon ’356 and ’925 patents.

54. Zimanyi knew that his conflicting statements made about the ’925 application were relevant to prosecution of the Alcon ’356 and ’925 patents. Zimanyi entered appearances on the very same day in connection with the prosecution of both patents. He was actively and intimately involved in both prosecutions during the same time period. The content of the ’925 application was extensively discussed during prosecutions of both patents.

55. Zimanyi also knew that the pending applications for the Alcon ’356 and ’925 patents contained closely overlapping subject matter. He proposed claim limitations in both cases using similar phraseology.

56. When Zimanyi made his statements to the Patent Office during prosecution of both patents, he certified that his statements were either true or believed to be true. 37 C.F.R. § 11.18(b). Given the obvious conflict between what he was telling different examiners, the statements necessarily cannot be true or believed to be true. Zimanyi thus made statements to the Patent Office with knowledge of their falsity.

57. Zimanyi made statements that consistently favored Alcon's position in the Alcon '356 prosecution, and at the same time, he made conflicting statements that consistently favored Alcon's position in the '925 prosecution. This strongly supports an intent to deceive.

58. The conflicting statements were made contemporaneously by the same Alcon representative about the same subject matter. This strongly supports an intent to deceive.

59. Zimanyi was aware that the prosecution of the Alcon '356 and '925 patents were being handled by different examiners, yet he never disclosed the conflicting statements to the respective examiners. This strongly supports an intent to deceive.

60. The single most reasonable inference to be drawn from the evidence is that Zimanyi acted with specific intent to deceive the Patent Office in order to obtain the Alcon '356 and '925 patents.

## COUNT XIX
## Declaratory Judgment of Unenforceability of the '925 Patent

61. J&J Vision incorporates by reference the allegations set forth in paragraphs 1 through 60 as though fully set forth herein.

62. Alcon brought a claim against J&J Vision alleging that the Catalys® Precision Laser System infringes at least claim 1 of the '925 patent.

63. As a result of the allegations contained in Alcon's counterclaims, a case or controversy exists between J&J Vision and Alcon concerning the enforceability of the '925 patent.

64. The '925 patent is unenforceable due to inequitable conduct for the reasons set forth above.

65. J&J Vision is therefore entitled to a declaratory judgment that the '925 patent is unenforceable.

66. Alcon's assertion of the '925 patent, which Alcon knew or should have known was obtained as the result of inequitable conduct, makes this an exceptional case.

**COUNT XX**
**Declaratory Judgment of Unenforceability of the Alcon '356 Patent**

67. J&J Vision incorporates by reference the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68. Alcon brought a claim against J&J Vision alleging that the Catalys® Precision Laser System infringes at least claim 1 of the Alcon '356 patent.

69. As a result of the allegations contained in Alcon's counterclaims, a case or controversy exists between J&J Vision and Alcon concerning the enforceability of the Alcon '356 patent.

70. The Alcon '356 patent is unenforceable due to inequitable conduct for the reasons set forth above.

71. J&J Vision is therefore entitled to a declaratory judgment that the Alcon ’356 patent is unenforceable.

72. Alcon’s assertion of the Alcon ’356 patent, which Alcon knew or should have known was obtained as the result of inequitable conduct, makes this an exceptional case.

**PRAYER FOR RELIEF**

WHEREFORE, J&J Vision prays for a judgment that:

A. Dismisses Alcon Defendants’ declaratory judgment counterclaims (Count I through Count XXXII) with prejudice;

B. Dismisses Alcon’s patent counterclaims (Count XXXIII through Count XXXVII) with prejudice;

C. Declares that U.S. Patent Nos. 9,456,925 and 9,427,356 are unenforceable;

D. Declares that this is an exceptional case under 35 U.S.C. § 285, and awards J&J Vision its expenses, costs, and reasonable attorneys’ fees, including pre-judgment interest on such fees;

E. Awards pre-judgment and post-judgment interest, costs, and expenses; and

F. Awards to J&J Vision such other and further equitable or legal relief as this Court deems just and proper.

**JURY DEMAND**

J&J Vision hereby demands trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc. and Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

July 22, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 22, 2021, upon the following in the manner indicated:

John W. Shaw, Esquire *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeannie Heffernan, Esquire *VIA ELECTRONIC MAIL*
Joshua L. Simmons, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
*Attorneys for Defendants and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Hannah L. Bedard, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
*Attorneys for Defendants and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)