IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,<br><br>  Plaintiffs,<br>   v.<br><br>ALCON VISION, LLC,<br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LLC,<br><br>  Defendants. | C.A. No. 20-842-CFC |
| ALCON, INC., ALCON RESEARCH, LLC, and<br>ALCON VISION, LLC,<br><br>  Counterclaim-Plaintiffs,<br><br>   v.<br><br>AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC,<br>AMO SALES AND SERVICE, INC., and<br>JOHNSON & JOHNSON SURGICAL VISION, INC.,<br><br>  Counterclaim-Defendants. | |

**LETTER TO THE HONORABLE JENNIFER L. HALL IN RESPONSE TO
J&J VISION'S MOTION TO COMPEL DISCOVERY**

Dear Judge Hall:

We write on behalf of Defendants/Counterclaimants ("Alcon") in response to Plaintiffs/Counterclaim-Defendants' ("J&J") letter seeking to compel discovery. D.I. 167. J&J begins by suggesting that this is an open-and-shut case of theft[1] and copyright infringement by Alcon and its former employees. *Id*. at 1. Not only is that conclusion premature given the case is in the early stages of discovery, but it is irrelevant to the dispute at hand. What J&J is seeking is a court order for Alcon to produce post-litigation communications, documents, and information between Alcon and its former employees whom J&J accuses of bringing its code to Alcon. Although Alcon has produced to J&J non-privileged documents and information concerning those employees' work at Alcon and LenSx Lasers, Inc., Alcon's post-litigation communications with them and their attorneys are protected by the common-interest, attorney-client, and work-product privileges. To force disclosure of these communications would undermine the entire point of having these privileges, which is to foster frank and open communication between attorneys, their clients, and parties jointly threatened with claims like those at issue here.

I.   **ALCON HAS ASSERTED A VALID AND PROPER COMMON-INTEREST AND ATTORNEY-CLIENT PRIVILEGE**

**The Common-Interest Privilege Applies**. Alcon should not be required to produce communications, documents, or information shared with former employees (Messrs. Goldstein and Vardin) and their counsel because those communications are protected by the common-interest (or "community-of-interest") privilege. The Third Circuit has recognized the existence of such a privilege, which "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), as amended (Oct. 12, 2007). For the privilege to apply, two showings must be made: (1) "the communication must be shared with the attorney of the member of the community of interest"; and (2) "all members of the community must share a common legal interest in the shared communication." *Id*. Parties share a common interest when they "share at least a substantially similar legal interest." *Id.* at 365.[2]

Here, J&J concedes the existence of the common interest privilege in the Third Circuit and that the communications at issue involved attorneys. As to whether a "substantially similar legal interest" exists, J&J asserted that Alcon's source code infringes J&J's copyrights as a result of actions taken by current and/or former Alcon employees (including Goldstein, Vardin, and others) and that Alcon is liable for those actions. D.I. 167 at 1. Thus, all of the members of this community share a common interest in defeating J&J's claims of copyright infringement. Indeed, J&J admitted as much. D.I. 167 at 2 ("Of course, they all would like a finding that the LenSx

---

[1]   There is no legal claim of theft at issue in this case, only infringement. *See* D.I. 141.

[2]   In its letter, J&J asserts that the shared interest "must be 'identical,'" quoting *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020). The "identical" language in *10x Genomics* appears to trace back to *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974), which is not the law in the Third Circuit. But in any event, the legal interest at issue in this litigation is identical among all parties subject to the privilege.

1

code is not infringing."). And as the privilege log Alcon voluntarily provided J&J in an attempt to resolve this dispute shows, the communications, documents, and information that Alcon is withholding on the basis of the common-interest privilege were made in furtherance of establishing a joint defense to those claims. *See* D.I. 167-1, Ex. 2 at 5–6.

