## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

               Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

               Defendants.

ALCON INC.,
ALCON RESEARCH, LLC and ALCON
VISION, LLC,

               Counter-Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC, AMO
SALES AND SERVICE, INC. and JOHNSON
& JOHNSON SURGICAL VISION, INC.,

               Counter-Defendants.

C.A. No. 20-842 (CFC)

**JURY TRIAL DEMANDED**

██████████████

REDACTED – PUBLIC VERSION

Original Filing Date: September 3, 2021
Redacted Filing Date: September 10, 2021

## LETTER TO THE HONORABLE JENNIFER L. HALL IN SUPPORT OF
## J&J VISION'S MOTION TO COMPEL DISCOVERY

Dear Judge Hall:

Plaintiffs ("J&J Vision") respectfully request that the Court order Defendants ("Alcon") to produce discovery related to critical issues in this case.  As Judge Connolly found at the close of a preliminary injunction ("PI") hearing in May, "the evidence is overwhelming" that "over 26,000 lines" of J&J Vision's proprietary source code—even the *typos*—were "intentionally copied" and incorporated into Alcon's laser cataract surgery system, the LenSx Laser System ("LenSx").  Ex. 1 at 346:12-20.  J&J Vision identified three probable culprits for the source code theft:  Peter Goldstein, Kostadin Vardin, and Imre Hegedus.  They wrote the original code when working at J&J Vision (then IntraLase), stole it, and brought it to Alcon (then LenSx Lasers, Inc.) to develop the infringing LenSx code.  D.I. 43 at 5-8.  Alcon's brazen theft and copying enabled it to surge ahead in the laser cataract surgery market and reap the first-to-launch benefits for over a decade.

J&J Vision seeks discovery into facts concerning that theft and Alcon's knowledge thereof. There are two categories of improperly withheld materials.  *First*, Alcon is withholding documents and communications exchanged with former Alcon employees Goldstein and Vardin, and their separate counsel, on the purported grounds of common interest, attorney-client, and work product privileges.  Ex. 2 at 5-6.  But far from a "common interest," Alcon and its former employees have every reason to point fingers at each other over the details of the theft—such as who committed it, how it happened, and who knew.  And, indeed, the blame game is well underway.  To defeat J&J Vision's PI motion, Alcon feigned innocence, pointing to its former employees and threatening to fire any employees with knowledge of wrongdoing.  Ex. 1 at 48:20 ("None of these people *currently* work at Alcon."), 75:14-18 ("We don't know the facts to be honest with you … and I'm not standing here saying there's not going to be a guy who I'm going to bet he doesn't work here now, and *if he does, he's not for long*.") (all emphases added unless otherwise noted).  That is the *opposite* of a "common interest."  Alcon's other asserted privileges are equally baseless.  *Second*, Alcon refuses to supplement its answers to two interrogatories relating to Alcon's knowledge of the stolen code and its termination of Hegedus's employment, after relying on his "assertions" in response to the former.  Alcon's privilege claims provide no proper basis to hide the truth.

## I.   ALCON CANNOT SHIELD DOCUMENTS RELATING TO GOLDSTEIN AND VARDIN (EXS. 3-4 (RFP NOS. 6, 92, 94-98, 126, 136, 140, 144, 174))

Alcon refuses to produce documents and communications that it exchanged with third parties—its former employees, Goldstein and Vardin, and their separate counsel.  Given Alcon's disclosure, Alcon can only maintain privilege if it shows that these third parties have a common interest and are not potential adversaries.  But Alcon itself has shown that there is no "common interest" and that at least Goldstein is a potential adversary.  Indeed, Alcon threatened to sue him for breach of his employment agreement.  As the party asserting privilege, Alcon bears the burden of showing the documents are properly withheld.  *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).  Because Alcon cannot make that showing, it should be ordered to produce them.  At a minimum, the Court should review the documents *in camera*.

### A.   The Common Interest And Attorney-Client Privileges Do Not Protect Alcon

***No Common Interest Privilege.***  Alcon cannot rely on the "common interest" doctrine to withhold documents shared with Goldstein, Vardin, and their separate counsel.  Alcon has every incentive to blame Goldstein and Vardin for the theft—and vice versa.  And, sure enough, that is exactly what's happening.  Alcon seeks to absolve itself of liability by pointing to its former

employees and disclaiming knowledge of the facts.  Goldstein and Vardin certainly will want to protect their reputation and protect themselves from liability—and may even blame each other. That is the antithesis of a "common interest."

