IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) (JLH) <br><br> **JURY TRIAL DEMANDED** <br><br> REDACTED - PUBLIC VERSION <br> Original filing date: March 8, 2022 <br> Redacted filing date: March 15, 2022 |
| ALCON INC., ALCON RESEARCH, LLC and ALCON VISION, LLC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counter-Defendants. | |

**LETTER TO THE HONORABLE JENNIFER L. HALL IN RESPONSE TO
ALCON'S LETTER REGARDING DISCOVERY DISPUTE**

Dear Judge Hall:

Three months ago, Alcon asked this Court to compel J&J Vision to disclose all "non-privileged facts" Alcon believed J&J Vision wrongly withheld regarding a 2014 inspection of LenSx object code. One document at issue was a confidential memorandum AMO employee Brent Schellhase prepared at the direction of counsel to assist counsel in rendering legal advice to AMO. *E.g.*, Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 14:7–14 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also id.* at 19:16–20:11 (stating that Alcon's request sought "a rog response plus documents"). The Court declined to compel disclosure of any materials, including the Schellhase report. *Id.* at 34:18–23.

Alcon is now back before the Court, seeking the same report it sought in December. To justify re-filing a motion it already lost, Alcon points to a supposedly "new contention" in one of J&J Vision's interrogatory responses. Br. at 1. But this allegedly "new" contention is not new. Although Alcon claims J&J Vision first contended "last week" that it could not have discovered the full scope of Alcon's infringement until it received access to the LenSx source code in November 2020 (Br. at 1), J&J Vision clearly explained that position in response to Alcon's prior motion and in its preliminary injunction motion over a year ago. D.I. 222 at 2; *see also* D.I. 43 at 19–20; D.I. 97 at 5–7. J&J Vision has been consistent since the get-go; while it compared the two companies' **object code** in 2014, it did not have access to or compare the **source code** until it was exchanged in this litigation. And as for Alcon's now so-called "[c]ritical[]" observation that J&J Vision "is not claiming any work-product protection over the Schellhase report," Br. at 1, Alcon already made that argument too, multiple times, at the December hearing. Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 14:7–15:2 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also id.* at 19:16–22, 21:16–22:2, 22:19–23:3.[1]  Simply put, nothing has changed.

Turning to the merits, Alcon's main assertion (once again) is that J&J Vision is allegedly withholding the report solely because it was sent to counsel. Br. at 1. As addressed in December, however, that is inaccurate. The report was not a mere "technical report later sent to counsel" (Br. at 2); it was created *at the request* of counsel. Mr. Schellhase would not have inspected the LenSx, and his report would not have existed, but for counsel's need for the information to provide AMO legal advice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 2 (Pang Dep. Tr.) at 141:20–142:21 (report created at the direction of counsel). As such, Mr. Schellhase's report to AMO's counsel is protected by the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (holding that responses to questionnaires sent to managers at the request of in-house counsel were privileged because they "were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel"). As Your Honor stated in December, "it's not as if there was some historical events that occurred and lawyers interviewed folks about it, and that the party is trying to hide the underlying facts relevant to the event. Here we have what J&J has represented to be an internal expert, slash, consultant investigation about a competing product." Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 36:3–16.

---

[1] Because J&J Vision is not asserting attorney work-product protection over the Schellhase report, any suggestion that Alcon has a substantial need for the material it contains and cannot obtain that information in any other way is not only incorrect, it is beside the point. *Cf.* Br. at 1-2 (alluding to Mr. Schellhase's limited memory of the details of his inspection eight years ago).

As Alcon acknowledges, the attorney-client privilege "applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *cf.* Br. at 2. Mr. Schellhase's analysis satisfies every element. First, the report existed solely to *communicate* to counsel what Mr. Schellhase, acting at the direction of counsel as an "internal expert, slash, consultant," Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 36:12–15, observed about a competing product. Second, the report was between *privileged persons*, *i.e.*, AMO's counsel and Mr. Schellhase, then an AMO employee.[2] Third, it was communicated *in confidence*. *See* Ex. 3 (Schellhase Dep. Tr.) at 133:12–21, 141:23–142:8. Fourth, Mr. Schellhase's inspection and resulting memorandum were directed by AMO's in-house counsel *for the purpose of providing legal assistance to their client* (i.e., AMO).

Contrary to Alcon's assertion (Br. at 2), it is of no moment that Mr. Schellhase's report contained technical information. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005) ("Where client and counsel share technical information, that communication is privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice."); *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, No. 19-428-RGA, Doc No. 233 (D. Del. 2021), at *5 (similar). As the Court pointed out, Mr. Schellhase did not provide a report of "historical events," but rather a counsel-directed analysis. Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 36:3–16. Moreover, the selection of *which* facts to include in a communication to counsel may reveal privileged information. *See Gen. Elec. Co. v. United States*, 2015 WL 5443479, at *1 (D. Conn. Sept. 15, 2015) ("[I]nformation communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege.").

Alcon's case law is inapposite. The witnesses in *In re Six Grand Jury Witnesses* had, at counsel's direction, performed an analysis of their employer's costs. 979 F.2d 939 (2d Cir. 1992). The Second Circuit held that the witnesses were required to answer factual inquiries such as "what analysis did you perform?" but not questions "suggesting that the witness is being asked about any aspect of any communication he might have had with the lawyer." *Id.* at 945–46. That is precisely the line J&J Vision drew. Mr. Schellhase answered questions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see, e.g.*, Ex. 3 (Schellhase Dep. Tr.) at 90:20–92:24, 94:19–95:11, 113:11–115:14, 134:19–135:13, but not what he communicated to AMO's counsel, by memorandum or otherwise, *see, e.g.*, *id.* at 100:14–20, 103:21–25.

