IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

              Plaintiffs,

     v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

              Defendants.

---

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

              Counterclaim-Plaintiffs,

     v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

              Counterclaim-
              Defendants.

**Redacted - Public Version**

C.A. No. 20-842-CFC



**VOLUME 1 OF 1 (A1-A2886)**
**APPENDIX OF EXHIBITS CITED IN ALCON VISION, LLC, ALCON**
**LABORATORIES, INC. AND ALCON RESEARCH, LLC'S**
**DAUBERT AND DISPOSITIVE MOTIONS**

OF COUNSEL:
Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9123

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: August 19, 2022

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

**Table of Contents**

| Exhibit No. | Description | Page(s)[1] |
|---|---|---|
| 1 | Abbott Completes Acquisition of Optimedica, PR Newswire (Aug. 19, 2013), available at https://abbott.mediaroom.com/2013-08-19-Abbott-Completes-Acquisition-of-OptiMedica | A1 |
| 2 | July 14, 2020 Letter from W. Foust to D. Endicott | A6 |
| 3 | May 13, 2021 Hearing Transcript AMO Development v. Alcon Systems, CA No. 20-842-CFC | A12 |
| 4 | October 29, 2021 Plaintiffs' 2nd Supplemental Responses to Interrogatories No. 5 and 17 | A154 |
| 5 | February 22, 2022 Plaintiffs' Response to 5th Set of Interrogatories (Nos. 24-27) | A169 |
| 6 | March 4, 2022 Plaintiffs' 2nd Suppl. Responses to 5th Set of Interrogatories (No. 27) | A191 |
| 7 | March 7, 2022 J&J Corrected Objections and Responses to Alcon's Sixth Set of Interrogatories (Nos. 28-38) | A201 |
| 8 | March 4, 2022 Plaintiffs' Responses to Defendants' 1st Set of Requests for Admissions (Nos. 1-60) | A251 |
| 9 | April 26, 2022 N. Baer Opening Expert Report | A290 |
| 10 | August 4, 2022 N. Baer Deposition Transcript | A408 |
| 11 | July 21, 2022 Corrected D. Schmidt Opening Expert Report | A545 |
| 12 | May 27, 2022 D. Schmidt Rebuttal Expert Report | A1075 |
| 13 | July 21, 2022 Corrected D. Schmidt Reply Expert Report | A1371 |
| 14 | July 22, 2022 D. Schmidt Deposition Transcript | A1553 |
| 15 | April 27, 2022 K. Hatch Opening Expert Report | A1700 |
| 16 | June 23, 2022 K. Hatch Reply Export Report | A1751 |
| 17 | July 9, 2022 K. Hatch Deposition Transcript | A1775 |
| 18 | April 29, 2022 L. Stamm Opening Expert Report | A1889 |
| 19 | June 23, 2022 L. Stamm Reply Expert Report | A2136 |
| 20 | July 14, 2022 L. Stamm Deposition Transcript | A2237 |

[1] Pursuant to ¶ 17 of the Scheduling Order, D.I. 61, the exhibits are highlighted, and only the relevant pages are attached. As such, there are gaps in the page numbers.

| 21 | March 3, 2022 A. Pang Deposition Transcript | A2325 |
|---|---|---|
| 22 | May 11, 2022 Corrected Version of J&J Vision's January 14, 2022 Privilege Log | A2441 |
| 23 | JJSV_00802370 (December 13, 2017 Assignment Agreement) | A2811 |
| 24 | JJSV_01119333 (May 29, 2020 Exclusive License Agreement) | A2821 |
| 25 | JJSV_01119334 (May 29, 2020 Exclusive License Agreement) | A2827 |
| 26 | JJSV_01119335 (May 29, 2020 Exclusive License Agreement) | A2833 |
| 27 | JJSV_01119336 (May 29, 2020 Exclusive License Agreement) | A2839 |
| 28 | JJSV_01119365 (January 15, 2020 Corporate Structure Chart) | A2845 |
| 29 | JJSV_01119536 (October 1, 2020 Manufacturing and Supply License Agreement) | A2948 |
| 30 | JJSV_01119537 (August 21, 2020 Transfer and Assignment of Copyright) | A2864 |
| 31 | JJSV_01119538-39 (August 21, 2020 Transfer and Assignment of Copyright) | A2868 |
| 32 | April 29, 2022 J. Davis Opening Expert Report | A2871 |

# EXHIBIT 1



BACK TO PRESS RELEASES

# ABBOTT COMPLETES ACQUISITION OF OPTIMEDICA

  

PR Newswire
ABBOTT PARK, Ill.

ABBOTT PARK, Ill., Aug. 19, 2013 /PRNewswire/ -- Abbott (NYSE: ABT) today announced that it has completed its acquisition of OptiMedica Corporation, a privately-held, Silicon Valley-based ophthalmic device company.

**A2**

The acquisition expands Abbott's vision care business into the femtosecond laser-assisted cataract surgery market. Most cataract procedures are performed manually with the surgeon making incisions into the eye by hand. OptiMedica's Catalys® Precision Laser System is designed to allow surgeons to replace some of the technically demanding manual steps in cataract surgery with precise, image-guided, femtosecond laser technology. A femtosecond laser can be used to create an anterior capsulotomy, effect phacofragmentation, and make a variety of incisions during cataract surgery. The Catalys laser system has both CE Mark in Europe and clearance from the U.S. Food and Drug Administration.

