IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC <br><br> Defendants. | Civil Action No. 20-842-CFC |

Jack B. Blumenfeld, Anthony D. Raucci, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Michael A. Morin, Matthew J. Moore, Rachel W. Cohen, Sarang V. Damle, Holly K. Victorson, Carolyn M. Homer, Susan Y. Tull, LATHAM & WATKINS LLP, Washington, DC; Roger J. Chin, Allison Harms, Joseph R. Wetzel, LATHAM & WATKINS LLP, San Francisco, California; S. Giri Pathmanaban, LATHAM & WATKINS LLP, Menlo Park, California; P. Anthony Sammi, Rachel R. Blitzer, LATHAM & WATKINS LLP, New York, New York; Aaron Macris, LATHAM & WATKINS LLP, Boston, Massachusetts

*Counsel for Plaintiffs*

John W. Shaw, Nathan R. Hoeschen, Andrew Russell, Karen E. Keller, David Fry, SHAW KELLER LLP, Wilmington, Delaware; Jeanne M. Heffernan, James J. Lomeo, Ryan J. Melde, KIRKLAND & ELLIS LLP, Austin, Texas; Gregg F. LoCascio, Sean M. McEldowney, Noah S. Frank, Kelly Tripathi, Elizabeth Hedges, Mary E. Miller, Nicholas Teleky, KIRKLAND & ELLIS LLP, Washington, DC; Joshua L. Simmons, KIRKLAND & ELLIS LLP, New York,

New York; Caroline Lourgos, KIRKLAND & ELLIS LLP, Chicago, Illinois; Kristen P.L. Reichenbach, KIRKLAND & ELLIS LLP, San Francisco, California

*Counsel for Defendants*

# MEMORANDUM OPINION

December 6, 2022
Wilmington, Delaware

                                                            */s/ Colm F. Connolly*
COLM F. CONNOLLY
CHIEF JUDGE

    Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc. (collectively, J&J) have sued Defendants Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC (collectively, Alcon) for patent and copyright infringement. Pending before me is Alcon's Motion for Summary Judgment (No. 1) That the Copyright Act Bars Monetary Relief for Infringing Acts Occurring More Than Three Years Before J&J Filed Suit. D.I. 355. Alcon seeks by its motion a declaratory judgment that J&J is "barred from recovering monetary relief for acts that occurred before September 28, 2017." D.I. 355-1 at 2.

## I.  BACKGROUND

    J&J manufactures the iFS® Laser, a laser system used for eye surgery that employs copyrighted computer software. Alcon markets the LenSx® Laser System (LenSx), a laser-assisted cataract surgery system.

    In 2014, J&J obtained a LenSx device and inspected the object code installed on that device. "Object code is machine readable, binary code, represented on paper as a series of ones and zeroes." *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 836 n.1 (Fed. Cir. 1992). It is distinguished from but related to source code, which is "the text of a software program written in

a human-readable programming language." *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1377 n.1 (Fed. Cir. 2008) (citation omitted). "Once written, source code is compiled into machine-readable object code that runs on a computer." *Id.* (citation omitted). "Software programmers usually provide users with only the object code in order to prevent users from modifying the program." *Id.* (citation omitted).

In June 2020, J&J initiated this case with the filing of a complaint in which it alleged that the LenSx infringes numerous patents owned by J&J. D.I. 1. On September 28, 2020, J&J filed the First Amended Complaint and alleged for the first time that LenSx's software "incorporate[s] one or more protected elements of the copyrighted iFS® Laser computer programs." D.I. 16 ¶¶ 99, 101, 103–04. In paragraph 98 of its First Amended Complaint, J&J alleged:

