IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 20-842 (CFC) |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | |
| Defendants. | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | |
| Counterclaim Plaintiffs, | |
| v. | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., | |
| Counterclaim Defendants. | |

**PROPOSED JURY INSTRUCTIONS**

<u>TABLE OF CONTENTS</u>

I.   PRELIMINARY JURY INSTRUCTIONS.......................................................1

    1.   DESCRIPTION OF THE ISSUES ..........................................1
    2.   ROLE OF THE JURY AND ROLE OF THE COURT ...................4
    3.   EVIDENCE ...........................................................5
    4.   DIRECT AND CIRCUMSTANTIAL EVIDENCE.........................7
    5.   CREDIBILITY OF WITNESSES .......................................8
    6.   DEPOSITION TESTIMONY.............................................9
    7.   EXPERT WITNESSES ................................................10
    8.   BURDENS OF PROOF..................................................11
    9.   CONDUCT OF THE JURY ............................................12
    10.  NOTE-TAKING BY JURORS ..........................................14
    11.  INTRODUCTION TO COPYRIGHT....................................15
    12.  OUTLINE OF A TRIAL ...............................................21

II.  POST-TRIAL JURY INSTRUCTIONS ......................................................23

    13.  GENERAL INSTRUCTIONS—INTRODUCTION ......................23
    14.  GENERAL INSTRUCTIONS—JUROR'S DUTIES .....................24
    15.  GENERAL INSTRUCTIONS—BURDEN OF PROOF ................25
    16.  GENERAL INSTRUCTIONS—CONSIDERATION OF
        EVIDENCE ...........................................................26
    17.  GENERAL INSTRUCTIONS—EXHIBITS ..............................27
    18.  GENERAL INSTRUCTIONS—STIPULATIONS OF FACT........28
    19.  GENERAL INSTRUCTIONS—CORPORATIONS......................29
    20.  COPYRIGHT—DEFINED .............................................31
    21.  COPYRIGHT—SUBJECT MATTER—GENERALLY................35
    22.  COPYRIGHT—SUBJECT MATTER—IDEAS AND
        EXPRESSION ........................................................38
    23.  COPYRIGHT—ELEMENTS OF DIRECT
        INFRINGEMENT .....................................................41
    24.  COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT—
        DEFINED ............................................................43
    25.  COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT —
        REGISTRATION CERTIFICATE ....................................44
    26.  COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT—
        ORIGINALITY .......................................................50
    27.  COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT—
        WORK MADE FOR HIRE ...........................................52

28.     COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT —
        ASSIGNMENT........................................................................54
29.     COPYRIGHT—COPYING—DEFINED .........................................55
30.     COPYRIGHT—COPYING—ACCESS .............................................56
31.     COPYRIGHT—COPYING—SUBSTANTIAL SIMILARITY......57
32.     COPYRIGHT—COPYING—LITERAL AND
        NON-LITERAL ELEMENTS............................................................67
33.     COPYRIGHT—COPYING—DERIVATIVE WORK ...................68
34.     COPYRIGHT—SECONDARY LIABILITY—VICARIOUS
        INFRINGEMENT ..........................................................................70
35.     COPYRIGHT—SECONDARY LIABILITY—
        CONTRIBUTORY INFRINGEMENT.............................................71
36.     COPYRIGHT—MONETARY RELIEF ...........................................73
37.     COPYRIGHT—MONETARY RELIEF—LIMITATIONS
        AND DAMAGES PERIOD ..............................................................77
38.     COPYRIGHT—MONETARY RELIEF—ACTUAL
        DAMAGES.......................................................................................81
39.     COPYRIGHT—MONETARY RELIEF—DEFENDANTS'
        PROFITS ..........................................................................................85
40.     COPYRIGHT—MONETARY RELIEF—WILLFUL
        INFRINGEMENT ..........................................................................100
41.     DELIBERATION—INTRODUCTION..........................................103
42.     DELIBERATION—UNANIMOUS VERDICT ............................104
43.     DELIBERATION—SOCIAL MEDIA ..........................................106
44.     DELIBERATION—COURT HAS NO OPINION .......................107

## I.   <u>PRELIMINARY JURY INSTRUCTIONS</u>

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.  I will give you more detailed instructions on the law at the end of the trial.

## 1.   DESCRIPTION OF THE ISSUES

I am going to give you an overview of who the parties are and what each contends.   This is a civil action for copyright infringement arising under the copyright laws of the United States.

In this case, I will refer to AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc., and [**J&J's Proposal**: Johnson & Johnson Surgical Vision, Inc.][1] as "Plaintiffs" or "J&J."  I will refer to Alcon Vision, LLC,

---

[1]   **J&J's Position:**   As J&J notes in Paragraph 8 of the Joint [Proposed] Pretrial Order, J&J seeks to amend the pleadings to re-align the caption according to the relationships of the parties, and specifically to obviate any dispute regarding the copyright ownership interests held between AMO Development and Johnson & Johnson Surgical Vision ("JJSV").  As explained in J&J's Opposition to Alcon's Summary Judgment Motion No. 2, JJSV has standing to sue in its own right. D.I. 422.  Alcon will experience no prejudice from this amendment.

**Alcon's Position:** As discussed in Paragraph 10 of the Joint [Proposed] Pretrial Order, J&J has not moved for leave to amend its Complaint, and it is too late to do so without causing undue prejudice to Alcon.  Moreover, amendment would be futile because Johnson & Johnson Surgical Vision does not have standing to sue for infringement of the copyrights at issue.

Alcon Laboratories, Inc., Alcon Research, LLC, and [**J&J's Proposal**: Alcon Inc.][2]

as "Defendants" or "Alcon."

J&J claims that AMO Development, LLC owns copyrights in three sets of

works related to its IntraLase ophthalmic femtosecond laser system, sometimes

called "iFS." Specifically, J&J's claims relate to copyrights in the computer

program that operates the iFS, which I will refer to as the "iFS Computer Program";

its submissions to the Food & Drug Administration, which I will refer to as the "iFS

FDA Submissions [**J&J's Proposal:** and Technical Documentation][3]"; and the iFS

---

[2]   **J&J's Position:** As J&J notes in Paragraph 8 of the Joint [Proposed] Pretrial Order, J&J seeks to amend the pleadings to re-align the caption according to the relationships of the parties, and specifically to obviate any dispute regarding the copyright ownership interests held between AMO Development and Johnson & Johnson Surgical Vision. Alcon will experience no prejudice from this amendment.

**Alcon's Position:** As discussed in Paragraph 10 of the Joint [Proposed] Pretrial Order, J&J has not moved for leave to amend its Complaint, and it is too late to do so without causing undue prejudice to Alcon. Moreover, amendment would be futile because J&J has not alleged how Alcon Inc. has infringed the copyrighted works.

[3]   **J&J's Position:** J&J's description is consistent with the way it styled these claims in its Second Amended complaint, and it reflects the parties' understanding of the content of these works throughout the litigation. *See* D.I. 141, ¶ 2 (Second Amended Complaint) ("The infringed copyrights ('Asserted Copyrights') protect… (2) certain confidential submissions made by J&J Vision to the FDA to obtain approval for the iFS® Laser and IntraLase Fusion Laser1 system, which include as attachments confidential technical documentation for the iFS® Laser and IntraLase Fusion Laser created by J&J Vision…"). It is also entirely accurate, and is likely to aid jury understanding about the nature of the works at issue. Alcon's suggestion that the description is "argumentative" is confusing, as there is no possible dispute that the submissions

Operator's Manual.   J&J also claims that Alcon has infringed those copyrights. Alcon denies those claims and raises certain affirmative defenses.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

Authority: D.I. 490 (Mem. Op. re Statute of Limitations); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.); Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.2. (August 2020).

---

to the FDA include a number of internal technical documentation, or that J&J's infringement claims extend to the copying of that documentation.  The title J&J chose to give in its copyright registrations is of no moment, and Alcon offers no reason why those titles should control.

**Alcon's Position:** According to J&J's copyright registrations, these works are titled "iFS Laser System 510(k) Premarket Notification (K073404)" and "iFS Laser System 510(k) Premarket Notification (K063682)."  Alcon is willing to compromise on the phrase "iFS FDA Submissions" to aid in jury comprehension, but J&J's additional inclusion of the phrase "Technical Documentation" is argumentative and likely to confuse the jury as to the nature of the documents. J&J may make factual arguments about these documents, but it is not entitled to the use of a misleading name in the jury instructions.  Moreover, the manner in which J&J described its works in the Second Amended Complaint does not change the title of the document as described in the registration certificate.

3

## 2.     ROLE OF THE JURY AND ROLE OF THE COURT

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as an indication of what I think of the evidence or what your verdict should be. Instead, I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions.  You are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

<u>Authority:</u> Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.1. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

3.    **EVIDENCE**

You must make your decision based only on the evidence that you see and hear in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses say while they testify under oath (including deposition testimony that will be played or read to you), the exhibits that I allow into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements, arguments, questions, and objections are not evidence. None of my legal rulings, comments, or questions are evidence. And demonstrative exhibits are not evidence.

During the trial, I may not let you hear the answers to some of the questions that the lawyers ask. I also may rule that you cannot see some of the exhibits that the lawyers want you to see. And sometimes I may order you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might say or what an exhibit might show. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Do not consider my rulings on whether you can hear certain testimony or see certain exhibits as any indication of my opinion of the case or of what your verdict should be.

<u>Authority:</u> Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.5. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 4.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. For example, if a witness testified that she saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom dripping wet holding an umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between direct and circumstantial evidence. Instead, find facts from all the evidence in the case, both direct and circumstantial, and give it whatever weight you believe it deserves.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.6 (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042 (9th Cir. 2020); *Walker v. Kemp*, 587 F. Supp. 3d 232 (E.D. Pa. 2022).

5.     **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

You may determine how much of any witness's testimony to accept or reject; for example, you may choose to reject some parts of a witness's testimony while accepting other parts.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.7. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

**6.      DEPOSITION TESTIMONY**

You may hear witnesses testify through deposition testimony. A deposition is testimony of a witness taken under oath before trial. A court reporter is present and records the questions and answers. You should judge deposition testimony, insofar as possible, in the same way as if the witness had been present to testify.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 2.5. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

7.     **EXPERT WITNESSES**

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field—he or she is called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 2.11. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 8.   BURDENS OF PROOF

This is a civil case in which J&J is alleging copyright infringement by Alcon.

J&J has the burden of proving infringement by what is called a preponderance of the evidence. This means that J&J has to produce evidence which, when considered in light of all of the facts, leads you to believe that what J&J claims is more likely true than not. To put it differently, if you were to put J&J's evidence on one side of a scale and Alcon's evidence on the opposite side, the evidence supporting J&J's claims would have to make the scales tip slightly on J&J's side.

On certain issues, called affirmative defenses, Alcon has the burden of proving the elements of the defense by a preponderance of the evidence. This means that Alcon has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Alcon claims is more likely true than not.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.10. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

11

## 9.    CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves and not with family and friends. If anyone, including a fellow juror, tries to talk to you about the case, bring it to my attention promptly. We ban discussions because, among other good reasons, you must keep an open mind throughout the presentation of evidence. I know that many of you use phones, laptops, and similar tools and devices to access the internet and to communicate with others. You also must not use these tools to communicate electronically or orally with anyone about the case, including through e-mail, instant messages, or text messages. Do not communicate through any blog, website, or internet chat room, or by way of any social networking websites or services, including Facebook, Twitter, Snapchat, TikTok, Instagram, Telegram, Discord, LinkedIn, and YouTube. You cannot use any of these tools to communicate about the case during trial.

If any lawyer, party, or witness does not speak to you or avoids eye contact when you pass in the hall, ride the elevator, or the like, remember it is not because they are being rude. They are following my instructions not to talk to or visit with you. That is the reason you are asked to wear your juror tags.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not do any independent research or investigation on your own related to the case, this type of case, or the parties or witnesses in this case. Do not do any research on the internet, for example. Do not ask your family or friends whom you think might know more than you do about the subject matter of this case.

Again, do not reach any conclusions on the claims or defenses until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.3. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 10.   NOTE-TAKING BY JURORS

If you wish, you may take notes during the presentation of evidence, the summations of the attorneys at the conclusion of the evidence, and during my instructions to you on the law. Your notes are for your own personal use and are valuable, if at all, only as a way to refresh your memory. They are not to be read or given to anyone else including your fellow jurors. Your notes are not to be used in place of the evidence.

The court reporter will transcribe the trial testimony, but you should not assume that the transcripts will be available for your review during your deliberations. Instead, as you listen to the testimony, keep in mind that you will be relying on your memory when it comes time to deliberate and render your verdict in this case.

If you do take notes, do not take them with you when you leave the courthouse. At the end of each day, leave your notes in the jury room. At the conclusion of the case, after you have reached a verdict, a court officer will collect and destroy your notes.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.8. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 11.    INTRODUCTION TO COPYRIGHT

[4][**J&J's Proposal**: J&J claims ownership of copyrights and seeks damages against Alcon for copyright infringement.  Alcon denies infringing the copyrights. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

The copyright protection does not extend to any facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries that are described, explained, illustrated, or embodied in such work.

The copyrighted work must be original.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

---

[4]    J&J's Proposal extends from this Page until Page 17.

**HOW COPYRIGHT IS OBTAINED**

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. Registration of the copyright with the U.S. Copyright Office is not a condition of copyright protection. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

**PLAINTIFF'S BURDEN OF PROOF**

In this case, J&J contends that Alcon has infringed J&J's copyrights. J&J has the burden of proving by a preponderance of the evidence that J&J is the owner of the copyrights and that Alcon copied original expression from the copyrighted works. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

**PROOF OF COPYING**

To prove that Alcon infringed J&J's work, J&J may show that Alcon had access to J&J's copyrighted work and that there are substantial similarities between Alcon's work and J&J's copyrighted work.

## LIABILITY FOR DIRECT INFRINGEMENT

One who reproduces, distributes, or prepares derivative works from a copyrighted work without authority from the copyright owner infringes the copyright.

## LIABILITY FOR SECONDARY INFRINGEMENT

Copyright may also be infringed vicariously or contributorily.

A person is vicariously liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

A person is contributorily liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.][5]

---

[5]   **J&J's Position:**  This instruction is based directly on Ninth Circuit Model Civil Jury Instruction 17.1, which is a preliminary instruction given in copyright cases, with modifications only to insert the names of the parties, and to specify that registration is not a requisite to copyright protection, which is directly from the Copyright Act, which specifies that registration is "permissive."  *See* 17 U.S.C. § 408(a) ("[T]he owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection.").  Alcon has indicated that it intends to argue to the jury that J&J's failure to register copyrights at the time of the works' creation indicated that it did not value those copyrights. That argument is entirely improper, and Alcon should not be permitted to make it.  Registration is simply

a prerequisite for suit and certain remedies.  See 17 U.S.C. §§ 411(a), 412.  J&J's alleged delay in filing registrations is therefore entirely irrelevant to damages.  As the Federal Circuit has held, "the argument that delay in bringing suit somehow establishes [plaintiff's] perception of the value of its invention is specious." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods.* Grp., LLC, 879 F. 3d 1332, 1352 (Fed. Cir. 2018).  If Alcon is permitted to make this argument, it could mislead the jury into believing that registration is mandatory.  This modification to the model instruction is therefore necessary to ensure the jury understands the law accurately.  Finally, while Alcon claims J&J's proposal is "too complicated for a preliminary instruction," such level of detail is necessary for a preliminary instruction in the copyright context, given common misunderstandings of copyright law and principles.  Alcon is incorrect that the instruction does not address unprotectability; it states specifically that copyright does not extend to "facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries," which reflects section 102(b) of the Copyright Act, 17 U.S.C. 102(b).  Alcon's efforts to draw adverse inferences from J&J's claims of privilege is improper, for the reasons given in response to Alcon's Motion *in Limine* No. 1.

==Alcon's Position:==  J&J's proposal is too complicated for a preliminary instruction.  Moreover, although it discusses some of the legal issues to be decided in the case, it does not fully address them.  First, J&J's proposal addresses originality and the concepts in 17 U.S.C. § 102(b), but it does not discuss any of the other unprotectability doctrines discussed in footnote 23.  *See, e.g., Tanksley v. Daniels*, 902 F.3d 165, 175 (3d Cir. 2018) (discussing *scènes à faire*).  Second, it mentions substantial similarity, but it does not explain that for two works to be substantially similar, the unprotectable material must be filtered out.  *Id.*  This is particularly concerning because J&J's proposal later states that "One who reproduces, distributes, or prepares derivative works from a copyrighted work without authority from the copyright owner infringes the copyright."  That, however, is not necessarily true, as reproducing unprotectable material or preparing a work based on another that is not substantially similar to the original is not a copyright infringement.  *See Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 565 (3d Cir. 2002).  Third, J&J's proposal does not mention any of Alcon's defenses.

It also is likely to confuse and mislead the jury.  Because J&J failed to register its copyrights or to sue Alcon for over a decade, the jury is entitled to find that J&J did not value the works that J&J eventually registered.  *Cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) (finding "a plaintiff's delay

[**Alcon's Proposal**: I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the elements that J&J must prove to make its case.

