# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC<br>and AMO SALES AND SERVICE,<br>INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON VISION, LLC,<br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LLC,<br><br>Defendants. | C.A. No. 20-842 (CFC)<br><br>████████████ |

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

## EXHIBIT 1

## JOINT [PROPOSED] STATEMENT OF UNCONTESTED FACTS

# **TABLE OF CONTENTS**

I.    PARTIES ...............................................................................................1

    A.    J&J .......................................................................................1

    B.    Alcon ...................................................................................1

II.    THE IFS LASER AND THE IFS COMPUTER PROGRAM ........................2

III.    THE LENSX LASER AND THE LENSX SOFTWARE .............................3

IV.    IFS FDA SUBMISSIONS ......................................................................3

V.    LENSX FDA SUBMISSIONS .................................................................3

VI.    IFS OPERATOR'S MANUAL ................................................................3

VII.    LENSX OPERATOR'S MANUAL ...........................................................4

VIII.    CATALYS DEVICE ............................................................................4

IX.    THE LITIGATION...............................................................................4

## I.    PARTIES

### A.    J&J

1.    The Plaintiffs are the following companies (collectively, "J&J"):

- AMO Development, LLC ("AMO Development");

- AMO Manufacturing USA, LLC;

- AMO Sales and Service, Inc.

2.    In 2007, a company called Advanced Medical Optics, Inc. acquired a company called IntraLase Corp. ("IntraLase").  After this acquisition, IntraLase was renamed AMO Development.

3.    In 2009, Advanced Medical Optics, Inc. became Abbott Medical Optics, Inc.

4.    In 2013, Abbott Medical Optics, Inc. acquired OptiMedica Corp. ("OptiMedica").

5.    In 2017, Johnson & Johnson acquired Abbott Medical Optics, Inc.

6.    In 2018, Abbott Medical Optics, Inc. was renamed Johnson & Johnson Surgical Vision, Inc.

7.    In 2019, as part of an internal reorganization, OptiMedica was absorbed into AMO Development.

### B.    Alcon

8.    The Defendants are the following companies (collectively, "Alcon"):

1

- Alcon Vision, LLC

- Alcon Laboratories, Inc.

- Alcon Research, LLC

9. In August 2010, an Alcon affiliate called Alcon Holdings, Inc. acquired LenSx Lasers, Inc.

10. In September 2010, LenSx Lasers, Inc.'s name was changed to Alcon LenSx, Inc.

11. In April 2021, Alcon LenSx, Inc. was merged into Alcon Research, LLC.

## II.     THE IFS LASER AND THE IFS COMPUTER PROGRAM

12. The iFS® Advanced Femtosecond Laser, IntraLase® FS Model 2, and IntraLase FS Model 3 Laser systems (collectively, the "iFS Laser" systems) are femtosecond laser systems used primarily for LASIK eye surgery.

13. The iFS Laser systems were initially developed by IntraLase.

14. The iFS Laser systems run computer programs.

15. As of September 2, 2020, AMO Development has registered copyrights in 18 versions of the computer programs for the iFS Laser system  (the "iFS Computer Program").

2

### III.    THE LENSX LASER AND THE LENSX SOFTWARE

16.    The LenSx® Laser system (the "LenSx") is a femtosecond laser system used for cataract surgery.

17.    The LenSx® Laser was initially developed by LenSx Lasers, Inc. ("LenSx Lasers"), founded in 2008.

18.    The LenSx device runs computer programs (all versions collectively referred to as the "LenSx Software").

### IV.    IFS FDA SUBMISSIONS

19.    AMO Development has registered copyrights in the 510(k) applications submitted to the U.S. Food and Drug Administration ("FDA") in connection with seeking regulatory approval for the iFS Laser systems (the "iFS FDA Submissions").

### V.    LENSX FDA SUBMISSIONS

20.    Before Alcon could sell the LenSx in the U.S., Alcon was required to, and did, obtain pre-market clearance from the FDA.

21.    In connection with seeking regulatory approval for the LenSx from the FDA, Alcon submitted 510(k) applications (the "LenSx FDA Submissions").

### VI.    IFS OPERATOR'S MANUAL

22.    AMO Development has registered copyrights in the operator's manual associated with the iFS Laser systems ("iFS Operator's Manual").

3

## VII. LENSX OPERATOR'S MANUAL

23.     Alcon provides an operator's manual for the LenSx device (the "LenSx Operator's Manual") with each LenSx.

24.     The LenSx Operator's Manual was included as proposed labeling in the LenSx FDA Submissions.

## VIII. CATALYS DEVICE

25.     The Catalys® Precision Laser System (the "Catalys" system) is a femtosecond laser system used for cataract surgery.

26.     The Catalys system was initially developed by OptiMedica.

27.     The Catalys system received FDA 510(k) market clearance for capsulotomy and lens fragmentation in December 2011 and was released commercially in the United States in early 2012.

## IX. THE LITIGATION

28.     J&J filed patent claims against Alcon on June 23, 2020.

29.     J&J amended its complaint to add copyright infringement claims against Alcon on September 28, 2020, alleging that Alcon has infringed copyrights in the iFS Computer Program.

30.     J&J amended its complaint on June 16, 2021 to add claims that Alcon has infringed copyrights in the iFS FDA Submissions and the iFS Operator's Manual.

4

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | C.A. No. 20-842 (CFC) |
| Plaintiffs, | ███████████████████ |
| v. | ████████████ |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | |
| Defendants. | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | |
| Counterclaim Plaintiffs, | |
| v. | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., | |
| Counterclaim Defendants. | |

**EXHIBIT 2**

**J&J'S STATEMENT OF CONTESTED FACTS
TO BE LITIGATED AT TRIAL**

i

# TABLE OF CONTENTS

I.    J&J'S OWNERSHIP OF VALID COPYRIGHTS ........................................1

   A.    Asserted iFS Source Code.................................................................1
      i.    Originality ...............................................................................1
      ii.    Ownership ................................................................................2
   B.    Asserted FDA Submissions and Technical Documentation .................2
      i.    Originality ...............................................................................2
      ii.    Ownership ................................................................................2
   C.    Asserted iFS Operator's Manual ........................................................3
      i.    Originality ...............................................................................3
      ii.    Ownership ................................................................................3

II.    ALCON'S INFRINGEMENT ..................................................................3

   A.    Accused LenSx Software ..................................................................3
      i.    Versions Predating "Refactored" LenSx Software.....................3
      ii.    "Refactored" Version of LenSx Software ..................................4
   B.    Accused LenSx FDA Submissions .........................................................4
   C.    Accused LenSx Operator's Manual .......................................................5

III.    ALCON'S SECONDARY LIABILITY..............................................................5

IV.    WILLFUL INFRINGEMENT...................................................................6

V.    REMEDIES ........................................................................................6

   A.    Limitations and Damages Period ..........................................................6
   B.    Actual Damages ................................................................................6
   C.    Recovery of Alcon's Profits.................................................................7
   D.    Injunctive Relief................................................................................8

ii

## J&J'S STATEMENT OF CONTESTED FACTS

J&J respectfully submits this Statement of Contested Facts to Be Litigated at Trial, which accords with J&J's claims and J&J's understanding of the defenses and counterclaims asserted by Alcon. The statements of fact herein are not exhaustive, and J&J reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. This submission applies to the copyright claims set for trial in February 2023. J&J reserves all rights regarding the pending patent claims. D.I. 205.

## I. J&J'S OWNERSHIP OF VALID COPYRIGHTS

### A. Asserted iFS Source Code[1]

#### i. *Originality*

1. Whether Alcon has overcome the presumption that the Asserted iFS Source Code is original, and thus protectable, by showing by a preponderance of the evidence that Asserted iFS Source Code contains no elements that were (a) created independently by the author(s), and (b) created using at least some minimal degree of creativity.

---

[1] The "Asserted iFS Source Code" refers to the versions of the computer programs that operate the iFS Laser in which J&J has registered copyrights.

1

ii.     *Ownership*

2.      Whether Alcon has overcome the presumption that J&J owns a copyright interest in the Asserted iFS Source Code, by showing by a preponderance of the evidence that it was both (a) not a work made for hire and (b) not assigned to J&J via a transfer agreement.

### B.     Asserted FDA Submissions and Technical Documentation

i.     *Originality*

3.      Whether Alcon has overcome the presumption that the Asserted FDA Submissions and Technical Documentation are original, and thus protectable, by showing by a preponderance of the evidence that the Asserted FDA Submissions and Technical Documentation contain no elements that were (a) created independently by the author(s), and (b) created using at least some minimal degree of creativity.

ii.     *Ownership*

4.      Whether Alcon has overcome the presumption that J&J owns a copyright interest in the Asserted FDA Submissions and Technical Documentation, by showing by a preponderance of the evidence that the Asserted FDA Submissions and Technical Documentation were both (a) not works made for hire, and (b) not assigned to J&J via a transfer agreement.

2

### C.    Asserted iFS Operator's Manual

#### i.    *Originality*

5.    Whether Alcon has overcome the presumption that the Asserted iFS Operator's Manual is original, and thus protectable, by showing by a preponderance of the evidence that the Asserted FDA Submissions and Technical Documentation contain no elements that were (a) created independently by the author(s), and (b) created using at least some minimal degree of creativity.

#### ii.    *Ownership*

6.    Whether Alcon has overcome the presumption that J&J owns a copyright interest in the Asserted iFS Operator's Manual, by showing by a preponderance of the evidence that the Asserted iFS Operator's Manual was both (a) not a work made for hire, and (b) not assigned to J&J via a transfer agreement.

## II.    ALCON'S INFRINGEMENT

### A.    Accused LenSx Software[2]

#### i.    *Versions Predating "Refactored" LenSx Software*

7.    Whether any versions of the Accused LenSx Software that preceded Alcon's "refactored" version (*i.e.*, versions that precede version 2.31G) reflect unauthorized copying by Alcon of original expression from the Asserted iFS Source

---

[2] "Accused LenSx Software" refers collectively to all versions of the computer programs that run on the LenSx device, including both Alcon's "refactored" LenSx computer programs and earlier versions.

3

Code, which can be proven by showing (a) access to the Asserted iFS Source Code and (b) substantial similarity between the literal or non-literal elements of the Asserted iFS Source Code and those elements of the relevant versions of the Accused LenSx Software.

ii.    *"Refactored" Version of LenSx Software*

8.    Whether Alcon's "refactored" version of the Accused LenSx Software (*i.e.*, version 2.31G) reflects unauthorized copying by Alcon of original expression from the Asserted iFS Source Code, which can be proven by showing (a) access to the Asserted iFS Source Code and (b) substantial similarity between the literal or non-literal elements of the Asserted iFS Source Code and those elements of version 2.31G of the Accused LenSx Software.

B.    **Accused LenSx FDA Submissions[3]**

9.    Whether the Accused LenSx FDA Submissions reflect unauthorized copying by Alcon of original expression from the Asserted FDA Submissions and Technical Documentation, which can be proven by showing (a) access to the Asserted FDA Submissions and Technical Documentation, and (b) substantial similarity between the literal or non-literal elements of the Asserted FDA

---

[3] "Accused LenSx FDA Submissions" refers to the 510(k) applications submitted by Alcon in connection with seeking regulatory approval for the LenSx from the FDA.

4

Submissions and Technical Documentation and those elements of the Accused LenSx FDA Submissions.

### C.    Accused LenSx Operator's Manual

10.    Whether the Accused LenSx Operator's Manual reflects unauthorized copying by Alcon of original expression from the Asserted iFS Operator's Manual, which can be proven by showing (a) access to the Asserted iFS Operator's Manual, and (b) substantial similarity between the literal or non-literal elements of the Asserted iFS Operator's Manual and those elements of the Accused LenSx Operator's Manual.

## III.   ALCON'S SECONDARY LIABILITY

11.    Whether Alcon has vicariously infringed J&J's copyrights in the Accused LenSx Software because (a) Alcon has directly financially benefitted (e.g., through LenSx devices, patient interfaces, or per-procedure revenues) from the infringing activity of LenSx customers (e.g., operating the LenSx device, which causes the creation of copies of the object code for the Accused LenSx Software); (b) Alcon had the right and ability to control the infringing activity of LenSx customers (e.g., because Alcon retains ownership over the software installed on customers' LenSx devices); and (c) Alcon failed to exercise that right and ability.

12.    Whether Alcon has contributorily infringed J&J's copyrights in the Accused LenSx Software because (a) Alcon knew, or was willfully blind to, or had

5

reason to know of the infringing activity of LenSx customers (e.g., operating the LenSx device, which causes the creation of copies of the object code for the Accused LenSx Software), and (b) Alcon intentionally induced or materially contributed to the infringing activity of LenSx customers (e.g., by selling or renting LenSx devices with the Accused LenSx Software installed and by selling patient interfaces that enable continued copying of the Accused LenSx Software).

## IV.   WILLFUL INFRINGEMENT

13.   Whether, for any acts of infringement by Alcon, Alcon knew that those acts infringed J&J's copyrights, or that Alcon acted with reckless disregard for, or willful blindness to, J&J's rights.

## V.   REMEDIES

### A.   Limitations and Damages Period

14.   Whether Alcon has shown by a preponderance of the evidence that J&J discovered, or with due diligence could have discovered, Alcon's infringement of J&J's copyrights in the Asserted FDA Submissions and Technical Documentation occurring before September 28, 2017.

### B.   Actual Damages

15.   What amount of actual damages J&J is entitled to recover as a result of Alcon's infringement, calculated as (a) profits from lost sales that J&J would have made but for Alcon's infringement (e.g., profits J&J would have made from lost sales of the Catalys device that competes with the LenSx device), and/or (b) a

6

hypothetical license fee that should have been paid to J&J beginning at the time of Alcon's first infringement.

### C.   Recovery of Alcon's Profits

16.   Whether there is a causal nexus between Alcon's infringement and the gross revenues associated with LenSx devices sold or rented to LenSx accounts ("LenSx Revenues").

17.   Whether there is a causal nexus between Alcon's infringement and the gross revenues associated with Verion products sold to LenSx accounts ("Verion Revenues").

18.   Whether there is a causal nexus between Alcon's infringement and the gross revenues associated with IOL products sold to LenSx accounts ("IOL Revenues").

19.   What deductible expenses Alcon has shown by a preponderance of the evidence should be subtracted from J&J's recovery of the LenSx Revenues, the Verion Revenues, and the IOL Revenues.

20.   What portion of Alcon's profits Alcon has shown by a preponderance of the evidence to be attributable to factors other than Alcon's infringement.

21.   What amount of Alcon's profits flow to Alcon Vision, LLC, Alcon Laboratories, Inc., Alcon Research, LLC, and/or Alcon, Inc.

7

22. To the extent laches is properly at issue at trial, whether Alcon is nevertheless precluded from asserting that defense because (1) Alcon has intentionally infringed, (2) Alcon has failed to show that it has been prejudiced, and/or (3) Alcon has failed to show that any delay by J&J was unreasonable and inexcusable.

### D.   Injunctive Relief

23. Whether J&J is entitled to injunctive relief that permanently enjoins Alcon from further infringement of J&J's copyrights, including, without limitation, sales and rentals of LenSx devices installed with the Accused LenSx Software or installing the Accused LenSx Software on LenSx devices; further use of LenSx devices installed with the Accused LenSx Software; disseminating or creating additional copies of the Accused LenSx Operator's Manual; and creating further copies of the Accused LenSx FDA Submissions.

24. Whether J&J is entitled to judgment ordering Alcon to (1) provide an accounting of all copies of the Accused LenSx Software, the Accused LenSx Operator's Manual, and the Accused LenSx FDA Submissions in Alcon's possession, and (2) destroy those copies.

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) <br><br> ███████████████████ <br> ██████████ |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim Defendants. | |

## EXHIBIT 3

## ALCON'S STATEMENT OF CONTESTED
## FACTS TO BE LITIGATED AT TRIAL

# TABLE OF CONTENTS

ALCON'S STATEMENT OF CONTESTED FACTS ..........................................1

I.    OWNERSHIP OF VALID COPYRIGHTS .....................................................1

    A.    iFS Computer Program.................................................................1
        i.    Originality ...........................................................................1
        ii.    Ownership ...........................................................................2
    B.    iFS FDA Submissions .................................................................2
        i.    Originality ...........................................................................3
        ii.    Ownership ...........................................................................3
    C.    iFS Operator's Manual ...............................................................3
        i.    Originality ...........................................................................3
        ii.    Ownership ...........................................................................3

II.    COPYRIGHT INFRINGEMENT .....................................................................4

    A.    LenSx Software ............................................................................4
        i.    Versions Predating LenSx Software Version 2.31 G ...............4
        ii.    Version 2.31G of the LenSx Software ....................................4
    B.    LenSx FDA Submissions .............................................................5
    C.    LenSx Operator's Manual ...........................................................6

III.    SECONDARY LIABILITY ............................................................................6

IV.    WILLFUL INFRINGEMENT .........................................................................7

V.    REMEDIES ....................................................................................................7

    A.    Limitations and Damages Period .................................................7
    B.    Actual Damages ..........................................................................7
    C.    Recovery of Alcon's Profits ........................................................8
    D.    Injunctive Relief .........................................................................9

## ALCON'S STATEMENT OF CONTESTED FACTS

Alcon respectfully submits this Statement of Contested Facts to Be Litigated at Trial.  The statements of fact herein are not exhaustive, and Alcon reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports.

## I.     OWNERSHIP OF VALID COPYRIGHTS

### A.     iFS Computer Program[1]

1.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program contains protectable expression.

#### i.     *Originality*

2.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program is original.

3.     Whether the iFS Computer Program contains code that is not original to IntraLase.

4.     Whether the iFS Computer Program contains public domain material.

5.     Whether the iFS Computer Program copied code from technical documentation to which AMO Development, LLC ("AMO Development") does not

---

[1]  "iFS Computer Program" is defined in ¶ 23 of Alcon's Uncontested Statement of Facts.

1

own the copyrights (*e.g.*, the C programming language standard, QNX documentation, etc.).

6.    Whether the iFS Computer Program contains code automatically generated by tools used to create the iFS Computer Program to which AMO Development does not own the copyrights (*e.g.*, Photon Application Builder).

### ii.    *Ownership*

7.    Whether J&J has failed to carry its burden by proving by a preponderance of the evidence that AMO Development LLC ("AMO Development") is the owner of valid copyrights in the iFS Computer Program.

8.    Whether Peter Goldstein incorporated code into the iFS Computer Program from his previous employers or from contracting work done for other clients.

### B.    iFS FDA Submissions[2]

9.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS FDA Submissions contain protectable expression.

---

[2]    "iFS FDA Submissions" is defined in ¶ 29 of Alcon's Uncontested Statement of Facts.

### i.    *Originality*

10.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS FDA Submissions are original.

### ii.    *Ownership*

11.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that AMO Development is the owner of valid copyrights in the iFS FDA Submissions.

## C.    iFS Operator's Manual[3]

12.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Operator's Manual contains protectable expression.

### i.    *Originality*

13.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Operator's Manual is original.

### ii.    *Ownership*

14.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that AMO Development is the owner of valid copyrights in the iFS Operator's Manual.

---

[3]    "iFS Operator's Manual" is defined in ¶ 32 of Alcon's Uncontested Statement of Facts.

3

## II.    COPYRIGHT INFRINGEMENT

### A.    LenSx Software[4]

#### i.    *Versions Predating LenSx Software Version 2.31G*

15.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that versions of Alcon's LenSx Software preceding version 2.31G were copied from the iFS Computer Program.

16.    Whether J&J failed to carry its burden of proving by a preponderance of the evidence that authors of Alcon's LenSx Software preceding version 2.31G had access to the iFS Computer Program.

17.    Whether J&J failed to carry its burden of proving by a preponderance of the evidence that versions of Alcon's LenSx Software preceding version 2.31G are substantially similar to the iFS Computer Program.

#### ii.    *Version 2.31G of the LenSx Software*

18.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that version 2.31G of the LenSx Software was copied from the iFS Computer Program.

---

[4]    "LenSx Software" refers collectively to all versions of the computer programs that run on the LenSx device, including both Alcon's redeveloped LenSx computer programs and earlier versions.

4

19.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that authors of version 2.31G of the LenSx Software had access to the iFS Computer Program.

20.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that version 2.31G of the LenSx Software is substantially similar to the iFS Computer Program, including without limitation whether J&J failed to prove that protectable elements of the iFS Computer Program are substantially similar to version 2.31G of the LenSx Software.

### B.     LenSx FDA Submissions[5]

21.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx FDA Submissions were copied from the iFS FDA Submissions.

22.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that LenSx had access to the iFS FDA Submissions.

23.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that the LenSx FDA Submissions are substantially similar to the iFS FDA Submissions.

---

[5]   "LenSx FDA Submissions" refers to the 510(k) applications submitted by Alcon in connection with seeking regulatory approval for the LenSx from the FDA.

5

### C.     LenSx Operator's Manual

24.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the Alcon's LenSx Operator's Manual was copied from the iFS Operator's Manual.

25.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that LenSx had access to the iFS Operator's Manual.

26.     Whether J&J failed to carry its burden of proving by a preponderance of the evidence that the LenSx Operator's Manual is substantially similar to the iFS Operator's Manual.

## III.   SECONDARY LIABILITY

27.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon has vicariously infringed the copyrights in the iFS Computer Program.

28.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon has contributorily infringed the copyrights in the iFS Computer Program.

## IV.    WILLFUL INFRINGEMENT[6]

29.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's purported infringement of AMO Development's copyrights was willful.

## V.    REMEDIES

### A.    Limitations and Damages Period

30.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it did not discover, and with due diligence could not have discovered, the basis for its claims (1) that LenSx's FDA Submissions infringe iFS FDA Submissions and (2) that LenSx's Operator's Manual infringes the iFS Operator's Manual, before September 28, 2017.

### B.    Actual Damages

31.    Whether J&J failed to take reasonable actions that would have reduced its damages, and if so, the amount by which the damages would have been reduced.

32.    Whether J&J has failed to carry its burden of proving by a preponderance of the evidence the amount of actual damages, if any, to which the purported copyright owner, AMO Development, is entitled for Alcon's purported infringement of the iFS Computer Program, iFS FDA Submissions, and the iFS

---

[6]    Alcon asserts that willfulness is not relevant to any disputed issue in this case, but it includes a conditional statement in the event the Court decides otherwise.

Operator's Manual, including the amount of profits AMO Development would have made but for the purported infringement, measured either by AMO Development's own lost profits or by the reasonable royalty that should have been paid to AMO Development, LLC beginning from the time of Alcon's first purported infringement.

33.    Whether AMO Development, LLC sold a competing product for which it can claim lost profits over the entirety of the damages period.

34.    Whether non-infringing alternatives to the iFS Computer Programs were available during the purported infringement and rebut AMO Development's claims for lost profits and a reasonable royalty.

35.    Whether LenSx had the necessary equipment, materials, know-how, and/or economic incentive to write the LenSx software differently.

36.    Whether LenSx would have been first to market absent the purported copying.

### C.    Recovery of Alcon's Profits[7]

37.    Whether convoyed sales of products other than the allegedly infringing works should be excluded from a calculation of Alcon's profits under 17 U.S.C. § 504(b) because they would have been considered in a hypothetical negotiation.

38.    Whether laches bars J&J's claim for disgorgement of Alcon's profits.

---

[7]    Alcon maintains that recovery of Alcon's profits is an equitable issue not properly before the jury.

39.     Whether J&J has failed to carry its burden to prove by a preponderance of the evidence that the LenSx, Verion, and intraocular lens ("IOL") revenues it seeks to disgorge are causally related to the purported copyright infringement.

40.     What amount of deductible expenses should be subtracted from any J&J recovery of Alcon's profits.

41.     What amount of profits are not subject to disgorgement because they are not earned by defendants in this litigation.

42.     What portion of Alcon's profits are attributable to factors other than the purported infringement.

### D.     Injunctive Relief

43.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from further purported infringement of J&J's copyrights, including sales and rentals of LenSx devices installed with the Accused LenSx Software or installing the Accused LenSx Software on LenSx devices; further use of LenSx devices installed with the Accused LenSx Software; disseminating or creating additional copies of the LenSx Operator's Manual; and creating further copies of the LenSx FDA Submissions.

44.     Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to a judgment ordering Alcon to provide an accounting of all copies of the Accused LenSx Software, LenSx FDA Submissions, and LenSx Operator's Manual in Alcon's possession, and to destroy those copies.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
and AMO SALES AND SERVICE,
INC.,

      Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

C.A. No. 20-842 (CFC)

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

**EXHIBIT 4**

**J&J'S STATEMENT OF ISSUES OF LAW**
**THAT REMAIN TO BE LITIGATED**

# TABLE OF CONTENTS

I.     COPYRIGHT INFRINGEMENT ................................................................1

    A.     Issues of Law to be Litigated ....................................................1

    B.     Legal Authority ..........................................................................3

        1.     Ownership .........................................................................3

        2.     Originality .........................................................................6

        3.     Idea/Expression Dichotomy and Merger ..........................6

        4.     Direct Infringement ...........................................................8

        5.     Vicarious Infringement .....................................................9

        6.     Contributory Infringement ................................................9

        7.     Willful Infringement .........................................................9

II.    MONETARY RELIEF ...........................................................................10

    A.     Issues of Law to be Litigated ..................................................10

    B.     Legal Authority ........................................................................13

        1.     Limitations and Damages Period .....................................13

        2.     Actual Damages Generally ..............................................13

        3.     Lost Sales ........................................................................14

        4.     Reasonable Royalty .........................................................14

        5.     Disgorgement ..................................................................16

        6.     Prejudgment and Post-Judgment Interest ........................18

        7.     Costs ................................................................................19

III.   INJUNCTIVE RELIEF ..........................................................................20

    A.     Issues of Law to be Litigated ..................................................20

    B.     Legal Authority ........................................................................21

IV.    ALCON'S AFFIRMATIVE DEFENSES ................................................24

    A.     Issues of Law to be Litigated ..................................................24

    B.     Legal Authority ........................................................................25

        1.     Estoppel by Acquiescence ...............................................25

        2.     Failure to Mitigate...........................................................25

        3.     *De Minimis* Copying .......................................................26

        4.     Laches .............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen–Myland v. International Business Machines*,
   770 F.Supp. 1014 (E.D.Pa. 1991) .......................................................................... 17

*Andreas v. Volkswagen of Am., Inc.*,
   336 F.3d 789 (8th Cir. 2003) ................................................................................. 16

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
   714 F.2d 1240 (3d Cir. 1983) ................................................................................... 7

*Apple Inc. v. Samsung Elecs. Co.*,
   735 F.3d 1352 (Fed. Cir. 2013) ............................................................................. 22

*Atari Games Corp. v. Nintendo of Am., Inc.*,
   975 F.2d 832 (Fed. Cir. 1992) ................................................................................. 7

*Barefoot Architect, Inc. v. Bunge*,
   632 F.3d 822 (3d Cir. 2011) ..................................................................................... 6

*Bridgeport Music, Inc. v. Justin Combs Pub.*,
   507 F.3d 470 (6th Cir. 2007) ................................................................................. 16

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
   No. 10-CV-419-GPC (WVG), 2012 WL 6553403 (S.D. Cal. Dec. 13, 2012) ..... 4

*Broad. Music Inc. v. Hemingway's Cafe, Inc.*,
   No. 15-cv-6806, 2017 WL 2804951 (D.N.J. June 28, 2017) ................................. 9

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
   868 F. Supp. 2d 359 (D. Del.), *aff'd* 486 F.Appx. 883 (Fed. Cir. 2012) ............ 22

*CJ Prod. LLC v. Snuggly Plushez LLC*,
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) ................................................................ 5, 6

*Dam Things from Denmark v. Russ Berrie & Co.*,
   290 F.3d 548 (3d Cir. 2002) ..................................................................................... 8

*Davidson v. United States*,
   138 Fed. Cl. 159 (2018) ......................................................................................... 16

i

*Dolori Fabrics, Inc. v. Limited, Inc.*,
  662 F.Supp. 1347 (S.D.N.Y. 1987) ........................................................17

*Dun & Bradstreet Software v Grace Consulting*,
  307 F.3d 197 (3rd Cir. 2002) ...................................................................8

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................21

*Educ. Testing Servs. v. Katzman*,
  793 F.2d 533 (3d Cir. 1986) .....................................................................7

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..................................................................................6

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
  930 F.2d 277 (3d Cir. 1991) .....................................................................8

*Frank Music Corp. v. Emerson's Pub, Inc.*,
  No. 08-cv-0532, 2009 WL 744964 (M.D. Pa. Mar. 18, 2009)...........19

*Freddy S.p.A. v. Kalai*,
  No. 20-cv-628, 2022 WL 1411690 (D. Del. Apr. 28, 2022), report and
  recommendation adopted, No. CV 20-628 (MN), 2022 WL 2915765 (D. Del.
  July 25, 2022)..........................................................................................21

*Gaylord v. United States*,
  777 F.3d 1363 (Fed. Cir. 2015) ..............................................................15

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F.Supp. 1116 (S.D.N.Y. 1970) .......................................................15

*Golden Star Wholesale, Inc. v. ZB Importing, Inc.*,
  531 F. Supp. 3d 1231 (E.D. Mich. 2021) ............................................4, 6

*Goldman v. Healthcare Mgmt. Sys., Inc.*,
  559 F. Supp. 2d 853 (W.D. Mich. 2008)................................................16

*Graphic Design Mktg., Inc. v. Xtreme Enters., Inc.*,
  772 F. Supp. 2d 1029 (E.D. Wis. 2011) ..................................................4

*Hamil Am., Inc. v. SGS Studio, Inc.*,
   No. 95 CIV. 2513 (JSM), 1998 WL 19991 (S.D.N.Y. Jan. 21, 1998), *aff'd in
   part, rev'd in part sub nom. Hamil Am. Inc. v. GFI*, 193 F.3d 92
   (2d Cir. 1999)................................................................................................18

*Jarvis v. A & M Recs.*,
   827 F. Supp. 282 (D.N.J. 1993)....................................................................17

*Le v. City of Wilmington*,
   480 F.Appx. 678 (3d Cir. 2012) ....................................................................5

*Leonard v. Stemtech Int'l Inc.*,
   834 F.3d 376 (3d Cir. 2016) ...........................................................14, 15, 18

*Malibu Media, LLC v. Bayko*,
   No. 1:18-CV-964, 2019 WL 414917 (M.D. Pa. Feb. 1, 2019).........................23

*Masquerade Novelty, Inc. v. Unique Indus., Inc.*,
   912 F.2d 663 (3d Cir. 1990) ...........................................................................5

*McRoberts Software, Inc. v. Media 100, Inc.*,
   329 F.3d 557 (7th Cir. 2003) ........................................................................14

*Mon Cheri Bridals, Inc. v. Wen Wu*,
   383 F. Appx. 228 (3d Cir. 2010) ....................................................................6

*New Line Cinema Corp. v. Russ Berrie & Co.*,
   161 F. Supp. 2d 293 (S.D.N.Y. 2001) ...........................................................18

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ...................................................................14, 15

*Parker v. Google, Inc.*,
   242 F.Appx. 833 (3d Cir. 2007) .....................................................................9

*Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*,
   38 F.4th 331 (3d Cir. 2022) ...........................................................................7

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ......................................................................16

*Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*,
   319 F. Supp. 3d 754 (D.N.J. 2018), *aff'd*, 931 F.3d 215 (3d Cir. 2019)...........23

*Tanksley v. Daniels*,
   259 F. Supp. 3d 271 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018)...........9

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019) .......................................................14, 21, 22, 23

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014) .........................................................22

*Virgin Recs. Am., Inc. v. Bagan*,
   No. 08-cv-4694, 2009 WL 2170153 (D.N.J. July 21, 2009).............................24

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
   388 F. Supp. 2d 435 (D. Del. 2005)...................................................8, 9

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
   609 F. Supp. 1325 (E.D. Pa. 1985).....................................................18

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
   797 F.2d 1222 (3d Cir. 1986) ...........................................................6

*William A. Graham Co. v. Haughey*,
   430 F. Supp. 2d 458 (E.D. Pa. 2006).............................................4, 18

*William A. Graham Co. v. Haughey*,
   568 F.3d 425 (3d Cir. 2009) ..........................................................13

*William A. Graham Co. v. Haughey*,
   646 F.3d 138 (3d Cir. 2011) ......................................................17, 18

*William A. Graham Co. v. Haughey*,
   No. 05-cv-612, 2010 WL 1956679 (E.D. Pa. May 12, 2010), *aff'd*, 646 F.3d
   138 (3d Cir. 2011)...................................................................19

*Williams Elecs., Inc. v. Artic Int'l, Inc.*,
   685 F.2d 870 (3d Cir. 1982) ...........................................................8

# STATUTES

17 U.S.C.

§ 102(b)........................................................................................................7

§ 106............................................................................................................8

§ 201(a).........................................................................................................3

§ 201(b).........................................................................................................5

§ 201(d).........................................................................................................5

§ 204(a).........................................................................................................6

§ 410(c).....................................................................................................2, 4

§ 501............................................................................................................8

§ 502...........................................................................................................21

§ 503(b)........................................................................................................23

§ 504(b)...............................................................................................14, 16, 17

§ 505..........................................................................................................19

§ 507(b)........................................................................................................13

28 U.S.C.

§ 1821.........................................................................................................19

§ 1920.........................................................................................................19

§ 1921.........................................................................................................19

§ 1923.........................................................................................................19

§ 1961.....................................................................................................18, 19

# RULES

D. Del. L.R. 54.1(a)(1)........................................................................................19

D. Del. L.R. 54.1(b)(1) .......................................................................................19

D. Del. L.R. 54.1(b)(4) .......................................................................................20

# TREATISES

3 Nimmer on Copyright § 13.08 (1981) .....................................................................8

# OTHER AUTHORITIES

Ninth Circuit Manual of Model Civil Jury Instructions (2017) § 17.34..................16

v

## J&J'S STATEMENT OF ISSUES OF LAW
## THAT REMAIN TO BE LITIGATED

J&J respectfully submits this Statement of Issues of Law that Remain to be Litigated, which is based on its copyright infringement claims and current understanding of the defenses of Alcon in the proceedings of this action to date. The citation of authorities is not exhaustive.  J&J reserves the right to rely on additional authorities in support of its claims and defenses and intended proofs.

By including an issue of law in this Statement, J&J does not assume the burdens of proof that govern that issue.  J&J reserves the right to modify or supplement this Statement to the extent necessary to fairly reflect subsequent Court rulings or orders.  By submitting this Statement, J&J does not waive its right to amend or supplement this submission after it considers Alcon's submissions, whether made as part of this Pretrial Order or as otherwise argued in pretrial, trial, or post-trial proceedings.

This submission applies to the copyright claims set for trial in February 2023.  J&J reserves all rights regarding the pending patent claims.  D.I. 205.

## I.    COPYRIGHT INFRINGEMENT

### A.    Issues of Law to be Litigated

1.    Whether J&J has proven by a preponderance of the evidence that it is the owner of valid copyrights in the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

1

2. Whether AMO Development, LLC is entitled to a presumption of ownership in the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual under 17 U.S.C. § 410(c).

3. Whether the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and/or iFS Operator's Manual are entitled to a presumption of originality under 17 U.S.C. § 410(c).

4. Whether Alcon has rebutted the presumption of originality under 17 U.S.C. § 410(c) by proving that the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and/or iFS Operator's Manual are not original.

5. Whether Alcon has rebutted the presumption of ownership under 17 U.S.C. § 410(c) by proving that the copyrights to the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and/or iFS Operator's Manual are not owned by AMO Development LLC.

6. Whether J&J has proven by a preponderance of the evidence that Alcon has directly infringed copyrights in the iFS Computer Program owned by J&J.

7. Whether J&J has proven by a preponderance of the evidence that Alcon has directly infringed the copyrights in the iFS FDA Submissions and Technical Documentation owned by J&J.

2

8.      Whether J&J has proven by a preponderance of the evidence that Alcon has directly infringed the copyrights in the iFS Operator's Manual owned by J&J.

9.      Whether J&J has proven by a preponderance of the evidence that Alcon has vicariously infringed the copyrights in the iFS Computer Program owned by J&J.

10.     Whether J&J has proven by a preponderance of the evidence that Alcon has contributorily infringed the copyrights in the iFS Computer Program owned by J&J.

11.     Whether J&J has proven by a preponderance of the evidence that Alcon's infringement of the iFS Computer Program was willful.

12.     Whether J&J has proven by a preponderance of the evidence that Alcon's infringement of the iFS FDA Submissions and Technical Documentation was willful.

13.     Whether J&J has proven by a preponderance of the evidence that Alcon's infringement of the iFS Operator's Manual was willful.

## B.      Legal Authority

### 1.     Ownership

14.     "Copyright in a work protected under this title vests initially in the author or authors of the work."  17 U.S.C. § 201(a).

3

a.    Presumption of Ownership

15.    "[T]he certificate of a registration made before … first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  "A certificate of registration will be considered timely for purposes of the presumption if it states that the work is unpublished or lists a date of publication that is within five years of the date of registration."  *William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458, 467 (E.D. Pa. 2006).

16.    "The evidentiary weight to be accorded the certificate of a registration made [more than five years after first publication of the work] shall be within the discretion of the court."  17 U.S.C. § 410(c).  "Most courts conclude that untimely certificates [of registration] constitute prima facie evidence."  *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2012 WL 6553403, at *3 (S.D. Cal. Dec. 13, 2012); *see also Graphic Design Mktg., Inc. v. Xtreme Enters., Inc.,* 772 F. Supp. 2d 1029, 1033 (E.D. Wis. 2011) ("While [plaintiff] obtained [the certificate] more than five years after first publication, courts typically extend the presumption to later obtained registrations."); *Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531 F. Supp. 3d 1231, 1248 (E.D. Mich. 2021) (holding presumption of originality applies even though registration was not

4

obtained within five years of first publication); *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143-44 (E.D.N.Y. 2011) (same).

17.     "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright. Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668–69 (3d Cir. 1990).

### b.     Works Made for Hire

18.     "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes [of the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Le v. City of Wilmington*, 480 F.Appx. 678, 683 (3d Cir. 2012) (quoting 17 U.S.C. § 201(b)).

19.     "Ownership of a copyright is freely transferrable 'by any means of conveyance or by operation of the law.' 17 U.S.C. § 201(d).  However, a transfer (other than one by operation of law) 'is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by

5

the owner of the rights conveyed or such owner's duly authorized agent.'  17

U.S.C. § 204(a)."  *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 827 (3d Cir.

2011).

### 2.   Originality

20.   "To qualify for copyright protection, a work must be original to the

author.  Original, as the term is used in copyright, means only that the work was

independently created by the author (as opposed to copied from other works), and

that it possesses at least some minimal degree of creativity."  *Feist Publications,*

*Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) (citation omitted); *Mon Cheri*

*Bridals, Inc. v. Wen Wu*, 383 F. Appx. 228, 234 (3d Cir. 2010) (same).

21.   A certificate of registration from the U.S. Copyright Office may be

presumed to establish that a copyright is original, even if it was not obtained within

five years of the work's first publication.  *Golden Star Wholesale, Inc. v. ZB*

*Importing, Inc.*, 531 F. Supp. 3d 1231, 1248 (E.D. Mich. 2021) (holding

presumption of originality applies even though registration was not obtained within

five years of first publication); *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F.

Supp. 2d 127, 143-44 (E.D.N.Y. 2011) (same).

### 3.   Idea/Expression Dichotomy and Merger

22.   "It is axiomatic that copyright does not protect ideas, but only

expressions of ideas."  *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d

1222, 1234 (3d Cir. 1986).  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  "When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'"  *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986).  But "[w]here there are various means of achieving the desired purpose, then the particular means chosen is not necessary to the purpose; hence there is [protectable] expression, not idea."  *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 338 (3d Cir. 2022) (quoting *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983).  When it comes to computer programs, "[I]f other programs can be written . . . which perform the same function . . . then that program is an expression of [an] idea and hence copyrightable.  But if the computer program is the sole way to perform the function, it is an uncopyrightable idea."  *Id.* at 337-38 (internal quotations omitted).  "The unique arrangement of computer program expression . . . does not merge with the process so long as alternate expressions are available."  *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832 (Fed. Cir. 1992).

7

4.    Direct Infringement

23.    Under the Copyright Act, "[a]nyone who violates the exclusive rights of the copyright owner [...] is an infringer of the copyright..."  17 U.S.C. § 501. Those exclusive rights include the rights of reproduction, distribution, and preparation of derivative works based upon the copyrighted work.  17 U.S.C. § 106.  In the context of software, the use of individual protectable commands from one computer program in another computer program infringes the derivative work right.  *Dun & Bradstreet Software v Grace Consulting*, 307 F.3d 197, 212-13 (3rd Cir. 2002).

24.    "In an action for copyright infringement under 17 U.S.C § 501, the plaintiff must show by a preponderance of the evidence that its copyright registrations are valid and that the defendant copied the registered works." *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 440 (D. Del. 2005) (*citing Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002)).  A plaintiff need not prove that the defendant acted with any particular knowledge.  *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982) ("It is settled that innocent intent is generally not a defense to copyright infringement." (citing 3 Nimmer on Copyright § 13.08 (1981)); *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991) (same).

8

5.      Vicarious Infringement

25.     "A plaintiff alleges a claim for vicarious copyright infringement when he alleges the defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Parker v. Google, Inc.*, 242 F.Appx. 833, 837 (3d Cir. 2007) (citation omitted).

6.      Contributory Infringement

26.     "To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 295 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018) (citation omitted). "Actual knowledge is not required; constructive knowledge of infringement is sufficient to meet [the knowledge] burden.  Willful blindness is knowledge of infringement." *Broad. Music Inc. v. Hemingway's Cafe, Inc.*, No. 15-cv-6806, 2017 WL 2804951, at *4 (D.N.J. June 28, 2017) (citations omitted).

7.      Willful Infringement

27.     "Copyright infringement is willful when the defendant actually knew it was infringing the plaintiff's copyrights or recklessly disregarded that possibility." *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005) (citations omitted).

9

## II.   MONETARY RELIEF

### A.   Issues of Law to be Litigated

28.   Whether Alcon has proven by a preponderance of the evidence that J&J had sufficient information of possible wrongdoing to place it on inquiry notice of all acts of copyright infringement of the iFS FDA Submissions and iFS Operator's Manual occurring before September 28, 2017.

29.   If Alcon establishes such inquiry notice, whether J&J exercised reasonable due diligence and was yet unable to discover all acts of copyright infringement of the iFS FDA Submissions and iFS Operator's Manual occurring before September 28, 2017.

30.   The amount of actual damages to which J&J is entitled for Alcon's infringement of J&J's copyrighted iFS Computer Program, iFS FDA Submissions and iFS Operator's Manual, including the amount of profits J&J would have made from Catalys sales or rentals, sales of Catalys-related products and services, and intraocular lenses ("IOLs"), but for Alcon's infringement, measured either by J&J's lost sales or by the reasonable royalty that should have been paid to J&J.

31.   Whether non-infringing alternatives to the iFS Computer Program may be considered in evaluating J&J's claims for lost profits and a reasonable royalty.

10

32. Whether J&J's claim for disgorgement of Alcon's profits should be decided by the Court rather than the jury.

33. Whether J&J has established a causal relationship between Alcon's infringement and the gross revenue Alcon generated directly or indirectly from the infringement.

34. Whether, in calculating profits to be disgorged, Alcon is permitted to deduct overhead expenses if its infringement is found to be willful.

35. If Alcon is permitted to seek to deduct overhead expenses, whether Alcon has proved with some specificity that any such overhead expenses related to the products at issue.

36. If Alcon is permitted to seek to deduct overhead expenses, whether Alcon has proved that any such overhead deductions increased due to the manufacture and sale of the products at issue.

37. If Alcon is permitted to seek to deduct overhead expenses, whether the overhead expenses that Alcon seeks to deduct are in the same percentage as the sales of the product in question bears to Alcon's total sales.

38. Whether Alcon has proven by a preponderance of the evidence any deductions from gross revenue in determining profits to be disgorged.

39.     Whether, in seeking to deduct any expenses from its gross revenue in determining profits, Alcon has demonstrated a sufficient nexus between each expense claimed and the product in question by a preponderance of the evidence.

40.     Whether Alcon has proven by a preponderance of the evidence that any portion of its profits are attributable to factors other than J&J's copyrighted works, and if so, what amount.

41.     Whether, in seeking to establish any portion of its profits as attributable to factors other than J&J's copyrighted works, Alcon has proven the percentage of the profit that is attributable to factors other than the copyrighted work by a preponderance of the evidence.

42.     Whether Alcon may rely on its belated production of DX-237 or any new testimony related to the profits retained by entities other than the named defendants.

43.     The amount of Alcon's profits attributable to the infringement of J&J's copyrighted iFS Computer Program and iFS FDA Submissions and iFS Operator's Manual, to which J&J is entitled.

44.     Whether J&J has proven by a preponderance of the evidence that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

45.    Whether J&J has proven by a preponderance of the evidence that it is entitled to costs, and the amount.

### B.    Legal Authority

#### 1.    Limitations and Damages Period

46.    "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  However, "[u]nder the discovery rule, a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."  *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (internal quotations and citations omitted).  The defendant bears the burden of showing that plaintiff "should have known of the basis of its claims, which depends on whether [it] had sufficient information of possible wrongdoing to place it on inquiry notice or to excite storm warnings of culpable activity."  *Id.* (internal quotation marks, citation, and alterations omitted).  If the defendant does so, the burden shifts to [the plaintiff] to show that it exercised reasonable due diligence and yet was unable to discover its injuries."  *Id.* (internal quotation marks, citation, and alterations omitted).

#### 2.    Actual Damages Generally

47.    "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the

infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

48.     An actual damages award "looks at the facts from the point of view of the[] copyright owners; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390 (3d Cir. 2016) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001)). The Copyright Act "should be broadly construed to favor victims of infringement," such that uncertainty about the amount of actual damages does not preclude recovery. *Id.* Instead, when faced with such uncertainty, courts "should err on the side of guaranteeing the plaintiff a full recovery." *Id.* (internal quotation marks and citations omitted).

### 3.     Lost Sales

49.     Actual damages "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390 (3d Cir. 2016) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)).

### 4.     Reasonable Royalty

50.     The Copyright Act's "allowance of 'actual damages' [] permit[s] reasonable royalty damages." *TD Bank N.A. v. Hill*, 928 F.3d 259, 282 (3d Cir.

14

2019).  This method "involves calculating the fair market value of the licensing fees 'the owner was entitled to charge for such use.' *On Davis v. The Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001) (explaining that '[i]f a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner ... the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for').  Fair market value is often described as 'the reasonable licensing fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer.' *Id.* at 167."  *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390 (3d Cir. 2016).

51.     "To calculate the fair market value, a court deciding a copyright case may use a tool familiar from patent law, without necessarily following every aspect of patent law's use of that tool. It may hypothesize a negotiation between the parties before the infringement occurred and determine the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Gaylord v. United States*, 777 F.3d 1363, 1367 (Fed. Cir. 2015) (internal quotations and citations omitted).

52.     Courts have "endorsed the use of patent law tools to value licenses in the copyright context… includ[ing] the factors enumerated in *Georgia-Pacific*

15

*Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120-21 (S.D.N.Y.

1970)." *Davidson v. United States*, 138 Fed. Cl. 159, 179 (2018).

53.     "The ability to achieve the same or similar result using an alternative

means may implicate the novelty of an idea and hence is relevant to the final

assessment of damages in a patent suit, the same cannot be said in a copyright

suit." *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 875 (W.D.

Mich. 2008).

> 5.     Disgorgement

54.     "[T]he question of allocating an infringer's profits between the

infringement and other factors … should have been left to the jury." *Andreas v.

Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003) (citation omitted); *see also*

*Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 484 (6th Cir. 2007);

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157,

1175 (9th Cir. 1977); Ninth Circuit Manual of Model Civil Jury Instructions (2017)

§ 17.34.

55.     A copyright holder may seek "the infringers' profits—that is, 'any

profits of the infringer[s] that are attributable to the infringement.'  [17 U.S.C.] §

504(b).  To succeed on such a claim, a plaintiff is first required to prove the

defendants' gross revenues over the course of the relevant time period, and then to

16

establish a causal nexus between the infringement and the profits sought." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011).

56.    Overhead costs may not be deducted if defendant's infringement of plaintiff's copyright was willful.  *Jarvis v. A & M Recs.*, 827 F. Supp. 282, 294 (D.N.J. 1993).

57.    "Once the plaintiff has done its part, the burden shifts to the defense to prove that some of its revenues were 'attributable to factors other than the copyrighted work,' and are therefore not recoverable. 17 U.S.C. § 504(b)." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011).

58.    "Out of [defendant's gross profits], defendants are entitled to deduct expenses, provided that they establish that the expenses relate to the infringing work." *Allen–Myland v. International Business Machines*, 770 F.Supp. 1014 (E.D.Pa. 1991).  "[A defendant] will not satisfy its burden by producing only general financial statements with broad categories of expenses: 'In general it may be said that only those expenses which are proven with some specificity to relate to the infringing work may be deducted in determining the profits attributable to such work.'"  *Id.* at 1024.

59.    Defendants may deduct manufacturing costs and packaging costs, as well as those involved in "manufacture or sale of the infringing article." *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F.Supp. 1347, 1356, 1357 (S.D.N.Y. 1987)

17

(Lumbard, C.J.); *Hamil Am., Inc. v. SGS Studio, Inc.*, No. 95 CIV. 2513 (JSM), 1998 WL 19991, at *2 (S.D.N.Y. Jan. 21, 1998), *aff'd in part, rev'd in part sub nom. Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).

60.     "[T]he 'full absorption' method […] permits defendant to deduct all overhead expenses in the same percentage as the sales of the infringing goods bears to its total sales."  *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303 & n.4 (S.D.N.Y. 2001).

### 6.     Prejudgment and Post-Judgment Interest

61.     "[P]rejudgment interest is available in copyright cases at the District Court's discretion, exercised in light of 'considerations of fairness.'"  *William A. Graham Co. v. Haughey*, 646 F.3d 138, 145–46 (3d Cir. 2011).  The Third Circuit favors "permitting prejudgment interest awards to make a plaintiff whole in copyright cases" because "as between a copyright owner and an infringer, the former has the stronger equitable claim to the time-value of income derived from his creation." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 396–97 (3d Cir. 2016) (citing *Graham*, 646 F.3d at 144–45).

62.     Courts in this district routinely award post-judgment interest in copyright infringement cases, pursuant to 28 U.S.C. § 1961.  *See, e.g.*, *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 609 F. Supp. 1325, 1327 (E.D. Pa. 1985) ("Postjudgment interest is granted as a matter of course pursuant to 28 U.S.C. §

1961."); *William A. Graham Co. v. Haughey*, No. 05-cv-612, 2010 WL 1956679, at *5 (E.D. Pa. May 12, 2010), *aff'd*, 646 F.3d 138 (3d Cir. 2011) ("We will also grant plaintiff's motion for postjudgment interest at the annual rate of 5.24% to be compounded annually."); *Frank Music Corp. v. Emerson's Pub, Inc.*, No. 08-cv-0532, 2009 WL 744964, at *3 (M.D. Pa. Mar. 18, 2009) ("[A]n award of post-judgment interest is mandatory, pursuant to 28 U.S.C. § 1961.").

       7.    <u>Costs</u>

63.    "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."  17 U.S.C. § 505.  "Unless otherwise ordered by the Court, the prevailing party shall be entitled to costs. The party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs. Failure to comply with the time limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs. In the latter case, no bill of costs need be filed."  D. Del. Local Rule 54.1(a)(1).  "Costs shall be taxed in conformity with the provisions of 28 U.S.C. §§ 1920, 1921, and 1923, and such other provisions of law as may be applicable and the remaining paragraphs of subpart (b) of this Rule."  D. Del. L.R. 54.1(b)(1).  "The rates for witness fees, mileage and subsistence are fixed by 28 U.S.C. § 1821. Such fees are taxable even

19

though the witness does not take the stand, provided the witness attends Court. Witness fees and subsistence are taxable only for the reasonable period during which the witness is within the district."  D. Del. L.R. 54.1(b)(4).

## III.   INJUNCTIVE RELIEF

### A.   Issues of Law to be Litigated

64.   Whether J&J has proven by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment sales or installations of systems which infringe J&J's iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

65.   Whether J&J has proven by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment use of systems or sales of patient interfaces which infringe J&J's iFS Computer Program,  iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

66.   Whether J&J has proven by a preponderance of the evidence that it is entitled to judgment that orders Alcon to account for and destroy or dispose of all

20

works in its possession that infringe J&J's iFS Computer Program, FDA

Submissions and Technical Documentation, or iFS Operator's Manual.

## B.    Legal Authority

67.    Under the Copyright Act, "Any court having jurisdiction of a civil

action arising under this title may, subject to the provisions of section 1498 of title

28, grant temporary and final injunctions on such terms as it may deem reasonable

to prevent or restrain infringement of a copyright."  17 U.S.C. § 502.

68.    "[A]fter prevailing on the merits, the party seeking a permanent

injunction must make a sufficient showing that (1) it will suffer irreparable injury,

(2) no remedy available at law could adequately remedy that injury, (3) the balance

of hardships tips in its favor, and (4) an injunction would not disserve the public

interest."  *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (*citing eBay Inc.*

*v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

69.    When "liability for copyright infringement […] has been established

and plaintiff has shown that future violations are likely, the court may issue a

permanent injunction."  *Freddy S.p.A. v. Kalai*, No. 20-cv-628, 2022 WL 1411690,

at *3 (D. Del. Apr. 28, 2022), report and recommendation adopted, No. CV 20-628

(MN), 2022 WL 2915765 (D. Del. July 25, 2022).

70.     Courts "treat the irreparable harm factor the same in both the preliminary and permanent injunction contexts." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013).

71.     "[A] moving party must show that it will suffer irreparable harm that is causally attributable to the challenged infringement." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019).

72.     "[D]irect competition in a marketplace weighs heavily in favor of a finding of irreparable injury." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 374 (D. Del.), *aff'd* 486 F.Appx. 883 (Fed. Cir. 2012) (internal quotations and citation omitted).  Where "the record shows that a loss of market share and customers is a loss that [plaintiff] is not likely to recover," courts have found that "money damages are likely inadequate. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014).

73.     With respect to the balance of hardships, "At least three considerations inform how much credence to give a defendant's claimed hardship: (1) whether the defendant's own financial investment, effort, or expressive contribution eclipses the infringing aspect; (2) how easily the infringing content could be separated from the defendant's product, and (3) the degree to which the defendant reasonably believed his conduct was non-infringing.  All three factors play a role; no matter how much a defendant invests in a product and how deeply

22

intertwined that investment is with the infringing content, a wanton infringer may deserve little sympathy from a court contemplating equitable relief." *TD Bank N.A. v. Hill*, 928 F.3d 259, 283 (3d Cir. 2019) (internal citations omitted).

74.     "As to the public interest, [p]reliminary injunctions are a common judicial response to the ... infringement of an apparently valid copyright. Courts have repeatedly held that copyright and trademark law protects not only individual parties, but the public at large. Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 770 (D.N.J. 2018), *aff'd*, 931 F.3d 215 (3d Cir. 2019) (internal quotations and citations omitted).

75.     Under the Copyright Act, "As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced." 17 U.S.C. § 503(b).

76.     Courts have ordered copyright infringers to destroy infringing copies and phonorecords, including copies of software. *See, e.g., Malibu Media, LLC v.*

*Bayko*, No. 1:18-CV-964, 2019 WL 414917, at *2 (M.D. Pa. Feb. 1, 2019) ("Defendant is further ENJOINED and ordered to destroy all copies of plaintiff's copyrighted works that defendant has downloaded onto any computer hard drive or server without plaintiff's authorization, and shall destroy all copies of the copyrighted works transferred onto any physical medium or device in defendant's possession, custody, or control."); *Virgin Recs. Am., Inc. v. Bagan*, No. 08-cv-4694, 2009 WL 2170153, at *5 (D.N.J. July 21, 2009) (granting plaintiffs' permanent injunction and ordering defendant "to destroy all copies of sound recordings made in violation of Plaintiffs' exclusive rights.").

## IV. ALCON'S AFFIRMATIVE DEFENSES

### A. Issues of Law to be Litigated

77. Whether Alcon has proven by a preponderance of the evidence that J&J's claims are barred, in whole or in part, due to estoppel by acquiescence.

78. Whether Alcon has proven by a preponderance of the evidence that J&J failed to mitigate its damages.

79. Whether Alcon has proven by a preponderance of the evidence that J&J's claims are barred, in whole or in part, by the doctrine of *de minimis* use.

80. Whether Alcon has proven by a preponderance of the evidence that J&J's claims for equitable relief are barred, in whole or in part, by the doctrine of laches.

24

81.    Whether Alcon's purported affirmative defense of laches should be decided by the Court rather than the jury.

**B.    Legal Authority**

### 1.    Estoppel by Acquiescence

82.    Estoppel requires a showing that the defendant relies on the plaintiff's "intentionally misleading representations." *Petrella v. Metro-Goldwyn- Mayer, Inc.*, 572 U.S. 663, 684. "[S]ilence or inaction, in the absence of any duty or relationship between the parties, cannot give rise to an estoppel." *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 716 (S.D.N.Y. 1987). "Silence alone is not sufficient affirmative conduct to give rise to estoppel." *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990).

### 2.    Failure to Mitigate

83.    "[T]he Copyright Act does not contain a requirement that the copyright owner provide notice to an alleged infringer as a prerequisite to filing suit or seeking damages." *Interscope Records v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *15-16 (C.D. Cal. June 28, 2010). "Under some circumstances a 'failure to mitigate' defense may be nothing more than a laches defense if the lack of mitigation is based on an allegation that the patentee should have sued earlier." *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 104 (D. Conn. 2014) (subsequent history omitted).

25

### 3.   De Minimis Copying

84.   "Our circuit and the majority of our sister circuits do not view the *de minimis* doctrine as a defense to infringement, but rather as an answer to the question of whether the infringing work and the copyrighted work are substantially similar so as to make the copying actionable." *Bell v. Wilmott Storage Services, LLC,* 12 F.4th 1065, 1074 (9th Cir. 2021).  Copying is "considered de minimis only if it is so meager and fragmentary that the average audience member would not recognize the appropriation, *i.e.*, the works could not be said to be substantially similar." *Id.*  "A de minimis defense does not apply where the qualitative value of the copying is material." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002).  "[T]he de minimis concept applies to the amount or substantiality of the copying—and not the extent of the defendant's use of the infringing work." *Bell*, 12 F.4th at 1076.  As the Supreme Court has explained, "a taking may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565 (1985) (emphasis in original); *see also id.* at 565 ("As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of this work he did not pirate.'" (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)).

26

4.     Laches

85.     "As to equitable relief, in extraordinary circumstances, laches may bar at the very threshold the particular relief requested by the plaintiff." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667–68 (2014). "[I]ntentional infringement is a dispositive threshold inquiry that bars further consideration of the laches defense." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000).

86.     "McClory has a constitutional right to a jury trial on his copyright infringement claims, (citations omitted), but there is no right to a jury on the equitable defense of laches, *see Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ('A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.')." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). "Laches is an equitable defense, and so must be decided by the Court." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, No. CV 18-5194, 2022 WL 2703618, at *16 (E.D. Pa. July 12, 2022) (*citing Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 217 (3d Cir. 2021)) (trademark). "The application of the defense of laches is committed to the sound discretion of the district court." *Izumi Prod. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 611 (D. Del. 2004), *aff'd*, 140 F.Appx. 236 (Fed. Cir. 2005) (patent).

27

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

Defendants.

C.A. No. 20-842-CFC-JLH

ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,

Counterclaim-Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

Counterclaim-
Defendants.

## EXHIBIT 5

## ALCON'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

OF COUNSEL:
Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

# TABLE OF CONTENTS

**I.    COPYRIGHT INFRINGEMENT** ....................................................................2

    A.    Issues of Law to Be Litigated.................................................................2

    B.    Legal Authority .......................................................................................5

        1.    Unprotectable Expression and Merger .......................................5

        2.    Ownership ....................................................................................6

        3.    Originality ...................................................................................8

        4.    Direct Infringement.....................................................................9

        5.    Vicarious Infringement .............................................................11

        6.    Contributory Infringement ........................................................11

        7.    Willful Infringement .................................................................11

**II.   AFFIRMATIVE DEFENSES**.........................................................................12

    A.    Issues of Law to Be Litigated...............................................................12

    B.    Legal Authority .....................................................................................12

**III.  MONETARY RELIEF**.....................................................................................14

    A.    Issues of Law to Be Litigated...............................................................14

    B.    Legal Authority .....................................................................................17

        1.    Limitations and Damages Period...............................................17

        2.    Actual Damages Generally ........................................................18

        3.    Failure to Mitigate....................................................................19

        4.    Lost Profits................................................................................19

        5.    Reasonable Royalty...................................................................22

6.   Disgorgement ...................................................................23

7.   Prejudgment and Post-Judgment Interest ................................30

8.   Costs and Fees...................................................................30

IV.   **INJUNCTIVE RELIEF** ..............................................................**31**

A.   Issues of Law to Be Litigated...............................................31

B.   Legal Authority ................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Sagan*,
  2018 WL 1746564 (S.D.N.Y. Apr. 9, 2018) ........................................................20

*Adtile Techs. Inc. v. Perion Network Ltd.*,
  2016 WL 3457152 (D. Del. June 23, 2016) ...........................................................7

*Affiliated Recs. Inc. v. Taylor*,
  2012 WL 1675589 (S.D.N.Y. May 14, 2012) .....................................................12

*Allen–Myland, Inc. v. Int'l Bus. Machs.*,
  770 F. Supp. 1014 (E.D. Pa. 1991) ......................................................................23

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
  2022 WL 3021560 (D. Del. July 29, 2022) ..........................................................28

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  735 F.3d 1352 (Fed. Cir. 2013) ....................................................................31, 33

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ................................................................................11

*Assessment Techs. Inst., LLC v. Parkes*,
  2022 WL 588889 (D. Kan. Feb. 25, 2022) ..........................................................23

*Bell v. Taylor*,
  827 F.3d 699 (7th Cir. 2016) ...............................................................................17

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) .........................................................................................32

*Brownstein v. Lindsay*,
  742 F.3d 55 (3d Cir. 2014) ....................................................................................7

*Cadence Design Sys., Inc. v. Syntronic AB*,
  2022 WL 1320629 (N.D. Cal. May 3, 2022) ........................................................24

iii

*Chestnut Hill Sound, Inc. v. Apple Inc.*,
   2015 WL 6870037 (D. Del. Nov. 6, 2015)..........................................................32

*Conceptus, Inc. v. Hologic, Inc.*,
   2012 WL 44064 (N.D. Cal. Jan. 9, 2012)............................................................33

*ConsulNet Computing, Inc. v. Moore*,
   631 F. Supp. 2d 614 (E.D. Pa. 2008)............................................................27, 28

*Cordis Corp. v. Bos. Sci. Corp.*,
   99 F. App'x 928 (Fed. Cir. 2004) .......................................................................33

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   679 F. Supp. 2d 512 (D. Del. 2010).............................................................24, 25

*Dash v. Mayweather*,
   731 F.3d 303 (4th Cir. 2013) ..............................................................................26

*Davidson v. United States*,
   138 Fed. Cl. 159 (2018) .....................................................................................22

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013) ...............................................................................23

*Edwin L. Wiegand Co. v. Harold E. Trent Co.*,
   122 F.2d 920 (3d Cir. 1941) ...............................................................................12

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
   82 F.3d 1568 (Fed. Cir. 1996) ............................................................................32

*F. W. Woolworth Co. v. Contemp. Arts*,
   193 F.2d 162 (1st Cir. 1951)..........................................................................22, 23

*Fair Isaac Corp. v. Fed. Ins. Co.*,
   408 F. Supp. 3d 1019 (D. Minn. 2019)...............................................................23

*Fair Isaac Corp. v. Fed. Ins. Co.*,
   447 F. Supp. 3d 857 (D. Minn. 2020)..................................................................22

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)..........................................................................................8, 9

iv

*Fritz v. Arthur D. Little, Inc.*,
   944 F. Supp. 95 (D. Mass. 1996)..........................................................................32

*In re Gabapentin Pat. Litig.*,
   2011 WL 12516763 (D.N.J. Apr. 8, 2011).........................................................19

*Gaylord v. United States*,
   777 F.3d 1363 (Fed. Cir. 2015) .........................................................................22

*GC2 Inc. v. Int'l Game Tech.*,
   2018 WL 5921315 (N.D. Ill. Nov. 12, 2018) ....................................................25

*Genentech, Inc. v. Amgen Inc.*,
   2019 WL 3290167 (D. Del. July 18, 2019) .......................................................32

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................21

*Grain Processing. v. Am. Maize-Prod.*,
   185 F.3d 1341 (Fed. Cir. 1999) .........................................................................18

*Hamil Am., Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) ................................................................................28

*HyperQuest, Inc. v. N'Site Sols., Inc.*,
   632 F.3d 377 (7th Cir. 2011) .............................................................................20

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
   2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) ..............................................18, 21

*Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co., Inc.*,
   708 F. Supp. 1423 (D. Del. 1989).......................................................................25

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
   2021 WL 3662842 (D. Del. Aug. 18, 2021)........................................................20

*John Wiley & Sons, Inc. v. DRK Photo*,
   882 F.3d 394 (2d Cir. 2018) ..............................................................................21

*Kars 4 Kids Inc. v. Am. Can!*,
   8 F.4th 209 (3d Cir. 2021) .................................................................................24

*Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*,
    79 F. Supp. 2d 474 (D.N.J. 1999) ........................................................................24

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
    2011 WL 13137061 (D. Del. Dec. 2, 2011) .........................................................32

*Liu v. Sec. & Exch. Comm'n*,
    140 S. Ct. 1936 (2020) .........................................................................................23

*Logicom Inclusive v. W.P. Stewart & Co.*,
    2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) .......................................................6

*Lowry Reps., Inc. v. Legg Mason, Inc.*,
    271 F. Supp. 2d 737 (D. Md. 2003) .....................................................................26

*Mackie v. Rieser*,
    296 F.3d 909 (9th Cir. 2003) ...............................................................................26

*MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*,
    952 F.2d 769 (3d Cir. 1991) ..................................................................................7

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ...........................................................................19

*Microchip Tech. Inc. v. Aptiv Servs. US LLC.*,
    2020 WL 5203600 (D. Del. Sept. 1, 2020) ..........................................................19

*Mitel, Inc. v. Iqtel, Inc.*,
    124 F.3d 1366 (10th Cir. 1997) ...........................................................................10

*MLMC, Ltd. v. Airtouch Commun., Inc.*,
    2001 WL 1414269 (D. Del. Nov. 1, 2001) ..........................................................25

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991) .............................................................................32

*Oracle Am., Inc. v. Google, Inc.*,
    2016 WL 1743154 (N.D. Cal. May 2, 2016) ........................................................18

*Oracle USA, Inc. v. Rimini St., Inc.*,
    2015 WL 5176582 (D. Nev. Sept. 3, 2015) .....................................................21, 22

*Pak's Trading Eur. B.V. v. Target*,
  2018 WL 8333362 (C.D. Cal. July 5, 2018).......................................................20

*PAR Microsystems v. Pinnacle Dev. Corp.*,
  995 F. Supp. 658 (N.D. Tex. 1998) ...................................................................19

*Parker v. Google, Inc.*,
  242 F. App'x 833 (3d Cir. 2007) ..............................................................9, 10, 11

*Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*,
  2009 WL 4250061 (D.N.J. Nov. 25, 2009) ................................................11, 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)...................................................................................16, 23

*Polar Bear Prods. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ............................................................................26

*Prusky v. ReliaStar Life Ins. Co.*,
  532 F.3d 252 (3d Cir. 2008) ..............................................................................18

*Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*,
  38 F. 4th 331 (3d Cir. 2022) ...........................................................................5, 6

*R&B, Inc. v. Needa Parts Mfg., Inc.*,
  418 F. Supp. 2d 684 (E.D. Pa. 2005).................................................................13

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
  401 F.3d 123 (3d Cir. 2005) ..............................................................................24

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  106 F.2d 45 (2d Cir. 1939) ................................................................................28

*Sohm v. Scholastic Inc.*,
  959 F.3d 39 (2d Cir. 2020) ................................................................................16

*Stephens v. Clash*,
  796 F.3d 281 (3d Cir. 2015) ..............................................................................17

*Tanksley v. Daniels*,
  259 F. Supp. 3d 271 (E.D. Pa. 2017)..................................................................11

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ............................................................................3, 9

*Taylor v. Meirick*,
  712 F.2d 1112 (7th Cir. 1983) ............................................................................28

*TD Bank, N.A. v. Hill*,
  2015 WL 4523570 (D.N.J. July 27, 2015) ..........................................................27

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019) ........................................................................*passim*

*Tolliver v. McCants*,
  684 F. Supp. 2d 343 (S.D.N.Y. 2010) ...............................................................12

*Van Den Heuvel v. AI Credit Corp.*,
  951 F. Supp. 2d 1064 (E.D. Wis. 2013) .............................................................25

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
  763 F.3d 273 (3d Cir. 2014) ...............................................................................17

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
  388 F. Supp. 2d 435 (D. Del. 2005)....................................................................11

*William A. Graham Co. v. Haughey*,
  568 F.3d 425 (3d Cir. 2009) ...........................................................16, 17, 26, 27

*William A. Graham Co. v. Haughey*,
  646 F.3d 138 (3d Cir. 2011) .........................................................................22, 29

*Williams v. Warner/Chappell Music*,
  2007 WL 9751921 (C.D. Cal. Sept. 26, 2007) .....................................................6

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
  2022 WL 3592449 (W.D. Tex. Aug. 22, 2022)....................................................11

*ZZ Top v. Chrysler Corp.*,
  70 F. Supp. 2d 1167 (W.D. Wash. 1999) ............................................................28

**Statutes**

17 U.S.C. §101 .......................................................................................................8

17 U.S.C. §103(b) ...................................................................................................8

17 U.S.C. §201(a) ..............................................................................................6

17 U.S.C. §410(c) ...........................................................................................3, 6

17 U.S.C. §502 ................................................................................................31

17 U.S.C. §504(b) .......................................................................................*passim*

17 U.S.C. §505 ................................................................................................29

17 U.S.C. §507(b) ............................................................................................15

28 U.S.C. §1920 ..............................................................................................30

28 U.S.C. §1921 ..............................................................................................30

28 U.S.C. §1923 ..............................................................................................30

28 U.S.C. §1961 ..............................................................................................29

**Rules**

Local Rule 16.3 .................................................................................................1

Local Rule 54.1 ...............................................................................................30

**Other Authorities**

Dan B. Dobbs, *Law of Remedies* (3d ed. 2018).......................................................24

*Nimmer on Copyright* §5.03[B][1][b][ii].................................................................8

\* All emphasis added, and citations and marks omitted, unless otherwise indicated.

## ALCON'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Pursuant to Local Rule 16.3(c)(5) and the Court's Scheduling Order (D.I. 61, 226), Defendants Alcon Vision, LLC, Alcon Laboratories, Inc. and Alcon Research, LLC (collectively referred to as "Alcon," except where noted) respectfully submit the following Statement of Issues of Law That Remain to Be Litigated and a citation of representative authorities relied upon. Alcon's Statement is based, in part, on its current understanding of the positions of Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC and AMO Sales and Service, Inc. (collectively referred to as "J&J," except where noted) and the proceedings in this action to date. The works at issue in this case are collectively referred to as the "iFS Computer Program,"[1] the "iFS FDA Submissions,"[2] and the "iFS Operator's Manual."[3]

Alcon reserves the right to amend or supplement this Statement after considering J&J's submissions, including amendments or supplementation in response to submissions or events in pre-trial proceedings, the trial itself, post-trial proceedings, or otherwise.

---

[1] "iFS Computer Program" is defined in ¶ 23 of Alcon's Uncontested Statement of Facts.

[2] "iFS FDA Submissions" is defined in ¶ 29 of Alcon's Uncontested Statement of Facts.

[3] "iFS Operator's Manual" is defined in ¶ 32 of Alcon's Uncontested Statement of Facts.

1

Alcon reserves the right to prove any matters of law not discussed here that are identified in its pleadings, interrogatory responses, and/or expert reports. In addition, the citation of authorities referenced in this Statement is not intended to be exhaustive. Alcon reserves the right to rely on additional authorities in support of its defenses and intended proofs. Alcon also reserves the right to rely upon the legal authorities cited by J&J in its corresponding statement.

By including an issue of law in this Statement, Alcon does not assume the burden of proof with regard to that issue. Alcon reserves the right to modify or supplement this Statement to the extent necessary to fairly reflect subsequent Court rulings or orders.

To the extent this Statement contains issues of fact, they are incorporated by reference into Alcon's Statement of Issues of Fact that Remain to Be Litigated. To the extent Alcon's Statement of Issues of Fact That Remain to Be Litigated contains issues of law, they are hereby incorporated into this Statement.

## I.    COPYRIGHT INFRINGEMENT

### A.    Issues of Law to Be Litigated

1. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual contain protectable expression.

2. Whether AMO Development, LLC is entitled to a presumption of ownership in the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual in 17 U.S.C. §410(c).

3. Whether the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual are entitled to a presumption of originality under 17 U.S.C. §410(c).

4. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that AMO Development, LLC is the owner of valid copyrights in the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

5. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual are original.

6. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G directly infringes copyrights in the iFS Computer Program.

7. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G directly infringes copyrights in the iFS Computer Program.

3

8.  Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS Computer Program has been willful.[4]

9.  Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon directly infringed the copyrights in the iFS FDA Submissions.

10. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS FDA Submissions was willful.

11. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon directly infringed the copyrights in the iFS Operator's Manual.

12. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS Operator's Manual was willful.

---

[4] Alcon asserts that willfulness is not relevant to any disputed issue in this case, but it includes conditional statements and authority in the event the Court decides otherwise.

4

13. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G vicariously infringed the copyrights in the iFS Computer Program.

14. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G vicariously infringed the copyrights in the iFS Computer Program.

15. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G contributorily infringed the copyrights in the iFS Computer Program.

16. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G contributorily infringed the copyrights in the iFS Computer Program.

## B.    Legal Authority

### 1.    Unprotectable Expression and Merger

17. Only the particular expression of an idea can be copyrighted and protected. When an idea can be expressed in only a limited number of ways, the idea and expression have merged and, thus, are unprotectable. *See Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F. 4th 331, 339 n.7 (3d Cir. 2022) ("Under merger, when the idea and the expression of the idea coincide, then the expression

will not be protected in order to prevent creation of a monopoly on the underlying 'art.'").

### 2. **Ownership**

18. "Copyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. §201(a).

### a. Rebuttable Presumption of Ownership

19. A copyright registration entitles its owner to a presumption of ownership and validity when the copyright is registered within five years of publication. 17 U.S.C. §410(c). However, if a copyright is registered more than five years after publication, the plaintiff bears the burden to prove both that the alleged copyrights are valid and that it owns them. *Pyrotechnics Mgmt. v. XFX Pyrotechnics*, 38 F.4th 331, 335 & n.3 (3d Cir. 2022).

20. When a work is unpublished, the §410(c) presumption of ownership does not apply. *See, e.g.*, *Williams v. Warner/Chappell Music*, 2007 WL 9751921, at *4 (C.D. Cal. Sept. 26, 2007) ("Plaintiff appears to admit that he has not published the work, which would make the presumption inapplicable under §410(c)."); *Logicom Inclusive v. W.P. Stewart & Co.*, 2004 WL 1781009, at *6 (S.D.N.Y. Aug. 10, 2004) (nothing in the Copyright Act "speaks to what kind of evidentiary weight should be afforded . . . to unpublished works").

6

21. The presumption of validity and originality conferred by a certificate of registration is "rebuttable," and a "defendant may rebut the prima facie effect of a copyright registration by producing evidence that the copyrighted work was itself copied from another work, thus challenging the originality of plaintiff's work." *Adtile Techs. Inc. v. Perion Network Ltd.*, 2016 WL 3457152, at *4 (D. Del. June 23, 2016). Therefore, even when the presumption of validity applies, "[u]pon proof by a defendant that a plaintiff had access to similar prior works, the burden of proving originality shifts back." *Id.*

22. Once the defendant satisfies its burden of production (discussed in the prior paragraph), the burden shifts back to the plaintiff. The burden of persuasion is always on the plaintiff. *See Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018) ("*Tanksley I*").

b.      Works Made for Hire

23. "Under the work made for hire doctrine, a copyright belongs to the party who employs the work's creator while it is being created." *MacLean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 775 (3d Cir. 1991); *see Brownstein v. Lindsay*, 742 F.3d 55, 65 (3d Cir. 2014) ("work for hire" depends on whether work "create[d] . . . as part of [the] employment"). In the employer-employee context, a work is considered a "work made for hire" if it is "a work prepared by an employee within the scope of his or her employment." 17 U.S.C.

7

§101; *see TD Bank N.A. v. Hill*, 928 F.3d 259, 273 (3d Cir. 2019) ("*TD Bank I*") ("[A]n agreement ... whereby works prepared by the employee that are not prepared within the scope of employment are nevertheless deemed to be 'works made for hire' will not in itself convert such works into the 'for hire' category." (quoting 1 *Nimmer on Copyright* §5.03[B][1][b][ii])).

24. Outside the employer-employee context, a work is considered a "work made for hire" only if it is a "work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas." 17 U.S.C. §101 (definition of "work made for hire").  Furthermore, "the parties" must "expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.*

### 3.   **Originality**

25. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  A plaintiff "who accuses another of infringement" bears the burden "to prove the existence of those facts of

8

originality, of intellectual production, of thought, and conception." *Id.* at 346–47.

26. Although a work may include elements from other works, copyright protection does not extend to such elements. 17 U.S.C. §103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.").

### 4.   **Direct Infringement**

27. To prove direct infringement, the plaintiff bears the burden of proving "ownership of a valid copyright" and unauthorized "copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361; *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007). The plaintiff must also prove "volitional conduct on the part of the defendant." *Parker*, 242 F. App'x at 836.

28. "In order to prove copyright infringement, a plaintiff must establish that his copyrighted work and the infringing work are substantially similar." *Tanksley I*, 902 F.3d at 171 . "[W]hen assessing material appropriation, i.e., substantial similarity, only similarities in protectable expression may be considered." *Id.* at 173. "If copying is proven (or conceded), the defendant is only liable for infringement if his work is substantially similar to the protected elements of the copyrighted work. In its basic formulation, substantial similarity asks whether a

9

lay-observer would believe that the copying was of protectible aspects of the copyrighted work ….  To answer this question, the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." *Id.* at 174.

29. Though the copying of protectable commands may constitute infringement, command codes may not be protectable where "much of the expression in [the] command codes [is] dictated by the proclivities of technicians and limited by significant hardware, compatibility, and industry requirements." *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997).  Even if values used in the command codes "constitute non-arbitrary original expression, they are unprotectable" if they are "dictated by external functionality and compatibility requirements of the computer and telecommunications industries." *Id.* at 1376. The plaintiff must prove substantial similarity, as with any infringement claim. *See id.* at 1371 (noting that the court should, after separating protectable and unprotectable elements, "compare the remaining protectable elements with the allegedly infringing [work] to determine whether the defendants have misappropriated substantial elements of the plaintiff's [work] (citation omitted)").

10

### 5.    Vicarious Infringement

30. To prove vicarious infringement, a plaintiff must prove that "the defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Parker*, 242 F. App'x at 837.

### 6.    Contributory Infringement

31. To prove contributory infringement, a plaintiff must prove "(1) direct copyright infringement of a third-party; (2) knowledge," or constructive knowledge, "by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement," *Parker*, 242 F. App'x at 837, or "induce[ment] [of] the infringement," *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 294 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018) ("*Tanksley II*"); *see Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

### 7.    Willful Infringement

32. "Copyright infringement is willful when the defendant 'actually knew it was infringing the plaintiff's copyrights or recklessly disregarded that possibility.'" *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005).

33. For purposes of an intent or knowledge finding, the knowledge of individual employees of one entity cannot automatically be attributed to related corporate entities. *See Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, 2022 WL 3592449, at *3 (W.D. Tex. Aug. 22, 2022) (holding that "relationship between [defendant] and

11

its affiliates" was insufficient to support "plausible claim that [affiliates']

knowledge should be imputed"); *Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*,

2009 WL 4250061, at *9 (D.N.J. Nov. 25, 2009) ("[T]he knowledge and actions

of a subsidiary company's agents cannot be imputed to the parent company.").

## II.    AFFIRMATIVE DEFENSES

### A.    Issues of Law to Be Litigated

34. Whether J&J's claims based on alleged infringement of the iFS FDA

Submissions and iFS Operator's Manual are barred by the statute of limitations.

35. Whether J&J's claims are barred by the doctrine of acquiescence.

36. Whether J&J's claims are barred by the doctrine of *de minimis* use.

37. Whether J&J's claims for equitable relief are barred by the doctrine of laches.[5]

### B.    Legal Authority

38. For legal authority relevant to the statute of limitations defense, *see infra* ¶¶54–

56.

39. Acquiescence is an equitable defense available in copyright. *See Tolliver v.*

*McCants*, 684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010). In the Third Circuit,

---

[5]  J&J's Statement of Issues of Law states the burden of proof for Alcon's
acquiescence and laches defenses as "a preponderance of the evidence."
However, those defenses are equitable defenses that should be considered by the
Court in a separate proceeding after (and if) liability is established, because the
Court and not the jury should decide J&J's claim for disgorgement of Alcon's
profits.

acquiescence is "consent, whether express or implied … with knowledge of the infringement." *Edwin L. Wiegand Co. v. Harold E. Trent Co.*, 122 F.2d 920, 925 (3d Cir. 1941). Such consent can be established by a plaintiff's delay in bringing a copyright action. *See, e.g., id.* (plaintiff barred from bringing an action for copyright infringement due to three years of acquiescence); *Affiliated Recs. Inc. v. Taylor*, 2012 WL 1675589, at *4 (S.D.N.Y. May 14, 2012) (granting defendant's motion for summary judgment because "evidence establishes that plaintiff acquiesced or implicitly (at least) consented" to copyright infringement).[6]

40. A plaintiff cannot prevail on a copyright infringement claim if the copying was *de minimis*, meaning that it falls below the threshold required for substantial similarity. *See R&B, Inc. v. Needa Parts Mfg., Inc.*, 418 F. Supp. 2d 684, 696 (E.D. Pa. 2005).

41. For legal authority relevant to the laches defense, *see infra* ¶¶73–77.[7]

---

[6] J&J's Statement of Issues of Law characterizes Alcon's acquiescence defense as "estoppel" and argues that it requires "intentionally misleading representations." However, the acquiescence defense asserted by Alcon is distinct from the estoppel defense described by J&J and does not require such representations. *See* Alcon's Opp. to J&J's MIL No. 4 at 2-3.

[7] J&J's Statement of Issues of Law seeks to conflate a failure to mitigate with laches, but the two are distinct. *See* Alcon's Opp. to J&J's MIL No. 4 at 1-2.

13

### III.    MONETARY RELIEF

#### A.    Issues of Law to Be Litigated

42. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it did not discover, and with due diligence could not have discovered, the injury that forms the basis for its copyright infringement claims concerning the iFS FDA Submissions and iFS Operator's Manual before September 28, 2017.

43. Whether Alcon has proved by a preponderance of the evidence that J&J failed to mitigate its damages by taking reasonable actions that would have reduced its damages, and if so, the amount by which J&J's actual damages, if any, should be reduced as a result of its failure to mitigate.

44. Whether J&J is entitled to any actual damages for Alcon's alleged infringement of the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual, and the amount of any such damages, whether measured as any profits AMO Development, LLC would have made but for the alleged infringement or by the reasonable royalty that should have been paid to J&J beginning from the time of Alcon's first alleged infringement.

45. Whether convoyed sales of products other than the allegedly infringing works should be excluded from a calculation of Alcon's profits under 17 U.S.C. § 504(b) because they would have been considered in a hypothetical negotiation.

14

46. Whether J&J's claim for disgorgement of Alcon's profits—an equitable remedy—should be decided by the Court rather than the jury.

47. Whether laches bars J&J's claim for disgorgement of Alcon's profits that are attributable to the alleged infringement.

48. Whether laches bars J&J's claim for an accounting of Alcon's profits.

49. Whether J&J is entitled to recover lost profits from sales of Catalys-related products and services or intraocular lenses ("IOLs"), given that the asserted copyright owner, AMO Development, LLC, never received revenues from sales of IOLs and, prior to December 30, 2019, received no revenue from sales of Catalys.

50. Whether J&J has failed to prove that it is entitled to disgorge Alcon's profits that are attributable to the alleged infringement.

51. Whether J&J has failed to establish that it may disgorge profits from IOL sales retained by entities other than the named defendants.[8]

52. Whether J&J has failed to establish a causal nexus between the alleged infringement and Alcon's revenues from which J&J seeks to disgorge profits.

_____

[8] J&J's Statement of Issues of Law includes an issue relating to the alleged "belated production of DX-237" and "new testimony related to the profits retained by entities other than the named defendants." Those matters involve questions of evidentiary admissibility, not substantive or merits issues, and are not appropriate for inclusion in the Issues of Law.

15

53. Assuming the existence of a causal nexus, the amount of Alcon's profits, if any, attributable to the alleged infringement of the iFS Computer Program, and iFS FDA Submissions, and iFS Operator's Manual.

54. Whether non-infringing alternatives to the iFS Computer Program may be considered in evaluating J&J's claims for lost profits and a reasonable royalty.

55. Whether non-infringing alternatives to the iFS Computer Program were available during the alleged infringement and rebut J&J's claims for lost profits and a reasonable royalty.

56. Whether Alcon's overhead costs may be deducted from revenues attributable to the alleged infringement of the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual even if there is a finding of willful infringement.[9]

57. Whether J&J has failed to carry its burden of proving that it is entitled to an award of prejudgment and post-judgment interest, and the amount of any such interest.

58. Whether either party has proved that it is entitled to costs, and the amount.

59. Whether Alcon has proved that it is entitled to attorney's fees, and the amount.

---

[9]    In J&J's Statement of Issues of Law, it includes multiple specific sub-issues regarding the deductibility of overhead expenses and how they may be proved. That J&J views these questions as issues of law underscores the appropriateness of the Court, not the jury, deciding questions relevant to the equitable remedy of disgorgement.

16

### B.    Legal Authority

#### 1.    Limitations and Damages Period

60. Under Section 507(b) of the Copyright Act, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."   17 U.S.C. §507(b); *see* D.I. 490 at 6.   The statute of limitations thus limits a plaintiff's monetary recovery to "three years back from the date the complaint was filed."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 672 (2014); *see Sohm v. Scholastic Inc.*, 959 F.3d 39, 51 (2d Cir. 2020) (holding that "[t]he Supreme Court explicitly delimited damages to the three years prior to the commencement of a copyright infringement action.").[10]

61. Under the Third Circuit's "discovery rule" for claims brought outside the limitations period, the statute of limitations starts running "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."  *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) ("*Haughey I*"); *see* D.I. 490 at 6.   A plaintiff may not recover for infringement occurring outside the three-year limitations period unless it proves that it "exercised reasonable due diligence and yet was unable to discover its injuries."  *Haughey I*, 568 F.3d at 438; *see* D.I. 490 at 11.   Once the defendant

---

[10]  Recognizing that the Court addressed this authority already, *see* D.I. 490, Alcon includes it here simply to preserve its position regarding *Petrella*'s implications for the statute of limitations, *see* D.I. 356.

shows that the plaintiff "had sufficient information … to place it on inquiry notice or to excite storm warnings of culpable activity," the burden shifts to the plaintiff "to show that it exercised reasonable due diligence" but was "unable to discover its injuries." *Haughey I*, 568 F.3d at 438; *see* D.I. 490 at 11.

62. A "plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015); *see* D.I. 490 at 13.

## 2.    **Actual Damages Generally**

63. "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. §504(b).

64. "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016). In measuring actual damages, it is appropriate to "consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on undue speculation." *Id.*

18

### 3. Failure to Mitigate

65. The plaintiff's damages, if any, "should be limited" by the plaintiff's failure "to take reasonable measures to mitigate its loss."  *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 300–01 (3d Cir. 2014).  "To prove a failure to mitigate," the defendant "must show: (1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced."  *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258–59 (3d Cir. 2008).

66. The plaintiff's delay in asserting its rights can support a finding of failure to mitigate.  *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4366990, at *48 (S.D. Tex. Oct. 27, 2010) (denying summary judgment as to failure to mitigate damages defense to copyright claim because plaintiff "discover[ed] … the allegedly wrongful activity in March 2006 and fail[ed] to do anything for over two years until the initiation of th[e] lawsuit in October 2008.").

### 4. Lost Profits

#### a. Non-Infringing Alternatives

67. In defending against a lost profits claim, a defendant "may offer the evidence of the availability and viability of" non-infringing alternatives to rebut arguments about the defendant's motive to infringe.  *See Oracle Am., Inc. v. Google, Inc.*, 2016 WL 1743154, at *4 (N.D. Cal. May 2, 2016).

19

68. "[A]n available technology not on the market during the infringement can constitute a noninfringing alternative." *Grain Processing. v. Am. Maize-Prod.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999). A non-infringing alternative is available—even where it was not actually implemented—if "[defendant] had the necessary [] materials, the equipment, the know-how and experience, and the economic incentive to produce [it] throughout the entire accounting period." *Id*. at 1354–55.

69. "[T]he availability of … non-infringing alternatives is an issue of fact, and the testimony of the parties' various experts will be considered by the jury." *In re Gabapentin Pat. Litig.*, 2011 WL 12516763 at * 6 (D.N.J. Apr. 8, 2011).

b.      Profits of Infringer Excluded

70. Any profits of the infringer that are found to be subject to disgorgement may not be "taken into account in computing the actual damages." 17 U.S.C. §504(b).

c.      Only Copyright Owner May Recover

71. Only "[t]he copyright *owner* is entitled to recover … actual damages *suffered by him or her as a result of* the infringement." 17 U.S.C. §504(b). Accordingly, damages, including lost profits, related to products other than the allegedly infringed copyrights are not recoverable by the copyright owner. *See PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 995 F. Supp. 658, 662 (N.D. Tex. 1998) (copyright holder could not recover lost profits because "PAR had no

20

product to sell and did not lose any sales due to Pinnacle's infringement"). Similarly, a plaintiff may not recover profits attributable to products that produced revenue only for "[r]elated entities and corporate affiliates." *See Microchip Tech. Inc. v. Aptiv Servs. US LLC.*, 2020 WL 5203600, at \*4 (D. Del. Sept. 1, 2020) (citing *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)) ("Only the patentee can recover lost profits, and only for products that it sells. Related entities and corporate affiliates cannot recover lost profits."); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 2021 WL 3662842, at \*2–3 (D. Del. Aug. 18, 2021) (granting summary judgment of no lost profits because "no evidence of 'inexorable flow'" from parent to subsidiary); *Pak's Trading Eur. B.V. v. Target*, 2018 WL 8333362, at \*7 (C.D. Cal. July 5, 2018) (dismissing copyright claims due to lack of ownership despite allegations of a corporate relationship); *ABKCO Music, Inc. v. Sagan*, 2018 WL 1746564, at \*8 (S.D.N.Y. Apr. 9, 2018) ("Nor does a parent company [have] standing to bring claims on behalf of its subsidiary.").

72. A beneficial owner or licensee may not recover lost profits attributable to infringement unless it holds "enough rights . . . to make it '[t]he legal or beneficial owner of an exclusive right' under the Copyright Act." *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) (non-exclusive licensee "not entitled to complain about any alleged infringement of the copyright"); *see also*

21

*John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 415 (2d Cir. 2018) ("mere interest in a copyright" insufficient, "even if that interest is valuable").

### 5.      **Reasonable Royalty**

73. The Copyright Act's "allowance of 'actual damages' [] permit[s] reasonable royalty damages." *TD Bank I*, 928 F.3d at 282.   This measure involves determining "license fees that the copyright owner would have obtained for the infringer's use of the copyrighted material" based on the "fair market value," or "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Interplan Architects*, 2010 WL 4366990, at *11.

74. A hypothetical negotiation at any given time can be assumed to include subsequent "convoyed sales" of products other than the allegedly infringing work, the sale of which is promoted by the sale of the allegedly infringing work. *See generally Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).   As a result, sales of such products subsequent to when the hypothetical negotiation takes place should not be included in any calculation of the defendant's profits under 17 U.S.C. § 504(b).

75. As with lost profits, courts may consider non-infringing alternatives in valuing a reasonable royalty. *See Oracle USA, Inc. v. Rimini St., Inc.*, 2015 WL 5176582,

22

at *3–4 (D. Nev. Sept. 3, 2015) (non-infringing alternatives relevant to hypothetical license); *Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 871–72 (D. Minn. 2020) (non-infringing alternatives relevant to copyright damages because it "could impact such a hypothetical negotiation").

76. Courts have "endorsed the use of patent law tools to value licenses in the copyright context." *Davidson v. United States*, 138 Fed. Cl. 159, 179 (2018); *see Gaylord v. United States*, 777 F.3d 1363, 1367 (Fed. Cir. 2015).

### 6. **Disgorgement**

#### a. Generally

77. A copyright plaintiff may seek "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." [17 U.S.C.] §504(b); *see F. W. Woolworth Co. v. Contemp. Arts*, 193 F.2d 162, 167–68 (1st Cir. 1951) (discussing how damages and infringer's profits "are … distinct items of recovery and are awarded on quite different principles," damages being "awarded to a copyright proprietor on the conventional legal principle of affording compensation in money," and infringer's profits being "equitable relief incident to a decree of injunction in order to prevent the infringer's unjust enrichment").

78. "To succeed on such a claim, a plaintiff is first required to prove the defendants' gross revenues over the course of the relevant time period, and then to establish

23

a causal nexus between the infringement and the profits sought." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011) ("*Haughey II*").  In determining the amount of profits to disgorge, "expenses attributable to the infringing activity" are "deducted from the gross revenues." *See Allen–Myland, Inc. v. Int'l Bus. Machs.*, 770 F. Supp. 1014, 1024 (E.D. Pa. 1991).

b.      Equitable Remedy

79. Disgorgement of infringer's profits is an equitable remedy.  *See Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) (disgorgement "seek[s] not to compensate for a loss" but to "prevent the wrongdoer from enriching himself by his wrongs."); *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1941 n.1, 1942 (2020); *Petrella*, 572 U.S. at 668 n.1, 686 (describing "disgorgement of unjust gains" as "equitable relief"); *F.W. Woolworth*, 193 F.2d at 167–68 (considering remedy of separating infringer from profits attributable to infringement to be equitable).

80. Given the remedy's equitable nature, the plaintiff's entitlement to disgorgement of infringer's profits under 17 U.S.C. §504(b)—and the amount, if any—are issues for the Court and not the jury to decide.  *See Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1031 (D. Minn. 2019), *aff'd*, 468 F. Supp. 3d 1110 (D. Minn. 2020) (granting motion to strike jury demand as to disgorgement clam because, "[a]s it is disconnected from and in addition to any actual harm FICO

24

has suffered, FICO's request to disgorge Federal's profits is …. a purely equitable remedy in this case"); *Assessment Techs. Inst., LLC v. Parkes*, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022) (granting motion for bench trial where "[d]efendant advance[d] no argument that the disgorgement of profits remedy is being used in this case as a proxy for actual damages").

### c. Laches

81. Laches is an equitable defense to disgorgement. *See* Dan B. Dobbs, *Law of Remedies*, at 76, 78 (3d ed. 2018) (laches bars "recovery of any kind of equitable remedy"); *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 n.10 (3d Cir. 2021) (remanding for analysis of laches in context of disgorgement claim).[11]

82. Laches has two elements: (1) the plaintiff "inexcusabl[y] delay[ed] in bringing suit," and (2) there is "prejudice to the defendant as a result of the delay." *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005).

83. "[D]elays as short as three and six years in bringing copyright infringement actions have been held inexcusable." *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 489 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001); *see*

---

[11] J&J argues in its Statement of Issues of Law that the Court should consider the laches defense. Alcon agrees insofar as the Court and not the jury should consider J&J's claim for disgorgement of Alcon's profits, and laches is a defense to that claim. However, Alcon reserves the right to argue that laches should be considered by the jury in the event the Court submits disgorgement to the jury.

*Cadence Design Sys., Inc. v. Syntronic AB*, 2022 WL 1320629, at \*3 (N.D. Cal. May 3, 2022) (permitting laches defense, in part, because defendant alleged plaintiff "knew about [defendant's] infringing activity in 2014, six years prior to filing suit").

84. "Economic prejudice arises when an infringer suffers the loss of monetary investments or incurs damages that would likely have been prevented by an earlier suit." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 520 (D. Del. 2010); *see MLMC, Ltd. v. Airtouch Commun., Inc.*, 2001 WL 1414269, at \*5 (D. Del. Nov. 1, 2001).

85. "Willful infringement, by itself, is insufficient to preclude application of the laches defense." *Crown*, 679 F. Supp. 2d at 521–22 (collecting cases). As a general rule, only "particularly egregious willful infringement" overcomes laches. *Id.* at 528; *see Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co., Inc.*, 708 F. Supp. 1423, 1439 (D. Del. 1989) (defendant did not "behave[] egregiously" by "continu[ing] to develop, manufacture, and sell various coordinate measuring machines which allegedly infringed the patent, all the while denying infringement").

### d.    Non-Defendant Entities

86. Disgorgement is not available from entities that did not retain profits related to the product for which profits are sought. *See GC2 Inc. v. Int'l Game Tech.*, 2018

26

WL 5921315, at *3 (N.D. Ill. Nov. 12, 2018) ("[E]ach defendant is only liable to the copyright plaintiff to the extent of its own profits derived from the infringing activity . . . . [O]ne defendant is not liable for the profit made by another."); *id.* at *4 (noting that the "statute . . . authorizes recovery of 'any profits *of the infringer* that are attributable to the infringement'"); *see generally Van Den Heuvel v. AI Credit Corp.*, 951 F. Supp. 2d 1064, 1083 (E.D. Wis. 2013) ("Because [defendant entity] did not wrongfully retain any profits, Plaintiffs are not entitled to disgorgement as an equitable remedy.").

### e.   Causal Nexus

87. A copyright owner may disgorge profits only if it proves they have a "causal nexus" to the purported infringement.  *Haughey I*, 568 F.3d at 442.  Proving a causal nexus requires showing the revenues sought are "reasonably related" to the infringement.  *Id.* at 443; *see Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("[A] plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'").

88. "[A] copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie v. Rieser*, 296 F.3d 909, 915–16 (9th Cir. 2002); *see Dash v. Mayweather*, 731 F.3d 303, 330 (4th Cir. 2013)

27

(stating that disgorgement requires copyright owner to "offer nonspeculative evidence that a causal link exists"); *Lowry Reps., Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 752 (D. Md. 2003) (denying disgorgement because it was "utterly implausible that all of [the profits sought] resulted from [copyright] infring[ement]").

### f.   Apportionment

89. "[O]nce the casual nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Haughey I*, 568 F.3d at 442; *see* 17 U.S.C. §504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *TD Bank, N.A. v. Hill*, 2015 WL 4523570, at *22–23 (D.N.J. July 27, 2015) ("*TD Bank II*"), *vacated in part on other grounds*, 928 F.3d 259 (3d Cir. 2019) (plaintiff "must … produce evidence of [defendant's] gross revenue from the sale of the book.  Assuming it can meet its burden, it is then up to [defendant] to argue elements of profit attributable to factors other than the copyrighted work.").

### g.   Deductions

90. "Defendants have the burden of proving any legitimate business expenses, and they must meet that burden by a showing of some specificity."  *ConsulNet*

*Computing, Inc. v. Moore*, 631 F. Supp. 2d 614, 618 (E.D. Pa. 2008); *see* 17

U.S.C. §504(b) ("In establishing the infringer's profits, the copyright owner is

required to present proof only of the infringer's gross revenue, and the infringer

is required to prove his or her deductible expenses and the elements of profit

attributable to factors other than the copyrighted work.").

91. "No Third Circuit case mandates that, in order to be admissible, allegations of

business expense deductions must include any specific documents." *ConsulNet*,

631 F. Supp. 2d at 619; *see Allscripts Healthcare, LLC v. Andor Health, LLC*,

2022 WL 3021560, at *18 (D. Del. July 29, 2022) (noting that damages experts

"regularly and reasonably rely upon a company's internal financial projections to

calculate lost profits because such projections often serve as legitimate bases for

expert opinions.").

92. Overhead costs may be deducted even after a finding of willful copyright

infringement. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 54

(2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940) (allowing deduction of overhead in

case of willful infringements); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 107 (2d Cir.

1999) (rejecting a "blanket prohibition of all overhead deductions" in a case of

willful infringement); *Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir. 1983)

(deduction allowed only for incremental expenses with no discussion of a

distinction between willful and non-willful infringement).   Disallowing

29

deduction of overhead costs the defendant actually incurred would have a punitive effect that the text of the Copyright Act does not contemplate. *See ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D. Wash. 1999) (reasoning that 17 U.S.C. §504(b) "makes no distinction between willful and innocent infringers" and "[t]hus, there is no statutory basis for denying a deduction of overhead costs as a punishment to willful infringers").

### 7.   **Prejudgment and Post-Judgment Interest**

93. Prejudgment interest may be available to a prevailing plaintiff in the appropriate case. *See Haughey II*, 646 F.3d at 145–46 ("[P]rejudgment interest is available in copyright cases at the District Court's discretion, exercised in light of 'considerations of fairness.'").

94. Under 28 U.S.C. §1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.").

### 8.   **Costs and Fees**

95. "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. §505.

30

96. Under the rules of this District, "[u]nless otherwise ordered by the Court, the prevailing party shall be entitled to costs. The party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs. Failure to comply with the time limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs. In the latter case, no bill of costs need be filed." D. Del. Local Rule 54.1(a)(1). "Costs shall be taxed in conformity with the provisions of 28 U.S.C. §§1920, 1921, and 1923, and such other provisions of law as may be applicable and the remaining paragraphs of subpart (b) of this Rule." D. Del. L.R. 54.1(b)(1).

## IV.   INJUNCTIVE RELIEF

### A.    Issues of Law to Be Litigated

97. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment sales or installations of systems that allegedly infringe the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

98. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Alcon and

31

its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment use of systems or sales of patient interfaces that allegedly infringe the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

99. Whether J&J has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to judgment that orders Alcon to destroy or dispose of all copies of the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

### B.    Legal Authority

100. Under the Copyright Act, "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a).

101. A plaintiff "seeking a permanent injunction must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank I*, 928 F.3d at 278.

102. Courts "treat the irreparable harm factor the same in both the preliminary and permanent injunction contexts." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013).

103. "[A] moving party must show that it will suffer irreparable harm that is causally attributable to the challenged infringement." *TD Bank I*, 928 F.3d at 280.

104. "[U]ndue delay" in seeking relief "negates the idea of irreparability" for an injunction. *Genentech, Inc. v. Amgen Inc.*, 2019 WL 3290167, *2 (D. Del. July 18, 2019); *see Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (finding that "unnecessary, years-long delay" weighs against injunctive relief); *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 98 (D. Mass. 1996) ("unexplained delay of more than two years in commencing … action" rebutted plaintiff's claim of irreparable harm).

105. If the plaintiff's alleged harm can be remedied through monetary relief, both the first and second factors weigh in favor of the defendant. *See, e.g., Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578–79 (Fed. Cir. 1996) (no irreparable harm where damages would be adequate); *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 13137061, *19 (D. Del. Dec. 2, 2011) (alleged loss of future business contracts compensable). The fact that calculating damages is "often a complex task" does not establish irreparable harm. *Chestnut Hill Sound, Inc. v.*

*Apple Inc.*, 2015 WL 6870037, *5 (D. Del. Nov. 6, 2015); *see, e.g.*, *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("difficulty of calculating losses" does not justify injunctive relief).

106.  Courts consider "[a]t least three considerations" when evaluating the balance of equities or hardships: "(1) whether the defendant's own financial investment, effort, or expressive contribution eclipses the infringing aspect; (2) how easily the infringing content could be separated from the defendant's product, and (3) the degree to which the defendant reasonably believed his conduct was non-infringing." *TD Bank I*, 928 F.3d at 283.  A failure to show irreparable harm cuts against the plaintiff's equities.  *See id.* at 284 (balance of equities "favor[ed] neither party" where plaintiff "ha[d] not submitted any evidence of actual harm, much less irreparable harm").

107.  In weighing the public interest factor, it is appropriate for courts to "consider the scope of [the] requested injunction relative to the scope of the patented features and the prospect that an injunction would have the effect of depriving the public of access to a large number of non-infringing features." *Apple*, 735 F.3d at 1372–73.  For example, an injunction may "disserve the public interest" if the enjoined product "contain[s] a far greater number of non-infringing features to which consumers would no longer have access" than "infringing features." *Id.* at 1373; *see id.* at 1372 (holding that "the public's interest in enforcing patent

rights must also be weighed with other aspects of the public interest"); *Cordis Corp. v. Bos. Sci. Corp.*, 99 F. App'x 928, 935 (Fed. Cir. 2004) (strong public interest in broad choice of medical devices); *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, *3–4 (N.D. Cal. Jan. 9, 2012) (having medical devices with different qualities on market "militates strongly against" injunction).

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
and AMO SALES AND SERVICE,
INC.,

        Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

C.A. No. 20-842 (CFC)

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim Defendants.

**EXHIBIT 6**

**J&J'S STATEMENT OF INTENDED PROOF**

## TABLE OF CONTENTS

I.      COPYRIGHT INFRINGEMENT ...................................................2

    A.      Ownership of iFS Computer Program, iFS FDA Submissions
        and Technical Documentation, and iFS Operator's Manual.................2
    B.      Originality of iFS Computer Program, iFS FDA Submissions
        and Technical Documentation, and iFS Operator's Manual.................2
    C.      Direct Infringement of iFS Computer Program .....................................2
    D.      Direct Infringement of iFS FDA Submissions and Technical
        Documentation ...................................................................................2
    E.      Direct Infringement of iFS Operator's Manual.....................................3
    F.      Vicarious Infringement of the iFS Computer Program.........................3
    G.      Contributory Infringement of the iFS Computer Program....................3

II.     MONETARY RELIEF .................................................................3

III.    INJUNCTIVE RELIEF ...............................................................4

i

## J&J'S STATEMENT OF INTENDED PROOF

J&J respectfully submits this Statement of Intended Proof, which is based on J&J's claims and J&J's current understanding of Alcon's defenses and the proceedings in this action to date. Further details regarding these intended proofs have been explained at length in J&J's pleadings and during discovery, including in its contentions, interrogatory responses, and expert reports, all of which J&J incorporates by reference.

J&J reserves the right to supplement and amend this list, for example, to respond to any issues, argument, or evidence raised by Alcon, or in the event of any Court ruling that might raise new or additional issues.

As stated in Paragraph 31 of the parties Joint Pretrial Order, J&J is setting forth its expected proof on the claims, defenses, or elements on which J&J bears the burden. For the sake of completeness, J&J has nonetheless included some issues and facts herein on which it does not bear the burden. With respect to those issues and facts, J&J does not concede the applicable burden of proof or assume the burden of proof or production.

This proof may encompass disputed issues of fact and law identified in **Exhibits 2** and **4**, which are incorporated by reference herein.

This submission applies to the copyright claims set for trial in February 2023. J&J reserves all rights regarding the pending patent claims. D.I. 205.

1

## I.    COPYRIGHT INFRINGEMENT

### A.    Ownership of iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual

1.    J&J intends to show that it is the owner of valid copyrights in the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

### B.    Originality of iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual

2.    J&J intends to show that the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual show originality.

### C.    Direct Infringement of iFS Computer Program

3.    J&J intends to show that Alcon directly infringed, and continues to directly infringe, the copyrights in the iFS Computer Program.

4.    J&J intends to show that Alcon willfully infringed the copyrights in the iFS Computer Program.

### D.    Direct Infringement of iFS FDA Submissions and Technical Documentation

5.    J&J intends to show that Alcon directly infringed, and continues to directly infringe, the copyrights in the iFS FDA Submissions and Technical Documentation.

6.      J&J intends to show that Alcon willfully infringed the copyrights in the iFS FDA Submissions and Technical Documentation.

### E.      Direct Infringement of iFS Operator's Manual

7.      J&J intends to show that Alcon directly infringed, and continues to directly infringe, the copyrights in the iFS Operator's Manual.

8.      J&J intends to show that Alcon willfully infringed the copyrights in the iFS Operator's Manual.

### F.      Vicarious Infringement of the iFS Computer Program

9.      J&J intends to show that Alcon vicariously infringed, and continues to vicariously infringe, the copyrights in the iFS Computer Program.

### G.      Contributory Infringement of the iFS Computer Program

10.      J&J intends to show that Alcon contributorily infringed, and continues to vicariously infringe, the copyrights in the iFS Computer Program.

## II.      MONETARY RELIEF

11.      If Alcon establishes that J&J had sufficient information of possible wrongdoing to place it on inquiry notice, J&J intends to show that it exercised due diligence and was yet unable to discover all acts of copyright infringement of the iFS FDA Submissions and Technical Documentation and iFS Operator's Manual occurring before September 28, 2017.

12.      J&J intends to show the amount of actual damages to which it is entitled for Alcon's infringement of the copyrights in the iFS Computer Program,

3

iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual, including the amount of profits J&J would have made from Catalys sales or rentals, sales of Catalys-related products and services, and intraocular lenses ("IOLs"), measured either by J&J's lost sales or by a hypothetical license fee.

13.     J&J intends to show the amount of gross revenue Alcon generated directly or indirectly from the infringement.

14.     J&J intends to show that it has established a causal relationship between Alcon's infringement and the gross revenue Alcon generated directly or indirectly from the infringement.

15.     J&J intends to show that it is entitled to an accounting of actual damages and Alcon's profits for post-verdict infringement absent an injunction, and the amount of such damages.

16.     J&J intends to show that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

17.     J&J intends to show that it is entitled to an award of costs, and the amount.

## III.   INJUNCTIVE RELIEF

18.     J&J intends to show that it is entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from further

4

infringement of the copyrights in the iFS Computer Program, iFS FDA Submissions and Technical Documentation, and iFS Operator's Manual.

19.     J&J intends to show that, as part of the final judgment or decree, it is entitled to an order that requires Alcon to stop use of the infringing LenSx machines and additional patient interfaces.

20.     J&J intends to show that, as part of the final judgment or decree, it is entitled to an order that requires the destruction or other reasonable disposition of all infringing materials currently in Alcon's possession.

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

            Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

            Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

            Counterclaim-Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

            Counterclaim-
            Defendants.

C.A. No. 20-842-CFC-JLH

## EXHIBIT 7

## ALCON'S STATEMENT OF INTENDED PROOF

OF COUNSEL:
Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

## ALCON'S STATEMENT OF INTENDED PROOF

Pursuant to Local Rule 16.3(c)(9) and the Court's Scheduling Order (D.I. 61, 226), Defendants Alcon Vision, LLC, Alcon Laboratories, Inc. and Alcon Research, LLC (collectively referred to as "Alcon," except where noted) respectfully submit the following Statement of Intended Proof.  Alcon's Statement is based, in part, on its current understanding of the positions of Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC and AMO Sales and Service, Inc. (collectively referred to as "J&J," except where noted) and the proceedings in this action to date. The works at issue in this case are collectively referred to herein as the "iFS Computer Program,"[1] the "iFS FDA Submissions,"[2] and the "iFS Operator's Manual."[3]

Alcon reserves the right to amend or supplement this Statement after considering J&J's submissions, including amendments or supplementation in response to submissions or events in pre-trial proceedings, the trial itself, post-trial proceedings, or otherwise.  Alcon reserves the right to prove any matters not

---

[1]  "iFS Computer Program" is defined in ¶ 23 of Alcon's Uncontested Statement of Facts.

[2]  "iFS FDA Submissions" is defined in ¶ 29 of Alcon's Uncontested Statement of Facts.

[3]  "iFS Operator's Manual" is defined in ¶ 32 of Alcon's Uncontested Statement of Facts.

discussed here that are identified in its pleadings, interrogatory responses, and/or expert reports. Alcon reserves the right to modify or supplement this Statement to the extent necessary to fairly reflect subsequent Court rulings or orders.

To the extent Alcon asserts that J&J has failed to meet its burden of proof on any issue, such statement does not constitute an admission that Alcon has any obligation to prove or disprove any element or any part of any claim or defense on which J&J bears the burden of proof or production. Alcon does not assume the burden of proof or production as to any matter set forth below unless required to do so by law.

This proof may encompass disputed issues of fact and law identified in Exhibits 3 and 5 to the joint Pretrial Order, Alcon's Statement of Contested Facts to Be Litigated at Trial and Statement of Issues of Law That Remain to Be Litigated, which are incorporated by reference herein. In addition to the below Statement, Alcon incorporates by reference its experts' reports regarding those matters to be proved by or in part by expert testimony

## I. COPYRIGHT INFRINGEMENT

### A. Unprotectable Expression and Merger

1. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual contain protectable expression.

2

### B. Ownership of iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual

2. Alcon will show that AMO Development, LLC is not entitled to a presumption of ownership in the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual in 17 U.S.C. §410(c).

3. Alcon will show that the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual are not entitled to a presumption of originality under 17 U.S.C. §410(c).

4. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that AMO Development, LLC is the owner of valid copyrights in the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

### C. Originality of iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual

5. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual are original.

### D. Direct Infringement of iFS Computer Program

6. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G directly infringed copyrights in the iFS Computer Program.

3

7. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G directly infringed copyrights in the iFS Computer Program.

8. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS Computer Program was willful.[4]

### E. Direct Infringement of iFS FDA Submissions

9. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon directly infringed the copyrights in the iFS FDA Submissions.

10. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS FDA Submissions was willful.

### F. Direct Infringement of iFS Operator's Manual

11. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon directly infringed the copyrights in the iFS Operator's Manual.

---

[4] Alcon asserts that willfulness is not relevant to any disputed issue in this case, but it includes conditional statements in the event the Court decides otherwise.

12. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's alleged infringement of the copyrights in the iFS Operator's Manual was willful.

### G. Vicarious Infringement of iFS Computer Program

13. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G vicariously infringed the copyrights in the iFS Computer Program.

14. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G vicariously infringed the copyrights in the iFS Computer Program.

### H. Contributory Infringement of iFS Computer Program

15. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Programs prior to Version 2.31G contributorily infringed the copyrights in the iFS Computer Program.

16. Alcon will show that J&J has failed to carry its burden of proving by a preponderance of the evidence that Alcon's LenSx Computer Program Version 2.31G contributorily infringed the copyrights in the iFS Computer Program.

## II.    AFFIRMATIVE DEFENSES

17. Alcon will show that J&J's claims based on alleged infringement of the iFS FDA Submissions and iFS Operator's Manual are barred by the statute of limitations.

18. Alcon will show that J&J's claims are barred by the doctrine of acquiescence.

19. Alcon will show that J&J's claims are barred by the doctrine of *de minimis* use.

20. Alcon will show that J&J's claims for equitable relief are barred by the doctrine of laches.

## III.    MONETARY RELIEF

21. Alcon will show that J&J has not carried its burden of proving by a preponderance of the evidence that it did not discover, and with due diligence could not have discovered, the injury that forms the basis for its copyright infringement claims concerning the iFS FDA Submissions and iFS Operator's Manual before September 28, 2017.

22. Alcon will prove by a preponderance of the evidence that J&J failed to mitigate its damages by taking reasonable actions that would have reduced its damages, and Alcon will prove the amount by which J&J's actual damages, if any, should be reduced as a result of its failure to mitigate.

23. Alcon will show that J&J is not entitled to any actual damages for Alcon's alleged infringement of the iFS Computer Program, iFS FDA Submissions, or iFS Operator's Manual, whether measured as any profits J&J alleges AMO

6

Development, LLC would have made but for the alleged infringement or by the reasonable royalty that should have been paid to J&J beginning from the time of Alcon's first alleged infringement.

24. Alcon will show that convoyed sales of products other than the allegedly infringing works should be excluded from a calculation of Alcon's profits under 17 U.S.C. § 504(b) because they would have been considered in a hypothetical negotiation.

25. Alcon will show that J&J's claim for disgorgement of Alcon's profits—an equitable remedy—should be decided by the Court rather than the jury.

26. Alcon will show that laches bars J&J's claim for disgorgement of Alcon's profits that are attributable to the alleged infringement.

27. Alcon will show that J&J is not entitled to recover lost profits from sales of Catalys-related products and services or intraocular lenses ("IOLs"), given that the asserted copyright owner AMO Development, LLC never received revenues from sales of IOLs and received no revenue from sales of Catalys prior to December 30, 2019.

28. Alcon will show that J&J is not entitled to disgorge Alcon's profits that are attributable to the alleged infringement.

29. Alcon will show that J&J is not entitled to disgorge profits from IOL sales retained by entities other than the named defendants.

30. Alcon will show that J&J has not established a causal nexus between the alleged infringement and Alcon's revenues from which J&J seeks to disgorge profits.

31. Alcon will show that non-infringing alternatives to the iFS Computer Program were available during the alleged infringement and rebut J&J's claims for lost profits and a reasonable royalty.

32. Alcon will show the amount of its overhead costs that may be deducted from revenues, if any, attributable to the alleged infringement of the iFS Computer Program, iFS FDA Submissions, and iFS Operator's Manual.

33. Alcon will show that J&J is not entitled to judgment in its favor on any claims; therefore, J&J is not entitled to prejudgment or post-judgment interest on any award of monetary relief.

34. Alcon will show that the Court should award costs and attorney's fees to Alcon and will prove the amount of each.

35. Alcon will show that J&J is not entitled to costs.

## IV.  INJUNCTIVE RELIEF

36. Alcon will show that J&J is not entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment sales or installations of systems that allegedly

infringe the iFS Computer Program, iFS FDA Submissions, or iFS Operator's Manual.

37. Alcon will show that J&J is not entitled to injunctive relief that permanently enjoins Alcon and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from engaging in new, post-judgment use of systems or sales of patient interfaces that allegedly infringe the iFS Computer Program, iFS FDA Submissions, or iFS Operator's Manual.

38. Alcon will show that J&J is not entitled to judgment that orders Alcon to destroy or dispose of any copies of the iFS Computer Program, iFS FDA Submissions, or iFS Operator's Manual currently in Alcon's possession.

# EXHIBIT 8

JOINT EXHIBIT LIST

| JX # | Org DX PX# | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | CONFIDENTIALITY | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| 1 | DX-001 | | | Alcon LenSx Femtosecond Laser System | | | Not Confidential | None |
| 2 | PX-0001 | JJSV_00021188 | JJSV_00021189 | Physical Certified Copy:  Certificate of Registration - TX  8-892-568 - IntraLase FS Model 2/Model 3 Software Version 1.00 | pdf | 9/16/2020 | Not Confidential | None |
| 3 | PX-0002 | JJSV_00021190 | JJSV_00021191 | Physical Certified Copy:  Certificate of Registration - TX  8-892-570 - IntraLase FS Model 2/Model 3 Software Version 1.01 | pdf | 9/16/2020 | Not Confidential | None |
| 4 | PX-0003 | JJSV_00021192 | JJSV_00021193 | Physical Certified Copy:  Certificate of Registration - TX  8-892-579 - IntraLase FS Model 2/Model 3 Software Version 1.02 | pdf | 9/16/2020 | Not Confidential | None |
| 5 | PX-0004 | JJSV_00021194 | JJSV_00021195 | Physical Certified Copy:  Certificate of Registration - TX  8-892-616 - IntraLase FS Model 2/Model 3 Software Version 1.03 | pdf | 9/22/2020 | Not Confidential | None |
| 6 | PX-0005 | JJSV_00021196 | JJSV_00021197 | Physical Certified Copy:  Certificate of Registration - TX  8-892-571 - IntraLase FS Model 2/Model 3 Software Version 1.04 | pdf | 9/16/2020 | Not Confidential | None |
| 7 | PX-0006 | JJSV_00021198 | JJSV_00021199 | Physical Certified Copy:  Certificate of Registration - TX  8-892-576 - IntraLase FS Model 2/Model 3 Software Version 1.05 | pdf | 9/16/2020 | Not Confidential | None |
| 8 | PX-0007 | JJSV_00021200 | JJSV_00021201 | Physical Certified Copy:  Certificate of Registration - TX  8-892-583 - IntraLase FS Model 2/Model 3 Software Version 1.06 | pdf | 9/16/2020 | Not Confidential | None |
| 9 | PX-0008 | JJSV_00021202 | JJSV_00021203 | Physical Certified Copy:  Certificate of Registration - TX  8-892-582 - IntraLase FS Model 2/Model 3 Software Version 1.07 | pdf | 9/16/2020 | Not Confidential | None |
| 10 | PX-0009 | JJSV_00021204 | JJSV_00021205 | Physical Certified Copy:  Certificate of Registration - TX  8-892-586 - IntraLase FS Model 2/Model 3 Software Version 1.08 | pdf | 9/16/2020 | Not Confidential | None |
| 11 | PX-0010 | JJSV_00021206 | JJSV_00021207 | Physical Certified Copy:  Certificate of Registration - TX  8-892-565 - IntraLase FS Model 2/Model 3 Software Version 1.10 | pdf | 9/16/2020 | Not Confidential | None |
| 12 | PX-0011 | JJSV_00021208 | JJSV_00021209 | Physical Certified Copy:  Certificate of Registration - TX  8-892-585 - IntraLase FS Model 2/Model 3 Software Version 1.12 | pdf | 9/16/2020 | Not Confidential | None |
| 13 | PX-0012 | JJSV_00021210 | JJSV_00021211 | Physical Certified Copy:  Certificate of Registration - TX  8-892-564 - iFS Advanced Femtosecond Laser Software Version 2.02 | pdf | 9/16/2020 | Not Confidential | None |
| 14 | PX-0013 | JJSV_00021212 | JJSV_00021213 | Physical Certified Copy:  Certificate of Registration - TX  8-892-567 - iFS Advanced Femtosecond Laser Software Version 2.04 | pdf | 9/16/2020 | Not Confidential | None |
| 15 | PX-0014 | JJSV_00021214 | JJSV_00021215 | Physical Certified Copy:  Certificate of Registration - TX  8-892-618 - iFS Advanced Femtosecond Laser Software Version 2.20 | pdf | 9/16/2020 | Not Confidential | None |
| 16 | PX-0015 | JJSV_00021216 | JJSV_00021217 | Physical Certified Copy:  Certificate of Registration - TX  8-892-614 - iFS Advanced Femtosecond Laser Software Version 2.30 | pdf | 9/16/2020 | Not Confidential | None |
| 17 | PX-0016 | JJSV_00021218 | JJSV_00021219 | Physical Certified Copy:  Certificate of Registration - TX  8-892-580 - iFS Advanced Femtosecond Laser Software Version 2.50 | pdf | 9/16/2020 | Not Confidential | None |
| 18 | PX-0017 | JJSV_00021220 | JJSV_00021221 | Physical Certified Copy:  Certificate of Registration - TX  8-892-621 - iFS Advanced Femtosecond Laser Software Version 2.60 | pdf | 9/16/2020 | Not Confidential | None |
| 19 | PX-0018 | JJSV_00021222 | JJSV_00021223 | Physical Certified Copy:  Certificate of Registration - TX  8-892-612 - iFS Advanced Femtosecond Laser Software Version 2.70 | pdf | 9/16/2020 | Not Confidential | None |
| 20 | PX-0019 | JJSV_00021224 | JJSV_00021276 | IntraLase FS Model 2/Model 3 Software Version 1.00 | pdf | 4/21/2004 | Not Confidential | None |
| 21 | PX-0020 | JJSV_00021277 | JJSV_00021334 | IntraLase FS Model 2/Model 3 Software Version 1.01 | pdf | 6/23/2004 | Not Confidential | None |
| 22 | PX-0021 | JJSV_00021335 | JJSV_00021395 | IntraLase FS Model 2/Model 3 Software Version 1.02 | pdf | 8/2/2004 | Not Confidential | None |
| 23 | PX-0022 | JJSV_00021396 | JJSV_00021477 | IntraLase FS Model 2/Model 3 Software Version 1.03 | pdf | 10/13/2004 | Not Confidential | None |
| 24 | PX-0023 | JJSV_00021478 | JJSV_00021567 | IntraLase FS Model 2/Model 3 Software Version 1.04 | pdf | 2/2/2005 | Not Confidential | None |
| 25 | PX-0024 | JJSV_00021568 | JJSV_00021620 | IntraLase FS Model 2/Model 3 Software Version 1.05 | pdf | 6/9/2005 | Not Confidential | None |
| 26 | PX-0025 | JJSV_00021621 | JJSV_00021679 | IntraLase FS Model 2/Model 3 Software Version 1.06 | pdf | 11/2/2005 | Not Confidential | None |
| 27 | PX-0026 | JJSV_00021680 | JJSV_00021731 | IntraLase FS Model 2/Model 3 Software Version 1.07 | pdf | 12/27/2005 | Not Confidential | None |
| 28 | PX-0027 | JJSV_00021732 | JJSV_00021789 | IntraLase FS Model 2/Model 3 Software Version 1.08 | pdf | 3/10/2006 | Not Confidential | None |
| 29 | PX-0028 | JJSV_00021790 | JJSV_00021871 | IntraLase FS Model 2/Model 3 Software Version 1.10 | pdf | 11/22/2006 | Not Confidential | None |
| 30 | PX-0029 | JJSV_00021872 | JJSV_00021937 | IntraLase FS Model 2/Model 3 Software Version 1.12 | pdf | 7/11/2007 | Not Confidential | None |
| 31 | PX-0030 | JJSV_00021938 | JJSV_00022009 | iFS Advanced Femtosecond Laser Software Version 2.02 | pdf | 1/30/2009 | Not Confidential | None |
| 32 | PX-0031 | JJSV_00022010 | JJSV_00022069 | iFS Advanced Femtosecond Laser Software Version 2.04 | pdf | 4/13/2010 | Not Confidential | None |
| 33 | PX-0032 | JJSV_00022070 | JJSV_00022128 | iFS Advanced Femtosecond Laser Software Version 2.20 | pdf | 10/26/2011 | Not Confidential | None |
| 34 | PX-0033 | JJSV_00022129 | JJSV_00022193 | iFS Advanced Femtosecond Laser Software Version 2.30 | pdf | 3/25/2012 | Not Confidential | None |
| 35 | PX-0034 | JJSV_00022194 | JJSV_00022289 | iFS Advanced Femtosecond Laser Software Version 2.50 | pdf | 12/10/2013 | Not Confidential | None |
| 36 | PX-0035 | JJSV_00022290 | JJSV_00022359 | iFS Advanced Femtosecond Laser Software Version 2.60 | pdf | 10/3/2014 | Not Confidential | None |
| 37 | PX-0036 | JJSV_00022360 | JJSV_00022415 | iFS Advanced Femtosecond Laser Software Version 2.70 | pdf | 8/23/2016 | Not Confidential | None |
| 38 | PX-0037 | JJSV_01046915 | JJSV_01046915 | Physical Certified Copy:  Certificate of Registration - TX  8-971-676 - IntraLase FS Laser Operator's Manual | pdf | 6/10/2021 | Not Confidential | None |
| 39 | PX-0038 | JJSV_01046913 | JJSV_01046914 | Physical Certified Copy:  Certificate of Registration - TXu 2-260-982 - iFS Laser System 510(k) Premarket Notification (K073404) | pdf | 6/14/2021 | Not Confidential | None |
| 40 | PX-0039 | JJSV_01046916 | JJSV_01046917 | Physical Certified Copy:  Certificate of Registration - TXu 2-261-083 - iFS Laser System 510(k) Premarket Notification (K063682) | pdf | 6/14/2021 | Not Confidential | None |
| 41 | PX-0040 | JJSV_01046864 | JJSV_01046912 | IntraLase FS Laser Operator's Manual Rev. X3 (DRAFT) | pdf | 6/20/2003 | Confidential | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JOINT EXHIBIT LIST

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 42 | PX-0041 | JJSV_01046919 | JJSV_01046919 | 510(k) Premarket Notification for the iFS Laser System (K073404) | pdf | 12/10/2007 | Confidential | None |
| 43 | PX-0042 | JJSV_01046918 | JJSV_01046918 | 510(k) Premarket Notification for the iFS Laser System (K063682) | pdf | 12/8/2006 | Confidential | None |
| 44 | PX-0075 | JJSV_00133823 | JJSV_00133823 | K063682 Original Submission - IntraLase Fusion Laser 510k Premarket Notification | pdf | 12/8/2006 | Confidential | None |
| 45 | PX-0076 | JJSV_00133824 | JJSV_00133828 | K063682 510(k) Summary | pdf | 2/1/2007 | Not Confidential | None |
| 46 | PX-0077 | JJSV_00133829 | JJSV_00133829 | K073404 Original Submission - iFS Laser System 510k Premarket Notification | pdf | 12/3/2007 | Confidential | None |
| 47 | PX-0086 | ALCON_LENSX057 | ALCON_LENSX05 | K082947: Volumes I - V of LenSx 510k Submission (composite exhibit) | pdf | 9/29/2008 | AEO | None |
| 48 | PX-0091 | ALCON_LENSX143 | ALCON_LENSX14 | K082947 LenSx 550 Laser, Capsulotomy Indication - Substantial Equivalence Letter | pdf | 8/14/2009 | AEO | None |
| 49 | PX-0093 | ALCON_LENSX059 | ALCON_LENSX05 | K092647: Volumes I-V of LenSx 510k Submission (composite exhibit) | pdf | 8/24/2009 | AEO | None |
| 50 | PX-0095 | ALCON_LENSX06 | ALCON_LENSX06 | FDA correspondence re K092647 510(k) premarket notification | pdf | 12/11/2009 | AEO | None |
| 51 | PX-0096 | ALCON_LENSX064 | ALCON_LENSX06 | LenSx Integration/GUI Test Summary LenSx 550 Laser System, Document Version: 1.01, Corresponds to Field Release: 1.04 | pdf | 1/23/2009 | AEO | None |
| 52 | PX-0100 | ALCON_LENSX279 | ALCON_LENSX27 | FDA correspondence re K094052 510(k) premarket notification | pdf | 4/23/2010 | AEO | None |
| 53 | PX-0101 | ALCON_LENSX215 | ALCON_LENSX21 | K100626: Volumes I-VI of LenSx 510k Submission (composite exhibit) | pdf | 6/7/2010 | AEO | None |
| 54 | PX-0106 | ALCON_LENSX102 | ALCON_LENSX10 | Alcon 510(k) Summary K101626 | pdf | 10/18/2010 | AEO | None |
| 55 | PX-0107 | ALCON_LENSX066 | ALCON_LENSX06 | K120732: Volumes I-X of LenSx 510k Submission (composite exhibit) | pdf | 3/8/2012 | AEO | None |
| 56 | PX-0109 | ALCON_LENSX102 | ALCON_LENSX10 | Alcon 510(k) Summary K120732 | pdf | 9/6/2012 | AEO | None |
| 57 | PX-0116 | ALCON_LENSX30 | ALCON_LENSX30 | FDA correspondence re K161288 510(k) premarket notification | pdf | 11/16/2016 | AEO | None |
| 58 | PX-0122 | ALCON_LENSX316 | ALCON_LENSX31 | FDA correspondence re K173660 510(k) premarket notification | pdf | 3/27/2018 | AEO | None |
| 59 | PX-0131 | JA_00000007 | JA_00000009 | Curriculum Vitae for John Alder | pdf | 1/24/2022 | Confidential | None |
| 60 | PX-0132; DX-262 | CHAUDHARY_000 | CHAUDHARY_000 | Chaudhary Deposition Ex. 1: Curriculum Vitae of Gautam Chaudhary | pdf | | Not Confidential | None |
| 61 | PX-0133 | | | Hatch Opening Ex. B: Curriculum Vitae of Kathryn Hatch, MD | pdf | 3/19/2022 | Not Confidential | None |
| 62 | PX-0141 | | | Baer Opening Appendix A: Curriculum Vitae of Nikolaus Baer | pdf | 4/26/2022 | Not Confidential | None |
| 63 | PX-0134 | | | Schmidt Opening Appendix A: Curriculum Vitae of Douglas Schmidt | pdf | 4/28/2022 | Not Confidential | None |
| 64 | PX-0140 | | | Stamm Opening Appendix A: Curriculum Vitae of Laura Stamm | pdf | 4/29/2022 | Not Confidential | None |
| 65 | PX-0135 | | | Davis Rebuttal Ex. 1: Curriculum Vitae of Julie L. Davis  CPA | pdf | | Not Confidential | None |
| 66 | PX-0136 | | | Wicker Opening Ex. 1: Curriculum Vitae of Stephen B. Wicker | pdf | | Not Confidential | None |
| 67 | PX-0137 | | | Feigal Rebuttal Appendix A: Curriculum Vitae of David W. Feigal  Jr. | pdf | | Not Confidential | None |
| 68 | PX-0139 | | | Becker Opening Appendix A: Curriculum Vitae of Karen Becker | pdf | | Not Confidential | None |
| 69 | PX-0142 | | | Tipperman Rebuttal Exhibit B: Curriculum Vitae of Richard Tipperman | pdf | | Not Confidential | None |
| 70 | PX-0143 | | | Golden Deposition Ex. 08: LinkedIn profile of Robert Golden | pdf | | Not Confidential | None |
| 71 | PX-0144; DX-273 | ALCON_LENSX053 | ALCON_LENSX05 | Peter Goldstein Curriculum Vitae | pdf | 2/24/2021 | AEO | None |
| 72 | PX-0145 | JJSV_01079035 | JJSV_01079035 | Gordon (Judy) LinkedIn Profile.pdf | pdf | 12/23/2021 | Not Confidential | None |
| 73 | PX-0146; DX-263 | HU-HEG_0000797 | HU-HEG_0000801 | Resume of Imre Hegedus | pdf | 1/25/2022 | Not Confidential | None |
| 74 | PX-0147 | ALCON_LENSX196 | ALCON_LENSX19 | Resume of Lynda Jeffcoat | pdf | | Not Confidential | None |
| 75 | PX-0148 | KURTZ00002055 | KURTZ00002056 | Ron Kurtz Curriculum Vitae - Jan. 2022 | doc | 1/1/2022 | Not Confidential | None |
| 76 | PX-0149 | Suarez_0003320 | Suarez_0003322 | Resume of Carlos G. Suarez | pdf | 12/8/2021 | Not Confidential | None |
| 77 | PX-0152 | | | Teodorescu Deposition Ex. 12: LinkedIn profile of Dan Teodorescu | pdf | | Not Confidential | None |
| 78 | PX-0153 | JJSV_01079062 | JJSV_01079062 | LinkedIn profile of Kostadin Vardin | pdf | 12/16/2021 | Not Confidential | None |
| 79 | PX-0155 | | | Watanabe Deposition Ex. 2: Curriculum Vitae of Keith Watanabe | pdf | | Not Confidential | None |
| 80 | DX-024; PX-172 | HU-HEG_0000002 | HU-HEG_0000007 | Employment Agreement between IntraLase Corp. and Imre Hegedus, dated September 27, 1999 | pdf | 9/27/1999 | AEO | None |
| 81 | DX-025; PX-172 | HU-HEG_0000008 | HU-HEG_0000017 | Part Time Employment Agreement between Imre Hegedus and IntraLase Corp., dated December 16, 2000 | pdf | 12/16/2000 | AEO | None |
| 82 | DX-026 | HU-HEG_0000020 | HU-HEG_0000024 | ▓▓▓▓▓▓▓▓▓▓▓ Imre Hegedus and IntraLase Corp., dated November 14, 2002 | pdf | 11/13/2002 | AEO | None |
| 83 | DX-027 | HU-HEG_0000025 | HU-HEG_0000036 | Consulting Agreement between IntraLase Corp. and Imre Hegedus, effective November 15, 2002 | pdf | 11/15/2002 | AEO | None |
| 84 | PX-0174 (2nd half) | HU-HEG_0000037 | HU-HEG_0000049 | Consulting Agreement between IntraLase Corp. and Imre Hegedus, effective Jan. 1, 2005 | pdf | 1/1/2005 | AEO | None |
| 85 | PX-0180; DX-031 | KURTZ00002032 | KURTZ00002041 | Consulting Agreement between IntraLase Corp. and Ron Kurtz, M D | pdf | 1/1/2005 | Confidential | None |
| 86 | PX-0181; DX-308 | JJSV_01030952 | JJSV_01030955 | Kurtz - Amendment to Consulting Agreement | pdf | 12/15/2006 | AEO | None |
| 87 | PX-0186 DX-030 | JJSV_00540166 | JJSV_00540199 | Suzuki Consulting Agreement including NDA | pdf | 1/18/2000 | AEO | None |
| 88 | DX-035 | ALCON_LENSX38 | ALCON_LENSX38 | Document - LenSx Employee Handbook | pdf | 12/22/2008 | Confidential | None |
| 89 | DX-018 | ALCON_LENSX053 | ALCON_LENSX05 | Non-Disclosure and Developments Agreement - Chaudary  executed September 11  2008 | pdf | 9/11/2008 | AEO | None |
| 90 | DX-015 | ALCON_LENSX053 | ALCON_LENSX05 | NDA and Developments Agreement between LenSx & Goldstein  executed May 9  2008 | pdf | 5/9/2008 | AEO | None |
| 91 | DX-014 | ALCON_LENSX053 | ALCON_LENSX05 | Employee Handbook Acknowledgment Form - Peter Goldstein, dated December 30, 2008 | pdf | 12/30/2008 | AEO | None |
| 92 | DX-034 | ALCON_LENSX384 | ALCON_LENSX38 | Employment Agreement between Peter Goldstein and Alcon, 2010 | pdf | 8/11/2010 | AEO | None |
| 93 | PX-0250; DX-028 | HU-HEG_0000061 | HU-HEG_0000073 | Consulting Agreement between LenSx Lasers, Inc and HegeSoft, Bt | pdf | 8/4/2008 | AEO | None |
| 94 | PX-0253; DX-017 | ALCON_LENSX053 | ALCON_LENSX05 | Hegedus Employment Agreement with Alcon | pdf | 5/6/2013 | AEO | None |
| 95 | PX-0257; DX-023 | ALCON_LENSX262 | ALCON_LENSX26 | Memo from F. Leveiller to I. Hegedus re ▓▓▓▓▓▓▓▓▓▓ | pdf | 2/24/2021 | AEO | None |
| 96 | DX-029 | HU-HEG_0000718 | HU-HEG_0000722 | Letter to I. Hegedus - ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, dated February 24, 2021 | pdf | 2/24/2021 | AEO | None |
| 97 | PX-0258; DX-016 | ALCON_LENSX053 | ALCON_LENSX05 | Alcon LenSx, Inc. Offer of Employment Letter to Imre Hegedus | pdf | 3/1/2021 | AEO | None |
| 98 | DX-019 | ALCON_LENSX056 | ALCON_LENSX05 | Employment Agreement between A. Juhasz and LenSx Lasers in connection with Stock Purchase Agreement, dated August 11, 2010 | pdf | 8/11/2010 | Confidential | None |
| 99 | DX-020 | ALCON_LENSX056 | ALCON_LENSX05 | Employment Agreement between R. Kurtz and LenSx Lasers in connection with Stock Purchase Agreement  dated August 9  2010 | pdf | 8/9/2010 | Confidential | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JOINT EXHIBIT LIST

| # | Ex. No. | Begin Bates | End Bates | Description | Type | Date | Conf. | Obj. |
|---|---|---|---|---|---|---|---|---|
| 100 | PX-0275  DX-013 | ALCON_LENSX053 | ALCON_LENSX05 | Employment Agreement between LenSx Laserts  Inc. and K. Vardin | pdf | 8/7/2010 | AEO | None |
| 101 | DX-033 | KV000062 | KV000076 | Employment Agreement between K. Vardin and LenSx | pdf | 8/7/2010 | Confidential | None |
| 102 | DX-032 | KV000060 | KV000076 | Alcon Departing Employee Notice Signed by Vardin | pdf | | Confidential | None |
| 103 | DX-021 | ALCON_LENSX056 | ALCON_LENSX05 | Employment Agreement between K. Watanabe and LenSx Lasers in connection with Stock Purchase Agreement  dated August 9  2010 | pdf | 8/9/2010 | Confidential | None |
| 104 | PX-0282; DX-471 | JJSV_01081197 | JJSV_01081260 | IntraLase Corporation Board of Directors Meeting August 4 1998 | pdf | 8/4/1998 | AEO | None |
| 105 | PX-0309; DX-298 | JJSV_00719293 | JJSV_00719327 | Johnson & Johnson Acquisition of Abbott Medical Optics, Inc. Spreadsheet | pdf | 2/27/2017 | AEO | None |
| 106 | DX-324 | JJSV_01120806 | JJSV_01120835 | Advanced Medical Optics Acquisition of Intralase Summary of Value Conclusions | pdf | 3/14/2007 | AEO | None |
| 107 | PX-0341; DX-299 | JJSV_00727855 | JJSV_00727855 | Email from C. Cuzick to B. Ong et al re Abbott Purchase Price | pst | 4/3/2017 | AEO | None |
| 108 | PX-0339; DX-300 | JJSV_00727856 | JJSV_00728094 | Abbott Laboratories Purchase Price Allocation of Advanced Medical Optics | pdf | 2/26/2009 | AEO | None |
| 109 | PX-0340; DX-325 | JJSV_01128015 | JJSV_01128081 | KPMG Final, Abbott Laboratories, Valuation of Certain Identifiable Intangible Assets and Contingent Consideration in connection with the acquisition of OptiMedica Corporation | pdf | 3/5/2014 | AEO | None |
| 110 | PX-0342  DX-296 | JJSV_00709837 | JJSV_00709837 | Fair Market Value Opinion of Legal Entities of AMO as of 2/27/17 | pdf | 3/22/2018 | AEO | None |
| 111 | DX-455 | JJSV_00707087 | JJSV_00707087 | Presentation- Acqusition Dashboard | pptx | 4/9/2019 | AEO | None |
| 112 | DX-457 | JJSV_00707202 | JJSV_00707202 | AMO Update Sep 2020-DRAFT.pptx | pptx | 8/4/2019 | AEO | None |
| 113 | DX-456 | JJSV_00707191 | JJSV_00707200 | AMO Update March 2020-Finalv1.pdf | pdf | 2/26/2020 | AEO | None |
| 114 | PX-0373; DX-175 | ALCON_LENSX212 | ALCON_LENSX21 | Document - Financial Statements of LenSx Lasers Inc., Years Ended December 31, 2009 and 2008 And the Period from August 30, 2007 (Inception) to December 31, 2009, Ernst & Young | pdf | 4/27/2010 | AEO | None |
| 115 | PX-0375; DX-010 | ALCON_LENSX262 | ALCON_LENSX26 | Shelley Thunen email subject "Item 4.1.22" re: Software, Ownership, and QNX | pst | 5/6/2010 | AEO | None |
| 116 | DX-010 | ALCON_LENSX262 | ALCON_LENSX26 | Email - Item 4.1.22, from Shelley Thunen, May 6, 2010 | pdf | 5/6/2010 | AEO | None |
| 117 | PX-0383 | ALCON_LENSX003 | ALCON_LENSX00 | Minutes of the Telephonic Meeting of the Board of Directors of LenSx Lasers, Inc. | pdf | 6/30/2010 | AEO | None |
| 118 | PX-0384 | ALCON_LENSX382 | ALCON_LENSX38 | LenSx Integration Planning Presentation | docx | 7/1/2010 | AEO | None |
| 119 | PX-0386 | ALCON_LENSX382 | ALCON_LENSX38 | Email from Corporate Communications re Message from Kevin Behler | pst | 7/6/2010 | Confidential | None |
| 120 | PX-0391; DX-011 | ALCON_LENSX003 | ALCON_LENSX00 | Escrow Agreement among Alcon Holdings, Inc., William Link and James Garvey and JPMorgan Chase Bank | pdf | 8/18/2010 | AEO | None |
| 121 | PX-0428  DX-290 | JJSV_00479298 | JJSV_00479323 | LenSx Lasers  Inc. Presentation to Abbott Medical Optics | pptx | 2/5/2010 | AEO | None |
| 122 | PX-0429 | JJSV_01047805 | JJSV_01047805 | LenSx Lasers  Inc. Presentation to Abbott Medical Optics | pptx | 2/5/2010 | AEO | None |
| 123 | DX-448 | ALCON_LENSX212 | ALCON_LENSX21 | QNX Commercial Software License Agreement | pdf | 4/3/2009 | AEO | None |
| 124 | DX-231 | ALCON_LENSX099 | ALCON_LENSX09 | Spreadsheet - ▮▮▮▮▮▮ | xlsx | 10/28/2021 | AEO | None |
| 125 | PX-0453 | JJSV_00021098 | JJSV_00021187 | IntraLase FS™ Laser Operator's Manual (2006) | pdf | 11/20/2006 | Confidential | None |
| 126 | DX-450 | JJSV_00603502 | JJSV_00603575 | Alcon LenSx Operator's Manual - January 2011 | pdf | 1/13/2011 | AEO | None |
| 127 | PX-0456 | ALCON_LENSX002 | ALCON_LENSX00 | LenSx Core Tech Docs: LenSx Operator Manual (Feb. 2011) | pdf | 2/1/2011 | AEO | None |
| 128 | DX-449 | JJSV_00780119 | JJSV_00780191 | Alcon LenSx Laser System Operator's Manual - February 2011 | pdf | 3/2/2011 | AEO | None |
| 129 | DX-451 | JJSV_00780498 | JJSV_00780570 | Alcon LenSx Operator's Manual - February 2011 | pdf | 3/2/2011 | AEO | None |
| 130 | PX-0457 | ALCON_LENSX074 | ALCON_LENSX07 | LenSx Operator Manual 2012 10 02 LenSx 510(k) SoftFit Patient Interface VOLUME I OF I FINAL K123120 | pdf | 10/2/2012 | AEO | None |
| 131 | DX-301 | JJSV_00780118 | JJSV_00780118 | Email - FW: LenSx Users Manual  from D. Scott to G. Schuele April 28  2015 | eMail | 4/28/2016 | Confidential | None |
| 132 | PX-0458 | ALCON_LENSX109 | ALCON_LENSX10 | 80-0001-002 - LenSx Operator's Manual (Rev B) | pdf | 9/1/2017 | AEO | None |
| 133 | PX-0464 | ALCON_LENSX020 | ALCON_LENSX02 | Alcon's LenSx Operator's Manual | pdf | 9/1/2017 | AEO | None |
| 134 | PX-0459 | ALCON_LENSX325 | ALCON_LENSX32 | LenSx Operator Manual (Sept. 2017) | pdf | 9/15/2017 | AEO | None |
| 135 | PX-0460 | ALCON_LENSX359 | ALCON_LENSX35 | LenSx Operator Manual (Aug. 2018) | pdf | 9/18/2018 | AEO | None |
| 136 | PX-0461 | ALCON_LENSX026 | ALCON_LENSX02 | LenSx Laser System Operator's Manual | pdf | 9/19/2018 | AEO | None |
| 137 | PX-0462 | ALCON_LENSX176 | ALCON_LENSX17 | LenSx Laser System Operator's Manual | pdf | 11/20/2018 | AEO | None |
| 138 | PX-0463; DX-467 | ALCON_LENSX260 | ALCON_LENSX26 | Alcon LenSx Operator's Manual, March 23, 2020 | pdf | 5/20/2020 | AEO | None |
| 139 | PX-0574 | ALCON_LENSX97 | ALCON_LENSX97 | Email from P. Goldstein to J. Suzuki re Announcement and Employee Meeting | pst | 7/7/2010 | AEO | None |
| 140 | PX-0605 | ALCON_LENSX265 | ALCON_LENSX26 | Alpha Software: LenSx Lasers Software Configuration Management Plan LENSX 550 Laser - Document Version: 1.00 | pdf | 5/15/2008 | AEO | None |
| 141 | PX-0630 | ALCON_LENSX113 | ALCON_LENSX11 | Risk and Hazard Analysis LenSx Laser.  Document Number: RQ-163.  Rev. A | pdf | 7/31/2017 | AEO | None |
| 142 | PX-0631 | ALCON_LENSX255 | ALCON_LENSX25 | Alcon SPR/SRCR Summary Report LenSx Laser System - Main Controller. Document Version. 1.22 | pdf | 8/8/2017 | AEO | None |
| 143 | PX-0632 | ALCON_LENSX020 | ALCON_LENSX02 | K173660 Vol. 003: Alcon's 2017 510(k): MC Software Requirements Specification.  Doc. Ver.: 2.31.03 | pdf | 11/20/2017 | AEO | None |
| 144 | PX-0633 | ALCON_LENSX020 | ALCON_LENSX02 | K173660 Vol. 004: Alcon's 2017 510(k): LenSx 510k Final Publication 11-20-2017 | pdf | 11/20/2017 | AEO | None |
| 145 | PX-0634 | ALCON_LENSX713 | ALCON_LENSX71 | K173660 FDA Letter-Summary - Clinical Trial | pdf | 3/27/2018 | AEO | None |
| 146 | PX-0638 | ALCON_LENSX380 | ALCON_LENSX38 | LenSx Software 2 31G - Initial Regulatory Assessment | pdf | 2/28/2022 | AEO | None |
| 147 | DX-274 | ALCON_LENSX099 | ALCON_LENSX09 | Presentation - Next Generation Modular LenSx Ideation Project Proposal | pptx | 7/10/2015 | AEO | None |
| 148 | DX-272 | ALCON_LENSX000 | ALCON_LENSX00 | Presentation LenSx Development History | pptx | 12/14/2020 | AEO | None |
| 149 | PX-0702; DX-280 | ALCON_LENSX259 | ALCON_LENSX25 | Email to K Watanabe and A. Malek et al re ▮▮▮▮ Forecast | pst | 2/2/2021 | AEO | None |
| 150 | PX-0708 | ALCON_LENSX000 | ALCON_LENSX00 | LenSx SW updates | pdf | 4/1/2017 | Confidential | None |
| 151 | PX-0710; DX-103 | ALCON_LENSX105 | ALCON_LENSX10 | Alcon Software Revision History, LenSx Laser System | pdf | 1/23/2020 | AEO | None |
| 152 | PX-0714; DX-050 | ALCON_LENSX380 | ALCON_LENSX38 | LenSx Software 2 31G Software Change Requests (SCRs) | pdf | | AEO | None |
| 153 | PX-0719  DX-039 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for July 2021 Software Development Charges | pdf | 9/6/2021 | AEO | None |
| 154 | PX-0720  DX-040 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for August 2021 Software Development Charges | pdf | 9/6/2021 | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JOINT EXHIBIT LIST

| 155 | PX-0721; DX-041 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for September 2021 Software Development Charges | pdf | 9/29/2021 | AEO | None |
|---|---|---|---|---|---|---|---|---|
| 156 | PX-0722; DX-042 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for October 2021 Software Development Charges | pdf | 10/28/2021 | AEO | None |
| 157 | PX-0723; DX-043 | ALCON_LENSX380 | ALCON_LENSX38 | HCL  Technologies Corporate Invoice to Alcon for November 2021 Software Development Charges | pdf | 11/26/2021 | AEO | None |
| 158 | PX-0724; DX-044 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for December 2021 Software Development Charges | pdf | 12/30/2021 | AEO | None |
| 159 | PX-0717; DX-281 | ALCON_LENSX380 | ALCON_LENSX38 | Alcon Research, LLC Design History File - Software Development Guideline 2 31G | pdf | 1/27/2022 | AEO | None |
| 160 | PX-0718; DX-045 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Tech Invoice to Alcon for software development charges ███████ | pdf | 1/28/2022 | AEO | None |
| 161 | PX-0726; DX-038 | ALCON_LENSX380 | ALCON_LENSX38 | Email re: ██████████ | msg | 2/23/2022 | AEO | None |
| 162 | PX-0725; DX-049 | ALCON_LENSX380 | ALCON_LENSX38 | Waypoint Timecard report showing Alcon staff that worked on the LenSx project | pdf | 2/24/2022 | AEO | None |
| 163 | PX-0727  DX-046 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Invoice to Alcon for March 2022 Software Development Charges | pdf | 3/27/2022 | AEO | None |
| 164 | DX-047 | ALCON_LENSX380 | ALCON_LENSX38 | HCL Technologies Corporate Services Ltd. Invoice No. 57149058 dated 04.26.2022 | pdf | 4/26/2022 | AEO | None |
| 165 | DX-048 | ALCON_LENSX38 | ALCON_LENSX38 | HCL Technologies Corporate Services Ltd. Invoice No. 57157629 dated 05.27.2022 | pdf | 5/27/2022 | AEO | None |
| 166 | PX-1051; DX-061 | ALCON_LENSX38 | ALCON_LENSX38 | Software Version History | docx | 8/11/2022 | AEO | None |
| 167 | PX-1052; DX-052 | ALCON_LENSX38 | ALCON_LENSX38 | Software Technical Review #4 SW 2.31G | pdf | 8/11/2022 | AEO | None |
| 168 | PX-1053; DX-058 | ALCON_LENSX38 | ALCON_LENSX38 | Alcon Reseach, LLC Design History File - Deferred Anomalies Memo | docm | 8/11/2022 | AEO | None |
| 169 | PX-1054; DX-059 | ALCON_LENSX38 | ALCON_LENSX38 | Other Changes Memo | docm | 8/11/2022 | AEO | None |
| 170 | PX-1055; DX-054 | ALCON_LENSX38 | ALCON_LENSX38 | Software Release Form | docm | 8/11/2022 | AEO | None |
| 171 | PX-1056; DX-055 | ALCON_LENSX38 | ALCON_LENSX38 | 27_June_2022 Service Bulletin Volume 22-23_A LenSx Software Installation 2 31G_SB112 | pdf | 8/11/2022 | AEO | None |
| 172 | PX-1057; DX-060 | ALCON_LENSX38 | ALCON_LENSX38 | v01.01 Software Change Closure Report | docx | 8/11/2022 | AEO | None |
| 173 | PX-1058; DX-056 | ALCON_LENSX38 | ALCON_LENSX38 | Software Change Plan - LenSx SW 2.31 G | docx | 8/11/2022 | AEO | None |
| 174 | PX-1059; DX-057 | ALCON_LENSX38 | ALCON_LENSX38 | Vol 22-23 Rev A - LenSx Laser Software Installation Version 2.31G Instructions | pdf | 8/11/2022 | AEO | None |
| 175 | DX-053 | ALCON_LENSX38 | ALCON_LENSX38 | Software Code Review for 2.31G | pdf | 8/11/2022 | AEO | None |
| 176 | DX-051 | ALCON_LENSX38 | ALCON_LENSX38 | Spreadsheet - Listing with Hourly Loads (Teodorescu Ex. 23) | xlsx |  | AEO | None |
| 177 | DX-062 | ALCON_LENSX380 | ALCON_LENSX38 | Spreadsheet - Project hours | xlsx |  | AEO | None |
| 178 | DX-188 | ALCON_LENSX380 | ALCON_LENSX38 | Spreadsheet re GW - by Individual (Employee Personnel Cost Details) | xlsx |  | AEO | None |
| 179 | DX-279 | ALCON_LENSX225 | ALCON_LENSX22 | Spreadsheet titled Cataract Marketplace W2 Attitude & Usage | csv | 8/31/2018 | AEO | None |
| 180 | PX-0748 | ALCON_LENSX095 | ALCON_LENSX09 | 5.20 LenSx Promotional Brochure (ALCFL056_LenSx_SalesAid_R4_8 30 11) | pdf | 8/30/2011 | AEO | None |
| 181 | PX-0749 | ALCON_LENSX228 | ALCON_LENSX22 | LSX12221FC - Overview of Laser Cataract Refractive Surgery Equipment | pdf | 1/23/2013 | AEO | None |
| 182 | PX-0751 | ALCON_LENSX026 | ALCON_LENSX02 | Alcon 2014 Cararact and Refractive Product Catalog | pdf | 9/17/2014 | Confidential | None |
| 183 | PX-0752 | ALCON_LENSX103 | ALCON_LENSX10 | LSX15026SA_AUCFL075_LenSx_SA_R3_4 2 15 | pdf | 4/2/2015 | AEO | None |
| 184 | DX-463 | JJSV_00951274 | JJSV_00951276 | Email re Input needed for NSM presentation | eMail | 1/24/2020 | AEO | None |
| 185 | DX-306 | JJSV_00988274 | JJSV_00988274 | Email Chain re US Custom Packs Working Session | eMail | 4/29/2020 | AEO | None |
| 186 | DX-453 | JJSV_00713136 | JJSV_00713136 | Presentation - 2018 Surgical Business Plan Review | pptx | 2/27/2017 | AEO | None |
| 187 | DX-459 | JJSV_00713145 | JJSV_00713145 | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx | pptx | 2/27/2017 | AEO | None |
| 188 | DX-461 | JJSV_00732019 | JJSV_00732019 | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx | pptx | 2/27/2017 | AEO | None |
| 189 | DX-464 | JJSV_00989494 | JJSV_00989494 | Presentation - 2021 BP Template JJSV US-Revised Capital Equipement.pptx | xlsx | 8/4/2020 | AEO | None |
| 190 | DX-392 | JJSV_00958374 | JJSV_00958374 | Document - Alcon SWOT (IOL/Overall) | pptx | 3/28/2018 | AEO | None |
| 191 | PX-0869 | ALCON_LENSX095 | ALCON_LENSX09 | LenSx vs Catalys Competitive Overview | pptx | 4/5/2016 | AEO | None |
| 192 | DX-393 | ALCON_LENSX709 | ALCON_LENSX70 | US Surgical Cataract Equipment Brand Health Tracker Report 4Q19 - January 2020 | pptx | 12/14/2020 | Confidential | None |
| 193 | DX-156 | JJSV_00417728 | JJSV_00417746 | Q2-2010 Cataract Quarterly Update, dated 2010 | pdf | 7/1/2010 | Confidential | None |
| 194 | DX-157 | JJSV_00417747 | JJSV_00417776 | Q2-2011 Cataract Quarterly Update, dated 2011 | pdf | 7/1/2011 | Confidential | None |
| 195 | DX-159 | JJSV_00417949 | JJSV_00417969 | Q3-2010 Cataract Quarterly Update, dated November 12, 2010 | pdf | 11/12/2010 | Confidential | None |
| 196 | DX-163 | JJSV_00418122 | JJSV_00418139 | Q4-2010 Cataract Quarterly Update, dated 2011 | pdf | 1/1/2011 | Confidential | None |
| 197 | DX-164 | JJSV_00418140 | JJSV_00418157 | Q4-2011 Cataract Quarterly Update, dated 2012 | pdf | 1/1/2012 | Confidential | None |
| 198 | DX-158 | JJSV_00417777 | JJSV_00417805 | Q2-2012 Cataract Quarterly Update, dated August 1, 2012 | pdf | 8/1/2012 | Confidential | None |
| 199 | DX-145 | JJSV_00417239 | JJSV_00417267 | Q3-2012 Cataract Quarterly Update, dated November 1, 2012 | pdf | 11/1/2012 | Confidential | None |
| 200 | DX-146 | JJSV_00417268 | JJSV_00417297 | Q1-2013 Cataract Quarterly Update_dated May 1_2013 | pdf | 5/1/2013 | Confidential | None |
| 201 | DX-147 | JJSV_00417298 | JJSV_00417326 | Q3-2013 Cataract Quarterly Update_dated 2013 | pdf | 10/1/2013 | Confidential | None |
| 202 | DX-148 | JJSV_00417327 | JJSV_00417355 | Q4-2013 Cataract Quarterly Update_dated 2014 | pdf | 1/1/2014 | Confidential | None |
| 203 | DX-149 | JJSV_00417356 | JJSV_00417386 | Q1-2014 Cataract Quarterly Update_dated May 12_2014 | pdf | 5/12/2014 | Confidential | None |
| 204 | DX-150 | JJSV_00417387 | JJSV_00417417 | Q2-2014 Cataract Quarterly Update, dated August 13, 2014 | pdf | 8/13/2014 | Confidential | None |
| 205 | DX-139 | ALCON_LENSX709 | ALCON_LENSX70 | Q4-2014 Cataract Quarterly Update, dated January 1, 2015 | pdf | 1/1/2015 | Confidential | None |
| 206 | DX-138 | ALCON_LENSX709 | ALCON_LENSX70 | Q1-2015 Cataract Quarterly Update, dated May 1, 2015 | pdf | 5/1/2015 | Confidential | None |
| 207 | DX-137 | ALCON_LENSX709 | ALCON_LENSX70 | Q2-2015 Cataract Quarterly Update, dated August 1, 2015 | pdf | 8/1/2015 | Confidential | None |
| 208 | DX-136 | ALCON_LENSX709 | ALCON_LENSX70 | Q3-2015 Cataract Quarterly Update, dated November 1, 2015 | pdf | 11/1/2015 | Confidential | None |
| 209 | DX-152 | JJSV_00417514 | JJSV_00417544 | Q1-2016 Cataract Quarterly Update, dated May 1, 2016 | pdf | 5/1/2016 | Confidential | None |
| 210 | DX-135 | ALCON_LENSX290 | ALCON_LENSX29 | Q2-2016 Cataract Quarterly Update, dated August 16, 2016 | pdf | 8/16/2016 | Confidential | None |
| 211 | DX-160 | JJSV_00417970 | JJSV_00418002 | Q3-2016 Cataract Quarterly Update, dated November 1, 2016 | pdf | 11/1/2016 | Confidential | None |
| 212 | DX-166 | JJSV_00418190 | JJSV_00418223 | Q4-2016 Cataract Quarterly Update, dated February 1, 2017 | pdf | 2/1/2017 | Confidential | None |
| 213 | DX-153 | JJSV_00417545 | JJSV_00417572 | Q1-2017 Cataract Quarterly Update_dated August 1_2017 | pdf | 8/1/2017 | Confidential | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| # | Exhibit | Beg Bates | End Bates | Description | Format | Date | Confidentiality | Objections |
|---|---------|-----------|-----------|-------------|--------|------|-----------------|------------|
| 214 | DX-462 | JJSV_00847411 | JJSV_00847413 | Email from A. Yokota-Joshi to G. Graham and K. Windham re Market Scope Annual Cataract Survery Report  dated October 27  2017 | eMail | 10/27/2017 | AEO | None |
| 215 | DX-144 | ALCON_LENSX966 | ALCON_LENSX96 | Q4-2017 Cataract Quarterly Update, dated 2018 | pdf | 1/1/2018 | Confidential | None |
| 216 | DX-140 | ALCON_LENSX709 | ALCON_LENSX71 | Q1-2018 Cataract Quarterly Update, dated May 1, 2018 | pdf | 5/1/2018 | Confidential | None |
| 217 | DX-132 | ALCON_LENSX18 | ALCON_LENSX18 | Q2-2018 Cataract Quarterly Update, dated August 1, 2018 | pdf | 8/1/2018 | Confidential | None |
| 218 | DX-161 | JJSV_00418003 | JJSV_00418042 | Q3-2018 Cataract Quarterly Update, dated November 1, 2018 | pdf | 11/1/2018 | Confidential | None |
| 219 | DX-142 | ALCON_LENSX714 | ALCON_LENSX71 | Q4-2018 Cataract Quarterly Update, dated February 1, 2019 | pdf | 2/1/2019 | Confidential | None |
| 220 | DX-154 | JJSV_00417612 | JJSV_00417650 | Q1-2019 Cataract Quarterly Update, dated May 1, 2019 | pdf | 5/1/2019 | Confidential | None |
| 221 | DX-131 | ALCON_LENSX180 | ALCON_LENSX18 | Q2-2019 Cataract Quarterly Update, dated August 1, 2019 | pdf | 8/1/2019 | Confidential | None |
| 222 | DX-143 | ALCON_LENSX714 | ALCON_LENSX71 | 2019 Premium Cataract Surgery Market Scope Report, dated October 1, 2019 | pdf | 10/1/2019 | Confidential | None |
| 223 | DX-133 | ALCON_LENSX182 | ALCON_LENSX18 | Q3-2019 Cataract Quarterly Update, dated November 1, 2019 | pdf | 11/1/2019 | Confidential | None |
| 224 | DX-141 | ALCON_LENSX714 | ALCON_LENSX71 | Q4-2019 Cataract Quarterly Update  dated February 1  2020 | pdf | 2/1/2020 | Confidential | None |
| 225 | DX-155 | JJSV_00417651 | JJSV_00417691 | Q1-2020 Cataract Quarterly Update  dated May 1  2020 | pdf | 5/1/2020 | Confidential | None |
| 226 | DX-134 | ALCON_LENSX185 | ALCON_LENSX18 | Q2-2020 Cataract Quarterly Update  dated August 1  2020 | pdf | 8/1/2020 | Confidential | None |
| 227 | DX-162 | JJSV_00418083 | JJSV_00418121 | Q3-2020 Cataract Quarterly Update, dated November 1, 2020 | pdf | 11/1/2020 | Confidential | None |
| 228 | DX-391 | ALCON_LENSX260 | ALCON_LENSX26 | 2021 Cataract Annual - Alcon Custom, dated May 27, 2021 | pdf | 5/27/2021 | Confidential | None |
| 229 | PX-0890; DX-171 | JJSV_00448205 | JJSV_00448355 | 2007 Cataract Surgical Equipment Report, dated July 1, 2007 | pdf | 7/1/2007 | Confidential | None |
| 230 | PX-0891; DX-170 | JJSV_00447245 | JJSV_00447437 | 2009 Cataract Surgical Equipment Report, dated July 28, 2009 | pdf | 7/28/2009 | Confidential | None |
| 231 | PX-0892; DX-303 | JJSV_00876416 | JJSV_00876626 | 2010 Cataract Surgical Equipment Report, dated July 2, 2010 | pdf | 7/2/2010 | Confidential | None |
| 232 | PX-0893 | JJSV_00876627 | JJSV_00876862 | 2011 Cataract Surgical Equipment Report, dated June 1, 2011 | pdf | 6/1/2011 | Confidential | None |
| 233 | PX-0894; DX-118 | JJSV_00876863 | JJSV_00877111 | 2012 Cataract Surgical Equipment Report, dated June 1, 2012 | pdf | 6/1/2012 | Confidential | None |
| 234 | PX-0895; DX-122 | JJSV_00399003 | JJSV_00399260 | 2013 Cataract Surgical Equipment Report, dated June 18, 2013 | pdf | 6/18/2013 | Confidential | None |
| 235 | PX-0896; DX-168; | JJSV_00450846 | JJSV_00451115 | 2014 Cataract Surgical Equipment Report, dated June 10, 2014 | pdf | 6/10/2014 | Confidential | None |
| 236 | PX-0897  DX-124 | JJSV_00409536 | JJSV_00409804 | 2015 Cataract Surgical Equipment Report  dated July 31  2015 | pdf | 7/31/2015 | Confidential | None |
| 237 | PX-0929  DX-126 | JJSV_00418158 | JJSV_00418189 | Cataract Quarterly Update  Q4 - 2015  February 2016  dated February 8  2016 | pdf | 2/8/2016 | Confidential | None |
| 238 | PX-0898 | JJSV_00410296 | JJSV_00410592 | 2016 Cataract Surgical Equipment Report  dated June 1  2016 | pdf | 6/1/2016 | Confidential | None |
| 239 | PX-0899 | JJSV_00833033 | JJSV_00833107 | 2017 Market Scope Annual Cataract Survey Report  dated June 1  2017 | pdf | 6/1/2017 | Confidential | None |
| 240 | PX-0900 | JJSV_00847622 | JJSV_00847905 | 2017 Cataract Surgical Equipment Report, dated July 1, 2017 | pdf | 7/1/2017 | Confidential | None |
| 241 | PX-0901 | JJSV_00850536 | JJSV_00850804 | 2018 Cataract Surgical Equipment Report, dated May 1, 2018 | pdf | 5/1/2018 | Confidential | None |
| 242 | PX-0902; DX-169 | JJSV_00413967 | JJSV_00414241 | 2019 Cataract Surgical Equipment Report, dated May 22, 2019 | pdf | 5/22/2019 | Confidential | None |
| 243 | PX-0903; DX-127; | JJSV_00022753 | JJSV_00023027 | 2020 Cataract Surgical Equipment Report, dated July 1, 2020 | pdf | 7/1/2020 | Confidential | None |
| 244 | PX-0904;  DX-120 | JJSV_00022416 | JJSV_00022694 | 2020 Premium Cataract Surgery Market Report, An Analysis of the Top 13 Countries for 2019 to 2015, dated November 23, 2020 | pdf | 11/23/2020 | Confidential | None |
| 245 | PX-0905; DX-129 | JJSV_01118515 | JJSV_01118795 | 2021 Cataract Surgical Equipment Report, dated July 16, 2021 | pdf | 7/16/2021 | Confidential | None |
| 246 | PX-0906; DX-130; | JJSV_01118796 | JJSV_01118835 | 2021 US Cataract Quarterly Update, Q4 - 2021 Analysis of Historical Trends and Latest Developments, dated February 15, 2022 | pdf | 2/15/2022 | Confidential | None |
| 247 | DX-119 | ALCON_LENSX285 | ALCON_LENSX28 | 2015 Global IOL Market Scope Report  dated June 1  2015 | pdf | 6/1/2015 | Confidential | None |
| 248 | PX-0907  DX-123 | JJSV_00408514 | JJSV_00408681 | 2020 Ophthalmic Laser Market Report  dated June 12  2020 | pdf | 6/12/2020 | Confidential | None |
| 249 | PX-0908  DX-129 | JJSV_01117762 | JJSV_01118162 | 2021 Global IOL Market Report  dated April 1  2021 | pdf | 4/1/2021 | Confidential | None |
| 250 | PX-0909 | JJSV_00402285 | JJSV_00402513 | 2006 Refractive Surgery Market Report, dated November 1, 2006 | pdf | 11/1/2006 | Confidential | None |
| 251 | PX-0910 | JJSV_00402527 | JJSV_00402541 | 2009 Q4 Refractive Quarterly Report, dated December 1, 2009 | pdf | 12/1/2009 | Confidential | None |
| 252 | PX-0911 | JJSV_00402542 | JJSV_00402778 | 2010 Refractive Surgery Market Report, dated December 1, 2010 | pdf | 12/1/2010 | Confidential | None |
| 253 | PX-0912 | JJSV_01068172 | JJSV_01068408 | 2011 Refractive Surgery Market Report, dated December 1, 2011 | pdf | 12/1/2011 | Confidential | None |
| 254 | PX-0913 | JJSV_00388969 | JJSV_00389208 | 2012 Refractive Surgery Market Report, dated January 1, 2013 | pdf | 1/1/2013 | Confidential | None |
| 255 | PX-0914 | JJSV_00397993 | JJSV_00398054 | 2013 Annual Survey of US Refractive Surgeons, dated August 15, 2013 | pdf | 8/15/2013 | Confidential | None |
| 256 | PX-0915 | JJSV_01120231 | JJSV_01120513 | 2020 Refractive Surgery Market Report, dated December 1, 2020 | pdf | 12/1/2020 | Confidential | None |
| 257 | PX-0916 | JJSV_01118163 | JJSV_01118452 | 2021 Refractive Surgery Market Report, dated December 21, 2021 | pdf | 12/21/2021 | Confidential | None |
| 258 | PX-0923 | JJSV_00870666 | JJSV_00870666 | MarketScope 2012 Annual Survey of Cataract Surgeons, dated June 1, 2012 | pptx | 6/1/2012 | AEO | None |
| 259 | DX-278 | ALCON_LENSX218 | ALCON_LENSX21 | LenSx customer satisfaction survey | xlsx | 4/28/2015 | AEO | None |
| 260 | PX-0925  DX-125 | JJSV_00417468 | JJSV_00417491 | Q1-2011 Cataract Quarterly Final AMO R2.pdf | pdf | 4/28/2011 | Confidential | None |
| 261 | DX-341 | | | Worldwide market Share of Net new FLACS Device Placements by Product for the Years 2014-2019; Worldwide Market Share of FLACS Device Installed Base by Product for 2013-2019 | pdf | 3/11/2021 | AEO | None |
| 262 | DX-470 | JJSV_01080643 | JJSV_01080707 | Document - Intralase board of directors meeting | pdf | 3/23/1999 | AEO | None |
| 263 | DX-312 | JJSV_01080406 | JJSV_01080426 | IntraLase Corp. Financial Report for the Board of Director Meeting, dated September 21, 1999 | pdf | 9/21/1999 | AEO | None |
| 264 | DX-222 | JJSV_01094949 | JJSV_01094951 | Intralase Final Budget | pdf | 3/5/2002 | AEO | None |
| 265 | DX-223 | JJSV_01095036 | JJSV_01095248 | IntraLase Corp. Operating Budget for 2002, dated March 2002 | pdf | 3/5/2002 | AEO | None |
| 266 | DX-221 | JJSV_01094934 | JJSV_01094938 | Memo - Intralase Budget Schedules | pdf | 7/22/2002 | AEO | None |
| 267 | DX-238 | JJSV_01094684 | JJSV_01094684 | Spreadsheet - 2007 budget plan | xls | 3/1/2006 | AEO | None |
| 268 | DX-294 | JJSV_00617352 | JJSV_00617356 | IntraLase Corp. Merit Review Worksheet | pdf | 4/11/2006 | Confidential | None |
| 269 | DX-174 | ALCON_LENSX112 | ALCON_LENSX11 | Spreadsheet - Alcon LenSx Lasers & PIs Combined for Month Ended November 30, 2012 | xlsx | 12/5/2012 | AEO | None |
| 270 | DX-226 | ALCON_LENSX380 | ALCON_LENSX38 | Spreadsheet - LenSx service financials | xlsx | 1/7/2014 | AEO | None |
| 271 | DX-228 | ALCON_LENSX099 | ALCON_LENSX09 | Spreadsheet - ▮▮▮▮▮▮▮ | xlsx | 10/28/2021 | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JOINT EXHIBIT LIST

| 272 | DX-229 | ALCON_LENSX099 | ALCON_LENSX09 | Spreadsheet - ▮▮▮▮▮▮▮▮▮ | xlsx | 10/28/2021 | AEO | None |
|---|---|---|---|---|---|---|---|---|
| 273 | DX-230 | ALCON_LENSX099 | ALCON_LENSX09 | Spreadsheet - ▮▮▮▮▮▮ | xlsx | 10/28/2021 | AEO | None |
| 274 | DX-190 | ALCON_LENSX380 | ALCON_LENSX38 | Spreadsheet re COGS Details by Functional Area | xlsx | | AEO | None |
| 275 | DX-180 | ALCON_LENSX359 | ALCON_LENSX35 | Spreadsheet re Lensx Lasers, Inc. Balance Sheet December 31, 2008 | xls | 2/13/2009 | AEO | None |
| 276 | DX-181 | ALCON_LENSX359 | ALCON_LENSX35 | Spreadsheet re 2009 Balance Sheet, 2009 P&L Summary, and 2009 Cash Flow | xls | 5/22/2009 | AEO | None |
| 277 | DX-191 | ALCON_LENSX713 | ALCON_LENSX71 | Spreadsheet re LenSx APL residual Profit_June YTD 2020 | xlsx | 12/14/2020 | AEO | None |
| 278 | DX-192 | ALCON_LENSX713 | ALCON_LENSX71 | Spreadsheet re LenSx APL residual Profit_June YTD 2020 & FY19 | xlsx | 12/14/2020 | AEO | None |
| 279 | DX-173 | ALCON_LENSX105 | ALCON_LENSX10 | Global ATIOL Penetration & Historical Product Launches | pptx | 10/19/2021 | AEO | None |
| 280 | DX-236 | ALCON_LENSX104 | ALCON_LENSX10 | Spreadsheet - Historical IOL market share data | xlsx | 10/19/2021 | AEO | None |
| 281 | DX-189 | ALCON_LENSX380 | ALCON_LENSX38 | Spreadsheet re Overhead FTE Rate Analysis (Lake Forest) | xlsx | | AEO | None |
| 282 | DX-080 | | | Book - Barry W. Boehm et al., Software Cost Estimation with COCOMO II, Upper Saddle River: Prentice Hall_excerpts (2000) | pdf | 8/1/2000 | Not Confidential | None |
| 283 | PX-1015  DX-101 | JJSV_01111692 | JJSV_01112358 | QNX Neutrino Realtime Operating System_Photon microGUI Programmer's Guide | pdf | 5/14/2010 | Confidential | None |
| 284 | PX-1016 | JJSV_00930012 | JJSV_00930416 | QNX Neutrino RTOS User's Guide | pdf | 6/14/2012 | AEO | None |
| 285 | DX-064 | JJSV_01130301 | JJSV_01130319 | QNX Printing Documentation | pdf | 5/27/2022 | Not Confidential | None |
| 286 | PX-1022 | JJSV_01128382 | JJSV_01128382 | FDA, Design Control Guidance for Medical Device Manufacturers (March 11, 1997) | pdf | 3/11/1997 | Not Confidential | None |
| 287 | PX-1023 | ALCON_LENSX288 | ALCON_LENSX28 | FDA, Guidance for the Content of Premarket Submissions for Software Contained in Medical Devices | pdf | 5/11/2005 | Not Confidential | None |
| 288 | PX-1024 | JJSV_01128274 | JJSV_01128350 | FDA, Deciding When to Submit a 510(k) for a Change to an Existing Device (Oct. 25, 2017), https://www.fda.gov/media/99812/download | pdf | 10/25/2017 | Not Confidential | None |
| 289 | PX-1025 | JJSV_01130364 | JJSV_01131246 | FDA, Regulatory Procedures Manual | pdf | 6/29/2022 | Not Confidential | None |
| 290 | PX-1026 | | | Becker Deposition Ex. 7: FDA Regulatory Procedures Manual, Chapter 4: Advisory Actions | pdf | | Not Confidential | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

# EXHIBIT 9

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0001 | JJSV_00021188 | JJSV_00021189 | Physical Certified Copy: Certificate of Registration - TX  8-892-568 - IntraLase FS Model 2/Model 3 Software Version 1 00 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0002 | JJSV_00021190 | JJSV_00021191 | Physical Certified Copy: Certificate of Registration - TX  8-892-570 - IntraLase FS Model 2/Model 3 Software Version 1 01 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0003 | JJSV_00021192 | JJSV_00021193 | Physical Certified Copy: Certificate of Registration - TX  8-892-579 - IntraLase FS Model 2/Model 3 Software Version 1 02 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0004 | JJSV_00021194 | JJSV_00021195 | Physical Certified Copy: Certificate of Registration - TX  8-892-616 - IntraLase FS Model 2/Model 3 Software Version 1 03 | pdf | 9/22/2020 | Not Confidential | None |
| PX-0005 | JJSV_00021196 | JJSV_00021197 | Physical Certified Copy: Certificate of Registration - TX  8-892-571 - IntraLase FS Model 2/Model 3 Software Version 1 04 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0006 | JJSV_00021198 | JJSV_00021199 | Physical Certified Copy: Certificate of Registration - TX  8-892-576 - IntraLase FS Model 2/Model 3 Software Version 1 05 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0007 | JJSV_00021200 | JJSV_00021201 | Physical Certified Copy: Certificate of Registration - TX  8-892-583 - IntraLase FS Model 2/Model 3 Software Version 1 06 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0008 | JJSV_00021202 | JJSV_00021203 | Physical Certified Copy: Certificate of Registration - TX  8-892-582 - IntraLase FS Model 2/Model 3 Software Version 1 07 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0009 | JJSV_00021204 | JJSV_00021205 | Physical Certified Copy: Certificate of Registration - TX  8-892-586 - IntraLase FS Model 2/Model 3 Software Version 1 08 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0010 | JJSV_00021206 | JJSV_00021207 | Physical Certified Copy: Certificate of Registration - TX  8-892-565 - IntraLase FS Model 2/Model 3 Software Version 1.10 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0011 | JJSV_00021208 | JJSV_00021209 | Physical Certified Copy: Certificate of Registration - TX  8-892-585 - IntraLase FS Model 2/Model 3 Software Version 1.12 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0012 | JJSV_00021210 | JJSV_00021211 | Physical Certified Copy: Certificate of Registration - TX  8-892-564 - iFS Advanced Femtosecond Laser Software Version 2.02 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0013 | JJSV_00021212 | JJSV_00021213 | Physical Certified Copy: Certificate of Registration - TX  8-892-567 - iFS Advanced Femtosecond Laser Software Version 2.04 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0014 | JJSV_00021214 | JJSV_00021215 | Physical Certified Copy: Certificate of Registration - TX  8-892-618 - iFS Advanced Femtosecond Laser Software Version 2.20 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0015 | JJSV_00021216 | JJSV_00021217 | Physical Certified Copy: Certificate of Registration - TX  8-892-614 - iFS Advanced Femtosecond Laser Software Version 2.30 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0016 | JJSV_00021218 | JJSV_00021219 | Physical Certified Copy: Certificate of Registration - TX  8-892-580 - iFS Advanced Femtosecond Laser Software Version 2.50 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0017 | JJSV_00021220 | JJSV_00021221 | Physical Certified Copy: Certificate of Registration - TX  8-892-621 - iFS Advanced Femtosecond Laser Software Version 2.60 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0018 | JJSV_00021222 | JJSV_00021223 | Physical Certified Copy: Certificate of Registration - TX  8-892-612 - iFS Advanced Femtosecond Laser Software Version 2.70 | pdf | 9/16/2020 | Not Confidential | None |
| PX-0019 | JJSV_00021224 | JJSV_00021276 | IntraLase FS Model 2/Model 3 Software Version 1.00 | pdf | 4/21/2004 | Not Confidential | None |
| PX-0020 | JJSV_00021277 | JJSV_00021334 | IntraLase FS Model 2/Model 3 Software Version 1.01 | pdf | 6/23/2004 | Not Confidential | None |
| PX-0021 | JJSV_00021335 | JJSV_00021395 | IntraLase FS Model 2/Model 3 Software Version 1.02 | pdf | 8/2/2004 | Not Confidential | None |
| PX-0022 | JJSV_00021396 | JJSV_00021477 | IntraLase FS Model 2/Model 3 Software Version 1.03 | pdf | 10/13/2004 | Not Confidential | None |
| PX-0023 | JJSV_00021478 | JJSV_00021567 | IntraLase FS Model 2/Model 3 Software Version 1.04 | pdf | 2/2/2005 | Not Confidential | None |
| PX-0024 | JJSV_00021568 | JJSV_00021620 | IntraLase FS Model 2/Model 3 Software Version 1.05 | pdf | 6/9/2005 | Not Confidential | None |
| PX-0025 | JJSV_00021621 | JJSV_00021679 | IntraLase FS Model 2/Model 3 Software Version 1.06 | pdf | 11/2/2005 | Not Confidential | None |
| PX-0026 | JJSV_00021680 | JJSV_00021731 | IntraLase FS Model 2/Model 3 Software Version 1.07 | pdf | 12/27/2005 | Not Confidential | None |
| PX-0027 | JJSV_00021732 | JJSV_00021789 | IntraLase FS Model 2/Model 3 Software Version 1.08 | pdf | 3/10/2006 | Not Confidential | None |
| PX-0028 | JJSV_00021790 | JJSV_00021871 | IntraLase FS Model 2/Model 3 Software Version 1.10 | pdf | 11/22/2006 | Not Confidential | None |
| PX-0029 | JJSV_00021872 | JJSV_00021937 | IntraLase FS Model 2/Model 3 Software Version 1.12 | pdf | 7/11/2007 | Not Confidential | None |
| PX-0030 | JJSV_00021938 | JJSV_00022009 | iFS Advanced Femtosecond Laser Software Version 2.02 | pdf | 1/30/2009 | Not Confidential | None |
| PX-0031 | JJSV_00022010 | JJSV_00022069 | iFS Advanced Femtosecond Laser Software Version 2.04 | pdf | 4/13/2010 | Not Confidential | None |
| PX-0032 | JJSV_00022070 | JJSV_00022128 | iFS Advanced Femtosecond Laser Software Version 2.20 | pdf | 10/26/2011 | Not Confidential | None |
| PX-0033 | JJSV_00022129 | JJSV_00022193 | iFS Advanced Femtosecond Laser Software Version 2.30 | pdf | 3/25/2012 | Not Confidential | None |
| PX-0034 | JJSV_00022194 | JJSV_00022289 | iFS Advanced Femtosecond Laser Software Version 2.50 | pdf | 12/10/2013 | Not Confidential | None |
| PX-0035 | JJSV_00022290 | JJSV_00022359 | iFS Advanced Femtosecond Laser Software Version 2.60 | pdf | 10/3/2014 | Not Confidential | None |
| PX-0036 | JJSV_00022360 | JJSV_00022415 | iFS Advanced Femtosecond Laser Software Version 2.70 | pdf | 8/23/2016 | Not Confidential | None |
| PX-0037 | JJSV_01046915 | JJSV_01046915 | Physical Certified Copy: Certificate of Registration - TX  8-971-676 - IntraLase FS Laser Operator's Manual | pdf | 6/10/2021 | Not Confidential | None |
| PX-0038 | JJSV_01046913 | JJSV_01046914 | Physical Certified Copy: Certificate of Registration - TXu 2-260-982 - iFS Laser System 510(k) Premarket Notification (K073404) | pdf | 6/14/2021 | Not Confidential | None |
| PX-0039 | JJSV_01046916 | JJSV_01046917 | Physical Certified Copy: Certificate of Registration - TXu 2-261-083 - iFS Laser System 510(k) Premarket Notification (K063682) | pdf | 6/14/2021 | Not Confidential | None |
| PX-0040 | JJSV_01046864 | JJSV_01046912 | IntraLase FS Laser Operator's Manual Rev. X3 (DRAFT) | pdf | 6/20/2003 | Confidential | None |
| PX-0041 | JJSV_01046919 | JJSV_01046919 | 510(k) Premarket Notification for the iFS Laser System (K073404) | pdf | 12/10/2007 | Confidential | None |
| PX-0042 | JJSV_01046918 | JJSV_01046918 | 510(k) Premarket Notification for the iFS Laser System (K063682) | pdf | 12/8/2006 | Confidential | None |
| PX-0043 | Physical Exhibit - Source Code | | Source Code Machine with local hard drive containing all of the source code produced by each party | sourcecode | | AEO - Source Code | R, F, H, 106, M L |
| PX-0047 | JJSV_SRC000001 | JJSV_SRC000019 | Computer Source Code used as Exhibit 9 during the deposition of I. Hegedus | sourcecode | 6/23/2008 | AEO - Source Code | F, 403, 106, 1002, Dupe, MIL |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0048 | ALCON_SRC000001 | ALCON_SRC000018 | Computer Source Code used as Exhibit 10 during the deposition of I. Hegedus | sourcecode | 5/1/2009 | AEO - Source Code | F, 403, 106, Dupe, MIL |
| PX-0049 | | | Computer Source Code used as Exhibit 11 during the deposition of I. Hegedus | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0050 | | | Computer Source Code used as Exhibit 13 during the deposition of P. Goldstein | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0051 | | | Computer Source Code used as Exhibit 14 during the deposition of P. Goldstein | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0052 | | | Computer Source Code used as Exhibit 16 during the deposition of P. Goldstein | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, MIL |
| PX-0053 | | | Computer Source Code used as Exhibit 13 during the deposition of K. Vardin | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0054 | | | Computer Source Code used as Exhibit 14 during the deposition of K. Vardin | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0055 | | | Computer Source Code used as Exhibit 15 during the deposition of K. Vardin | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, Demo, MIL |
| PX-0056 | | | Computer Source Code used as Exhibit 2 during the deposition of S. Wicker | sourcecode | | AEO - Source Code | F, 403, 106, 1002, Dupe, MIL |
| PX-0057 | | | Baer Opening Report Appendices B-I (composite exhibit) | sourcecode | | AEO - Source Code | H, F, Demo, 1006 |
| PX-0058 | | | Baer Opening Report Source Code Appendices S1-a to S1-q (composite exhibit) | sourcecode | | AEO - Source Code | F, R, 403, 106, 1002, 1006, Dupe, Demo, MIL |
| PX-0059 | | | Baer Opening Report Source Code Appendix S2 (used as Baer Deposition Exhibit 5) | sourcecode | | AEO - Source Code | F, 702, Demo |
| PX-0060 | | | Baer Opening Report Source Code Appendix S3 | sourcecode | | AEO - Source Code | F, R, 403, MIL |
| PX-0061 | | | Materials Produced on Source Code Computer in Connection with Reports of Nikolaus Baer | sourcecode | | AEO - Source Code | F, Q, R, 403, D, 1006 |
| PX-0062 | | | Baer Opening Report Source Code Appendix S4 (used as Baer Deposition Exhibit 7) | sourcecode | | AEO - Source Code | F, 702, Demo |
| PX-0063 | | | Baer Rebuttal Report Appendix B: Quantitative Metrics | sourcecode | | AEO - Source Code | H, 1006 |
| PX-0064 | | | Baer Rebuttal Report Source Code Appendices SR1-a to SR2-f (composite exhibit) | sourcecode | | AEO - Source Code | F, R, 403, 106, 1002, 1006, Dupe, Demo  MIL |
| PX-0065 | | | Baer Reply Appendix B: Identified Code Statement | | | AEO - Source Code | F, H, R, 106, 702, 1006 |
| PX-0066 | | | Schmidt Opening Appendix B: Materials Cited | sourcecode | 4/28/2022 | AEO - Source Code | R, 403, H |
| PX-0067 | | | Schmidt Opening Appendices C-E (composite exhibit) | sourcecode | 4/28/2022 | AEO - Source Code | H, 1006 |
| PX-0068 | JJSV_00131192 | JJSV_00131194 | K993153 FDA Approval letter for IntraLase 600C Laser Keratone | pdf | 12/17/1999 | AEO | R, H, F |
| PX-0069 | JJSV_00131484 | JJSV_00131488 | K001211 FDA Approval letter for IntraLase 600C Laser Keratone | pdf | 12/4/2000 | AEO | R H F |
| PX-0070 | JJSV_00132023 | JJSV_00132028 | K002890 FDA Approval letter for IntraLase 600C Laser Keratone | pdf | 8/9/2001 | AEO | R, H, F |
| PX-0071 | JJSV_00132409 | JJSV_00132413 | K013941 FDA Approval letter for Pulsion FS Laser Keratone | pdf | 2/27/2002 | AEO | R, H, F |
| PX-0072 | JJSV_00133097 | JJSV_00133101 | K031960 FDA Approval letter for IntraLase FS Laser Keratone | pdf | 9/29/2003 | AEO | R, H, F |
| PX-0073 | JJSV_00133388 | JJSV_00133393 | K041893 FDA Approval letter for IntraLase FS Laser | pdf | 7/29/2005 | AEO | R H F |
| PX-0074 | JJSV_00133817 | JJSV_001338 | K060372 FDA Approval letter for IntraLase FS Laser Model 1, Model 2, and the IntraLase FS30 Laser Model 3 | pdf | 8/16/2006 | AEO | R, H, F |
| PX-0075 | JJSV_00133823 | JJSV_00133823 | K063682 Original Submission - IntraLase Fusion Laser 510k Premarket Notification  given the size, available electronically in share drive folder | pdf | 12/8/2006 | Confidential | None |
| PX-0076 | JJSV_00133824 | JJSV_00133828 | K063682 510(k) Summary | pdf | 2/1/2007 | Not Confidential | None |
| PX-0077 | JJSV_00133829 | JJSV_00133829 | K073404 Original Submission - iFS Laser System 510k Premarket Notification | pdf | 12/3/2007 | Confidential | None |
| PX-0078 | JJSV_00133837 | JJSV_00133895 | K073404 iFS Laser - Additional information | pdf | 3/13/2008 | AEO | R H F |
| PX-0079 | JJSV_00133900 | JJSV_00134033 | K073404 CDRH Premarket Review Submission for K073404 (IntraLase iFS Laser System) | pdf | 4/8/2008 | AEO | R H F |
| PX-0080 | JJSV_00134034 | JJSV_00134036 | K073404 iFS Laser - Clearance Letter | pdf | 4/25/2008 | AEO | R, H, F |
| PX-0081 | JJSV_00302649 | JJSV_00302651 | FDA Correspondence re K113151 iFS Laser System | pdf | 11/21/2012 | AEO | R, H, F |
| PX-0082 | JJSV_00306964 | JJSV_00306964 | FDA letter to Alcon Manufacturing re K141852 (iFS Laser System) | pdf | 11/26/2014 | AEO | R H F ID |
| PX-0083 | JJSV_00037862 | JJSV_00038102 | K113479 (OptiMedica's Second Premarket Notification) | | 11/22/2011 | AEO | R H F 403 |
| PX-0084 | JJSV_00733759 | JJSV_00733765 | OptiMedica 510(k) Summary K113479 | | 12/21/2011 | AEO | R, H, F, 403, 106 |
| PX-0085 | JJSV_00038103 | JJSV_00040123 | OptiMedica Catalys Precision Laser System - Premarket Notification | pdf | 4/6/2012 | AEO | R, H, F, 403, 106 |
| PX-0086 | ALCON_LENSX057719 ALCON_LENSX058121 ALCON_LENSX057248 ALCON_LENSX058414 ALCON_LENSX059213 | ALCON_LENSX057971 ALCON_LENSX058413 ALCON_LENSX057461 ALCON_LENSX058783 ALCON_LENSX059222 | K082947: Volumes I - V of LenSx 510k Submission  (composite exhibit) | pdf | 9/29/2008 | AEO | None |
| PX-0087 | ALCON_LENSX270348 | ALCON_LENSX270350 | K082947 LenSx 550 Laser, Capsulotomy Indication - Request for Additional Information | pdf | 11/21/2008 | AEO | R, H, F, 403 |
| PX-0088 | ALCON_LENSX057975 | ALCON_LENSX058112 | K082947 LenSx 550 Laser, Capsulotomy Indication - K082947/S1 | pdf | 5/20/2009 | AEO | R, H, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0089 | ALCON_LENSX426673 | ALCON_LENSX426679 | Email Memorandum from Department of Health & Human Services FDA to Judy Gordon RE: K082947 | pst | 6/12/2009 | AEO | R, H, F, 403 |
| PX-0090 | ALCON_LENSX057469 | ALCON_LENSX057718 | 2009 07 08 LenSx K082947 S2 Additional Information FINAL | pdf | 7/8/2009 | AEO | R  H  F  403 |
| PX-0091 | ALCON_LENSX1432393 | ALCON_LENSX1432398 | K082947 LenSx 550 Laser  Capsulotomy Indication - Substantial Equivalence Letter | pdf | 8/14/2009 | AEO | None |
| PX-0092 | ALCON_LENSX209665 | ALCON_LENSX209721 | Response to Request for Additional Information LenSx 550 Laser System | doc | 7/6/2009 | AEO | R, H, F, 403 |
| PX-0093 | ALCON_LENSX059497 | ALCON_LENSX059722 | K092647: Volumes I-V of LenSx 510k Submission (composite exhibit) | pdf | 8/24/2009 | AEO | None |
|  | ALCON_LENSX059723 | ALCON_LENSX060014 |  |  |  |  |  |
|  | ALCON_LENSX060585 | ALCON_LENSX060905 |  |  |  |  |  |
|  | ALCON_LENSX060906 | ALCON_LENSX061064 |  |  |  |  |  |
|  | ALCON_LENSX060015 | ALCON_LENSX060226 |  |  |  |  |  |
|  | ALCON_LENSX059266 | ALCON_LENSX059490 |  |  |  |  |  |
| PX-0094 | ALCON_LENSX060238 | ALCON_LENSX060584 | Correspondence re K092647 LenSx 550, Response to email memorandum from FDA received on November 12  2009 |  | 11/30/2009 | AEO | R, H, F, 403 |
| PX-0095 | ALCON_LENSX061373 | ALCON_LENSX061375 | FDA correspondence re K092647 510(k) premarket notification |  | 12/11/2009 | AEO | None |
| PX-0096 | ALCON_LENSX064385 | ALCON_LENSX064391 | LenSx Integration/GUI Test Summary LenSx 550 Laser System, Document Version: 1.01, Corresponds to Field Release: 1.04 | pdf | 1/23/2009 | AEO | None |
| PX-0097 | ALCON_LENSX063884 | ALCON_LENSX063975 |  (composite exhibit)K094052: Volumes I-VI of LenSx 510k Submission | pdf | 12/29/2009 | AEO | Dupe |
|  | ALCON_LENSX064850 | ALCON_LENSX064941 |  |  |  |  |  |
|  | ALCON_LENSX063976 | ALCON_LENSX064046 |  |  |  |  |  |
|  | ALCON_LENSX063316 | ALCON_LENSX063501 |  |  |  |  |  |
|  | ALCON_LENSX065499 | ALCON_LENSX065663 |  |  |  |  |  |
|  | ALCON_LENSX064942 | ALCON_LENSX065116 |  |  |  |  |  |
|  | ALCON_LENSX065117 | ALCON_LENSX065299 |  |  |  |  |  |
|  | ALCON_LENSX065300 | ALCON_LENSX065498 |  |  |  |  |  |
|  | ALCON_LENSX061376 | ALCON_LENSX061756 |  |  |  |  |  |
|  | ALCON_LENSX064047 | ALCON_LENSX064104 |  |  |  |  |  |
| PX-0098 | ALCON_LENSX277022 | ALCON_LENSX277028 | FDA correspondence re K094052 - Additional information needed |  | 3/2/2010 | AEO | R  H  F  403 |
| PX-0099 | ALCON_LENSX278395 | ALCON_LENSX278611 | Correspondence re K094052/S1 Response to email memorandum dated March 2, 2010, re 510(k) Premarket Notification (K094052) |  | 3/23/2010 | AEO | R, H, F, 403 |
| PX-0100 | ALCON_LENSX279138 | ALCON_LENSX279140 | FDA correspondence re K094052 510(k) premarket notification |  | 4/23/2010 | AEO | None |
| PX-0101 | ALCON_LENSX215132 | ALCON_LENSX215380 | K100626: Volumes I-VI of LenSx 510k Submission (composite exhibit) | pdf | 6/7/2010 | AEO | None |
|  | ALCON_LENSX062531 | ALCON_LENSX062889 |  |  |  |  |  |
|  | ALCON_LENSX061922 | ALCON_LENSX062238 |  |  |  |  |  |
|  | ALCON_LENSX215381 | ALCON_LENSX215714 |  |  |  |  |  |
|  | ALCON_LENSX062239 | ALCON_LENSX062530 |  |  |  |  |  |
|  | ALCON_LENSX062890 | ALCON_LENSX063088 |  |  |  |  |  |
| PX-0102 | ALCON_LENSX282647 | ALCON_LENSX283033 | LenSx Response to 510(k) Deficiencies LenSx Laser System, Volume 1 of 1 |  | 9/3/2010 | AEO | R, H, F, 403 |
| PX-0103 | ALCON_LENSX283153 | ALCON_LENSX283155 | FDA correspondence re K100626/S1 additional information needed |  | 10/1/2010 | AEO | R, H, F, 403 |
| PX-0104 | ALCON_LENSX279141 | ALCON_LENSX279150 | FDA correspondence re K100626 additional information needed |  | 8/5/2010 | AEO | R  H  F  403 |
| PX-0105 | ALCON_LENSX283170 | ALCON_LENSX283183 | Correspondence re K101626/S2 Response to Email Memorandum |  | 10/4/2010 | AEO | R, H, F, 403 |
| PX-0106 | ALCON_LENSX102709 | ALCON_LENSX102714 | Alcon 510(k) Summary K101626 |  | 10/18/2010 | AEO | None |
| PX-0107 | ALCON_LENSX066431 | ALCON_LENSX066725 | K120732: Volumes I-X of LenSx 510k Submission (composite exhibit) | pdf | 3/8/2012 | AEO | None |
|  | ALCON_LENSX066726 | ALCON_LENSX067181 |  |  |  |  |  |
|  | ALCON_LENSX067182 | ALCON_LENSX067543 |  |  |  |  |  |
|  | ALCON_LENSX067544 | ALCON_LENSX067927 |  |  |  |  |  |
|  | ALCON_LENSX068355 | ALCON_LENSX068582 |  |  |  |  |  |
|  | ALCON_LENSX068583 | ALCON_LENSX068745 |  |  |  |  |  |
|  | ALCON_LENSX068746 | ALCON_LENSX069031 |  |  |  |  |  |
|  | ALCON_LENSX069032 | ALCON_LENSX069160 |  |  |  |  |  |
|  | ALCON_LENSX069161 | ALCON_LENSX069361 |  |  |  |  |  |
|  | ALCON_LENSX069362 | ALCON_LENSX069570 |  |  |  |  |  |
|  | ALCON_LENSX069571 | ALCON_LENSX069915 |  |  |  |  |  |
|  | ALCON_LENSX067928 | ALCON_LENSX068160 |  |  |  |  |  |
|  | ALCON_LENSX068161 | ALCON_LENSX068354 |  |  |  |  |  |
|  | ALCON_LENSX069916 | ALCON_LENSX070195 |  |  |  |  |  |
| PX-0108 | ALCON_LENSX1279546 | ALCON_LENSX1279829 | K120732 LenSx 510k Response Volume I of I | pdf | 8/8/2012 | AEO | R, H, F, 403 |
| PX-0109 | ALCON_LENSX102657 | ALCON_LENSX102662 | Alcon 510(k) Summary K120732 | pdf | 9/6/2012 | AEO | None |

3 of 22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0114 | ALCON_LENSX185091 | ALCON_LENSX185091 | K161288: Volumes 1-37 of LenSx 510k Submission (composite exhibit) | pdf | 7/1/2016 | AEO | 106 |
| | ALCON_LENSX185095 | ALCON_LENSX185095 | | | | | |
| | ALCON_LENSX185093 | ALCON_LENSX185093 | | | | | |
| | ALCON_LENSX185096 | ALCON_LENSX185096 | | | | | |
| | ALCON_LENSX185094 | ALCON_LENSX185094 | | | | | |
| | ALCON_LENSX185092 | ALCON_LENSX185092 | | | | | |
| | ALCON_LENSX185101 | ALCON_LENSX185101 | | | | | |
| | ALCON_LENSX185099 | ALCON_LENSX185100 | | | | | |
| | ALCON_LENSX185102 | ALCON_LENSX185103 | | | | | |
| | ALCON_LENSX185097 | ALCON_LENSX185098 | | | | | |
| | ALCON_LENSX185114 | ALCON_LENSX185115 | | | | | |
| | ALCON_LENSX185112 | ALCON_LENSX185113 | | | | | |
| | ALCON_LENSX185110 | ALCON_LENSX185111 | | | | | |
| | ALCON_LENSX185104 | ALCON_LENSX185109 | | | | | |
| | ALCON_LENSX185116 | ALCON_LENSX185125 | | | | | |
| | ALCON_LENSX185126 | ALCON_LENSX185137 | | | | | |
| | ALCON_LENSX185139 | ALCON_LENSX185139 | | | | | |
| | ALCON_LENSX185138 | ALCON_LENSX185138 | | | | | |
| | ALCON_LENSX185142 | ALCON_LENSX185142 | | | | | |
| | ALCON_LENSX185140 | ALCON_LENSX185141 | | | | | |
| | ALCON_LENSX185143 | ALCON_LENSX185146 | | | | | |
| | ALCON_LENSX185147 | ALCON_LENSX185249 | | | | | |
| | ALCON_LENSX185263 | ALCON_LENSX185323 | | | | | |
| | ALCON_LENSX185499 | ALCON_LENSX185522 | | | | | |
| | ALCON_LENSX185250 | ALCON_LENSX185262 | | | | | |
| | ALCON_LENSX185324 | ALCON_LENSX185498 | | | | | |
| | ALCON_LENSX010631 | ALCON_LENSX010772 | | | | | |
| | ALCON_LENSX010773 | ALCON_LENSX010911 | | | | | |
| | ALCON_LENSX010912 | ALCON_LENSX011079 | | | | | |
| | ALCON_LENSX011080 | ALCON_LENSX011253 | | | | | |
| | ALCON_LENSX011254 | ALCON_LENSX011433 | | | | | |
| PX-0115 | ALCON_LENSX192245 | ALCON_LENSX192246 | FDA correspondence re K161288 deficiency list | pdf | 9/19/2016 | AEO | R, H, F, 403 |
| PX-0116 | ALCON_LENSX301260 | ALCON_LENSX301268 | FDA correspondence re K161288 510(k) premarket notification | pdf | 11/16/2016 | AEO | None |
| PX-0120 | ALCON_LENSX206408 | ALCON_LENSX206409 | K173660: Volume 1 Sections 1-80 of LenSx 510k Submission (composite exhibit) | pdf | 11/28/2017 | AEO | 106 |
| | ALCON_LENSX204633 | ALCON_LENSX204633 | | | | | |
| | ALCON_LENSX204634 | ALCON_LENSX204639 | | | | | |
| | ALCON_LENSX204640 | ALCON_LENSX204650 | | | | | |
| | ALCON_LENSX204651 | ALCON_LENSX204652 | | | | | |
| | ALCON_LENSX204653 | ALCON_LENSX204654 | | | | | |
| | ALCON_LENSX204655 | ALCON_LENSX204660 | | | | | |
| | ALCON_LENSX204661 | ALCON_LENSX204661 | | | | | |
| | ALCON_LENSX204662 | ALCON_LENSX204666 | | | | | |
| | ALCON_LENSX207263 | ALCON_LENSX207263 | | | | | |
| | ALCON_LENSX207264 | ALCON_LENSX207264 | | | | | |
| | ALCON_LENSX207265 | ALCON_LENSX207265 | | | | | |
| | ALCON_LENSX207266 | ALCON_LENSX207266 | | | | | |
| | ALCON_LENSX204667 | ALCON_LENSX204668 | | | | | |
| | ALCON_LENSX207267 | ALCON_LENSX207268 | | | | | |
| | ALCON_LENSX207269 | ALCON_LENSX207270 | | | | | |
| | ALCON_LENSX207271 | ALCON_LENSX207272 | | | | | |
| | ALCON_LENSX206416 | ALCON_LENSX206417 | | | | | |
| | ALCON_LENSX204669 | ALCON_LENSX204670 | | | | | |
| | ALCON_LENSX206410 | ALCON_LENSX206415 | | | | | |
| | ALCON_LENSX206418 | ALCON_LENSX206434 | | | | | |
| | ALCON_LENSX206435 | ALCON_LENSX206442 | | | | | |
| | ALCON_LENSX206443 | ALCON_LENSX206448 | | | | | |
| | ALCON_LENSX206449 | ALCON_LENSX206451 | | | | | |
| | ALCON_LENSX206452 | ALCON_LENSX206452 | | | | | |
| | ALCON_LENSX206453 | ALCON_LENSX206465 | | | | | |
| | ALCON_LENSX206466 | ALCON_LENSX206466 | | | | | |
| | ALCON_LENSX206467 | ALCON_LENSX206488 | | | | | |
| | ALCON_LENSX206489 | ALCON_LENSX206489 | | | | | |
| | ALCON_LENSX207273 | ALCON_LENSX207273 | | | | | |
| | ALCON_LENSX207274 | ALCON_LENSX207274 | | | | | |
| PX-0121 | ALCON_LENSX208892 | ALCON_LENSX208957 | Correspondence re K173660 LenSx Laser System, Response to 510(k) deficiency letter dated 17-Jan-2018 | | 2/15/2018 | AEO | R, H, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0122 | ALCON_LENSX316624 | ALCON_LENSX316634 | FDA correspondence re K173660 510(k) premarket notification | | 3/27/2018 | AEO | None |
| PX-0123 | JJSV_00566922 | JJSV_00566926 | Kurtz Deposition Ex. 10: Software Configuration Control Board Review Meeting FS Model 2/3 SRCR / SPR Status Items  Software Version 1.07 | doc | 11/11/2005 | AEO | R, H, F |
| PX-0124 | | | Suzuki Deposition Ex. 12: Software Configuration Management Plan comparison between Intralase Fusion and LenSx 550 Laser | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0125 | | | Kurtz Deposition Ex. 6: Software Requirements Specifications Comparison between iFS and LenSx | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0126 | | | Kurtz Deposition Ex. 7: Software Architecture Description Comparison between iFS and LenSx | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0127 | | | Kurtz Deposition Ex. 8: Intralase Corp and Lensx Lasers presentations comparison | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0128 | | | Becker Appendix C: iFS 510(k) Authors and Signatories | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0129 | | | Becker Appendix D: LenSx 510(k) Authors and Signatories | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0130 | | | Becker Appendix E: Copied Sections of 510(k)s | | | AEO | R, H, F, 403, 106, 1002, Dupe, Demo |
| PX-0131 | JA_00000007 | JA_00000009 | Curriculum Vitae for John Alder | pdf | 1/24/2022 | Confidential | None |
| PX-0132 | | | Chaudhary Deposition Ex. 1: Curriculum Vitae of Gautam Chaudhary | | | Not Confidential | None |
| PX-0133 | | | Hatch Opening Ex. B: Curriculum Vitae of Kathryn Hatch, MD | | 3/19/2022 | Not Confidential | None |
| PX-0134 | | | Schmidt Opening Appendix A: Curriculum Vitae of Douglas Schmidt | | 4/28/2022 | Not Confidential | None |
| PX-0135 | | | Davis Rebuttal Ex. 1: LinkedIn profile of Julie L. Davis, CPA | | | Not Confidential | None |
| PX-0136 | | | Wicker Opening Ex. 1: Curriculum Vitae of Stephen B. Wicker | | | Not Confidential | None |
| PX-0137 | | | Feigal Rebuttal Appendix A: Curriculum Vitae of David W. Feigal, Jr. | | | Not Confidential | None |
| PX-0139 | | | Becker Opening Appendix A: Curriculum Vitae of Karen Becker | | | Not Confidential | None |
| PX-0140 | | | Stamm Opening Appendix A: Curriculum Vitae of Laura Stamm | | | Not Confidential | None |
| PX-0141 | | | Baer Opening Appendix A: Curriculum Vitae of Nikolaus Baer | | | Not Confidential | None |
| PX-0142 | | | Tipperman Rebuttal Exhibit B: Curriculum Vitae of Richard Tipperman | | | Not Confidential | None |
| PX-0143 | | | Golden Deposition Ex. 08: LinkedIn profile of Robert Golden | | | Not Confidential | None |
| PX-0144 | ALCON_LENSX053623 | ALCON_LENSX053625 | Peter Goldstein Curriculum Vitae | pdf | 2/24/2021 | AEO | None |
| PX-0145 | JJSV_01079035 | JJSV_01079035 | Gordon (Judy) LinkedIn Profile.pdf | pdf | 12/23/2021 | Not Confidential | None |
| PX-0146 | HU-HEG_0000797 | HU-HEG_0000801 | Resume of Imre Hegedus | | 1/25/2022 | Not Confidential | None |
| PX-0147 | ALCON_LENSX196498 | ALCON_LENSX196499 | Resume of Lynda Jeffcoat | | | Not Confidential | None |
| PX-0148 | KURTZ00002055 | KURTZ00002056 | Ron Kurtz Curriculum Vitae | doc | | Not Confidential | None |
| PX-0149 | Suarez_0003320 | Suarez_0003322 | Resume of Carlos G. Suarez | pdf | 12/8/2021 | Not Confidential | None |
| PX-0150 | SUZUKI-0026439 | SUZUKI-0026460 | John Suzuki Curriculum Vitae | pdf | 2/7/2022 | Not Confidential | R, 403, F |
| PX-0151 | ALCON_LENSX2120750 | ALCON_LENSX2120753 | Resume of Alireza Malek Tabrizi | pdf | 6/26/2019 | AEO | R, F |
| PX-0152 | | | Teodorescu Deposition Ex. 12: LinkedIn profile of Dan Teodorescu | | | Not Confidential | None |
| PX-0153 | JJSV_01079062 | JJSV_01079062 | LinkedIn profile of Kostadin Vardin | | | Not Confidential | None |
| PX-0154 | KV000222 | KV000227 | Kostadin Vardin Curriculum Vitae | | | Confidential | R, H, F, A |
| PX-0155 | | | Watanabe Deposition Ex. 2: Curriculum Vitae of Keith Watanabe | | | Not Confidential | None |
| PX-0156 | JJSV_01103468 | JJSV_01103468 | RDE Org Chart (8-27-04 draft) | xls | 8/26/2004 | AEO | R  403  H  602 |
| PX-0157 | JJSV_01103968 | JJSV_01103991 | IntraLase Org Chart | | 1/17/2006 | AEO | R, 403, H, 602 |
| PX-0158 | JJSV_00582936 | JJSV_00582936 | RD Femto Roster May08 | xls | 5/24/2008 | AEO | R, 403, H, 602 |
| PX-0159 | JJSV_01043973 | JJSV_01043974 | Organizational Chart | pdf | 9/5/2013 | AEO | R, 403, H, 602 |
| PX-0160 | JA_00000004 | JA_00000004 | Abbott Laboratories ▮▮▮▮▮▮▮▮▮▮  J. Alder (unsigned) | pdf | 10/29/2013 | AEO | R  A  F |
| PX-0161 | JA_00000001 | JA_00000003 | Employee agreement  between Abbott Laboratories and John Alder | pdf | 12/1/2013 | AEO | R, A, F |
| PX-0162 | LB_00000190 | LB_00000193 | AMO employment offer letter to Leonard Borrman | | 2/3/2004 | Confidential | R, A, F |
| PX-0163 | JJSV_00020751 | JJSV_00020756 | At-Will Employment and Intellectual Property and Arbitration Agreement between Advanced Medical Optics and Rick Duff  dated December 2008 | pdf | 12/1/2008 | Confidential | R, F |
| PX-0164 | JJSV_00020660 | JJSV_00020668 | IntraLase Corp. Employee Proprietary Information Agreement signed by Mr. Goldstein, dated August 9, 2004 | pdf | 8/9/2004 | Confidential | R, F |
| PX-0165 | JJSV_00020669 | JJSV_00020680 | Letter from Beth Reyes to Peter Goldstein attaching At-Will Employment and Intellectural Property and Arbitration Agreement | pdf | 3/30/2007 | Confidential | R, F, H |
| PX-0166 | JJSV_00342143 | JJSV_00342143 | Goldstein AMO Code of Ethics Acknowledgement for New Hires | pdf | 4/12/2007 | Confidential | R, F |
| PX-0167 | JJSV_01090073 | JJSV_01090079 | At Will Employment and Intellectual Property and Arbitration Agreement | pdf | 4/12/2007 | Confidential | R, F |
| PX-0168 | JJSV_00020681 | JJSV_00020687 | Employment Agreement between IntraLase Corp. and Peter Goldstein, effective January 3, 2000 | pdf | 5/27/2015 | Confidential | R, F, ID |
| PX-0169 | JJSV_00479124 | JJSV_00479126 | Goldstein Intralase Non-disclosure and Developments Agreement | pdf | 5/27/2015 | Confidential | R, F |
| PX-0170 | JJSV_00649123 | JJSV_00649135 | Judy Gordon Consulting Agreement | pdf | 9/1/2003 | AEO | R, F |
| PX-0171 | JJSV_01031014 | JJSV_01031026 | IntraLase Consulting Agreement with ClinReg Consulting Services  Inc. | pdf | 9/1/2003 | AEO | R  F |
| PX-0172 | HU-HEG_0000002 | HU-HEG_0000017 | Hegedus Employment agreement dated Sept. 27, 1999 and Part Time Employment Agreement Dated Dec. 16, 2000 | | 9/27/1999 | Confidential | None |
| PX-0173 | HU-HEG_0000018 | HU-HEG_0000024 | Hegedus Intralase ▮▮▮▮▮▮▮ | | 11/12/2002 | AEO | R, F, A |
| PX-0174 | HU-HEG_0000025 | HU-HEG_0000049 | Hegedus Intralase Consulting Agreements dated Nov. 15  2002 and Jan. 1  2005 | | 11/15/2002 | Confidential | None |
| PX-0175 | JJSV_00020757 | JJSV_00020769 | Hegedus-Intralase Consulting Agreement | pdf | 1/1/2005 | Confidential | R, F |
| PX-0176 | HU-HEG_0000050 | HU-HEG_0000060 | Hegedus AMO Consulting Agreement | | 1/1/2008 | Confidential | R, F, A |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0177 | JJSV_00020770 | JJSV_00020781 | Amendment No. 1 to the Consulting Agreement between IntraLase Corp. and Imre Hegedus, dated January 1, 2008 | pdf | 1/1/2008 | Confidential | R, F |
| PX-0178 | HU-HEG_0000064 | HU-HEG_0000066 | Hegedus Non-Disclosure & Developments Agreement | | 8/4/2008 | Confidential | R F A |
| PX-0179 | JJSV_00573833 | JJSV_00573834 | Kurtz  Ronald  The Story of IntraLase  Cataract & Refractive Surgery  May 2002 | pdf | 8/23/2004 | Not Confidential | R 403 H |
| PX-0180 | KURTZ00002032 | KURTZ00002041 | Kurtz ILSE Consulting Agreement 2005 | pdf | 1/1/2005 | Confidential | None |
| PX-0181 | JJSV_01030952 | JJSV_01030955 | Kurtz - Amendment to Consulting Agreement | pdf | 12/15/2006 | AEO | None |
| PX-0182 | JJSV_01032756 | JJSV_01032756 | Consulting Agreement by and between IntraLase Corp and Ronald M. Kurtz  M.D. | doc | 3/14/2007 | Confidential | R F 403 |
| PX-0183 | JJSV_00715144 | JJSV_00715145 | Email from S. Guminski to DL-BWI-WW-ALL Users re Organizational Announcement - Biren Mehta | pst | 7/29/2014 | AEO | R, H |
| PX-0184 | JJSV_00993318 | JJSV_00993325 | Biren Mehta_132008196 | pdf | 6/11/2021 | AEO | R |
| PX-0185 | Suarez_0003440 | Suarez_0003442 | Non-Disclosure and Developments Agreement between IntraLase and Carlos Suarez (unsigned) | | | Confidential | F, A |
| PX-0186 | JJSV_00540166 | JJSV_00540199 | Suzuki Consulting Agreement including NDA | PDF | 1/18/2000 | AEO | None |
| PX-0187 | JJSV_01031297 | JJSV_01031314 | Consulting Agreement between LenSx Lasers, Inc and John Suzuki | pdf | 8/28/2006 | AEO | R |
| PX-0188 | SUZUKI-0030285 | SUZUKI-0030287 | Non-Disclosure and Developments Agreement between IntraLase and John Suzuki | pdf | 6/9/2008 | AEO | R F A |
| PX-0189 | JJSV_01054258 | JJSV_01054259 | IntraLase Corp Employee Acknowledgement Form signed by Kostadin Vardin | pdf | 7/17/2006 | AEO | R, F |
| PX-0190 | JJSV_00020750 | JJSV_00020750 | Advanced  Medical Optics, Code of Ethics, Written Compliance for Terminating Employees, for Mr. Vardin,  dated January 5, 2009 | pdf | 1/5/2009 | Confidential | R, F |
| PX-0191 | JJSV_00479163 | JJSV_00479166 | Vardin Employment Docs | pdf | 5/27/2015 | Confidential | R 403 H |
| PX-0192 | JJSV_00020743 | JJSV_00020749 | At-Will Employment and Intellectual Property and Arbitration Agreement between IntraLase Corp, a subsidiary of Advanced Medical Optics, Inc., and Kostadin Vardin, dated April 3, 2007 | pdf | 5/27/2015 | Confidential | R, F |
| PX-0193 | JJSV_01031368 | JJSV_01031379 | Consulting Agreement by and between IntraLase Corp and Maureen Weiner | pdf | 1/5/2004 | AEO | R, F |
| PX-0194 | JJSV_01046955 | JJSV_01047004 | AMO Employee Handbook (revised July 2002) | pdf | 7/1/2002 | Confidential | R 403 H |
| PX-0195 | JJSV_00767721 | JJSV_00767775 | AMO Employee Handbook (revised January 2006) | | 1/1/2006 | AEO | R, 403, H |
| PX-0196 | JJSV_00020852 | JJSV_00020893 | IntraLase Corp Employee Handbook, September 2006, Version 1.1 | pdf | 9/1/2006 | Confidential | R, H, 403 |
| PX-0197 | JJSV_01046920 | JJSV_01046931 | AMO Code of Ethics | pdf | 1/1/2007 | AEO | R 403 H |
| PX-0198 | JJSV_00020659 | JJSV_00020659 | Advanced Medical Optics (AMO) Code of Ethics - Written Compliance for Terminating Employees | pdf | 4/10/2008 | Confidential | R, H, 403 |
| PX-0199 | ALCON_LENSX025889 | ALCON_LENSX025889 | LenSx Lasers Inc. Organization Charts | ppt | 1/30/2010 | AEO | R, F, 403 |
| PX-0200 | ALCON_LENSX972048 | ALCON_LENSX972048 | Alcon LenSx  Inc. Org Charts | ppt | 9/10/2010 | AEO | R F 403 |
| PX-0201 | ALCON_LENSX1153690 | ALCON_LENSX1153690 | RD org 022513 | pptx | 2/25/2013 | AEO | R F 403 |
| PX-0202 | ALCON_LENSX3626555 | ALCON_LENSX3626555 | Alcon Organizational Charts | pptx | 3/27/2013 | AEO | R, F, 403 |
| PX-0203 | ALCON_LENSX1038524 | ALCON_LENSX1038524 | LenSx Lasers, Inc. 2008 Presentation | ppt | 6/1/2008 | AEO | R, F |
| PX-0204 | ALCON_LENSX1040745 | ALCON_LENSX1040745 | 2009 Corp. Goals All Employee Success Tree Cascade Presentation | ppt | 3/2/2009 | AEO | R F |
| PX-0205 | ALCON_LENSX1049910 | ALCON_LENSX1049917 | Agreement for Consulting Services between Alcon LenSx  Inc and Blaq Labs LLC | docx | 12/1/2012 | AEO | None |
| PX-0206 | | | Leoni Deposition Ex. 3: Alcon Code of Business Conduct | pdf | 3/1/2022 | Not Confidential | R, H, F |
| PX-0207 | JA_00000010 | JA_00000010 | Conversation between J. Alder and T. Laughlin | csv | 3/3/2017 | Confidential | R, H, F, A, 403 |
| PX-0208 | ALCON_LENSX053712 | ALCON_LENSX053715 | Alcon Letter to G  Chaudhary re amending current employment arrangement | pdf | 8/23/2010 | AEO | R F 403 |
| PX-0209 | ALCON_LENSX053719 | ALCON_LENSX053753 | ██████████████ form for G. Chaudhary | pdf | 3/23/2017 | AEO | R, F, 403 |
| PX-0210 | JJSV_00767795 | JJSV_00767796 | Letter from J. Richardson to C. Suarez re continuing obligations to AMO | pdf | 12/19/2008 | AEO | R, 403, H |
| PX-0211 | JJSV_00767783 | JJSV_00767784 | Letter from Janet Richardson to David Calligori re continued obligations with AMO confidential information post employment | doc | 12/19/2008 | Confidential | R, H, F, 403 |
| PX-0212 | JJSV_00767787 | JJSV_00767788 | Letter from Janet Richardson to Guy Holland re continued obligations with AMO confidential information post employment | doc | 12/19/2008 | Confidential | R, H, F, 403 |
| PX-0213 | JJSV_00767789 | JJSV_00767790 | Letter from AMO to LenSx re Former Advanced Medical Optics Employees | doc | 12/19/2008 | Confidential | R, H, F, 403 |
| PX-0214 | JJSV_00767799 | JJSV_00767800 | Watanabe Conf reminder.doc | doc | 12/19/2008 | Confidential | R H F 403 |
| PX-0215 | JJSV_00767785 | JJSV_00767786 | Goldstein Conf reminder.doc | doc | 12/19/2008 | Confidential | R, H, F, 403 |
| PX-0216 | JJSV_00767793 | JJSV_00767794 | Raksi Conf reminder.doc | doc | 12/19/2008 | Confidential | R, H, F, 403 |
| PX-0217 | JJSV_00767791 | JJSV_00767792 | Letter from Janet Richardson to LenSx Lasers re Former Advanced Medical Optics Employees | doc | 2/17/2009 | Confidential | R, H, F, 403, A |
| PX-0218 | JJSV_00767797 | JJSV_00767798 | Letter from J. Richardson to K. Vardin advising him on his continuing confidentiality obligations to AMO | doc | 2/17/2009 | Confidential | R, H, F, 403 |
| PX-0219 | JJSV_00767795 | JJSV_00767796 | Suarez Conf reminder.doc | doc | 12/19/2009 | Confidential | R, H, F, 403 |
| PX-0220 | ALCON_LENSX3595387 | ALCON_LENSX3595396 | Correspondence to R. Golden re AMO Obligations | pdf | 10/4/2010 | AEO | R H F 403 |
| PX-0221 | ALCON_LENSX390628 | ALCON_LENSX390628 | Abbott Letter to LenSx Lasers re former Abbott Medical Optics Employee Robert Golden | pdf | 10/4/2010 | AEO | R H F 403 |
| PX-0222 | JJSV_00660253 | JJSV_00660261 | Letter from  N. Greenstone to S. Thunen at LenSx Lasers, Inc re Restrictive Covenants of Former Abbott Employees | pdf | 12/14/2010 | Confidential | R, H, F, 403 |
| PX-0223 | JJSV_00660338 | JJSV_00660340 | Locke Lord Bissell & Liddell LLP letter to Abbott Comercial Litigation re Your Letter Concerning "Restrictive Covenants of Former Abbott Employees" | pdf | 1/7/2011 | Confidential | R, H, F, 403 |
| PX-0224 | ALCON_LENSX3660238 | ALCON_LENSX3660240 | Letter From N. Greenstone to N. Huerta re LenSx and Restrictive Covenants of Former Abbott Employees | pdf | 3/11/2011 | AEO | R, H, F, 403 |
| PX-0225 | ALCON_LENSX3660236 | ALCON_LENSX3660237 | Letter from N. Huerta to N. Greenstone re Your Letter Concerning "LenSx and Restrictive Covenants of Former Abbott Employees" | pdf | 3/22/2011 | AEO | R, F, 403 |
| PX-0226 | ALCON_LENSX1046372 | ALCON_LENSX1046372 | Email from Caroline Vaughn to All LenSx Employees re New Employee Referrals | pst | 5/5/2010 | AEO | R, H, F, 403 |
| PX-0227 | ALCON_LENSX1894071 | ALCON_LENSX1894071 | Email from L. Jeffcoat to S. Mahakali and P. Essex re J. Alder resume | pst | 3/1/2017 | AEO | R, 403, F |
| PX-0228 | ALCON_LENSX1069334 | ALCON_LENSX1069334 | Email from J. Adler to I. Hegedus re Thank you for the opportunity to talk to you about Alcon and LenSx | pst | 3/6/2017 | AEO | R, 403, H, F |
| PX-0229 | JA_00000018 | JA_00000018 | Email from J. Alder to I. Hegedus re Thank you for the opportunity to talk to you about Alcon and LenSx | pst | 3/6/2017 | Confidential | R, H, F, A, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0230 | Laughlin_00006376 | Laughlin_00006376 | Email from L. Jeffcoat to T. Laughlin re Interested in some contract work? | pst | 3/7/2017 | AEO | R, H, F, A, 403 |
| PX-0231 | Laughlin_00001611 | Laughlin_00001611 | Email from T. Laughlin to M. Schoenbrun re Alcon | pst | 3/23/2017 | Not Confidential | R, H, F, A, 403 |
| PX-0232 | ALCON_LENSX1069668 | ALCON_LENSX1069669 | Email from S. Mahakali to I. Hegedus re Resources Gaps | pst | 3/24/2017 | AEO | R  403  F |
| PX-0233 | ALCON_LENSX1072044 | ALCON_LENSX1072045 | Email from P. Essex to I. Hegedus re new contractor | pst | 4/19/2017 | AEO | R  403  F |
| PX-0234 | ALCON_LENSX2472493 | ALCON_LENSX2472501 | Email from G. Holland to K. Watanabe et al re Core team member | pst | 7/6/2017 | AEO | R, 403, H, F |
| PX-0235 | ALCON_LENSX2559457 | ALCON_LENSX2559458 | Email from David Thoe to K. Watanabe re LenSx Last SW engineer | pst | 7/12/2018 | AEO | R, 403, H, F |
| PX-0236 | ALCON_LENSX1895384 | ALCON_LENSX1895385 | Email from L. Jeffcoat to D. Thoe Re Your Alcon Anniversary Lunch | pst | 5/13/2019 | AEO | R  F  403 |
| PX-0237 | ALCON_LENSX1106674 | ALCON_LENSX1106677 | Email from V. Duran to I. Hegedus, A. Malek, K. Watanabe, Z. Bor, R. Golden, K. Regis, S. Leoni re Introduction to newest RD laser team member | pst | 9/23/2019 | AEO | R, 403, H, F |
| PX-0238 | ALCON_LENSX3808704 | ALCON_LENSX3808710 | Email from Alirez Malek Tabrizi re New requests from LenSx's Reviewer.msg | msg | 1/23/2020 | AEO | R, H, F, 403 |
| PX-0239 | ALCON_LENSX3562994 | ALCON_LENSX3563057 | Welcome to Brilliant Alcon - Surgical On Boarding | pdf | 9/16/2020 | AEO | R  F |
| PX-0240 | JA_00000011 | JA_00000011 | Conversation between J. Alder and A. Malek | | 11/23/2020 | Confidential | R, H, F, A, 403 |
| PX-0241 | Laughlin_00000100 | Laughlin_00000100 | Email from A. Malek to T. McLaughlin re Hello, this is AI from AMO | pst | 12/2/2020 | Not Confidential | R, H, F, A, 403 |
| PX-0242 | ALCON_LENSX1087987 | ALCON_LENSX1087987 | Email from A. Malek to I. Hegedus re resume | pst | 1/27/2021 | AEO | R, 403, H, F |
| PX-0243 | JA_00000012 | JA_00000013 | Email from J. Alder to L. Jeffcoat re: Thank you for the opportunity to talk to you about Alcon and LenSx | | 1/20/2022 | Confidential | R, H, F, A, 403 |
| PX-0244 | ALCON_LENSX3809650 | ALCON_LENSX3809650 | L. Jeffcoat - Communications tracking chart | csv | 3/28/2022 | Confidential | R, H, F, 403 |
| PX-0245 | ALCON_LENSX992611 | ALCON_LENSX992612 | Email from Peter Goldstein re LenSx SW Knowledge Transfer Sessions | pst | 11/8/2016 | AEO | R, F, 403 |
| PX-0246 | ALCON_LENSX053489 | ALCON_LENSX053490 | Goldstein LenSx offer letter  Accepted by Goldstein May 9  2008 | pdf | 2/24/2021 | AEO | R  F  403 |
| PX-0247 | ALCON_LENSX097741 | ALCON_LENSX097742 | Prokop Letter to Goldstein re: Return of Alcon Confidential Documents | pdf | 6/23/2021 | AEO | R, 403, H |
| PX-0248 | ALCON_LENSX053497 | ALCON_LENSX053580 | LenSx employment file for Goldstein | pdf | | AEO | R, F, 403 |
| PX-0249 | ALCON_LENSX053773 | ALCON_LENSX053773 | Email from P. Goldstein to R. Kurtz et al forwarding Code of Ethics received from I. Hegedus, Fwd: This what I got | pdf | 5/28/2008 | AEO | R, 403, H, F, 106 |
| PX-0250 | HU-HEG_0000061 | HU-HEG_0000073 | Consulting Agreement between LenSx Lasers, Inc and HegeSoft, Bt. | | 8/4/2008 | AEO | None |
| PX-0251 | ALCON_LENSX053758 | ALCON_LENSX053767 | ConsultAgr_Hegedus_Imre | | 4/28/2010 | AEO | R, F, 403 |
| PX-0252 | HU-HEG_0000089 | HU-HEG_0000091 | Alcon offer letter to Hegedus for employment | | 5/6/2013 | AEO | R  403  H |
| PX-0253 | ALCON_LENSX053670 | ALCON_LENSX053679 | Hegedus Employment Agreement with Alcon | pdf | 5/6/2013 | AEO | None |
| PX-0254 | HU-HEG_0000706 | HU-HEG_0000707 | Email chain from G. Singh to I. Hegedus re SOS - Alcon network access lost | pst | 2/6/2021 | AEO | R, 403, H |
| PX-0255 | HU-HEG_0000712 | | Email "Paid Administrative Leave" | pst | 2/6/2021 | AEO | R, 403, H |
| PX-0256 | HU-HEG_0000716 | HU-HEG_0000717 | Email from G. Singh to I. Hegedus re setting up meeting | pst | 2/22/2021 | AEO | R  403  H |
| PX-0257 | ALCON_LENSX262584 | ALCON_LENSX262585 | Memo from F. Leveiller to I. Hegedus re ▓▓▓▓▓▓▓▓▓ | pdf | 2/24/2021 | AEO | None |
| PX-0258 | ALCON_LENSX053654 | ALCON_LENSX053656 | Alcon LenSx, Inc. Offer of Employment Letter to Imre Hegedus | pdf | 3/1/2021 | AEO | None |
| PX-0259 | ALCON_LENSX3805074 | ALCON_LENSX3805075 | Letter from M. Weinstein to C. Cook Re Imre Hegedus ▓▓▓▓▓▓▓ | docx | 12/7/2021 | AEO | R, 403, H, F |
| PX-0260 | ALCON_LENSX3805057 | ALCON_LENSX3805058 | Letter from J. Prokop to I. Hegedus re Affirmation and ▓▓▓▓▓ | pdf | 12/20/2021 | AEO | R  F  403 |
| PX-0261 | HU-HEG_0000464 | HU-HEG_0000466 | Letter from S. Cruz to Department of Homeland Security, United States Citizenship & Immigration Services I-129 Unit  re H1B Petition on Behalf of Mr. Imre Hegedus | | 3/20/2013 | AEO | R, 403, H |
| PX-0262 | HU-HEG_0000527 | HU-HEG_0000528 | Letter from S. Cruz to U.S. Embassy Budapest, Hungary re H1B Visa Application on Behalf of Mr. Imre Hegedus | | 9/5/2013 | AEO | R, 403, H |
| PX-0263 | ALCON_LENSX1049770 | ALCON_LENSX1049770 | Email from C. Vaughn to A. Juhasz re last day at Alcon LenSx will be Thursday, November 29th | pst | 11/5/2012 | AEO | R, 403, F |
| PX-0264 | ALCON_LENSX1049909 | ALCON_LENSX1049909 | Email from C. Vaughn to A. Juhasz re Consulting Agreement | pst | 11/27/2012 | AEO | R, 403, 106, F |
| PX-0265 | ALCON_LENSX3804968 | ALCON_LENSX3805055 | Letter to Alcon_Inc_re ▓▓▓▓▓▓▓▓▓▓ Regarding Third Party Supboena to ▓▓▓▓▓▓ - ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | pdf | 1/18/2021 | AEO | R, 403, H |
| PX-0266 | ALCON_LENSX3805056 | ALCON_LENSX3805056 | Alcon ▓▓▓▓▓▓▓▓▓▓ re AMO Development, LLC, et al. v. Alcon Vision LLC, et al., No. 20-842 (CFC) (D. Del.) | pdf | 1/28/2021 | AEO | R, F, 403 |
| PX-0267 | Suarez_0003050 | Suarez_0003050 | Carlos Suarez Email with friend Faye re: Ron Kurtz resignation | pst | 3/23/2015 | AEO | R H F A |
| PX-0268 | Suarez_0003056 | | Carlos Suarez cover letter to Regulatory Analysis Posting at Applied Medical, attaching Resume at Suarez_0003057 | | 5/27/2016 | AEO | R, H, F, A |
| PX-0269 | SUZUKI-0030282 | SUZUKI-0030284 | Consulting Agreement between LenSx Lasers, Inc and John Suzuki | pdf | 6/12/2008 | AEO | R H F A |
| PX-0271 | SUZUKI-0030282 | SUZUKI-0030284 | Consulting Agreement by and between LenSx Lasers  Inc. and John K. Suzuki | pdf | 6/12/2008 | AEO | R H F A |
| PX-0272 | SUZUKI-0026401 | SUZUKI-0026419 | Consulting Agreement between LenSx Lasers, Inc and John Suzuki | pdf | | AEO | R, H, F, A |
| PX-0273 | ALCON_LENSX053472 | ALCON_LENSX053473 | Comprehensive Agreement: Employment At-Will and Arbitration between LenSx Lasers, Inc. and Kostadin Vardin  dated January 6  2009 | pdf | 1/6/2009 | AEO | R, 403, F |
| PX-0274 | KV000010 | | Email "Alcon – LenSx" | pst | 7/25/2021 | AEO | R H F A |
| PX-0275 | ALCON_LENSX053474 | ALCON_LENSX053488 | Vardin Employment Agreement | pdf | | AEO | None |
| PX-0276 | ALCON_LENSX056482 | ALCON_LENSX056482 | Alcon employment offer letter to Keith Watanabe | pdf | 4/11/2016 | AEO | R, F, 403 |
| PX-0277 | ALCON_LENSX971498 | ALCON_LENSX971499 | Alcon welcome letter to LenSx employees | pdf | 7/6/2010 | AEO | R  F  403 |
| PX-0278 | ALCON_LENSX971496 | ALCON_LENSX971497 | Alcon (LenSx) Press Release Final | pdf | 7/6/2010 | AEO | R  F  403 |
| PX-0279 | JJSV_00403744 | JJSV_00403810 | Minutes - Action of Sole Incorporator of IntraLase Corp. ("IntraLase"), dated September 30, 1997 | pdf | 9/30/1997 | AEO | R, 403, H, F |
| PX-0280 | JJSV_00020819 | JJSV_00020851 | Unanimous Written Consent of the Board of Directors of IntraLase Corp. In Lieu of an Organizational Meeting | pdf | 10/2/1997 | Confidential | R, H, F, 403 |
| PX-0281 | JJSV_00456499 | JJSV_00456601 | Unanimous Written Consent of the Board of Directors of IntraLase Corp. including the Amended and Restated Certificate of Incorporation of IntraLase Corp., dated December 11, 1997 | pdf | 12/11/1997 | AEO | R, 403, H, F |
| PX-0282 | JJSV_01081197 | JJSV_01081260 | IntraLase Corporation Board of Directors Meeting August 4 1998 | pdf | 8/4/1998 | AEO | None |
| PX-0283 | JJSV_01119441 | JJSV_01119457 | Distributorship and Service Agreement 08.01.05 (1) | pdf | 8/4/2005 | AEO | R, 403, H, F |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0284 | JJSV_00020894 | JJSV_00020964 | Agreement and Plan of Merger by and among Advanced Medical Optics, Inc., Ironman Merger Corporation and IntraLase Corp., dated January 5, 2007 | pdf | 1/6/2007 | AEO | R, H, F, 403 |
| PX-0285 | JJSV_01051367 | JJSV_01051371 | Press Release: Advanced Medical Optics to Acquire IntraLase Corp. | pdf | 1/8/2007 | AEO | R 403 H F |
| PX-0286 | JJSV_01079447 | JJSV_01079449 | "Advanced Medical Optics to Acquire Intralase Corp.," Advanced Medical Optics, Inc., January 8, 2007, available at https://www.sec.gov/Archives/edgar/data/1163848/000119312507004587/dex991.htm | pdf | 1/8/2007 | AEO | R, 403, H, F |
| PX-0287 | JJSV_00020965 | JJSV_00021097 | Company Disclosure Schedule in connection with the Agreement and Plan of Merger among Advanced Medical Optics  Inc.  Ironman Merger and IntraLase Corp.  dated January 5  2007 | PDF | 1/16/2007 | AEO | R, H, F, 403 |
| PX-0288 | JJSV_01119507 | JJSV_01119535 | Master Plan of Reorganization | pdf | 11/8/2007 | AEO | R, 403, H, F |
| PX-0289 | JJSV_01127036 | JJSV_01127055 | Intralase(SharingCosts)4-2-07 | pdf | 11/12/2007 | AEO | R, 403, H, F |
| PX-0290 | JJSV_00022742 | JJSV_00022746 | State of Delaware Certificate of Conversation From a Corporation to a Limited Liability Company Pursuant to Section 18-214 of the Limited Liability Act, and Certificate of Formation of AMO Development  LLC | pdf | 1/3/2008 | Not Confidential | R, H, F, 403 |
| PX-0291 | JJSV_01128085 | JJSV_01128094 | Press Release, Abbott Laboratories to Buy Advanced Medical Optics, Inc. for $1.4 Billion in Eye-Care Deal (Jan. 12, 2009), https //www.biospace.com/article/releases/abbott-laboratoriesto-buy-advanced-medical-optics-inc-for-1-4-billion-in-eye-care-deal-/ | pdf | 1/12/2009 | Not Confidential | R, 403, H, F |
| PX-0292 | JJSV_01119337 | JJSV_01119362 | Amended Cost Sharing Agmt ILSE Technology_July2009_AMO Development | pdf | 7/2/2009 | AEO | R, 403, H, F |
| PX-0293 | JJSV_01126939 | JJSV_01126964 | Amended Cost Sharing Agmt ILSE Technology_July2009_AMO Development | pdf | 7/2/2009 | AEO | R, 403, H, F |
| PX-0294 | JJSV_01119366 | JJSV_01119380 | AMODevelopment&AMOSales(Distribution&License)1-1-08 | pdf | 2/14/2011 | AEO | R 403 H F |
| PX-0295 | JJSV_01127019 | JJSV_01127027 | AMOGroningen(R&DServices)6-26-04 | pdf | 2/14/2011 | AEO | R, 403, H, F |
| PX-0296 | JJSV_01127028 | JJSV_01127035 | AMOUppsala(R&DServices)6-26-04 | pdf | 2/23/2011 | AEO | R, 403, H, F |
| PX-0297 | JJSV_01119381 | JJSV_01119381 | AMO Legal Entities Chart | ppt | 4/5/2013 | AEO | R, 403, H, F |
| PX-0298 | JJSV_00017279 | JJSV_00017376 | Agreement and Plan of Merger by and among Abbott Medical Optics Inc., Nordic Merger Corporation Inc.  OptiMedica Corporation and Fortis Advisors LLC  dated July 12  2013 | pdf | 7/12/2013 | AEO | R, H, F, 403 |
| PX-0299 | JJSV_00597868 | JJSV_00598136 | Agreement And Plan Of Merger Acquisition of OptiMedica Corporation August 16, 2013 | | 7/12/2013 | AEO | R, 403, H, F |
| PX-0300 | JJSV_01079435 | JJSV_01079437 | PageVault: Abbott to Enter Laser Cataract Surgery Market through Acquisition of OptiMedica | pdf | 7/15/2013 | AEO | R 403 H F |
| PX-0301 | JJSV_01079455 | JJSV_01079456 | "Abbott Completes Acquisition of Optimedica," Abbott, August 19, 2013, available at https://abbott.mediaroom.com/2013-08-19-Abbott-Completes-Acquisition-of-OptiMedica | pdf | 8/19/2013 | AEO | R, 403, H, F |
| PX-0302 | JJSV_01079457 | JJSV_01079459 | PageVault: Abbott Completes Acquisition of OptiMedica | pdf | 8/19/2013 | AEO | R, 403, H, F |
| PX-0303 | JJSV_00599269 | JJSV_00599271 | 57  Abbott Completes Acquisition Of OptiMedica | | 8/19/2013 | Not Confidential | R 403 H F |
| PX-0304 | JJSV_01119540 | JJSV_01119540 | OptiMedica AMO SS Intercompany Distribution Agreement 6.18.14.DOC | doc | 6/20/2014 | AEO | R 403 H F |
| PX-0305 | JJSV_01119275 | JJSV_01119307 | 2014.10.01 (OptiMedica-AMORH) Optimedica Buy-in and CSA_Signed | pdf | 12/11/2014 | AEO | R, 403, H, F |
| PX-0306 | JJSV_01119542 | JJSV_01119544 | CSA Statement - Optimedica - Signed (1) | pdf | 8/29/2015 | AEO | R, 403, H, F |
| PX-0307 | JJSV_01119541 | JJSV_01119541 | ████████ Structure Chart | pptx | 9/10/2016 | AEO | R 403 H F |
| PX-0308 | JJSV_00017400 | JJSV_00017482 | Stock purchase agreement between Abbott Laboratories and Johnson & Johnson | pdf | 9/14/2016 | AEO | R H F  403 |
| PX-0309 | JJSV_00719293 | JJSV_00719327 | Johnson & Johnson Acquisition of Abbott Medical Optics, Inc. Spreadsheet | pdf | 2/27/2017 | AEO | None |
| PX-0310 | JJSV_01079452 | JJSV_01079454 | PageVault: Johnson & Johnson Completes Acquisition of Abbott Medical Optics | pdf | 2/27/2017 | Not Confidential | R, 403, H, F |
| PX-0311 | JJSV_00806195 | JJSV_00806227 | OptiMedica Corporation and AMO Regional Holdings' Amended and Restated Agreement for Sharing Intangible Development costs | pdf | 11/8/2017 | AEO | R, 403, H, F |
| PX-0312 | JJSV_01119308 | JJSV_01119332 | 2017.11.08 (AMORH-AMO) AMO Inc AMORH 2nd Amended  Restated CSA | pdf | 12/5/2017 | AEO | R, 403, H, F |
| PX-0313 | JJSV_01126965 | JJSV_01126991 | AMO Dev - AMORH 2nd Amend&Restated CostSharingAgmt | pdf | 12/5/2017 | AEO | R, 403, H, F |
| PX-0314 | JJSV_01126992 | JJSV_01127018 | AMO Mfg USA- AMORH 2nd Amend&Restated CostSharingAgmt | pdf | 12/5/2017 | AEO | R 403 H F |
| PX-0315 | JJSV_01127056 | JJSV_01127089 | Visiogen AMORH 2nd Amended  Restated CSA | pdf | 12/5/2017 | AEO | R, 403, H, F |
| PX-0316 | JJSV_00802370 | JJSV_00802378 | Step 3 -  P Assignment Agreement - fully executed - 13 December 2017 | pdf | 12/13/2017 | Confidential | R, H, F |
| PX-0317 | JJSV_00017395 | JJSV_00017398 | Certificate of incorporation of Abbott Medical Optics, Inc., changing its name to "Johnson & Johnson Surgical Vision  Inc." | pdf | 2/27/2018 | Not Confidential | R, H, F, 403 |
| PX-0318 | JJSV_01119504 | JJSV_01119504 | JJSV Cataract Product Flow - Americas Region | pdf | 5/17/2018 | AEO | R, H, F |
| PX-0319 | JJSV_01119505 | JJSV_01119505 | JJSV Refractive Equipment Flow - Americas Region | pdf | 5/17/2018 | AEO | R, H, F, Dupe |
| PX-0320 | JJSV_01119506 | JJSV_01119506 | JJSV Refractive Procedure Flow - Americas Region | pdf | 5/17/2018 | AEO | R, H, F, Dupe |
| PX-0321 | JJSV_01119545 | JJSV_01119545 | JJSV Cataract Product Flow - EAM Region | pdf | 5/17/2018 | AEO | R H F Q |
| PX-0322 | JJSV_00022747 | JJSV_00022752 | State of Delaware Certificate of Merger of Optimedica Corporation Into DMO Development, LLC | pdf | 12/13/2019 | Not Confidential | R, H, F, 403 |
| PX-0323 | JJSV_00017399 | JJSV_00017399 | Johnson & Johnson Surgical Vision, Inc. State of California Secretary of State, Statement of Information | pdf | 12/20/2019 | Not Confidential | R, H, F, 403 |
| PX-0324 | JJSV_01119365 | JJSV_01119365 | ████ go AMO Corporate Structure Chart | pptx | 1/15/2020 | AEO | R H F |
| PX-0325 | JJSV_01119334 | JJSV_01119334 | 2020 05.29 AMO Manufacturing exclusive license (WF) | pdf | 5/28/2020 | AEO | R, H |
| PX-0326 | JJSV_01119336 | JJSV_01119336 | 2020 05.29 AMO Sales exclusive license (WF) | pdf | 5/28/2020 | AEO | R, H |
| PX-0327 | JJSV_01119333 | JJSV_01119333 | 2020 05.29 AMO Manufacturing exclusive license (CV) | pdf | 5/29/2020 | AEO | R H |
| PX-0328 | JJSV_01119335 | JJSV_01119335 | 2020 05.29 AMO Sales exclusive license (CV) | pdf | 5/29/2020 | AEO | R H |
| PX-0329 | JJSV_00022718 | JJSV_00022741 | Certificate of merger reflecting the conversion of Advanced Medical Optics, Inc. into Abbott Medical Optics, Inc. | pdf | 7/7/2020 | Not Confidential | None |
| PX-0332 | JJSV_00020808 | JJSV_00020810 | Transfer and Assignment of Copyright from Johnson & Johnson Surgical Vision, Inc. to AMO Development  LLC  effective April 2  2007  dated August 21  2020 | pdf | 9/1/2020 | Confidential | Dupe |
| PX-0333 | JJSV_01119363 | JJSV_01119363 | AMO Manufacturing exclusive license (arcuate incision family) FINAL CV | pdf | 9/22/2020 | AEO | R, M L |
| PX-0334 | JJSV_01119364 | JJSV_01119364 | AMO Sales exclusive license (arcuate incision family) F NAL CV | pdf | 9/22/2020 | AEO | R, M L |
| PX-0335 | JJSV_01119536 | JJSV_01119536 | Intercompany Manufacturing Supply and License Agreement AMO Development (OptiMedica) 12.9.20 | pdf | 12/9/2020 | AEO | R, M L |
| PX-0336 | JJSV_01047006 | JJSV_01047006 | AMO Dev Merger Consent | pdf | | AEO | None |
| PX-0337 | JJSV_01047007 | JJSV_01047009 | Agreement of Merger between Optimedica and AMO Development | pdf | | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST
PageID #: 29986

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0338 | JJSV_01047010 | JJSV_01047010 | AMO Dev Merger Consent | pdf | | AEO | None |
| PX-0339 | JJSV_00727856 | JJSV_00728094 | Abbott Laboratories Purchase Price Allocation of Advanced Medical Optics | pdf | 2/26/2009 | AEO | None |
| PX-0340 | JJSV_01128015 | JJSV_01128081 | KPMG Final Abbott Optimedica ASC 805 Report 5March14 | pdf | 3/5/2014 | AEO | None |
| PX-0341 | JJSV_00727855 | JJSV_00727855 | Email from C. Cuzick to B. Ong et al re Abbott Purchase Price | pst | 4/3/2017 | AEO | None |
| PX-0342 | JJSV_00709837 | JJSV_00709837 | Fair Market Value Opinion of Legal Entities of AMO as of 2/27/17 | pdf | 3/22/2018 | AEO | None |
| PX-0343 | JJSV_01095963 | JJSV_01095963 | Q1 2020 JJSV Intangible Impairment Update DOCX | docx | 4/3/2020 | AEO | R, H, F |
| PX-0344 | JJSV_01120836 | JJSV_01120864 | IntraLase - IP Buy-In | | | AEO | R H F |
| PX-0345 | JJSV_01120869 | JJSV_01120938 | 2013 Intangible Valuation | pdf | | AEO | R H F |
| PX-0346 | JJSV_00727471 | JJSV_00727471 | AMO Deal Model | xlsx | | AEO | R, H, F |
| PX-0347 | JJSV_00653056 | JJSV_00653056 | OptiMedica Board of Directors October 30 2009 | pdf | 10/30/2009 | AEO | R, H, F |
| PX-0348 | JJSV_00652967 | JJSV_00652980 | OptiMedica Board of Directors Executive Session February 18 2010 | pdf | 2/18/2010 | AEO | R, H, F |
| PX-0349 | JJSV_00071125 | JJSV_00071193 | OptiMedica Board of Directors Presentation | pdf | 4/21/2010 | AEO | R, H, F |
| PX-0350 | JJSV_00130579 | JJSV_00130617 | December 2010 Board Meeting | pptx | 12/13/2010 | AEO | R, H, F |
| PX-0351 | JJSV_01084558 | JJSV_01084588 | OptiMedica February 2011 Board meeting | | 2/23/2011 | AEO | R, H, F |
| PX-0352 | JJSV_01084521 | JJSV_01084543 | April 2011 Board Meeting | | 4/27/2011 | AEO | R H F |
| PX-0353 | JJSV_00261849 | JJSV_00261891 | June 2011 OptiMedica Board meeting | pptx | 6/9/2011 | AEO | R, H, F |
| PX-0354 | JJSV_01084493 | JJSV_01084514 | June 2011 Board meeting | | 6/9/2011 | AEO | R, H, F |
| PX-0355 | JJSV_01084412 | JJSV_01084442 | OptiMedica July 2011 Board Meeting | pdf | 7/29/2011 | AEO | R, H, F |
| PX-0356 | JJSV_01084392 | JJSV_01084411 | OptiMedica Board of Directors December 16 2011 | | 12/16/2011 | AEO | R H F |
| PX-0357 | JJSV_00479197 | JJSV_00479257 | OptiMedica Corporate Overview to AMO: Feb 1, 2012 | | 2/1/2012 | AEO | R, H, F |
| PX-0358 | JJSV_01084301 | JJSV_01084335 | OptiMedica Board of Directors April 26 2012 | | 4/26/2012 | AEO | R, H, F |
| PX-0359 | JJSV_00652364 | JJSV_00652386 | OptiMedica Board of Directors June 26 2012 | | 6/26/2012 | AEO | R, H, F |
| PX-0360 | JJSV_00652324 | JJSV_00652343 | OptiMedica Board of Directors October 25 2012 | | 10/25/2012 | AEO | R H F |
| PX-0361 | JJSV_00652292 | JJSV_00652323 | OptiMedica Board of Directors February 20 2013 | pdf | 2/20/2013 | AEO | R, H, F, MIL |
| PX-0362 | JJSV_01084146 | JJSV_01084177 | OptiMedica Board of Directors February 20 2013 | | 2/20/2013 | AEO | R, H, F |
| PX-0363 | JJSV_01030352 | JJSV_01030459 | Project Nordic Final Diligence Reports On OptiMedica | pdf | 5/1/2013 | AEO | R H F |
| PX-0364 | ALCON_LENSX3713850 | ALCON_LENSX3713881 | Ernst & Young Financial Statements for LenSx Lasers  inc. | pdf | 12/31/2009 | AEO | R H F |
| PX-0365 | ALCON_LENSX375694 | ALCON_LENSX375695 | Letter from W. Fabisiak to R. Frey (LensAR) re interest in Alcon's interest in femtosecond laster technology for cataract surgery | pdf | 1/6/2010 | AEO | R, H, F |
| PX-0366 | ALCON_LENSX375704 | ALCON_LENSX375772 | LensAR Incorporated  Report | pdf | 2/2/2010 | AEO | R H F |
| PX-0367 | ALCON_LENSX3810332 | ALCON_LENSX3810332 | Femtosecond Laser for Lens Removal Surgery Presentation | ppt | 3/10/2010 | Confidential | R H F |
| PX-0368 | ALCON_LENSX3640633 | ALCON_LENSX3640660 | PMC Presentation - LenSx Lasers, Inc. | pdf | 4/6/2010 | AEO | R, H, F |
| PX-0369 | ALCON_LENSX105941 | ALCON_LENSX105969 | PMC Presentation - LenSx Lasers April 6, 2010 | pdf | 4/6/2010 | AEO | R, H, F |
| PX-0370 | ALCON_LENSX3810556 | ALCON_LENSX3810557 | Email to T. Hudnall re LenSx Proposal | pst | 4/8/2010 | Confidential | R F 403 |
| PX-0371 | ALCON_LENSX105988 | ALCON_LENSX106040 | Alcon Presentation re Impact of FS Laser on Cataract Market  Market Uptake Model | pdf | 4/16/2010 | AEO | R H |
| PX-0372 | ALCON_LENSX211164 | ALCON_LENSX211167 | Term Sheet - Outline of Key Financial Terms and Provisions | pdf | 4/21/2010 | AEO | R, F |
| PX-0373 | ALCON_LENSX212406 | ALCON_LENSX212437 | FINAL 1001-1124252_OC LenSx Lasers, Inc FS 2009 | pdf | 4/27/2010 | AEO | None |
| PX-0374 | ALCON_LENSX213132 | ALCON_LENSX213132 | FINAL DEAL MODEL ▮▮▮ 05 3 2010 | xls | 5/3/2010 | AEO | R H F |
| PX-0375 | ALCON_LENSX262789 | ALCON_LENSX262789 | Shelley Thunen email subject "Item 4.1.22" re: Software, Ownership, and QNX | pst | 5/6/2010 | AEO | None |
| PX-0376 | ALCON_LENSX3643924 | ALCON_LENSX3643933 | Executive Summary: Acquisition of LenSx Lasers, Inc. | pst | 5/10/2010 | AEO | R, F |
| PX-0377 | ALCON_LENSX3813695 | ALCON_LENSX3813700 | Email from K. Klein to T. Hudnall re ▮▮▮▮ eROOM DD List | pst | 5/10/2010 | Confidential | R, H, F, 403 |
| PX-0378 | ALCON_LENSX3813841 | ALCON_LENSX3813841 | Cataract Surgery Market | pptx | 5/13/2010 | AEO | R F A  403 |
| PX-0379 | ALCON_LENSX3815302 | ALCON_LENSX3815303 | Email chain from G. Brown to T.Ryder et al. re ▮▮▮▮ | pst | 5/28/2010 | Confidential | R, H, F |
| PX-0380 | ALCON_LENSX3815309 | ALCON_LENSX3815309 | Email to T. Hudnall re ▮▮ DD Presentation ppt | pst | 6/1/2010 | Confidential | R, H, F, 106 |
| PX-0381 | ALCON_LENSX105726 | ALCON_LENSX105747 | Email chain from J. West to L. Rosser re Materials for Telephonic Board Meeting, with attachment | pdf | 6/17/2010 | AEO | R, F |
| PX-0382 | ALCON_LENSX215898 | ALCON_LENSX215905 | ▮▮▮▮ Deal Terms | doc | 6/30/2010 | AEO | R, H, F, 403 |
| PX-0383 | ALCON_LENSX003673 | ALCON_LENSX003701 | Minutes of the Telephonic Meeting of the Board of Directors of LenSx Lasers, Inc. | pdf | 6/30/2010 | AEO | None |
| PX-0384 | ALCON_LENSX3826220 | ALCON_LENSX3826255 | LenSx Integration Planning Presentation | docx | 7/1/2010 | AEO | None |
| PX-0385 | ALCON_LENSX002914 | ALCON_LENSX003034 | Stock Purchase Agreement between Alcon Holdings, Inc. and LenSx Lasers, Inc. and The Shareholders Listed Herein and William Link and James Garvey as the Sellers' Representatives | pdf | 7/6/2010 | AEO | R, F, F |
| PX-0386 | ALCON_LENSX3827074 | ALCON_LENSX3827075 | Email from Corporate Communications re Message from Kevin Behler | pst | 7/6/2010 | Confidential | None |
| PX-0387 | ALCON_LENSX3662565 | ALCON_LENSX3662567 | "Alcon to Acquire LenSx Lasers, Inc., Developer of Femtosecond Laser Technology for Increased Precision of Manual Surgical Steps during Cataract Surgery," Alcon, July 6, 2010, available at https://www.sec.gov/Archives/edgar/data/1167379/000116737910000110/acl6k0708lensxex991 | pdf | 7/6/2010 | Not Confidential | R, H, F, 403 |
| PX-0388 | JJSV_00456496 | JJSV_00456498 | Article entitled "Investor Glee as LenSx Agrees $744M buy-out" | pdf | 7/7/2010 | Not Confidential | R H F 403 |
| PX-0389 | ALCON_LENSX3827368 | ALCON_LENSX3827373 | Email chain from T. Hudnall to C. Freed re ▮▮▮▮ eROOM DD List | pst | 7/9/2010 | Confidential | R, H, F, 403, 106 |
| PX-0390 | ALCON_LENSX3827394 | ALCON_LENSX3827397 | Email chain from T. Hudnall to C. Freed re LenSx acquisition | pst | 7/9/2010 | Confidential | R, F |
| PX-0391 | ALCON_LENSX003468 | ALCON_LENSX003493 | Escrow Agreement among Alcon Holdings, Inc., William Link and James Garvey and JPMorgan Chase Bank | pdf | 8/18/2010 | AEO | None |
| PX-0392 | ALCON_LENSX004198 | ALCON_LENSX004202 | Delaware Secretary of State Certificate for Alcon LenSx Name Change | pdf | 9/2/2010 | Not Confidential | R, F, F |
| PX-0393 | ALCON_LENSX216230 | ALCON_LENSX216316 | Alcon Holdings, Inc. Valuation Analysis of Certain Assets of LenSx, Inc. as of August 18, 2010 presentation | pdf | 11/15/2010 | AEO | R, H, F |
| PX-0394 | ALCON_LENSX0998345 | ALCON_LENSX0998345 | Preliminary Assessment of Change in Legal Entity for the LenSx Laser System | docx | 5/21/2015 | AEO | R, F |
| PX-0395 | ALCON_LENSX3714583 | ALCON_LENSX3714586 | Application for Registration of a Foreign For-Profit Corporation, Form 301 | pdf | 10/3/2018 | AEO | R, F |
| PX-0396 | ALCON_LENSX3805063 | ALCON_LENSX3805073 | Limited Liability Company Agreement of Alcon Research, LLC | pdf | 12/4/2018 | AEO | R, F |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0397 | ALCON_LENSX003461 | ALCON_LENSX003467 | Stock Purchase Agreement Exhibit B: Seller DistributionSchedule Updated as of closing | pdf | 1/13/2021 | AEO | R, F, H, F, 106 |
| PX-0398 | ALCON_LENSX095354 | ALCON_LENSX095359 | Written Consent of the Board of Directors of Alcon LenSx, Inc. re Approval of Plan of Merger | pdf | 4/26/2021 | AEO | R, F |
| PX-0399 | ALCON_LENSX095360 | ALCON_LENSX095365 | Written Consent of the Board of Directors Alcon Research  LLC re Approval of Plan of Merger | pdf | 4/26/2021 | AEO | R F |
| PX-0400 | ALCON_LENSX095366 | ALCON_LENSX095368 | Written Consent of the Stockholder of Alcon LenSx  Inc.re Plan of Merger | pdf | 4/26/2021 | AEO | R F |
| PX-0401 | ALCON_LENSX095351 | ALCON_LENSX095353 | Plan of Merger between Alcon LenSX , Inc. and ALcon Research LLC | pdf | 4/27/2021 | Confidential | R, F |
| PX-0402 | ALCON_LENSX095193 | ALCON_LENSX095198 | Patent License between Alcon Inc., Alcon Research, and Alcon Vision | pdf | 4/28/2021 | AEO | R, F |
| PX-0403 | ALCON_LENSX095199 | ALCON_LENSX095201 | Certificate of merger reflecting the conversion of Alcon LenSx into Alcon Research  LLC | pdf | 4/28/2021 | AEO | R F |
| PX-0404 | ALCON_LENSX3715277 | ALCON_LENSX3715280 | Alcon Routing information re Consent in Lieu of Meeting of the Board of Directors - Consent to Merge LenSx 401(k) into Alcon 401(k) | pdf | | AEO | R, F |
| PX-0405 | JJSV_00582922 | JJSV_00582922 | Femto RD Quarterly Review Q208 Presentation v2 | ppt | 7/16/2005 | AEO | R, H, F |
| PX-0406 | ALCON_LENSX1108857 | ALCON_LENSX1108857 | IntraLase Corporate Presentation | PPT | 8/1/2006 | AEO | R H F  MIL |
| PX-0407 | JJSV_01102368 | JJSV_01102368 | Email from R. Kurtz to B. Palmisano cc Shelley Thunen et al re interest in new venture, with attachment | pst | 10/11/2006 | AEO | R, H, F, 106 |
| PX-0408 | JJSV_00582919 | JJSV_00582919 | Corneal Refractive - Femto 5-yr Product & Technology Roadmap May 2008 Version 2 Michael Brownell | ppt | 5/11/2007 | AEO | R, H, F |
| PX-0409 | JJSV_00582918 | JJSV_00582918 | AMO Competitor Pipeline Map & Project Paragraphs Presentation | ppt | 5/29/2008 | AEO | R, H, F |
| PX-0410 | JJSV_00577753 | JJSV_00577753 | IntraLase Competitive Analysis Presentation | ppt | 11/3/2009 | AEO | R, H, F |
| PX-0411 | JJSV_00579956 | JJSV_00579956 | Abbott Femto Phaco Market Dynamics Presentation | ppt | 9/29/2010 | AEO | R, H, F |
| PX-0412 | JJSV_01093197 | JJSV_01093205 | Global Marketing Plan 22Feb2011 | doc | 2/23/2011 | AEO | R H F  MIL 403 |
| PX-0413 | JJSV_01079794 | JJSV_01079794 | Laser Refractive Cataract Surgery (LRCS) Strategy Analysis Presentation | ppt | 4/20/2011 | AEO | R, H, F |
| PX-0414 | JJSV_01102369 | JJSV_01102369 | IntraLase Board of Directors Summary Presentation | ppt | 10/11/2006 | AEO | R, H |
| PX-0415 | JJSV_01102332 | JJSV_01102332 | BRIDGE#4.DOC-1.doc | doc | 12/7/2006 | AEO | R, H, F |
| PX-0416 | JJSV_00535176 | JJSV_00535191 | Minutes of the Meeting of the Board of Directors of Intralase Corp. - 0103 09 Minutes - October 2006 | pdf | 12/28/2006 | AEO | R, H, F |
| PX-0417 | JJSV_00575756 | JJSV_00575758 | Email from B. Palmisano to R. Kurtz re Followup | pst | 1/9/2007 | AEO | R, H, F |
| PX-0418 | JJSV_01032782 | JJSV_01032782 | Patent License Agreement by and between IntraLase  Inc. and LenSx Lasers Inc. | doc | 1/10/2007 | AEO | R H F |
| PX-0419 | JJSV_01102325 | JJSV_01102325 | RK consulting amendment 2-22-07 redl.doc | doc | 2/23/2007 | AEO | R H F |
| PX-0420 | JJSV_01102324 | JJSV_01102324 | Revised Documents | | 2/23/2007 | AEO | R, H, F |
| PX-0421 | ALCON_LENSX3805103 | ALCON_LENSX3805105 | Email re: AMO from Kurtz to Juhasz/Weinberg | pst | 1/13/2008 | AEO | R, H, F |
| PX-0422 | ALCON_LENSX3805485 | ALCON_LENSX3805488 | Proposed Licensing Arrangement between AMO and LenSxv2.doc | doc | 4/28/2008 | AEO | R H F |
| PX-0423 | ALCON_LENSX3805133 | ALCON_LENSX3805136 | LenSx Laser  Inc. Proposal for a Commercial Relationship between AMO and LenSx Lasers | pdf | 4/29/2008 | AEO | R H F |
| PX-0424 | ALCON_LENSX3805146 | ALCON_LENSX3805146 | Email from S. Thunen to R. Kurtz, E. Weinberg re Presentation for discussion today at 2 pm | pst | 5/5/2008 | AEO | R, H, F |
| PX-0425 | ALCON_LENSX3805147 | ALCON_LENSX3805147 | AMO-LenSx Lasers Discussion  sbt suggestions 1 | ppt | 5/6/2008 | AEO | R, H, F, 403 |
| PX-0426 | ALCON_LENSX3805080 | ALCON_LENSX3805082 | Proposed Licensing Arrangement between AMO and LenSx doc | doc | 6/27/2008 | AEO | R H F |
| PX-0427 | ALCON_LENSX3805548 | ALCON_LENSX3805573 | LenSx AMO Board 011210 v1 pptx | pptx | 1/4/2010 | AEO | R F Q |
| PX-0428 | JJSV_00479298 | JJSV_00479323 | LenSx Laser, Inc.'s Presentation to Abbott Medical Optics | | 2/5/2010 | AEO | None |
| PX-0429 | JJSV_01047805 | JJSV_01047805 | LenSx Lasers, Inc. Presentation | pptx | 2/5/2010 | AEO | None |
| PX-0430 | ALCON_LENSX1108854 | ALCON_LENSX1108856 | Analysis63010.docx | docx | 7/1/2010 | AEO | R H F  403 |
| PX-0432 | JJSV_01102326 | JJSV_01102326 | Patent License Agreement 2-22-07 redl.doc | doc | | AEO | R, H, F |
| PX-0433 | JJSV_01102351 | JJSV_01102351 | Investment/Licenses | | | AEO | R, H, F |
| PX-0434 | JJSV_01102352 | JJSV_01102355 | BRIDGE#2.DOC | doc | | AEO | R, H, F |
| PX-0435 | ALCON_LENSX215742 | ALCON_LENSX215742 | Alcon Diligence Meeting Slides - Finance / BD | ppt | 6/14/2010 | AEO | R F |
| PX-0436 | ALCON_LENSX975474 | ALCON_LENSX975476 | Email from Peter Goldstein to Tracy Wood re FDA Clears Abbott's iFS Laser Cataract Surgery | pst | 4/25/2012 | AEO | R, H, F |
| PX-0437 | JJSV_00545253 | JJSV_00545261 | Intralase quote/sales contract to for purchase of the IntraLase FS Laser | pdf | 9/3/2003 | AEO | R, H, F, 403 |
| PX-0438 | JJSV_01054248 | JJSV_01054250 | IntraLase quote/sales contract to for purchase of the IntraLase FS Laser | pdf | 6/17/2005 | AEO | R, H, F, 403 |
| PX-0439 | JJSV_01054243 | JJSV_01054247 | IntraLase Corp. Terms and Conditions for Acquisition and Use of Equipment, Per Procedure Fee and Other Products and Services | pdf | 8/29/2006 | AEO | R, H, F |
| PX-0440 | JJSV_00545262 | JJSV_00545269 | 19.02.02 Quote 6 - Signed | pdf | 9/19/2006 | AEO | R, H, F |
| PX-0441 | JJSV_00936874 | JJSV_00936895 | Johnson & Johnson Vision Equipment Agreement | pdf | 3/19/2021 | AEO | R H F |
| PX-0442 | JJSV_00599562 | JJSV_00599565 | Catalys Rental Agreement 040814 Final signed (3) | pdf | 8/6/2014 | AEO | R, H, F, 403 |
| PX-0443 | JJSV_00658063 | JJSV_00658063 | Johnson & Johnson Vision Equipment Rental Agreement Draft | doc | 8/5/2020 | AEO | R, H, F |
| PX-0444 | JJSV_00020652 | JJSV_00020652 | Catalys All Inclusive Quarterly Pricing Table including CoS6  SM 072220.doc | doc | 2/20/2021 | AEO | R H F  403 |
| PX-0445 | JJSV_00020651 | JJSV_00020651 | Johnson & Johnson Vision Equipment Rental Agreement (All Inclusive Operating Lease) | doc | 2/20/2021 | AEO | R H F |
| PX-0446 | JJSV_00658124 | JJSV_00658140 | LenSx Flex Agreement with Verion | docx | 12/22/2014 | AEO | R, H, F, 403 |
| PX-0447 | ALCON_LENSX1654391 | ALCON_LENSX1654395 | 100073723 LenSx Rental_Executed 08.15.17 | pdf | 8/15/2017 | AEO | R, H, F |
| PX-0448 | ALCON_LENSX1820022 | ALCON_LENSX1820027 | Equipment Usuage Agreement - Signed Contract | pdf | 2/7/2019 | AEO | R H F |
| PX-0449 | ALCON_LENSX1820090 | ALCON_LENSX1820096 | 100410064 - Signed | pdf | 11/6/2019 | AEO | R H F |
| PX-0450 | ALCON_LENSX3638871 | ALCON_LENSX3638878 | Equipment Usage Agreeement: PN-042627 0100089323 | docx | 11/18/2021 | AEO | R, H, F |
| PX-0451 | ALCON_LENSX3638859 | ALCON_LENSX3638864 | Equipment Financing Agreeement: PN-042804 0100102739 | docx | 11/19/2021 | AEO | R, H, F |
| PX-0452 | ALCON_LENSX3638835 | ALCON_LENSX3638850 | Equipment Financing Agreeement: PN-043464 0100502067 | docx | 12/16/2021 | AEO | R, H, F |
| PX-0453 | JJSV_00021098 | JJSV_00021187 | IntraLase FS™ Laser Operator's Manual (2006) | pdf | 11/20/2006 | Confidential | None |
| PX-0454 | JJSV_00019007 | JJSV_00019249 | Catalys Precision Laser System Operator Manual | pdf | 8/1/2016 | Confidential | R, H, F, 403 |
| PX-0455 | ALCON_LENSX211056 | ALCON_LENSX211072 | LenSx Operators Manual (Alcon version) | docx | 4/15/2010 | AEO | H, F, Dupe |
| PX-0456 | ALCON_LENSX002306 | ALCON_LENSX002378 | LenSx Core Tech Docs: LenSx Operator Manual (Feb. 2011) | pdf | 2/1/2011 | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0457 | ALCON_LENSX074941 | ALCON_LENSX075154 | LenSx Operator Manual 2012 10 02 LenSx 510(k) SoftFit Patient Interface VOLUME I OF I F NAL K123120 | pdf | 10/2/2012 | AEO | None |
| PX-0458 | ALCON_LENSX109624 | ALCON_LENSX109731 | 80-0001-002 - LenSx Operator's Manual (Rev B) | pdf | 9/1/2017 | AEO | None |
| PX-0459 | ALCON_LENSX3252382 | ALCON_LENSX3252501 | LenSx Operator Manual (Sept. 2017) | pdf | 9/15/2017 | AEO | None |
| PX-0460 | ALCON_LENSX3593462 | ALCON_LENSX3593593 | LenSx Operator Manual (Aug. 2018) | pdf | 9/18/2018 | AEO | None |
| PX-0461 | ALCON_LENSX026886 | ALCON_LENSX027017 | LenSx Laser System Operator's Manual | pdf | 9/19/2018 | AEO | None |
| PX-0462 | ALCON_LENSX1764459 | ALCON_LENSX1764590 | LenSx Laser Operator's Manual | pdf | 11/20/2018 | AEO | None |
| PX-0463 | ALCON_LENSX2601948 | ALCON_LENSX2602082 | LenSx Operator's Manual | pdf | 5/20/2020 | AEO | None |
| PX-0464 | ALCON_LENSX020244 | ALCON_LENSX020363 | Alcon's LenSx Operator's Manual | pdf | | AEO | None |
| PX-0465 | JJSV_00574747 | JJSV_00574810 | RD&E projects and priorities 2005 | doc | 10/2/1999 | AEO | ID, R, H, F |
| PX-0466 | SUZUKI-0013675 | SUZUKI-0013718 | IntraLase Corp Software Configuration Management Plan | doc | 11/28/1999 | AEO | R 403 H F |
| PX-0467 | JJSV_00552447 | JJSV_00552447 | Advances in Ophthalmology, Markets in the Treament of Eye Disorders and Corrective Vision July 2006 | pst | 6/19/2000 | AEO | ID, R, H, F, Dupe |
| PX-0468 | JJSV_00571407 | JJSV_00571407 | FS2 General Requirements - Pulsion FS Laser Cornea Cutting System Document No. 75040, Draft 0.4 | doc | 8/5/2002 | AEO | R, 403, H, F |
| PX-0469 | JJSV_00556260 | JJSV_00556261 | IntraLase meeting minutes | doc | 9/16/2002 | AEO | H, F, 403 |
| PX-0470 | SUZUKI-0015023 | SUZUKI-0015033 | IntraLase Corp. Software Change Control Procedure RD-010 | doc | 1/22/2003 | AEO | R, 403, H, F |
| PX-0471 | JJSV_00556074 | JJSV_00556074 | Draft "Software Requirements Specification" | doc | 2/27/2003 | AEO | R, 403, H, F |
| PX-0472 | JJSV_00628358 | JJSV_00628380 | Software Configuration Management Plan IntraLase FS2 Laser System Document Version 1 01 | | 6/10/2003 | AEO | ID Dupe R 403 H F |
| PX-0473 | JJSV_00577247 | JJSV_00577250 | Software Requirements Sepcification IL 600c Laser Corneal Flap Cutting SYstem Verison: 1.00 September 26, 1999 | doc | 1/23/2004 | AEO | R, H, F, 403, Dupe |
| PX-0474 | JJSV_00883164 | JJSV_00883167 | IntraLase Corp., Software Coding Standards Procedure | | 2/9/2004 | AEO | H, F |
| PX-0475 | JJSV_00556367 | JJSV_00556367 | FS2 Release Notes  Software Version 1.00 | doc | 4/23/2004 | AEO | R H F |
| PX-0476 | JJSV_00556378 | JJSV_00556381 | Software Configuration Release Information: SoftwareReleaseAudit_100.doc | doc | 4/28/2004 | AEO | ID, R, H, F |
| PX-0477 | JJSV_00567257 | JJSV_00567257 | Email from P. Goldstein to J. Suzuki re Some basic checks for memory problems | xls | 10/25/2004 | AEO | R, 403, H, F |
| PX-0478 | JJSV_00881413 | JJSV_00881413 | IntraLase Trees 1.14 05  eng - All Company Meeting PowerPoint Slides | ppt | 11/11/2004 | AEO | R 403 H F |
| PX-0479 | JJSV_00642958 | JJSV_00643035 | Software Requirements Specification IntraLase FS Laser Model 1 Version 2.31.03 | | 2/7/2005 | AEO | R 403 H F |
| PX-0480 | JJSV_00882938 | JJSV_00882938 | 2005 Engineering Success Tree PowerPoint Slides | ppt | 3/9/2005 | AEO | R, H, F, 403, Dupe |
| PX-0481 | JJSV_00577235 | JJSV_00577246 | RD-010E  Software Change Control Procedure.doc | doc | 7/12/2005 | AEO | R, H, F, 403, Dupe |
| PX-0482 | JJSV_00566936.1 | JJSV_00566936.4 | Design review record for Model 2-3 Microscope Redesign | | 8/31/2005 | AEO | R 403 H F |
| PX-0483 | JJSV_01103992 | JJSV_01104014 | Intralase Total 2006 Operating Plan | pdf | 11/24/2005 | AEO | R H F 403 |
| PX-0484 | JJSV_00536208 | JJSV_00536345 | 2005-2006 FS2/3 Design History File | pdf | 1/6/2006 | AEO | R, 403, H |
| PX-0485 | JJSV_00578554 | JJSV_00578555 | Email to Peter Goldstein RE: FS2 SCCB - retrace fix background | pst | 1/17/2006 | AEO | R, H, F, 403 |
| PX-0486 | JJSV_00283990 | JJSV_00283991 | Letter from C. Suarez to J. Gordon re 510(k) comments | doc | 1/19/2006 | AEO | R H F 403 |
| PX-0487 | JJSV_00628120 | JJSV_00628122 | FS2 Laser system software review meeting minutes | | 1/20/2006 | AEO | R H F 403 |
| PX-0488 | JJSV_00626641 | JJSV_00626834 | Software Detailed Design Description IntraLase FS Model 2 Laser Version 1.08.01 February 27 2006 | | 2/27/2006 | AEO | R, H, F, 403 |
| PX-0489 | JJSV_00655050 | JJSV_00655074 | Software Architecture Description INTRALASE FS Model 2 Laser Version: 1.08.01 | pdf | 2/27/2006 | AEO | R H F 403 |
| PX-0490 | JJSV_00586726 | JJSV_00586756 | Product Development Group Team Meeting May 12, 2006 | ppt | 5/12/2006 | AEO | R, H, F, 403 |
| PX-0491 | JJSV_00287179 | JJSV_00287179 | Email correspondence from C. Suarez to H. Shah et al re attached Content Guidance for Premarket Submission of Software | pst | 7/27/2006 | AEO | R, H, F |
| PX-0492 | JJSV_00570442 | JJSV_00570453 | RD-010E  Software Change Control Procedure.doc | doc | 8/22/2006 | AEO | R H F 403 Dupe |
| PX-0493 | JJSV_01072442 | JJSV_01072622 | IntraLase Board of Directors Meeting Presentation | ppt | 10/17/2006 | AEO | R, H, F, 403 |
| PX-0494 | JJSV_01046918.00522 | JJSV_01046918.00544 | IntraLase Corporation Software Configuration Management Plan | | 11/9/2006 | AEO | R, H, F, 403 |
| PX-0495 | JJSV_01051513 | JJSV_01051561 | Draft AMO Board of Directors Presentation, Poject Marathon | pdf | 12/29/2006 | AEO | R, H, F, 403 |
| PX-0496 | JJSV_00624607 | JJSV_00624608 | Software Requirements Specification for Fusion Project  Meeting Minutes | | 2/22/2007 | AEO | R H F 403 |
| PX-0497 | JJSV_00625351 | JJSV_00625352 | Software Detailed Design Description for Fusion Project, Meeting Minutes | | 2/22/2007 | AEO | R, H, F, 403 |
| PX-0498 | JJSV_00625377 | JJSV_00625380 | Software Architecture Design for Fusion Project, Meeting Minutes | | 2/22/2007 | AEO | R, H, F, 403 |
| PX-0499 | JJSV_00644666 | JJSV_00644782 | FS Model 2/3 Software Requirements Specification IntraLase FS Model 2/3 Laser Version 1.11 01 | | 3/8/2007 | AEO | R, H, F, 403 |
| PX-0500 | JJSV_00654941 | JJSV_00655049 | FS Model 2 Software Requirements Specification INTRALASE FS Model 2 Laser Version: 1.08 03 | pdf | 3/8/2007 | AEO | R, H, F, 403 |
| PX-0501 | JJSV_00557704 | JJSV_00557755 | IntraLase SPR/SRCR Summary Sheet, INTRALASE FS Model 2/3 Laser System Document Version 1.10  Corresonds to Field Release: 1.11 | doc | 3/19/2007 | AEO | R, H, F, 403 |
| PX-0502 | JJSV_00580787 | JJSV_00580787 | Email from C. Suarez to K. Watanabe re Custom Flap Requirements (Alpha) | pst | 7/16/2007 | AEO | R, H, F, 403 |
| PX-0503 | JJSV_00555779 | JJSV_00555817 | SPR/SRCR Summary Sheet IntraLase FS Model 1 Laser System v130 | doc | 9/18/2007 | AEO | R, H, F, 403 |
| PX-0504 | JJSV_00645969 | JJSV_00646007 | SPR SRCR Summary Sheet IntraLase FS Model 1 Laser System Document Version 1.30 Corresponds to Field Release 2.44 | | 9/18/2007 | AEO | R, H, F, 403 |
| PX-0505 | JJSV_00646017 | JJSV_00646045 | Software Configuration Release Information IntraLase FS Model 1 Laser System Document Version 1.30 Corresponds to Field Release 2.44 | | 9/18/2007 | AEO | R, H, F, 403 |
| PX-0506 | JJSV_00640817 | JJSV_00640818 | Software Requirements Specification for iFS Project  Meeting Minutes | | 10/15/2007 | AEO | R H F 403 |
| PX-0507 | JJSV_00641002 | JJSV_00641003 | IntraLase Memo from L. Jeffcoat re Review of Software Architecture Design (SAD) for iFS Project, Meeting Minutes | | 10/15/2007 | AEO | R, H, F, 403 |
| PX-0508 | | | Suarez Deposition Ex. 10 - Appendix 3: Architecture Design Description, IntraLase iFS Laser, Version 2.00.01 | | 10/15/2007 | AEO | R, H, F, 403 |
| PX-0509 | JJSV_00640978 | JJSV_00640979 | Software Detail Design for iFS Project, Meeting Minutes | | 10/23/2007 | AEO | R, H, F, 403 |
| PX-0510 | JJSV_00576785 | JJSV_00576785 | Email from K. Patterson to K. Watanabe et al. re draft of video microscope requirements document | pst | 11/29/2007 | AEO | R, H, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0511 | JJSV_00576786 | JJSV_00576786 | iFS Video Microscope Requirements document | doc | 11/29/2007 | AEO | R, H, F, 403 |
| PX-0512 | JJSV_00558376 | JJSV_00558376 | Advanced Medical Optics (AMO) Software Traceability Matrix iFS Laser System.  Document Version 1.02 | doc | 1/23/2008 | AEO | R, H, F, 403 |
| PX-0513 | JJSV_00629646 | JJSV_00629647 | Software Architecture Design for iFS Project  Meeting Minutes | | 1/29/2008 | AEO | R H F 403 |
| PX-0514 | JJSV_00630915 | JJSV_00630916 | Software Detailed Design Specification for iFS Project, Meeting Minutes | | 1/29/2008 | AEO | R, H, F, 403 |
| PX-0515 | JJSV_00559491 | JJSV_00559491 | AMO Unit Test Specification iFS Advanced Laser System.  Document Version: 1 00 01 | doc | 2/14/2008 | AEO | R, H, F, 403 |
| PX-0516 | JJSV_00586725 | JJSV_00586725 | Email from M. Brownell to Z. Bor et al re Team meeting slides | pst | 5/19/2008 | AEO | R H F 403 106 |
| PX-0517 | JJSV_00569752 | JJSV_00569758 | Engineering Report: Prototype Build Report, iFS Laswer System Upgrade Kits (J590131 and J590132) | pdf | 9/25/2008 | AEO | R, H, F |
| PX-0518 | JJSV_00620119 | JJSV_00620128 | RD-012C-DP_Software Coding Standards Procedure DOC | | 10/9/2008 | AEO | ID, R, H, F, 403 |
| PX-0519 | JJSV_00641463 | JJSV_00641588 | IFS Software Requirements Specification IFS Advanced Laser System Document Version 2.02.02 Corresponds to Software Release 2.02 | | 1/21/2009 | AEO | R, H, F, 403 |
| PX-0520 | JJSV_00558713 | JJSV_00558716 | Software release audit for the iFS Laser System | doc | 1/28/2009 | AEO | R, H, F, 403 |
| PX-0521 | JJSV_00551426 | JJSV_00551434 | AMO Software Change Control Procedure RD-010, with metadata file attached | doc | 2/17/2009 | AEO | R, H, F, 403 |
| PX-0522 | JJSV_00551843 | JJSV_00551853 | AMO meeting minutes | doc | 7/20/2009 | AEO | R H F 403 |
| PX-0523 | JJSV_01033480 | JJSV_01033734 | iFS_SPR_Sum_MASTER LIST2 doc | doc | 6/12/2013 | AEO | R, H, F, 403 |
| PX-0524 | JJSV_00760446 | JJSV_00760447 | Email chain from A. Malek Tabrizi to R. Decool re Test Rediness Review | pst | 10/23/2018 | AEO | R, H, F, 403 |
| PX-0525 | JJSV_01046918.128 | JJSV_01046918.218 | IntraLase Fusion Software System and Patient Interface Risk and Hazard Analysis | | | AEO | R, H, F, 403 |
| PX-0526 | JJSV_00558324 | JJSV_00558324 | Software Independent Verification and Validation Plan IntraLase iFS Laser System.  Document Version: 1.00 | doc | | AEO | R, H, F, 403 |
| PX-0527 | JJSV_00596989 | JJSV_00597017 | Analog I/O PCI Card Theory of Operation, 550098, Rev. C | | | AEO | R, H, F |
| PX-0528 | JJSV_00619365 | JJSV_00619377 | Project Alpha - FS2 upgrades | | | AEO | R, H, F, 403 |
| PX-0529 | JJSV_00551439 | JJSV_00551442 | RD-012-DP_E_Software Coding Standards Procedure[1].DOC | doc | | AEO | R 403 H F |
| PX-0530 | JJSV_00356630 | JJSV_00356630 | Abbott Medical Optics, Software Detailed Design (SDD), Catalys Laser Cataract Surgery System | docx | | AEO | R, 403, H, F |
| PX-0531 | JJSV_00566244 | JJSV_00566244 | AMO Software Coding Standards Procedure | | | Confidential | R 403 H F |
| PX-0532 | JJSV_00551927 | | Design Review Record | | | AEO | R 403 H F |
| PX-0533 | JJSV_00556074 | | Software Requirements Specification | | | AEO | R, 403, H, F |
| PX-0534 | JJSV_00619365 | JJSV_00619377 | Project #5: Atlas | | | AEO | R, H, F, 403 |
| PX-0535 | JJSV_00798107 | | Software Architecture Document | | | AEO | R 403 H F |
| PX-0536 | JJSV_00103835 | JJSV_00103835 | OptiMedica Cataract Project Review Presentation | pptx | 1/5/2011 | AEO | R H F MIL |
| PX-0537 | DP_00000778 | DP_00000778 | Catalys Design History Presentation | | 3/11/2011 | Confidential | R, H, F, A |
| PX-0538 | JJSV_00345755 | JJSV_00345773 | OptiMedica Corp., Laser Requirements Specification, Catalys System - Calmar Project Information | docx | 9/1/2011 | AEO | R, 403, H, F |
| PX-0539 | JJSV_00451281 | JJSV_00451282 | OptiMedica Press Release  Dec 2011  OptiMedica Receives FDA Market Clearance | pdf | 12/22/2011 | Not Confidential | R H F |
| PX-0540 | JJSV_00144136 | JJSV_00144136 | Catalys Clinical Application Specialist Training Meeting Presentation | pptx | 3/8/2012 | AEO | R, 403, H, F |
| PX-0541 | JJSV_00452532 | JJSV_00452532 | OptiMedica Sales Training 101 presentation | pptx | 4/17/2012 | AEO | R, 403, H, F |
| PX-0542 | JJSV_00134293 | JJSV_00134303 | Catalyx Software Development Plan  Document Part No. DC-01682  ECO-001507 Revision C | pdf | 6/15/2012 | AEO | R 403 H F |
| PX-0543 | JJSV_00142237 | JJSV_00142242 | Conrad-Hengerer et al., "Effect of Femtosecond Laser Fragmentation on Effective Phacoemulsification Time in Cataract Surgery," Journal of Refractive Surgery Vol. 28, No. 12 (2012), 879–84 | pdf | 9/11/2012 | Not Confidential | H, F, 702 |
| PX-0544 | JJSV_00451556 | JJSV_00451558 | OptiMedica – News & Events | pdf | | AEO | R H F 403 1006 |
| PX-0545 | JJSV_00352552 | JJSV_00352644 | JJSV Software Requirement Specification (SRS) | docx | | AEO | R, 403, H, F |
| PX-0546 | JJSV_00374232 | JJSV_00374238 | JJSV Technical/Engineering Report, Catalys SW Build Process | docx | | AEO | R, 403, H, F |
| PX-0547 | JJSV_00561453 | JJSV_00561453 | Email from K. Watanabe to W. Morris et al re IP Pilot Design Review Minutes from 2/13/07 Dual Knuckle Arm | pst | 2/22/2007 | AEO | R, 403, H, F |
| PX-0548 | ALCON_LENSX970927 | ALCON_LENSX970927 | LenSx Presentation: SB-Rio Controller | ppt | 6/1/2008 | AEO | R, 403, F |
| PX-0549 | ALCON_LENSX1038514 | ALCON_LENSX1038515 | Email to G. Chaudhary Re: Questions from LenSx Lasers | pst | 8/1/2008 | AEO | R, F, 403 |
| PX-0550 | ALCON_LENSX1038517 | ALCON_LENSX1038517 | Email from C. Suarez Re: Part and document numbering proposal | pst | 8/19/2008 | AEO | R, 403, F |
| PX-0551 | ALCON_LENSX1038518 | ALCON_LENSX1038520 | LenSx Documentation and Part Numbering | doc | 8/19/2008 | AEO | R 403 F |
| PX-0552 | ALCON_LENSX968544 | ALCON_LENSX968546 | "LenSx Software Engineering Tasks and Staffing Needs" | doc | 9/5/2008 | AEO | F, 403 |
| PX-0553 | ALCON_LENSX1038630 | ALCON_LENSX1038630 | Email from P. Goldstein to G. Chaudhary and A. Juhasz re Tilcon Training Class, Sept 29 to Oct 1 | pst | 9/23/2008 | AEO | R, F, 403 |
| PX-0554 | ALCON_LENSX1038986 | ALCON_LENSX1038986 | Email from P. Goldstein to G. Chaudhary, C. Suarez et al. re attached Beta Software Coding Standards Procedure Draft | pst | 10/2/2008 | AEO | R, F, 403 |
| PX-0555 | ALCON_LENSX1039033 | ALCON_LENSX1039033 | "Project Status Dashboards" powerpoint | ppt | 10/6/2008 | AEO | R, F, 403 |
| PX-0556 | ALCON_LENSX1039241 | ALCON_LENSX1039241 | Email from C. Suarez Re: Beta system requirements | pst | 11/3/2008 | AEO | R F 403 |
| PX-0557 | ALCON_LENSX1110761 | ALCON_LENSX1110762 | Email from R. Kurtz RE: Material for Response call | pst | 11/24/2008 | AEO | R F 403 |
| PX-0558 | ALCON_LENSX968725 | ALCON_LENSX968725 | Email from P. Goldsein to R. Kurtz, K. Watanabe, G. Chaudhary, K. Vardin, C. Suarez et al re Control System Meeting Notes | pst | 1/27/2009 | AEO | R, F |
| PX-0559 | ALCON_LENSX1039382 | ALCON_LENSX1039382 | Email from P. Goldstein to G. Chaudhary, Vardin, Hegedus et al re Updated QNX Knowledge Database | pst | 1/27/2009 | AEO | R, 403, F |
| PX-0560 | ALCON_LENSX1039383 | ALCON_LENSX1039398 | LenSx QNX Knowledge Database information | doc | 1/27/2009 | AEO | R, 403, F |
| PX-0561 | ALCON_LENSX1039417 | ALCON_LENSX1039418 | Email to All Employees from C. Vaughn to T. Juhasz et al re The LenSx Hearald | pst | 2/11/2009 | AEO | R, F, 403 |
| PX-0562 | ALCON_LENSX968774 | ALCON_LENSX968775 | Email from F. Raksi to  Goldstein, Hegedus, Kurtz, Vardin, Suarez, Watanabe, Weinberg re FW: Surgical process flow | pst | 2/19/2009 | AEO | R, F, 403 |
| PX-0563 | ALCON_LENSX1039438 | ALCON_LENSX1039439 | Email from P. Goldstein to T. Juhasz and All LenSx Employees OCT imaging | pst | 2/24/2009 | AEO | R, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0564 | ALCON_LENSX1039483 | ALCON_LENSX1039484 | Email from K. Vardin to Goldstein, Kurtz, Chaudhary, Suarez, Weinberg Re: Benchmark tests – OCT, VM | pst | 3/9/2009 | AEO | R, F, 403 |
| PX-0565 | ALCON_LENSX1039490 | ALCON_LENSX1039491 | Email from Kostadin Vardin to P. Goldstein  R. Kurtz  G. Chaudhary re keep analizing | pst | 3/11/2009 | AEO | R  F  403 |
| PX-0566 | ALCON_LENSX968998 | ALCON_LENSX968998 | Email from P. Goldstein to R. Kurtz re: "The Untimely Death of Tilcon, or the news are never as bad as first reported" | pst | 3/12/2009 | AEO | R, F, 403 |
| PX-0567 | ALCON_LENSX678288 | ALCON_LENSX678290 | LenSx Engineering Report No ER09-002, OCT: Patern Generator, Galvo Control and Camera Capturing Synchronization | pdf | 4/9/2009 | AEO | R, F, 403 |
| PX-0568 | ALCON_LENSX1040815 | ALCON_LENSX1040817 | Email from K. Vardin to G. Holland et al. re Galvo and Camera Synchronization | pst | 4/10/2009 | AEO | R  F  403 |
| PX-0569 | ALCON_LENSX994437 | ALCON_LENSX994438 | Email from I. Hegedus to P. Goldstein re Pattern Manager Issues, Ver 1.01 | pst | 8/17/2009 | AEO - Source Code | R, F, 403 |
| PX-0570 | ALCON_LENSX1057724 | ALCON_LENSX1057725 | Email from I. Hegedus to P. Goldstein re Latest code | pst | 8/27/2009 | AEO - Source Code | R, F, 403 |
| PX-0571 | ALCON_LENSX1057726 | ALCON_LENSX1057728 | Email from I. Hegedus to P. Goldstein re Latest code | pst | 8/31/2009 | AEO - Source Code | R, F, 403 |
| PX-0572 | ALCON_LENSX994442 | ALCON_LENSX994443 | Email from I. Hegedus to P. Goldstein re latest code | pst | 9/18/2009 | AEO - Source Code | R, F, 403 |
| PX-0573 | ALCON_LENSX1057737 | ALCON_LENSX1057737 | Email from I. Hegedus to P. Goldstein re Pattern Manager Bug in 2.03.02 | pst | 5/5/2010 | AEO - Source Code | R, F, 403 |
| PX-0574 | ALCON_LENSX971494 | ALCON_LENSX971494 | Email from P. Goldstein to J. Suzuki re Announcement and Employee Meeting | pst | 7/7/2010 | AEO | None |
| PX-0575 | ALCON_LENSX994861 | ALCON_LENSX994867 | Pilot SRCR's.doc - Main Controller | doc | 7/16/2010 | AEO | R, F, 403 |
| PX-0576 | ALCON_LENSX994860 | ALCON_LENSX994860 | Email from P. Goldstein to I. Hegedus re Latest Pilot Code | pst | 7/16/2010 | AEO - Source Code | R, F, 403 |
| PX-0577 | ALCON_LENSX971990 | ALCON_LENSX971990 | Email from P. Goldstein to J. Suzuki re Heads up on code change | pst | 8/9/2010 | AEO | R  F  403 |
| PX-0578 | ALCON_LENSX972353 | ALCON_LENSX972353 | Mapping of Femto documents to requirements | xls | 10/29/2010 | AEO | R, F, 403 |
| PX-0579 | ALCON_LENSX972457 | ALCON_LENSX972457 | lines_of  code.xlsx | xlsx | 11/8/2010 | AEO | R, F, 403 |
| PX-0580 | ALCON_LENSX972455 | ALCON_LENSX972456 | Email from G. Chaudhary to Peter Goldstein re: lines of code | pst | 11/9/2010 | AEO | R  F  403 |
| PX-0581 | ALCON_LENSX972460 | ALCON_LENSX972460 | Email from Peter Goldstein to Ron Kurtz re Lines of code in Pilot | pst | 11/10/2010 | AEO | R  F  403 |
| PX-0582 | ALCON_LENSX974446 | ALCON_LENSX974446 | Email from P. Goldstein to G. Chaudhary, Vardin, Wood, Suzuki, Carlos et al re Nov 9 Software Dept Meeting | pst | 1/4/2011 | AEO | R, F, 403 |
| PX-0583 | ALCON_LENSX1057744 | ALCON_LENSX1057744 | Email from I. Hegedus to P. Goldstein re Just a note | pst | 1/11/2011 | AEO - Source Code | R, F, 403 |
| PX-0584 | ALCON_LENSX215738 | ALCON_LENSX215738 | ▮    diligence meeting slides_Finance_BD | pptx | 4/5/2011 | AEO | R, F |
| PX-0585 | ALCON_LENSX974094 | ALCON_LENSX974094 | Aug 2011 Tilted Capsulotomy presentation | pptx | 8/1/2011 | AEO | R, H, F |
| PX-0586 | ALCON_LENSX976141 | ALCON_LENSX976145 | Email from Peter Goldstein re Fw: Response to 510(k)  questions from FDA - LAP | pst | 7/6/2012 | AEO | R  H  F |
| PX-0587 | ALCON_LENSX976169 | ALCON_LENSX976170 | Email from Peter Goldstein to J. Suzuki re Software section of the 510(k) response | pst | 7/19/2012 | AEO | R  H  F  403 |
| PX-0588 | ALCON_LENSX979365 | ALCON_LENSX979367 | Email from Peter Goldstein to Imre Hegedus re Priary & Secondary Incision | pst | 1/10/2013 | AEO | R, H, F, 403 |
| PX-0589 | ALCON_LENSX1065973 | ALCON_LENSX1065976 | Re: Green Card – Hegedus | pst | 6/26/2014 | AEO | R, 403, F |
| PX-0590 | ALCON_LENSX1066556 | ALCON_LENSX1066556 | Email from I. Hegedus to D. Teodorescu re LenSx questions | pst | 6/3/2016 | AEO | R  F  403 |
| PX-0591 | ALCON_LENSX992621 | ALCON_LENSX992623 | Email from Peter Goldstein to Imre Hegedus re Fw: LenSx Openings | pst | 11/15/2016 | AEO | R, F, 403 |
| PX-0592 | ALCON_LENSX1894077 | ALCON_LENSX1894077 | Email from Lynda Jeffcoat to J. Alder Re: Thank you for the opportunity to talk to you about Alcon and LenSx | pst | 3/6/2017 | AEO | H, F, 403 |
| PX-0593 | KV000002 | KV000002 | Email from Tibor Juhasz re Alcon is not alone | pst | 12/31/2018 | Confidential | R  H  F  A |
| PX-0594 | ALCON_LENSX1895399 | ALCON_LENSX1895400 | Email from L. Jeffcoat to I. Hegedus re GUI translation | pst | 5/29/2019 | AEO | R, F, 403 |
| PX-0595 | KV000001 | KV000001 | Email from P. Goldstein to K. Vardin et al. re filing of lawsuit | pst | 7/31/2020 | Confidential | R, H, F, A, 403 |
| PX-0596 | ALCON_LENSX1107616 | ALCON_LENSX1107620 | Email from D. Abergel to A. Malek Tabrizi, Imre Hegedus, K. Watanabe RE: LenSx GIU Feedback | pst | 11/12/2020 | AEO | R, F, 403 |
| PX-0597 | Juhasz_000003 | Juhasz_000003 | Email to A. Juhasz from I. Hegedus re Hello | pst | 12/8/2020 | AEO | R, H, F, A |
| PX-0598 | JJSV_00567371 | JJSV_00567371 | FS2 Team Meeting Presentation re Pilot Roadmap | ppt | | AEO | R, H, F, 403 |
| PX-0599 | SUZUKI-0014313 | SUZUKI-0014382 | IntraLase System Risk and Hazard Analysis | | 8/14/2000 | AEO | R, H, F |
| PX-0600 | SUZUKI-0014787 | SUZUKI-0014882 | IntraLase System Risk and Hazard Analysis IntraLase FS Laser System. Version: 1.06 | | 6/14/2002 | AEO | R  H  F |
| PX-0601 | SUZUKI-0014982 | SUZUKI-0014989 | IntraLase Corp. Software Development Procedure. Procedure Number: RD-008 | | 1/22/2003 | AEO | R, H, F |
| PX-0602 | SUZUKI-0014998 | SUZUKI-0015009 | IntraLase Corp. Software Verfication and Validation Procedure Procedure Number: RD-009 | | 1/30/2003 | AEO | R, H, F |
| PX-0603 | ALCON_LENSX263773 | ALCON_LENSX263773 | Alpha Software: Software 510K Documents List | doc | 11/26/2007 | AEO | R, H, F |
| PX-0604 | ALCON_LENSX263773 | ALCON_LENSX263773 | Jeffcoat Deposition Ex. 03: Metadata for Alpha Software: Software 510K Documents List | doc | 11/26/2007 | AEO | R, H, F, ID |
| PX-0605 | ALCON_LENSX265414 | ALCON_LENSX265435 | Alpha Software: LenSx Lasers Software Configuration Management Plan LENSX 550 Laser - Document Version: 1.00 | pdf | 5/15/2008 | AEO | None |
| PX-0606 | ALCON_LENSX263861 | ALCON_LENSX263884 | Alpha Software: Metadata printout for LenSx Lasers Software Configuration Management Plan Draft | doc | 6/19/2008 | AEO | R, H, F, ID |
| PX-0607 | ALCON_LENSX265344 | ALCON_LENSX265350 | 11 Device Description for the LenSx 550 Laser: K082947 draft | docx | 9/19/2008 | AEO | R  H  F |
| PX-0608 | ALCON_LENSX1038987 | ALCON_LENSX1038990 | RD-012 Software Coding Standards Revision A | doc | 10/1/2008 | AEO | R, F |
| PX-0609 | ALCON_LENSX1039273 | ALCON_LENSX1039280 | RD-001 Software Development Procedure | docx | 11/21/2008 | AEO | R, F |
| PX-0610 | ALCON_LENSX1039303 | ALCON_LENSX1039307 | RD-004  1 Software Release Procedure: K082947 draft | docx | 11/21/2008 | AEO | R, F |
| PX-0611 | ALCON_LENSX1039281 | ALCON_LENSX1039291 | RD-002  1 Software Verification and Validation Procedure.docx | docx | 11/21/2008 | AEO | R  F |
| PX-0612 | ALCON_LENSX1039292 | ALCON_LENSX1039302 | RD-003  1 Software Change Control Procedure.docx | docx | 11/21/2008 | AEO | R, F |
| PX-0613 | ALCON_LENSX255955 | ALCON_LENSX255960 | K082947 Summary of Safety and Effectiveness | pdf | 8/14/2009 | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0614 | LSX003631.1 | LSX003631.26 | LenSx Lasers draft Software Architecture Description LENSX Laser System - Main Controller. Doc. Version 2..01 | | 8/6/2010 | AEO | R, 403 |
| PX-0615 | LSX003631 | | LenSx Software Architecture Description – Main Controller | doc | 8/6/2010 | AEO | R 403 |
| PX-0616 | LSX003631 (plain text version version) | | LenSx Software Architecture Description – Main Controller (text only) | doc | 8/6/2010 | AEO | R, 403 |
| PX-0617 | LSX003631 (redline version) | | LenSx Software Architecture Description – Main Controller (redline) | doc | 8/6/2010 | AEO | R, 403 |
| PX-0618 | ALCON_LENSX120674 | ALCON_LENSX120677 | New Class III Medical Device License Application - 1.0 Table of Contents | doc | 12/12/2011 | AEO | R F |
| PX-0619 | ALCON_LENSX486136 | ALCON_LENSX486159 | 2.31 LenSx Lasers Software Configuration Management Plan LENSX Laser System (Main Controller and VM/OCT) Document Version: 1.04 | pdf | 3/9/2012 | AEO | R, F, 403 |
| PX-0620 | ALCON_LENSX286332 | ALCON_LENSX286335 | Draft "Template" Software Revision History for LenSx Software authored by Goldstein: K120732 draft | docx | 7/8/2012 | AEO | R, 403, F |
| PX-0621 | ALCON_LENSX053786 | ALCON_LENSX053787 | Final Software Revision History for LenSx Software, signed by Suarez, Goldstein and Faye Dunn. | pdf | 7/25/2012 | AEO | Q, F |
| PX-0622 | ALCON_LENSX053789 | ALCON_LENSX053790 | Software Revision History LenSx Laser System | docx | 7/26/2012 | AEO | R 403 F |
| PX-0623 | ALCON_LENSX053788 | ALCON_LENSX053788 | Alcon Software Revision History, LenSx Laser System | docx | 12/11/2012 | AEO | R, F |
| PX-0624 | ALCON_LENSX004253 | ALCON_LENSX004288 | Draft Publication (Attachment 16) - Alcon Software Architecture Description LenSx Laser System - VM/OCT Controller.  Document Version: 2.23.01: K161288 draft | pdf | 9/16/2013 | AEO | R, F, 403 |
| PX-0625 | ALCON_LENSX991650 | ALCON_LENSX991658 | Software Change Control Procedure.  Procedure # LOP-006 | pdf | 1/20/2016 | AEO | R 403 F |
| PX-0626 | ALCON_LENSX1070426 | ALCON_LENSX1070452 | Imaged Version: 2.31 Alcon Software Architecture Description LENSX Laser System - Main Controller, Document Version: 2 31 01 | doc | 3/15/2017 | AEO | R, 403 |
| PX-0627 | ALCON_LENSX1070426 | ALCON_LENSX1070452 | Text Only Vesion: 2.31 Alcon Software Architecture Description LENSX Laser System - Main Controller  Document Version: 2 31 01 | doc | 3/15/2017 | AEO | R, F, 403 |
| PX-0628 | ALCON_LENSX096722 | ALCON_LENSX096748 | Alcon Software Architecture Description LENSX Laser System - Main Controller. Document Version: 2.31.01 | pdf | 4/6/2017 | AEO | R, F, 403 |
| PX-0629 | ALCON_LENSX500760 | ALCON_LENSX500765 | Software Release Procedure  No. LOP-007 | pdf | 7/11/2017 | AEO | R F 403 |
| PX-0630 | ALCON_LENSX113030 | ALCON_LENSX113210 | Risk and Hazard Analysis LenSx Laser.  Document Number: RQ-163.  Rev. A | pdf | 7/31/2017 | AEO | None |
| PX-0631 | ALCON_LENSX2557172 | ALCON_LENSX2557254 | Alcon SPR/SRCR Summary Report LenSx Laser System - Main Controller. Document Version. 1.22 | pdf | 8/8/2017 | AEO | None |
| PX-0632 | ALCON_LENSX020516 | ALCON_LENSX020863 | K173660 Vol. 003: Alcon's 2017 510(k): MC Software Requirements Specification.  Doc. Ver.: 2.31.03 | pdf | 11/20/2017 | AEO | None |
| PX-0633 | ALCON_LENSX020864 | ALCON_LENSX021208 | K173660 Vol. 004: Alcon's 2017 510(k): LenSx 510k Final Publication 11-20-2017 | pdf | 11/20/2017 | AEO | None |
| PX-0634 | ALCON_LENSX713049 | ALCON_LENSX713059 | K173660 FDA Letter-Summary - Clinical Trial | pdf | 3/27/2018 | AEO | None |
| PX-0635 | ALCON_LENSX432785 | ALCON_LENSX432835 | Main Controller SW Documents - Beta Informal Bug List | doc | 7/5/2021 | AEO | R H F 403 |
| PX-0636 | JJSV_00885654 | JJSV_00885736 | Alcon Eye Care v AMO Dev. Claim No. HP-2020-000028 - UK Trial Proceedings - 28.10.21 - Day 3 FINAL | pdf | 10/28/2021 | Not Confidential | R, H, F, 403 |
| PX-0637 | ALCON_LENSX3805338 | ALCON_LENSX3805345 | Alcon 510(k) Assessment Tool and Form re modification to LenSX Laser / 806599862 | pdf | 2/27/2022 | AEO | R, F, 106, 403 |
| PX-0638 | ALCON_LENSX3805622 | ALCON_LENSX3805624 | LenSx Software 2.31G - Initial Regulatory Assessment | pdf | 2/28/2022 | AEO | None |
| PX-0639 | ALCON_LENSX976063 | ALCON_LENSX976066 | Email from Peter Goldstein to C. Suarez re Response to 510(k) questions from FDA - FLAP | pst | 7/2/2012 | AEO | R, H, F, 403 |
| PX-0640 | ALCON_LENSX976150 | ALCON_LENSX976152 | Email from P. Goldstein to J. Suzuki re FDA Response - Software | pst | 7/9/2012 | AEO | R, H, F, 403 |
| PX-0641 | ALCON_LENSX1125471 | ALCON_LENSX1125473 | FDA Warning Letter to R. Kurtz (Alcon LenSx) | pdf | 12/3/2012 | AEO | R, H, F, 403 |
| PX-0642 | ALCON_LENSX1126450 | ALCON_LENSX1126452 | FDA Warning Letter to R. Kurtz (Alcon LenSx) | pdf | 12/3/2012 | AEO | R H F 403 |
| PX-0643 | JJSV_01049836 | JJSV_01049838 | FDA Warning Letter to Alcon LenSx re site inspection | pdf | 12/3/2012 | AEO | R, H, F, 403, Dupe |
| PX-0644 | ALCON_LENSX1131146 | ALCON_LENSX1131363 | Letter from R. Kurtz to B. Bevill (FDA) re: Warning Letter #08-13 | pdf | 12/27/2012 | AEO | R, H, F, 403, Dupe, 1002 |
| PX-0645 | ALCON_LENSX1131367 | ALCON_LENSX1131584 | Alcon Response to FDA Warning Letter LenSx final compiled | pdf | 1/2/2013 | AEO | R, H, F, 403 |
| PX-0646 | ALCON_LENSX979947 | ALCON_LENSX979947 | Responses to audit request | pst | 3/22/2013 | AEO | R H F 403 |
| PX-0647 | ALCON_LENSX979948 | ALCON_LENSX979950 | Responses to audit request | docx | 3/22/2013 | AEO | R, H, F, 403 |
| PX-0648 | ALCON_LENSX1169941 | ALCON_LENSX1169944 | Email from Eric Weinberg to Ron Kurtz re Regulatory Clearance for the LenSx Laser and SoftFit PI in Argentina | pst | 4/19/2013 | AEO | R, H, F, 403 |
| PX-0649 | ALCON_LENSX1432644 | ALCON_LENSX1432673 | Letter from FDA to R. Kurtz re: Establishment Inspection Report | pdf | 1/6/2015 | AEO | R F 403 |
| PX-0650 | ALCON_LENSX3804811 | ALCON_LENSX3804869 | FDA letter to Alcon Laboratories, Inc. enclosing copy of Established Inspection Report (EIR) | pdf | 7/6/2015 | AEO | R, H, F, 403 |
| PX-0651 | Suarez_0002741 | | Presentation Suarez gave regarding FDA complaint handling background | | 8/2/2015 | AEO | R, F, A |
| PX-0652 | ALCON_LENSX1035572 | ALCON_LENSX1035572 | Email from Carlos Suarez to G. Chaudhary re Alcon Directed Audit - Software Change Control (LenSx) | pst | 3/22/2016 | AEO | R, H, F, 403 |
| PX-0653 | ALCON_LENSX986601 | ALCON_LENSX986601 | Email from Carlos Suarez to P. Goldstein et al re Alcon Directed Audit - Software Change Control (LenSx) | pst | 3/22/2016 | AEO | R, H, F, 403 |
| PX-0654 | ALCON_LENSX1038556 | ALCON_LENSX1038556 | Project Status Dashboards (Sept. 15  2008) | ppt | 9/14/2008 | AEO | R F |
| PX-0655 | ALCON_LENSX1038607 | ALCON_LENSX1038607 | Project Status Dashboards (Sept. 22  2008) | ppt | 9/22/2008 | AEO | R F |
| PX-0656 | ALCON_LENSX1038774 | ALCON_LENSX1038774 | Project Status Dashboards (Sept. 29, 2008) | ppt | 9/26/2008 | AEO | R F |
| PX-0657 | ALCON_LENSX1039032 | ALCON_LENSX1039032 | Email to Ron Kurtz, Peter Goldstein, Gautam Chaudhary re: Project Status Dashboards 10-06-08 | pst | 10/5/2008 | AEO | H, F |
| PX-0658 | ALCON_LENSX1039152 | ALCON_LENSX1039152 | Project Status Dashboards 10-20-08 | ppt | 10/20/2008 | AEO | R, F |
| PX-0659 | ALCON_LENSX1039154 | ALCON_LENSX1039154 | Project Status Dashboards (Oct. 27, 2008) | ppt | 10/23/2008 | AEO | R, F |
| PX-0660 | ALCON_LENSX1039240 | ALCON_LENSX1039240 | Project Status Dashboards (Nov. 3, 2008) | ppt | 11/3/2008 | AEO | R, F |
| PX-0661 | ALCON_LENSX1039268 | ALCON_LENSX1039268 | Project Status Dashboards (Nov. 24  2008) | ppt | 11/24/2008 | AEO | R F |
| PX-0662 | ALCON_LENSX1039338 | ALCON_LENSX1039338 | Project Status Dashboards (Dec. 22, 2008) | ppt | 12/22/2008 | AEO | R, F |
| PX-0663 | ALCON_LENSX246356 | ALCON_LENSX246356 | LenSx Leaders Guide: LSX14042IR LenSx_Incisions Basics pptx | pptx | 3/19/2014 | AEO | R, F |
| PX-0664 | ALCON_LENSX3248946 | ALCON_LENSX3248946 | 2018_4_25 LenSx Flap Upgrade OpComm vFINAL pptx | pptx | 4/24/2018 | AEO | R, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**PLAINTIFFS' EXHIBIT LIST**

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0665 | ALCON_LENSX970927 | ALCON_LENSX970927 | Slidedeck re regulatory compliance for laser controller | ppt | 6/1/2008 | AEO | R, H, F |
| PX-0666 | ALCON_LENSX1108914 | ALCON_LENSX1108951 | LenSx All Employee Meeting presentation | ppt | 4/13/2009 | AEO | R, F, Q |
| PX-0667 | ALCON_LENSX1041241 | ALCON_LENSX1041241 | Email to All LenSx Employees re: Market Scope – July 2009 | pst | 7/23/2009 | AEO | R F |
| PX-0668 | ALCON_LENSX1041324 | ALCON_LENSX1041325 | 510k Memo from Trudy Larkins to All Employees | doc | 9/8/2009 | AEO | R F |
| PX-0669 | ALCON_LENSX1041322 | ALCON_LENSX1041322 | Email from T. Larkins re: No Subject-1093.EML | pst | 9/8/2009 | AEO | R, H, F |
| PX-0670 | ALCON_LENSX3810723 | ALCON_LENSX3810725 | Email chain from G. Brown to K. Buehler et al. re follow up documents | pst | 4/14/2010 | AEO | R, H, F |
| PX-0671 | ALCON_LENSX1046703 | ALCON_LENSX1046704 | Email from K. Vardin to T. Wood and A. Juhasz re SDD column in trace matrices | pst | 10/19/2010 | AEO | R F |
| PX-0672 | ALCON_LENSX979650 | ALCON_LENSX979659 | Email from Peter Goldstein re Attached Image | pst | 1/29/2013 | AEO | R  403  F |
| PX-0673 | ALCON_LENSX891989 | ALCON_LENSX891990 | Email chain from D. Weintraub to K. Vardin re QNX Support Renewal | pst | 5/6/2015 | AEO | R, 403, F |
| PX-0674 | ALCON_LENSX1440106 | ALCON_LENSX1440106 | Laser Engine Technology Presentation by Ferenc Raksi | pptx | 5/18/2015 | AEO | R, 403, F |
| PX-0675 | ALCON_LENSX0998665 | ALCON_LENSX0998665 | Email from D. Kevern to G. Chaudhary et al. re SW Group Discussion re LenSx Software Architecture Overview by P. Goldstein | pst | 9/14/2015 | AEO | R, F, 403 |
| PX-0676 | ALCON_LENSX106900 | ALCON_LENSX107142 | Intertek LenSx Testing Report | pdf | 1/15/2016 | AEO | R, 403, H, F |
| PX-0677 | ALCON_LENSX2864190 | ALCON_LENSX2864190 | IntraLasik Clinical Pearls presentation | ppt | 3/1/2016 | AEO | R, 403, H, F |
| PX-0678 | ALCON_LENSX2104521 | ALCON_LENSX2104521 | Laser Engines Review Presentation by Ferenc Raksi | pptx | 8/18/2016 | AEO | R  403  F |
| PX-0679 | ALCON_LENSX2412281 | ALCON_LENSX2412282 | Email chain "Incision Placement Meeting Minutes" | pst | 10/4/2016 | AEO | R, F, 403 |
| PX-0680 | ALCON_LENSX2412605 | ALCON_LENSX2412605 | Femtosecond laser for ophthalmology presentation by Zsolt Bor | pptx | 11/1/2016 | AEO | R, F, 403 |
| PX-0681 | ALCON_LENSX099214 | ALCON_LENSX099244 | LenSx International Registration - China - Decl. of Description Document | pdf | 2/24/2017 | AEO | R, 403, F |
| PX-0682 | ALCON_LENSX1894069 | ALCON_LENSX1894069 | Email from L. Jeffcoat to S. Mahakali re QNX Support | pst | 2/28/2017 | AEO | R  F  403 |
| PX-0683 | ALCON_LENSX1894007 | ALCON_LENSX1894007 | Email from L. Jeffcoat to J. Alder re Thank you for the opportunity to talk to you about Alcon and LenSx | pst | 3/6/2017 | AEO | R, F, 403 |
| PX-0684 | ALCON_LENSX109095 | ALCON_LENSX109123 | 2.20 LenSx Laser System Software for the Health Authorities of Brazil.  Version 1.3 | pdf | 3/13/2017 | AEO | R, 403, F |
| PX-0685 | ALCON_LENSX1894070 | ALCON_LENSX1894070 | Email from L. Jeffcoat to S. Mahakali re QNX Support | pst | 3/28/2017 | AEO | R  F  403 |
| PX-0686 | CHAUDHARY_0001050 | CHAUDHARY_0001050 | SMS from C. Suarez to G. Chaudhary re meeting | pdf | 4/14/2017 | Confidential | R, H, F, A |
| PX-0687 | CHAUDHARY_0001051 | CHAUDHARY_0001051 | SMS from C. Suarez to G. Chaudhary re emergency meeting | pdf | 4/14/2017 | Confidential | R, H, F, A |
| PX-0688 | CHAUDHARY_0001049 | CHAUDHARY_0001049 | SMS from C. Suarez to G. Chaudhary re discussion of meeting | pdf | 4/17/2017 | Confidential | R  H  F  A |
| PX-0689 | ALCON_LENSX2463700 | ALCON_LENSX2463703 | Email from H. Srass to K. Wantanabe re Concept of Model 2 | pst | 4/25/2017 | AEO | R  H  F  403 |
| PX-0690 | ALCON_LENSX3639020 | ALCON_LENSX3639058 | Alcon Steering Committee - LenSx Cataract Enhancement II - A02545 Key Objective slides | pdf | 6/2/2017 | AEO | R, H, F, MIL |
| PX-0691 | ALCON_LENSX096430 | ALCON_LENSX096616 | Alcon Risk and Hazardous Analysis LenSx Laser.  Document Number RQ-163.  Rev. A | pst | 7/31/2017 | AEO | R, F, 403 |
| PX-0692 | ALCON_LENSX096147 | ALCON_LENSX096376 | Software Requirements Specfication LenSx Laser System - Main Controller.  Document Version: 2.31.03 | pdf | 8/2/2017 | AEO | R, F, 403 |
| PX-0693 | ALCON_LENSX097441 | ALCON_LENSX097470 | Declaration of Description Document LenSx Laser System Software. Software Version 2.31 | pdf | 11/9/2018 | AEO | R, F, 403 |
| PX-0694 | Juhasz_000005 | Juhasz_000005 | Email from I. Hegedus to A. Juhasz re OCT | pst | 1/18/2019 | AEO | R, H, F, A, T |
| PX-0695 | ALCON_LENSX1083956 | ALCON_LENSX1083957 | Specification / Source Document - Manufacturer's or LenSx Part Number: 60-0037-019 (Windchill) | docx | 8/15/2019 | AEO | R, 403, F |
| PX-0696 | ALCON_LENSX3437390.1 | ALCON_LENSX3437390.30 | Laser Cataract Innovation Roadmap Presentation | pptx | 11/19/2019 | AEO | R, F, MIL, Dupe |
| PX-0697 | ALCON_LENSX096850 | ALCON_LENSX096852 | Alcon Laboratories, Inc. 07 0 Appendices | pdf | 6/1/2020 | AEO | R, F |
| PX-0698 | ALCON_LENSX2141406 | ALCON_LENSX2141407 | Email from J. Karim to A. Malek and K. Watanabe et al re engineering reports | pst | 7/2/2020 | AEO | 403 |
| PX-0699 | ALCON_LENSX2590072 | ALCON_LENSX2590072 | Email from K. Watanabe to A. Malek Tabrizi cc Imre Hegedus re ▉▉▉▉▉ workshop meeting | pst | 12/1/2020 | AEO | R, F, 403 |
| PX-0700 | ALCON_LENSX2123273 | ALCON_LENSX2123275 | Email to A. Malek and K. Watanabe re external engineering consulting firm | pst | 1/11/2021 | AEO | R, F, 403 |
| PX-0701 | ALCON_LENSX1087826 | ALCON_LENSX1087844 | ▉▉▉▉▉ Software Development Plan | doc | 1/14/2021 | AEO | R  F  403 |
| PX-0702 | ALCON_LENSX2590655 | ALCON_LENSX2590656 | Email to K Watanabe and A. Malek et al re ▉▉▉▉▉ Forecast | pst | 2/2/2021 | AEO | None |
| PX-0703 | ALCON_LENSX2124121 | ALCON_LENSX2124123 | Email from A. Malek to Z. Bor et al re Help! | pst | 2/3/2021 | AEO | R, F, 403 |
| PX-0704 | ALCON_LENSX105613 | ALCON_LENSX105631 | Alcon ▉▉▉▉ - Due Diligence Findings and Recommendations Presentation | pdf | 4/21/2021 | AEO | R, F |
| PX-0705 | CHAUDHARY_0000103 | CHAUDHARY_0000103 | Chaudhary Employee Survey Comments | | 2/2/2022 | AEO | R  H  F  A |
| PX-0706 | ALCON_LENSX3805881 | ALCON_LENSX3805882 | Email from Alirez Malek Tabrizi re Fwd: Hello | pst | 3/24/2022 | AEO | R, F, 403 |
| PX-0707 | ALCON_LENSX1892761 | ALCON_LENSX1892762 | Email from L. Jeffcoat re LenSx Upgrade's approved SPR/SRCR status | pst | 10/6/2016 | AEO | R, F, 403 |
| PX-0708 | ALCON_LENSX000580 | ALCON_LENSX000582 | LenSx SW updates | pdf | 4/1/2017 | Confidential | None |
| PX-0709 | ALCON_LENSX3594100 | ALCON_LENSX3594104 | Email from H. Matsubara to K. Wantanabe and V. Duran re Action Needed: LenSx 2.31 SW Update | pst | 4/19/2019 | AEO | R, F, 403 |
| PX-0710 | ALCON_LENSX1058339 | ALCON_LENSX1058341 | Alcon Software Revision History, LenSx Laser System | pdf | 1/23/2020 | AEO | None |
| PX-0711 | ALCON_LENSX2141474 | ALCON_LENSX2141474 | Email from Instrumentation Help re Releaseof Service Bulletin Volume 20-55 Rev A - LenSx Laser Software Installation Version 2.31E | pst | 1/19/2021 | AEO | R, F, 403 |
| PX-0712 | ALCON_LENSX3804373 | ALCON_LENSX3804373 | LenSx Software Upgrades SOFA Spreadsheet | xlsx | 1/27/2022 | AEO | R, F, 403 |
| PX-0713 | ALCON_LENSX3804378 | ALCON_LENSX3804381 | 13_Dec_2021 Service Bulletin Volume 21-72_A  LenSx Software Installation 2 31F_SB110 | pdf | 1/27/2022 | AEO | R, F, 403 |
| PX-0714 | ALCON_LENSX3805251 | ALCON_LENSX3805262 | LenSx Software 2.31G Software Change Requests (SCRs) | pdf | | AEO | None |
| PX-0715 | ALCON_LENSX1085623 | ALCON_LENSX1085640 | Software Development Plan Design History File | doc | 5/21/2020 | AEO | R  F  403 |
| PX-0716 | ALCON_LENSX3804554 | ALCON_LENSX3804555 | LenSx TPCs 2012-2014.docx | docx | 1/27/2022 | AEO | R, F, MIL |
| PX-0717 | ALCON_LENSX3804890 | ALCON_LENSX3804963 | Alcon Research, LLC Design History File - Software Development Guideline | pdf | 1/27/2022 | AEO | None |
| PX-0718 | ALCON_LENSX3805246 | ALCON_LENSX3805248 | HCL Tech Invoice to Alcon for software development changes | pdf | 1/28/2022 | AEO | None |
| PX-0719 | ALCON_LENSX3805223 | ALCON_LENSX3805225 | HCL Lensx invoice for 2021 07 | pdf | 2/23/2022 | AEO | None |
| PX-0720 | ALCON_LENSX3805226 | ALCON_LENSX3805229 | HCL Lensx invoice for 2021 08 | pdf | 2/23/2022 | AEO | None |
| PX-0721 | ALCON_LENSX3805230 | ALCON_LENSX3805233 | HCL Lensx invoice for 2021 09 | pdf | 2/23/2022 | AEO | None |
| PX-0722 | ALCON_LENSX3805234 | ALCON_LENSX3805237 | HCL Lensx invoice for 2021 10 | pdf | 2/23/2022 | AEO | None |
| PX-0723 | ALCON_LENSX3805238 | ALCON_LENSX3805241 | HCL Lensx invoice for 2021 11 | pdf | 2/23/2022 | AEO | None |
| PX-0724 | ALCON_LENSX3805242 | ALCON_LENSX3805245 | HCL Lensx invoice for 2021 12 | pdf | 2/23/2022 | AEO | None |
| PX-0725 | ALCON_LENSX3805249 | ALCON_LENSX3805250 | Waypoint Timecard report showing Alcon staff that worked on the LenSx project | pdf | 2/24/2022 | AEO | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**PLAINTIFFS' EXHIBIT LIST**

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0726 | ALCON_LENSX3805218 | ALCON_LENSX3805222 | | msg | 2/24/2022 | AEO | None |
| PX-0727 | ALCON_LENSX3809664 | ALCON_LENSX3809666 | HCL Technologies Corporate Invoice for Software Development Charges | | | AEO | None |
| PX-0728 | JJSV_00397152 | JJSV_00397158 | 2013.10.10-RF7672 iFS Brochure OUS version with LCS | PDF | 10/10/2013 | Confidential | R H F Q |
| PX-0729 | JJSV_00475597 | JJSV_00475600 | iFS Laser - Comprehensive Platform Sales Brochure AMO-ILA-156_iLASIK_CVA_iDesign_PRINT_v5_030116 | pdf | | AEO | R, H, F, Q |
| PX-0730 | JJSV_00449522 | JJSV_00449523 | OptiMedica's Catalys Precision Laser System is Selected R&D 100 Award Winner | pdf | 6/20/2012 | AEO | R, H, F, 403 |
| PX-0731 | JJSV_01046780 | JJSV_01046780 | IntraLase iFS Laser Cataract Suite (LCS) Training | ppt | 11/15/2013 | AEO | R H F |
| PX-0732 | JJSV_00732618 | JJSV_00732621 | Catalys System marketing brochure | pdf | 3/20/2018 | Confidential | R H F |
| PX-0733 | ALCON_LENSX217893 | ALCON_LENSX217893 | 2011 CDX Annual Meeting of the AAO Orlando presentation slides | ppt | 10/12/2011 | AEO | R, F |
| PX-0734 | ALCON_LENSX2147699 | ALCON_LENSX2147700 | Email from Seba Leoni RE: April CEO Report | pst | 4/30/2012 | AEO | R, F |
| PX-0735 | ALCON_LENSX2150628 | ALCON_LENSX2150631 | 2013 LenSx Laser Global Guidance Document | docx | 1/1/2013 | AEO | R F MIL |
| PX-0736 | ALCON_LENSX245406 | ALCON_LENSX245408 | Richard Tipperman, MD, Focus on Femto: Are You Ready for Femto Cataract Surgery?, Ophthalmology Mangement, October 2013 | pdf | 10/18/2013 | AEO | R, H, F |
| PX-0737 | ALCON_LENSX1392185 | ALCON_LENSX1392185 | Alcon LenSx IFT Discussion Presentation | pptx | 12/16/2013 | AEO | R, F, MIL |
| PX-0738 | ALCON_LENSX1393268 | ALCON_LENSX1393273 | Email from R. Kurtz to G. Chaudhary E. Weinberg re ACRS booth set up requirements | pst | 1/10/2014 | AEO | R H |
| PX-0739 | ALCON_LENSX887404.1 | ALCON_LENSX887404.83 | 2014 LenSx Global Marketing Plan Presentation | pptx | 6/1/2014 | AEO | R, F, MIL, Dupe |
| PX-0740 | ALCON_LENSX2723953 | ALCON_LENSX2723953 | 2014 07 cataract AB report.xlsb | xlsb | 9/11/2014 | AEO | R, F, MIL |
| PX-0741 | ALCON_LENSX2731142.1 | ALCON_LENSX2731142.87 | 2015 LenSx Laser Global Franchise Plan | pptx | 6/1/2015 | AEO | R, F, MIL |
| PX-0742 | | | Teodorescu Deposition Ex. 9: Media Release, Alcon Launches New Technological Enhancements to the LenSx Laser at American Society for Cataract and Refractive Surgery Meeting | | 4/14/2018 | AEO | R, H, F |
| PX-0743 | JJSV_01120103 | JJSV_01120106 | Laser-Assisted Cataract Removal (LenSx) in Buffalo and Williamsville https://oaeyecare com/cataracts/lensx-laser-treatment/ [Page Vault] | pdf | 2/7/2022 | Not Confidential | R, H, F |
| PX-0744 | JJSV_01120107 | JJSV_01120111 | New LenSx Laser System Offers a Breakthrough in Cataract Treatments https://georgiaeyephysicians.com/new-lensx-laser-system-offers-a-breakthrough-in-cataract-treatments/ [Page Vault] | pdf | 2/7/2022 | Not Confidential | R, H, F |
| PX-0745 | JJSV_01120112 | JJSV_01120115 | Cataract Laser Surgery - McPeak Vision Partners http://mcpeakvision.com/cataracts/laser-surgery [Page Vault] | pdf | 2/7/2022 | Not Confidential | R, H, F |
| PX-0746 | JJSV_01120116 | JJSV_01120118 | LenSx Laser Cataract Surgery San Francisco | Mosaddegh Eye Institute https://www.sfeyedoctors com/premiumcataractsurgery/lensx-femtosecond-laser/ [Page Vault] | pdf | 2/8/2022 | Not Confidential | R, H, F |
| PX-0747 | JJSV_01120125 | JJSV_01120127 | LENSX Blade-Free Cataract Surgery https://www.palmettoeyeandlaser.com/lensx-bladeless-cataract-surgery [Page Vault] | pdf | 2/8/2022 | Not Confidential | R, H, F |
| PX-0748 | ALCON_LENSX095805 | ALCON_LENSX095812 | 5.20 LenSx Promotional Brochure (ALCFL056_LenSx_R4_8 30 11) | pdf | 8/30/2011 | AEO | None |
| PX-0749 | ALCON_LENSX228279 | ALCON_LENSX228280 | LSX12221FC - Overview of Laser Cataract Refractive Surgery Equipment | pdf | 1/23/2013 | AEO | None |
| PX-0750 | ALCON_LENSX035393 | ALCON_LENSX035396 | LSX13243FC_AUCFL031_LenSx_US_Competitive_FC_Final_iPad_11_11_13 | pdf | 10/1/2013 | Confidential | R F |
| PX-0751 | ALCON_LENSX026555 | ALCON_LENSX026629 | MIX14148PGi_Global Cat-Refrac prod catalog FINAL | pdf | 9/17/2014 | Confidential | None |
| PX-0752 | ALCON_LENSX1037279 | ALCON_LENSX1037288 | LSX15026SA_AUCFL075_LenSx_SA_R3_4 2 15 | pdf | 4/2/2015 | AEO | None |
| PX-0753 | ALCON_LENSX2835262 | ALCON_LENSX2835364 | 2015 Global Branding Guidelines: LenSx_GCF_Launch_Playbook_r2v2 | pdf | 5/18/2015 | AEO | R F |
| PX-0754 | ALCON_LENSX2990030 | ALCON_LENSX2990129 | Don't Settle for Less Than the Complete Experience, LSX eBrand Book presentation | pdf | 6/1/2017 | AEO | R, F |
| PX-0755 | ALCON_LENSX1854547 | ALCON_LENSX1854743 | Alcon 2019 Cataract and Refractive Product Catalog | pdf | 6/1/2019 | AEO | R, F, MIL |
| PX-0756 | ALCON_LENSX213538 | ALCON_LENSX213538 | The World Leader in Laser Cataract Surgery - Alcon May 15th Meeting Aliso F NAL | ppt | 5/15/2010 | AEO | R, F |
| PX-0757 | ALCON_LENSX216126 | ALCON_LENSX216126 | Alcon LenSx Off-Site Meeting Presentation | pptx | 10/4/2010 | AEO | R H F |
| PX-0758 | ALCON_LENSX216148 | ALCON_LENSX216148 | Chicago Pre-AAO Meeting Presentation for LenSx | pptx | 10/15/2010 | AEO | R, F |
| PX-0759 | ALCON_LENSX217880 | ALCON_LENSX217880 | LenSx Laser Frequently Asked Questions presentation | ppt | 10/4/2011 | AEO | R, F, MIL |
| PX-0760 | ALCON_LENSX762522 | ALCON_LENSX762522 | 2013 ASCRS LenSx Hussv2 pptx | pptx | 4/19/2013 | AEO | R, F, MIL |
| PX-0761 | ALCON_LENSX1037253 | ALCON_LENSX1037276 | Alcon LenSx Laser FAQs presentation | pdf | 6/17/2014 | AEO | H F |
| PX-0762 | ALCON_LENSX2711767 | ALCON_LENSX2711849 | 2014 LenSx Global Marketing Plan Presentation | pptx | 8/12/2014 | AEO | R, F, MIL |
| PX-0763 | ALCON_LENSX2717576 | ALCON_LENSX2717804 | Alcon Launch Planning 2014Aug13-14 | pdf | 8/12/2014 | AEO | R, F, MIL |
| PX-0764 | ALCON_LENSX2718053 | ALCON_LENSX2718090 | 2015 AcrySof IQ Family Marketing Guidance Presentation | pptx | 8/13/2014 | AEO | R, F, MIL |
| PX-0765 | ALCON_LENSX2333096 | ALCON_LENSX2333131 | 2019 Global Guidance Docs - LenSx & WaveLight Final | pdf | 4/1/2018 | AEO | R F MIL |
| PX-0766 | ALCON_LENSX3339429 | ALCON_LENSX3339429 | US Surgical LenSx Equipment Presentation_Dec[2] pptx | pptx | 12/12/2018 | AEO | R, F |
| PX-0767 | ALCON_LENSX3435714 | ALCON_LENSX3435714 | 2020 LenSx Portfolio - Global Guidance APAC Training 2019 11 04 pptx | pptx | 11/5/2019 | AEO | R, F, MIL |
| PX-0768 | ALCON_LENSX095203 | ALCON_LENSX095250 | LenSx Laser 2022 Global Marketing Guidance | pdf | 3/4/2021 | AEO | R F MIL |
| PX-0769 | ALCON_LENSX095252 | ALCON_LENSX095279 | Global Marketing Plan 2021 | pdf | 6/5/2021 | AEO | R F MIL |
| PX-0770 | ALCON_LENSX3664468 | ALCON_LENSX3664525 | Verion 2.5/LenSx 2.23 Software Update [A01005] | pdf | 2/25/2014 | AEO | R, H, F |
| PX-0771 | JJSV_01095568 | JJSV_01095568 | J&J Vision Pricing Matrix - Approved 2/12/2021 | xlsx | 2/12/2021 | AEO | R, H, F, MIL |
| PX-0772 | JJSV_00936284 | JJSV_00936284 | Surgical Vision Equipment Placement and Financial Options Presentation | pptx | 4/1/2021 | AEO | H F |
| PX-0773 | JJSV_01127899 | JJSV_01127912 | TRAIN NG Catalys Contracts TR REV COVID 2020 | pdf | 5/12/2021 | AEO | R H F MIL 403 |
| PX-0774 | JJSV_00935509 | JJSV_00935509 | Melissa Moncrief pricing floor authorization guide | xlsx | | AEO | R, H, F, MIL |
| PX-0775 | ALCON_LENSX2918839 | ALCON_LENSX2918841 | Email chain from M. Zamorano to V. Duran re Abbot Lens/LOI ("PI") credits program for Laser Service and other needs | pst | 10/19/2016 | AEO | R, H, F, 403 |
| PX-0776 | ALCON_LENSX2983833 | ALCON_LENSX2983860 | Surgical Suite Novel Bisiness Models October 20, 2016 PowerPoint Slides | pptx | 10/20/2016 | AEO | R, F |
| PX-0777 | ALCON_LENSX3306245 | ALCON_LENSX3306245 | LenSx Rental Program 20181031 pptx | pptx | 11/1/2018 | AEO | R, F, MIL |
| PX-0778 | JJSV_00077664 | JJSV_00077664 | WorkingList_20100625 US Cataract_Targets xlsx | xlsx | 6/25/2010 | Confidential | R, H, F |
| PX-0779 | JJSV_00448637 | JJSV_00449006 | 2010 Cataract Atlas Final-Virginia Correction | pdf | 7/15/2010 | AEO | R H F |
| PX-0780 | ALCON_LENSX1108330 | ALCON_LENSX1108374 | LenSx Corporate Presentation - MPM Capital | ppt | 1/13/2008 | AEO | R, F, Q |
| PX-0781 | ALCON_LENSX1108375 | ALCON_LENSX1108375 | LenSx Budget2008 by Tibor Juhasz | xls | 4/28/2008 | AEO | R, F |
| PX-0782 | ALCON_LENSX1609219 | ALCON_LENSX1609254 | LenSx Investment Opportunity - Venture Debt PDF | pdf | 7/21/2008 | AEO | R, F, MIL |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|------|-----------|-----------|-------------|-----|------|-----------------|------------|
| PX-0783 | ALCON_LENSX1111037 | ALCON_LENSX1111037 | LenSx Presentation at JP Morgan Conference | ppt | 1/12/2009 | AEO | R, F |
| PX-0784 | ALCON_LENSX3626347 | ALCON_LENSX3626384 | LenSx Lasers Board of Directors Meeting - April 9, 2009 | pdf | 4/9/2009 | AEO | R, F |
| PX-0785 | ALCON_LENSX210793 | ALCON_LENSX210793 | LenSx 10 Year Financial Projections v3.xlsx | xlsx | 3/18/2010 | AEO | R  F  MIL |
| PX-0786 | ALCON_LENSX026220 | ALCON_LENSX026220 | LenSx PI Forecast.xlsx | xlsx | 7/16/2011 | AEO | R  F |
| PX-0787 | ALCON_LENSX2145513 | ALCON_LENSX2145530 | 2012 Global Marketing Plans LenSx docx | docx | 1/1/2012 | AEO | R, F, MIL |
| PX-0788 | ALCON_LENSX1357242 | ALCON_LENSX1357255 | 2013 LenSx Laser US Sales Funnel: Final Sales Forecast | xlsx | 10/27/2013 | AEO | R, F, MIL |
| PX-0789 | ALCON_LENSX2738134 | ALCON_LENSX2738134 | LenSx Lets Understand our Customer Presentation | pptx | 11/18/2014 | AEO | R  F |
| PX-0790 | JJSV_00988279 | JJSV_00988279 | 200107_Quarterly EFDC Pull_Total Cataract Q4 19 xlsx | xlsx | 4/29/2020 | AEO | R  H  F |
| PX-0791 | JJSV_00020782 | JJSV_00020804 | Equipment Pull-Through Analysis, dated April 27, 2020 | pdf | 1/8/2021 | AEO | R, H, F, MIL, 403 |
| PX-0792 | ALCON_LENSX2177903 | ALCON_LENSX2177903 | 2013 Alcon Peak Disposables Presentation | pptx | 5/30/2013 | AEO | R, F, MIL |
| PX-0793 | ALCON_LENSX873382 | ALCON_LENSX873382 | LenSx® PI Analysis Final.pptx | pptx | 11/21/2013 | AEO | R  F |
| PX-0794 | ALCON_LENSX887404 | ALCON_LENSX887486 | 2014 LenSx Global Marketing Plan 9 03 13 pptx | pptx | 1/10/2014 | AEO | R, F, MIL |
| PX-0795 | ALCON_LENSX0997628 | ALCON_LENSX0997631 | Email to Gautam Chaudhary Re: LenSx and Verion Presentation Regional Eye Surgery Center Baton Rouge, LA | pst | 2/12/2015 | AEO | R, H, F |
| PX-0796 | ALCON_LENSX0997645 | ALCON_LENSX0997649 | Email from G. Chaudhary RE: LenSx and Verion Presentation Regional Eye Surgery Center Baton Rouge  LA | pst | 2/12/2015 | AEO | R, H, F, Dupe |
| PX-0797 | ALCON_LENSX1037243 | ALCON_LENSX1037244 | Email to G. Chaudhary re LenSx Sales Training | pst | 11/16/2016 | AEO | R, H, F |
| PX-0798 | ALCON_LENSX1624292 | ALCON_LENSX1624299 | RE: LenSx & ATIOLs | pst | 6/12/2019 | AEO | R, H, MIL |
| PX-0799 | ALCON_LENSX1792297 | ALCON_LENSX1792302 | Email from F. Rahd to C. Chilcott re LenSx & ATIOLs | pst | 6/21/2019 | AEO | H  F  MIL |
| PX-0800 | ALCON_LENSX1792326 | ALCON_LENSX1792332 | Email from F. Rahd to C. Chilcott re LenSx & ATIOLs | pst | 6/24/2019 | AEO | H, F, MIL, Dupe |
| PX-0801 | ALCON_LENSX1808767 | ALCON_LENSX1808768 | LenSx PI and ATIOL Synergy Communication.docx | docx | 8/26/2019 | AEO | R, H, MIL, F, |
| PX-0802 | ALCON_LENSX2587462 | ALCON_LENSX2587462 | THANK YOU - Carey Kelson | pst | 6/12/2020 | AEO | R, H, MIL |
| PX-0803 | JJSV_00572929 | JJSV_00572929 | 2012 Business Plan United States Presentation | pptx | 9/29/2011 | AEO | R  H  MIL |
| PX-0804 | JJSV_00691841 | JJSV_00691841 | Johnson & Johnson Vision Surgical's 2018 Global Marketing Guidance Document | pdf | 7/18/2017 | AEO | R, H, F |
| PX-0805 | JJSV_00729665 | JJSV_00729665 | AMO Integration Update Presentation | pptx | 8/1/2019 | AEO | R, H, F, MIL |
| PX-0806 | JJSV_00711192 | JJSV_00711227 | 2020-Vision-Strat-Plan_FULL | pdf | 4/22/2020 | AEO | R  H  F |
| PX-0807 | JJSV_01128003 | JJSV_01128003 | 2014 Strategic Planning - Commercial Slides FINAL | xlsm | 3/3/2022 | AEO | R  H  F  MIL |
| PX-0808 | JJSV_00729668 | JJSV_00729668 | 2019 08.05 US Surgical Business Review Presentation | pptx | | AEO | R, H, F |
| PX-0809 | JJSV_00732574 | JJSV_00732574 | 2020 04 Catalys Surgeon Journey Qual - Exec. Summary - Final | | | AEO | R, H, F |
| PX-0810 | JJSV_00718772 | JJSV_00718772 | JJV 2019 Strat Plan-FINAL 2019-2023 | | | AEO | R  H  MIL |
| PX-0811 | ALCON_LENSX3652059 | ALCON_LENSX3652063 | 2012 LenSx Laser Global Guidance Document (draft) | docx | 2/1/2012 | AEO | R  F  MIL |
| PX-0812 | ALCON_LENSX722444 | ALCON_LENSX722512 | 2013 Key Initiatives.pptx | pptx | 3/1/2012 | AEO | R, F, MIL |
| PX-0813 | ALCON_LENSX3589215 | ALCON_LENSX3589215 | 2012 Cataract Strategic Plan (03.20.12).pptx | pptx | 11/27/2012 | AEO | R, F, MIL |
| PX-0814 | ALCON_LENSX3146248 | ALCON_LENSX3146305 | 2018 Calibration Planning LenSx v2 | pdf | 6/1/2015 | AEO | R  F  MIL |
| PX-0815 | ALCON_LENSX2503900 | ALCON_LENSX2503900 | LenSx Strategic Manufacturing and Sourcing Plan 2017 - 2022 Presentation | pptx | 8/29/2017 | AEO | R  F  MIL |
| PX-0816 | ALCON_LENSX3167909 | ALCON_LENSX3167909 | LenSx Strategic Manufacturing nad Sourcing Plan 2017-2022 - GFT-O mfg plan - Sep 13 2017 Final2.pptx | pptx | 9/13/2017 | AEO | R, F |
| PX-0817 | ALCON_LENSX1106921 | ALCON_LENSX1106921 | 2019 Laser Cataract Innovation Roadmap Presentation | pptx | 11/19/2019 | AEO | R  F  MIL |
| PX-0818 | ALCON_LENSX3437390 | ALCON_LENSX3437390 | 2019 Laser Cataract Innovation Roadmap: 2019_11_08 NGLCS Roadmap GFT-S vF.pptx | pptx | 11/20/2019 | AEO | R, F, MIL |
| PX-0819 | ALCON_LENSX254374 | ALCON_LENSX254374 | LenSx® Strategic Manufacturing and Sourcing Plan 2017-2022 | pptx | 1/26/2021 | AEO | R, F, MIL |
| PX-0820 | ALCON_LENSX3595244 | ALCON_LENSX3595244 | LenSx Sustainability & Allocation May 2021 GFT vf.pptx | pptx | 5/21/2021 | AEO | R, F |
| PX-0821 | JJSV_00967192 | JJSV_00967192 | Installed Base Analysis_Global - Refractive December 2017.xlsm | xlsm | 12/9/2017 | AEO | R  H  F |
| PX-0822 | JJSV_00952453 | JJSV_00952453 | Global Refractive Systems 10012019.xlsx | xlsx | 10/22/2019 | AEO | R, H, F |
| PX-0823 | JJSV_00861307 | JJSV_00861307 | I.S.B. Reports dated April 2, 2019 Excel Spreadsheet | xlsx | 5/13/2013 | AEO | R, H, F |
| PX-0824 | JJSV_00810479 | JJSV_00810479 | Field Update Status January 4, 2021 Excel Spreadsheet | xlsx | 3/17/2014 | AEO | R, H, F |
| PX-0825 | JJSV_01008345 | JJSV_01008345 | 20161201 Active System Placements xlsx | xlsx | 12/7/2016 | AEO | R  H  F |
| PX-0826 | JJSV_00828933 | JJSV_00828933 | I.S.B. Reports dated January 3, 2017 Excel Spreadsheet | xlsx | 1/3/2017 | AEO | R, H, F |
| PX-0827 | JJSV_00658637 | JJSV_00658637 | InstallTableRoss.xlsx | xlsx | 12/8/2020 | AEO | R, H, F, MIL |
| PX-0828 | JJSV_00020373 | JJSV_00020373 | 01012021 Catalys Active Systems xlsx | xlsx | 1/25/2021 | AEO | R, H, F |
| PX-0829 | JJSV_00020374 | JJSV_00020374 | 01012021 Catalys Inactive Systems.xlsx | xlsx | 2/1/2021 | AEO | R  H  F |
| PX-0830 | JJSV_01127882 | JJSV_01127882 | 220101 CATALYS Install Base xlsx | xlsx | 1/10/2022 | AEO | R, H, F |
| PX-0831 | JJSV_01128083 | JJSV_01128083 | Catalys032022.xlsx | xlsx | 3/31/2022 | AEO | R, H, F |
| PX-0832 | JJSV_01128082 | JJSV_01128082 | Catalys Serial Numbers XLSX | XLSX | 4/8/2022 | AEO | R  H  F  MIL |
| PX-0833 | ALCON_LENSX2146224 | ALCON_LENSX2146225 | Production Planning 2011 Ship History of Lasers by region by date FINAL (12 21 11) (2)(2).xlsx | xlsx | 1/4/2012 | AEO | R, F, MIL, Q |
| PX-0834 | ALCON_LENSX1414210 | ALCON_LENSX1414210 | LenSx⬛⬛⬛⬛⬛ Project | pptx | 5/13/2014 | AEO | R, F |
| PX-0835 | ALCON_LENSX2731660 | ALCON_LENSX2731660 | LEnSx Global Installed Base 2014 08 xlsx | xlsx | 10/6/2014 | AEO | R  F  MIL |
| PX-0836 | ALCON_LENSX2903341 | ALCON_LENSX2903341 | LenSx Install Base 082616 xlsx | xlsx | 8/26/2016 | AEO | R  F |
| PX-0837 | ALCON_LENSX3224401 | ALCON_LENSX3224406 | LenSx Install Base as of Dec 2017 with Flap Upgrades xlsx | xlsx | 1/30/2018 | AEO | R  F |
| PX-0838 | ALCON_LENSX1765880 | ALCON_LENSX1765880 | Installed Product Report 01.23.19 | xlsx | 1/24/2019 | AEO | R, F, MIL |
| PX-0839 | ALCON_LENSX1814401 | ALCON_LENSX1814442 | LenSx as of Oct 24 Install Base.xlsx | xlsx | 10/24/2019 | AEO | R  F  MIL  Q |
| PX-0840 | ALCON_LENSX004232 | ALCON_LENSX004232 | LenSx Feb 2021 Spreadsheet showing Install base by country for trending analysis | xlsx | 2/23/2021 | AEO | R, F, F, M L |
| PX-0841 | ALCON_LENSX056088 | ALCON_LENSX056088 | Global_SG_Technical_Service_INSTALL_BASE - LenSx 2-June-2021.xlsx | xlsx | 6/2/2021 | AEO | R, F |
| PX-0842 | ALCON_LENSX3595397 | ALCON_LENSX3595397 | Spreadsheet showing detail data for all manufactured LenSx devices | xlsx | 12/29/2021 | AEO | R, F |
| PX-0843 | ALCON_LENSX2744606 | ALCON_LENSX2744606 | Global LenSx Market Share 201412.xlsx | xlsx | 1/13/2015 | AEO | R  F |
| PX-0844 | ALCON_LENSX2805771 | ALCON_LENSX2805930 | Sx Franchise Guidance SP2015-2020 - Final pptx | pptx | 4/2/2015 | AEO | R, F, MIL |
| PX-0845 | ALCON_LENSX2845873 | ALCON_LENSX2845948 | LenSx Acceleration Project v17 20150916.pptx | pptx | 9/17/2015 | AEO | R, F, MIL |
| PX-0846 | ALCON_LENSX1037033 | ALCON_LENSX1037033 | Cataract Femto Market Share by Region (2016) | xlsx | 7/8/2016 | AEO | R, F, MIL |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**PLAINTIFFS' EXHIBIT LIST**

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|------|-----------|-----------|-------------|-----|------|-----------------|------------|
| PX-0847 | ALCON_LENSX2994830 | ALCON_LENSX2994830 | 2017 06 LenSx final volume analysis V2.pptx | pptx | 6/14/2017 | AEO | R, F |
| PX-0848 | ALCON_LENSX2994942 | ALCON_LENSX2994944 | RE: 2017 06 LenSx final volume analysis V2 pptx | pst | 6/14/2017 | AEO | R, H, F, MIL |
| PX-0849 | ALCON_LENSX1831096 | ALCON_LENSX1831096 | LenSx Metrics.xlsx | xlsx | 2/5/2020 | AEO | R F MIL |
| PX-0850 | JJSV_00403742 | JJSV_00403742 | 2016-2020 Global Cataract Consumables Share - Latest | xlsx | 11/9/2020 | AEO | R H F |
| PX-0851 | JJSV_00403743 | JJSV_00403743 | J&J Vision Excel spreadsheet titled LCS Vendor Market Share, dated Jan 2021 | xlsx | 1/6/2021 | AEO | R, H, F |
| PX-0852 | ALCON_LENSX723530 | ALCON_LENSX723597 | 2013 Alcon Marketing Plan Template LenSx Final | pdf | 11/5/2012 | AEO | R, F, MIL |
| PX-0853 | ALCON_LENSX2724242 | ALCON_LENSX2724242 | 2015 LenSx - Global Franchise Plan Presentation | pptx | 9/20/2014 | AEO | R F MIL |
| PX-0854 | ALCON_LENSX2737949 | ALCON_LENSX2738040 | Alcon 2015 LenSx Laser U.S. Marketing Plan Presentation | pdf | 11/14/2014 | AEO | R F 403 |
| PX-0855 | JJSV_00945597 | JJSV_00945597 | Abbott US LCS Tracker, March Update | pptx | 4/10/2015 | AEO | R, H, F, MIL |
| PX-0856 | JJSV_00962719 | JJSV_00962719 | Johnson & Johnson Vision Presentation re Alcon SWOT and anticipated strategies | pptx | 1/1/2017 | AEO | R, H, F |
| PX-0857 | ALCON_LENSX3713080 | ALCON_LENSX3713119 | LenSx Cataract Enhancement II Discussion Presentation | pdf | 6/10/2017 | AEO | R H F |
| PX-0858 | JJSV_00710308 | JJSV_00710339 | Johnson & Johnson Vision Business Development & Strategy, Surgical Vision Overview Presentation | pdf | 9/1/2018 | AEO | R, H, F |
| PX-0859 | ALCON_LENSX253617 | ALCON_LENSX253617 | 2019 Strategic Business Plan, LenSx Laser Presentation | pptx | 8/20/2019 | AEO | R, F, MIL |
| PX-0860 | ALCON_LENSX3659071 | ALCON_LENSX3659098 | Alcon ESCRS & AAO & ASCRS (2018-2019) Refractive Competitive Landscape Overview Presentation | pdf | 11/1/2019 | AEO | R, F, MIL |
| PX-0861 | JJSV_00704694 | JJSV_00704694 | Johnson & Johnson Vision MD&D Build Back SWOT 7 SG&A Overview Presentation | pptx | 4/23/2020 | AEO | R, H, F |
| PX-0862 | JJSV_00147856 | JJSV_00147928 | Catalys Papers Final | pdf | 11/6/2012 | AEO | R, H, F |
| PX-0863 | JJSV_00991384 | JJSV_00991388 | CATALYS cOS 6.0 & CATALYS competative claims matrix | pdf | 5/29/2020 | AEO | R H F |
| PX-0864 | JJSV_00823559 | JJSV_00823566 | 2018_ClinOph_Khodabakhsh_Contralateral Eye Comparison of Phaco Metrics | pdf | 9/11/2020 | AEO | R, H, F, 403 |
| PX-0865 | ALCON_LENSX2181831 | ALCON_LENSX2181834 | Email from S. Leoni re FW: OptiMedica Messaging | pst | 7/31/2013 | AEO | R, H |
| PX-0866 | ALCON_LENSX0996805 | ALCON_LENSX0996806 | FW: ███████ recent Big win | pst | 6/25/2014 | AEO | R, H, F |
| PX-0867 | JJSV_00769494 | JJSV_00769495 | Email from J. Golda to Raymond Woo et al. re All I can say is "WOW"! | pst | 12/5/2014 | AEO | R H F 403 |
| PX-0868 | JJSV_00142341 | JJSV_00142837 | LCS Clinical Publications Compendium | pdf | 3/11/2015 | AEO | R, H, F, Q, 106 |
| PX-0869 | ALCON_LENSX095280 | ALCON_LENSX095280 | LenSx vs Catalys Competitive Overview | pptx | 4/5/2016 | AEO | None |
| PX-0870 | JJSV_00713200 | JJSV_00713200 | Alcon vs AMO Q3 2017 | pptx | 10/1/2017 | AEO | R H F MIL |
| PX-0871 | ALCON_LENSX3252883 | ALCON_LENSX3252884 | Email from S. Leoni to M. Watson et al. re Japan Catalys vs LenSx Update | pst | 5/9/2018 | AEO | R H F |
| PX-0872 | ALCON_LENSX2146433 | ALCON_LENSX2146434 | Email from Seba Leoni FW: ██████ | pst | 2/22/2012 | AEO | H, F |
| PX-0873 | ALCON_LENSX2146597 | ALCON_LENSX2146599 | Email from Seba Leoni to Ron Kurtz re FW: IMPORTANT - Catalys Material sent by ROCOL to Colombian surgeons | pst | 3/16/2012 | AEO | H, F |
| PX-0874 | ALCON_LENSX1113774 | ALCON_LENSX1113775 | Email to E. Weinberg and R. Kurtz FW: LenSx████████ | pst | 8/21/2012 | AEO | R H F |
| PX-0875 | ALCON_LENSX1131749 | ALCON_LENSX1131753 | Email to Ron Kurtz, Eric Weinberg RE: MEEI-Face to Face meeting | pst | 1/4/2013 | AEO | R, H, F |
| PX-0876 | ALCON_LENSX1154578 | ALCON_LENSX1154579 | Email from Eric Weinberg to Ron Kurtz re FW: LensX selling model | pst | 3/6/2013 | AEO | R, H, F |
| PX-0877 | ALCON_LENSX1161943 | ALCON_LENSX1161944 | Email from Eric Weinberg to Ron Kurtz re FW: Femto Competitve Intellgence - CONF DENTIAL | pst | 4/6/2013 | AEO | R H F |
| PX-0878 | ALCON_LENSX1161991 | ALCON_LENSX1161991 | Email from Eric Weinberg to Ron Kurtz re Fwd: Femto Systems | pst | 4/9/2013 | AEO | R H F |
| PX-0879 | ALCON_LENSX2162016 | ALCON_LENSX2162019 | Email to Seba Leoni re: ASCRS notes | pst | 4/25/2013 | AEO | R, H, F |
| PX-0880 | ALCON_LENSX1201870 | ALCON_LENSX1201870 | Email from Eric Weinberg to Ron Kurtz re Fwd: Catalys at███ | pst | 4/29/2013 | AEO | R, H, F |
| PX-0881 | ALCON_LENSX1223239 | ALCON_LENSX1223241 | Email from Eric Weinberg to Ron Kurtz re FW: Today with Catalys, Day 1 ██████ , just got off phone withh him | pst | 5/8/2013 | AEO | R, H, F |
| PX-0882 | ALCON_LENSX1223766 | ALCON_LENSX1223768 | Email from Eric Weinberg to Ron Kurtz re Fwd: ███ Site Visit to SC | pst | 5/13/2013 | AEO | R, H, F |
| PX-0883 | ALCON_LENSX1260340 | ALCON_LENSX1260341 | Email from Eric Weinberg to Ron Kurtz re FW: Optimedica miss-information example | pst | 5/30/2013 | AEO | R, H, F |
| PX-0884 | ALCON_LENSX2181720 | ALCON_LENSX2181724 | Email to Seba Leoni re Abbott acquires Optimedica for 400m | pst | 7/16/2013 | AEO | H F |
| PX-0885 | ALCON_LENSX2181756 | ALCON_LENSX2181756 | Email to Seba Leoni re: OptiMedica Acquisition Summary | pst | 7/19/2013 | AEO | H, F |
| PX-0886 | ALCON_LENSX2181757 | ALCON_LENSX2181757 | OptiMedica Acquisition Summary Presentation | pptx | 7/19/2013 | AEO | R, F, MIL |
| PX-0887 | ALCON_LENSX1315949 | ALCON_LENSX1315955 | Email to Ron Kurtz, Eric Weinberg re FW: ████████ - Calgary Event - September 24th. | pst | 9/17/2013 | AEO | H, F |
| PX-0888 | ALCON_LENSX1346269 | ALCON_LENSX1346270 | Email from Eric Weinberg to Ron Kurtz re FW: Pressure in NY - LenSx | pst | 10/11/2013 | AEO | R, H, F |
| PX-0889 | JJSV_00447507 | JJSV_00447509 | 2010 MarketScope ASCRS Femtosecond | pdf | 5/25/2010 | Confidential | R, H, F |
| PX-0890 | JJSV_00448205 | JJSV_00448355 | 2007 Cataract Surgical Equipment | pdf | 9/25/2007 | Confidential | None |
| PX-0891 | JJSV_00447245 | JJSV_00447437 | 2009 Cataract Equipment for Mark Forchette | pdf | 7/28/2009 | Confidential | None |
| PX-0892 | JJSV_00876416 | JJSV_00876626 | 2010 Cataract Equipment Report AMO | pdf | 7/2/2010 | Confidential | None |
| PX-0893 | JJSV_00876627 | JJSV_00876862 | 2011 Cataract Equipment Report | pdf | 1/1/2011 | Confidential | None |
| PX-0894 | JJSV_00876863 | JJSV_00877111 | 2012 Cataract Equipment Report FINAL-AMO | pdf | 1/1/2012 | Confidential | None |
| PX-0895 | JJSV_00399003 | JJSV_00399260 | 2013 Cataract Equipment Report Final-AMO | pdf | 6/18/2013 | Confidential | None |
| PX-0896 | JJSV_00450846 | JJSV_00451115 | 2014 Cataract Equipment Report | pdf | 6/10/2014 | Confidential | None |
| PX-0897 | JJSV_00409536 | JJSV_00409804 | 2015 Cataract Equipment FINAL Abbott | pdf | 7/31/2015 | Confidential | None |
| PX-0898 | JJSV_00410296 | JJSV_00410592 | 2016 Cataract Equipment (Market Scope June 2016) | pdf | 1/1/2016 | Confidential | None |
| PX-0899 | JJSV_00833033 | JJSV_00833107 | 2017 Annual Cataract Report J&J | pdf | 6/1/2017 | Confidential | None |
| PX-0900 | JJSV_00847622 | JJSV_00847905 | 2017 Market Scope 2017 Cataract Equipment Report | pdf | 7/1/2017 | Confidential | None |
| PX-0901 | JJSV_00850536 | JJSV_00850804 | 2018 Cataract Equipment Report Johnson & Johnson Vision | pdf | 1/1/2018 | Confidential | None |
| PX-0902 | JJSV_00413967 | JJSV_00414241 | 2019 Cataract Equipment Market Report | pdf | 5/22/2019 | Confidential | None |
| PX-0903 | JJSV_00022753 | JJSV_00023027 | 2020 Global Cataract Equipment Market Scope Report | pdf | 7/1/2020 | Confidential | None |
| PX-0904 | JJSV_00022416 | JJSV_00022694 | 2020 Premium Cataract Surgery Market Report | pdf | 11/23/2020 | Confidential | None |
| PX-0905 | JJSV_01118515 | JJSV_01118795 | 2021-Cataract-Equipment-Market-Report | pdf | 7/16/2021 | Confidential | None |
| PX-0906 | JJSV_01118796 | JJSV_01118835 | 2021 Q4 Cataract US Quarterly Update | pdf | 2/15/2022 | Confidential | None |
| PX-0907 | JJSV_00408514 | JJSV_00408681 | 2020 Laser Market Report | pdf | 6/12/2020 | Confidential | None |
| PX-0908 | JJSV_01117762 | JJSV_01118162 | 2021 Global IOL Market Report | pdf | 7/16/2021 | Confidential | None |
| PX-0909 | JJSV_00402285 | JJSV_00402513 | 2006 Refractive Surgery Market Report | pdf | 9/1/2006 | Confidential | None |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0910 | JJSV_00402527 | JJSV_00402541 | 2009 Q4 Refractive Quarterly Final for AMO | pdf | 12/1/2009 | Confidential | None |
| PX-0911 | JJSV_00402542 | JJSV_00402778 | 2010 Refractive Surgery Market Report | pdf | 6/1/2010 | Confidential | None |
| PX-0912 | JJSV_01068172 | JJSV_01068408 | 2011 Refractive Surgery Market Report | pdf | 6/1/2011 | Confidential | None |
| PX-0913 | JJSV_00388969 | JJSV_00389208 | 2012 Refractive Surgery Market Report | pdf | 6/1/2012 | Confidential | None |
| PX-0914 | JJSV_00397993 | JJSV_00398054 | 2013 Annual Refractive Survey Report F NAL AMO | pdf | 8/15/2013 | Confidential | None |
| PX-0915 | JJSV_01120231 | JJSV_01120513 | 2020 Refractive Surgery Market Report | pdf | 6/1/2020 | Confidential | None |
| PX-0916 | JJSV_01118163 | JJSV_01118452 | 2021 Refractive Surgery Global Market Report | pdf | 12/21/2021 | Confidential | None |
| PX-0917 | JJSV_00449007 | JJSV_00449317 | Cataract Refract Surg Today 2012 Jul. p38, Using a Laser to Create Intrastromal Arcuate Incisions | pdf | 6/9/2006 | AEO | R, H, F |
| PX-0918 | JJSV_00447439 | JJSV_00447444 | 062009_BBT_Femtosecond laser technology may mark a quantum leapASCRS article | pdf | 6/1/2009 | Not Confidential | R, H, F |
| PX-0919 | JJSV_00447465 | JJSV_00447472 | Piper Jaffray  Notes from ASCRS: Disruptive Technology on the Horizon | pdf | 4/13/2010 | Not Confidential | R H F |
| PX-0920 | JJSV_00070836 | JJSV_00070900 | cataract compendia  w disclaimer | pdf | 6/9/2010 | Not Confidential | R, H, F |
| PX-0921 | JJSV_01045788 | JJSV_01045788 | IOLs/Femtosecond Laser Study Presentation | ppt | 10/1/2010 | AEO | R, H, F, 403, M L |
| PX-0922 | ALCON_LENSX216170 | ALCON_LENSX216170 | Alcon Consult Meeting, Cataract Equipment Presentation | pptx | 11/4/2010 | AEO | R, F |
| PX-0923 | JJSV_00870666 | JJSV_00870666 | MarketScope 2012 Annual Survey of Cataract Surgeons | pptx | 6/1/2012 | AEO | None |
| PX-0924 | ALCON_LENSX216625 | ALCON_LENSX216625 | 2011 American Society of Cataract and Refractive Surgery (ASCRS) Events presentation | pptx | 3/22/2011 | Confidential | R, F |
| PX-0925 | JJSV_00417468 | JJSV_00417491 | Q1-2011 Cataract Quarterly Final AMO R2 pdf | pdf | 4/28/2011 | Confidential | None |
| PX-0926 | JJSV_00425110 | JJSV_00425110 | Cataract Surgery Feature Story, Perfecting Clear Corneal Incisions, May 2013 | pdf | 7/9/2012 | Not Confidential | R, H, F |
| PX-0927 | JJSV_00425130 | JJSV_00425141 | Cataract Refract Surg Today Eur 2012 Dec.pg 1-12 | pdf | 12/1/2012 | Not Confidential | R H F |
| PX-0928 | JJSV_00435002 | JJSV_00435006 | Cheryl Guttman Krader, Surgeons weigh femtosecond features, factors for informed decisions - technical understanding enbales prospective buyers to compare, contrast platforms, Ophthalmology Times | pdf | 7/1/2015 | Not Confidential | R, H, F |
| PX-0929 | JJSV_00418158 | JJSV_00418189 | Q4-2015 Cataract Quarterly Reports FINAL - AMO | pdf | 2/8/2016 | Confidential | None |
| PX-0930 | JJSV_00020805 | JJSV_00020805 | Johnson & Johnson Vision, LCS Customer Journey Qualitative Teledepth Interviews, Executive Summary | pptx | 4/17/2020 | AEO | R, H, F |
| PX-0931 | ALCON_LENSX3638879 | ALCON_LENSX3638894 | Alcon Customer Survey Report  Custom Next-Gen FLACS Survey | pdf | 11/1/2021 | AEO | R F |
| PX-0932 | JJSV_00020807 | JJSV_00020807 | Johnson & Johnson Vision  CATALYS cOS7 Software Release Research Presentation | pptx | | AEO | R H F |
| PX-0933 | | | Stamm Opening Appendices D-H  (composite exhibit) | | 4/29/2022 | AEO | R, H, F, Demo, 1006 |
| PX-0934 | | | Stamm Opening Exhibits 2-35D  (as revised, composite exhibit) | | 4/29/2022 | AEO | R, H, F, Demo, 1006 |
| PX-0935 | | | Stamm Rebuttal Exhibits 1A-2B  (composite exhibit) | | 5/27/2022 | AEO | R H F Demo 1006 |
| PX-0936 | | | Stamm Reply Exhibits 1-7E  (composite exhibit) | | 6/23/2022 | AEO | R H F  Demo  1006 |
| PX-0937 | JJSV_01102174 | JJSV_01102311 | IntraLase Annual Report 2004 | pdf | 6/30/2005 | AEO | R, H, F |
| PX-0938 | JJSV_00020385 | JJSV_00020385 | JJSV P&L - 2013 Dec.xlsx | xlsx | 2/4/2011 | AEO | R, H, F |
| PX-0939 | JJSV_00020428 | JJSV_00020428 | Sales by Region - 2017 Dec.xlsx | xlsx | 8/29/2017 | AEO | R H F |
| PX-0940 | JJSV_00020399 | JJSV_00020399 | JJSV P&L - 2017 Dec.xlsx | xlsx | 10/3/2017 | AEO | R H F |
| PX-0941 | JJSV_01128084 | JJSV_01128084 | FIG1084FR 2013-2022 Global PL 041122.xlsm | xlsm | 5/18/2006 | AEO | R, H, F, MIL |
| PX-0942 | JJSV_01094484 | JJSV_01094484 | Revenue Pivot - 010622 @ 21BP Rates Hierarchy Updates.xlsm | xlsm | 3/23/2015 | AEO | R, H, F |
| PX-0943 | JJSV_01121033 | JJSV_01121033 | ASTESTSALES2 2013 - 2020 Sales by Customer 022822.xlsm | xlsm | 2/28/2022 | AEO | R H F |
| PX-0944 | JJSV_01127090 | JJSV_01127090 | ASTESTSALES2 Global 2013 - 2020 Sales by Customer 022822.xlsm | xlsm | 3/2/2022 | AEO | R, H, F |
| PX-0945 | JJSV_01128001 | JJSV_01128001 | ASTESTSALES2 2013 - 2020 Sales by Legal Entity 030222 xlsm | xlsm | 3/3/2022 | AEO | R, H, F |
| PX-0946 | JJSV_01128002 | JJSV_01128002 | FIG1084FR 2013-2022 Global PL 922 923 030222.xlsm | xlsm | 3/3/2022 | AEO | R, H, F, MIL |
| PX-0947 | JJSV_00120488 | JJSV_00120488 | 20100730 - Patient Interface RfQ Comparison.xlsx | xlsx | 8/2/2010 | AEO | H F |
| PX-0948 | JJSV_00712134 | JJSV_00712147 | 2018 Johnson & Johnson Surgical Vision Sales Incentive Plan Document | doc | 1/1/2018 | AEO | R, H, F |
| PX-0949 | JJSV_00993370 | JJSV_00993370 | Historical Std Cost - 2014 to 2021.xlsx | xlsx | 12/8/2020 | AEO | R, F |
| PX-0950 | JJSV_01121031 | JJSV_01121031 | lfs BOM structure 2016 to 2022.xlsx | xlsx | 1/14/2022 | AEO | R, H, F |
| PX-0951 | JJSV_00719375 | JJSV_00719375 | ▓▓▓▓▓▓▓ - GP Model (10-10-2016).xlsx | xlsx | 12/19/2016 | AEO | R H F |
| PX-0952 | JJSV_00723635 | JJSV_00723635 | High Level Std Mgn by Region - CKP - August vs JU | xls | 8/30/2017 | AEO | R, H, F |
| PX-0953 | JJSV_00720520 | JJSV_00720520 | Standard Margin - November 2018 vs NU @ FBP Rates xlsx | xlsx | 11/30/2018 | AEO | R, H, F |
| PX-0954 | JJSV_00718457 | JJSV_00718457 | Standard Margin - August 2019 vs JU @ FBP Rates.xlsx | xlsx | 9/12/2019 | AEO | R, H, F |
| PX-0955 | JJSV_00705883 | JJSV_00705883 | Standard Margin - Dec 2020 vs FBP @ FBP Rates xlsx | xlsx | 1/25/2021 | AEO | R H F |
| PX-0956 | JJSV_01094483 | JJSV_01094483 | Standard Margin - Dec 2021 vs FBP @ FBP Rates xlsx | xlsx | 1/19/2022 | AEO | R, H, F |
| PX-0957 | ALCON_LENSX3149235 | ALCON_LENSX3149235 | LenSx manufacturing plan | pptx | 9/1/2017 | AEO | R, H, F, MIL |
| PX-0958 | ALCON_LENSX3161808.1 | ALCON_LENSX3161808.22 | LenSx Strategic Manufacturing and Sourcing Plan 2017-2022 | pptx | 9/13/2017 | AEO | R F MIL  Dupe |
| PX-0959 | ALCON_LENSX3161808 | ALCON_LENSX3161808 | LenSx - GFT-O mfg plan - Sep 13 2017 Final | pptx | 9/26/2017 | AEO | R F MIL |
| PX-0960 | ALCON_LENSX2503900.1 | ALCON_LENSX2503900.15 | LenSx Strategic Manufacturing and Sourcing Plan 2017-2022 | pptx | 5/3/2020 | AEO | R, F, MIL |
| PX-0961 | ALCON_LENSX713282 | ALCON_LENSX713288 | 2014 - 2019 LenSx APA Royalty Model xlsx | xlsx | 9/25/2020 | AEO | R, F, 403, MIL |
| PX-0962 | ALCON_LENSX2600498 | ALCON_LENSX2600500 | Email from K. Watanabe to M. Poon re Instrumentation Strat Plan Debrief | pst | 3/5/2021 | AEO | R H |
| PX-0963 | ALCON_LENSX2600501 | ALCON_LENSX2600501 | LenSx 2.0 FTE Spreadsheet | xlsx | 3/5/2021 | AEO | R F  403 MIL |
| PX-0964 | ALCON_LENSX095283 | ALCON_LENSX095283 | LenSx Cost BOM Spreadsheet | xlsx | 6/10/2021 | AEO | R, F |
| PX-0965 | ALCON_LENSX095285 | ALCON_LENSX095285 | Irvine PI Trended Cost Spreadsheet | xlsx | 6/23/2021 | AEO | R, F |
| PX-0966 | ALCON_LENSX095284 | ALCON_LENSX095284 | Irvine PI 2020 Costed BOM Spreadsheet | xlsx | 6/23/2021 | AEO | R, F |
| PX-0967 | ALCON_LENSX0995120 | ALCON_LENSX0995123 | AMO_Wavelight payment spreadsheet | xlsx | 10/28/2021 | AEO | R, F, 403, MIL |
| PX-0968 | ALCON_LENSX3804965 | ALCON_LENSX3804965 | Project Cost Actuals (LenSx) Direct Labor 2020-2021 | xlsx | 1/28/2022 | AEO | R, F, MIL |
| PX-0969 | ALCON_LENSX027022 | ALCON_LENSX027022 | LenSx Historical Sales since launch 2019 12.xlsx | xlsx | 2/21/2020 | AEO | R, F, MIL |
| PX-0970 | ALCON_LENSX3805691 | ALCON_LENSX3805691 | LenSx Refreshed Data.xlsx | xlsx | 8/25/2020 | AEO | R F MIL |
| PX-0971 | ALCON_LENSX004231 | ALCON_LENSX004231 | LenSx Financial Summary 2011-2020 Spreadsheet | xlsx | 2/19/2021 | AEO | R, F, F, M L |
| PX-0972 | ALCON_LENSX004233 | ALCON_LENSX004233 | LenSx Sales History | xlsx | 2/23/2021 | AEO | R, F, F, M L |
| PX-0973 | ALCON_LENSX056086 | ALCON_LENSX056086 | SoftFit  P AS spreadsheet | xlsx | 5/27/2021 | AEO | R, F, MIL |

19 of 22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-0974 | ALCON_LENSX056087 | ALCON_LENSX056087 | Account Level Detail - IRIS.xlsx | xlsx | 5/27/2021 | AEO | R, F, MIL |
| PX-0975 | ALCON_LENSX1049960 | ALCON_LENSX1051164 | Historical IOL Sales 2013 Onwards | xlsx | 10/19/2021 | AEO | R, F, MIL |
| PX-0976 | ALCON_LENSX3595202 | ALCON_LENSX3595202 | Global Sx Franchise PL hardcopy.xlsx | xlsx | 12/21/2021 | AEO | R F MIL |
| PX-0977 | ALCON_LENSX3804966 | ALCON_LENSX3804966 | Historical Sales Data and future projections through 2026  spreadsheet | xlsx | 2/10/2022 | AEO | R F MIL |
| PX-0978 | ALCON_LENSX3805687 | ALCON_LENSX3805687 | All LenSx APMR By Global US and Country 2014 - 2022.xlsx | xlsx | 3/1/2022 | AEO | R, F, MIL |
| PX-0979 | ALCON_LENSX3805688 | ALCON_LENSX3805688 | Cataract sales to accounts which had LenSx sales 2014-21 on IRIS.xlsx | xlsx | 3/3/2022 | AEO | R, F, MIL |
| PX-0980 | ALCON_LENSX3805692 | ALCON_LENSX3805692 | LenSx customer reporting 2014-2020 | xlsx | | AEO | R F MIL |
| PX-0981 | ALCON_LENSX2142399 | ALCON_LENSX2142462 | Factbook: Alcon Management Reporting U.S. Surgical November 2021 | pdf | 11/1/2021 | AEO | R F MIL |
| PX-0982 | ALCON_LENSX1111037 | ALCON_LENSX1111037 | LenSx Lasers JP Morgan Conference January 2009 | pptx | 1/1/2009 | AEO | H, F |
| PX-0983 | ALCON_LENSX214873 | ALCON_LENSX214897 | 0_130e[]Overview Financials 2010 - 2011 | pdf | 6/2/2010 | AEO | R, F, MIL |
| PX-0984 | ALCON_LENSX3804553 | ALCON_LENSX3804553 | Q -Monthly Performance 2014-11 xlsx | xlsx | 12/5/2014 | AEO | R F MIL |
| PX-0985 | ALCON_LENSX2724242 | ALCON_LENSX2724242 | LenSx Global Update Presentation | pptx | 6/1/2015 | AEO | R, F |
| PX-0986 | ALCON_LENSX026744 | ALCON_LENSX026744 | LenSx_TGT 2017 1.30.xlsx | xlsx | 1/31/2017 | AEO | R, F |
| PX-0987 | ALCON_LENSX3149235 | ALCON_LENSX3149235 | LenSx Manufacturing Plan Discussion Presentation | pptx | 9/1/2017 | AEO | R, H, F, MIL, dupe |
| PX-0988 | ALCON_LENSX027021 | ALCON_LENSX027021 | LenSx Historical Sales since launch 2018 12 07.xlsx | xlsx | 5/17/2019 | AEO | R F |
| PX-0989 | ALCON_LENSX2182122 | ALCON_LENSX2182122 | Alcon 2013 Mid Year Review-Additional Investments presentation | | 8/5/2019 | AEO | R, F, MIL |
| PX-0990 | ALCON_LENSX000214 | ALCON_LENSX000214 | LenSx Financial Summary 2011-2020 xlsx | xlsx | 4/15/2020 | AEO | R, F, MIL |
| PX-0991 | ALCON_LENSX254359 | ALCON_LENSX254359 | LenSx ATIOLs Analysis Spreadsheet | xlsx | 7/16/2020 | AEO | R, F, MIL |
| PX-0993 | ALCON_LENSX095202 | ALCON_LENSX095202 | Account Level Detail - IRIS.xlsx | xlsx | 6/4/2021 | AEO | R F |
| PX-0994 | ALCON_LENSX095286 | ALCON_LENSX095286 | HTX LenSX PI SKUs Spreadsheet | xlsx | 6/25/2021 | AEO | R, F |
| PX-0995 | ALCON_LENSX3804964 | ALCON_LENSX3804964 | LenSx Margin Analysis 2016-2021 spreadsheet | xlsx | 1/18/2022 | AEO | R, F, MIL |
| PX-0996 | ALCON_LENSX3805690 | ALCON_LENSX3805690 | Lensx Program cost 2015 - 2021 Actuals (project reported).xlsx | xlsx | 2/14/2022 | AEO | R, F |
| PX-0997 | ALCON_LENSX3805689 | ALCON_LENSX3805689 | LenSX Full Year R&D Cost 2011 - 2014 (JDE MKT771) xlsx | xlsx | 3/1/2022 | AEO | R F MIL |
| PX-0998 | ALCON_LENSX3805708 | ALCON_LENSX3805708 | Alcon cataract product units by product and US customer | | 3/9/2022 | AEO | R, F, MIL |
| PX-0999 | ALCON_LENSX1049959 | ALCON_LENSX1049959 | Pre 2013 IOL Sales Values by Quarter | xlsx | | AEO | R, F, MIL |
| PX-1000 | ALCON_LENSX762522 | ALCON_LENSX762522 | LenSx Laser Presentation | pptx | | AEO | R F MIL Dupe |
| PX-1001 | | | 2021 04.09 Plaintiffs' 1st Supplemental Response to ROG Nos. 11 & 12.pdf | pdf | 4/9/2021 | AEO | H 106 701/702 |
| PX-1002 | | | 2022 01.10 Plaintiffs' 4th Supplemental Response to ROG No. 5.pdf | pdf | 1/10/2022 | AEO | H, 106 |
| PX-1003 | | | 2022 02.22 Plaintiffs' Response to Fifh Set of ROGs (Nos. 24-27) pdf | pdf | 2/22/2022 | AEO | H, 106 |
| PX-1004 | | | 2022 03.04 Plaintiffs' 2nd Supplemental Responses to ROG No. 27.pdf | pdf | 3/4/2022 | AEO | R H |
| PX-1005 | | | 2022 03.04 Plaintiffs' 4th Supplemental Responses to ROG No. 11 pdf | pdf | 3/4/2022 | AEO | H 701/702 |
| PX-1006 | | | 2022 03.04 Plaintiffs' Responses to Defendants' First Set of Requests for Admission (Nos. 1-60) | pdf | 3/4/2022 | AEO | H, F |
| PX-1007 | | | 2022 03.07 Plaintiffs' Corrected Responses to Sixth Set of ROGs (Nos. 28-38).pdf | pdf | 3/7/2022 | AEO | H F |
| PX-1008 | | | 2022 04.22 Plaintiff's Sixth Supplemental Response to Defendants' Interrogatory No. 5 | pdf | 4/22/2022 | AEO | None |
| PX-1009 | | | 2021 09.27 Alcon 1st Supplemental Responses to ROG No. 20.pdf | pdf | 9/27/2021 | AEO | None |
| PX-1010 | | | 2022 01.14 Alcon Supplemental Responses to ROG Nos. 3, 4, 7, 8, 12, 16, 17 pdf | pdf | 1/14/2022 | AEO | R, 403, F |
| PX-1011 | | | Alcon's Objections and Responses to J&J's Requests for Admissions (Nos. 1-35) | pdf | 3/4/2022 | AEO | R 403 |
| PX-1012 | JJSV_01128272 | JJSV_01128273 | COCOMO II - Constructive Cost Model.pdf | pdf | 4/7/2022 | Not Confidential | A, H, F, Demo, 403 |
| PX-1013 | JJSV_01128101 | JJSV_01128133 | Boehm et al., SOFTWARE COST ESTIMATION WITH COCOMO II xxvii–xxix (2000) | pdf | | Not Confidential | 106 |
| PX-1014 | JJSV_01046487 | JJSV_01046490 | Software Coding Standards Procedure No. RD-012-DP | doc | 2/9/2004 | Not Confidential | R, H, F, 403, Dupe |
| PX-1015 | JJSV_01111692 | JJSV_01112358 | photon_prog_guide | pdf | 5/14/2010 | Confidential | None |
| PX-1016 | JJSV_00930012 | JJSV_00930416 | neutrino_user_guide | pdf | 6/14/2012 | AEO | None |
| PX-1017 | JJSV_01128567 | JJSV_01128579 | Gualdi & Gualdi, FEMTO-LASER CATARACT SURGERY, Chapter 2  - Principles of Physics of Femtosecond Laser (2014) | pdf | 6/1/2014 | Not Confidential | H, F |
| PX-1018 | JJSV_01130271 | JJSV_01130288 | Schmalensee, R., Product Differentiation Advantages of Pioneering Brands, Am. Econ. Rev., Vol. 72  No. 3  349-65 (1982) | pdf | 6/1/1982 | Not Confidential | R, H, F, 403 |
| PX-1019 | JJSV_01130176 | JJSV_01130196 | Kerin et al, First-Mover Advantage: A synthesis, Conceptual Framework, and Research Propositions, J. Marketing, Vol. 56, 33-52 (1992) | pdf | 6/1/1992 | Not Confidential | R, H, F, 403 |
| PX-1020 | JJSV_01130197 | JJSV_01130215 | Lieberman and Montgomery  FIrst-Mover Advantages  Strategic Mgmt J. Vol. 9  41-58 (1988) | pdf | 6/29/2022 | Not Confidential | R H F 403 |
| PX-1021 | | | Suzuki Deposition Ex. 18: Suzuki, J.,  Documenting the software Validation of Computer-Controlled Devices and Manufacturing Processes, Med. Device & Diagnostic Industry, 218-27 (January 1996) | pdf | 1/1/1996 | Not Confidential | R, H, F, 403 |
| PX-1022 | JJSV_01128382 | JJSV_01128382 | FDA  Design Control Guidance for Medical Device Manufacturers (March 11  1997) | pdf | 3/11/1997 | Not Confidential | None |
| PX-1023 | ALCON_LENSX288985 | ALCON_LENSX289007 | FDA, Guidance for the Content of Premarket Submissions for Software Contained in Medical Devices | pdf | 5/11/2005 | Not Confidential | None |
| PX-1024 | JJSV_01128274 | JJSV_01128350 | FDA, Deciding When to Submit a 510(k) for a Change to an Existing Device (Oct. 25, 2017), https://www.fda.gov/media/99812/download | pdf | 10/25/2017 | Not Confidential | None |
| PX-1025 | JJSV_01130364 | JJSV_01131246 | FDA, Regulatory Procedures Manual | pdf | 6/29/2022 | Not Confidential | None |
| PX-1026 | | | Becker Deposition Ex. 7: FDA Regulatory Procedures Manual, Chapter 4: Advisory Actions | | | Not Confidential | None |
| PX-1027 | JJSV_00450593.1 | JJSV_00450593.9 | H. Dick et al, Laser Cataract Surgery Delivers on its Promise, Supplement to Cataract & Refractive Surgery Today | | 3/1/2013 | Not Confidential | R, H, F, Q |
| PX-1028 | ALCON_LENSX249765 | ALCON_LENSX249773 | Nagy, Zoltan Z., et al, Complications of femtosecond laser-assisted cataract surgery, J Cataract Refract Surg, Vol. 40, pp. 20-28, January 2014 | pdf | 1/1/2014 | Not Confidential | R, H, F |
| PX-1029 | ALCON_LENSX2122680 | ALCON_LENSX2122684 | Pantanelli et al., "Anterior Capsulotomy Outcomes: A Comparison Between Two Femtosecond Laser Cataract Surgery Platforms," Journal of Refractive Surgery Vol. 31 No. 12 (2015), 821–825 | pdf | 6/1/2015 | Not Confidential | R, H, F |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

PLAINTIFFS' EXHIBIT LIST

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-1030 | JJSV_00816297 | JJSV_00816297 | Robert Rivera, et al., Comparative analysis of the performance of two different platforms for femtosecond laser-assisted cataract surgery, Clinical Ophthalmology 2016: 10, pp. 2069-2078 | pdf | 10/19/2016 | Not Confidential | R, H, F |
| PX-1031 | JJSV_00678859 | JJSV_00678859 | Rivera, Robert P., et al., Comparative analysis of the performance of two different platforms for femtosecond laser-assisted cataract surgery  Clinical Ophthalmology  10: 2069-78 (20163) | pdf | 10/19/2016 | Not Confidential | R, H, F, 403 |
| PX-1032 | JJSV_00771857 | JJSV_00771868 | H. Burkhard Dick and Tim Schultz, A Review of Laser-Assisted Versus Traditional Phacoemulsification Cataract Surgery, Ophthalmol Ther | pdf | 12/12/2016 | Not Confidential | R, H, F |
| PX-1033 | | | Stamm Expert Production: Boesen, Ulrik, "Why the Medical Device Tax Should Be Repealed," Tax Foundation, December 3, 2019, available at https //taxfoundation.org/medical-device-tax-repeal./ | pdf | 12/3/2017 | Not Confidential | R, H, F, 403 |
| PX-1034 | JJSV_00692906 | JJSV_00692911 | Yesilirmak et al., "Comparison of phacoemulsification parameters between manual and femtosecond laser-assisted cataract surgery," Canadian Journal of Ophthalmology Vol. 53 No. 5 (October 2018)  542–47 | pdf | 5/21/2018 | Not Confidential | R, H, F |
| PX-1035 | JJSV_00668485 | JJSV_00668485 | Khodabakhsh, A. and Hofbauer, J., Contralateral eye comparison of the phacoemulsification metrics, patient experience and clinical outcomes in patients undergoing bilateral cataract surgery with two commonly used femtosecond laser systems, Clincal Ophthalmology, 12: 1391-98 (2018) | pdf | 8/7/2018 | Not Confidential | R, H, F |
| PX-1036 | JJSV_00668784 | JJSV_00668789 | Yesilirmak, Nilufer, M.D., et al., Comparison of phacoemulsification parameters between manual and femtosecond laser-assisted cataract surgery, Canadian Journal of Ophthalmol, Vol. 53, No. 5, October 2018 | pdf | 10/11/2018 | Not Confidential | R, H, F |
| PX-1037 | ALCON_LENSX1807541 | ALCON_LENSX1807548 | Khodabakhsh, A. and Hofbauer, J., Contralateral eye comparison of the phacoemulsification metrics, patient experience and clinical outcomes in patients undergoing bilateral cataract surgery with two commonly used femtosecond laser systems, Clincal Ophthalmology 2018: 12, pp. 1391-98 | pdf | 8/9/2019 | Not Confidential | R, H, F |
| PX-1038 | | | Leoni Deposition Ex. 1: Letter from Warren Foust, Worldwide President, Surgical, on behalf of Johnson & Johnson Surgical Vision, Inc. to David Endicott, Chief Executive Officer, Alcon re Notice of Dispute Concerning Copyright and Patent Infringement | pdf | 7/14/2020 | Not Confidential | R, H, F, 403, 408 |
| PX-1039 | | | D.I. 25: Alcon's First Amended Answer to Amended Complaint and Counterclaims | pdf | 10/30/2020 | Not Confidential | R 403 |
| PX-1040 | | | Jeffcoat Deposition Ex. 6: Declaration of Lynda Jeffcoat in Support of Alcon's Opposition to Plaintiffs' Motion for a Preliminary Injunction, D.I. 81, March 11, 2021 | pdf | 3/11/2021 | AEO | R, 403 |
| PX-1041 | | | MacDonald Deposition Ex. 10: Declaration of Sebastiano Leoni in Support of Alcon's Opposition to Plaintiffs' Motion for Preliminary Injunction  D.I. 82  dated March 11  2021 | pdf | 3/11/2021 | AEO | R, 403 |
| PX-1042 | | | Declaration of Julie L. Davis in Support of Alcon's Opposition to Plaintiffs' Motion for a Preliminary Injunction, March 11, 2021 | pdf | 3/11/2021 | AEO | R, 403 |
| PX-1043 | | | Julie Davis Slides from Preliminary Injunction Hearing | pdf | 5/13/2021 | AEO | R  403  Demo |
| PX-1044 | | | D.I. 135: Alcon Motion to Amend Case Caption | | 6/8/2021 | Not Confidential | R  403 MIL |
| PX-1045 | | | D.I. 136: Order Amending Case Caption | | 6/11/2021 | Not Confidential | R, 403, MIL |
| PX-1046 | | | D.I. 141: J&J's Second Amended Complaint | | 6/17/2021 | Not Confidential | R, H, 403 |
| PX-1047 | | | D.I. 16: J&J's First Amended Complaint | | 9/28/2021 | Not Confidential | R  H  404 |
| PX-1048 | | | MacDonald Deposition Ex. 02: Plaintiffs' Notice of Deposition of Alcon Vision, LLC, Alcon Laboratories, Inc., Alcon Research, LLC and Alcon Inc. Pursuant to Federal Rule of Civil Procedure 30(B)(6) | | 12/23/2021 | Not Confidential | R, 403 |
| PX-1049 | | | Hudnall Deposition Ex. 01: Alcon's Objections and Responses to Johnson & Johnson Surgical Vision  Inc.'s Notice of Deposition to Alcon Pursuant to Fed. R. Civ. P. 30(b)(6) (Nos. 1-89) | | 1/24/2022 | Not Confidential | R, 403 |
| PX-1050 | | | Hudnall Deposition Ex. 02: Email from N. Frank to JJSV re 30(b)(6) topics for T. Hudnall | | 2/10/2022 | Not Confidential | R, 403 |
| PX-1051 | ALCON_LENSX3810090 | ALCON_LENSX3810092 | Software Version History | docx | 8/11/2022 | AEO | None |
| PX-1052 | ALCON_LENSX3810093 | ALCON_LENSX3810109 | Software Technical Review #4 SW 2.31G | pdf | 8/11/2022 | AEO | None |
| PX-1053 | ALCON_LENSX3810110 | ALCON_LENSX3810114 | Deferred Anomalies Memo | docm | 8/11/2022 | AEO | None |
| PX-1054 | ALCON_LENSX3810115 | ALCON_LENSX3810119 | Other Changes Memo | docm | 8/11/2022 | AEO | None |
| PX-1055 | ALCON_LENSX3810136 | ALCON_LENSX3810140 | Software Release Form | docm | 8/11/2022 | AEO | None |
| PX-1056 | ALCON_LENSX3810141 | ALCON_LENSX3810144 | 27  June  2022 Service Bulletin Volume 22-23  A LenSx Software Installation 2.31G  SB112 | pdf | 8/11/2022 | AEO | None |
| PX-1057 | ALCON_LENSX3810145 | ALCON_LENSX3810156 | v01 01 Software Change Closure Report | docx | 8/11/2022 | AEO | None |
| PX-1058 | ALCON_LENSX3810157 | ALCON_LENSX3810170 | Software Change Plan - LenSx SW 2.31 G | docx | 8/11/2022 | AEO | None |
| PX-1059 | ALCON_LENSX3810171 | ALCON_LENSX3810225 | Vol 22-23 Rev A - LenSx Laser Software Installation Version 2.31G Instructions | pdf | 8/11/2022 | AEO | None |
| PX-1060 | JJSV_00559902 | JJSV_00559912 | FS2 Status Items 020405  PreMeeting | doc | 2/3/2005 | AEO | R  H  F  403 |
| PX-1061 | JJSV_00556382 | JJSV_00556396 | Software Discrepancy Report: SPR_Sum_100 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1062 | JJSV_00557349 | JJSV_00557391 | Software Discrepancy Report: SPR_Sum_107 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1063 | JJSV_00556533 | JJSV_00556561 | Software Discrepancy Report: SPR_Sum_101 doc | doc | 4/8/2004 | AEO | R  H  F |
| PX-1064 | JJSV_00556686 | JJSV_00556716 | SPR_Sum_102 doc | doc | 4/8/2004 | AEO | R  H  F |
| PX-1065 | JJSV_00556787 | JJSV_00556817 | Software Discrepancy Report: SPR_Sum_103 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1066 | JJSV_00556890 | JJSV_00556924 | Software Discrepancy Report: SPR_Sum_104 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1067 | JJSV_00557056 | JJSV_00557094 | Software Discrepancy Report: SPR_Sum_105 doc | doc | 4/8/2004 | AEO | R  H  F |
| PX-1068 | JJSV_00557217 | JJSV_00557258 | Software Discrepancy Report: SPR_Sum_106 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1069 | JJSV_00557482 | JJSV_00557527 | Software Discrepancy Report: SPR_Sum_108 doc | doc | 4/8/2004 | AEO | R, H, F |
| PX-1070 | JJSV_00020556 | JJSV_00020595 | License Agreement between IntraLase and ███████ | pdf | 7/3/2007 | AEO | R, F |
| PX-1071 | JJSV_00020510 | JJSV_00020555 | Femtosecond Laser License Agreement Between AMO Development, LLC and Alcon Research, Ltd. | pdf | 3/1/2010 | AEO | None |
| PX-1072 | | | S. Harbison and G. Steele, C: A Reference Manual (Fifth Edition) | pdf | 1/1/2002 | Not Confidential | None |
| PX-1073 | ALCON_LENSX1041217 | ALCON_LENSX1041218 | Email from Peter Goldstein re Updates | pst | 7/7/2009 | AEO | R, F, 403 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| PX # | BEG BATES | END BATES | DESCRIPTION | EXT | DATE | Confidentiality | Objections |
|---|---|---|---|---|---|---|---|
| PX-1074 | ALCON_LENSX1041323 | ALCON_LENSX1041323 | News Release: LenSx Receives 510(k) Clearance for Anterior Capsulotomy | pdf | 9/8/2009 | AEO | None |
| PX-1075 | ALCON_LENSX1046363 | ALCON_LENSX1046363 | News Release: LenSx Receives 510(k) Clearance for Lens Fragmentation | pdf | 4/27/2010 | AEO | None |
| PX-1076 | ALCON_LENSX2116012 | ALCON_LENSX2116026 | Burd, Harvey John, A structural constitutive model for the human lens capsule, Biomech Model Mechanobiol (2009) 8:217-231 | pdf | 1/28/2008 | Not Confidential | R, H, F, 701/702 |
| PX-1077 | ALCON_LENSX2594027 | ALCON_LENSX2594028 | Email from A. Malek Tabrizi to K. Watanable re SOW | pst | 2/24/2021 | AEO | R, F, 403 |
| PX-1078 | JJSV_00558789 | JJSV_00558874 | SPR/SCR Summary Sheet iFS Laser System Document Version: 1.01 Corresponds to Field Release: 2.02 | doc | 1/23/2009 | AEO | R, F, H |
| PX-1079 | JJSV_01128351 | JJSV_01128381 | FDA, Deciding When to Submit a 510(k) for a Software Change to an Existing Device" at 16 (issued Oct. 25, 2017), available at https //www.fda gov/regulatory-information/search-fda-guidance-documents/deciding-whensubmit-510k-software-change-existing-device | pdf | 10/25/2017 | Not Confidential | None |
| PX-1080 | | | Feigal Deposition Ex. 6: ASU Law Academic Integrity Code - Academic Year 2020-2021 | pdf | 9/1/2020 | Not Confidential | R F H |
| PX-1081 | JJSV_00658064 | JJSV_00658064 | Catalys Equipment Agmt Cover Page  (Fixed Pricing)_JUL2020 | doc | 2/22/2021 | AEO | F |
| PX-1082 | JJSV_00658066 | JJSV_00658079 | HPG ACCTS_Catalys All Inclusive Quarterly Pricing Table including CoS6_SM 072220 | doc | 2/19/2021 | AEO | F |
| PX-1083 | ALCON_LENSX3805884 | ALCON_LENSX3805884 | Email from A. Malek Tabrizi to T. McLaghlin re SW engineer position | pdf | 3/24/2022 | AEO | R, F, 403 |
| PX-1084 | ALCON_LENSX3809649 | ALCON_LENSX3809649 | Email from L. Jeffcoat to T. Laughlin re Interested in some contract work? | email | 3/7/2017 | Confidential | R F 403 |
| PX-1085 | Laughlin_00000582 | Laughlin_00000582 | Email from L. Jeffcoat to T. Laughlin re Interested in some contract work? | email | 3/7/2017 | Not Confidential | R, F, 403 |
| PX-1086 | ALCON_LENSX1041242 | ALCON_LENSX1041249 | 2009 MarketScope Ophthalmic Market Perspectives | pdf | 7/14/2009 | AEO | None |
| PX-1087 | ALCON_LENSX960851 | ALCON_LENSX960858 | LenSx Laser IOL Placemat  (GL-LSK-16-MK-4766) | pdf | 9/10/2020 | AEO | None |
| PX-1088 | | | US Copyright Office, Frequently Asked Questions, Copyright in General https://www.copyright.gov/help/faq/ | html | 12/20/2022 | Not Confidential | R, F, H, Time, Bates, Court instructs on the law |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

# EXHIBIT 10

**Defendants' Exhibit List**

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-001 | N/A Physical Exhibit | N/A Physical Exhibit | N/A Physical Exhibit | N/A Physical Exhibit | N/A Physical Exhibit | N/A Physical Exhibit | Alcon LenSx Femtosecond Laser System | |
| DX-002 | N/A Pleading | N/A Pleading | 9/22/2022 | pdf | Pleading | Not Confidential | D.I. 409 Stipulation Regarding Agreed Facts | R, 403 |
| DX-003 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 4/22/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 6th Supplemental Response to 1st Set of ROGs (No. 5) | R, 403 |
| DX-004 | N/A Correspondence | N/A Correspondence | 7/14/2020 | pdf | Correspondence | Not Confidential | Letter from Foust to Endicott, dated 07.14.2020 (Pang Ex. 4) | |
| DX-005 | BS_00000209 | BS_00000209 | 9/9/2010 | pdf | Brent Schellhase Prod. | Confidential | Presentation - Abbott Software Status Update iFS Advanced Femtosecond Laser | F, H, R, 403 |
| DX-006 | BS_00000007 | BS_000000007 | 9/9/2010 | pdf | Brent Schellhase Prod. | Confidential | Presentation 2010 Software Summit, iFS Advanced Femtosecond Laser 2009 Accomplishments | F, H, R, 403 |
| DX-007 | N/A Website | N/A Website | Last Accessed 11/17/2022 | pdf | Public | Not Confidential | Website - PanOptix patient stories, available at https://www.panoptixlens.co.uk/patient-stories | A, F, H, 701/702, 403, Time |
| DX-008 | ALCON_LENSX002914 | ALCON_LENSX003034 | 7/6/2010 | pdf | Alcon Production | Highly Confidential | Stock Purchase Agreement, dated 7/6/2010 | |
| DX-009 | ALCON_LENSX003341 | ALCON_LENSX003440 | 8/18/2010 | pdf | Alcon Production | Highly Confidential | Document - Tab 04 of LenSx stock purchase agreement | |
| DX-010 | ALCON_LENSX262789 | ALCON_LENSX262789 | 5/6/2010 | pdf | Alcon Production | Highly Confidential - AEO | Email - Item 4.1.22, from Shelley Thunen, May 6, 2010 | |
| DX-011 | ALCON_LENSX003468 | ALCON_LENSX000493 | 8/10/2010 | pdf | Alcon Production | Highly Confidential | Escrow Agreement 8/18/2010 | |
| DX-012 | ALCON_LENSX003494 | ALCON_LENSX003509 | 1/13/2021 (Master Date from database) | pdf | Alcon Production | Highly Confidential | LenSx Acquisiton Exhibit H - Form Employment Agreement | H, F, R, 403, 106, 1002 |
| DX-013 | ALCON_LENSX053474 | ALCON_LENSX053488 | 8/7/2010 | pdf | Alcon Production | Highly Confidential | Employment Agreement between K. Vardin and LenSx Lasers in connection with Stock Purchase Agreement, dated August 7, 2010 | |
| DX-014 | ALCON_LENSX053496 | ALCON_LENSX053496 | 12/30/2008 | pdf | Alcon Production | Highly Confidential | Employee Handbook Acknowledgment Form - Peter Goldstein, dated December 30, 2008 | |
| DX-015 | ALCON_LENSX053626 | ALCON_LENSX053628 | 5/9/2008 | pdf | Alcon Production | Highly Confidential | NDA and Developments Agreement between LenSx & Goldstein, executed May 9, 2008 | |
| DX-016 | ALCON_LENSX053654 | ALCON_LENSX053656 | 3/01/2021 (Master Date from database) | pdf | Alcon Production | Highly Confidential | Letter - R. Kurtz to I. Hegedus, Alcon Offer of Employment | |
| DX-017 | ALCON_LENSX053670 | ALCON_LENSX053679 | 5/6/2013 | pdf | Alcon Production | Highly Confidential | Consulting Agreement between I. Hegedus and Alcon, signed May 6, 2013 | |
| DX-018 | ALCON_LENSX053705 | ALCON_LENSX053707 | 9/11/2008 | pdf | Alcon Production | Highly Confidential | Non-Disclosure and Developments Agreement - Chaudary, executed September 11, 2008 | |
| DX-019 | ALCON_LENSX056167 | ALCON_LENSX056182 | 8/11/2010 | pdf | Alcon Production | Confidential | Employment Agreement between A. Juhasz and LenSx Lasers in connection with Stock Purchase Agreement, dated August 11, 2010 | |
| DX-020 | ALCON_LENSX056284 | ALCON_LENSX056299 | 8/9/2010 | pdf | Alcon Production | Confidential | Employment Agreement between R. Kurtz and LenSx Lasers in connection with Stock Purchase Agreement, dated August 9, 2010 | |
| DX-021 | ALCON_LENSX056490 | ALCON_LENSX056504 | 8/9/2010 | pdf | Alcon Production | Confidential | Employment Agreement between K. Watanabe and LenSx Lasers in connection with Stock Purchase Agreement, dated August 9, 2010 | |
| DX-022 | ALCON_LENSX1049910 | ALCON_LENSX1049917 | 12/1/2012 | pdf | Alcon Production | Highly Confidential - AEO | Consulting Agreement between Alcon LenSx and Blaq Labs LLC, dated December 1, 2012 | H, F, R, 403, 106, 1002 |
| DX-023 | ALCON_LENSX262584 | ALCON_LENSX262585 | 2/24/2021 | pdf | Alcon Production | Highly Confidential - AEO | Memo - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, dated Feb. 24, 2021 | |
| DX-024 | HU-HEG_0000002 | HU-HEG_0000007 | 9/27/1999 | pdf | Imre Hedgedus Prod. | AEO | Employment Agreement between IntraLase Corp. and Imre Hegedus, dated September 27, 1999 | |
| DX-025 | HU-HEG_0000008 | HU-HEG_0000017 | 12/16/2000 | pdf | Imre Hedgedus Prod. | AEO | Part Time Employment Agreement between Imre Hegedus and IntraLase Corp., dated December 16, 2000 | |
| DX-026 | HU-HEG_0000020 | HUHEG_0000024 | 11/13/2002 | pdf | Imre Hedgedus Prod. | AEO | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ between Imre Hegedus and IntraLase Corp., dated November 14, 2002 | |
| DX-027 | HU-HEG_0000025 | HU-HEG_0000036 | 11/15/2002 | pdf | Imre Hedgedus Prod. | AEO | Consulting Agreement between IntraLase Corp. and Imre Hegedus, effective November 15, 2002 | |
| DX-028 | HU-HEG_0000061 | HU-HEG_0000073 | 8/4/2008 | pdf | Imre Hedgedus Prod. | AEO | Consulting Agreement between LenSx Lasers Inc and HegeSoft BT, dated August 4, 2008 | |
| DX-029 | HU-HEG_0000718 | HU-HEG_0000722 | 2/22/2021 | pdf | Imre Hedgedus Prod. | AEO | Letter to I. Hegedus - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, dated February 24, 2021 | |
| DX-030 | JJSV_00540166 | JJSV_00540199 | 1/18/2000 | pdf | JJSV Production | AEO | Consulting Agreement between IntraLase Corp. and JKS & Associates, effective January 18, 2000 | |
| DX-031 | KURTZ00002032 | KURTZ00002041 | 12/1/2005 | pdf | Ron Kurtz Prod. | Confidential | IntraLase Corp. Consulting Agreement between IntraLase Corp. and Ron Kurtz, M.D., effective December 1, 2005 | |
| DX-032 | KV000060 | KV000060 | Undated | pdf | Kostadin Vardin Prod. | Confidential | Alcon Departing Employee Notice Signed by Vardin | |
| DX-033 | KV000062 | KV000062 | 8/7/2010 | pdf | Kostadin Vardin Prod. | Confidential | Employment Agreement between K. Vardin and LenSx | |
| DX-034 | ALCON_LENSX3842141 | ALCON_LENSX3842155 | 8/11/2010 | pdf | Alcon Production | Highly Confidential - AEO | Employment Agreement between Peter Goldstein and Alcon, 2010 | |
| DX-035 | ALCON_LENSX3813345 | ALCON_LENSX3813385 | 12/22/2008 | pdf | Alcon Production | Confidential | Document - LenSx Employee Handbook | |
| DX-036 | | | 1/3/2000 | pdf | Homer Declaration | Confidential - AEO Filed Under Seal | Homer Decl. Ex. 13 - Goldstein Employment Agreement with IntraLase, January 3, 2000 | Bates |
| DX-037 | SUZUKI-0026401 | SUZUKI-0026419 | 1/20/2003 | pdf | John Suzuki Prod. | Highly Confidential - AEO | Consulting Agreement between Suzuki and IntraLase, January 20, 2000 | |
| DX-038 | ALCON_LENSX3805218 | ALCON_LENSX3805222 | 2/23/2022 | pdf | Alcon Production | Highly Confidential - AEO | Email from K. Komandursathvaraian to S. Lertsuntivit, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| DX-039 | ALCON_LENSX3805223 | ALCON_LENSX3805225 | 9/6/2021 | pdf | Alcon Production | Highly Confidentiality - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57100596 dated 09.06.2021 | |
| DX-040 | ALCON_LENSX3805226 | ALCON_LENSX3805229 | 9/6/2021 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57100597 dated 09.06.2021 | |
| DX-041 | ALCON_LENSX3805230 | ALCON_LENSX3805236 | 9/29/2021 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57105975 dated 09.29.2021 | |
| DX-042 | ALCON_LENSX3805234 | ALCON_LENSX3805237 | 10/28/2021 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57110874 dated 10.28.2021 | |
| DX-043 | ALCON_LENSX3805238 | ALCON_LENSX3805241 | 11/26/2021 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57115693 dated 11.26.2021 | |
| DX-044 | ALCON_LENSX3805242 | ALCON_LENSX3805245 | 12/30/2021 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57124752 dated 12.30.2021 | |
| DX-045 | ALCON_LENSX3805246 | ALCON_LENSX3805248 | 1/28/2022 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57128946, dated 01.28.2022 | |
| DX-046 | ALCON_LENSX3809664 | ALCON_LENSX3809666 | 3/27/2022 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57143147 dated 03 27 2022 | |
| DX-047 | ALCON_LENSX3809668 | ALCON_LENSX3809670 | 4/26/2022 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57149058 dated 04 26 2022 | |
| DX-048 | ALCON_LENSX3810086 | ALCON_LENSX3810088 | 5/27/2022 | pdf | Alcon Production | Highly Confidential - AEO | HCL Technologies Corporate Services Ltd. Invoice No. 57157629 dated 05 27 2022 | |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-049 | ALCON_LENSX3805249 | ALCON_LENSX3805250 | 2/24/2022 (Master Date from database) | pdf | Alcon Production | Highly Confidential - AEO | Spreadsheet - Associate Listing with Hourly Loads (Teordorescu Ex. 4) | |
| DX-050 | ALCON_LENSX3805251 | ALCON_LENSX3805262 | Undated | pdf | Alcon Production | Highly Confidential - AEO | Document - LenSx Software 2.31G Software Change Requests | |
| DX-051 | ALCON_LENSX3810089 | ALCON_LENSX3810089 | Undated | pdf | Alcon Production | Highly Confidential - AEO | Spreadsheet - Listing with Hourly Loads (Teodorescu Ex. 23) | |
| DX-052 | ALCON_LENSX3810093 | ALCON_LENSX3810109 | 4/1/2022 | pdf | Alcon Production | Highly Confidential - AEO | Software Technical Review for 2.31G | |
| DX-053 | ALCON_LENSX3810120 | ALCON_LENSX3810135 | 4/1/2022 | pdf | Alcon Production | Highly Confidential - AEO | Software Code Review for 2.31G | |
| DX-054 | ALCON_LENSX3810136 | ALCON_LENSX3810140 | 7/18/2022 | pdf | Alcon Production | Highly Confidential - AEO | Software Release Form for 2.31G | |
| DX-055 | ALCON_LENSX3810141 | ALCON_LENSX3810144 | 6/27/2022 | pdf | Alcon Production | Highly Confidential - AEO | Service Bulletin: LenSx Laser Softward Installation Version 2.31G | |
| DX-056 | ALCON_LENSX3810157 | ALCON_LENSX3810170 | Undated | pdf | Alcon Production | Highly Confidential - AEO | LenSx Softward Change Plan (SCP) for 2.31G | |
| DX-057 | ALCON_LENSX3810171 | ALCON_LENSX3810225 | Undated | pdf | Alcon Production | Highly Confidential - AEO | Service Bulletin: LenSx Laser Softward Installation Version 2.31G - Revision A | |
| DX-058 | ALCON_LENSX3810110 | ALCON_LENSX3810114 | 5/31/2022 | pdf | Alcon Production | Highly Confidential - AEO | Alcon Reseach, LLC Design History File | |
| DX-059 | ALCON_LENSX3810115 | ALCON_LENSX3810119 | 5/31/2022 | pdf | Alcon Production | Highly Confidential - AEO | Alcon Reseach, LLC Design History File | |
| DX-060 | ALCON_LENSX3810145 | ALCON_LENSX3810156 | Undated | pdf | Alcon Production | Highly Confidential - AEO | Software Change Closure Report (SCCR) | |
| DX-061 | ALCON_LENSX3810090 | ALCON_LENSX3810090 | Undated | pdf | Alcon Production | Highly Confidential - AEO | Software Version History (SVH) | |
| DX-062 | ALCON_LENSX3809663 | ALCON_LENSX3809663 | Undated | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - Project hours | |
| DX-063 | N/A Expert Report | N/A Expert Report | 4/29/2022 | pdf | Wicker Opening Expert Report | Not Confidential | CV of Stephen Wicker [Source Identifier: Stephen B. Wicker, Ph.D. Opening Expert Report] | |
| DX-064 | JJSV_01130301 | JJSV_01130319 | Undated | pdf | JJSV Production | No Confidential | Document - Printing Documentation, QNX | |
| DX-065 | N/A Website | N/A Website | Last Accessed 11/17/2022 | pdf | Public | Not Confidential | File Descriptors – Harvard CS 61 Assignment 2018.pdf | A, F, H, 701/702, 403, Time |
| DX-066 | N/A Website | N/A Website | Last Accessed 07/30/2022 | pdf | Public | Not Confidential | For Loops in C and C++ - GeeksforGeeks.pdf | A, F, H, 701/702, 403, Time |
| DX-067 | N/A Depo Ex. | N/A Depo Ex. | Undated | pdf | Baer Deposition Ex. 15 | Not Confidential | Document - Getting Grabby with the QNX Photon microGUI [Source Identifier: Baer Ex. 15] | A, F, H, 701/702, 403 |
| DX-068 | N/A Depo Ex. | N/A Depo Ex. | Last Accessed 8/4/22 | pdf | Baer Deposition Ex. 2 | Not Confidential | Document - Knowledge Base, Trying to Make a Timeout PtAlert [Source Identifier: Baer Ex. 2] | A, F, H, 701/702, 403 |
| DX-069 | N/A Expert Ex. | N/A Expert Ex. | Undated | pdf | Wicker Rebuttal Expert Report | Not Confidential | Document - PhCursorInfo_t buf documentation [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-070 | N/A Depo Ex. | N/A Depo Ex. | Undated | pdf | Baer Deposition Ex. 5 | Not Confidential | Baer - Source Code Appendix S2 [Source Identifier: Baer Depo Ex. 5] | |
| DX-071 | N/A Depo Ex. | N/A Depo Ex. | Undated | pdf | Baer Deposition Ex. 7 | Not Confidential | Baer - Source Code Appendix S4 [Source Identifier: Baer Depo Ex. 7] | |
| DX-072 | N/A Expert Ex. | N/A Expert Ex. | 4/14/2021 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Document - Standard C Library Functions Table, by Name [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-073 | N/A Pleading Ex. | N/A Pleading Ex. | 1988 | pdf | Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 3 | Not Confidential | Book excerpt - Brian W. Kerninghan & Dennis M. Ritchie, The C Programming Language (2d ed. 1988) [Source Identifier: Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 3] | A, F, H, 701/702, 403 |
| DX-074 | N/A Pleading Ex. | N/A Pleading Ex. | 2008 | pdf | Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 27 | Not Confidential | Book excerpt - Dominic Jordan & Peter Smith, Mathematical Techniques: An Introduction for the Engineering, Physical, and Mathematical Sciences (2008) [Source Identifier Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 27] | A, F, H, 701/702, 403 |
| DX-075 | N/A Pleading Ex. | N/A Pleading Ex. | 2014 | pdf | Wicker Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction | Not Confidential | Article - Michael Jonas, A Cryptographic Sandbox for an Introductory Security Course in Information Technology, 29 Journal of Computer Scis. in Colleges (2014) available at https://dl.acm.org/doi/abs/10.5555/2602724.2602738 [Source Identifier: Wicker Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction] | A, F, H, 701/702, 403 |
| DX-076 | N/A Pleading Ex. | N/A Pleading Ex. | 1967 | pdf | Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 10 | Not Confidential | Book excerpt - David Kahn, The Codebrakers: The Story of Secret Writing, The MacMillan Company (1967) [Source Identifier Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 10] | A, F, H, 701/702, 403 |
| DX-077 | N/A Pleading Ex. | N/A Pleading Ex. | 2006 | pdf | Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 2 | Not Confidential | Book excerpt - Michael Barr & Anthony Massa, Programming Embedded Systems: With C and GNU Development Tools (2d ed. 2006) [Source Identifier Frank Declaration in Support of Alcon's Opposition to Motion for Prelimiary Injunction Ex. 2] | A, F, H, 701/702, 403 |
| DX-078 | N/A Depo Ex. | N/A Depo Ex. | 6/7/2010 | pdf | Schmidt Deposition Ex. 16 | Not Confidential | Article - Duke, S.O.O. & Obidinnu, J.N., An Improved Cocomo Software Cost Estimation Model, Global Journal of Pure and Applied Sciences, Vol. 16, No. 4 2010:479-492. [Source Identifier: Schmidt Deposition Ex. 16] | A, F, H, 701/702, 403 |
| DX-079 | N/A Depo Ex. | N/A Depo Ex. | Undated | pdf | Schmidt Deposition Ex. 17 | Not Confidential | Table - 2.7.2 Cocomo II Version Parameter Values [Source Identifier: Schmidt Ex. 17] | A, F, H, 701/702, 403 |
| DX-080 | N/A Expert Ex. | N/A Expert Ex. | 2000 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Book - Barry W. Boehm et al., Software Cost Estimation with COCOMO II, Upper Saddle River: Prentice Hall, excerpts (2000) [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | |
| DX-081 | N/A Expert Ex. | N/A Expert Ex. | 1970 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Article - Winston Royce, "Managing the Development of Large Software Systems, Proceedings of IEEE WESCON, August 1970 [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-082 | N/A Expert Ex. | N/A Expert Ex. | 2010 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Book - Jones, Caper, "Software Engineering Best Practices" [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-083 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Website - readelf Available at https://ftp.gnu.org/old-gnu/Manuals/binutils-2.12/html_chapter/binutils_14.html [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-084 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Website - Strings Available at https://ftp.gnu.org/old-gnu/Manuals/binutils-2.12/html_node/binutils_9.html [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-085 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Website - PtWidget Available at https://www.qnx.com/developers/docs/qnx_4.25_docs/photon114/widget_ref/ptwidget.html [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-086 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Website - Client-Server Model Available at https://www.geeksforgeeks.org/client-server-model/ [Source Identifier: Stephen B. Wicker, Ph.D. Rebuttal Expert Report] | A, F, H, 701/702, 403 |
| DX-087 | N/A Expert Ex. | N/A Expert Ex. | 5/8/2017 | pdf | Wicker Rebuttal Expert Report | Not Confidential | Intel: Altera Quartus Prime Standard Edition Settings File Reference Manual Available at https://www.intel.com/content/www/us/en/docs/programmable/683084/current/pci-io.html [Source Identifier: Stephen B. Wicker, Ph.D. Reply Expert Report] | A, F, H, 701/702, 403 |
| DX-088 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Reply Expert Report | Not Confidential | Printing Photon microGUI. QNX Software Systems Ltd. Available online at http://users.pja.edu.pl/~jms/qnx/help/ab/prog_guide/printing.html [Source Identifier: Stephen B. Wicker, Ph.D. Reply Expert Report] | A, F, H, 701/702, 403 |
| DX-089 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Reply Expert Report | Not Confidential | Website - How PCI Works https://computer.howstuffworks.com/pci.htm [Source Identifier: Stephen B. Wicker, Ph.D. Reply Expert Report] | A, F, H, 701/702, 403 |
| DX-090 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Reply Expert Report | Not Confidential | Website - ServerWatch: What is a Client-Server Model? A Guide to Client Server Architecture, Available at https://www.serverwatch.com/guides/client-server-model/#how-does-the-client-servermodel-work [Source Identifier: Stephen B. Wicker, Ph.D. Reply Expert Report] | A, F, H, 701/702, 403 |
| DX-091 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 11/9/22 | pdf | Wicker Reply Expert Report | Not Confidential | Website - Writing Device Drivers https://docs.oracle.com/cd/E19683-01/806-5222/hwovr-25/index.html [Source Identifier: Stephen B. Wicker, Ph.D. Reply Expert Report] | A, F, H, 701/702, 403 |
| DX-092 | N/A Expert Ex. | N/A Expert Ex. | Last Accessed 6/22/22 | pdf | Wicker Reply Expert Report | Not Confidential | Wicker Reply - Appendix A: Referenced Webpages | A, 1002, 106, F, H, Demo, 701/702, 1006, 403 |
| DX-093 | N/A Expert Ex. | N/A Expert Ex. | 2002 | pdf | Wicker Reply Expert Report | Not Confidential | Wicker Reply- Appendix B: Book - Harbison, Samuel P. & Steele, Jr., Guy L., C: A Reference Manual 5th Edition | A, F, H, 701/702, 403 |
| DX-094 | N/A Expert Ex. | N/A Expert Ex. | 1999 | pdf | Wicker Reply Expert Report | Not Confidential | Wicker Reply - Appendix C: ISO C Language Standard | A, F, H, 701/702, 403 |
| DX-095 | N/A Expert Ex. | N/A Expert Ex. | Undated | pdf | Wicker Reply Expert Report | Confidential Source Code - AEO Highly Confidential Material AEO | Wicker Reply: Exhibit A | A, F, H, 701/702, 403 |
| DX-096 | N/A Expert Ex. | N/A Expert Ex. | Undated | pdf | Wicker Rebuttal Expert Report | Confidential Source Code - AEO Highly Confidential Material AEO | Wicker Rebuttal: Exhibit B | F, H, Demo, 701/702, 1006, 403, Time, Bates |
| DX-097 | N/A Pleading | N/A Pleading | 3/11/2021 (pleading date) | pdf | Pleading | Filed Under Seal | D.I. 86-21, Threads and Processes | A, F, H, 701/702, 403 |
| DX-098 | N/A Pleading | N/A Pleading | 3/11/2021 (pleading date) | pdf | Pleading | Filed Under Seal | D.I. 86-4, Laser Refractive Cataract Surgery with the LenSx Laser at 15 | A, F, H, 701/702, 403 |
| DX-099 | N/A Pleading | N/A Pleading | 7/1/2013 | pdf | Pleading | Filed Under Seal | D.I. 86-5, Richard Potvin & Sarah Makari, Cataract Surgery and the LenSx | A, F, H, 701/702, 403 |
| DX-100 | N/A Expert Ex. | N/A Expert Ex. | 6/23/2022 | pdf | Wicker Opening Expert Report | Confidential Source Code - AEO | Wicker Exhibit 5:Comparison Between J&J's Asserted Code in the IntraLase/iFS Software Version 1.00 and Version 2.02 | F, H, Demo, 701/702, 1006, 403, Time, Bates |
| DX-101 | JJSV_01111692 | JJSV_01112358 | 2010 | pdf | JJSV Production | Confidential | QNX Photon Application Builder Documentation | |
| DX-102 | N/A Expert Ex. | N/A Expert Ex. | 4/26/2022 | pdf | Nikolaus Baer Opening Report | Confidential Source Code - AEO Highly Confidential Material AEO | Nikolaus Baer Opening Report -- Appendix G: Composition of LenSx Codebases | |
| DX-103 | ALCON_LENSX1058339 | ALCON_LENSX1058341 | Undated | pdf | Alcon Production | Highly Confidential - AEO | ID-057 - Software Revision History - LenSx Laser System sigend again.pdf | |
| DX-104 | JJSV_00944928 | JJSV_00944941 | 2018 | pdf | JJSV Production | AEO | Document - 2018 J&J Surgical Vision Sales Incentive Plan Document, effective Jan 1, 2018 | R, 403 |
| DX-105 | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | AEO - Source Code | LenSx 2.31G Prod3 - Produced on the Source Code Computer at ██████████ | Meet & Confer re: source code logistics |
| DX-106 | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | AEO - Source Code | LenSx 2.31G Prod2 - Produced on the Source Code Computer at ██████████ | Meet & Confer re: source code logistics |
| DX-107 | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | AEO - Source Code | LenSx 2.31G Drop1 - Produced on the Source Code Computer at ██████████ | Meet & Confer re: source code logistics |
| DX-108 | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | AEO - Source Code | iFS v2.70. Produced on the Source Code Computer at ██████████ | Meet & Confer re: source code logistics |
| DX-109 | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | N/A Source Code | AEO - Source Code | iFS v2.60. Produced on the Source Code Computer at ██████████ | Meet & Confer re: source code logistics |
| DX-110 | N/A Depo Ex. | N/A Depo Ex. | Last Accessed 4/21/2022 | pdf | Baer Deposition Ex. 19 | Not Confidential | Jeff Parmet Dispute Soft Biography [Source Identifier: Baer Ex. 19] | A, F, H, P, R, 403, MIL 3 |
| DX-111 | N/A Depo Ex. | N/A Depo Ex. | 2022 | pdf | Pang Deposition Ex. 16 | Not Confidential | ███████, professional biography [Source Identifier: Pang Ex. 16] | A, F, H, P, R, 403, MIL 3 |
| DX-112 | N/A Website | N/A Website | Undated | pdf | Public | Not Confidential | LinkedIn of ██████ | A, F, H, P, R, 403, MIL 3, Time |
| DX-113 | N/A Website | N/A Website | Undated | pdf | Public | Not Confidential | LinkedIn of ██████ | A, F, H, P, R, 403, MIL 3, Time |
| DX-114 | N/A Website | N/A Website | Undated | pdf | Public | Not Confidential | LinkedIn of ██████ | A, F, H, P, R, 403, MIL 3, Time |
| DX-115 | N/A Website | N/A Website | Undated | pdf | Public | Not Confidential | LinkedIn of ██████ | A, F, H, P, R, 403, MIL 3, Time |
| DX-116 | N/A Website | N/A Website | 2022 | pdf | Public | Not Confidential | ██████████ Biography | A, F, H, P, R, 403, MIL 3, Time |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-117 | N/A Website | N/A Website | 2022 | pdf | Public | Not Confidential | Biography | A, F, H, P, R, 403, MIL 3, Time |
| DX-118 | ALCON_LENSX1122238 | ALCON_LENSX1122486 | 6/00/2012 | pdf | Alcon Production | Highly Confidential - AEO | 2012 Cataract Surgical Equipment Market Scope Report | |
| DX-119 | ALCON_LENSX2851426 | ALCON_LENSX2851846 | 6/00/2015 | pdf | Alcon Production | Highly Confidential - AEO | 2015 Global IOL Market Scope Report | |
| DX-120 | JJSV_00022416 | JJSV_00022694 | 11/002020 | pdf | JJSV Production | Confidential | 2020 Premium Cataract Surgery Market Scope Report | |
| DX-121 | JJSV_00022753 | JJSV_00022753 | 07/00/2020 | pdf | JJSV Production | Confidential | 2020 Cataract Surgical Equipment Market Scope Report | |
| DX-122 | JJSV_00399003 | JJSV_00399260 | 06/00/2013 | pdf | JJSV Production | Confidential | 2013 Cataract Surgical Equipment Market Scope Report | |
| DX-123 | JJSV_00408514 | JJSV_00408681 | 06/00/2020 | pdf | JJSV Production | Confidential | 2020 Ophthalmic Laser Market Scope Report | |
| DX-124 | JJSV_00409536 | JJSV_00409804 | 07/00/2015 | pdf | JJSV Production | Confidential | 2015 Cataract Surgical Equipment Market Scope Report | |
| DX-125 | JJSV_00417468 | JJSV_00417491 | 2011 | pdf | JJSV Production | Confidential | Q1-2011 Cataract Quarterly Update | |
| DX-126 | JJSV_00418158 | JJSV_00418189 | 2/00/2016 | pdf | JJSV Production | Confidential | Q4-2015 Cataract Quarterly Update | |
| DX-127 | JJSV_01050119 | JJSV_01050393 | 7/00/2020 | pdf | JJSV Production | Confidential | 2020 Cataract Surgical Equipment Market Scope Report | |
| DX-128 | JJSV_01117762 | JJSV_01118162 | 4/00/2021 | pdf | JJSV Production | Confidential | 2021 Global IOL Market Scope Report | |
| DX-129 | JJSV_01118515 | JJSV_01118795 | 7/00/2021 | pdf | JJSV Production | Confidential | 2021 Cataract Surgical Equipment Market Scope Report | |
| DX-130 | JJSV_01118796 | JJSV_01118835 | 2/00/2022 | pdf | JJSV Production | Confidential | Q4-2021 Cataract Quarterly Update | |
| DX-131 | ALCON_LENSX1809454 | ALCON_LENSX1809504 | 8/00/2019 | pdf | Alcon Production | Highly Confidential - AEO | Q2-2019 Cataract Quarterly Update | |
| DX-132 | ALCON_LENSX1810155 | ALCON_LENSX1810206 | 8/00/2018 | pdf | Alcon Production | Highly Confidential - AEO | Q2-2018 Cataract Quarterly Update | |
| DX-133 | ALCON_LENSX1821001 | ALCON_LENSX1821052 | 11/00/2019 | pdf | Alcon Production | Highly Confidential - AEO | Q3-2019 Cataract Quarterly Update | |
| DX-134 | ALCON_LENSX1859286 | ALCON_LENSX1859337 | 8/00/2020 | pdf | Alcon Production | Highly Confidential - AEO | Q2-2020 Cataract Quarterly Update | |
| DX-135 | ALCON_LENSX2903366 | ALCON_LENSX2903411 | 8/16/2016 | pdf | Alcon Production | Highly Confidential - AEO | Q2-2016 Cataract Quarterly Update | |
| DX-136 | ALCON_LENSX709741 | ALCON_LENSX709785 | 11/00/2015 | pdf | Alcon Production | Not Confidential | Q3-2015 Cataract Quarterly Update | |
| DX-137 | ALCON_LENSX709788 | ALCON_LENSX709832 | 8/00/2015 | pdf | Alcon Production | Not Confidential | Q2-2015 Cataract Quarterly Update | |
| DX-138 | ALCON_LENSX709833 | ALCON_LENSX709877 | 5/00/2015 | pdf | Alcon Production | Not Confidential | Q1-2015 Cataract Quarterly Update | |
| DX-139 | ALCON_LENSX709878 | ALCON_LENSX709921 | 1/00/2015 | pdf | Alcon Production | Not Confidential | Q4-2014 Cataract Quarterly Update | |
| DX-140 | ALCON_LENSX709992 | ALCON_LENSX710043 | 5/00/2018 | pdf | Alcon Production | Not Confidential | Q1-2018 Cataract Quarterly Update | |
| DX-141 | ALCON_LENSX714493 | ALCON_LENSX714543 | 2/00/2020 | pdf | Alcon Production | Not Confidential | Q4-2019 Cataract Quarterly Update | |
| DX-142 | ALCON_LENSX714544 | ALCON_LENSX714600 | 2/00/2019 | pdf | Alcon Production | Not Confidential | Q4-2018 Cataract Quarterly Update | |
| DX-143 | ALCON_LENSX714747 | ALCON_LENSX714987 | 10/00/2019 | pdf | Alcon Production | Not Confidential | 2019 Premium Cataract Surgery Market Scope Report | |
| DX-144 | ALCON_LENSX966009 | ALCON_LENSX966064 | 2018 | pdf | Alcon Production | Highly Confidential - AEO | Q4-2017 Cataract Quarterly Update | |
| DX-145 | JJSV_00417239 | JJSV_00417267 | 11/00/2012 | pdf | JJSV Production | Confidential | Q3-2012 Cataract Quarterly Update | |
| DX-146 | JJSV_00417268 | JJSV_00417297 | 5/00/2013 | pdf | JJSV Production | Confidential | Q1-2013 Cataract Quarterly Update | |
| DX-147 | JJSV_00417298 | JJSV_00417326 | 2013 | pdf | JJSV Production | Confidential | Q3-2013 Cataract Quarterly Update | |
| DX-148 | JJSV_00417327 | JJSV_00417355 | 2014 | pdf | JJSV Production | Confidential | Q4-2013 Cataract Quarterly Update | |
| DX-149 | JJSV_00417356 | JJSV_00417386 | 5/12/2014 | pdf | JJSV Production | Confidential | Q1-2014 Cataract Quarterly Update | |
| DX-150 | JJSV_00417387 | JJSV_00417417 | 8/13/2014 | pdf | JJSV Production | Confidential | Q2-2014 Cataract Quarterly Update | |
| DX-151 | JJSV_00417468 | JJSV_00417491 | 2011 | pdf | JJSV Production | Confidential | Q1-2011 Cataract Quarterly Update | |
| DX-152 | JJSV_00417514 | JJSV_00417544 | 5/00/2016 | pdf | JJSV Production | Confidential | Q1-2016 Cataract Quarterly Update | |
| DX-153 | JJSV_00417545 | JJSV_00417572 | 8/1/2017 | pdf | JJSV Production | Confidential | Q1-2017 Cataract Quarterly Update | |
| DX-154 | JJSV_00417612 | JJSV_00417650 | 5/00/2019 | pdf | JJSV Production | Confidential | Q1-2019 Cataract Quarterly Update | |
| DX-155 | JJSV_00417651 | JJSV_00417691 | 5/00/2020 | pdf | JJSV Production | Confidential | Q1-2020 Cataract Quarterly Update | |
| DX-156 | JJSV_00417728 | JJSV_00417746 | 2010 | pdf | JJSV Production | Confidential | Q2-2010 Cataract Quarterly Update | |
| DX-157 | JJSV_00417747 | JJSV_00417776 | 2011 | pdf | JJSV Production | Confidential | Q2-2011 Cataract Quarterly Update | |
| DX-158 | JJSV_00417777 | JJSV_00417805 | 8/00/2012 | pdf | JJSV Production | Confidential | Q2-2012 Cataract Quarterly Update | |
| DX-159 | JJSV_00417949 | JJSV_00417969 | 2010 | pdf | JJSV Production | Confidential | Q3-2010 Cataract Quarterly Update | |
| DX-160 | JJSV_00417970 | JJSV_00418002 | 11/00/2016 | pdf | JJSV Production | Confidential | Q3-2016 Cataract Quarterly Update | |
| DX-161 | JJSV_00418003 | JJSV_00418042 | 11/00/2018 | pdf | JJSV Production | Confidential | Q3-2018 Cataract Quarterly Update | |
| DX-162 | JJSV_00418083 | JJSV_00418121 | 11/00/2020 | pdf | JJSV Production | Confidential | Q3-2020 Cataract Quarterly Update | |
| DX-163 | JJSV_00418122 | JJSV_00418139 | 2011 | pdf | JJSV Production | Confidential | Q4-2010 Cataract Quarterly Update | |
| DX-164 | JJSV_00418140 | JJSV_00418157 | 2012 | pdf | JJSV Production | Confidential | Q4-2011 Cataract Quarterly Update | |
| DX-165 | JJSV_00418158 | JJSV_00418189 | 2/00/2016 | pdf | JJSV Production | Confidential | Q4-2015 Cataract Quarterly Update | |
| DX-166 | JJSV_00418190 | JJSV_00418223 | 2/17/2017 | pdf | JJSV Production | Confidential | Q4-2016 Cataract Quarterly Update | |
| DX-167 | JJSV_01118796 | JJSV_01118835 | 2/00/2022 | pdf | JJSV Production | Confidential | Q4-2021 Cataract Quarterly Update | |
| DX-168 | JJSV_00450846 | JJSV_00451115 | 6/00/2014 | pdf | JJSV Production | Confidential | Document - 2014 Cataract Surgical Equipment Market Report | |
| DX-169 | JJSV_00413967 | JJSV_00414241 | 5/00/2019 | pdf | JJSV Production | Confidential | Document - 2019 Cataract Surgical Equipment Market Report | |
| DX-170 | JJSV_00447245 | JJSV_00447437 | 7/00/2009 | pdf | JJSV Production | Confidential | 2009 Cataract Equipment for Mark Forchette.pdf | |
| DX-171 | JJSV_00448205 | JJSV_00448355 | 7/00/2007 | pdf | JJSV Production | Confidential | 2007 Cataract Surgical Equipment.pdf | |
| DX-172 | JJSV_00450846 | JJSV_00451115 | 6/00/2014 | pdf | JJSV Production | Confidential | 2014 Cataract Equipment Report.pdf | |
| DX-173 | ALCON_LENSX1051219 | ALCON_LENSX1051219 | 2021 | pptx | Alcon Production | High Confidential - AEO | Global ATIOL Penetration & Historical Product Launches | |
| DX-174 | ALCON_LENSX1124845 | ALCON_LENSX1124845 | 12/4/2012 | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet - Alcon LenSx Lasers & PIs Combined for Month Ended November 30, 2012 | |
| DX-175 | ALCON_LENSX212406 | ALCON_LENSX212437 | 4/26/2010 | pdf | Alcon Production | High Confidential - AEO | Document - Financial Statements of LenSx Lasers Inc., Years Ended December 31, 2009 and 2008 And the Period from August 30, 2007 (Inception) to December 31, 2009, Ernst & Young | |
| DX-176 | ALCON_LENSX2142399 | ALCON_LENSX2142462 | 11/00/2021 | pdf | Alcon Production | High Confidential - AEO | Alcon "Management Reporting US Surgical November 2021 | |
| DX-177 | ALCON_LENSX214873 | ALCON_LENSX214897 | 5/31/2013 | pdf | Alcon Production | High Confidential - AEO | Spreadsheet - 2010 LenSx Budget Rollup | |
| DX-178 | ALCON_LENSX2600501 | ALCON_LENSX2600501 | 3/5/2021 | pdf | Alcon Production | High Confidential - AEO | Spreadsheet - LenSx FTE | |
| DX-179 | ALCON_LENSX3595202 | ALCON_LENSX3595202 | 12/21/2021 (Master Date from database) | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet - Global Sx Franchise PL | |
| DX-180 | ALCON_LENSX3595345 | ALCON_LENSX3595345 | 2/13/2009 (Master Date from database) | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re Lensx Lasers, Inc.Balance Sheet December 31, 2008 | |
| DX-181 | ALCON_LENSX3595386 | ALCON_LENSX3595386 | 5/22/2009 (Master Date from database) | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re 2009 Balance Sheet, 2009 P&L Summary, and 2009 Cash Flow | |
| DX-182 | ALCON_LENSX3804553 | ALCON_LENSX3804553 | 12/8/2016 (Master Date from database) | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re Q -Monthly Performance 2014-11 | |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-183 | ALCON_LENSX3804554 | ALCON_LENSX3804555 | 01/27/2022 (Master Date from database) | pdf | Alcon Production | High Confidential - AEO | Spreadsheet re LenSx TPCs 2012-2014 | |
| DX-184 | ALCON_LENSX3805687 | ALCON_LENSX3805687 | 03/01/2022 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re All LenSx APMR By Global US and Country 2014 - 2022 | |
| DX-185 | ALCON_LENSX3805689 | ALCON_LENSX3805689 | 03/01/2022 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re LenSX Full Year R&D Cost 2011 - 2014 (JDE MKT771) | |
| DX-186 | ALCON_LENSX3805690 | ALCON_LENSX3805690 | 03/01/2022 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet of Lensx Program cost 2015 - 2021 Actuals (project reported) | |
| DX-187 | ALCON_LENSX3805691 | ALCON_LENSX3805691 | 03/01/2022 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re LenSx Refeshed Data | |
| DX-188 | ALCON_LENSX3809661 | ALCON_LENSX3809661 | Undated | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re GW - by Individual (Employee Personnel Cost Details) | |
| DX-189 | ALCON_LENSX3809662 | ALCON_LENSX3809662 | Undated | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re Overhead FTE Rate Analysis (Lake Forest) | |
| DX-190 | ALCON_LENSX3809667 | ALCON_LENSX3809667 | Undated | xlsx | Alcon Production | High Confidential - AEO | Spreadsheet re COGS Details by Functional Area | |
| DX-191 | ALCON_LENSX713280 | ALCON_LENSX713280 | 9/17/2020 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re LenSx APL residual Profit_June YTD 2020 | |
| DX-192 | ALCON_LENSX713281 | ALCON_LENSX713281 | 9/18/2020 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re LenSx APL residual Profit_June YTD 2020 & FY19 | |
| DX-193 | ALCON_LENSX713282 | ALCON_LENSX713288 | 9/25/2020 (Master Date from database) | xlsx | Alcon Production | Not Confidential | Spreadsheet re 2014 - 2019 LenSx APA Royalty Model | |
| DX-194 | | | | | | | Reserved | |
| DX-195 | ALCON_LENSX722657 | ALCON_LENSX722681 | 05/04/2012 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Status and Earnouts (2) | F, 701/702 |
| DX-196 | ALCON_LENSX723637 | ALCON_LENSX723675 | 01/08/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - 1.3.13 | F, 701/702 |
| DX-197 | ALCON_LENSX737337 | ALCON_LENSX737377 | 02/07/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - 2 .7 .13 | F, 701/702 |
| DX-198 | ALCON_LENSX758753 | ALCON_LENSX758789 | 04/01/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Upside 3 .19. 13 | F, 701/702 |
| DX-199 | ALCON_LENSX762608 | ALCON_LENSX762642 | 04/23/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - 4.23.13 | F, 701/702 |
| DX-200 | ALCON_LENSX776760 | ALCON_LENSX776794 | 5/21/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update May 2013 | F, 701/702 |
| DX-201 | ALCON_LENSX816580 | ALCON_LENSX816614 | 7/10/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update June 2013 | F, 701/702 |
| DX-202 | ALCON_LENSX816891 | ALCON_LENSX816925 | 7/26/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update 2014 by Month | F, 701/702 |
| DX-203 | ALCON_LENSX817456 | ALCON_LENSX817490 | 8/27/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - July 2013 | F, 701/702 |
| DX-204 | ALCON_LENSX817495 | ALCON_LENSX817529 | 8/27/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re Copy of LenSx Update July 2013 | F, 701/702 |
| DX-205 | ALCON_LENSX887179 | ALCON_LENSX887213 | 12/10/2013 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Nov. 2013 - 12.9.2013 | F, 701/702 |
| DX-206 | ALCON_LENSX887260 | ALCON_LENSX888733 | 1/6/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Dec. 2013-01.06.2014 | F, 701/702 |
| DX-207 | ALCON_LENSX937988 | ALCON_LENSX938022 | 2/20/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - 02.20.2014 | F, 701/702 |
| DX-208 | ALCON_LENSX938293 | ALCON_LENSX938327 | 4/9/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Mar. 2014 | F, 701/702 |
| DX-209 | ALCON_LENSX938574 | ALCON_LENSX938608 | 5/7/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Apr. 2014 | F, 701/702 |
| DX-210 | ALCON_LENSX940019 | ALCON_LENSX940053 | 6/12/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re Copy of LenSx Update - May 2014(2) | F, 701/702 |
| DX-211 | ALCON_LENSX940199 | ALCON_LENSX940233 | 7/4/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Jun. 2014 | F, 701/702 |
| DX-212 | ALCON_LENSX940691 | ALCON_LENSX940725 | 8/7/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Jul. 2014 | F, 701/702 |
| DX-213 | ALCON_LENSX940737 | ALCON_LENSX940771 | 9/5/2014 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet re LenSx Update - Aug. 2014 | F, 701/702 |
| DX-214 | JJSV_00020373 | JJSV_00020373 | 1/25/2021 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - Listing of J&J Install Base of Catalys | |
| DX-215 | JJSV_00020385 | JJSV_00020385 | 12/8/2020 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - JJSV P&L Dec 2013 | |
| DX-216 | JJSV_00020399 | JJSV_00020399 | 12/8/2020 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - Profit and Loss Statement for Period Ending 12/2017 | |
| DX-217 | JJSV_00020428 | JJSV_00020428 | 12/5/2020 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - Sales Reporting | |
| DX-218 | JJSV_00403742 | JJSV_00403742 | 1/12/2021 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - cataract consumables market share | |
| DX-219 | JJSV_00403743 | JJSV_00403743 | 1/6/2021 (Master Date from database) | xlsx | JJSV Production | AEO | Spreadsheet - FLACS market share | |
| DX-220 | JJSV_01094484 | JJSV_01094484 | 1/7/2022 (Master Date from database) | xlsm | JJSV Production | AEO | Spreadsheet - cataract revenue | |
| DX-221 | JJSV_01094934 | JJSV_01094938 | 7/22/2002 | pdf | JJSV Production | AEO | Memo - Intralase Budget Schedules | |
| DX-222 | JJSV_01094949 | JJSV_01094951 | 3/5/2002 | pdf | JJSV Production | AEO | Intralase Final Budget | |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-223 | JJSV_01095036 | JJSV_01095248 | Undated | pdf | JJSV Production | AEO | IntraLase Corp. Operating Budget for 2002, dated March 2002 | |
| DX-224 | ALCON_LENSX027022 | ALCON_LENSX027022 | 2/21/2020 (Master Date from database) | xlsx | Alcon Production | Highly Confidential | Spreadsheet - LenSx financial summary | |
| DX-225 | ALCON_LENSX004231 | ALCON_LENSX004233 | 2/19/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential | Spreadsheet - LenSx financial summary | |
| DX-226 | ALCON_LENSX3804547 | ALCON_LENSX3804547 | 12/8/2016 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - LenSx service financials | |
| DX-227 | ALCON_LENSX3804964 | ALCON_LENSX3804966 | 2/1/2022 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - LenSx tech service P&L | |
| DX-228 | ALCON_LENSX0995119 | ALCON_LENSX0995119 | 10/28/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - ▮▮▮▮▮▮▮ | |
| DX-229 | ALCON_LENSX0995118 | ALCON_LENSX0995118 | 10/28/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - ▮▮▮▮▮▮ | |
| DX-230 | ALCON_LENSX0995124 | ALCON_LENSX0995124 | 10/28/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - ▮▮▮▮ | |
| DX-231 | ALCON_LENSX0995117 | ALCON_LENSX0995117 | 10/28/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - ▮▮▮▮▮▮▮▮ | |
| DX-232 | ALCON_LENSX0995120 | ALCON_LENSX0995120 | 10/28/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - ▮▮▮▮▮▮ | |
| DX-233 | ALCON_LENSX3805708 | ALCON_LENSX3805708 | Undated | csv | Alcon Production | Not Confidential | Spreadsheet - Consumable sales | |
| DX-234 | ALCON_LENSX1049960 | ALCON_LENSX1049960 | 10/19/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - Post-2013 IOL sales data | |
| DX-235 | ALCON_LENSX1049959 | ALCON_LENSX1049959 | 10/19/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - Pre-2013 IOL sales data | |
| DX-236 | ALCON_LENSX1049958 | ALCON_LENSX1049958 | 10/19/2021 (Master Date from database) | xlsx | Alcon Production | Highly Confidential - AEO | Spreadsheet - Historical IOL market share data | |
| DX-237 | ALCON_LENSX3810036 | ALCON_LENSX3810036 | Undated | xlsx | Alcon Production | Not Confidential | Spreadsheet - OUS IOL royalty summary | F, H, 106, 1006, 403, 701/702, Time |
| DX-238 | JJSV_01094684 | JJSV_01094684 | 12/2/2006 | xlsx | JJSV Production | Confidential | Spreadsheet - 2007 budget plan | |
| DX-239 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | xlsx | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening: Appendix B: Total LenSx® R&D Expenses, 2007-2020 | F, H, 403, 701/702, 1002, 1006, Demo |
| DX-240 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening Appendix C: Cost Related to the Development and V&V of FS1/FS2 Software | H, 403, 701/702, 1002, 1006, Demo |
| DX-241 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening Appendix D: IntraLase Corp.'s R&D Expenses, 1997-April 2004 | H, 403, 701/702, 1002, 1006, Demo |
| DX-242 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening Exhibit 3: Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code as a Percent of Cumulative LenSx® R&D Expenses Through 2000 | H, 403, 701/702, 1002, 1006, Demo |
| DX-243 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening Exhibit 4: Cost to Develop FS1/FS2 Software as a Percent of Total IntraLase Corp. R&D Expenses Through April 2004 | H, 403, 701/702, 1002, 1006, Demo |
| DX-244 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix A: LenSx® Revenue and Gross Profit | H, 403, 701/702, 1002, 1006, Demo |
| DX-245 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix B: Alcon Surgical COGS, Not Applied at a Product Level | H, 403, 701/702, 1002, 1006, Demo |
| DX-246 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix C: LenSx® Royalty Payments | F, H, 106, 403, 701/702, 1002, 1006, Demo |
| DX-247 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix D: Alcon Surgical Marketing & Selling Expenses and General & Administrative Expenses | F, H, 403, 701/702, 1002, 1006, Demo |
| DX-248 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix E: Analysis of Alcon's IOL Sales | H, 403, 701/702, 1002, 1006, Demo |
| DX-249 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix F: IOL Gross Profit Margin | H, 403, 701/702, 1002, 1006, Demo |
| DX-250 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix G: Alcon's ATIOL Market Share | H, 403, 701/702, 1002, 1006, Demo |
| DX-251 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix H: Summary of Market Scope Data | H, 403, 701/702, 1002, 1006, Demo |
| DX-252 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix I: Financial Data for Lost Profits Calculations | F, H, R, 403, 701/702, 1002, 1006, Demo |
| DX-253 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Appendix J: Profits on IOLs Earned by Named Alcon Defendants | F, H, 106, 403, 701/702, 1002, 1006, Demo |
| DX-254 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Exhibit 3: Apportioned LenSx® Profits | H, 403, 701/702, 1002, 1006, Demo |
| DX-255 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Exhibit 4: Adjustments to Ms. Stamm's Calculations of Lost Profits | F, H, R, 403, 701/702, 1002, 1006, Demo |
| DX-256 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | Julie Davis Rebuttal Rpt. | Highly Confidential - AEO | Davis Rebuttal Exhibit 5: Apportioned IOL Profits (Based on Ms. Stamm's Calculation of Alcon's IOL Pull-Through Revenue) | F, H, R, 403, 701/702, 1002, 1006, Demo |
| DX-257 | N/A Expert Ex. | N/A Expert Ex. | 6/23/2022 | pdf | Julie Davis Reply Rpt. | Highly Confidential - AEO | Davis Reply Appendix A: Difference Between Actual and But-For LenSx® Placements Assuming a 2012 LenSx® Entry | F, H, R, 403, 701/702, 1002, 1006, Demo |
| DX-258 | N/A Expert Ex. | N/A Expert Ex. | 6/23/2022 | pdf | Julie Davis Reply Rpt. | Highly Confidential - AEO | Davis Reply Exhibit 3: LenSx® Profits on Additional 2012 Installations | F, H, R, 403, 701/702, 1002, 1006, Demo |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-259 | N/A Expert Ex. | N/A Expert Ex. | 6/23/2022 | pdf | Julie Davis Reply Rpt. | Highly Confidential - AEO | Davis Reply Exhibit 4: Update to Ms. Stamm's Calculation of Apportionment Factor Based on Saved Development Time | H, 403, 701/702, 1002, 1006, Demo |
| DX-260 | BROWNELL_00000001 | BROWNELL00000002 | 3/4/2022 | pdf | Brownell Depo Ex. | Not Confidential | Resume of M. Brownell | A, F, H, R, 403 |
| DX-261 | BS_00000004 | BS_00000006 | 2/14/2022 | pdf | Brent Schellhase Depo Ex. | Confidential | Resume of Brent H. Schellhase | A, F, H, P, R, 403, MIL 3 |
| DX-262 | CHAUDHARY_0001066 | CHAUDHARY_0001066 | 2/25/2022 | pdf | Gautam Chaudhary Depo Ex. | Confidential | CV of Gautam Chaudhary | |
| DX-263 | HU-HEG_0000797 | HU-HEG_0000801 | 2/23/2022 | pdf | Imre Hegdus Depo Ex. | Confidential | CV of Imre Hegdus | |
| DX-264 | JA_00000007 | JA_00000009 | 2/4/2022 | pdf | John Alder Depo Ex. | Confidential | Resume of John Alder | H, R, 403 |
| DX-265 | LB_00000056 | LB_00000062 | 1/27/2022 | pdf | Leonard Borrman Depo Ex. | Confidential | CV of Leonard Borrman | A, F, H, R, 403 |
| DX-266 | N/A Depo Ex. | N/A Depo Ex. | 2/24/2022 | pdf | Biren Mehta Depo Ex. | Not Confidential | Linked In Page for Biren Mehta | H |
| DX-267 | N/A Expert Ex. | N/A Expert Ex. | 7/20/2022 | pdf | David Feigal Rebuttal Rpt. | Confidential | CV of Dr. Feigal | |
| DX-268 | N/A Depo Ex. | N/A Depo Ex. | 2/25/2022 | pdf | Hong Fu Depo Ex. | Not Confidential | LinkedIn of Hong Fu | A, F, H, P, R, 403 |
| DX-269 | N/A Website | N/A Website | | pdf | Public Document | Not Confidential | LinkedIn of M. Kraai.pdf | A, F, H, P, R, 403, MIL 3, Time |
| DX-270 | N/A Depo Ex. | N/A Depo Ex. | 2/14/2022 | pdf | Brent Schellhase Depo Ex. | Not Confidential | LinkedIn of Brent Schellhase | F, H, P, R, 403, MIL 3 |
| DX-271 | N/A Depo Ex. | N/A Depo Ex. | 3/4/2022 | pdf | Dan Teodorescu Depo Ex. | Not Confidential | LinkedIn of D. Teodorescu | H |
| DX-272 | ALCON_LENSX000579 | ALCON_LENSX00579 | 5/3/2017 | pptx | Alcon Production | Confidential | Presentation LenSx Development History | |
| DX-273 | ALCON_LENSX053623 | ALCON_LENSX053625 | 11/16/2021 | pdf | Peter Goldstein Depo Ex. | Highly Confidential | Document - Goldstein Career Summary | |
| DX-274 | ALCON_LENSX0998443 | ALCON_LENSX0998443 | 7/9/2015 | pptx | Alcon Production | Highly Confidential - AEO | Presentation - Next Generation Modular LenSx Ideation Project Proposal | |
| DX-275 | ALCON_LENSX1112372 | ALCON_LENSX1112374 | 7/30/2012 | pdf | Alcon Production | Highly Confidential - AEO | Email re: Talking Points, dated July 30, 2012 | F, H, R, 403 |
| DX-276 | ALCON_LENSX185143 | ALCON_LENSX185146 | 7/00/2016 | pdf | Alcon Production | Highly Confidential - AEO | Document - Incremental Device Modifications (K161288) DFU LenSx Laser SoftFit Patient Interface | 106, R, 403 |
| DX-277 | ALCON_LENSX2147067 | ALCON_LENSX2147068 | 4/18/2012 | pdf | Alcon Production | Highly Confidential - AEO | Email re:                           , dated April 17-18, 2012 | F, H, R, 403 |
| DX-278 | ALCON_LENSX218989 | ALCON_LENSX218989 | 1/2/1012 | xlsx | Alcon Production | Highly Confidential - AEO | LenSx customer satisfaction survey | |
| DX-279 | ALCON_LENSX2252827 | ALCON_LENSX2252945 | 5/00/2018 | pdf | Alcon Production | Highly Confidential - AEO | Spreadsheet titled Cataract Marketplace W2 Attitude & Usage | |
| DX-280 | ALCON_LENSX2590655 | ALCON_LENSX2590656 | 2/2/2021 | pdf | Keith Wantnabe Depo Ex. | Highly Confidential - AEO | Email -                         , Feb. 2, 2021 | |
| DX-281 | ALCON_LENSX3804890 | ALCON_LENSX3804963 | 1/27/2022 | pdf | Dan Teodorescu Depo Ex. | Highly Confidential - AEO | Software Development Guideline 2.31G | |
| DX-282 | ALCON_LENSX3805639 | ALCON_LENSX3805662 | 7/15/2020 | pdf | Alcon Production | Highly Confidential - AEO | Presentation - Alcon Capital Allocation, dated July 15, 2020 | F, H, 1002, 1006, 403, 701/702 |
| DX-283 | BS_00000008 | BS_00000008 | 9/9/2010 | pdf | Brent Schellhase Depo Ex. | Confidential | Presentation 2010 Software Summit, iFS Advanced Femtosecond Laser Current & Future Projects | F, H, R, 403 |
| DX-284 | BS_00000210 | BS_00000222 | 9/20/2010 | pdf | Brent Schellhase Depo Ex. | Confidential | Abbott Medical Optics, Software Development Plan, iFS System, iFS Software Translation project: R02962, iFS System Software Version: 2.20, Video Microscope Software Version: 1.20 | F, H, R, 403 |
| DX-285 | BS_00000433 | BS_00000433 | 4/24/2009 | pdf | Brent Schellhase Prod. | Confidential | Presentation - iFS Internationalization Interface Issues & Proposed Redesign | F, H, R, 403 |
| DX-286 | JA_00000019 | JA_000000029 | 1/12/2022 | pdf | Brent Schellhase Depo Ex. | Confidential | Email - Subject: Well, this is interesting, from Rick Duff, dated January 12, 2022 | F, H, R, 403 |
| DX-287 | JA_00000024 | JA_000000026 | 1/12/2022 | pdf | Brent Schellhase Depo Ex. | Confidential | Email - Subject: Well, this is interesting, from John Alder, dated January 12, 2022 | F, H, R, 403 |
| DX-288 | JJSV_00020805 | JJSV_00020805 | 4/00/2020 | pdf | Christian Cuzik Depo Ex. | Confidential | LCS Customer Journey, Qualitative Teledepth Interviews, Executive Summary April 2020 | |
| DX-289 | JJSV_00479285 | JJSV_00479288 | 3/30/2012 | pdf | Christian Cuzik Depo Ex. | Confidential | March 30, 2012 LCS analysis document | A, F, H, 403, 701/702 |
| DX-290 | JJSV_00479298 | JJSV_00479323 | 2/5/2010 | pdf | Andrew Pang Depo Ex. | Confidential | Presentation - LenSx Lasers Inc. to Abbott Medical Optics, February 5, 2010 | |
| DX-291 | JJSV_00564439 | JJSV_00564450 | 12/13/2010 | pdf | JJSV Production | Confidential | Abbott Medical Optics, Hazard/Risk Assessment Document No. J75XXX Rev. 1, Entitled Poseidon Project - Preliminary Hazard Analysis (Feasibility) | R, 403 |
| DX-292 | JJSV_00577943 | JJSV00577948 | 6/16/2010 | pdf | Michael Brownell Depo Ex. | Confidential | Email - re Capsulorhexis with iFS laser, from M. Brownell, June 16, 2010 | R, 403 |
| DX-293 | JJSV_00585297 | JJSV00585298 | 3/11/2008 | pdf | Michael Brownell Depo Ex. | Confidential | Email - re LensXLasers, From G. Spuehler to M. Brownell, dated March 11, 2008 | F, H, R, 403 |
| DX-294 | JJSV_00617352 | JJSV_00617356 | 4/11/2006 | pdf | JJSV Production | Confidential | IntraLase Corp. Merit Review Worksheet | |
| DX-295 | JJSV_00704694 | JJSV_00704694 | 4/23/2020 | pdf | Christian Cuzik Depo Ex. | Confidential | MD&D Build Back, SWOT and SG&A Overview Presentation | |
| DX-296 | JJSV_00709837 | JJSV_00709837 | 3/22/2018 | pdf | Christian Cuzik Depo Ex. | Not Confidential | Fair Market Value Opinion of Legal Entities of AMO as of 2/27/17 | |
| DX-297 | JJSV_00711192 | JJSV_00711227 | 4/00/2020 | pdf | JJSV Production | Confidential | J&J 2020 Strategic Plan, dated April 2020 | |
| DX-298 | JJSV_00719293 | JJSV_00719327 | 9/26/2017 | pdf | Christian Cuzik Depo Ex. | Confidential | Purchase Price Allocation of Abbott Medical Optics Acquisition by J&J | |
| DX-299 | JJSV_00727855 | JJSV_00727855 | 4/3/2017 | pdf | Christian Cuzik Depo Ex. | Confidential | Email - FW Abbott Purchase Price, April 3, 2017 | |
| DX-300 | JJSV_00727856 | JJSV_00728094 | 2/26/2009 | pdf | Christian Cuzik Depo Ex. | Confidential | Abbott Labs Purchase Price Allocation of Advanced Medical Optics as of 2/26/09 | |
| DX-301 | JJSV_00780118 | JJSV_00780118 | 4/28/2015 | pdf | Georg Schuele Depo Ex. | Confidential | Email - FW: LenSx Users Manual, from D. Scott to G. Schuele April 28, 2015 | |
| DX-302 | JJSV_00802370 | JJSV_00802378 | 12/13/2017 | pdf | JJSV Production | Confidential | AMO Regional Holdings Limited and AMO Ireland Assignment Agreement | |
| DX-303 | JJSV_00876416 | JJSV_00876626 | 7/00/2010 | pdf | JJSV Production | Confidential | 2010 Cataract Equipment Report AMO | |
| DX-304 | JJSV_00936284 | JJSV_00936294 | 4/00/2021 | pdf | Christian Cuzik Depo Ex. | Confidential | Surgical Vision Equipment Placement and Financial Options April 2021 | |
| DX-305 | JJSV_00962719 | JJSV_00962719 | 2017 | pdf | Christian Cuzik Depo Ex. | Confidential | Presentation - Alcon Competitive Analysis | |
| DX-306 | JJSV_00988274 | JJSV_00988274 | 4/00/2020 | pdf | JJSV Production | Confidential | Email Chain re US Custom Packs Working Session | |
| DX-307 | JJSV_01030352 | JJSV_01030459 | 5/1/2013 | pdf | Hong Fu Depo Ex. | Confidential | Project Nordic Final Diligence Reports on OptiMedica | |
| DX-308 | JJSV_01030952 | JJSV_01030955 | 11/30/2006 | pdf | JJSV Production | Confidential | Amendment to Consulting Agreement between Ron Kurtz, M.D. and IntraLase Corp., effective November 30, 2006 | |
| DX-309 | JJSV_01037218 | JJSV_01037218 | 12/4/2010 | pdf | Leonard Borrman Depo Ex. | Confidential | AMO iFS Corneal Incisions Project Plan | R, 403 |
| DX-310 | JJSV_01037441 | JJSV01037441-023 | 1/3/2011 | pdf | Michael Brownell Depo Ex. | Confidential | Presentation - Project Poseidon, Going Deep With Femto-Assisted Cataract Surgery | R, 403 |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-311 | JJSV_01051513 | JJSV_1051561 | 1/5/2006 | pdf | Leonard Borrman Depo Ex. | Confidential | Presentation - AMO Board of Directors Project Marathon | |
| DX-312 | JJSV_01080406 | JJSV_01080426 | 9/21/1999 | pdf | JJSV Production | Confidential | IntraLase Corp. Financial Report for the Board of Director Meeting, dated September 21, 1999 | |
| DX-313 | JJSV_01091086 | JJSV_01091086 | 12/28/2012 | pdf | Hong Fu Depo Ex. | Confidential | Laser Cataract System Development - Task Breakdown | R, 403 |
| DX-314 | JJSV_01091519 | JJSV_01091519 | 11/27/2012 | pdf | JJSV Production | Confidential | Email re Summary of LCS Workstation, November 27, 2012 | R, 403 |
| DX-315 | JJSV_01092162 | JJSV_01092199 | 3/15/2011 | pdf | Matthew Kraai Depo Ex. | Confidential | Project Poseiden Gate 1-2 - Commit to Feasibility | R, 403 |
| DX-316 | JJSV_01092361 | JJSV_01092384 | 9/19/011 | pdf | Matthew Kraai Depo Ex. | Confidential | Preliminary Hazard Analysis (Feasibility) For Modifications to the IFS to Perform Capsulotomies | R, 403 |
| DX-317 | JJSV_01093163 | JJSV_01093176 | 5/18/2012 | pdf | Hong Fu Depo Ex. | Confidential | Project Precision: Best Practices and Lessons Learned | R, 403 |
| DX-318 | JJSV_01119333 | JJSV_01119333 | 5/29/2020 | pdf | JJSV Production | Confidential | Exclusive License Agreement between AMO Development, LLC and AMO Manufacturing USA, LLC | |
| DX-319 | JJSV_01119334 | JJSV_01119334 | 5/29/2020 | pdf | JJSV Production | Confidential | Exclusive License Agreement between AMO Development, LLC and AMO Manufacturing USA, LLC | |
| DX-320 | JJSV_01119335 | JJSV_01119335 | 5/29/2020 | pdf | JJSV Production | Confidential | Exclusive License Agreement between AMO Development, LLC and AMO Sales & Service, Inc. | |
| DX-321 | JJSV_01119336 | JJSV_01119336 | 5/29/2020 | pdf | JJSV Production | Confidential | Exclusive License Agreement between AMO Development, LLC and AMO Sales & Service, Inc. | |
| DX-322 | JJSV_01119365 | JJSV_01119365 | 1/15/2020 | pptx | JJSV Production | Confidential | Presentation - J&J Corporate Organizational Chart as of January 15, 2020 | |
| DX-323 | JJSV_01119536 | JJSV_01119536 | 10/1/2020 | pdf | JJSV Production | Confidential | Manufacturing, Supply and License Agreement between AMO Manufacturing USA, LLC and AMO Development Corp. | |
| DX-324 | JJSV_01120806 | JJSV_01120835 | 3/1/2007 | pdf | JJSV Production | Confidential | Advanced Medical Optics Acquisition of Intralase Summary of Value Conclusions | |
| DX-325 | JJSV_01128015 | JJSV_01128081 | 3/5/2014 | pdf | JJSV Production | Confidential | Abbott Laboratories, Valuation of Certain Identifiable Intangible Assets and Contingent Consideration in connection with the acquisition of OptiMedica Corporation | |
| DX-326 | N/A Priv. Log | N/A Priv. Log | 2/25/2022 | pdf | JJSV Production | Highly Confidential - AEO | Privilege Log - J&J Vision's Supplemental | P, R, 403, MIL 3, Dupe |
| DX-327 | N/A Website | N/A Website | 7/20/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | 21 CFR - Code of Federal Regulations Title 21, available at: http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm. | 403, 701/702 |
| DX-328 | N/A Expert Ex. | N/A Expert Ex. | 5/27/2022 | pdf | David Feigal Rebuttal Rpt. | Highly Confidential - AEO | Feigal Exhibit 1: Total Possible Pages with Overlap in Dr. Becker's Appendix E With Adjustments | 1006, Demo |
| DX-329 | N/A Website | N/A Website | 11/22/2016 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA Approval for Navilas Laser System 577s, available at https://www.accessdata.fda.gov/cdrh_docs/pdf16/K162191.pdf | R, 403 |
| DX-330 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, "Inspections Database Frequently Asked Questions," available at https://www.fda.gov/inspectionscompliance-enforcement-and-criminal-investigations/inspection-references/inspections-database-frequently-asked-questions. | R, 403 |
| DX-331 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, "Premarket Notification 510(k)," available at: https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k. | |
| DX-332 | N/A Website | N/A Website | 7/31/2019 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, "Procedure for Release of Establishment Inspection Report," available at https://www.fda.gov/media/83055/download. | R, 403 |
| DX-333 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, "Regulatory Controls: Special Controls," available at: https://www.fda.gov/medical-devices/overview-device-regulation/regulatory-controls#special. | |
| DX-334 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, "The FDA's LASIK Program," available at: https://www.fda.gov/medical-devices/lasik/fdas-lasik-program. [Source Identifier: David Feigal Rebuttal Report] | |
| DX-335 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, Laws Enforced by FDA, available at: https://www.fda.gov/regulatory-information/laws-enforced-fda. | |
| DX-336 | N/A Website | N/A Website | 6/00/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | FDA, Regulatory Procedures Manual, Chapter 4-1 Warning Letters, available at: https://www.fda.gov/media/71878/download. | R, 403 |
| DX-337 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | Group Purchasing Agreement at B-1-B-2, available at https://www.sec.gov/Archives/edgar/data/937556/000119312508046353/dex103.htm. | |
| DX-338 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | Website - ISO 13485:2016 Products, available at: https://13485store.com/13485-2016-compare-products/?gclid=CjwKCAjwp7eUBhBeEiwAZbHwkRcgg_u2MXjSia0cfMqYSZgNygoux4V8A4YnD5EpjB1eWhL4EyVomBoCGoEQAvD_BwE#packages. | A, F, H, 701/702, 403 |
| DX-339 | N/A Expert Ex. | N/A Expert Ex. | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | Document - Premier Purchasing Partners LP Group Purchasing Agreement - Capital Equipment, available at https://www.sec.gov/Archives/edgar/data/937556/000119312509100307/dex1032.htm | |
| DX-340 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | David Feigal Rebuttal Rpt. | Not Confidential | Website - World Health Organization. Medical Devices., available at: https://www.who.int/health-topics/medical-devices#tab=tab_1. | A, F, H, 701/702, 403 |
| DX-341 | N/A Pleading Ex. | N/A Pleading Ex. | 3/22/2021 | pdf | Pleading | Highly Confidential - AEO | Worlwide market Share of Net new FLACS Device Placements by Product for the Years 2014-2019; Worldwide Market Share of FLACS Device Installed Base by Product for 2013-2019 [Source Identifier: Declaration of Julie Davis in Support of Alcon's Opposition to Motion for Preliminary Injunction, Ex. 3] | |
| DX-342 | N/A Expert Ex. | N/A Expert Ex. | 4/28/2022 | pdf | Douglas Schmidt Opening Rpt. | Not Confidential | Schmidt Opening Appendix E: Reorganized iFS Directory Structure | |
| DX-343 | N/A Online Doc. | N/A Online Doc. | Last accessed 11/9/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | 2006 IntraLase Corp. Form 10-K (https://sec.report/Document/0001193125-07-048217/) | Time |

    Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-344 | N/A Online Doc. | N/A Online Doc. | Last accessed 11/9/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | 2008 Advanced Medical Optics, Inc. Form 10-K, (https://www.sec.gov/Archives/edgar/data/1168335/000119312509036296/d10k.htm) | Time |
| DX-345 | N/A Online Doc. | N/A Online Doc. | 2017 | pdf | Julie Davis Opening Rpt. | Not Confidential | 2017 Johnson & Johnson Form 10-K, p. 70 (https://johnsonandjohnson.gcs-web.com/static-files/97993c63-c6c4-4b44-9241-635f52f36c66). | Time |
| DX-346 | N/A Online Doc. | N/A Online Doc. | 11/16/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | Alcon Market Access and Reimbursement Services, 2019 (https://professional.myalcon.com/sites/g/files/rbvwei1041/files/2020-04/MARSLenSx%20CMS%20Guidance%20Document-Refresh-LR_0.pdf) | A, F, H, 701/702, 403 |
| DX-347 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Opening Rpt. | Highly Confidential - AEO | Davis Opening: Appendix A: Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code | H, 403, 701/702, 1002, 1006, Demo |
| DX-348 | N/A Online Doc. | N/A Online Doc. | 11/16/2012 | pdf | Julie Davis Opening Rpt. | Not Confidential | Article - Laser-Assisted Cataract Surgery and CMS Rulings 05-01 and 1536-R, dated November 16, 2012 (https://www.cms.gov/medicare/medicare-fee-for-service-payment/ascpayment/downloads/cms-pc-ac-iol-laserguidance.pdf) | F, R, 403 |
| DX-349 | N/A Online Doc. | N/A Online Doc. | 10/17/2016 | pdf | Julie Davis Opening Rpt. | Not Confidential | Article - Roberts, T.V., et al., Update and clinical utility of the LenSx femtosecond laser in cataract surgery, Clinical Ophthalmology, 2016; 10: 2021-2029, Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5074708/#:~:text=The%20LenSx%20platform%20(Alcon%20Laboratories,was%20commercially%20released%20in%202011. | A, F, H, 701/702, 403 |
| DX-350 | N/A Online Doc. | N/A Online Doc. | Last accessed 11/9/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | FDA Class 3 2003 Device Recall re Intralase FS Laser System Available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?id=28521. | R, 403 |
| DX-351 | N/A Website | N/A Website | Last accessed 11/11/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | Website - Alcon LenSx enhancements announcement, available at https://www.alcon.com/media-release/alcon-launches-new-technological-enhancements-lensxr-laser-american-society-cataract | A, F, H, 701/702, 403 |
| DX-352 | N/A Online Doc. | N/A Online Doc. | 6/14/2001 | pdf | Julie Davis Opening Rpt. | Not Confidential | Website - Laser "Scalpel" Improves Popular Eye Surgery, available at https://www.nsf.gov/od/lpa/news/press/01/pr0151.htm | A, F, H, 701/702, 403 |
| DX-353 | N/A Online Doc. | N/A Online Doc. | 7/15/2017 | pdf | Julie Davis Opening Rpt. | Not Confidential | Website - Phaco technology developments, available at https://www.ophthalmologytimes.com/view/phaco-technology-evolves-over-time | A, F, H, 701/702, 403 |
| DX-354 | N/A Online Doc. | N/A Online Doc. | Last accessed 11/9/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | IntraLase Corp. 2005 Form 10-K, p. 7 (https://www.sec.gov/Archives/edgar/data/0001163848/000119312506044877/d10k.htm) | Time |
| DX-355 | N/A Online Doc. | N/A Online Doc. | 5/28/2004 | pdf | Julie Davis Opening Rpt. | Not Confidential | IntraLase Corp. Form S-1, dated May 28, 2004, p. 1 (https://www.sec.gov/Archives/edgar/data/1163848/000119312504096174/ds1.htm) | Time |
| DX-356 | N/A Online Doc. | N/A Online Doc. | 2013 | pdf | Julie Davis Opening Rpt. | Not Confidential | Abbott 2013 Annual Report Available at https://www.annualreports.com/HostedData/AnnualReportArchive/a/NYSE_ABT_2013.pdf | Time |
| DX-357 | N/A Online Doc. | N/A Online Doc. | 9/00/2014 | pdf | Julie Davis Opening Rpt. | Not Confidential | Article - Lane, S. Improving Refractive Outcomes With the Verion System, Available at https://crstodayeurope.com/wp-content/themes/crste/assets/downloads/0914CRSTEuro_F1_Lane.pdf | A, F, H, 701/702, 403 |
| DX-358 | N/A Online Doc. | N/A Online Doc. | 6/00/2014 | pdf | Julie Davis Rebuttal Rpt. | Not Confidential | Exploring the Cataract Refractive Suite Available at https://crstoday.com/wp-content/themes/crst/assets/downloads/0614_supp2.pdf | A, F, H, 701/702, 403 |
| DX-359 | N/A Online Doc. | N/A Online Doc. | Last accessed 11/9/2022 | pdf | Julie Davis Rebuttal Rpt. | Not Confidential | https://www.healio.com/news/ophthalmology/20120522/widespread-adoption-of-femtosecond-lasers-for-cataract-may-depend-on-reimbursements (link out of date) | F, H, R, 403 |
| DX-360 | N/A Website | N/A Website | | pdf | Julie Davis Reply Rpt. | Not Confidential | LinkedIn of Alan Graham https://www.linkedin.com/in/alan-graham-95ba8440/ | A, F, H, P, R, 403 |
| DX-361 | N/A Expert Ex. | N/A Expert Ex. | 4/29/2022 | pdf | Julie Davis Reply Rpt. | Highly Confidential - AEO | Opening Appendix A Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code (Updated) | 1006, 701/702 |
| DX-362 | N/A Online Doc. | N/A Online Doc. | 11/13/2012 | pdf | Julie Davis Reply Rpt. | Not Confidential | Website - American Academy of Opthalmology: LenSx laser gets improved patient interface, Available at https://www.aao.org/headline/lensx-laser-gets-improved-patient-interface | A, F, H, 701/702, 403 |
| DX-363 | N/A Book | N/A Book | 1/00/2021 | pdf | Stephen Wicker Rebuttal Rpt. | Not Confidential | U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 621.4 (3d ed. 2021) | F, R, 403, 701/702 |
| DX-364 | N/A Depo Ex. | N/A Depo Ex. | 1/00/1996 | pdf | John Suzuki Depo Ex. | Not Confidential | Article "Documenting the software Validation of Computer-Controlled Devices and Manufacturing processes" | A, F, H, 701/702, 403 |
| DX-365 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 9/27/2021 | pdf | Interrogatory Response | Not Confidential | Alcon 1st Supplemental Response to 4th Set of ROGs (No. 20) | H, R, 403 |
| DX-366 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/25/2022 | pdf | Interrogatory Response | Not Confidential | Alcon 2nd Supplemental Response to 6th Set of ROGs (No. 22) | H, R, 403 |
| DX-367 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 9/27/2021 | pdf | Interrogatory Response | Not Confidential | Alcon 5th Supplemental Response to 1st Set of ROGs (Nos. 3,4,6,7 & 12) | H, R, 403 |
| DX-368 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 1/14/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | Alcon 6th Supplemental Response to 1st Set of ROGs (Nos. 3,4,7,8,12,16 & 17) | H, R, 403 |
| DX-369 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/16/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | Alcon 7th Supplemental Response to 1st Set of ROGs (No. 16) | H, R, 403 |
| DX-370 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/14/2022 | pdf | Interrogatory Response | Not Confidential | Alcon Response to 10th Set of ROGs (Nos. 27-28) | H, R, 403 |
| DX-371 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/25/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | Alcon Response to 11th Set of ROGs (No. 29) | H, R, 403 |
| DX-372 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential/Confidential Source Code - AEO | Alcon Response to 12th Set of ROGs (Nos. 30-35) | H, R, 403 |
| DX-373 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 1st Supplemental Response to 1st Set of ROGs (No. 13) | R, 403 |
| DX-374 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 7/9/2021 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 1st Supplemental Response to 1st Set of ROGs (No. 2) | R, 403 |
| DX-375 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 4/9/2021 | pdf | Interrogatory Response | Confidential Source Code - AEO | J&J 1st Supplemental Response to 1st Set of ROGs (Nos. 11&12) | R, 403, Dupe |
| DX-376 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/18/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 1st Supplemental Response to 3rd Set of ROGs | R, 403 |
| DX-377 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 5/21/2021 | pdf | Interrogatory Response | Not Confidential | J&J 2nd Supplemental Response to 1st Set of ROGs (No. 4) | R, 403 |
| DX-378 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Not Confidential | J&J 2nd Supplemental Response to 1st Set of ROGs (No. 6) | R, 403 |
| DX-379 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 10/29/2021 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 2nd Supplemental Response to 1st Set of ROGs (Nos. 5&17) | R, 403, Dupe |
| DX-380 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 2nd Supplemental Response to 4th Set of ROGs (No. 23) | R, 403 |
| DX-381 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J 2nd Supplemental Response to 5th Set of ROGs (No. 27) | R, 403 |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-382 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/29/2022 | pdf | Interrogatory Response | Highly Confidential/Confidential Source Code - AEO | J&J 3rd Supplemental Response to 1st Set of ROGs (No. 11) | R, 403, Dupe |
| DX-383 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential/Confidential Source Code - AEO | J&J 4th Supplemental Response to 1st Set of ROGs (No. 11) | R, 403 |
| DX-384 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Not Confidential | J&J Response to 1st Set of RFAs (Nos. 1-60) | R, 403 |
| DX-385 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 7/15/2021 | pdf | Interrogatory Response | Not Confidential | J&J Response to 2nd Set of ROGs (No. 21) | R, 403 |
| DX-386 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 1/5/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J Response to 3rd Set of ROGs (No. 22) | R, 403, Dupe |
| DX-387 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 2/22/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J Response to 5th Set of ROGs | R, 403 |
| DX-388 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/7/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J Response to 6th Set of ROGs (Nos. 28-38) - Corrected | R, 403 |
| DX-389 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/4/2022 | pdf | Interrogatory Response | Highly Confidential - AEO | J&J Supplemental Response to 5th Set of ROGs (No. 25) | R, 403 |
| DX-390 | N/A Online Doc. | N/A Online Doc. | 2019 | pdf | Public Document | Not Confidential | Document - PanOptix brochure, available at https://professional.myalcon.com/sites/g/files/rbvwei1041/files/2020-04/US-ACP-CEI-1900005%20PanOptix%20Patient%20Brochure.pdf | A, F, H, 701/702, 403, Time |
| DX-391 | ALCON_LENSX2602110 | ALCON_LENSX2602171 | 5/00/2021 | pdf | Alcon Production | Highly Confidential - AEO | 2021 Cataract Annual - Alcon Custom | |
| DX-392 | JJSV_00958374 | JJSV_00958374 | 3/28/2018 | pptx | JJSV Production | Confidential | Document - Alcon SWOT (IOL/Overall) | |
| DX-393 | ALCON_LENSX709421 | ALCON_LENSX709421 | 1/00/2020 | pptx | Alcon Production | Not Confidential | US Surgical Cataract Equipment Brand Health Tracker Report 4Q19 - January 2020 | |
| DX-394 | JJSV_00767789 | JJSV_00767790 | 12/19/2008 | pdf | JJSV Production | Confidential | LenSx Lasers-Company Letter.doc | |
| DX-395 | ALCON_LENSX3809650 | ALCON_LENSX3809650 | 3/28/2022 | csv | Alcon Production | Confidential | Spreadsheet - Lynda Jeffcoat LinkedIn messages | |
| DX-396 | BS_00000207 | BS_00000207 | 11/4/2011 | xlsx | Brent Schellhase Prod. | Confidential | Spreadsheet re Fail_log_HR | F, H, R, 403 |
| DX-397 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | Public Document | Not Confidential | Website - Cataract surgery overview, available at https://www.waterlooeye.ca/procedures/cataract-surgery | A, F, H, 701/702, 403, Time |
| DX-398 | N/A Website | N/A Website | Last accessed 11/10/2022 | pdf | Public Document | Not Confidential | Website - Cataract surgery steps, available at https://www.waterlooeye.ca/procedures/cataract-surgery-steps | A, F, H, 701/702, 403, Time |
| DX-399 | | | | pdf | Public Document | Not Confidential | LenSx Technical Overview Presentation | A, F, H, 701/702, Demo, 1006, Time, Bates |
| DX-400 | N/A Priv. Log | N/A Priv. Log | 11/4/2021 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2021.11.04 J&J Vision's Preliminary Privilege Log | P, R, 403, MIL 3, Dupe |
| DX-401 | N/A Priv. Log | N/A Priv. Log | 12/2/2021 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2021.12.02 JJ Vision's Supplemental Preliminary Privilege Log | P, R, 403, MIL 3, Dupe |
| DX-402 | N/A Priv. Log | N/A Priv. Log | 1/14/2022 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2022.01.14 J&J Vision's Privilege Log | P, R, 403, MIL 3, Dupe |
| DX-403 | N/A Priv. Log | N/A Priv. Log | 5/18/2022 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2021.11.04 J&J Vision's Preliminary Privilege Log | P, R, 403, MIL 3 |
| DX-404 | N/A Priv. Log | N/A Priv. Log | 5/18/2022 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2021.12.02 JJ Vision's Supp. Prelim. Privilege Log | P, R, 403, MIL 3 |
| DX-405 | N/A Priv. Log | N/A Priv. Log | 5/18/2022 | pdf | JJSV Production | Highly Confidential - AEO | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2022.01.14 J&J Vision's Privilege Log | P, R, 403, MIL 3 |
| DX-406 | N/A Online Doc. | N/A Online Doc. | 10/22/2014 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2014 Earnings Call, Oct 22, 2014 (Public) | Time |
| DX-407 | N/A Online Doc. | N/A Online Doc. | 10/21/2015 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2015 Earnings Call, Oct 21, 2015 (Public) | Time |
| DX-408 | N/A Online Doc. | N/A Online Doc. | 10/19/2016 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2016 Earnings Call, Oct 19, 2016 (Public) | Time |
| DX-409 | N/A Online Doc. | N/A Online Doc. | 1/26/2011 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2010 Earnings Call, Jan 26, 2011 (Public) | Time |
| DX-410 | N/A Online Doc. | N/A Online Doc. | 1/25/2012 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2011 Earnings Call, Jan 25, 2012 (Public) | Time |
| DX-411 | N/A Online Doc. | N/A Online Doc. | 1/23/2013 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2012 Earnings Call, Jan 23, 2013 (Public) | Time |
| DX-412 | N/A Online Doc. | N/A Online Doc. | 1/22/2014 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2013 Earnings Call, Jan 22, 2014 (Public) | Time |
| DX-413 | N/A Online Doc. | N/A Online Doc. | 1/29/2015 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2014 Earnings Call, Jan 29, 2015 (Public) | Time |
| DX-414 | N/A Online Doc. | N/A Online Doc. | 1/28/2016 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q4 2015 Earnings Call, Jan 28, 2016 (Public) | Time |
| DX-415 | N/A Online Doc. | N/A Online Doc. | 4/18/2017 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q1 2017 Earnings Call, Apr 18, 2017 (Public) | Time |
| DX-416 | N/A Online Doc. | N/A Online Doc. | 4/17/2018 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q1 2018 Earnings Call, Apr 17, 2018 (Public) | Time |
| DX-417 | N/A Online Doc. | N/A Online Doc. | 4/14/2020 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q1 2020 Earnings Call, Apr 14, 2020 (Public) | Time |
| DX-418 | N/A Online Doc. | N/A Online Doc. | 7/18/2017 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q2 2017 Earnings Call, Jul 18, 2017 (Public) | Time |
| DX-419 | N/A Online Doc. | N/A Online Doc. | 7/17/2018 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q2 2018 Earnings Call, Jul 17, 2018 (Public) | Time |
| DX-420 | N/A Online Doc. | N/A Online Doc. | 7/16/2019 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q2 2019 Earnings Call, Jul 16, 2019 (Public) | Time |
| DX-421 | N/A Online Doc. | N/A Online Doc. | 7/16/2020 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q2 2020 Earnings Call, Jul 16, 2020 (Public) | Time |
| DX-422 | N/A Online Doc. | N/A Online Doc. | 7/21/2021 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q2 2021 Earnings Call, Jul 21, 2021 (Public) | Time |
| DX-423 | N/A Online Doc. | N/A Online Doc. | 10/18/2016 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2016 Earnings Call, Oct 18, 2016 (Public) | Time |
| DX-424 | N/A Online Doc. | N/A Online Doc. | 10/17/2017 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2017 Earnings Call, Oct 17, 2017 (Public) | Time |
| DX-425 | N/A Online Doc. | N/A Online Doc. | 10/16/2018 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2018 Earnings Call, Oct 16, 2018 (Public) | Time |
| DX-426 | N/A Online Doc. | N/A Online Doc. | 10/15/2019 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2019 Earnings Call, Oct 15, 2019 (Public) | Time |
| DX-427 | N/A Online Doc. | N/A Online Doc. | 10/13/2020 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2020 Earnings Call, Oct 13, 2020 (Public) | Time |
| DX-428 | N/A Online Doc. | N/A Online Doc. | 10/18/2022 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q3 2022 Earnings Call, Oct 18, 2022 (Public) | Time |
| DX-429 | N/A Online Doc. | N/A Online Doc. | 1/23/2018 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q4 2017 Earnings Call, Jan 23, 2018 (Public) | Time |
| DX-430 | N/A Online Doc. | N/A Online Doc. | 1/22/2020 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q4 2019 Earnings Call, Jan 22, 2020 (Public) | Time |
| DX-431 | N/A Online Doc. | N/A Online Doc. | 1/26/2021 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q4 2020 Earnings Call, Jan 26, 2021 (Public) | Time |
| DX-432 | N/A Online Doc. | N/A Online Doc. | 1/25/2022 | pdf | Public Document | Not Confidential | Johnson & Johnson, Q4 2021 Earnings Call, Jan 25, 2022 (Public) | Time |
| DX-433 | N/A Online Doc. | N/A Online Doc. | 4/18/2012 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q1 2012 Earnings Call, Apr 18, 2012 (Public) | Time |
| DX-434 | N/A Online Doc. | N/A Online Doc. | 4/17/2013 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q1 2013 Earnings Call, Apr 17, 2013 (Public) | Time |
| DX-435 | N/A Online Doc. | N/A Online Doc. | 4/16/2014 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q1 2014 Earnings Call, Apr 16, 2014 (Public) | Time |
| DX-436 | N/A Online Doc. | N/A Online Doc. | 4/22/2015 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q1 2015 Earnings Call, Apr 22, 2015 (Public) | Time |
| DX-437 | N/A Online Doc. | N/A Online Doc. | 4/20/2016 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q1 2016 Earnings Call, Apr 20, 2016 (Public) | Time |
| DX-438 | N/A Online Doc. | N/A Online Doc. | 7/21/2010 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2010 Earnings Call, Jul-21-2010 (Public) | Time |
| DX-439 | N/A Online Doc. | N/A Online Doc. | 7/20/2011 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2011 Earnings Call, Jul 20, 2011 (Public) | Time |
| DX-440 | N/A Online Doc. | N/A Online Doc. | 7/18/2012 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2012 Earnings Call, Jul 18, 2012 (Public) | Time |
| DX-441 | N/A Online Doc. | N/A Online Doc. | 7/17/2013 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2013 Earnings Call, Jul 17, 2013 (Public) | Time |
| DX-442 | N/A Online Doc. | N/A Online Doc. | 7/16/2014 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2014 Earnings Call, Jul 16, 2014 (Public) | Time |

Highly Confidential - Attorney Eyes Only

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Date | EXT | Source | Confidentiality | Description | J&J Objections |
|---|---|---|---|---|---|---|---|---|
| DX-443 | N/A Online Doc. | N/A Online Doc. | 7/22/2015 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2015 Earnings Call, Jul 22, 2015 (Public) | Time |
| DX-444 | N/A Online Doc. | N/A Online Doc. | 7/20/2016 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q2 2016 Earnings Call, Jul 20, 2016 (Public) | Time |
| DX-445 | N/A Online Doc. | N/A Online Doc. | 10/20/2010 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2010 Earnings Call, Oct 20, 2010 (Public) | Time |
| DX-446 | N/A Online Doc. | N/A Online Doc. | 10/17/2012 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2012 Earnings Call, Oct 17, 2012 (Public) | Time |
| DX-447 | N/A Online Doc. | N/A Online Doc. | 10/16/2013 | pdf | Public Document | Not Confidential | Abbott Laboratories, Q3 2013 Earnings Call, Oct 16, 2013 (Public) | Time |
| DX-448 | ALCON_LENSX212732 | ALCON_LENSX212745 | 5/6/2010 | pdf | Alcon Production | Highly Confidential - AEO | QNX Commercial Software License Agreement | |
| DX-449 | JJSV_00780119 | JJSV_00780191 | 2/00/2011 | pdf | JJSV Production | Confidential | Alcon LenSx Laser System Operator's Manual - February 2011 | |
| DX-450 | JJSV_00603502 | JJSV_00603575 | 1/00/2011 | pdf | JJSV Production | Confidential | Alcon LenSx Operator's Manual - January 2011 | |
| DX-451 | JJSV_00780498 | JJSV_00780570 | 2/00/2011 | pdf | JJSV Production | Confidential | Alcon LenSx Operator's Manual - February 2011 | |
| DX-452 | JJSV_00780571 | JJSV_00780571 | 11/29/2011 | doc | JJSV Production | Confidential | Native - "Visit to ▇▇▇▇▇▇▇" Summary, dated November 29, 2011 | R, 403 |
| DX-453 | JJSV_00713136 | JJSV_00713136 | 10/24/2017 | pptx | JJSV Production | Confidential | Presentation - 2018 Surgical Business Plan Review | |
| DX-454 | JJSV_00691841 | JJSV_00691841 | 7/19/2017 | pdf | JJSV Production | Confidential | Surgical Marketing Guidance Document 2018 Final.pdf | |
| DX-455 | JJSV_00707087 | JJSV_00707087 | 9/23/2020 | pptx | JJSV Production | Confidential | Presentation- Acqusition Dashboard | |
| DX-456 | JJSV_00707191 | JJSV_00707200 | 3/6/2020 | pdf | JJSV Production | Confidential | AMO Update March 2020-Finalv1.pdf | |
| DX-457 | JJSV_00707202 | JJSV_00707202 | 9/9/2020 | pptx | JJSV Production | Confidential | AMO Update Sep 2020-DRAFT.pptx | |
| DX-458 | JJSV_00710308 | JJSV_00710339 | 9/00/2018 | pdf | JJSV Production | Confidential | Presentation - Business Development & Strategy: Surgical Vision Overview | |
| DX-459 | JJSV_00713145 | JJSV_00713145 | 10/24/2017 | pptx | JJSV Production | Confidential | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx | |
| DX-460 | | | | | | | Reserved | |
| DX-461 | JJSV_00732019 | JJSV_00732019 | 10/24/2017 | pptx | JJSV Production | Confidential | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx | |
| DX-462 | JJSV_00847411 | JJSV_00847413 | 10/27/2017 | pdf | JJSV Production | Confidential | Email - Market Scope Reports | |
| DX-463 | JJSV_00951274 | JJSV_00951276 | 1/2/2020 | pdf | JJSV Production | Confidential | Email re Input needed for NSM presentation | |
| DX-464 | JJSV_00989494 | JJSV_00989494 | 10/13/2020 | pptx | JJSV Production | Confidential | Presentation - 2021 BP Template JJSV US-Revised Capital Equipement.pptx | |
| DX-465 | N/A Interrogatory Resp. | N/A Interrogatory Resp. | 3/3/3021 | pdf | Interrogatory Response | Not Confidential | 2021.03.03 Alcon First Supplemental Objections and Responses to First Set of Interrogatories (2, 5-7, 17) | H, R, 403 |
| DX-466 | ALCON_LENSX3848365 | ALCON_LENSX3848497 | 4/1/2022 | pdf | | Highly Confidential - AEO | Alcon LenSx Operator's Manual, April 1, 2022 | A, F, 403, Time |
| DX-467 | ALCON_LENSX2601948 | ALCON_LENSX2602082 | 3/23/2020 | pdf | Alcon Production | Highly Confidential - AEO | Alcon LenSx Operator's Manual, March 23, 2020 | |
| DX-468 | N/A Website | N/A Website | 11/00/2019 | pdf | Julie Davis Rebuttal Rpt. | Not Confidential | Website - Medical Device Tax, available at https://taxfoundation.org/medical-device-tax-repeal/ | A, F, H, 701/702, 403 |
| DX-469 | N/A Website | N/A Website | Last accessed 11/16/2022 | pdf | Julie Davis Opening Rpt. | Not Confidential | Website: Pay Schedule and Methods: What are my Options? (found at https://www.adp.com/spark/articles/2019/03/pay-schedule-and-methods-what-are-my-options.aspx) | A, F, H, 701/702, 403 |
| DX-470 | JJSV_01080643 | JJSV_01080707 | 2/23/1999 | pdf | JJSV Production | Confidential | Document - Intralase board of directors meeting | |
| DX-471 | JJSV_01081197 | JJSV_01081260 | 8/4/1998 | pdf | JJSV Production | Confidential | Document - Intralase board of directors meeting | |
| DX-472 | ALCON_LENSX000296 | ALCON_LENSX000296 | 5/5/2020 | pptx | Alcon Production | Highly Confidential | Current LenSx Delivery System (June 2016).pptx | F, Demo |
| DX-473 | JJSV_01119537 | JJSV_01119537 | 9/1/2020 | pdf | JJSV Production | Confidential | Document - JJSV-AMO Femto Transfer of Copyright | 106 (replace with counterpart signed version at JJSV_00020808) |
| DX-474 | JJSV_00988279 | JJSV_00988279 | 4/28/2020 | xlsx | JJSV Production | Confidential | 200107_Quarterly EFDC Pull_Total Cataract Q4 19.xlsx | |
| DX-475 | N/A Depo Ex. | N/A Depo Ex. | Last Accessed 3/3/2022 | pdf | Watanabe Deposition Ex. 14 | Not Confidential | LinkedIn of Hadi Srass | A, F, H, R, 403 |
| DX-476 | JJSV_00576035 | JJSV_00576035 | 5/29/2012 | xls | JJSV Production | Highly Confidential - AEO | Spreadsheet - Copy of LCS Comparison 05 18 2012.xls | R, 403 |
| DX-477 | JJSV 00265965 | JJSV 00265965 | Last Accessed 2/15/2022 | pdf | Simoneau Deposition Ex. 8 | Highly Confidential - AEO | Presentation - R&D Q411 All Hands - 10-27-11.pdf | |
| DX-478 | JJSV_00020808 | JJSV_00020808 | 9/1/2020 | pdf | JJSV Production | Confidential | Document - JJSV-AMO Femto Transfer of Copyright | |

Highly Confidential - Attorney Eyes Only

# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
and AMO SALES AND SERVICE,
INC.,

      Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

C.A. No. 20-842 (CFC)

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

**Exhibit 11**

**EXHIBIT LIST OBJECTION KEY**

## Exhibit List Objection Key

| Objection | Code |
|---|---|
| Authenticity (Fed. R. Evid. 901/902) | A |
| Best Evidence (Fed. R. Evid. 1002/1003) | 1002 |
| Completeness (Fed. R. Evid. 106) | 106 |
| Duplicative | Dupe |
| Foundation (Fed. R. Evid. 602) | F |
| Hearsay (Fed. R. Evid. 801/802) | H |
| Improper Demonstrative Evidence | Demo |
| Improper Opinion (Fed. R. Evid. 701/702) | 701/702 |
| Improper Summary (Fed. R. Evid. 1006) | 1006 |
| Improper Translation | T |
| Incorrect or Missing Bates Range | Bates |
| Poor Quality, Illegible, or Unclear | Q |
| Privilege (Fed. R. Evid. 501/502) | P |
| Relevance (Fed. R. Evid. 401/402) | R |
| Settlement Communications (Fed. R. Evid. 408) | 408 |
| Subject to *In Limine* Issue or Agreement | MIL |
| Unfairly Prejudicial / Minimal Probative Value (Fed. R. Evid. 403) | 403 |
| Untimely Disclosed / Late Produced | Time |
| Wrong Document / Improper or Incorrect Description | ID |

# EXHIBIT 12A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim Defendants. | |

**EXHIBIT 12A**

**J&J'S WITNESS LIST**

i

**J&J'S WITNESS LIST**

Pursuant to Federal Rule of Civil Procedure 26(a)(3) and District of Delaware Local Rule 16.3, Plaintiffs and Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Services, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J"), hereby identify the following witnesses that J&J expects to present at trial, either live or through sworn deposition testimony.

J&J's designation of an individual as "may call live" is neither an acknowledgment that the individual falls within the subpoena power of the Court, nor a representation that J&J has the right or ability to control the individual's attendance.

J&J reserves the right to amend, revise, or supplement its list as further developments necessitate, including but not limited to the Court's rulings on pending motions, the receipt of Defendants' witness list, the availability of witnesses, and the evidence and testimony presented at trial.  J&J Vison reserves the right to either call or object to any of the witnesses listed by Defendants.

| Witness Name | Will Call Live | May Call Live | May Call by Depo |
|---|---|---|---|
| Nick Baer | X | | |
| Karen Becker | X | | |
| Christian Cuzick | X | | |
| Kathryn Hatch | X | | |
| Biren Mehta | X | | |

1

| Witness Name | Will Call Live | May Call Live | May Call by Depo |
|---|---|---|---|
| Doug Schmidt | X | | |
| Michael Simoneau | X | | |
| Laura Stamm | X | | |
| John Alder | | X | X |
| Leonard Borrmann | | X | X |
| Michael Brownell | | X | X |
| Hong Fu | | X | |
| Matthew Kraai | | X | |
| Andy Pang | | X | |
| Brent Schellhase | | X | X |
| Georg Schuele | | X | X |
| Robert Golden | | X | X |
| Thomas Hudnall | | X | X |
| Lynda Jeffcoat | | X | X |
| Seba Leoni | | X | X |
| Andrew MacDonald | | X | X |
| Kim Regis | | X | X |
| Alireza Malek Tabrizi | | X | X |
| Dan Teodorescu | | X | X |
| Keith Watanabe | | X | X |
| Gautam Chaudhary | | | X |
| Peter Goldstein | | | X |
| Imre Hegedus | | | X |
| Adam Juhasz | | | X |
| Ronald Kurtz | | | X |
| Carlos Suarez | | | X |
| John Suzuki | | | X |
| Kostadin Vardin | | | X |

2

# EXHIBIT 12B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

        Plaintiffs,

        v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim-Plaintiffs,

        v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim-
        Defendants.

C.A. No. 20-842-CFC

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' WITNESS LIST**

Defendants Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC (collectively, "Alcon") hereby provide Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc. (collectively, "J&J") their preliminary objections to J&J's initial witness list.

Alcon objects to J&J's witness list in that it fails to give any meaningful disclosure or notice to Alcon as to the witnesses J&J intends to call at trial.

Alcon objects to J&J's use of any deposition designation testimony for witnesses where J&J has not demonstrated unavailability pursuant to Fed. R. Evid. 804. Alcon further objects to J&J's use of any deposition designation testimony for witnesses who testify live.

Alcon objects to any attempt by J&J to call witnesses live in contravention of Fed. R. Civ. P. 45(c)(1).

Alcon objects to any testimony of J&J's expert witnesses that is outside the scope of their respective expert reports or which is subject to any of Alcon's *Daubert* motions or motions *in limine*.

Alcon reserves the right to supplement, modify or withdraw any of the objections herein.

2

Respectfully,
OF COUNSEL:
Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
Dated: December 8, 2022

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russel (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

# <u>CERTIFICATE OF SERVICE</u>

I, John W. Shaw, hereby certify that on December 8, 2022, this document was

served on the persons listed below in the manner indicated:

## <u>BY EMAIL</u>

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com


S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and Counterclaim-Defendants*

# EXHIBIT 13A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | |
| Plaintiffs, | C.A. No. 20-842-CFC |
| v. | ▇▇▇▇▇▇▇ |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | |
| Defendants. | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., | |
| Counterclaim-Defendants. | |

## DEFENDANTS' FIRST AMENDED WITNESS LIST

Pursuant to D. Del. LR 16.3(c) and the Parties' Stipulation (*see* Oct. 21, 2022 Email from C. Homer to J. Lomeo), Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC, ("Defendants") identify the following witnesses whom Alcon intends to or may call live or by deposition at trial. Defendants reserve the right to call or to introduce one or more of the witnesses listed below, and reserve the right to amend and/or supplement this list.  Defendants further reserve the right to call any witness identified on AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc.'s, ("Plaintiffs") witness list and/or called by Plaintiffs at trial.

## I.    EXPERT WITNESSES

Below are the expert witnesses Defendants intend to call at trial live.

(a)    Julie Davis

(b)    David W. Feigal, Jr., M.D., M.P.H

(c)    Richard Tipperman, M.D.

(d)    Stephen B. Wicker, Ph.D.

## II.    FACT WITNESSES

Below are the fact witnesses that Defendants intend to call at trial live or by deposition (as indicated). Defendants reserve the right to call the witnesses listed below live or via deposition, and further reserve the right to amend and/or supplement this list.

- John Alder (Deposition)

2

- Leonard Borrmann, Pharm. D. (Deposition)

- Michael Brownell (Deposition)

- Christian Cuzick (Deposition)

- Gautam Chaudhary, Ph.D. (Deposition)

- Hong Fu, Ph.D. (Deposition)

- Thomas Hudnall

- Adam Juhasz (Deposition)

- Matthew Kraai (Deposition)

- Ronald Kurtz, M.D. (Deposition)

- Sebastiano Leoni

- Andrew MacDonald

- Biren Mehta

- Andrew Pang

- Brent Schellhase (Deposition)

- Carlos Suarez (Deposition)

- John Suzuki (Deposition)

- Dan Teodorescu

- Keith Watanabe

Defendants reserve the right to call live or by deposition any witness to provide foundational testimony should Plaintiffs contest the authenticity or admissibility of any material proffered at trial.

Respectfully,

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 15, 2022

*/s/ John W. Shaw*

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 15, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 13B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-842 (CFC) (JLH) |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | ) ) ) ) | |
| Defendants. | ) | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
FIRST AMENDED WITNESS LIST**

Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, and

AMO Sales and Service, Inc. (collectively, "J&J") hereby provide to Defendants

Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC (collectively, "Alcon") their objections to Alcon's First Amended Witness List dated December 15, 2022.

J&J objects to any use of deposition designation testimony of any witness where Alcon has not demonstrated that these individuals are unavailable to testify live, particularly, but not exclusively, current and former employees of Alcon and witnesses with whom Alcon has a contractual or consulting relationship.

J&J objects to any attempt by Alcon to call J&J's employees as live trial witnesses, as counter to Federal Rule of Civil Procedure 45(c)(1).

J&J objects to Alcon calling by deposition any witness who testifies live.

J&J reserves the right to object on any ground of improper or irrelevant testimony advanced at trial by any of Alcon's witnesses (including on cross-examination).

J&J reserves the right to object to any purported rebuttal witnesses called by Alcon on any grounds.

J&J incorporates by reference its forthcoming objections and counter-designations to Alcon's deposition designations as well as any evidentiary issues to be raised at the pre-trial conference.

J&J reserves the right to supplement, modify or withdraw any of the objections herein.

2

## I.   SPECIFIC OBJECTIONS TO ALCON'S EXPERT WITNESSES

In addition to the objections above, J&J specifically objects to the expert witnesses Alcon expects to call as provided below:

| Witness | J&J's Objections |
|---|---|
| Julie Davis | J&J objects to any testimony from Ms. Davis outside the scope of the specific opinions set forth in her expert reports dated April 29, 2022, May 27, 2022,[1] and June 23, 2022.<br><br>J&J also objects to any testimony from Ms. Davis insofar as it is subject to J&J's *Daubert* Motions Nos. 2, 3, or 4, should any be granted by the Court.<br><br>J&J also objects to any testimony from Ms. Davis insofar as it is subject to J&J's Motions *In Limine* Nos. 1, 2, 3, or 4, should any be granted by the Court. |
| David W. Feigal, Jr., M.D., M.P.H. | J&J objects to any testimony from Dr. Feigal outside the scope of the specific opinions set forth in his expert report dated May 27, 2022.[2] |
| Richard Tipperman, M.D. | J&J objects to any testimony from Dr. Tipperman outside the scope of the specific opinions set forth in his expert report dated May 27, 2022.<br><br>J&J also objects to any testimony from Dr. Tipperman insofar as it is subject to J&J's Motions *In Limine* Nos. 1 or 2, should either be granted by the Court. |

---

[1]   Errata submitted on June 10, 2022.

[2]   Corrected report submitted on June 27, 2022.

| Witness | J&J's Objections |
|---------|------------------|
| Stephen B. Wicker, Ph.D. | J&J objects to any testimony from Dr. Wicker outside the scope of the specific opinions set forth in his expert reports dated April 29, 2022, May 27, 2022, and June 23, 2022.<br><br>J&J also objects to any testimony from Dr. Wicker insofar as it is subject to J&J's *Daubert* Motions Nos. 1 or 4, should either be granted by the Court.<br><br>J&J also objects to any testimony from Dr. Wicker insofar as it is subject to J&J's Motions *In Limine* Nos. 1 or 3, should either be granted by the Court. |

## II.    SPECIFIC OBJECTIONS TO ALCON'S FACT WITNESSES

In addition to the objections above, J&J specifically objects to the fact witnesses Alcon expects to call as provided below:

| Witness | J&J's Objections |
|---------|------------------|
| Christian Cuzick (Deposition) | J&J objects to Alcon using deposition testimony of this witness because J&J intends to call him live. |
| Gautam Chaudhary, Ph.D. (Deposition) | J&J objects to Alcon using deposition testimony of this witness, insofar as Alcon has not established unavailability. *See* Fed. R. Evid. 804. |
| Adam Juhasz (Deposition) | J&J objects to Alcon using deposition testimony of this witness, insofar as Alcon has not established unavailability. *See* Fed. R. Evid. 804. |
| Ronald Kurtz, M.D. (Deposition) | J&J objects to Alcon using deposition testimony of this witness, insofar as Alcon has not established unavailability. *See* Fed. R. Evid. 804. |

4

| Witness | J&J's Objections |
|---|---|
| Biren Mehta | J&J objects to Alcon using live testimony of Mr. Mehta, as it does not comply with Fed. R. Civ. P. 45(c). |
| Andrew Pang | J&J objects to Alcon using live testimony of Mr. Pang, as it does not comply with Fed. R. Civ. P. 45(c). |
| Carlos Suarez (Deposition) | J&J objects to Alcon using deposition testimony of this witness, insofar as Alcon has not established unavailability.  *See* Fed. R. Evid. 804. |
| John Suzuki (Deposition) | J&J objects to Alcon using deposition testimony of this witness, insofar as Alcon has not established unavailability.  *See* Fed. R. Evid. 804. |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

6

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 19, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire               *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire             *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                        */s/ Anthony D. Raucci*
                                        _____
                                        Anthony D. Raucci (#5948)

2

# EXHIBIT 14A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

      Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO
EXCLUDE EVIDENCE AND ARGUMENT REGARDING
<u>ALCON RESEARCH'S CORPORATE KNOWLEDGE</u>**

Defendant Alcon Research, LLC *is* LenSx Lasers, Inc. ("LenSx"). As a result, Alcon Research has LenSx's corporate knowledge and is responsible for the actions of its agents. Alcon should be precluded from arguing or suggesting: (i) that Alcon Research is a different entity from LenSx, or (ii) that Alcon Research lacks knowledge held by LenSx employees about matters material to their duties.

Following its 2010 acquisition by Alcon, LenSx changed its name to Alcon LenSx, Inc. (Ex. 1)—an originally named defendant. D.I. 16. After the case was underway, and J&J had exposed Alcon's vast acts of copyright infringement, Alcon "merged" Alcon LenSx "with and into" Alcon Research. D.I. 136; Ex. 2. Alcon LenSx was then removed from the case caption, as it no longer existed. D.I. 136. But neither LenSx's name change nor subsequent merger has any impact on the substantive issues in this case. What was originally LenSx is today part of Alcon Research. Because Alcon Research "continu[es] as the surviving corporation," it "assume[s] all of the liabilities of LenSx," Ex. 3, and its corporate knowledge.

Despite this corporate history, Alcon has repeatedly tried to draw misleading distinctions between LenSx and Alcon Research. For example, in preliminary injunction proceedings, Alcon asserted it "had no reason to believe the LenSx code infringed" because "LenSx Lasers warranted to Alcon[1] that it owned the IP and did

---

[1] "Alcon" was defined to include all Defendants, including Alcon Research and Alcon LenSx. D.I. 79 at 1.

1

not infringe."  D.I. 79 at 16; *see also* D.I. 132, Ex. B at 48:14-18 ("Alcon bought

LenSx in 2010.  They got representations and warranties that the code that was in

the system they bought was owned by the people who sold it to us.  Okay.  There

was no disclosure, no disclaimer, no reason to think about this.").  But Alcon

Research is in no position to feign ignorance or blame "people who sold it to us,"

because it is the successor to LenSx, which developed the copied source code.

This Court should prevent Alcon from confusing the jury about its

responsibility for LenSx's actions.  ***First***, Alcon should be precluded from

suggesting that Alcon Research is different from LenSx or lacks its knowledge.

LenSx is part of Alcon Research, so its corporate knowledge—including the origin

of the copied materials and the truth or falsity of its representations and warranties—

resides with Alcon Research.  8 Del. C. § 259 ("When any merger or consolidation

shall have become effective … [the] new corporation [shall be] subject to all the

restrictions, disabilities and duties of each of such corporations so merged or

consolidated"); *see also Victor v. Home Sav. of Am.*, 645 F. Supp. 1486, 1499 (E.D.

Mo. 1986) ("In a merger transaction, the surviving corporation is liable for the debts

and liabilities of the constituent corporation.  This general rule applies as well to the

transfer of knowledge between corporations.") (citation omitted); *David B. Lilly Co.*

*v. Fisher*, 800 F. Supp. 1203, 1210 (D. Del. 1992) ("the surviving corporation would

be charged with [the] knowledge" of constituent corporation's officer).

2

***Second***, Alcon should be precluded from suggesting that Alcon Research lacks knowledge held by LenSx's employees about the origin of LenSx source code and related documentation. "Corporations act through their employees." *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1369 (Fed. Cir. 2013). As a result, "notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal." Restatement (Third) of Agency § 5.03; *see also Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923) ("The general rule is that a principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business."). Writing source code and drafting FDA documentation were material to the duties of LenSx's employees. *See, e.g.*, Ex. 4 at 55:4-11; Ex. 5 at 72:8-73:10. Thus, the employees' knowledge about the source code and FDA documentation is imputed to Alcon Research.

Corporate reorganization does not change a corporation's legal responsibility or knowledge, and Alcon Research cannot absolve itself of responsibility by dropping "LenSx" from its name. It is prejudicial and misleading to suggest otherwise. Fed. R. Evid. 403. The Court should preclude Alcon from suggesting that Alcon Research is somehow not responsible for LenSx's actions, or disavowing the knowledge of LenSx's employees about the copied source code and FDA documentation.

3

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

4

Aaron Macris
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 1, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                             *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                        *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                      *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                         *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary E. Miller, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

                              */s/ Anthony D. Raucci*

                              _____
                              Anthony D. Raucci (#5948)

2

# EXHIBIT 14B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,<br><br>Defendants. | C.A. No. 20-842-CFC-JLH<br><br> |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC.,<br><br>Counterclaim-Defendants. |  |

**ALCON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALCON RESEARCH'S CORPORATE KNOWLEDGE**

i

OF COUNSEL:

Jeanne M. Heffernan

James John Lomeo

Ryan James Melde

KIRKLAND & ELLIS LLP

401 Congress Avenue

Austin, TX 78701

(512) 678-9100

Gregg F. LoCascio

Sean M. McEldowney

Noah S. Frank

Mary Elizabeth Miller

Elizabeth Hedges

Kelly Tripathi

Nicholas Teleky

KIRKLAND & ELLIS LLP

1301 Pennsylvania Avenue, N.W.

Washington, DC 20004

(202) 389-5000

Joshua L. Simmons

KIRKLAND & ELLIS LLP

601 Lexington Ave

New York, NY 10022

(212) 390-4573

Caroline Lourgos

KIRKLAND & ELLIS LLP

300 North LaSalle

Chicago, IL 60654

(312) 862-2000

Kristen P.L. Reichenbach

KIRKLAND & ELLIS LLP

555 California Street

San Francisco, CA 94104

(415) 439-1400

John W. Shaw (No. 3362)

Karen E. Keller (No. 4489)

Andrew E. Russell (No. 5382)

Nathan R. Hoeschen (No. 6232)

SHAW KELLER LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0700

jshaw@shawkeller.com

kkeller@shawkeller.com

arussell@shawkeller.com

nhoeschen@shawkeller.com

*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

J&J's motion is premised on an incorrect assumption of what Alcon intends to argue at trial concerning Alcon Research (the only defendant targeted by the motion). Contrary to J&J's assertions, Alcon has never argued, and will not argue, that Alcon Research can "absolve itself of responsibility by dropping 'LenSx' from its name." Br. 3. Alcon also has not argued, and will not argue, that, following the merger: (1) Alcon Research is different from LenSx Lasers, Inc. or Alcon LenSx, Inc. (collectively, for this response, "LenSx"); or (2) Alcon Research lacks knowledge legally imputable to LenSx. That should moot J&J's motion. However, to the extent J&J's motion seeks to preclude Alcon from offering evidence about LenSx's history, its acquisition, the knowledge of various employees, and the imputability of that knowledge to any defendant, Alcon opposes it.

**Alcon Research/LenSx**: Alcon has not argued, and will not argue, that Alcon Research, following the merger, is a different entity from LenSx. However, any *in limine* order should not preclude evidence or argument on the corporate history of these entities. A critical issue for the jury to decide in this case is whether any of the defendants in this case had knowledge about the alleged copyright infringement. As J&J recognizes, corporations act through their employees, and what a particular employee knew and what entity he or she worked for at the time is relevant. Evidence related to the corporate history of the Alcon entities is therefore relevant because it: (1) explains the different roles of the defendants; (2) explains the

1

acquisition and subsequent merger of LenSx; and (3) explains the knowledge of each defendant.  In fact, J&J's motion does not contest the relevancy of this information, as J&J moves only under Fed. R. Evid. 403.  *See* Br. 3.  Thus, any *in limine* order should not preclude evidence or argument on the defendants' corporate history.

**Knowledge**:  Alcon will not argue that Alcon Research lacks knowledge that is legally imputable to LenSx from LenSx employees.  However, what specific knowledge any LenSx employee had that can be imputed to LenSx needs to be decided by the jury.  *Turner Constr. Co., Inc. v. Brian Trematore Plumbing & Heating, Inc.*, 2009 WL 3334823, at *4 (D.N.J. Oct. 13, 2009) ("When an employee is not a director or high-level officer, the decision whether to impute that employee's knowledge and actions to the corporation is generally a question of fact."); *see Varian Med. Sys., Inc. v. Elekta AB*, 2016 WL 3748772, at *6 n.14 (D. Del. July 12, 2016) (in patent case, noting that question of corporate knowledge generally "require[s] more than just an overlap of employees" and "require[s] sufficient ***facts to infer*** that the overlapping employee in question had reason to know of the patent ***and*** that this knowledge would have come into play ***at the company to which knowledge would be imputed***"), *report and recommendation adopted*, 2016 WL 9307500 (D. Del. Dec. 22, 2016).  Critically, J&J did not move for summary judgment on this issue.  Therefore, and as noted above, evidence relating to which employees knew what and when, and by which entity they were employed at the

2

time, is relevant to issues the jury will be asked to decide, and any *in limine* order

should not preclude such evidence or argument.

Respectfully,

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
Dated: December 15, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 15, 2022, this document was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 14C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

        Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)



**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE*
NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
ALCON RESEARCH'S CORPORATE KNOWLEDGE**

The Court should grant the unopposed portion of J&J's motion and preclude Alcon from arguing or suggesting that: (1) Alcon Research is different from LenSx Lasers, Inc. or Alcon LenSx, Inc. (collectively, "LenSx"); or (2) Alcon Research lacks LenSx's knowledge.  Mot. 1; Opp. 1.  What remains is only whether Alcon should be permitted to argue that LenSx employees' knowledge should not be imputed to Alcon.  Mot. 3.  The Court should preclude that argument.

Alcon argues that imputability of knowledge is "generally a question of fact." Opp. 2.  But an employee's knowledge is indisputably imputable to LenSx (and thus Alcon) when the knowledge "is material to the agent's duties."  Restatement (Third) of Agency § 5.03.  J&J's motion established materiality (at 3) and Alcon's response does not contest it (nor point to any facts that would enable it to).  Indeed, Alcon successfully invoked common interest privilege because "Goldstein and Vardin's primary duties involved writing source code for the LenSx system" (D.I. 170 at 4)[1]— thus conceding that their work on source code "is material to [their] duties."  The Court should thus preclude Alcon from arguing that it lacks knowledge of LenSx's computer programmers, including Goldstein and Vardin, or those who drafted LenSx's FDA submissions, technical documentation, and operator's manuals.

---

[1] Common interest privilege applies to "matters within the scope of the employees' corporate duties."  *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).  Alcon prevailed on a discovery motion with this argument, D.I. 173 ¶ 3, so judicial estoppel prevents it from taking a contrary position.  *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Michael E. Bern
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

/s/ Anthony D. Raucci

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

2

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                          *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                   *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)

# EXHIBIT 15A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

        Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EVIDENCE AND ARGUMENT ABOUT THE EFFECT OF A
<u>JURY VERDICT ON PATIENT OR PHYSICIAN CHOICE</u>**

In opposing a preliminary injunction, Alcon argued that "[p]atients and physicians benefit from having multiple options" and that if J&J prevailed, it "would deprive patients and physicians of access to the leading FLACS system." D.I. 79 at 19. The same arguments at trial, while irrelevant to issues for the jury, would be highly prejudicial and improperly appeal to the jury's sympathies. Courts routinely exclude such market impact arguments for just that reason. This Court should similarly preclude Alcon from offering evidence or argument to the jury that a verdict for J&J would affect patient or physician choice.

The Court may exclude evidence where the danger of unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Evolved Wireless, LLC v. Apple Inc.*, No. 15-542, 2019 WL 1178517, at *2 (D. Del. Mar. 13, 2019) (citation omitted).

Any evidence or argument that a verdict for J&J would affect patient or physician choice is irrelevant to the elements of copyright infringement, and would readily inflame the jury's emotions about health care access. The danger of unfair prejudice substantially outweighs any conceivable relevance. That is why courts regularly preclude parties from presenting evidence about the market consequences of a verdict, particularly when it comes to health care. *See, e.g., Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, No. 17-cv-00275, 2020 WL 954938, at

1

*1 (D. Del. Feb. 27, 2020) ("it would be inappropriate to put before the jury evidence or argument about the potential impact of a verdict in favor of [plaintiff] … as these issues are not for the jury to decide, are not relevant to any issue the jury will decide, and create an unacceptable risk of unfair prejudice"); *Teva Pharm. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029, 2022 WL 10489059, at *6 (D. Mass. Oct. 17, 2022) (evidence about verdict's impact on patients "has minimal, if any, relevance to the issues to be decided by the jury and . . . whatever relevance it has is substantially outweighed by the danger of unfair prejudice."); *In re Yasmin & Yaz (Drospirenone) Mktg.*, No. 09-md-2100, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) (excluding argument that verdict for plaintiff could eliminate a prescription choice because it "personalizes the issue by suggesting that members of the jury would not be able to obtain medication").

For these reasons, the Court should preclude Alcon from offering evidence or presenting argument to suggest that a verdict for J&J would impact the market and/or diminish patient or physician choice.

2

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

3

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 1, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                                 *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                            *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                          *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                             *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary E. Miller, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

                          */s/ Anthony D. Raucci*

                          _____
                          Anthony D. Raucci (#5948)

# EXHIBIT 15B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

        Plaintiffs,

        v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim-Plaintiffs,

        v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim-
        Defendants.

C.A. No. 20-842-CFC-JLH



**ALCON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE AND ARGUMENT
REGARDING THE EFFECT OF A JURY VERDICT ON PATIENT OR
<u>PHYSICIAN CHOICE</u>**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

Alcon does not oppose an *in limine* order that precludes evidence and argument suggesting that a verdict for J&J would diminish patient or physician choice. However, Alcon opposes J&J's request to the extent it seeks to: (1) preclude Alcon from offering such evidence and argument to the Court regarding equitable issues (e.g., permanent injunction); and (2) preclude Alcon from offering to the jury argument and evidence regarding patient and physician preference.

***First***, in deciding whether to grant an injunction, courts in the Third Circuit consider the public interest, among other factors. *Ramsay v. Nat'l Bd. of Med. Exam'rs.*, 968 F.3d 251, 256 (3d Cir. 2020); *see also* P.I. Tr. at 344:17–25. In opposing any injunction, Alcon should be permitted to argue to the Court, as it did during J&J's preliminary injunction, that an injunction would harm the public interest insofar as it would deprive patients and physicians of access to the leading FLACS system. D.I. 79 at 19–20.

***Second***, the decisions patients and physicians make regarding cataract surgery (and the reasoning behind those decisions) are central to issues, such as lost profits, that will be presented to the jury. For example, damages experts for both parties opine on whether, and to what degree, patients' and physicians' preferences influence purchasing decisions and, as a result, lost profits. *E.g.*, Stamm Op. Rpt. ¶¶138, 139; Davis Rbt. Rpt. at 33. Simply put, evidence and argument related to patient and physician preferences are relevant to issues the jury will be asked to

1

decide in this case.  Therefore, Alcon should not be precluded from offering such evidence and argument to the jury.

Alcon respectfully requests that any *in limine* order not preclude Alcon from: (1) offering evidence and argument to the Court that an injunction would diminish patient or physician choice; and (2) offering argument and evidence to the jury regarding patient and physician preference.

Respectfully,

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 15, 2022

/s/ John W. Shaw

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

3

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 15, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com


S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and*
*Counterclaim-Defendants*

# EXHIBIT 15C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

     Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

     Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

     Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

     Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE*
NO. 2 TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT THE
EFFECT OF A JURY VERDICT ON PATIENT OR PHYSICIAN CHOICE**

The Court should grant the unopposed portion of J&J's motion and preclude Alcon from arguing or suggesting that a verdict for J&J would diminish patient or physician choice.  Mot. 1; Opp. 1.

Alcon requests two carve-outs, but neither is relevant to the motion.

First, Alcon argues that it should be able to argue for an impact on patient or physician access "[i]n opposing any injunction." Opp. 1.  But the jury is not deciding whether to impose an injunction.  Whether such arguments are material to "opposing any injunction" is a question for another day.

Second, Alcon seeks to confirm that it may discuss "patient and physician preferences" when presenting argument to the jury about the extent of lost profits. Opp. 1.  While such preferences are irrelevant in a but-for world where LenSx is not on the market, any such evidence, if relevant and admissible, should not be presented in such a way as to inflame the jury by improperly appealing to its emotions about health care access, or suggest that a verdict for J&J will impact patient or physician choice or diminish access to laser surgery.  *Pac. Biosci. of Cal., v. Oxford Nanopore Techs.*, 2020 WL 954938, at *1 (D. Del. Feb. 27, 2020).  Because J&J's motion seeks only to preclude Alcon from offering argument that a verdict for J&J would affect physician or patient choice, diminish access to Alcon's products, or otherwise create market consequences, there is no need for a special carve-out from the requested *in limine* order for the kind of evidence that Alcon proposes to introduce.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ *Anthony D. Raucci*

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Michael E. Bern
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

2

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                       *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                  *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                   *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                                                 *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                                                            *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                                             */s/ Anthony D. Raucci*

                                                             _____
                                                             Anthony D. Raucci (#5948)


2

# EXHIBIT 16A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

      Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO
PRECLUDE EVIDENCE AND ARGUMENT REGARDING
THE CONTENTS OF PRIVILEGED COMMUNICATIONS**

J&J asserted privilege over its counsel's 2014 LenSx investigation and 2020 decision to sue. Magistrate Judge Hall upheld the privilege, including on a 2014 report prepared for counsel. Ex. 6 at 50:2-6. Notwithstanding Judge Hall's ruling—which Alcon did not appeal—Alcon has made clear that it seeks to draw negative and speculative inferences from the fact of J&J's privileged communications. A client asserting the privilege, however, "should not face a negative inference" as a result. *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990). Because such arguments undermine the attorney-client privilege and risk severely prejudicing J&J, this Court should exclude them.

There is no dispute about what J&J knew in 2014. D.I. 132, Ex. B at 323:4-6. J&J provided an 80-page interrogatory detailing the facts it had in 2014, Ex. 7 at 10:18-11:7, and the parties stipulated to J&J's knowledge. D.I. 409. Although the parties are free to reference *those* facts to the extent relevant, Alcon is not permitted to argue that the jury should draw negative inferences from J&J's assertion of privilege, nor speculate to the jury regarding the content of the privileged investigation or counsel's advice about filing suit.

Throughout this case, however, Alcon indicated it plans to do just that. For example, Alcon has repeatedly emphasized that J&J engaged in an "investigation involving ████████████████." D.I. 274 at 1; *see also* D.I. 340 ¶ 479; Ex. 8 at 10:5-6. Alcon has tried to draw inferences about the content of that privileged

1

investigation and the timing of J&J's enforcement decisions.  Ex. 6 at 24:8-20, 44:16-19; D.I. 340 ¶ 480.  Alcon's intentions are underscored by its proposed exhibit list, which includes ███████████████████████████████████ ███████ and seven privilege logs.  Ex. 9, DX 111, 116, 117, 326, 400-405. Arguments like these are particularly prejudicial, because they imply that the jury should make assumptions about *what* the privileged advice was, and *why* J&J has invoked the privilege.

To prevent that prejudice, this Court should, first, preclude Alcon from drawing any adverse inference from J&J's privileged investigation and the timing of its decision to sue.  To protect the function of the attorney-client privilege, "courts have declined to impose adverse inferences on invocation of [that] privilege." *Knorr-Bremse Sys. fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004); *see also Parker*, 900 F.2d at 775.  Such inferences are inappropriate because they "can distort the attorney-client relationship, in derogation of the foundations of that relationship." *Knorr-Bremse*, 383 F.3d at 1344.

Second, Alcon should be prohibited from asking questions at trial that could reasonably elicit invocation of the privilege.  Alcon is well aware of J&J's privilege claim.  D.I. 335 at 1.  Calling attention to it would improperly "serve only to imply that the jury should draw an adverse inference." *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-2768, 2016 WL 278054, at *2 (E.D. Pa. Jan. 22, 2016).

2

Third, Alcon should be precluded from discussing or eliciting testimony about

███████████████████████████████████████████████████

███████. The relevance of such questioning is substantially outweighed by unfair prejudice. Fed. R. Evid. 403. J&J fully disclosed the non-privileged facts it knew in 2014, D.I. 335, Ex. 10; D.I. 409, which Alcon can use at trial if relevant. The Magistrate Judge reviewed J&J's privileged documents *in camera* and confirmed that there is no other non-privileged information. Ex. 6 at 54:12-18. Alcon is already free to speak to the non-privileged facts J&J knew in 2014; the existence of privileged advice protected from disclosure is not relevant to its claims.

Furthermore, protecting the privilege "justif[ies] some sacrifice of availability of evidence relevant to the administration of justice." *Knorr-Bremse*, 383 F.3d at 1344. When a party claims privilege, there is a significant danger that the "inference that the jury will draw from learning that the [party] has consulted counsel and obtained advice" is that "the opinion received by the [party] was unfavorable." *Telcordia Techs., Inc. v. Lucent Techs., Inc.*, No. 04-875-GMS, 2007 WL 7076662, at *6 (D. Del. Apr. 27, 2007). Any discussion of the privileged 2014 investigation or report will inevitably (but unfairly) encourage the jury to draw a prohibited adverse inference. For these reasons, this Court should preclude Alcon from seeking to use J&J's invocation of attorney-client privilege against it at trial.

3

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

4

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 1, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                          *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Joshua L. Simmons, Esquire                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Jeanne M. Heffernan, Esquire                   *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Caroline Lourgos, Esquire                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary E. Miller, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                    */s/ Anthony D. Raucci*

                                    _____
                                    Anthony D. Raucci (#5948)

# EXHIBIT 16B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,<br><br>Defendants. | C.A. No. 20-842-CFC-JLH<br><br>███████████<br><br>███████████ |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC.,<br><br>Counterclaim-Defendants. | |

**ALCON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE AND ARGUMENT
REGARDING THE CONTENTS OF PRIVILEGED COMMUNICATIONS**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

As titled, J&J's motion purports to make a non-controversial request: to "preclude evidence and argument regarding the ***contents*** of privileged communications." But the last page of J&J's motion reveals its far-different desired goal: to preclude Alcon from even "discussing or eliciting testimony about" J&J's 2014–2015 investigation of LenSx in any way, including about non-privileged facts. Br. 3. While J&J might prefer the jury not to hear about its lengthy investigation (███████████████████████████) and decision not to sue Alcon despite having knowledge of all of the facts underlying its claims in 2014, those facts are not privileged and are the proper subject of examination at trial. Based on facts J&J already disclosed, Alcon intends to explore 1) the existence of the investigation, 2) the people involved, 3) the timing, 4) the facts uncovered, and 5) the fact of J&J's decision not to proceed with litigation at the time. J&J's motion should be denied because these facts are relevant to disputed issues and not privileged. Moreover, Alcon would be unfairly prejudiced if prevented from exploring these issues and responding to arguments J&J itself has put forth about the investigation.

***First***, the investigation is relevant to critical issues, such as whether the statute of limitations bars J&J's claims related to the FDA submissions and operator's manual, a question the Court held involves disputed factual issues. D.I. 490 at 14; *see Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 512 (3d Cir. 2006) (that "plaintiffs sought legal advice" relevant to when they knew of breach). The details J&J has

1

already disclosed about its investigation—███████████████████

████████████████—are also relevant to whether J&J could have mitigated

its alleged damages given what it knew.  The timing and personnel involved in the

investigation are also relevant to the value J&J placed on the code, which J&J now

contends is worth billions of dollars.  *See MGMTL v. Strategic Tech.*, 2022 WL

594897, at *3 (E.D. La. Feb. 28, 2022) ("value [defendant] placed on [plaintiff's

software]" was "relevant to … damages").

*Second*, attorney involvement does not render information privileged.[1]  *See*

*Knox Energy v. Gasco Drilling*, 2014 WL 4546049, at *3 (W.D. Va. Sept. 12, 2014)

(declining to exclude "subject matter of [defendant's] attorney communications"

(which was "not privileged"), "the date of communications [and] the individuals

involved").  Nor does discussing attorney involvement result in an impermissible

"negative inference."  *See id.* at *2-3 (rejecting argument that information about

attorney-client communications was "only relevant for … a negative inference

regarding the substance," and finding it "relevant to ascertaining [defendant's] state

of mind"); *Baxalta v. Bayer Healthcare*, 2021 WL 7441631, at *11 n.11 (D. Del.

Apr. 22, 2021) (rejecting argument that "citation to the privilege log … requires

---

[1]  J&J's own case, *King Drug Co. of Florence v. Cephalon*, 2016 WL 278054, at *2 (E.D. Pa. Jan. 22, 2016), recognizes "mere reference to the fact that a conversation between attorney and client occurred is not privileged."

2

drawing an adverse inference" and holding "number and timing of [withheld] communications" relevant to knowledge).[2]  Indeed, J&J concedes Alcon may refer to "the facts [J&J] had in 2014" and "J&J's knowledge."  Br. 1.  J&J's attempt to prevent Alcon from "eliciting testimony" about equally factual information regarding the "███████████████████████████," *id.* 3, is improper.

*Third*, Alcon would be unfairly prejudiced if unable to present evidence on J&J's subjective knowledge.  J&J's experts have (counterfactually) opined that J&J "objectively" ***couldn't*** have known enough about copying to take action, *see, e.g.*, D.I. 335, Exs. 12-18, while refusing to disclose its actual knowledge, *see id.*, Ex. 20; yet now J&J goes further and tries to preclude any discussion of the steps it took in 2014–2015.  J&J should not be allowed to make statements about "objective" knowledge yet block discussion of non-privileged facts about its actual, subjective knowledge.  The Court should deny J&J's motion.

---

[2]  J&J's remaining adverse-inference cases miss the mark, as they speak only to whether an adverse inference should be imposed by the Court—something Alcon has never sought—or take place in the context of specific Federal Circuit patent law precedent that is not at issue here.  *See, e.g.*, *Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1343-47 (Fed. Cir. 2004) (declining to impose adverse inference from "silence" about counsel's advice, yet leaving open whether jury "should be told ***whether or not counsel was consulted***").

Respectfully,
OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
Dated: December 15, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 15, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 16C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) (JLH) <br><br> ▮▮▮▮▮▮▮▮ |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim Defendants. | |



**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE*
NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING THE
<u>CONTENTS OF PRIVILEGED COMMUNICATIONS</u>**

Throughout this litigation, Alcon has used J&J's 2014 privileged investigation to significant advantage. *See* D.I. 132-2 at 348:11–22; D.I. 490. An *in limine* order is necessary to draw the line at what Alcon now seeks to do before the jury: highlight J&J's investigation—as distinguished from non-privileged *facts* known in 2014—in the hopes that the jury will draw negative inferences about the value of the code or why J&J sued when it did. Opp. 1-2. Alcon already has "[a]ll the facts." Ex. 6 at 14:12–13. It is improper to go beyond the facts and explore the claim of privilege.

Alcon's admitted strategy "would serve only to imply that the jury should draw an adverse inference" from the privileged advice, which is "wholly improper." *King Drug*, 2016 WL 278054, at *2; *Beraha v. Baxter Healthcare*, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994) ("probative value of the mere fact that these privileged conversations occurred is substantially outweighed by its potentially unfair prejudicial effect"). The need to protect privilege and avoid improper adverse inferences outweighs any alleged relevance. *Knorr-Bremse*, 383 F.3d at 1344.

In any event, Alcon has not shown that J&J's investigation into LenSx's *computer program* is relevant to J&J's *non-software* claims. Opp. 1; Ex. 10 at 3–6. Using the investigation to imply how J&J values its code, Opp. 2, is equally improper. "The argument that the delay in bringing suit somehow establishes [plaintiff's] perception of the value of its invention is specious." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1352 (Fed. Cir. 2018).

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Anthony D. Raucci

_____

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Michael E. Bern
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

2

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 21, 2022

3

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire              *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire            *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire               *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                        *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                                   *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                        */s/ Anthony D. Raucci*
                                        _____
                                        Anthony D. Raucci (#5948)

# EXHIBIT 17A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

       Plaintiffs,

       v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

       Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

       Counterclaim Plaintiffs,

       v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

       Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO
EXCLUDE EVIDENCE AND ARGUMENT REGARDING
FAILURE TO MITIGATE, ACQUIESCENCE, AND LACHES**

Nearly two years after this case began, Alcon moved to amend its answer to add failure to mitigate, acquiescence, and laches as defenses. D.I. 245-1. After J&J opposed the amendment (D.I. 262), the Court found that the parties' dispute would be best resolved on a motion *in limine*. Ex. 8 at 43:10-15, 44:14-45:1. The Court expressly allowed J&J to bring an extra (fourth) motion *in limine* directed to excluding Alcon's new defenses. *Id.* at 44:14-18.

That time has now arrived. This Court should preclude Alcon from asserting its new defenses because Alcon has no basis to assert them. Alcon therefore should be precluded from offering evidence or presenting argument relating to its defenses of failure to mitigate (twelfth defense), acquiescence (thirteenth defense), or laches/delay (eleventh defense, as to Counts XIX and XX).

***Failure to mitigate.*** Alcon asserts that a plaintiff must mitigate its harm by asking the defendant to stop infringing. D.I. 340 ¶ 490; Ex. 8 at 14:12-15. That would turn mitigation on its head by making plaintiffs responsible for a defendant's wrongful actions. Courts have accordingly rejected such a mitigation theory, holding that it lacks even "plausible validity." *Interscope Records v. Time Warner, Inc.*, No. 10-cv-1662, 2010 WL 11505708, at *15-16 (C.D. Cal. June 28, 2010) ("[T]he Copyright Act does not contain a requirement that the copyright owner provide notice to an alleged infringer as a prerequisite to filing suit or seeking damages."). Moreover, Alcon's mitigation defense is premised on J&J's failure to

1

sue in 2014.  Ex. 8 at 15:1-5.  As such, it "is merely a re-tooling of their laches defense."  *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 104 (D. Conn. 2014) (subsequent history omitted); *see also* 4 Annotated Patent Digest § 30:6.100 ("[A] 'failure to mitigate' defense may be nothing more than a laches defenses if the lack of mitigation is based on an allegation that the patentee should have sued earlier.").  Courts accordingly have declined to treat mitigation as a separate defense in this context and instead treated the argument as one for laches.  *See, e.g.*, *Voda v. Medtronic, Inc.*, No. 09-cv-95, 2011 WL 6210760, at *3 (W.D. Okla. Dec. 14, 2011); *Romag Fasteners, Inc.*, 29 F. Supp. 3d at 104.  In the copyright context, the Supreme Court has expressly held that laches is unavailable.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677-79 (2014); *cf.* D.I. 425 at 4-7.  Because Alcon's mitigation defense is simply an improper attempt to advance a laches argument that the Supreme Court already has rejected, this Court should exclude it.

*Acquiescence.*  Alcon frames a further defense as "estoppel by acquiescence." D.I. 340 ¶ 511.  But estoppel requires a showing that the defendant relies on the plaintiff's "intentionally misleading representations."  *Petrella*, 572 U.S. at 684. Here, however, Alcon does not plead and cannot identify any such representations. *See* D.I. 340 ¶¶ 481-89; Ex. 10 at 6-7.

Alcon instead argues that "J&J elected not to inform Alcon" of Alcon's infringement.  Ex. 10 at 7.  But in a copyright action, mere silence does *not* constitute

acquiescence.  *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 716 (S.D.N.Y. 1987) ("silence or inaction, in the absence of any duty or relationship between the parties, cannot give rise to an estoppel"); *see also Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990) ("Silence alone is not sufficient affirmative conduct to give rise to estoppel."  (citation omitted)) (patent case). Alcon's "estoppel by acquiescence" argument therefore fails.

**_Laches/delay (Counts XIX and XX)._**  J&J's Counts XIX and XX concern Alcon's improper copying of FDA submissions and related technical documents. But Alcon's laches/delay defense is premised solely on J&J's "investigation into the LenSx Laser system's computer program." Ex. 10 at 3-4.  Computer programs are distinct from FDA submissions, however, and are separately copyrighted.  D.I. 141 ¶¶ 51-53.  Even if Alcon could show that J&J delayed enforcing its copyright in its computer program, Alcon has not pled and cannot show that J&J delayed enforcement of its copyright with respect to its FDA submissions and technical documents.  *See* D.I. 340 ¶¶ 472-80; Ex. 10 at 3-6.

Alcon has articulated no legally cognizable basis for its defenses of mitigation, acquiescence, and laches/delay (as to Counts XIX and XX).  As a result, Alcon has "no business arguing [these defenses] in front of a jury." Ex. 8 at 44:25-45:1.  Because such defenses are legally improper, and would merely confuse the issues and waste time, Fed. R. Evid. 403, they should be excluded.

3

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

4

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 1, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire               *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire             *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary E. Miller, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)

2

# EXHIBIT 17B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842-CFC-JLH <br><br>  |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim- Defendants. |  |

**ALCON'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE
AND ARGUMENT REGARDING FAILURE TO MITIGATE,
ACQUIESCENCE, AND LACHES**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

J&J withdrew its opposition to Alcon's motion to amend in exchange for an extra MIL to preclude Alcon from raising its defenses ***before the jury***. Ex. 1 at 44:12–45:1. Instead, J&J's extra MIL is a backdoor summary-judgment motion— challenging the merits of Alcon's defenses outright. J&J's motion should be denied.

**Failure to Mitigate**: A "damages award should be limited" by the plaintiff's failure "to take reasonable measures to mitigate its loss." *VICI Racing v. T-Mobile*, 763 F.3d 273, 300–01 (3d Cir. 2014). J&J incorrectly claims courts have rejected this theory. Br. 1. J&J's lone case, *Interscope Records v. Time Warner*, questioned the validity of the defense because "Defendants have not cited, and the Court has not found, any analogous cases." 2010 WL 11505708, at *15 (C.D. Cal. June 28, 2010). However, four months later, another court recognized that "a ***brief*** search of the case law yields exactly such cases." *Interplan Architects v. C.L. Thomas*, 2010 WL 4366990, at *47–48 (S.D. Tex. Oct. 27, 2010) ("Plaintiff is not entitled to summary judgment as to Defendant's affirmative defense of failure to mitigate damages"); *see also Malibu Media v. Zumbo*, 2014 WL 2742830, at *4 (M.D. Fla. June 17, 2014) ("Some courts have indeed recognized that knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate.").

J&J next claims "Alcon's mitigation defense is simply an improper attempt to advance a laches argument the Supreme Court already has rejected" in *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663 (2014). Br. 2. ***First***, Alcon's mitigation and

1

laches defenses are distinct.  Mitigation is relevant to legal damages and considers how J&J could have minimized *its* alleged harm.  Laches is relevant to equitable disgorgement and considers how J&J's delay prejudiced ***Alcon***.  ***Second***, *Petrella* made no mention of the failure to mitigate defense, and the Supreme Court confirmed that laches or a "plaintiff's delay can ***always be brought to bear*** at the remedial stage … in assessing the 'profits of the infringer.'"  572 U.S. at 667–68.  *Petrella* does not suggest that failure to mitigate and laches are the same.  J&J cites two pre-*Petrella* district court cases from other circuits to contend that failure to mitigate and laches are the same when based on the same facts.  Br. 2.  *Romag Fastener v. Fossil* makes clear they are not, for the court denied the failure to mitigate defense but took up laches.  29 F.Supp.3d 85, 103 (D. Conn. 2014).  As explained, Alcon's mitigation and laches theories are distinct unlike in *Voda v. Medtronic*, 2011 WL 6210760, at *3 (W.D. Okla. Dec. 14, 2011).

**Acquiescence**:  Acquiescence is "consent, whether express or implied...with knowledge of the infringement."  *Edwin L. Wiegand v. Harold E. Trent*, 122 F.2d 920, 925 (3d Cir. 1941).  J&J never disputes that Alcon can meet this standard.  Instead, J&J argues Alcon's acquiescence defense requires "a showing that the defendant relies on the plaintiff's 'intentionally misleading representations.'"  Br. 2 (quoting *Petrella*, 572 U.S. at 684).  Again, J&J is incorrect.  The Supreme Court in *Petrella* addressed only one type of estoppel: equitable estoppel based on

2

"intentionally misleading representations." 572 U.S. at 684. Indeed, *Petrella* makes no mention of acquiescence, and nothing in *Petrella* suggests it limits or supersedes all other estoppel doctrines. Courts (including in this District) continue to view acquiescence as a defense independent from estoppel. *See, e.g.*, *Brooklyn Brewery v. Brooklyn Brew Shop*, 17 F.4th 129, 141 (Fed. Cir. 2021) (evaluating acquiescence in trademarks); *Emerson Radio v. Emerson Quiet Kool*, 2021 WL 5161838, at *2 (D. Del. Nov. 5, 2021) (granting summary judgment of no laches and acquiescence independent of estoppel). Nothing suggests *Petrella* redefined or struck acquiescence as a defense to copyright infringement.

**Laches/Delay**:    J&J argues Alcon "cannot show that J&J delayed enforcement of its copyright with respect to its FDA submissions" and operator's manual. Br. 3. The Court recently found there is a "genuine dispute of material fact concerning" these issues. D.I. 490 at 14. Further, J&J ignores that it was undeniably in possession of the LenSx Operator's Manual by at least 2015. Ex 2, DX-301. On FDA submissions, delay bars J&J's requested relief because its failure to sue on the code sooner meant it discovered this alleged infringement later than if it exercised reasonable diligence, as confirmed by its discovery upon suing in 2020. *See, e.g.*, *Davila v. Chi.*, 2018 WL 5024910, at *4 (N.D. Ill. Oct. 17, 2018) (claims barred where, "[h]ad [plaintiffs] filed suit and sought discovery, they could have learned of [defendant's] involvement and pursued their claims" within limitations period).

3

Respectfully,

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
Dated: December 15, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 15, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 17C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

      Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE*
NO. 4 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
<u>FAILURE TO MITIGATE, ACQUIESCENCE, AND LACHES</u>**

The Court permitted J&J to file exactly the motion *in limine* it filed.  Ex. 8 at 44:14–45:1.  Alcon should not present these defenses to the jury.

***Mitigation***.  Alcon asserts that J&J should have sued in 2014, and its failure to do so limits legal damages.  Such a delay-based mitigation defense does not exist in copyright law, *Interscope Records*, 2010 WL 11505708, at *15–16, and conflicts with the statute of limitations, which "itself takes account of delay."  *Petrella*, 572 U.S. at 677; *see also id.* at 682 (copyright owner may defer suit until "litigation is worth the candle").

***Estoppel by Acquiescence.***  Alcon points to *no* J&J representations amounting to estoppel by acquiescence, let alone "intentionally misleading representations."  Absent that, Alcon's acquiescence theory fails.  *See, e.g.*, *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1282 (M.D. Fla. 2008).  Alcon's cases confirm the same.  *See, e.g.*, *Brooklyn Brewery*, 17 F.4th at 141 (requiring "assurance to defendant" that plaintiff would not sue).

***Laches/Delay***.  Alcon does not deny that it failed to disclose any factual basis for a delay defense to the non-software counts.  *See* Ex. 10 at 3–11.  Alcon's position also rests on the legally flawed premise that J&J would have discovered this copying if it had sued for copying of *different* works.  But "the purpose of discovery is to uncover evidence of the facts pleaded in the Complaint, not to find a cause of action."  *Martinez v. Fuentes*, 2017 WL 2345703, at *5 (D.N.J. May 30, 2017) (cleaned up).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Anthony D. Raucci

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Michael E. Bern
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

2

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                          *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                   *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                               *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                        */s/ Anthony D. Raucci*

                                        _____
                                        Anthony D. Raucci (#5948)

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

     Plaintiffs,

     v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

     Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

     Counterclaim Plaintiffs,

     v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

     Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**EXHIBITS TO PLAINTIFFS' MOTIONS *IN LIMINE***



## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Fifth Amended and Restated Certificate of Incorporation of LenSx Lasers, Inc. (ALCON_LENSX004198) |
| 2 | Certificate of Merger of Alcon LenSx, Inc. With and Into Alcon Research, LLC (ALCON_LENSX095199) |
| 3 | Alcon Research, LLC Action by Written Consent of the Board of Directors, Dated as of April 26, 2021 (ALCON_LENSX095360) |
| 4 | Transcript of 3/4/22 Deposition of Ron Kurtz, M.D. (highlighted excerpts) |
| 5 | Transcript of 11/16/21 Deposition of Peter Goldstein (highlighted excerpts) |
| 6 | Transcript of 9/8/22 Discovery Hearing (highlighted excerpts) |
| 7 | Transcript of 8/3/22 Discovery Hearing (highlighted excerpts) |
| 8 | Transcript of 8/3/22 Status Conference Hearing (highlighted excerpts) |
| 9 | Defendants' Exhibit List (11/17/22) (highlighted) |
| 10 | Alcon's Objections and Responses to J&J's Eleventh Set of Interrogatories (No. 29) (2/25/22) |

# EXHIBIT 1

# Delaware

PAGE   1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "LENSX LASERS, INC.", CHANGING ITS NAME FROM "LENSX LASERS, INC." TO "ALCON LENSX, INC.", FILED IN THIS OFFICE ON THE SECOND DAY OF SEPTEMBER, A.D. 2010, AT 12:35 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

4229416   8100

100880292

You may verify this certificate online
at corp.delaware.gov/authver.shtml

AUTHENTICATION: 8208180

DATE: 09-02-10

Highly Confidential

ALCON_LENSX004198

*State of Delaware
Secretary of State
Division of Corporations
Delivered 01:22 PM 09/02/2010
FILED 12:35 PM 09/02/2010
SRV 100880292 - 4229416 FILE*

## FIFTH AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## LENSX LASERS, INC.

LENSX LASERS, INC., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY AS FOLLOWS:

1.  The name of the Corporation is LenSx Lasers, Inc. The original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on October 3, 2006.

2.  This Fifth Amended and Restated Certificate of Incorporation (this "Certificate of Incorporation") was duly adopted in accordance with Section 245 of the General Corporation Law of the State of Delaware. Pursuant to Sections 242 and 228 of the General Corporation Law of the State of Delaware, the amendments and restatement herein set forth have been duly adopted by the Board of Directors and the stockholders of the Corporation.

3.  Pursuant to Section 245 of the General Corporation Law of the State of Delaware, this Certificate of Incorporation restates and integrates and amends the provisions of the Corporation's Certificate of Incorporation, to read in its entirety as follows:

FIRST:      The name of the corporation is Alcon LenSx, Inc. (the "Corporation").

SECOND:      The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

THIRD:      The purpose of the Corporation is to engage in any lawful business, act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware or any successor statute (the "DGCL").

FOURTH:      The total number of shares of stock that the Corporation shall have authority to issue is 1,000 shares of common stock, par value $0.0001 per share.

FIFTH:      Any action required or permitted to be taken at an annual or special meeting of stockholders may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all shares entitled to vote on the action were present and voted.

SIXTH:      The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation (the "Board"). In addition to the authority and powers conferred upon the Board by the DGCL or by the other provisions of this

85450555.1                                      -1-

Highly Confidential                                ALCON_LENSX004199

Amended and Restated Certificate of Incorporation (this "Certificate of Incorporation"), the Board is hereby authorized and empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject to the provisions of the DGCL, this Certificate of Incorporation, and the Bylaws of the Corporation (the "Bylaws"); *provided, however*, that no Bylaws hereafter adopted, or any amendments thereto, shall invalidate any prior act of the Board that would have been valid if such Bylaws or amendment had not been adopted. The number of directors of the Corporation shall be fixed from time to time as provided in the Bylaws. Election of directors need not be by written ballot unless the Bylaws so provide.

SEVENTH:   No director of the Corporation shall be liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL as the same exists at the time of the alleged breach. If the DGCL is hereafter amended to authorize further elimination or limitation of the liability of directors, then the liability of a director of the Corporation, in addition to the limitation on liability provided in this paragraph, shall be limited to the fullest extent permitted by the amended DGCL. Any repeal or modification of this paragraph shall be prospective only and shall not adversely affect any limitation on the liability of a director of the Corporation existing at the time of such repeal or modification.

EIGHTH:   The Corporation shall indemnify any director or officer of the Corporation and may indemnify any other person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceedings, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. Any amendment, repeal or modification of this paragraph shall not adversely affect any right or protection of a director, officer, agent, or other person existing at the time of, or increase the liability of any director of this Corporation with respect to any acts or omissions of such director, officer or agent occurring prior to, such amendment, repeal or modification.

NINTH:   Except as otherwise provided in this Certificate of Incorporation, in furtherance and not in limitation of the powers conferred herein and by statute, the Board is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws.

85450555.1                                      -2-

Highly Confidential                                      ALCON_LENSX004200

TENTH:    The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders by and pursuant to this Certificate of Incorporation in its present form or as hereafter amended are granted subject to this reservation.

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Certificate of Incorporation this __31__ day of August, 2010

LENSX LASERS, INC.

By: _____

Name: Elaine E. Whitbeck

Title: Senior VP, Chief Legal Officer, General Counsel and Corporate Secretary

85450555.1                                    -3-

Highly Confidential                                    ALCON_LENSX004201

IN WITNESS WHEREOF, the undersigned Managers have subscribed their names as of the date first written above in attestation to the accuracy of the foregoing written consent and of their approval of all actions taken as recited therein.

_____
Jeffrey Bordok, Manager

_____
John Mishalanie, Manager

_____
James Thomson, Manager

_____
Dr. Huan B. Giap, Manager

_____
Wilson Williams, Manager

_____
Brent Barton, Manager

Highly Confidential

ALCON_LENSX004202

# EXHIBIT 2

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"ALCON LENSX, INC.", A DELAWARE CORPORATION,

WITH AND INTO "ALCON RESEARCH, LLC" UNDER THE NAME OF "ALCON

RESEARCH, LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND

EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED

AND FILED IN THIS OFFICE ON THE TWENTY-SEVENTH DAY OF APRIL,

A.D. 2021, AT 11:09 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF

THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-SEVENTH DAY OF

APRIL, A.D. 2021 AT 11:59 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

7178801  8100M
SR# 20211465589

Authentication: 203075045
Date: 04-28-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  11:09 AM 04/27/2021
FILED  11:09 AM 04/27/2021
SR 20211465589 - File Number  7178801

## CERTIFICATE OF MERGER
### OF
## ALCON LENSX, INC.
## WITH AND INTO
## ALCON RESEARCH, LLC

### APRIL 27, 2021

*Pursuant to Section 264 of the*
*Delaware General Corporation Law (the "DGCL") and*
*Section 18-209 of the*
*Delaware Limited Liability Company Act (the "DLLCA")*

Alcon Research, LLC, a Delaware limited liability company, DOES HEREBY CERTIFY THAT:

1.     The name of the surviving limited liability company is Alcon Research, LLC, a Delaware limited liability company (the "**Surviving Company**"), and the name of the corporation being merged into the Surviving Company is Alcon LenSx, Inc., a Delaware corporation (the "**Merging Company**").

2.     A Plan of Merger (the "**Plan of Merger** "), dated as of April 27, 2021, by and among the Surviving Company and the Merging Company, setting forth the terms and conditions of the merger, has been approved, adopted, executed and acknowledged by the Surviving Company and the Merging Company in accordance with Section 264 of the DGCL and Section 18-209 of the DLLCA.

3.     The name of the surviving limited liability company is Alcon Research, LLC.

4.     This Certificate of Merger, and the merger provided for herein, shall be effective on April 27, 2021 at 11:59 p.m. (the "**Effective Time**").

5.     The Certificate of Formation of the Surviving Company in effect immediately prior to the Effective Time shall be the Certificate of Formation of the Surviving Company until thereafter amended as provided by applicable law.

6.     An executed copy of the Plan of Merger is on file at the principal place of business of the Surviving Company at the following address: 6201 South Freeway, Fort Worth, Texas 76134.

7.     A copy of the Plan of Merger will be furnished by the Surviving Company on request and without cost to any stockholder of any constituent corporation or member of any constituent limited liability company, as applicable.

CONFIDENTIAL          ALCON_LENSX095200

IN WITNESS WHEREOF, the Surviving Company has caused this Certificate of Merger to be signed as of the date first above written, by a duly authorized person, declaring that the facts stated herein are true.

ALCON RESEARCH, LLC

By: _____

Name:  Tom Hudnall
Title:     Assistant Secretary

[*Certificate of Merger Signature Page*]

CONFIDENTIAL

ALCON_LENSX095201

# EXHIBIT 3

# ALCON RESEARCH, LLC

Action by Written Consent of the Board of Directors

**Dated as of April 26, 2021**

The undersigned, constituting the entire Board of Directors of Alcon Research, LLC, a Delaware limited liability company (the "Company"), hereby unanimously consent to and adopt, pursuant to Section 18-404(d) of the Delaware Limited Liability Company Act (the "DLLCA"), and Section 7.D of the Company's Limited Liability Company Agreement, the following resolutions:

## Approval of Plan of Merger and Merger

WHEREAS, there has been submitted to and considered by the directors a Plan of Merger (the "Plan of Merger") by and between the Company and Alcon LenSx, Inc. ("LenSx"), substantially in the form attached as Exhibit A hereto, providing for the merger of LenSx with and into the Company pursuant to Section 264 of the Delaware General Corporation Law ("DGCL") and Section 18–209 of the DLLCA, with the Company continuing as the surviving corporation and all of the assets and liabilities of LenSx becoming assets and liabilities of the Company (the "Merger"); and

WHEREAS, the directors have determined that it is advisable and in the best interests of the Company to approve and to consummate the Merger on the terms presented to the directors and substantially set forth in the Plan of Merger; and

NOW THEREFORE, IT IS RESOLVED, that the Plan of Merger and the Merger be and hereby are, approved, ratified and authorized, and the Company, as the owner of all of the issued and outstanding shares of stock of LenSx, shall merge LenSx with and into the Company pursuant to Section 264 of the DGCL and Section 18-209 of the DLLCA and shall take ownership of all of the assets and assume all of the liabilities of LenSx;

FURTHER RESOLVED, that upon the consummation of the Merger, LenSx shall cease to exist and the Company shall continue its existence as the surviving entity pursuant to the DGCL and the DLLCA, with the existing certificate of formation of the Company continuing in full force and effect until altered, amended or repealed as provided therein or by law;

FURTHER RESOLVED, that the issued and outstanding shares of stock of LenSx shall not be converted in any manner, nor shall any cash or other consideration be paid or delivered therefor, inasmuch as the Company is the owner of all of the issued and outstanding shares of stock of LenSx, but each said share which is issued and outstanding as of the effective date of the Merger shall be surrendered and canceled;

1

CONFIDENTIAL

ALCON_LENSX095360

FURTHER RESOLVED, that any of the officers of the Company be, and each of them hereby is, authorized and empowered, in the name and on behalf of the Company, to execute and deliver the Plan of Merger and a Certificate of Merger, and to cause such Certificate of Merger to be filed with the Secretary of State of the State of Delaware in accordance with the terms of the Plan of Merger;

FURTHER RESOLVED, that the effective date of the Certificate Merger and the Merger shall be April 27, 2021 at 11 :59 PM Eastern Standard Time or such later date as may be determined by an authorized officer of the Company (the "Effective Date");

FURTHER RESOLVED, that at any time prior to the Effective Date, the Merger may be amended, modified, terminated or abandoned by action of the directors of the Company;

FURTHER RESOLVED, that all actions previously taken by the officers, employees or the authorized representatives of the Company which are consistent with the foregoing resolutions, be and they hereby are, approved, ratified and confirmed;

FURTHER RESOLVED, that the officers of the Company be, and each of them acting alone hereby is, authorized, empowered and directed to prepare, execute, deliver and file any and all such further agreements, instruments, consents, certificates and other documents, and to take any and all such further actions, in each case, in the name and on behalf of the Company, which in his or her sole discretion is necessary, desirable or appropriate to carry out and give the fullest effect possible to the intent of the foregoing resolutions, such authorization to be conclusively evidenced by the taking of any such action or the execution and delivery of any such agreement, instrument, consent, certificate or other document by such officer of the Company;

FURTHER RESOLVED, that this consent may be executed in counterparts, all of which when taken together shall be deemed to be the unanimous written consent of the board of directors; and

FURTHER RESOLVED, that this consent may be executed by facsimile or .pdf transmission, which shall be deemed an original for all purposes.

*[remainder of page intentionally left blank]*

2

CONFIDENTIAL

ALCON_LENSX095361

IN WITNESS WHEREOF, the undersigned have hereunto signed and delivered this consent effective as of the date the first written above.

_____
Ed McGough, Chairman

_____
Michael Onuscheck

_____
Richard Massey

*[Alcon Research, LLC Board Consent]*

CONFIDENTIAL

ALCON_LENSX095362

IN WITNESS WHEREOF, the undersigned have hereunto signed and delivered this consent effective as of the date the first written above.

_____
Ed McGough, Chairman

_____
Michael Onuscheck

_____
Richard Massey

*[Alcon Research, LLC Board Consent]*

CONFIDENTIAL

ALCON_LENSX095363

IN WITNESS WHEREOF, the undersigned have hereunto signed and delivered this consent effective as of the date the first written above.

_____
Ed McGough, Chairman


_____
Michael Onuscheck


_____
Richard Massey


*[Alcon Research, LLC Board Consent]*

CONFIDENTIAL                                                                                           ALCON_LENSX095364

## EXHIBIT A

**Plan of Merger**

[See attached]

CONFIDENTIAL

ALCON_LENSX095365

# EXHIBIT 4

HIGHLY CONFIDENTIAL - FOR OUTSIDE COUNSEL EYES ONL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO      )NO. 20-842(CFC)(JLH)
MANUFACTURING USA, LLC and     )
AMO SALES AND SERVICE, INC.,   )
                               )
                Plaintiffs,    )
                               )
        v.                     )
                               )
ALCON VISION, LLC, ALCON       )
LABORATORIES, INC. and         )
ALCON RESEARCH, LLC,           )
                               )
                Defendants and )
                Counterclaim   )
                Plaintiffs.    )
_____)
AND RELATED CROSS-ACTION.       )
_____)

HIGHLY CONFIDENTIAL

FOR OUTSIDE COUNSEL EYES ONLY

REMOTE VIDEOTAPED DEPOSITION OF RON KURTZ, M.D.

Irvine, California

Friday, March 4, 2022

Reported by:
Heidi Hummel-Grant
CSR No. 12556
Pages 1 - 173
Job No. CS5110202

HIGHLY CONFIDENTIAL - FOR OUTSIDE COUNSEL EYES ONL

Page 54

A   I -- it -- I mean, it -- it depends how you depend -- how you define early. But I believe it was within the first year or so.

Q   I -- I'm going back to that resume where you list being the president and CEO of LenSx. And it says 2008 to 2010; right? So let's talk about 2008.

Who were the employees of LenSx in 2008? Any you can remember.

A   Again, I don't recall when we brought employees on exactly. As I -- as I recall, we didn't do that initially. So -- I don't recall exactly when people were brought on as employees. I -- certainly by 2009, but I don't recall in 2008.

Q   Okay.

So did LenSx start with any software for its laser?

MR. LIDDIARD: Object. Vague and ambiguous.

THE WITNESS: I -- so I don't know exactly what you mean there. But there was -- you know, the software team developed a software based on an operating system that -- that we purchased or licensed.

MR. SAMMI:

Q   QNX?

Page 55

A   I believe that was one of the operating systems that we used.

Q   Okay.

Who wrote the code at LenSx?

A   There were several people involved with writing the code.

Q   Who was the primary author of the code at LenSx?

A   I don't know who was the primary author of the code. There was a team that was led by Peter Goldstein.

Q   And did Peter Goldstein start with a clean sheet of paper when he was writing the code? Do you know?

MR. LIDDIARD: Object as to form.

THE WITNESS: Again, I'm -- I'm not an expert in software. I know that they start with an operating system that has software in it already. I don't -- I honestly don't know what the process would be and how you would define a clean shape -- a clean sheet of paper. I don't know what that means in this context.

MR. SAMMI:

Q   That means I'm going to sit down and write some software and there's -- there's a beginning,

Page 56

the first part of the software that I write.

A   Yeah, I -- I mean, obviously there was that first step.

It's just that it's based on a -- there's a -- it's written in an operating system, and there are different features in the operating system that you make use of. So I don't know what it what -- what -- yeah, obviously there was a first line of code that he wrote -- or others wrote.

Q   And where would that be? Could I find that?

MR. LIDDIARD: Objection. Vague and ambiguous.

THE WITNESS: Where would what be?

MR. SAMMI:

Q   The first line of code.

A   I -- I don't know.

Q   Did LenSx have any sort of software repository?

A   I would assume we did, but I -- I'm not familiar with it.

Q   It was your company; right?

A   That's correct.

Q   And do you know whether the early code or those first lines or any code from the initial beginnings of LenSx still exists?

Page 57

A   I do not.

Q   Do you know if any code was erased or destroyed?

A   I do not.

Q   Do you know if LenSx as a company started with any documentation from outside of LenSx?

A   I don't believe so.

Q   So LenSx made its documentation, like its submissions for its 510(k)s, from scratch?

MR. LIDDIARD: Object as to form.

THE WITNESS: We utilized a consultant who helped prepare or 510(k) submissions.

MR. SAMMI: Okay.

Q   And -- and did you -- which consultant was that?

A   It was called -- and I may have this wrong -- ClinReg, I believe.

Q   Do you remember what title Mr. Goldstein had early on in LenSx around that period of time, say, 2008 or '09, whenever he started?

A   I don't specifically recall his title. I knew he was -- responsibility was to -- was for software and validation.

Q   And did you work with Mr. Juhasz -- if I'm pronouncing that right -- on that project?

15 (Pages 54 - 57)

HIGHLY CONFIDENTIAL - FOR OUTSIDE COUNSEL EYES ONL

Page 170

***

I do solemnly declare under penalty of perjury, under the laws of the State of California, that the foregoing is my deposition under oath;

That these are the questions asked of me and my answers thereto;

That I have read the same and have made the necessary corrections, additions or changes to my answers that I deem necessary.

In witness thereof, I hereby subscribe my name, this _____ day of _____, 20____.

_____
Witness Signature

Page 171

Certification of Court Reporter Federal Jurat

I, the undersigned, a Certified Shorthand Reporter of the State of California do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand, which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

That before completion of the deposition a review of the transcript was requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any of the parties.

IN WITNESS WHEREOF, I hereby subscribe my name this 20th day of March 2022.

Heidi Hummel-Grant
Certified Shorthand Reporter No. 12556

Page 172

Dylan Liddiard, Esq.
dliddiard@wsgr.com
        March 21, 2022
RE: AMO Development, LLC, Et Al. v. Alcon Vision, LLC, Et Al.
    3/4/2022, Ron Kurtz (#5110202)
    The above-referenced transcript is available for review.
    Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.
    The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at erratas-cs@veritext.com.

 Return completed errata within 30 days from receipt of testimony.
 If the witness fails to do so within the time allotted, the transcript may be used as if signed.

        Yours,
        Veritext Legal Solutions

Page 173

AMO Development, LLC, Et Al. v. Alcon Vision, LLC, Et Al.
Ron Kurtz (#5110202)
        E R R A T A   S H E E T
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____
PAGE_____ LINE_____ CHANGE_____
_____
REASON_____

_____  _____
Ron Kurtz                     Date

44 (Pages 170 - 173)

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO          )
MANUFACTURING USA, LLC and         )
AMO SALES AND SERVICE, INC.,       )
                                   )
          PLAINTIFFS,              ) No. C.A. No.
                                   ) 20-842-CFC
             V.                    )
                                   )
ALCON VISION, LLC, ALCON           )
LABORATORIES, INC., AND ALCON      )
RESEARCH, LLC,                     )
                                   )
          DEFENDANTS.              )
_____)
                                   )
ALCON INC., ALCON RESEARCH,        )
LLC, AND ALCON VISION, LLC,        )
                                   )
          PLAINTIFFS,              )
                                   )
             V.                    )
                                   )
AMO DEVELOPMENT, LLC,              )
AMO MANUFACTURING USA, LLC,        )
AMO SALES AND SERVICE, INC.,       )
AND JOHNSON & JOHNSON              )
SURGICAL VISION, INC.,             )
                                   )
          DEFENDANTS.              )
_____)

THIS TRANSCRIPT HAS BEEN DESIGNATED
HIGHLY CONFIDENTIAL

ZOOM VIDEOTAPED DEPOSITION OF PETER GOLDSTEIN

TUESDAY, NOVEMBER 16, 2021

Job No. CS4850768
REPORTED BY:  D'ANNE MOUNGEY, CSR 7872

Page 70

negotiations regarding Alcon's purchase. My answer is I don't know.

BY MR. MORIN:

Q   Okay.  Let's go ahead and look at a document that's in tab 2 of the binder that starts Alcon LenSx 263861.

A   Would you mind repeating.

If you could refer to this document as an exhibit number, it would be much easier for me to track.

Q   Sure.  This will be Exhibit 8, I believe.

VERITEXT CONCIERGE:  That is correct.  And it should be there now.

(Whereupon, Plaintiffs' Exhibit 8 was marked for identification by the Court Reporter.)

THE WITNESS:  Exhibit 8, yes.

BY MR. MORIN:

Q   This is entitled a "Software Configuration Management Plan."

Do you see that title?

A   Uh-huh.

Q   It's dated May 15th, 2008.

Do you see that?

A   Yes.

Page 71

Q   If we go to the last page of this document, this was produced natively, but it's doc 22, or page 22.

Do you see that the date is May 15th, 2008, version 1, Peter Goldstein and it says:

"Initial Release, circulated for review and comments."

Do you see that?

A   Yes.

Q   You told me you started at LenSx in early June of 2008.

Do you know how you circulated a LenSx document prior to starting at the company?

A   I have no recollection of this document.

Also, this is a -- I have no recollection of this date, why is it May 15th?

Q   Okay.  We saw earlier that the letter of your employment was dated May 15th and you had signed it May 9th.

Could it be that this was your first day or first few days at the job?

A   I did not write the letter of employment.

Q   You see you're the author of this?

You're listed as the author on May 15th, 2008, do you see that?

Page 72

MS. YIP:  Peter, do you need to be directed to a page?

THE WITNESS:  I'm just trying to identify this document and what I -- this particular type of documents.

Okay.  Just to rewind the tape a little bit here.

Software documents in a regulated environment are -- have to have an owner.  And my name is clearly indicated as an owner, but I don't recall -- there are many aspects here fall outside of the software engineering prerogatives, and this document had more than one author.  I believe regulatory was also involved in creating this document.

BY MR. MORIN:

Q   Just my only question is:  You're listed as the author on May 15th, 2008.

That's you listed there; right?

A   Yes.  That's because --

Q   Okay.

A   -- there were a lot of documents that -- that's all the SOPs and LOPs there were developed as a group and the group was clearly software engineering, but also via the also regulatory --

Page 73

Q   Sure.

A   -- that was watching over everybody's.

Q   Sure.

A   But in the end, somebody assigned an owner because it had to be an owner.

Q   Sure.

A   So I was assigned as an owner to this document and I'm looking at this date and I don't know why this date is there again.  I don't remember the history.  This happened a long, long time ago.

Q   Let's work on that.  Maybe we can refresh your memory.

On the front page it's also dated May 15th, 2008.

Do you see that?

A   Yes.

Q   Okay.  Let's go to page 5 of the document.  For example -- and you understood -- let me ask a predicate question.

That these documents are submitted to the FDA, things like software configuration management plans; you understand that?

A   I do not know what gets submitted to the FDA as part of the submission package.  I don't know.

19 (Pages 70 - 73)

Page 242

coming with the camera was made by a company called Arvoo. This just shows some things how fluid things were and how they were evolving.

MS. HEFFERNAN: I have no further questions.

MR. MORIN: I'm fresh out of questions.

MS. YIP: No further questions for me either.

THE WITNESS: Okay. Champagne going back.

THE REPORTER: Off the record?

THE VIDEOGRAPHER: This completes today's deposition. We're going off the record. The time is 6:06 p m.

(Whereupon the deposition proceedings were concluded at 6:06 p m.)

-o0o-

Page 243

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF LOS ANGELES   )

I, PETER GOLDSTEIN, declare under penalty of perjury that the foregoing testimony is true and correct to the best of my knowledge and belief.

Dated this ___ day of _____, 2021.

_____
(PETER GOLDSTEIN)

Job No. CS4850768

Page 244

STATE OF CALIFORNIA   )
COUNTY OF LOS ANGELES ) ss.

I, D'Anne Moungey, C.S.R. No. 7872 in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was { } was not required.

I further certify that I am not interested in the event of the action.

Witness my hand this 1st day of December, 2021.

Certified Shorthand Reporter
For the State of California

Page 245

Lai L. Yip, Esq.
LYIP@SHEPPARDMULLIN.COM
          December 1st, 2021
RE: AMO Development, LLC, Et Al. v. Alcon Vision, LLC, Et Al.
    11/16/2021, Peter Goldstein (#4850768)
   The above-referenced transcript is available for review.
   Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.
   The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney.
Copies should be sent to all counsel, and to Veritext at erratas-cs@veritext.com

   Return completed errata within 30 days from receipt of testimony.
   If the witness fails to do so within the time allotted, the transcript may be used as if signed.

       Yours,
       Veritext Legal Solutions

62 (Pages 242 - 245)

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, et al., )
--------------------Plaintiffs,)
                                )Case No.
            vs.                 )20-CV-842-CFC-
                                )JLH
ALCON VISION LLC, et al,        )
--------------------Defendants. )

TRANSCRIPT OF MOTION TO STRIKE

MOTION TO STRIKE had before the Honorable Jennifer L. Hall, U.S.M.J., in Courtroom 2A on the 8th of September, 2022.

APPEARANCES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
     BY: BRIAN EGAN, ESQ.

                -and-

LATHAM & WATKINS LLP
     BY: MICHAEL MORIN, ESQ.
     SY DAMLE, ESQ.

                    Counsel for Plaintiffs

DEANNA WARNER, CSR
PO Box 327, Oskaloosa, Kansas 66066
Phone: (785) 863-5179 Fax: (785) 863-2369

---

(Appearances continued.)

SHAW KELLER LLP
     BY: JOHN SHAW, ESQ.
     ANDREW RUSSELL, ESQ.

                -and-

KIRKLAND & ELLIS LLP
     BY: GREGG LOCASCIO, ESQ.
     ELIZABETH HEDGES, ESQ.

                    Counsel for Defendants

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

THE COURT:  So we're here today for a hearing in AMO versus Alcon.  It's Civil Action Number 20-842.  Let's start with appearances.  We'll start with counsel for Plaintiffs.

MR. EGAN:  Good morning, Your Honor.  Brian Egan from Morris Nichols on behalf of the J&J plaintiffs.  Joining me today are Michael Morin and Sy Damle from Latham and Watkins.

THE COURT:  Good morning to all of you.

EVERYONE:  Good morning.

MR. SHAW:  Good morning, Your Honor.  John Shaw from Shaw Keller for the Alcon parties.  Joining me from Kirkland and Ellis are Gregg LoCascio and Elizabeth Hedges, and from my office, Andrew Russell is here and also Jeff Prokop from Alcon.

THE COURT:  Great.  Good morning to all of you.  So it's great to see everybody in person.  I know we've spent a lot of time on the phone together in the last year.

Before the hearing today, we refreshed our recollection about how we got here, and so I think at least this morning, I have a good understanding about the circumstances that have

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

led us to this place.  And so the question is now how we're going to move forward.

I don't know if you've all discussed how we should proceed today.  I had an idea that we could maybe hear from Alcon first, since it's really their motion to strike the expert report, which is why we're here today, and then we'll hear from AMO or J&J and go from there.  Does that make sense?

MR. LOCASCIO:  It does, Your Honor.

MR. MORIN:  It does, Your Honor.

THE COURT:  And just so everyone knows, I'm still not used to actually being in the courtroom, so if I'm back and forth with my notes, you'll understand.  Most of them are electronic.

MR. LOCASCIO:  May I proceed, Your Honor?

THE COURT:  Yes.

MR. LOCASCIO:  Good morning.  So where I'd start on this issue -- and, obviously, as you noted, we've been through this a couple rounds.  And at base, there's some things we know and the Court's already determined what Alcon is entitled to discovery

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

13

the strength of the legal claim, which would be discussed with the lawyers. Was this important enough to do anything about, to tell Alcon to sue them over? No answers to any of that.

And now their own expert has said it's not surprising J&J couldn't determine if critical portions of the code were copied. And another expert says the inspection could not have revealed the operation of the copied code for the Lensec software. All they've done, the only thing they've ever given us, is they took what was -- what we call the Shelviks [phonetic] report, one of the exhibits you looked at, and best we can tell regurgitated it into an interrogatory response.

It's weird how that report, in and of itself, was ever privileged to start with. Their position has been you don't get any documents around this inspection that happened, even if they're not prepared by lawyers. I think it's important to note that a lot of the caselaw around this, you've got work product and attorney-client privilege issues here. There is no work product issue, so things prepared by a nonlawyer --

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

14

THE COURT: For purposes of getting legal advice?

MR. LOCASCIO: If it's a request for legal advice, then it's privileged. If it's a compilation of facts that I deliver to a lawyer for the purpose of legal advice, those facts and that document are not privileged.

THE COURT: The facts are not privileged. The communication is, and I can tell you we have looked -- we have that document, as you know. We looked at that document. All the facts in that document have been disclosed to you.

MR. LOCASCIO: That may be the case, but if the document itself isn't requesting legal advice or talking about it at all, the document itself is the evidence. They've given us a 'rog response that their witness then, when we got a witness about it, disclaimed any actual knowledge about. What does this mean? Why is it highlighted? Where does it come from? No idea. So we, essentially, have an interrogatory response that doesn't give us any indication of does anybody about J&J think that's important? Do they care about it?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

15

Comparatively, do they think those are important components? Did they think this was sufficient copying?

This issue of the source code versus object code has come up in a couple calls, and as another data point on this, J&J's position is clearly going to be, well, we didn't have the source code at the time for Alcon's system, so we don't know as much as we know now.

THE COURT: That is definitely their position, and I have combed through their expert reports, and they are very careful, and that is absolutely their position. Every sentence where they say, "We didn't know," it says, "We didn't know there was as much copying as we do know now."

So your argument, as I understand it, really is they're going to come to trial with their experts and tell the jury we didn't know as much as we do now, and you ought to be able to say to somebody "But you did know there was copying" and get an answer. And the question that I'm asking is, and I know the answer, is did you ever just ask somebody did you know? Did the company know there was copying? And I

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

16

don't see that clear in the record anywhere.

But what I do see is an offer in the joint status report to stipulate to that now, and that seems like it would be pretty valuable to you. And they say they've offered it before. I didn't see it offered before. I see it offered now. What do you think about that?

MR. LOCASCIO: I agree it wasn't offered before. I think, is that a useful piece of information? Yes. I don't think that ends the inquiry, and the reason I don't think it ends the inquiry is because their argument is we didn't know enough. Okay. So that begs the question of how much did you know? You can't have it both ways. J&J can't say, "We didn't know enough. We didn't think it was sufficient. We didn't think there was enough copying," which is their argument around we didn't have the source code, ergo we didn't have enough.

Except we know they were looking at the source code for the IFS, which is the baseline comparison. It's the source code they say was copied. Their log on this, two times -- there are two entries we provided Your Honor. It's

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

And we'll hear from the other side. What did they -- do you have what they did?

MR. LOCASCIO: Here's what the problem is. We don't have what they did. Here's what we have, Your Honor. And there's two depositions, and we can go back and look at all the questions and answers. I'm not in a situation to tell you here's each thing I didn't get an answer to that I want. We could do that if you want.

But at base, we said, okay. What was the investigation? That's the first question and the first version of this dep. And we were told, yes, a report was prepared, and those deps weren't given an answer to that. Then by the second dep, we finally now have the interrogatory version of the report.

THE COURT: And he agreed that's what was done?

MR. LOCASCIO: He said that's what was done, and we asked questions. What does this mean? Why is this important? Why is it highlighted? No answers to those because he didn't know.

What they've done is they've given us a

printout of pages in the interrogatory. No one has ever said, were these important? Did they matter? Where do they go to?

Did I ask every one of those questions? No, because if you look at the beginning of the back-and-forth in that deposition, he immediately said, "I don't know about that. I don't know what this code is." Why is some stuff here and some stuff not? Why is some stuff highlighted? I don't know. Not prepared to do it. He's just able to say that's what was in the report.

THE COURT: If he's prepared as a 30(b)(6) witness and if the company didn't form an opinion about whether or not it's important, aside from what was privileged, I guess I'm wondering what kind of answer -- what's your -- just walk me through it because it's still early for me. You asked was it important. What's your best answer that you get from him? Yeah, it was really important?

MR. LOCASCIO: There's a couple ways that goes. It's either this code, okay, was benign stuff that, like, does basic math or wasn't the secret sauce --

THE COURT: What type of code do you think was copied?

MR. LOCASCIO: Was it of value? Because now we have the technical expert or damages expert saying they couldn't assess how critical this was or if it was important or valuable.

There's a couple issues here. One is you determine there was overlapping code. What did you -- I would say it's not just legal advice, Your Honor. What did you think it meant? Did you think they copied? That was the question Your Honor started with. Did you know they copied? But did you think they copied anything important, or did you think some of this stuff was available?

There's a question also in some of the documents we identified to Your Honor where there's certainly efforts going on to look at who owned it, meaning the assignments that they had with the people who wrote the code. There's questions around do you know who wrote the code? Do you know if it was written at the time when they worked for AMO? So all the questions about -- we didn't have any of that

code in the first dep, and we get to the second dep, and the person we've got doesn't know anything about it. I think there's a lot of questions around what's in that interrogatory, the specifics of it, its value, its origin, if it matters to the product. That's what I'll call questions about the interrogatory answers.

I think, having not seen any of them, some of those facts, meaning -- okay. Let's just hypothetically -- there's a presentation where they talk about the potential claim. The legal advice of is it a strong claim, where would you bring it, obviously, is much further over here on that's legal advice provided by the lawyers. The analysis of, hey, this code doesn't really matter or this isn't why people buy the product or things like that, even if it's in that presentation to counsel or from counsel, those are facts from the business that are known. They should have been available. We can get them through redacted versions of the document, okay, which is one option. Or -- which I think is the only way we could adequately answer the questions at the dep. Or I could continue to throw fishing lines like,

are -- it's his job to raise them, but his concerns about what might be behind door number three, I think the Court has had a chance to look at those. I hope Your Honor agrees. I think we're being candid with the Court and transparent with the Court in doing that. They have all the facts.

In summary, I think what would really fully resolve this is a stipulation, which is fine. We believe there was copying, at least to some degree, back then. We've already said in court. We would say this again. We had the same information in 2020 when we sued that we had in 2014, the same factual information. Again, he raised some questions of some experts reports. To the extent those are worded in any other way, we can stipulate that the experts will be talking about objectively, similar to U.S. Fire, for example, the party could have known from that, and they will steer clear of getting into the details of what was in state of mind.

All that said, like I said, the Motorola and U.S. Fire, Motorola case in particular, would say that that wouldn't be a waiver anyway.

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

43

Mr. Pang in both rounds on information that is factual, analysis of the code, its import, its value, the ownership of it. Those are not legal facts. Those are not legal questions or legal analysis. Those are facts. Were you involved? Software experts involved?

THE COURT: Let me make sure I understand. You asked them a question about ownership of code that didn't get answered? Where is that?

MR. LOCASCIO: In the first deposition -- we don't have that in the submission. I can pull it up.

He was also designated on the registrations and why things are registered and who owned it, and the answer was he doesn't have any information or it's all privileged. At base, Your Honor, facts around -- the suggestion we just heard from Mr. Morin that that relationship to the source code was about getting it registered, if you got legal advice about whether the code could be registered, that's one thing.

If you made a decision not to register it in 2014, which he was asked about, and didn't

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

42

And by the way, it's probably beating a dead horse, so I apologize, Your Honor, but there was some sentiment in their joint submission that by putting our state of mind at issue, that waived the privilege. And of course, Rome Planck did away with that and the Third Circuit did away with that.

And even if it's highly relevant, it's kind of Mr. LoCascio's argument here is, I think, this is totally unfair because we don't know what they were doing. Your Honor now knows, but they say that was totally unfair. Rome Planck says relevance isn't the standard either.

Unless Your Honor has other questions, I've been a little scattershot --

THE COURT: No, you answered all my questions. I'll give Mr. LoCascio a chance to respond to just what he heard, and we'll go from there.

MR. LOCASCIO: Thank you, Your Honor. I want to be clear. The answer, the solution to this, even under the version from J&J, is not a one-question deposition. You look back at what we were able to get from

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

44

offer any evidence of why, nobody can answer the why question. He was instructed not to answer, and I can get -- I apologize that I don't have both of the Pang depositions here to give you all the questions and chapter and verse on this. But these core questions about what happened and what they did during that year and a half and what they knew factually is not privileged. J&J is not even really saying it's privileged, but they've said we've given them all the facts we know except on any question about why you didn't say anything to Alcon, why you didn't register these copyrights in 2014 when you certainly looked into it.

Those decisions are business decisions. You chose not to tell Alcon. You chose not to file registrations. Maybe it's cost. Maybe it's because you didn't think you could. Maybe you didn't care. Those questions we never got answers to. Some of them I think we asked verbatim or really close to that, some in the case of two different deps of we're not telling you anything and the guy we've given you doesn't know anything. I don't think we should be held to the standard if you didn't ask it

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

49

MR. MORIN: If you look at page seven of that document, and there's a heading C, do you see heading C, Your Honor? Page seven of the attached document. I'm sorry. It's numbered seven.

THE COURT: Yes.

MR. MORIN: If you look at C, heading C.

THE COURT: Yes.

MR. MORIN: If you read the last two sentences, that's an internal, obviously privileged document, but hopefully you'll see why we can't stipulate that we "knew"; right?

THE COURT: Yeah.

MR. MORIN: Right. So if you'd like me to talk to my client, if it would solve it on saying that we believe that some source code may have been copied, I need to make sure that's factually accurate, and I need to talk to my client.

THE COURT: Yeah, yeah, yeah.

So, Mr. LoCascio, it's okay to sit down.

Here's what we're going to do. I'll tell you where we are. I was hoping to get this wrapped up today. Sounds like we've got more

50

to go.

I can tell you I reviewed all the documents submitted for in camera review. I agree with AMO that the documents are privileged. They're all privileged. That's very clear to me.

I also do not think privilege has been waived. In particular, I reject Alcon's argument that privilege was waived because Plaintiffs put their state of mind at issue. Putting state of mind at issue doesn't mean privilege is waived. That's very clear under the law in the Third Circuit. If you say you have a certain state of mind because this is the advice I got from my attorney, that's putting the attorney's advice at issue, and that does waive privilege, but that hasn't happened here.

But the problem here is, and I agree with Mr. LoCascio, that you read Plaintiff's expert reports, and it's going to -- they say it's going to suggest to the jury that Plaintiff didn't know there was copying, and I think Mr. LoCascio's client is entitled an answer about whether or not the company thought there

51

was copying, and the jury should hear that.

So we've got an offer of a stipulation that they knew there was some copying. That stipulation should be entered into. It sounds like we need to work on the wording a little bit it, and sounds like we need to check with the client a little bit about what exactly can be stipulated to.

MR. MORIN: I think I have enough, and Your Honor is trying to wrap it up, and I'm not trying to short-circuit -- this is an important issue.

First of all, my client is on speed dial. It could take two to five minutes. What I believe I'll be able to do is say that we -- I'll work on the language -- believe there was likely to be at least some copying of source code.

THE COURT: And, Mr. LoCascio, I know that may not be satisfying to you, but I think that is consistent with what the experts said as well. Do you have an expert saying that there was some way -- is it even technologically possible to determine if there was wholesale copying of source code?

52

MR. LOCASCIO: Obviously, we didn't say wholesale, but there's three hedge words in there, that we believe there may have been likely copying, except at the time -- so then a technical personal who's looking at that, someone with that 'rog response they gave us, should answer questions. If this code, object code, only comes from compiled source code, you don't start with object code, and everybody knows that. J&J would like to blur that line, and that's why they don't want the word "source code" and they don't want everyone to say they knew the source code was copied. The only way the object code lines up in these passages is if the source code starts in the same place. And they've said --

THE COURT: But you're talking about -- I understand what you're saying, but circumstantial evidence of something; right? And they're offering to say -- that's what I'm hearing.

MR. MORIN: I can moot the last point. He keeps not wanting to say source code. My stipulation would be we believe there's at least some copying of source code,

C E R T I F I C A T E

STATE OF DELAWARE        )
                                              ) ss:
COUNTY OF NEW CASTLE        )

I, Deanna L. Warner, a Certified Shorthand Reporter, do hereby certify that as such Certified Shorthand Reporter, I was present at and reported in Stenotype shorthand the above and foregoing proceedings in Case Number 20-CV-842-CFC-JLH, *AMO DEVELOPMENT, LLC, et al. Vs. ALCON VISION LLC, et al*, heard on September 8, 2022.

I further certify that a transcript of my shorthand notes was typed and that the foregoing transcript, consisting of 57 typewritten pages, is a true copy of said MOTION TO STRIKE.

SIGNED, OFFICIALLY SEALED, and FILED with the Clerk of the District Court, NEW CASTLE County, Delaware, this 9th day of September, 2022.

_____
Deanna L. Warner, CSR, #1687
Speedbudget Enterprises, LLC

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, et al., )
--------------------Plaintiffs, )
                                ) Case No.
        vs.                     ) 20-CV-842-CFC-
                                ) JLH
ALCON VISION LLC, et al.,       )
--------------------Defendants. )

TRANSCRIPT OF DISCOVERY CONFERENCE

DISCOVERY CONFERENCE had before the Honorable Jennifer L. Hall, U.S.M.J., via teleconference on the 3rd of August, 2022.

APPEARANCES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
BY: JACK BLUMENFELD, ESQ.

-and-

LATHAM & WATKINS LLP
BY: MICHAEL MORIN, ESQ.
RACHEL COHEN, ESQ.

Counsel for Plaintiffs

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

(Appearances continued.)

SHAW KELLER LLP
BY: ANDREW RUSSELL, ESQ.

-and-

KIRKLAND & ELLIS LLP
BY: GREGG LOCASCIO, ESQ.
NOAH FRANK, ESQ.
ELIZABETH HEDGES, ESQ.

Counsel for Defendants

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

THE COURT: Good afternoon, everyone. This is Jennifer Hall. We're here on the phone for a discovery dispute conference. This is AMO versus Alcon. It's Civil Action Number 20-842-CFC-JLH. We have a court reporter on the line today. The court reporter is Deanna Warner.

May I have appearances, please, for Plaintiff, starting with Delaware counsel.

MR. BLUMENFELD: Good afternoon, Your Honor. It's Jack Blumenfeld from Morris Nichols for Plaintiffs, and also on are Mike Morin and Rachel Cohen from Latham and Watkins and from Johnson and Johnson, Denise DeFranco.

THE COURT: Good afternoon to all of you.

May I have appearances, please, for Defendants, starting with Delaware counsel.

MR. RUSSELL: Good afternoon, Your Honor. Andrew Russell from Shaw Keller for the defendants, and with me on the line is Gregg LoCascio from Kirkland and Ellis.

THE COURT: Good afternoon. Well, I can tell you I've carefully looked at the letters and the exhibits. I have a good

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

understanding about what's going on here, but I'm interested in all of your thoughts about how we're going to move are forward in light of what's going on here.

This is Defendants' motion. Go ahead, counsel, when you're ready.

MR. LOCASCIO: Good afternoon, Your Honor. It's Gregg LoCascio from Kirkland. I should add just for the record with me here in the conference room are Noah Frank and Betsy Hedges from Kirkland as well.

So how I frame this, to your question, is as follows: So at this point, given what is Exhibit 3, interrogatory 24, I don't think there's any question there's a firm step that Johnson and Johnson put at issue that they did not discover and with the exercise of reasonable diligence could not have discovered Alcon's infringement prior to 2020. As you'll recall, that led to a second deposition of their corporate designee so that he could answer, presumably, those questions of what was known and what was done from a diligence perspective.

As the passages in Exhibit 6 lay out, the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

knew, couldn't know, did, or didn't do all the while they're hiding what they truly, actually knew or actually did.

So the proper remedy at this point, because we already think if they try to offer any testimony at trial from a corporate witness, a fact witness, their 30(b)(6) conduct and their privilege instructions should preclude that from happening. The fact they're trying do it through experts, the remedy of that is that portion of the expert testimony, in this case the reports, anything else they're going to offer should be stricken. That's why we styled it this way, because they shouldn't be able to have it both ways on this.

That's it in a nutshell. If you've got questions, obviously, I'm happy to answer them, but I've tried to distill it to address your question.

THE COURT: All right. I'll give you another chance at the end. Let's hear from the other side.

MR. MORIN: Good afternoon, Your Honor. Mike Morin from Latham and Watkins on behalf of the plaintiffs. Maybe I'll try to

explain to you, Your Honor, why we fervently believe that they're both wrong on the facts and the law.

I'll start with the question of 30(b)(6) witness, Your Honor. And we had every intention, and we think we did abide by Your Honor's order. In your Your Honor's order, you made clear that we had to identify all the facts that we had about the similarities and differences that we knew between the products. That's at page 27 of your order, lines 18 through 19. And you did not rule that we had to tell the other side what we had told our lawyers. In other words, the privileged information. You said out with the facts, Mr. Morin, on what all the similarities and differences were.

I will say that what we did instead of having a 30(b)(6) witness having a memory test, we tried to be more transparent than that. If you look at Exhibit 1 to our response, we call it an 80-page supplemental answer. To be more accurate, we added 74 pages in response to your order. We referenced your order, and we said that you asked us to tell all of the

similarities and differences that we knew factually, and we laid it out in 74 pages of excruciating detail, so they had all that information. We just figured the easier and clearer way to do it than have some 30(b)(6) witness either try to memorize it or bring the cheat sheet was to do that.

It is absolutely right that we did not have our witness reveal any privileged information, consistent with both how we understand your order and how we understand the law, but they have underlying facts, all of them.

With respect to the legal issue, I think this is important, Your Honor. We are not going back -- just to be clear and I'll say it on the record here -- we're not going to have a witness say, "Here is why we decided not to sue in 2014." If he's worried about that, I'll represent that in the record now or why we decided not to sue in 2015 subjectively.

But I will tell Your Honor that they ignore all of the law from the Third Circuit that's really important on these points, and I'll point you to a few cases in our brief that

are dispositive on this whole issue about whether we're doing things the wrong way or whether we're trying to have it the wrong way. The Kach versus Hose case, Third Circuit 2009, and it's cited in our brief, makes it clear first of all that even though the cases use and maybe the parties do also the "know or should have known," that it makes it absolutely clear on the discovery rule -- and I'm quoting from the Kach case because this is really important to the overall argument -- that right after they use that language, it says, "The determination at the time at which a claim accrues is an objective inquiry. We ask not what the plaintiff actually knew but what a reasonable person should have known."

And that's what all of these experts are doing. They're looking at what the information was in front of them and saying what a reasonable person should have known. And that Kach case is a 2009 case that's been followed repeatedly for the proposition that even though some of the cases say "know or should have known," that the pure inquiry on the discovery rule on the statute of limitations is an

41

THE COURT:  Thanks very much, everybody.  Take care.

42

C E R T I F I C A T E

STATE OF DELAWARE        )
                                      ) ss:
COUNTY OF NEW CASTLE    )

I, Deanna L. Warner, a Certified Shorthand Reporter, do hereby certify that as such Certified Shorthand Reporter, I was present at and reported in Stenotype shorthand the above and foregoing proceedings in Case Number 20-CV-842-CFC-JLH, *AMO DEVELOPMENT, LLC, et al. Vs. ALCON VISION LLC, et al.*, heard on August 3, 2022.

I further certify that a transcript of my shorthand notes was typed and that the foregoing transcript, consisting of 42 typewritten pages, is a true copy of said DISCOVERY CONFERENCE.

SIGNED, OFFICIALLY SEALED, and FILED with the Clerk of the District Court, NEW CASTLE County, Delaware, this 8th day of August, 2022.


_____
Deanna L. Warner, CSR, #1687
Speedbudget Enterprises, LLC

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,          )
AMO MANUFACTURING USA,         )
LLC, and AMO SALES AND         )
SERVICE, INC.,                 )
                               )
              Plaintiffs,      )
                               )  C.A. No. 20-842-CFC
    v.                         )
                               )
ALCON VISION, LLC, ALCON       )
LABORATORIES, INC., and        )
ALCON RESEARCH, LLC,           )
                               )
              Defendants.      )

Wednesday, August 3, 2022
11:20 a.m.
STATUS CONFERENCE

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

MORRIS NICHOLS ARSHT & TUNNELL
BY:  JACK B. BLUMENFELD, ESQ.

-and-

APPEARANCES CONTINUED:

LATHAM & WATKINS
BY:  MICHAEL A. MORIN, ESQ.
BY:  RACHEL WEINER COHEN, ESQ.

Counsel for the Plaintiff

SHAW KELLER
BY:  ANDREW E. RUSSELL, ESQ.

-and-

KIRKLAND & ELLIS
BY:  GREGG F. LOCASCIO, ESQ.
BY:  NOAH S. FRANK, ESQ.

Counsel for the Defendants

- - - - - - - - - -

P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 11:20 a.m..)

THE COURT:  Good morning.  Be seated.

Mr. Blumenfeld.

MR. BLUMENFELD:  Thank you, Your Honor.  Jack Blumenfeld, Morris Nichols for the plaintiffs.  With me is Mike Morin, Latham & Watkins, Rachael Cohen from Latham & Watkins.  And in the first row, Denise DeFranco from Johnson & Johnson.

THE COURT:  All right.  Thank you.

Mr. Russell, good morning.

MR. RUSSELL:  Good morning, Your Honor.  Andrew Russell from Shaw Keller for the defendants Alcon, and with me are Gregg LoCascio and Noah Frank of Kirkland & Ellis.

THE COURT:  All right.  Great.  Thanks.

All right.  I thought I should have a status conference, see where things are.  I understand you both want to go to trial still in February.  And, you know, to get a sense of the priority of the case, and of the -- also the duration.

I believe you asked for a very long trial, which doesn't seem to be necessary since all these patents are gone.

So who wants to go first?

MR. MORIN:  Your Honor, if I may.

THE COURT:  Sure.

MR. MORIN:  I'd be happy to address whatever you'd like, Your Honor.  I think that the parties are working well together, notwithstanding that we're heading towards trial February 13.  It does look like we're heading towards trial, at least at the present time.

THE COURT:  But not on any patents, right?

MR. MORIN:  That's correct.  The patent case has been stayed by Your Honor pending certain results of IPR proceedings.

THE COURT:  Did you all agree to the stay?

MR. MORIN:  We did.

THE COURT:  Yeah, that's what I thought.

MR. MORIN:  We did.  No, no.  It was a joint stipulation, Your Honor.  That's right.

So the only issues that are going to trial on February 13 are the copyright issues.  Your Honor may recall we had a preliminary injunction hearing on those last May.

THE COURT:  Yes.  Okay.

MR. MORIN:  So those are some of the same issues that are going towards trial.  I think Your Honor

MR. LOCASCIO: Yes.

THE COURT: Okay.

MR. LOCASCIO: So --

THE COURT: And what about this motion you've got pending?

MR. LOCASCIO: Sure.

So your Honor may recall that at the time of preliminary injunction, there had been a motion that was on the calendar a while, which was their motion to strike some defenses that were a collection of equitable defenses, largely pled sort of information and belief without any specifics.

Your Honor said at the time, I'm going to strike that. Actually, you asked if we would withdraw it. Given your indications, we said, yes. And you said that you'd grant leave if and when we had evidence to come in and show that. And so we did.

I recall that was May of 2021. The cutoff was June. We, in discovery from January through the PI and then all the way through the fall, were trying to get information on this core question of what did Johnson & Johnson know about the alleged copyright infringement back in 2014.

At the time, all they had told us coming into the PI was that they had looked at a version of the code that was dated, sort of back then.

And what we subsequently learned, starting in -- they amended the interrogatory responses in response to us pushing, pushing, pushing, September, October November 2021, to identify that ████████████ ██████████████████████████████████████████ ████████████████████ This is all from the log. They didn't give us of these facts in their rog responses. They sort of locked it all under privilege; not work product, just alleged privilege.

And per the log and then per the 30(b)(6) witness, who was actually deposed after the briefing on the motion to amend, which we finally got that witness, a witness on -- what did you know? Why did you wait? If this was so important to you, why would you have sat on this for six years and said nothing about it?

We then amended in January to identify that on laches and delay, acquiescence, and to mitigate -- mitigation of damages. And there's a debate in the papers as to, we're not arguing laches as a bar to the claim, it is a bar to the equitable remedies on the claims. So they're seeking -- one of remedies they're seeking --

THE COURT: So that would only be an issue before me, not the jury?

MR. LOCASCIO: So their damages model, it is,

but it's an open question right now because their damages theories, there are several.

One of them is straight disgorgement, which would be equitable and only to Your Honor. They also have a damages theory that brings in lost profits and other components.

But on this issue of disgorgement in the first instance, that's an issue that's an equitable issue for you, but laches obviously applies as an equitable remedy to that.

The three-year statute of limitations --

THE COURT: Laches would apply in terms of mitigating the amount or are you saying getting rid of the claim?

MR. LOCASCIO: Not getting rid of the claim or the cause of action. Laches and mitigation are both two different defenses of the three that are in the motion to amend.

But the laches issue has two fronts. One is can they recover equitable remedies or seek injunctive relief based on their own delay?

Secondarily --

THE COURT: Which is going to come up no matter what.

MR. LOCASCIO: It has been in this case --

THE COURT: No, no. It's going to come up no matter what, right? I mean, if I consider an injunction, I've got to look at that whether it's pled or not.

You agree with that, right?

MR. MORIN: Yes, Your Honor, in looking at the injunction.

MR. LOCASCIO: And I'll say, actually, I probably should have started on this, which is, these issues, since we amended or we put in our motion to amend, discovery has happened on them all. The experts have weighed in on them all.

So from --

THE COURT: Let me ask, do I really need to address this motion?

MS. COHEN: Yes, Your Honor. Happy to be heard on it at your time.

THE COURT: All right. Go ahead.

MR. LOCASCIO: We ask at this point, given that we've all operated under the fact that it's in Judge Hall, we had the motion to compel happen during -- around the time of the briefing. There was a subsequent one to that because Johnson & Johnson amended, and said that the statute of limitations for copyright is three years.

They've made argument that under the discovery rule, they can go back beyond three years before 2020

13

under a theory that they didn't know and couldn't have known through the exercise of reasonable diligence that this existed.

In response to that, Judge Hall ordered a second deposition of the corporate representative and said, yeah, you can't keep these facts confidential; we have to go into that.

We have a hearing with her this afternoon on a motion to strike some of these issues or seek additional discovery. That's kind of still out there.

But even at that point, when she ordered that discovery, the magistrate and both parties have treated these issues, the delay issue, whether it's laches, mitigation, or acquiescence, as in the case.

And so at this point, from a discovery standpoint, there is no prejudice, of course.

As soon as we had this information in the fall, we kept asking for information. We fought discovery, and then we moved in January. We certainly believe there's good cause there, and under the liberal amendment, it's been in the case since the PI at some level.

Their argument essentially is, when you struck it at the date of the PI, we should have turned around immediately and come back and then asked for leave to amend. And our expectation was you would have said, "Have

14

you got those facts yet?" And we'd say, "No, we keep trying to get them in discovery, and we're going to get them in the next six months."

THE COURT: Let me ask you, though, what do you need from the proposed amendments to put in front of the jury?

MR. LOCASCIO: So -- and this also is a little bit of a question of, I think, on the issue of mitigation and laches as we need it for the jury and for the case, insofar as this issue of delay comes in and mitigating damages.

So let me take mitigation. One of the issues is, okay, if they had raised this six years ago, what actions would we have taken? What would the damages landscape have been?

Their damages argument, despite what you were told at the PI hearing that recall the issue was the products were sold, but they are these IOLs, the lens that goes in your eye. At the time the statement was made, we need a PI because it's speculative that the IOL is linked to the surgery device, but we are not going to seek lost profits on that.

Two years later, they're seeking billions of dollars in lost profits for IOL sales, essentially in perpetuity on every one of these devices.

15

From a mitigation standpoint and why that will go to the jury, if this was what would the world have been like had you raised this when you knew in 2014, when you hired counsel, when you decided not to sue? That's why we need it.

There's also just the preservation of, okay, this is the case as it stands. In the event that we hear an argument that this was an affirmative defense, well, then, Your Honor, it wasn't properly pled.

THE COURT: That what wasn't an affirmative defense?

MR. LOCASCIO: They've argued laches is an affirmative defense.

THE COURT: Oh, okay.

MR. LOCASCIO: Laches, if it is a bar to a claim, okay, which is not a copyright law, it's an issue that needs to be taken into account. It applies to equitable remedies. We don't think it would be out of the case, per se if the amendment wasn't granted. But we all live in the world where we want to make sure we have our belt on and looped up.

So the standard for amendment should be granted here, given the issues in the case, we've not pled with sufficient clarity and specificity. So we've finally got enough facts to be beyond where we were in May 2021. We

16

think it should be granted.

The other aspect of this that will play into the jury side of the case is, at some level, it's -- if you truly thought you owned these copyrights, they didn't register them until September 2020 when they filed suit or you thought they were now worth ████████, you would have said something to us when you knew. And to say now that --

THE COURT: Why do you have to plead that to get it in front of the jury?

MR. LOCASCIO: I don't -- I don't -- it's been in the case, and we've been operating with it. I don't know that it needs to be pled, but on the issue of mitigation or laches --

THE COURT: Why would it have to be pled to get it as mitigation to lost profits or mitigation to get it in front of the jury?

MR. LOCASCIO: I don't necessarily believe it has to. So I don't think -- the outcome of your decision on this motion, I don't think it restricts or changes the plans we put on as far as what evidence would apply, what our summary judgment motions will look like, but they at least suggested it needed to be pled on the laches front.

And so given that, and given the fact that we all live in a world where we want make sure the pleadings

41

MR. MORIN:  Right.

THE COURT:  That's certainly what I inferred from his comments as well.  But if he wants to pursue acquiescence --

MR. MORIN:  That is estoppel argument.

THE COURT:  That's a form of estoppel.

MR. MORIN:  Correct.

THE COURT:  And maybe he doesn't want to.  Are you going to pursue acquiescence?

MR. LOCASCIO:  So this is -- it's pled because, if they are taking the position that they had actually let us know, which is sort of the -- they've said --

THE COURT:  Had let us know?

MR. LOCASCIO:  Johnson & Johnson has taken the position and admitted that they never disclosed to Alcon that they knew in 2014 or believed that the code was copied.

THE COURT:  Right.

MR. LOCASCIO:  They have, around the edges in one or two places, alleged, well, we had these earlier discussions around employee hiring and non-competes.

THE COURT:  Yeah.

MR. LOCASCIO:  That they point to those and say, "Well, in that instance, we said, hey, our products are similar because they're saying the people were working

42

of similar type things."

If they are saying, Johnson & Johnson is saying, "Hey, you were on notice, okay, in this time frame," which is earlier than 2014, our acquiescence defense is, okay, if you -- if Johnson & Johnson knew enough to raise it, and then didn't even follow up on that letter in 2010, but then sat around for nine years, you have acquiesced.

And if this is the 13th defense, Paragraph 510 to 512, he's referring to, Mr. Morin is referring to.  And it says, "As a result of the acquiescence, plaintiffs are not entitled to injunctive relieve for disgorgement of defendant's profits after AMO became aware of its --

THE COURT:  See, but that's disgorgement, which we both -- I think this is my point is, that's in front of me.

MR. LOCASCIO:  So --

THE COURT:  But it may come up in jury trial.  It depends.  I don't know what you're asking.  Are you asking for punitive damages.  I don't know how this works.

Are you asking for punitive damages?

MR. MORIN:  I think we're not asking for punitive damages per se, but I'd need to check with my team before I hold that representation on that.

THE COURT:  Right.

43

MR. MORIN:  But I think there is a mixture in the law, to tell you the truth, of whether disgorgement, not withstanding that it's called an equitable remedy, I think I would defer discussion of whether that goes to the jury until later on until we've --

THE COURT:  Okay.

MR. MORIN:  -- conferred with our friends and looked more at the issue.  I'd like not to commit to that issue yet, Your Honor.

THE COURT:  All right.  So if they're going to withdraw it, I do -- here's what I think.  If they're going to withdraw their opposition and let you amend.  One thing I think has to be absolutely clear is that they get to raise in motions in limine that none of this goes in front of jury.  I mean, and I can decide then.

And frankly, you know, especially given where we are, you know, we have this rule where you get three motions in limine, but I want to be clear.  On this one, you know, I'm not going -- I'm afraid to let you get a fourth automatically, right, because you may only need three.

But in fairness, if, as a practical matter I'm letting this go forward, it would be conditioned on, one, you would have to run the search terms, the previous.  No new search terms.  The previous search terms if they were

44

not run on Hudnall's account, they'd have to run and produce those documents.

And you would agree to that?

MR. LOCASCIO:  I do agree to that.  I'll just, so you have the clarity on this, the context on this.  Hudnall was a witness solely because he was the 30(b)(6) witness offered to answer this question of did we know that the folks had copied it internally.

THE COURT:  I got it.

MR. LOCASCIO:  That's fair.  We'll do it.  We'll do it.

THE COURT:  But you'd do you, and you'd produce it.

And then second, to the extent they move for a motion in limine to preclude the assertion of any defense that you are asking to raise in your amended pleading, right, or evidence related to it, in front of a jury, I'm saying they get a fourth motion in limine on that topic.

In other words, because I'm basically delaying.  And in a way it goes to prejudice you could argue, but they certainly have not articulated a prejudice right now to my satisfaction, right?

But it may come out that they say, look, this was unfair because, you know, they're going to argue something in front of the jury that they have no business

45

arguing in front of a jury.

MR. LOCASCIO: If Your Honor is inclined to say they get an additional MIL based on the --

THE COURT: Only on that topic.

MR. LOCASCIO: Obviously, we would defer to Your Honor on that and don't take issue with it.

I will say that there's a flip side MIL here too, which is, and the reason this is going to come up in front of the jury, just as one data point is, they're arguing on the Johnson & Johnson side that they can seek damages, not just disgorgement, damages, beyond -- prior to the statute of limitations date. Meaning back beyond three years.

THE COURT: Okay.

MR. LOCASCIO: And their argument for that --

THE COURT: But he's shaking his head that they're not.

MR. LOCASCIO: That would be great news if that's the case, but it's not, I don't think.

MR. MORIN: It's a technicality. The statute of limitations doesn't begin to run until the claim accrues. We're saying it accrued earlier.

THE COURT: Gotcha.

MR. MORIN: That the statute of limitations isn't triggered, so I was being specific on the argument.

46

THE COURT: Appreciate it.

MR. LOCASCIO: They are -- on the J&J side, they would disclose that as the discovery rule. Like is their way out of the three-year statute of limitations that they, J&J didn't know and couldn't have known.

And they offer in response on this, experts who say you couldn't have figured out the extent of it, or -- but they've studiously kept under the privilege and not let their witness, their 30(b)(6) witness -- now twice he's been deposed -- answer questions around what did people actually know at J&J, and what diligence did you use for your reasonable diligence, I couldn't have figured it out argument.

And so we're going to come in, whether it's some judgment or a MIL, on -- and we asked you this. We said, are you going to offer to the jury an answer to why you didn't sue us earlier, because that goes to what you thought the value of this copyright was, why you didn't register --

THE COURT: So you're going to -- let me interrupt, just to cut to the chase.

So if I'm understanding this correctly, what you're going to say, you can't all of a sudden come up with that at trial under the guise of something that was they protected from disclosure under privilege --

47

MR. LOCASCIO: And we --

THE COURT: Is that the issue?

MR. LOCASCIO: Exactly, right. And we asked, are you willing to say you're not going to do that?

THE COURT: Right.

MR. LOCASCIO: That we got crickets, and then a no, we're not agreeing not to do that.

And so this issue of what their knowledge was and what diligence they applied and the question of why didn't you sue, is an issue we'll talk to Judge Hall later today, but there's going to be MILs around this issue of their knowledge.

THE COURT: Well, I guess it depends how she rules.

MR. LOCASCIO: That's correct. If she strikes it and says it's out, then I shouldn't need to file a MIL on it. But as it sits right now, I expect there's going to be MILs around things you chose not to share with us and hid, you can't --

THE COURT: Okay.

MR. MORIN: Well, I don't think it's great use of Your Honor's time. I honestly disagree vehemently on the merits with it.

I'm not sure you want to hear arguments on the MIL right now. If you do --

48

THE COURT: No, I mean, I don't mind you saying -- I mean, like, look, I've got to be honest with you. It kind of went like this, through this ear and this ear, okay.

My point being that I got the general -- here's what I take from all this.

MR. MORIN: Yeah.

THE COURT: I take that hotly contested, very skilled lawyers on both sides, and I'm going to have a lot of issues, all right?

And I am just trying to resolve immediately the amendment issue.

MR. MORIN: Yeah. I understand.

THE COURT: And what I take from that is that Johnson & Johnson is not prejudiced, if I let this amendment go.

Now, so far, I haven't read the papers, but what I'm also taking from it is Johnson & Johnson is saying, tell you what, we'll withdraw it, take it off your plate, as long as they're going to do this Hudnall custodial search, and you're going to get to raise these issues to make sure that, by allowing the amendment, you didn't open the door to evidence coming in front of the jury that otherwise wouldn't.

MR. MORIN: Yeah. It's effectively -- I'll add

MR. MORIN:  That was our first time back in court, Your Honor.

MR. LOCASCIO:  That was the day the mask mandate lifted from the feds.

MR. MORIN:  In the middle of the hearing.

MR. LOCASCIO:  Yeah, in the middle of the hearing the notice went around.

THE COURT:  Wait, it was --

MR. MORIN:  May of 2021.

THE COURT:  That was when we had the hearing?

MR. LOCASCIO:  Yes, Your Honor.

MR. MORIN:  Yes, Your Honor.

THE COURT:  And we had just lifted the mandate. Interesting.

MR. MORIN:  It's gone fast.

THE COURT:  Well, see, I've lost all sense of time.  I thought it was before Covid.

MR. LOCASCIO:  No.  That was the first time any of us had in-person hearings since March of 2020.

MR. MORIN:  You put us in the hot tub and grilled both of us for a long time.

THE COURT:  That's pretty funny.  All right. Well, it's nice to see you all.  Have a good day, everybody.

(The proceedings concluded at 12:29 p.m.)

CERTIFICATE OF COURT REPORTER

    I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

                          /s/ Bonnie R. Archer
                          Bonnie R. Archer
                          Official Court Reporter
                          U.S. District Court

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,

Defendants.

C.A. No. 20-842-CFC

ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,

Counterclaim-Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

Counterclaim-Defendants.

## **DEFENDANTS' EXHIBIT LIST**

Pursuant to D. Del. LR 16.3(c) and the Parties' Stipulation (*see* Oct. 21, 2022 email from C. Homer to J. Lomeo), Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC, ("Defendants") identify the following exhibits Alcon intends to or may introduce at trial. Defendants reserve the right to introduce any of the exhibits listed herein, and Defendants reserve the right to amend and/or supplement this list, including in response to any exhibit identified by AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc., ("Plaintiffs").

Respectfully,
OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: November 17, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russel (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on November 17, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com



Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen

Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com


S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendant*

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-001 | | | Alcon LenSx Femtosecond Laser System |
| DX-002 | | | D.I. 409 Stipulation Regarding Agreed Facts |
| DX-003 | | | J&J 6th Supplemental Response to 1st Set of ROGs (No. 5) |
| DX-004 | | | Letter from Foust to Endicott, dated 07.14.2020 |
| DX-005 | BS_00000209 | BS_00000209 | Presentation - Abbott Software Status Update iFS Advanced Femtosecond Laser |
| DX-006 | BS_00000007 | BS_000000007 | Presentation 2010 Software Summit, iFS Advanced Femotosecond Laser 2009 Accomplishments |
| DX-007 | | | Website - PanOptix patient stories, available at https://www.panoptixlens.co.uk/patient-stories |
| DX-008 | ALCON_LENSX002914 | ALCON_LENSX003034 | Stock Purchase Agreement, dated 7/6/2010 |
| DX-009 | ALCON_LENSX003341 | ALCON_LENSX003440 | Document - Tab 04 of LenSx stock purchase agreement |
| DX-010 | ALCON_LENSX262789 | ALCON_LENSX262789 | Email - Item 4.1.22, from Shelley Thunen, May 6, 2010 |
| DX-011 | ALCON_LENSX003468 | ALCON_LENSX000493 | Escrow Agreement 8/18/2010 |
| DX-012 | ALCON_LENSX003494 | ALCON_LENSX003509 | LenSx Acquisiton Exhibit H - Form Employment Agreement |
| DX-013 | ALCON_LENSX053474 | ALCON_LENSX053488 | Employment Agreement between K. Vardin and LenSx Lasers in connection with Stock Purchase Agreement, dated August 7, 2010 |
| DX-014 | ALCON_LENSX053496 | ALCON_LENSX053496 | Employee Handbook Acknowledgment Form - Peter Goldstein, dated December 30, 2008 |
| DX-015 | ALCON_LENSX053626 | ALCON_LENSX053628 | NDA and Developments Agreement between LenSx & Goldstein, executed May 9, 2008 |
| DX-016 | ALCON_LENSX053654 | ALCON_LENSX053656 | Letter - R. Kurtz to I. Hegedus, Alcon Offer of Employment |
| DX-017 | ALCON_LENSX053670 | ALCON_LENSX053679 | Consulting Agreement between I. Hegedus and Alcon, signed May 6, 2013 |
| DX-018 | ALCON_LENSX053705 | ALCON_LENSX053707 | Non-Disclosure and Developments Agreement - Chaudary, executed September 11, 2008 |
| DX-019 | ALCON_LENSX056167 | ALCON_LENSX056182 | Employment Agreement between A. Juhasz and LenSx Lasers in connection with Stock Purchase Agreement, dated August 11, 2010 |
| DX-020 | ALCON_LENSX056284 | ALCON_LENSX056299 | Employment Agreement between R. Kurtz and LenSx Lasers in connection with Stock Purchase Agreement, dated August 9, 2010 |
| DX-021 | ALCON_LENSX056490 | ALCON_LENSX056504 | Employment Agreement between K. Watanabe and LenSx Lasers in connection with Stock Purchase Agreement, dated August 9, 2010 |
| DX-022 | ALCON_LENSX1049910 | ALCON_LENSX1049917 | Consulting Agreement between Alcon LenSx and Blaq Labs LLC, dated December 1, 2012 |
| DX-023 | ALCON_LENSX262584 | ALCON_LENSX262585 | Memo - ███████████████████████████, dated Feb. 24, 2021 |
| DX-024 | HU-HEG_0000002 | HU-HEG_0000007 | Employment Agreement between IntraLase Corp. and Imre Hegedus, dated September 27, 1999 |
| DX-025 | HU-HEG_0000008 | HU-HEG_0000017 | Part Time Employment Agreement between Imre Hegedus and IntraLase Corp., dated December 16, 2000 |
| DX-026 | HU-HEG_0000020 | HUHEG_0000024 | ██████████████████ between Imre Hegedus and IntraLase Corp., dated November 14, 2002 |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-027 | HU-HEG_0000025 | HU-HEG_0000036 | Consulting Agreement between IntraLase Corp. and Imre Hegedus, effective November 15, 2002 |
| DX-028 | HU-HEG_0000061 | HU-HEG_0000073 | Consulting Agreement between LenSx Lasers Inc and HegeSoft BT, dated August 4, 2008 |
| DX-029 | HU-HEG_0000718 | HU-HEG_0000722 | Letter to I. Hegedus - ███████████████████████, dated February 24, 2021 |
| DX-030 | JJSV_00540166 | JJSV_00540199 | Consulting Agreement between IntraLase Corp. and JKS & Associates, effective January 18, 2000 |
| DX-031 | KURTZ00002032 | KURTZ00002041 | IntraLase Corp. Consulting Agreement between IntraLase Corp. and Ron Kurtz, M.D., effective December 1, 2005 |
| DX-032 | KV000060 | KV000060 | Alcon Departing Employee Notice Signed by Vardin |
| DX-033 | KV000062 | KV000062 | Employment Agreement between K. Vardin and LenSx |
| DX-034 | ALCON_LENSX3842141 | ALCON_LENSX3842155 | Employment Agreement between Peter Goldstein and Alcon, 2010 |
| DX-035 | ALCON_LENSX3813345 | ALCON_LENSX3813385 | Document - LenSx Employee Handbook |
| DX-036 | | | Homer Decl. Ex. 13 - Goldstein Employment Agreement with IntraLase, January 3, 2000 |
| DX-037 | SUZUKI-0026401 | SUZUKI-0026419 | Consulting Agreement between Suzuki and IntraLase, January 20, 2000 |
| DX-038 | ALCON_LENSX3805218 | ALCON_LENSX3805222 | Email from K. Komandursathyarajan to S. Lertsuntivit, ███████████████████████ ████████████, February 23, 2022 |
| DX-039 | ALCON_LENSX3805223 | ALCON_LENSX3805225 | HCL Technologies Corporate Services Ltd. Invoice No. 57100596 dated 09.06.2021 |
| DX-040 | ALCON_LENSX3805226 | ALCON_LENSX3805229 | HCL Technologies Corporate Services Ltd. Invoice No. 57100597 dated 09.06.2021 |
| DX-041 | ALCON_LENSX3805230 | ALCON_LENSX3805236 | HCL Technologies Corporate Services Ltd. Invoice No. 57105975 dated 09.29.2021 |
| DX-042 | ALCON_LENSX3805234 | ALCON_LENSX3805237 | HCL Technologies Corporate Services Ltd. Invoice No. 57110874 dated 10.28.2021 |
| DX-043 | ALCON_LENSX3805238 | ALCON_LENSX3805241 | HCL Technologies Corporate Services Ltd. Invoice No. 57115693 dated 11.26.2021 |
| DX-044 | ALCON_LENSX3805242 | ALCON_LENSX3805245 | HCL Technologies Corporate Services Ltd. Invoice No. 57124752 dated 12.30.2021 |
| DX-045 | ALCON_LENSX3805246 | ALCON_LENSX3805248 | HCL Technologies Corporate Services Ltd. Invoice No. 57128946, dated 01.28.2022 |
| DX-046 | ALCON_LENSX3809664 | ALCON_LENSX3809666 | HCL Technologies Corporate Services Ltd. Invoice No. 57143147 dated 03.27.2022 |
| DX-047 | ALCON_LENSX3809668 | ALCON_LENSX3809670 | HCL Technologies Corporate Services Ltd. Invoice No. 57149058 dated 04.26.2022 |
| DX-048 | ALCON_LENSX3810086 | ALCON_LENSX3810088 | HCL Technologies Corporate Services Ltd. Invoice No. 57157629 dated 05.27.2022 |
| DX-049 | ALCON_LENSX3805249 | ALCON_LENSX3805250 | Spreadsheet - Associate Listing with Hourly Loads (Teordorescu Ex. 4) |
| DX-050 | ALCON_LENSX3805251 | ALCON_LENSX3805262 | Document - LenSx Software 2.31G Software Change Requests |
| DX-051 | ALCON_LENSX3810089 | ALCON_LENSX3810089 | Spreadsheet - Listing with Hourly Loads (Teodorescu Ex. 23) |
| DX-052 | ALCON_LENSX3810093 | ALCON_LENSX3810109 | Software Technical Review for 2.31G |
| DX-053 | ALCON_LENSX3810120 | ALCON_LENSX3810135 | Software Code Review for 2.31G |
| DX-054 | ALCON_LENSX3810136 | ALCON_LENSX3810140 | Software Release Form for 2.31G |
| DX-055 | ALCON_LENSX3810141 | ALCON_LENSX3810144 | Service Bulletin: LenSx Laser Softward Installation Version 2.31G |
| DX-056 | ALCON_LENSX3810157 | ALCON_LENSX3810170 | LenSx Softward Change Plan (SCP) for 2.31G |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-057 | ALCON_LENSX3810171 | ALCON_LENSX3810225 | Service Bulletin: LenSx Laser Softward Installation Version 2.31G - Revision A |
| DX-058 | ALCON_LENSX3810110 | ALCON_LENSX3810114 | Alcon Reseach, LLC Design History File |
| DX-059 | ALCON_LENSX3810115 | ALCON_LENSX3810119 | Alcon Reseach, LLC Design History File |
| DX-060 | ALCON_LENSX3810145 | ALCON_LENSX3810156 | Software Change Closure Report (SCCR) |
| DX-061 | ALCON_LENSX3810090 | ALCON_LENSX3810090 | Software Version History (SVH) |
| DX-062 | ALCON_LENSX3809663 | ALCON_LENSX3809663 | Spreadsheet - Project hours |
| DX-063 | | | CV of Stephen Wicker |
| DX-064 | JJSV_01130301 | JJSV_01130319 | Document - Printing Documentation, QNX |
| DX-065 | | | File Descriptors – Harvard CS 61 Assignment 2018.pdf |
| DX-066 | | | For Loops in C and C++ - GeeksforGeeks.pdf |
| DX-067 | | | Document - Getting Grabby with the QNX Photon microGUI |
| DX-068 | | | Document - Knowledge Base, Trying to Make a Timeout PtAlert |
| DX-069 | | | Document - PhCursorInfo_t buf documentation |
| DX-070 | | | Baer - Source Code Appendix S2 |
| DX-071 | | | Baer - Source Code Appendix S4 |
| DX-072 | | | Document - Standard C Library Functions Table, by Name |
| DX-073 | | | Book excerpt - Brian W. Kerninghan & Dennis M. Ritchie, The C Programming Language (2d ed. 1988) |
| DX-074 | | | Book excerpt - Dominic Jordan & Peter Smith, Mathematical Techniques: An Introduction for the Engineering, Physical, and Mathematical Sciences (2008) |
| DX-075 | | | Article - Michael Jonas, A Cryptographic Sandbox for an Introductory Security Course in Information Technology, 29 Journal of Computer Scis. in Colleges (2014)  available at https://dl.acm.org/doi/abs/10.5555/2602724.2602738 |
| DX-076 | | | Book excerpt - David Kahn, The Codebrakers: The Story of Secret Writing, The MacMillan Company (1967) |
| DX-077 | | | Book excerpt - Michael Barr & Anthony Massa, Programming Embedded Systems: With C and GNU Development Tools (2d ed. 2006) |
| DX-078 | | | Article - Duke, S.O.O. & Obidinnu, J.N., An Improved Cocomo Software Cost Estimation Model, Global Journal of Pure and Applied Sciences, Vol. 16, No. 4 2010:479-492. |
| DX-079 | | | Table - 2.7.2 Cocomo II Version Parameter Values |
| DX-080 | | | Book - Barry W. Boehm et al., Software Cost Estimation with COCOMO II, Upper Saddle River: Prentice Hall, excerpts (2000) |
| DX-081 | | | Article - Winston Royce, "Managing the Development of Large Software Systems, Proceedings of IEEE WESCON, August 1970 |
| DX-082 | | | Book - Jones, Caper, "Software Engineering Best Practices" |
| DX-083 | | | Website - readelf Available at https://ftp.gnu.org/old-gnu/Manuals/binutils-2.12/html_chapter/binutils_14.html |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-084 | | | Website - Strings Available at https://ftp.gnu.org/old-gnu/Manuals/binutils-2.12/html_node/binutils_9.html |
| DX-085 | | | Website - PtWidget Available at https://www.qnx.com/developers/docs/qnx_4.25_docs/photon114/widget_ref/ptwidget.html |
| DX-086 | | | Website - Client-Server Model Available at https://www.geeksforgeeks.org/client-server-model/ |
| DX-087 | | | Intel: Altera Quartus Prime Standard Edition Settings File Reference Manual Available at https://www.intel.com/content/www/us/en/docs/programmable/683084/current/pci-io.html |
| DX-088 | | | Printing Photon microGUI. QNX Software Systems Ltd. Available online at http://users.pja.edu.pl/~jms/qnx/help/ab/prog_guide/printing.html |
| DX-089 | | | Website - How PCI Works https://computer.howstuffworks.com/pci.htm |
| DX-090 | | | Website - ServerWatch: What is a Client-Server Model? A Guide to Client Server Architecture, Available at https://www.serverwatch.com/guides/client-server-model/#how-does-the-client-servermodel-work |
| DX-091 | | | Website - Writing Device Drivers  https://docs.oracle.com/cd/E19683-01/806-5222/hwovr-25/index.html |
| DX-092 | | | Wicker Reply - Appendix A: Referenced Webpages |
| DX-093 | | | Wicker Reply- Appendix B: Book - Harbison, Samuel P. & Steele, Jr., Guy L., C: A Reference Manual 5th Edition |
| DX-094 | | | Wicker Reply - Appendix C: ISO C Language Standard |
| DX-095 | | | Wicker Reply: Exhibit A |
| DX-096 | | | Wicker Rebuttal: Exhibit B |
| DX-097 | | | D.I. 86-21, Threads and Processes |
| DX-098 | | | D.I. 86-4, Laser Refractive Cataract Surgery with the LenSx Laser at 15 |
| DX-099 | | | D.I. 86-5, Richard Potvin & Sarah Makari, Cataract Surgery and the LenSx |
| DX-100 | | | Wicker Exhibit 5:Comparison Between J&J's Asserted Code in the IntraLase/iFS Software Version 1.00 and Version 2.02 |
| DX-101 | JJSV_01111692 | JJSV_01112358 | QNX Photon Application Builder Documentation |
| DX-102 | | | Nikolaus Baer Opening Report -- Appendix G: Composition of LenSx Codebases |
| DX-103 | ALCON_LENSX1058339 | ALCON_LENSX1058341 | ID-057 - Software Revision History - LenSx Laser System sigend again.pdf |
| DX-104 | JJSV_00944928 | JJSV_00944941 | Document - 2018 J&J Surgical Vision Sales Incentive Plan Document, effective Jan 1, 2018 |
| DX-105 | | | LenSx 2.31G Prod3 - Produced on the Source Code Computer at ███████ |

**Highly Confidential - Attorney Eyes Only**

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-106 | | | LenSx 2.31G Prod2 - Produced on the Source Code Computer at ███ |
| DX-107 | | | LenSx 2.31G Drop1 - Produced on the Source Code Computer at ███ |
| DX-108 | | | iFS v2.70, Produced on the Source Code Computer at: ███ |
| DX-109 | | | iFS v2.60, Produced on the Source Code Computer at: ███ |
| DX-110 | | | Jeff Parmet Dispute Soft Biography |
| DX-111 | | | ███ professional biography |
| DX-112 | | | LinkedIn of ███ |
| DX-113 | | | LinkedIn of ███ |
| DX-114 | | | LinkedIn of ███ |
| DX-115 | | | LinkedIn of ███ |
| DX-116 | | | ███ Biography |
| DX-117 | | | ███ Biography |
| DX-118 | ALCON_LENSX1122238 | ALCON_LENSX1122486 | 2012 Cataract Surgical Equipment Market Scope Report |
| DX-119 | ALCON_LENSX2851426 | ALCON_LENSX2851846 | 2015 Global IOL Market Scope Report |
| DX-120 | JJSV_00022416 | JJSV_00022694 | 2020 Premium Cataract Surgery Market Scope Report |
| DX-121 | JJSV_00022753 | JJSV_00022753 | 2020 Cataract Surgical Equipment Market Scope Report |
| DX-122 | JJSV_00399003 | JJSV_00399260 | 2013 Cataract Surgical Equipment Market Scope Report |
| DX-123 | JJSV_00408514 | JJSV_00408681 | 2020 Ophthalmic Laser Market Scope Report |
| DX-124 | JJSV_00409536 | JJSV_00409804 | 2015 Cataract Surgical Equipment Market Scope Report |
| DX-125 | JJSV_00417468 | JJSV_00417491 | Q1-2011 Cataract Quarterly Update |
| DX-126 | JJSV_00418158 | JJSV_00418189 | Q4-2015 Cataract Quarterly Update |
| DX-127 | JJSV_01050119 | JJSV_01050393 | 2020 Cataract Surgical Equipment Market Scope Report |
| DX-128 | JJSV_01117762 | JJSV_01118162 | 2021 Global IOL Market Scope Report |
| DX-129 | JJSV_01118515 | JJSV_01118795 | 2021 Cataract Surgical Equipment Market Scope Report |
| DX-130 | JJSV_01118796 | JJSV_01118835 | Q4-2021 Cataract Quarterly Update |
| DX-131 | ALCON_LENSX1809454 | ALCON_LENSX1809504 | Q2-2019 Cataract Quarterly Update |
| DX-132 | ALCON_LENSX1810155 | ALCON_LENSX1810206 | Q2-2018 Cataract Quarterly Update |
| DX-133 | ALCON_LENSX1821001 | ALCON_LENSX1821052 | Q3-2019 Cataract Quarterly Update |
| DX-134 | ALCON_LENSX1859286 | ALCON_LENSX1859337 | Q2-2020 Cataract Quarterly Update |
| DX-135 | ALCON_LENSX2903366 | ALCON_LENSX2903411 | Q2-2016 Cataract Quarterly Update |
| DX-136 | ALCON_LENSX709741 | ALCON_LENSX709785 | Q3-2015 Cataract Quarterly Update |

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-137 | ALCON_LENSX709788 | ALCON_LENSX709832 | Q2-2015 Cataract Quarterly Update |
| DX-138 | ALCON_LENSX709833 | ALCON_LENSX709877 | Q1-2015 Cataract Quarterly Update |
| DX-139 | ALCON_LENSX709878 | ALCON_LENSX709921 | Q4-2014 Cataract Quarterly Update |
| DX-140 | ALCON_LENSX709992 | ALCON_LENSX710043 | Q1-2018 Cataract Quarterly Update |
| DX-141 | ALCON_LENSX714493 | ALCON_LENSX714543 | Q4-2019 Cataract Quarterly Update |
| DX-142 | ALCON_LENSX714544 | ALCON_LENSX714600 | Q4-2018 Cataract Quarterly Update |
| DX-143 | ALCON_LENSX714747 | ALCON_LENSX714987 | 2019 Premium Cataract Surgery Market Scope Report |
| DX-144 | ALCON_LENSX966009 | ALCON_LENSX966064 | Q4-2017 Cataract Quarterly Update |
| DX-145 | JJSV_00417239 | JJSV_00417267 | Q3-2012 Cataract Quarterly Update |
| DX-146 | JJSV_00417268 | JJSV_00417297 | Q1-2013 Cataract Quarterly Update |
| DX-147 | JJSV_00417298 | JJSV_00417326 | Q3-2013 Cataract Quarterly Update |
| DX-148 | JJSV_00417327 | JJSV_00417355 | Q4-2013 Cataract Quarterly Update |
| DX-149 | JJSV_00417356 | JJSV_00417386 | Q1-2014 Cataract Quarterly Update |
| DX-150 | JJSV_00417387 | JJSV_00417417 | Q2-2014 Cataract Quarterly Update |
| DX-151 | JJSV_00417468 | JJSV_00417491 | Q1-2011 Cataract Quarterly Update |
| DX-152 | JJSV_00417514 | JJSV_00417544 | Q1-2016 Cataract Quarterly Update |
| DX-153 | JJSV_00417545 | JJSV_00417572 | Q1-2017 Cataract Quarterly Update |
| DX-154 | JJSV_00417612 | JJSV_00417650 | Q1-2019 Cataract Quarterly Update |
| DX-155 | JJSV_00417651 | JJSV_00417691 | Q1-2020 Cataract Quarterly Update |
| DX-156 | JJSV_00417728 | JJSV_00417746 | Q2-2010 Cataract Quarterly Update |
| DX-157 | JJSV_00417747 | JJSV_00417776 | Q2-2011 Cataract Quarterly Update |
| DX-158 | JJSV_00417777 | JJSV_00417805 | Q2-2012 Cataract Quarterly Update |
| DX-159 | JJSV_00417949 | JJSV_00417969 | Q3-2010 Cataract Quarterly Update |
| DX-160 | JJSV_00417970 | JJSV_00418002 | Q3-2016 Cataract Quarterly Update |
| DX-161 | JJSV_00418003 | JJSV_00418042 | Q3-2018 Cataract Quarterly Update |
| DX-162 | JJSV_00418083 | JJSV_00418121 | Q3-2020 Cataract Quarterly Update |
| DX-163 | JJSV_00418122 | JJSV_00418139 | Q4-2010 Cataract Quarterly Update |
| DX-164 | JJSV_00418140 | JJSV_00418157 | Q4-2011 Cataract Quarterly Update |
| DX-165 | JJSV_00418158 | JJSV_00418189 | Q4-2015 Cataract Quarterly Update |
| DX-166 | JJSV_00418190 | JJSV_00418223 | Q4-2016 Cataract Quarterly Update |
| DX-167 | JJSV_01118796 | JJSV_01118835 | Q4-2021 Cataract Quarterly Update |
| DX-168 | JJSV_00450846 | JJSV_00451115 | Document - 2014 Cataract Surgical Equipment Market Report |
| DX-169 | JJSV_00413967 | JJSV_00414241 | Document - 2019 Cataract Surgical Equipment Market Report |
| DX-170 | JJSV_00447245 | JJSV_00447437 | 2009 Cataract Equipment for Mark Forchette.pdf |
| DX-171 | JJSV_00448205 | JJSV_00448355 | 2007 Cataract Surgical Equipment.pdf |
| DX-172 | JJSV_00450846 | JJSV_00451115 | 2014 Cataract Equipment Report.pdf |
| DX-173 | ALCON_LENSX1051219 | ALCON_LENSX1051219 | Global ATIOL Penetration & Historical Product Launches |
| DX-174 | ALCON_LENSX1124845 | ALCON_LENSX1124845 | Spreadsheet - Alcon LenSx Lasers & PIs Combined for Month Ended November 30, 2012 |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-175 | ALCON_LENSX212406 | ALCON_LENSX212437 | Document - Financial Statements of LenSx Lasers Inc., Years Ended December 31, 2009 and 2008 And the Period from August 30, 2007 (Inception) to December 31, 2009, Ernst & Young |
| DX-176 | ALCON_LENSX2142399 | ALCON_LENSX2142462 | Alcon "Management Reporting US Surgical November 2021 |
| DX-177 | ALCON_LENSX214873 | ALCON_LENSX214897 | Spreadsheet - 2010 LenSx Budget Rollup |
| DX-178 | ALCON_LENSX2600501 | ALCON_LENSX2600501 | Spreadsheet - LenSx FTE |
| DX-179 | ALCON_LENSX3595202 | ALCON_LENSX3595202 | Spreadsheet - Global Sx Franchise PL |
| DX-180 | ALCON_LENSX3595345 | ALCON_LENSX3595345 | Spreadsheet re Lensx Lasers, Inc.Balance Sheet December 31, 2008 |
| DX-181 | ALCON_LENSX3595386 | ALCON_LENSX3595386 | Spreadsheet re 2009 Balance Sheet, 2009 P&L Summary, and 2009 Cash Flow |
| DX-182 | ALCON_LENSX3804553 | ALCON_LENSX3804553 | Spreadsheet re Q -Monthly Performance 2014-11 |
| DX-183 | ALCON_LENSX3804554 | ALCON_LENSX3804555 | Spreadsheet  re LenSx TPCs 2012-2014 |
| DX-184 | ALCON_LENSX3805687 | ALCON_LENSX3805687 | Spreadsheet re All LenSx APMR By Global US and Country 2014 - 2022 |
| DX-185 | ALCON_LENSX3805689 | ALCON_LENSX3805689 | Spreadsheet re LenSX Full Year R&D Cost 2011 - 2014 (JDE MKT771) |
| DX-186 | ALCON_LENSX3805690 | ALCON_LENSX3805690 | Spreadsheet of  Lensx Program cost 2015 - 2021 Actuals (project reported) |
| DX-187 | ALCON_LENSX3805691 | ALCON_LENSX3805691 | Spreadsheet re LenSx Refeshed Data |
| DX-188 | ALCON_LENSX3809661 | ALCON_LENSX3809661 | Spreadsheet re GW - by Individual (Employee Personnel Cost Details) |
| DX-189 | ALCON_LENSX3809662 | ALCON_LENSX3809662 | Spreadsheet re Overhead FTE Rate Analysis (Lake Forest) |
| DX-190 | ALCON_LENSX3809667 | ALCON_LENSX3809667 | Spreadsheet re COGS Details by Functional Area |
| DX-191 | ALCON_LENSX713280 | ALCON_LENSX713280 | Spreadsheet re LenSx APL residual Profit_June YTD 2020 |
| DX-192 | ALCON_LENSX713281 | ALCON_LENSX713281 | Spreadsheet re LenSx APL residual Profit_June YTD 2020 & FY19 |
| DX-193 | ALCON_LENSX713282 | ALCON_LENSX713288 | Spreadsheet re 2014 - 2019 LenSx APA Royalty Model |
| DX-194 | ALCON_LENSX716308 | ALCON_LENSX716407 | Disclosure Schedules of LenSx Lasers, Inc. in connection with the Stock Purchase Agreement Between Alcon Holdings, Inc. and LenSx Lasers, Inc. and The Stockholders Listed Herein and William Link and James Garvey as the Seller's Representatives Dated July 6, 2010.  Updated August 18, 2010 |
| DX-195 | ALCON_LENSX722657 | ALCON_LENSX722681 | Spreadsheet re LenSx Update - Status and Earnouts (2) |
| DX-196 | ALCON_LENSX723637 | ALCON_LENSX723675 | Spreadsheet re LenSx Update - 1.3.13 |
| DX-197 | ALCON_LENSX737337 | ALCON_LENSX737377 | Spreadsheet re LenSx Update - 2 .7 .13 |
| DX-198 | ALCON_LENSX758753 | ALCON_LENSX758789 | Spreadsheet re LenSx Upside 3 .19. 13 |
| DX-199 | ALCON_LENSX762608 | ALCON_LENSX762642 | Spreadsheet re LenSx Update - 4.23.13 |
| DX-200 | ALCON_LENSX776760 | ALCON_LENSX776794 | Spreadsheet re LenSx Update May 2013 |
| DX-201 | ALCON_LENSX816580 | ALCON_LENSX816614 | Spreadsheet re LenSx Update June 2013 |
| DX-202 | ALCON_LENSX816891 | ALCON_LENSX816925 | Spreadsheet re LenSx Update 2014 by Month |
| DX-203 | ALCON_LENSX817456 | ALCON_LENSX817490 | Spreadsheet re LenSx Update - July 2013 |
| DX-204 | ALCON_LENSX817495 | ALCON_LENSX817529 | Spreadsheet re Copy of LenSx Update July 2013 |
| DX-205 | ALCON_LENSX887179 | ALCON_LENSX887213 | Spreadsheet re LenSx Update - Nov. 2013 - 12.9.2013 |
| DX-206 | ALCON_LENSX887260 | ALCON_LENSX888733 | Spreadsheet re LenSx Update - Dec. 2013-01.06.2014 |
| DX-207 | ALCON_LENSX937988 | ALCON_LENSX938022 | Spreadsheet re LenSx Update - 02.20.2014 |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-208 | ALCON_LENSX938293 | ALCON_LENSX938327 | Spreadsheet re LenSx Update - Mar. 2014 |
| DX-209 | ALCON_LENSX938574 | ALCON_LENSX938608 | Spreadsheet re LenSx Update - Apr. 2014 |
| DX-210 | ALCON_LENSX940019 | ALCON_LENSX940053 | Spreadsheet re Copy of LenSx Update - May 2014(2) |
| DX-211 | ALCON_LENSX940199 | ALCON_LENSX940233 | Spreadsheet re LenSx Update - Jun. 2014 |
| DX-212 | ALCON_LENSX940691 | ALCON_LENSX940725 | Spreadsheet re LenSx Update - Jul. 2014 |
| DX-213 | ALCON_LENSX940737 | ALCON_LENSX940771 | Spreadsheet re LenSx Update - Aug. 2014 |
| DX-214 | JJSV_00020373 | JJSV_00020373 | Spreadsheet - Listing of J&J Install Base of Catalys |
| DX-215 | JJSV_00020385 | JJSV_00020385 | Spreadsheet - JJSV P&L Dec 2013 |
| DX-216 | JJSV_00020399 | JJSV_00020399 | Spreadsheet - Profit and Loss Statement for Period Ending 12/2017 |
| DX-217 | JJSV_00020428 | JJSV_00020428 | Spreadsheet - Sales Reporting |
| DX-218 | JJSV_00403742 | JJSV_00403742 | Spreadsheet - cataract consumables market share |
| DX-219 | JJSV_00403743 | JJSV_00403743 | Spreadsheet - FLACS market share |
| DX-220 | JJSV_01094484 | JJSV_01094484 | Spreadsheet - cataract revenue |
| DX-221 | JJSV_01094934 | JJSV_01094938 | Memo - Intralase Budget Schedules |
| DX-222 | JJSV_01094949 | JJSV_01094951 | Intralase Final Budget |
| DX-223 | JJSV_01095036 | JJSV_01095248 | IntraLase Corp. Operating Budget for 2002, dated March 2002 |
| DX-224 | ALCON_LENSX027022 | ALCON_LENSX027022 | Spreadsheet - LenSx financial summary |
| DX-225 | ALCON_LENSX004231 | ALCON_LENSX004233 | Spreadsheet - LenSx financial summary |
| DX-226 | ALCON_LENSX3804547 | ALCON_LENSX3804547 | Spreadsheet - LenSx service financials |
| DX-227 | ALCON_LENSX3804964 | ALCON_LENSX3804966 | Spreadsheet - LenSx tech service P&L |
| DX-228 | ALCON_LENSX0995119 | ALCON_LENSX0995119 | Spreadsheet - [redacted] |
| DX-229 | ALCON_LENSX0995118 | ALCON_LENSX0995118 | Spreadsheet - [redacted] |
| DX-230 | ALCON_LENSX0995124 | ALCON_LENSX0995124 | Spreadsheet - [redacted] |
| DX-231 | ALCON_LENSX0995117 | ALCON_LENSX0995117 | Spreadsheet - [redacted] |
| DX-232 | ALCON_LENSX0995120 | ALCON_LENSX0995120 | Spreadsheet - [redacted] |
| DX-233 | ALCON_LENSX3805708 | ALCON_LENSX3805708 | Spreadsheet - Consumable sales |
| DX-234 | ALCON_LENSX1049960 | ALCON_LENSX1049960 | Spreadsheet - Post-2013 IOL sales data |
| DX-235 | ALCON_LENSX1049959 | ALCON_LENSX1049959 | Spreadsheet - Pre-2013 IOL sales data |
| DX-236 | ALCON_LENSX1049958 | ALCON_LENSX1049958 | Spreadsheet - Historical IOL market share data |
| DX-237 | ALCON_LENSX3810036 | ALCON_LENSX3810036 | Spreadsheet - OUS IOL royalty summary |
| DX-238 | JJSV_01094684 | JJSV_01094684 | Spreadsheet - 2007 budget plan |
| DX-239 | | | Davis Opening: Appendix B: Total LenSx® R&D Expenses, 2007-2020 |
| DX-240 | | | Davis Opening Appendix C: Cost Related to the Development and V&V of FS1/FS2 Software |
| DX-241 | | | Davis Opening Appendix D: IntraLase Corp.'s R&D Expenses, 1997-April 2004 |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-242 | | | Davis Opening Exhibit 3: Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code as a Percent<br>of Cumulative LenSx® R&D Expenses Through 2000 |
| DX-243 | | | Davis Opening Exhibit 4: Cost to Develop FS1/FS2 Software as a Percent of Total IntraLase Corp. R&D<br>Expenses Through April 2004 |
| DX-244 | | | Davis Rebuttal Appendix A: LenSx® Revenue and Gross Profit |
| DX-245 | | | Davis Rebuttal Appendix B: Alcon Surgical COGS, Not Applied at a Product Level |
| DX-246 | | | Davis Rebuttal Appendix C: LenSx® Royalty Payments |
| DX-247 | | | Davis Rebuttal Appendix D: Alcon Surgical Marketing & Selling Expenses and General & Administrative<br>Expenses |
| DX-248 | | | Davis Rebuttal Appendix E: Analysis of Alcon's IOL Sales |
| DX-249 | | | Davis Rebuttal Appendix F: IOL Gross Profit Margin |
| DX-250 | | | Davis Rebuttal Appendix G: Alcon's ATIOL Market Share |
| DX-251 | | | Davis Rebuttal Appendix H: Summary of Market Scope Data |
| DX-252 | | | Davis Rebuttal Appendix I: Financial Data for Lost Profits Calculations |
| DX-253 | | | Davis Rebuttal Appendix J: Profits on IOLs Earned by Named Alcon Defendants |
| DX-254 | | | Davis Rebuttal Exhibit 3: Apportioned LenSx® Profits |
| DX-255 | | | Davis Rebuttal Exhibit 4: Adjustments to Ms. Stamm's Calculations of Lost Profits |
| DX-256 | | | Davis Rebuttal Exhibit 5: Apportioned IOL Profits (Based on Ms. Stamm's Calculation of Alcon's IOL<br>Pull-Through Revenue) |
| DX-257 | | | Davis Reply Appendix A: Difference Between Actual and But-For LenSx® Placements Assuming a 2012 LenSx® Entry |
| DX-258 | | | Davis Reply Exhibit 3: LenSx® Profits on Additional 2012 Installations |
| DX-259 | | | Davis Reply Exhibit 4: Update to Ms. Stamm's Calculation of Apportionment Factor Based on<br>Saved Development Time |
| DX-260 | BROWNELL_00000001 | BROWNELL00000002 | Resume of M. Brownell |
| DX-261 | BS_00000004 | BS_00000006 | Resume of Brent H. Schellhase |
| DX-262 | CHAUDHARY_0001066 | CHAUDHARY_0001066 | CV of Gautam Chaudhary |
| DX-263 | HU-HEG_0000797 | HU-HEG_0000801 | CV of Imre Hegdus |
| DX-264 | JA_00000007 | JA_00000009 | Resume of John Alder |
| DX-265 | LB_00000056 | LB_00000062 | CV of Leonard Borrman |
| DX-266 | | | Linked In Page for Biren Mehta |
| DX-267 | | | CV of Dr. Feigal |
| DX-268 | | | LinkedIn of Hong Fu |
| DX-269 | | | LinkedIn of M. Kraai.pdf |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-270 | | | LinkedIn of Brent Schellhase |
| DX-271 | | | LinkedIn of D. Teodorescu |
| DX-272 | ALCON_LENSX000579 | ALCON_LENSX00579 | Presentation LenSx Development History |
| DX-273 | ALCON_LENSX053623 | ALCON_LENSX053625 | Document - Goldstein Career Summary |
| DX-274 | ALCON_LENSX0998443 | ALCON_LENSX0998443 | Presentation - Next Generation Modular LenSx Ideation Project Proposal |
| DX-275 | ALCON_LENSX1112372 | ALCON_LENSX1112374 | Email re: Talking Points, dated July 30, 2012 |
| DX-276 | ALCON_LENSX185143 | ALCON_LENSX185146 | Document - Incremental Device Modifications (K161288) DFU LenSx Laser SoftFit Patient Interface |
| DX-277 | ALCON_LENSX2147067 | ALCON_LENSX2147068 | Email re: ████████████████████, dated April 17-18, 2012 |
| DX-278 | ALCON_LENSX218989 | ALCON_LENSX218989 | LenSx customer satisfaction survey |
| DX-279 | ALCON_LENSX2252827 | ALCON_LENSX2252945 | Spreadsheet titled Cataract Marketplace W2 Attitude & Usage |
| DX-280 | ALCON_LENSX2590655 | ALCON_LENSX2590656 | Email - ███████████████, Feb. 2, 2021 |
| DX-281 | ALCON_LENSX3804890 | ALCON_LENSX3804963 | Software Development Guideline 2.31G |
| DX-282 | ALCON_LENSX3805639 | ALCON_LENSX3805662 | Presentation - Alcon Capital Allocation, dated July 15, 2020 |
| DX-283 | BS_00000008 | BS_00000008 | Presentation 2010 Software Summit, iFS Advanced Femtosecond Laser Current & Future Projects |
| DX-284 | BS_00000210 | BS_00000222 | Abbott Medical Optics, Software Development Plan, iFS System, iFS Software Translation project: R02962, iFS System Software Version: 2.20, Video Microscope Software Version: 1.20 |
| DX-285 | BS_00000433 | BS_00000433 | Presentation - iFS Internationalization Interface Issues & Proposed Redesign |
| DX-286 | JA_00000019 | JA_000000029 | Email - Subject: Well, this is interesting, from Rick Duff, dated January 12, 2022 |
| DX-287 | JA_00000024 | JA_000000026 | Email - Subject: Well, this is interesting, from John Alder, dated January 12, 2022 |
| DX-288 | JJSV_00020805 | JJSV_00020805 | LCS Customer Journey, Qualitative Teledepth Interviews, Executive Summary April 2020 |
| DX-289 | JJSV_00479285 | JJSV_00479288 | March 30, 2012 LCS analysis document |
| DX-290 | JJSV_00479298 | JJSV_00479323 | Presentation - LenSx Lasers Inc. to Abbott Medical Optics, February 5, 2010 |
| DX-291 | JJSV_00564439 | JJSV_00564450 | Abbott Medical Optics, Hazard/Risk Assessment Document No. J75XXX Rev. 1, Entitled Poseidon Project - Preliminary Hazard Analysis (Feasibility) |
| DX-292 | JJSV_00577943 | JJSV00577948 | Email - re Capsulorhexis with iFS laser, from M. Brownell, June 16, 2010 |
| DX-293 | JJSV_00585297 | JJSV00585298 | Email - re LensXLasers, From G. Spuehler to M. Brownell, dated March 11, 2008 |
| DX-294 | JJSV_00617352 | JJSV_00617356 | IntraLase Corp. Merit Review Worksheet |
| DX-295 | JJSV_00704694 | JJSV_00704694 | MD&D Build Back, SWOT and SG&A Overview Presentation |
| DX-296 | JJSV_00709837 | JJSV_00709837 | Fair Market Value Opinion of Legal Entities of AMO as of 2/27/17 |
| DX-297 | JJSV_00711192 | JJSV_00711227 | J&J 2020 Strategic Plan, dated April 2020 |
| DX-298 | JJSV_00719293 | JJSV_00719327 | Purchase Price Allocation of Abbott Medical Optics Acquisition by J&J |
| DX-299 | JJSV_00727855 | JJSV_00727855 | Email - FW Abbott Purchase Price, April 3, 2017 |
| DX-300 | JJSV_00727856 | JJSV_00728094 | Abbott Labs Purchase Price Allocation of Advanced Medical Optics as of 2/26/09 |
| DX-301 | JJSV_00780118 | JJSV_00780118 | Email - FW: LenSx Users Manual, from D. Scott to G. Schuele April 28, 2015 |
| DX-302 | JJSV_00802370 | JJSV_00802378 | AMO Regional Holdings Limited and AMO Ireland Assignment Agreement |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-303 | JJSV_00876416 | JJSV_00876626 | 2010 Cataract Equipment Report AMO |
| DX-304 | JJSV_00936284 | JJSV_00936284 | Surgical Vision Equipment Placement and Financial Options April 2021 |
| DX-305 | JJSV_00962719 | JJSV_00962719 | Presentation - Alcon Competitive Analysis |
| DX-306 | JJSV_00988274 | JJSV_00988274 | Email Chain re US Custom Packs Working Session |
| DX-307 | JJSV_01030352 | JJSV_01030459 | Project Nordic Final Diligence Reports on OptiMedica |
| DX-308 | JJSV_01030952 | JJSV_01030955 | Amendment to Consulting Agreement between Ron Kurtz, M.D. and IntraLase Corp., effective November 30, 2006 |
| DX-309 | JJSV_01037218 | JJSV_01037218 | AMO iFS Corneal Incisions Project Plan |
| DX-310 | JJSV_01037441 | JJSV01037441-023 | Presentation - Project Posideon, Going Deep With Femto-Assisted Cataract Surgery |
| DX-311 | JJSV_01051513 | JJSV_1051561 | Presentation - AMO Board of Directors Project Marathon |
| DX-312 | JJSV_01080406 | JJSV_01080426 | IntraLase Corp. Financial Report for the Board of Director Meeting, dated September 21, 1999 |
| DX-313 | JJSV_01091086 | JJSV_01091086 | Laser Cataract System Development - Task Breakdown |
| DX-314 | JJSV_01091519 | JJSV_01091519 | Email re Summary of LCS Workstation, November 27, 2012 |
| DX-315 | JJSV_01092162 | JJSV_01092199 | Project Poseiden Gate 1-2 - Commit to Feasibility |
| DX-316 | JJSV_01092361 | JJSV_01092384 | Preliminary Hazard Analysis (Feasibility) For Modifications to the IFS to Perform Capsulotomies |
| DX-317 | JJSV_01093163 | JJSV01093176 | Project Precision: Best Practices and Lessons Learned |
| DX-318 | JJSV_01119333 | JJSV_01119333 | Exclusive License Agreement between AMO Development, LLC and AMO Manufacturing USA, LLC |
| DX-319 | JJSV_01119334 | JJSV_01119334 | Exclusive License Agreement between AMO Development, LLC and AMO Manufacturing USA, LLC |
| DX-320 | JJSV_01119335 | JJSV_01119335 | Exclusive License Agreement between AMO Development, LLC and AMO Sales & Service, Inc. |
| DX-321 | JJSV_01119336 | JJSV_01119336 | Exclusive License Agreement between AMO Development, LLC and AMO Sales & Service, Inc. |
| DX-322 | JJSV_01119365 | JJSV_01119365 | Presentation - J&J Corporate Organizational Chart as of January 15, 2020 |
| DX-323 | JJSV_01119536 | JJSV_01119536 | Manufacturing, Supply and License Agreement between AMO Manufacturing USA, LLC and AMO Development Corp. |
| DX-324 | JJSV_01120806 | JJSV_01120835 | Advanced Medical Optics Acquisition of Intralase Summary of Value Conclusions |
| DX-325 | JJSV_01128015 | JJSV_01128081 | Abbott Laboratories, Valuation of Certain Identifiable Intangible Assets and Contingent Consideration in connection with the acquisition of OptiMedica Corporation |
| DX-326 | | | Privilege Log - J&J Vision's Supplemental |
| DX-327 | | | 21 CFR - Code of Federal Regulations Title 21, available at: http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm. |

Highly Confidential - Attorney Eyes Only                    Page 11 of 17

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-328 | | | Feigal Exhibit 1: Total Possible Pages with Overlap in Dr. Becker's Appendix E With Adjustments |
| DX-329 | | | FDA Approval for Navilas Laser System 577s, available at https://www.accessdata.fda.gov/cdrh_docs/pdf16/K162191.pdf |
| DX-330 | | | FDA, "Inspections Database Frequently Asked Questions," available at https://www.fda.gov/inspectionscompliance-enforcement-and-criminal-investigations/inspection-references/inspections-database-frequently-asked-questions. |
| DX-331 | | | FDA, "Premarket Notification 510(k)," available at: https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k. |
| DX-332 | | | FDA, "Procedure for Release of Establishment Inspection Report," available at https://www.fda.gov/media/83055/download. |
| DX-333 | | | FDA, "Regulatory Controls: Special Controls," available at: https://www.fda.gov/medical-devices/overview-device-regulation/regulatory-controls#special. |
| DX-334 | | | FDA, "The FDA's LASIK Program," available at: https://www.fda.gov/medical-devices/lasik/fdas-lasik-program. |
| DX-335 | | | FDA, Laws Enforced by FDA, available at: https://www.fda.gov/regulatory-information/laws-enforced-fda. |
| DX-336 | | | FDA, Regulatory Procedures Manual, Chapter 4-1 Warning Letters, available at: https://www.fda.gov/media/71878/download. |
| DX-337 | | | Group Purchasing Agreement at B-1-B-2, available at https://www.sec.gov/Archives/edgar/data/937556/000119312508046353/dex103.htm. |
| DX-338 | | | Website - ISO 13485:2016 Products, available at: https://13485store.com/13485-2016-compare-products/?gclid=CjwKCAjwp7eUBhBeEiwAZbHwkRcgg_u2MXjSia0cfMqYSZgNygoux4V8A4YnD5EpjB1eWhL 4EyVomBoCGoEQAvD_BwE#packages. |
| DX-339 | | | Document - Premier Purchasing Partners LP Group Purchasing Agreement - Capital Equipment, available at https://www.sec.gov/Archives/edgar/data/937556/000119312509100307/dex1032.htm |
| DX-340 | | | Website - World Health Organization. Medical Devices., available at: https://www.who.int/health-topics/medical-devices#tab=tab_1. |
| DX-341 | | | Worlwide market Share of Net new FLACS Device Placements by Product for the Years 2014-2019; Worldwide Market Share of FLACS Device Installed Base by Product for 2013-2019 |

**Highly Confidential - Attorney Eyes Only**          Page 12 of 17

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|--------|----------|----------|-------------|
| DX-342 | | | Schmidt Opening Appendix E: Reorganized iFS Directory Structure |
| DX-343 | | | 2006 IntraLase Corp. Form 10-K (https://sec.report/Document/0001193125-07-048217/) |
| DX-344 | | | 2008 Advanced Medical Optics, Inc. Form 10-K, (https://www.sec.gov/Archives/edgar/data/1168335/000119312509036296/d10k.htm) |
| DX-345 | | | 2017 Johnson & Johnson Form 10-K, p. 70 (https://johnsonandjohnson.gcs-web.com/static-files/97993c63-c6c4-4b44-9241-635f52f36c66). |
| DX-346 | | | Alcon Market Access and Reimbursement Services, 2019 (https://professional.myalcon.com/sites/g/files/rbvwei1041/files/2020-04/MARSLenSx%20CMS%20Guidance%20Document-Refresh-LR_0.pdf) |
| DX-347 | | | Davis Opening: Appendix A: Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code |
| DX-348 | | | Article - Laser-Assisted Cataract Surgery and CMS Rulings 05-01 and 1536-R, dated November 16, 2012 (https://www.cms.gov/medicare/medicare-fee-for-service-payment/ascpayment/downloads/cms-pc-ac-iol-laserguidance.pdf) |
| DX-349 | | | Article - Roberts, T.V., et al., Update and clinical utility of the LenSx femtosecond laser in cataract surgery, Clinical Ophthalmology, 2016; 10: 2021-2029, Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5074708/#:~:text=The%20LenSx%20platform%20(Alcon%20Laboratories,was%20commercially%20released%20in%202011. |
| DX-350 | | | FDA Class 3 2003 Device Recall re Intralase FS Laser System Available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?id=28521. |
| DX-351 | | | Website - Alcon LenSx enhancements announcement, available at https://www.alcon.com/media-release/alcon-launches-new-technological-enhancements-lensxr-laser-american-society-cataract |
| DX-352 | | | Website - Laser "Scalpel" Improves Popular Eye Surgery, available at https://www.nsf.gov/od/lpa/news/press/01/pr0151.htm |
| DX-353 | | | Website - Pacho technology developments, available at https://www.ophthalmologytimes.com/view/phaco-technology-evolves-over-time |
| DX-354 | | | IntraLase Corp. 2005 Form 10-K, p. 7 (https://www.sec.gov/Archives/edgar/data/0001163848/000119312506044877/d10k.htm) |
| DX-355 | | | IntraLase Corp. Form S-1, dated May 28, 2004, p. 1 (https://www.sec.gov/Archives/edgar/data/1163848/000119312504096174/ds1.htm) |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-356 | | | Abbott 2013 Annual Report Available at https://www.annualreports.com/HostedData/AnnualReportArchive/a/NYSE_ABT_2013.pdf |
| DX-357 | | | Article - Lane, S. Improving Refractive Outcomes With the Verion System, Available at https://crstodayeurope.com/wp-content/themes/crste/assets/downloads/0914CRSTEuro_F1_Lane.pdf |
| DX-358 | | | Exploring the Cataract Refractive Suite Available at https://crstoday.com/wp-content/themes/crst/assets/downloads/0614_supp2.pdf |
| DX-359 | | | https://www.healio.com/news/ophthalmology/20120522/widespread-adoption-of-femtosecond-lasers-for-cataract-may-depend-on-reimbursements (link out of date) |
| DX-360 | | | LinkedIn of Alan Graham https://www.linkedin.com/in/alan-graham-95ba8440/ |
| DX-361 | | | Opening Appendix A Cost to Replace the Allegedly Infringing Lines of LenSx® Source Code (Updated): |
| DX-362 | | | Website - American Academy of Opthalmology: LenSx laser gets improved patient interface, Available at https://www.aao.org/headline/lensx-laser-gets-improved-patient-interface |
| DX-363 | | | U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 621.4 (3d ed. 2021) |
| DX-364 | | | Article "Documenting the software Validation of Computer-Controlled Devices and Manufacturing processes |
| DX-365 | | | Alcon 1st Supplemental Response to 4th Set of ROGs (No. 20) |
| DX-366 | | | Alcon 2nd Supplemental Response to 6th Set of ROGs (No. 22) |
| DX-367 | | | Alcon 5th Supplemental Response to 1st Set of ROGs (Nos. 3,4,6,7 & 12) |
| DX-368 | | | Alcon 6th Supplemental Response to 1st Set of ROGs (Nos. 3,4,7,8,12,16 & 17) |
| DX-369 | | | Alcon 7th Supplemental Response to 1st Set of ROGs (No. 16) |
| DX-370 | | | Alcon Response to 10th Set of ROGs (Nos. 27-28) |
| DX-371 | | | Alcon Response to 11th Set of ROGs (No. 29) |
| DX-372 | | | Alcon Response to 12th Set of ROGs (Nos. 30-35) |
| DX-373 | | | J&J 1st Supplemental Response to 1st Set of ROGs (No. 13) |
| DX-374 | | | J&J 1st Supplemental Response to 1st Set of ROGs (No. 2) |
| DX-375 | | | J&J 1st Supplemental Response to 1st Set of ROGs (Nos. 11&12) |
| DX-376 | | | J&J 1st Supplemental Response to 3rd Set of ROGs |
| DX-377 | | | J&J 2nd Supplemental Response to 1st Set of ROGs (No. 4) |
| DX-378 | | | J&J 2nd Supplemental Response to 1st Set of ROGs (No. 6) |
| DX-379 | | | J&J 2nd Supplemental Response to 1st Set of ROGs (Nos. 5&17) |
| DX-380 | | | J&J 2nd Supplemental Response to 4th Set of ROGs (No. 23) |
| DX-381 | | | J&J 2nd Supplemental Response to 5th Set of ROGs (No. 27) |
| DX-382 | | | J&J 3rd Supplemental Response to 1st Set of ROGs (No. 11) |
| DX-383 | | | J&J 4th Supplemental Response to 1st Set of ROGs (No. 11) |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-384 | | | J&J Response to 1st Set of RFAs (Nos. 1-60) |
| DX-385 | | | J&J Response to 2nd Set of ROGs (No. 21) |
| DX-386 | | | J&J Response to 3rd Set of ROGs (No. 22) |
| DX-387 | | | J&J Response to 5th Set of ROGs |
| DX-388 | | | J&J Response to 6th Set of ROGs (Nos. 28-38) - Corrected |
| DX-389 | | | J&J Supplemental Response to 5th Set of ROGs (No. 25) |
| DX-390 | | | Document - PanOptix brochure, available at https://professional.myalcon.com/sites/g/files/rbvwei1041/files/2020-04/US-ACP-CEI-1900005%20PanOptix%20Patient%20Brochure.pdf |
| DX-391 | ALCON_LENSX2602110 | ALCON_LENSX2602171 | 2021 Cataract Annual - Alcon Custom |
| DX-392 | JJSV_00958374 | JJSV_00958374 | Document - Alcon SWOT (IOL/Overall) |
| DX-393 | ALCON_LENSX709421 | ALCON_LENSX709421 | US Surgical Cataract Equipment Brand Health Tracker Report 4Q19 - January 2020 |
| DX-394 | JJSV_00767789 | JJSV_00767790 | Document - CATALYS Tracker December 2014 |
| DX-395 | ALCON_LENSX3809650 | ALCON_LENSX3809650 | Spreadsheet - Lynda Jeffcoat LinkedIn messages |
| DX-396 | BS_00000207 | BS_00000207 | Spreadsheet re Fail_log_HR |
| DX-397 | | | Website - Cataract surgery overview, available at https://www.waterlooeye.ca/procedures/cataract-surgery |
| DX-398 | | | Website - Cataract surgery overview, available at https://www.waterlooeye.ca/procedures/cataract-surgery-steps |
| DX-399 | | | LenSx Technical Overview Presentation |
| DX-400 | | | Highly Confidential AEO - 2021.11.04 J&J Vision's Preliminary Privilege Log |
| DX-401 | | | Highly Confidential AEO - 2021.12.02 JJ Vision's Supplemental Preliminary Privilege Log |
| DX-402 | | | Highly Confidential AEO - 2022.01.14 J&J Vision's Privilege Log |
| DX-403 | | | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2021.11.04 J&J Vision's Preliminary Privilege Log |
| DX-404 | | | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2021.12.02 JJ Vision's Supp. Prelim. Privilege Log |
| DX-405 | | | Highly Confidential AEO - 2022.05.18 CORRECTED Version of 2022.01.14 J&J Vision's Privilege Log |
| DX-406 | | | Abbott Laboratories, Q3 2014 Earnings Call, Oct 22, 2014 |
| DX-407 | | | Abbott Laboratories, Q3 2015 Earnings Call, Oct 21, 2015 |
| DX-408 | | | Abbott Laboratories, Q3 2016 Earnings Call, Oct 19, 2016 |
| DX-409 | | | Abbott Laboratories, Q4 2010 Earnings Call, Jan 26, 2011 |
| DX-410 | | | Abbott Laboratories, Q4 2011 Earnings Call, Jan 25, 2012 |
| DX-411 | | | Abbott Laboratories, Q4 2012 Earnings Call, Jan 23, 2013 |
| DX-412 | | | Abbott Laboratories, Q4 2013 Earnings Call, Jan 22, 2014 |
| DX-413 | | | Abbott Laboratories, Q4 2014 Earnings Call, Jan 29, 2015 |
| DX-414 | | | Abbott Laboratories, Q4 2015 Earnings Call, Jan 28, 2016 |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-415 | | | Johnson & Johnson, Q1 2017 Earnings Call, Apr 18, 2017 |
| DX-416 | | | Johnson & Johnson, Q1 2018 Earnings Call, Apr 17, 2018 |
| DX-417 | | | Johnson & Johnson, Q1 2020 Earnings Call, Apr 14, 2020 |
| DX-418 | | | Johnson & Johnson, Q2 2017 Earnings Call, Jul 18, 2017 |
| DX-419 | | | Johnson & Johnson, Q2 2018 Earnings Call, Jul 17, 2018 |
| DX-420 | | | Johnson & Johnson, Q2 2019 Earnings Call, Jul 16, 2019 |
| DX-421 | | | Johnson & Johnson, Q2 2020 Earnings Call, Jul 16, 2020 |
| DX-422 | | | Johnson & Johnson, Q2 2021 Earnings Call, Jul 21, 2021 |
| DX-423 | | | Johnson & Johnson, Q3 2016 Earnings Call, Oct 18, 2016 |
| DX-424 | | | Johnson & Johnson, Q3 2017 Earnings Call, Oct 17, 2017 |
| DX-425 | | | Johnson & Johnson, Q3 2018 Earnings Call, Oct 16, 2018 |
| DX-426 | | | Johnson & Johnson, Q3 2019 Earnings Call, Oct 15, 2019 |
| DX-427 | | | Johnson & Johnson, Q3 2020 Earnings Call, Oct 13, 2020 |
| DX-428 | | | Johnson & Johnson, Q3 2022 Earnings Call, Oct 18, 2022 |
| DX-429 | | | Johnson & Johnson, Q4 2017 Earnings Call, Jan 23, 2018 |
| DX-430 | | | Johnson & Johnson, Q4 2019 Earnings Call, Jan 22, 2020 |
| DX-431 | | | Johnson & Johnson, Q4 2020 Earnings Call, Jan 26, 2021 |
| DX-432 | | | Johnson & Johnson, Q4 2021 Earnings Call, Jan 25, 2022 |
| DX-433 | | | Abbott Laboratories, Q1 2012 Earnings Call, Apr 18, 2012 |
| DX-434 | | | Abbott Laboratories, Q1 2013 Earnings Call, Apr 17, 2013 |
| DX-435 | | | Abbott Laboratories, Q1 2014 Earnings Call, Apr 16, 2014 |
| DX-436 | | | Abbott Laboratories, Q1 2015 Earnings Call, Apr 22, 2015 |
| DX-437 | | | Abbott Laboratories, Q1 2016 Earnings Call, Apr 20, 2016 |
| DX-438 | | | Abbott Laboratories, Q2 2010 Earnings Call, Jul-21-2010 |
| DX-439 | | | Abbott Laboratories, Q2 2011 Earnings Call, Jul 20, 2011 |
| DX-440 | | | Abbott Laboratories, Q2 2012 Earnings Call, Jul 18, 2012 |
| DX-441 | | | Abbott Laboratories, Q2 2013 Earnings Call, Jul 17, 2013 |
| DX-442 | | | Abbott Laboratories, Q2 2014 Earnings Call, Jul 16, 2014 |
| DX-443 | | | Abbott Laboratories, Q2 2015 Earnings Call, Jul 22, 2015 |
| DX-444 | | | Abbott Laboratories, Q2 2016 Earnings Call, Jul 20, 2016 |
| DX-445 | | | Abbott Laboratories, Q3 2010 Earnings Call, Oct 20, 2010 |
| DX-446 | | | Abbott Laboratories, Q3 2012 Earnings Call, Oct 17, 2012 |
| DX-447 | | | Abbott Laboratories, Q3 2013 Earnings Call, Oct 16, 2013 |
| DX-448 | ALCON_LENSX212732 | ALCON_LENSX212745 | QNX Commercial Software License Agreement |
| DX-449 | JJSV_00780119 | JJSV_00780191 | Alcon LenSx Laser System Operator's Manual - February 2011 |
| DX-450 | JJSV_00603502 | JJSV_00603575 | Alcon LenSx Operator's Manual - January 2011 |
| DX-451 | JJSV_00780498 | JJSV_00780570 | Alcon LenSx Operator's Manual - February 2011 |
| DX-452 | JJSV_00780571 | JJSV_00780571 | Native - "Visit to ▮▮▮▮▮▮▮▮" Summary, dated November 29, 2011 |
| DX-453 | JJSV_00713136 | JJSV_00713136 | Presentation - 2018 Surgical Business Plan Review |

**Highly Confidential - Attorney Eyes Only**

Defendants' Exhibit List

| Dx-No. | BegBates | EndBates | Description |
|---|---|---|---|
| DX-454 | JJSV_00691841 | JJSV_00691841 | Surgical Marketing Guidance Document 2018 Final.pdf |
| DX-455 | JJSV_00707087 | JJSV_00707087 | Presentation- Acqusition Dashboard |
| DX-456 | JJSV_00707191 | JJSV_00707200 | AMO Update March 2020-Finalv1.pdf |
| DX-457 | JJSV_00707202 | JJSV_00707202 | AMO Update Sep 2020-DRAFT.pptx |
| DX-458 | JJSV_00710308 | JJSV_00710339 | Presentation - Business Development & Strategy: Surgical Vision Overview |
| DX-459 | JJSV_00713145 | JJSV_00713145 | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx |
| DX-460 | JJSV_00715162 | JJSV_00715162 | Surgical Marketing Guidance Document 2018 Final.pdf |
| DX-461 | JJSV_00732019 | JJSV_00732019 | Final_2018 JJSV Business Plan Review_SS-v4 - Copy.pptx |
| DX-462 | JJSV_00847411 | JJSV_00847413 | Email - Market Scope Reports |
| DX-463 | JJSV_00951274 | JJSV_00951276 | Email re Input needed for NSM presentation |
| DX-464 | JJSV_00989494 | JJSV_00989494 | Presentation - 2021 BP Template JJSV US-Revised Capital Equipement.pptx |
| DX-465 | | | 2021.03.03 Alcon First Supplemental Objections and Responses to First Set of Interrogatories (2, 5-7, 17) |
| DX-466 | | | Alcon LenSx Operator's Manual, April 1, 2022 |
| DX-467 | ALCON_LENSX2601948 | ALCON_LENSX2602082 | Alcon LenSx Operator's Manual, March 23, 2020 |
| DX-468 | | | Website - Medical Device Tax, available at https://taxfoundation.org/medical-device-tax-repeal/ |
| DX-469 | | | Website: Pay Schedule and Methods: What are my Options? (found at https://www.adp.com/spark/articles/2019/03/pay-schedule-and-methods-what-are-my-options.aspx) |
| DX-470 | JJSV_01080643 | JJSV_01080707 | Document - Intralase board of directors meeting |
| DX-471 | JJSV_01081197 | JJSV_01081260 | Document - Intralase board of directors meeting |
| DX-472 | ALCON_LENSX000296 | ALCON_LENSX000296 | Current LenSx Delivery System (June 2016).pptx |
| DX-473 | JJSV_01119537 | JJSV_01119537 | Document - JJSV-AMO Femto Transfer of Copyright |
| DX-474 | JJSV_00988279 | JJSV_00988279 | 200107_Quarterly EFDC Pull_Total Cataract Q4 19.xlsx |

**Highly Confidential - Attorney Eyes Only**

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

        Plaintiffs,

        v.

ALCON VISION, LLC, ALCON
LABORATORIES, INC. and ALCON
RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Plaintiffs,

        v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Defendants.

C.A. No. 20-842-CFC

**HIGHLY CONFIDENTIAL
MATERIAL – ATTORNEYS'
EYES ONLY**

## ALCON'S OBJECTIONS AND RESPONSES TO J&J'S ELEVENTH SET OF INTERROGATORIES (NO. 29)

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as all applicable local rules and this Court's Orders, Defendants Alcon Vision LLC, Alcon Laboratories, Inc., and Alcon Research, LLC, and Counterclaim-Plaintiffs Alcon Inc., Alcon Vision, LLC, and Alcon Research, LLC (collectively, "Alcon") hereby

make the following objections and responses to the Eleventh Set of Interrogatories (No. 29), which were served by Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc., and Counterclaim-Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J") on January 26, 2022 ("Interrogatories").

## GENERAL OBJECTIONS

Alcon hereby incorporates by reference and restates the General Responses and Objections set forth in Alcon's Objections and Responses to J&J's First Set of Interrogatories to Alcon, served February 4, 2021.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 29:

Describe in detail the complete factual and legal bases for each equitable defense and defensive doctrine You assert in This Action (including without limitation each equitable defense and defensive doctrine You contend limits or bars any request for relief by J&J Vision) and any and all other reasons why You assert that J&J Vision's claims should fail, identify by Bates number each Document that supports or refutes each such defense, and identify three persons most knowledgeable about the factual basis for each such defense.

### RESPONSE TO INTERROGATORY NO. 29:

Alcon objects to this Interrogatory as overbroad, unduly burdensome, and/or not proportional to the needs of the case to the extent it asks Alcon to describe "the **complete** factual and legal bases for each equitable defense and defensive doctrine," to the extent it asks Alcon to describe "**any** and **all other reasons**" why You assert

2

that J&J Vision's claims should fail," and to the extent that it asks Alcon "identify by Bates number *each document* that supports or refutes each such defense."  Alcon objects to this Interrogatory as premature to the extent that it asks Alcon to identify the complete factual and legal bases for Alcon's defenses and each document supporting those defenses prior to the close of discovery.  Alcon objects to this Interrogatory as vague to the extent it asks Alcon to identify each document that "supports or refutes" any of Alcon's defenses, to the extent that it uses the undefined term "defensive doctrine," and to the extent it asks Alcon to "describe in detail the complete factual and legal bases" for each defense because those requests are unclear and unbounded.

Subject to and without waiving its specific and general objections, Alcon responds as follows:

First, J&J *unnecessarily delayed* in bringing suit against (or even providing notice of its potential claims to) Alcon.  "A plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer . . . attributable to the infringement.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 (2014).  Although J&J first sent a notice letter to Alcon in July 2020, J&J began investigating LenSx as early as 2011.  *In 2011*, Brent Schellhase inspected a LenSx and noticed similarities in the graphical user interface.  Schellhase Dep. Tr. 64:2–77:2.  *In 2014*, J&J performed an in-depth

3

investigation into the LenSx Laser system's computer program, enlisting their own software engineers (at least Brent Schellhase and Matthew Kraai) to copy object code off the LenSx Laser system and run comparisons to J&J's iFS laser system. *See, e.g.*, Schellhase Dep. Tr. at 90:20–97:14, 127:4–135:20; Kraai Dep. Tr. at 201:22–218:25. These engineers found "significant similarities between . . . the object code of the LenSx and what was present in the IntraLase Software." Schellhase Dep. Tr. at 135:23–136:2. Moreover, at that time, they identified similarities in folder, variable, and function names. Kraai Dep. Tr. at 211:17–19. Six years later, J&J would catalog all of the similarities identified in 2014, including that "[the] LenSx® executable binary files include hundreds of references to file, function, and object names and other text that are identical to those found in the iFS® software," that "[t]he LenSx® file system mirrors the structure of an iFS® system," and that "[t]he LenSx® system includes a number of on-screen instructions identical to those on an iFS® system." Warren Foust July 2020 Letter at 1–2; *see also* FAC ¶ 98. J&J characterized these similarities as being "telltale signs of copying" and "unambiguous evidence" of copying. Warren Foust July 2020 Letter at 1–2; FAC ¶ 98. In 2014, with that evidence in hand, ███████████████████ ████████████████████████████████████████████████ ███████████████████████████████. J&J's in-depth, multi-year investigation alerted J&J to its potential claim. Yet J&J chose not to even notify Alcon of its

4

potential copyright claims ███████████████████████████████ and instead apparently abandoned those claims. J&J again sat on its claims in this very litigation, initially bringing only patent claims. In 2020, ████████████

███████████████████████████████████████████████████

███████████████████████████████████████ , J&J decided to revive its copyright claims in an apparent attempt to gain leverage over Alcon.

J&J's affirmative decision not to pursue its copyright claims for years has unquestionably prejudiced Alcon by, for example, drastically inflating the potential equitable and legal awards. Had J&J notified Alcon in 2014–15, Alcon could have remediated the alleged infringement years prior to the filing of J&J's copyright claims, mooting a request for equitable relief and staunching the flow of damages. Therefore, J&J is not entitled to injunctive relief or disgorgement of Defendants' profits after J&J became aware of its potential claims.

Moreover, J&J's six-year delay, despite the aforementioned in-depth investigation ████████████████████████ , demonstrates Plaintiffs' lack of diligence. As a result, this delay has significantly prejudiced Alcon. *See MLMC, Ltd. v. Airtouch Commun., Inc.*, 990781-SLR, 2001 WL 1414269, at \*5 (D. Del. Nov. 1, 2001) ("Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit.") (internal citation omitted)).

5

Likewise, Alcon has suffered evidentiary prejudice due to, at a minimum, the fading of witnesses' memories, *see, e.g.*, Kraai Dep. Tr. 210:23–212:21, as well as documents which have been lost, either because they were not preserved in the ordinary course of business or can no longer be located.  Throughout the six years that it sat on its hands, J&J had control over the pertinent documents and personnel with knowledge about J&J's investigation and J&J's decision not to file suit until 2020.  Alcon continues to seek further information about J&J's 2014 investigation from J&J, and has learned a few details about the breadth of the investigation and J&J's previous knowledge of similarities from testifying witnesses. *See, e.g.*, B. Schellhase Dep. Tr.; M. Kraai Dep. Tr., L. Borrmann Dep. Tr.  Alcon's knowledge remains limited because J&J continues to stonewall Alcon's attempts to understand the full extent and breadth of J&J's 2014 Investigation and prior knowledge.  Alcon incorporates by reference Alcon's Motion to Amend the Pleadings (D.I. 246) and Alcon's pending First Amended Answer to the Second Amended Complaint (D.I. 245-1) with regard to J&J's unnecessary delay.  Alcon identifies Brent Schellhase, Matthew Kraai, and Andy Pang as knowledgeable regarding J&J's investigation, and Tom Hudnall as knowledgeable regarding Alcon's lack of knowledge of the origins of the LenSx code. *See, e.g.*, T. Hudnall Dep. Tr. (Rough) at 133–135.

Second, J&J ***acquiesced*** to any potential infringement.  J&J is considered to have acquiesced if it gave "consent, whether express or implied . . . with knowledge

6

of the infringement." *Edwin L. Wiegand Co. v. Harold E. Trent Co.*, 122 F.2d 920, 925 (3d Cir. 1941). Such consent can be established by a plaintiff's delay in bringing a copyright action. *See, e.g., id.* (plaintiff barred from bringing an action for copyright infringement due to three years of acquiescence); *Affiliated Records Inc. v. Taylor*, C.A. No. 09-9938 (KBF), 2012 WL 1675589, at *4 (S.D.N.Y. May 14, 2012) (granting Defendant's motion for summary judgement because "evidence establishes that plaintiff acquiesced or implicitly (at least) consented" to copyright infringement); *see also Tolliver v. McCants*, 684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010) (recognizing acquiescence as an equitable defense available in copyright).

As described above, and in Alcon's prior submissions, J&J investigated the LenSx for many years, ███████████████████████████████. As a result of that investigation, J&J found similarities in the LenSx and iFS code that J&J described **six years** after the 2014 Investigation, in 2020, as "unambiguous evidence of copying." Nevertheless, J&J elected not to inform Alcon or bring an action because it apparently did not value the copyrighted materials (indeed it had not even registered its copyrights) or decided to tolerate the alleged copying. *See, e.g.*, Preliminary Injunction Hearing Tr. at 323:16–24 (May 13, 2021). As described above, J&J always has had control over the pertinent documents and personnel with knowledge about J&J's investigation and its decision not to file suit until 2020, and

7

its purposeful decision not to inform Alcon of its findings has prejudiced Alcon in multiple ways.

Third, J&J indicated for the first time in an interrogatory response on February 9, 2022 that it considers the inclusion of snippets of code in a Software Development Guideline explaining how Alcon intended to remove that code from its software as an act of copyright infringement. *See* J&J's 3d Supp. Resp. to Alcon Interrogatory No. 11 at 56–57 (accusing ALCON_LENSX3804890). The inclusion of any allegedly infringing code in the Software Development Guideline, however, is ***fair use***. The fair use doctrine is an "equitable rule of reason that permits courts to avoid rigid application of the copyright statute." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021) (internal quotations omitted). Each of the fair use factors supports Alcon here:

- With regard to "the purpose and character of the use," the Software Development Guideline is not a substitute for the iFS software. Instead, it uses short snippets of code to comment on and "describe the proposed software changes to the LenSx system." ALCON_LENSX3804893. The few examples of previous Alcon code included in this document exist simply to help describe the changes that were to be made to the code. As this document is an internal Alcon document for educational purposes and historical record keeping, its scant references to the code

8

to be changed is a transformative use thereof.  Thus, this factor favors fair use.

• With regard to "the nature of the copyrighted work," the snippets of code are more factual than creative.  Moreover, the code at issue incorporates numerous unprotectable elements, taking it further away from the core of copyright law.  Alcon incorporates by reference its response to J&J's Interrogatory No. 5 with regard to the unprotectability of the alleged code.  J&J also has admitted that all of the computer programs asserted in this litigation were previously published. *See* TX0008892568; TX0008892570; TX0008892579; TX0008892616; TX0008892571; TX0008892576; TX0008892583; TX0008892582; TX0008892586; TX0008892565; TX0008892585; TX0008892564; TX0008892567; TX0008892618; TX0008892614; TX0008892580; TX0008892621; TX0008892612.  This factor also favors fair use.

• With regard to "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," the amount of allegedly copied code in the Software Development Guideline is quantitatively small.  Likewise, the code at issue involves merely unimportant, low-level functionality, which hardly could be considered the heart of the

9

work.  *See* Dkt. No. 83.  Moreover, Alcon's use of the code in a document describing what it was removing from its software to avoid J&J's copyright infringement claim was reasonable as its engineers would need to identify what code was to be removed.  This factor too militates toward fair use.

- With regard to "the effect of the use upon the potential market for or value of the copyrighted work," the fundamental reason for creating the Software Development Guideline was to remove the allegedly copied code.  It strains credulity to suggest that such a use would affect any market for J&J's computer programs.  Moreover, Alcon is not aware of a potential market for licensing such use.  Given that the Software Development Guideline is not a substitute for J&J's computer programs, and indeed is designed to aid in the removal of any materially allegedly copied from them, this factor supports a finding of fair use.

Accordingly, these snippets of code in an internal Alcon document intended to explain how to remove that code constitutes fair use. Alcon identifies Dan Teodorescu as knowledgeable about the creation and purpose of the newly accused Software Development Guideline.

Pursuant to Fed. R. Civ. P. 33(d), Alcon states that information responsive to this Interrogatory can be found at least in the following documents (and underlying

documents cited therein): Alcon's Motion to Amend the Pleadings (Dkt. No. 246),

J&J Vision's Privilege Log, produced November 4, 2021; J&J Vision's

Supplemental Privilege Log, produced December 2, 2021; J&J's responses to

Alcon's Interrogatory No. 5, No. 11, No. 17, and No. 22; JJSV_00572929;

JJSV_00564439; JJSV_00580082; and JJSV_00718161.

Discovery is not yet complete, and Alcon's investigation is ongoing. Alcon

reserves the right to supplement and/or amend its response to this Interrogatory in

accordance with the Federal Rules of Civil Procedure.

Dated: February 25, 2022

*/s/ Noah S. Frank*

Noah S. Frank

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

OF COUNSEL:
Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Hannah L. Bedard
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Joshua L. Simmons
Matthew A. Lembo
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Alcon Inc., Alcon Vision, LLC,
Alcon Laboratories, Inc. and Alcon
Research, LLC*

## CERTIFICATE OF SERVICE

I, Noah S. Frank, hereby certify that on February 25, 2022, this document

was served on the persons listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Brian P. Egan
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

Roger J. Chin
Allison Harms
Joseph R. Wetzel
Kristine W. Hanson
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
allison.harms@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com

Michael A. Morin
Matthew J. Moore
Rachel Weiner Cohen
Krupa Parikh
Ashley Finger
Sarang V. Damle
Holly K. Victorson
Carolyn M. Homer
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
rachel.cohen@lw.com
krupa.parikh@lw.com
ashley.finger@lw.com
sy.damle@lw.com
holly.victorson@lw.com
carolyn.homer@lw.com

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*/s/ Noah S. Frank*
Noah S. Frank

13

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                           *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire                    *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                                *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary E. Miller, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                   */s/ Anthony D. Raucci*

                                   _____
                                   Anthony D. Raucci (#5948)

2

Case 1:20-cv-00842-CFC-JLH     Document 509-1     Filed 01/06/23     Page 382 of 573
PageID #: 30218

# EXHIBIT 19

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,      )
AMO MANUFACTURING USA,     )
LLC, and AMO SALES AND     )
SERVICE, INC.,             )
                           )
          Plaintiffs,      )
                           )   C.A. No. 20-842-CFC
   v.                      )
                           )
ALCON VISION, LLC, ALCON   )
LABORATORIES, INC., and    )
ALCON RESEARCH, LLC,       )
                           )
          Defendants.      )


                    Wednesday, August 3, 2022
                          11:20 a.m.
                       STATUS CONFERENCE



                        844 King Street
                      Wilmington, Delaware


   BEFORE: THE HONORABLE COLM F. CONNOLLY
   United States District Court Judge



   APPEARANCES:


               MORRIS NICHOLS ARSHT & TUNNELL
               BY:  JACK B. BLUMENFELD, ESQ.

               -and-

APPEARANCES CONTINUED:


                LATHAM & WATKINS
                BY:   MICHAEL A. MORIN, ESQ.
                BY:   RACHEL WEINER COHEN, ESQ.

                        Counsel for the Plaintiff




                SHAW KELLER
                BY:   ANDREW E. RUSSELL, ESQ.


                        -and-

                KIRKLAND & ELLIS
                BY:   GREGG F. LOCASCIO, ESQ.
                BY:   NOAH S. FRANK, ESQ.

                        Counsel for the Defendants










                _ _ _ _ _ _ _ _ _ _

not run on Hudnall's account, they'd have to run and produce those documents.

And you would agree to that?

MR. LOCASCIO: I do agree to that. I'll just, so you have the clarity on this, the context on this. Hudnall was a witness solely because he was the 30(b)(6) witness offered to answer this question of did we know that the folks had copied it internally.

THE COURT: I got it.

MR. LOCASCIO: That's fair. We'll do it. We'll do it.

THE COURT: But you'd do you, and you'd produce it.

And then second, to the extent they move for a motion in limine to preclude the assertion of any defense that you are asking to raise in your amended pleading, right, or evidence related to it, in front of a jury, I'm saying they get a fourth motion in limine on that topic.

In other words, because I'm basically delaying. And in a way it goes to prejudice you could argue, but they certainly have not articulated a prejudice right now to my satisfaction, right?

But it may come out that they say, look, this was unfair because, you know, they're going to argue something in front of the jury that they have no business

arguing in front of a jury.

MR. LOCASCIO:  If Your Honor is inclined to say they get an additional MIL based on the --

THE COURT:  Only on that topic.

MR. LOCASCIO:  Obviously, we would defer to Your Honor on that and don't take issue with it.

I will say that there's a flip side MIL here too, which is, and the reason this is going to come up in front of the jury, just as one data point is, they're arguing on the Johnson & Johnson side that they can seek damages, not just disgorgement, damages, beyond -- prior to the statute of limitations date.  Meaning back beyond three years.

THE COURT:  Okay.

MR. LOCASCIO:  And their argument for that --

THE COURT:  But he's shaking his head that they're not.

MR. LOCASCIO:  That would be great news if that's the case, but it's not, I don't think.

MR. MORIN:  It's a technicality.  The statute of limitations doesn't begin to run until the claim accrues.  We're saying it accrued earlier.

THE COURT:  Gotcha.

MR. MORIN:  That the statute of limitations isn't triggered, so I was being specific on the argument.

# EXHIBIT 2

**From:** Scott, David D <Dave.Scott@abbott.com>
**To:** ████████████████████████
**Sent:** 4/28/2015 4:54:54 PM
**Subject:** ████████████████████████
**Attachments:** ████████████████████████

**EXHIBIT**

**Schuele 8**

FYI

---

**Dave Scott**
Divisional Vice President
Research & Development
Femtosecond Laser

Abbott Medical Optics Inc.

Sunnyvale, CA
United States

Ph: (408) 458-0404
Dave.Scott@amo.abbott.com
www.abbottmedicaloptics.com



This communication may contain information that is proprietary, confidential, or exempt from disclosure. If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

---

**From:** Anderson, Gregory R
**Sent:** Tuesday, April 28, 2015 9:36 AM
**To:** Golda, Jeffrey A; Scott, David D
**Subject:** ████████████████████

This might be useful.

---

**Greg Anderson**
Director of US Sales
Cataract Capital Equipment

Abbott Medical Optics Inc.
1700 E. Saint Andrew Place
Santa Ana, CA 92705
United States

Ph: 949.212.3113
Fax: 888.275.4056
greg.anderson@abbott.com
www.abbottmedicaloptics.com



This communication may contain information that is proprietary, confidential, or exempt from disclosure. If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

**DX-301**

SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 20A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,<br><br>Defendants. | C.A. No. 20-842-CFC-JLH<br><br> |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC.,<br><br>Counterclaim-Defendants. | |

**ALCON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 TO PRECLUDE J&J FROM OFFERING EVIDENCE REGARDING WHAT IT KNEW OR COULD HAVE KNOWN ABOUT COPYING IN 2014–2015 AND ITS <u>DECISION NOT TO SUE PRIOR TO 2020</u>**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

J&J "knew that there was copying in 2014" and affirmatively "decided not to bring suit" in 2015.  D.I. 409; D.I. 335, Ex. 1 at 14.  But J&J cloaked behind the attorney-client privilege the details of its knowledge regarding its 2014–2015 investigation, as well as its decision not to sue in 2014–2015 and change of heart in 2020.  As a result, Alcon moves *in limine* to preclude J&J from offering any explanation or argument about what it allegedly knew or could have known from its investigation, its decision to sue Alcon in 2020, or its failure to sue 6 years earlier. *See Software AG v. Bea Sys.*, 2005 WL 859266, at *2 (D. Del. Apr. 8, 2005).  Given J&J's delay, Alcon asserted a statute-of-limitations defense that would limit J&J's claimed damages to three years prior to suit.  Despite J&J's admission that its 2020 suit was based solely on the information it had in 2014, *see* D.I. 409, J&J contends that it "did not discover, and with the exercise of reasonable diligence could not have discovered, Alcon's infringement prior to [2020]"—putting its actual knowledge and state of mind directly at issue.  D.I. 335, Ex. 3 at 8.  In addition to the statute of limitations, J&J's 6-year delay in taking action is relevant to other issues, such as the value J&J placed on what was allegedly copied and the harm J&J allegedly suffered.

Yet J&J has consistently asserted privilege over its state of mind and internal analysis during the investigation in 2014–2015 all the way through filing suit in 2020, refusing to disclose **why** it made its decisions, stating only that it "conducted

1

a privileged analysis" and "did not proceed with litigation at that time." *Id.*, Ex. 7

at 6. J&J also repeatedly instructed its corporate designee not to answer questions

about the decision not to sue and related topics. *See, e.g., id.*, Ex. 6, at 330:10-331:2,

341:22-342:11, 343:12-22, 366:8-370:19, 370:22-371:22, 374:3-375:1. Having

taken this position, J&J may not now offer or suggest an explanation as to why it did

not sue in 2014–2015, nor why it changed its mind in 2020. *See Moran v. Davita*,

2008 WL 4447093, at *6 (D.N.J. Sept. 26, 2008) (striking defense as defendants

sought "to use the privilege as a shield, by refusing to disclose … letter [from

counsel], and as a sword, by arguing that they acted upon a good faith business

reason"). Yet that is exactly what J&J intends to do.

In an effort to explain away its delay, which the Court ultimately found to be

"probative of a lack of irreparable harm" at the PI hearing, J&J's counsel hinted at

J&J's rationale for not suing earlier: "Maybe we weren't litigious enough …. [T]he

reason we waited six years, it might show that we could tolerate them copying some

… names[.]" D.I. 132-2 at 349:21-22; 323:8-20. And while, in fact discovery, J&J

asserted privilege to block inquiry into its contemporaneous reasoning, it

nonetheless served seven expert reports opining on (1) the conclusions J&J drew

about the extent of copying prior to 2020, and (2) why J&J did not sue following the

2014–2015 investigation. *See* D.I. 335, Ex. 16 ¶¶161-69; Ex. 17 ¶¶26-28; Ex. 15

¶¶6-11; Ex. 12 ¶¶356-60; Ex. 13 ¶¶71-72; Ex. 18 ¶¶4, 11-14; Ex. 14 ¶19. One of

2

J&J's experts even insinuated that J&J employees involved in the 2014–2015 investigation could not have known about the alleged infringement because they had limited expertise—the very subject on which J&J prevented discovery of the actual analysis and conclusions of the individuals involved. *Id.*, Ex. 15 ¶11. Worse still, that assertion is belied by J&J's own privilege log, which reveals ███████████ ████████████████████████████████████████████████████████████. *See id.*, Ex. 20 at 325 (███████████████████████████████████████ ██████████); Ex. 6 at 337:25-340:3.[1]

J&J cannot have it both ways: concealing what it knew or could have known and why it did not sue in 2014 on privilege grounds, while offering untestable after-the-fact explanations or excuses at trial. As Alcon was not permitted discovery into J&J's investigation and decision-making, J&J's reference to it at trial is unfairly prejudicial.[2] *See Software AG*, 2005 WL 859266, at *2 (precluding defendant from introducing "evidence that its pre-litigation correspondence … was handled in part by a patent attorney" while "asserting privilege as to his private communications").

---

[1]   Alcon moved to strike J&J's experts' opinions about what J&J objectively could have known, or, in the alternative, compel production of related documents and testimony due to a waiver of any alleged J&J privilege. D.I. 335. J&J successfully argued to Magistrate Judge Hall that its analysis and decision not to sue was privileged. 9/8/2022 Tr. 49:21-50:18, 54:14-18.

[2]   Discussing or suggesting its decision-making during trial would waive privilege. *See Princeton Digital Image v. Off. Depot*, 2017 WL 3264068, at *1 (D. Del. Aug. 1, 2017); *Medtronic v. Guidant*, 378 F.Supp.2d 503, 505 n.2 (D. Del. 2005).

3

Respectfully,                                        */s/ John W. Shaw*
OF COUNSEL:                                          John W. Shaw (No. 3362)
                                                     Karen E. Keller (No. 4489)
Jeanne M. Heffernan                                  Andrew E. Russel (No. 5382)
James John Lomeo                                     Nathan R. Hoeschen (No. 6232)
KIRKLAND & ELLIS LLP                                 SHAW KELLER LLP
401 Congress Avenue                                  I.M. Pei Building
Austin, TX 78701                                     1105 North Market Street, 12th Floor
(512) 678-9100                                       Wilmington, DE 19801
                                                     (302) 298-0700
Gregg F. LoCascio                                    jshaw@shawkeller.com
Sean M. McEldowney                                   kkeller@shawkeller.com
Noah S. Frank                                        arussell@shawkeller.com
Mary Elizabeth Miller                                nhoeschen@shawkeller.com
Elizabeth Hedges                                     *Attorneys for*
Kelly Tripathi                                       *Alcon Inc.,*
KIRKLAND & ELLIS LLP                                 *Alcon Vision, LLC,*
1301 Pennsylvania Avenue, N.W.                       *Alcon Laboratories, Inc. and*
Washington, DC 20004                                 *Alcon Research, LLC*
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 1, 2022

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 1, 2022, this document was

served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com


S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

    Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC., and
ALCON RESEARCH, LLC,

    Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

    Counterclaim-Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

    Counterclaim-
    Defendants.

C.A. No. 20-842-CFC

**JURY TRIAL DEMANDED**

**[PROPOSED] ORDER GRANTING ALCON'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE J&J FROM OFFERING EVIDENCE REGARDING WHAT IT KNEW OR COULD HAVE KNOWN ABOUT COPYING IN <u>2014–2015 AND ITS DECISION NOT TO SUE PRIOR TO 2020</u>**

On this _____ day of _____, 20____, the Court having considered Alcon's Motion *in Limine* to Preclude J&J From Offering Evidence Regarding What It Knew Or Could Have Known About Copying In 2014–2015 And Its Decision Not To Sue Prior To 2020, and all papers and argument submitted therewith,

IT IS ORDERED that the motion is GRANTED, and J&J is precluded from offering any evidence or argument concerning what it knew or could have known as a result of its 2014–2015 investigation into copying, why it decided not to sue in 2014–2015, and why it decided to sue in 2020, including but not limited to the opinions described by J&J's experts in the following reports and testimony:

- Opening Expert Report of Nikolaus Baer ¶¶161–69;

- Rebuttal Expert Report of Nikolaus Baer ¶¶26–28;

- Reply Expert Report of Nikolaus Baer ¶¶6–11;

- Opening Expert Report of Douglas C. Schmidt, Ph.D. ¶¶356–60;

- Rebuttal Expert Report of Douglas C. Schmidt, Ph.D. ¶¶71–72;

- Reply Expert Report of Douglas C. Schmidt, Ph.D. ¶¶4 (bullet 1), 11–12, 13 (only the phrase "unlike AMO"), and 14;

- Rebuttal Expert Report of Laura B. Stamm ¶19;

- July 14, 2022 Deposition Transcript of Laura B. Stamm at 59:15–18, 69:18–21, 70:22–71:13, 84:6–12;

- July 22, 2022 Deposition Transcript of Douglas C. Schmidt, Ph.D. at 110:15–18, 112:13–16, 117:4–10, 117:17–118:6, 122:14–20, 123:22–124:7, 125:6–11, 140:15–21, 141:4–10, 141:13–18, 142:15–16, 142:19–23, 143:3–10, 143:16–

2

144:1, 144:8–12, 145:18–25, 146:10–16, 147:15–19, 148:7–11, 153:22–154:4, 154:16–21, 155:3–8, 155:14–17, 156:1–2, 172:1–5;

- August 4, 2022 Deposition Transcript of Nikolaus Baer at 271:25–272:3, 272:13–18, 272:23–273:3, 278:14–17, 279:2–13, 289:15–24, 290:8–10, 291:18–292:4, 295:4–9, 295:11–22, 296:14–21, 297:10–17, 298:18–299:1.

<br>

_____
United States District Judge

# EXHIBIT 20B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

     Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

     Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

     Counterclaim Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

     Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' OPPOSITION TO ALCON'S MOTION *IN LIMINE* NO. 1
TO PRECLUDE J&J FROM OFFERING EVIDENCE REGARDING
WHAT IT KNEW OR COULD HAVE KNOWN ABOUT COPYING IN
2014–2015 AND ITS DECISION NOT TO SUE PRIOR TO 2020**

In view of the Court's decision barring J&J's claim for pre-2017 source code damages based on the statute of limitations, D.I. 490, there is no reason for *either* party to introduce evidence of J&J's alleged delay in bringing suit or reasonableness thereof. After all, the discovery rule is no longer at issue for the software, the sole subject of the 2014 investigation. Nor is J&J's alleged delay relevant to damages, since, as the Federal Circuit has held, "[t]he argument that the delay in bringing suit somehow establishes [plaintiff's] perception of the value of its invention is specious." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1352 (Fed. Cir. 2018). And the inevitable confusion and prejudice from a mini-trial on J&J's alleged delay would substantially outweigh any (nonexistent) probative value, particularly given Alcon's intent to draw negative inferences from J&J's invocation of the privilege. *See* J&J's Motion *in Limine* No. 3.

Moreover, this Court has *already* rejected Alcon's primary argument. Specifically, Alcon seeks to prevent J&J from offering expert opinions about what it could have *objectively* known about Alcon's copying before 2020, on the theory that J&J is using privilege over its 2014 investigation as both a sword and a shield. But Alcon made the same argument to Magistrate Judge Hall five months ago when seeking to exclude the exact same opinions. *Compare, e.g.*, Mot. 2 (seeking to prevent J&J from relying on "seven expert reports opining on (1) the conclusions J&J drew about the extent of copying prior to 2020, and (2) why J&J did not sue

1

following the 2014–2015 investigation") *with* D.I. 335 at 2 (seeking to strike "seven expert reports opining on (1) the conclusions J&J drew about the extent of copying prior to 2020, and (2) why J&J did not sue until 2020"). Judge Hall rejected Alcon's argument, concluding that J&J's expert opinions did not put any privileged communications at issue. Ex. 1 at 50:2-18, 54:12-18. Alcon did not file Rule 72 objections, so that ruling is now law of the case. Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); *see also Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood LLC*, 2020 WL 1140907, at *2 (D. Del. Mar. 9, 2020). The issue has been decided, once and for all.

In any event, Judge Hall got it right. The sword-and-shield doctrine applies where a party selectively waives privilege by placing a privileged communication at issue. *See, e.g.*, *In re Niaspan Antitrust Litig.*, 2018 WL 2363577, at *2-3 (E.D. Pa. May 24, 2018). But a party puts privileged information at issue only when it "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). As Judge Hall found, J&J's experts do not put privileged advice or even J&J's state of mind at issue. Ex. 1 at 50:7-18. Instead, they advance a purely objective analysis of what J&J could have reasonably known about Alcon's source code copying. *See, e.g.*, Ex. 2 ¶¶ 356-360. None of that analysis implicates J&J's privilege over its 2014 investigation.

2

J&J is not "concealing" facts. Mot. 3. As Judge Hall determined after reviewing J&J's privileged material *in camera*: "All the **facts** in that document have been disclosed to you." Ex. 1 at 14:8-13 (emphasis added). Nor is J&J offering "untestable" explanations. Mot. 3. Alcon's expert has access to the same facts and can draw his own conclusions about what J&J could have reasonably known based on those facts. Alcon's theory that it needs privileged information to test J&J's contentions has "dubious validity." *Rhone-Poulenc*, 32 F.3d at 864.

As Judge Hall found, J&J's experts do not rely on any privileged information to support their opinions. Mr. Baer's opinions reflected **his** analysis of the LenSx object code. Ex. 3 ¶¶ 164-167. Dr. Schmidt relied on materials that were **produced** in the litigation. Ex. 4 ¶ 71. These expert opinions do not speculate about what J&J's attorneys concluded in 2014 and "have not interjected the advice of counsel as an essential element of a claim in this case." *Rhone-Poulenc*, 32 F.3d at 864. Thus, those opinions do not use privilege as both a sword and shield.

Finally, it would be manifestly unfair and prejudicial to permit Alcon to argue, based on a partial record, that J&J had no reasonable justification for its alleged delay in filing suit, while at the same time preventing J&J from presenting evidence based on non-privileged facts that it was objectively reasonable for J&J not to sue until 2020. In short, nobody should be talking about delay anymore, but if Alcon is permitted to do so, J&J should be allowed to respond and defend itself.

3

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

4

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 15, 2022

# CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>Andrew E. Russell, Esquire<br>David M. Fry, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendants*<br>*and Counterclaim-Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Joshua L. Simmons, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>*Attorneys for Defendants*<br>*and Counterclaim-Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Jeanne M. Heffernan, Esquire<br>James John Lomeo, Esquire<br>Ryan James Melde, Esquire<br>KIRKLAND & ELLIS LLP<br>401 Congress Avenue, Suite 2500<br>Austin, TX  78701<br>*Attorneys for Defendants*<br>*and Counterclaim-Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Caroline Lourgos, Esquire<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654<br>*Attorneys for Defendants*<br>*and Counterclaim-Plaintiffs* | *VIA ELECTRONIC MAIL* |

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____
Anthony D. Raucci (#5948)

2

# EXHIBIT 20C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

      Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

_____

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim-Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim-
      Defendants.

C.A. No. 20-842-CFC-JLH



**ALCON'S REPLY BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE*
NO. 1 TO PRECLUDE J&J FROM OFFERING EVIDENCE REGARDING
WHAT IT KNEW OR COULD HAVE KNOWN ABOUT COPYING IN
2014–2015 AND ITS DECISION NOT TO SUE PRIOR TO 2020**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

J&J claims "nobody should be talking about delay anymore," Br. 3, but delay is relevant to, *inter alia*, whether the statute of limitations applies to J&J's copyright claims (FDA submissions and operator's manual), as well as damages (value of copyrights and failure to mitigate). *See* Alcon's Opp. to MIL 3 at 1-2; *Interplan Architects v. C.L. Thomas*, 2010 WL 4366990, at *48 (S.D. Tex. Oct. 27, 2010) (delay relevant to mitigation). *Exmark Mfg. v. Briggs & Stratton Power Prods.*, 879 F.3d 1332, 1352 (Fed. Cir. 2018), a patent case, is not to the contrary, as the court noted "there were **other reasons** for [plaintiff's] delay in filing suit, including scarcity of financial resources," and mitigation was apparently not at issue. By contrast, J&J offers fictional "objective" justifications for why its delay does not indicate the value it placed on the copyrights. Allowing J&J to put forward a fiction of what it "could have known" would unfairly allow J&J to make arguments Alcon is powerless to test with J&J's actual knowledge. *See Software AG v. Bea Sys.*, 2005 WL 859266, at *2 (D. Del. Apr. 8, 2005). Alcon's MIL seeks to **prevent** a mini-trial on what J&J claimed privilege over, not cause one. Nor has the Court previously decided this issue: Judge Hall's order related to the "scope of discovery," not admissibility. *See Poche v. Joubran*, 389 F. App'x 768, 774 (10th Cir. 2010) (order denying motion to compel was not "the final order governing … admissibility"). Law of the case "does not apply to … discovery rulings." *In re Katrina Canal Breaches Consol. Litig.*, 2010 WL 2522968, at *2 (E.D. La. June 14, 2010).

1

Respectfully,

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 21, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

2

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 21, 2022, this document

was served on the persons listed below in the manner indicated:

### BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
Michael E. Bern
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 21A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842-CFC-JLH <br><br> ███████████ <br> ███████████ |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim-Defendants. | |

**ALCON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* (NO. 2) TO PRECLUDE J&J FROM OFFERING EVIDENCE OR ARGUMENT REGARDING ALTERNATIVE REDEVELOPMENT METHODS SUCH AS A "CLEAN ROOM" REDEVELOPMENT PROCESS**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

After J&J notified Alcon of its copyright infringement claims, Alcon engineers redeveloped the LenSx code (*i.e.*, it is now different code that achieves the same uncopyrightable functionality). J&J may seek to offer evidence or argument that Alcon could have used, but did not use, a clean room to redevelop the code and that, as a result, the redeveloped code is still substantially similar to J&J's code. Yet, as discussed below, there is no legal requirement to use a clean room, and J&J's arguments carry a high risk of confusing the jury as to the independent prongs of "access" and "substantial similarity" in the copyright infringement test. Because J&J's arguments are irrelevant and unduly prejudicial, Alcon moves to preclude J&J from offering any evidence or argument regarding alternative methods Alcon could have used to redevelop the accused LenSx source code, including a "clean room."

For J&J to show that the redeveloped code is copied from J&J's copyrighted iFS program, J&J must prove that (1) Alcon developers had access to the iFS program, *and* (2) the redeveloped code is "substantially similar" to the protectable portions of the iFS program. *Whelan Assoc. v. Jaslow Dental Laboratory*, 797 F.2d 1222, 1231-32 (3d Cir. 1986). Though "independent creation is a complete defense to a claim of copyright infringement," *id.* at 1228 n.7, Alcon has not raised that defense and there is otherwise no requirement under copyright law for Alcon to demonstrate independent creation. As a result, regardless of whether or not Alcon had access to prior versions of its own allegedly infringing code (or the original

1

LenSx engineers had access to the actual iFS code), Alcon's redeveloped code cannot infringe if it is not substantially similar. *See Stromback v. New Line Cinema*, 384 F.3d 283, 299 (6th Cir. 2004) ("No amount of proof of access will suffice to show copying if there are no similarities.").

Although independent creation is not required by copyright and not raised as a defense by Alcon, J&J's expert, Nikolaus Baer, was nonetheless asked to analyze "whether [Alcon's redevelopment process] was constructed in a manner *that ensured independent development* of the resulting source code." Ex. 1, Baer Op. Rpt. ¶124. After criticizing Alcon for not using his version of "clean room" development, Mr. Baer concluded that Alcon's process did "not constitute an independent development" (but it was not required to). *Id*. ¶¶123–46. He also misleadingly conflates the two elements of the copying test: for example, Mr. Baer speculates that "if the unauthorized content was used as a starting point, the resulting code may *inevitably bear substantial similarities* to the copyrighted work," and concludes "Alcon's process was pursued in a way that virtually guarantees the LenSx source code would *continue to be contaminated* by copying." *Id*. ¶¶24, 125. But the question of substantial similarity turns on the *result* Alcon obtained, not the *process* it used. *Whelan*, 797 F.2d at 1232–33; *Liu v. Price Waterhouse*, 2000 WL 1644585, at *2 (N.D. Ill. Oct. 30, 2000) ("That defendants may have viewed or studied plaintiff's program is irrelevant if defendants' resulting work is not

2

substantially similar….").    J&J's straw-man argument about a clean room implementation is simply not relevant to whether or not the resulting code is substantially similar.  This "clean room" evidence and argument has, at best, low probative value, and, at worst, no relevance at all to whether or not Alcon's redeveloped code infringes J&J's copyrights.

Crucially, the risk of jury confusion and prejudice to Alcon that would result is very high.  By using the imprimatur of expert testimony to construct (and knock down) a straw-man argument about a redevelopment method Alcon never claimed to use, concerning a defense Alcon never raised, J&J may mislead the jury to believe that, because Alcon did not use this legally unnecessary clean room process, the resulting code must infringe J&J's copyrights.  Such an argument would distract the jury from the salient issue of whether or not the rewritten LenSx code is actually substantially similar to J&J's iFS code, an issue that only involves a comparison of the works (*i.e.*, the result of Alcon's process, not the process itself).  *See Purohit v. Legend Pictures*, 448 F. Supp. 3d 382, 386 (D. Del. 2020).    Therefore, because the low probative value is substantially outweighed by the danger of confusion and prejudice, it should be excluded.  *See In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 921–22 (4th Cir. 2016) (affirming Rule 403 exclusion of particular FDA approval process because it could "lead jurors to erroneously conclude that regulatory compliance proved product safety").

3

Respectfully,                                                  */s/ John W. Shaw*
OF COUNSEL:                                                    John W. Shaw (No. 3362)
                                                              Karen E. Keller (No. 4489)
Jeanne M. Heffernan                                           Andrew E. Russell (No. 5382)
James John Lomeo                                              Nathan R. Hoeschen (No. 6232)
KIRKLAND & ELLIS LLP                                         SHAW KELLER LLP
401 Congress Avenue                                          I.M. Pei Building
Austin, TX 78701                                             1105 North Market Street, 12th Floor
(512) 678-9100                                               Wilmington, DE 19801
                                                              (302) 298-0700
Gregg F. LoCascio                                            jshaw@shawkeller.com
Sean M. McEldowney                                           kkeller@shawkeller.com
Noah S. Frank                                                arussell@shawkeller.com
Mary Elizabeth Miller                                        nhoeschen@shawkeller.com
Elizabeth Hedges                                             *Attorneys for*
Kelly Tripathi                                               *Alcon Inc.,*
KIRKLAND & ELLIS LLP                                         *Alcon Vision, LLC,*
1301 Pennsylvania Avenue, N.W.                               *Alcon Laboratories, Inc. and*
Washington, DC 20004                                         *Alcon Research, LLC*
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 1, 2022

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 1, 2022, this document was

served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
and AMO SALES AND SERVICE,
INC.,

      Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Defendants and
      Counterclaim
      Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC,
AMO SALES AND SERVICE, INC.
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Plaintiffs and
      Counterclaim
      Defendants,

C.A. No. 20-842 (CFC) (JLH)

**OPENING EXPERT REPORT OF NIKOLAUS BAER**

███████████████████████████

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

Scooter Software, Inc.,[4] CodeSuite and the included CodeDiff tool from Software Analysis and Forensic Engineering Corp.,[5] and Understand by SciTools.[6] These tools are all well-known and considered reliable by experts in this field, and I and other technical experts commonly rely upon them to analyze source code in legal disputes.

### C.    Software Clean Room Development

24.    When a codebase has been discovered to include unauthorized content (e.g., when portions of source code have been copied without permission from a copyrighted program), excising the unauthorized content from that codebase is not necessarily a straightforward endeavor. That is because, among other reasons, simply modifying the portions of source code that contain unauthorized content might not cure those portions from the contamination of copying. Even where such modifications are extensive, if the unauthorized content was used as a starting point, the resulting code may inevitably bear substantial similarities to the copyrighted work. And, at a minimum, it may be difficult to rewrite those portions of source code such that the developers' work is not derived from the unauthorized content.

25.    By way of analogy, suppose a publisher of a book discovers that several chapters of a novel were copied verbatim without permission from another novel. Purging those chapters of the unauthorized material would not be as simple as rearranging the words in each of the sentences or changing the names of characters and places. Even if the chapters are modified sufficiently to eradicate all instances of identical overlap—itself a potentially daunting task—

---

[4] BEYOND COMPARE, www.scootersoftware.com.

[5] CODESUITE, www.safe-corp.com/products_codesuite.htm; CODEDIFF, www.safe-corp.com/products_codediff.htm.

[6] UNDERSTAND BY SCITOOLS, www.scitools.com.

11

other elements of the resulting work (e.g., the plot of the story or the organization of the book) may nevertheless remain substantially similar to the copyrighted work, because the underlying structure of the novel was previously created through unauthorized copying. Furthermore, even if the unauthorized chapters were deleted, there would most likely be many places in the surrounding chapters that included or rely upon the unauthorized material. The process would be further complicated if writing the new novel was based upon the copied chapters from the very start, such that the structure and organization of the novel stemmed from the unauthorized material.

26.    A software "clean room" procedure is one well-known method for curing computer programs of material that has been copied without permission.[7] Software clean room development is a process for implementing software without any use or exposure to certain protected intellectual property. It is used to develop software after exposure to intellectual property that should not be utilized, such as protected source code or software components, has occurred, and it ensures that the resulting software is not derived from the protected intellectual property. Under a clean-room procedure, the portions of software that an organization wishes to cure are rewritten from scratch. Critically, the only developers that are selected to write the new code are those that have not been exposed to the potentially contaminated portions of source code. Further, these selected developers are denied access to the potentially contaminated portions of source code.[8] Because these developers lack access to the ostensibly infringing source code—and thus lack access to the content of the underlying copyrighted work—a clean

---

[7] See Bob Zeidman, *The Software IP Detectives Handbook*, at 371 (2011) [hereinafter "IP Detectives"].

[8] IP Detectives at 375.

12

room design can (if implemented correctly) ensure that the newly created software is the product of independent development rather than copying.[9]

27.    At a high level, removing access to the contaminated portions of source code may require multiple teams of developers, where one team removes the contaminated portions of source code while another completely isolated team writes the new source code. The team responsible for removing the contaminated portions of source code includes developers already familiar with the contaminated source code. The contaminated portions of source code that must be removed include source code that is derived from or developed in coordination with the protected source code or software components, so that the developers do not rely upon portions of the protected material that took root in the derived source code and are not guided back to recreating the protected source code or software components by these remaining artifacts.  The first team then develops the functional requirements for the contaminated and removed code. The second team, which consists of developers who have never seen or worked with the contaminated code, then takes the raw functional specifications from the first team and develops source code to meet those functional specifications.

28.    At a more granular level, the traditional approach to a clean-room design is based upon three roles: clean room developers, dirty room developers, and the monitor.[10] One team, sometimes called the "dirty room" team, is allowed access to the copyrighted source code.[11] The dirty room developers are individuals with possible exposure to the protected intellectual

---

[9] IP Detectives at 371.

[10] Bob Zeidman, "Implementing a Software Clean Room," in *The Software IP Detective's Handbook*. Westford, MA: Prentice Hall, 2011; Bernard A. Galler, "The Clean Room Approach," in *Software and Intellectual Property Protection*. Westport, CT: Quorum Books, 1995.

[11] IP Detectives at 374.

13

property. The developers on this team are charged with determining the code's functionality and distilling it into elements that are not protected by copyright. They may also be responsible for purging the protected intellectual property from the source code.

29.    A second team, sometimes called the "clean room" team, is insulated from the copyrighted source code. The clean room developers are individuals with no access or exposure to the protected intellectual property. The clean room developers will implement the new non-infringing solutions. This team is charged with independently developing new source code that performs the functionalities articulated by the dirty-room team.[12] If separation between the clean-room team and the copyrighted elements of the earlier work is properly enforced, then the code created by the clean-room team will assuredly not be the result of copying that work.

30.    A third party, sometimes called the "monitor," may also optionally be employed as an intermediary between the dirty-room and clean-room teams.[13] The dirty room developers and clean room developers remain distinct, and all information passed between the dirty room developers and clean room developers should be filtered by the monitor to assure that no protected intellectual property is passed to the clean room developers. The monitor's role is to review any information to be provided to the clean-room team from the dirty-room team and to verify that it does not contain any protected material.[14]

31.    There are myriad other guidelines that might be used as a matter of prudent practice in implementing a clean-room design, such as keeping accurate records of any

---

[12] IP Detectives at 375, 380.

[13] IP Detectives at 376.

[14] IP Detectives at 376.

14



information provided to the clean-room team or relying on an independent third party to perform the monitor role.[15] Regardless of which such guidelines are implemented, the key principle underlying any clean-room design is the *separation* between the copyrighted work and the team of engineers responsible for creating the functionally equivalent but independently developed work, such that continued copying of protected elements cannot occur.

## V.   Understanding of the Law

32.    Counsel for J&J Vision has provided me with the legal principles below, which I have applied to the issues I have been asked to analyze.

### A.    Copyright and Software

33.    I understand that original computer programs can be protected by copyright. I understand that copyright protections can apply to the literal elements of a computer program—i.e., its source code and object code. I understand that copyright protections can also apply to the non-literal elements of a computer program, such as the overall structure, sequence, and organization of the program.

34.    I understand that copyright protections can extend to a computer program if the program possesses at least some minimal degree of creativity. I understand that the choice and ordering of the various elements of a program, for example, can constitute the creativity required to protect a work under copyright.

### B.    Copyright Infringement

35.    I understand that, generally, the owner of a copyright has the exclusive rights to engage in a number of activities with respect to the copyrighted work. For instance, I understand

---

[15] Bernard Galler, *Software and Intellectual Property Protection*, at 126-128 (1995).

15



small adjustments to spacing within lines of code. The substantial number of similarities cannot

be explained by standard development practices, public domain content, or other external factors.

**X.    Alcon's Process for Refactoring the LenSx Source Code Is Fundamentally Flawed**

123.    It is my understanding based on documents and deposition testimony I have

reviewed that, during the pendency of this litigation, Alcon undertook an effort to "refactor[]"

parts of the LenSx source code "in response to copyright infringement allegations."[103]

124.    In addition to having been asked to analyze the source code resulting from this

refactoring effort, which is discussed in a separate section below, I have been asked to evaluate

Alcon's process for refactoring portions of the LenSx code. More specifically, I have been asked

to analyze whether this process was constructed in a manner that ensured independent

development of the resulting source code or otherwise safeguarded against unauthorized copying

of the iFS source code. In conducting this analysis, I have relied on my expertise in software

development generally and also on my experience with "clean room" design efforts more

specifically, which I described above.

125.    My analysis has led me to conclude that Alcon's process was not constructed in a

manner that would ensure that the refactored LenSx code would be the result of independent

development. Nor was it constructed in a manner that would even meaningfully facilitate

independent development of the resulting code. Instead, Alcon's process was pursued in a way

that virtually guarantees the LenSx source code would continue to be contaminated by copying

of the iFS source code that occurred during the prior development of the LenSx software.

---

[103] Software Development Guideline, Ver. 1.00 (Jan. 27, 2022), ALCON_LENSX3804890 at 3804-893.

56

126.    The background section of my report above provides some discussion of a standard approach that Alcon could have used to better ensure independent development of its refactored LenSx code: a software "clean room" procedure. As I will explain further below, Alcon's process contrasted with a clean room procedure and failed to incorporate mechanisms that would adequately cure the LenSx code base of contamination from prior copying.

### A.    Summary of Alcon's Attempted Process for Refactoring the LenSx Source Code

127.    According to Alcon's deposition testimony, Alcon began its refactoring efforts sometime in the second half of 2021.[104] More specifically, according to a report from Alcon's timecard system related to the refactoring project, the earliest work on the refactoring project began in June 2021.[105] Based on the information Alcon has provided, the apparent starting point of development efforts was a meeting between an Alcon employee named David Thoe and Daniel Teodorescu, a senior principal software engineer at Alcon, regarding the initiation of the refactoring project.[106] Mr. Thoe informed Mr. Teodorescu that there was an "allegation of copyright infringement" and asked Mr. Teodorescu to "work on redesigning portions of the LenSx software" in order to address those allegations.[107]

128.    Following this initial meeting between Mr. Teodorescu and Mr. Thoe, Mr. Teodorescu assumed the role of technical lead on the refactoring project.[108] Meanwhile, an

---

[104] Teodorescu Tr. 101:15-102:1..

[105] ALCON_LENSX3805249; *see also* Teodorescu Tr. at 61 (identifying ALCON_LENSX3805249 as a "report generated by [Alcon's] timecard system" that shows "the staff within Alcon that [were] working on" the LenSx refactoring project).

[106] Teodorescu Tr. 20:24-21:4.

[107] Teodorescu Tr. 20:24-21:4.

[108] Teodorescu Tr. 72:6-10.

57

████████████████████████████████████████████████████

associate director at Alcon named Sukit Lertsuntivit took the lead for the project on "people and

resources."[109]  Certain other personnel who worked on the refactoring project are identified in

the report from Alcon's timecard system referenced above.[110]  These include Prasadh Teppala,

Jamshid Ourmazdi, and Asheesh Sah.[111]  Some developers who have worked on the project are

internal Alcon developers, while others are external contractors.[112]  Invoices produced by Alcon

indicate that ████████████████████████████████████████ in January of 2022

and ██████████ in December of 2021.[113]  According to Alcon's deposition testimony,

"[a]pproximately more than seven and less than 12" developers are continuing to work on

debugging of the refactored source code, as of March 4, 2022.[114]

129.    Mr. Teodorescu, the technical lead on the refactoring project, was apparently not

provided with any guidance about "clean room" design principles or instructed to apply them in

his execution of the refactoring project.[115]  And Mr. Teodorescu was not otherwise provided with

any instructions about the process that should be applied to refactor the LenSx source code.[116]

Instead, Mr. Thoe merely provided Mr. Teodorescu with "a list of sections of code" to be

---

[109] Teodorescu Tr. 72-73.

[110] ALCON_LENSX3805249; *see also* Teodorescu Tr. 65:25-66:8 (confirming that ALCON_LENSX3805249 identifies the personnel who worked on the LenSx refactoring project).

[111] ALCON_LENSX3805249.

[112] Teodorescu Tr. at 53:19-25.

[113] ALCON_LENSX3805246; ALCON_LENSX3805242; *see also* Teodorescu Tr. 80:24-83:24 ████████
████████████████████████████████████████████████████████

[114] Teodorescu Tr. at 53:15-18.

[115] Teodorescu Tr. at 39:10-40:11.

[116] Teodorescu Tr. at 35:23-36:5.

58

"refactor[ed]."[117]  I understand that Alcon has not provided that list nor any information about how it was curated.[118]

130.    Consistent with Alcon having not instituted any formal guidelines or principles to which the refactoring project should adhere, there were apparently no constraints imposed to isolate the development of the refactored code from any contamination that resulted from any prior copying that had occurred during the LenSx code development.  The developers who worked on the LenSx refactoring project all had access to earlier versions of the LenSx source code, including the latest repository of LenSx source code.[119]  In fact, according to Alcon's deposition testimony, these developers' access to the LenSx source code was not restricted in any way.[120]

131.    Instead, the personnel working on the LenSx refactoring project simply worked from the latest version of the LenSx software, using it as a base for their development.[121]  That is, the developers apparently began with the prior version of the LenSx source code—version 2.31F (one of the versions accused by J&J Vision of copyright infringement)[122]—and merely revised it in various respects in order to create the refactored code, which Alcon has designated internally as version 2.31G.[123]  In some instances, the development of new source code began with a "clean, empty source code file" to replace some portion of existing LenSx code from

---

[117] Teodorescu Tr. at 21:5-14.

[118] Teodorescu Tr. at 22:18-24.

[119] Teodorescu Tr. at 40:21-41:1.

[120] Teodorescu Tr. at 41:7-42:14.

[121] Teodorescu Tr. at 42:24-43:2.

[122] Teodorescu Tr. at 94:11-18.

[123] Teodorescu Tr. at 92:11-93:8.

███████████████████████████████████████████████████

version 2.31F.[124]  In other instances, "there were portions [of code] that were replaced in the

existing files."[125]  However, regardless of the physical writing of the replacement source code,

the process began with studying and "building some kind of a model" from the existing source

code.[126]  The only portions of code that were refactored were those portions identified in the list

provided to Mr. Teodorescu by Mr. Thoe.[127]

132.    Only one new piece of documentation was created in connection with the LenSx

refactoring project, which is a document titled "Software Development Guideline," version

1.00.[128]  The document is 74 pages long and is dated January 27, 2022.[129]  ███████████

█████████████████████████████████████████████████████

████████████████  ███████████████████████████████████

█████████████████████████████████████████████████████

████████  For example, J&J Vision has asserted in this litigation that at least twenty functions

found in the file ████████████████████████████████████████  of the

LenSx source code were copied from J&J Vision's iFS code.[130]  Meanwhile, ███████████

---

[124] Teodorescu Tr. at 38:15-23.

[125] Teodorescu Tr. at 38:24-39:14.

[126] Teodorescu Tr. at 38:3-11.

[127] Teodorescu Tr. at 43:3-7.

[128] *See* Software Development Guideline (ALCON_LENSX3804890); *see also* Teodorescu Tr. 45 (explaining that the "software guideline document" was "the only document created brand new").

[129] *See* Software Development Guideline (ALCON_LENSX3804890).

[130] *See* J&J Vision's Third Supplemental Response to Interrogatory No. 11 (Feb. 9, 2022), at 17.

60

61

---

[131] Software Development Guideline (ALCON_LENSX3804890) at 3804911.

[132] Software Development Guideline (ALCON_LENSX3804890) at 3804906.

[133] *See* J&J Vision's Third Supplemental Response to Interrogatory No. 11 (Feb. 9, 2022), at 52.

[134] LenSx Software 2.31G Software Change Requests (SCRs) (ALCON_LENSX3805251).

[REDACTED]

Thus, the engineers responsible for modifying the LenSx source code were apparently being explicitly directed to the portions of LenSx source code accused of copyright infringement.

135.    The facts I have outlined above demonstrate that Alcon's process for refactoring the LenSx source code, by design, provided negligible assurances that the resulting source code would be devoid of copied iFS code.  In particular, there are four aspects of Alcon's process that render it flawed and unlikely to cure the accused LenSx code of content copied from protected elements of the iFS source code.

**B.    Alcon's Refactoring Developers Maintained Access to the Accused LenSx Source Code**

136.    First, the fact that the developers of the refactored code maintained access to the accused LenSx code creates opportunities for the developers to copy aspects of the prior LenSx source code—which is why the absence of such access is fundamental to any traditional clean-room approach.  Most obviously, a developer with access to the accused code could simply copy verbatim portions of it, which were originally copied from the iFS code, and it is unclear whether Alcon even had any mechanisms in place to police that potential conduct.  But even assuming that these refactoring developers did not copy large portions of the accused code verbatim, providing them with access to the code would, at a minimum, increase the chance that their work would be derived from the accused code, including portions that were copied from the iFS source

---

[135] LenSx Software 2.31G Software Change Requests (SCRs) (ALCON_LENSX3805251) at -3805252.

[136] *See* J&J Vision's Third Supplemental Response to Interrogatory No. 11 (Feb. 9, 2022), at 6-10.

code. For instance, a developer with access to the accused code might be tempted to use a portion of it as an outline for creating new code that performs the same functionality—particularly if the refactoring developers were under pressure to deliver functional code by a particular deadline or within the constraints of a specified budget. For example, a developer searching for ways to take a substantial shortcut to meet timeline and budget constraints might simply use exactly the same structure, sequence, and organization of a portion of the accused code, while merely making superficial changes such as changes to variable names and formatting. That would create a very high risk that previously copied protected elements of the iFS code would persist in the refactored code, even if the code were not verbatim the same. Moreover, even a developer not bent on taking such a significant shortcut might find efficiencies in recycling aspects of the structure, sequence, and organization, which might still result in source code that is based on previously copied iFS source code that had been incorporated into the LenSx source code.

137.    To the extent that the developers involved with the refactoring development have now been exposed to the accused LenSx source code, their exposure, along with other exposed Alcon developers, would taint any future clean room effort and any such developer should not be involved in any future effort, should Alcon reattempt an effort to purge the accused LenSx source code again.

**C.    Alcon Directed the Refactoring Developers to Rely on the Accused LenSx Source Code**

138.    Second, not only did Alcon fail to deprive the refactoring developers of access to the accused LenSx source code, Alcon apparently did not distribute among separate teams the processes of specifying the functionality of the existing code, on the one hand, and developing

the new code, on the other hand (such as would be done under a traditional clean-room approach). Instead, Alcon appears to have constituted a single team of refactoring developers and directed them to simply rewrite portions of the existing LenSx code, without even instructing them to first define the desired functionality before proceeding to write new code. In fact, as explained above,

The refactoring developers appear to have then studied, and "buil[t] some kind of a model" from the existing source code, before refactoring it.[137]

139.    This is a particularly stark departure from a traditional clean-room design approach. Under a clean-room design approach, precautions are taken to preclude even potential opportunities for developers of the new source code to base their work on the potentially infringing source code. But here, that was effectively built into the plan. That is, the refactoring developers were expressly invited to use the allegedly copied portions of LenSx source code as their starting point. Put another way, they were essentially directed to base their refactoring work on the accused source code, including the portions copied verbatim from the iFS code. This is an especially problematic aspect of Alcon's process, and in my opinion, it makes it exceedingly likely that portions of the resulting refactored code would be derived from portions of the LenSx source code that were copied from the iFS code and that copied elements of the iFS code would persist in the refactored codebase. Even the most well-intentioned source code

_____

[137] Teodorescu Tr. at 38:3-11.

64

developer might find it difficult, if asked to steep her mind in an existing work and develop a new version of it, to avoid incorporating elements of that existing work into the new code, including elements that might be protected by copyright. Any allowance for independent creative development is further stifled when the developer is still working within the confines of the existing work and is thereby limited to fit the same functionality into the same surrounding mold. By way of analogy, this is like asking a writer to read an essay and rewrite select paragraphs so that they are different but still convey the same message and are still seamlessly coherent with the surrounding paragraphs. Even if the writer is determined to create a significantly different work, it might be very difficult to isolate the protected elements of the original essay and avoid allowing those to contaminate the new work, particularly because the writer is forced to absorb those elements as part of the process.

### D. Alcon Did Not Separate the Steps of Excising the Copied Content and Writing New Source Code

140. Third, the refactoring developers were apparently not asked to filter the existing LenSx codebase—i.e., the actual files in which they typed source code—of copied material *before* the writing of new code began. In other words, it was not only the case that the accused LenSx code was used as these engineers' guide for their development work, the set of files and folders comprising that codebase also appears to have been the actual canvas used for the refactoring development. As explained in Alcon's deposition testimony, the developers were "working from the latest version of the LenSx software," and in certain instances, these developers simply replaced portions of code in existing files from the codebase.[138] Under a

---

[138] Teodorescu Tr. at 38:15-39:7; 42:24-43:2.

65

[BLACK REDACTION BOX]

clean-room design approach, the copied content would be eradicated from the source code before new source code development began and before the copied content could become the basis and reintegrated into the refactored source code.

141.    This characteristic of Alcon's refactoring process can also be observed in the Software Development Guideline document.

[BLACK REDACTION BOX]

The inclusion of that comment suggests the refactoring developers were editing this file—in a form that included allegedly copied content—as opposed to starting from a version in which all elements copied from the iFS code had first been excised.

142.    This aspect of Alcon's process compounds the opportunities for protectable elements of the iFS code to persist in the LenSx codebase.  For one, because the developers were apparently operating directly on the prior version of the LenSx source code fluidly (i.e., without separating the steps of (1) excising the allegedly copied code and (2) developing new code to replace it), thoroughly removing any elements copied from the iFS source code would require careful and precise tracking of the portions of the original content that remain in the files and folders.  To understand the difficulties with this, consider the analogy discussed above where an author seeks to rewrite an original essay.  If the writer began with an electronic copy of the

---

[139] Software Development Guideline (ALCON_LESNX3804890) at 3804906.

[140] Software Development Guideline (ALCON_LESNX3804890) at 17.

original essay and proceeded to rewrite it by simply modifying that original electronic copy in a fluid manner, one could imagine the writer might quickly lose track of which portions of the document were present in the document from the outset. Because the original content and the modified content are intermingled without clear separation, it would become challenging to ensure that the resulting work is devoid of portions of the original essay. In software development involving a team of developers, as in Alcon's refactoring project, the difficulty of that challenge would be heightened because it further requires coordination among numerous actors.

143.    It bears mention, however, that even following a proper clean room procedure with the best intentions it would be nearly impossible to rid the LenSx source code of the copied iFS source code without rewriting the entire LenSx source code from scratch, because as discussed, the iFS source code appears to be the basis for the LenSx source code. That is, it is one thing to excise individual portions or elements of source code. It is quite another to remove the copying that is insidious and foundational within the LenSx source code. As a basic example, it is unclear how one would even proceed to remove the copied directory structure, the very arrangement of the source code files. But the directory structure of the LenSx source code was copied from iFS and to remove the copying, the directory structure itself would have to be removed.

### E.    Alcon Provided No Principled Written Guidance

144.    Fourth, it is problematic that Alcon did not even provide any written instructions setting out principled guidance as to the extent of the modifications required to sufficiently "refactor" the code at issue.

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ That evaluation was apparently left to the subjectivity of individual developers.  Accordingly, without any written guidance on how to sufficiently "refactor" a given portion of source code, the process leaves open that developers might implement only cursory edits to the code.  Under a more robust and principled approach to redesigning the LenSx software, such as a clean-room approach, the developers writing the new code would ideally not even have access to the accused source code.  But insofar as they have access and are simply modifying that code as a means to create the redesigned code, as here—and as a still wholly insufficient method to removing protected materials from a body of source code—the developers should at least have had concrete written guidelines on removal of the existing code, guidelines for minimizing their reliance on the existing code in writing the new code, and criteria that the new code should satisfy.  Without guidance and without a clean room process to properly excise the copied code and ensure the independent development of new code, the result will more likely than not include the renaming and reorganization of existing variables and instructions based upon the same structure, sequence, and organization of the copying code.

145.    Taking all these points into account, Alcon's process for refactoring the LenSx source code provided virtually no safeguards against the persistence of protectable elements copied from the iFS source code.  I would not expect this process to guarantee that the resulting

---

[141] *See* Software Development Guideline (ALCON_LENSX3804890).

68

[BLACK REDACTION BOX]

refactored code is cured of content copied verbatim from the iFS source code.  And I would expect that the source resulting from this process is likely to contain content that is, at a minimum, based on portions of the iFS source code.  Indeed, substantial aspects of protected code remain in the refactored LenSx Source code, as discussed below.

146.    By basing the refactoring process on and within the existing code, which contains portions of and was based upon the iFS source code, the process Alcon followed does not constitute an independent development of the source code and is effectively incapable of doing more than masking the copying.

## XI.    Alcon's Refactored LenSx Source Code Contains Substantial Content Copied From the iFS Source Code

147.    I have analyzed Alcon's refactored LenSx source code (version 2.31G) to determine the extent to which it remains similar to the copyrighted iFS source code.

148.    As explained below, I have concluded that (A) the refactored LenSx code includes substantial content copied verbatim from the iFS source code, and (B) the refactored LenSx code includes content that was copied from the iFS source code and then subjected to immaterial modifications.

### A.    The Refactored LenSx Source Code

149.    Alcon's refactored LenSx source code is organized, at the top level, [BLACK REDACTION BOX]

[BLACK REDACTION BOX]

69



LenSx 2.20 executable.  In particular, what is obvious from the source code but not obvious from

the object code is the massive scale of the copying.  From the source code, it is blatantly apparent

that large swaths of code were copied, which is not apparent from the object code.[158]


Dated:   April 26, 2022

Nikolaus Baer

---

[158] I have reviewed Plaintiff's Sixth Supplemental Response to Defendants' Interrogatory No. 5 (April 22, 2022), which outlines what I understand to be the information that AMO learned in the course of analyzing the object code for a LenSx device in 2014.  The findings outlined in that response are consistent with my opinions and my expectations regarding the LenSx object code.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC, ALCON LABORATORIES, INC., and ALCON RESEARCH, LLC,

Defendants.

C.A. No. 20-842-CFC

**JURY TRIAL DEMANDED**

ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,

Counterclaim-Plaintiffs,

v.

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC.,

Counterclaim-Defendants.

**[PROPOSED] ORDER GRANTING ALCON'S MOTION *IN LIMINE* (NO. 2) TO PRECLUDE J&J FROM OFFERING EVIDENCE OR ARGUMENT REGARDING ALTERNATIVE REDEVELOPMENT METHODS SUCH AS A "CLEAN ROOM" REDEVELOPMENT PROCESS**

1

On this _____ day of _____, 20____, the Court having considered Alcon's Motion to Preclude J&J From Offering Evidence or Argument Regarding Alternative Redevelopment Methods Such as a "Clean Room" Redevelopment Process, and all papers and argument submitted therewith,

IT IS ORDERED that the motion is GRANTED.  J&J is PRECLUDED from offering evidence or argument about alternative software redevelopment methods, such as a "clean room" redevelopment process.  This includes but is not limited to, for example, portions of Mr. Nikolaus Bear's Opening Report found in ¶¶24–31, 124–146, and any other similar testimony from Mr. Baer or other witnesses in this case.

_____
United States District Judge

# EXHIBIT 21B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) (JLH) <br><br> ███████ |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., <br><br> Counterclaim Defendants. | |

**PLAINTIFFS' OPPOSITION TO ALCON'S MOTION *IN LIMINE* NO. 2
TO PRECLUDE J&J FROM OFFERING EVIDENCE OR ARGUMENT
REGARDING "CLEAN ROOM" PROCEDURES**

Nearly a year into this case, facing overwhelming evidence of intentional copying, D.I. 132, Ex. B at 346:19-20, Alcon declared that it "is going to do the right thing" and "remove it if has to has to be removed." *Id.* at 60:7-8. But Alcon did not do the right thing or remove the infringing code. Because Alcon's failure to use a clean room is highly relevant to J&J's arguments on infringement, willfulness, and damages, this Court should reject Alcon's attempt to exclude it.

First, Alcon's failure to use a clean room is evidence that its "refactored" code continues to infringe. Dr. Schmidt explained that with the "overall structure and arrangement of the program" and Alcon's "extensive reliance on the copied code for core functionality of the LenSx Software," "a clean-room implementation" was necessary "to fully remove all elements it copied from the iFS computer program." Ex. 2 ¶ 36. Alcon's failure to do so is evidence that its "refactoring" has not removed the copied elements, and helps explain why Alcon's rewritten code remains "intertwined" with the structure and content of J&J's code. *Id.* ¶¶ 34-35. Alcon's disagreement with those views is not a basis to exclude them.

Second, Alcon's failure to use a clean room is evidence of willful infringement.[1] Mr. Baer explained that the clean room procedure is a "well-known

---

[1] Willfulness is relevant, for example, to the calculation of damages. *See Jarvis v. A & M Records*, 827 F. Supp. 282, 295 (D.N.J. 1993) ("While overhead is deductible if the defendants did not act willfully, it is a question of fact whether these defendants did in fact act willfully.").

1

method for curing computer programs" of copying.  Ex. 3 ¶ 26; *see also DSC Commc'ns Corp. v. DGI Techs., Inc.*, 898 F. Supp. 1183, 1189 n.3 (N.D. Tex. 1995) ("[clean room] process represents the optimal way to develop a competing product"), *aff'd*, 81 F.3d 597 (5th Cir. 1996).  But Alcon did not "cure the LenSx code base of contamination from prior copying."  Ex. 3 ¶ 126.  Instead, Alcon allowed its programmers to "review portions of the existing [copied] LenSx source code," "a particularly stark departure from a traditional clean-room design approach."  *Id.* ¶¶ 138-39.  A jury could find willful infringement because Alcon's radical deviation from well-known clean room techniques recklessly disregarded J&J's copyrights. *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 441 (D. Del. 2005).

Third, Alcon's failure to use a clean room is directly relevant to damages. Alcon's expert Dr. Wicker argued that it would have been possible to rewrite the copied code "from scratch" in 6.7 months.  Ex. 5 ¶ 77.  And its damages expert used that 6.7 month figure to claim that J&J suffered no lost profits.  Ex. 6 at 9.  The proper way to rewrite code "from scratch" is to use a clean room.  Ex. 3 ¶ 26 ("Under a clean-room procedure, the portions of software that an organization wishes to cure are rewritten from scratch.").  Instead of using a clean room, however, Alcon elected to let its programmers start from its existing infringing code; notwithstanding that shortcut, it took Alcon far more than 6.7 months to rewrite the code.  Ex. 7 at 40:21-

2

41:1, 104:11-24.  J&J may argue to the jury that Alcon's inability to speedily rewrite

J&J's code even ***after*** eschewing use of a clean room refutes its claim that the code

could have been rewritten from scratch in 6.7 months.

Evidence about clean room procedures has been allowed under similar facts.

In *InfoDeli, LLC v. W. Robidoux, Inc.*, the court denied a motion to exclude expert

testimony about clean room procedures, even while acknowledging that "this clean

room process is not the only way that Defendants could have built their websites

without reliance on any existing site."   2020  WL  1855292,  at  *2  (W.D.  Mo.

Mar. 16, 2020).  There, as here, testimony about clean room procedures was relevant

because the time to "build the software from scratch" was relevant to damages.  *Id.*

Limiting evidence to "the result of Alcon's process, not the process itself," as

Alcon proposes, Mot. 3, would prejudice J&J and leave the jury with a partial picture

of  Alcon's  infringement.    Alcon  fails  to  show  that  clean  room  evidence  will

somehow "mislead" the jury to apply the wrong test for infringement despite this

Court's contrary instructions.  It is "nothing more than an unfounded speculation

that the jurors [will] disregard[] clear instructions of the court in arriving at their

verdict."  *Opper v. United States*, 348 U.S. 84, 95 (1954).[2]

---

[2] This case resembles nothing of the "mini-trial" about FDA regulatory compliance
that was excluded from a product liability case in Alcon's cited authority.  Mot. 3
(citing *In re C.R. Bard, Inc.*, 810 F.3d 913, 921-22 (4th Cir. 2016)).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

4

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2022, copies of the foregoing were caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Joshua L. Simmons, Esquire              *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Jeanne M. Heffernan, Esquire            *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Caroline Lourgos, Esquire               *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire               *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire                          *VIA ELECTRONIC MAIL*
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


                                   */s/ Anthony D. Raucci*
                                   _____
                                   Anthony D. Raucci (#5948)

# EXHIBIT 21C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

Defendants.

---

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

Counterclaim-Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

Counterclaim-
Defendants.

C.A. No. 20-842-CFC-JLH



**ALCON'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* (NO. 2) TO PRECLUDE J&J FROM OFFERING EVIDENCE OR ARGUMENT REGARDING ALTERNATIVE REDEVELOPMENT METHODS SUCH AS A "CLEAN ROOM" REDEVELOPMENT PROCESS**

i

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nick Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

Whether Alcon used a "clean room" during redevelopment is irrelevant. Alcon's alleged "failure" to use a clean room is ***not*** "evidence that its refactoring has not removed the copied elements," Opp. 1, and it plays no role in assessing substantial similarity. Mot. 2-3 (citing cases). It also has no bearing on damages. No J&J expert opines about how long redevelopment would take using a clean-room procedure. That contrasts with J&J's cited case, where the expert opined on how long clean-room development would take, making discussion of the process relevant. Opp. 3 (citing *InfoDeli*, 2020 WL 1855292, at *2). Meanwhile, J&J's willfulness case did not even involve a clean room. *Webloyalty.com*, 388 F. Supp. 2d at 441. J&J's willfulness argument makes little sense; nor is willfulness relevant outside of statutory damages (not at issue here). *Leonard v. StemTech Health Scis.*, 981 F.Supp.2d 273, 279 (D. Del. 2013) ("[W]hen statutory damages are not at issue in an action, 'there is no proper role for proof of willfulness'"); *see also* 17 U.S.C. § 504(c)(2). J&J can describe and argue about the process Alcon used. But J&J should not prop up a ***different*** process not required by law, then fault Alcon for "[its] radical deviation" from that process. Opp. 2; *U.S. v. Wilmington Tr.*, 2017 WL 4480787, at *8 (D. Del. Oct. 6, 2017) (excluding evidence under 403 because of "absence of a genuine need for the evidence in question"). The danger of confusion substantially outweighs the probative value, forcing the trial away from a relevant comparison of works to an irrelevant discussion of whether a clean room is necessary.

1

Respectfully,

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 21, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

2

# CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 21, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
Michael E. Bern
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 22A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

        Plaintiffs,

        v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

        Counterclaim-Plaintiffs,

        v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim-
        Defendants.

C.A. No. 20-842-CFC-JLH



**ALCON'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION *IN LIMINE* NO. 3 TO PRECLUDE J&J FROM OFFERING
TESTIMONY REGARDING EQUITABLE RELIEF AND REVENUE J&J
<u>DOES NOT SEEK TO DISGORGE</u>**

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

Alcon moves *in limine* to preclude J&J from offering to the jury any evidence, argument, or reference to: (1) J&J's disgorgement request (which is equitable in nature) and the Alcon revenues that underpin it, and (2) Alcon revenues that are irrelevant to J&J's disgorgement request, should the Court allow the jury to decide any issues related to disgorgement.

In addition to seeking an already exorbitant ▮▮▮▮▮▮ in lost profits (actual damages), J&J seeks disgorgement of Alcon's profits on ▮▮▮▮▮▮ of revenue. *See* Ex. 1, Stamm Op. Rpt. Tbls. 1, 2. Alcon expects J&J will attempt to desensitize the jury to its actual damages request by presenting the jury with its disgorgement demand. But disgorgement is not relevant to any issue properly before the jury: the Court, not the jury, decides equitable issues such as disgorgement. *See e.g., Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir. 1994) ("[N]o jury right attaches to equitable claims."); *Kars 4 Kids Inc. v. Am. Can!*, 2019 WL 2078670, at *2 (D.N.J. May 10, 2019) ("The Court also determines that this claim is equitable in nature, and for which no right to a jury exists."); *In re Biogen '755 Pat. Lit.*, 2018 WL 3613162 at *4 (D.N.J. July 26, 2018) ("[I]nequitable conduct, being entirely equitable in nature, is not an issue for a jury to decide."); *Petrella v. Metro-Goldwyn-Mayer*, Inc., 572 U.S. 663, 668 n.1, 686 (2014) (describing "disgorgement of unjust gains" as "equitable relief"); *Edmonson v. Lincoln Nat'l Life Ins.*, 725 F.3d 406, 419 (3d Cir. 2013) ("[D]isgorgement…is an equitable remedy[.]"). Thus, a

1

copyright plaintiff is "not entitled to a jury determination of [it]." *Fair Isaac v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1033 (D. Minn. 2019); *Assessment Techs. Inst. v. Parkes*, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022) ("no right to jury trial" for "disgorgement," which "is an equitable claim"); *cf. Kars 4 Kids*, 2019 WL 2078670, at *2 (same for Lanham Act claim). Permitting the jury to hear testimony regarding evidence relevant only to disgorgement is highly prejudicial and "risks contaminating the jury's consideration of" legal remedies. *In re Biogen*, 2018 WL 3613162 at *4; *Kars 4 Kids*, 2019 WL 2078670, at *2 ("trying disgorgement separately will enhance jury comprehension of the issues to be presented in the case"). It also risks skewing the actual damages horizon for the jury and making J&J's actual damages ask ▮▮▮▮▮▮ seem reasonable in light of its equitable disgorgement request ▮▮▮▮▮▮. *See* Fed. R. Evid. 403; *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (overall revenue "skew[s] the damages horizon for the jury"); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of such overall revenues… only serve to make a patentee's proffered damages amount appear modest by comparison").

Should the Court permit J&J to present disgorgement to the jury, Alcon revenues J&J does not seek to disgorge should be excluded as irrelevant. During fact discovery, J&J claimed it was entitled to disgorge Alcon's revenues from LenSx machines, patient interfaces, services and "other products" including Verion (image-

2

guidance system), ORA (wavefront measuring device), phacoemulsification machines (ultrasonic handpiece), IOLs, viscoelastics (gel-like fluids), phaco packs, sanitizers and knives. Ex. 2, J&J 2d Rsp. to Alcon Interrog. No. 23.  However, for "strategic" reasons, J&J asked its damages expert to limit her disgorgement calculations regarding "other products" to Verion and IOLs sold to LenSx accounts. Ex. 3, Stamm Tr. 19:10–21:7.  Revenue is irrelevant to disgorgement and properly excluded when a plaintiff "has no expert who will attempt to prove a causal relationship between" the purported copyright infringement and the revenue. *Andreas v. Volkswagen of Am., Inc.*, 172 F. Supp. 2d 1168, 1171 (N.D. Iowa 2001), *aff'd*, 336 F.3d 789, 799 (8th Cir. 2003) (affirming exclusion of evidence of revenues not subject to disgorgement).  Here, J&J's damages expert "did not analyze" whether or not "other products" beyond Verion and IOLs sold to LenSx accounts are causally related to the purported infringement.  Ex. 3, Stamm Tr. 19:10–13.

In addition, because J&J presented no evidence that Alcon's pre-2011 IOL sales (before LenSx launched), IOL sales to non-LenSx accounts, overall IOL revenue, and overall company revenue are causally related to the purported infringement, the Court should preclude J&J from offering any evidence, argument, or reference to such irrelevant and prejudicial revenues.  *See LaserDynamics*, 694 F.3d at 68; *Uniloc USA*, 632 F.3d at 1320.

3

Respectfully,                                    */s/ John W. Shaw*
OF COUNSEL:                                       John W. Shaw (No. 3362)
                                                 Karen E. Keller (No. 4489)
Jeanne M. Heffernan                              Andrew E. Russel (No. 5382)
James John Lomeo                                 Nathan R. Hoeschen (No. 6232)
KIRKLAND & ELLIS LLP                             SHAW KELLER LLP
401 Congress Avenue                              I.M. Pei Building
Austin, TX 78701                                 1105 North Market Street, 12th Floor
(512) 678-9100                                   Wilmington, DE 19801
                                                 (302) 298-0700
Gregg F. LoCascio                                jshaw@shawkeller.com
Sean M. McEldowney                               kkeller@shawkeller.com
Noah S. Frank                                    arussell@shawkeller.com
Mary Elizabeth Miller                            nhoeschen@shawkeller.com
Elizabeth Hedges                                 *Attorneys for*
Kelly Tripathi                                   *Alcon Inc.,*
KIRKLAND & ELLIS LLP                             *Alcon Vision, LLC,*
1301 Pennsylvania Avenue, N.W.                   *Alcon Laboratories, Inc. and*
Washington, DC 20004                             *Alcon Research, LLC*
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: December 1, 2022

4

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 1, 2022, this document was

served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com


Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, | ) | |
| AMO MANUFACTURING USA, LLC | ) | |
| and AMO SALES AND SERVICE, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-842 |
| | ) | |
| ALCON VISION, LLC | ) | |
| ALCON LABORATORIES, INC. and | ) | |
| ALCON RESEARCH, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING EXPERT REPORT OF LAURA B. STAMM**

**April 29, 2022**

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

15.    In **Table 1** below (also in **Exhibit 1**), I summarize the revenues of Alcon subject to disgorgement.  **Table 1** includes an estimate of revenue from IOL sales to LenSx customer accounts after the customer installed a LenSx.  In **Exhibit 8**, I have used Alcon's findings to isolate the portion of this IOL revenue that Alcon considers "pull-through" revenue.

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

**Table 1**
**Alcon Revenue Subject to Disgorgement - Worldwide**
**(in $millions)**

| Year | Equipment Sales / Rental | Procedures | Services | Accessories (IOLs and Verion)[9] | Total |
|---|---|---|---|---|---|
| 2011 | | | | | |
| 2012 | | | | | |
| 2013 | | | | | |
| 2014 | | | | | |
| 2015 | | | | | |
| 2016 | | | | | |
| 2017[10] | | | | | |
| 2018 | | | | | |
| 2019 | | | | | |
| 2020 | | | | | |
| 2021 | | | | | |
| Total[11] | | | | | |

---

[9]  I understand that J&J Vision requested production of Alcon's account-level data showing sales of all cataract suite products by cataract customer accounts, both before and after placement of a LenSx in that account. I reviewed and analyzed the account-level data produced by Alcon (ALCON_LENSX3805688; ALCON_LENSX3805692; ALCON_LENSX3805708). These combined datasets contain significant deficiencies and do not contain data for an estimate of accessory sales to all LenSx accounts for the entire damages period. For example, ALCON_LENSX3805708 contains account-level data from 2017-2021 for US accounts only. The data do not contain earlier period data, or data for the OUS LenSx accounts. Additionally, the data do not contain revenue, only unit information for IOLs. ALCON_LENSX3805688 contains account-level data for select accounts (but not all LenSx accounts) for select periods (2016-2021 for US and 2014-2021 for OUS). My data analysis shows significantly fewer LenSx accounts included in the data than the total LenSx installed base, especially in the OUS. ALCON_LENSX3805692 contains account-level data for IOL purchases by Alcon customers, again for only select periods, 2016-2021 in the US and 2014-2021 OUS. However, this dataset does not contain information on LenSx-related expenditures. Because of the deficiencies in the produced data, I must estimate Alcon's revenue from sales of accessories such as IOLs to LenSx accounts for the missing time periods and accounts based on averages and installed base data. For the details of my analysis in connection with Alcon's accessory sales, see **Appendix D**. To the extent Alcon will produce data that allows for a calculation of Alcon's accessory revenue to

HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY

16.     I understand that J&J Vision may alternatively seek actual damages in the form of lost profits or a hypothetical license fee, plus an additional amount of Alcon's profits attributable to the infringement to the extent not accounted for in the actual damages.

17.     In considering the extent to which J&J Vision lost sales and profits as a result of the infringement by Alcon, I have considered the market for Femtosecond Laser-Assisted Cataract Surgery ("FLACS") machines but for the infringement by Alcon ("the but-for world"). As I discuss more fully below, I analyze a but-for world where LenSx is not on the market. Based on my review of the relevant materials, I conclude that in the absence of Alcon's alleged infringement, J&J Vision would have captured a substantial portion of Alcon's sales of LenSx, at least equivalent to J&J Vision's actual relative market share among the competing alternatives on the market. By virtue of J&J Vision being the first to market in the but-for world, it would likely have garnered an even higher market share. As a result of additional Catalys sales or rentals, J&J Vision would have also realized higher revenue and profits on procedures sales, service contracts and sales of other ancillary products. J&J Vision's lost profits on the lost sales conservatively total ▮▮▮▮ ▮▮▮▮ over the entire period from 2012 through 2021.[12]

_____

LenSx customers, I reserve the right to review and analyze that data, and update the figures contained in this report.

[10]  I understand that Alcon claims that damages may be limited by a statute of limitations, and that Alcon may seek to limit disgorgement damages to the period after September 28, 2017. The figures for September 29, 2017 - December 31, 2017 can be derived by prorating the figures contained in the table for the full year 2017 by 94/365, where 94 represents the number of days between September 29, 2017 and December 31, 2017.

[11]  I understand that J&J Vision provided notice to Alcon of its infringement in July 2020. After receiving J&J Vision's notice, Alcon continued to derive revenue from LenSx equipment sales, procedures performed on these equipment, accessories sold to these LenSx customers, and services performed on these equipment. From July 2020 - December 31, 2021, Alcon's revenue from LenSx equipment, procedures, accessories, and services total ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ respectively. Moreover, since the Court's preliminary injunction ruling on May 13, 2021 through December 31, 2021, Alcon has derived revenues of ▮▮▮▮▮ consisting of LenSx equipment ▮▮▮▮ procedures ▮▮▮ accessories ▮▮▮▮ ), and services ▮▮▮ ).

[12]  To the extent that Alcon is allowed to argue and can establish that a non-infringing alternative would have been available and released at some point after 2010, J&J Vision still would have suffered lost profits damages. I calculate J&J Vision's lost profits under various delayed entry scenarios in **Appendix E**. Further, I understand that under certain liability theories, the but-for

- 8 -

HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY

18.    I understand that although J&J Vision is seeking an injunction in this matter, any such injunction would not require Alcon to remove units already placed in the field.[13]  Profits from lost procedure fees, services, and IOL pull-through associated with the lost equipment sales and rentals prior to trial would continue beyond the date of trial in the but-for world.  I have determined that profits on such sales can be reasonably estimated to be ███████ .

19.    **Table 2** below (also in **Exhibit 2**) summarizes J&J Vision's lost profits due to Alcon's infringement.

---

world might be construed as one in which LenSx can no longer be used by existing accounts or sold to new accounts after September 28, 2017.  Details of my calculations of J&J Vision's lost profits in this scenario are contained in **Appendix F**.

[13]    To the extent J&J Vision's requested injunction is denied, I reserve the right to provide an opinion on the proper measure of damages for future infringing LenSx sales.

HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY

**Table 2**
**J&J Vision's Lost Profits**
**(in $millions)**

|  | US | OUS | Worldwide |
|---|---|---|---|
| **Past Damages** | | | |
| 2012 | | | |
| 2013 | | | |
| 2014 | | | |
| 2015 | | | |
| 2016 | | | |
| 2017 | | | |
| 2018 | | | |
| 2019 | | | |
| 2020 | | | |
| 2021 | | | |
| **Future Damages** | | | |
|  | | | |
| **Total Damages** | | | |
|  | | | |

20.    In calculating actual damages based on lost profits on lost sales of Catalys, my analysis recognizes that some portion of Alcon's actual sales of LenSx would have been captured by other competitors and are not lost sales of Catalys. I understand the Copyright Act permits a copyright owner to recover both "the actual damages suffered … as a result of the infringement" *and* "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."[14] I understand it to mean that, in addition to J&J Vision's lost profits set forth above in this section, J&J Vision would be entitled to disgorgement of Alcon's revenue from the equipment placements for which lost profits are not claimed by J&J Vision ("disgorgement of the remainder"). Accordingly, I calculate Alcon's revenues from

---

[14]    17 U.S.C. ¶ 504(b).

- 10 -

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

LenSx sales, procedures, IOLs, Verion Digital Markers, and services that J&J Vision does not claim to have been lost by Catalys.  These revenues are subject to disgorgement by J&J Vision, in addition to J&J Vision's lost profits (**Exhibit 3**).  From 2011-2021, disgorgement of the remainder totals ▮▮▮▮▮▮▮ in revenue.

21.    As an alternative to recovery of lost profits, I have determined that a hypothetical license fee for the asserted copyrights on both the computer programs and documentation is ▮▮▮ ▮▮▮▮▮▮ performed using the infringing software.  Total license fees on LenSx procedures from 2011 through 2021 total ▮▮▮▮▮▮.  Total license fees on procedures performed from 2022-2031 on LenSx machines installed prior to December 31, 2021 total ▮▮▮▮▮▮ as of December 31, 2021, resulting in a total royalty of ▮▮▮▮▮▮.  (**Exhibit 4**.)  In the event, that it is necessary to apportion the total license fees between the documentation and the software program, I have determined that a hypothetical license fee for only the asserted copyrights on the technical documentation and operator's manual is ▮▮▮▮▮▮ which leads to a license fee of ▮▮▮ ▮▮▮.

22.    As stated above, I understand the Copyright Act permits a copyright owner to recover both "the actual damages suffered … as a result of the infringement" *and* "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."[15]  Because the hypothetical license fee is assessed only on procedures performed using LenSx, I understand that J&J Vision is permitted to recover Alcon's profits from IOL and Verion sales.  As presented above, I estimate Alcon's IOL and Verion sales to LenSx customers from 2011-2021 totaling ▮▮▮▮▮▮ In **Exhibit 8**, I have used Alcon's findings to isolate the portion of the IOL revenue that Alcon considers "pull-through" revenue.

23.    The remainder of this report provides my detailed analyses and bases for these opinions.

---

[15]    17 U.S.C. ¶ 504(b).

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

243.    Applying the ▮▮▮▮▮▮▮▮▮▮ revenue to the number of infringing procedures results in damages of ▮▮▮▮▮▮ associated with the past use of FDA documentation.  Similarly, I also calculate royalty on the future procedures that can be reasonably estimated to occur from the infringing installed base of LenSx units at the time of trial.  Using the same approach as I described above, I calculate the NPV of royalty on future procedures performed on the infringing installed base of LenSx to be ▮▮▮▮▮▮▮, leading to total royalty damages of ▮▮▮▮▮▮▮.damage

    **D.    Disgorgement of Alcon Profits on Sales of Accessories**

244.    As shown above in **Section IV.B. and VI.A.**, Alcon made accessory sales (including IOLs and Verion) that are causally related to the LenSx placements.  However, because LenSx, the hypothetical licensee, did not make these accessories at the time of the hypothetical negotiation, Alcon's accessory sales after its acquisition of LenSx were not accounted for in the hypothetical license fee discussed earlier in this section.  I understand the Copyright Act permits a copyright owner to recover both "the actual damages suffered … as a result of the infringement" *and* "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."[447]  Therefore, in addition to J&J Vision's hypothetical license fee on procedures performed on LenSx, I understand J&J Vision would additionally be entitled to disgorgement of Alcon's revenues from its IOLs and Verion.

245.    I have calculated Alcon's revenues from its IOL and Verion sales to LenSx customers in **Section IV.D.**, which I incorporate herein.  Specifically, I estimate Alcon's IOL and Verion sales to LenSx customers from 2011-2021 of ▮▮▮▮▮▮▮.  I also estimate Alcon's total pull-through revenue of approximately ▮▮▮▮▮▮▮ (associated with ATIOLs) to ▮▮▮▮▮▮▮ (associated with all consumables listed in **Section IV.D.**).

## VIII.    TIME VALUE OF MONEY

246.    The damages calculated in this report are for Alcon's past infringement and represent damages to J&J Vision that occurred in the past.  In other words, in the but-for world,

---

    [447]  17 U.S.C. ¶ 504(b).

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
and AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

Defendants.

C.A. No. 20-842 (CFC)

**HIGHLY CONFIDENTIAL MATERIAL – ATTORNEY EYES ONLY**

ALCON INC.,
ALCON RESEARCH, LLC, and
ALCON VISION, LLC,

Defendants and
Counter-Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.

Plaintiffs and Counter-Defendants.

## PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE TO DEFENDANTS' FOURTH SET OF INTERROGATORIES (NO. 23)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales & Service, Inc., and Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales & Service, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J Vision") hereby provide their second supplemental response to Defendants and Counterclaim Plaintiffs Alcon Vision, LLC and Alcon Research, LLC, Defendant Alcon Laboratories, Inc., and Counterclaim Plaintiff Alcon, Inc.'s (collectively, "Alcon") Interrogatory No. 23.

## GENERAL OBJECTIONS

1.   J&J Vision incorporates by reference its General Objections to Alcon's First Set of Interrogatories (Nos. 1-20) served on February 10, 2021.

## INTERROGATORY RESPONSES

## INTERROGATORY NO. 23:

Identify the complete factual and legal bases for any equitable relief that J&J seeks for Alcon's alleged copyright infringement, including without limitation any claim that J&J is entitled to disgorgement of Alcon's profits as well as why any such Alcon profits are attributable to the alleged infringement and not due to factors other than the asserted copyrights, and the time period for which J&J contends it is entitled to disgorgement of Alcon's profits.

2

**RESPONSE TO INTERROGATORY NO. 23:**

J&J Vision incorporates its General Objections as if fully asserted herein.  J&J Vision objects to this Interrogatory to the extent that it seeks information outside J&J Vision's possession, custody, or control, and in fact only in the possession, custody, or control of Alcon.  J&J Vision further objects to the Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product immunity, or any other applicable privilege or protection.  J&J Vision objects to this Interrogatory as prematurely seeking expert discovery.

Subject to and without waiving its General and Specific Objections, J&J Vision responds as follows:

Under the Copyright Act, J&J Vision is entitled to remedies including monetary relief in the form of Alcon's profits that are attributable to its infringement and are not taken into account in computing J&J Vision's actual damages.  17 U.S.C. § 504(b).  To establish its claim for disgorgement of Alcon's profits, J&J Vision "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*; *see also William A. Graham Co. v. Haughey* (*Graham II*), 646 F.3d 138, 141 (3d Cir. 2011) (stating that "a plaintiff is first required to prove the defendants' gross revenues over the course

3

of the relevant time period, and then to establish a causal nexus between the infringement and the profits sought.").

J&J Vision is entitled to recover Alcon's profits earned from the sale or rental of infringing LenSx systems, from surgical procedures performed on infringing LenSx machines, and from the sale of other products stemming from the sale of the LenSx, in each case to the extent that such profits are not taken into account in computing J&J Vision's actual damages. Each of the categories discussed below is "reasonably related to" Alcon's copyright infringement, *William A. Graham Co. v. Haughey* (*Graham I*), 568 F.3d 425, 443 (3d Cir. 2009), and therefore, J&J Vision need only establish Alcon's gross revenues over the relevant time period for each category. J&J Vision is entitled to disgorgement of Alcon's profits for the period starting when Alcon first infringed its copyrights, because J&J Vision did not discover "the injury that forms the basis of [its] claim" until discovery in this litigation. *See id.* at 438. J&J Vision is further entitled to recover Alcon's ongoing profits that it will earn as a result of its past acts of infringement, including past the date of judgment. *Cf. Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014).

*Alcon's Profits from Sales/Rentals of the LenSx.* J&J Vision is entitled to recover Alcon's profits resulting from sales or rentals of the LenSx machine. The LenSx exists as a commercial product only because of Alcon's copyright infringement of J&J Vision's computer programs. Indeed, without the code copied

4

from J&J Vision, the LenSx would not be able to operate. *See, e.g.*, D.I. 46 (Schmidt Decl.) ¶¶ 144-149, 156-162; *cf.* D.I. 132-2 (P.I. hearing tr.) at 346:11-14. And, in marketing the LenSx, both Alcon and surgeons that use the LenSx tout the precise computer control enabled by the LenSx's infringing software. *See, e.g.*, ALCON_LENSX2603358. Further, absent Alcon's infringement of J&J Vision's copyrighted software, regulatory submissions, and technical documentation, Alcon would not have obtained FDA approval for the LenSx. Alcon's theft of the copyrighted software, regulatory submissions, and technical documentation also gave Alcon a "head start," which led to a greater market presence than it would have had absent the infringement, and thereby enhanced Alcon's profits from sales of the LenSx system, as well as from LenSx procedures and other product sales. *Cf. Syngenta Crop Prot., LLC v. Azoxystrobin, LLC*, 267 F. Supp. 3d 649, 662-63 (M.D.N.C. 2017).

*Alcon's Profits from LenSx Procedure Sales.* J&J Vision is also able to recover Alcon's profits earned from procedure fees it received for the use of the LenSx in surgical procedures. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 394-95 (3d Cir. 2016) (infringer's profits can include "profits earned not by selling an infringing product, but rather earned from the infringer's operations that were enhanced by the infringement").

5

*Alcon's Profits from Other Product Sales.* In addition to Alcon's profits from machine sales and procedure fee revenue, it has also profited from an increase in sales of intraocular lenses (IOLs) and other products stemming from sales of the LenSx. Alcon's placement of infringing LenSx machines directly correlates to increased sales of Alcon IOLs and other Alcon products. *See, e.g.,* ALCON_LENSX1106921. J&J Vision is therefore entitled to disgorgement of Alcon's profits from sales of these other products. *See Leonard*, 834 F.3d at 394-95; *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 933 (7th Cir. 2003) ("[T]he purpose of allowing suit for the infringer's … profits is to make infringement worthless to the infringer. This will sometimes require tracing those profits into another product, as where it is bundled with the infringing product.").

*Pre-Judgment Interest.* J&J Vision is further entitled to recover pre-judgment interest running from the time of infringement. *See Graham II*, 646 F.3d at 145-51.

\*     \*     \*

J&J Vision further contends that it is entitled to, and will be irreparably harmed in the absence of, a permanent injunction prohibiting Alcon from distributing any new LenSx laser systems containing code that infringes J&J Vision's copyrights, including but not limited to any derivative works or nonliteral copies of J&J Vision's copyrighted code, or from releasing onto existing machines any new software updates containing or derived from infringing code. J&J Vision

6

has identified the factual and legal bases for its claim for permanent injunctive relief in response to Alcon's Interrogatory No. 19, and refers Alcon to that response.

J&J Vision further contends that it is entitled to equitable relief in the form of the forfeiture, destruction, or other reasonable disposition of all copies of the infringing LenSx software in Alcon's possession, including but not limited to any derivative works or nonliteral copies thereof.  17 U.S.C. § 503(b).  J&J Vision meets the standard for injunctive relief, *see supra* & J&J Vision's Resp. to Alcon's Interrog. No. 19, and Alcon's continuing and willful exploitation of the infringing LenSx software well after it received notice of J&J Vision's allegations of infringement "hardly suggests that it will refrain from infringing [J&J Vision]'s copyright in the future."  *Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 634 (S.D.N.Y. 2011).  Forfeiture or destruction is therefore an appropriate equitable remedy.

Pursuant to Fed. R. Civ. P. 33(d), J&J Vision identifies the following documents as containing information responsive to the subject matter of this Interrogatory:          ALCON_LENSX000097;          ALCON_LENSX000160; ALCON_LENSX000297;   ALCON_LENSX000389;   ALCON_LENSX000406; ALCON_LENSX000434;   ALCON_LENSX002688;   ALCON_LENSX002914: ALCON_LENSX003461;   ALCON_LENSX004231;   ALCON_LENSX004232; ALCON_LENSX004233;   ALCON_LENSX020173;   ALCON_LENSX025870;

7

ALCON_LENSX026044;    ALCON_LENSX027022;    ALCON_LENSX053815;

ALCON_LENSX056086;    ALCON_LENSX095202;    ALCON_LENSX095203;

ALCON_LENSX095252;  ALCON_LENSX095280;    ALCON_LENSX095283;

ALCON_LENSX095284;    ALCON_LENSX095285;    ALCON_LENSX095286;

ALCON_LENSX0995117; ALCON_LENSX0995118; ALCON_LENSX0995119;

ALCON_LENSX0995120; ALCON_LENSX0995124; ALCON_LENSX1057175;

ALCON_LENSX105726;   ALCON_LENSX105988;   ALCON_LENSX1106921;

ALCON_LENSX1408174;  ALCON_LENSX1820022;  ALCON_LENSX212537;

ALCON_LENSX212732;   ALCON_LENSX2142399;   ALCON_LENSX216230;

ALCON_LENSX2600501; ALCON_LENSX2603358; ALCON_LENSX2718989;

ALCON_LENSX3167909; ALCON_LENSX3595202; ALCON_LENSX3595351;

ALCON_LENSX3638835; ALCON_LENSX3638851; ALCON_LENSX3638859;

ALCON_LENSX3638865; ALCON_LENSX3638871; ALCON_LENSX3804964;

ALCON_LENSX3804965; ALCON_LENSX3804966; ALCON_LENSX722444.

J&J Vision additionally refers Alcon to its forthcoming expert reports, which will be provided in accordance with the Scheduling Order in this case (D.I. 61).

Discovery is not yet complete, and J&J Vision's investigation is ongoing. J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

8

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23 (FEBRUARY 23, 2022):

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above. Subject to and without waiving its objections, J&J Vision provides the following further response:

*Alcon's Profits from Patient Interfaces.* J&J Vision is entitled to recover Alcon's profits earned from procedure fees it received for the use of the LenSx in surgical procedures, including without limitation from the sale of patient interfaces.

*Alcon's Profits from Other Products.* J&J Vision is entitled to recover Alcon's profits from its sale of additional categories of products, including viscoelastics, phacoemulsification packs, other consumable surgical products like sanitizers and knives, Verion systems, phaco machines, and increased account sales pursuant to customer loyalty programs linked to the presence of a FLACS machine. Placement and use of LenSx machines directly correlates to increased sales of these other products. *Leonard*, 834 F.3d at 394-95. There is a causal nexus between Alcon's acts of direct and secondary copyright infringement and the placement and ongoing use of LenSx machines; LenSx would not have entered into the market and could not continue to exist on the market today but for its acts of infringement.

*Alcon's Profits from Maintenance and Other Service Fees.* LenSx customers pay Alcon maintenance and other service fees in exchange for services related to the LenSx. Alcon would not have received this revenue but for the placement and use

9

of LenSx machines with infringing software and other acts of direct and secondary infringement.  J&J Vision is entitled to recover Alcon's profits from maintenance and other service fees.

*Lost Profits from Software Upgrades*.  Alcon charges LenSx customers for software upgrades that include infringing code.  J&J Vision is entitled to recover Alcon's profits from those sales.

*Reasonable Royalty*.  As a matter of equity, J&J Vision is entitled to an award of a "reasonable royalty" for Alcon's use of its copyrighted material.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 687-88 (2014).  The reasonable royalty must account for the effects on J&J Vision's business, and that of J&J Vision's affiliates, in terms of lost revenues and other business opportunities.

J&J Vision additionally refers Alcon to its forthcoming expert reports, which will be provided in accordance with the Scheduling Order in this case (D.I. 61).

Pursuant to Fed. R. Civ. P. 33(d), J&J Vision identifies the following documents as containing information responsive to the subject matter of this Interrogatory:    ALCON_LENSX1049960;    ALCON_LENSX1152821; ALCON_LENSX1624292;  ALCON_LENSX2503900;  ALCON_LENSX254359; ALCON_LENSX254374;  ALCON_LENSX2711767;  ALCON_LENSX2717576; ALCON_LENSX2725144; ALCON_LENSX2731142; ALCON_LENSX2731159; ALCON_LENSX2738134; ALCON_LENSX3140820; ALCON_LENSX3146248;

10

ALCON_LENSX3149235; ALCON_LENSX3591434; ALCON_LENSX3644273; ALCON_LENSX3804967; ALCON_LENSX3805080; ALCON_LENSX3805147; ALCON_LENSX751422; ALCON_LENSX762522; ALCON_LENSX887404.

Discovery is not yet complete, and J&J Vision's investigation is ongoing. J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23 (MARCH 4, 2022):

J&J Vision incorporates by reference its objections and responses to this Interrogatory as set forth above. Subject to and without waiving its objections, J&J Vision provides the following further response:

*Alcon's Profits from Patient Interfaces and Other Products.* There is a causal nexus between Alcon's acts of direct and secondary copyright infringement and the sales and revenues for LenSx Patient Interfaces and Other Products, including but not limited to viscoelastics, phacoemulsification packs, other consumable surgical products like sanitizers and knives, Verion systems, ORA systems, phaco machines, and increased account sales pursuant to customer loyalty programs linked to the presence of a FLACS machine, maintenance and other service fees in exchange for services related to the LenSx, software upgrades. LenSx would not have sold or increased its sales of these products and services but for its acts of infringement. J&J

11

Vision is entitled to recover Alcon's profits from sales of these products and services.

*Alcon's Profits Due to Infringed Foreign Regulatory Materials.* J&J Vision further contends that Alcon infringed J&J Vision's copyrighted regulatory submissions and technical documentation by reproducing copyrightable elements of those works in Alcon's submissions to regulatory authorities outside the United States, including without limitation regulatory authorities in the European Union, China, Korea, Russia, Canada, Malaysia and Brazil. Absent that infringement, Alcon would not have obtained approval and/or clearance for the LenSx from foreign regulatory authorities. J&J Vision is entitled to recover Alcon's profits that resulted from this approval and/or clearance for the LenSx from foreign regulatory authorities.

Pursuant to Fed. R. Civ. P. 33(d), J&J Vision identifies the following documents as containing information responsive to the subject matter of this Interrogatory:       ALCON_LENSX026555;       ALCON_LENSX095385; ALCON_LENSX096147;   ALCON_LENSX096430;   ALCON_LENSX096722; ALCON_LENSX096850;   ALCON_LENSX097441;   ALCON_LENSX099214; ALCON_LENSX0997628; ALCON_LENSX0997645; ALCON_LENSX1037243; ALCON_LENSX1037253; ALCON_LENSX1037324; ALCON_LENSX109095; ALCON_LENSX113030;   ALCON_LENSX120674;   ALCON_LENSX1395381;

12

ALCON_LENSX1430036; ALCON_LENSX1649272; ALCON_LENSX2145513;

ALCON_LENSX2177903; ALCON_LENSX217880; ALCON_LENSX1821146;

ALCON_LENSX253617; ALCON_LENSX2718053; ALCON_LENSX2735937;

ALCON_LENSX2742644; ALCON_LENSX2757563; ALCON_LENSX2835262;

ALCON_LENSX2836780; ALCON_LENSX2918839; ALCON_LENSX2964466;

ALCON_LENSX2983833; ALCON_LENSX2990030; ALCON_LENSX3437390;

ALCON_LENSX3626163; ALCON_LENSX3627213; ALCON_LENSX873382;

ALCON_LENSX976014.

Discovery is not yet complete, and J&J Vision's investigation is ongoing. J&J Vision expressly reserves all rights to supplement, revise, and/or amend its response to this Interrogatory as its investigation and discovery proceeds in accordance with the Federal Rules of Civil Procedure and the Scheduling Order.

13

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 906-1200

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc., and
Johnson & Johnson Surgical Vision, Inc.*

14

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

March 4, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, copies of the foregoing were caused to

be served upon the following in the manner indicated:

John W. Shaw, Esquire                        *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Jeannie Heffernan, Esquire                   *VIA ELECTRONIC MAIL*
Joshua L. Simmons, Esquire
Matthew A. Lembo, Esquire
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Caroline Lourgos, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Kristen P.L. Reichenbach, Esquire            *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Hannah L. Bedard, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)

# EXHIBIT 3

Highly Confidential - Attorneys' Eyes Only

Stamm, Laura                                              July 14, 2022

1

```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO       )
MANUFACTURING USA, LLC, and     )
AMO SALES AND SERVICE, INC.,    )
                                )
          Plaintiffs,           )
       vs.                      )C.A. NO. 20-842-CFC-JLH
                                )
ALCON VISION, LLC, ALCON        )
LABORATORIES, INC., and         )
ALCON RESEARCH, LLC,            )
                                )
          Defendants.           )
_____)
                                )
ALCON, INC., ALCON RESEARCH,    )
LLC, and ALCON VISION, LLC,     )
                                )
     Defendants and             )
     Counterclaim Plaintiffs,   )
                                )
     vs.                        )
                                )
AMO DEVELOPMENT, LLC, AMO       )
MANUFACTURING USA, LLC, AMO     )
SALES AND SERVICE, INC., and    )
JOHNSON & JOHNSON SURGICAL      )
VISION, INC.,                   )
                                )
     Plaintiffs and             )
     Counterclaim Defendants.   )
_____)

         **** HIGHLY CONFIDENTIAL ****
             ATTORNEYS' EYES ONLY
         REMOTE VIDEOTAPED DEPOSITION OF
                LAURA B. STAMM
                July 14, 2022
                6:06 a.m. HST


REPORTED BY:  JANICE M. KOCEK, CSR, CLR
JOB NO.:  52251
```

Highly Confidential - Attorneys' Eyes Only

Stamm, Laura                                          July 14, 2022

6 (Pages 18 to 21)



**18**

**sales, those are presented in the exhibits.**
Q.   Now, are IOL sales the only ancillary sales that you are seeking disgorgement on?
**A.   For clarity, it is J&J Vision that is seeking --**
Q.   Sorry.
**A.   -- damages.**
**They are -- IOL sales are the only ones that J&J Vision is seeking and that I have analyzed.**
Q.   And is it --
**A.   Unless you would consider Verion to be an ancillary sale.  And I have included that in Table 1.**
Q.   Is it your opinion that the only ancillary sales -- and actually, let me strike that.
When I refer to ancillary sales, I'm going to just refer to the Alcon IOLs.  I think we can just include the Verion sales as part of sort of the LenSx equipment.
**A.   Okay.**
Q.   As you do in Table 1.
Is it your opinion that IOL sales are the only ancillary sales it would be appropriate

**19**

to disgorge?
**A.   Not necessarily.  My opinion was that there was a nexus between the IOL sales and LenSx placements.  And -- and those are the ones I quantified.**
**That is not necessarily to the exclusion of others but I am not offering any opinion that other ancillary sales do have a nexus.**
Q.   Did you find a nexus between other ancillary sales apart from IOLs and placements of LenSx devices?
**A.   I did not analyze others for nexus.**
Q.   Why not?
**A.   The evidence I -- I did review showed a strong nexus with the IOL sales.  And -- and that is what I analyzed.  And I was not asked to look for it further than that.**
Q.   So do I understand that you were asked to look for -- sorry.
Do I understand correctly that you were asked to determine whether there is a nexus between IOL sales and LenSx placements?
**A.   Yes.  And I found such a nexus.**
Q.   And who asked you to look for that?

**20**

**A.   So I was asked --**
MR. SAMMI:  Object to form.
THE WITNESS:  I was asked to consider ancillary sales.  The evidence I reviewed showed a clear nexus to IOL sales. Documents I reviewed mentioned other ancillary sales.

**21**

BY MS. HEFFERNAN:

Q.   Is it -- do you have an opinion on whether there is a nexus between other ancillary sales apart from IOLs and the placement of LenSx devices?
**A.   As I said, I saw documents that suggested there could be.  I did not analyze it fully the way that I did with respect to the IOLs.**
Q.   Do you agree that as part of disgorgement, an apportionment must be done in order to determine the amount that is attributable to the infringement?
**A.   So I believe I state -- because I'm not a lawyer, I'd like to just refer to my report for my understanding of the law.  So let me just find that.**
**So my understanding is -- I put forward in paragraph 11 of my opening report is that (as read):  The copyright owner is required**

Henderson Legal Services, Inc.

202-220-4158                         www.hendersonlegalservices.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMO DEVELOPMENT, LLC, AMO
MANUFACTURING USA, LLC and
AMO SALES AND SERVICE, INC.,

Plaintiffs,

v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC., and
ALCON RESEARCH, LLC,

Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

Counterclaim-Plaintiffs,

v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

Counterclaim-
Defendants.

C.A. No. 20-842-CFC

**JURY TRIAL DEMANDED**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION *IN LIMINE*
NO. 3 TO TO PRECLUDE J&J FROM OFFERING TESTIMONY
REGARDING EQUITABLE RELIEF AND REVENUE
J&J DOES NOT SEEK TO DISGORGE**

1

On this _____ day of _____, 20____, the Court having considered Alcon's Motion *in Limine* to Preclude J&J From Offering Testimony Regarding Equitable Relief and Revenue J&J Does Not Seek to Disgorge, and all papers and argument submitted therewith,

IT IS ORDERED that the motion is GRANTED.  J&J is PRECLUDED from: Offering testimony, evidence, or argument relevant only to disgorgement to the jury, including any evidence, argument, or reference to J&J's disgorgement request and the Alcon revenues that underpin it.

**[IN THE ALTERNATIVE TO THE ABOVE, IF THE COURT PERMITS J&J TO ARGUE DISGORGEMENT TO THE JURY:** J&J is PRECLUDED from offering testimony, evidence, or argument about revenues that are irrelevant to J&J's disgorgement request, including any evidence, argument, or reference to Alcon's overall revenues, Alcon's revenues from IOLs sold before 2011 and IOLs sold to non-LenSx accounts, and Alcon's revenues from products J&J does not seek to disgorge, such as ORA, phacoemulsification machines, viscoelastics, phaco packs, and sanitizers and knives.**]**

_____
United States District Judge

2

_____

# EXHIBIT 22B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

      Plaintiffs,

      v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

      v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

**PLAINTIFFS' OPPOSITION TO ALCON'S MOTION *IN LIMINE* NO. 3
TO PRECLUDE J&J FROM OFFERING TESTIMONY REGARDING
<u>DISGORGEMENT AND OTHER REVENUE</u>**

Disgorgement is properly for the jury.  That result is required by the Seventh

Amendment and the Copyright Act.  Evidence of Alcon's profits is relevant, in any

event, to J&J's arguments on actual damages.

The Seventh Amendment guarantees a jury trial in actions to enforce statutory

rights analogous to common-law claims decided in 18th-century English law courts.

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998).  Such courts

heard claims for copyright disgorgement.  *See In re Tech. Licensing Corp.*, 423 F.3d

1286, 1290 n.2 (Fed. Cir. 2005) ("damages in the amount of the defendant's profits

could be awarded by a court of law" (citing *Root v. Railway Co.*, 105 U.S. 189

(1881))); *see also* 6 Patry on Copyright § 22:149 ("equity courts had no jurisdiction

over a claim merely for defendant's profits").  The seminal cases of *Beacon

Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), and *Dairy Queen, Inc. v. Wood*,

369 U.S. 469 (1962), put any contrary argument to rest.  Those cases established that

"ordinarily there is a right to jury trial on a claim for an accounting [of profits]," the

historical analogue to disgorgement under the Copyright Act.  9 Wright & Miller,

*Fed. Prac. & Proc.* § 2312 (4th ed.).  In terms of a jury trial, there is "no difference

between a claim for damages and a claim for profits." *Id.*

Consistent with that authority, numerous courts of appeals have held that

copyright disgorgement is for the jury.  *See, e.g., Sid & Marty Krofft Television

Prods. v. McDonald's*, 562 F.2d 1157, 1175 (9th Cir. 1977) (finding in copyright

1

action that "Plaintiffs in this case had a right to a jury trial" for accounting of profits);

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797-98 (8th Cir. 2003) ("The

question of allocating an infringer's profits . . . should have been left to the jury.");

*Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 483 (6th Cir. 2007)

(same); *see also Ninth Circuit Manual of Model Civil Jury Instructions* § 17.34.

Alcon ignores this authority and tries to draw a bright line between legal and

equitable remedies.  Mot. 1-2.  But the Third Circuit has rejected that argument,

holding that "no distinction can be drawn which would justify recognition of the

right to jury trial for 'damages' and its denial in a claim for 'profits' on the theory

that 'damages' are recoverable in an action at law whereas 'profits' have their origin

in equitable principles."  *Kennedy v. Lakso Co.*, 414 F.2d 1249, 1253 (3d Cir. 1969).

The Copyright Act also provides a statutory right to jury trial.  The statute

groups disgorgement with actual damages and requires allocation between the two.

17 U.S.C. § 504(b) (entitling copyright owner to "actual damages" and "any profits

of the infringer").  That is a clear indication that Congress intended that the same

factfinder (jury) decide both.  *See* 6 Patry on Copyright § 22:149 **("*[S]ection 504(b)*

*treats disgorgement of defendant's profits as an alternative form of monetary*

*damages* . . . recover[able] by plaintiff in addition to its lost sales . . . . *Under such*

*circumstances, the right to a jury is absolute*." (emphasis added)).  By including

disgorgement in § 504(b), Congress confirmed that disgorgement is a legal claim for

2

the jury. *See Feltner*, 523 U.S. at 346 (noting "subsection addressing awards of actual damages and profits, *see* § 504(b), which generally are thought to constitute legal relief"); *see also Huffman v. Activision Publ'g, Inc.*, 2021 WL 2339193, at *3-5 (E.D. Tex. June 8, 2021) (right to jury trial under § 504(b)).[1]

Even if disgorgement were not a jury issue, it would still be improper to exclude Alcon's revenues from the jury. It is settled law that "actual damages for copyright infringement may be based on a reasonable royalty representing 'the fair market value of a license covering the defendant's use.'" *Gaylord v. United States*, 777 F.3d 1363, 1367 (Fed. Cir. 2015). In calculating that reasonable royalty, "[e]vidence of the infringer's actual profits generally is admissible as probative of his anticipated profits." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). Evidence of J&J's profits is thus relevant and probative.

The Court should also reject Alcon's alternative request to exclude evidence about "'other products' beyond Verion and IOLs sold to LenSx accounts." Mot. 3. Such evidence is highly probative of "pull-through" in the laser cataract market (Ex. 8 ¶ 123)—a hotly contested issue here. *See* D.I. 132, Ex. B at 342:15-20. Jury instructions can cure any alleged prejudice. *See, e.g.*, *Weimer v. Int'l Flavors & Fragrances, Inc.*, 2007 WL 1959103, at *3 (N.D. Iowa July 3, 2007).

---

[1] Even if this Court had doubt, it would be prudent to—at a minimum—obtain an advisory opinion from the jury on disgorgement. *Cisco Sys. Inc. v. Arista Networks, Inc.*, 2016 WL 11752975, at *7 n.2 (N.D. Cal. Nov. 16, 2016).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and*
*Counterclaim Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel
Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

December 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                           *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Joshua L. Simmons, Esquire                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Jeanne M. Heffernan, Esquire                    *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Caroline Lourgos, Esquire                       *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*

_____
Anthony D. Raucci (#5948)

2

# EXHIBIT 22C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,

        Plaintiffs,

        v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

        Defendants.

ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,

        Counterclaim-Plaintiffs,

        v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC,
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

        Counterclaim-
        Defendants.

C.A. No. 20-842-CFC-JLH



**ALCON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3 TO PRECLUDE J&J FROM OFFERING TESTIMONY REGARDING EQUITABLE RELIEF AND REVENUE J&J DOES NOT SEEK TO DISGORGE**

OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

ii

J&J seeks to prejudice Alcon by presenting billion-dollar revenues to the jury, claiming disgorgement is "properly for the jury." Br. 1. But the seminal cases J&J *ignores* explains disgorgement is equitable. *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 686 (2014); *Sheldon v. Metro-Goldwyn Pics.*, 309 U.S. 390, 399 (1940) ("recovery of profits" allowed "in equity"); *Edmonson v. Lincoln Nat. Life Ins.*, 725 F.3d 406, 420 (3d Cir. 2013). As this Court recognized, equitable issues are for the judge. *See* 8/3/2022 Status Conference Tr. 42:14-16; *see also Assessment Techs. Inst. v. Parkes*, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022); *Fair Isaac v. Fed. Ins.*, 408 F.Supp.3d 1019, 1027-31 (D. Minn. 2019). J&J recasts disgorgement as a damages request, Br. 1, but it is akin to equitable restitution. *Tex. Adv. Optoelec. v. Renesas Elec.*, 895 F.3d 1304, 1324, 1325-26 (Fed. Cir. 2018). J&J's Third-Circuit case held seeking equitable with legal relief does not negate the jury-trial right, but clarifies equitable relief is "for the court and not for the jury[.]" *See Kennedy v. Lakso*, 414 F.2d 1249, 1254 (3d Cir. 1969). J&J's suggestion that IOL profits come into the jury trial through the hypothetical negotiation is wrong: J&J's expert excluded IOLs in that analysis. Ex. 1 ¶244. Moreover, J&J cannot seek profits on other equipment its expert admitted she "did not analyze…for nexus." Ex. 3 at 19:10-13. (Nor does J&J challenge that other IOL and overall revenues are irrelevant.) Finally, J&J's footnoted request for an advisory verdict is "waived." D.I. 490 at 14.

1

Respectfully,
OF COUNSEL:
Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
Dated: December 21, 2022

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russel (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for*
*Alcon Inc.,*
*Alcon Vision, LLC,*
*Alcon Laboratories, Inc. and*
*Alcon Research, LLC*

2

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 21, 2022, this document

was served on the persons listed below in the manner indicated:

## BY EMAIL

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

Roger J. Chin
Joseph R. Wetzel
Kristine W. Hanson
Allison Harms
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600
roger.chin@lw.com
joe.wetzel@lw.com
kris.hanson@lw.com
allison.harms@lw.com

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
Michael E. Bern
LATHAM &WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
michael.morin@lw.com
matthew.moore@lw.com
sy.damle@lw.com
rachel.cohen@lw.com
susan.tull@lw.com
carolyn.homer@lw.com
holly.victorson@lw.com

S. Giri Pathmanaban
LATHAM &WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
giri.pathmanaban@lw.com

*Attorneys for Plaintiffs and
Counterclaim-Defendants*

# EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA,
LLC, and AMO SALES AND
SERVICE, INC.,

      Plaintiffs,

    v.

ALCON VISION, LLC,
ALCON LABORATORIES, INC. and
ALCON RESEARCH, LLC,

      Defendants.

ALCON INC., ALCON RESEARCH,
LLC, and ALCON VISION, LLC,

      Counterclaim Plaintiffs,

    v.

AMO DEVELOPMENT, LLC,
AMO MANUFACTURING USA, LLC
AMO SALES AND SERVICE, INC.,
and JOHNSON & JOHNSON
SURGICAL VISION, INC.,

      Counterclaim Defendants.

C.A. No. 20-842 (CFC) (JLH)

████████████████████

**EXHIBITS 1-8**
**TO PLAINTIFFS' OPPOSITIONS TO ALCON'S MOTIONS _IN LIMINE_**

## TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Transcript of 9/8/22 Discovery Hearing (highlighted excerpts) |
| 2 | Opening Expert Report of Douglas C. Schmidt, Ph.D. (excerpts) |
| 3 | Opening Expert Report of Nikolaus Baer (excerpts) |
| 4 | Rebuttal Expert Report of Douglas C. Schmidt, Ph.D. (excerpts) |
| 5 | Rebuttal Expert Report of Professor Stephen Wicker, Ph.D. (excerpts) |
| 6 | Rebuttal Expert Report of Julie L. Davis (excerpts) |
| 7 | Transcript of 3/4/22 Deposition of Dan Teodorescu (highlighted excerpts) |
| 8 | Opening Expert Report of Laura B. Stamm (excerpts) |

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, et al.,   )
------------------Plaintiffs,)
                              )Case No.
          vs.                 )20-CV-842-CFC-
                              )JLH
ALCON VISION LLC, et al,      )
                              )
------------------Defendants.)

TRANSCRIPT OF MOTION TO STRIKE

MOTION TO STRIKE had before the Honorable Jennifer L. Hall, U.S.M.J., in Courtroom 2A on the 8th of September, 2022.

APPEARANCES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
     BY: BRIAN EGAN, ESQ.

          -and-

LATHAM & WATKINS LLP
     BY: MICHAEL MORIN, ESQ.
     SY DAMLE, ESQ.
                    Counsel for Plaintiffs

DEANNA WARNER, CSR
PO Box 327, Oskaloosa, Kansas 66066
Phone: (785) 863-5179 Fax: (785) 863-2369

---

(Appearances continued.)

SHAW KELLER LLP
     BY: JOHN SHAW, ESQ.
     ANDREW RUSSELL, ESQ.

          -and-

KIRKLAND & ELLIS LLP
     BY: GREGG LOCASCIO, ESQ.
     ELIZABETH HEDGES, ESQ.

          Counsel for Defendants

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

THE COURT:  So we're here today for a hearing in AMO versus Alcon.  It's Civil Action Number 20-842.  Let's start with appearances.  We'll start with counsel for Plaintiffs.

MR. EGAN:  Good morning, Your Honor.  Brian Egan from Morris Nichols on behalf of the J&J plaintiffs.  Joining me today are Michael Morin and Sy Damle from Latham and Watkins.

THE COURT:  Good morning to all of you.

EVERYONE:  Good morning.

MR. SHAW:  Good morning, Your Honor.  John Shaw from Shaw Keller for the Alcon parties.  Joining me from Kirkland and Ellis are Gregg LoCascio and Elizabeth Hedges, and from my office, Andrew Russell is here and also Jeff Prokop from Alcon.

THE COURT:  Great.  Good morning to all of you.  So it's great to see everybody in person.  I know we've spent a lot of time on the phone together in the last year.

Before the hearing today, we refreshed our recollection about how we got here, and so I think at least this morning, I have a good understanding about the circumstances that have

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

---

led us to this place.  And so the question is now how we're going to move forward.

I don't know if you've all discussed how we should proceed today.  I had an idea that we could maybe hear from Alcon first, since it's really their motion to strike the expert report, which is why we're here today, and then we'll hear from AMO or J&J and go from there.  Does that make sense?

MR. LOCASCIO:  It does, Your Honor.

MR. MORIN:  It does, Your Honor.

THE COURT:  And just so everyone knows, I'm still not used to actually being in the courtroom, so if I'm back and forth with my notes, you'll understand.  Most of them are electronic.

MR. LOCASCIO:  May I proceed, Your Honor?

THE COURT:  Yes.

MR. LOCASCIO:  Good morning.  So where I'd start on this issue -- and, obviously, as you noted, we've been through this a couple rounds.  And at base, there's some things we know and the Court's already determined what Alcon is entitled to discovery

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

the strength of the legal claim, which would be discussed with the lawyers. Was this important enough to do anything about, to tell Alcon to sue them over? No answers to any of that.

And now their own expert has said it's not surprising J&J couldn't determine if critical portions of the code were copied. And another expert says the inspection could not have revealed the operation of the copied code for the Lensec software. All they've done, the only thing they've ever given us, is they took what was -- what we call the Shelviks [phonetic] report, one of the exhibits you looked at, and best we can tell regurgitated it into an interrogatory response.

It's weird how that report, in and of itself, was ever privileged to start with. Their position has been you don't get any documents around this inspection that happened, even if they're not prepared by lawyers. I think it's important to note that a lot of the caselaw around this, you've got work product and attorney-client privilege issues here. There is no work product issue, so things prepared by a nonlawyer --

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

THE COURT: For purposes of getting legal advice?

MR. LOCASCIO: If it's a request for legal advice, then it's privileged. If it's a compilation of facts that I deliver to a lawyer for the purpose of legal advice, those facts and that document are not privileged.

THE COURT: The facts are not privileged. The communication is, and I can tell you we have looked -- we have that document, as you know. We looked at that document. All the facts in that document have been disclosed to you.

MR. LOCASCIO: That may be the case, but if the document itself isn't requesting legal advice or talking about it at all, the document itself is the evidence. They've given us a 'rog response that their witness then, when we got a witness about it, disclaimed any actual knowledge about. What does this mean? Why is it highlighted? Where does it come from? No idea. So we, essentially, have an interrogatory response that doesn't give us any indication of does anybody about J&J think that's important? Do they care about it?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

Comparatively, do they think those are important components? Did they think this was sufficient copying?

This issue of the source code versus object code has come up in a couple calls, and as another data point on this, J&J's position is clearly going to be, well, we didn't have the source code at the time for Alcon's system, so we don't know as much as we know now.

THE COURT: That is definitely their position, and I have combed through their expert reports, and they are very careful, and that is absolutely their position. Every sentence where they say, "We didn't know," it says, "We didn't know there was as much copying as we do know now."

So your argument, as I understand it, really is they're going to come to trial with their experts and tell the jury we didn't know as much as we do now, and you ought to be able to say to somebody "But you did know there was copying" and get an answer. And the question that I'm asking is, and I know the answer, is did you ever just ask somebody did you know? Did the company know there was copying? And I

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

don't see that clear in the record anywhere.

But what I do see is an offer in the joint status report to stipulate to that now, and that seems like it would be pretty valuable to you. And they say they've offered it before. I didn't see it offered before. I see it offered now. What do you think about that?

MR. LOCASCIO: I agree it wasn't offered before. I think, is that a useful piece of information? Yes. I don't think that ends the inquiry, and the reason I don't think it ends the inquiry is because their argument is we didn't know enough. Okay. So that begs the question of how much did you know? You can't have it both ways. J&J can't say, "We didn't know enough. We didn't think it was sufficient. We didn't think there was enough copying," which is their argument around we didn't have the source code, ergo we didn't have enough.

Except we know they were looking at the source code for the IFS, which is the baseline comparison. It's the source code they say was copied. Their log on this, two times -- there are two entries we provided Your Honor. It's

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

49

MR. MORIN: If you look at page seven of that document, and there's a heading C, do you see heading C, Your Honor? Page seven of the attached document. I'm sorry. It's numbered seven.

THE COURT: Yes.

MR. MORIN: If you look at C, heading C.

THE COURT: Yes.

MR. MORIN: If you read the last two sentences, that's an internal, obviously privileged document, but hopefully you'll see why we can't stipulate that we "knew"; right?

THE COURT: Yeah.

MR. MORIN: Right. So if you'd like me to talk to my client, if it would solve it on saying that we believe that some source code may have been copied, I need to make sure that's factually accurate, and I need to talk to my client.

THE COURT: Yeah, yeah, yeah.

So, Mr. LoCascio, it's okay to sit down.

Here's what we're going to do. I'll tell you where we are. I was hoping to get this wrapped up today. Sounds like we've got more

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

50

to go.

I can tell you I reviewed all the documents submitted for in camera review. I agree with AMO that the documents are privileged. They're all privileged. That's very clear to me.

I also do not think privilege has been waived. In particular, I reject Alcon's argument that privilege was waived because Plaintiffs put their state of mind at issue. Putting state of mind at issue doesn't mean privilege is waived. That's very clear under the law in the Third Circuit. If you say you have a certain state of mind because this is the advice I got from my attorney, that's putting the attorney's advice at issue, and that does waive privilege, but that hasn't happened here.

But the problem here is, and I agree with Mr. LoCascio, that you read Plaintiff's expert reports, and it's going to -- they say it's going to suggest to the jury that Plaintiff didn't know there was copying, and I think Mr. LoCascio's client is entitled an answer about whether or not the company thought there

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

51

was copying, and the jury should hear that.

So we've got an offer of a stipulation that they knew there was some copying. That stipulation should be entered into. It sounds like we need to work on the wording a little bit it, and sounds like we need to check with the client a little bit about what exactly can be stipulated to.

MR. MORIN: I think I have enough, and Your Honor is trying to wrap it up, and I'm not trying to short-circuit -- this is an important issue.

First of all, my client is on speed dial. It could take two to five minutes. What I believe I'll be able to do is say that we -- I'll work on the language -- believe there was likely to be at least some copying of source code.

THE COURT: And, Mr. LoCascio, I know that may not be satisfying to you, but I think that is consistent with what the experts said as well. Do you have an expert saying that there was some way -- is it even technologically possible to determine if there was wholesale copying of source code?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

52

MR. LOCASCIO: Obviously, we didn't say wholesale, but there's three hedge words in there, that we believe there may have been likely copying, except at the time -- so then a technical personal who's looking at that, someone with that 'rog response they gave us, should answer questions. If this code, object code, only comes from compiled source code, you don't start with object code, and everybody knows that. J&J would like to blur that line, and that's why they don't want the word "source code" and they don't want everyone to say they knew the source code was copied. The only way the object code lines up in these passages is if the source code starts in the same place. And they've said --

THE COURT: But you're talking about -- I understand what you're saying, but circumstantial evidence of something; right? And they're offering to say -- that's what I'm hearing.

MR. MORIN: I can moot the last point. He keeps not wanting to say source code. My stipulation would be we believe there's at least some copying of source code,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

53

and I don't think I need to call the client on this. I think I have enough direction from the client. If that's what it takes to resolve it, I can do that.

And, Your Honor, we just showed you the privileged documents, which I think is consistent with what's behind the door.

THE COURT: I do think that's consistent.

MR. LOCASCIO: I think we can work on the specific language of that, but it's still a question here of they have Ms. Sam. Ms. Sam says under oath J&J could not assess the value of the copying, but we now now from the back and forth that you have both seen the specifics. Some effort was undertaken to value it.

THE COURT: Have a seat. I understand your point. We're going to move forward.

Please have a seat.

We're going to have a -- so again, I don't think the privilege has been waived. The last issue we're going to get to is getting the factual answers. We're going to have this

54

stipulation. It sounds like this is wrapped up. If there's something more that Mr. LoCascio wants in term of a stipulation, you can raise that with counsel. But in my view, this gets, if not all the way there, almost all the way there, in terms of stipulation. You can also have a one-question deposition at your choice.

There was an issue raised during the hearing today about wanting to ask questions about value, importance, does it matter to the product. I'm not persuaded that there's any other non-privileged questions to ask. I can tell you, again, I have reviewed documents. I feel confident that the documents don't reflect that there are facts that J&J knew apart from the facts that are bound up with the legal advice from their counsel.

So we're going to go forward with the stipulation and the one-question depo. If the stipulation turns out to be two stipulations where the one they've offered, which is they knew there was copying in 2014 as one and then there's a second one that says whether they knew the copying was some source code copying,

55

whatever you work it out to, that's fine too, to make it clear. That's how we're going to move forward.

I'll ask you guys to get this worked out today since you're both here. I don't know if anyone is headed down to DC for the federal circuit conference tomorrow, but hopefully we'll have it done before then so everyone can enjoy the cocktail hour.

MR. MORIN: I agree, Your Honor. I will not be. I have to go to New York in the morning. We have a hearing in a related case.

Of course, I'm fine to work on that, and I don't want to press my luck. Can we try to work out that language? I think we're there. I think that what we've said is -- and that's completely consistent with the documents that you've seen that we just showed you, that we believed that there had been likely at least some copying of source code. I think that gets us there.

I'm afraid -- Mr. LoCascio and I get along great, but I'm afraid that this is going to turn into a second round of joint submissions and he said/she said and accurately

56

reflects what you've been able to do.

THE COURT: Here's what we'll do: I have to get on the train here in a half an hour, and this went for longer than I thought it would. I'm not trying to cut the hearing short. I only allotted a half hour today. Why don't you sit here and work it out. When you're ready, if you need the Court's intervention, e-mail Ms. Garfinkel, and we can get on the phone and discuss whatever it is we need to discuss on the phone.

Any conflict in your schedule, Mr. LoCascio?

MR. LOCASCIO: No conflict in my schedule.

THE COURT: Okay. Thanks, everybody.

C E R T I F I C A T E

STATE OF DELAWARE        )
                        ) ss:
COUNTY OF NEW CASTLE     )

    I, Deanna L. Warner, a Certified Shorthand Reporter, do hereby certify that as such Certified Shorthand Reporter, I was present at and reported in Stenotype shorthand the above and foregoing proceedings in Case Number 20-CV-842-CFC-JLH, *AMO DEVELOPMENT, LLC, et al. Vs. ALCON VISION LLC, et al*, heard on September 8, 2022.

    I further certify that a transcript of my shorthand notes was typed and that the foregoing transcript, consisting of 57 typewritten pages, is a true copy of said MOTION TO STRIKE.

    SIGNED, OFFICIALLY SEALED, and FILED with the Clerk of the District Court, NEW CASTLE County, Delaware, this 9th day of September, 2022.

_____
Deanna L. Warner, CSR, #1687
Speedbudget Enterprises, LLC

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, DE 19977
Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz

# EXHIBIT 2

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY

CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC<br>and AMO SALES AND SERVICE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCON VISION, LLC,<br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LLC,<br><br>Defendants. | C.A. No. 20-842 (CFC) (JLH)<br><br>**CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY**<br><br>**HIGHLY CONFIDENTIAL MATERIAL – ATTORNEY EYES ONLY** |
| ALCON INC.,<br>ALCON RESEARCH, LLC, and<br>ALCON VISION, LLC,<br><br>Defendants and<br>Counter-Plaintiffs,<br><br>v.<br><br>AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC,<br>AMO SALES AND SERVICE, INC.,<br>and JOHNSON & JOHNSON<br>SURGICAL VISION, INC.<br><br>Plaintiffs and Counter-<br>Defendants. | |

## OPENING EXPERT REPORT OF DOUGLAS C. SCHMIDT, Ph.D.

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY

CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

compilation of the FDA 510(k) filings, FDA review and clearance, and pre-launch

activities for an innovative device of this complexity, it would have taken a total of

**7.25 to 7.75 years** from start to commercial release in the United States for the

entire product.

33.    I reviewed evidence from numerous sources that confirms this

estimate is reasonable.  For example, J&J Vision's predecessor estimated ████

████████████████████████████████████████████████████

████████████████.  In 2017, Alcon itself estimated that a brand new

femtosecond laser platform would take between seven and nine years to develop.

Accordingly, the estimate of **7.25 to 7.75 years** from inception to commercial

release is a realistic yet fairly conservative reflection of the effort it would have

taken Alcon to create the LenSx Software without the benefit of its copying.

G.    **Alcon's "Refactored" LenSx Software Code Still Utilizes Creative Expression from the iFS Software**

34.    I have reviewed the "refactored" LenSx Software code and supporting

document, along with Mr. Baer's analysis of the "refactored" code.  In my opinion,

the "refactored" code continues to reflect and utilize the copied architecture and

design of the iFS Software.  While Alcon has clearly made an effort to attempt to

excise the copied code from the software, this effort was not performed in a

manner that removed the developers' access to the infringing LenSx code.  Instead,

**HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY**

**CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY**

the copied iFS Software code continued to serve as a blueprint for Alcon's "refactored" code development.[30]

35.    In my opinion, as explained in more detail below,[31] based on the materials I have examined and the analyses I have performed, the code, structure, and organization that Alcon took from the iFS Software to develop the LenSx Software is inseparable from the features that Alcon modified or added over time. Even if one could fully identify and conceptually separate the iFS Software code from the code added or modified by Alcon, Alcon's code is so intertwined with the copied aspects and architecture of the iFS Software that it would be next to impossible to separate them, like conjoined twins that share a single heart.

36.    Given Alcon's copying of the overall structure and arrangement of the program, and its extensive reliance on the copied code for core functionality of the LenSx Software, it is my opinion that Alcon would need to rebuild its codebase essentially from scratch, or via a clean-room implementation, to fully remove all elements it copied from the iFS computer program, including the overall organization of the program.

---

[30] *See* Baer Report pp. 56-69.

[31] *See* Section XIII.

22

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY

CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

356.    As discussed in Sections VI.A. and VIII.F. above, the object code that is installed on the LenSx machines that are delivered to customers is very different from the source code that is developed and maintained by Alcon.  The vast majority of the object code is in binary form and is not easily readable by humans.  It does not include the full underlying source code, which—in contrast to the object code—*is* generally readable by a human software developer.  As Alcon's Director of Regulatory Affairs, Dr. Carlos Suarez, explained,  "[o]nly the compiled application is installed onto a hard drive – source code is not included.  The application cannot be altered for any other purpose. . . . Changes to the OS and the application are not possible."[591]

357.    A careful examination of object code might reveal some similarities, such as the text of identical error messages or the names of certain processes and functions.  For example, I have reviewed J&J Vision's Sixth Supplemental Response to Interrogatory No. 5, which sets out some evidence of similarities in the LenSx object code that was discernable to AMO when it analyzed a LenSx machine in 2014.[592]  That evidence includes certain function names, error messages, and data structures present in the LenSx object code file that match

---

[591] ALCON_LENSX979650 at ALCON_LENSX979656.

[592] Plaintiff's Sixth Supplemental Repsonse to Defendants' Interrogatory No. 5 (April 22, 2022).

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY

CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

corresponding features in the iFS source code.  However, these do not, alone, provide a meaningful window into the full extent of the copying that is observable from the source code.

358.   If one has only the object code of a program that incorporates copied material from another software program, there generally is no straightforward way to determine the full extent of the copying, which is particularly true where the copied code is mixed together with other non-copied code or where parts of the copied code have been modified in superficial ways.  Both of those conditions are true here since (1) the LenSx source code includes material copied from the iFS source code alongside other source code that is not and (2) portions of the copied iFS source code have been modified in subtle ways.  Those factors make detection of copying from the binary object code file harder because small changes in the source code can result in differences in the binary code that are not easy to trace.

359.   Someone examining the LenSx Software object code would also have no straightforward way to discern the importance or criticality of the iFS code that was copied.  For example, although one might be able to determine from the object code that a particular function *name* has been copied (e.g., the declaring code, which I understand to be farther from the "core" of copyright protection than implementing code), determining definitively that the function is actually called (i.e., used) or how it is called would typically be extremely hard with object code

253

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY

CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

alone.  As explained above, the source code reveals that a number of the copied iFS functions are critical to capsulotomy and lens fragmentation procedures on the LenSx.  But those types of details are typically not revealed by object code.

360.   Indeed, Alcon's own witnesses confirmed that one would need the source code to perform any meaningful evaluation of the differences between the LenSx Software and the iFS Software.[593]  The only way to have discovered the full scope of copying would have been to gain access to the Alcon LenSx source code, which Alcon appears to regard as among the most sensitive and confidential materials held by the company, in light of the extensive restrictions placed on access to this source code in this litigation, for example.[594]

H.   Alcon Personnel Likely Knew About the Copied iFS Source Code

361.   Based on the evidence I have reviewed, Alcon personnel likely knew about the copied iFS source code, including personnel beyond those LenSx developers who may have been initially responsible for the copying.

362.   As noted above, Alcon's source code contains comments reflecting dates years *before* LenSx was founded and operations began.  Moreover, as I stated

---

[593] Jeffcoat Tr. 238:20-240:7; Golden Tr. 197:5-14.

[594] For instance, while LenSx technical documentation could (for instance) be shared with me via email, the full LenSx source code could only be accessed via the Source Code Laptop.

254

**HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY**

**CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY**

Dated:  April 28th, 2022

_____

Dr. Douglas Schmidt

# EXHIBIT 3

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | C.A. No. 20-842 (CFC) (JLH) |
| v. | ) ) | |
| | ) | **HIGHLY CONFIDENTIAL** |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | ) ) ) | **MATERIAL – ATTORNEY EYES ONLY** |
| | ) | |
| Defendants. | ) | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | ) ) ) | |
| Defendants and Counterclaim Plaintiffs, | ) ) ) ) | |
| v. | ) ) | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) | |

**OPENING EXPERT REPORT OF NIKOLAUS BAER**

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

other elements of the resulting work (e.g., the plot of the story or the organization of the book) may nevertheless remain substantially similar to the copyrighted work, because the underlying structure of the novel was previously created through unauthorized copying. Furthermore, even if the unauthorized chapters were deleted, there would most likely be many places in the surrounding chapters that included or rely upon the unauthorized material. The process would be further complicated if writing the new novel was based upon the copied chapters from the very start, such that the structure and organization of the novel stemmed from the unauthorized material.

26.      A software "clean room" procedure is one well-known method for curing computer programs of material that has been copied without permission.[7] Software clean room development is a process for implementing software without any use or exposure to certain protected intellectual property. It is used to develop software after exposure to intellectual property that should not be utilized, such as protected source code or software components, has occurred, and it ensures that the resulting software is not derived from the protected intellectual property. Under a clean-room procedure, the portions of software that an organization wishes to cure are rewritten from scratch. Critically, the only developers that are selected to write the new code are those that have not been exposed to the potentially contaminated portions of source code. Further, these selected developers are denied access to the potentially contaminated portions of source code.[8] Because these developers lack access to the ostensibly infringing source code—and thus lack access to the content of the underlying copyrighted work—a clean

---

[7] *See* Bob Zeidman, *The Software IP Detectives Handbook*, at 371 (2011) [hereinafter "IP Detectives"].

[8] IP Detectives at 375.

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

room design can (if implemented correctly) ensure that the newly created software is the product of independent development rather than copying.[9]

27.    At a high level, removing access to the contaminated portions of source code may require multiple teams of developers, where one team removes the contaminated portions of source code while another completely isolated team writes the new source code. The team responsible for removing the contaminated portions of source code includes developers already familiar with the contaminated source code. The contaminated portions of source code that must be removed include source code that is derived from or developed in coordination with the protected source code or software components, so that the developers do not rely upon portions of the protected material that took root in the derived source code and are not guided back to recreating the protected source code or software components by these remaining artifacts.  The first team then develops the functional requirements for the contaminated and removed code. The second team, which consists of developers who have never seen or worked with the contaminated code, then takes the raw functional specifications from the first team and develops source code to meet those functional specifications.

28.    At a more granular level, the traditional approach to a clean-room design is based upon three roles: clean room developers, dirty room developers, and the monitor.[10] One team, sometimes called the "dirty room" team, is allowed access to the copyrighted source code.[11]  The dirty room developers are individuals with possible exposure to the protected intellectual

---

[9] IP Detectives at 371.

[10] Bob Zeidman, "Implementing a Software Clean Room," in *The Software IP Detective's Handbook*. Westford, MA: Prentice Hall, 2011; Bernard A. Galler, "The Clean Room Approach," in *Software and Intellectual Property Protection*. Westport, CT: Quorum Books, 1995.

[11] IP Detectives at 374.

13

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

126.    The background section of my report above provides some discussion of a standard approach that Alcon could have used to better ensure independent development of its refactored LenSx code: a software "clean room" procedure.  As I will explain further below, Alcon's process contrasted with a clean room procedure and failed to incorporate mechanisms that would adequately cure the LenSx code base of contamination from prior copying.

A.    **Summary of Alcon's Attempted Process for Refactoring the LenSx Source Code**

127.    According to Alcon's deposition testimony, Alcon began its refactoring efforts sometime in the second half of 2021.[104]  More specifically, according to a report from Alcon's timecard system related to the refactoring project, the earliest work on the refactoring project began in June 2021.[105]  Based on the information Alcon has provided, the apparent starting point of development efforts was a meeting between an Alcon employee named David Thoe and Daniel Teodorescu, a senior principal software engineer at Alcon, regarding the initiation of the refactoring project.[106]  Mr. Thoe informed Mr. Teodorescu that there was an "allegation of copyright infringement" and asked Mr. Teodorescu to "work on redesigning portions of the LenSx software" in order to address those allegations.[107]

128.    Following this initial meeting between Mr. Teodorescu and Mr. Thoe, Mr. Teodorescu assumed the role of technical lead on the refactoring project.[108]  Meanwhile, an

---

[104] Teodorescu Tr. 101:15-102:1..

[105] ALCON_LENSX3805249; *see also* Teodorescu Tr. at 61 (identifying ALCON_LENSX3805249 as a "report generated by [Alcon's] timecard system" that shows "the staff within Alcon that [were] working on" the LenSx refactoring project).

[106] Teodorescu Tr. 20:24-21:4.

[107] Teodorescu Tr. 20:24-21:4.

[108] Teodorescu Tr. 72:6-10.

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

code.  For instance, a developer with access to the accused code might be tempted to use a portion of it as an outline for creating new code that performs the same functionality—particularly if the refactoring developers were under pressure to deliver functional code by a particular deadline or within the constraints of a specified budget.  For example, a developer searching for ways to take a substantial shortcut to meet timeline and budget constraints might simply use exactly the same structure, sequence, and organization of a portion of the accused code, while merely making superficial changes such as changes to variable names and formatting.  That would create a very high risk that previously copied protected elements of the iFS code would persist in the refactored code, even if the code were not verbatim the same.  Moreover, even a developer not bent on taking such a significant shortcut might find efficiencies in recycling aspects of the structure, sequence, and organization, which might still result in source code that is based on previously copied iFS source code that had been incorporated into the LenSx source code.

137.    To the extent that the developers involved with the refactoring development have now been exposed to the accused LenSx source code, their exposure, along with other exposed Alcon developers, would taint any future clean room effort and any such developer should not be involved in any future effort, should Alcon reattempt an effort to purge the accused LenSx source code again.

### C.    Alcon Directed the Refactoring Developers to Rely on the Accused LenSx Source Code

138.    Second, not only did Alcon fail to deprive the refactoring developers of access to the accused LenSx source code, Alcon apparently did not distribute among separate teams the processes of specifying the functionality of the existing code, on the one hand, and developing

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

the new code, on the other hand (such as would be done under a traditional clean-room approach). Instead, Alcon appears to have constituted a single team of refactoring developers and directed them to simply rewrite portions of the existing LenSx code, without even instructing them to first define the desired functionality before proceeding to write new code. In fact, as explained above, ███████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████ The refactoring developers appear to have then studied, and "buil[t] some kind of a model" from the existing source code, before refactoring it.[137]

139.    This is a particularly stark departure from a traditional clean-room design approach. Under a clean-room design approach, precautions are taken to preclude even potential opportunities for developers of the new source code to base their work on the potentially infringing source code. But here, that was effectively built into the plan. That is, the refactoring developers were expressly invited to use the allegedly copied portions of LenSx source code as their starting point. Put another way, they were essentially directed to base their refactoring work on the accused source code, including the portions copied verbatim from the iFS code. This is an especially problematic aspect of Alcon's process, and in my opinion, it makes it exceedingly likely that portions of the resulting refactored code would be derived from portions of the LenSx source code that were copied from the iFS code and that copied elements of the iFS code would persist in the refactored codebase. Even the most well-intentioned source code

---

[137] Teodorescu Tr. at 38:3-11.

64

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

developer might find it difficult, if asked to steep her mind in an existing work and develop a new version of it, to avoid incorporating elements of that existing work into the new code, including elements that might be protected by copyright.  Any allowance for independent creative development is further stifled when the developer is still working within the confines of the existing work and is thereby limited to fit the same functionality into the same surrounding mold.  By way of analogy, this is like asking a writer to read an essay and rewrite select paragraphs so that they are different but still convey the same message and are still seamlessly coherent with the surrounding paragraphs.  Even if the writer is determined to create a significantly different work, it might be very difficult to isolate the protected elements of the original essay and avoid allowing those to contaminate the new work, particularly because the writer is forced to absorb those elements as part of the process.

### D. Alcon Did Not Separate the Steps of Excising the Copied Content and Writing New Source Code

140.    Third, the refactoring developers were apparently not asked to filter the existing LenSx codebase—i.e., the actual files in which they typed source code—of copied material *before* the writing of new code began.  In other words, it was not only the case that the accused LenSx code was used as these engineers' guide for their development work, the set of files and folders comprising that codebase also appears to have been the actual canvas used for the refactoring development.  As explained in Alcon's deposition testimony, the developers were "working from the latest version of the LenSx software," and in certain instances, these developers simply replaced portions of code in existing files from the codebase.[138]  Under a

---

[138] Teodorescu Tr. at 38:15-39:7; 42:24-43:2.

65

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

produced by Alcon and made available on the Source Code Computer under the directory

████████████████████████████████ Based on the directory's name, this object

code appears to be associated with version 2.20 of the LenSx source code.

164. To analyze this binary executable, I first opened it using a program called 7-Zip, which is a file archive tool.[154] This allowed me to decompress and extract the directories contained within the executable, which further contain other smaller binary files. I then reviewed some of those smaller binary files in an ordinary text editor application.[155] I opened up some of these smaller object code files in a text editor because one primary way one might be able to discern that particular portions of a codebase (e.g., the pattern manager code) are present in the executable would be to search for certain human-readable strings that are present in the source code of interest and that would be expected to persist in the binary file. A text-editor displays such strings in a human-readable form (alongside the other object code data).

165. One of the object code files I reviewed was a file called ████████ located under the ████████████ directory within the executable. I selected this file because, with the benefit of having been able to review the LenSx source code, I know this directory contains the pattern manager code, which was among the most egregious examples in the LenSx source code of copying from the iFS source code. Without this knowledge gained from access to the source code itself, selecting this file over others would be left more to chance. **Source Code Appendix S3** shows what the full text of this binary file looks like when opened up in a text-editor. As can

---

[154] *See* https://www.7-zip.org/

[155] For purposes of this step, just about any ordinary text editor program would work, such as WordPad, Notepad, or Notepad++.

77

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

be observed from **Source Code Appendix S3**, the vast majority of it is not decipherable to the naked eye.

166.    Within the ███████ file, I searched for strings from the iFS pattern manager directory ████████████████████████████). Within this file, I can indeed observe evidence of copying; the file includes certain strings and function names that match strings and function names in the iFS pattern manager source code. For example, the human-readable ASCII phrase ████████ appears in the file, which is the name of a function in the iFS pattern manager code—part of what is sometimes referred to as the "declaring code" or "software interface." What I cannot see in this file, however, is sufficient information to determine the full pervasiveness of the copying. For instance, with the ████████ example, I cannot see in the ███████ binary file any readily apparent evidence that the body of the ████████ function (i.e., the instructions that implement the logic of the function, sometimes called "implementing code") has been copied. That is because I see no human-readable text corresponding to the iFS version of the ███████ function to search for within the binary file. In the source code, however, it is obvious that the **_entire_** body of the function was copied verbatim, including the "implementing" code.[156] Thus, in my opinion, a developer with access to this object code and the iFS source code could not determine the full extent of the copying present in the LenSx source code. Moreover, a substantial portion of the copying that would be apparent relates to the "declaring" code that, as I understand it, is farther from the "core of copyright." Even someone with special experience or training in reverse engineering and decompiling software would not be able to

_____

███

███████████████████████████████████████████████████████████
████

78

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

access and determine the full extent of the copying, because the original implementing code is no longer present in the binary executable. Indeed, Alcon's own witnesses confirmed that a developer would need to see and compare source code in order to make definitive comparisons regarding similarities between two codebases.[157]

167.    Another characteristic of the LenSx source code that would be extremely difficult, if not impossible, to discern from the LenSx object code is the full extent to which the copied iFS code is used. For instance, with the ███████ example above, although there is evidence in the LenSx object code that this function name was copied, I do not see an easy way to determine how that function is *used*, if at all. There is no way to discern from the mere presence of the declaring code for this function, for instance, what medical procedures with the LenSx device require use of that function or other functions that may have been copied.

168.    Finding these elements in the binary executable is analogous to viewing a restaurant menu. One can see the options, but one cannot discern the recipe, ingredients, or how often an item is ordered. Likewise, one might be able to identify that two restaurants offer some of the same items or the same type of food by comparing their menus, but without getting access to the kitchen, i.e. access to the source code, the full extent of similarities cannot be determined.

169.    Thus, although it is obvious from the LenSx *source code* that extensive portions of implementing code for functions were copied from the iFS source code verbatim and that this copied code is actually used in the software, it would be exceedingly challenging, if not impossible, to discern the full extent of the copying and use of the copied code from only the

---

[157] Transcript of Deposition of Lynda Jeffcoat 239:20–240:7 (Mar. 2, 2022); Transcript of Deposition of Robert Golden 197:5–14 (Feb. 4, 2022).

CONTAINS CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY
INFORMATION

HIGHLY CONFIDENTIAL MATERIAL – ATTORNEYS' EYES ONLY

LenSx 2.20 executable.  In particular, what is obvious from the source code but not obvious from

the object code is the massive scale of the copying.  From the source code, it is blatantly apparent

that large swaths of code were copied, which is not apparent from the object code.[158]


Dated:  April 26, 2022

Nikolaus Baer

---

[158] I have reviewed Plaintiff's Sixth Supplemental Response to Defendants' Interrogatory No. 5 (April 22, 2022), which outlines what I understand to be the information that AMO learned in the course of analyzing the object code for a LenSx device in 2014.  The findings outlined in that response are consistent with my opinions and my expectations regarding the LenSx object code.

# EXHIBIT 4

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY
CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, <br><br> Defendants. | C.A. No. 20-842 (CFC) (JLH) <br><br> **CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY** <br><br> **HIGHLY CONFIDENTIAL MATERIAL – ATTORNEY EYES ONLY** |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, <br><br> Defendants and Counter-Plaintiffs, <br><br> v. <br><br> AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC. <br><br> Plaintiffs and Counter-Defendants. | |

## REBUTTAL EXPERT REPORT OF DOUGLAS C. SCHMIDT, Ph.D.

**HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY**
**CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY**

commencement and whether it speaks to the value of the iFS source code,

Dr. Wicker is simply wrong and erroneously ignores this communication.

71.     Second, as I explained in my opening report, based on the materials I have reviewed concerning AMO's 2014 inspection, although AMO was able to observe some evidence of similarities to the iFS source code in the LenSx object code, the information at AMO's disposal did not provide a meaningful window into the ***full extent*** of the copying reflected in the LenSx source code.[66]  For example, based on the information AMO could discern that is reflected in J&J Vision's response to Interrogatory No. 5, it would have been hard for AMO to determine that—as turned out to be the case—the LenSx code included such large quantities of copied material and that so much of this copied material was actually used in the executed code.[67]  As explained in my opening report, access to the full source code provides a much more comprehensive lens into the astonishing scale of the copying and the extent to which the LenSx system relies on the copied material, including that every cataract surgery indication for the device relies on the copied material.[68]  Moreover, in the materials I have reviewed, I have not seen

---

[66] Schmidt Rpt. ¶¶ 356–360.

[67] Schmidt Rpt. ¶¶ 357–359; *see* Plaintiffs' Sixth Supp. Resp. to Interrog. No. 5 (Apr. 22, 2022); Pang Tr. (Vol. 2) at 283:2–284:8 (confirming that J&J Vision's response to Interrogatory No. 5 reflects the similarities and differences in the object code that were discerned by AMO in 2014).

[68] *See, e.g.*, Schmidt Rpt. ¶¶ 247–255.

HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY
CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY

any indication that J&J Vision was aware, prior to this litigation, that Alcon had copied all the iFS software documentation. As explained in my opening report, the copying in that documentation is additional compelling evidence that Alcon essentially appropriated the iFS software architecture wholesale and used it as the Main Controller in the LenSx source code, despite Alcon's "reassurances" to the contrary.

72.     Thus, I disagree with Dr. Wicker's conclusion that, because J&J Vision did not file this lawsuit until 2020, "J&J placed little value on the code."[69] Such a conclusion relies on the assumption that J&J Vision was aware of the extent to which its copyrighted works had been copied. As I discussed in my opening report, however, before viewing the source code for both products side-by-side as produced during discovery in this litigation, J&J Vision could not have discerned the full extent, importance, or criticality of any copied code, including the extent to which any copied code was utilized in patient procedures conducted with a LenSx.[70] Moreover, I understand that, as explained above, Alcon had expressly

---

[69] Wicker Rpt. ¶ 134.

[70] The fact that J&J Vision did not even add copyright claims to this suit until after ███████████████████████████████████ certainly suggests that J&J Vision did not appreciate the scope and extent to which Alcon had copied the iFS Software code. *See* Plaintiffs' Second Supp. Resps. to Interrogs. 5 and 17 (Oct. 29, 2021) at 7–8. That explanation would certainly be consistent with my opinion that, as a technical matter, one could not discern the full scope and

38

**HIGHLY CONFIDENTIAL MATERIALS – ATTORNEY EYES ONLY**
**CONFIDENTIAL SOURCE CODE – ATTORNEY EYES ONLY**

Dated:  May, 27th, 2022

Dr. Douglas Schmidt

# EXHIBIT 5

Confidential Source Code—Attorney Eyes Only

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALCON LENSX, INC.,<br>ALCON VISION, LLC,<br>ALCON LABORATORIES, INC. and<br>ALCON RESEARCH, LLC,<br><br>    Defendants. | C.A. No. 20-842-CFC<br><br>**JURY TRIAL DEMANDED**<br><br>**Confidential Source Code—Attorney Eyes Only**<br><br>**Highly Confidential Material—Attorney Eyes Only** |
| ALCON INC., ALCON LENSX, INC.,<br>ALCON RESEARCH, LLC, and<br>ALCON VISION, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>AMO DEVELOPMENT, LLC,<br>AMO MANUFACTURING USA, LLC,<br>AMO SALES AND SERVICE, INC., and<br>JOHNSON & JOHNSON SURGICAL<br>VISION, INC.,<br><br>    Defendants. | |

## REBUTTAL EXPERT REPORT OF
## PROFESSOR STEPHEN B. WICKER, PH.D.

**Confidential Source Code—Attorney Eyes Only**

person-months in 2010.  Schmidt Opening Report ¶ 420.  LenSx Version 2.10 was released on December 9, 2010. This means that, by Dr. Schmidt's calculations, it took LenSx software developers 124.25 person-months to develop the non-overlapping portion lines of LenSx software Version 2.10.

75.    Mr. Baer conducted a line counting analysis for LenSx version 2.10, finding that 18.7% of the LenSx source code version 2.10 overlaps with the iFS source code.  Taking Mr. Baer's finding at face value (despite it being exaggerated), as explained above, at least 81.3% of the code in LenSx version 2.10 does not overlap with iFS, indicating it was written by LenSx developers at LenSx.

76.    Using Mr. Baer's implicit finding that 81.3% of the code in LenSx version 2.10 was written by LenSx software developers and was not copied from iFS and Dr. Schmidt's finding that LenSx developers worked 124.25 person-months to develop and release the first commercial version of the LenSx software, I could determine the amount of time it would take a LenSx developer to write the first commercial release of the LenSx software from scratch by dividing the time it actually took by the percentage of code indisputably original to LenSx.  After dividing 124.25 by 0.813, I could determine that, using Mr. Baer and Dr. Schmidt's own analysis, it would have taken a maximum of 152.83 person-months to write the LenSx code from scratch.

77.    I can then find the additional time it would have taken LenSx developers to write the 18.7% of overlapping code by subtracting 124.25 from 152.83. Thus, by my calculation, it would have taken an additional 28.58 person-months to develop the code that Mr. Baer identifies as overlapping. Factoring in Dr. Schmidt's time calculations where he found LenSx developers worked 51 person-months per year from 2009 on, we can divide by that number to find how long

35

**Confidential Source Code—Attorney Eyes Only**

LenSx would have been delayed to market.  This yields only a **0.56 year, or a 6.7 month delay** to market if the LenSx developers wrote the identified overlapping code from scratch.

78.    The above analysis assumes that all lines of code require the same level of effort - the error that propagates through Dr. Schmidt's analysis.  I note, however, that some of the code that was allegedly copied was code that provided basic geometric functions.  In reality, the coding of basic geometric function should have taken less time than the detailed coding required for the target application.

79.    Dr. Schmidt further claims that it took 6 years and 5 months to develop the iFS Software version 2.02, emphasizing that development started at least by August of 2002 and was "developed and improved over the years until January of 2009."  Schmidt Opening Report ¶ 430. But this calculation does ***not*** represent the time it took iFS developers to develop a first commercialized version of the iFS Software from scratch; instead, it looks at all the time from when development first began, through several commercially released versions of the software. But, by Dr. Schmidt's own estimation, the FS2 software began development by August of 2002, and was first commercialized in April 2004.  *Id*. ¶ 431.  This means, using Dr. Schmidt's own evidence, a team of developers wrote a working, commercialized version of the iFS code base in under two years. There is no reason to think that the same developers could not have written similar software in an even faster time-period, particularly considering that there were at most only three primary software developers for FS2 in that time period (Peter Goldstein, Imre Hegedus, and Biren Mehta[36]), whereas LenSx had five software developers.

---

[36] Mr. Mehta agreed that he only worked on five files total during his time writing code for the FS2 software.  Mehta Dep. Tr. at 242:5-11.

36

**Confidential Source Code—Attorney Eyes Only**

## XII.   CONCLUSION

I declare under penalty of perjury that the foregoing is true and correct.


Date: May 27, 2022                                   Respectfully submitted,


_____

Stephen Wicker

# EXHIBIT 6

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

C.A. No. 20-842-CFC

_____

AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE,

INC.,

Plaintiffs,


v.


ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC,

Defendants.

_____


ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC,

Defendants and Counterclaim Plaintiffs,


v.


AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE,

INC., and JOHNSON & JOHNSON SURGICAL VISION, INC.,

Plaintiffs and Counterclaim Defendants.


REBUTTAL EXPERT REPORT AND DISCLOSURE OF

JULIE L. DAVIS



Submitted May 27, 2022


HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY

The United States District Court for the District of Delaware
C.A. No. 20-842-CFC

AMO Development, LLC, et al. v. Alcon Vision, LLC, et al.
Alcon Inc., et al. v. AMO Development, LLC, et al.


As discussed above, it is my opinion that no causal connection has been established between sales of Alcon IOLs and sales of LenSx® devices. For demonstrative purposes, using the same methodology described above, I have also apportioned Alcon's profits on the ███████ in IOL sales to LenSx® accounts estimated by Ms. Stamm (with which I disagree), which equals ██████████.

### B.  J&J's Lost Profits

J&J seeks lost profits of ███████ from lost procedure fees, services, and █████████████ associated with lost Catalys® equipment sales and rentals from 2012 through 2021.[33]  Additionally, according to Ms. Stamm, "[p]rofits from lost procedure fees, services, and █████████ associated with the lost equipment sales and rentals prior to trial would continue beyond the date of trial in the but-for world…[and she has] determined that profits on such sales can be reasonably estimated to be ███████."[34]  The lost profits calculated by Ms. Stamm are summarized in the table below:[35]



Ms. Stamm also asserts that "J&J Vision would be entitled to disgorgement of Alcon's revenue from the equipment placements for which lost profits are not claimed by J&J Vision" in the amount of ███████, which she refers to as "disgorgement of the remainder."[36]

Ms. Stamm's opinions regarding lost profits and disgorgement of the remainder are flawed and contain serious conceptual and mathematical errors.  First, Ms. Stamm's quantification of lost profits is based on the

---

[32] Exhibit 5, Schedule 1.

[33] Opening Expert Report of Laura B. Stamm, dated April 29, 2022, p. 8.

[34] Opening Expert Report of Laura B. Stamm, dated April 29, 2022, p. 9.

[35] Opening Expert Report of Laura B. Stamm, dated April 29, 2022, Exhibit 2.

[36] Opening Expert Report of Laura B. Stamm, dated April 29, 2022, pp. 10-11.

The United States District Court for the District of Delaware
C.A. No. 20-842-CFC

AMO Development, LLC, et al. v. Alcon Vision, LLC, et al.
Alcon Inc., et al. v. AMO Development, LLC, et al.

flawed assumption that LenSx® would never have been brought to market but for the alleged infringement, and in that scenario, she opines that J&J would have captured a significant portion of LenSx® sales from 2012 through 2021.[37]  However, as described further below, I understand that absent the alleged infringement, LenSx®'s entry into the market would have been delayed by only 6.7 months,[38] and it would have still been first to market.[39]  A mere 6.7-month delay in the release of LenSx® would not have materially altered the competitive dynamic between Alcon and J&J.  Thus, it is my opinion that J&J is not entitled to lost profits.

Second, even assuming that LenSx® would never have been brought to market, as Ms. Stamm has, her calculation of lost profits is based on other improper assumptions and contains mathematical errors that significantly overstate J&J's lost profits and disgorgement of the remainder of Alcon's profits.  For instance, her lost profits calculations assume that the purported lost Catalys® installations would have been used to perform the same number of procedures as Catalys® devices in the field, on average.  However, she should have used the average number of procedures performed using LenSx® devices because they were originally LenSx® accounts.  Correcting for this flawed assumption alone reduces her calculation of total lost profits from ███████████████████████.[40, 41]  She also states that "conservatively" J&J would not have had capacity to make additional sales in 2012, but then improperly assumes J&J would capture those sales in 2013.  Additionally, her calculation of "disgorgement of the remainder" contains a mathematical error, and when corrected reduces her calculation of disgorgement of the remainder from ████████████████.[42]

---

[37] Opening Expert Report of Laura B. Stamm, dated April 29, 2022, Exhibit 5C and Exhibit 5D.

[38] Discussion with Dr. Wicker.

[39] The first LenSx® sale outside the U.S. occurred March 26, 2011, and the first sale in the U.S. occurred June 17, 2011. (ALCON_LENSX3595397).  Assuming LenSx® sales would have been delayed 6.7 months, the first LenSx® sale would have occurred outside the U.S. by October 2011 and in the U.S. by early January 2012.  By comparison, the first Catalys® sale outside the U.S. occurred November 22, 2011, and the first sale in the U.S. occurred February 29, 2012 (JJSV_00020373).

[40] Exhibit 4A, Schedule 1.



The United States District Court for the District of Delaware
C.A. No. 20-842-CFC

AMO Development, LLC, et al. v. Alcon Vision, LLC, et al.
Alcon Inc., et al. v. AMO Development, LLC, et al.

***********

My rebuttal report, with supporting exhibits, is contained herein and, along with my Opening Report, presents a summary of my opinion and the bases and reasons therefore as of this date.  To the extent any additional information is produced by the parties, I will be prepared to incorporate any such additional information into my report, or otherwise to amend or supplement my reports as appropriate.

This report is to be used only for the purpose of this litigation and may not be published or used for any other purpose without prior written consent.

By:

Julie L. Davis
May 27, 2022

HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY

# EXHIBIT 7

*** HIGHLY CONFIDENTIAL ***

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMO DEVELOPMENT, LLC, AMO        )
MANUFACTURING USA, LLC and       )
AMO SALES AND SERVICE, INC.,     )
                                 )
          Plaintiffs,            )
                                 ) No. CA
          V.                     ) 20-842-CFC
                                 )
ALCON VISION, LLC, ALCON         )
LABORATORIES, INC., AND          )
ALCON RESEARCH, LLC,             )
                                 )
          Defendants.            )
                                 )
                                 )
                                 )
ALCON INC., ALCON RESEARCH,      )
LLC, AND ALCON VISION, LLC,      )
                                 )
          Plaintiffs,            )
                                 )
          V.                     )
                                 )
AMO DEVELOPMENT, LLC,            )
AMO MANUFACTURING USA, LLC,      )
AMO SALES AND SERVICE, INC.,     )
AND JOHNSON & JOHNSON            )
SURGICAL VISION, INC.,           )
          Defendants.            )
                                 )

*** HIGHLY CONFIDENTIAL ***
REMOTE VIDEO DEPOSITION OF
DAN TEODORESCU
MARCH 4, 2022 - 9:04 A.M. PST

Job No. CS5110196
Reported By: Renee Harris, CSR, CCR, RPR

*** HIGHLY CONFIDENTIAL ***

Page 38

without getting into any communications with counsel or attorney work product.

THE WITNESS: In general, and it doesn't necessarily apply just to this project, rewriting using involves analyzing existing 10:15:40 software, building some kind of a model. Oftentimes that's perhaps a mental model, what functionality it performs. Thinking about the compute and other resources that impose constraints on a solution, and 10:16:01 planning out how to implement a new solution.

And of course, there's the coding aspect, documenting the code at the end.

BY MR. DAMLE:

Q. And so when you are rewriting the code in 10:16:38 its entirety, do you delete the old code and just start from scratch, starting typing new words, new lines of code from scratch? Is that what -- what you did?

A. In some cases, I started with a clean, 10:17:07 empty source code file, and just wrote things up. It depends on the nature of what was being asked on the list.

Q. Okay. So what about in other instances?

A. In other instances, there were portions 10:17:36

Page 39

that were replaced in the existing files.

Q. What portions would be replaced in those instances?

MS. HEFFERNAN: You can answer generally.

THE WITNESS: I mean the portions that 10:18:01 were identified in the document that we have been referring to.

BY MR. DAMLE:

Q. Are you familiar with the concept of a clean room software design? 10:18:12

A. Could you clarify what you mean by that?

Q. You've never heard the phrase "clean room software design"?

A. I have heard the concept but I -- truthfully, I'm not sure that my understanding is 10:18:36 an accurate description. So just to make sure we are talking about the same thing, I was hoping you could clarify that terminology.

Q. Yeah, why don't you tell me, start with your understanding of what a clean room software 10:18:52 design is, and I can -- I can confirm whether that comports with my understanding before we move on to ask questions.

A. This is not a term that I -- I use often. As a matter of fact it's not a term I ever use. I 10:19:07

Page 40

have heard it be used in industry.

What I assume to mean is that you basically write something from starting with an empty file, basically. Again, it's not a formal definition, and I never looked up the exact 10:19:37 definition of that -- of that term.

Q. You have never been involved in a clean room software design project?

A. No. Well, I'm sorry. Again, since I don't quite understand what is meant by that term, 10:20:01 I -- I don't believe I have been in one.

Q. Were the developers of -- sorry. Strike that.

Were the people that worked on the LenSx refactoring project shielded from any earlier 10:20:18 versions of the LenSx source code?

MS. HEFFERNAN: Objection. Vague.

THE WITNESS: What do you mean by "shielded"?

BY MR. DAMLE: 10:20:37

Q. Did they -- did the developers that worked on the LenSx refactoring project have access to any earlier versions of the LenSx source code?

A. Yes, they would have access to earlier 10:20:50

Page 41

versions.

Q. Do they have access to all earlier versions of the LenSx source code?

A. I don't know whether they have access to all earlier versions ever since the date of 10:21:30 inception.

Q. Which versions of the LenSx source code did the software developers working on the LenSx refactoring project have access to?

A. Ever since LenSx became Alcon -- part of 10:21:52 Alcon, I understand that there are Alcon repositories that have earlier versions of the software. So I'm only aware of those repositories. I'm not aware of what happened to LenSx code prior to the LenSx company having been 10:22:19 acquired by Alcon.

Q. So I just want to make sure I understand. Ever since LenSx became Alcon, there are repositories that have versions of the LenSx software from that point forward; is that right? 10:22:54

MS. HEFFERNAN: Objection. Vague.

THE WITNESS: At some point, after LenSx was acquired, LenSx software started to be archived in a Alcon software repository. I didn't mean to imply that exactly at the date 10:23:19

11 (Pages 38 - 41)

*** HIGHLY CONFIDENTIAL ***

Page 102

but it was in the second half of 2021.

Q. You understand that you're the corporate designee on the refactoring project; right?

A. Yes, I do.

Q. And you can't tell me exactly when the refactoring project began?    01:05:58

MS. HEFFERNAN: Objection. Argumentative. And I think, Mr. Damle, that you have an exhibit that's been introduced that could provide that answer. So I think    01:06:09 the witness is prepared. If you want to direct him to the document, he can give you the answer to that question.

BY MR. DAMLE:

Q. Mr. Teodorescu, would it be helpful to    01:06:22 look at a document?

A. Yes.

Q. Do you want to look at the exhibits that have been introduced and see whether that will help you refresh your recollection of when the    01:06:29 refactoring project began?

A. Is there any particular exhibit you would like me to look at?

Q. Why don't we look at Exhibit 4.

A. Yeah.    01:07:26

Page 103

Q. And no work was done on the refactoring project before June of 2021?

A. I'm not aware of any work being done.

Q. And then you've just testified that you had estimated that the refactoring project --    01:07:56 sorry. Strike that.

That the refactoring -- the refactored software will be ready for commercial release by the end of June of this year; is that right?

A. Yes, that's our estimate.    01:08:14

Q. And so even though you were starting with a prior version of the LenSx software, it could take a year or longer to develop -- to complete the refactoring project; is that right?

MS. HEFFERNAN: Objection. Form and    01:08:39 incomplete.

THE WITNESS: So it's a matter of how many people are working on it and what their skill set is, or what their experience with the product is. I know that we had to find    01:08:56

Page 104

people to work on the project. This was not a planned project.

And Jamshid and Prasadh had no knowledge of LenSx. As far as I know, they didn't know anything about LenSx, so there was some --    01:09:18 there was a learning curve. Depending on how big the team is, it could be faster, it could be lower. It could be done in less time or it could be done in more time.

BY MR. DAMLE:    01:09:33

Q. I'm just talking about this project in actuality, with the resources that you were given by Alcon, it began in June of 2021, and it -- the refactored software won't be ready for commercial release, we estimate, at -- at -- or you estimate    01:09:49 until the end of June 2021 -- 2022; correct?

A. Yes. Correct.

Q. And that's more than a year; correct?

A. From the first day when Sukit started charging to the time code until when we estimate    01:10:08 that the SV&V activity will complete, yes, it's a little -- I mean, approximately a year, depending on whether you include the month of June in that calculation or not.

Q. And that's assuming that you do not need    01:10:25

Page 105

any FDA regulatory approval; correct?

MS. HEFFERNAN: Objection. Outside the scope.

THE WITNESS: I'm sorry, could you repeat the question?    01:11:01

BY MR. DAMLE:

Q. So we said that it's going to -- from when the project began in June of 2021 to when the project is ready for commercial release, which you estimate today to be the end of June 2022, is more    01:11:16 than a year. And my question was, that time period assumes that you do not need to wait for any FDA regulatory approval; right?

A. Correct.

Q. So we discussed before that the    01:11:40 refactoring project was commenced because of allegations of copyright infringement.

Is Alcon's position that the refactored code does not include code from the IntraLase software?    01:12:01

MS. HEFFERNAN: I'm going to -- let's see. Objection. Misstates prior testimony. And you can answer.

THE WITNESS: Alcon has asked me to address the sections of code that David Thoe    01:12:24

27 (Pages 102 - 105)

\*\*\* HIGHLY CONFIDENTIAL \*\*\*

Page 230

in this case.

We are off the record at 5:12 p.m.  Thank you.

(Time noted:  5:12 p.m.)

Page 232

DECLARATION UNDER PENALTY OF PERJURY

I, DAN TEODORESCU, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on March 4, 2022; that I have made such corrections as appear noted herein; that my testimony as contained herein, as corrected, is true and correct.

DATED this        day of            ,
2022, at                  .

_____

DAN TEODORESCU

Job No. CS5110196

Page 231

\*\*\* ERRATA SHEET \*\*\*

NAME OF CASE:  AMO, ET AL. V. ALCON, ET AL.
DATE OF DEPOSITION:  MARCH 4, 2022
NAME OF WITNESS:  DAN TEODORESCU
Reason Codes:
    1. To clarify the record.
    2. To conform to the facts.
    3. To correct transcription errors.

PAGE  LINE    FROM      TO      REASON
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____
___|___|_____|_____|_____

        _____
Subscribed and sworn before me
This____day of_____,20__.
_____  _____
(Notary Public)    My Commission Expires:

Page 233

STATE OF CALIFORNIA    )
        (   Ss.
COUNTY OF LOS ANGELES  )

I, RENEE HARRIS, do hereby certify that I am a licensed Certified Shorthand Reporter, duly qualified and certified as such by the State of California;
That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to tell the truth, the whole truth, and nothing but the truth;
That the said deposition was by me recorded stenographically;
And the foregoing pages constitute a full, true, complete and correct record of the testimony given by the said witness;
That I am a disinterested person, not being in any way interested in the outcome of said action, or connected with, nor related to any of the parties in said action, or to their respective counsel, in any manner whatsoever.
DATED: 03/21/2022

        Renee Harris, CSR 14168, RPR

59 (Pages 230 - 233)

# EXHIBIT 8

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, <br> AMO MANUFACTURING USA, LLC <br> and AMO SALES AND SERVICE, INC. | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 20-842 |
| ALCON VISION, LLC <br> ALCON LABORATORIES, INC. and <br> ALCON RESEARCH, LLC | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

**OPENING EXPERT REPORT OF LAURA B. STAMM**

**April 29, 2022**

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

d. ███████████████████████████████████████████

███████████████████[1] Using the pre-installation PCIOL revenue from late 2013, the pull-through revenue associated LenSx placements per account per year would be ████████████████.[282]

e. █████████████████████████████████████████████████

██████████████████████████████████████████████████[283] Assuming the pre-installation ReSTOR and Toric IOL revenue from late 2013, the pull-through revenue associated LenSx placements per account per year would be ██████████

███████████████████████████████████

123. The quantitative evidence consistently shows Alcon estimates of pull-through revenue from ATIOLs of approximately ██████ per account per year. If all consumables other than PIs are included, Alcon's analyses consistently show pull-through revenues of approximately ██████ per account per year.

124. To calculate revenues from IOLs and other consumables attributable to the alleged infringement, I use these dollar figures per account applied to Alcon's global installed base from 2011 to 2021.

125. **Exhibit 8** shows total pull-through revenue of approximately ███████ (associated with ATIOLs), ███████ (associated with non-ATIOLs), and ███████ (associated with Verion), totaling approximately ███████.

126. I have not seen any information from Alcon that attempts to estimate the portion of IOL sales that are maintained (i.e., not lost) by Alcon by virtue of a LenSx placement to an existing IOL account. Accordingly, I have included all sales of IOLs to LenSx customer accounts in Alcon's revenues to be disgorged. I understand the legal burden for the disgorgement remedy requires the infringer to prove any elements of profits attributable

---

[281] ALCON_LENSX254374, at 11.

[282] The pre-installation PCIOL (including ReSTOR and ReSTOR Toric) revenue per account per year was ██████. It can be estimated from total dollar increase divided by the number of accounts, and then divided by the percentage growth. *See* ALCON_LENSX873382, at 6. ████████████████████████████████████

[283] ALCON_LENSX253617, at 2.

[284] The pre-installation ReSTOR and Toric IOL revenue per account per year was ████████████ ████████, respectively. It can be estimated from total dollar increase divided by the number of accounts, and then divided by the percentage growth. *See* ALCON_LENSX873382, at 6. ███████████████████████████████████ respectively.

**HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY**

249.    The actual damages I have quantified in this report reflect the infringing sales of LenSx to date, and procedures to date and expected future procedures on those LenSx units. Those actual damages are conservative and do not reflect several aspects of harm that would be difficult to quantify without being speculative.  For example:

- Alcon has not provided the quantity of LenSx consoles that were placed with customers on rental terms.  For my lost profits calculation, I do not include J&J Vision's lost profits due to these LenSx rental units.

- In my analysis, I have assumed a useful life for the FLACS units of 10 years. Many of the machines installed in 2011 and 2012 are still in use today and the true useful life cannot be reliably estimated until well after 10 years of sales and use data.  My analysis of the lost procedures on J&J Vision's lost installed base as of December 2021 likely underestimates the number of procedures that will be performed on these machines.

- Given the "stickiness" in the FLACS installed base as described above, it is likely that customers who purchase a Catalys in the but-for world would be predisposed to J&J Vision's product portfolio, form a deeper relationship with J&J Vision, and be more likely to purchase replacement units or next-generation FLACS equipment from J&J Vision.  This potential positive spillover effect on other J&J Vision product sales is not included in my damages calculation.

250.    Lastly, I do not attempt to quantify the value of the reputational harm, loss of goodwill, or diminished market position that likely resulted from the loss of Catalys placements and reduced installed base.  While difficult to quantify, the negative effects on these intangible assets, and by extension on the value of J&J Vision, also support an injunction.

_____

Laura Stamm

- 103 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2022, copies of the foregoing were

caused to be served upon the following in the manner indicated:

John W. Shaw, Esquire                              *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Andrew E. Russell, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Joshua L. Simmons, Esquire                         *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Jeanne M. Heffernan, Esquire                       *VIA ELECTRONIC MAIL*
James John Lomeo, Esquire
Ryan James Melde, Esquire
KIRKLAND & ELLIS LLP
401 Congress Avenue, Suite 2500
Austin, TX  78701
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*


Caroline Lourgos, Esquire                          *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Defendants*
*and Counterclaim-Plaintiffs*

Kristen P.L. Reichenbach, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

Noah S. Frank, Esquire
Gregg LoCascio, Esquire
Sean M. McEldowney, Esquire
Kelly Tripathi, Esquire
Elizabeth Hedges, Esquire
Mary Elizabeth Miller, Esquire
Nicholas Teleky, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendants
and Counterclaim-Plaintiffs*

*VIA ELECTRONIC MAIL*

*/s/ Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)

2