IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 20-842 (CFC) (JLH) |
| ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC, | ) ) ) ) | |
| Defendants. | ) | |
| ALCON INC., ALCON RESEARCH, LLC, and ALCON VISION, LLC, | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC. and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**JOINT STATUS REPORT REGARDING INTER PARTES REVIEW
PROCEEDINGS**

Pursuant to the Court's Order of November 15, 2021 (D.I. 205), Plaintiffs and

Counterclaim Defendants AMO Development, LLC, AMO Manufacturing USA,

LLC, AMO Sales and Services, Inc., and Johnson & Johnson Surgical Vision, Inc.

(collectively, "J&J"), and Defendants and Counterclaim Plaintiffs Alcon Inc., Alcon Laboratories, Inc., Alcon Research, LLC, and Alcon Vision, LLC (collectively, "Alcon") submit this Joint Status Report regarding the related *inter partes* review ("IPR") proceedings.

## I.   OUTCOME OF IPR PROCEEDINGS

This case involves claims of copyright infringement by J&J against Alcon and claims of patent infringement by J&J and Alcon against each other.  In mid-2021, the parties filed petitions for *inter partes* review of each other's asserted patents. The Patent Trial and Appeal Board (PTAB) instituted IPR proceedings on 17 of the 21 asserted patents in the case.

On November 15, 2021, the Court issued a Stipulated Order staying the patent claims (but not the copyright claims) "pending the PTAB's last-to-issue final written decision." D.I. 205 at ¶1.  The Court further required that "[a]fter the PTAB issues final written decisions for all instituted asserted patents, the parties shall contact the Court to request a hearing to notify the Court of the outcome of those decisions and to propose a schedule for any further proceedings with respect to the asserted patents."  *Id.* at ¶2.  The PTAB has now issued final written decisions in all 17 instituted proceedings, so the parties are reporting on their outcomes.

The 17 patents are from three families.  The first family, the "Palanker" patents, includes 12 J&J patents.  The PTAB upheld all challenged claims in eleven

of those patents, and for the twelfth patent, some claims were upheld and some were found unpatentable.  The second family of patents, the "Culbertson" patents, includes four J&J patents; all challenged claims in all four of those patents were found unpatentable.  The third and final family consists of a single Alcon patent (the '356 patent), with all challenged claims upheld.  Exhibit 1 provides a patent-by-patent summary of the PTAB's decisions.

## II.   J&J'S PROPOSAL REGARDING SCHEDULING

The parties agreed, and the Court Ordered, that the patent case was stayed until the "PTAB's last-to-issue final written decision or [as] otherwise agreed by the Parties."  D.I. 205 at ¶2.  Now that the PTAB has issued Final Written Decisions for all IPR proceedings, that stay has expired.  *Id.*  Pursuant to the Court's Order, J&J requests a hearing to "propose a schedule for any further proceedings with respect to the asserted patents."  *Id.*

J&J further requests that the Court schedule a two-week trial for Q1 2024, or as soon thereafter as the Court is available, for the patent case.  Once the trial date is set, J&J will work with Alcon to propose interim deadlines.  A Q1 2024 trial allows ample time for the remaining pretrial activities.  Document production is substantially complete, with the parties having produced nearly five million pages of documents from dozens of custodians.  While financials may need to be updated, that is commonplace.  Likewise, written discovery is nearly complete, as the parties

have issued and responded to more than 35 interrogatories. Claim construction briefing is complete, except for supplemental briefing on the PTAB proceedings.

Alcon cannot reasonably dispute that a Q1 2024 trial date would allow sufficient time. After all, when the stay went into effect in mid-November 2021, there were 15 months remaining until the February 2023 trial. A Q1 2024 trial would leave about the same amount of time until trial, but with even fewer issues to address, since the copyright issues are subject to a separate trial and the patent issues have been streamlined, as explained below.

Alcon's request for a stay pending appellate review contravenes the parties' agreement. The parties agreed to a stay "pending the PTAB's last-to-issue final written decision," not pending resolution of any subsequent appeals. D.I. 205 at 2. That last PTAB decision issued over a month ago, so the basis for the stay is extinguished. Rather, the parties agreed (and the Court ordered) that the parties would propose a schedule for further proceedings following these decisions. *Id.* Yet Alcon now resists further proceedings because it did not obtain the IPR results it hoped for.

Any further stay is governed by three factors: "(1) whether granting the stay would simplify the issues in question and the trial of the case; (2) the status of the district court litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether the stay would cause the nonmovant to suffer undue

4

prejudice or allow the movant to gain a clear tactical advantage." *IOENGINE, LLC. v. PayPal Holdings, Inc.*, No. 18-452, 2020 WL 6270776, at *2 (D. Del. Oct. 26, 2020). All factors cut against a stay.