This case aligns with *Bosley v. 21 WFMJ*, No. 4:04CV2529, 2005 WL 8166255 (N.D. Ohio June 24, 2005). There, the plaintiffs asserted claims of copyright infringement, and sought to compel the production of documents that were being withheld on the basis of a common-interest privilege. *Id*. at *5. In their motion to compel, plaintiffs argued that the defendant employer could not possibly share a common interest with its employees because the employer's counsel had stated the employees were "on their own" and accused them of "engag[ing] in serious misconduct, but at the same time asserted that [the employer] was not involved." *Id*. at *4. The court nonetheless found that a common interest existed because "they face a common adversary in Plaintiffs" in defeating the copyright claims. *Id.* at *5. This same rationale has been applied by the courts of this Circuit. *See, e.g.*, *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, No. CIV. 10-6076 RMB/JS, 2012 WL 1981559, at *5–6 (D.N.J. June 1, 2012) (finding two defendants shared common interest in litigation over whether certain produce caused an E.coli outbreak, despite suing each other separately over who should be held responsible for the outbreak); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 787–88 (3d Cir. 1985). Like these cases, for purposes of the present litigation, Alcon and its former employees all share a common interest in defending against J&J's claims that any infringement has occurred (*e.g.*, because the code is not protectable), regardless of who would ultimately be responsible.

Despite the clear common interest between the attorneys communicating to defend against J&J's claim, J&J argues that the parties do not truly share a "common legal interest." To do so, J&J distorts the facts and law to argue that Alcon must be adverse to Goldstein and Vardin because Alcon has purportedly blamed them for the alleged copyright infringement while claiming ignorance for itself, and that the three parties "may" one day even blame each other.[3] D.I. 167 at 1–2. That is wrong on multiple accounts.

First, J&J is wrong on the facts. J&J's reliance on Alcon's statements during the preliminary injunction hearing is disingenuous. D.I. 167 at 2. The cited statements do not blame, or even mention, either former employee. Moreover, the statements are ripped from their context, which concerned the merits of the preliminary injunction analysis and discussions of the relevant case law concerning the balance of harms. D.I. 167-1, Ex. 1, Tr. at 48:8–49:5, 75:14–18, 78:10–12. At no point did Alcon argue that it could "absolve itself of liability by pointing to its former employees." D.I. 167 at 1–2. And as for J&J's argument that Alcon and Goldstein must be adverse because "Alcon threatened to sue him for breach of his employment agreement," *id.* at 1, that is not true and is irrelevant in any event. Alcon recently learned that Mr. Goldstein retained highly confidential LenSx documents after he retired in violation of his employment agreement, which has nothing to do with J&J's copyright claims. Even assuming for sake of

---

[3] Although J&J alleges that Goldstein and Vardin consented to the production of the withheld documents, D.I. 167 at 2, they did so only "to avoid Plaintiff's continued harassment," and stated that the "common interest agreement prohibits one party… from unilaterally disclosing protected documents." D.I. 167-1, Ex. at 1.

argument that there were adversity between Alcon and Goldstein with respect to that (unrelated) contract issue, J&J's timing is off. It alleges that a potential adversarial relationship first arose during the preliminary injunction hearing. *Id*. at 2. But most of the communications at issue were made ***prior to*** the hearing, when the parties were jointly fact-gathering and strategizing. *Compare* May 6, 2021 Minute Entry *with* D.I. 167-1, Ex. 2 at 5–6 (showing dates of communications). That is exactly what the privilege is intended to protect. *See TC Tech. LLC v. Sprint Corp.*, 2018 WL 6584122, at *3 (D. Del. Dec. 13, 2018) (finding even if parties became adverse in the future, communications made when the parties were not adverse were protected).

Second, J&J is wrong on the law. Even if there were some adversity between Alcon and Messrs. Goldstein and Vardin, there is no basis to conclude that there is not still a common interest in defending against J&J's claims. *See McLane*, 2012 WL 1981559, at *5 (rejecting argument that even litigious adversity defeats common interest in defending suit). In sharp contrast with Alcon's on-point cases, J&J's argument relies on dictum from *McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1246630, at *3 (N.D. Ill. Oct. 18, 2001) that "the common interest doctrine does not apply if those parties have an incentive to blame each other for alleged wrongful conduct." D.I. 167 at 2. *McNally*, however, cites *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408 (D. Del. 1992), which is inapposite for a number of reasons. First, that case was an action between an insurer and insured seeking a determination of coverage, so the parties were adverse in that litigation. That is not the case here. Second, the party moving to compel discovery bizarrely argued that because there was a common interest in minimizing exposure in the underlying suit, the other party could not withhold documents from the underlying suit on the basis of attorney-client privilege. The court noted that "the Illinois Supreme Court accepted this strange theory," *id.* at 417, but ultimately found that the direct adversity in the underlying suit undermined the proposition that there was a common interest. *Id*. at 418. That is the opposite of the situation here, where the common interest is being used to ***prevent*** disclosure and the common-interest parties are not litigating against one another.