The common interest privilege is "to be narrowly construed" because it "obstruct[s] the truth-finding process that lies at the heart of our system of justice."  *10xGenomics*, 505 F. Supp. 3d at 340.  To apply, the interests must be "***identical, not similar***" and "legal," not solely commercial.  *Id.* at 337-38.  As courts have held, "[j]ust because two parties agree to cooperate in defending a particular lawsuit does not automatically mean that the common interest doctrine applies."  *McNally Tunneling Corp. v. City of Evanston, Illinois*, No. 00-C-6979, 2001 WL 1246630, at *3 (N.D. Ill. Oct. 18, 2001) (citing *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 418 (D. Del. 1992)).  Importantly, for example, "the common interest doctrine does not apply if those parties have an incentive to blame each other for alleged wrongful conduct."  *Id.*

Alcon, Goldstein, and Vardin clearly have an incentive to blame each other.  Of course, they all would like a finding that the LenSx code is not infringing (which is exceedingly unlikely given the PI ruling).  But their interests are diametrically opposed when it comes to the theft.  Who stole the copyrighted code and when?  To what extent was it incorporated into the LenSx?  Who knew of that infringing activity, and when did they know it?  There is no "common interest" on those questions.  *See McNally*, 2001 WL 1246630, at *2 ("[I]n rejecting application of the common interest doctrine, [the *Remington Arms*] court reasoned that even assuming an insurer and an insured 'shared an interest in lowering the amount of damages in the underlying action ... [they] did not ... share an interest in characterizing how that damage occurred, what type of damage has occurred, or how [the insured] responded to the damage.'").

Indeed, Alcon was eager to blame former employees, including Vardin and Goldstein, in open court during the PI hearing.  *See, e.g.*, Ex. 1 at 48:20, 75:14-18, 78:10-12 ("[I]t's not the folks that are there now.  We bought the business and they said the code was theirs.").  When J&J Vision shared this finger-pointing with Goldstein and Vardin, they ***consented*** to Alcon producing the withheld materials (which were likewise responsive to issued subpoenas, Exs. 5-6).  Ex. 7 at 1-2; Ex. 8 at 1.[1]  They are no longer trying to shield their communications behind a "common" interest privilege.  Still further, Alcon recently told Goldstein that it "reserves all rights regarding [Goldstein's] breaches of [his] Employment Agreement," which prohibits use of a prior employer's intellectual property.  Ex. 11 at ALCON_LENSX097742; Ex. 12 at ALCON_LENSX053559.  With Alcon already pointing fingers, their interests sharply diverge.

***No Attorney-Client Privilege.***  With no common interest to protect Alcon's disclosure of documents and communications to third parties and their counsel, the Court need not address Alcon's attorney-client privilege claims.  However, even if it does, Alcon's attorney-client privilege claims fare no better.

Alcon's attorney-client privilege claims are premised on the fact that Goldstein and Vardin are former employees of Alcon.  Ex. 2 at 5-6.  But the law Alcon itself cites states that "courts

---

[1] Goldstein and Vardin also abandoned their argument that Alcon implicated only the individuals listed as "sellers' representatives" on the LenSx stock purchase agreement ("SPA").  Ex. 9 at 3. In fact, Goldstein and Vardin *were* among the "sellers" of the company; each signed the SPA and agreed to be bound by its terms, including sellers' representations and warranties.  *See* Ex. 10 at ALCON_LENSX003292, ALCON_LENSX003336.

have … struggled with" whether the privilege applies to *former* employees.  *See Utesch v. Lannett Co., Inc.*, No. 16-5932, 2020 WL 7260775, at *9 (E.D. Pa. Dec. 9, 2020); Ex. 2 at 5.  And even if it did cover communications with former employees, it would be an extension of principles in *Upjohn v. United States*, which explained that the privilege protects communications only to the extent they relate to "matters *within the scope* of the employees' corporate duties."  449 U.S. 383, 394 (1981); *see also In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761, 765 (E.D. Pa. 2010).  The withheld materials here have nothing to do with Goldstein's and Vardin's responsibilities at Alcon; rather, they are about (i) developing a common strategy against J&J Vision's claims and PI motion, (ii) producing responsive documents and source code in Goldstein's and Vardin's possession, and (iii) hiring counsel and billing guidelines.[2]  Ex. 2 at 5-6.