To the extent Alcon wants the "non-privileged facts" surrounding the 2014 inspection, J&J Vision provided them. *See* Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 34:18–23; D.I. 222 at 1 & n.1; Ex. 4 (J&J Vision's Resps. to Rog. Nos. 5 & 17) at 2–4, 6. For example, J&J Vision detailed the facts

---

[2] Alcon's assertion that the communication could not have been privileged unless it contained "a request **by Mr. Schellhase** for legal advice," Br. at 1 (emphasis added), misunderstands the attorney-client privilege as applied to a corporate entity like AMO. *See Upjohn*, 449 U.S. at 394 (finding privilege where "communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice").

2

relating to the inspection in a July 2020 letter to Alcon, noting that the LenSx object code displayed "hundreds of references to file, function, and object names and other text that are identical to those found in the iFS® software" and listing numerous examples. Ex. 5 (July 14, 2020 Ltr. from W. Foust to D. Endicott) at 2–5. Alcon deposed Mr. Schellhase, who testified about ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *See, e.g.*, Ex. 3 (Schellhase Dep. Tr.) at 90:20–92:24, 94:19–95:11, 113:11–115:14. And Alcon deposed other witnesses involved in the 2014 inspection as well. *See, e.g.*, Ex. 6 (Kraai Dep. Tr.) at 201:18–214:19. *Cf. Upjohn*, 449 U.S. at 396 ("Here the Government was free to question the employees who communicated with Thomas and outside counsel."). Alcon has provided no basis to think there is additional relevant non-privileged information. Nor has Alcon explained why it needs these facts in the form of the report that constitutes Mr. Schellhase's communication to counsel. *Cf. id.* ("While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege."). Any arguments regarding J&J Vision's alleged knowledge or delay stemming from access to the LenSx object code in 2014 can be made without accessing a privileged report prepared at the direction of counsel. Indeed, Alcon made those very arguments to defeat J&J Vision's motion for a preliminary injunction, based on information J&J Vision had already disclosed. D.I. 93 at 7–8 (quoting Ex. 5 at 1–2); Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 37:10–18.

Lastly, Alcon is once again wrong that there is a "sword-and-shield problem." Br. at 3. There is no sword. As J&J Vision previously explained, it is not relying on the 2014 inspection *at all* to support its claims. *See* D.I. 222 at 2; *cf.* Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 35:17–22. Mr. Schellhase's analysis was completely superseded once J&J Vision gained access to Alcon's **source code** in November 2020, which revealed infringement of a wholly different type and scale than any object code inspection could have revealed. *Cf.* Ex. 7 (Teodorescu Rough Dep. Tr.) at 131:1–4 (Alcon's corporate designee on LenSx software admitting that someone with access to a LenSx machine "cannot see source code in its format"). Even if Alcon needed to know "the details of what [J&J Vision] actually knew in 2014," Br. at 3, J&J Vision is not "shielding" them. Alcon has both its own object code for the LenSx, which is all Mr. Schellhase could access in 2014, and J&J Vision's source code, which was produced in this case. Alcon thus has everything it needs to determine what J&J Vision could have discovered "with the exercise of reasonable diligence." *See* Ex. 1 (Dec. 17, 2021 Hr'g Tr.) at 36:16–22 (The Court: "I really don't think there are underlying facts that are being hidden here. The underlying facts are the content of the software and the quality of Alcon's products in 2014. And it's Alcon's product, they know what the facts are."); Br. at 3. Once again, J&J Vision is not shielding non-privileged facts from Alcon.

The Court has already squarely decided this issue. If Alcon was unhappy with the result, it could have filed timely objections under Local Rule 7.1.5(b). But it is a manifest waste of the Court's (and the parties') time and resources to bring essentially the same motion seeking the same relief the Court denied three months ago, especially now that fact discovery has closed. J&J Vision respectfully asks the Court to deny Alcon's motion to compel once again.

        Respectfully,

        */s/ Anthony D. Raucci*

        Anthony D. Raucci (#5948)

Attachments

cc:    Clerk of the Court (via hand delivery; w/ attachments)
       All Counsel of Record (via electronic mail; w/ attachments)

**Attachments**

| Exhibit | Description |
|---|---|
| Exhibit 1 | Transcript of Discovery Dispute Teleconference (December 17, 2021) (excerpts) (highlighted) (■■■■) |
| Exhibit 2 | Transcript of Andrew Pang Deposition (March 3, 2022) (excerpts) (highlighted) (*sealed*) |
| Exhibit 3 | Transcript of Brent H. Schellhase Deposition (February 14, 2022) (excerpts) (highlighted) (*sealed*) |
| Exhibit 4 | Plaintiffs' Second Supplemental Response to Defendants' Interrogatory Nos. 5 and 17 (October 29, 2021) (excerpts) (■■■■) |
| Exhibit 5 | Letter from Warren Foust to David J. Endicott re: Notice of Dispute Concerning Copyright and Patent Infringement (July 14, 2020) (highlighted) (*sealed*) |
| Exhibit 6 | Transcript of Matthew Kraai Deposition (February 18, 2022) (excerpts) (highlighted) (*sealed*) |
| Exhibit 7 | Court Reporter's Rough Draft of Transcript of Dan Teodorescu Deposition (March 4, 2022) (excerpts) (highlighted) (*sealed*) |