"OptiMedica's Catalys system enhances Abbott's leadership position in vision care with the addition of a state-of-the-art laser cataract technology to our portfolio," said Murthy Simhambhatla, senior vice president, medical optics, Abbott. "OptiMedica's technology combined with Abbott's global market presence, offer the potential to provide advanced cataract treatment options to more patients around the world."

Abbott acquired OptiMedica for $250 million, net of cash. Additional amounts totaling up to $150 million will be payable upon completion of certain development, regulatory and sales milestones.

## About Abbott Medical Optics

Abbott Medical Optics is focused on delivering life-improving vision technologies to people of all ages. The company offers a comprehensive portfolio of cataract, refractive and eye care products. Products in the cataract line include monofocal and multifocal intraocular lenses, phacoemulsification systems, viscoelastics, and related products used in ocular surgery. Products in the refractive line include wavefront diagnostic devices, femtosecond lasers and associated patient interface devices; excimer laser vision correction systems and treatment cards. Products in the eye care line include disinfecting solutions, enzymatic cleaners, lens rewetting drops and artificial tears. For more information, please visit www.abbottmedicaloptics.com.

## About Abbott

Abbott is a global healthcare company devoted to improving life through the development of products and technologies that span the breadth of healthcare. With a portfolio of leading, science-based offerings in diagnostics, medical devices, nutritionals and branded generic pharmaceuticals, Abbott serves people in more than 150 countries and employs approximately 70,000 people.

Visit Abbott at www.abbott.com and connect with us on Twitter at @AbbottNews.

## Private Securities Litigation Reform Act of 1995    A Caution Concerning Forward Looking Statements

*Some statements in this news release may be forward-looking statements for purposes of the Private Securities Litigation Reform Act of 1995. Abbott cautions that these forward-looking statements are subject to risks and uncertainties that may cause actual results to differ materially from those indicated in the forward-looking statements. Economic, competitive, governmental, technological and other factors that may affect Abbott's operations are discussed in Item 1A, "Risk Factors," to our Annual Report on Securities and Exchange Commission Form 10-K/A for the year ended Dec. 31, 2012, and are incorporated by reference. Abbott undertakes no obligation to release publicly any revisions to forward-looking statements as a result of subsequent events or developments, except as required by law.*

SOURCE Abbott



| CONSUMERS | INVESTORS | SITE MAP | **FOLLOW** |
| | | | **ABBOTT** |
| HEALTHCARE | NEWSROOM | GLOBAL | |
| PROFESSIONALS | | WEBSITES | |

CAREERS

ABOUT ABBOTT

RESPONSIBILITY

SUBSCRIBE

PARTNERS

CONTACTS

POLICIES

PRIVACY POLICY

TERMS &

CONDITIONS

ADVERTISING

PREFERENCES

© 2022 Abbott. All Rights Reserved. Please read the Legal Notice for further details.

Unless otherwise specified, all product and service names appearing in this Internet site are trademarks owned by or licensed to Abbott, its subsidiaries or affiliates. No use of any Abbott trademark, trade name, or trade dress in this site may be made without the prior written authorization of Abbott, except to identify the product or services of the company.

A5

# EXHIBIT 2

## REDACTED IN ITS

## ENTIRETLY

# EXHIBIT 3

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4
        AMO DEVELOPMENT, LLC,          :   CIVIL ACTION
 5      AMO MANUFACTURING USA, LLC     :
        and AMO SALES AND SERVICES,    :
 6      INC.,                          :
                                       :
 7      Plaintiffs,                    :
                                       :
 8          vs.                        :
                                       :
 9      ALCON LENSC, INC., ALCON       :
        VISION, LLC, ALCON             :
10      LABORATORIES, INC. and         :
        ALCON RESEARCH, LLC,,          :
11                                     :
        Defendants                     :
12      --------------------------     :
        ALCON INC., ALCON LENSX,       :
13      INC., ALCON RESEARCH, LLC,     :
        and ALCON VISION, LLC,         :
14                                     :
                                       :
15                                     :
        Counter-Plaintiffs             :
16                                     :
                                       :
17          v.                         :
                                       :
        AMO DEVELOPMENT, LLC, AMO      :
18      MANUFACTURING USA, LLC, AMO    :
        SALES AND SERVICES, INC.       :
19      And JOHNSON & JOHNSON          :
        SURGICAL VISION, INC.,         :
20                                     :
        Counter-Defendants             :   NO. 20-842-CFC
21

22                          - - -

23                          Wilmington, Delaware
                            Thursday, May 13, 2021
24                          9:00 o'clock, a.m.