> Alcon unlawfully used and is continuing to use J&J['s] . . . copyrighted computer programs (or copyrightable elements thereof) as part of the software that operates the LenSx. The installed version of the LenSx software (at least as of Version 2.20.02) exhibits an overwhelming number of telltale signs of copying of J&J['s] . . . copyrighted computer programs, including but not limited to the following:
>
> a. The LenSx® file system mirrors the file structure of an iFS® Laser, with file folders with identical names . . . .
>
> b. The LenSx® includes a number of on-screen instructions identical to those on an iFS® Laser, right

2

> down to the punctuation and nonstandard capitalization . . . .
>
> c. The LenSx object code files include[] over 300 references to file, function, and object names and other text that are identical to and originate in the iFS® Laser source code—far too many to be mere coincidence.
>
> d. The object code file for the LenSx software module controlling the beam steering process (*beam_control*) references unique function names that were originally in the iFS® Laser source code . . . . The same object code file includes at least fifty unique data object names that were originally in the iFS® Laser source code . . . . That file also contains error codes and other text that are identical to, and originate in, the iFS® Laser source code . . . .
>
> e. The object code file for the LenSx software module responsible for positioning the laser to the proper position (*scanners*) includes at least seventeen unique function names . . . that [are] identical to, and originate in, the iFS® Laser source code.
>
> f. The LenSx exhibits similar or identical behaviors to various error conditions [in the iFS® Laser]. . . .
>
> g. Both the iFS® Laser and LenSx systems register process names with the operating system to facilitate interprocess communication. . . . The LenSx contains registered process names that are identical to those in the iFS® Laser, even where the underlying process files in the LenSx do not match the corresponding process name. . . . This in particular is evidence that Alcon attempted to cover up the evidence of copying by changing certain names.

D.I. 16 ¶ 98.

3

J&J admits that by the end of 2014, it "possessed the facts underlying [its] copyright allegations as presented in the First Amended Complaint." D.I. 372 at 80; *see also* D.I. 372 at 20; D.I. 421 at 2. In a letter sent to Alcon on July 14, 2020, J&J stated that it "ha[d] every reason to believe that [Alcon] . . . copied [J&J's] proprietary source and/or object code, which [it] then incorporated into the LenSx®." D.I. 372 at 12. J&J also stated in that letter that "[i]f Alcon believes that it is not infringing [J&J's] copyrighted computer programs, we invite Alcon to share with us all released versions of its source code from July 2017 to the present." D.I. 372 at 12.

Four months later, in November 2020, J&J obtained through discovery in this case access to the LenSx source code. D.I. 427-1 at 199–200. On June 17, 2021, J&J filed its Second Amended Complaint, in which it added two counts of alleged infringement by Alcon of copyrighted submissions to the United States Food and Drug Administration (FDA), internal technical documentation, and the iFS® Laser operator's manual. D.I. 141 ¶¶ 456–64.

J&J also alleged in the Second Amended Complaint that its inspection of Alcon's source code "led to the discovery that Alcon had stolen electronic copies of the iFS® Laser source code, and incorporated at least 26,000 lines of that code wholesale into the LenSx computer program—including typos and dates from well before development of the LenSx began." D.I. 141 ¶ 105.

4

## II. LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

## III. DISCUSSION

Alcon argues that the Copyright Act has a three-year statute of limitations that bars J&J from seeking monetary relief for acts that occurred before September

28, 2017—i.e., three years before J&J filed its First Amended Complaint. D.I. 356 at 4.

Section 507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." In *William A. Graham Co. v. Haughey*, 568 F.3d 425, 437 (3d Cir. 2009), the Third Circuit held that "the federal discovery rule governs the accrual of civil claims brought under the Copyright Act." Accordingly, under *Graham*, a copyright claim "accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Id.* at 433 (internal quotation marks and citations omitted).

Alcon argues that the Supreme Court effectively overruled *Graham* in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). *See* D.I. 456 at 1. The Court held in *Petrella* that the equitable doctrine of laches "cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window" of § 507(b). 572 U.S. at 667. Alcon argues that certain statements made by the Court in *Petrella* preclude a plaintiff from using the discovery rule to recover damages for copyright claims filed more than three years after the infringing acts occurred. It points specifically to the Court's statements in *Petrella* that "[u]nder the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence," 572 U.S. at 671 (quoted at D.I.