To prove direct infringement, J&J must prove by a preponderance of the evidence: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are protectable.  To prove contributory infringement, J&J must prove by a preponderance of the evidence that (1) Alcon's customers directly infringed copyrights owned by AMO Development, LLC; (2) Alcon had knowledge that the customers were directly infringing; and (3) Alcon intentionally induced or

---

can always be brought to bear at the remedial stage . . . in assessing the 'profits of the infringer . . . attributable to the infringement.'")  Moreover, as discussed in Alcon's MIL No. 1, because J&J asserted privilege over the *actual* reasons why it did not register its copyrights or sue in 2014 when it learned about the basis for its lawsuit, it should be precluded from presenting any *hypothetical* basis for its failure to do so.  Yet, J&J's modified instruction is intended to do just that by suggesting that copyright registration is merely ministerial.  Moreover, J&J's reliance on *Exmark Manufacturing Co. v. Briggs & Stratton Power Productions* is misplaced as (a) the court did not address delay in registration, just delay in filing suit; and (b) the court affirmed the district court's finding that an argument based on the delay in filing suit was "specious" because the record in that case supported a finding "that there were other reasons for Exmark's delay in filing suit, including scarcity of financial resources to do so."  879 F.3d 1332, 1352 (Fed. Cir. 2018).  J&J has claimed *privilege* over its reasons and, thus, the jury is entitled to make appropriate inferences based on the record evidence and lack thereof.  In any case, as discussed below, Alcon is willing to agree to a reasonable copyright registration final instruction, *see* Instruction No. 40, but J&J's preliminary instruction proposal is unnecessary and prejudicial.

materially contributed to the infringing activity.  To prove vicarious infringement,

J&J must prove by a preponderance of the evidence that (1) Alcon's customers

directly infringed copyrights owned by AMO Development, LLC; (2) Alcon had the

right and ability to supervise or control the infringing activity but failed to do so;

and (3) Alcon profited directly from the infringing activity.][6]

Authority:  D.I. 218, *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.); 17 U.S.C. §§ 102, 106, 201, 408, 411; *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir. 1983); *Williams Electronics v. Artic Int'l, Inc.*, 685 F.2d 870 (3d Cir. 1982); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79  (2d Cir. 2016); *Krist v. Pearson Educ., Inc.*, 419 F. Supp. 3d 904 (E.D. Pa. 2019); Ninth Circuit Manual of Model Jury Instructions, No. 17.1 (Civil) (June 2021 update);  U.S.  Copyright  Office,  *Copyright  in  General*, https://www.copyright.gov/help/faq/faq-general.html.

---

[6] **Alcon's Position:** Alcon proposes using a modified version of Judge Stark's preliminary copyright instruction from *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.).  It will give the jury a sufficient indication of the issues that may be raised at trial, and J&J identifies no reason that Judge Stark's instruction is inappropriate here.  J&J's reference to model instructions from another Circuit does not make an instruction used in this Court less appropriate.

**J&J's Position:** Judge Stark's instructions do not reflect the Ninth Circuit Model Civil Jury Instructions, and provide the jury with an insufficient grounding to understand the evidence that will be presented to them. J&J's position is discussed above, after its proposal.

## 12.   OUTLINE OF A TRIAL

The trial will now begin. First, each side may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, then each party is given an opportunity to present its evidence. J&J will go first because it is its burden to prove its copyright infringement claims.  Following J&J's case, Alcon may present evidence to show that J&J cannot prove its infringement claims and that Alcon has established its affirmative defenses.  Following Alcon's case, J&J may then present evidence to rebut the evidence Alcon offers.

After all the evidence has been presented, the attorneys will present to you closing arguments. As with opening statements, closing arguments are not evidence. Then, I will give you final instructions on the law that applies to the case, and you will retire to the jury room to deliberate on your verdict.

Finally, during the trial, it may be necessary for me to talk to the lawyers outside of your hearing by having a sidebar. If this happens, please be patient. These sidebars are necessary to ensure that the evidence that is presented to you is properly presented to you under the law. And they help ensure trial moves efficiently. We will do what we can to keep the number and length of sidebars to a minimum.

Whether I grant or deny a request for a sidebar is not an indication of my opinion of

the case or of what your verdict should be.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.12. (August 2020); D.I. 447 (Preliminary Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## II.   POST-TRIAL JURY INSTRUCTIONS

## 13.   GENERAL INSTRUCTIONS—INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the issues in this trial.

I gave you some instructions at the beginning of the case.  I will not repeat them now, but they still apply.  You should consider those instructions and these instructions together as a whole.

Please listen very carefully to everything I say.

You will have a written copy of the preliminary instructions and these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 14. GENERAL INSTRUCTIONS—JUROR'S DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I have given and will give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each issue. Remember that you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 15.   GENERAL INSTRUCTIONS—BURDEN OF PROOF

J&J has the burden of proving its case by a preponderance of the evidence. That means J&J has to produce evidence that leads you to believe that what it claims is more likely true than not.  To say it differently: if you were to put the parties' evidence on opposite sides of a scale, J&J would have to make the scales tip slightly in its favor.  If J&J fails to meet this burden, the verdict must be for Alcon.

On Alcon's affirmative defenses, it has the burden of proving the elements of the defense by a preponderance of the evidence.  That means Alcon has to produce evidence that leads you to believe that what it claims is more likely true than not.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.10. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 16.    GENERAL INSTRUCTIONS—CONSIDERATION OF EVIDENCE

The evidence in this case includes the testimony of witnesses and the exhibits that I have admitted into evidence.  What the lawyers say, as I have noted previously, is not evidence.

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 1.5 (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 17.  GENERAL INSTRUCTIONS—EXHIBITS

During the course of the trial, you have seen many exhibits, and many were admitted as evidence.  You will have these admitted exhibits in the jury room during your deliberations.  To the extent that I admitted charts or summaries into evidence, you should consider them as you would any other admitted evidence.  Other exhibits (such as charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather the underlying testimony of the witness that you heard when you saw the demonstrative exhibits is the evidence.

Authority: Third Circuit Model Civil Jury Table of Contents and Instructions, No. 2.7. (August 2020) (verbatim except as to reflect the fact that both parties presented exhibits in the form of charts and summaries); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

**18. GENERAL INSTRUCTIONS—STIPULATIONS OF FACT**

The parties have agreed or stipulated that certain facts are true, and those stipulated facts have been read to you during this trial.  You must treat these facts as having been proved for the purposes of this case.

<u>Authority:</u> Third Circuit Model Civil Jury Table of Contents and Instructions, No. 2.4. (August 2020).

## 19.   GENERAL INSTRUCTIONS—CORPORATIONS

In this case, the parties are corporations.   Under the law, a corporation is considered to be a person, and all persons are equal before the law.   A corporation is entitled to the same fair consideration that you would give any individual person.

In general, any agent or employee of a corporation may bind the corporation by their acts and declarations made while acting within the scope of the authority delegated to them by the corporation, or within the scope of their duties as an employee of the corporation.

[**Alcon Proposal/J&J's Conditional Proposal:**  If you find that an agent or employee of a corporation knew or had reason to know of a fact, and knowledge of the fact is material to the agent or employee's duties to the corporation, then you must conclude that the corporation knew of the fact.   Knowledge of a fact is "material" to the agent or employee's duties only if the knowledge is important to the function the agent or employee is employed to perform.   An employee's knowledge may be attributed to only the particular entity that employs the employee.][7]   [**J&J Conditional Proposal**: Alcon has admitted that former Alcon

---

[7]  **J&J's Position:**   J&J has sought to bar Alcon from arguing that it lacks the knowledge of LenSx employees responsible for development of the infringing materials, and Alcon has opposed that motion.   *See* J&J Motion *in Limine* No. 1. If J&J's MIL is denied, the parties agree that this proposal should be given to the jury.

employees' work on source code and FDA submissions was material to their duties to Alcon.][8]

Authority: Restatement (Third) of the Law of Agency § 503; Seventh Circuit Model Jury Instruction No. 1.03; D.I. 791 (Final Jury Instructions), *Samsung Elecs. Co., Ltd., et al. v. NVIDIA Corp.*, No. 3:14-cv-00757 (E.D. Va. Feb. 5, 2016); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100 (3d Cir. 2009); *Xiros v. Depuy Synthes Sales*, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022); *Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, No. 06 Civ. 2204, 2009 WL 4250061 (D.N.J. Nov. 25, 2009); O'Malley et al., Federal Jury Practice and Instructions § 103.31 (6th ed. 2015).

---

[8]   **J&J's Position:** Alcon is bound to its earlier position (adopted by the Court during a privilege dispute) that the work of former LenSx employees was within the scope of their duties to Alcon.  *See, e.g.*, D.I. 170, at 3-4 (taking the position that Peter Goldstein and Kostadin Vardin's "primary duties involved writing source code for the LenSx system" and that these activities were "matters within the scope of the employees' corporate duties"); *see also* D.I. 173 (upholding Alcon's common interest privilege claim over Goldstein and Vardin's documents).

**Alcon's Position:** J&J's proposal does not reflect a statement of law, and its use of the term "admitted" is unnecessarily argumentative.  J&J may point to admissible evidence as to the LenSx employees' work during the trial, but it would be unduly prejudicial for the Court to instruct the jury in this manner.

## 20.   COPYRIGHT—DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to reproduce a copyrighted work in copies, prepare derivative works [**J&J's Proposal:** based upon the copyrighted work],[9] or distribute the work covered by copyright.  [**Alcon Proposal:** Derivative works are works based on one or more pre-existing works.][10]

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work or an assignee.  In general, copyright law protects against reproduction, adaptation, public distribution of identical or substantially similar copies of the owner's copyrighted work without the owner's

---

[9]   **J&J's Position:**  J&J's instruction quotes the statutory language defining the exclusive right, so it is unclear why Alcon believes it does not make sense. 17 U.S.C. 106(2) ("the owner of copyright under this title has the exclusive rights to do and to authorize any of the following … *to prepare derivative works based upon the copyrighted work*").

**Alcon's Position:**  J&J's proposal does not make sense.  As the term "derivative work" already is defined to mean "a work based upon one or more preexisting works," 17 U.S.C. § 101, a derivative work "based upon the copyrighted work" is redundant.

[10]   **Alcon's Position:**  As discussed in footnote 9, J&J's proposal is redundant and nonsensical.  Thus, Alcon proposes including a sentence based directly on the statutory definition.  17 U.S.C. § 101 (defining a "derivative work" as "a work based upon one or more preexisting works").

**J&J's Position:**  This instruction is unnecessary because the definition of the derivative work right in the first sentence reflects the statute (17 U.S.C. § 106) and includes the relevant language.

31

permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

[**Alcon Proposal:** A copyrighted work can be a literary work, pictorial work, graphic work, or computer program, among other things.  The copyrighted work must be original.

Copyright law allows the author of an original work to stop others from copying the original expression in the author's work.  Only the particular expression of an idea can be copyrighted and protected.  Even if they are contained in a copyrighted work, copyright law does not protect against others copying or using facts, ideas, functionality, procedures, processes, systems, methods of operation, concepts, principles, or discoveries.][11]

---

[11]   **Alcon's Position:**  Alcon proposes using a modified version of Judge Stark's "Definition of Copyright" instruction from *Leonard v. StemTech Health Sciences, Inc.*  D.I. 227, at 19, No. 08 Civ. 067 (D. Del.).  Although J&J asserts that this proposal is not needed in light of its proposed Instruction Nos. 21 and 22, J&J's proposals are argumentative and riddled with factual assertions, rather than legal instructions.  Thus, Alcon objects to those instructions below.  J&J also asserts that the sentence "The copyrighted work must be original" is not contained in the *Leonard* instruction, but it appears in the last paragraph of that instruction.  Likewise, the second paragraph of Alcon's proposal is based on Ninth Circuit Model Instruction No. 17.4.  Finally, as discussed in greater detail below, J&J is wrong that copyright protects functionality.  *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1198 (2021) (discussing "unprotected functional elements"); *see infra* 60.

**J&J's Position:**  The first sentence is unnecessary in light of the addition of Proposed Instruction No. 21 ("Copyright—Subject Matter—Generally"), regarding the subject matter of copyright.

Authority:  D.I. 218, *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.); Ninth Circuit Manual of Model Jury Instructions, No. 17.2, 17.4 (Civil) (June 2021 update); *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 337 (3d Cir. 2022) (citing *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983)); *Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014);

---

The second sentence is not in either version of the Ninth Circuit Model Civil Jury Instructions, or in Judge Stark's instruction from *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.), on which Alcon purports to rely.  There is no need for the instruction here, as the concept of originality is introduced in Proposed Instruction No. 21 ("Copyright—Subject Matter—Generally"), and explained in detail in Proposed Instruction No. 26 ("Copyright—Ownership of Valid Copyright—Originality").

This instruction is not in either version of the Ninth Circuit Model Civil Jury Instructions, or in Judge Stark's instruction from *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.), on which Alcon purports to rely.

Finally, it is inaccurate and misleading to state that "functionality" is unprotectable, particularly in the context of this case.  "Functionality" does not appear in the statutory list of unprotectable aspects of copyrighted works in section 102(b) of the Copyright Act.  *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]").  Indeed, the Copyright Act defines "computer program" in distinctly functional terms.  *See* 17 U.S.C. § 101 (defining a "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result").  Thus, "computer programs are by definition functional — they are all designed to accomplish some task." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014); *see also Whelan Associates v. Jaslow Dental Laboratory*, 797 F.2d 1222, 1238 (3d Cir. 1986) (computer programs are "functional works").  Thus, as the Federal Circuit has held, "[s]ection 102(b) does not . . . automatically deny copyright protection to elements of a computer program that are functional."  *Oracle Am.*, 750 F.3d at 1367.  That is because if one "were to accept the . . . suggestion that a computer program is uncopyrightable simply because it carries out pre-assigned functions, no computer program is protectable." *Id*.  This aspect of the instruction is thus likely to confuse and mislead the jury.

The remainder of the instruction is unnecessary in light of Proposed Instruction No. 22 ("Copyright—Subject Matter—Ideas and Expression") below.

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002); *Sony Comput. Entm't v. Connectix Corp.*, 203 F.3d 596, 599 (9th Cir. 2000).

## 21.    COPYRIGHT—SUBJECT MATTER—GENERALLY

[**J&J's Proposal**: The works involved in this trial are known as:

1.  literary works, which is a category that does not connote any criterion of literary merit or qualitative value, and includes factual, reference, or instructional works.

2. computer programs, that is, sets of statements or instructions to be used directly or indirectly in a computer to bring about a certain result.

You are instructed that a copyright may be obtained in the iFS Computer Programs, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

These works can be protected by copyright law.  Only that part of the works consisting of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.][12]

---

[12]  **J&J's Position:** This instruction is taken verbatim from Ninth Circuit Model Civil Jury Instruction 17.3.  Far from containing "factual assertions" it provides purely legal instruction.  The question of whether a work constitutes eligible

copyrightable subject matter is a legal question. *See Robert E. Blue Consulting Engineers, P.C. v. Callan*, No. CIV.A. 14-5152, 2015 WL 1084325, at *3 (E.D. Pa. Mar. 11, 2015) ("The determination of whether a work is subject to copyright protection is a matter of law for the court.") (*quoting William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458, 465 (E.D. Pa. 2006)); Ninth Circuit Model Civil Jury Instruction 17.3 cmt ("Generally, whether a subject matter is copyrightable is a question of law to be determined by the court.  This instruction is designed to inform the jury that the court has determined the subject matter to be appropriately copyrightable.).   It is necessary to introduce the concepts that only original parts of the works are protectable, and that copyright does not extend to ideas, *see* 17 U.S.C. § 102(b).  As the comment to the Ninth Circuit model instruction notes, the additional detail on the definition of literary work is directly from the legislative history of the Copyright Act, and is useful in this context to explain that literary works encompass software and technical documentation even if not "literary" in the ordinary sense.  H.R. Rep. No. 94-1476, at 54 (1976) (explaining that the term "literary works" does not connote any criterion of literary merit or qualitative value: it includes catalogs, directories and similar factual, reference, or instructional works and compilations of data. It also includes computer data bases, and computer programs to the extent that they incorporate authorship in the programmer's expression of original ideas, as distinguished from the ideas themselves").

<mark>Alcon's Position</mark>: This instruction is unnecessary in light of Alcon's proposal in Instruction No. 20, which is a modified version of Judge Stark's "Definition of Copyright" instruction from *Leonard v. StemTech Health Sciences, Inc.* D.I. 227, at 19, No. 08 Civ. 067 (D. Del.).  Likewise, originality already is addressed in the parties' agreed upon Instruction No.  26.  J&J's proposal also is argumentative, contains numerous factual assertions, and is prejudicial to Alcon.  First, by the time that this instruction is read to the jury, it will have heard extensive testimony about the works at issue.  It is not necessary to rehash them again.  Moreover, J&J's proposal is not merely a statement of law, but a purported application of that law to facts that are within the jury's purview.  Second, J&J's definition of a "literary work" is inconsistent with the statutory definition, which does not contain the phrases "criterion of literary merit or qualitative value" or mention that it "includes factual, reference, or instructional works."  17 U.S.C. § 101 (defining the term "literary works" to mean "works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they

<u>Authority:</u>   Ninth Circuit Manual of Model Jury Instructions, No. 17.3 (Civil) (September 2022 update).

---

are embodied"). Third, it is unnecessary to instruct the jury that a copyright may be obtained in the works that J&J asserts. J&J may make that argument to the jury. Fourth, for the reasons discussed in footnote 3, J&J's inclusion of the phrase "Technical Documentation" is inconsistent with the titles of its FDA submissions.