**Simplification of issues.** Extending the stay is unlikely to result in a simplified case. The PTAB upheld 219 of 235 claims of the Palanker patents—the pioneering patents covering computer-controlled laser cataract surgery. To avoid trial, Alcon must convince the Federal Circuit to overturn ***all 219 claims***. Given the Federal Circuit's 77% affirmance rate of PTAB appeals, the chances of that are miniscule. *See* https://www.jdsupra.com/legalnews/federal-circuit-appeals-from-the-ptab-4515409.

As courts in this District have repeatedly held, "while the Federal Circuit may come to a different conclusion than the PTAB, the mere ***possibility*** (as opposed to 'reasonable likelihood') that the asserted claims could be invalidated [after an] appeal and [that this would] result in simplification is too speculative to be given much weight." *Dermafocus LLC v. Ulthera, Inc.*, No. 15-654, 2018 WL 5113960, at *2 (D. Del. Oct. 19, 2019) (citation omitted) (emphasis in original). *See also Zoll Med. Corp. v. Respironics, Inc.*, No. 12–1778, 2015 WL 4126741, at *1 (D. Del. July 8, 2015) ("The pendency of an appeal from the IPR, and the possibility that the Federal Circuit may reverse the PTO (and thereby simplify this litigation by, presumably, making it disappear), is not, in and of itself, a sufficient basis to make

the patentee here continue to wait to enforce patent rights that it currently holds."). To the extent Alcon argues that the outcome of the appeals may necessitate further proceedings, "those are complications that (if they come to pass) Defendants will have to live with, having taken their best shot at the PTAB and lost." *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.,* No. 14-1430, 2018 WL 1061370, at *2 (D. Del. Feb. 26, 2018). The PTAB already found Alcon's obviousness case to be "largely conclusory and unpersuasive" (*see e.g., Alcon Inc. v. AMO Development, LLC*, IPR2021-00817, Paper 48 at 24-25 (PTAB Oct. 13, 2022)), and the statistics show that Alcon does not have a reasonable likelihood of reversing the decisions.

Alcon grossly exaggerates when it claims that its loss on 219 separate claims, across 12 patents, can be undone by convincing the Federal Circuit of "one single error." For example, some upheld claims require that tissue boundaries and treatment regions be determined "automatically," which the PTAB found missing in the prior art. *Id.* at 24. Other claims do not recite "automatic" determination, yet the prior art still failed because it processed the wrong kind of data. *Alcon Inc. v. AMO Development, LLC*, IPR2021-00835, Paper 48 at 28 (PTAB Oct. 26, 2022). As another example, some claims were challenged without relying on the Li reference, *Alcon Inc. v. AMO Development, LLC*, IPR2021-00858, Paper 48 at 21 (PTAB Dec. 12, 2022), whereas other claims turned on the teachings of Li. IPR2021-00835, Paper 48 at 27 ("Petitioner relies on Li for this limitation.").

Simply stated, each claim is "presumed valid independently of the validity of other claims."  35 U.S.C. § 284.

Alcon also cannot prevail based on "one single error" because multiple grounds support the final written decisions.  For example, Alcon's cases failed at the outset because its selected prior art failed to disclose key limitations of the claims.  *E.g.*, *Alcon Inc. v. AMO Development, LLC*, IPR2021-00824, Paper 50 at 31 (PTAB Oct. 26, 2022) ("None of the references identified by Petitioner, however, disclose the use of a control system to process image data to determine a lens fragmentation treatment region or scanning pattern.").  Even if the claim limitations were in the prior art, the PTAB found that a skilled artisan would not have been motivated to combine them.  *E.g.*, *id.* at 39-40 ("even were the OCT system of Baikoff and Li incorporated into Swinger's system in some way, the ordinarily skilled artisan would not have been motivated to use it to program a computer to identify where and how to treat cataract eye tissue with a laser and then proceed to do so").  And even if there were motivation, Alcon's obviousness case fails for lack of a reasonable expectation of success.  *E.g.*, *Alcon Inc. v. AMO Development, LLC*, IPR2021-00841, Paper 52 at 41 (PTAB Nov. 14, 2022) ("The evidence of record suggests that the ordinarily

skilled artisan would not have had a reasonable expectation of success in achieving the claimed invention based on Swinger's, Baikoff's, and Li's teachings.").[1]

Finally, the PTAB weighed expert testimony, which the Federal Circuit is unlikely to second-guess. *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010) ("We defer to the Board's findings concerning the credibility of expert witnesses."). *See also Qualtrics, LLC v. OpinionLab, Inc.*, 679 Fed.Appx. 1016, 1019, 1021 (quoting the same, noting the "strong deference" given to the Board's credibility determinations). The PTAB found Alcon's expert testimony to be "conclusory and unsupported by specific evidence," IPR2021-00817, Paper 48 at 26, and contradicted by earlier deposition testimony. IPR2021-00824, Paper 50 at 41. By contrast, the PTAB found J&J's expert to be credible and persuasive. *E.g.*, *id.* at 37 ("We credit Dr. Kang's testimony.").