**Attorney-Client Privilege Applies**. Alcon also asserts a valid claim of attorney-client privilege. The fact that Goldstein and Vardin are former employees reinforces Alcon's claim, as courts consistently find the privilege extends between corporate entities and their former employees. *See In re Allen*, 106 F.3d 582, 605–06 (4th Cir. 1997) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981), noting that "[m]ost lower courts have followed the Chief Justice's reasoning and granted the privilege to communications between a client's counsel and the client's former employees"); *Utesch v. Lannett Co.*, 2020 WL 7260775, at *9 (E.D. Pa. Dec. 9, 2020) ("[C]ourts have found that the attorney-client privilege extends to communications between corporate counsel and former employees."); *U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 340 F. Supp. 2d 554, 558 (E.D. Pa. 2004) (communications with former employees that "concerned knowledge obtained or conduct that occurred during the course of the former employee's employment" privileged); *In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761, 765 (E.D. Pa. 2010) (communications between counsel and former employee privileged where "testimony concerned matters within the scope of her former responsibilities with defendant corporation and because her conversations with defense counsel may be relevant to defendant's legal strategy").

Although J&J admits that the privilege extends to "matters within the scope of the employees' corporate duties," *Upjohn*, 449 U.S. at 394, it still contends that the documents it seeks regarding the parties' common interest in this litigation do not fall within the scope of their

3

duties. D.I. 167 at 3. That is wrong. The analysis set forth in *Upjohn* looks to whether the issues involved implicate the former employee's duties at the time of employment. *See In re Allen*, 106 F.3d at 605–06. Goldstein and Vardin's primary duties involved writing source code for the LenSx system, which is the basis for both J&J's copyright claim and Alcon's communications with them. Under such circumstances, courts find the attorney-client privilege applies. *See, e.g.*, *In re Worldwide Wholesale Lumber, Inc.*, 392 B.R. 197, 202–03 (Bankr. D.S.C. 2008) (privilege extended to former employee because litigation implicated employee's previous duties). Lastly, J&J's argument that privilege was waived because certain communications also involved Goldstein and Vardin's counsel is unsupported by any legal authority.

## II. THE DOCUMENTS J&J SEEKS ARE ATTORNEY WORK PRODUCT

J&J also is not entitled to the withheld documents because they constitute attorney work product. "Under the attorney work-product doctrine, documents prepared by counsel or at counsel's direction in preparation for trial or in anticipation of litigation are not discoverable absent a showing of substantial need, undue hardship, or inability to obtain their equivalent by other means." *WebXchange Inc. v. Dell Inc.*, 264 F.R.D. 123, 128 (D. Del. 2010); Fed. R. Civ. P. 26(b)(3). "Because the work product doctrine serves to protect an attorney's work product from the adversary, a disclosure to a third party does not necessarily waive the protection of [the] work product, as it does with attorney-client privilege." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 478 (D. Del. 2012). Rather, "the disclosure must enable an adversary to gain access to the information." *Id*. That has not happened here.

Instead, J&J argues that, by providing documents to Goldstein and Vardin (or their counsel), Alcon handed them to an adversary (or a potential one). D.I. 167 at 3. But J&J is wrong to call either individual an adversary (*see* above), and the cases it cites are inapposite. *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991) (voluntary disclosure to SEC waived work product because the voluntary disclosure was not made to "further[] the doctrine's underlying goal."); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 113 (D.D.C. 2016) (disclosure of a request to IRS waived work product doctrine because the "IRS could be an adversary ***in precisely the sort of litigation contemplated in Claimant's work product***.") (emphasis added).