And even if the attorney-client privilege could cover the withheld communications with Goldstein and Vardin, Alcon here seeks to extend that privilege beyond former employees *to their separate counsel*.  Alcon cites no law stretching the privilege that far, and this Court should not be the first to do so.  *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) ("Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly.").

Finally, even if Alcon could show that the withheld documents were privileged, the Court should not mechanically apply it.  As the Supreme Court and Third Circuit have explained, "privilege carries through policy purposes—encouraging attorney-client communication to enhance compliance with the law and facilitating the administration of justice."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 360 (3d Cir. 2007) (citing *Upjohn*, 449 U.S. at 392).  Applying the privilege would have the opposite effect here, perversely encouraging evasion of the law and hindering the administration of justice.  *Id.* at 360-61; *accord Westinghouse*, 951 F.2d at 1423.

## B.     The Work Product Doctrine Does Not Protect Alcon

Alcon asserts that several categories of withheld materials are also protected by the work product doctrine because they were prepared by Alcon's outside counsel for the litigation.  Ex. 2 at 1, 3.  But even if any such documents would have been eligible for work product protection, Alcon waived it by disclosing the information to Alcon's potential adversaries and their separate counsel.  *See Westinghouse*, 951 F.2d at 1431 ("[I]t is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that *an* adversary might obtain the protected materials.").  Alcon's in-house counsel told Goldstein that it "reserves all rights," *i.e.*, the right to sue him, for "*your breaches* of the Employment Agreement."  Ex. 11 at ALCON_LENSX097742.  Goldstein is an adversary or at least a potential adversary.  Alcon contends that the protection extends so long as there is no disclosure to its opponent in *this* litigation, *i.e.*, J&J Vision.  Ex. 2 at 1.  That is not the law.  Disclosure to any potential adversary waives work product protection.  *Westinghouse*, 951 F.2d at 1429; *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 113 (D.D.C. 2016).

Moreover, even if the work product doctrine applies and even if Alcon did not waive it, J&J Vision has a substantial need to obtain access to these materials that are uniquely in Alcon's possession.  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).  To defeat J&J Vision's PI motion, Alcon

---

[2] Even Alcon cites a case that explains that documents related to "the factual circumstances surrounding" any alleged attorney-client relationship are not privileged.  *Utesch v. Lannett Co., Inc.*, No. 16-5932, 2020 WL 7260775, at *7-8 (E.D. Pa. Dec. 9, 2020); Ex. 2 at 5.

disavowed knowledge of the facts. *See, e.g.*, Ex. 1 at 48:20, 75:14-18. Yet, Alcon has unique access to these former employees who purportedly know the "facts." It is critical that J&J Vision understand the full scope of coordination between Alcon, Goldstein, and Vardin to permit it to effectively depose witnesses, test their credibility, and investigate Alcon's representations (including those made during the PI hearing). *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product may be discoverable "for purposes of impeachment or corroboration"). No other independently discoverable means could provide a substantial equivalent of the facts surrounding Alcon's after-the-fact coordination with Goldstein and Vardin, *e.g.*, "sharing information and counsel retention in order to establish a common defense strategy." Ex. 2 at 5. Although Goldstein and Vardin (or their counsel) are also in possession of these materials, and consented to production, Alcon refuses to produce them. The documents withheld by Alcon are "unique sources of both affirmative evidence and impeachment material for which there is no substitute." *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 426 (D.D.C. 2014). Because J&J Vision has no other way to obtain this material, fairness requires production.

## II.  ALCON CANNOT SHIELD ITS KNOWLEDGE OF THE ORIGIN OF THE LENSX CODE OR ITS RATIONALE FOR FIRING HEGEDUS (ROGS 6, 20)

In response to ROG 6 seeking ***Alcon's*** knowledge of the origin of the LenSx code, Alcon stated that ***Hegedus*** "asserted that he did not take IntraLase source code when he departed IntraLase in 2002, and that he did not know the provenance of the LenSx code when he arrived at LenSx Lasers, Inc. as a part-time contractor in August 2008." Ex. 13 at 10.[3] Although Alcon previously represented that it would supplement with additional information, including facts Alcon learned from Goldstein and Vardin, Ex. 15 at 3, it now asserts that there is no need to supplement. Ex. 16 at 3; Ex. 2 at 3. Although Alcon made no mention of it in its response to ROG 6, J&J Vision later learned that Alcon fired Hegedus shortly before filing that response, and that he now resides in Hungary. Ex. 17 at 2. J&J Vision thus served ROG 20, which requests a description of the facts and circumstances concerning Hegedus's termination and people with knowledge of the facts. Alcon has refused to provide anything but a bare-bones response. Ex. 18; Ex. 2 at 1, 3.