25
        BEFORE:   HONORABLE COLM F. CONNOLLY, U.S.D.C.J.
```

2

APPEARANCES:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
BY:  JACK B. BLUMENFELD,  ESQ. and
    BRIAN P. EGAN, ESQ.

-and-

LATHAM & WATKINS LLP
BY:  MICHAEL A. MORIN, ESQ. and
    SARANG V. DAMLE, ESQ.
    (Washington, D.C.)

-and-

LATHAM & WATKINS LLP
BY:  ROGER J. CHIN, ESQ. and
    (San Francisco, California)

-and-

LATHAM & WATKINS LLP
BY:  RACHEL WEINER COHEN, ESQ.
    CAROLYN HOMER, ESQ. and
    HOLLY VICTORSON, ESQ.
    (Washington, D.C.)

Counsel for Plaintiffs

SHAW KELLER LLP
BY:  JOHN W. SHAW, ESQ.

-and-

---

4

1   P R O C E E D I N G S

2

3       THE COURT:  All right.  Good morning.  Please be
4   seated.

5       All right.  So this is my first civil
6   proceeding, I think it's my first civil proceeding certainly
7   in a patent case, so welcome everybody.

8       Let's have introductions.  Mr. Blumenfeld?

9       MR. BLUMENFELD:  Thank you, Your Honor.  Good to
10  see you again.

11      THE COURT:  Likewise.

12      MR. BLUMENFELD:  Jack Blumenfeld for the
13  plaintiff from Morris Nichols.

14      At counsel table, Mike Morin, Roger Chin and
15  Rachel Cohen from Latham & Watkins.  Behind them, Sarang
16  Damle, who's also from Latham & Watkins.

17      And then we have a number of people, Denise
18  DeFranco from Johnson & Johnson sitting in the corner.
19  Holly Victorson from Latham & Watkins, Carolyn Homer, Chris
20  Cuzick and Dr. Vellturo sitting behind him, and then Brian
21  Egan, my partner.

22      THE COURT:  All right.  Thank you.

23      MR. BLUMENFELD:  And that's most of the cast
24  here today, Your Honor.

25      THE COURT:  Sounds good.

---

3

1   APPEARANCES (Continued):

2

    KIRKLAND & ELLIS LLP
3   BY:  JEANNE HEFFERNAN, ESQ.
        (New York, New York)

4

5       -and-

6

    KIRKLAND & ELLIS LLP
7   BY:  GREGG F. LoCASCIO, ESQ.
        NOAH S. FRANK, ESQ.
8       (Washington, D.C.)

9

    Counsel for Defendants

10

11      - - -

---

5

1       MR. BLUMENFELD:  Thank you.

2       THE COURT:  Thank you very much.  Mr. Shaw?

3       MR. SHAW:  Good morning, Your Honor.  John Shaw
4   for defendants.

5       Joining me from Kirkland & Ellis starting at
6   counsel table, Gregg LoCascio, Jeanne Heffernan, Noah Frank,
7   Hannah Bedard, and then from Alcon, Chris cook and Jeff
8   Prokop.

9       THE COURT:  All right.  Thanks.

10      Let's deal with how you want to do the masks.
11  First of all, we're going to have live testimony?

12      MR. MORIN:  We are, Your Honor.  We're going to
13  have live testimony from what I understand from all four
14  witnesses that you asked for and everyone is live for both
15  sides.

16      THE COURT:  All right.

17      MR. LoCASCIO:  Correct, Your Honor.  And to your
18  question on masks, obviously, we follow your lead.

19      THE COURT:  No, no.  Actually, this is where I
20  don't want the power of the office to make people
21  uncomfortable.  Right?  You know, people think my jokes are
22  funny now.  Like I said, my wife and I talk all the time.

23      See, I really do want to invite candid.  Nobody
24  should be at all uncomfortable in saying I don't want to
25  take my mask off.  For instance, I mean, I've been

---

342

1  to make clear to the appellate court that my review of the
2  record, some preliminary back background information.
3          The plaintiffs, which are part of Johnson &
4  Johnson, sued defendant Alcon for patent and copyright
5  infringement stemming from Alcon's manufacture, use and
6  sales of the LenSX system.
7          J&J Vision, I am going to call it J&J just as
8  the parties did, and Alcon compete in the FLACS market, the
9  femtosecond laser assisted cataract surgery market. J&J
10 manufactures the Catalys precision laser system and Alcon
11 measure the competing LenSX system. The Catalys system is
12 mostly purchased by hospitals and ambulatory surgery centers
13 and the customers pay a per-procedure fee for each
14 treatment.
15         J&J also sells other consumable products for
16 cataract products and they had established today a
17 correlation between their sales of the Catalys and other
18 related products, so their pull-through theory has some
19 evidentiary basis to it. That doesn't mean I have accepted
20 it. It's a colorable theory.
21         Most of their evidence from the Catalys system
22 comes from the per-operation fees and there's a direct
23 correlation there. I don't think there's any dispute about
24 that.
25         The motion for the preliminary injunction

343

1  concerns J&J's assertion of its copyright in the iFS
2  femtosecond laser operating software.
3          It's undisputed that there's overlapping
4  copyright. Right? And there's a credible case to be made,
5  very credible, that the overlapping software lines were
6  intentionally copied. There's powerful evidence of that.
7  There's powerful evidence that it was knowingly concealed.
8          Now, whether that knowledge can be attributed to
9  Alcon today or current employees of Alcon, a completely
10 unanswered question. And as I understand it, again,
11 undisputed, the individuals who were in the employ of the
12 predecessor, I guess J&J that had the design software are no
13 longer with Alcon. That's undisputed.
14         MR. MORIN: Yes, but after February 23rd, after
15 we filed the motion.
16         THE COURT: Okay.
17         MR. MORIN: One of them left we were told on
18 February 23rd.
19         THE COURT: Got you. Didn't know that or didn't
20 recall that.
21         MR. LoCASCIO: Yes, but none of the others.
22         THE COURT: All right. The source code was
23 produced. Again, I think it's undisputed, it was in
24 November of last year. It's part of discovery in this case.
25         The preliminary injunction was sought in early

344

1  February and I don't attribute, I don't think that's a delay
2  and I don't fault J&J. In fact, I actually welcome that
3  kind of review before a party takes an extraordinary step of
4  seeking the extraordinary remedy that a preliminary
5  injunction would find.
6          Now, the copyright claim was added to the case,