6

356 at 4), that "a successful plaintiff can gain retrospective relief only three years back from the time of suit," *id.* at 677 (quoted at D.I. 356 at 4), and that "[n]o recovery may be had for infringement in earlier years," *id.* (quoted at D.I. 356 at 4).

Alcon's argument has some initial appeal. But the Court also stated in *Petrella* that "[a]*lthough we have not passed on the question*, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim,'" and the Court cited *Graham* in support of this statement. 572 U.S. at 670 n.4 (emphasis added) (citing *Graham,* 568 F.3d at 433). Three years later, in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017), the Court stated that "in *Petrella,* we specifically noted that 'we have not passed on the question' whether the Copyright Act's statute of limitations is governed by [the discovery] rule." *Id.* at 962 (quoting *Petrella*, 572 U.S. at 670 n.4). In light of these explicit confirmations that the Court was not addressing in *Petrella* whether the injury rule or the discovery rule applied to copyright claims, I do not think it can be said that *Petrella* adopted the injury rule over the discovery rule or that it overruled *Graham*. Thus, *Graham* remains binding precedent in the Third Circuit. *See also Am. Bd. of Internal Med. v. Rushford*, 841 F. App'x 440,

7

441 (3d Cir. 2020) (reaffirming *Graham* without any discussion of *Petrella* and reversing district court ruling that injury rule applied to copyright claims).

Alcon also seems to argue that *Petrella* imposed a damages bar separate from the statute of limitations, as it points to the Second Circuit's decision in *Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020), as "instructive." D.I. 356 at 6. In *Sohm*, the Court rejected the argument that *Petrella* cast serious doubt on Second Circuit precedent that mandated application of the discovery rule in copyright cases. 959 F. 3d at 50. But based on the same language from *Petrella* that Alcon relies on here, the Court held that "a plaintiff's recovery is limited to damages incurred during the three years prior to filing suit." *Id.* at 52.

The Ninth Circuit in *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022), agreed with the Second Circuit that *Petrella* left in place the discovery rule for copyright claims, but it rejected *Sohm*'s holding that *Petrella* dictated a limitation on recovery of damages. In the *Starz* court's view, applying a separate damages rule would eviscerate the discovery rule and "[b]y purporting to apply the discovery rule but imposing a three-year damages bar, *Sohm* is inherently self-contradictory." *Id.*

Although not without doubt about the implications of *Petrella*, I agree with the Ninth Circuit that it does not make sense to preserve the discovery rule and at the same time preclude a plaintiff who is supposed to benefit from the rule from

8

recovering damages. Accordingly, I will apply the discovery rule here and not impose a bar on damages separate from the statute of limitations.[1]

Alcon argues in the alternative that even if the discovery rule applies to copyright claims and there is no separate bar on damages, J&J's claim that Alcon infringed J&J's copyrighted source code is barred by § 507(b) because it is undisputed that J&J knew as of 2014 of the facts underlying the copyright claims it alleged in the First Amended Complaint. D.I. 356 at 1. J&J counters that "there are genuine disputes as to whether and when J&J reasonably could have