22.   **COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION**

[**J&J's Proposal:** Copyright law allows the author of an original work to stop others from copying the original expression in the author's work. Only the particular expression of an idea can be copyrighted and protected. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles, or discoveries.

If the idea and the expression of the idea coincide, then the expression is considered "merged" with the idea and, therefore, not protected.  But if the idea is capable of various modes of expression, then there is no merger.  In addition, under the doctrine of externalities, copyright protection does not extend to those elements of a work that necessarily result from external factors inherent in the subject matter of the work, where those external factors constrained the choices of the original author.  In the context of computer programs, if a program is the sole way to perform a function, it is an uncopyrightable idea.  But if other programs can be written which perform the same function, then the program is an expression of an idea.][13]

---

[13] **J&J's Position:** J&J's proposed language provides a neutral and accurate summary of the merger doctrine as it is applied in the Third Circuit. In addition, given the subject matter of this case, it provides useful guidance to the jury regarding the application of the idea/expression dichotomy and the merger doctrine in the context of computer programs

Alcon misstates Third Circuit law in stating that merger occurs "when an idea can be expressed in only a *limited number* of ways"  (emphasis added).  In

*Educational Testing Services v. Katzman*, 793 F.2d 533 (3d Cir. 1986), the court explicitly rejected that position. *Id.* at 539 ("While the limited number of ways a concept can be addressed may be relevant to the extent of copying permitted, it does not render an original expression per se incapable of copyright protection."); *see also id.* at 539-40 ("If other methods of expressing that idea are not foreclosed as a practical matter, then there is no merger" (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983))).

The more recent Third Circuit decision in *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F. 4th 331 (3d Cir. 2022), which Alcon principally relies on, is not to the contrary. Indeed, the *Pyrotechnics* court reinforced long-standing Third Circuit case law that the merger inquiry "focus[es] on whether the idea is capable of various modes of expression." *Pyrotechnics Mgmt.*, 38 F. 4th at 337-38 (quoting *Apple Computer*, 714 F.2d at 1253); *see also Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832 (Fed. Cir. 1992) ("The unique arrangement of computer program expression which generates that data stream does not merge with the process so long as alternate expressions are available."). It also reiterated that, in the context of computer programs, "if the computer program is the *sole* way to perform the function, it is an uncopyrightable idea" but if "[i]f other programs can be written ... which perform the same function ... then that program is an expression of [an] idea and hence copyrightable." *Id.* at 337 (emphasis added) (quoting *Apple Computer*, 714 F.2d at 1253).

==Alcon's Position:== The first paragraph of J&J's proposal is unnecessary in light of Alcon's more straightforward proposal in Instruction No. 20, which addresses the same legal principles.

The second paragraph of J&J's proposal is unnecessary and misleading. First, the doctrine of merger should be addressed in the context of Instruction No. 31, which discusses substantial similarity and the elements of a copyrighted work that are not protectable and, thus, must be filtered out of the jury's consideration. Second, the merger doctrine holds that, when an idea can be expressed in only a limited number of ways, the idea and expression have merged and, thus, are unprotectable. *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F. 4th 331, 339 n.7 (3d Cir. 2022) ("Under merger, when the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'" (internal quotation marks omitted). Although J&J disputes this black-letter principle, its own cited authority held that "an expression will be found to be merged into the idea when 'there are no or few other ways of expressing a particular idea.'" *Katzman*, 793 F.2d at 539. In any case, that an element of a work is not merged, does not mean

<u>Authority:</u>   Ninth Circuit Manual of Model Jury Instructions, No. 17.4 (Civil) (September 2022 update); *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331(3d Cir. 2022); *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983)).

---

that such an element is protectable.  For example, an element "copied from another's work" is unprotectable for a separate reason.  *Pyrotechnics*, 38 F. 4th at 339.  As J&J's proposed instruction only addresses one way that an element of a work may be unprotectable, it has the propensity to confuse and mislead the jury.  Instead, Alcon proposes discussing all of the unprotectability doctrines in the discussion of substantial similarity in Instruction No. 31, which also provides a more complete explanation of the doctrine of externalities.

## 23.   COPYRIGHT—ELEMENTS OF DIRECT INFRINGEMENT

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On J&J's direct copyright infringement claim, J&J has the burden of proving by a preponderance of the evidence that:

1.     AMO Development, LLC is the owner of a valid copyright; and

2.     Alcon copied protectable expression from the copyrighted work.

If you find that J&J has proved both of these elements, your verdict should be for J&J on its direct infringement claim.  If, on the other hand, you find that J&J has failed to prove either of these elements, your verdict should be for Alcon on J&J's direct infringement claim.

[**J&J's Proposal**: With respect to its claim for direct infringement, J&J does not need to prove that Alcon acted with any particular knowledge for you to find for J&J, and innocent intent is no defense to liability.][14]

---

[14]     **J&J's Position:** First, this language reflects Third Circuit law. *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982) ("It is settled that innocent intent is generally not a defense to copyright infringement." (citing 3 Nimmer on Copyright § 13.08 (1981)); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991) (same); 4 Nimmer on Copyright § 13.08 (2022) ("In actions for statutory copyright infringement, the innocent intent of the defendant constitutes no defense to liability."). Second, it is particularly necessary because Alcon has argued and has indicated it will continue to argue that Alcon lacked knowledge of the infringement.  Unless the jury is instructed that knowledge is not an element of direct infringement, it will be misled.  Third, Alcon's statements regarding confusion on behalf of the jury with respect to

41

<u>Authority:</u>  Ninth Circuit Manual of Model Jury Instructions, No. 17.5 (Civil) (June 2021 update); *see Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870 (3d Cir. 1982); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277 (3d Cir. 1991); 3 Nimmer on Copyright § 13.08 (1981); 4 Nimmer on Copyright § 13.08 (2022).

---

contributory or willful infringement are misplaced, given the fact that this provision falls within the instruction specifically concerning direct infringement. Nevertheless, J&J added further clarification that this instruction relates specifically to the direct infringement claim in order to alleviate Alcon's concerns.

**Alcon's Position:** J&J's proposal does not appear in the Ninth Circuit model jury instructions, on which it principally relies.  It also is likely to confuse and mislead the jury.  For example, J&J proposes an instruction that it does not need to prove intent but knowledge and intent *are* required to prove contributory and willful infringement respectively (although they are not required to prove direct infringement). *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." (citation omitted)); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005) ("Copyright infringement is willful when the defendant 'actually knew it was infringing the plaintiff's copyrights or recklessly disregarded that possibility.'").  Moreover, given that J&J's contributory infringement claim requires a showing of direct infringement, J&J's additional proposed language referencing "direct infringement" does not allay the potential confusion that it causes.

## 24.   COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT—DEFINED

To prove that AMO Development, LLC is the owner of a valid copyright in a work, J&J must show by a preponderance of the evidence that:

1.     The work is original; and

2.     AMO Development is the author or creator of the work, or received a transfer of the copyright.

[**Alcon Position:** If you find that J&J has failed to prove either of these elements, your verdict should be for Alcon.][15]

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.6 (Civil) (June 2021 update); 17 U.S.C. §§ 201, 204.

---

[15] **Alcon's Position:**  Alcon's proposal will be helpful to the jury as it may be unclear what it should do if it finds that J&J failed to prove either subelement.  It also is similar to the parties' agreed language in Instruction No. 24.

**J&J's Position:** This language is not in the Ninth Circuit Model Civil Jury Instructions on which this instruction is based.  It is unnecessary because J&J's burden is already made clear by the remainder of the instruction.

## 25.   COPYRIGHT—OWNERSHIP   OF   VALID   COPYRIGHT   — REGISTRATION CERTIFICATE

A copyright automatically exists in a work the moment it is fixed in any tangible medium of expression.   [**J&J's Proposal**: Registration of the copyright with the U.S. Copyright Office is not a condition of copyright protection.][16]

---

[16]  **J&J's Position:**   This language is directly from the Copyright Act, which specifies that registration is "permissive." *See* 17 U.S.C. § 408(a) ("[T]he owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection."). Alcon has indicated that it intends to argue to the jury that J&J's failure to register copyrights at the time of the works' creation indicated that it did not value those copyrights. That argument is entirely improper, and Alcon should not be permitted to make it.  Registration is simply a prerequisite for suit and certain remedies.   *See* 17 U.S.C. §§ 411(a), 412.   J&J's alleged delay in filing registrations is therefore entirely irrelevant to damages.  As the Federal Circuit has held, "the argument that delay in bringing suit somehow establishes [plaintiff's] perception of the value of its invention is specious." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods.* Grp., LLC, 879 F. 3d 1332, 1352 (Fed. Cir. 2018).  If Alcon is permitted to make this argument, it could mislead the jury into believing that registration is mandatory. This modification to the model instruction is therefore necessary to ensure the jury understands the law accurately.

**Alcon's Position:**   Alcon proposes using a modified version of Judge Stark's "How Copyright Is Obtained" instruction from *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.).  Those instructions do not contain J&J's proposed language.  Likewise, J&J's proposal is not contained in Ninth Circuit Model Jury Instruction No. 17.7, on which J&J relies.  As to J&J's arguments concerning whether its delay in registering is evidence of a lack of value, because J&J failed to register its copyrights or to sue Alcon for over a decade, the jury is entitled to find that J&J did not value the works that J&J eventually registered, and that J&J failed to mitigate its damages.  *Cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) (finding "a plaintiff's delay can always be brought to bear at the remedial stage . . . in assessing the 'profits of the

The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

The evidence in this case includes Exhibits JX 2-19, 38-40, which are certificates of copyright registration from the Copyright Office. [**J&J's Proposal**: From these certificates, you may presume that J&J's works are the original works of the author and that AMO Development LLC owns the copyrights in that work, which I explained previously. Alcon may rebut that presumption by providing proof that the works are not original or that AMO Development LLC does not own the

---

infringer . . . attributable to the infringement.'"). Moreover, as discussed in Alcon's MIL No. 1, because J&J asserted privilege over the *actual* reasons why it did not register its copyrights or sue in 2014 when it learned about the basis for its lawsuit, it should be precluded from presenting any *hypothetical* basis for its failure to do so. Yet, J&J's proposal is intended to suggest that copyright registration is merely a ministerial formality. Moreover, J&J's reliance on *Exmark Manufacturing Co. v. Briggs & Stratton Power Productions* is misplaced as (a) the court did not address delay in registration, just delay in filing suit; and (b) the reason that an argument based on the delay in filing suit was "specious" is that the record in that case supported a finding "that there were other reasons for Exmark's delay in filing suit, including scarcity of financial resources to do so." 879 F.3d 1332, 1352 (Fed. Cir. 2018). J&J has claimed *privilege* over its reasons and, thus, the jury is entitled to make appropriate inferences based on the record evidence and lack thereof.

copyrights.]^17    [**Alcon's Conditional Proposal:** A copyright registration's

presumption is rebuttable.  If Alcon produces evidence that the registered work was

---

^17   **J&J's Position:** J&J's instruction is a modified version of Ninth Circuit Model Civil Jury Instruction 17.7, and is necessary to instruct the jury on J&J's entitlement to the presumption that it owns valid copyrights as a result of its registration.  Alcon's position that J&J is not entitled to the presumption is incorrect in two respects.

*First*, with respect to the iFS FDA Submissions and Technical Documentation, it is undisputed that the registrations were of unpublished works, and therefore the registrations are entitled to the presumption in 17 U.S.C. § 410(c).  The statute is clear: "the certificate of a registration made *before* … *first publication* of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  The considerable weight of case law supports J&J.  *See William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458, 467 (E.D. Pa. 2006) ("A certificate of registration will be considered timely for purposes of the presumption *if it states that the work is unpublished* or lists a date of publication that is within five years of the date of registration. (emphasis added)); see also *PRC Realty Sys., Inc. v. Nat'l Ass'n of Realtors, Inc.*, 766 F. Supp. 453, 461 (E.D. Va. 1991) ("In an unpublished work, where the registration is accomplished, as here, prior to publication, the prescriptions of § 410(c) are available."); *Hofheinz v. A.V.E.L.A., Inc.*, No. 12-06546-BRO (RZx), 2013 WL 12306480, at *8 (C.D. Cal. Aug. 21, 2013); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995).

*Second*, Alcon's position that registrations made more than five years after publication are not entitled to the presumption is incorrect.  The Copyright Act in fact provides that "[t]he evidentiary weight to be accorded the certificate of a registration made [more than five years after first publication of the work] *shall be within the discretion of the court*."  17 U.S.C. § 410(c) (emphasis added).  "Most courts conclude that untimely certificates [of registration] constitute prima facie evidence." *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2012 WL 6553403, at *3 (S.D. Cal. Dec. 13, 2012); *see also Graphic Design Mktg., Inc. v. Xtreme Enters., Inc.,* 772 F. Supp. 2d 1029, 1033 (E.D. Wis. 2011) ("While [plaintiff] obtained [the certificate] more than five years after first publication, courts typically extend the presumption to later obtained registrations."); *Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531

F. Supp. 3d 1231, 1248 (E.D. Mich. 2021) (holding presumption of originality applies even though registration was not obtained within five years of first publication); *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143-44 (E.D.N.Y. 2011) (same). Alcon offers no reason why this Court should not grant the same presumption to the works at issue here.

As for Alcon's burden to rebut the presumption of validity, J&J's instruction is consistent with Third Circuit case law. *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668–69 (3d Cir. 1990) ("Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality.")

==Alcon's Position:== J&J's proposal deviates from the instructions in *Leonard v. StemTech Health Sciences, Inc.* and Ninth Circuit Model Jury Instruction No. 17.7, and is inconsistent with the law. ***First***, J&J's certificates are not entitled to presumptions of validity if the registrations were made more than five years after publication. Although J&J claims that unpublished works are entitled to the presumption, 17 U.S.C. § 410(c) makes clear that registration must be "made before or within five years ***after first publication***." It does not state that a presumption applies to unpublished works, and numerous courts have held that is not the case. *See, e.g., Williams v. Warner/Chappell Music*, 2007 WL 9751921, at *4 (C.D. Cal. Sept. 26, 2007) ("Plaintiff appears to admit that he has not published the work, which would make the presumption inapplicable under §410(c)."); *Logicom Inclusive v. W.P. Stewart & Co.*, 2004 WL 1781009, at *6 (S.D.N.Y. Aug. 10, 2004) (nothing in the Copyright Act "speaks to what kind of evidentiary weight should be afforded . . . to unpublished works"). Likewise, a presumption is not available for J&J's published works because J&J admits that they were registered more than five years after publication. 17 U.S.C. § 410. This is particularly concerning here because, as this Court recognized in denying J&J's motion for summary judgment, the factual record contains evidence that J&J's works contain material copied from preexisting material. D.I. 487.

***Second***, there is no reason to instruct the jury on a presumption because Alcon already has met its burden of producing evidence to rebut it. As this Court held, the factual record contains evidence that J&J's works contain material copied from preexisting material. D.I. 487. This is important because, although a presumption of validity may shift the burden of production to Alcon to produce such evidence, the burden of persuasion is always on J&J to prove its claim. *See Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018) (holding "a ***plaintiff*** must show . . . ownership of a valid copyright" (emphasis added)). Even J&J's

not original, it remains J&J's burden to prove originality by the preponderance of the evidence.  Alcon can rebut the presumption by producing evidence that J&J had access to similar, prior works.][18]

---

own cited case makes this clear: "A timely obtained certificate creates a rebuttable presumption that shifts to the alleged infringer the **burden of production** of evidence of the invalidity of a copyright." *Haughey*, 430 F. Supp. 2d at 467 (emphasis added).  The language cited by J&J from *Masquerade* does not change the fact that this Court already has found that Alcon has satisfied the burden of production.  Thus, as any presumption has been rebutted, there is no need to confuse the jury with regard to one.

*Third*, J&J's proposal includes an incorrect statement of when the presumption is rebutted.  As explained in *Adtile Techs. Inc. v. Perion Network Ltd.*, once a defendant produces evidence that the plaintiff has access to similar prior works, the "burden of proving originality shifts back" to the plaintiff.  No. 15 Civ. 1193, 2016 WL 3457152, at *4 (D. Del. June 23, 2016) ("[W]here evidence in the record casts doubt on the issue, there is no assumption of validity. A defendant may rebut the prima facie effect of a copyright registration by producing evidence that the copyrighted work was itself copied from another work, thus challenging the originality of plaintiffs work.  Upon proof by a defendant that a plaintiff had access to similar prior works, the burden of proving originality shifts back to plaintiff.").

[18]  **Alcon's Position**:  As discussed in footnote 17, J&J is not entitled to an instruction on a presumption of validity because its works were registered too late and Alcon already has met its burden of producing evidence to rebut the presumption.  If such an instruction is to be given, however, Alcon's proposal is based on *Adtile Technologies Inc. v. Perion Network Ltd.*, which held that a "defendant may rebut the prima facie effect of a copyright registration by producing evidence that the copyrighted work was itself copied from another work, thus challenging the originality of plaintiffs work.  Upon proof by a defendant that a plaintiff had access to similar prior works, the burden of proving originality shifts back to plaintiff."  No. 15 Civ. 1193, 2016 WL 3457152, at *4 (D. Del. June 23, 2016).  As to J&J's factual arguments, it is for the jury to decide whether J&J can show that it owns its works.  J&J should not be permitted to avoid its burden by relying on belated copyright registrations.