Alcon also speculates that claim construction in the IPR appeals may impact the district court litigation, including issues as far afield as written description—which, by statute, was not and could not have been adjudicated by the PTAB. 35 U.S.C. § 311(b). Of course, claim construction in any case may impact other issues. But that provides no reason to further stay the district court case and invert the

---

[1] Alcon's argument that the appeal boils down to "one single issue" is also contradicted by its later argument that the appeal could "impact claim construction, infringement, and written description issues."

ordinary sequence of litigation.  The Federal Circuit has long recognized that judicial efficiency is not served by waiting for advisory appellate constructions that may or may not resolve issues in the district court.  *Portney v. CIBA Vision Corp.*, 401 Fed. Appx. 526, 529 (Fed. Cir. 2010) (denying interlocutory appeal of claim construction).

This case has been streamlined as a result of the PTAB proceedings.  For the first family, the Palanker patents, Alcon is now estopped from challenging validity based on patents or printed publications by 35 U.S.C. § 315(e), substantially narrowing the issues in dispute.  For the remaining patent family, the Culbertson patents, if the Court allows the patent issues to proceed expeditiously, J&J will voluntarily drop its appeals.  As a result, the Culbertson patents will be out of the case and, to the extent Alcon continues pressing the '356 patent,[2] those issues will be streamlined as well, as a result of the statutory estoppel.  35 U.S.C. § 315(e). Alcon's arguments to the contrary regarding conservation of judicial resources ring hollow.  Alcon cites no case to support its argument that having ongoing Federal Circuit appeals "weighs heavily against lifting the stay," a factor that would be present every time a PTAB decision was appealed.  "The great weight of the case

---

[2] Alcon should immediately drop its '356 patent claims.  While that patent survived PTAB proceedings, it did so based on a claim construction—requiring the laser's focal plane to match the natural curvature of the lens—that J&J's accused product clearly does not meet.

law, both in this district and elsewhere," have denied granting such motions to extend. *IOENGINE*, 2020 WL 6270776, at *5.

Alcon's argument regarding the copyright claims is equally unavailing. Alcon alleges that there is "uncertainty as to whether J&J can even recover damages for the alleged patent infringement." But J&J is entitled, by statute, to recover at least a reasonable royalty for Alcon's patent infringement, irrespective of circumstances. 35 U.S.C. § 284. And contrary to Alcon's assertion, J&J would not be obtaining a duplicative recovery for lost profits. For example, J&J's patent claims allow it to recover damages back to 2014, 35 U.S.C. § 286, whereas the Court has limited certain of J&J's copyright claims (source code infringement) to damages since 2017. D.I. 491. In other words, patent damages must be determined in the patent case regardless of the outcome in the copyright case. Moreover, the jury will award any copyright damages by February 2023, well before expert reports would be due in the patent case. The parties, their experts, and the Court, can account for the copyright damages award.

**Status of the district court litigation.** The case is positioned to proceed to trial expeditiously. Contrary to Alcon's suggestion that substantial discovery remains, the parties already "produce[d] documents as if the patent claims were not stayed." Ex. 2. And as discussed above, the issues have been significantly simplified.

Alcon complains that counsel will be busy and "unlikely to work in earnest on the patent claims until after the trial of the copyright claims."  But as the Court recognized, there are "numerous, able attorneys employed by both sides in this case."  Jan. 3, 2023 Oral Order.  Indeed, prior to the PTAB proceedings, the parties were prepared to proceed to trial on both patent and copyright claims simultaneously.  Things have gotten simpler, not more complicated.

Alcon's other complaints about the burdens of discovery cannot justify a further stay.  All patent cases involve such discovery, but that is no reason to refuse to adjudicate the dispute.  J&J's patent claims were in limbo because Alcon took its shot at the patents at the PTAB and lost.  Three years "is a long time to be asked to continue to wait."  *Elm*, 2018 WL 1061370, at *2.