Moreover, J&J's contention that it has a "substantial need" to "understand the full scope of coordination between Alcon, Goldstein, and Vardin" in order to "test their credibility, and investigate Alcon's [(generic)] representations" makes no sense, as that would be true in every case. D.I. 167 at 3–4. Nor has J&J shown that the need to test an individual's credibility justifies the disclosure of work product, especially when the individual is available for deposition. *See Dingler v. Halcyon Lijn N. V.*, 50 F.R.D. 211, 212 (E.D. Pa. 1970) (need to test credibility of available witness does not justify disclosure of work product); *U.S. ex rel. Carter v. Halliburton*, 266 F.R.D. 130, 133 (E.D. Va. 2010) ("[T]he mere surmise that production might reveal impeaching matter [is] not sufficient to justify production and the seeking party must present more than speculative or conclusory statements.") (internal marks omitted). What is relevant to this litigation is whether Alcon employees incorporated copyrightable source code into the LenSx software more than ten years ago. D.I. 141 ¶¶99–101. The "scope of coordination" between Alcon and its former employees today is wholly irrelevant to the decade-old underlying claim. J&J is free to depose Goldstein and Vardin to probe their actions and test their credibility.

4

### III. ALCON IS NOT SHIELDING ANY FACTS FROM J&J

J&J cannot show that Alcon's responses to Interrogatory Nos. 6 and 20 require supplementation. J&J Interrogatory No. 6 asks Alcon to "[d]escribe in detail *how You [(Alcon)] first became aware of the Source Code subject to the J&J Asserted Copyrights* and any actions that You took in response to that awareness . . . including any investigations You conducted and the results thereof." D.I. 167-1, Ex. 13 at 8. Alcon's first response to that interrogatory stated that it was not until J&J sent Alcon a letter from Mr. Warren Foust on July 14, 2020 that Alcon became aware that the source code being used to run its LenSx product allegedly contained Source Code subject to J&J's Asserted Copyrights, following which Alcon promptly conducted an investigation. *Id*. at 8–9. Less than a week later, after Alcon had conducted an interview with Imre Hegedus—the only remaining employee at the time who worked on the original development of the LenSx software—Alcon supplemented and stated that "Alcon Holdings, Inc. knew that LenSx Lasers, Inc. possessed source code to run its LenSx product at least as of July 6, 2010," but at the time was unaware that it was covered by any J&J copyright (and did not know otherwise until the July 14 letter). *Id.* at 9–10. Alcon also described the facts uncovered during its interview with Hegedus, who claimed that he did not take J&J's source code with him when he left its predecessor, and did not know that any source code had ever been taken. *Id*. at 10. As Alcon has repeatedly told J&J, these are the facts presently known to Alcon about the origination of the LenSx source code. No additional facts are being withheld on the basis of any privilege.[4]

But these responses were not the answers J&J wanted. So for months, J&J has asserted that Alcon must "provide Alcon's knowledge of J&J Vision's code *by any former or current employee*." Ex. 1 at 3; *see also* D.I. 167-1, Ex. 15 at 4. But that is not what the interrogatory asks; it asks only for *Alcon's* awareness of the Source Code, and that is exactly what Alcon has provided. J&J is pressing for facts that Alcon does not possess. Alcon's investigation is ongoing, and should it discover new information that renders its prior response materially incomplete or incorrect, Alcon will supplement its response at that time consistent with Rule 26(e).

Interrogatory No. 20 seeks "all facts and circumstances concerning Imre Hegedus's departure from Alcon." D.I. 167-1, Ex. 18 at 2. Alcon responded by noting that Mr. Hegedus was terminated after his interview with counsel, described his severance package, and provided the entirety of his personnel file. *Id*. Unsatisfied, J&J now apparently seeks Alcon's attorneys' beliefs and impressions of Hegedus's statements—the very definition of privileged information.

Alcon has provided the responsive information currently available to it in response to J&J's interrogatories.[5]

---

[4] It is unclear how there can be a "sword-and-shield" problem when Alcon did not disclose any privileged information. *See Gookins v. Cty. Materials Corp.*, 2020 WL 489567, at *3 (S.D. Ind. Jan. 30, 2020) (drawing distinction between non-privileged facts from an investigation and the privileged investigation itself). Similarly, there cannot be waiver.

[5] While J&J states that Alcon's response is "incomplete and noticeably silent" as it does not address the time Mr. Hegedus was a contractor for IntraLase, Alcon relayed the full scope of Mr. Hegedus's statements.

Respectfully submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)

cc:    Clerk of the Court (via CM/ECF & hand delivery)
       Counsel of Record (via CM/ECF & electronic mail)