Alcon should be ordered to supplement both responses for two reasons. First, these interrogatories merely seek *facts*. ROG 6 seeks ***Alcon's*** knowledge about the origin of the accused code, any actions it took in response to its awareness that the code was stolen, people with knowledge about Alcon's awareness, and documents showing the same. It is both incomplete and misleading to relay what a single employee stated regarding the code's origin upon the eve of his termination because he was "the only remaining employee … that worked on the original development of the LenSx software," Ex. 13 at 10, without providing other pertinent factual information, including the facts known by other current and former Alcon employees. As Alcon's counsel stated earlier in discovery, "a company's knowledge is based on its employees." Ex. 19 at 2. Alcon should not only disclose the facts regarding its knowledge of the code's origin as of today, but also at the time the three culprits were employed by Alcon. That includes knowledge learned from Goldstein or Vardin (with whom Alcon is in contact and purports to have a common interest). Contrary to Alcon's attempts to distance itself from its predecessor LenSx Lasers Inc., Goldstein and Vardin (along with Hegedus) were ***Alcon*** employees for many years after Alcon

---

[3] Alcon's response is also incomplete and noticeably silent on whether Hegedus took the IntraLase source code in 2008, when he left a second time after working as a contractor for three years and joined LenSx immediately thereafter. Ex. 14 at 3.

acquired that company in 2010. Alcon's deficient response also fails to explain the facts regarding what actions it took in response to learning that the code did not originate at Alcon (or that it took none), the people with knowledge of Alcon's contentions, and related documents. Any assertion that Alcon's response is complete raises questions relating to the reasonableness of Alcon's investigation into the "overwhelming" evidence of "intentional copying" of J&J Vision's proprietary source code. Ex. 1 at 346:12-20.

The deficiencies with Alcon's response to ROG 20 are similar: Alcon should provide the full facts and circumstances surrounding Hegedus's termination, the reasons for his termination, and any person(s) knowledgeable about it. This is particularly so given the suspicious circumstances of his termination. If Alcon believed Hegedus's "assertions" (ROG 6), why did it terminate him "following interviews with counsel" (ROG 20)?[4]  If Alcon terminated Hegedus because it did not believe his "assertions"—assertions on which **Alcon is affirmatively relying** (ROG 6)—Alcon cannot shield that information, as it seeks to do in response to ROG 20. And if Alcon terminated Hegedus to make it difficult for J&J Vision to seek discovery from him in Hungary, that would also be highly relevant. At a minimum, Alcon should disclose the reasons **given to Hegedus** for his termination, and anyone with knowledge of the same.

Second, Alcon waived any protection with respect to the subject matter. Alcon made a strategic decision to disclose and rely on **Hegedus's** assertions to Alcon's counsel to support **Alcon's** knowledge (or lack thereof) in its response to ROG 6. Alcon should now "in fairness" provide the full scope of its knowledge on the same subject matter, including information provided by other employees and/or former Alcon employees indicating their knowledge of the origin of the LenSx code. Fed. R. Evid. 502(a); *see also Kraft Food Grp. Brands, LLC v. TC Heartland, LLC*, No. 14-028-LPS-CJB, 2016 WL 4131968, at *3 (D. Del. July 25, 2016). Alcon "cannot use the privilege as a sword rather than a shield, and thereby divulge whatever information is favorable to [Alcon's] position and assert the privilege to preclude disclosure of the detrimental facts." *Princeton Dig. Image Corp. v. Off. Depot Inc.*, No. 13-239-LPS, 2017 WL 3264068, at *2 (D. Del. Aug. 1, 2017) (internal quotation omitted). Alcon also put its knowledge "at issue" by proclaiming to the Court its own "good faith"—*e.g.*, that Alcon believed the LenSx source code "was owned by the sellers and we had **not** been disabused of that" (Ex. 1 at 78:25-79:1), while shielding additional information from current and former Alcon employees under the cloak of privilege. *See In re Hum. Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. 2008) (collecting cases). Having done so, Alcon should set forth its complete knowledge of the origin of the code.