7  a pre-existing patent case in this court, and it was added
8  in September of 2020, I believe. Correct? September of
9  '20? I can't recall the exact date, but that's my
10 recollection. And J&J first apprised Alcon of J&J's
11 knowledge and belief that copying had occurred on July 14th,
12 2020.
13         It's also undisputed, I believe, that as of
14 2014, J&J had in its possession all of the knowledge that
15 formed a basis of its assertion on July 14th, 2020 that
16 Alcon or former employees of Alcon had unlawfully copied the
17 challenged source code. Again, I think that's all
18 undisputed.
19         In deciding whether to a grant a preliminary
20 injunction, first of all, I apply the Third Circuit law.
21 The parties agree on that and I consider four factors -- the
22 likelihood of success on the merits, irreparable harm to the
23 moving party if the injunction is denied, irreparable harm
24 to the non-moving party if the injunction is granted, and,
25 four, the public interest. And I quote there from Ramsay

345

1  against National Board of Medical Examiners, 968 F3d. At
2  page 256.
3          Now, that test is perhaps the most common
4  articulation of the test by the Third Circuit in the last
5  five to ten years. I think in prior years, and as other
6  circuits do, the Third Circuit had referred to the third
7  prong involving a balancing of the equities between the
8  parties and the fourth prong, an overall balancing of the
9  public interest along with the other factors. But either
10 way I think it has been demonstrated by the record today,
11 counsel all agree what are the legal tests, that I must
12 apply the four prongs. And I think counsel agree as well
13 and it's certainly clear from Third Circuit case law that
14 the first two factors, the irreparable harm and the
15 likelihood of success on the merits and the irreparable harm
16 that is to the moving party, if injunction were to be
17 denied, those are gateway factors. That's the terminology
18 the Third Circuit used, and so both of those must be
19 established before the Court proceeds to consideration of
20 the third and the fourth factors.
21         As far as the first factor, the likelihood of
22 success, the moving party must make that demonstration with
23 evidence that's significantly better than negligible.
24 That is, they have to demonstrate a significantly better
25 than negligible chance of success on the merits.

346

1    As far as the second factor, irreparable harm,
2    there, the movant must demonstrate that it is more likely
3    than not to suffer irreparable harm in the absence of the
4    preliminary relief it seeks.
5    A continuing copyright violation does not give
6    rise to presumption of irreparable harm, and that's a quote.
7    It's not a quote, but that principle was articulated by the
8    Third Circuit in the TD Bank case found at 928 F3d. 259,
9    pages 280 to 81.  And there the Court said, and I quote, "A
10   bare violation of a statutory right enshrined in the
11   copyright act does not establish irreparable harm."
12   Now, let me speak first to the likelihood of
13   success factor.  I think this factor has been established.
14   I think really the only question out there is the causation
15   factor that you all have discussed.  And I'm not satisfied
16   that inoperability by itself isn't sufficient.  I tend to
17   think it is in a preliminary injunction phase involving
18   software where over 26,000 lines have been copied and,
19   frankly, the evidence is overwhelming that it was
20   intentionally copied.
21   I think the fact there was intentional copying
22   speaks to the importance of the software that's at issue,
23   and although not -- we didn't really address very much in
24   the argument, but I think the fact that, even if one aspect
25   of a copyrighted work infringes renders the work in its

347

1    entirety at least under certain circumstances to be a
2    violation of the act.  I think that also informed my
3    decision.
4    To prove copyright infringement, two elements
5    must be proven.  The ownership of the valid copyright and
6    the copying of constituent elements of the work that are
7    original.  I think that's what we have here.  We have
8    constituent elements.  Showing unlawful copying itself has
9    two elements.  The plaintiff must show there was actual
10   copying and material appropriation, and that's from a
11   Third Circuit decision in Tanksley at 902 F3d. 165, page
12   173.
13   And because not all aspects of a creative work
14   are legally protected, for example, the ideas underlying
15   particular expression, the material appropriation prong asks
16   whether there is substantial similarity between the original
17   and the copy once legally unprotectible elements are
18   filtered out, and I just think that has been consistently
19   demonstrated here.
20   There has been unrebutted evidence that the iFS
21   Version 2.02 was created by agents of J&J Vision, that the
22   program in question required at least a modicum of
23   creativity, and I think every indication is that the
24   plaintiffs possessed a valid copyright.  As I said, the
25   parties acknowledge, both of them, that the LenSx system

348

1    contains overlapping code and I think the creative choices
2    inherent in the design, structure and implementation of the
3    software are protected by the copyright act.
4    Alcon may have reasonable arguments on precise
5    scope of the infringement, but I do think sufficient
6    evidence in the Schmidt declaration demonstrates the core
7    functions of, or some core functions, and that's really all
8    that's required, of the LenSX system were built on top of
9    the appropriate code.  So I would find in favor of the
10   movant as far as the first factor.
11   But it's on the second factor that the movant I
12   think cannot meet its burden.  So let's talk about really
13   why that is.
14   So, first, I do think there was delay that
15   counsels against irreparable harm and, again, I don't think
16   that delay occurred between November and February.  The