---

[1] In doing so, I am following the vast majority of district courts that have previously addressed the issue. *See, e.g., Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804, 811–12, 812 n.44 (E.D. Pa. 2017); *Design Basics, LLC v. McNaughton Co.*, 2017 WL 11068761, at *4–5 (M.D. Pa. Nov. 15, 2017); *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 448 (E.D. Pa. 2015); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121, 132–36 (D.N.H. 2021); *Mavrix Photo, Inc. v. Rant Media Network, LLC*, 2020 WL 8028098, at *3–4 (C.D. Cal. Nov. 2, 2020); *Richardson v. Kharbouch*, 2020 WL 1445629, at *7 (N.D. Ill. Mar. 25, 2020); *Menzel v. Scholastic, Inc.*, 2019 WL 6896145, at *6–7 (N.D. Cal. Dec. 18, 2019); *Adobe Sys. Inc. v. NA Tech Direct Inc.*, 2019 WL 5579472, at *8–9 (N.D. Cal. Oct. 29, 2019); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 794 n.2 (N.D. Ohio 2018); *Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1371 (D. Kan. 2018); *Evox Prods. LLC v. Chrome Data Sols., LP*, 2018 WL 6059530, at *16–17 (D. Or. Sept. 6, 2018); *Mitchell v. Capitol Recs., LLC*, 287 F. Supp. 3d 673, 676–78 (W.D. Ky. 2017); *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1092–93 (C.D. Cal. 2016); *Yue v. MSC Software Corp.*, 2016 WL 3913001, at *1 (N.D. Cal. July 20, 2016). *But see, e.g., Johnston v. Kroeger*, 2022 WL 3703859, at *4 (W.D. Tex. Aug. 26, 2022); *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 761–62 (S.D. Ohio 2021), *reconsideration denied*, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021); *Nealy v. Atl. Recording Corp.*, 2021 WL 2280025, at *4 (S.D. Fla. June 4, 2021); *Werner v. BN Media, LLC*, 477 F. Supp. 3d 452, 455–56 (E.D. Va. 2020).

discovered Alcon's infringement of its iFS implementing source code." D.I. 417 at 9. According to J&J, it "could not reasonably have known" before it had access to the LenSx source code in November 2020 "that Alcon had injured J&J in a distinct manner, by copying J&J's implementing source code." D.I. 417 at 9–10.

J&J's position is belied by its admission made in response to a discovery request that "as of the end of 2014, [it] possessed the facts underlying [its] copyright allegations as presented in the First Amended Complaint." D.I. 372 at 80; *see also* D.I. 372 at 20; D.I. 421 at 2. It is further belied by J&J's assertion in the letter it sent Alcon on July 14, 2020—four months before it had access to the LenSx source code—that it "ha[d] every reason to believe that [Alcon] . . . copied [J&J's] proprietary source and/or object code, which [it] then incorporated into the LenSx®." D.I. 372 at 12. J&J's position can also not be squared with the specific allegations in the First Amended Complaint that the LenSx object code revealed "over 300 references to file, function, and object names and other text that are identical to and originate in the iFS® Laser source code," "unique function names that were originally in the iFS® Laser source code," "at least fifty unique data object names that were originally in the iFS® Laser source code," "error codes and other text that are identical to, and originate in, the iFS® Laser source code," and "at least seventeen unique function names . . . that [are] identical to, and originate in, the iFS® Laser source code." D.I. 16 ¶ 98.

10

J&J insists that the source code it referred to in the First Amended Complaint is "declaring" source code, as opposed to "implementing" source code. D.I. 417 at 10–11. But even if there were a distinction between declaring and implementing source code, J&J alleged in the First Amended Complaint that Alcon had copied J&J's "source code." D.I. 16 ¶ 98. It did not distinguish between declaring and implementing source code and it did not limit its allegations of copying to declaring source code. Moreover, J&J's admitted knowledge of the facts underlying its allegation of copying the iFS source code put it at the very least on inquiry notice that Alcon was copying source code—i.e., declaring, implementing, and all other types of source code. Accordingly, it is J&J's burden to demonstrate that it exercised reasonable diligence to discover the injury that forms the basis of its claims. *Graham*, 568 F.3d at 433. But J&J points to no actions it took to obtain the LenSx source code before it sent Alcon the July 14, 2020 letter in which it "invite[d]" Alcon to share its source code with J&J. *See* D.I. 372 at 12.