<u>Authority:</u>  D.I. 218, *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.); Ninth Circuit Manual of Model Jury Instructions, No. 17.1, 17.7 (Civil) (June 2021 update); 17 U.S.C. § 410, 412; *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240 (3d Cir. 1983); *Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014); *Golden Star Wholesale, Inc. v. ZB Imp., Inc.*, 531 F. Supp. 3d 1231 (E.D. Mich. 2021); *Adtile Techs. Inc. v. Perion Network Ltd.*, No. 15 Civ. 1193, 2016 WL 3457152 (D. Del. June 23, 2016); *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011); 2 *Nimmer on Copyright* § 7.16 (2021); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663 (3d Cir. 1990).

---

**J&J's Position:**  J&J has proposed language that the presumption is rebuttable. Alcon's version is misleading in several respects.  First, the instruction that Alcon can rebut the presumption of validity by producing "evidence that J&J had access to similar, prior works" is highly likely to mislead the jury.  The copied version of the computer programs are derivative works of earlier works that are also owned by J&J.  Second, Alcon does not allege that J&J copied the entirety of its works from another source, but merely that certain isolated portion of the works (*e.g.*, individual aspects of the computer code) can be found in other sources. That argument, even if accepted by the jury, is insufficient to rebut the presumption of validity or ownership of the copyrights *as a whole*.  Whether specific portions of those works are not protectable as unoriginal despite presumed ownership or validity is a separate issue addressed in Proposed Instruction No. 26 ("Copyright—Ownership of Valid Copyright—Originality") and Proposed Instruction No. 31 ("Copyright—Copying—Substantial Similarity").  *Cf. Hiller, LLC v. Success Grp. Int'l Learning Alliance, LLC*, 976 F.3d 620, 627 (6th Cir. 2020) (distinguishing ownership from analysis of which parts of a work are copyright-protected).  Accordingly, Alcon has no basis for rebutting the presumption that the works as a whole are original and owned by J&J.  Proposed Instruction No. 26 ("Copyright—Ownership of Valid Copyright—Originality"), already addresses the requirement of originality, and Proposed Instruction No. 31 ("Copyright—Copying—Substantial Similarity"), also already addresses the requirement that the jury exclude "unprotectable or unclaimed elements of a work."

## 26.    COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT— ORIGINALITY

A work is original if it (1) was created independently, as opposed to being copied from another work; and (2) contains at least some minimal creativity.  The work need not be completely new or novel.

[**J&J's Proposal**: An original work may include or incorporate elements from other works, such as where other works are in the public domain, and works owned by others, with the owner's permission.][19]

---

[19] **J&J's Position:** J&J's proposed language is taken verbatim from Ninth Circuit Model Civil Jury Instruction 17.14.   It is particularly necessary to provide this instruction in this case because Alcon intends to focus on an argument that particular isolated elements of the works at issue did not originate at J&J (*e.g.*, individual elements of code that are commonly found in computer programs).  That argument could mislead the jury into believing that, if a particular work is comprised of a selection of individual elements that are not original when viewed in isolation, the work as a whole cannot be original.  That is not the law, however. *See, e.g. Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 220 (3d Cir. 2019) ("We have explained that we do not analyze each feature in isolation; instead, a 'specific *combination* of elements' that gives a sculpture 'its unique look' could be eligible for copyright protection."  (citation omitted.) . . . [I]t 'means nothing that these elements may not be individually entitled to protection.'"  (citations omitted.)); *Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 770 F. Supp. 1004, 1006 (E.D. Pa. 1991) (same). This instruction is necessary therefore prevent the jury from operating under a misimpression of the law.

**Alcon's Position:**  Alcon proposes using a modified version of Judge Stark's "Copyright Infringement — Originality" instruction from *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.).  Those instructions do not include J&J's proposed sentence.  Moreover, J&J's proposal is likely to confuse and mislead the jury because, although a work may include such elements, copyright protection does not extend to them.   17 U.S.C.  § 103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the

<u>Authority:</u>  D.I. 218, *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.); Ninth Circuit Manual of Model Jury Instructions, No. 17.14 (Civil) (June 2021 update); 17 U.S.C. § 103; *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Mon Cheri Bridals, Inc. v. Wu*, 383 F. App'x 228, 234 (3d Cir. 2010).

---

author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.").

## 27.  COPYRIGHT—OWNERSHIP OF VALID COPYRIGHT—WORK MADE FOR HIRE

A work made for hire is one that is prepared by an employee within the scope of their employment.  A work is made within the scope of employment if:

1.  it is the kind of work the employee is employed to create;

2.  it occurs substantially within the authorized time and space limits; and

3.  it is created, at least in part, for the purpose of serving the employer.

When a work is made for hire, the employer is considered to be the author of the work and the employer owns the copyright.  [**J&J's Proposal**: The employee does not have the right to take the work with them when they leave their employment, or reuse the work in a new context.][20]

---

[20]  **J&J's Position:** Contrary to Alcon's assertion, J&J's proposed language is not a misstatement of the law.  It merely states the default without including unnecessary caveats, which are irrelevant to this case because no party is arguing that the employees who went to Alcon had a license or were relying on the fair use doctrine.  This clarification should be included in this instruction because Alcon seeks to argue that former IntraLase and/or AMO Development employees had a right to use the works at issue during the course of their subsequent employment with Alcon. *Le v. City of Wilmington*, 480 F. App'x 678, 683 (3d Cir. 2012) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes [of the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

**Alcon's Position:**  J&J's proposal is not contained in Ninth Circuit Model Jury Instruction No. 17.11, on which J&J relies.  Moreover, J&J's proposal is not a correct statement of the law as an employee may be permitted to use a work due to a license, fair use, or other similar rights.  17 U.S.C. § 107.  J&J's citation to

<u>Authority:</u>  Ninth Circuit Manual of Model Jury Instructions, No. 17.11 (Civil) (June 2021 update); 17 U.S.C. § 101 (definition of "work made for hire"); *Le v. City of Wilmington*, 480 F. App'x 678 (3d Cir. 2012).

---

*Le* is misplaced as the agreed instruction already addresses ownership.  That case does not contain J&J's proposed, argumentative language.

## 28.    COPYRIGHT—OWNERSHIP    OF    VALID    COPYRIGHT    — ASSIGNMENT

A copyright owner may transfer to another person all or part of the owner's property interest in the copyright.  The person to whom the copyright is transferred becomes the owner of the copyright in the work.

To be valid, the copyright transfer must be in a writing signed by the transferor.  [**J&J's Proposal**: In addition, if a copyrighted work is created by an employee within the scope of his or her employment, it is owned by the employer even without a written transfer.][21]

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.12 (Civil) (June 2021 update); 17 U.S.C. §§ 201(d), 204(a); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822 (3d Cir. 2011).

---

[21]  **J&J's Position:** J&J's proposed addition is necessary for the purposes of this case, in order to make clear to the jury how the work made for hire doctrine and the law regarding assignment relate to one another.  Specifically, as J&J's proposal lays out, if a work was made for hire, a written transfer is not necessary. Because this case involves both works made for hire and transfer agreements, it is important for the jury to understand how those provisions interact.  Finally, it is not repetitive of any provision of Proposed Instruction No. 27 ("Copyright— Owner of Valid Copyright—Work Made for Hire") because there is no discussion of the role of written transfers in that instruction.

**Alcon's Position:**  J&J's proposal is not contained in Ninth Circuit Model Jury Instruction No. 17.12, on which J&J relies.  Moreover, J&J's proposal is unnecessarily repetitive as Instruction No. 27 already addresses when an employer is considered the author of a work under the work made for hire doctrine.  Likewise, although J&J states that there is no discussion of transfers in the work made for hire instruction, the parties' agreed upon language in this instruction does address transfers, making further discussion unnecessary.

## 29.   COPYRIGHT—COPYING—DEFINED

To prove that Alcon copied protectable expression from a work, J&J may show by a preponderance of the evidence that:

1.   Alcon had access to the work, and

2.   There are substantial similarities between Alcon's work and protectable elements of J&J's work.

If you find that J&J has failed to prove either access to AMO Development, LLC's copyrighted work or substantial similarities between Alcon's work and protectable elements of J&J's work, your verdict should be for Alcon.

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.17 (Civil) (June 2021 update); *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1231-2 (3d Cir. 1986).

55

## 30.   COPYRIGHT—COPYING—ACCESS

You may find that Alcon had access to J&J's work if Alcon, or whoever created the work owned by Alcon, had a reasonable opportunity to view or copy the work before Alcon's work was created.

<u>Authority:</u>  Ninth Circuit Manual of Model Jury Instructions, No. 17.18 (Civil) (June 2021 update).

## 31.   COPYRIGHT—COPYING—SUBSTANTIAL SIMILARITY

[**J&J's Proposal:** You must find an Alcon work to be substantially similar to a J&J work if, after excluding unprotectable and unclaimed elements, you believe that the Alcon work copied elements from the J&J work.  In addition, if you find that either:

1.  The fundamental essence or structure of the iFS Source Code is duplicated in the LenSx Software; *or*

2.  There is occasional, but not complete, word-for-word similarity between the iFS Source Code and the LenSx Software

You must find that there is substantial similarity.

Alcon bears the burden of proving that the elements copied from J&J's work are unprotectable.][22]

---

[22]   **J&J's Position:**  J&J's proposed instruction provides clear direction to the jury, and accurately reflects Third Circuit case law.  *See Tanksley v. Daniels*, 902 F.3d 165 (3d Cir. 2018) ("In its basic formulation, substantial similarity asks whether 'a "lay-observer"' would believe that the copying was of protectable aspects of the copyrighted work.'" (quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561-62 (3d Cir. 2002))); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382, 386 (D. Del. 2020) ("The material appropriation inquiry examines the 'substantial similarity' between the protectable elements of plaintiff's work and defendant's work, asking whether a 'lay observer' would believe that defendant's work copied protectable elements from plaintiff's copyrighted work"); *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1248, 1234, n.26 (3d Cir. 1986) (addressing "comprehensive nonliteral similarity" and "fragmented literal similarity" tests for substantial similarity). The last sentence of the instruction reflects established law that "after an infringement plaintiff has demonstrated that he holds a valid copyright and that

the defendant engaged in factual copying, the defendant bears the burden of proving . . . that the elements he copied from a copyrighted work are unprotectable." *Compulife Software Inc. v. Newman*, 959 F. 3d 1288, 1305 (11th Cir. 2020).

With respect to J&J's numbered instructions (which address the tests for comprehensive nonliteral similarity and fragmented literal similarity), Alcon asserts that J&J's proposal is unnecessary in light of Alcon's "more comprehensive Instruction . . . addressing substantial similarity." But Alcon's proposed instruction addressing substantial similarity makes no mention of the Third Circuit authority contained in J&J's proposed language. This portion of the instruction provides necessary clarity to the jury as to what constitutes "substantial similarity" in the context of computer programs. Further, and contrary to Alcon's assertion, the *Whelan* court's adoption of the tests for comprehensive nonliteral similarity and fragmented literal similarity was not merely dicta but was essential to the court's holding that defendant's software infringed the plaintiff's. *Whelan Assocs.*, 797 F.2d at 1234 n.26 (3d Cir. 1986) (describing Professor Nimmer's tests for comprehensive nonliteral similarity and fragmented literal similarity and concluding that "we are concerned here only with comprehensive nonliteral similarity"). Courts across the country have adopted these tests for substantial similarity. *See, e.g., Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 460 (S.D.N.Y. 2000); *Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp. 2d 509, 514–17 (W.D. Va. 2008); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 537 (S.D.N.Y. 2008).

==Alcon's Position:== J&J's proposal is an incomplete and misleading statement of the law of substantial similarity. First, in contrast with Alcon's proposed substantial similarity instruction (see below), J&J's proposal does not explain what the unprotectable elements it references are. Nor can J&J's proposal rely on other instructions to provide such an explanation as the parties' other proposed instructions do not address all of the unprotectability doctrines contained in Alcon's proposal. Second, although the numbered language that J&J proposes appeared in a footnote in *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, the Third Circuit did not adopt that language as its holding. It merely reported what the *Nimmer* treatise stated. 797 F.2d 1222, 1234 n.26 (3d Cir. 1986) (quoting 3 Nimmer on Copyrights § 13.03[A], at 13–20, and describing how "one work *might* be substantially similar to another" (emphasis added)).

[**Alcon's Proposal:**   To determine whether two works are substantially similar, you must (a) consider only the protectable elements of the copyright owner's work, identifying and filtering out the unprotectable and unclaimed elements; and (b) ask yourself whether the protectable elements are substantially similar to the defendant's work.

Protectable expression includes elements that are original.  It does not include mere ideas; functionality; elements dictated by logic or efficiency; elements required by hardware or other software; widely accepted programming practices within the computer industry; short phrases or expressions; or elements taken from the public domain.

When the idea and the expression of the idea coincide, then the expression is considered "merged" with the idea and, therefore, not protected.  This occurs when there are few other ways of expressing a particular idea or achieving a functionality. If the same idea can be expressed in a plurality of totally different ways, the idea and expression are not merged.][23]

---

[23]   **Alcon's Position:**  In contrast to J&J's half-a-loaf proposal, Alcon's proposal is consistent with the Third Circuit's approach to substantial similarity.  As explained in *Tanksley v. Daniels*, to determine whether two works are substantially similar, "the first step is to identify and exclude from the substantial similarity analysis any unprotected material."  902 F.3d 165, 175 (3d Cir. 2018). Then, "viewing the item through the lay person's eyes," the fact finder must focus "on whether the substantial similarities relate to protectible material."  *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d Cir. 2002). To make that determination, the jury must be instructed as to the what the

unprotectable elements are. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 339 n.7, 340 (3d Cir. 2022) (unprotectable elements include those dictated by logic and those where the "idea and the expression of the idea coincide . . . to prevent creation of a monopoly on the underlying 'art'"); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (words and short phrases not protectable); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 707–710 (2d Cir. 1992) (filtering elements dictated by efficiency; external factors, including "(1) the mechanical specifications of the computer on which a particular program is intended to run; (2) compatibility requirements of other programs with which a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely accepted programming practices within the computer industry"; elements taken from the public domain); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1514 (9th Cir. 1992) (functional elements of computer program unprotectable).

J&J's footnote does not recite the law of the Third Circuit. **First**, J&J argues that the jury should compare the similarity of individual elements, not the works. Yet, that argument is directly contrary to *Dam Things*. 290 F.3d at 562 (question is "whether there is '*substantial*' similarity between the alleged infringing **work** and **protectible elements of the original work**" (emphasis added)). *Dun & Bradstreet Software v. Grace Consulting*, on which J&J relies, is not to the contrary as it merely stands for the proposition that such substantial similarity may be clear without comparing the entirety of the work. 307 F.3d 19, 214 (3d Cir. 2002). The ultimate question remains whether the accused work is substantially similar to the protectable elements of the asserted work.

**Second**, J&J argues that Alcon's second paragraph is unnecessary in view of J&J's proposed Instruction No. 22. But, as discussed in Alcon's footnote thereto, J&J's proposal does not address all of the types of unprotectable elements addressed in Alcon's proposal. Moreover, each of J&J's bullets is incorrect:

- With regard to functionality, J&J attacks a strawman by asserting that computer programs are not unprotectable because they achieve functionality. Alcon does not argue otherwise. The statute, however, is clear that it is the "set of statements or instructions" that are protectable, not the results that they "directly or indirectly . . . bring about." 17 U.S.C. § 101; *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) (discussing unprotectable

functionality); *Pyrotechnics*, 38 F.4th at 337 (functionality unprotectable just as ideas are unprotectable); *Sega*, 977 F.2d at 1514 (same).  Even *Oracle America, Inc. v. Google Inc.*, to which J&J repetitively cites, held that "a court must examine the software program to determine whether it contains creative expression that can be ***separated from the underlying function***."  750 F.3d 1339, 1370 (Fed. Cir. 2014) (emphasis added).  The jury must be instructed that it cannot consider functionality in deciding whether the parties' works are substantially similar to avoid it being confused into believing that source code that achieves the same function but is written differently would constitute infringement.

- With regard to logic, *Southco, Inc. v. Kanebridge Corp.* noted, "As a leading treatise states, 'basic copyright principles' lead to the conclusion that copyright protection should not be extended to part numbers that represent 'an inevitable sequence dictated by the logic of the parts system.'"  390 F.3d 276, 282–83 (3d Cir. 2004) (quoting 1 WILLIAM F. PATRY, COPYRIGHT LAW AND PRACTICE 46 (2d ed. 2004)).  In *Pyrotechnics*, the Third Circuit expanded that principle to the software context.  38 F.4th at 340; *see also Goldman v. Healthcare Mgmt. Sys., Inc.*, 628 F. Supp. 2d 748, 754 (W.D. Mich. 2008) ("precluding from copyright protection those elements of a computer program which are dictated by logic and efficiency").  *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, on which J&J relies, is not to the contrary as it merely addressed the idea that a computer program's protection applies to both literal (e.g., source code) and non-literal (e.g., structure and logic) elements. 797 F.2d 1222, 1237 (3d Cir. 1986).  It did not hold that when those elements were dictated by logic they would nevertheless be protectable.

- With regard to words and short phrases, the Third Circuit has adopted an absolute rule that words and short phrases are not protectable.  *See Southco*, 390 F.3d at 286.  Although J&J relies on out-of-Circuit precedent to argue that such phrases would be protectable if creative, the Third Circuit did not adopt that view.  To the contrary, it noted that a word or short phrase "typically lacks any creativity whatsoever." *Id.*  Moreover, although J&J argues that it is seeking protection in a collection of short phrases, its experts' analysis is based on scattered similar lines of code throughout the parties' codebases without regard for whether they are contiguous or not.  As a result, they are not protectable as a compilation.  In any case, that does not change the fact that individual words or short phrases standing alone are not protectable.