**Prejudice to J&J.**  Because the agreed-upon stay was only in effect until the PTAB issued final written decisions, it was limited to a year by statute.  35 U.S.C. § 316(a)(11).  Alcon now proposes a stay of indeterminate length.  This "open-ended delay resulting from a stay pending a Federal Circuit appeal from the PTAB's decision in an IPR proceeding comes on top of the delay entailed in a stay pending the IPR proceeding itself, thus increasing the prejudice to the patent owner's interest in having its patent rights enforced on a timely basis."  *IOENGINE*, 2020 WL 6270776, at *7.

What's more, J&J and Alcon are head-to-head competitors (numbers one and two) in the laser cataract surgery market. Courts in this District have recognized that, where, as here, "the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRX, Inc., v. Hologic, Inc.*, No. 12-173, 2013 WL 144255, at * 7 (D. Del. Jan. 11, 2013). *See also Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at * 5 (D. Del. Dec. 13, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors."). In any event, "[h]aving taken its shot in the USPTO and failed, [Defendant] should not be able to preclude [Plaintiff] from pursuing its claims in this court for an indeterminate period of time." *Zoll,* 2015 WL 4126741, at *1.

Alcon claims that "the Court already rejected J&J's allegations of prejudice" at the preliminary injunction hearing. But prejudice was not at issue at that hearing. The issue was whether J&J suffered irreparable harm to justify the extraordinary remedy of a preliminary injunction. Prejudice requires a far lesser showing and does not turn on irreparable harm or lack of delay. *Dermafocus*, 2018 WL 5113960, at *2 (finding prejudice despite 6 year delay filing suit). It is enough that a direct competitor prejudices is invading "rights to exclusive use of technology." *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 762 (S.D. Tex. 2010).

For these reasons, J&J requests that this Court resume proceedings on the patent claims and set a trial date in Q1 2024 or as soon thereafter as possible.

## III.   ALCON'S PROPOSAL REGARDING SCHEDULING

In order to alleviate the burden on the Court, the parties agreed to stay their various competing patent claims pending *inter partes* review of those patents.  Now, J&J contends that continuing the stay will cause it prejudice, despite the fact it waited **seven years** after the first Palanker patent issued to bring this suit against Alcon.

Although only one of Alcon's five asserted patents was subject to IPR,[3] Alcon agreed to stay **all** of its patent infringement claims.  In contrast, all of J&J's patents were reviewed, four of which were held to be unpatentable in full and one other was found partially unpatentable.  Although eleven of J&J's patents were upheld, those decisions are subject to appeal—and have already been appealed by Alcon—which may further complicate any subsequent proceedings.  Instead of waiting the additional time to allow the Federal Circuit to weigh in, J&J suggests proceeding to trial (which will likely occur at the same time as a Federal Circuit decision on

---

[3] J&J filed IPRs on all five of Alcon's asserted patents, but the PTAB declined to institute IPRs on four of those patents. And despite J&J's suggestion otherwise, even if the Court ultimately adopts the PTAB's construction of the claims in the '356 patent, that would not preclude Alcon's infringement claim.  Alcon believes discovery will show that the accused products infringe after the Court construes the claims.

Alcon's appeals) on issues requiring additional discovery that might be obviated. J&J suggests the parties undergo this extra, and potentially unnecessary work, while the parties are in the midst of preparation for a February trial on related copyright claims.  That makes little sense.

Critically, J&J's position ignores the copyright claims heading to trial next month and their potential impact on the patent claims in this case.  In addition to the copyright trial in February and the pending IPR appeals before the Federal Circuit, J&J seeks to further consume judicial (and party) resources by lifting the stay of claims involving 21 patents, ostensibly based on its alleged prejudice from further delay.  But J&J fails to mention that it waited *7 years* after the first Palanker patent issued to bring suit against Alcon.  Despite its delay, J&J would rather the parties needlessly litigate claims that may be mooted by creating a third track of litigation between the parties—the opposite of conserving judicial resources.  Therefore, Alcon respectfully requests the Court maintain the stay of the patent claims until the Federal Circuit has ruled on the appeals.  Indeed, courts in this District, including this Court, routinely do so.  *See, e.g.*, *DDR Holdings, LLC v. Priceline.com LLC*, Civ. No. 17-498-CFC, D.I. 101 (D. Del. Jan. 19, 2021); *Personal Genomics Taiwan, Inc. v. Pacific Biosciences of California, Inc.*, 1-19-cv-01810, D.I. 86 (D. Del. Sept. 15, 2022).

The Court has broad discretion to stay litigation.  *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *1 (D. Del. Apr. 9, 2015).  A decision to stay litigation represents an exercise of a court's "inherent power to conserve judicial resources by controlling its own docket."  *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  As J&J notes, courts consider three factors in deciding whether to continue a stay: (1) whether granting the stay would simplify the issues in question and the trial of the case; (2) the status of the district court litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether the stay would cause the nonmovant to suffer undue prejudice or allow the movant to gain a clear tactical advantage.  *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 2327654, at *1 (D. Del. May 31, 2019).