Alcon similarly waived any alleged privilege over its bases for firing Hegedus—a fact Alcon intends to rely upon (Ex. 1 at 48:20, 75:14-18)—by disclosing Hegedus's "assertions" to counsel that led to his termination (ROG 6, 20). In fairness, Alcon should disclose why.[5]  The Court should reject Alcon's baseless attempts to obscure the truth about its brazen code theft and Hegedus's termination.

---

[4] Hegedus worked for Alcon for more than a decade, is an inventor on two of its asserted patents, and was named in its initial disclosures weeks before he was terminated. D.I. 60; D.I. 104, Ex. 61.

[5] To the extent Alcon is withholding documents on the same subject matters, *e.g.*, in response to RFP Nos. 94-97, 126, 136, 144, 172-74, *see* Exs. 3-4, Alcon has also waived privilege with respect to such documents and the Court should compel their production.

Respectfully submitted,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

Enclosures

cc:    All Counsel of Record (w/enc.)

**Attachments**

Exhibit 1 – Transcript of Preliminary Injunction Hearing, *AMO Development, LLC, et al. v. Alcon LenSx, Inc. et al.*, No. 20-842-CFC (May 13, 2021) (highlighted excerpts) (***public document***)

Exhibit 2 – Email correspondence between Noah Frank and Rachel Weiner Cohen (July-Aug. 2021) (excerpts) (***public document***)

Exhibit 3 – Alcon's Objections and Responses to J&J's First Set of Requests for Production (Nos. 1-142) (Feb. 4, 2021) (excerpts) (***public document***)

Exhibit 4 – Alcon's Objections and Responses to J&J's Third Set of Requests for Production (Nos. 144-174) (June 7, 2021) (excerpts) (***public document***)

Exhibit 5 – Notice of Subpoena and Subpoena to Peter Goldstein (Mar. 10, 2021) (excerpts) (***public document***)

Exhibit 6 - Notice of Subpoena and Subpoena to Kostadin Vardin (Mar. 9, 2021) (excerpts) (***public document***)

Exhibit 7 – Letter from Rachel Weiner Cohen to Lai Yip (July 14, 2021) (excerpts) (***sealed***)

Exhibit 8 – Letter from Lai Yip to Rachel Weiner Cohen (July 21, 2021) (excerpts) (***public document***)

Exhibit 9 – Letter from Lai Yip to Holly Victorson (June 11, 2021) (***public document***)

Exhibit 10 – Signature pages to LenSx Lasers, Inc. Stock Purchase Agreement, bearing Bates label ALCON_LENSX003292 (Aug. 11, 2010) (***sealed***)

Exhibit 11 – Letter from Jeffrey Prokop to Peter Goldstein, bearing Bates label ALCON_LENSX097741 (June 23, 2021) (***sealed***)

Exhibit 12 – Employment Agreement between Peter Goldstein and LenSx Lasers, Inc., bearing Bates label ALCON_LENSX053548 (Aug. 11, 2010) (***sealed***)

Exhibit 13 – Alcon's First Supplemental Objections and Responses to J&J's First Set of Interrogatories (Mar. 3, 2021) (excerpts) (***public document***)

Exhibit 14 – Letter from Rachel Weiner Cohen to Noah Frank (Apr. 12, 2021) (excerpts) (***sealed***)

Exhibit 15 – Letter from Rachel Weiner Cohen to Noah Frank (July 14, 2021) (excerpts) (***sealed***)

Exhibit 16 – Letter from Noah Frank to Rachel Cohen (July 23, 2021) (excerpts) (***public document***)

Exhibit 17 – Letter from Noah Frank to Rachel Cohen (June 29, 2021) (excerpts) (***public document***)

Exhibit 18 – Alcon's Objections and Responses to J&J's Fourth Set of Interrogatories (June 7, 2021) (excerpts) (***public document***)

Exhibit 19 – Letter from Noah Frank to Rachel Cohen (Apr. 20, 2021) (excerpts) (***public document***)