17   delay that I think counsels against a finding of irreparable
18   harm is the fact that -- and, again, the credible testimony
19   of the CFO, Mr. Cuzick, I believe, was that J&J was in
20   possession as of 2014, of all the information it had that
21   justified in its mind its assertion as of July 14, 2020,
22   that there was a copyright violation.
23   By that time there were over a thousand machines
24   that had been installed by Alcon, but no claim had been
25   brought.  There is no evidence that was adduced that would

349

1    even suggest that prior to July of 2020, J&J took steps to
2    give notice to Alcon that its software was in violation of
3    the copyright act to allow it to correct the situation, to
4    threaten it with a lawsuit, with a preliminary injunction.
5    No letter, no phone calls, nothing suggests that.
6    And it's true that delay caused by a plaintiff's
7    good-faith effort to investigate an infringement or to
8    determine how serious an infringement is does not preclude a
9    finding of irreparable harm.  I'm citing there the Third
10   Circuit case in BP Chemical at 229 F3d. 254, page 264.  But
11   that's not what we have here.  I mean, we had arguably,
12   right, a good-faith effort sometime before 2014 to take a
13   look at the code and limit it to the object code, but you
14   don't see anything else that, any further effort beyond
15   that.  And as I say, and I find it very compelling what we
16   didn't see was any effort whatsoever to try to tell Alcon
17   that they were engaging in any kind of violation or
18   copyright, to stop that, and that's especially telling since
19   the parties were already engaged in litigation and
20   apparently had set up a procedure by which they could
21   arbitrate or resolve disputes between the parties.  So the
22   delay I find probative of a lack of irreparable harm.
23   The second factor is, and really, the basis, as
24   I see it, the central core of the argument made by the
25   movant that irreparable harm, is that it's unable to

# EXHIBIT 4

## REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | C.A. No. 20-842 (CFC) (JLH) |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL** |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | ) ) ) | **MATERIAL – ATTORNEYS' EYES ONLY** |
| | ) | |
| Defendants. | ) | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | ) ) ) | |
| Defendants and Counterclaim Plaintiffs, | ) ) ) ) | |
| v. | ) ) | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants. | ) ) ) | |

**PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE TO
DEFENDANTS' INTERROGATORY NOS. 5 AND 17**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs and Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales & Service, Inc., and Counterclaim Defendant Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J Vision") hereby provide their second supplemental response to Defendants and Counterclaim Plaintiffs Alcon Vision, LLC and Alcon Research, LLC, Defendant Alcon Laboratories, Inc., and Counterclaim Plaintiff Alcon, Inc.'s (collectively, "Alcon") Interrogatories Nos. 5 and 17.

**GENERAL OBJECTIONS**

1.      J&J Vision incorporates by reference its General Objections to Alcon's First Set of Interrogatories (Nos. 1-20) served on February 10, 2021.

**INTERROGATORY RESPONSES**

**INTERROGATORY NO. 5:**

Identify each and every LenSx system or component, or software, including but not limited to Source Code, that J&J has ever possessed, inspected, or viewed, and provide the following information about each of them: the quantity J&J possessed, inspected, or viewed, the people at J&J who possessed, inspected, or viewed them, the date, source, and other circumstances under which each Person at J&J came to possess, inspect, or view them, every use of them, all testing, evaluation, analysis, observation, or reverse engineering involving them, and all Documents

1

referring or relating to them, and the identity by production number of all Documents referring or relating to the facts requested herein.

**RESPONSE TO INTERROGATORY NO. 5:**

J&J Vision incorporates its General Objections as if fully asserted herein. J&J Vision objects to the Interrogatory as overbroad and unduly burdensome in that it seeks information concerning "each and every" LenSx system or component that "any Person" at J&J Vision has ever "viewed," as well as "all Documents" concerning the same. J&J Vision further objects to the term "viewed" as vague and ambiguous. J&J Vision objects to the Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product immunity, or any other applicable privilege or protection.

Subject to and without waiving its General and Specific Objections, J&J Vision responds as follows: J&J Vision has inspected a LenSx machine with version 2.20.02 of the LenSx software installed.

J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (MARCH 3, 2021):**

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above.

2

Subject to and without waiving its objections, J&J Vision provides the following further response:  In 2014, Abbott Medical Optics, Inc. ("AMO") obtained a used LenSx Laser system with version 2.20.02 of the LenSx software, as a tradein in connection with a sale of a Catalys Laser system to Island Eye Surgicenter, LLC. After receipt, AMO inspected the LenSx system at the direction of counsel.  The first time that J&J Vision had access to and could inspect any version of the LenSx source code was in late November 2020, subject to the parties' confidentiality agreement.

J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (OCTOBER 29, 2021):

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above.

Subject to and without waiving its objections, J&J Vision provides the following further response:  In April 2014, at the direction of and in connection with discussions with legal counsel, Brent Schellhase inspected the LenSx Laser system, installed with the object code for LenSx version 2.20.02, that Abbott Medical Optics obtained from Island Eye Surgicenter, LLC.  However, J&J Vision did not have, and

3