J&J also cites the reports of its experts, Mr. Nikolaus Baer and Dr. Douglas Schmidt, for the proposition that "a person with access to the object code could not see the implementing code." D.I. 417 at 11. But Mr. Baer and Dr. Schmidt opined only that without access to the LenSx source code they were unable to discern the *full extent* of Alcon's copying. *See* D.I. 427-1, Ex.1 ¶ 166 ("[A] developer with

11

access to this object code and the iFS source code could not determine the full extent of the copying present in the LenSx source code.") (Baer); D.I. 427-1, Ex. 7 ¶ 28 ("[A]lthough it is obvious from the LenSx source code that extensive portions of implementing code for functions were copied from the iFS source code and that this copied implementing code is actually used in the software, it would be exceedingly challenging, if not impossible, to discern the full extent of the copying and use of the copied source code from only the LenSx 2.20 executable.") (Baer); D.I. 427-1, Ex. 8 ¶ 7 ("[O]ne could expect to learn from the LenSx object code . . . some human-readable strings, including some evidence that the declaring code was copied—but not a clear picture of the massive extent of the copying, such as wholesale duplication of large chunks of implementing code[].") (Baer); D.I. 427-1, Ex. 2 ¶ 357 ("[The] function names, error messages, and data structures present in the LenSx object code file that match corresponding features in the iFS source code . . . do not, alone, provide a meaningful window into the full extent of the copying that is observable from the source code.") (Schmidt); D.I. 427-1, Ex. 9 ¶ 71 ("[A]lthough [J&J] was able to observe some evidence of similarities to the iFS source code in the LenSx object code, the information at [J&J's] disposal did not provide a meaningful window into the *full extent* of the copying reflected in the LenSx source code.") (emphasis in the original) (Schmidt).

12

"A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citations omitted); *see also Kach v. Hose,* 589 F.3d 626, 635 (3d Cir. 2009) (holding that statute of limitations begins to run "even though the full extent of the injury is not then known or predictable" (quoting *Wallace v. Kato,* 549 U.S. 384, 391 (2007))). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Stephens*, 796 F.3d at 288 (quoting *Wallace,* 549 U.S. at 391).

Because J&J had sufficient information as of 2014 to place it at the very least on inquiry notice that Alcon was copying the source code of J&J's iFS computer programs and it failed to exercise reasonable diligence to discover before July 2020 the injury it may have suffered from the infringement of that source code, it cannot recover damages for infringement of its copyrighted computer programs that took place more than three years before September 28, 2020. *See Graham*, 568 F.3d at 438.

Finally, Alcon argues in a footnote that "[t]he discovery rule likewise does not save J&J's claims concerning copying of iFS Laser FDA submissions, internal technical documentation, and operator's manual." D.I. 356 at 9 n.3. This "passing

13

reference to an issue will not suffice to bring that issue before this court." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004) (internal quotation marks and citation omitted); *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." (citation omitted)). In any event, there appears to be a genuine dispute of material fact concerning when exactly J&J reasonably could have discovered the copying of its FDA submissions, internal technical documentation, and iFS operator's manual. *Compare* D.I. 421 ¶¶ 4, 15, *with* D.I. 457 ¶¶ 4, 15. That dispute necessarily defeats a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment will not lie if there is a genuine dispute about a material fact).

## IV.   CONCLUSION

For the reasons discussed above, I find that Alcon has shown, and J&J has not adduced record evidence to rebut, the absence of a genuine factual dispute about whether J&J had sufficient information as of 2014 to place it at the very least on inquiry notice that Alcon was copying the source code of J&J's iFS computer programs and whether J&J failed to exercise reasonable diligence to discover before July 2020 the injury it may have suffered from the infringement of that source code. Accordingly, I will grant Alcon's summary judgment motion to the

extent it seeks a declaration that J&J is barred from recovering monetary relief for infringement of its iFS computer programs that occurred before September 28, 2017. I will otherwise deny the motion.

The Court will issue an Order consistent with this Memorandum Opinion.

15