- With regard to the public domain, J&J does not argue that material from the public domain is protectable.  Instead, it argues that no such material exists in this case.  That is wrong: from the beginning of this case, Alcon has explained

that the code that J&J has identified merely performs common geometric formulas. Those formulas are in the public domain and, thus, such an instruction is appropriate. *See MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1557 (11th Cir. 1996) ("to grant copyright protection to the first person to devise the formula effectively would remove that mathematical fact from the public domain"). Moreover, J&J's suggestion that a jury would not understand the concept of the public domain is belied by the fact that the Ninth Circuit Model Jury Instructions Nos. 17.14 and 17.15, on which it relies, use that term repeatedly and without further explanation.

- With regard to external factors, J&J does not deny that those elements are unprotectable. Instead, it merely argues that they should be considered form the viewpoint of "the creator." Alcon's proposal does not say otherwise, and none of J&J's proposals concerning unprotectable elements make that distinction either. Thus, J&J's objection would add unnecessary complication to Alcon's proposal in a manner that J&J itself has elected not to propose in its own instructions.

***Third***, J&J argues that Alcon's third paragraph is unnecessary in view of J&J's proposed Instruction No. 22. But, as discussed in Alcon's footnote thereto, it is more sensible to discuss merger along with the other unprotectability doctrines. J&J also quibbles about whether merger does not exist when there are a "plurality of totally different ways" to express an idea (as Alcon proposes) or when there are "various modes of expression." As Alcon's proposal is consistent with the articulation of the merger doctrine in *Southco*, it should be adopted here. 390 F.3d 293 n.11 ("When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.' . . . If, on the other hand, 'the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result.'").

**J&J's Position:**    Alcon's competing instruction is confusing, needlessly complicated, duplicative of other instructions, and inconsistent with Third Circuit law. It is unnecessary in this context to repeat again what constitutes unprotectable aspects of J&J's copyrighted works, as that is addressed in the instructions above regarding the idea/expression doctrine, the merger doctrine, and the doctrine of externalities. Those doctrines encompass the entirety of Alcon's arguments regarding protectability.

The first paragraph is confusingly circular, as it defines "substantial similarity" by reference to itself. ("To determine whether two works are *substantially*

*similar*, you must … ask yourself whether the protectable elements are *substantially similar* to the defendant's work.").

The second paragraph is unnecessary, as Proposed Instruction No. 22 ("Copyright—Subject Matter—Ideas and Expression"), already addresses the idea/expression dichotomy and doctrine of externalities in a neutral fashion. Alcon points to no precedent for its proposed instruction. Moreover, this paragraph contains an inaccurate (or at least misleading) exposition of the law:

- It is inaccurate and misleading to state that "functionality" is unprotectable, particularly in the context of this case. "Functionality" does not appear in the statutory list of unprotectable aspects of copyrighted works in section 102(b) of the Copyright Act. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]"). Indeed, the Copyright Act defines "computer program" in distinctly functional terms. *See* 17 U.S.C. § 101 (defining a "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result"). Thus, "computer programs are by definition functional — they are all designed to accomplish some task." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014); *see also Whelan Associates v. Jaslow Dental Laboratory*, 797 F.2d 1222, 1238 (3d Cir. 1986) (computer programs are "functional works"). Thus, as the Federal Circuit has held, "[s]ection 102(b) does not . . . automatically deny copyright protection to elements of a computer program that are functional." *Oracle Am.*, 750 F.3d at 1367. That is because if one "were to accept the . . . suggestion that a computer program is uncopyrightable simply because it carries out pre-assigned functions, no computer program is protectable." *Id.* This aspect of the instruction is thus likely to confuse and mislead the jury.

  The existing instruction's references to the statutorily defined exclusions—idea, procedure, process, method of operation, concept—already instructs the jury sufficiently for Alcon to be able to argue that the protected computer programs do not protect against someone else creating a competing cataract laser surgery system, or independently writing code to achieve that purpose.

- It is likewise inaccurate to state that "elements dictated by logic" are unprotectable. The Third Circuit has held that the "structure and logic" of a computer program *are* protectable. *See Whelan Associates*, 797 F.2d at

1237 (adopting rule allowing copyright protection in the "structure and logic of the program"); *id.* at 1231 ("By far the larger portion of the expense and difficulty in creating computer programs is attributable to the development of the structure and logic of the program, and to debugging, documentation and maintenance, rather than to the coding."). Although Alcon relies on *Pyrotechnics Management*, there the court there found that specific digital messages (not computer programs) used to ignite fireworks were "dictated by the logic [of] *the inflexible rules*" of a specific digital message format. 38 F.4th at 340. The same is true of *Southco, Inc. v. Kanebridge Corp.* 390 F.3d 276, 282–83 (3d Cir. 2004), which simply declined to extend copyright protection to "part numbers that represent 'an inevitable sequence dictated by the logic *of the parts system*.'" (Emphasis added). Neither case represents a broad holding that program logic is unprotectable; on that point *Whelan* remains controlling law. Moreover, Alcon's computer program expert has not disclosed any opinion regarding aspects of J&J's computer programs that are dictated by logic, so even if this instruction were an accurate characterization of the law, it is immaterial to this case.

- The reference to the unprotectability of "short phrases or expressions" is improper for two reasons. First, the "relevant question for copyrightability purposes is not whether the work at issue contains short phrases—as literary works often do—but, rather, whether those phrases are creative." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014); *see also Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012) ("not all short phrases will automatically be deemed uncopyrightable"). Second, even where a short phrase, standing alone, is not copyrightable, a *collection* of such short phrases can be. *Oracle Am., Inc.*, 750 F.3d at 1362-63 ("By dissecting the individual lines of declaring code at issue into short phrases, the district court . . . failed to recognize that an original combination of elements can be copyrightable."); *see also Softel, Inc. v. Dragon Med. & Scientific Commc'ns*, 118 F.3d 955, 964 (2d Cir. 1997) ("[A] compilation of nonprotectible elements can enjoy copyright protection even though its constituent elements do not"). Indeed, J&J's claim here is not that Alcon engaged in isolated infringement of an individual word or phrase. Instead, Alcon copied *entire modules of code*, covering *tens of thousands of lines*. Yet Alcon has indicated through its expert disclosures that it intends to dissect the code into isolated components, urge that those isolated components are unprotectable, and

64

seek a defense verdict on that basis.  Giving Alcon's proposed instruction in conjunction with that argument will be highly prejudicial.

- The reference to the unprotectability of "elements taken from the public domain" will be misleading.  In the copyright context, "public domain" refers to otherwise protectable material that has fallen out of copyright protection, often through expiration of the copyright.  There is no claim in this case that any material at issue was in the "public domain" in that sense.  Additionally, given the common lay misunderstanding that the term "public domain" refers to any material that is "publicly available," this instruction is likely to confuse and mislead the jury in the context of this case.

- As for the remainder of the instruction, it is not accurate because it incompletely describes the "doctrine of externalities" whereby elements of a work that "necessarily results from external factors inherent in the subject matter of the work," such as "mechanical specifications of the computer on which a particular program is intended to run" or "widely accepted programming practices within the computer industry" are not protectable by copyright.  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002).  Alcon's proposed instruction also fails to explain that "in determining aspects of the program not entitled to protection because of external factors, we examine the program from the viewpoint of *the creator.*"  *Id.* at 215 (emphasis in original); *see also id.* ("In determining whether certain aspects of an allegedly infringing program are not protected by copyright law, the focus is on external factors that influenced the choice of the creator of the infringed product.").  Thus, for instance, protectable expression *can* include elements reflecting "widely accepted programming practices" if those practices did not constrain the choices of the developer, *i.e.*, if there are multiple widely accepted programming practices for completing a particular task, and the developer can choose among them, then the decision to use a particular practice is protectable.  *See Apple v. Franklin*, 714 F.2d 1240, 1253 (3d Cir. 1983) ("If other programs can be written or created which perform the same function as an Apple's operating system program, then that program is an expression of the idea and hence copyrightable.").  Alcon is free to present evidence to the jury about why particular elements of J&J's works it copied are were dictated by external factors that constrained the original authors. Alcon's proposal, however, goes beyond a neutral presentation of

Authority:  *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331 (3d Cir. 2022); *Tanksley v. Daniels*, 902 F.3d 165 (3d Cir. 2018); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3d Cir. 2004); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382 (D. Del. 2020); *Sony Comput. Entm't v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir. 1998); *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir. 1986).

---

the law and essentially asks this Court to assume that Alcon will be able to make such a factual showing.

The third paragraph of Alcon's proposed instruction is unnecessary because the concept of merger is better addressed in Proposed Instruction No. 22 ("Copyright—Subject Matter—Ideas and Expression"), which instructs the jury on the idea/expression dichotomy on which the merger doctrine is based. *See Educational Testing Services v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986). In addition, Alcon's description of the merger doctrine in this paragraph is slanted and inaccurate. Alcon's instruction inaccurately suggests that the expression of an idea is protectable *only* if the same idea can be expressed in a "plurality of totally different ways." The case law makes clear that the ability to express the idea in a "plurality of totally different ways" is a *sufficient* but not *necessary* condition of protectability. That language originates from a Second Circuit decision, which observed that "if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result." *Dymow v. Bolton*, 11 F. 2d 690, 691 (2d Cir. 1926). The Third Circuit quoted that decision in *Apple v. Franklin*, and—crucially—drew from that quote the applicable legal principle that the merger doctrine "focu[es] on whether idea is capable of various modes of expression." 714 F.2d 1240, 1253 (3d Cir. 1983). That principle is what J&J proposes to present to the jury.

66

## 32.   COPYRIGHT—COPYING—LITERAL          AND          NON-LITERAL ELEMENTS

Copyright protection may extend to both the literal elements and non-literal elements of computer programs.  Literal elements of a computer program are the source code and object code.  Non-literal elements of a computer program include its structure, sequence, and organization.

Authority:  *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222 (3d Cir. 1986).

## 33.    COPYRIGHT—COPYING—DERIVATIVE WORK

[**J&J's Proposal**: A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work.   The term derivative work refers to a work based on one or more pre-existing works, such as a modified version of copyrighted software, or any other form in which the pre-existing work is recast, transformed, or adapted.   Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.   To prove infringement of the derivative work right, the copyright owner must prove copying, as previously discussed in Instruction 29.][24]

---

[24]  **J&J's Position:** J&J's instruction is taken directly from Ninth Circuit Model Civil Jury Instruction 17.15.   J&J's main theory of liability in this case is that Alcon infringed the J&J's exclusive right "to prepare derivative works based upon the copyrighted work."   17 U.S.C. § 106(2).   Instructing the jury that J&J has the exclusive right to prepare derivative works "based upon" the protected work will not confuse the jury; it is the most neutral possible statement of the law.   The glancing reference to the definition of "derivative works" in Proposed Instruction No. 29 ("Copyright—Defined") is insufficient to give the jury an instruction on infringement of the derivative work right.

**Alcon's Position:** J&J's proposal is unnecessary and is likely to confuse the jury. There already is a definition of the term "derivative work" in Instruction No. 20, making J&J's lengthy, additional instruction redundant.  Moreover, as J&J's own cited case holds, "by definition, derivative works are *substantially similar* to the original work, because 'a work is not derivative unless it has been *substantially* copied from a prior work." *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 565 (3d Cir. 2002) (alteration omitted; emphasis in original).  Thus, to prove a violation of the derivative work right, J&J still must prove the same elements as the other forms of infringement.   J&J's proposed instruction, however, could confuse and mislead the jury into believing that merely basing a

<u>Authority:</u>  Ninth Circuit Manual of Model Jury Instructions, No. 17.15 (Civil) (June 2021 update); *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548 (3d Cir. 2002); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002).

---

work on a prior work constitutes infringement, which is inconsistent with *Dam Things*.

**34.   COPYRIGHT—SECONDARY LIABILITY—VICARIOUS INFRINGEMENT**

On J&J's vicarious copyright infringement claim, J&J has the burden of proving by a preponderance of the evidence that:

1.   Alcon's customers directly infringed AMO Development, LLC's copyrights;

2.   Alcon has a direct financial interest in the infringing activity; and

3.   Alcon had the right and ability to supervise or control the infringing activity but failed to do so.

If you find that J&J has proved all of these elements, your verdict should be for J&J on its vicarious copyright infringement claim.  If, on the other hand, J&J has failed to prove any of these elements, your verdict should be for Alcon on J&J's vicarious copyright infringement claim.

Authority:  D.I. 218, *Leonard v. StemTech Health Sciences, Inc.*, No. 08 Civ. 067 (D. Del.); Ninth Circuit Manual of Model Jury Instructions, No. 17.20 (Civil) (June 2021 update); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 388 (3d Cir. 2016); *Parker v. Google, Inc.*, 242 F. App'x 833 (3d Cir. 2007).

**35.   COPYRIGHT—SECONDARY LIABILITY—CONTRIBUTORY INFRINGEMENT**

On J&J's contributory copyright infringement claim, J&J has the burden of proving by a preponderance of the evidence that:

1.   Alcon's customers directly infringed AMO Development, LLC's copyrights;

2.   Alcon knew, was willfully blind, or should have known that its customers were directly infringing; and

3.   Alcon intentionally induced or materially contributed to the infringing activity.

Intent to induce an infringing activity must be shown by a clear expression of that intent or other affirmative steps taken to encourage the activity.

A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.

If you find that J&J has proved all of these elements, your verdict should be for J&J on its contributory copyright infringement claim.  If, on the other hand, J&J has failed to prove any of these elements, your verdict should be for Alcon on J&J's contributory copyright infringement claim.

<u>Authority:</u>  *Parker v. Google, Inc.*, 242 F. App'x 833 (3d Cir. 2007); *Broad. Music Inc. v. Hemingway's Cafe, Inc.*, No. 15 Civ. 6806, 2017 WL 2804951 (D.N.J. June 28, 2017); *Tanksley v. Daniels*, 259 F. Supp. 3d 271 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018); *Arista Recs., Inc. v. Flea World, Inc.*, No. 03 Civ. 2670, 2006 WL 842883 (D.N.J. Mar. 31, 2006); Ninth Circuit Manual of Model Jury Instructions, No. 17.21 (Civil) (June 2021 update).

## 36.    COPYRIGHT—MONETARY RELIEF

If you find for J&J on any of its copyright infringement claims, then you must

determine the amount of monetary relief [**Alcon's Proposal**: if any,][25] J&J is entitled

to recover.  J&J is entitled to recover the actual damages suffered by it as a result of

---

[25] **Alcon's Position**: Alcon has agreed to language in this instruction requested by J&J, but J&J has refused to instruct the jury that it is not required to award damages to J&J.  That is incorrect as a matter of law.  It is J&J's burden to prove it is entitled to monetary relief.  *Leonard v. Stemtech Int'l. Inc.*, 834 F.3d 376, (3d Cir. 2016) ("[T]he plaintiff must demonstrate a 'causal nexus between the infringement and the [infringer's] gross revenue[.]'" *quoting William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009)); *see also Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013) ("Regardless of the measure or combination of measures used to establish actual damages, a copyright holder asserting such damages 'must prove the existence of a causal connection between the alleged infringement and some loss of anticipated revenue.'").  Likewise, it is J&J's burden to prove Alcon's revenues that have a causal relationship to the infringement.  17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue . . . ."); *Leonard v. Stemtech Int'l. Inc.*, 834 F.3d 376, (3d Cir. 2016) ("[T]he plaintiff must demonstrate a 'causal nexus between the infringement and the [infringer's] gross revenue[.]'" *quoting William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009)); *see also Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("[A] plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to related to the infringement.'" *quoting* 4 Nimmer on Copyright § 14.03[B] at 14–39)).  If the jury finds that J&J has failed to meet its burdens, J&J is not entitled to monetary relief, and it should be instructed accordingly.

**J&J's Position**:  Alcon's proposal is a departure from Ninth Circuit Model Civil Jury Instruction No. 17.32.  Moreover, Alcon's discussion above is academic, but is not a distinction that is of use to the jury.  Alcon does not deny that certain of its revenue (namely, revenue related to LenSx sales, procedures, and service, and revenue related to Verion) has a nexus to the alleged infringement.  Nor does it deny that J&J may recover some amount of actual damages (namely, $3 million dollars as a reasonable royalty) should J&J prevail on its infringement claims.

the infringement. [**J&J's Proposal**: In addition, J&J is also entitled to recover any profits of Alcon that are attributable to the infringement.  Profits attributable to the infringement may include both profits earned by selling an infringing product, and profits earned from Alcon's operations that were enhanced by the infringement.][26]

---

[26] **J&J's Position:**  J&J's first sentence is taken verbatim from Ninth Circuit Model Jury Instruction 17.32, which in itself indicates that disgorgement is a question for the jury.  Further, as J&J argues in its Opposition to Alcon's Motion *in Limine* No. 3, disgorgement is properly for the jury because it is mandated by the Seventh Amendment and the Copyright Act.  *See* 9 Wright & Miller, Fed. Prac & Proc. § 2312 (4th ed.) (stating that "ordinarily there is a right to a jury trial on a claim for an accounting [of profits]," the historical analog to disgorgement under the Copyright Act (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962))).  Moreover, as Proposed Instruction No. 39 ("Copyright—Monetary Relief—Defendant's Profits") makes clear, other circuits have held that copyright disgorgement is for the jury and treat it as such.  *See, e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977) (finding in copyright action that "Plaintiffs in this case had a right to a jury trial" for an accounting of profits); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003) (citation omitted) ("[T]he question of allocating an infringer's profits between the infringement and other factors … should have been left to the jury."); *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 484 (6th Cir. 2007) (same); *see also* Ninth Circuit Manual of Model Civil Jury Instructions (2017) § 17.34.  In *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), the court addressed remedies for common-law trade secret misappropriation, not copyright infringement, and thus did not consider that the text of the Copyright Act also confirms a jury right.  *See* 6 Patry on Copyright § 22:149 ("[S]ection 504(b) treats disgorgement of defendant's profits as an alternative form of monetary damages . . . recover[able] by plaintiff in addition to its lost sales . . . .  Under such circumstances, the right to a jury is absolute."); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998) (noting both actual damages and profits under § 504(b) "generally are thought to constitute legal relief"); *Huffman v. Activision Publ'g, Inc.*, 2021 WL 2339193, at *3–5 (E.D. Tex. June 8, 2021) (right to jury trial under § 504(b)).