**Continuing the Stay Will Simplify the Issues**:  Contrary to J&J's assertion, ending the stay and proceeding on patent infringement claims (while those claims are under review by the Federal Circuit) would unnecessarily complicate the proceedings and is inappropriate for two reasons.

*First*, J&J ignores the effect that the copyright case itself will have on the patent claims.  Indeed, none of J&J's cited cases involve this particular scenario, where copyright claims based on a similar factual scenario are set to proceed to trial in a month.  Like the copyright claims, J&J's patent claims also involve allegations of infringement by Alcon's LenSx device, and in both cases J&J is seeking lost

profits on its Catalys device allegedly caused by sales of Alcon's LenSx. Ex. 3 at 36–38. If J&J were to prevail on its copyright claims, it would significantly limit any potential recovery on its patent claims, as J&J cannot double recover. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1019 (Fed. Cir. 2006) ("In short, all of the damages awarded to [plaintiff] flowed from the same operative facts: sales of the infringing [product]."). To be clear, despite the Court's ruling, D.I. 491, J&J is still seeking copyright damages from before 2017. It would not simplify the issues or conserve judicial resources to proceed with the patent claims given the uncertainty as to whether J&J can even recover damages for the alleged patent infringement.

**Second**, the Federal Circuit's decision may obviate, or worse, require a re-do of much of the work J&J proposes occur over the next twelve months. While J&J suggests that "Alcon must convince the Federal Circuit to overturn all 219 claims," that ignores reality. Those "219 claims" are almost indistinguishable from each other; they are all from the same Palanker patent family, share the same specification, and almost all are tied via terminal disclaimer. Indeed, in the IPRs, there were only two primary references asserted against each, were argued in two consolidated hearings (the second of which only dealt with a few dependent claims), and the PTAB's decisions are largely identical. More importantly, every PTAB decision upholding those claims hinged on a single allegedly missing teaching in the

prior art (a teaching not even present in the patents themselves), and more specifically, an implicit (and incorrect) construction. Thus, all Alcon must do is convince the Federal Circuit that the PTAB made one single error, which would result in the decision being vacated as to every one of the remaining Palanker claims.

J&J's discussion tries to sidestep the PTAB's split decision in the '724 IPR—invalidating fifteen claims but upholding seven—which demonstrates the fragility of J&J's remaining Palanker claims. *Alcon Inc. v. AMO Development, LLC*, IPR2021-00856, Paper 48 (PTAB Dec. 6, 2022). In that decision, the PTAB invalidated fifteen claims because the claims did not necessarily require that ***a computer*** determine treatment regions and thus rejected "Patent Owner's arguments [as to those claims] that the surgeon would not have ceded control of surgery planning to a computer." *Id.* at 57–58. Despite this holding, the PTAB upheld seven claims because "a computer was not understood to be a suitable replacement for the human for all of the claimed steps." *Id.* at 71.

For the Court's benefit, the table below contains independent claims 1 and 17 of the '724 patent. The PTAB found claim 1 unpatentable because all of its elements were disclosed in the prior art and obvious, while it upheld claim 17 based on a belief that the highlighted language was not obvious to one of skill in the art.

| Claim 1 of the '724 Patent | Claim 17 of the '724 Patent |
|---|---|
| 1. A method for laser cataract surgery that protects the retina of the eye from laser exposure, comprising:<br><br>a. generating, using a computer, an image of at least a portion of a crystalline lens of the eye based on detecting remitted light from locations distributed throughout a volume of the crystalline lens;<br><br>b. processing data including the image data so as to determine a targeted treatment region in the lens of the eye, wherein the targeted treatment region comprises an axially-elongated cutting zone transecting the anterior capsule and does not transect the posterior capsule of the lens;<br><br>c. directing a laser beam, under computer guided control, in a first pattern to photodisrupt at least a portion of lens tissue of the eye to create a light scattering region; and<br><br>d. subsequently directing the laser beam, under computer guided control, in a second pattern in lens tissue anterior to the light scattering region so as to photodisrupt at least a portion of the targeted region, thereby effecting patterned laser cutting of lens tissue for subsequent removal of pieces or segments of lens tissue. | 17. A method for laser cataract surgery that protects the retina of the eye from laser exposure, comprising:<br><br>a. operating an optical coherence tomography imaging system, controlled by a computer system, so as to acquire image data from locations distributed throughout a volume of a crystalline lens of a patient;<br><br>b. processing data including image data, using the computer system, so as to construct a targeted treatment region of the lens of the eye, the targeted treatment region being disposed anterior to the posterior capsule of the lens; and<br><br>c. generating a beam of light using a pulsed laser system, wherein the pulsed laser system is guided by the computer system so as to effect fragmentation of lens tissue of the targeted treatment region in a fragmentation pattern within the targeted treatment region, the fragmentation comprising:<br><br>i. directing a laser beam in a first pattern to photodisrupt at least a portion of lens tissue of the eye to create a light scattering region; and<br><br>ii. subsequently directing the laser beam in a second pattern in lens tissue anterior to the light scattering region so as to photodisrupt at least a portion of the targeted region and effect 3-Dimensional patterned laser cutting of the lens tissue for subsequent removal. |