could not inspect, any version of the LenSx source code until it was exchanged in this litigation in November 2020.

J&J Vision understands that Georg Schuele may have viewed the same LenSx machine that Abbott Medical Optics obtained from Island Eye Surgicenter, LLC.

Pursuant to Fed. R. Civ. P. 33(d), J&J Vision states that information responsive to this Interrogatory can be found at least in the following documents: JJSV_00449380;    JJSV_00449381;    JJSV_00449382;    JJSV_00449407; JJSV_00456669; JJSV_00456671; JJSV_00456673.

J&J Vision's investigation is ongoing.  J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

## INTERROGATORY NO. 17:

Describe in detail J&J's considerations in when to bring suit, including how and when J&J first learned of the alleged patent and copyright infringement and any fact investigation conducted of Alcon's products or programs, identify persons most knowledgeable of the facts requested herein and the subject matter of each person's knowledge, and identify all Documents by production number referring or relating to the facts requested herein.

4

## RESPONSE TO INTERROGATORY NO. 17:

J&J Vision incorporates its General Objections as if fully asserted herein. J&J Vision objects to the Interrogatory as compound, conjunctive, and containing subparts—specifically, in seeking information concerning both J&J Vision's patent and copyright claims in a single interrogatory, when they should be counted as two. J&J Vision objects to the Interrogatory as overbroad and unduly burdensome, for example, in seeking "all Documents."  J&J Vision objects to the phrase "Alcon's products or programs" as vague and ambiguous.   J&J Vision objects to the Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product immunity, or any other applicable privilege or protection.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17 (MARCH 8, 2021):

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above.

Subject to and without waiving its objections, and solely to the extent that the Interrogatory seeks information concerning any non-privileged facts relating to J&J Vision's pre-suit investigation of Alcon's infringement of J&J Vision's copyrights, J&J Vision provides the following further response:  J&J Vision refers Alcon to Mr. Warren Foust's July 14, 2020 letter to Mr. David Endicott, its Amended Complaint (D.I. 16), and Plaintiffs' First Supplemental Response to Defendants' Interrogatory

A160

No. 5, served on March 3, 2021, all which detail the non-privileged facts relating to J&J Vision's pre-suit investigation into Alcon's infringement of J&J Vision's copyrights.

J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17 (OCTOBER 29, 2021):**

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above.

Subject to and without waiving its objections, J&J Vision provides the following further response:

In April 2014, at the direction of and in connection with discussions with legal counsel, Brent Schellhase inspected the LenSx Laser system, installed with the object code for LenSx version 2.20.02, that Abbott Medical Optics obtained from ███████████████████████ J&J Vision did not have, and could not inspect, any version of the LenSx source code until it was exchanged in this litigation in November 2020. ████████████████████████

Abbott Medical Optics did not proceed with litigation at that time.

6

In February 2017, Johnson & Johnson completed the acquisition of Abbott Medical Optics.

On March 24, 2020, pursuant to the June 30, 2006 Confidential Settlement Agreement between Advanced Medical Optics, Inc. and Alcon, Inc., Alcon Laboratories, Inc., and Alcon Manufacturing, Ltd., J&J Vision notified Alcon that the LenSx Laser System infringed at least U.S. Patent Nos. 8,394,084, 8,403,921, 8,425,497, 8,500,724, 8,709,001, 9,095,415, 9,101,448, 9,107,732, 9,125,725, 9,474,648, 9,693,903, and 9,693,904 (collectively, "the Palanker Patents"). In June 2020, the parties engaged in confidential, non-binding mediation in an attempt to resolve the dispute and agree to terms including full releases. However, Alcon did not meaningfully engage in that mediation. Alcon refused to provide its noninfringement or invalidity positions, and did not make any counteroffer to J&J Vision's proposal. It was clear Alcon was not interested in making progress in resolving the dispute. J&J Vision thereafter filed the complaint alleging infringement of the Palanker Patents on June 23, 2020. D.I. 1.

J&J Vision notified Alcon on July 14, 2020 that the LenSx System infringed J&J Vision's copyrighted iFS code and infringed U.S. Patent Nos. 9,233,023, 9,233,024, 10,376,356, and 10,709,548 (collectively, "the Culbertson Patents"). J&J Vision again affirmatively invited a counteroffer from Alcon, and even suggested the parties exchange source code for highly confidential review by outside

counsel and independent experts.  Again, Alcon refused to engage in meaningful dispute resolution efforts.  J&J Vision filed an amended complaint adding allegations of infringement of the Culbertson Patents and of copyrights covering the IntraLase FS Model 2/Model 3 Software and the iFS Advanced Femtosecond Laser Software.  D.I. 16.

After J&J Vision filed its First Amended Complaint, the parties engaged in a pre-discovery exchange of source code, through which the parties' outside counsel and approved experts received access on a highly confidential basis to both LenSx and iFS/IntraLase code in November 2020.  The amount of code copied by Alcon, revealed by the source code review, was staggering: the independent experts discovered over 25,000 lines of code in the LenSx source code that were exactly identical to lines of code in earlier-developed iFS source code.  D.I. 52 at 1, 6.  That initial review further revealed that Alcon actively tried to cover its tracks by changing dates and comments in the code to make it seem like the code originated at Alcon, including changing comments in the code to remove references to dates in the code before the founding of LenSx Lasers Inc.  *Id.* at 1, 6–7.  However, because the copying was so pervasive, Alcon left other tell-tale signs of copying, such as identical typos and references to dates prior to the founding of LenSx Lasers Inc. *Id.* at 7–8.  Alcon could not, and did not, dispute the significant amount of "overlapping" code, and the Court found that there is "powerful evidence" that "the