Alcon argues "numerous courts have found that a plaintiff is not entitled to a jury trial on disgorgement," but in *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889 (D. Kan. Feb. 25, 2022), the plaintiff did not seek a jury trial, and in *Fair Isaac v. Fed. Ins. Co.*, the court has exercised its discretion to empanel an advisory jury on the issue, *see* No. 16-cv-01054 (D. Minn. Dec. 6, 2022), ECF No. 911 at 20–21.

 With regard to J&J's second sentence, Alcon does not dispute that the law permits such indirect profits to be recovered. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390 (3d Cir. 2016) (citing *William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009) (*Graham I*) for the proposition that "profits … earned from the infringer's operations that were enhanced by the infringement" are a proper subject of copyright disgorgement

==Alcon's Position:== As discussed in Alcon's MIL No. 3 and Paragraph 150 of the Joint [Proposed] Pretrial Order, disgorgement of profits is an equitable remedy that must be decided by the Court, not the jury. *See Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 686 (2014); *Sheldon v. Metro-Goldwyn Pictures, Inc.*, 309 U.S. 390, 399 (1940) ("recovery of profits" in copyright allowed "in equity"); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 420 (3d Cir. 2013) ("The disgorgement remedy is equitable . . . ."). That is why numerous courts have found that a plaintiff is not entitled to a jury trial on disgorgement. *See, e.g.*, *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022); *Fair Isaac v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019 (D. Minn. 2019). Thus, the parties should not present argument or evidence concerning, the jury should not be instructed regarding, and the jury should not decide the issue of, disgorgement. *See* D.I. 370 (Defs.' Summ J. Br. re Laches), at 3–4; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1, 686 (2014) (describing "disgorgement of unjust gains" as "equitable relief").

J&J's arguments to the contrary are unavailing. First, the existence of a model instruction on disgorgement for cases where a jury trial is not contested says nothing about whether the plaintiff has a right to one. Second, J&J's argument based on *Dairy Queen* was rejected by the Federal Circuit, which observed that *Dairy Queen* "contains no discussion of a request for disgorgement of the defendant's profits" and that the opinion is properly read as involving a request for actual damages. *Tex. Adv. Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1303, 1325 (Fed. Cir. 2018) (finding that disgorgement in the trade secret context, just like the patent and copyright context, is a decision for the Court, not the jury). Thus, *Sid & Marty Krofft*, which involved the same remedy as *Dairy Queen*, does not advance J&J's argument for a jury trial on a different

[**Alcon's Proposal:**  There can be no double recovery between actual damages and any profits of Alcon that are attributable to the infringement.][27]  J&J must prove monetary relief by a preponderance of the evidence.

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.32 (Civil) (June 2021 update); 17 U.S.C. § 504(b); *TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019).

---

type of remedy here.  562 F.2d at 1175.  With regard to copyright infringement, the Federal Circuit noted in *Renesas* that it had "seen no support for concluding that disgorgement of profits was available at law."  *Id.* at 1324–25 ("For Seventh Amendment purposes . . . no disgorgement remedy was available at law in 1791 for" copyright infringement).  Fourth, J&J's other cases did not consider the right to a jury trial on disgorgement, but merely the allocation of burdens between the parties.  *See Andreas*, 336 F.3d at 797–98; *Bridgeport*, 507 F.3d at 484.

[27]     **Alcon's Position:**   J&J does not and cannot deny that it is not entitled to a double recovery of actual damages and disgorgement.   17 U.S.C. § 504(b) (copyright owner entitled to only "profits . . . not taken into account in computing the actual damages").  Instead, it argues that Alcon's proposal is not contained in the model used by a different Circuit and is repetitive of language in another instruction.  Alcon's proposal, however, is necessary to ensure that the jury does not award J&J profits for which it already accounts in awarding actual damages.

**J&J's Position:**  Alcon's proposal is not contained in the Ninth Circuit Model Civil Jury Instructions.  It is unnecessary and it is repetitive of the provision included in Proposed Instruction No. 39 ("Copyright—Monetary Relief—Defendant's Profits"), which states, "You may not include in an award of profits any amount that you took into account in determining actual damages."  Such repetition is prejudicial to J&J.

## 37.   COPYRIGHT—MONETARY   RELIEF—LIMITATIONS   AND DAMAGES PERIOD

[**Alcon Proposal:** Alcon contends that J&J's monetary relief prior to September 28, 2017 is barred by the statute of limitations.

If J&J proves by a preponderance of the evidence that it (1) did not know and (2) exercised due diligence to discover the injury that forms the basis of its claims and yet was unable to do so prior to September 28, 2017, then it may receive monetary relief for those claims prior to September 28, 2017.  If J&J (1) knew or (2) could have discovered the basis for its claims with the exercise of due diligence, then it may receive monetary relief only after September 28, 2017.  J&J's ignorance regarding the full extent of its injury is irrelevant.

With regard to the iFS Computer Program, I instruct you that J&J had sufficient information as of 2014 to place it on notice that Alcon was copying the source code of J&J's iFS Computer Program, and J&J failed to exercise reasonable diligence to discover before July 2020 the injury it may have suffered from the infringement of that source code.  As a result, J&J is barred from recovering monetary relief for infringement of the iFS Computer Program that occurred before September 28, 2017.

With regard to the iFS FDA Submissions and iFS Operator's Manual, it is for you to decide whether J&J has met its burden.][28]

---

[28]   **Alcon's Position:**   Alcon's proposal is based directly on the language from this Court's summary judgment decision regarding Alcon's statute of limitations defense.  D.I. 490 (Mem. Op. re Statute of Limitations), at 11, 13.  It also is critically important because J&J has indicated that, with regard to the FDA Submissions and Operator's Manuals, it intends to seek monetary relief prior to September 28, 2017.  If this Court does not instruct the jury that it may not award monetary relief related to the iFS Computer Programs prior to September 28, 2017, the jury may be confused into awarding monetary relief that this Court's summary judgment decision foreclosed.  Moreover, contrary to J&J's attempt to preclude Alcon from proving that the statute of limitations also applies to the FDA Submissions and Operator's Manual, this Court's held that there was "a genuine dispute of material fact concerning when exactly J&J reasonably could have discovery the copying."  D.I. 490, at 14.  In particular, as discussed in Alcon's opposition to J&J's MIL No. 4, it is clear that J&J had a copy of the LenSx Operator's Manual by 2015.

**J&J's Position:**   This instruction—which notably is not included in the Ninth Circuit Model Jury Instructions—is unnecessary and prejudicial.  In light of the Court's grant of summary judgment to Alcon on the statute of limitations with respect to the iFS Computer Program, D.I. 490, J&J does not intend to seek damages prior to September 28, 2017 with respect to claims related to the iFS Computer Program.  There is no reason at all to provide any instruction regarding J&J's knowledge of the copying of that computer program, and providing that instruction will be highly prejudicial—an issue which is not alleviated merely because Alcon is quoting from the Court's Order.  Moreover, Alcon's instruction is worded in a highly slanted manner—e.g., that J&J "failed to exercise reasonable diligence"—and will taint the jury against J&J.

Even with respect to the claims for the iFS FDA Submissions and Technical Documentation and the iFS Operator's Manual, an instruction on the statute of limitations is inappropriate.  Alcon bears the burden of showing that J&J "should have known of the basis of its claims, which depends on whether [J&J] had sufficient information of possible wrongdoing to place it on inquiry notice or to excite storm warnings of culpable activity."  *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (internal quotation marks, citation, and alterations omitted).  In response to discovery requests, Alcon failed to disclose

[**J&J's Conditional Proposal:**  For the iFS Computer Program, J&J is only permitted to seek damages based on Alcon's acts of infringement occurring after September 28, 2017.

For the iFS FDA Submissions and Technical Documentation and the iFS Operator's Manual, if you find that J&J did not discover, or with due diligence could not have discovered, acts of copyright infringement of that work occurring before September 28, 2017, then you may award J&J damages based on all of Alcon's acts of infringement of that work since those acts began.  On the other hand, if you find that Alcon has established by a preponderance of the evidence that J&J did discover, or with due diligence should have discovered, such earlier acts of infringement, then you must limit damages to those based on acts of infringement of that work occurring after September 28, 2017.][29]

---

any theory on which J&J would have had such "storm warnings."  *See* J&J Motion *in Limine* No. 4.

[29]   **J&J's Position:** For the reasons stated in n.28 above, J&J does not believe an instruction regarding any statute of limitations should be given.  However, if the Court decides to give one, J&J's proposal accurately characterizes the law with respect to the burden of proof for Alcon's statute of limitations defense as it relates to the iFS FDA Submissions and Technical Documentation and iFS Operator's Manual.  J&J's instruction repeats the standard provided in *William A. Graham Co. v. Haughey*, 568 F.3d 425, 437 (3d Cir. 2009), quoted and relied on by the Court in its Memorandum Opinion (Dkt. 490 at 6).

**Alcon's Position:**   As discussed in footnote 28, Alcon's proposal is based directly on this Court's summary judgment decision.  J&J does not identify the origin of its proposed language, nor is it consistent with this Court's articulation of the law.  Moreover, for the reasons discussed in footnote 3, J&J's inclusion of

Authority: D.I. 490 (Mem. Op. re Statute of Limitations); 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014); *Stephens v. Clash*, 796 F.3d 281 (3d Cir. 2015); *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009).

---

the phrase "Technical Documentation" is inconsistent with the titles of its FDA submissions.

## 38.   COPYRIGHT—MONETARY RELIEF—ACTUAL DAMAGES

The copyright owner is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages can be determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer. That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work.

[**J&J's Proposal**: When determining the amount of J&J's lost profits or hypothetical license fee that it should have been paid, you may not consider whether Alcon could have used a non-infringing version of any infringing product or documentation.][30]

---

[30]  **J&J's Position**: This instruction follows the reasoning of *Goldman v. Healthcare Mgmt. Sys., Inc.*, which, as explained in J&J's briefing on its Daubert Motion No. 2, should govern here due to the inherent distinction between copyrights and patents. 559 F. Supp. 2d 853, 875 (W.D. Mich. 2008) ("The ability to achieve the same or similar result using an alternative means may implicate the novelty of an idea and hence is relevant to the final assessment of damages in a patent suit, the same cannot be said in a copyright suit.").  The cases upon which Alcon relies in its opposition are distinguishable and inapplicable here.  In *Oracle Am. Inc. v. Google Inc.*, "Oracle [did] not challenge the availability of non-infringing alternatives analysis to meet its claim for lost profits." No. 10-03561 WHA, 2016 WL 1743154, at *5 (N.D. Cal. May 2, 2016).  And the court in *Oracle USA, Inc. v. Rimini St., Inc.* treated hypothetical license damages like a patent case, without addressing the statutory purpose of copyright law to protect original expression. Indeed, as Alcon's quoted law below makes clear, not all aspects of patent law may be applied to copyright cases.  *See Gaylord v. United States*, 777 F.3d 1363, 1367 (Fed. Cir. 2015) ("a court deciding a copyright case may use a tool familiar

[**Alcon's Proposal:** J&J has a duty under the law to use reasonable diligence to mitigate its actual damages, that is, to avoid or to minimize those damages. Alcon has the burden of proving by a preponderance of the evidence that (1) J&J failed to use reasonable efforts to mitigate damages, and (2) the amount by which damages would have been mitigated. If you find that J&J failed to use reasonable efforts to mitigate an amount of its actual damages, J&J is not entitled to recover that amount.

---

from patent law, *without necessarily following every aspect of patent law's use of that tool*") (emphasis added).

**Alcon's Position:** As explained in Alcon's opposition to J&J's Daubert Motion No. 2, non-infringing alternatives are relevant to both lost profits and a reasonable royalty for copyright infringement. D.I. 418, at 5; *see Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10 Civ. 00106, 2015 WL 5176582, at *3-4 (D. Nev. Sept. 3, 2015) (non-infringing alternatives relevant to hypothetical license); *Oracle Am., Inc. v. Google, Inc.*, No. 10 Civ. 03561, 2016 WL 1743154, at *5 (N.D. Cal. May 2, 2016) (non-infringing alternatives relevant to lost profits); *Fair Isaac v. Fed. Ins.*, 447 F. Supp. 3d 857, 871–72 (D. Minn. 2020) (non-infringing alternatives relevant to copyright damages because it "could impact such a hypothetical negotiation"). *Goldman v. Healthcare Mgmt. Sys., Inc.*, on which J&J singularly relies, predated all of these subsequent cases and, thus, is neither binding nor persuasive. 559 F. Supp. 2d 853, 875 (W.D. Mich. 2008). Moreover, courts consider techniques from patent law in valuing copyright damages; therefore, J&J's stated basis for not using the non-infringing alternatives technique is incorrect. *See Gaylord v. United States*, 777 F.3d 1363, 1367 (Fed. Cir. 2015) ("To calculate the fair market value, a court deciding a copyright case may use a tool familiar from patent law, without necessarily following every aspect of patent law's use of that tool. It may hypothesize a negotiation between the parties before the infringement occurred and determine the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer."); *Davidson v. United States*, 138 Fed. Cl. 159, 179 (2018) (noting that courts have "endorsed the use of patent law tools to value licenses in the copyright context").

If J&J delayed in asserting its rights, the delay can support a finding that J&J failed to use reasonable efforts to mitigate its damages.][31]

---

[31] **Alcon's Position:**  As discussed in Alcon's opposition to J&J's MIL No. 4, a "damages award should be limited" by the plaintiff's failure "to take reasonable measures to mitigate its loss."  *VICI Racing v. T-Mobile*, 763 F.3d 273, 300–01 (3d Cir. 2014).  Although J&J maintains that Alcon's failure to mitigate defense is the same as arguing that laches applies to actual damages, that is not true.  Whereas mitigation is relevant to legal damages and considers how J&J could have minimized its alleged harm, laches is relevant to equitable disgorgement and considers how J&J's delay prejudiced Alcon.  *Petrella v. Metro-Goldwyn-Mayer, Inc.* made no mention of the failure to mitigate defense, and the Supreme Court confirmed that laches or a "plaintiff's delay can always be brought to bear at the remedial stage … in assessing the 'profits of the infringer.'" 572 U.S. 663, 667–68 (2014).  Likewise, *Interscope Records v. Time Warner, Inc.*, on which J&J relies, merely held that notice of copyright infringement is not required prior to suit, not that failure to mitigate does not apply to actual damages.  2010 WL 11505708, at *15–16 (C.D. Cal. June 28, 2010).  And *Romag Fasteners, Inc. v. Fossil, Inc.*, on which J&J also relies, was a trademark case that is distinguishable because the Lanham Act does not have a statute of limitations, which was the Supreme Court's reason in *Petrella* for foreclosing laches in copyright cases.  29 F. Supp. 3d 85, 104 (D. Conn. 2014).

**J&J's Position:**  This is the subject of J&J's Motion in *Limine* No. 4, and this instruction should be rejected for the reasons given in that briefing.  Alcon represented to the Court that it would not make this argument to the jury.  D.I. 274 at 6 ("[L]aches cannot be invoked to bar recovery of actual damages . . . but that is not what Alcon seeks from its laches or mitigation defenses.").  In any event, Alcon's proposal should not be included in the Jury Instructions because Alcon has no basis to assert a failure to mitigate defense and because it constitutes an impermissible laches defense in disguise.  First, Alcon's entire failure to mitigate defense is premised upon the theory that J&J should have mitigated its harm by asking Alcon to stop infringing.  *See* D.I. 340 ¶¶ 472–86 (First Am. Answer to Second Am. Compl.).  This is contrary to law, as evidenced by multiple courts' rejection of this rationale.  *See, e.g.*, *Interscope Records v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *15-16 (C.D. Cal. June 28, 2010) ("[T]he Copyright Act does not contain a requirement that the copyright owner provide notice to an alleged infringer as a prerequisite to filing

<u>Authority:</u>  17 U.S.C. § 504(b); *TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376 (3d Cir. 2016); *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 300–01 (3d Cir. 2014); *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252 (3d Cir. 2008); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 08 Civ. 03181, 2010 WL 4366990, at *48 (S.D. Tex. Oct. 27, 2010); *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853 (W.D. Mich. 2008); Ninth Circuit Manual of Model Jury Instructions, No. 17.33 (Civil) (June 2021 update).