As shown above, for all of J&J's bluster about its "pioneering" cataract surgery patents, the PTAB recognized that all of the elements of its invention were in the prior art, including "processing data including the image data so as to determine a targeted treatment region in the lens of the eye," a required step of both claim 1 and 17 of the '724 patent. J&J's claims hang on only by the thread of whether doing that "using the computer system" is nonobvious. Thus, all Alcon

must do is convince the Federal Circuit that it would have been obvious to use a computer to do that which had been done manually, something with which numerous courts have agreed.  *See, e.g., Application of Venner*, 262 F.2d 91, 95 (CCPA 1958) ("it is well settled that it is not 'invention' to broadly provide a mechanical or automatic means to replace manual activity which has accomplished the same result."); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) ("Accommodating a prior art mechanical device that accomplishes [a desired] goal to modern electronics would have been reasonably obvious to one of ordinary skill in designing children's learning devices.  Applying modern electronics to older mechanical devices has been commonplace in recent years."); *Smith & Nephew, Inc., v. Bonutti Skeletal Innovations LLC*, IPR2013-00629, Paper 31 at 21–22 (PTAB Feb. 18, 2015) (computer-assisted alignment of surgical instrumentation obvious over mechanical alignment).  This weakness, highlighted by the PTAB's split decision in the '724 patent, underlies each and every one of the Palanker patents,[4] which will likely be heard in a single consolidated appeal.

---

[4] While J&J points to minor differences between the patents, they are distinctions without a difference. For instance, while some claims require the "automatic" determination of treatment regions, the Board's finding did not hinge on the term "automatic." *See Alcon Inc. v. AMO Development, LLC*, IPR2021-00817, Paper 48 at 25 (PTAB Oct. 13, 2022); *see also Alcon Inc. v. AMO Development, LLC*, IPR2021-00823, Paper 52 (PTAB Oct. 13, 2022) at 42 ("Thus, regarding the question of obviousness, we find the claim term 'automatically' to be less critical

Resolving these issues will necessarily involve issues of claim construction, as every decision turned on the Board's implicit (and incorrect) assumption that the claimed controllers must be configured to determine treatment regions ***with FDA-level accuracy***. *See, e.g., Alcon Inc. v. AMO Development, LLC*, IPR2021-00823, Paper 52 at 51–56 (PTAB Oct. 13, 2022) (quoting Ex.1001 ¶181) (rejecting Alcon's combination because Alcon's expert testified that "POSAs at the time were writing such programs [to automatically determine treatment regions] and succeeding, although they were ***not nearly accurate enough to render the surgeon obsolete***."). Although holding the prior art to that standard, the Board ignored that the Palanker specifications themselves fail to describe such a requirement or provide detail regarding ***how*** to configure a controller in such a manner. *See, e.g., id.* at 52–53 n.24 ("We recognize Petitioner's reply argument that the '921 patent itself provides little detail on how its computer control system is programmed to use imaging data to plan and perform a cataract surgery, and argues that the prior art should not be held to a higher standard; however, whether the '921 patent's written

_____

than the parties' arguments suggest."). As to J&J's assertion that for some claims, the prior art "processed the wrong kind of data," the Board actually held that while the prior art taught using "OCT to identify certain boundaries of tissue structures," it did not teach processing the data to determine an anterior capsulotomy scanning pattern, *i.e.*, determining a treatment region. *Alcon Inc. v. AMO Development, LLC*, IPR2021-00835, Paper 48 at 28 (PTAB Oct. 26, 2022). Indeed, the Board also recognized that the prior art taught determining treatment regions manually. *Id.* at 32. And while J&J points out that some petitions did not rely on the Li reference, nine of the twelve did, and thus Li is a commonality, not a distinction.

description is satisfactory is not an issue for determination in this proceeding.").[5]  A

Federal Circuit ruling on the proper scope of the Palanker patents and their terms

"will likely affect in a significant way claim construction, discovery, expert reports,

and trial testimony on infringement and invalidity issues."  *DDR Holdings*, Civ. No.