overlapping software lines were intentionally copied" and "knowingly concealed." D.I. 132-2 at 343:3–7.  Accordingly, the Court determined that J&J Vision was likely to succeed on the merits on its software copyright claims.  *Id.* at 346:12–13.

During discovery in this case, J&J Vision for the first time uncovered further theft of its intellectual property in connection with Alcon's technical documentation and FDA filings, which are submitted confidentially to the FDA and not publicly released.  On May 19, 2021, third party Peter Goldstein produced certain documents purporting to be documentation relating to the LenSx system.  Examination of such documentation, and further investigation of documentation later produced by Alcon, revealed striking similarities to the iFS system documentation.  For example, a "Software Architecture Description" document submitted by Alcon to the FDA in 2009 (ALCON_LENSX044001) has pages of content identical to that included in an iFS document (JJSV_00133829), including technical and architectural diagrams that bear similarities that can only reasonably be explained by copying.  D.I. 141 ¶ 113.  Examination of metadata within such documents also indicated that certain such documents originated at IntraLase Corp., not LenSx Lasers Inc. or Alcon.  *Id.* As another example, the operator's manual for the LenSx system included warnings and descriptions of safety features identical to the iFS Laser operator's manual. *Id.* ¶ 115.  J&J Vision amended its complaint to add copyright infringement claims

9

to address this copying of certain LenSx FDA 510(k) submissions and technical documentation. *Id.* ¶¶ 112–117, 456–464.

J&J Vision identifies in-house counsel Sanjesh Sharma as an individual believed to have knowledge about this situation, however, Ms. Sharma is not believed to have material non-privileged information.

J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim-Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 491-0600

S.Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

October 29, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2021, copies of the foregoing were caused

to be served upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire | *VIA ELECTRONIC MAIL* |
| Karen E. Keller, Esquire | |
| David M. Fry, Esquire | |
| SHAW KELLER LLP | |
| I.M. Pei Building | |
| 1105 North Market Street, 12th Floor | |
| Wilmington, DE  19801 | |
| *Attorneys for Defendants* | |
| *and Counterclaim-Plaintiffs* | |

| | |
|---|---|
| Jeannie Heffernan, Esquire | *VIA ELECTRONIC MAIL* |
| Joshua L. Simmons, Esquire | |
| Matthew A. Lembo, Esquire | |
| KIRKLAND & ELLIS LLP | |
| 601 Lexington Avenue | |
| New York, NY  10022 | |
| *Attorneys for Defendants* | |
| *and Counterclaim-Plaintiffs* | |

| | |
|---|---|
| Caroline Lourgos, Esquire | *VIA ELECTRONIC MAIL* |
| KIRKLAND & ELLIS LLP | |
| 300 North LaSalle | |
| Chicago, IL  60654 | |
| *Attorneys for Defendants* | |
| *and Counterclaim-Plaintiffs* | |

| | |
|---|---|
| Kristen P.L. Reichenbach, Esquire | *VIA ELECTRONIC MAIL* |
| KIRKLAND & ELLIS LLP | |
| 555 California Street | |
| San Francisco, CA  94104 | |
| *Attorneys for Defendants* | |
| *and Counterclaim-Plaintiffs* | |

Noah S. Frank, Esquire                          *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Hannah L. Bedard, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                    */s/ Anthony D. Raucci*
                                    _____
                                    Anthony D. Raucci (#5948)

2

# EXHIBITS 5-7

## REDACTED IN THEIR

## ENTIRETLY

# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, <br> AMO MANUFACTURING USA, LLC <br> and AMO SALES AND SERVICE, INC., <br><br>         Plaintiffs, <br><br>     v. <br><br> ALCON VISION, LLC, <br> ALCON LABORATORIES, INC. and <br> ALCON RESEARCH, LLC, <br><br>         Defendants. | C.A. No. 20-842 (CFC) (JLH) |
| ALCON INC., <br> ALCON RESEARCH, LLC, and <br> ALCON VISION, LLC, <br><br>         Defendants and <br>         Counter-Plaintiffs, <br><br>     v. <br><br> AMO DEVELOPMENT, LLC, <br> AMO MANUFACTURING USA, LLC, <br> AMO SALES AND SERVICE, INC., <br> and JOHNSON & JOHNSON <br> SURGICAL VISION, INC. <br><br>         Plaintiffs and Counter- <br>         Defendants. | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST SET OF
## REQUESTS FOR ADMISSION (NOS. 1-60)

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity.  J&J Vision objects to this Request as vague and ambiguous with respect to the entity (if any) to whom litigation would have been "reasonably foreseeable."  J&J Vision also objects to the extent this Request seeks a legal conclusion.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that as of 2015, following the 2014 LenSx Investigation, You decided not to bring suit against Alcon for copying J&J Asserted Source Code Works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity.  J&J Vision objects to this Request as vague and ambiguous with respect to the term "decided."

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

Admitted.

**REQUEST FOR ADMISSION NO. 11:**

Admit that J&J's decision following the 2014 LenSx Investigation to not bring suit against Alcon at any time prior to 2020 for any alleged infringement of J&J Asserted Source Code Works by Alcon was based at least in part on business considerations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity.  J&J