---

suit or seeking damages."). Further, by grounding its mitigation defense in J&J's failure to sue in 2014, Alcon's "failure to mitigate" defense is "nothing more than a laches defense" in disguise. *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 104 (D. Conn. 2014) (subsequent history omitted). The statute of limitations "itself takes account of delay," *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014), and therefore precludes a delay-based mitigation defense for the same reason as it does a laches defense. *See also id.* at 682 (copyright owner may defer suit until "litigation is worth the candle"). As such, Alcon's proposal is improper in light of the Supreme Court's holding in *Petrella*, and inappropriate as an instruction delivered to the jury.

## 39.   COPYRIGHT—MONETARY RELIEF—DEFENDANTS' PROFITS[32]

---

[32]   **Alcon's Position:** As discussed in Alcon's MIL No. 3 and Paragraph 150 of the Joint [Proposed] Pretrial Order, disgorgement of profits is an equitable remedy that must be decided by the Court, not the jury.  *See Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 686 (2014); *Sheldon v. Metro-Goldwyn Pictures, Inc.*, 309 U.S. 390, 399 (1940) ("recovery of profits" in copyright allowed "in equity"); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 420 (3d Cir. 2013) ("The disgorgement remedy is equitable . . . ."). That is why numerous courts have found that a plaintiff is not entitled to a jury trial on disgorgement. *See, e.g.*, *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022); *Fair Isaac v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019 (D. Minn. 2019). Thus, the parties should not present argument or evidence concerning, the jury should not be instructed regarding, and the jury should not decide the issue of, disgorgement.  *See* D.I. 370 (Defs.' Summ J. Br. re Laches), at 3–4; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1, 686 (2014) (describing "disgorgement of unjust gains" as "equitable relief").

J&J's arguments to the contrary are unavailing. First, the existence of a model instruction on disgorgement for cases where a jury trial is not contested says nothing about whether the plaintiff has a right to one. Second, J&J's argument based on *Dairy Queen* was rejected by the Federal Circuit, which observed that *Dairy Queen* "contains no discussion of a request for disgorgement of the defendant's profits" and that the opinion is properly read as involving a request for actual damages.  *Tex. Adv. Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1303, 1325 (Fed. Cir. 2018) (finding that disgorgement in the trade secret context, like the patent and copyright context, is an issue for resolution by the Court, not the jury). Thus, *Sid & Marty Krofft*, which involved the same remedy as *Dairy Queen*, does not advance J&J's argument for a jury trial on a different type of remedy here.  562 F.2d at 1175. With regard to copyright infringement, the Federal Circuit noted in *Renesas* that it had "seen no support for concluding that disgorgement of profits was available at law."  *Id.* at 1324–25 ("For Seventh Amendment purposes . . . no disgorgement remedy was available at law in 1791 for" copyright infringement). Third, J&J's other cases did not consider the right to a jury trial on disgorgement, but merely the allocation of burdens between the parties.  *See Andreas*, 336 F.3d at 797–98; *Bridgeport*, 507 F.3d at 484.

**J&J's Position:** Much of J&J's proposed instruction is based upon the Ninth Circuit Model Jury Instruction 17.34, which in itself indicates that disgorgement

is a question for the jury.  Further, as J&J argues in its Opposition to Alcon's Motion *in Limine* No. 3, disgorgement is properly for the jury because it is mandated by the Seventh Amendment and the Copyright Act.  *See* 9 Wright & Miller, Fed. Prac & Proc. § 2312 (4th ed.) (stating that "ordinarily there is a right to a jury trial on a claim for an accounting [of profits]," the historical analog to disgorgement under the Copyright Act (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962))).  Moreover, as Proposed Instruction No. 39 ("Copyright—Monetary Relief— Defendant's Profits") makes clear, other circuits have held that copyright disgorgement is for the jury and treat it as such.  *See, e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977) (finding in copyright action that "Plaintiffs in this case had a right to a jury trial" for an accounting of profits); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003) (citation omitted) ("[T]he question of allocating an infringer's profits between the infringement and other factors … should have been left to the jury."); *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 484 (6th Cir. 2007) (same); *see also* Ninth Circuit Manual of Model Civil Jury Instructions (2017) § 17.34.  In *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), the court addressed remedies for common-law trade secret misappropriation, not copyright infringement, and thus did not consider that the text of the Copyright Act also confirms a jury right.  *See* 6 Patry on Copyright § 22:149 ("[S]ection 504(b) treats disgorgement of defendant's profits as an alternative form of monetary damages . . . recover[able] by plaintiff in addition to its lost sales . . . .  Under such circumstances, the right to a jury is absolute."); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998) (noting both actual damages and profits under § 504(b) "generally are thought to constitute legal relief"); *Huffman v. Activision Publ'g, Inc.*, 2021 WL 2339193, at *3–5 (E.D. Tex. June 8, 2021) (right to jury trial under § 504(b)).

Alcon argues "numerous courts have found that a plaintiff is not entitled to a jury trial on disgorgement," but in *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889 (D. Kan. Feb. 25, 2022), the plaintiff did not seek a jury trial, and in *Fair Isaac v. Fed. Ins. Co.*, the court has exercised its discretion to empanel an advisory jury on the issue, *see* No. 16-cv-01054 (D. Minn. Dec. 6, 2022), ECF No. 911 at 20–21.

[**J&J's Proposal:** In addition to actual damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement.][33] [**Alcon's Proposal:** To recover Alcon's profits, J&J must prove by a preponderance of the evidence the amount of Alcon's gross revenues attributable to the copyright infringement.   To do so, J&J must prove that these revenues bear a causal relationship to the infringement.][34] You may not include in an award of profits any amount that you took into account in determining actual damages.

---

[33]   **J&J's Position:** This introductory sentence is taken verbatim from Ninth Circuit Model Civil Jury Instruction 17.34.   It is necessary to make clear that the jury may award both Alcon's profits and J&J's actual damages, so long as the award of profits does not include any amount the jury took into account in determining actual damages.   Moreover, Alcon's claimed concern that the language is misleading as it suggests that the jury may award both J&J's actual damages and Alcon's profits without explaining that any profit award may not result in a double recovery" is completely alleviated by the agreed sentence, "You may not include in an award of profits any amount that you took into account in determining actual damages."   Indeed, that sentence would come directly following this one (exactly as it is written in Ninth Circuit Model Civil Jury Instruction 17.34), were it not for Alcon's proposed language inserted between them.

**Alcon's Position:** J&J's proposal is unnecessary as the jury already will have been instructed on actual damages.   Moreover, it is misleading as it suggests that the jury may award both J&J's actual damages and Alcon's profits without explaining that any profit award may not result in a double recovery.   17 U.S.C. § 504(b) (only profits available are those "not taken into account in computing the actual damages").

[34]   **Alcon's Position:** Alcon's proposal is based directly on the language of the Copyright Act, 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement . . . . In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue . . . ."), and *Leonard v. Stemtech Int'l*

[**J&J's Proposal**: You may make an award of Alcon's profits only if you find that J&J showed a causal relationship between Alcon's infringement and the gross revenue Alcon generated directly or indirectly from the infringement.][35]

---

*Inc.*, 834 F.3d 376, 395 (3d Cir. 2016) ("[T]he plaintiff must demonstrate a causal nexus between the infringement and the infringer's gross revenue . . . ." (alterations and internal quotation marks omitted). Moreover, the use of the term "attributable" is the statutory hook for requiring plaintiff's to prove a causal relationship, which J&J admits is its burden. The instruction does not change the burden of what J&J must prove, and follows the text of the statute.

**J&J's Position:** Alcon's proposal changes the language of Ninth Circuit Model Civil Jury Instruction 17.34 in order to present an inaccurate recitation of the law. It is absolutely incorrect that "J&J must prove … the amount of Alcon's gross revenues *attributable* to the copyright infringement." In pertinent part, 17 U.S.C. § 504(b) reads:

> The copyright owner is entitled to recover … any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Accordingly, J&J's burden is to prove "only [] the infringer's gross revenue" that has a causal relationship to infringement, and then it is Alcon's burden to prove what portions are "attributable" to the infringement (among other things). Alcon's proposal attempts to subtly flip its burden to J&J, and is contrary to law. J&J's proposal follows Ninth Circuit Model Civil Jury Instruction 17.34, and does not confusingly break up the introductory paragraph.

[35] **J&J's Position:** J&J's proposal is taken almost verbatim from Ninth Circuit Model Civil Jury Instruction 17.34, and is an accurate statement of the law, unlike Alcon's proposal addressed above at n.34.

**Alcon's Position:** J&J's proposal is confusing as it references the purported infringement twice, suggesting that there already is a relationship between the revenues and the infringement, when that is the issue that the jury needs to

[**J&J's Proposal**: Alcon's profits are determined by subtracting appropriate expenses from Alcon's gross revenue.  Alcon's gross revenue is all of Alcon's receipts from the sale or use of its products, to the extent that sale or use is causally related to Alcon's infringement.  J&J has the burden of proving Alcon's gross revenue by a preponderance of the evidence.][36]

If you find that J&J met its burden, the burden shifts to Alcon to prove by a preponderance of the evidence any deductions, such as its expenses in making and selling the accused works, and any portion of its profits that are attributable to factors other than J&J's copyrighted works.

[**J&J's Proposal**: There are two categories of expenses.  The first is direct costs, which means costs directly attributable to the production and sale of a product, such as manufacturing and packaging costs.  The second category is overhead costs, which are not limited to the production and sale of a particular product.  In order to

---

resolve.  Alcon's proposal on Page 79 makes the same point in a clearer way that is less likely to confuse and mislead the jury.

[36] **J&J's Position:** J&J's proposal is taken almost verbatim from Ninth Circuit Model Civil Jury Instruction  17.34, and it is not repetitive.  Alcon's proposed divergences from the Model Instructions will result in confusion, as the jury should be instructed on what relevant terms like "profits" and "gross revenue" mean.

**Alcon's Position:** J&J's proposal is a factual argument, not a legal instruction.  By the time that these instructions are read to the jury, Alcon anticipates that the parties will have explained what gross revenues and profits are in the presentation of evidence, making it unnecessary for the Court to do so again.  In addition, J&J's proposal is repetitive of the language directly above it.

deduct any expense from gross revenue in determining profits, Alcon must demonstrate a sufficient nexus between each expense claimed and the product in question.  Alcon has the burden of proving Alcon's expenses by a preponderance of the evidence.  Any doubts resulting from Alcon's failure to present adequate proof of its costs are resolved in favor of J&J.

Alcon may deduct any direct expenses proven by a preponderance of the evidence from gross revenue.

Overhead expenses may not be deducted where infringement found to be willful.][37  [**J&J's Proposal:** If you determine that Alcon's infringement was willful,

---

[37  **J&J's Position:** Contrary to Alcon's assertion, multiple courts—including those in the Third Circuit—have held that overhead may not be deducted where infringement is found to be willful.  *See, e.g.*, *Jarvis v. A & M Recs.*, 827 F. Supp. 282, 294 (D.N.J. 1993) (defining direct costs and overhead costs and holding that "While overhead is deductible if the defendants did not act willfully, it is a question of fact whether these defendants did in fact act willfully."); *Allen-Myland v. International Business Machs. Corp.*, 770 F. Supp. 1014, 1024-26 (E.D. Pa. 1991) (recognizing that "other decisions construing the 1909 Act and at least two under the 1976 Act have held that an infringer may not deduct that portion of its overhead expenses that are specifically linked to the infringing activity where the infringement was willful."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate."); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("Overhead may not be deducted from gross revenues to arrive at profits when an infringement was deliberate or willful.").   Further, Alcon's cited authorities are distinguishable. *Leonard v. Stemtech Health Sciences, Inc.*, is inapposite, as there the court only addresses the relevance of willfulness in a case in which *only* actual damages where sought, and where the court had previously ruled that plaintiff could not seek disgorgement of profits. 981 F. Supp. 2d 273, 277, 279 (D. Del.

2013) ("his damages claim is limited to actual damages"). *Sheldon v. Metro-Goldwyn Pictures Corp.*, a case from 1939, was concerned with whether profits may be apportioned or not, and did not explicitly consider whether overhead may be deducted if the infringement was willful. 106 F.2d 45, 48 (2d Cir. 1939). Such was also the case in *Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir. 1983). Even *Hamil Am., Inc. v. GFI*, on which Alcon heavily relies, recognizes that, "willful infringers should not be permitted to subsidize the sale of legitimate goods with the sale of infringing goods by passing part of its fixed cost on to the copyright holder" and "that a rule of liability which merely takes away profits from an infringement would offer little discouragement to infringers." 193 F.3d 92, 106-07 (2d Cir. 1999) (internal citations omitted).

**Alcon's Position:** J&J's proposal is argumentative and confusing, and proposes a punitive award. When the Copyright Act directs courts to consider willful infringement, it does so explicitly and solely in the context of statutory damages, which are not at issue in this case. 17 U.S.C. § 504(b), (c)(2) (discussing willful infringement in the context of statutory damages, but not in the context of disgorgement of profits). Thus, "when statutory damages are not at issue in an action, 'there is no proper role for proof of willfulness.'" *Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 279 (D. Del. 2013). That is because the Copyright Act makes "no distinction between willful and innocent infringers" when it comes to describing the disgorgement remedy. *ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D. Wash. 1999). That also is why courts have held that overhead deductions are permitted even where there is willful infringement. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 54 (2d Cir. 1939) (allowing deduction of overhead in case of willful infringer); *see also Hamil Am., Inc. v. GFI*, 193 F.3d 92, 106 (2d Cir. 1999) (same); *Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir. 1983) (deduction allowed only for incremental expenses with no discussion of a distinction between willful and non-willful infringement). To hold otherwise would be punitive.

Moreover, the principle on which J&J relies was intended to serve a deterrent effect, as indicated in the cases on which J&J relies. Those cases improperly disregard the guidance on deductibility affirmed by the Supreme Court in *Sheldon*. *See Hamil*, 193 F.3d at 106 (declining to "abandon the teachings of [the Second Circuit's decision in] *Sheldon* in favor of a hard and fast rule denying all overhead deductions to willful infringers" and disagreeing with that principle as endorsed in J&J's cases *Frank Music*, *Jarvis*, and *Saxon*). As a jury is unsuited to determine what would deter other alleged infringers, this underscores why the Court, not the jury, should decide disgorgement. Finally, J&J's cite to *Allen–*

you should stop considering deduction of overhead expenses.  If you determine that Alcon's infringement was not willful, you may consider whether it is appropriate to deduct any overhead expenses from Alcon's gross revenues.  First, only those overhead expenses which are proven with some specificity to relate to a given product may be deducted in determining the profits.  Second, only those overhead expenses that increased due to the manufacture and sale of the products at issue may be deducted.  Third, any overhead expenses to be deducted may only be deducted in the same percentage as the sales of the product in question bears to Alcon's total sales.][38]

Unless you find that a portion of the profit from the use or sale of Alcon's products associated with the infringement is attributable to factors other than use of

---

*Myland* does not support its position because the Court did not decide the question whether a willfulness finding bars deduction of overhead; it noted the existence of decisions on that question but determined that the defendant's actions were not willful.  770 F. Supp. at 1025 & n.19.

[38]  **J&J's Position:**  J&J's proposed language provides helpful clarification as to which overhead expenses may be deducted, and is supported by case law.  *See Allen-Myland v. Int'l Bus. Machs. Corp.*, 770 F. Supp. 1014 (E.D. Pa. 1991) (holding that "[i]n general it may be said that only those expenses which are proven with some specificity to relate to the infringing work may be deducted," and that overhead which assists "in the production of the infringement" should be credited to the infringer); *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293 (S.D.N.Y. 2001) (holding that the full absorption method "permits the defendant to deduct all overhead expenses in the same percentage as the sales of the infringing goods bears to its total sales.").

**Alcon's Position:**  J&J's proposal is a factual argument, not a legal instruction, and it is not contained in the Ninth Circuit Model, on which J&J otherwise relies.

the copyrighted work, all of the profit is to be attributed to the infringement. Alcon has the burden of proving by a preponderance of the evidence the portion of the profit, if any, attributable to factors other than copying the copyrighted work. [**J&J's Proposal:** Any doubts about the proper attributable percentage of profits should be resolved in J&J's favor.][39]

[**Alcon Conditional Proposal:** If you find that J&J inexcusably delayed in bringing its claims and that the delay resulted in prejudice to Alcon, you should not make an award of Alcon's profits to J&J. "Prejudice" in this context includes the

---

[39] **J&J's Position:** J&J's proposal generally follows the language of Ninth Circuit Model Civil Jury Instruction 17.34. It includes a slight modification to reflect that that J&J is seeking both direct profits (on LenSx sales, procedures and service) and indirect profits (on IOLs sold to LenSx accounts and Verion). *See, e.g.*, J&J's Statements of Law That Remain to be Litigated. Alcon does not dispute that the law permits such indirect profits to be recovered. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390 (3d Cir. 2016). J&J's proposal also makes clear the burden on Alcon to prove apportionment, and that any doubts must be resolved in J&J's favor. *See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant.").