17-498-CFC, D.I. 101 (continuing stay pending appeal of PTAB IPR decisions);

*Personal Genomics*, 1-19-cv-01810, D.I. 86 (same); *Andrea Elecs. Corp. v. Apple

Inc.*, 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019) ("Ultimately, the Court notes

that the conservation of judicial resources weighs in favor of extending the stay—to

move towards trial on claims 6-9 and then find the construction of the claims has

changed, or the claims themselves have been invalidated, would result in

unnecessarily expended judicial resources."); *Cellwitch Inc. v. Tile, Inc.*, 2021 WL

9145413, at * 3 (N.D. Cal. Oct. 8, 2021) ("[T]he Court cannot speculate as to how

the Federal Circuit will decide the parties' appeals.  Thus, the Federal Circuit's

decision could change the scope and course of litigation midstream, creating an

---

[5] J&J's arguments about missing limitations, motivation to combine, reasonable expectation of success, and "conclusory" expert testimony are all premised on the Board's faulty construction. As to the Board crediting J&J's expert, the Board did not dispute that Dr. Kang applied the incorrect standard for obviousness and specifically ignored his legal conclusions "regarding whether a particular claim would have been obvious." *Alcon Inc. v. AMO Development, LLC*, IPR2021-00824, Paper 50 at 53-54 (PTAB Oct. 26, 2022). Indeed, the Board found Dr. Kang's opinions unpersuasive as to certain claims of the '724 patent. *Alcon Inc. v. AMO Development, LLC*, IPR2021-00856, Paper 48 at 56–57, 59 (PTAB Dec. 6, 2022).

unnecessary use of resources and an avoidable burden on the parties and the Court."). For example, lifting the stay will unnecessarily cause the parties to expend resources in developing written description arguments that would otherwise be rendered moot by the Federal Circuit's resolution of the claim construction issues.[6]  Further, J&J's responses to these issues at the Federal Circuit will also impact claim construction, infringement, and written description issues before this Court.  It would not simplify issues to forge ahead with the patent claims despite this uncertainty and the potential for wasted and overlapping work.

The scheduling of the Federal Circuit appeals also weighs against lifting the stay.  Here, just as the parties would resume discovery for the patent claims under J&J's proposal, briefs would be due in the Federal Circuit appeal.  Further, assuming no extensions are taken, oral argument in the Federal Circuit appeal would likely occur between Q4 2023 and Q1 2024, potentially overlapping with J&J's Q1 2024 proposal for trial on the patent claims.  Simultaneously consuming judicial resources at the district court and appellate level on related issues is the opposite of conserving

---

[6] *Portney v. CIBA Vision Corp.* is inapposite because Alcon's appeals of the PTAB's *final* written decisions are not interlocutory. 401 Fed. Appx. 526, 529 (Fed. Cir. 2010).  Indeed, this Court routinely stays cases pending the outcome of IPR appeals to the Federal Circuit. *See, e.g.*, *Personal Genomics Taiwan, Inc. v. Pacific Biosciences of California, Inc.*, 1-19-cv-01810, D.I. 86 (D. Del. Sept. 15, 2022).

judicial resources.[7]  This factor weighs heavily against lifting the stay of the patent claims.  *Cellwitch*, 2021 WL 9145413, at * 3 (finding "this factor weighs in favor of continuing the stay" while appeal of PTAB decisions are ongoing); *DDR Holdings*, Civ. No. 17-498-CFC, D.I. 101; *Personal Genomics*, 1-19-cv-01810, D.I. 86; *Andrea Elecs.*, 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019).

**Status of the District Court Litigation Favors a Stay**:  J&J's contention that a "two-week trial in Q1 2024" "allows ample time for the remaining pretrial activities" ignores the reality that the parties are unlikely to work in earnest on the patent claims until after the trial of the copyright claims, as the same counsel who worked on the IPRs for J&J and Alcon will be at trial.  This leaves 8-10 months to complete substantial fact discovery, supplemental claim construction briefing, expert discovery, dispositive and Daubert motion practice, other pretrial activities, and trial—much less than the 15 months J&J notes the parties had to accomplish these tasks before the stay was entered.  Contrary to J&J's suggestion that "[d]ocument production is substantially complete," there has been almost no discovery into the patent claims, instead focusing on the copyright claims.  Although the parties applied ESI search terms related to the patent issues, additional requests

---

[7] Although J&J has stated that it will forego appealing the Culbertson patents if the Court grants its *preferred* trial date, in fact J&J has already filed at least two notices of appeal of those decisions.