**REQUEST FOR ADMISSION NO. 14:**

Admit that You did not preserve all documents of former-J&J employees related to LenSx or any LenSx Investigation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity. J&J Vision objects to this Request as vague and ambiguous with respect to the terms "related to LenSx" and "any LenSx Investigation." J&J Vision further objects to this Request to the extent it seeks information regarding preservation of "all documents of former-J&J employees related to LenSx," without any limitation on time frame, which make this Request burdensome and disproportional to the needs of this case.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that it has retained documents consistent with its ordinary course of business. With regard to the remainder of this Request, J&J Vision lacks facts sufficient to admit or deny this Request, and therefore denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that as of 2014, J&J had in its possession all of the material facts that formed the basis of its assertion in July 2020 that former-J&J employees had copied Source Code from J&J.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity. J&J Vision objects to this Request as vague and ambiguous with respect to the terms "material facts."

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that as of the end of 2014, AMO possessed the facts underlying J&J Vision's copyright allegations as presented in the First Amended Complaint, D.I. 16.  J&J Vision denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that as of 2015, J&J had in its possession all of the material facts that formed the basis of its assertion in July 2020 that former-J&J employees had copied Source Code from J&J.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity.  J&J Vision objects to this Request as vague and ambiguous with respect to the terms "material facts."

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that as of 2015, AMO possessed the facts underlying J&J Vision's copyright allegations as presented in the First Amended Complaint, D.I. 16.  J&J Vision denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that all Communications and Documents related to, or generated during or as a result of, the 2014 LenSx Investigation have been retained.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

J&J Vision objects to this Request to the extent it calls for information protected by the attorney-client privilege or any other privilege or immunity.  J&J Vision objects to this Request as vague and ambiguous with respect to the terms "related to . . . the 2014 LenSx Investigation."

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that it has retained documents consistent with its ordinary course of business.  With regard to the remainder of this Request, J&J Vision lacks facts sufficient to admit or deny this Request, and therefore denies this Request.

**REQUEST FOR ADMISSION NO. 37:**

Admit that prior to acquiring OptiMedica, AMO did not compete in the FLACS market.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

J&J Vision objects to this Request as vague and ambiguous with respect to the term "compete in the FLACS market."  J&J Vision objects to this Request to the extent it prematurely seeks expert discovery.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 38:**

Admit that prior to acquiring OptiMedica, AMO did not compete with LenSx.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

J&J Vision objects to this Request as vague and ambiguous with respect to the term "compete with LenSx."

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that it did not offer for sale a femtosecond laser device solely dedicated to cataract surgery prior to acquiring OptiMedica.  J&J Vision denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 39:**

Admit that any company's IOLs may be used with any FLACS device.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

J&J Vision objects to this Request as vague and ambiguous with respect to the terms "any company's IOLs" and "any FLACS device."  J&J Vision objects to this Request as prematurely seeking expert discovery.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision admits that, generally, use of a FLACS device does not require use of that same company's IOL (if any).  J&J Vision lacks facts sufficient to admit or deny the remainder of this Request, and therefore denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 40:**

Admit that any company's phacoemulsification machine may be used with any FLACS device.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

J&J Vision objects to this Request as vague and ambiguous with respect to the terms "any company's phacoemulsification machine" and "any FLACS device." J&J Vision objects to this Request as prematurely seeking expert discovery.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

J&J Vision lacks facts sufficient to admit or deny this Request, and therefore denies this Request.

**REQUEST FOR ADMISSION NO. 41:**

Admit that J&J brand IOLs are not required to be used with Catalys.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Admitted.

**REQUEST FOR ADMISSION NO. 42:**

Admit that Alcon brand IOLs are not required to be used with LenSx.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

J&J Vision admits that, generally, use of a FLACS device does not require use of that same company's IOL (if any).  J&J Vision lacks facts sufficient to admit

26

or deny the remainder of this Request, and therefore denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 43:**

Admit that J&J Asserted Source Code Works include Source Code from the C standard library.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

J&J Vision objects to this Request as vague and ambiguous with respect to the terms "include" and "Source Code from the C standard library."   J&J Vision objects to this Request to the extent it prematurely seeks expert discovery.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 44:**

Admit that J&J Asserted Source Code Works include Source Code from the QNX operating system.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

J&J Vision objects to this Request as vague and ambiguous with respect to the terms "include" and "Source Code from the QNX operating system."  J&J Vision objects to this Request to the extent it prematurely seeks expert discovery.

Subject to and without waiver of the foregoing objections, J&J Vision responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 45:**

Admit that J&J Asserted Source Code Works include third-party Source Code.

27

# EXHIBITS 9-32

## REDACTED IN THEIR

## ENTIRETLY