**Alcon's Position:** J&J's proposal is not contained in the Ninth Circuit model instruction on which it relies. Moreover, it is notable that, although J&J added language about the "benefit of the doubt," it failed to include the statement of law immediately following that sentence: "The apportionment may take into account the role of uncopyrightable elements of a work in generating that work's profits . . . ." *Frank Music*, 886 F.2d at 1549.

loss of monetary investments or the accrual of damages that would likely have been

prevented by an earlier suit.][40]

---

[40]  <mark>**J&J's Position:**</mark>  Alcon's proposed language appears nowhere in the Ninth Circuit Model Civil Jury Instructions, and is yet another attempt to inject an improper laches defense into the case.  *See Petrella v. Metro–Goldwyn–Mayer, Inc.*, 695 F.3d 946, 952 (9th Cir. 2012) (holding that to establish laches, "a defendant must prove that (1) the plaintiff delayed in initiating the lawsuit; (2) the delay was unreasonable; and (3) the delay resulted in prejudice"), *rev'd* 572 U.S. 663.  As J&J discusses in opposition to Alcon's Motion for Summary Judgment No. 3, the Supreme Court eliminated the laches defense to monetary relief in the copyright context.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677-79 (2014); *see* D.I. 425 at 4-7.  Indeed, Alcon cites no copyright cases that support its instruction; the three cases it cites to are either from the trademark context, *see Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209 (3d Cir. 2021); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123 (3d Cir. 2005*)*; or are from the patent context before the Supreme Court eliminated the laches defense in patent cases, *compare Crown Packaging Tech. v. Rexam Beverage Can*, 679 F. Supp. 2d 512 (D. Del. 2010) *with SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 137 S. Ct. 954 (U.S. 2017).

At most, *Petrella* acknowledged that in "assessing profits," the fact finder "may take account of . . . delay in commencing suit."  *Petrella*, 572 U.S. at 1978-79.  But in doing so, fact-finder must also account for the defendant's "alleged reliance on . . . delay," the defendant's "knowledge of [the] claims," the extent to which the defendant "was protected by the separate-accrual rule," "the court's authority to order injunctive relief 'on such terms as it may deem reasonable,'" as well as "any other considerations that would justify adjusting injunctive relief or profits."  Alcon has not proposed any such holistic jury instruction, instead seeking an instruction that would act as a bar to *all* liability.  That is improper.  *See Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 11755590, at *2 (C.D. Cal. May 4, 2016) ("though prejudicial delay may not be raised as a bar to liability, evidence concerning a Plaintiff's delay in bringing a claim for copyright infringement may be considered in assessing an award of profits").

Further, even if there were a laches defense to monetary relief in the copyright context (there is not), there is no need for a laches instruction here because *Petrella* held that laches can be invoked to bar equitable relief only in "extraordinary circumstances." 572 U.S. at 667.  The Court held as a matter of

law that requests for recovery of profits under § 504(b) do not present such "extraordinary circumstances." *Id.* at 677. Instead, the Court's reasoning makes clear that such extraordinary circumstances can only arise in the context of extreme requests for injunctive relief, like calls for the "total destruction" of infringing buildings that were already occupied or infringing books that were already printed. *Id.* at 685-86 (citing *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007); *New Era Publ'ns Int'l v. Henry Holt & Co.*, 873 F.2d 576, 584-85 (2nd Cir. 1989)).

Even if such extraordinary circumstances did apply here (they do not), Alcon's assertion of a laches defense would be a question for the Court to decide, rather than the jury. Unlike disgorgement, laches is an equitable defense inappropriate to present to the jury, as made clear by the Ninth Circuit Model Civil Jury Instructions (including an instruction for disgorgement (17.34), but not for laches) and by courts applying Alcon's cited (non-copyright) cases. *See, e.g.*, *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, No. CV 18-5194, 2022 WL 2703618, at *16 (E.D. Pa. July 12, 2022) (in the trademark context: "Laches is an equitable defense, and so must be decided by the Court.") (citing *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 217 (3d Cir. 2021)).

Finally, even if any laches instruction were appropriate (it is not), Alcon's proposed instruction is inaccurate, as it fails to address the relevant *exception* to laches—specifically, that laches is unavailable to a defendant who infringes intentionally. *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) ("[I]ntentional infringement is a dispositive threshold inquiry that bars further consideration of the laches defense."). In addition, the reference to "loss of monetary investments or the accrual of damages" is misleading. The prejudice must be *"because of and as result of the* delay, not simply a business decision to capitalize on a market opportunity." *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1293–94 (Fed. Cir. 1992)*; see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 526 (D. Del. 2010) (same); *Hemstreet*, 972 F.2d at 1293–94 (rejecting claim of prejudice because the asserted "expenditures have no explicitly proven nexus to the patentee's delay in filing suit").

**Alcon's Position:** J&J's position is incorrect on all fronts. *See generally* D.I. 461. First, J&J misreads *Petrella*, which did not even come close to abrogating laches as a defense to all monetary relief. *Petrella*'s holding applied only to legal damages. *See* 572 U.S. at 679 (holding that, "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar ***legal*** relief"). The Court

further held that "plaintiff's delay can **always be brought to bear** at the remedial stage … in assessing the '**profits of the infringer**[.]'" *Id.* at 668.

J&J also misstates the law when it argues that laches may only be asserted in "extraordinary circumstances."   In *Petrella*, the Court reasoned that "[t]he circumstances here may or may not (we need not decide) warrant limiting relief at the remedial stage, but they are not sufficiently extraordinary to **justify threshold dismissal**." *Id.* at 687.  Of course, "threshold" dismissal is not at issue here.

Even if extraordinary circumstances were required, this case easily satisfies that standard.  J&J seeks to disgorge profits on several billions of dollars in revenues, a significant proportion of which are not even related to the allegedly infringing works.  Moreover, J&J sat on its hands while Alcon invested hundreds of millions of dollars in developing its LenSx software.  The circumstances could not be more extraordinary.

J&J makes an improper attempt to add elements to the defense of laches by reciting a list of "holistic" factors it would like to see applied.  Laches has two simple elements: (1) the plaintiff "inexcusabl[y] delay[ed] in bringing suit," and (2) there is "prejudice to the defendant as a result of the delay." *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). Prejudice can come in various forms, including economic prejudice, which "arises when an infringer suffers the loss of monetary investments or incurs damages that would likely have been prevented by an earlier suit." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 520 (D. Del. 2010); *see MLMC, Ltd. v. Airtouch Commun., Inc.*, 2001 WL 1414269, at *5 (D. Del. Nov. 1, 2001).  Moreover, the *Petrella* Court did not purport to require the factors J&J lists in every case. *See* 572 U.S. at 687 n.22 ("While reliance or its absence **may** figure importantly in this case, we **do not** suggest that reliance is in all cases a *sine qua non* for adjustment of injunctive relief or profits.").  And it is also incorrect for J&J to argue that laches may not bar a claim for liability, for two reasons.  First, J&J is making a strawman argument.  Alcon does not seek an instruction that would bar liability.  It seeks an instruction that would bar a certain category of relief—an award of its profits.  Second, to the extent J&J suggests laches cannot bar its entire claim for disgorgement, its argument runs aground on the most basic principles of equitable remedies. *See, e.g.*, Dan B. Dobbs, *Law of Remedies*, at 66 (3d ed. 2018) ("[T]he court has the power to measure, shape, and tailor relief to fit its view of the balance of equities and hardships."); *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 79 (3d Cir. 1986)

[**J&J's Conditional Proposal**: If you find that Alcon proved by a preponderance of the evidence that J&J delayed in bringing its claims, that the delay

_____

(directing lower court to assess the appropriate relief if the elements of laches are proven).

J&J ignores settled law (again) when it suggests that laches does not apply in copyright cases. It plainly does, as cases decided before and after *Petrella* recognize. *See, e.g.*, *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488–89 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001) (in copyright litigation, holding that plaintiff's "unjustified delay in seeking protection of its copyrights dooms the instant claims" under laches); *Cadence Design Sys., Inc. v. Syntronic AB*, 2022 WL 1320629, at *3 (N.D. Cal. May 3, 2022) (permitting laches defense in copyright litigation where defendant alleged plaintiff "knew about [defendant's] infringing activity in 2014, six years prior to filing suit").

Although Alcon agrees that laches should not be decided by the jury—because all questions of equitable relief, including disgorgement and defenses thereto, belong to the Court—it is remarkable that J&J to suggest that the *remedy* of disgorgement be presented to the jury but not the *defense* of laches. Alcon proposes this laches instruction in the event the Court submits disgorgement to the jury. However, as explained *supra* n.35, Alcon's position is that the jury should not decide any questions relating to disgorgement. J&J's only citations for its argument that the jury should decide just the portions of equitable questions that J&J chooses are the Ninth Circuit's instructions, which deviate in many respects from Third Circuit law and do not bind this Court, and an opinion that does not address at all whether disgorgement should be decided by the jury. *See I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko*," 2022 WL 2703618, at *25 (E.D. Pa. July 12, 2022).

Alcon's instruction is substantively correct. J&J's argument about intentional infringement is predicated on a single case that held only that "laches is not a defense against **injunctive relief** when the defendant intended the infringement." *Hermès Int'l v. Lederer de Paris Fifth Ave.*, 219 F.3d 104, 107 (2d Cir. 2000). It has no application to laches in the context of disgorgement. Moreover, contrary to J&J's argument, Alcon's instruction makes clear that laches requires that the prejudice result from the delay, consistent with the applicable law.

was unreasonable and inexcusable, and that the delay resulted in prejudice to Alcon, you should reduce your damages award by any Alcon monetary investments that occurred as a result of J&J's unreasonable and inexcusable delay.   To show prejudice, Alcon must show by a preponderance of the evidence that it suffered the loss of monetary investments or incurred damages that would likely have been prevented by an earlier suit, and not merely monetary losses related to a finding of liability for infringement.

However, if you find that Alcon infringed intentionally, any delay by J&J has no bearing on your award of Alcon's profits, and you may not consider it.][41]

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.34 (Civil) (June 2021 update); 17 U.S.C. § 504(b); *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209 (3d Cir. 2021); *William A. Graham Co. v. Haughey*, 646 F.3d 138 (3d Cir. 2011); *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 565–66 (2d Cir.1994); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123 (3d Cir. 2005); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989); *Crown*

---

[41]  **J&J's Position:** For the reasons stated above, J&J does not believe any laches instruction is appropriate for the jury.  However, if the Court is inclined to provide one, J&J's conditional proposal should be given, as opposed to Alcon's.  J&J's proposal accurately reflects the law, including the proper definitions of prejudice and the effect of Alcon's intentional infringement.

**Alcon's Position:**   For the reasons explained above, *supra* n.42, Alcon's instruction accurately states the law.  J&J's instruction is incorrect for the reasons described above, including because a finding of intentional infringement is not enough, on its own, to overcome laches.  *See Crown Packaging Tech. v. Rexam Beverage Can*, 679 F.Supp.2d 512, 528 (D. Del. 2010) (as a general rule, only "particularly egregious willful infringement" overcomes laches); *Intertech Licensing. v. Brown & Sharpe Mfg.*, 708 F.Supp. 1423, 1439 (D. Del. 1989).

*Packaging Tech. v. Rexam Beverage Can*, 679 F. Supp. 2d 512 (D. Del. 2010); *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293 (S.D.N.Y. 2001); *Jarvis v. A & M Recs.*, 827 F. Supp. 282 (D.N.J. 1993); *Allen-Myland v. Int'l Bus. Machs. Corp.*, 770 F. Supp. 1014 (E.D. Pa. 1991); 4 *Nimmer on Copyright* §§ 14.02-14.03; Dan B. Dobbs, *Law of Remedies*, at 76, 78 (3d ed. 2018); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. CV 07-127-LPS-MPT, 2014 WL 533425 (D. Del. Feb. 7, 2014).

40.   **COPYRIGHT—MONETARY RELIEF—WILLFUL INFRINGEMENT**

[**J&J's Proposal**: To prove that an infringement is willful, J&J must prove by a preponderance of the evidence that:

1.     Alcon engaged in acts that infringed the copyrights; and

2.     Alcon knew that those acts infringed the copyrights, or Alcon acted with reckless disregard for, or willful blindness to, AMO Development, LLC's rights.][42]

---

[42]   **J&J's Position**: As J&J argues in its Opposition to Alcon's Motion *in Limine* No. 3, disgorgement is properly for the jury because it is mandated by the Seventh Amendment and the Copyright Act. *See* 9 Wright & Miller, Fed. Prac & Proc. § 2312 (4th ed.) (stating that "ordinarily there is a right to a jury trial on a claim for an accounting [of profits]," the historical analog to disgorgement under the Copyright Act (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962))).   Moreover, as Proposed Instruction No. 39 ("Copyright—Monetary Relief—Defendant's Profits") makes clear, other circuits have held that copyright disgorgement is for the jury and treat it as such. *See, e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977) (finding in copyright action that "Plaintiffs in this case had a right to a jury trial" for an accounting of profits); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003) (citation omitted) ("[T]he question of allocating an infringer's profits between the infringement and other factors … should have been left to the jury."); *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 484 (6th Cir. 2007) (same); *see also* Ninth Circuit Manual of Model Civil Jury Instructions (2017) § 17.34.   In *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), the court addressed remedies for common-law trade secret misappropriation, not copyright infringement, and thus did not consider that the text of the Copyright Act also confirms a jury right. *See* 6 Patry on Copyright § 22:149 ("[S]ection 504(b) treats disgorgement of defendant's profits as an alternative form of monetary damages . . . recover[able] by plaintiff in addition to its lost sales . . . .   Under such circumstances, the right to a jury is

100

absolute."); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998) (noting both actual damages and profits under § 504(b) "generally are thought to constitute legal relief"); *Huffman v. Activision Publ'g, Inc.*, 2021 WL 2339193, at *3–5 (E.D. Tex. June 8, 2021) (right to jury trial under § 504(b)).

Alcon argues "numerous courts have found that a plaintiff is not entitled to a jury trial on disgorgement," but in *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889 (D. Kan. Feb. 25, 2022), the plaintiff did not seek a jury trial, and in *Fair Isaac v. Fed. Ins. Co.*, the court has exercised its discretion to empanel an advisory jury on the issue, *see* No. 16-cv-01054 (D. Minn. Dec. 6, 2022), ECF No. 911 at 20–21.

 In fact, the determination of willfulness is a question of fact for the jury to decide as part of its broader accounting of defendant's profits.  *See, e.g.*, D.I. 264 (Verdict Form), *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-CV-01848-H (POR) (S.D. Cal. Apr. 22, 2009) (Question 5b, "What is the total amount of Coldwater's profits, if any, resulting from this copyright infringement?"; Question 5c, "Do you find that the infringement was willful?"); *Allen-Myland, Inc.*, 770 F. Supp. at 1025 (*citing Harper House, Inc. v. Thomas Nelson, Inc.*, 1987 WL 30581 (C.D. Cal. 1987) (1976 Act), and noting that it was "not plain error to instruct jury to ignore overhead deductions upon a finding of willfulness"); *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) ("[U]nder *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the entire willfulness determination is to be decided by the jury.") (patent); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (same).  The existence of Ninth Circuit Model Civil *Jury* Instruction 17.37 itself further establishes that willfulness is to be determined by the jury, noting in its comment that "a finding of willfulness can also be made in connection with an assessment of defendant's profits."

**Alcon's Position:** J&J argues that willfulness is relevant to what deductions Alcon can take with regard to disgorgement of profits.  As discussed in Paragraph 150 of the Joint [Proposed] Pretrial Order, disgorgement of profits is an equitable remedy that must be decided by the Court, not the jury.  Thus, the parties should not present argument or evidence concerning, the jury should not be instructed regarding, and the jury should not decide, the issue of disgorgement.  *See* D.I. 370 (Defs.' Summ J. Br. re Laches), at 3–4; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1, 686 (2014) (describing "disgorgement of unjust gains" as "equitable relief").  As a result, it also is improper and unnecessary to instruct the jury on the issue of willful infringement.  In addition, J&J's argument

<u>Authority:</u>  Ninth Circuit Manual of Model Jury Instructions, No. 17.37 (Civil) (June 2021 update); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435 (D. Del. 2005).

---

is contrary to the law because the deductions it describes are permitted even where there is willful infringement; to instruct the jury otherwise would result in a requested for relief that is punitive.  *See supra* n.39.  Finally, J&J's argument that cases exist where willfulness has been found to be a question of fact for the jury does not change the fact that it is an issue only with regard to statutory damages, not disgorgement.  J&J does not and cannot seek statutory damages in this case, making willful infringement irrelevant under *Leonard*.

## 41.   DELIBERATION—INTRODUCTION

That concludes my instructions on the law.   Now I will explain your deliberations in the jury room and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson.

One more thing about messages.  Do not write down or tell anyone other than your fellow jurors how you stand on your votes.  Your votes should stay secret until you are finished.

Authority:   Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 42.    DELIBERATION—UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

As jurors, you have a duty to consult with each other and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment.  Each of you must decide the case for yourself, but do so only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully.  In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence if convinced your views are erroneous.  But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  It has several questions for you to answer.  You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date, and sign the form.  You will then give it to the jury officer and return to the

courtroom, where my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

Authority:   Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 43.   DELIBERATION—SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cellphone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook, LinkedIn, Snapchat, YouTube, Twitter, TikTok, Telegram, Discord, or Instagram to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone about this case, whether in person, by phone, by text message, by email, or over the Internet.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

Authority:   Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).

## 44.    DELIBERATION—COURT HAS NO OPINION

Let me finish by repeating something I have said to you earlier.  Nothing that

I have said or done during this trial was meant to influence your decision in any way.

You must decide the case yourself based on the evidence presented.

Authority:   Third Circuit Model Civil Jury Table of Contents and Instructions, No. 3.1. (August 2020); D.I. 448 (Final Jury Instructions), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19 Civ. 00097 (D. Del.).