for production would likely need to be served and responsive documents collected, reviewed, and produced. Interrogatory responses would also need to be supplemented. Lifting the stay would also result in a significant number of depositions, as no depositions were ever taken on patent issues. This will also require third party discovery as many of the inventors on the patents are not employed by the parties. Lifting the stay would burden those third parties—some of whom were already deposed solely in relation to the copyright issues and would need to sit for another deposition. Continuing the stay would prevent this additional, and potentially unnecessary, burden on third parties. *Norman IP Holdings, LLC v. Chrysler Grp. LLC*, 2014 WL 12613264, at *3 (E.D. Tex. Oct. 8, 2014) (granting stay where "the parties and the Court are afforded the opportunity to avoid burdening third parties with potentially needless discovery"). After all of that fact discovery, the parties would still need to engage in expert discovery on multiple different patent families, including reports from both parties on infringement, invalidity, and damages. Given the different technologies at issue, that could involve as many as five experts a side. This factor weighs against lifting the stay of the patent claims.

**Prejudice**: Here too, J&J's alleged strawman of a stay of "indeterminate length" causing prejudice ignores reality. First, J&J cannot seriously contend that it is prejudiced by continuing the stay when it elected not to assert its so-called "pioneering" patents against Alcon for seven years. Second, any stay is not

"open-ended."  Appeals to the Federal Circuit are routinely completed in a little over a year (not three years as J&J implies).  Indeed, under J&J's proposed schedule, the parties would be in the midst of the patent trial when the Federal Circuit issues its decision.  That makes little sense, and there is certainly no prejudice to J&J for waiting.[8]  Third, J&J again ignores the fact that the parties are set to try its copyright claims next month.  As noted, the damages at issue in the copyright trial are likely to overlap with those J&J will seek as part of its patent claims.  Thus there is no "open-ended delay" in J&J vindicating its rights, and *IOENGINE* is silent on the prejudice of a stay to a party who is about to try related intellectual property claims. 2020 WL 6270776, at *1–2.

More importantly, however, the Court already rejected J&J's allegations of prejudice, concluding during the preliminary injunction hearing that J&J's alleged harm "will be quantifiable to a reasonable degree."  D.I. 132-2 at 353:25.  J&J attempts to side-step this finding because it was in the context of a preliminary injunction.  This misses the point: the Court already concluded that any harm related to J&J's alleged prejudice of loss of "market share and an erosion of goodwill" is quantifiable.  The court in *SenoRX*, cited by J&J for this proposition, expressly

---

[8] J&J also ignores that Alcon agreed to the stay even though IPRs were instituted on only one of Alcon's five asserted patents.  Thus any potential prejudice is shared by both parties.

declined to make such a determination.  2013 WL 144255, at *7 ("The Court, of course, takes no position on whether [plaintiff] will be able to ultimately show in the latter stage of this case . . . it cannot be sufficiently compensated by money damages.").  Thus the only potential prejudice to J&J is monetary, which is easily rectifiable by an award of damages.  And while one of the reasons for the Court's finding of no prejudice during the preliminary injunction hearing was J&J's delay in suing on the copyright claims, the same analysis applies to the patent claims.  D.I. 132-2 at 349:21–22 ("So the delay I find probative of a lack of irreparable harm."). J&J could have pursued the Palanker patent claims years ago, yet it chose to wait seven years to sue Alcon.  J&J should not be allowed to turn its delay into prejudicing Alcon by needlessly expending resources defending against claims which may be mooted.

For these reasons, Alcon requests this Court continue the stay of proceedings on the patent claims until the Federal Circuit has ruled on the appeals.

## IV.   CONCLUSION

Pursuant to D.I. 205, the Parties request a hearing to discuss the patent claim proceedings in light of the PTAB's issuance of the last Final Written Decision in the related IPR proceedings.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs and
Counterclaim Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc., and
Johnson & Johnson Surgical Vision,
Inc.*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Sarang V. Damle
Rachel Weiner Cohen
Susan Y. Tull
Carolyn M. Homer
Holly K. Victorson
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
Joseph R. Wetzel

SHAW KELLER LLP

*/s/ John W. Shaw*

_____

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants and Counterclaim
Plaintiffs Alcon Inc.,
Alcon Vision, LLC, Alcon Laboratories, Inc.
and Alcon Research, LLC*

OF COUNSEL:

Jeanne M. Heffernan
James John Lomeo
Ryan James Melde
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9123

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Mary Elizabeth Miller
Elizabeth Hedges
Kelly Tripathi
Nicholas Teleky

Allison Harms
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 491-0600

S. Giri Pathmanaban
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

P. Anthony Sammi
Rachel Renee Blitzer
LATHAM & WATKINS LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Aaron Macris
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 390-4573

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

January 11, 2023