1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3    AMO DEVELOPMENT, LLC,      )
     AMO MANUFACTURING USA,     )
4    LLC, and AMO SALES AND     )
     SERVICE, INC.,             )
5                               )
             Plaintiffs,        )
6                               )   C.A. No. 20-842-CFC
       v.                       )
7                               )
     ALCON VISION, LLC, ALCON   )
8    LABORATORIES, INC., and    )
     ALCON RESEARCH, LLC,       )
9                               )
             Defendants.        )
10

11

12

13              Wednesday, January 18, 2023
                        3:00 p.m.
14                 Pretrial Conference

15

16                 844 King Street
                Wilmington, Delaware
17

18   BEFORE: THE HONORABLE COLM F. CONNOLLY
     United States District Court Judge
19

20

21   APPEARANCES:

22

                 MORRIS NICHOLS ARSHT & TUNNELL
23               BY:  JACK B. BLUMENFELD, ESQ.
                 BY:  ANTHONY RAUCCI, ESQ.
24
                 -and-
25

```
 1     APPEARANCES CONTINUED:

 2

 3                    LATHAM & WATKINS
                      BY:  MICHAEL A. MORIN, ESQ.
 4                    BY:  RACHEL RENEE BLITZER, ESQ.
                      BY:  SARANG V. DAMLE, ESQ.
 5                    BY:  TONY SAMMI, ESQ.
                      BY:  ROGER CHIN, ESQ.
 6                    BY:  CAROLYN HOMER, ESQ.
                      BY:  RACHEL COHEN, ESQ.
 7                              Counsel for the Plaintiff

 8

 9

10                    SHAW KELLER
                      BY:  KAREN KELLER, ESQ.
11

12                              -and-

13                    KIRKLAND & ELLIS
                      BY:  JEANNE M. HEFFERNAN, ESQ.
14                    BY:  GREGG F. LOCASCIO, ESQ.
                      BY:  NOAH S. FRANK, ESQ.
15                    BY:  JOSHUA SIMMONS, ESQ.
                      BY:  ELIZABETH HEDGES, ESQ.
16                    BY:  JAMES LOMEO, ESQ.

17                              Counsel for the Defendants

18

19

20

21

22                    _ _ _ _ _ _ _ _ _ _

23

24

25
```

```
1                    P R O C E E D I N G S
2

3        (Proceedings commenced in the courtroom beginning at

4    3:00 p.m.)

5

6            THE COURT:  All right.  Mr. Blumenfeld.

7            MR. BLUMENFELD:  Thank you, Your Honor.

8    Jack Bloomfeld for Morris Nichols for the plaintiffs, and

9    with me at counsel table from Latham & Watkins,

10   Mike Morin, Tony Sammi, Roger Chin, Sy Damle; behind them,

11   Carolyn Homer, Rachael Blitzer, Rachel Cohen; and in the

12   first row, Denise DeFranco, who is in-house at

13   Johnson & Johnson; and behind her, Anthony Raucci, who is

14   at Morris Nichols.

15           Thank you, Your Honor.

16           THE COURT:  Ms. Keller, haven't seen in you a

17   while.

18           MS. KELLER:  Yes.  Good afternoon, Your Honor.

19   Mr. Shaw sends his regards.  He's on vacation, so I'm here

20   today.

21           With me today on behalf of Alcon from Kirkland

22   & Ellis is Gregg LoCascio, Jeanne Heffernan, Noah Frank,

23   and Joshua Simmons, and also Elizabeth Hedges and James

24   Lomeo; in the back from Alcon, we have Jeff Prokop and

25   Brannon Latimer.
```

 1          **THE COURT:**  All right, great.  Thank you.

 2          All right.  We have a lot to accomplish, and I

 3  don't even think we're going to come close to

 4  accomplishing it in two hours.  So I'm thinking of

 5  bringing you all back February 6, Monday afternoon.  Is

 6  that workable?

 7          I mean, we're going to get through everything

 8  we can today, but...

 9          **MR. LOCASCIO:**  It is on our camp.

10          **MR. MORIN:**  Of course, Your Honor.

11          **THE COURT:**  Okay.  That works.  Great.  So

12  let's do that.

13          You also -- the case manager reminds me that we

14  need to address, before we leave today, jury selection

15  dates, whether it's going to be a Friday or Monday.

16          Let me go ahead and say, you need to all submit

17  a glossary to the court reporter a week before the trial

18  date.  And please remind me just to formally adopt the

19  pretrial order as modified by our rulings today.

20          So a very interesting case in so many regards.

21  And, you know, I do appreciate the lawyering in this case.

22  Got to see a lot of it.

23          I'm trying to figure out, like, how best to

24  resolve, kind of, the many motions out there and what are

25  some, maybe, threshold issues that we ought to grapple

1    with.  One, for instance, that occurs to me is, I think,

2    maybe, whether or not JJSV is a beneficial owner of the

3    copyrighted -- of the asserted copyrights might dictate

4    the outcome of a number of issues pending before me.  And

5    maybe that's a place to start.

6              What do you all think?

7              Are there any other issues like that, for

8    instance, that you say, oh, that would be a real -- I hate

9    the word "impactful," but I'll just say -- or

10   consequential decision?

11             **MR. MORIN:**  Sure.  Your Honor, I think the JJSV

12   one makes sense.  My partner, Roger Chin, will be

13   addressing that issue.  We're going to have a cast of

14   characters today, if that's okay with Your Honor.

15             **THE COURT:**  Yeah, that's fine.

16             **MR. MORIN:**  One other issue that may cut across

17   multiple motions is, Your Honor granted statute of

18   limitations.  And as you probably saw in some of the

19   papers -- and I would be happy to explain more -- we

20   think, unfortunately for us, that moots the issue of the

21   alleged delay in bringing the lawsuit -- and I can explain

22   that more -- which cuts across multiple motions as well.

23             But I'd be happy to explain that later, as

24   well, whenever you'd like.

25             **THE COURT:**  Well, you can.  I mean, I will tell

1    you, you know, I'm going to be very surprised if you

2    persuade me of that.  You know, I think what comes out of

3    *Petrella* are three rules, for sure.  And they're stated

4    right at the outset of Justice Ginsburg's opinion.

5            And one of the rules, the third rule, is that

6    delay can also always -- and I think the word "always" is

7    used by Justice Ginsburg -- be relevant to assessing the

8    profits of the infringer.  And I don't know how you're

9    going to escape that.

10           The second rule right before it is that in

11   extraordinary circumstances, it may be the case that

12   laches could be considered.  And, but anyway, I just think

13   that third rule, I don't know how you're ever going to

14   overcome that.

15           Now, how that plays out, whether it's in front

16   of a jury, whether it's not, I think those are potentially

17   issues, so.

18           But do you have any other, though, suggestions?

19   I mean, you know, we can tackle that issue too.  I mean, I

20   will be -- like the JJSV is one that, right away, I think

21   it makes sense to tackle.

22           **MR. LOCASCIO:**  I agree on the JJSV issue.

23   Mr. Frank is going to handle that on our side.

24           I think you raise a point there, we would

25   raise, obviously, in response on the delay issue in

1    *Petrella*.  There's other reasons, we think, it's also

2    relevant.

3              There's a piece, though, that you touched on

4    that I think is a threshold issue too, and that's the

5    place for disgorgement and who decides it.  And under the

6    law, we think it's an issue for Your Honor to decide;

7    they've raised should it be an advisory verdict.  At which

8    point, you'd still decide the findings at the end would go

9    to the jury.

10              I think that question impacts jury

11    instructions, how we plan to try the case and a lot of

12    things.  So put that on the list.

13              **THE COURT:**  So I agree with you, that's a big

14    one.  I'm wondering though, if I decide that JJSV is

15    not -- doesn't have standing because it's not a beneficial

16    owner, I don't know, does that -- how that affects

17    disgorgement.  It seems to me it would, maybe -- somebody

18    is shaking their head it won't.  Okay.

19              So I thought it might, at least the scope of

20    what you want to present, would be affected.

21              **MR. LOCASCIO:**  I think it would have an impact,

22    but at some point we can -- I think we've got a slide to

23    sort of layout the various damages, sort of, three-headed

24    beast over here on the other side, because there's -- the

25    JJSV statute -- or motion for summary judgment two

1      question goes to actual damages of, has someone been

2      injured and can they make a claim for actual damages,

3      because you have to be a party with an ownership interest

4      to do so.

5               Mr. Frank can speak way more intelligently to

6      this issue than I can.

7               But the disgorgement side of the house, because

8      there's, sort of, some versions where they have a

9      combination, may be a royal plus disgorgement, maybe just

10     disgorgement, that piece, we think, is an issue for

11     Your Honor.

12              And so there's some interplay here because it's

13     a little bit like a Venn diagram of profits plus

14     disgorgement under one of their theories; straight

15     disgorgement under another, royalty plus disgorgement.

16              **THE COURT:**  Okay.  Well, actually on that,

17     yeah, one thing I want to do early on, but I think maybe

18     we'll do it after we tackle JJSV is, I would like you to

19     just tell me in very simple terms:  What are your damages,

20     you know?

21              It seems like it's -- I was thinking kind of a

22     three-headed monster of actual damages, lost profits, or,

23     you know, unjust enrichment/accounting/disgorgement.  And

24     then -- do you have a reasonable royalty too?

25              **MR. MORIN:**  We do, Your Honor.

 1              THE COURT:  Okay.  So it is those three things?

 2              MR. MORIN:  Those are the three buckets,

 3    Your Honor.

 4              THE COURT:  Okay.  All right.

 5              MR. MORIN:  The latter two, lost profits and

 6    royalty, are both under actual damages, and then

 7    disgorgement is the other bucket.

 8              And I thought, for the sake of making sure

 9    we -- you know, we have agreement, the JJSV decision is a

10    consequential decision, but we agree that it's not a

11    disgorgement issue.  It's an actual damages issue because

12    it goes to who can collect their harms.

13              And the disgorgement is, of course, on the

14    Alcon side of the house; do they have to give up profits

15    that they've made.

16              So they're -- I think we're in agreement that

17    JJSV would affect actual damages, but not disgorgement

18    when it comes to the calculation of the result.

19              THE COURT:  Well, let's see, okay.  I mean, I'm

20    glad, maybe, you're in agreement.  I would have thought

21    there's something in the case law that does -- there's

22    language in the some of the cases that suggest that the

23    defendants' profits, at times, are used as a proxy for

24    actual damages, and in which case I thought maybe it would

25    come up.

1              But, frankly, I think the case law is all over

2       the place, and let's put this aside, but...

3              **MR. MORIN:**  Well, may I offer one other thing?

4       And then I'll sit down and let Mr. Chin pick up the JJSV

5       issue -- or maybe it's their motion, it depends on

6       which -- whether we're dealing with the motion to realign

7       or whether we're dealing with our motion.

8              But let me say one other thing only as a

9       preview, but to plant something in your -- in Your Honor's

10      mind, if you don't mind.

11             **THE COURT:**  Sure.

12             **MR. MORIN:**  So there is a -- there are cases

13      going -- I will admit, there are cases going either way on

14      whether the issue of disgorgement is for the judge or the

15      jury.  Judge Payne in the *Huffman* case takes into account

16      the trial and says it goes to the jury.  The *Fair Isaac*

17      case is their lead case -- it's a Minnesota case.  It says

18      it goes to the judge.

19             So there are cases that go either way.  I'll

20      agree with my friend on that aspect of things.

21             We believe firmly it's a jury issue.  But let

22      me just plant one bug in your ear, Your Honor, is, even

23      the *Fair Isaac's* case -- and I can pass it up -- that's

24      their lead case, if you're familiar with that case,

25      Your Honor.

1          **THE COURT:**  It's not ringing a bell.  Who

2    decided it?

3          **MR. MORIN:**  It's a Minnesota magistrate judge

4    who decided that --

5          **THE COURT:**  I'll listen to you.  I don't put a

6    lot of stake in non-Appellate Court opinions.  But go

7    ahead anyway.

8          You think -- is that your lead case?

9          **MR. LOCASCIO:**  Our lead case is *Petrella*.

10         **THE COURT:**  Yeah, I was going to say, so...

11         **MR. LOCASCIO:**  And then, if you look at --

12   there's a Federal Circuit case, *TAOS*.

13         And then the District of Minnesota and the

14   District of Kansas that are -- sort of, come later in

15   time, and all treated as it's equitable, to start with.

16   No dispute it's disgorgement.  It's not a proxy.  And it's

17   not a proxy in this case.

18         And in the wake of that -- it's an issue for

19   the Court -- and this -- and where I think Mr. Morin is

20   going is, Courts will sometimes say, I'm still going to

21   leave it as an advisory verdict.

22         And indeed, the *Fair Isaac* case said, listen,

23   because this is kind of an uncharted issue.  I think

24   *Petrella* decides it, but there's no case specifically

25   saying this point.  The judge in *Fair Isaac* said, I think

1    it's not a jury issue but advisory verdict.

2              **THE COURT:**  Okay.

3              **MR. MORIN:**  And the point I was getting to --

4    we're starting to preview the arguments, and my friend is

5    very good at it --

6              **THE COURT:**  Well, you started it, so you can't

7    blame him.  You started it.

8              **MR. MORIN:**  I am not complaining, Your Honor.

9    He is doing the right thing, adjoining argument with me,

10   Your Honor.

11             **THE COURT:**  Yeah.

12             **MR. MORIN:**  But, Your Honor, the point I was

13   getting to is, like I said, even the cases -- the few

14   cases that have gone the other way, the *Fair Isaac's* case,

15   he says, I don't know what the Eighth Circuit is going to

16   do, because it's so muddled, so I'm going to set it for an

17   advisory verdict.

18             There's another case that we cite, Your Honor,

19   the *Sysco* case out of the Judge Freeman, out of the

20   Northern District of California.

21             And I know that we're not putting stock in what

22   the decision is, but he says, I don't have to --

23             **THE COURT:**  I think it's a "she."  I think

24   Judge Freeman is a --

25             **MR. MORIN:**  She.  She, I'm sorry.  She, she.  I

1    was thinking there was another decision from Judge Alsup

2    in the Northern District of California that --

3                **THE COURT:**  That's a "he."

4                **MR. MORIN:**  -- does the same thing.

5                She says, Judge Freeman says, "I don't have to

6    decide this now.  I'll send it to the jury, and it will

7    either be advisory or conclusive."

8                So I guess what I'm saying to Your Honor is, if

9    it's going advisory anyway -- which no case has said,

10   don't at least go advisory -- you can send it to the jury,

11   and we can sort it out later on, and decide later on, even

12   in post-trial briefs, whether it has the effect of an

13   advisory jury or whether it's the binding decision.

14               In other words, you don't actually have to

15   decide the issue now.  I'm prepared to try to persuade you

16   that we're right.  But you don't actually have to decide

17   the issue now.

18               If you're at the very least going to do an

19   advisory jury, send it to the jury, and we can sort it out

20   afterwards, which is what Sysco did.

21               **THE COURT:**  Okay.  We'll talk about it.

22               **MR. MORIN:**  Yeah.

23               **THE COURT:**  But have your people look.

24   There's, I think, Federal Circuit case out there that

25   talks about how it's -- it can be error to put in front of

1    a jury a massive number and then have a decision made.

2         But anyway, we'll leave that for oral argument.

3    No more on that.

4         **MR. MORIN:**  Yeah, okay.

5         **THE COURT:**  Okay.  So let's just do this.  All

6    I want to hear -- and, really, in a way, the burden is on

7    you.  And by this I mean, you've got to establish

8    standing.

9         So why don't you go first and tell me why JJSV

10   either should be a party, and if not a party, whether its

11   lost profits are fairly incorporated in the damages award.

12        **MR. CHIN:**  Sure.  Thank you, Your Honor.

13   Roger Chin for plaintiffs.

14        Procedural question, there's both the motion to

15   amend, which has the procedural aspects, as well as the

16   substantive.  I'd be happy to jump into either.

17        **THE COURT:**  All I want to know is:  Why is JJSV

18   properly considered either as a party or -- and I think

19   it's effectively the same question -- why, if it's not a

20   party, should its lost profits, Catalys sales, in terms of

21   Catalys sales or IOL sales, why should they be considered

22   as part of the damages?

23        Do you agree that both -- that for them to

24   either be a party or for their lost profits to be included

25   in a damages award, they must be a beneficial owner of the

1    asserted copyrights?  Do you agree with that?

2              **MR. CHIN:**  I think that there are two

3    independent pathways for damages to be recovered.  And

4    this is lost profits damages for that portion of lost

5    profits that goes to JJSV.  There are two pathways.

6    Number 1 --

7              **THE COURT:**  So can you answer the question?

8              **MR. CHIN:**  It does not have to be a beneficial

9    owner.

10             **THE COURT:**  Okay.  So it does not have to be.

11   Okay.

12             **MR. CHIN:**  That's one of two alternatives.

13             **THE COURT:**  Okay.  All right.

14             **MR. CHIN:**  So the two alternatives are,

15   Number 1, JJSV has assigned its legal title to AMO

16   Development.  And with that assignment, it also assigned

17   rights for its claims, that it is assigned its claims for

18   damages to AMO Development.

19             So AMO Development, under black-letter law,

20   stands in the shoes --

21             **THE COURT:**  I don't know how you possibly -- I

22   don't even know how you make that argument with a straight

23   face.

24             The agreement says they gave up all legal

25   rights as of April 2, 2007.  You don't get to give up all

1    your legal rights and then retain claims that you then

2    possess after April 2 in 2007.  They've given up

3    everything as of April 2, 2007.

4            So I don't understand that at all.  So do your

5    best to explain it.  It's not in your brief, incidentally.

6    It's in no briefing, as far as I can tell.

7            **MR. CHIN:**  Yes.  So I think it's -- it would be

8    helpful to turn to the transfer agreement itself, which

9    both parties had identified.

10           That's Exhibit 27.

11           **THE COURT:**  Exhibit 27 to what?

12           **MR. CHIN:**  Good question.  Docket 427, I

13   believe that's Exhibit 27 to...

14           **THE COURT:**  All right.  I got it.  I'm looking

15   at it.

16           **MR. CHIN:**  So it's pretty short, and I think

17   the first page answers the question.

18           The transfer agreement was dated August 21,

19   2020, and effective April of 2007.  The transfer provision

20   in -- and it's clear that as of August 21, 2020, we

21   believe that JJSV had a claim for damages that it was able

22   to transfer to another party that stands in its shoes.

23           Now, let's take a look at the agreement itself.

24           Paragraph 2, towards the bottom of the page,

25   the transfer says that JJSV transfers the rights to AMO

1    Development from and after the effective date of all

2    rights, all passed claims for damages, et cetera.  So --

3              **THE COURT:**  Time out.

4         I'm going to stop you right away because I

5    looked at the transcript.  I had to reflect on what you

6    said.

7              **MR. CHIN:**  Sure.

8              **THE COURT:**  You said, the transfer provision,

9    it's clear, that as of August 21, 2020, we believe that

10   JJSV had a claim for damages.

11        Okay.  Stop you right there.

12        And if the effective date of the transfer

13   agreement was August 21, 2020, different world; but the

14   agreement provides that the effective date of the transfer

15   is April 2, 2007.

16        So it doesn't matter what claims have arisen

17   after April 2, 2007.  This transfer occurred effective

18   April 2, 2007.

19        Now, mind you, my sense is, from talking with

20   my clerks that there's actually cases that say you can't

21   retroactively assign a copyright -- but neither of you

22   have raised that argument, and it's waived if you tried to

23   raise it now, and I don't know how it would necessarily

24   help you -- but you picked the effective date.

25        So it doesn't matter, as far as I can tell,

 1    that as of August 21, 2020, you had some legal claim,

 2    because this agreement says it's effective April 2, 2007.

 3              **MR. CHIN:**  What I think is important is the

 4    intent on the parties.  Obviously, it's the intent of JJSV

 5    and AMO Development, as captured in Exhibit 27, the

 6    transfer agreement.

 7              And the intent of the agreement, I think, is

 8    quite clearly stated in Paragraph 2 when it states that it

 9    transfers the rights from and after the effective date.

10              Now, we are into a rather odd metaphysical

11    question of, can you -- you know, you say it's

12    retroactive, but it was done in August of 2020.

13              **THE COURT:**  I know, but you decided to phrase

14    it this way.  And by the way, you did it after litigation

15    started.

16              So you think you're allowed to play fast and

17    loose and say "from and after the effective date"?  I

18    mean...

19              **MR. CHIN:**  The transfer is a decision by the

20    parties.  Obviously, the intent of the parties controls.

21              **THE COURT:**  No.  Well, okay.  Well, the

22    language controls.  I mean, it's -- this is under what

23    law?  Laws of Delaware.

24              So we don't go beyond the four corners of the

25    agreement under Delaware contract law.  If it's clear on

1    its face.  It says effect date is April 2, 2007.

2              **MR. CHIN:**  As I said, it's effective then.  But

3    it was effective to transfer rights from and after the

4    effective date.

5              **THE COURT:**  So, okay.

6              **MR. CHIN:**  Now, just to be clear in terms of

7    the timeline, JJSV, as stated in our papers, acquired a

8    legal ownership right through authorship of its employee,

9    Mr. Duff.

10             And for purposes of these motions, I don't

11   think that's disputed.  May be a factual dispute, but it

12   hasn't been contested --

13             **THE COURT:**  And when did that occur?  When did

14   his actions occur?

15             **MR. CHIN:**  That was, I believe, between 2000 --

16   after 2007.

17             **THE COURT:**  Right.  But you've already given up

18   your right as of April 2, 2007.

19             **MR. CHIN:**  Well, to the extent that one reads

20   this as giving up rights prior to April 2, 2007, any

21   subsequently acquired rights, if one were to read it that

22   way, would then exist after the fact, and that would still

23   be with JJSV.  That is --

24             **THE COURT:**  Under your reading of this

25   contract -- I mean, think about it now, just like a

1  hypothetical, it's like I could -- I could assign a patent

2  to somebody and I could say, "I'm giving you all the

3  rights effective January 1, 10 years ago.  Oh, but by the

4  way, I'm keeping all my rights after and before that

5  date."

6  I mean, at that point, now we're both -- we

7  both just have the rights to everything.  I mean, it seems

8  absurd.

9  **MR. CHIN:**  So what was transferred -- what

10  would be transferred as of April 2007?  The only thing

11  that would be transferred as of April 2007 are rights that

12  JJSV had as of April 2007.

13  If JJSV acquired additional rights after

14  April 2007, that would have to be a separate transfer.  If

15  they didn't exist, they wouldn't have been transferred as

16  of April 2007.  They would have been transferred as of

17  August 2020, when the parties agreed from and after the

18  effective date to transfer copyrights, as well as claims

19  for damages.

20  **THE COURT:**  I mean, JJSV irrevocably sells,

21  transfers, conveys, assigns and delivers to AMO

22  Development from -- and I agree it says "and after the

23  effective date" and in perpetuity.

24  It's already done it.  As of April 2, 2007,

25  it's transferred everything.  There's nothing else to

1    reclaim.  It transferred everything.

2         It says, "Any and all of its rights, titles and

3    interests to and under the copyright."

4         It's gone.  You know, you picked April 2, 2007.

5    I don't know why you picked it.  You gave it all up.

6         **MR. CHIN:**  Well, to the extent that -- so let's

7    talk about Mr. Duff's work in the 2007 to 2010 --

8         **THE COURT:**  You've already given up.  Anything

9    that happens after April 2, 2007, you've given up under

10   the terms of your contract.

11        **MR. CHIN:**  And if it has been given up and

12   transferred to AMO Development, then AMO Development

13   stands in the shoes of the rights that JJSV would have to

14   make those claims.

15        **THE COURT:**  No.  AMO Development took whatever

16   existed as of April 2, 2007.  You're out of the picture,

17   "you" JJSV.  And now AMO Development is the party that, if

18   a claim arises, it's the legal copyright titleholder.

19        By the way, that's what you allege in the

20   complaint, right?  You say it has the rights.

21        **MR. CHIN:**  That is correct.  We believe that

22   AMO Development today, and as of August 2020, has the

23   legal ownership rights.

24        (Cross-talking.)

25        **THE COURT:**  All right.  I'm not persuaded by

1    anything you say, so let's just do this.

2            **MR. CHIN:**  Okay.

3            **THE COURT:**  And I think it's funny you spent

4    barely any time in your briefing defending or taking on

5    this position that you've articulated here.

6            So what you do argue in your briefing is you're

7    a beneficial owner.

8            **MR. CHIN:**  That's right.

9            **THE COURT:**  All right.  So now, why don't you

10   at least address that argument.

11           **MR. CHIN:**  Okay.  So the legislative history of

12   the Copyright Act, of course, gives the one example, which

13   both sides have identified from case law, of the

14   beneficial owner being a former -- being an author and

15   former legal titleholder who transfers rights in exchange

16   for royalty.

17           The legislative history and the case law that

18   cites that indicates that it includes, but is not

19   necessarily limited to that situation.

20           So what do we have here?  We have an entity

21   that was an author via Mr. Duff, and therefore a legal

22   title owner by virtue of being an author, that has

23   transferred rights to another entity, AMO Development.

24           The former legal titleholder also shares

25   economic interests because it is involved in development,

1    marketing and sales of products covered by the copyright.

2           So we have a situation where -- and I should

3    add one more fact, and that is that --

4           **THE COURT:**  Why is it relevant that you had

5    Duff do work?  Why is that relevant?

6           **MR. CHIN:**  Duff was the contributor to the

7    copyrighted software, so -- and he was an employee of

8    JJSV.  So that makes JJSV having owner -- legal ownership

9    interest at the time that he does --

10          **THE COURT:**  That's where the transfer agreement

11   kills you.  You gave that up April 2, 2007.  So is there

12   any other reason it would be relevant?

13          **MR. CHIN:**  Well, he's an author as well.  And,

14   of course, under the Copyright Act, authors have -- have a

15   special status.  That is, in fact, why the legislative

16   history identifies authors who transferred economic

17   interest -- transfer the title, and who retain an economic

18   interest to have beneficial ownership.

19          So we are in a situation, putting aside the

20   timing of the transfer.  We have an entity that is an

21   author, at least a coauthor, of the copyrighted software

22   via Mr. Duff.  JJSV is the author.

23          It is transferred -- either as of April of 2007

24   or August of 2020, it's transferred the copyright to the

25   legal title owner.  And the legal title owner owes a

1    fiduciary duty to JJSV.  JJSV remains involved.  And, of

2    course, JJSV is an author via Mr. Duff.

3              Now, those circumstances line up quite closely

4    with both the *SBK* case and the *Peter Pan* case, identifying

5    who constitutes a beneficial owner.

6              **THE COURT:**  How do they line up?

7              *SBK*, you're talking has -- it talks about

8    royalty fee and a license.  Do you have that here?

9              **MR. CHIN:**  Yes.  So in the *SBK* --

10             **THE COURT:**  You do?  JJSV has --

11             **MR. CHIN:**  I'm sorry.  No, I --

12             **THE COURT:**  JJSV has a loyalty?

13             **MR. CHIN:**  Oh, I thought you said did I have

14   the *SBK* case in mind.  I'm sorry.

15             (Court reporter clarification.)

16             **MR. CHIN:**  So, yes.

17             **THE COURT:**  You said *SBK* lines up nicely here.

18   And so my question is:  Is there a royalty or license in

19   the *SBK* case?

20             **MR. CHIN:**  It is a royalty case.

21             **THE COURT:**  Right.  So do we have that here?

22   Do we have a royalty or a license?

23             **MR. CHIN:**  As I mentioned, the legislative

24   history -- which *SBK* is following -- identifies that one

25   exemplary case.  But *SBK* explains that the beneficial

1    owner is one that retains an economic interest from

2    proceeds derived from the exploitation of the copyright.

3            So while the particular example in *SBK* is a

4    retained royalty, it describes the retained royalty and

5    the significance of it as a retained economic interest in

6    the proceeds derived from the exploitation of the

7    copyright.

8            And that's what -- that's how it lines up with

9    the current situation, where JJSV, likewise, has an

10   economic interest in the proceeds derived from

11   exploitation of the copyright through its joint -- through

12   its involvement in development, marketing and so forth.

13           **THE COURT:**  Okay.

14           **MR. CHIN:**  Now, the other case, *Peter Pan*, it's

15   an old case, but it identifies what is called an equitable

16   interest, which the 1976 Act had codified into the words

17   of "beneficial owner."

18           So *Peter Pan* is essentially describing the

19   equitable basis for the codification of beneficial owner.

20           And in *Peter Pan*, the situation was a

21   subsidiary and a parent.  The subsidiary was a legal title

22   owner of the copyright.  And the parent had an equitable

23   interest because it was the parent who was owed a

24   fiduciary duty by the subsidiary, and it was, likewise,

25   involved in development, marketing and manufacturing of

1       the copyrighted products.  That is to say, it, likewise,

2       retained an economic interest in proceeds derived from

3       exploitation of the copyright.

4              So *Peter Pan*, arguably is, on the facts

5       themselves, even closer than *SBK* because the parent

6       company, *Glass*, was joined as a co-plaintiff and

7       beneficial -- or equitable owner, who's the -- that was

8       the language at the time -- because it was the parent and

9       it shared the economic interest.

10             Now, I think it's also important to distinguish

11      the cases that are identified by Alcon.  In the *John Wiley*

12      case, for example -- they identified, I believe, three

13      cases*:  John Wiley, HyperQuest* and *Cortner*.

14             *John Wiley* was a bare assignment of the right

15      to sue to an agent.  That's clearly not what we have.

16             *HyperQuest* was simply a nonexclusive licensee.

17             And *Cortner* was another royalty case where they

18      were found to be a beneficial owner.

19             So it's true that neither sides' cases have the

20      exact facts at issue here.  But the rationale of *SBK* and

21      of *Peter Pan* identified the situation where you have a

22      prior legal owner who has a fiduciary interest, via

23      subsidiary, and is involved in the economics of the

24      copyrights.  And those are the factors that create an

25      equitable interest under *Peter Pan*, and a beneficial

1    ownership under *SBK*.

2             Now, two points I'd like to flag here.

3    John Wiley, when it -- that's the case about the

4    photography agent who had the bare right to sue -- it

5    actually distinguishes the situation of an author when it

6    says -- in that case, the agent -- neither has, nor has

7    ever had, an exclusive right under the copyright.

8             And here we have a situation where we do have

9    the author who has an interest in the copyrights, much

10   like the legislative history case of the author who claims

11   royalty.

12            **THE COURT:**  So I'd agree with you except you

13   gave it up.

14            Let me ask you:  Why did you make the transfer

15   agreement effective April 2, 2007?

16            **MR. CHIN:**  I actually don't know the answer to

17   that, but that covers the entire time range of interest.

18            So beginning April 2, 2007 through August, was

19   the time period in which all the work was done, and all

20   the work was transferred from and after that date.

21            **THE COURT:**  Why did your client enter that

22   agreement after this litigation began?  Why didn't it

23   enter before litigation began?

24            **MR. CHIN:**  Once again, I apologize, I don't

25   know the answer to that in terms of the motivation for

1    entering into it.

2              But I should say this, that is, it is clear

3    that provides -- that we believe that that provides AMO

4    Development full legal title to seek all these -- seek the

5    claims, being a legal owner.

6              So it was a transfer to ensure that AMO

7    Development had full legal title to assert the claims.

8         **THE COURT:**  And I think it is undisputed, it

9    does have full legal title; is that right?

10        **MR. FRANK:**  For purposes of this motion, yes.

11        **MR. LOCASCIO:**  I'd even go beyond it's not just

12   for purposes of the motion, Your Honor.

13             It's a question of, that's great, but they

14   can't seek lost profits for things they don't sell.

15        **THE COURT:**  Right.  So it's undisputed, they

16   are the -- they hold the legal title to the patent.  And

17   that's consistent to what you allege in your second

18   amended complaint.

19        **MR. CHIN:**  That's right.  That's right.  So --

20   and --

21        **THE COURT:**  Let me just ask you this:  What

22   exclusive right of the asserted copyrights does JJSV have

23   a beneficial ownership in?

24        **MR. CHIN:**  Sure.

25             It is the exclusive right that AMO Development

1    has the fiduciary to JJSV and co-marketer, and so forth,

2    has in the copyright, in that AMO Development is able to

3    exclude everyone else.

4           And let me actually point out a particular --

5           **THE COURT:**  No, wait.  Wait, wait, wait.  Time

6    out.

7           I thought by definition the beneficial owner

8    doesn't have the right to exclude.

9           **MR. CHIN:**  The --

10          **THE COURT:**  That's the legal -- that's where

11   the legal titleholder has to come in, right?

12          **MR. CHIN:**  The exclusive right --

13          **THE COURT:**  They have to have an economic

14   interest.  I'm not sure that's really the right language,

15   but I'll give it to you.

16          They have to have an ownership in the exclusive

17   right, which is held by the legal titleholder, right?

18          **MR. CHIN:**  They have to have an economic

19   interest and beneficial ownership of the exclusive right

20   held by the legal titleholder.

21          **THE COURT:**  Right.  But the key -- what I want

22   you to focus on is its ownership interest in the exclusive

23   right.

24          It's not in the legal titleholder.  It's in the

25   exclusive right held by the legal titleholder.

1          **MR. CHIN:** That's right. And it's --

2          **THE COURT:** So tell me specifically -- like,

3   the fiduciary duty, that applies to ownership. That's

4   their -- they're an owner, so they've got fiduciary

5   duties.

6          I assume that's what you are getting at, right?

7          **MR. CHIN:** AMO Development has fiduciary duty

8   to JJSV. It derives from the whole notion of trust

9   principles in which beneficial ownership arose in the

10  first place.

11         **THE COURT:** Okay. I thought you were --

12  ownership of the company.

13         So where is the -- you're going to have to

14  really explain to me then; where's the beneficial

15  ownership in the, quote, "exclusive right"?

16         **MR. CHIN:** Got it.

17         So I think that that's actually answered by the

18  *Wiley* case. The *Wiley* case actually identifies where the

19  exclusive right is, and it says that the beneficial

20  owner -- the equitable interest derives value from another

21  person's use of an exclusive right.

22         So that's the purpose of an equitable interest,

23  and that's the purpose of a beneficial owner.

24         **THE COURT:** No. So actually what it says is,

25  "The interest must be one that derives its value directly

1    from another person's use of an exclusive right."

2              So where is that here?  What is JJSV's

3    derivation of value directly from a person's use?  I.e., a

4    license, right?  That's really what it is, right?

5              Another person's use of the copyright, the

6    value, that's embodied in a license, right?

7              **MR. CHIN:**  I believe in the *John Wiley*

8    situation, as well as in the classic situation of an

9    equitable interest, the exclusive use of the copyright is

10   essentially the legal title owner's interest in the

11   copyright and its exclusivity.

12             That is, the legal titleholder, AMO

13   Development, holds exclusive rights, and the beneficial

14   owner's interest is derivative of the legal titleholders'

15   exclusive rights.

16             **THE COURT:**  Okay.  So you want to characterize

17   it that way, I'm good with that.

18             Where does it directly flow from the exclusive

19   right?  Where is that here?

20             **MR. CHIN:**  Yeah.  I mean, that flows from the

21   fact that -- as I mentioned, we have the four prongs that

22   I had identified.  Namely, it is involved in the

23   commercialization, marketing, et cetera, of the

24   copyrighted products together with AMO Development.  It --

25             **THE COURT:**  But it's involved in the marketing

1    of all AMO Development's products.  Where is it tied

2    directly to the exclusive use of the asserted copyrights?

3              **MR. CHIN:**  So the legal titleholder, AMO

4    Development, holds -- as we've all agreed today, holds the

5    entirety of the legal title of the copyright.  It is the

6    exclusive plus --

7              **THE COURT:**  Right.

8              **MR. CHIN:**  -- owner of the copyrights.

9              JJSV is involved, not only as a prior author

10   and original legal titleholder, but -- and -- but it also

11   has an economic interest in the products that are covered

12   by the copyright, like IFS products, via its joint

13   market -- involvement in marketing and so forth.

14             And AMO Development holds -- has a fiduciary

15   responsibility to JJSV to maximize that value in the

16   exclusive rights that AMO Development holds.

17             So AMO Development has the exclusive rights,

18   and JJSV, by virtue of being a beneficial owner through

19   its economic involvement, as well as through its --

20   through the fiduciary duty that AMO Development owes to

21   JJSV, JJSV then has a direct interest in those same

22   exclusive rights that are held by the legal titleholder,

23   AMO Development.

24             **THE COURT:**  Okay.  Anything else?

25             **MR. CHIN:**  I'd like to point out one more

1    point.  And that is, an argument was made by Alcon that

2    the assignment, itself, somehow neutralizes the beneficial

3    rights.

4            And I think the case law in *SBK*, in particular,

5    teaches us assignment of legal rights is not a forfeiture

6    of beneficial rights.

7            **THE COURT:**  I agree.  I agree with that.

8            I'm not sure they're making that argument.  If

9    they are, we'll hear it.

10           But I would agree with you that -- I mean, *SBK*

11   spells out the paradigm situation is, you give up the

12   legal title, but you get a license.  And that's where

13   you're getting something that is an economic interest that

14   is directly tied to the use of the exclusive right.  That

15   makes sense to me.

16           **MR. CHIN:**  And I guess --

17           **THE COURT:**  Can you tell me any case that found

18   a beneficial right of copyright in a fiduciary duty?

19           **MR. CHIN:**  Based solely on a fiduciary duty?

20           **THE COURT:**  Well, actually where it even

21   discusses fiduciary duty.

22           **MR. CHIN:**  It does not occur to me now.  We can

23   identify that for you in correspondence.  I believe it may

24   be in one of the cases.

25           But I can perhaps say this, and that is, there

1    is no case on either side that addresses this particular

2    circumstance.

3         We believe that *SBK* comes the closest to

4    describing the circumstances beyond this one example.  We

5    know from the legislative history that the legislative

6    history gave the one example; a former author and owner

7    who receives a royalty.  It's not an exclusive example,

8    but it's the example that shows up all over the case law.

9         **THE COURT:**  Can you cite any other example

10   besides that where the legal title has assigned legal

11   ownership, but retains an economic interest in the form of

12   a license or royalty payment?

13        Can you cite any other case where something

14   other than those two circumstances accounted for justified

15   beneficial ownership?

16        **MR. CHIN:**  I don't think there's a case that

17   discusses that one way or the other.  If there were a

18   patent case, there would be a Federal Circuit case, I'm

19   sure.

20        But unfortunately, in the copyright context,

21   there has not been a case, sofar as I'm aware, that has

22   discussed that example one way or the other.

23        So we have to rely on the teachings from *SBK*

24   and other cases to figure out what is the closest analogy.

25        Because we know certainly from the legislative

 1    history itself, it is not limited to that circumstance.

 2         **THE COURT:**  Well, why do we know that

 3    certainly?  I mean, does it use the word "example"?

 4         **MR. CHIN:**  It does, in fact.  It says -- I

 5    jotted it down somewhere, but I believe it says something

 6    to the effect of "including, but not limited to."

 7         I can find that language.  But --

 8         **THE COURT:**  Right.  If you want to find it, go

 9    ahead.  Why don't you find that while your colleague

10    talks.

11         My guess is, for example -- first of all, I

12    think it's from House Report Number 94-1476, and it's

13    quoted in Wiley.  And it describes a term "beneficial

14    owner" as, quote, "Including, for example, an author who

15    had parted with legal title to the copyright in exchange

16    for percentage royalties based on sales or license fees,"

17    unquote.

18         **MR. CHIN:**  Yes.  I think you found the cite

19    that I had in mind.  "Including, for example" --

20         **THE COURT:**  Right.  I think the example is it's

21    an author.  That's, I think, the point.  It's an author

22    that's retaining financial interest in the form of

23    royalties.  But I don't think the example is the

24    royalties.

25         But anyway, let me hear from the other side.

 1          And if you can, if you can come up with a case

 2     that cites anything other than a situation where the

 3     beneficial ownership is found to exist based on something

 4     other than royalties or license, you let me know.

 5          **MR. CHIN:**  Will do.

 6          **THE COURT:**  Thank you.

 7          **MR. FRANK:**  Thank you, Your Honor.  Noah Frank

 8     on behalf of Alcon.

 9          If there is a case like the one you were

10     asking, it has not previously been cited.  The only cases

11     finding that there was a beneficial owner deal with in the

12     scenario that you pointed out, author exchanges bare legal

13     title in exchange for royalties.  *SBK* is that case.

14          Also, the question of beneficial ownership was

15     not actually in play.  The question was:  Can a beneficial

16     owner be found to be an infringer?  And so not on point in

17     this scenario.

18          *Peter Pan*, the other case Mr. Chin cited, dealt

19     with a case of misjoinder.  It didn't actually raise the

20     question of beneficial ownership.

21          What it said -- and 173 F. Supp 292 at 298, it

22     said:  "Weaner failed to utilize the opportunity to

23     squarely raise the issue of misjoinder.  Had the issue

24     been raised directly, plaintiffs would then be in a

25     position to present whatever facts it possessed to

1    delineate Glass' interest in the subject matter of this

2    litigation."

3                 So that's the case they point to to say a

4    parent can have some sort of beneficial ownership

5    interest.

6                 The case doesn't actually say it said that

7    issue is not in front of me.

8                 **THE COURT:**  Right.  And, in fact, the quote I

9    have from that case is that joinder of a parent, quote,

10   "may represent justifiable action," unquote.

11                And that, quote, "trial evidence may show an

12   equitable ownership."

13                So it's -- and, of course, it is possible,

14   right, because you could have a parent retain a beneficial

15   ownership in the form of a royalty payment, right?

16                And that would be tied directly to the exercise

17   of an exclusive right of a copyright, as opposed to just

18   some general ownership of the companies and their revenue

19   streams across the board.

20                **MR. FRANK:**  That's correct.

21                **THE COURT:**  Right.  And that's what's missing

22   here.

23                **MR. FRANK:**  That's absolutely correct.  If you

24   look at the transfer agreement, which Your Honor spoke

25   about, there's no retention of rights.

1          And, in fact, if there were a beneficial

2     ownership, that would be gone due to the transfer

3     agreement because it doesn't retain any sort of beneficial

4     ownership of anything.

5          **THE COURT:**  Why do you think they transferred

6     it effective April 2, 2007?

7          **MR. FRANK:**  My assumption is that -- their

8     allegations of copying relate to the version of the source

9     code that was around that time frame.  I think they just

10    wanted to predate any potential allegations of copying.

11    But I don't know.  They could have structured it

12    differently, and they didn't.

13         **THE COURT:**  Now, they suggest -- and I don't

14    even remember what -- for some reason, I think it's

15    D.I.-490, which I can't remember what it is.

16         But they suggest that in that document, you

17    said something like, this transfer is not valid or it

18    doesn't count or -- that, you know -- is there any -- do

19    you have any recollection of them making that assertion

20    about you?

21         Did you ever take a position that the transfer

22    agreement's not valid or?

23         **MR. FRANK:**  That's not ringing a bell,

24    Your Honor.

25         **THE COURT:**  Okay.

1          **MR. FRANK:** One other thing I wanted to point

2     out. Mr. Chin cited to Cortner. Cortner, again, was the

3     standard retention of a royalty case.

4          And this whole theory on this beneficial

5     ownership really relates to this question of, well, JJSV

6     must have been a legal owner, and therefore they retained

7     something in the transfer agreement.

8          Well, the burden's on them to come forward with

9     that. And by the terms of the agreement, it's clear --

10    they wrote the agreement. And it's clear, they have no

11    rights.

12         And I'd also point Your Honor to their

13    answering brief at Page 7. And they say that -- and they

14    agree -- the mere existence of a parent subsidiary

15    relationship does not itself confer a parent company with

16    beneficial ownership.

17         They, then, go on to say that that's not what

18    we're doing here. Rather, it is a beneficial -- it,

19    JJSV -- is a beneficial owner in its own right because it

20    retains an economic interest in the copyrights derived

21    from the profits it receives from its exploitation.

22         But that could be said about any parent

23    subsidiary relationship. There's nothing in the record

24    that they point to where they receive something in return

25    for giving up a right. And so there is no beneficial

1    ownership in this case.  And it's JJSV's burden to prove

2    it.

3              I'd also point out that Mr. Chin said what

4    matters is the intent of the parties.

5              And in their briefing, they make a lot of this

6    Rick Duff point and say, well, we became a legal owner

7    because of Rick Duff.

8              Well, if you look at the transfer agreement in

9    its Paragraph 123, the third line, it said, "The parties

10   have always intended that any copyright interests in such

11   computer programs used" -- I assume by the IFS systems --

12   "be held by AMO Development."

13             And then in the next "whereas" clause, it says,

14   "JJSV, nevertheless, may have acquired copyright

15   interests."

16             So they never claimed that they actually were a

17   legal owner and had given up legal ownership.

18             They said, "We've never been a legal owner.  We

19   never meant to be a legal owner.  And just in case that's

20   not true, we're not a legal owner.  JJSV is not in this

21   case.  AMO Development is the legal owner."

22             And I'm happy to answer any other questions you

23   have on this issue, but...

24             **THE COURT:**  No.  So the statement I had in mind

25   was this.  It was a quote.  This is in their reply brief,

 1    that Alcon's position is that this transfer was

 2    ineffective.

 3              I don't know why I thought D.I.-90.  It's

 4    D.I.-458 at three to four.  I don't know what that is.

 5              Do you know what they're referring to?

 6              Have you asserted at some point in the

 7    litigation that the transfer agreement was not effect --

 8    was ineffective?

 9              **MR. FRANK:**  I'm sorry, could you point me to

10    the page?  This is their response brief to the summary

11    judgment?

12              **THE COURT:**  D.I.-516 at Page 13.  Or if you

13    have the hard copy of the reply brief, it's Page 9.  It's

14    in Footnote 4.

15              **MR. FRANK:**  Is this the motion to amend?

16              **THE COURT:**  Yes.  Motion to realign.

17              **MR. FRANK:**  I'm not entirely sure what the

18    reference is.  We did say that it was ineffective to

19    confer any right to pass damages.  But I don't know what

20    they're referring to.

21              **MR. LOCASCIO:**  Or actually, just give me the

22    cite once more.  I think I found the brief you're

23    referring to.

24              **THE COURT:**  D.I.-458, and it's at Pages 3 to

25    4 -- well, first of all, what is that?

1              **MR. FRANK:**  This is the -- it's J&J's reply

2    brief in support of their motion for leave to amend.

3              **THE COURT:**  No, no, that's D.I.-516.

4              **MR. FRANK:**  Sure.  D.I.-4 --

5              **THE COURT:**  In Footnote 4, that J&J says,

6    quote, "Alcon's position is that this transfer was

7    ineffective," unquote.

8              They're talking about the transfer agreement,

9    and they cite D.I.-458 at three to four.

10             **MR. LOCASCIO:**  And the sentence that carries

11   the page -- I'm looking at it -- is, "as of the effective

12   date, JJSV possessed no rights or interests in any of the

13   transfer copyrights, and thus was not a copyright owner

14   accruing damages."

15             But that section is a page long, and it's AMO

16   Development and J&J, we are bound by the transfer

17   agreement, which says, "it's effective, but you gave

18   everything away, so you have no ability for damages."

19   That's what three to four says.

20             **THE COURT:**  All right.  So you've never alleged

21   that this agreement is ineffective?

22             **MR. LOCASCIO:**  We have not.

23             **THE COURT:**  Okay.

24             **MR. LOCASCIO:**  And if we're speculating as to

25   why they did it, if I can pipe in on that one because I've

1    got a different version.

2              I think, if look at the timing, they clearly

3    thought -- I assume they had some concern, does AMO

4    Development have standing?  Is there some vestige?  Maybe

5    this Duff, maybe somebody else.  And they said, let's just

6    get it all over there, so they can be a party, just like a

7    patent case, going to shore up standing.

8              And then the benefit to them is:  We're not

9    going to be in this.  No discovery from us, no JJSV

10   hassle.  Except, what somebody wasn't thinking about that

11   day was, we're going to seek IOL revenues which are not

12   sold and no profits come to any of the parties that are

13   actually plaintiffs.

14             **THE COURT:**  Okay.  All right.  Thank you.

15             All right, Mr. Chin.

16             **MR. CHIN:**  Your Honor, perhaps I can come back

17   to the direct economic interest point.

18             It occurred to me that -- and we've identified

19   one document that I failed to mention earlier, that does

20   indicate how JJSV has a direct economic interest.

21             **THE COURT:**  Okay.

22             **MR. CHIN:**  And I believe that is -- it's an

23   interrogatory response.  But for purposes of summary

24   judgment, the Court should treat that as, at least

25   creating a disputed fact, in that we identified the flow

```
 1     of money.

 2                 And I believe it is Exhibit 26.

 3                 THE COURT:  Okay.

 4           MR. CHIN:  And in Exhibit 26 -- I apologize.  I

 5     was just handed this.  I'm trying to find the cite as we

 6     speak.

 7                 MR. MORIN:  Eighteen, Page 18.

 8           MR. CHIN:  Oh, Page 18.  Why don't I do this:

 9     Why I don't I tell you what the point is, and then I'll

10     come back with the cite for you.

11                 THE COURT:  All right.

12           MR. CHIN:  And the point is that, as we

13     identified in our interrogatory responses that the revenue

14     flows are owed to AMO Development, but are paid to JJSV.

15     That is, JJSV ultimately enjoys the economic benefit of

16     the moneys that were owed to AMO Development.

17                 And that's not surprising, because JJSV --

18     because AMO Development has the fiduciary duty and

19     ultimately pays the money upstairs.  It's part of

20     consolidated books.

21                 THE COURT:  By "fiduciary duty," you mean

22     because they're a subsidiary?

23                 MR. CHIN:  They are a subsidiary, yes.

24                 THE COURT:  And so you're saying they owe a

25     fiduciary duty to protect --
```

 1              **MR. CHIN:**  To manage IT responsibility.  And,

 2    in fact, due to the consolidated books of the company, the

 3    money is, in fact, ultimately paid to JJSV.

 4              And the passage, which I can't find the page

 5    number for --

 6              **THE COURT:**  Time out.  They ultimately paid --

 7    it's ultimately paid it because it's an owner of the

 8    company, AMO.

 9              **MR. CHIN:**  That's right.

10              **THE COURT:**  Right.

11              **MR. CHIN:**  Well, not only an owner, but also an

12    entity that directly participates in the marketing and

13    development of the products as well.

14              **THE COURT:**  Of all of their products.

15              **MR. CHIN:**  All of their products, including the

16    copyright products, and all the products that are subject

17    to damages.

18              **THE COURT:**  Okay.  All right.  Anything else?

19              **MR. CHIN:**  So that's a direct economic

20    interest.

21              **THE COURT:**  All right.

22              **MR. CHIN:**  But coming back to the example of an

23    author that is paid a royalty.  As I indicated, sofar as

24    we're aware, unless we can -- that there is no case that

25    goes directly on point to either in either direction.

1          But I would suggest that the *Peter Pan* case,

2    which talks about the equitable interest, which is a --

3    the predecessor, shall we say, to the beneficial

4    ownership, talks about the equitable rights that flow from

5    being both a parent and --

6          **THE COURT:**  I don't agree with you.

7          So I think what that case talks about is that

8    it posits that there could be a situation where a parent

9    could constitute an equitable owner, but it is certainly

10   not by virtue of it being a parent.

11         And I think it's undisputed, the case law says

12   "mere ownership of the company"; i.e., the parent,

13   subsidiary relationship is, by itself, insufficient to

14   establish beneficial ownership.

15         **MR. CHIN:**  By itself, I agree.

16         **THE COURT:**  Right.

17         **MR. CHIN:**  But the *Peter Pan* situation also

18   involved a parent who was involved in the development,

19   marketing, and manufacturing of the products as well.

20         **THE COURT:**  All right.

21         **MR. CHIN:**  So --

22         **THE COURT:**  So I'm going to make a ruling.  I

23   do not believe that J&J has established that JJSV was a

24   beneficial owner of the asserted copyrights.

25         And it transferred, effective April 2, 2007,

1    its legal ownership of the asserted copyrights.  It did

2    not retain a direct economic interest in the form of a

3    license or royalty, and so it did not have a beneficial

4    ownership interest in an exclusive right of the asserted

5    copyrights.

6            And JJSV argues that, first, it wasn't the

7    original legal owner of the copyright through the work of

8    its employee, Mr. Duff.  All that work occurred after

9    April 2, 2007.  And it transferred all of those efforts

10   and the beneficial ownership, or legal ownership that

11   would have followed from those efforts, as of April 2,

12   2007.

13           It did it retroactively.  And both sides have

14   agreed it was able to do that retroactively.  And it was

15   an effective agreement.  No one is arguing that this was

16   an invalid transfer.

17           The second thing that JJSV posits as a theory

18   that would make it a beneficial owner is that it shares

19   management, sales and marketing functions for the

20   copyrighted products.

21           Well, it shares those functions generally with,

22   certainly, the copyrighted products and other products.

23   And that is really just another way of summarizing some of

24   the things it does for its subsidiary.  And it is not tied

25   directly to the exclusive rights of the asserted

1    copyrights.  And it's not a royalty.  It's not a license.

2                    Third, J&J relies on this fiduciary duty that

3    AMO owes to JJSV, but that's by virtue of its parent

4    subsidiary relationship.  It is not tied directly to the

5    copyrights.

6                    And so I don't think those facts would justify

7    characterizing JJSV as a beneficial owner of these

8    asserted copyrights.  So therefore, it doesn't have

9    standing.

10                   And then maybe we should discuss what

11   consequences flow from that.

12                   I think one consequence that flows from that is

13   that the plaintiffs will be unable to assert a claim to

14   recover for damages associated with IOL sales and Catalys

15   sales, except for the period in which AMO Development sold

16   the Catalys machines.  I think that's one consequence.

17                   Is that right?

18           **MR. CHIN:**  That that would be the consequence

19   if J&J --

20           **THE COURT:**  I think.  I don't -- I'm asking.

21   I'm looking for -- you know, the lawyers on both sides

22   here generally give ground when they have to.  And so I

23   think that's a consequence, but it may not be.

24                   What do you think?

25           **MR. FRANK:**  I think that's uncontested at this

1    point.

2              THE COURT:  And that's what I would have

3    thought.  But do you want to, maybe, talk about that?

4              MR. CHIN:  If you could give us just one

5    minute?

6              THE COURT:  Sure.

7              MR. MORIN:  Your Honor, I'll need a little bit

8    of time to confer with my team on that.  Maybe we step to

9    other things to be efficient with Your Honor's time.

10             THE COURT:  That's fine.  Because what I think

11   what I'm going to do here is -- I mean, I'm going to make

12   some rulings that I can, based on the arguments of the

13   lawyers, and then -- well, and see where it leads us as

14   far as the pending motions.

15             Okay.  But that takes care of that one issue.

16             MR. MORIN:  I'd just rather not do that on the

17   fly.  Let me meet with the team, need to confer with the

18   team.

19             THE COURT:  That sounds good.  That's sounds

20   like a very good thing.

21             All right.  So maybe, let's do this.  Just give

22   me one second.

23             Oh, actually, just to add further -- although,

24   if I have to, I will write something.  It's dependent on

25   where this case goes, because I could always memorialize

1      in writing, you know, some of my thinking on this issue.

2              But just to further, I think the *SBK* case does

3      the best job of defining what a beneficial owner is.  And

4      I relied on that.  I relied on the *Wiley* case as well.

5      And I relied on the legislative history because

6      "beneficial owner" is not defined in the express language

7      of the statute.

8              And it's true, the beneficial -- or rather the

9      house report does cite, as an example, an author who had

10     legal ownership, assigned it away, but maintained an

11     economic interest in the exclusive right of the legal

12     ownership, which was in the form of royalties and license,

13     fees obtained from sales and licenses, rather.

14             And then I also relied on the many cases that

15     say a parent subsidiary relationship is insufficient to

16     establish a beneficial ownership.  All right.

17             Okay.  We could do next, I guess -- do you want

18     to talk about disgorgement next?  Do you think that would

19     be, kind of, what the -- let's think about what's most

20     consequential.

21             I can also start -- we can start going through

22     the other two summary judgment motions.  We have two and

23     three left, right?

24             **MR. LOCASCIO:**  So that was two.  I think you

25     largely did -- with the question of, what's the impact?  I

1    think you just addressed Alcon Motion 2.

2              **THE COURT:**  Yeah.  Let's move to three.

3              **MR. LOCASCIO:**  And three, which is -- whether

4    you think of this as Alcon Motion Summary Judgment 3 or

5    Alcon MIL-3, which is disgorgement, which is where, maybe,

6    the most briefing on this question, the legal question

7    happens, I'll take that and -- it feeds through both of

8    those.  And I also think maybe even their MIL-4.

9              **THE COURT:**  All right.  Give me one second.

10             All right.  What we can do on -- why don't we

11   start with -- let's go with Summary Judgment Number 3.

12             **MR. LOCASCIO:**  That's fine, Your Honor.

13             And the reason I, sort of, maybe blurred those

14   together is, ultimately, the question of laches

15   application, which is in Summary Judgment 3 -- part of the

16   battle over that is, its role as an equitable defense.

17   And then the question is:  Well, okay, is disgorgement in

18   and of itself equitable?  Which is the nature of that

19   motion.  But -- so I will take it as Summary Judgment

20   motion 3.

21             And at base, the battle here comes down to, is

22   laches available in copyright cases?

23             **THE COURT:**  Well, hold on.

24             So I'm going to walk you through this because,

25   as I say, the lawyers have been great in this case, but,

 1    boy, not with this motion.

 2                And, you know, I'm going to tell you a

 3    real-life story, so that you appreciate this, especially

 4    the Delaware lawyers.

 5                So about three hours into my work on this

 6    motion, I decided to call it quits.  Okay.  So let me give

 7    you some examples of why.

 8                What's the title of the motion?

 9         **MR. LOCASCIO:**  "Laches Bars J&J's Claim for

10    Disgorgement."

11                Well, let me --

12         **THE COURT:**  Hold up.  Hold up, hold up.  Sorry.

13                Forget what I was saying.  I'm stuck on

14    Number 2.  So we're not going to argue Number 2 right now?

15         **MR. LOCASCIO:**  I believe we just did argue --

16         **THE COURT:**  Well, we didn't argue it,

17    because -- not as far as I'm concerned.  We argued an

18    issue that purveyed some issues.

19                But you think we've dispensed with Number 2?

20         **MR. LOCASCIO:**  We could take a moment.  But

21    Mr. Frank was going to do both, because the gating

22    question is JJSV's ability to be a party, have standing,

23    ergo seek lost profits.

24         **THE COURT:**  Okay.

25         **MR. FRANK:**  You're right.  So in the briefing,

1  the idea that only AMO Development can recover its damages

2  was uncontested.  They then argued that JJSV is a

3  beneficial owner.

4          But you've decided that issue, so I don't think

5  they're -- I think Summary Judgment 2 has been decided in

6  our favor.

7          THE COURT:  Okay.  Well, then we'll put it

8  aside.  We'll go to Number 3 then.

9          MR. LOCASCIO:  I cannot -- we'll look at the

10 title, though.  So if I need to -- apologize, I'll do it

11 from the lectern.

12         THE COURT:  Let's go to Number 3.

13         MR. LOCASCIO:  Okay.

14         THE COURT:  Now, this one is whether laches

15 bars the claim for disgorgement.

16         MR. LOCASCIO:  Correct, Your Honor.

17         THE COURT:  Okay.

18         MR. LOCASCIO:  So I'd say the simplest way to

19 address this is:  J&J takes a position that, I think, is

20 flatly inconsistent with *Petrella*, which says that its

21 unavailable.  Laches is, full stop, unavailable.  And

22 that's not what *Petrella* speaks to at all.

23         *Petrella* -- you flagged this a little bit in

24 the intro.  *Petrella* says laches is not a threshold bar to

25 bringing a claim, under the Copyright Act, that was known

1      prior to the statute of limitations, which is set forth in

2      the statute.  Full stop.

3                   It then goes on to say that it's an equitable

4      remedy, and disgorgement is an equitable claim.  And

5      that -- as you noted, the sentence says something to the

6      effect of, delay is always available.  It's -- I think

7      it's strong as you said.  It is always available as a

8      defense to injunctive relief and allocation of -- or

9      determination of the infringer's profits and their

10     apportionment.  Okay.

11                  And so in the face of that, I don't think

12     there's any question laches doesn't -- or it remains in

13     existence.

14                  And really, the only other thing the folks on

15     the AMO side point to, is they have a cite -- and this

16     comes up in the MIL as well -- a pretty bullish statement

17     that says, this idea -- so I am going to blur the two,

18     unless you really tell me not to -- which is, the

19     questions of whether the -- it's a jury question or

20     whether it is a bench trial question, Your Honor.

21                  And why I flagged it as a threshold, really

22     comes back to the question of:  Is the relief of

23     disgorgement equitable?

24                  And so it is smack in the middle of Summary

25     Judgment Motion 3, because laches is available.  I don't

 1    think there's any credible argument that is not.

 2             Their arguments in response are things like,

 3    well, it's not summary judgment worthy because we allege

 4    willful infringement, for instance.

 5             And on that the case law there says, no, it

 6    actually has to not just be willfulness, but particularly

 7    egregious conduct that would prevent you from coming to

 8    the Court in equity.  I don't think the facts support that

 9    at all here.

10             Willful infringement by itself is insufficient

11    to preclude laches.  That is the *Crown* case from District

12    of Delaware.  It's Judge Thynge's decision.

13             And even then, they also point to -- they say,

14    vis-a-vis Alcon -- they say essentially the actions of one

15    party are imputed.

16             So they say, well, if we look at this issue,

17    everything done by the LenSx entities that have the former

18    employees, who took the code, now has to roll its way up

19    to Alcon Vision, because this disgorgement question is

20    around IOLs, as well.

21             And we talked about this a little bit last

22    week.

23             And their case -- they have to defenses:  One

24    is, we avoid summary judgment because it's willful, not

25    the law.

1        **THE COURT:**  Let me just hold you up, though.

2    Since I've held that -- if you're right that you win

3    Summary Judgment 2, are IOLs still in play for

4    disgorgement?

5        **MR. LOCASCIO:**  So this one, to your point of,

6    how does this impact the case, we'll come back to you on

7    it as well.

8        Our summary judgment motion, to be fully frank

9    on this -- Summary Judgment Motion 2 is only actual

10   damages, which would not be disgorgement, are only

11   available to AMO Development, because there's no loss to

12   JJSV.

13       Okay.  Because they don't have standing.  So

14   their losses don't count.

15       The disgorgement question of, what can you --

16   Motion 2 does not, on its face, seek to take disgorgement

17   off the table for IOLs.

18       The Stamm motion -- you heard last week about,

19   where's the causal link here?

20       When you take that together with the

21   determination you just found to be JJSV, I think there is

22   a very fair question right now of:  Okay, if JJSV has no

23   standing, can the entity that has not suffered any harm

24   from IOL sales disgorge on a copyright that doesn't cover

25   IOLs -- none of them do -- can they disgorge a -- in the

1    patent context convoyed sale downstream product?

2              I don't think there's any case anybody could

3    point to on the other side that allows for that.  We do

4    not, to be fair, a summary judgment that asks for that

5    request.

6              We say it should come out because it's not

7    causal  -- there's no causal nexus.  Stamm shouldn't be

8    able to say it.

9              **THE COURT:**  Right.

10             **MR. LOCASCIO:**  It's ultimately a question for

11   Your Honor, because this is an equitable remedy of

12   disgorgement.

13             And so why I hesitated a little bit when you

14   asked is, this shouldn't then roll into the jury with a

15   3-billion or 770-million-dollar IOL disgorgement claim,

16   when there's no plaintiff with standing on damages, lost

17   profits, reasonable royalty, that could ever get that

18   money.

19             So have I answered your question on that?

20             **THE COURT:**  Yes.  And actually, you touched on

21   what I was going to hit on, like -- again, you should go

22   look at the title of your motion and then look at the --

23   well, not this minute.  But look at the relief you asked

24   for in your order.

25             **MR. LOCASCIO:**  Okay.

1    **THE COURT:**  All right.  But -- and that's

2    partly why I'm confused.  And -- but I hear you, I think.

3    Okay.  Let's -- sticking with Number 3, what

4    you are asking for in Summary Judgment Number 3 is a

5    declaration that laches bars plaintiffs from disgorging

6    your profits.

7    **MR. LOCASCIO:**  Correct.

8    **THE COURT:**  That's exactly what you're asking

9    for.  Okay.

10    **MR. LOCASCIO:**  Because of the delay, and they

11    knew.  And they've known for, whatever the math comes out

12    to be, since 2014 on this.

13    And the only thing they, then, point to is:

14    Well, some of these FDA documents we didn't know about

15    until after we sued you.

16    And we point the Court to cases -- and I can

17    give them for Your Honor -- was, you knew enough to bring

18    a claim.

19    It's sort of the same argument they made

20    originally, Your Honor, which was, "We didn't know enough.

21    We knew there was copying."  They stipulated they knew

22    there was copying.  They had our product.  They tore it

23    apart.  They looked at the code the best they could, and

24    they knew they had a claim.

25    And if they had brought the claim then -- this

1    is akin -- it's a little bit -- it's a little different

2    from mitigation.

3              But if they brought the claim then -- well,

4    guess what? -- in the seven months after they brought the

5    claim in 2020, they knew all about the FDA issues.

6              And if they brought the claim in 2014, well,

7    they would have found out about it in 2015.

8              It's the same laches issue permeates all of the

9    copyrights, Your Honor.

10             **THE COURT:**  Right.  All right.

11             But just because you can bring to bear at the

12   remedial stage laches, doesn't mean you get to preclude a

13   claim of disgorgement, right?  You agree with that?

14             **MR. LOCASCIO:**  I agree with you that assertion

15   of laches, in and of itself, does not inherently grant you

16   summary judgment.

17             But on the facts here, we -- if there was a

18   dispute over what they knew, okay, well, then they get to

19   bring the claim, we'd ultimately, in a bench trial in

20   front of Your Honor on disgorgement and laches, hash that

21   out.

22             Our view is:  We don't need to do that because

23   it's an undisputed fact that they knew there was copying

24   in 2014.  It's an undisputed fact that they knew the

25   product was FDA approved.  Obviously, it was out in the

1    marketplace, they got one.

2            And we know that within seven months of them

3    bringing a claim, six years late, they learned about the

4    remainder of their copyrights.

5            They've actually withdrawn -- and I don't know

6    if Your Honor's aware on the statute of limitations issue,

7    there were three classes of copyrights.  There was

8    software code; there was the operator's manual, and there

9    were the FDA documents.  And Your Honor said two of those

10   are disputed fact questions, whether the statute applies.

11           They've since ceded one of those because the

12   undisputed fact, it just wasn't briefed, Your Honor, is,

13   they had the operator's manual.

14           **THE COURT:**  Okay.  So do you think -- where

15   your argument falls, as I understand it is -- I mentioned

16   at the outset today, there's three rules, right, that come

17   out of Petrella.

18           The first rule is that you can never invoke

19   laches to preclude adjudication of a damages claim within

20   the statute of limitations.

21           You agree with that?

22           **MR. LOCASCIO:**  As a threshold bar to pursue the

23   claim, yes.

24           **THE COURT:**  Can never do it.

25           All right.  The second rule is -- and this only

 1      applies to equitable relief -- "in extraordinary

 2      circumstances, laches may bar, at the very threshold, the

 3      particular relief requested."

 4              That's what you're trying to win here; is that

 5      right?

 6              **MR. LOCASCIO:**  I would say no because I think

 7      that is a gating question.

 8              I view that as well as -- what Petrella says

 9      there is -- okay.  The case was dismissed and thrown out

10      because of the laches question, originally.

11              And what Petrella says is, okay, we're not

12      going to say it's like a statute of limitations.  It's

13      something can be dealt with right at the outset.

14              But they say, in a particularly egregious case,

15      where if I knew about it for six years, and then I tried

16      to pull somebody off the market, or here in the case

17      that's cited there, like destroy buildings that are midway

18      through construction, that could be even a threshold

19      gating question, barring the claim in its entirety.

20              That's not we are asking for here.  We're

21      saying --

22              **THE COURT:**  No.  It says, "Laches may bar, at

23      the very threshold, the particular relief requested by the

24      plaintiff."

25              It doesn't say the claim.  It says -- and it's

1    referred -- it literally says, quote, "As to equitable

2    relief in extraordinary circumstances, laches may bar, at

3    the very threshold, the particular relief requested by the

4    plaintiff," unquote.

5            That's the second rule of Petrella.

6            The third rule is that, "A plaintiff's delay

7    can always be brought to bear at the remedial stage in

8    determining appropriate injunctive relief and in assessing

9    the profits of the infringer attributable to the

10   infringement."

11           So in other words -- the point would be is, you

12   absolutely get to bring in laches to mitigate or to

13   determine the amount of profits for disgorgement, for

14   instance.  That, I think is clear.

15           But in order for you to bar them from even

16   seeking the relief, which is what you're seeking to do

17   here, you've got to fit within these extraordinary

18   circumstances, it seems to me.

19           **MR. LOCASCIO:**  So I don't believe that Petrella

20   stands for the proposition that summary judgment is

21   unavailable for laches.  Which, I think, that's where we

22   disagree on the second one, while I stopped it as a

23   threshold question on the extraordinary relief.  Okay.

24           I think it cannot --

25           **THE COURT:**  So you think "very threshold" means

1    what?  Motion to dismiss?

2        **MR. LOCASCIO:**  I think it means, like the

3    statute of limitations, like Petrella before the Supreme

4    Court weighed in, treated laches.

5        Meaning, we don't care what the facts are here,

6    but we know a fact, which is, it's -- it predates in this

7    case --

8        **THE COURT:**  All right.  Here's what I'm going

9    to do.  And partly it's time, but I thought a lot about

10   this.  I disagree.

11       **MR. LOCASCIO:**  Okay.  I understand.

12       **THE COURT:**  All right.  I think those are three

13   very, very clear rules.

14       So if you're going to win, you're going to have

15   to show that there are such extraordinary circumstances

16   here that, as a matter of law, laches bars, at the

17   threshold, disgorgement.

18       **MR. LOCASCIO:**  Okay.

19       **THE COURT:**  Now, there's two cases cited in

20   Petrella that are discussed, right?

21       I don't think -- I don't see how you meet

22   extraordinary circumstances given the Supreme Court's

23   discussion about those two cases in Petrella.

24       So give it your best shot.

25       **MR. LOCASCIO:**  What I would say is, with

1    respect to laches on this motion on disgorgement, I would

2    say there's another aspect of their equitable relief

3    they're seeking, that's to take our product off the

4    market.  I'd say that does fall within --

5             **THE COURT:**  I thought -- wait.  Do we have to

6    argue that today?

7             **MR. LOCASCIO:**  We don't have to argue that

8    today.

9             **THE COURT:**  That's going to be down the road,

10   right?

11            **MR. LOCASCIO:**  It's down the road.

12            **THE COURT:**  Okay.  Then don't get there.

13            **MR. LOCASCIO:**  Okay.

14            **THE COURT:**  Let's just stick with disgorgement.

15            **MR. LOCASCIO:**  But on the question of

16   disgorgement, I'd say their desire to seek, as of today at

17   least, $3 billion in disgorgement for IOLs, having never

18   said anything about it to us, when they knew in 2014, is

19   extraordinary circumstances.

20            They have watched this market unfold, both for

21   Catalys, okay, and LenSx to the lead.  And now they have

22   watched us sell IOLs that have nothing to do with the

23   product it's tied to, they say.

24            **THE COURT:**  Is your argument that it's

25   extraordinary because it's so much money?

1          **MR. LOCASCIO:**  I would say it's not the

2     dollar -- not the quantum, Your Honor.  But the idea that

3     their -- their goal here is to take all of the profits

4     away from a competitor, having sat silently for

5     eight years.

6          And the economic level, you could say the --

7          **THE COURT:**  When you say "all the profits," I

8     thought you guys told me last hearing that you actually

9     make $13 billion a year in IOL sales, you don't make

10    three.

11         **MR. LOCASCIO:**  These are all revenue numbers.

12    First of all, their numbers they're pointing to are

13    because they don't count costs in there.  Recall, there's

14    still a battle over that.

15         **THE COURT:**  Okay.

16         **MR. LOCASCIO:**  But their -- yes, they have

17    found it.  Not the biggest possible number to ask for.

18         But I would say the extraordinary remedy sought

19    in the cases discussed in Petrella, which is the

20    architecture case, the economic impact of that -- could it

21    be in excess of $3 billion?  I'd say it probably wasn't.

22         But at the end of day, their request here is

23    extraordinary, Your Honor, and so we think it qualifies.

24         Now -- but to be fair, we have a disagreement

25    as to Rule 2 of Petrella, which is, I think --

1          **THE COURT:**  No, we don't have to repeat the

2     argument.

3          **MR. LOCASCIO:**  I know.

4          **THE COURT:**  We only have limited time.  So

5     you've made it.  I don't agree with you.

6          **MR. LOCASCIO:**  I understand that.

7          **THE COURT:**  You can make it later on.  Okay.

8          **MR. LOCASCIO:**  And then the other aspects that

9     they're arguing are that it's not available, I don't think

10    we need to spend any time on that because I think

11    Your Honor agrees with me that laches is available and

12    that the disgorgement relief is equitable.

13         So it would only then be a question,

14    Your Honor.  I think the only question that separates my

15    summary judgment motion and where Your Honor is:  Is,

16    okay, does this issue, these equitable issues of

17    disgorgement and laches and what they knew, have to, then,

18    be heard evidentiarily by Your Honor?

19         Because if it's available --

20         **THE COURT:**  Now you're getting into the jury

21    question.  Is that where you're going?

22         **MR. LOCASCIO:**  I think that's the only

23    difference between whether summary judgment is applicable

24    here in the face of what are undisputed facts.

25         Because Your Honor's rules, under Petrella,

1  would be --

2          **THE COURT:**  No, I disagree with you because --

3  here's why.  Because I'm going to deny this.

4          I mean, I'm going to deny the motion because

5  you haven't, right now, laid out extraordinary

6  circumstances in my mind.  I'm not saying you couldn't,

7  but you didn't do it.

8          The two cases discussed in the Petrella

9  decision, to give a preview, essentially, of what the

10  Supreme Court deemed to be extraordinary circumstances,

11  are the *Chirco* case from the Sixth Circuit and the *New Era*

12  *Publications* case from the Second Circuit.

13          And the Court spend most of its time discussing

14  *Chirco*.  And in the *Chirco* case you had a situation where

15  the defendants were accused of using, without permission,

16  a copyright to plan and develop a housing development.

17          Basically, the copyright had to do with

18  architectural design.  And after 168 homes were built and

19  109 were occupied, it was then that a copyright

20  infringement case was alleged.

21          So you had an extraordinary situation where you

22  had homes that had been built, third parties who were

23  completely innocent who were residing in the homes, and

24  there was a request to destroy the homes.  And the Supreme

25  Court said that's extraordinary.

1          The second case was the *New Era Publications*

2    case.  And that was where –– and it implicated First

3    Amendment rights –– a book was published.  And it wasn't

4    until two years after the book had been published that a

5    restraining order was sought by the plaintiff based on a

6    copyright claim.  And sought, as injunctive relief, total

7    destruction of all the books that were out there.  Which

8    again, implicates third parties, who bought the books, had

9    no idea.

10         Now, you compare that to what was before the

11   Court in *Petrella*, which was much more similar to here, a

12   disgorgement of profits remedy.  And what the Court said,

13   that the equitable relief that *Petrella* was seeking, for

14   example, disgorgement of unjust gains and an injunction

15   against future infringement, would not result in total

16   destruction of the film that was at issue, the Raging Bull

17   film, or anything close to it.  That was the language of

18   the Supreme Court.

19         So you know, in other words, the *Raging Bull*

20   case before it in *Petrella* did not involve a request to

21   destroy the film itself or, to use the Supreme Court's

22   words, "anything close to it," unquote.

23         And then the Court went on and it said, quote,

24   "Allowing *Petrella's* suit to go forward would put at risk

25   only a fraction of the income MGM has earned during that

1    period, and will work no unjust hardship on innocent third

2    parties, such as consumers who have purchased copies of

3    the book."

4              And you haven't alleged here anything to

5    explain the impact of the income you lost.  You've thrown

6    a number up there, 3.1 billion, but I don't know if that's

7    a fraction of the income that the defendants made.

8              I don't know the real hardship that the

9    defendants would suffer.  I don't know the effect on third

10   parties.

11             All you've alleged is the -- this big, big

12   number.  And it is a big number.  But that's not enough.

13             And so at the summary judgment stage, I'm going

14   to deny the summary judgment motion.

15             But, under the third rule of *Petrella*, there's

16   no question that you are going to get the opportunity to

17   present in the -- on the issue of disgorgement, the delay

18   that the plaintiffs caused or took in bringing this suit.

19             All right.  So the judgment is denied.

20             And if I have to, depending on how the case

21   unfolds, I may write something on this, but I think I've

22   articulated enough to explain why I'm denying the motion.

23             **MR. LOCASCIO:**  Okay.  I think it's another

24   threshold question that is tied to this, which is why I

25   tied them together, which is, ultimately, two motions in

1    limine raise the question of:  Who hears the evidence on

2    disgorgement?

3              THE COURT:  Right.  I agree with that, and

4    also, what evidence they hear.  We haven't decided that

5    with Stamm.

6              And that's why I'm going through the order I

7    am, because I think some of these may get resolved.

8              All right.  Let's quickly then -- let's go next

9    to disgorgement.  Is it a jury question?  How should it be

10   presented?

11             MR. LOCASCIO:  It's our Motion in Limine 3.

12             THE COURT:  Right.  All right.  Go ahead.

13             MR. LOCASCIO:  Thank you.

14             There's no question it's equitable under

15   *Petrella*.  I won't revisit that.

16             THE COURT:  It's not.  That -- look, the

17   question is:  Do you have any cases that say disgorgement

18   needs to be presented to a jury -- or sorry, can only be

19   presented to a judge?  I take that back.

20             In other words, that where a Court says

21   point-blank disgorgement must be presented to a judge and

22   only a judge.

23             MR. LOCASCIO:  So I want to answer your

24   question, which is yes, but there's two prongs to that.

25             The first is, I think, all of the cases, except

1    perhaps the one case out of Eddy, Texas that was -- that

2    my colleague cited, say it's a question for the Court, and

3    you can send it as an advisory verdict.

4            So the law is, it is a question for Your Honor

5    to decide with findings at some point either in the --

6            **THE COURT:**  What's the best case you have that

7    point-blank says that disgorgement must be decided by a

8    judge?

9            **MR. LOCASCIO:**  Okay.  I want to give you -- I'm

10   going to give you three.

11           **THE COURT:**  Okay.

12           **MR. LOCASCIO:**  Okay?  First one is, *Fair Isaac,*

13   District of Minnesota, 408 F.Supp.3d 1019.

14           **THE COURT:**  Right.

15           **MR. LOCASCIO:**  And the reason I started with

16   that, even though it is District of Minnesota is, it's a

17   copyright case that then cites to the Federal Circuit,

18   *TAOS* 895 F.3d 1304, which says there is no Seventh

19   Amendment right to disgorgement of profits.  It walks

20   through -- it's a trade secret case, and it walks through

21   the patent, trademark and copyright cases to say, for

22   disgorgement, where it is not a proxy -- and there's no

23   dispute it's not a proxy here -- it's not a jury question,

24   it's a question for the Court.

25           And then third is actually a case that declines

1    to give a -- even have an advisory verdict on this, and

2    it's *Assessment Technologies* -- is also in our briefing --

3    2022 Westlaw 588889 on this.  And --

4              **THE COURT:**  Which court is that?

5              **MR. LOCASCIO:**  District of Kansas.

6              **THE COURT:**  That's Judge Robinson.  Okay.  Yes.

7              **MR. LOCASCIO:**  And so what's happened here is,

8    you have *Petrella* which says equitable, and then in the

9    wake of *Petrella*, you say:  What are the other cases that

10   come after that?

11             And *TAOS* is one from the Federal Circuit that

12   looks at this, and then now district courts have treated

13   it.

14             It has not gone back up in any way for a Court

15   of Appeals to, specifically in a copyright context, look

16   at this.

17             But the cases on the other side -- and their

18   argument is -- they start with *Beacon* and *Dairy Queen*

19   antitrust case, trademark case from the late '50s, early

20   '60s, that just say "if you seek accounting," that doesn't

21   negate the jury, right, on the underlying claim.  Okay,

22   that's fine.

23             But on the issue of:  What about the

24   disgorgement remedy?  The only case they really can point

25   to then is this Kraft case -- or *Krofft* case, the

1    *Sid Krofft* case from the Nine Circuit, which says in a

2    copyright case, they're going to treat disgorgement as

3    a -- not a jury issue.

4            Except, if you look at *TAOS* and *Fair Isaac,*

5    both of them walk through the history and take issue with

6    that, because that case is based on a decision that wasn't

7    actually disgorgement, and the *Krofft* case actually wasn't

8    seeking disgorgement in the same way they are here either.

9            **THE COURT:**  Okay.

10           **MR. LOCASCIO:**  So those are the best cases on

11   that.

12           And then the other piece of this MIL as to why

13   it's not adversarial -- not okay to send in advisory

14   verdict is what you identified, it's *Uniloc*.  Federal

15   Circuit saying, if you throw out a big number, sort of

16   level set everyone to a smaller number.

17           Which is why, if you sought billions of dollars

18   in disgorgement -- as they do here -- but you had

19   $100 million, $200 million, $50 million in actual damages,

20   okay, the Court can decide disgorgement.  You shouldn't

21   have the jury hearing all that, because then, guess what?

22   The goal -- I mean, everybody knows the plan here.

23           The plan is, have the jury say, well, somewhere

24   around the middle there seems like a reasonable number

25   with two big companies.  And that's why it's prejudicial.

```
 1                    THE COURT:  Okay.  Thank you.

 2                    MR. LOCASCIO:  Thank you.

 3                    MR. MORIN:  May I respond, Your Honor?

 4                    THE COURT:  No.  Just joking.

 5                    MR. MORIN:  My mom taught me to be polite.

 6      Sorry.

 7                    THE COURT:  Of course you may.

 8                    MR. MORIN:  Okay.  I have a lot to say on the

 9      merits, but why don't I start with where my friend

10      finished.

11                    His lead case was Fair Isaac.  He said it's his

12      best case, Number 1.  And he says we shouldn't present

13      disgorgement to the jury because they'll hear a big

14      number, and that will put them in a position where they're

15      desensitized.

16                    The Fair Isaac case last week, just last

17      week -- and my friend referred to it.  May I pass up last

18      week's decision?  There was a subsequent decision that my

19      friend referred to.

20                    THE COURT:  Yeah, sure.

21                    MR. MORIN:  The issue of bifurcation came up,

22      whether the judge should hear it separately.

23                    Oh, I'm sorry.  May I?

24                    THE COURT:  Yeah, please.

25                    MR. MORIN:  Whether the judge should hear it
```

 1    separately.  The *Fair Isaac* case involves FICO, you know,

 2    the credit scoring agency.  The disgorgement revenue

 3    number was $45 billion and the damages requested were 27

 4    or 34 million.  I have it here.

 5              And the Court said, forget desensitization,

 6    there's overlapping issues, witnesses, all that type of

 7    thing, and jury instructions and the rest of it can deal

 8    with it.

 9              And it distinguished *Uniloc*, actually.  Because

10    whatever you say is appropriate to send on disgorgement,

11    Your Honor, is legally fair.

12              *Uniloc*, the point was, the entire market value

13    rule doesn't make the $19 billion against Microsoft

14    relevant for anything.

15              They made the point here, the same judge on

16    their Number 1 case says, it's no problem hearing

17    $45 billion on the revenue number even if your damages

18    number is less on the advisory verdict.

19              But let me get to the main question presented.

20              I'll take a moment if Your Honor wants to

21    glance at that or has some questions about that.

22              **THE COURT:**  Just give me one second.  Yeah,

23    please.

24              **MR. MORIN:**  That judge, but the way, addresses

25    *Uniloc* and explains why it's okay in that decision.

1          *Uniloc* discussion is on Page 13, Your Honor.  I

2    didn't mean to interrupt you.

3          **THE COURT:**  No, no.  That's good.  Thanks.

4          All right.  Just from skimming it right away,

5    the judge is, I think, going to say that the $45 billion

6    is relevant to the royalty, to the damages.  So it's going

7    to come in.

8          **MR. MORIN:**  What he's saying -- and part of

9    that is that there's overlapping evidence.  Here, for

10   example, in the reasonable royalty --

11         **THE COURT:**  Wait.  Hold on.  Am I right?

12   Because I'm skimming this.  Is that right?

13         Is that what he's saying, that the 45-billion

14   figure is going to be relevant to the damages request,

15   which is going to be made before the jury?

16         **MR. MORIN:**  Yes, with a qualification.

17         **THE COURT:**  All right.

18         **MR. MORIN:**  If I may.

19         **THE COURT:**  Yeah, please.

20         **MR. MORIN:**  The answer is yes.  I'll answer

21   your question yes.

22         It's a little bit of technicality.  What they

23   agreed would go before the jury is $13 billion.  And he

24   said, "^13, 45, what's the difference at the end of the

25   day?  A little bit."

1              But, Your Honor, my point on that is, in the

2     reasonable royalty analysis, in the same exact way, our

3     expert will be talking about the revenues in the royalty

4     context.

5              **THE COURT:**  So I'm going to get to that because

6     that's what -- so that, for me, is like a threshold issue.

7     Is, I think the defendant has to admit that if

8     disgorgement is a proxy, or if the total revenues are a

9     proxy for damages or involved in the damages calculation,

10    it's going to get in front of the jury anyway.

11             But what your friend did say was, pretty early

12    on in his argument was that, we don't have that situation

13    here.

14             He said it's not a -- the words he used was,

15    it's not a proxy for damages.  That doesn't mean it's not

16    going to cited in your expert damages opinion.

17             So before you do anything, why don't you tell

18    me -- we talked about this in the beginning -- what are

19    the -- what's a three-headed monster?

20             And if at the end of day this gross revenue

21    figure is coming in any way, let me know.

22             **MR. MORIN:**  Yeah.  So the three-headed

23    monster -- still hoping it has three heads.

24             The three-headed monster is disgorgement, which

25    is the -- obviously, the infringer's profits, is one

1    bucket.  And actual damages has two components.  So

2    there's three heads.

3            The lost profits component that we've talked

4    about a little bit, and the reasonable royalty component

5    that we haven't talked about today, and that they haven't

6    moved on.

7            In the reasonable royalty, as in almost all

8    reasonable royalty cases, she looks at the Book of Wisdom

9    and one of the factors in what the royalty would have been

10   is the revenues that they've achieved from the sales, the

11   infringer's profits, basically.

12           Paragraph 277 on, in her opening expert report,

13   talk about that.  They have haven't objected.  They

14   haven't moved to strike, anything like that.

15           **THE COURT:**  So is the number coming in?

16           **MR. MORIN:**  Yeah, the number is coming in.

17           **THE COURT:**  All right.  Before we have any

18   further argument, then --

19           **MR. LOCASCIO:**  I couldn't disagree more

20   strongly.  The reasonable royalty is not on IOLs.  This

21   IOL number is not part of the reasonable royalty

22   calculation.

23           **THE COURT:**  All right.  So why don't you show

24   me the report, because this is like -- for you guys to be

25   disagreeing, I should be --

1          **MR. MORIN:**  Right.  And I think I can –– I

2    think I can –– the IOL number is not in there.

3          When we talk about the overall sales of LenSx

4    and all the other things for disgorgement, those numbers

5    are in there.

6          I want to be very, very clear on that.  That's

7    true.

8          **THE COURT:**  Wait.  Those numbers are or are not

9    in there?

10          **MR. MORIN:**  Are in there.

11          The LenSx sales numbers, Paragraph 277 of her

12    opening report, those numbers are on there.  She does not

13    quantify the IOL numbers in the royalty.

14          **THE COURT:**  Okay.  All right.  This is all

15    about IOL numbers.

16          **MR. MORIN:**  That part, that's true.  And he's

17    accurate on that, just to be clear.

18          **THE COURT:**  Okay.

19          **MR. MORIN:**  But the other thing that the

20    *Fair Isaac* case does ––

21          **THE COURT:**  But wait ––

22          **MR. MORIN:**  Yeah.  Sure.

23          **THE COURT:**  –– if I ruled that JJSV can't

24    recover, then IOL –– are IOL sales out?  I mean, let's ––

25    so why –– maybe we better resolve that.  Because to me,

1    they would be out if JJSV isn't part of the...

2              **MR. MORIN:**  No, Your Honor.  And that's where I

3    hope to clarify and be helpful.

4              **THE COURT:**  All right.  Why don't you do that

5    first, address that.

6              **MR. MORIN:**  Okay.  So disgorgement and actual

7    damages are obviously two different things.

8              **THE COURT:**  Right.

9              **MR. MORIN:**  On the lost profits side of the

10   equation, you've ruled that JJSV can't recover its

11   profits.  It can't say, "I've been harmed by this amount."

12             Disgorgement is a creature of copyright law in

13   part because oftentimes plaintiffs haven't been harmed,

14   and therefore -- even JJSV hasn't been -- is not in the

15   case, and saying maybe AMO Development can't recover all

16   of JJSV's.

17             It's not unusual.  *Petrella*, all these other

18   cases -- someone write a song, someone does something and

19   it gets stolen -- disgorgement is there for the

20   circumstance where you can't prove your actual damages or

21   where your actual damages won't do the trick.

22             It's there for the very reason that it may be

23   the case that even though JJSV is not in the case and

24   can't recover its lost profits, that if someone has stolen

25   code, as we contend -- and it's not at dispute right

```
 1   now --
 2               THE COURT:  Right.
 3               MR. MORIN:  -- and is profited by its theft, we
 4   don't have to prove disgorgement with any harm to
 5   ourselves.
 6               So JJSV coming out of the case and not being
 7   able to claim its damages -- which I think we agreed on at
 8   the beginning of argument -- does not affect the
 9   disgorgement issue.
10               It's a totally different issue of what they
11   made --
12               THE COURT:  Okay.
13               MR. MORIN:  -- and what they have to disgorge.
14   Have I clarified that?  Explained that well enough?
15               THE COURT:  You have.
16               All right.  In other words, just the way I put
17   it in my own words is, your point's going to be, hey,
18   disgorgement is unjust enrichment.  It could include IOL
19   sales, regardless of whether JJSV is a party or whether
20   it's got a beneficial ownership, period.
21               MR. MORIN:  The question is going to be:  How
22   much have they benefited from their infringement, right?
23   And then there may be an apportionment and there may be
24   money taken out, but it's unjust enrichment, kind of
25   basic, idea.
```

```
 1              THE COURT:  All right.  Hold on.

 2              MR. MORIN:  Yeah.

 3              THE COURT:  Does somebody have a copy of

 4    504(b)?

 5              MR. MORIN:  Sure.  I can pass one up if it's

 6    helpful, Your Honor.  Would you like a copy?

 7              THE COURT:  Yeah, please.  Oh, no.  I have

 8    mine.

 9              Okay.  I'm with you.  Go ahead.

10              MR. MORIN:  Okay.  So -- and by the way, it

11    makes sense in copyright cases, because lots of the time

12    someone gets something stolen.  You know, I write a song.

13    It's hard to imagine.  I can't really show I would have

14    done anything with the song.

15              Big Pimpin' is the example, right?  The

16    Jay-Z --

17              THE COURT:  I know.

18              MR. MORIN:  There is a famous Jay-Z situation.

19    But I write a song, Mike Morin writes a terrible song and

20    Kirkland goes out and uses it in an advertisement.  I

21    can't prove that I was actually damaged by that.  I am

22    entitled to disgorge the profits.

23              And I'll only make one little side comment.

24    There's a lot of victim blaming going on here.  They stole

25    our code and put it in their products.  I mean, at the end
```

1   of day, we're entitled to relief for their theft and what

2   we think is willful theft.  And that's what it's all

3   about.

4          **THE COURT:**  All right.  I'm with you.  So then

5   the bottom line is, I got to address this jury question no

6   matter what.

7          **MR. MORIN:**  That's correct.

8          **THE COURT:**  All right.

9          **MR. MORIN:**  And so the two principles come out

10  of that.  The first is, even their lead case -- and that's

11  what I was going to get to.

12         **THE COURT:**  Oh, yeah.  The Minnesota one,

13  right?  Okay.

14         **MR. MORIN:**  The Minnesota case.  Even in that

15  lead case, there were two comments.

16         The first is that the amount of money is not an

17  excuse.  *Uniloc* was a situation.  You're going to lay in

18  front of the jury whatever you think is relevant to the

19  damages of the claim.

20         The *Uniloc* decision basically said that

21  $19 billion wasn't relevant to anything in the case.  And

22  that's what it says on Page 13.

23         But the more important point, I think, is on

24  Pages 16 to 17, Your Honor --

25         **THE COURT:**  Yeah.

1          **MR. MORIN:**  -- where there's basically an

2   acknowledgement here -- and this was the point I led on --

3   which is, whether you call it advisory or whether you just

4   send it to the jury, even their best case says, I don't

5   know what the Eight Circuit is going to do with this

6   thing.

7          And so, Your Honor, I will tell you -- and I'm

8   going to make a good pitch, I think, if you'll let me, as

9   to why this is a jury issue.  And I think it's been

10  decided that way.  I'm going to make the pitch to you.

11         But one thing is clear, and our friends agree,

12  this hasn't been addressed by the -- the Federal Circuit

13  would be applying Third Circuit law directly.

14         And if you don't have a record of this thing,

15  you've got a new trial if someone upstairs disagrees with

16  you, as opposed to taking a record of it.

17         So you don't actually have to decide the issue

18  now.  If you decide it for us, it would be a pure jury

19  issue.  If you decide against us, it's an advisory.

20         The Sysco Court, Judge Freeman, she said, "I'll

21  send it to the jury and I'll sort it out later, basically,

22  whether it's advisory or a permanent."

23         So let me get to a quick response, if I may,

24  because I think it's an important and interesting issue on

25  whether it goes to the judge or the jury, Your Honor, if I

1    may.

2            **THE COURT:**  Uh-huh.

3            **MR. MORIN:**  So Your Honor is familiar that

4    there's two ways, of course, that a case can end up in

5    front of the jury.  One is a statutory and one is

6    constitutional.

7            And I would tell you that I think

8    Judge Payne -- familiar with Judge Payne in the Eastern

9    District of Texas -- he wrote a *Hoffman* decision a year

10   and a half ago.  And I'm not citing it for the weight of

11   the Eastern District; although, I think he's a fine judge

12   who we both appear in front of a lot.

13           He goes through really thorough, really good

14   analysis.  And his point is the same point that *Feltner*

15   makes from the Supreme Court, is:  If you have a statute

16   that's possible to be interpreted to avoid a

17   constitutional issue, the question of constitutional

18   voidance, you should do it.

19           And you go to 504(b).  And what he did is, he

20   went to 504(b) and he says, "Unlike 504" -- and I don't

21   know if you only have 504(b) or if you have the others.

22   But he says, "Unlike in the other provisions, it does not

23   use the word 'Court' and who is going to decide this.  The

24   word 'Court' is absent, unlike in other provisions."

25           And then he goes on to look at the *Feltner*

1    decision, which is a Supreme Court case, Your Honor.  Are

2    you familiar with *Feltner*, if I may.

3        So the *Feltner* decision is looking at 504(c),

4    and it says, "We don't see the word 'Court' here" --

5    right? -- "We have the word 'Court' here," I'm sorry.  In

6    504(c), it says, "the Court shall decide."

7        And the Supreme Court, the Supreme Court says

8    in a recent decision, when they look at 504(b), which is

9    our provision, it says, "The Copyright Act does not use

10   the term 'Court' in the subsection addressing words of

11   actual damages and profits, see 504(b), which generally

12   are thought to constitute legal relief."

13       This is the Supreme Court talking about 504(b).

14       And the whole point with Judge Payne is, he

15   says, I respect the judge in Minnesota, and there's all

16   sorts of ways to read this.  But if there's a way to read

17   it to avoid the constitutional issue, he says, we do it.

18       And he also says that it's an odd

19   combination -- it would be an odd combination to have a

20   legal remedy of damages in the same provision side by side

21   with, right -- connected with the protean relief of --

22   it's what the Supreme Court has called it -- of

23   disgorgement and say that the jury is not deciding that

24   either.

25       And then his third rationale -- and I'd implore

1    Your Honor to read the *Hoffman* case because it -- the

2    *Hoffman* case -- is that he cites ten cases where the

3    Courts have sent this issue to the jury.  And he said

4    we're upsetting settled law here, where this has been

5    happening, including cases that have analyzed it.  And my

6    friend identified one of those, the *Sid and Marty Krofft*

7    case.

8             So he says we can deal with it on a statutory

9    basis.  And then he says -- on the constitutional

10   question, he says -- Judge Payne says, "I think it also --

11   you have a constitutional right, but I don't have to get

12   there."

13            Now, if we're going to go to the constitutional

14   question, if Your Honor is going to consider it, we have

15   the advantage.  He talked about a Federal Circuit case

16   that dealt with trade secrets.  Which, by the way, trade

17   secrets are a little bit different.  They have their

18   principles and equity and their derivation in equity.

19            But he talked about the Federal Circuit case.

20            I'm sorry, I'm going too fast, aren't I?

21            He talked about the Federal Circuit case.

22            If you look at another Federal Circuit case

23   in Re Technologies, looked back at the *Root versus Railway*

24   Supreme Court case and says, it's an issue for the jury.

25   It's an issue of law.  So the Federal Circuit had gone

1    both ways.

2            You're fortunate enough to be sitting in the

3    Third Circuit, which has answered this.  The *Kennedy* case

4    answered this question --

5            **THE COURT:**  Is it the *Lakso* case?

6            **MR. MORIN:**  Yeah, the *Lakso* case.

7            **THE COURT:**  I don't agree with you.  It didn't

8    answer that question.

9            **MR. MORIN:**  Well, okay.  Let me say why it's

10   instructive and why I think it's answered it.  And then,

11   of course, you're the judge, you can disagree.

12           In that case -- it was a patent case.  And in

13   that case, it clearly says at the beginning they were

14   asking for both damages and accounting for profits, right?

15           And then the Court did the same thing that the

16   Supreme Court did in the *Dairy Queen* case and says, even

17   if you can kind of call it equitable in some way, that

18   doesn't mean you don't go to the jury on the issue.

19           And it says, "No distinction could be drawn

20   that would justify recognition of the right to jury trial

21   for damages and denial in a claim for profits on the

22   theory that damages are recoverable in an action at law,

23   whereas profits have their origin in equitable

24   principles."

25           And they go on to conclude, just like

1    Justice Harlan in the *Dairy Queen* case, that the jury is

2    perfectly capable of dealing with these issues on

3    accounting and they should go to the jury.

4         And the same thing in the *Dairy Queen* case and

5    Justice Harlan's --

6         **THE COURT:**  Because time's at issue.

7         **MR. MORIN:**  Yeah.

8         **THE COURT:**  Look, I've read *Lakso*; I've read

9    *Dairy Queen*.  I don't think they stand for that principle.

10   I think what they stand for, the principle is that there

11   was an old rule, that if you had legal and equitable

12   claims --

13        **MR. MORIN:**  Right.

14        **THE COURT:**  -- and that if the equitable claims

15   were predominant, then you -- under the old rule, you lost

16   the right to a trial to a jury.

17        **MR. MORIN:**  Right.

18        **THE COURT:**  And what Justice Black comes along

19   in *Dairy Queen*, he says, no, no, no.  If you've got some

20   legal claim there, even if the equitable claim

21   predominates, you still have your right to trial by jury.

22        And *Lakso* is just recognizing that and

23   explaining it.  And so that's why the issue in *Lakso* is

24   whether or not the lability claim, the infringement, which

25   is indisputably a right to trial by jury was lost by the

1    presence of an equitable claims.

2             Let's just move on because I've got limited

3    time.

4             **MR. MORIN:**  May I have one sentence on that?

5             **THE COURT:**  No.  Come on.

6             **MR. MORIN:**  Okay.

7             Anyway, so in any even, Wright & Miller, and

8    the other treatises credited for that issue.

9             And Your Honor has read all these cases, so I

10   know you have limited time.  I have said my peace.  I

11   would --

12            **THE COURT:**  All right.  Here's what I'm going

13   to do.  I'm going to think about this one for some more.

14   Let's go through, quickly, the other motions in limine I

15   think we can dispense with.

16            Actually, do you want to say -- it's your

17   reply, so you can go ahead.

18            **MR. LOCASCIO:**  I have two points I want to say

19   to that, Your Honor.

20            **MR. MORIN:**  Thank you, Your Honor.

21            **THE COURT:**  Thank you.

22            **MR. LOCASCIO:**  On the jury question, the motion

23   in limine we're talking about, my colleague just said,

24   well, the Federal Circuit has gone both ways, except *In Re*

25   *Tech licensing* is pre-*Petrella*; *TAOS* is post-*Petrella*,

1    which says it's equitable.  And it walks through each

2    regime.

3            So I think the *TAOS* case from the Federal

4    Circuit tells us exactly what would happen to this on

5    appeal.  It's an issue for Your Honor.

6            *Feltner* actually says it's not a question of

7    statutory construction.

8            And then the two other cases I pointed to, the

9    District Court case from Kansas, walks through how that's

10   dicta.

11           And, ultimately, *Petrella* comes after *Feltner*,

12   and couldn't be clearer that this is equitable in

13   Footnote 1 of the *Petrella* --

14           **THE COURT:**  Right.  There's no dispute it's

15   equitable.  You don't dispute the disgorgement is

16   equitable, do you?

17           **MR. MORIN:**  I do for the purposes of

18   disgorgement.

19           In that footnote, I think what they're talking

20   about is the laches aspect.  It says it's protean.  It has

21   aspects from each.  And it says, "for the purposes of

22   this.  It is for the purposes of this, we'll treat it as

23   equitable."

24           I believe -- and by the way, the equitable

25   label is not necessarily dominating *Dairy Queen*, and the

 1    other cases say that.

 2              But I don't think it's so clear that on the

 3    question of disgorgement that it is -- itself is -- they

 4    say it's confusing and protean, I think what they're

 5    referring to is laches in that point in time, because

 6    that's an issue --

 7              **THE COURT:** -- referring to by protean.

 8    They're quoting the restatement.

 9              **MR. MORIN:** Yeah.

10              **THE COURT:** In the commentary, the restatement

11    is talking about how it's protean. It varies. It's fact

12    specific --

13              **MR. MORIN:** That's right.

14              **THE COURT:** -- and you've got to figure it out.

15    Sometimes it's legal, sometimes it's equitable, sometimes

16    it overlaps. And they're talking about unjust enrichment.

17    I don't know.

18              All right. Anything else?

19              **MR. LOCASCIO:** Yes. To be clear, it says,

20    "This remedy is equitable." That's Footnote 1 of

21    *Petrella*.

22              **THE COURT:** Right. And his point is, it does

23    say, "in this case."

24              So, but I think you have the better reading.

25    They clearly say -- I think *Petrella* makes clear,

1    disgorgement for copyright cases is equitable.

2            **MR. LOCASCIO:**  And the last point on *Petrella*

3    is, at 687, it said, "Should *Petrella* ultimately prevail

4    on the merits, the District Court, in determining

5    appropriate injunctive relief and assessing profits, may

6    take into account delay in commencing suit."

7            So *Petrella* even contemplates who will

8    ultimately determine the profits, the Court, at the same

9    time it does injunctive relief.  There is no question,

10    obviously, is not a jury issue.

11            **THE COURT:**  Right.

12            **MR. LOCASCIO:**  And...

13            **THE COURT:**  Okay.

14            **MR. LOCASCIO:**  That's all I have on that,

15    Your Honor.

16            **THE COURT:**  Yeah.  I'm very much leaning

17    towards it does not go to the jury.  I need to think just

18    a little bit, but that's -- just so you'll know.

19            I'll let you know for sure by February 6.

20            **MR. LOCASCIO:**  One other point I do want to

21    make on this is the advisory verdict argument, the

22    *Fair Isaac* case.

23            *Fair Isaac*, as you even saw in just your skim

24    of it, says, the defendants agree, the big numbers going

25    in front of jury, and it's relevant to the -- in that

1    case, a royalty calculation.  That's not this case.

2              **THE COURT:**  Right.  Because the IOLs are not

3    going to be included.

4              **MR. LOCASCIO:**  Correct, Your Honor.

5              **THE COURT:**  Right.  But now I'm just

6    wondering -- well, no, that's right.  Because your

7    position and the plaintiffs' position is, notwithstanding

8    my ruling today about JJSV, they still want to bring in

9    the big number for disgorgement.

10             They think they can, is my inclination,

11   especially if it's -- certainly, they can bring it if it's

12   front of me.

13             **MR. LOCASCIO:**  If it's in front of you --

14             **THE COURT:**  You don't care.

15             **MR. LOCASCIO:**  -- this is obviously much less

16   of an issue.

17             If it's in front of the jury, we will come back

18   to you on the question of -- and there's two questions, as

19   I see them.  If it's front of a jury, this is a *Uniloc*

20   situation that I don't think the *Fair Isaac* decision,

21   there it's different than here.

22             But also, the availability or eligibility of a

23   case where JJSV has no beneficial ownership for the

24   remaining entities to disgorge on IOLs, because they have

25   a disgorgement argument for FLACS machines, and we're not

1    taking issues with that.  FLACS machines being the LenSx

2    machine.

3                **THE COURT:**  Yeah, yeah.  But, I mean, he's got

4    a point.  I mean, disgorgement is an equitable remedy.

5    It's fairness.  And it's the -- the unjust enrichment is

6    what's being addressed.  And you can argue that should

7    include convoyed sales, all sorts of things.

8                We don't have to deal with it.

9                I'm putting a hold -- I'm withholding judgment

10    on the third motion in limine.  My inclination is to not

11    let disgorgement go in front of the jury.

12                I'll think about it some more.  We'll talk

13    about February 6.

14                Let's quickly run through the other motions in

15    limine.  I think we can make some progress.

16                Start with Number 1 for the plaintiff.

17                **MR. MORIN:**  Is that me?

18                **MR. CHIN:**  Very briefly, Your Honor.

19                This is the motion that seeks to preclude Alcon

20    from asserting that LenSx is a different entity.  That

21    part is actually now undisputed.

22                And also, that it -- that the knowledge of the

23    LenSx employees are imputable to Alcon and LenSx.  And

24    that part still remains for the Court to decide.

25                **THE COURT:**  Okay.  Hold up.  Sorry.  Give me a

```
 1    second.
 2              Okay.  I'm very sorry.  I now have it in front
 3    of me.
 4              MR. CHIN:  Sure.
 5              Our motion in limine, Number 1, the Alcon-LenSx
 6    issue.
 7              THE COURT:  Okay.  So the first thing you want
 8    is, they can't suggest Alcon Research is different from
 9    LenSx, right?
10              MR. CHIN:  Yes.  And I believe they --
11              THE COURT:  That's moot, right?
12              MS. HEFFERNAN:  Yes.  Yes, Your Honor.
13              THE COURT:  You said that.  Okay.
14              MR. CHIN:  And just as a procedural matter, as
15    you recall, this issue did come in preliminary injunction
16    context where --
17              THE COURT:  I don't recall.  But anyway, I'll
18    take your word on it.
19              MR. CHIN:  Okay.  Does that -- I'm just
20    wondering, does that become an order or we just live by
21    their representations in the papers here?
22              THE COURT:  I trust both of you all.  I mean,
23    you know, they said they are not going to do it.  If they
24    do, call them on it.  And I'll be pretty angry.
25              MR. CHIN:  Understood.
```

1              THE COURT:  I do not believe they will.  All

2        right.

3              Two, that Alcon can't suggest that it lacks

4        knowledge -- or lacks, sorry -- it lacks Alcon Research's

5        knowledge.

6              You've also agreed you're not going to do that,

7        correct?

8              MS. HEFFERNAN:  That one, I think, we're going

9        to need to argue.

10             THE COURT:  Okay.  All right.

11             MR. CHIN:  The knowledge of the -- perhaps, I

12       can just clarify.  The knowledge of -- I think there are

13       two knowledge parts.  One is Alcon Research lacks

14       LenSx's -- the corporation's knowledge.

15             THE COURT:  Right.  I thought they were okay

16       with that.

17             MR. CHIN:  I thought so too.

18             MS. HEFFERNAN:  Well, we -- I think we're going

19       to have to argue this, because we would not contest any

20       knowledge that is legally imputable to LenSx.

21             There is a -- I think we're going to need to

22       argue this.

23             THE COURT:  Okay.  Is this going to, basically,

24       boil down to, I think, it's -- we're going to have an

25       employee, and the question is going to be, the employee

1    knew something, and whether that knowledge was gained

2    during the scope of the employment or whether it was

3    imputable to LenSx.

4             **MR. CHIN:**  That's correct.

5             **THE COURT:**  Isn't that where the rubber hits

6    the road?

7             **MR. CHIN:**  It is.  And the restatement standard

8    is, is it material to the agents' duties to LenSx, the

9    principle --

10            **THE COURT:**  Right.

11            **MR. CHIN:**  -- which we know is renamed

12   Alcon Research.

13            And on that point, there are two points that we

14   cite in the briefs that we think are important.

15            Number 1, Alcon already took the position in

16   upholding the common interest privilege, that these

17   individuals -- and let me quote their language to make

18   sure I'm not misquoting it here.

19            "Goldstein and Vardin" -- two of the

20   programmers -- "primary duties involved writing source

21   code for the LenSx system."

22            That sounds an awful lot like the restatement

23   standard:  Is it material to the agents' duties?  Is

24   writing the software material to the agents' duties?

25            **THE COURT:**  Right.

1          **MR. CHIN:**  Now, Alcon argues that it's a fact

2     issue, and perhaps, it's a fact issue.  But here it's a

3     fact issue that is undisputed, that it's propounded by

4     Alcon itself.

5          And under 403, of course, there's significant

6     undue prejudice if they're allowed to argue something

7     that -- their common interest motion itself.

8          **THE COURT:**  See, I'm trying to figure out --

9     like, what I don't get from reading the motions is how

10    this is going to arise.

11         And I think it could arise, like you're -- I

12    mean, essentially, you're both going to be taking a risk,

13    and at the end of the day, I'm going to rule, and it's

14    going to be in front of the jury.  And whoever loses,

15    loses big.

16         I mean, give me the specific example.  Like,

17    how is it going to arise?

18         Give me a question you're going to bring up

19    that you already know they're going to object to.  I mean,

20    I'm trying to figure out how this is going to come --

21         **MR. CHIN:**  Sure.

22         And perhaps I can try to remind you of how it

23    came up in the preliminary injunction hearing.

24         **THE COURT:**  Okay.

25         **MR. CHIN:**  They made an argument that LenSx

1    gave representations and warranties from the -- and this

2    is a quote from the hearing -- "from the people who sold

3    it to us; namely, the programmers who are part of the

4    company."

5                    **THE COURT:**  Right.

6                    But if they did that at trial, right, then they

7    can -- you get a curative jury instruction, right, that

8    they were LenSx, and so they are the people who sold it to

9    them.

10                   I mean, don't you cure any argument with a jury

11   instruction?

12                   **MR. CHIN:**  If that instruction is given to the

13   jury, I suppose that would cure that specific issue.

14                   We're trying to nip this in the bud by getting

15   a ruling that this doesn't have to come up in the first

16   place.

17                   **THE COURT:**  But it's the hypothetical, I guess.

18   So, you know, because you're asking -- you know, you're --

19   I go by the motions in front of me.

20                   I mean, the motion, it says -- the motion

21   literally says, "Preclude them from arguing or suggesting,

22   one, that Alcon Research is a different entity from

23   LenSx."

24                   They said they're not going to do it.

25                   Two, that "Alcon Research lacks knowledge held

1    by LenSx employees about matters material to their

2    duties."

3           Now, it sounds like they're hedging, but it

4    seems to me, I would instruct, as a matter of law,

5    whether -- you know, something about if an employee gained

6    knowledge during the scope of its employment, that

7    knowledge is attributable to the company.

8           And then you can all argue this was computer

9    programming while this employee was working for LenSx, of

10   course it's imputable.

11          Or you can tell me, because I don't know, I

12   mean, maybe I'm supposed to -- I'll just, as a matter of

13   law, tell them that.

14          I'm trying to figure out how it's going to come

15   up.  I think -- it sounds like you might be anticipating

16   they're being way more aggressive than they're going to

17   be, but maybe not.

18          **MR. CHIN:**  Perhaps.  And, you know, if it

19   simplifies things, we could narrow it down to, really,

20   who's at issue.

21          Obviously, there's a lot of employees involved.

22   But as you probably recall from the preliminary injunction

23   motion, there's really three employees involved.

24          There is Goldstein, the director of software

25   engineering at Alcon Research; Hegedus, the senior

```
1    principal engineer at Alcon Research; and Vardin,

2    associate director, principal software engineer at Alcon

3    Research.

4                THE COURT:  Okay.

5                MR. CHIN:  Those are the three individuals

6    who --

7                THE COURT:  Are you going to play their

8    depositions?

9                MR. CHIN:  We are going to play their

10   depositions.

11               THE COURT:  Okay.  And what are they going to

12   say?  They're going to say they stole the code?

13               MR. CHIN:  I expect we will say that they stole

14   the code.  And I can imagine --

15               THE COURT:  Well, haven't you heard the

16   depositions?  I mean, what -- seriously, what are they

17   going to say?  Are they going to say "I stole it"?  I'm

18   just curious.

19               MR. CHIN:  Well, I'm not quite sure they're

20   going to say in so many words.

21               But I think between that and the evidence

22   that's presented at trial, it will indicate that the code

23   was stolen, likely by one of those three or a combination.

24               THE COURT:  All right.

25               MR. CHIN:  Those three individuals who worked
```

1    for LenSx, and who also worked for Alcon Research, the new

2    name, are software engineers.

3            Alcon took the position in prevailing on a

4    common interest motion, that Goldstein and Vardin's

5    primary duties involved writing source code for the LenSx

6    system.

7            If there's some argument, for example, in

8    opening or closing or implied through an expert witness,

9    that, "Oh, those are just rogue employees who happened to

10   be writing software.  We, Alcon Research, wouldn't have

11   done or authorized such a thing," that would directly

12   violate the case law on when an employee's knowledge would

13   be imputable to the company.

14           **THE COURT:**  But that's a legal question and

15   part of the instruction.  And if they make an argument

16   that doesn't comport with the law, they're going to look

17   horrible in front of the jury.  I'm going to correct them.

18           **MR. CHIN:**  Well, that does give me some

19   comfort.  But I suggest that we could nip the issue in the

20   bud by --

21           **THE COURT:**  When you say "nip it in the bud,"

22   see, I don't think you can because they're not willing to

23   agree that they're going to make an argument that violates

24   those principles of law.

25           But let me quickly hear from them.  I just

 1    don't see this as an issue.

 2            **MR. CHIN:**  Okay.

 3            **MS. HEFFERNAN:**  Your Honor is correct.

 4            And, in fact, the parties both have jury

 5    instructions on that legal issue.  And so it's going to go

 6    to the jury.  Your Honor is going to instruct the jury.

 7    And if Your Honor feels at some point it needs to -- the

 8    Court needs to make a curative instruction regarding the

 9    law, then we'll cross that bridge when we get there.  I

10    don't think we will get there.

11            The primary reason Alcon is opposing this

12    motion is because knowledge is quintessentially a fact

13    issue, and who knew what and when and by whom they were

14    employed.  And the legal imputation, I guess, or

15    imputability of that knowledge, those are quintessentially

16    fact issues that are for the jury.

17            And this motion --

18            **THE COURT:**  All right.  I'm going to deny the

19    motion.

20            **MS. HEFFERNAN:**  Okay.

21            **THE COURT:**  Let's go.  Next motion.

22            **MS. HEFFERNAN:**  Okay.

23            **THE COURT:**  And we'll fix this with jury

24    instructions.  I just don't think this is an issue.

25            Next motion.

```
 1                    MR. SAMMI:  Your Honor, if you'd like to
 2        address plaintiffs' motion, MIL 2, physician choice.
 3                    THE COURT:  Yep.
 4                    MR. SAMMI:  Tony Sammi.  Thank you, Your Honor.
 5                    THE COURT:  Thank you.
 6                    MR. SAMMI:  It's a pleasure to be before you.
 7        I know we're pressed for time.  I think that there's not
 8        much of a dispute here.
 9                    THE COURT:  That's what I think.
10                    MR. SAMMI:  And I think there's those carve
11        outs that Alcon wants that are unnecessary.  We just want
12        to make sure that no argument is presented that a verdict
13        for J&J would impact, you know, the marketplace or the
14        folks.
15                    THE COURT:  They said they're not going to make
16        that argument.
17                    Are you sticking to that representation?
18                    MR. LOCASCIO:  Yes.
19                    MS. HEDGES:  Yes, Your Honor.
20                    MR. SAMMI:  Ms. Hedges is going to argue it,
21        but we are --
22                    MS. HEDGES:  Yes, Your Honor.
23                    THE COURT:  Yep?  Okay.
24                    What else?
25                    MR. SAMMI:  That's it.
```

 1              THE COURT:  I think just -- you want to say

 2    something?  Go ahead.  Come up.

 3              MS. HEDGES:  Quickly, Your Honor.  Yes.  We

 4    just want to make sure that -- first of all, that we can

 5    still argue to Your Honor with regard to equitable

 6    issues --

 7              THE COURT:  Yes, can you.

 8              MS. HEDGES:  -- that there could be an impact.

 9              All right.  And we also want to make sure that

10    we can argue about things like patient or physician

11    preference, which are relevant to things like lost

12    profits.

13              THE COURT:  And they agree with that, correct?

14              MR. SAMMI:  Your Honor, yes, patient and

15    physician preference is fine so long as it doesn't go to

16    the ultimate -- you know, it doesn't leave the impression

17    with the jury that --

18              THE COURT:  Well, leave the impression.  I

19    mean, look, I don't know what -- they're going to be left

20    with whatever they are.  That's the whole -- that's what

21    trial lawyers do.

22              MR. SAMMI:  You're right, Your Honor.  I'm

23    sorry.  I misspoke.

24              I meant to the point that it's prejudicial;

25    meaning, that it is --

1          THE COURT:  Okay.  Well, then you can object at

2    the trial.  We'll see.

3          MR. SAMMI:  We will do that.

4          THE COURT:  But again, I don't think this is an

5    issue.

6          Okay.  So motion is denied as moot.

7          Next.

8          MR. MORIN:  I think in terms of the plaintiffs'

9    motion, it's the contents of the privileged communications

10   issue.

11         THE COURT:  Right.

12         MR. MORIN:  So Your Honor has indicated, in no

13   uncertain terms, that there will be at least discussion in

14   disgorgement portion, that they'll be allowed to talk

15   about the alleged delay and bringing suit.

16         THE COURT:  Yes.

17         MR. MORIN:  But --

18         THE COURT:  Well, why not, also, just

19   mitigating damages?

20         MR. MORIN:  Well, there's two issues on the

21   mitigation of damages front.

22         The first is, I think we all agree that -- and

23   this was part of a different motion.  But I think we all

24   agree -- I think it's Motion 4 -- that on actual damages,

25   which is all mitigation is relevant to, is actual damages.

1          THE COURT:  Right.

2          MR. MORIN:  On actual damages, laches is out in

3    view of *Petrella*.  And we think mitigation would be just

4    another way of saying the laches --

5          THE COURT:  Now, wait, wait, wait, wait.

6          MR. MORIN:  Yes, Your Honor.

7          THE COURT:  First rule, it says -- in *Petrella*,

8    is:  You can't use laches to preclude a damages claim.

9          Where does *Petrella* say anything about

10   mitigating damages?

11         MR. MORIN:  This was Sy's motion.  May I, Your

12   Honor?

13         THE COURT:  Sure.

14         MR. DAMLE:  Your Honor, the fundamental

15   principle in *Petrella* was that, where Congress has set out

16   a statue of limitations, it has set forth the consequences

17   of delay.  That's the principle.  And that was picked up

18   in *SCA Hygiene*, the patent case, to say it's separation of

19   powers principle, when Congress has said these are the

20   consequences of delay through a statute of limitations.

21         It is a separation of powers problem for a

22   Court to impose an additional consequence for that delay

23   on top of what Congress has indicated to be the

24   consequence of delay.  That's the fundamental principle

25   from both *Petrella* and *SCA Hygiene.*

1    The mitigation defense that they have is

2    entirely based, entirely based on JJSV's delay in bringing

3    its lawsuit.  That they have no other basis for their

4    mitigation claim.

5    And so given the nature -- so we're not saying

6    there couldn't be some possible mitigation type of

7    argument.  Their mitigation claim is one that's based

8    solely on our delay in bringing suit.  And that claim is

9    barred by both -- that defense, that flavor of defense, is

10   barred both by *Petrella* and by *SCA Hygiene.*

11   **THE COURT:**  Okay.  Anything else?  We moved to

12   four.  What happened to three?

13   **MR. MORIN:**  There was a subsidiary issue on the

14   mitigation question that related to four.

15   **THE COURT:**  Oh, okay.

16   **MR. MORIN:**  So back to three, Your Honor.  I'm

17   sorry to play musical chairs --

18   **THE COURT:**  No problem.

19   **MR. MORIN:**  -- but Mr. Damle knows more --

20   **THE COURT:**  And incidentally -- so...

21   Go ahead.  Let's do Number 3.

22   **MR. MORIN:**  Sure.

23   And so the only issue with Number 3 that I

24   think we're left with is the idea that -- they want to

25   bring up that lawyers were involved, for whatever reason,

1    in the investigation.

2            And we've already had Judge Hall look at

3    everything, say they have all the facts, and say -- and we

4    should be able to take the privilege without being --

5    there being some suggestion as to what the lawyers'

6    involvement may or may not have meant.

7            There's a 403 issue.  It's not probative to

8    anything.

9            **THE COURT:**  I just want to make sure, that's

10    what the question is, 403, right?

11            **MR. MORIN:**  Yeah, that's correct, Your Honor.

12    Yes, that's it.

13            **THE COURT:**  Yeah.  I'm going to deny the motion

14    in limine.  I don't think it's unfairly prejudicial to say

15    there were lawyers involved.  I think, probably, there's

16    an assumption there would be.  I don't think you're

17    prejudiced that way.

18            Now, if they went further and made a suggestion

19    that, you know, that would require you to invoke the

20    privilege, I mean, that would be a different issue --

21            **MR. MORIN:**  Right.

22            **THE COURT:**  -- you know, depending on how the

23    question were phrased.  But if they just mention in

24    passing, I think it will be of no consequence.

25            **MR. MORIN:**  We would -- I understand, Your

1   Honor.

2           If they were to invoke, I would ask this favor.

3   If -- asking favors.

4           If they were to invoke a question that

5   reasonably would calls for the privilege, I would ask that

6   they bring it, and we discuss it outside the presence of

7   jury.  If they were planning to invoke a question that

8   could call for the privilege, we would reasonably call for

9   insertion of the privilege.

10          **THE COURT:**  That's just such a vague -- I

11  think, look, we've got able trial lawyers.

12          The question comes out, you can frame an

13  objection.  If we have to, we'll go to sidebar, we'll hash

14  it out.

15          **MR. MORIN:**  Okay.  Thank you, Your Honor.

16          **THE COURT:**  All right.  So that dispenses --

17  Number 3 is denied as moot.

18          Then we get to Number 4, which is mitigation --

19          **MR. LOCASCIO:**  Let me ask --

20          **THE COURT:**  Yeah.  Go ahead.

21          **MR. LOCASCIO:**  You said, "denied as moot."

22          **THE COURT:**  Well --

23          **MR. LOCASCIO:**  It's not moot.  You said that

24  this information comes in.

25          Their argument was, it has no relevance to

1    anything and shouldn't be --

2            **THE COURT:**  They filed a motion in limine to

3    preclude you from doing it, and I've denied it as moot.

4    You won.

5            **MR. LOCASCIO:**  I'll take the denial.

6            When you said "denied as moot," typically, my

7    understanding is that means, like, we've all agreed it's

8    not an issue.

9            And I don't -- for instance, patient two -- or

10   Motion in Limine 2 was, like, okay, they don't want

11   something, we agree we're not going to do the something,

12   we --

13           **THE COURT:**  Oh, okay.  I'll just deny it.

14   Sorry.

15           It's denied without prejudice to raise at trial

16   objections to questions that plaintiffs believe would

17   require invocation of the privilege.

18           **MR. LOCASCIO:**  With any MIL, as I understood

19   it, Your Honor, if somebody does something, you could

20   obviously reraise it if it became so prejudicial.

21           **THE COURT:**  Yep.  All right.  Fair enough.

22   Thank you for the clarification.

23           **MR. DAMLE:**  Thank you, Your Honor.

24           If I could be heard on the rest of MIL 4.

25           **THE COURT:**  Now, we're at Number 4, mitigation.

```
 1      All right.  Hold on.  That's going to take a little bit of

 2      time.  Let me just think.

 3                  Actually, what we will do is we'll call it a

 4      day.  We'll resume with the rest of the motions in limine

 5      on February 6th.

 6                  Sorry.  I'm just pulling up the calendar here

 7      to give you a time.

 8                  Let's do it at 1:00.

 9                  Okay.  Then jury selection, I recommend we --

10      let's do it the 10th.  All right?  We'll have the jury

11      brought in the 10th.

12                  MR. MORIN:  Great, Your Honor.

13                  THE COURT:  And we'll pick them.  I'm sorry,

14      you're probably going to be here the weekend anyway, you

15      out-of-town folks, so -- right?  And it just makes things

16      move and then we'll start right at 8:30 on the 13th.

17                  MR. MORIN:  That sounds fine.

18                  And we'll try to work with our friends to --

19      there are -- not many disputes on the preliminary jury

20      instructions, but maybe Your Honor, on Friday if

21      there's -- after we pick the jury, if there's anything

22      left, we could --

23                  THE COURT:  We might, frankly, be able to take

24      care of that on the 6th.  I've got the afternoon -- I'm

25      sorry?
```

1          **MR. LOCASCIO:**  I was curious of the same

2     question.  If we want to have first round charge

3     conference, is the -- we plan to do it on the 6th if we

4     can get to it, or the 10th.

5          **THE COURT:**  Correct.  So basically, I'm giving

6     you the entire afternoon of the 6th.

7          **MR. LOCASCIO:**  Okay.

8          **THE COURT:**  Okay.  To see if we can get cleared

9     as many issues as we possibly can.

10         **MR. MORIN:**  Just so I know what to be ready

11    for, though, what I -- is Your Honor's preference, in

12    terms of the jury instructions, only to address the

13    preliminary instructions then, because we're going to see

14    how things shape out and do a charge conference later for

15    the final instructions?

16         I just want to know what we should be prepared

17    to address on this --

18         **THE COURT:**  You've got a huge team.  I would be

19    prepared for everything.  Because if I can get to it,

20    let's take advantage of the time.

21         **MR. LOCASCIO:**  And I would say -- the reason I

22    also suggested the 10th, there are a handful of issues.

23    For instance, the open disgorgement question.  But even

24    like willfulness and some of these other issues,

25    deductions and whether that's in or out, that -- how we

1    open the case, I don't think -- as much as we can get done

2    on the charge before openings, will serve us all a world

3    of good if we can do it.

4              **THE COURT:**  Right.  There's no request to stage

5    this thing.  I mean, you don't want to stage damages,

6    willfulness until after infringement?

7              **MR. LOCASCIO:**  We've not requested it to be

8    akin to be, sort of, bifurcated.

9              Give us -- we'll talk about that and come back

10   on the 6th.  If somebody -- if we collectively think, or

11   one of us really strongly thinks it makes sense.

12             **THE COURT:**  I mean, I've got to tell you, I'm

13   not -- I mean, I'm normally very receptive to those

14   requests.  In this case, at least it's the little I

15   understand on the facts, I mean --

16             **MR. MORIN:**  I think it's a damages case,

17   Your Honor.

18             **THE COURT:**  Yeah.  I mean, the guy stole the

19   stuff.  I mean, unless that's really going to be disputed.

20   Now, maybe you are.

21             I don't know what the facts are, but I never

22   heard any vigorous defense saying, no, those guys didn't

23   steal the source code.  It's more like how much of the

24   code was stolen, how much of that code that was stolen is

25   in our code.

```
 1              I mean, those are the things that I'm sensing.

 2      But anyway, you can all correct me if I'm wrong on

 3      February 6.

 4              MR. MORIN:  One other thing we can --

 5      Your Honor, if we can get guidance on or before

 6      February 6, I'm holding out hope that you're going to

 7      conclude that disgorgement is for the jury.  But you

 8      indicated -- I'm a realist.  I want to listen to the

 9      Court.

10              THE COURT:  Right.

11              MR. MORIN:  You've indicated there's some

12      possibility that may not happen.

13              It would be helpful for us to know, for

14      witnesses and the order of presentation of things, what

15      that might mean.  You know, the overlapping evidence gets

16      presented.  Do you want to do it after we excuse the jury

17      each day?  Is it a separate phase?  Sometime later in

18      time?

19              I would just -- it would be helpful for us to

20      work with our witnesses and for our trial preparation to

21      know that.

22              I'm hoping I'm asking a moot questions because

23      you're at least going to do the advisory verdict, which is

24      what their lead case did.  But -- but, Your Honor -- and

25      so that we don't have to retry it when the Federal Circuit
```

1    agrees with me.

2              But if you don't go that route, in that small

3    chance you don't go that route, it would be helpful to

4    know for logistics purposes and I think for our friends

5    also.

6              **THE COURT:**  I'm going to try what I can.  I've

7    got a two-day trial.

8              Yeah.  I'm going to try to get, you know, some

9    decision on the disgorgement when I can.  All right.

10             **MR. MORIN:**  All right.  And if that -- not to

11   beg.  And if that decision could also give some guidance

12   on the procedural ramifications.

13             **THE COURT:**  Oh, yes.

14             **MR. MORIN:**  Is it going to be a month later?

15   Is it going to be in the evenings?  Is it going to be --

16             **THE COURT:**  No.  It's not going to be a month

17   later.

18             **MR. MORIN:**  Okay.  Great.

19             **THE COURT:**  It's going to be either in the

20   evenings or it's going to be right after the jury trial.

21             **MR. MORIN:**  Got it.

22             **MR. LOCASCIO:**  And I actually don't know -- I

23   think there's some issues that we can talk about then, but

24   it's not going to be another four-day event.  It's going

25   to be quick.

 1              THE COURT:  Okay.  And just to remind you, the

 2      first week of trial we're only going four days.

 3              MR. MORIN:  Correct, Your Honor.

 4              THE COURT:  Right.  Okay.  And then we have a

 5      long weekend, because it's a holiday.  And then we resume.

 6              MR. MORIN:  Right.  And I think you said you

 7      needed to be done by that Thursday --

 8              THE COURT:  Yes.

 9              MR. MORIN:  -- is what we're factoring in.

10      You're not available that Friday.

11              THE COURT:  Correct.

12              MR. MORIN:  So I think what both sides are

13      figuring, is four days the first day, and up to three days

14      the second -- second week.  Sorry.

15              THE COURT:  Yeah.  Hold on.

16              MR. LOCASCIO:  I thought it was just -- I

17      thought we only had the Tuesday of the second week.  I

18      thought it was four days in week one.

19              THE COURT:  Well, I've got written you've got

20      16 hours per side, which seems long, but...

21              MR. MORIN:  Well, it's -- we're trying to get

22      there.

23              MR. LOCASCIO:  Our spreadsheets all have a lot

24      of red on them.

25              THE COURT:  Hold up, hold up, hold up.

```
 1              MR. MORIN:  You did say you had to be done by

 2   that Thursday.

 3              THE COURT:  Well, yeah, but I'm -- let me see.

 4   I might be able to actually help you.

 5              So actually, we can probably spill over until

 6   Friday, the 24th, through noon.  In other words, I've

 7   got -- you know, we should still try to get this done in

 8   16 hours.  But if you're telling me there's no way to do

 9   it, I will listen.

10              MR. LOCASCIO:  We'll look at our time, and

11   we'll talk about that.  Because we have operated, until

12   this very moment, from that moment of the transcript was,

13   you had to be done by Thursday of the first week; meaning,

14   you couldn't be there Friday.  That's fine.  We have a

15   difference of opinion on this.

16              And then we recalled you saying Tuesday.  I

17   have in my notes, like, we're going to close this case on

18   Tuesday.

19              And then if the jury had to deliberate into

20   Wednesday, so be it.  If we could have more time and it's

21   useful and we're not just going to, like everything,

22   stretch to the --

23              THE COURT:  Now, I am worried about that

24   because it seems to me -- so I'll tell you what, come in

25   very, very prepared on February 6th to walk through what
```

```
 1    your trial is.

 2              Who are your witnesses?

 3              What are they going to say?

 4              How long do you anticipate they will be?

 5              Both of you do that.  And then I'll see.

 6              I'll tell you I've got a little more

 7    flexibility.  If I think you need more time, I'll give it

 8    to you.  Right now, we had set 16 hours a side.  That's

 9    what you should plan on, you know.  We'll discuss it on

10    February 6th.

11         MR. LOCASCIO:  We certainly appreciate, to the

12    extent you think the parties need more time.  I'll expect

13    we will happily take it.  The pretrial order and

14    everybody's expectations was 16 a side, which gets you, at

15    most, to the Tuesday of the second week.

16         THE COURT:  Yep.  Right.

17         MR. MORIN:  Yeah.  And I don't want to disagree

18    with my friend.  Your Honor had said until Thursday, so

19    we've kind of planned that way, although the hours

20    predominate -- the hours predominate.

21              And -- but we could use a little bit more time,

22    and it won't be wasted time.  We're having a hard time.

23              We have -- what happens, Your Honor, as I'm

24    sure you're familiar with, you can cut down direct when

25    you have live witnesses.  We have a bunch of former
```

```
 1   employees where the -- so even the deposition testimony,

 2   we cut and we cut and we cut, and we still have more hours

 3   of it than I'd like.  I don't want the jury to watch a

 4   lot.  But they are the operative people, right?

 5           And the depositions are never as constrained as

 6   what we could do if we had direct examinations, right?

 7           So we're in a situation where we would love

 8   20 hours if we can get it, and we won't waste the Court's

 9   time.

10           THE COURT:  All right.  Well, yeah, we'll see.

11   Okay.

12           Be prepared on Monday, the 6th, to walk me

13   through all that.  Okay.

14           MR. MORIN:  Thank you, Your Honor, for your

15   time.

16           MR. LOCASCIO:  Thank you, Your Honor.

17               (The proceedings concluded at 5:15 p.m.)

18

19

20

21

22

23

24

25
```

1

2                        CERTIFICATE OF COURT REPORTER

3

4           I hereby certify that the foregoing is a true and

5      accurate transcript from my stenographic notes in the

6      proceeding.

7
                                          /s/ Bonnie R. Archer
8                                         Bonnie R. Archer
                                          Official Court Reporter
9                                         U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

121/14

MR. BLUMENFELD: [1] 3/7
MR. CHIN: [93] 14/12 15/2
15/8 15/12 15/14 16/7 16/12
16/16 17/7 18/3 18/19 19/2
19/6 19/15 19/19 20/9 21/6
21/11 21/21 22/2 22/8 22/11
23/6 23/13 24/9 24/11 24/13
24/16 24/20 24/23 25/14
27/16 27/24 28/19 28/24 29/9
29/12 29/18 30/1 30/7 30/16
31/7 31/20 32/3 32/8 32/25
33/16 33/19 33/22 34/16 35/4
35/18 36/5 43/16 43/22 44/4
44/8 44/12 44/23 45/1 45/9
45/11 45/15 45/19 45/22
46/15 46/17 46/21 48/18 49/4
95/18 96/4 96/10 96/14 96/19
96/25 97/11 97/17 98/4 98/7
98/11 99/1 99/21 99/25
100/12 101/18 102/5 102/9
102/13 102/19 102/25 103/18
104/2
MR. DAMLE: [2] 108/14
112/23
MR. FRANK: [14] 28/10 36/7
37/20 37/23 38/7 38/23 39/1
41/9 41/15 41/17 42/1 42/4
48/25 52/25
MR. LOCASCIO: [82] 4/9
6/22 7/21 11/9 11/11 28/11
41/21 42/10 42/22 42/24
50/24 51/3 51/12 52/9 52/15
52/20 53/9 53/13 53/16 53/18
56/5 57/10 57/25 58/7 58/10
59/14 60/22 61/6 62/19 63/2
63/11 63/18 63/25 64/7 64/11
64/13 64/15 65/1 65/11 65/16
66/3 66/6 66/8 66/22 69/23
70/11 70/13 70/23 71/9 71/12
71/15 72/5 72/7 73/10 74/2
78/19 90/18 90/22 92/19 93/2
93/12 93/14 93/20 94/4 94/13
94/15 105/18 111/19 111/21
111/23 112/5 112/18 114/1
114/7 114/21 115/7 117/22
118/16 118/23 119/10 120/11
121/16
MR. MORIN: [96] 4/10 5/11
5/16 8/25 9/2 9/5 10/3 10/12
11/3 12/3 12/8 12/12 12/25
13/4 13/22 14/4 44/7 49/7
49/16 74/3 74/5 74/8 74/21
74/25 75/24 76/8 76/16 76/18
76/20 77/22 78/16 79/1 79/10
79/16 79/19 79/22 80/2 80/6
80/9 81/3 81/13 81/21 82/2
82/5 82/10 82/18 83/7 83/9
83/14 84/1 85/3 88/6 88/9
89/7 89/13 89/17 90/14 90/6
90/20 91/17 92/9 92/13 95/17
107/8 107/12 107/17 107/20
108/2 108/6 108/11 109/13
109/16 109/19 109/22 110/11
110/21 110/25 111/15 113/12
113/17 114/10 115/16 116/4
116/11 117/10 117/14 117/18
117/21 118/3 118/6 118/9
118/12 118/21 119/1 120/17

121/14

MR. SAMMI: [9] 105/1 105/4
105/6 105/10 105/20 105/23
106/14 106/22 107/3
MS. HEDGES: [4] 105/19
105/22 106/3 106/8
MS. HEFFERNAN: [6] 96/12
97/8 97/18 104/3 104/20
104/22
MS. KELLER: [1] 3/18
THE COURT: [291]

$

$100 [1] 73/19
$100 million [1] 73/19
$13 [2] 65/9 76/23
$13 billion [2] 65/9 76/23
$19 [2] 75/13 83/21
$19 billion [2] 75/13 83/21
$200 [1] 73/19
$200 million [1] 73/19
$3 [2] 64/17 65/21
$3 billion [2] 64/17 65/21
$45 [3] 75/3 75/17 76/5
$45 billion [3] 75/3 75/17 76/5
$50 [1] 73/19
$50 million [1] 73/19

'

'50s [1] 72/19
'60s [1] 72/20
'Court' [5] 85/23 85/24 86/4
86/5 86/10

-

-and [2] 1/24 2/12

/

/s [1] 122/7

1

10 years [1] 20/3
1019 [1] 71/13
109 [1] 67/19
10th [4] 113/10 113/11 114/4
114/22
123 [1] 40/9
13 [4] 41/12 76/1 76/24 83/22
1304 [1] 71/18
13th [1] 113/16
1476 [1] 35/12
16 [2] 83/24 120/14
16 hours [3] 118/20 119/8
120/8
168 [1] 67/18
17 [1] 83/24
173 [1] 36/21
18 [3] 1/13 44/7 44/8
1976 [1] 25/16
1:00 [1] 113/8

2

20 hours [1] 121/8
20-842-CFC [1] 1/6
2000 [1] 19/15
2007 [36] 15/25 16/2 16/3
16/19 17/15 17/17 17/18 18/2
19/1 19/16 19/18 19/20 20/10
20/11 20/12 20/14 20/16
20/24 21/4 21/7 21/9 21/16

23/11 23/23 27/15 27/18 38/6
46/25 47/9 47/12
2010 [1] 21/7
2014 [4] 58/12 59/6 59/24
64/18
2015 [1] 59/7
2020 [10] 16/19 16/20 17/9
17/13 18/1 18/12 20/17 21/22
23/24 59/5
2022 [1] 72/3
2023 [1] 1/13
21 [5] 16/18 16/20 17/9 17/13
18/1
24th [1] 119/6
26 [2] 44/2 44/4
27 [5] 16/10 16/11 16/13 18/5
75/3
277 [2] 78/12 79/11
292 [1] 36/21
298 [1] 36/21

3

3-billion [1] 57/15
3.1 billion [1] 69/6
34 million [1] 75/4
3:00 [2] 1/13 3/4

4

403 [2] 99/5 110/10
403 issue [1] 110/7
408 [1] 71/13
427 [1] 16/12
45 [1] 76/24
45-billion [1] 76/13
458 [3] 41/4 41/24 42/9
490 [1] 38/15

5

504 [10] 82/4 85/19 85/20
85/20 85/21 86/3 86/6 86/8
86/11 86/13
516 [2] 41/12 42/3
588889 [1] 72/3
5:15 [1] 121/17

6

687 [1] 93/3
6th [6] 113/5 113/24 114/6
115/10 120/10 121/12
6th if [1] 114/3

7

770-million-dollar [1] 57/15

8

844 [1] 1/16
895 [1] 71/18
8:30 on [1] 113/16

9

90 [1] 41/3

A

ability [2] 42/18 52/22
able [9] 16/21 29/2 47/14 57/8
81/7 110/4 111/11 113/23
119/4
about [59] 13/21 13/25 19/25
21/7 24/7 27/3 37/25 38/20
39/22 42/15 43/10 46/2 46/4

467 49/3 50/18 50/18 52/5
55/21 58/18 58/14 59/5 59/7
60/3 61/15 63/9 63/23 64/18
72/23 75/21 77/3 77/18 78/4
78/5 78/13 79/3 79/15 83/3
86/13 87/15 87/19 87/21
90/13 90/23 91/20 92/11
92/16 94/8 95/12 95/13 101/1
101/5 106/10 107/15 108/9
115/9 117/23 119/11 119/23
absent [1] 85/24
absolutely [2] 37/23 62/12
absurd [1] 20/8
accomplish [1] 4/2
accomplishing [1] 4/4
account [2] 10/15 93/6
accounted [1] 34/14
accounting [4] 8/23 72/20
88/14 89/3
accruing [1] 42/14
accurate [2] 79/17 122/5
accused [1] 67/15
achieved [1] 78/10
acknowledgement [1] 84/2
acquired [4] 19/7 19/21 20/13
40/14
across [3] 5/16 5/22 37/19
Act [5] 22/12 23/14 25/16
53/25 86/9
action [2] 37/10 88/22
actions [2] 19/14 55/14
actual [17] 8/1 8/2 8/22 9/6
9/11 9/17 9/24 56/9 73/19
78/1 80/6 80/20 80/21 86/11
107/24 107/25 108/2
actually [35] 8/16 13/14 13/16
17/20 27/5 27/16 29/4 30/17
30/18 30/24 33/20 36/15
36/19 37/6 40/16 41/21 43/13
49/23 55/6 57/20 60/5 65/8
71/25 73/7 73/7 75/9 82/21
84/17 90/16 91/6 95/21 113/3
117/22 119/4 119/5
add [2] 23/3 49/23
additional [2] 20/13 108/22
address [8] 4/14 22/10 53/19
80/5 83/5 105/2 114/12
114/17
addressed [3] 51/1 84/12 95/6
addresses [2] 34/1 75/24
addressing [2] 5/13 86/10
adjoining [1] 12/9
adjudication [1] 60/19
admit [2] 10/13 77/7
adopt [1] 4/18
advantage [2] 87/15 114/20
adversarial [1] 73/13
advertisement [1] 82/20
advisory [18] 7/7 11/21 12/1
12/17 13/7 13/9 13/10 13/13
13/19 71/3 72/1 73/13 75/18
84/3 84/19 84/22 93/21
116/23
affect [2] 9/17 81/8
affected [1] 7/20
affects [1] 7/16
after [28] 8/18 16/2 17/1
17/17 18/9 18/14 18/17 19/3
19/16 19/22 20/4 20/13 20/17
20/22 21/9 22/20 47/8 47/8

after... [10] 58/15 59/4 67/18
68/4 72/10 91/11 113/21
115/6 116/16 117/20
afternoon [4] 3/18 4/5 113/24
114/6
afterwards [1] 13/20
again [5] 27/24 39/2 57/21
68/8 107/4
against [3] 68/15 75/13 84/19
agency [1] 75/2
agent [3] 26/15 27/4 27/6
agents' [3] 98/8 98/23 98/24
aggressive [1] 101/16
ago [2] 20/3 85/10
agree [27] 6/22 7/13 9/10
10/20 14/23 15/1 20/22 27/12
33/7 33/7 33/10 39/14 46/6
46/15 59/13 59/14 60/21 66/5
70/3 84/11 88/7 93/24 103/23
106/13 107/22 107/24 112/11
agreed [7] 20/17 32/4 47/14
76/23 81/7 97/6 112/7
agreement [27] 9/9 9/16 9/20
15/24 16/8 16/18 16/23 17/13
17/14 18/2 18/6 18/7 18/25
23/10 27/15 27/22 37/24 38/3
39/7 39/9 39/10 40/8 41/7
42/8 42/17 42/21 47/15
agreement's [1] 38/22
agrees [2] 66/11 117/1
ahead [9] 4/16 11/7 35/9
70/12 82/9 90/17 106/2
109/21 111/20
akin [2] 59/1 115/8
ALCON [35] 1/7 1/7 1/8 3/21
3/24 9/14 26/11 33/1 36/8
51/1 51/4 51/5 55/14 55/19
95/19 95/23 96/5 96/8 97/3
97/4 97/13 98/12 98/15 99/1
99/4 100/22 100/25 101/25
102/1 102/2 103/1 103/3
103/10 104/11 105/11
Alcon Research [2] 97/13
98/12
Alcon Vision [1] 55/19
Alcon's [2] 41/1 42/6
Alcon-LenSx [1] 96/5
all [116] 3/6 4/1 4/2 4/5 4/16
5/6 9/4 10/1 11/15 14/5 14/17
15/13 15/24 15/25 16/4 16/14
17/1 17/2 20/2 20/4 21/2 21/5
21/25 22/9 27/19 27/19 28/4
32/1 32/4 34/8 35/11 41/25
42/20 43/6 43/14 43/15 44/11
45/14 45/15 45/16 45/18
45/21 46/20 47/8 47/9 49/21
50/16 51/9 51/10 53/22 55/9
58/1 59/5 59/8 59/10 60/25
63/8 63/12 65/3 65/7 65/11
65/12 68/7 69/11 69/19 70/8
70/12 70/25 73/21 75/6 76/4
76/17 78/7 78/17 78/23 79/4
79/14 79/14 80/4 80/15 80/17
81/16 82/1 83/2 83/4 83/8
86/15 90/9 90/12 92/18 93/14
95/7 96/22 97/1 97/10 101/8
102/24 104/18 106/4 106/9
107/22 107/23 107/25 110/3

11/16 112/7 112/21 113/1
113/10 113/20 116/21 117/5
117/10 118/23 121/10 122/10
allegations [2] 38/8 38/10
allege [3] 21/19 28/17 55/3
alleged [6] 5/21 42/20 67/20
69/4 69/11 107/15
allocation [1] 54/8
allowed [3] 18/16 99/6 107/14
Allowing [1] 68/24
allows [1] 57/3
almost [1] 78/7
along [1] 89/18
already [6] 19/17 20/24 21/8
98/15 99/19 110/2
also [30] 3/23 4/13 6/6 7/1
15/16 22/24 26/10 32/10
36/14 39/12 40/3 45/11 46/17
50/14 50/21 51/8 55/13 70/4
72/2 86/18 87/10 94/22 95/22
97/6 103/1 106/9 107/18
114/22 117/5 117/11
Alsup [1] 13/1
alternatives [2] 15/12 15/14
although [4] 49/23 85/11
120/19
always [7] 6/6 6/6 40/10 49/25
54/6 54/7 62/7
am [6] 12/8 54/17 70/7 76/11
82/21 119/23
amend [3] 14/15 41/15 42/2
amended [1] 28/18
Amendment [2] 68/3 71/19
AMO [43] 1/3 1/3 1/4 15/15
15/18 15/19 16/25 18/5 20/21
21/12 21/12 21/15 21/17
21/22 22/23 28/3 28/6 28/25
29/2 30/7 31/12 31/24 32/1
32/3 32/14 32/16 32/17 32/20
32/23 40/12 40/21 42/15 43/3
44/14 44/16 44/18 45/8 48/3
48/15 53/1 54/15 56/11 80/15
AMO Development [4] 15/19
30/7 32/17 56/11
amount [3] 62/13 80/11 83/16
analogy [1] 34/24
analysis [2] 77/2 85/14
analyzed [1] 87/5
angry [1] 96/24
another [15] 8/15 12/18 13/1
16/22 22/23 26/17 30/20 31/1
31/5 47/23 64/2 69/23 87/22
108/4 117/24
answer [8] 15/7 27/16 27/25
40/22 70/23 76/20 76/20 88/8
answered [5] 30/17 57/19
88/3 88/4 88/10
answering [1] 39/13
answers [1] 16/17
ANTHONY [2] 1/23 3/13
ANTHONY RAUCCI [2] 1/23
3/13
anticipate [1] 120/4
anticipating [1] 101/15
antitrust [1] 72/19
any [34] 5/7 6/18 19/20 21/2
22/4 23/12 33/17 34/9 34/13
38/3 38/10 38/18 38/19 39/22
40/10 40/22 41/19 42/12
43/12 54/12 55/1 56/23 57/2

66/10 70/17 72/14 77/21
78/7 81/4 90/7 97/19 100/19
92/18 115/22
anybody [1] 20/11
anything [21] 21/8 22/1 32/24
36/2 38/4 45/18 64/18 68/17
68/22 69/4 75/14 77/17 78/14
82/14 83/21 92/18 108/9
109/11 110/8 112/1 113/21
anyway [10] 6/12 11/7 13/9
14/2 35/25 77/10 90/7 96/17
113/14 116/2
apart [1] 58/23
apologize [3] 27/24 44/4
53/10
appeal [1] 91/5
Appeals [1] 72/15
appear [1] 85/12
APPEARANCES [2] 1/21 2/1
Appellate [1] 11/6
applicable [1] 66/23
application [1] 51/15
applies [3] 30/3 60/10 61/1
applying [1] 84/13
apportionment [2] 54/10 81/23
appreciate [3] 4/21 52/3
120/11
appropriate [3] 62/8 75/10
93/5
approved [1] 59/25
April [28] 15/25 16/2 16/3
16/19 17/15 17/17 17/18 18/2
19/1 19/18 19/20 20/10 20/11
20/12 20/14 20/16 20/24 21/4
21/9 21/16 23/11 23/23 27/15
27/18 38/6 46/25 47/9 47/11
April 2 [21] 15/25 16/2 16/3
17/15 17/17 17/18 18/2 19/1
19/18 19/20 20/24 21/4 21/9
21/16 23/11 27/15 27/18 38/6
46/25 47/9 47/11
April 2007 [5] 20/10 20/11
20/12 20/14 20/16
Archer [1] 122/7 122/8
architectural [1] 67/18
architecture [1] 65/20
are [101] 4/24 5/7 6/3 6/16
8/19 9/2 9/6 9/23 10/12 10/13
10/19 11/14 14/11 15/2 15/5
15/14 18/10 20/11 23/19
26/11 26/24 28/16 30/6 32/11
32/22 33/9 42/16 43/11 43/12
44/14 44/14 44/23 45/16 55/2
55/15 56/3 56/10 58/4 60/10
61/7 61/20 63/5 63/12 63/15
63/20 65/11 65/12 66/9 66/24
67/11 69/16 72/9 73/8 73/10
77/8 77/18 79/5 79/8 79/8
79/10 79/12 79/24 80/7 86/1
86/12 87/17 88/22 94/2 95/23
96/23 97/12 98/13 98/14
100/3 100/8 102/5 102/7
102/9 102/11 102/16 102/17
103/2 103/9 104/15 104/16
106/20 108/19 113/19 114/22
115/20 115/21 116/1 118/12
120/2 120/3 121/4 121/5
aren't I [1] 87/20
aren't [1] 87/20

arguably [1] 26/6
argue [15] 22/6 52/14 52/15
52/16 64/6 64/7 95/6 97/9
97/19 97/22 99/6 101/8
105/20 106/5 106/10
argued [2] 52/17 53/2
argues [2] 47/6 99/1
arguing [3] 47/15 66/9 100/21
argument [27] 12/9 14/2
15/22 17/22 22/10 33/1 33/8
55/1 58/19 60/15 64/24 66/2
72/18 77/12 78/18 81/8 93/21
94/25 99/25 100/10 103/7
103/15 103/23 105/12 105/16
109/7 111/25
arguments [2] 12/4 49/12 55/2
arise [3] 99/10 99/11 99/17
arisen [1] 17/16
arises [1] 21/18
arose [1] 30/9
around [3] 38/9 55/20 73/24
ARSHT [1] 1/22
articulated [2] 22/5 69/22
as [123]
aside [3] 10/2 23/19 53/8
ask [6] 27/14 28/21 65/17
111/2 111/5 111/19
asked [2] 57/14 57/23
asking [9] 36/10 48/20 58/4
58/8 61/20 88/14 100/18
111/3 116/22
asks [1] 57/4
aspect [3] 10/20 64/2 91/20
aspects [3] 14/15 66/8 91/21
assert [2] 28/7 48/13
asserted [10] 5/3 15/1 28/22
32/2 41/6 46/24 47/1 47/4
47/25 48/8
asserting [1] 95/20
assertion [2] 38/19 59/14
assessing [3] 6/7 62/8 93/5
Assessment [1] 72/2
assign [2] 17/21 20/1
assigned [5] 15/15 15/16
15/17 34/10 50/10
assignment [4] 15/16 26/14
33/2 33/5
assigns [1] 20/21
associate [1] 102/2
associated [1] 48/14
assume [3] 30/6 40/11 43/3
assumption [2] 38/7 110/16
attributable [2] 62/9 101/7
August [10] 16/18 16/20 17/9
17/13 18/1 18/12 20/17 21/22
23/24 27/18
August 2020 [2] 20/17 21/22
August 21 [5] 16/18 16/20
17/9 17/13 18/1
author [18] 22/14 22/21 22/22
23/13 23/21 23/22 24/2 27/5
27/9 27/10 32/9 34/6 35/14
35/21 35/21 36/12 45/23 50/9
authorized [1] 103/11
authors [2] 23/14 23/16
authorship [1] 19/8
availability [1] 44/22
available [9] 51/22 54/6 54/7
54/25 56/11 66/9 66/11 66/19
118/10

**A**

avoid [3] 55/24 85/16 86/17
award [2] 14/11 14/25
aware [3] 34/21 45/24 60/6
away [6] 6/20 17/4 42/18
50/10 65/4 76/4
awful [1] 98/22

**B**

back [13] 3/24 4/5 43/16
44/10 45/22 54/22 56/6 70/19
72/14 87/23 94/17 109/16
115/9
bar [6] 53/24 60/22 61/2
61/22 62/2 62/15
bare [3] 26/14 27/4 36/12
barely [1] 22/4
barred [2] 109/9 109/10
barring [1] 61/19
bars [4] 52/9 53/15 58/5 63/16
base [1] 51/21
based [9] 33/19 35/16 36/3
49/12 68/5 73/6 109/2 109/2
109/7
basic [1] 81/25
basically [7] 67/17 78/11
83/20 84/1 84/21 97/23 114/5
basis [3] 25/19 87/9 109/3
battle [3] 51/16 51/21 65/14
be [151]
Beacon [1] 72/18
bear [2] 59/11 62/7
beast [1] 7/24
became [2] 40/6 112/20
because [82] 7/15 7/24 8/3
8/7 8/12 9/11 11/23 12/16
17/4 18/2 22/25 25/23 26/5
26/8 34/25 37/14 38/3 39/19
40/7 42/25 44/17 44/18 44/22
45/7 49/10 49/25 50/5 51/24
52/17 52/21 54/25 55/3 55/19
55/24 56/11 56/13 57/6 57/11
58/10 59/11 59/22 60/11 61/6
61/10 64/25 65/13 66/10
66/19 66/25 67/2 67/3 67/4
70/7 73/6 73/21 74/13 75/9
76/12 77/5 78/24 79/25 80/13
82/11 84/24 87/1 89/6 90/2
92/5 94/2 94/6 94/24 97/19
100/18 101/11 103/22 104/12
114/13 114/19 116/22 118/5
119/11 119/24
become [1] 96/20
been [21] 8/1 19/12 20/15
20/16 21/11 34/20 36/10
36/24 39/6 40/18 51/25 53/5
67/22 68/4 78/9 80/11 80/13
80/14 84/9 84/12 87/4
before [17] 1/18 4/14 4/17 5/4
6/10 20/4 27/23 63/3 68/10
68/20 76/15 76/23 77/17
78/17 105/6 115/2 116/5
beg [1] 117/11
began [2] 27/22 27/23
beginning [5] 3/3 27/18 77/18
81/8 88/13
behalf [2] 3/21 36/8
behind [2] 3/10 3/13
being [13] 22/14 22/14 22/22

28/5 32/18 46/5 46/10 81/6
93/1 65/6 101/8 104/1 125/2
believe [21] 10/21 16/15
16/21 17/9 19/15 21/21 26/12
28/3 31/7 33/23 34/3 35/5
43/22 44/2 46/23 52/15 62/19
91/24 96/10 97/1 112/16
bell [2] 11/1 38/23
bench [2] 54/20 59/19
beneficial [56] 5/2 7/15 14/25
15/8 22/7 22/14 23/18 24/5
24/25 25/17 25/19 26/7 26/18
26/25 28/23 29/7 29/19 30/9
30/14 30/19 30/23 31/13
32/18 33/2 33/6 33/18 34/15
35/13 36/3 36/11 36/14 36/15
36/20 37/4 37/14 38/1 38/3
39/4 39/16 39/18 39/19 39/25
46/3 46/14 46/24 47/3 47/10
47/18 48/7 50/3 50/6 50/8
50/16 53/3 81/20 94/23
benefit [2] 43/8 44/15
benefited [1] 81/22
besides [1] 34/10
best [9] 4/23 16/5 50/3 58/23
63/24 71/6 73/10 74/12 84/4
better [2] 79/25 92/24
between [3] 19/15 66/23
102/21
beyond [3] 18/24 28/11 34/4
bifurcated [1] 115/8
bifurcation [1] 74/21
big [11] 7/13 69/11 69/11
69/12 73/15 73/25 74/13
82/15 93/24 94/9 99/15
biggest [1] 65/17
billion [12] 57/15 64/17 65/9
65/21 69/6 75/3 75/13 75/17
76/5 76/13 76/23 83/21
billions [1] 73/17
binding [1] 13/13
bit [13] 8/13 49/7 53/23 55/21
57/13 59/1 76/22 76/25 78/4
87/17 93/18 113/1 120/21
black [2] 15/19 89/18
black-letter [1] 15/19
blame [1] 12/7
blaming [1] 82/24
blank [2] 70/21 71/7
BLITZER [2] 2/4 3/11
Bloomfeld [1] 3/8
blur [1] 54/17
blurred [1] 51/13
board [1] 37/23
boil [1] 97/24
Bonnie [2] 122/7 122/8
book [4] 68/3 68/4 69/3 78/8
books [4] 44/20 45/2 68/7
68/8
both [27] 9/6 14/14 14/23 16/9
20/6 20/7 22/13 24/4 44/6 46/5
47/13 48/21 51/7 52/21 64/20
73/5 85/12 88/1 88/14 90/24
96/22 99/12 104/4 108/25
109/9 109/10 118/12 120/5
bottom [1] 16/24 83/5
bought [1] 68/8
bound [1] 42/16
boy [1] 52/1

Brannon [1] 3/25
Brannon Latimer [1] 3/25
bridge [1] 104/9
brief [7] 16/5 39/13 40/25
41/10 41/13 41/22 42/2
briefed [1] 60/12
briefing [7] 16/6 22/4 22/6
40/5 51/6 52/25 72/2
briefly [1] 95/18
briefs [2] 13/12 98/14
bring [9] 58/17 59/11 59/19
62/12 94/8 94/11 99/18
109/25 111/6
bringing [8] 4/5 5/21 53/25
60/3 69/18 107/15 109/2
109/8
brought [8] 58/25 59/3 59/4
59/6 62/7 113/11
bucket [2] 9/7 78/1
buckets [1] 9/2
bud [3] 100/14 103/20 103/21
bug [1] 10/22
buildings [1] 61/17
built [2] 67/18 67/22
Bull [2] 68/16 68/19
bullish [1] 54/16
bunch [1] 120/25
burden [2] 14/6 40/1
burden's [1] 39/8

**C**

C.A [1] 1/6
calculation [4] 9/18 77/9 78/22
94/1
calendar [1] 113/6
California [2] 12/20 13/2
call [7] 52/6 84/3 88/17 96/24
111/8 111/8 113/3
called [2] 25/15 86/22
calls [1] 111/5
came [2] 74/21 99/23
camp [1] 4/9
can [93] 4/8 5/21 5/25 6/6
6/19 7/22 8/2 8/5 8/6 9/12
10/23 13/10 13/11 13/19
13/25 15/7 16/6 17/25 18/11
33/17 33/22 33/25 34/9 34/13
35/7 36/1 36/1 36/15 37/4
42/25 43/6 43/16 45/24 49/12
50/21 50/21 51/10 53/1 56/15
56/23 56/25 58/16 59/11
60/18 60/24 61/13 62/7 66/7
70/18 71/3 72/24 73/20 75/7
79/1 79/2 82/5 85/4 87/8
88/11 88/17 90/15 90/17
94/10 94/11 95/6 95/15 97/12
99/22 100/7 101/8 101/11
102/14 103/22 106/4 106/7
106/10 107/1 111/12 114/4
114/8 114/9 114/19 115/1
115/3 116/2 116/4 116/5
117/6 117/9 117/23 119/5
120/24 121/8
can't [16] 12/6 17/20 28/14
38/15 45/4 79/23 80/10 80/11
80/15 80/20 80/24 82/13
82/21 96/8 97/3 104/8
cannot [2] 53/9 62/24
capable [1] 89/2
captured [1] 18/5

care [4] 49/15 63/5 94/14
113/24
CAROLYN [2] 2/6 3/11
CAROLYN HOMER [2] 2/6
3/11
carries [1] 42/10
carve [1] 105/10
case [153]
cases [35] 9/22 10/12 10/13
10/19 12/13 12/14 17/20
26/11 26/13 26/19 33/24
34/24 36/10 50/14 51/22
58/16 63/19 63/23 65/19 67/8
70/17 70/25 71/21 72/9 72/17
73/10 78/8 80/18 82/11 87/2
87/5 90/9 91/8 92/1 93/1
cast [1] 5/13
Catalys [5] 14/20 14/21 48/14
48/16 64/21
causal [3] 56/19 57/7 57/7
caused [1] 69/18
ceded [1] 60/11
certainly [6] 34/25 35/3 46/9
47/22 94/11 120/11
CERTIFICATE [1] 122/2
certify [1] 122/4
cetera [2] 17/2 31/23
CFC [1] 1/6
chairs [1] 109/17
chance [1] 117/3
characterize [1] 31/16
characterizing [1] 48/7
characters [1] 5/14
charge [3] 114/2 114/14 115/2
CHIN [9] 2/5 3/10 5/12 10/4
14/13 36/18 39/2 40/3 43/15
Chirco [3] 67/11 67/14 67/14
choice [1] 105/2
Circuit [22] 11/12 12/15 13/24
34/18 67/11 67/12 71/17
72/11 73/1 73/15 84/5 84/12
84/13 87/15 87/19 87/21
87/22 87/25 88/3 90/24 91/4
116/25
circumstance [3] 34/2 35/1
80/20
circumstances [12] 6/11 24/3
34/4 34/14 61/2 62/2 62/18
63/15 63/22 64/19 67/6 67/10
cite [11] 12/18 34/9 34/13
35/18 41/22 42/9 44/5 44/10
50/9 54/15 98/14
cited [7] 36/10 36/18 39/2
61/17 63/19 71/2 77/16
cites [4] 22/18 36/2 71/17
87/2
citing [1] 85/10
claim [36] 8/2 16/21 17/10
18/1 21/18 48/13 52/9 53/15
53/25 54/4 57/15 58/18 58/24
58/25 59/3 59/5 59/6 59/13
59/19 60/3 60/9 60/23 61/19
61/25 68/6 72/21 81/7 83/19
88/21 89/20 89/20 89/24
108/8 109/4 109/7 109/8
claimed [1] 40/16
claims [13] 15/17 15/17 16/1
17/2 17/16 20/18 21/14 27/10
28/5 28/7 89/12 89/14 90/1
clarification [2] 24/15 112/22

C

clarified [1] 81/14
clarify [2] 80/3 97/12
classes [1] 60/7
classic [1] 31/8
clause [1] 40/13
clear [15] 16/20 17/9 18/25
19/6 28/2 39/9 39/10 62/14
63/13 79/6 79/17 84/11 92/2
92/19 92/25
cleared [1] 114/8
clearer [1] 91/12
clearly [5] 18/8 26/15 43/2
88/13 92/25
clerks [1] 17/20
client [1] 27/21
close [4] 4/3 68/17 68/22
119/17
closely [1] 24/3
closer [1] 26/5
closest [2] 34/3 34/24
closing [1] 103/8
co [2] 26/6 29/1
co-marketer [1] 29/1
co-plaintiff [1] 26/6
coauthor [1] 23/21
code [15] 38/9 55/18 58/23
60/8 80/25 82/25 98/21
102/12 102/14 102/22 103/5
115/23 115/24 115/24 115/25
codification [1] 25/19
codified [1] 25/16
COHEN [2] 2/6 3/11
colleague [3] 35/9 71/2 90/23
collect [1] 9/12
collectively [1] 115/10
COLM [1] 1/18
combination [4] 8/9 86/19
86/19 102/23
come [24] 4/3 9/25 11/14
29/11 36/1 39/8 43/12 43/16
44/10 56/6 57/6 60/16 72/10
76/7 83/9 90/5 94/17 96/15
99/20 100/15 101/14 106/2
115/9 119/24
comes [11] 6/2 9/18 34/3
51/21 54/16 54/22 58/1
89/18 91/11 111/12 111/24
comfort [1] 103/19
coming [6] 45/22 55/7 77/21
78/15 78/16 81/6
commenced [1] 3/3
commencing [1] 93/6
comment [1] 82/23
commentary [1] 92/10
comments [1] 83/15
commercialization [1] 31/23
common [3] 98/16 99/7 103/4
communications [1] 107/9
companies [2] 37/18 73/25
company [9] 26/6 30/12 39/15
45/2 45/8 46/12 100/4 101/7
103/13
compare [1] 68/10
competitor [1] 65/4
complaining [1] 12/8
complaint [2] 21/20 28/18
completely [1] 67/23
component [2] 78/3 78/4

components [1] 78/1
comport [1] 108/16
computer [2] 40/11 101/7
concern [1] 43/3
concerned [1] 52/17
conclude [2] 88/25 116/7
concluded [1] 121/17
conclusive [1] 13/7
conduct [1] 55/7
confer [4] 39/15 41/19 49/8
49/17
conference [3] 1/14 114/3
114/14
confused [1] 58/2
confusing [1] 92/4
Congress [3] 108/15 108/19
108/23
connected [1] 86/21
CONNOLLY [1] 1/18
consequence [7] 48/12 48/16
48/18 48/23 108/22 108/24
110/24
consequences [3] 48/11
108/16 108/20
consequential [3] 5/10 9/10
50/20
consider [1] 87/14
considered [3] 6/12 14/18
14/21
consistent [1] 28/17
consolidated [2] 44/20 45/2
constitute [1] 46/9 86/12
constitutes [1] 24/5
constitutional [7] 85/6 85/17
85/17 86/17 87/9 87/11 87/13
constrained [1] 121/5
construction [2] 61/18 91/7
consumers [1] 69/2
contemplates [1] 93/7
contend [1] 80/25
contents [1] 107/9
contest [1] 97/19
contested [1] 19/12
context [5] 34/20 57/1 72/15
77/4 96/16
CONTINUED [1] 2/1
contract [3] 18/25 19/25 21/10
contributor [1] 23/6
controls [2] 18/20 18/22
conveys [1] 20/21
convoyed [2] 57/1 95/7
copies [1] 69/2
copy [3] 41/13 82/3 82/6
copying [5] 38/8 38/10 58/21
58/22 59/23
copyright [43] 17/21 21/3
21/18 22/12 23/1 23/14 23/24
25/2 25/7 25/11 25/22 26/3
27/7 29/2 31/5 31/9 31/11
32/5 32/12 33/18 34/20 35/15
37/17 40/10 40/14 42/13
45/16 47/7 51/22 53/25 56/24
67/16 67/17 67/19 68/6 71/17
71/21 72/15 73/2 80/12 82/11
86/9 93/1
copyrighted [7] 5/3 23/7 23/21
26/1 31/24 47/20 47/22
copyrights [19] 5/3 15/1 20/18
26/24 27/9 28/22 32/2 32/8
39/20 42/13 46/24 47/11 67/1

48/1 48/5 48/9 59/9 60/4 60/7
corners [1] 16/24
corporation's [1] 97/14
correct [17] 21/21 37/20 37/23
53/16 58/7 83/7 94/4 97/7
98/4 103/17 104/3 106/13
110/11 114/5 116/2 118/3
118/11
correspondence [1] 33/23
Cortner [4] 26/13 26/17 39/2
39/2
costs [1] 65/13
could [34] 6/12 20/1 20/1 20/2
37/14 38/11 39/22 41/9 46/8
46/9 49/4 49/25 50/17 52/20
57/2 57/17 58/23 61/18 65/6
65/20 81/18 88/19 99/11
101/19 103/19 106/8 111/8
112/19 112/24 113/22 117/11
119/20 120/21 121/6
couldn't [5] 67/6 78/19 91/12
109/6 119/14
counsel [3] 2/7 2/17 3/9
count [3] 38/18 56/14 65/13
course [11] 4/10 9/13 22/12
23/14 24/2 37/13 74/7 85/4
88/11 99/5 101/10
court [45] 1/1 1/18 4/17 11/6
11/19 24/15 43/24 55/8 58/16
63/4 67/10 67/13 67/25 68/11
68/12 68/18 68/23 70/20 71/2
71/24 72/4 72/14 73/20 75/5
84/20 85/15 86/1 86/6 86/7
86/7 86/13 86/22 87/24 88/15
88/16 91/9 93/4 93/8 95/24
104/8 108/22 116/9 122/2
122/8 122/9
Court's [3] 63/22 68/21 121/8
courtroom [1] 3/3
courts [3] 11/20 72/12 87/3
cover [1] 56/24
covered [2] 23/1 32/11
covers [1] 27/17
create [1] 26/24
creating [1] 43/25
creature [1] 80/12
credible [1] 55/1
credit [1] 75/2
credited [1] 90/8
cross [2] 21/24 104/9
Cross-talking [1] 21/24
Crown [1] 55/11
curative [2] 100/7 104/8
cure [2] 100/10 100/13
curious [2] 102/18 114/1
current [1] 25/9
cut [5] 5/16 120/24 121/2
121/2 121/2
cuts [1] 5/22

D

D.I. [8] 38/15 41/3 41/4 41/12
41/24 42/3 42/4 42/9
D.I.-4 [1] 42/4
D.I.-458 [3] 41/4 41/24 42/9
D.I.-490 [1] 38/15
D.I.-516 [2] 41/12 42/3
D.I.-90 [1] 41/3
Dairy [7] 72/18 88/16 89/1
89/4 89/9 89/9 91/25

Dairy Queen [2] 89/19 91/25
damaged [1] 82/24
damages [57] 7/23 8/1 8/2
8/19 8/22 9/6 9/11 9/17 9/24
14/11 14/22 14/25 15/3 15/4
15/18 16/21 17/2 17/10 20/19
41/19 42/14 42/18 45/17
48/14 53/1 56/10 57/16 60/19
73/19 75/3 75/17 76/6 76/14
77/9 77/9 77/15 77/16 78/1
80/7 80/20 80/21 81/7 83/19
86/11 86/20 88/14 88/21
88/22 107/19 107/21 107/24
107/25 108/2 108/8 108/10
115/5 115/16
DAMLE [3] 2/4 3/10 109/19
date [14] 4/18 17/1 17/12
17/14 17/24 18/9 18/17 19/1
19/4 20/5 20/18 20/23 27/20
42/12
dated [1] 16/18
dates [1] 4/15
day [11] 43/11 65/22 76/25
77/20 83/1 99/13 113/4
116/17 117/7 117/24 118/13
days [4] 118/2 118/13 118/13
118/18
deal [4] 36/11 75/7 87/8 95/8
dealing [3] 10/6 10/7 89/2
dealt [3] 36/18 61/13 87/16
decide [15] 7/6 7/8 7/14 13/6
13/11 13/15 13/16 71/5 73/20
84/17 84/18 84/19 85/23 86/6
95/24
decided [9] 11/2 11/4 18/13
52/6 53/4 53/5 70/4 71/7
84/10
decides [2] 7/5 11/24
deciding [1] 86/23
decision [22] 5/10 9/9 9/10
12/22 13/1 13/13 14/1 18/19
55/12 67/9 73/6 74/18 74/18
75/25 83/20 85/9 86/1 86/3
86/8 94/20 117/9 117/11
declaration [1] 58/5
declines [1] 71/25
deductions [1] 114/25
deemed [1] 67/10
defendant [1] 77/7
defendants [6] 1/9 2/17 67/15
69/7 69/9 93/24
defendants' [1] 9/23
defending [1] 22/4
defense [6] 51/16 54/8 109/1
109/9 109/9 115/22
defenses [1] 55/23
defined [1] 50/6
defining [1] 50/3
definition [1] 29/7
DeFranco [1] 3/12
DELAWARE [6] 1/2 1/16
18/23 18/25 52/4 55/12
delay [15] 5/21 6/6 6/25 54/6
58/10 62/6 69/17 93/6 107/15
108/17 108/20 108/22 108/24
109/2 109/8
deliberate [1] 119/19
delineate [1] 37/1
delivers [1] 20/21
denial [2] 88/21 112/5

**D**

denied [7] 69/19 107/6 111/17 111/21 112/3 112/6 112/15
Denise [1] 3/12
deny [6] 67/3 67/4 69/14 104/18 110/13 112/13
denying [1] 69/22
dependent [1] 49/24
depending [2] 69/20 110/22
depends [1] 10/5
deposition [1] 121/1
depositions [4] 102/8 102/10 102/16 121/5
derivation [2] 31/3 87/18
derivative [1] 31/14
derived [5] 25/2 25/6 25/10 26/2 39/20
derives [3] 30/8 30/20 30/25
describes [2] 25/4 35/13
describing [2] 25/18 34/4
desensitization [1] 75/5
desensitized [1] 74/15
design [1] 67/18
desire [1] 64/16
destroy [3] 61/17 67/24 68/21
destruction [2] 68/7 68/16
determination [2] 54/9 56/21
determine [2] 62/13 93/8
determining [2] 62/8 93/4
develop [1] 67/16
development [43] 1/3 15/16 15/18 15/19 17/1 18/5 20/22 21/12 21/12 21/15 21/17 21/22 22/23 22/25 25/12 25/25 28/4 28/7 28/25 29/2 30/7 31/13 31/24 32/4 32/14 32/16 32/17 32/20 32/23 40/12 40/21 42/16 43/4 44/14 44/16 44/18 45/13 46/18 48/15 53/1 56/11 67/16 80/15
Development's [1] 32/1
diagram [1] 8/13
dicta [1] 91/10
dictate [1] 5/3
did [24] 13/20 18/14 19/13 19/13 24/13 27/14 27/21 38/21 41/18 42/25 47/1 47/3 47/13 50/25 52/15 68/20 77/11 85/19 88/15 88/16 96/15 100/6 116/24 119/1
didn't [11] 20/15 27/22 36/19 38/12 52/16 58/14 58/20 67/7 76/2 88/7 115/22
difference [3] 66/23 76/24 119/15
different [12] 17/13 43/1 59/1 80/7 81/10 87/17 94/21 95/20 96/8 100/22 107/23 110/20
differently [1] 38/12
direct [7] 32/21 43/17 43/20 45/19 47/2 120/24 121/6
direction [1] 45/25
directly [13] 30/25 31/3 31/18 32/2 33/14 36/24 37/16 45/12 45/25 47/25 48/4 84/13 103/11
director [2] 101/24 102/2
disagree [6] 62/22 63/10 67/2 78/19 88/11 120/17

disagreeing [1] 78/25
disagreement [1] 69/24
disagrees [1] 84/15
discovery [1] 43/9
discuss [3] 48/10 111/6 120/9
discussed [4] 34/22 63/20 65/19 67/8
discusses [3] 33/21 34/17
discussing [1] 67/13
discussion [3] 63/23 76/1 107/13
disgorge [5] 56/24 56/25 81/13 82/22 94/24
disgorgement [80] 7/5 7/17 8/7 8/9 8/10 8/14 8/15 8/15 8/23 9/7 9/11 9/13 9/17 11/14 11/16 50/18 51/5 51/17 52/10 53/15 54/4 54/23 55/19 56/4 56/10 56/15 56/16 57/12 57/15 59/13 59/20 62/13 63/17 64/1 64/14 64/16 64/17 66/12 66/17 68/12 68/14 69/17 70/2 70/9 70/17 70/21 71/7 71/19 71/22 72/24 73/2 73/7 73/8 73/18 73/20 74/13 75/2 75/10 77/8 77/24 79/4 80/6 80/12 80/19 81/4 81/9 81/18 86/23 91/15 91/18 92/3 93/1 94/9 94/25 95/4 95/11 107/14 114/23 116/7 117/9
disgorging [1] 58/5
dismiss [1] 63/1
dismissed [1] 61/9
dispense [1] 90/15
dispensed [1] 52/19
dispenses [1] 111/16
dispute [8] 11/16 19/11 59/18 71/23 80/25 91/14 91/15 105/8
disputed [4] 19/11 43/25 60/10 115/19
disputes [1] 113/19
distinction [1] 88/19
distinguish [1] 26/10
distinguished [1] 75/9
distinguishes [1] 27/5
district [17] 1/1 1/2 1/18 11/13 11/14 12/20 13/2 55/11 71/13 71/16 72/5 72/12 85/9 85/11 91/9 93/4 122/9
do [91] 4/12 4/21 5/6 6/18 8/4 8/17 8/18 8/24 8/25 9/14 12/16 13/18 14/5 14/23 15/1 16/4 22/1 22/6 22/20 23/5 24/6 24/8 24/10 24/21 24/22 27/8 35/2 36/5 38/5 38/18 41/5 44/8 46/23 47/14 48/24 49/3 49/11 49/16 49/21 50/17 50/17 50/18 51/10 52/21 53/10 56/25 57/3 59/22 60/14 60/24 62/16 63/9 64/5 64/22 67/7 67/17 70/17 73/18 77/17 80/4 80/21 84/5 85/18 86/17 90/13 90/16 91/16 91/17 93/20 96/23 96/24 97/1 97/6 100/24 106/21 107/3 109/21 112/11 113/3 113/8 113/10 114/3 114/14 115/3 116/16 116/16 116/23 119/8 120/4 120/5 121/6

**E**

each [3] 91/1 91/21 116/17
ear [1] 10/22
earlier [1] 43/19
early [3] 8/17 72/19 77/11
earned [1] 68/25
Eastern [2] 85/8 85/11
economic [2] 22/25 23/16

Docket [1] 16/12
document [2] 38/16 43/19
documents [2] 58/14 60/9
does [38] 7/16 9/21 13/4 15/8 15/10 23/9 28/9 28/22 31/18 33/22 35/3 35/4 39/15 43/3 43/19 47/24 50/2 50/9 56/6 56/16 59/15 64/4 66/16 79/12 79/20 80/18 81/8 82/3 85/22 86/9 92/22 93/9 93/17 96/19 96/20 103/18 108/9 112/19
doesn't [20] 7/15 17/16 17/25 29/8 37/6 38/3 38/18 48/8 54/12 56/24 59/12 61/25 72/20 75/13 77/15 88/18 100/15 103/16 106/15 106/16
doing [3] 12/9 39/18 112/3
dollar [2] 57/15 65/2
dollars [1] 73/17
dominating [1] 91/25
don't [106] 4/3 6/8 6/13 7/16 10/10 11/5 12/15 12/22 13/5 13/10 13/14 13/16 14/19 15/21 15/22 15/25 16/4 17/23 18/24 19/10 21/5 22/9 27/16 27/24 28/14 34/16 35/9 35/23 38/11 38/13 41/3 41/4 41/19 44/8 44/9 46/6 48/6 48/20 51/10 53/4 54/11 54/25 55/8 56/13 56/14 57/2 59/22 60/5 62/19 63/5 63/21 63/21 64/7 64/12 65/9 65/13 66/1 66/5 66/9 69/6 69/8 69/9 74/9 77/12 77/17 78/23 80/4 81/4 84/4 84/14 84/17 85/20 86/4 87/11 88/7 88/18 89/9 91/15 92/2 92/17 94/14 94/20 95/8 96/17 99/9 100/10 101/11 103/22 104/1 104/10 104/24 106/19 107/4 110/14 110/16 112/9 112/10 115/1 115/5 115/21 116/25 117/2 117/3 117/22 121/1 121/3
done [11] 18/12 20/24 27/19 55/17 82/14 103/11 115/1 118/7 119/1 119/7 119/13
down [8] 10/4 35/5 51/21 64/9 64/11 97/24 101/19 120/24
downstream [1] 57/1
drawn [1] 88/7
due [2] 38/2 45/2
Duff [10] 19/9 22/21 23/5 23/6 23/22 24/2 40/6 40/7 43/5 47/8
Duff's [1] 21/7
during [3] 68/25 98/2 101/6
duties [7] 30/5 98/8 98/20 98/23 98/24 101/2 103/5
duty [12] 24/1 25/24 30/3 30/7 32/20 33/18 33/19 33/21 44/18 44/21 44/25 48/2

23/17 25/1 25/5 25/10 26/2 26/9 29/13 29/18 32/11 32/19 33/13 34/11 39/20 43/17 43/20 44/15 45/19 47/2 50/11 65/6 65/20
economics [1] 26/23
Eddy [1] 71/1
effect [6] 13/12 19/1 35/6 41/7 54/6 69/9
effective [21] 16/19 17/1 17/12 17/14 17/17 17/24 18/2 18/9 18/17 19/2 19/3 19/4 20/3 20/18 20/23 27/15 38/6 42/11 42/17 46/25 47/15
effectively [1] 14/19
efficient [1] 49/9
efforts [1] 47/9 47/11
egregious [2] 55/7 61/14
eight [2] 65/5 84/5
Eight Circuit [1] 84/5
eight years [1] 65/5
Eighteen [1] 44/7
Eighth [1] 12/15
Eighth Circuit [1] 12/15
either [15] 10/13 10/19 13/7 14/10 14/16 14/18 14/24 23/23 34/1 45/25 45/25 71/5 73/8 86/24 117/19
eligibility [1] 94/22
ELIZABETH [2] 2/15 3/23
ELLIS [2] 3/13 3/22
else [8] 20/25 29/3 32/24 43/5 45/18 92/18 105/24 109/11
embodied [1] 31/6
employed [1] 104/14
employee [7] 19/8 23/7 47/8 97/25 97/25 101/5 101/9
employee's [1] 103/12
employees [7] 55/18 95/23 101/1 101/21 101/23 103/9 121/1
employment [2] 98/2 101/6
end [7] 7/8 65/22 76/24 77/20 82/25 85/4 99/13
engineer [2] 102/1 102/2
engineering [1] 101/25
engineers [1] 103/2
enjoys [1] 44/15
enough [7] 58/17 58/20 69/12 69/22 81/14 88/2 112/21
enrichment [5] 8/23 81/18 81/24 92/16 95/5
enrichment/accounting/disgorg ement [1] 8/23
ensure [1] 28/6
enter [2] 27/21 27/23
entering [1] 28/1
entire [3] 27/17 75/12 114/6
entirely [3] 41/17 109/2 109/2
entirety [2] 32/5 61/19
entities [2] 55/17 94/24
entitled [2] 82/22 83/1
entity [7] 22/20 22/23 23/20 45/12 56/23 95/20 100/22
equation [1] 80/10
equitable [44] 11/15 25/15 25/19 25/22 26/7 26/25 30/20 30/22 31/9 37/12 46/2 46/4 46/9 51/16 51/18 54/3 54/4 54/23 57/11 61/1 62/1 64/2

E

**E**

equitable... [22] 66/12 66/16
68/13 70/14 72/8 88/17 88/23
89/11 89/14 89/20 90/1 91/1
91/12 91/15 91/16 91/23
91/24 92/15 92/20 93/1 95/4
106/5
equity [3] 55/8 87/18 87/18
Era [2] 67/11 68/1
ergo [1] 52/23
error [1] 13/25
escape [1] 6/9
especially [2] 52/3 94/11
ESQ [16] 1/23 1/23 2/3 2/4
2/4 2/5 2/5 2/6 2/6 2/10 2/13
2/14 2/14 2/15 2/15 2/16
essentially [5] 25/18 31/10
55/14 67/9 99/12
establish [3] 14/7 46/14 50/16
established [1] 46/23
et [2] 17/2 31/23
even [28] 4/3 10/22 12/13
13/11 15/22 26/5 28/11 33/20
38/14 51/8 55/13 61/18 62/15
71/16 72/1 75/17 80/14 80/23
83/10 83/14 84/4 88/16 89/20
90/7 93/7 93/23 114/23 121/1
evenings [2] 117/15 117/20
event [1] 117/24
ever [4] 6/13 27/7 38/21 57/17
everybody [1] 73/22
everybody's [1] 120/14
everyone [1] 29/3 73/16
everything [10] 4/7 16/3 20/7
20/25 21/1 42/18 55/17 110/3
114/19 119/21
evidence [6] 37/11 70/1 70/4
76/9 102/21 116/15
evidentiarily [1] 66/18
exact [2] 26/20 77/2
exactly [2] 58/8 91/4
examinations [1] 121/6
example [22] 22/12 25/3
26/12 34/4 34/6 34/7 34/8
34/9 34/22 35/3 35/11 35/14
35/19 35/20 35/23 45/22 50/9
68/14 76/10 82/15 99/16
103/7
examples [1] 52/7
except [6] 27/12 43/10 48/15
70/25 73/4 90/24
excess [1] 65/21
exchange [3] 22/15 35/15
36/13
exchanges [1] 36/12
exclude [2] 29/3 29/8
exclusive [27] 27/7 28/22
28/25 29/12 29/16 29/19
29/22 29/25 30/15 30/19
30/21 31/1 31/9 31/13 31/15
31/18 32/2 32/6 32/16 32/17
32/22 33/14 34/7 37/17 47/4
47/25 50/11
exclusivity [1] 31/11
excuse [2] 83/17 116/16
exemplary [1] 24/25
exercise [1] 37/16
Exhibit [6] 16/10 16/11 16/13
18/5 44/2 44/4

**F**

Exhibit 26 [2] 44/2 44/4
Exhibit 27 [4] 16/10 16/11
16/13 18/5
exist [3] 19/22 20/15 36/3
existed [1] 21/16
existence [2] 39/14 54/13
expect [2] 102/13 120/12
expectations [1] 120/14
expert [4] 77/3 77/16 78/12
103/8
explain [7] 5/19 5/21 5/23
16/5 30/14 69/5 69/22
Explained [1] 81/14
explaining [1] 89/23
explains [2] 24/25 75/25
exploitation [5] 25/2 25/6
25/11 26/3 39/21
express [1] 50/6
extent [3] 19/19 21/6 120/12
extraordinary [15] 6/11 61/1
62/2 62/17 62/23 63/15 63/22
64/19 64/25 65/18 65/23 67/5
67/10 67/21 67/25

**F**

F. [1] 36/21
F. Supp [1] 36/21
F.3d [1] 71/18
F.Supp.3d [1] 71/13
face [5] 15/23 19/1 54/11
56/16 66/24
fact [22] 19/22 23/3 23/15
31/21 35/4 37/8 38/1 43/25
45/2 45/3 59/23 59/24 60/10
60/12 63/6 92/11 99/1 99/2
99/3 104/4 104/12 104/16
factoring [1] 118/9
factors [2] 26/24 78/9
facts [11] 26/4 26/20 36/25
48/6 55/8 59/17 63/5 66/24
110/3 115/15 115/21
factual [1] 19/11
failed [2] 36/22 43/19
fair [19] 10/16 10/23 11/22
11/25 12/14 56/22 57/4 65/24
71/12 73/4 74/11 74/16 75/1
75/11 79/20 93/22 93/23
94/20 112/21
Fair Isaac [10] 10/16 11/22
11/25 71/12 73/4 74/11 74/16
75/1 79/20 93/22
Fair Isaac's [2] 10/23 12/14
fairly [1] 14/11
fairness [1] 95/5
fall [1] 64/4
falls [1] 60/15
familiar [5] 10/24 85/3 85/8
86/2 120/24
famous [1] 82/18
far [4] 16/6 17/25 49/14 52/17
fast [2] 18/16 87/20
favor [2] 53/6 111/2
favors [1] 111/3
FDA [4] 58/14 59/5 59/25
60/9
February [8] 4/5 93/19 95/13
113/5 116/3 116/6 119/25
120/10
February 6 [5] 4/5 93/19
95/13 116/3 116/6

February 6th [2] 113/5 120/10
February 6th [6] 7/7 119/25
federal [15] 11/12 13/24
34/18 71/17 72/11 73/14
84/12 87/15 87/19 87/21
87/22 87/25 90/24 91/3
fee [1] 24/8
feeds [1] 51/7
feels [1] 104/7
fees [3] 35/16 50/13
Feltner [6] 85/14 85/25 86/2
86/3 91/6 91/11
few [1] 12/13
FICO [1] 75/1
fiduciary [16] 24/1 25/24
26/22 29/1 30/3 30/4 30/7
32/14 32/20 33/18 33/19
33/21 44/18 44/21 44/25 48/2
figure [4] 4/23 34/24 76/14
77/21 92/14 99/8 99/20
101/14
figuring [1] 118/13
filed [1] 112/2
film [3] 68/16 68/17 68/21
final [1] 114/15
financial [1] 35/22
find [5] 35/7 35/8 35/9 44/5
45/4
finding [1] 36/11
findings [2] 7/8 71/5
fine [8] 5/15 49/10 51/12
72/22 85/11 106/15 113/17
119/14
finished [1] 74/10
firmly [1] 10/21
first [24] 3/12 14/9 16/17
30/10 35/11 41/25 47/6 60/18
65/12 68/2 70/25 71/12 80/5
83/10 83/16 96/7 100/15
106/4 107/22 108/7 114/2
118/2 118/13 119/13
fit [1] 62/17
fix [1] 104/23
FLACS [2] 94/25 95/1
flag [1] 27/2
flagged [2] 53/23 54/21
flatly [1] 53/20
flavor [1] 109/9
flexibility [1] 120/7
flow [4] 31/18 43/25 46/4
48/11
flows [3] 31/20 44/14 48/12
fly [1] 49/17
focus [1] 29/22
folks [3] 54/14 105/14 113/15
followed [1] 47/11
following [1] 24/24
footnote [5] 41/14 42/5 91/13
91/19 92/20
Footnote 1 [2] 91/13 92/20
Footnote 4 [2] 41/14 42/5
foregoing [1] 122/4
forfeiture [1] 33/5
forget [2] 52/13 75/5
form [5] 34/11 35/22 37/15
47/2 50/12
formally [1] 4/18
former [6] 22/14 22/15 22/24
56/17 120/25

forth [5] 25/12 29/1 32/13
54/11 68/16
fortunate [1] 88/2
forward [2] 39/8 68/24
found [9] 26/18 33/17 35/18
36/3 36/16 41/22 56/21 59/7
65/17
four [11] 18/24 31/21 41/4
42/9 42/19 109/12 109/14
117/24 118/2 118/13 118/18
four-day [1] 117/24
fraction [2] 68/25 69/7
frame [2] 38/9 111/12
frank [7] 2/14 3/22 6/23 8/5
36/7 52/21 56/8
frankly [2] 10/1 113/23
Freeman [4] 12/19 12/24 13/5
84/20
Friday [5] 4/15 113/20 118/10
119/6 119/14
friend [8] 10/20 12/4 74/9
74/17 74/19 77/11 87/6
120/18
friends [3] 84/11 113/18 117/4
front [19] 6/15 13/25 37/7
59/20 77/10 83/18 85/5 85/12
93/25 94/12 94/13 94/17
94/19 95/11 96/2 99/14
100/19 103/17 107/21
full [5] 28/4 28/7 28/9 53/21
54/2
fully [1] 56/8
functions [2] 47/19 47/21
fundamental [2] 108/14
108/24
funny [1] 22/3
further [4] 49/23 50/2 78/18
110/18
future [1] 68/15

**G**

gained [2] 98/1 101/5
gains [1] 68/14
gating [3] 52/21 61/7 61/19
gave [7] 15/24 21/5 23/11
27/13 34/6 42/17 100/1
general [1] 37/18
generally [3] 47/21 48/22
86/11
get [31] 4/7 15/25 33/12 43/6
57/17 59/12 59/18 62/12
64/12 69/16 70/7 75/19 77/5
77/10 83/11 84/23 87/11 99/9
100/7 104/9 104/10 111/18
114/4 114/8 114/19 115/1
116/5 117/8 118/21 119/7
121/8
gets [4] 80/19 82/12 116/15
120/14
getting [6] 12/3 12/13 30/6
33/13 66/20 100/14
Ginsburg [1] 6/7
Ginsburg's [1] 6/4
give [25] 9/14 15/25 29/15
33/11 41/21 48/22 49/4 49/21
51/9 52/6 58/17 63/24 67/9
71/9 71/10 72/1 75/22 95/25
99/16 99/18 103/18 113/7
115/9 117/11 120/7

**G**

given [9]  16/2 19/17 21/8 21/9
  21/11 40/17 63/22 100/12
  109/5
gives [1]  22/12
giving [4]  19/20 20/2 39/25
  114/5
glad [1]  9/20
glance [1]  75/21
Glass [1]  26/6
Glass' [1]  37/1
glossary [1]  4/17
go [38]  4/16 7/8 10/19 11/6
  13/10 14/9 18/24 28/11 35/8
  39/17 51/11 53/8 53/12 57/21
  68/24 70/8 70/12 76/23 82/9
  85/19 87/13 88/18 88/25 89/3
  90/14 90/17 93/17 95/11
  100/19 104/5 104/22 106/2
  106/15 109/21 111/13 111/20
  117/2 117/3
goal [2]  65/3 73/22
goes [2]  8/1 9/12 10/16
  10/18 15/5 45/25 49/25 54/3
  82/20 84/25 85/13 85/25
going [125]
Goldstein [3]  98/19 101/24
  103/4
gone [6]  12/14 21/4 38/2
  72/14 87/25 90/24
good [10]  3/18 12/5 16/12
  31/17 49/19 49/20 76/3 84/8
  85/13 115/3
got [26]  4/22 7/22 14/7 16/14
  30/4 30/16 43/1 60/1 62/17
  81/20 83/5 84/15 89/19 90/2
  92/14 95/3 111/11 113/24
  114/18 115/12 117/7 117/21
  118/19 118/19 119/7 120/6
grant [1]  59/15
granted [1]  5/17
grapple [1]  4/25
great [6]  4/1 4/11 28/13 51/25
  113/12 117/18
GREGG [2]  2/14 3/22
Gregg LoCascio [1]  3/22
gross [1]  77/20
ground [1]  48/22
guess [8]  13/8 33/16 35/11
  50/17 59/4 73/21 100/17
  104/14
guidance [2]  116/5 117/11
guy [1]  115/18
guys [3]  65/8 78/24 115/22

**H**

had [42]  16/9 16/21 17/5
  17/10 18/1 20/12 23/4 25/16
  25/22 27/4 27/7 28/7 31/22
  35/15 35/19 36/23 40/17
  40/24 43/3 50/9 58/22 58/24
  58/25 60/13 67/14 67/17
  67/21 67/22 67/22 68/4 68/8
  73/18 87/25 89/11 110/2
  118/17 119/1 119/13 119/19
  120/8 120/18 121/6
half [1]  85/10
Hall [1]  110/2
handed [1]  44/5

handful [1]  114/22
handle [1]  6/23
happen [2]  91/4 116/17
happened [3]  72/7 103/9
  109/12
happening [1]  87/5
happens [3]  21/9 51/7 120/23
happily [1]  120/13
happy [4]  5/19 5/23 14/16
  40/22
hard [3]  41/13 82/13 120/22
hardship [2]  69/1 69/8
Harlan [1]  89/1
Harlan's [1]  89/5
harm [2]  56/23 81/4
harmed [2]  80/11 80/13
harms [1]  9/12
has [57]  8/1 13/9 13/12 14/15
  15/15 21/11 21/20 21/22
  22/22 24/7 24/10 24/12 25/9
  26/22 27/6 27/6 27/9 29/1
  29/2 29/11 30/7 32/11 32/14
  32/17 32/21 34/10 34/21
  34/21 36/10 43/20 44/18
  46/23 53/5 55/6 55/18 56/22
  56/23 68/25 72/14 75/21 77/7
  77/23 78/1 80/24 86/22 87/4
  88/3 90/9 90/24 91/20 94/23
  107/12 108/15 108/16 108/19
  108/23 111/25
hash [2]  59/20 111/13
hasn't [3]  19/12 80/14 84/12
hassle [1]  43/10
hate [1]  5/8
have [169]
haven't [10]  3/16 67/5 69/4
  70/4 78/5 78/5 78/13 78/14
  80/13 102/15
having [4]  23/8 64/17 65/4
  120/22
he [30]  12/9 12/15 12/22 13/3
  23/7 23/9 74/11 74/12 76/23
  77/14 77/14 85/9 85/13 85/19
  85/19 85/20 85/22 85/25
  86/14 86/17 86/18 87/2 87/3
  87/8 87/9 87/10 87/15 87/19
  87/21 89/19
he's [7]  3/19 23/13 76/8 76/13
  79/16 85/11 95/3
head [1]  7/18
headed [5]  7/23 8/22 77/19
  77/22 77/24
heads [2]  77/23 78/2
hear [9]  14/6 33/9 35/25 58/2
  70/4 74/13 74/22 74/25
  103/25
heard [5]  56/18 66/18 102/15
  112/24 115/22
hearing [5]  65/8 73/21 75/16
  99/23 100/2
hears [1]  70/1
HEDGES [3]  2/15 3/23
  105/20
hedging [1]  101/3
HEFFERNAN [2]  2/13 3/22
Hegedus [1]  101/25
held [7]  29/17 29/20 29/25
  32/22 40/12 56/2 100/25
help [1]  17/24 119/4
helpful [6]  16/8 80/3 82/6

116/13 116/19 117/3
her [9]  3/18 78/12 78/11
here [53]  3/19 7/24 8/12 12/25
  22/20 24/8 24/17 24/21 26/20
  27/2 27/8 31/2 31/19 37/22
  39/18 48/22 49/11 51/21 55/9
  56/19 59/17 61/4 61/16 61/20
  62/17 63/5 63/16 65/3 65/22
  66/24 68/11 69/4 71/23 72/7
  73/8 73/18 73/22 75/4 75/15
  76/9 77/13 82/24 84/2 86/4
  86/5 87/4 94/21 96/21 98/18
  99/2 105/8 113/6 113/14
here's [3]  63/8 67/3 90/12
hereby [1]  122/4
hesitated [1]  57/13
hey [1]  81/17
him [1]  12/7
his [8]  3/19 19/14 74/11 74/11
  77/12 85/14 86/25 92/22
history [10]  22/11 22/17 23/16
  24/24 27/10 34/5 34/6 35/1
  50/5 73/5
hit [1]  57/21
hits [1]  98/5
Hoffman [3]  85/9 87/1 87/2
hold [15]  28/16 51/23 52/12
  52/12 52/12 56/1 76/11 82/1
  95/9 95/25 113/1 118/15
  118/25 118/25 118/25
holding [1]  116/6
holds [5]  31/13 32/4 32/4
  32/14 32/16
holiday [1]  118/5
HOMER [2]  2/6 3/11
homes [4]  67/18 67/22 67/23
  67/24
Honor [96]  3/7 3/15 3/18 4/10
  5/11 5/14 5/17 7/6 8/11 8/25
  9/3 10/22 10/25 12/8 12/10
  12/12 12/18 13/8 14/12 28/12
  36/7 37/24 38/24 39/12 43/16
  49/7 51/12 53/16 54/20 57/1
  58/17 58/20 59/9 59/20 60/9
  60/12 65/2 65/23 66/11 66/14
  66/15 66/18 71/4 74/3 75/11
  75/20 76/1 77/1 80/2 82/6
  83/24 84/7 84/25 85/3 86/1
  87/1 87/14 90/9 90/19 90/20
  91/5 93/15 94/4 95/18 96/12
  104/3 104/6 104/7 105/1
  105/4 105/19 105/22 106/3
  106/5 106/14 106/22 107/12
  108/6 108/12 108/14 109/16
  110/11 111/1 111/15 112/19
  112/23 113/12 113/20 115/17
  116/5 116/24 118/3 120/18
  120/23 121/14 121/16
Honor's [5]  10/9 49/9 60/6
  66/25 114/11
HONORABLE [1]  1/18
hope [2]  80/3 116/6
hoping [2]  77/23 116/22
horrible [1]  103/17
hours [9]  4/4 52/5 118/20
  119/8 120/8 120/19 120/20
  121/2 121/8
house [5]  3/12 8/7 9/14 35/12
  50/9
housing [1]  67/16

how [31]  4/23 6/8 6/13 6/15
  7/17 7/16 13/25 14/21 15/22
  17/23 24/6 25/8 43/20 56/6
  63/21 69/20 70/9 81/21 91/9
  91/9 99/17 99/20 99/22
  101/14 110/22 114/14 114/25
  115/23 115/24 120/4
Huffman [1]  10/15
huge [1]  114/18
huh [1]  85/2
Hygiene [3]  108/18 108/25
  109/10
HyperQuest [2]  26/13 26/16
hypothetical [2]  20/1 100/17

**I**

I'd [15]  5/23 14/16 27/2 27/12
  28/11 32/25 39/12 40/3 49/16
  53/18 64/4 64/16 65/21 86/25
  121/3
I'll [27]  5/9 10/4 10/19 11/5
  13/6 29/15 44/9 49/7 51/7
  53/10 75/20 76/20 82/23
  84/20 84/21 93/19 95/12
  96/17 96/24 101/12 112/5
  112/13 119/24 120/5 120/6
  120/7 120/12
I'm [94]  3/19 4/4 4/23 6/1 7/14
  9/19 11/20 12/16 12/25 13/8
  13/15 16/14 17/4 20/2 20/4
  21/25 24/11 24/14 29/14
  31/17 33/8 34/18 34/21 40/22
  41/9 41/17 42/11 44/5 46/22
  48/20 48/21 49/11 49/11
  51/24 52/2 52/13 52/17 58/2
  63/8 67/3 67/4 67/6 69/13
  69/22 70/6 71/9 74/23 76/12
  77/5 82/9 83/4 84/7 84/10
  85/10 86/5 87/20 87/20 90/12
  90/13 93/16 94/5 95/9 95/9
  96/2 96/19 98/18 99/8 99/13
  99/20 101/12 101/14 102/17
  102/19 103/17 104/18 106/22
  109/16 110/13 113/6 113/13
  113/24 114/5 115/12 115/13
  116/1 116/2 116/6 116/8
  116/22 116/22 117/6 117/8
  119/3 120/23
I've [14]  42/25 56/2 69/21
  80/11 89/8 89/8 90/2 112/3
  113/24 115/12 117/6 118/19
  119/6 120/6
i.e [2]  31/3 46/12
idea [6]  53/1 54/17 65/2 68/9
  81/25 109/24
identified [11]  16/9 22/13
  26/11 26/12 26/21 31/22
  43/18 43/25 44/13 73/14 87/6
identifies [4]  23/16 24/24
  25/15 30/18
identify [1]  33/23
identifying [1]  24/4
IFS [2]  32/12 40/11
imagine [2]  82/13 102/14
impact [7]  7/21 50/25 56/6
  65/20 69/5 105/13 106/8
impactful [1]  5/9
impacts [1]  7/10
implicated [1]  68/2
implicates [1]  68/8

implied [1] 103/8
implore [1] 86/25
important [5] 18/3 26/10 83/23
84/24 98/14
impose [1] 108/22
impression [2] 106/16 106/18
imputability [1] 104/15
imputable [5] 95/23 97/20
98/3 101/10 103/13
imputation [1] 104/14
imputed [1] 55/15
INC [2] 1/4 1/8
incidentally [2] 16/5 109/20
inclination [2] 94/10 95/10
include [2] 81/18 95/7
included [2] 14/24 94/3
includes [1] 22/18
including [5] 35/6 35/14 35/19
45/15 87/5
income [3] 68/25 69/5 69/7
inconsistent [1] 53/20
incorporated [1] 14/11
indeed [1] 11/22
independent [1] 15/3
indicate [2] 43/20 102/22
indicated [5] 45/23 107/12
108/23 116/8 116/11
indicates [1] 22/18
indisputably [1] 89/25
individuals [3] 98/17 102/5
102/25
ineffective [5] 41/2 41/8 41/18
42/7 42/21
information [1] 111/24
infringement [8] 55/4 55/10
62/10 67/20 68/15 81/22
89/24 115/6
infringer [3] 6/8 36/16 62/9
infringer's [3] 54/9 77/25
78/11
inherently [1] 59/15
injunction [4] 68/14 96/15
99/23 101/22
injunctive [5] 54/8 62/8 68/6
93/5 93/9
injured [1] 8/2
innocent [2] 67/23 69/1
insertion [1] 111/9
instance [6] 5/1 5/8 55/4
62/14 112/9 114/23
instruct [2] 101/4 104/6
instruction [5] 100/7 100/11
100/12 103/15 104/8
instructions [8] 7/11 75/7
104/5 104/24 113/20 114/12
114/13 114/15
instructive [1] 88/10
insufficient [3] 46/13 50/15
55/10
intelligently [1] 8/5
intended [1] 40/10
intent [5] 18/4 18/4 18/7 18/20
40/4
interest [42] 8/3 23/9 23/17
23/18 25/1 25/5 25/10 25/16
25/23 26/2 26/9 26/22 26/25
27/9 27/17 29/14 29/19 29/22
30/20 30/22 30/25 31/9 31/10

31/14 32/11 32/21 33/13
34/11 35/22 37/18 39/23
43/17 43/20 45/20 46/2 47/12
47/4 50/11 98/16 99/7 103/4
interesting [4] 4/20 84/24
interests [5] 21/3 22/25 40/10
40/15 42/12
interplay [1] 8/12
interpreted [1] 85/16
interrogatory [2] 43/23 44/13
interrupt [1] 76/2
intro [1] 53/24
invalid [1] 47/16
investigation [1] 110/1
invocation [1] 112/17
invoke [5] 60/18 110/19 111/2
111/4 111/7
involve [1] 68/20
involved [16] 22/25 24/1
25/25 26/23 31/22 31/25 32/9
46/18 46/18 77/9 98/20
101/21 101/23 103/5 109/25
110/15
involvement [4] 25/12 32/13
32/19 110/6
involves [1] 75/1
IOL [13] 14/21 43/11 48/14
56/24 57/15 65/9 78/21 79/2
79/13 79/15 79/24 79/24
81/18
IOLs [9] 55/20 56/3 56/17
56/25 64/17 64/22 78/20 94/2
94/24
irrevocably [1] 20/20
is [428]
Isaac [12] 10/16 11/22 11/25
71/12 73/4 74/11 74/16 75/1
79/20 93/22 93/23 94/20
Isaac's [2] 10/23 12/14
isn't [2] 80/1 98/5
issue [78] 5/13 5/16 5/20 6/19
6/22 6/25 7/4 7/6 8/6 8/10
9/11 9/11 10/5 10/14 10/21
11/18 11/23 12/1 13/15 13/17
26/20 36/23 36/23 37/7 40/23
49/15 50/1 52/18 53/4 55/16
59/8 60/6 66/16 68/16 69/17
72/23 73/3 75/3 74/21 77/6
81/9 81/10 84/9 84/17 84/19
84/24 85/17 86/17 87/3 87/24
87/25 88/18 89/6 89/23 90/8
91/5 92/6 93/10 94/16 96/6
96/15 99/2 99/2 99/3 100/13
101/20 103/19 104/1 104/5
104/13 104/24 107/5 107/10
109/13 109/23 110/7 110/20
112/8
issues [17] 4/25 5/4 5/7 6/17
52/18 59/5 66/16 75/6 89/2
95/1 104/16 106/6 107/20
114/9 114/22 114/24 117/23
it [381]
it's [206]
its [37] 14/10 14/20 15/15
15/17 15/17 16/22 19/1 19/8
21/2 25/11 25/12 29/22 30/25
31/11 32/12 32/19 32/19
39/19 39/21 40/9 47/1 47/8
47/24 48/3 51/16 53/1 53/20
55/16 56/16 61/19 67/13

80/10 80/24 81/3 81/7 101/6
105/4
itself [14] 16/8 16/23 33/2
35/1 39/15 46/13 46/15 51/18
55/10 59/15 68/21 92/3 99/4
99/7

J
J's [2] 42/1 52/9
JACK [2] 1/23 3/8
Jack Bloomfeld [1] 3/8
JAMES [2] 2/16 3/23
January [1] 1/13 20/3
January 1 [1] 20/3
Jay [2] 82/16 82/18
Jay-Z [2] 82/16 82/18
JEANNE [2] 2/13 3/22
Jeanne Heffernan [1] 3/22
Jeff [1] 3/24
Jeff Prokop [1] 3/24
JJSV [71] 5/2 5/11 6/20 6/22
7/14 7/25 8/18 9/9 9/17 10/4
14/9 14/17 15/5 15/15 16/21
16/25 17/10 18/4 19/7 19/23
20/12 20/13 20/20 21/13
21/17 23/8 23/8 23/22 24/1
24/1 24/2 24/10 24/12 25/9
28/22 29/1 30/8 32/9 32/15
32/18 32/21 32/21 39/5 39/19
40/14 40/20 42/12 43/9 43/20
44/14 44/15 44/17 45/3 46/23
47/6 47/17 48/3 48/7 53/2
56/12 56/21 56/22 79/23 80/1
80/10 80/14 80/23 81/6 81/19
94/8 94/23
JJSV's [5] 31/2 40/1 52/22
80/16 109/2
job [1] 50/3
John [5] 26/11 26/13 26/14
27/3 31/7
John Wiley [4] 26/11 26/14
27/3 31/7
Johnson [2] 3/13 3/13
joinder [1] 37/9
joined [1] 26/6
joint [2] 25/11 32/12
joking [1] 74/4
JOSHUA [2] 2/15 3/23
JOSHUA SIMMONS [2] 2/15
3/23
jotted [1] 35/5
judge [31] 1/18 10/14 10/15
10/18 11/3 11/25 12/19 12/24
13/1 13/5 55/12 70/19 70/21
70/22 71/8 72/6 74/22 74/25
75/15 75/24 76/5 84/20 84/25
85/8 85/8 85/11 86/14 86/15
87/10 88/11 110/2
Judge Alsup [1] 13/1
Judge Freeman [2] 12/19
12/24 13/5 84/20
Judge Hall [1] 110/2
Judge Payne [5] 10/15 85/8
85/8 86/14 87/10
Judge Robinson [1] 72/6
Judge Thynge's [1] 55/12
judgment [25] 7/25 41/11
43/24 50/22 51/4 51/11 51/15
51/19 53/5 54/25 55/3 55/24
56/9 57/6 57/4 58/4

59/16 62/20 66/15 66/23
69/13 69/14 69/19 69/19
Judgment 2 [1] 56/3
Judgment 3 [2] 51/4 51/15
jump [1] 14/16
jury [76] 4/14 6/16 7/9 7/10
10/15 10/16 10/20 12/1 13/6
13/10 13/13 13/19 13/19 14/1
54/19 57/14 66/20 70/9 70/18
71/23 72/21 73/3 73/21 73/23
74/13 75/7 76/15 76/23 77/10
83/5 83/18 84/4 84/9 84/18
84/21 84/25 85/5 86/23 87/3
87/24 88/18 88/20 89/1 89/3
89/16 89/21 89/25 90/22
93/10 93/17 93/25 94/17
94/19 95/11 99/14 100/7
100/13 100/13 103/17 104/4
104/6 104/6 104/16 104/23
106/17 111/7 113/9 113/10
113/19 113/21 114/12 116/7
116/16 117/20 119/19 121/3
just [77] 4/18 5/9 6/12 8/9
8/19 10/22 14/5 19/6 19/25
20/7 22/1 28/11 28/21 37/17
38/9 40/19 41/21 43/5 43/6
44/5 47/23 49/4 49/16 49/21
49/23 50/2 51/1 52/15 55/6
56/1 56/21 59/11 60/12 64/14
72/20 74/4 74/16 75/22 76/4
79/17 81/16 84/3 88/25 89/22
90/2 90/23 93/17 93/18 93/23
94/5 96/14 96/19 96/20 97/12
101/12 102/18 103/9 103/25
104/24 105/11 106/1 106/4
107/18 108/3 110/9 110/23
111/10 112/13 113/2 113/6
113/15 114/10 114/16 116/19
118/1 118/16 119/21
Justice [5] 6/4 6/7 89/1 89/5
89/18
Justice Ginsburg [1] 6/7
Justice Ginsburg's [1] 6/4
Justice Harlan [1] 89/1
justifiable [1] 37/10
justified [1] 34/14
justify [2] 48/6 88/20

K
Kansas [3] 11/14 72/5 91/9
KAREN [1] 2/10
keeping [1] 20/4
KELLER [3] 2/10 2/10 3/16
Kennedy [1] 88/3
key [1] 29/21
kills [1] 23/11
kind [7] 4/24 8/21 11/23 50/19
81/24 88/17 120/19
King [1] 1/16
KIRKLAND [3] 2/13 3/21
82/20
knew [14] 58/11 58/17 58/21
58/21 58/24 59/5 59/18 59/23
59/24 61/15 64/18 66/17 98/1
104/13
know [80] 4/21 6/1 6/2 6/8
6/13 6/19 7/16 8/20 8/23 9/9
12/15 12/21 14/17 15/21
15/22 17/23 18/11 18/13 21/4
21/5 27/16 27/25 33/5 34/25

**K**

know... [56] 35/2 36/4 38/11
38/18 41/3 41/4 41/5 41/19
48/21 50/1 52/2 58/14 58/20
60/2 60/5 63/6 66/3 68/19
69/6 69/8 69/9 75/1 77/21
82/12 82/17 84/5 85/21 90/10
92/17 93/18 93/19 96/23
98/11 99/19 100/18 100/18
101/5 101/11 101/18 105/7
105/13 106/16 106/19 110/19
110/22 114/10 114/16 115/21
116/13 116/15 116/21 117/4
117/8 117/22 119/7 120/9
knowledge [15] 95/22 97/4
97/5 97/11 97/12 97/13 97/14
97/20 98/1 100/25 101/6
101/7 103/12 104/12 104/15
known [2] 53/25 58/11
knows [2] 73/22 109/19
Kraft [1] 72/25
Krofft [4] 72/25 73/1 73/7 87/6

**L**

label [1] 91/25
lability [1] 89/24
LABORATORIES [1] 1/8
laches [32] 6/12 51/14 51/22
52/9 53/14 53/21 53/24 54/12
54/25 55/11 58/5 59/8 59/12
59/15 59/20 60/19 61/2 61/10
61/22 62/2 62/12 62/21 63/4
63/16 64/1 66/11 66/17 91/20
92/5 108/2 108/4 108/8
lacks [5] 97/3 97/4 97/4 97/13
100/25
laid [1] 67/5
Lakso [5] 88/5 88/6 89/8
89/22 89/23
language [8] 9/22 18/22 26/8
29/14 35/7 50/6 68/17 98/17
largely [1] 50/25
last [7] 55/21 56/18 65/8
74/16 74/16 74/17 93/2
late [2] 60/3 72/19
later [10] 5/23 11/14 13/11
13/11 66/7 84/21 114/14
116/17 117/14 117/17
LATHAM [2] 2/3 3/9
Latimer [1] 3/25
latter [1] 9/5
law [26] 7/6 9/21 10/1 15/19
18/23 18/25 22/13 22/17 33/4
34/8 46/11 55/5 55/25 63/16
71/4 80/12 84/13 87/4 87/25
88/22 101/4 101/13 103/12
103/16 103/24 104/9
Laws [1] 18/23
lawsuit [2] 5/21 109/3
lawyering [1] 4/21
lawyers [8] 48/21 49/13 51/25
52/4 106/21 109/25 110/15
111/11
lawyers' [1] 110/5
lay [1] 83/17
layout [1] 7/23
lead [9] 10/17 10/24 11/8 11/9
64/21 74/11 83/10 83/15
116/24

leads [1] 49/13
learning [1] 93/18
learned [1] 60/3
least [10] 7/19 13/10 13/18
22/10 23/21 43/24 64/17
107/13 115/14 116/23
leave [6] 4/14 11/21 14/2 42/2
106/16 106/18
lectern [1] 53/11
led [1] 84/2
left [4] 50/23 106/19 109/24
113/22
legal [61] 15/15 15/24 16/1
18/1 19/8 21/18 21/23 22/15
22/21 22/24 23/8 23/25 23/25
25/21 26/22 28/4 28/5 28/7
28/9 28/16 29/10 29/11 29/17
29/20 29/24 29/25 31/10
31/12 31/14 32/3 32/5 32/10
32/22 33/5 33/12 34/10 34/10
35/15 36/12 39/6 40/6 40/17
40/17 40/18 40/19 40/20
40/21 47/1 47/7 47/10 50/10
50/11 51/6 86/12 86/20 89/11
89/20 92/15 103/14 104/5
104/14
legally [2] 75/11 97/20
legislative [9] 22/11 22/17
23/15 24/23 27/10 34/5 34/5
34/25 50/5
LenSx [21] 55/17 64/21 79/3
79/11 95/1 95/20 95/23 95/23
96/5 96/9 97/20 98/3 98/8
98/21 99/25 100/8 100/23
101/1 101/9 103/1 103/5
LenSx's [1] 97/14
less [2] 75/18 94/15
let [25] 4/16 10/4 10/8 10/21
27/14 28/21 29/4 35/25 36/4
49/17 52/6 52/11 56/1 75/19
77/21 84/8 84/23 88/9 93/19
95/11 98/17 103/25 111/19
113/2 119/3
let's [26] 4/12 9/19 10/2 14/5
16/23 21/6 22/21 43/5 49/21
50/19 51/2 51/11 53/12 58/3
64/14 70/8 70/8 79/24 90/2
90/14 95/14 104/21 109/21
113/8 113/10 114/20
letter [1] 15/19
level [2] 65/6 73/16
license [12] 24/8 24/18 24/22
31/4 31/6 33/12 34/12 35/16
36/4 47/3 48/1 50/12
licensee [1] 26/16
licenses [1] 50/13
licensing [1] 90/25
life [1] 52/3
like [47] 4/23 5/7 5/24 6/20
8/13 8/18 8/21 12/13 19/25
20/1 27/2 27/10 30/2 32/12
32/25 36/9 38/17 43/6 49/20
55/2 57/21 61/12 61/17 63/2
63/3 73/24 77/6 78/14 78/24
82/6 88/25 98/22 99/9 99/11
99/16 101/3 101/15 105/1
106/10 106/11 112/7 112/10
114/24 115/23 119/17 119/21
121/3
likely [1] 102/23

likewise [3] 25/9 25/24 26/1
Limine [11] 70/6 70/11 90/11
90/23 95/10 95/15 96/5
110/14 112/2 112/10 113/4
Limine 2 [1] 112/10
Limine 3 [1] 70/11
limitations [8] 5/18 54/1 60/6
60/20 61/12 63/3 108/16
108/20
limited [6] 22/19 35/1 35/6
66/4 90/2 90/10
line [4] 24/3 24/6 40/9 83/5
lines [2] 24/17 25/8
link [1] 56/19
list [1] 7/12
listen [4] 11/5 11/22 116/8
119/9
literally [2] 62/1 100/21
litigation [5] 18/14 27/22
27/23 37/2 41/7
little [7] 8/13 49/7 53/23
55/21 57/13 59/1 59/1 76/22
76/25 78/4 82/23 87/17 93/18
113/1 115/14 120/6 120/21
live [2] 96/20 120/25
LLC [4] 1/3 1/4 1/7 1/8
LOCASCIO [2] 2/14 3/22
logistics [1] 117/4
LOMEO [2] 2/16 3/24
long [5] 42/15 106/15 118/5
118/20 120/4
look [23] 11/11 13/23 16/23
37/24 40/8 43/2 53/9 55/16
57/22 57/22 57/23 70/16
72/15 73/4 85/25 86/8 87/22
89/8 103/16 106/19 110/2
111/11 119/10
looked [3] 17/5 58/23 87/23
looking [6] 16/14 42/11 48/21
86/3
looks [2] 72/12 78/8
loose [1] 18/17
loses [2] 99/14 99/15
loss [1] 56/11
losses [1] 56/14
lost [17] 8/22 9/5 14/11 14/20
14/24 15/4 15/4 28/14 52/23
57/16 69/5 78/3 80/9 80/24
89/15 89/25 106/11
lot [13] 4/2 4/22 7/11 11/6
40/5 63/9 74/8 82/24 85/12
98/22 101/21 118/23 121/4
lots [1] 82/11
love [1] 121/7
loyalty [1] 24/12

**M**

machine [1] 95/2
machines [3] 48/16 94/25
95/1
made [11] 9/15 14/1 33/1
58/19 66/5 69/7 75/15 76/15
81/11 99/25 110/18
magistrate [1] 11/3
main [1] 75/19
maintained [1] 50/10
make [26] 8/2 15/22 21/14
27/14 40/5 46/22 47/18 49/11
65/9 65/9 66/7 75/13 82/23
86/18 95/3 95/4 96/22 99/12
99/16 99/19 100/10 100/20
101/12 102/16 106/19 110/20
115/5 115/12 115/13 115/15
115/18 115/19 116/1 116/15

103/15 103/23 104/8 105/12
105/15 106/4 106/9 109
makes [9] 5/12 6/21 23/8
33/15 82/11 85/15 92/25
113/15 115/11
making [3] 9/8 33/8 38/19
manage [1] 45/1
management [1] 47/19
manager [1] 4/13
manual [2] 60/8 60/13
manufacturing [3] 1/3 25/25
46/19
many [6] 4/20 4/24 50/14
102/20 113/19 114/9
market [5] 32/13 61/16 64/4
64/20 75/12
marketer [1] 29/1
marketing [9] 23/1 25/12
25/25 31/23 31/25 32/13
45/12 46/19 47/19
marketplace [2] 60/1 105/13
Marty [1] 87/6
massive [1] 14/1
material [4] 98/8 98/23 98/24
101/1
math [1] 58/11
matter [8] 17/16 17/25 37/1
63/16 83/6 96/14 101/4
101/12
matters [2] 40/4 101/1
maximize [1] 32/15
may [32] 5/16 6/11 8/9 10/3
19/11 33/23 37/10 37/11
40/14 48/23 61/2 61/22 62/2
69/21 70/7 74/3 74/7 74/17
74/23 76/18 80/22 81/23
81/23 84/23 85/1 86/2 90/4
93/5 108/11 110/6 110/6
116/12
maybe [24] 4/25 5/2 5/5 7/17
8/9 8/17 9/20 9/24 10/5 43/4
43/5 48/10 49/3 49/8 49/21
51/5 51/8 51/13 79/25 80/15
101/12 101/17 113/20 115/20
me [69] 3/9 3/21 4/13 4/16
4/18 5/1 5/6 6/2 7/17 8/19
10/8 10/22 12/9 14/9 27/14
28/21 29/4 30/2 30/14 33/15
33/17 33/22 35/25 36/4 37/7
41/9 41/21 43/18 49/17 49/22
51/9 52/6 52/11 54/18 56/1
62/18 65/8 66/11 74/5 75/19
75/22 77/6 77/18 77/21 78/24
79/25 84/8 84/23 88/9 94/12
95/17 95/25 96/3 98/17 99/16
99/18 100/19 101/4 101/11
103/18 103/25 111/19 113/2
116/2 117/24 121/12
mean [45] 4/7 5/25 6/19 6/19
9/19 14/7 18/18 18/22 19/25
20/6 20/7 20/20 31/20 33/10
35/3 44/21 49/11 59/12 67/4
73/22 76/2 77/15 79/24 82/25
88/18 95/3 95/4 96/22 99/12
99/16 99/19 100/10 100/20
101/12 102/16 106/19 110/20
115/5 115/12 115/13 115/15
115/18 115/19 116/1 116/15
meaning [1] 63/5 106/25

**M**

meaning... [1] 119/13
means [3] 62/25 63/2 112/7
meant [3] 40/19 106/24 110/6
meet [2] 49/17 63/21
memorialize [1] 49/25
mention [2] 43/19 110/23
mentioned [3] 24/23 31/21 60/15
mere [2] 39/14 46/12
merits [2] 74/9 93/4
metaphysical [1] 18/10
MGM [1] 68/25
MICHAEL [1] 2/3
Microsoft [1] 75/13
middle [2] 54/24 73/24
midway [1] 61/17
might [6] 5/3 7/19 101/15 113/23 116/15 119/4
Mike [2] 3/10 82/19
Mike Morin [2] 3/10 82/19
MIL [7] 51/5 51/8 54/16 73/12 105/2 112/18 112/24
MIL 2 [1] 105/2
MIL 4 [1] 112/24
MIL-3 [1] 51/5
MIL-4 [1] 51/8
Miller [1] 90/7
million [5] 57/15 73/19 73/19 73/19 75/4
mind [7] 10/10 10/10 17/19 24/14 35/19 40/24 67/6
mine [1] 82/8
Minnesota [8] 10/17 11/3 11/13 71/13 71/16 83/12 83/14 86/15
minute [2] 49/5 57/23
misjoinder [2] 36/19 36/23
misquoting [1] 98/18
missing [1] 37/21
misspoke [1] 106/23
mitigate [1] 62/12
mitigating [2] 107/19 108/10
mitigation [11] 59/2 107/21 107/25 108/3 109/1 109/4 109/6 109/7 109/14 111/18 112/25
modified [1] 4/19
mom [1] 74/5
moment [4] 52/20 75/20 119/12 119/12
Monday [3] 4/5 4/15 121/12
money [7] 44/1 44/19 45/3 57/18 64/25 81/24 83/16
moneys [1] 44/16
monster [4] 8/22 77/19 77/23 77/24
month [2] 117/14 117/16
months [2] 59/4 60/2
moot [8] 96/11 107/6 111/17 111/21 111/23 112/3 112/6 116/22
moots [1] 5/20
more [21] 5/19 5/22 8/5 14/3 23/3 32/25 41/22 68/11 78/19 83/23 90/13 95/12 101/16 109/19 115/23 119/20 120/6 120/7 120/12 120/21 121/2
MORIN [4] 2/3 3/10 11/19

82/19
MORRIS [3] 1/23 3/8 3/13
Morris Nichols [1] 3/14
most [4] 50/19 51/6 67/13 120/15
motion [53] 7/25 10/5 10/6 10/7 14/14 28/10 28/12 41/15 41/16 42/2 51/1 51/4 51/19 51/20 52/1 52/6 52/8 54/25 56/8 56/9 56/16 56/18 57/22 63/1 64/1 66/15 67/4 69/14 69/22 70/11 90/22 95/10 95/19 96/5 99/7 100/20 100/20 101/23 103/4 104/12 104/17 104/19 104/21 104/25 105/2 107/6 107/9 107/23 107/24 108/11 110/13 112/2 112/10
Motion 2 [3] 51/1 56/9 56/16
motion 3 [2] 51/20 54/25
Motion 4 [1] 107/24
motions [12] 4/24 5/17 5/22 19/10 49/14 50/22 69/25 90/14 95/14 99/9 100/19 113/4
motivation [1] 27/25
move [3] 51/2 90/2 113/16
moved [3] 78/6 78/14 109/11
Mr. [18] 3/6 3/19 6/23 8/5 10/4 11/19 19/9 21/7 22/21 23/22 24/2 36/18 39/2 40/3 43/15 47/8 52/21 109/19
Mr. Blumenfeld [1] 3/6
Mr. Chin [5] 10/4 36/18 39/2 40/3 43/15
Mr. Damle [1] 109/19
Mr. Duff [5] 19/9 22/21 23/22 24/2 47/8
Mr. Duff's [1] 21/7
Mr. Frank [3] 6/23 8/5 52/21
Mr. Morin [1] 11/19
Mr. Shaw [1] 3/19
Ms. [2] 3/16 105/20
Ms. Hedges [1] 105/20
Ms. Keller [1] 3/16
much [10] 27/9 64/25 68/11 81/22 93/16 94/15 105/8 115/1 115/23 115/24
muddled [1] 12/16
multiple [2] 5/17 5/22
musical [1] 109/17
must [5] 14/25 30/25 39/6 70/21 71/7
my [31] 5/12 10/20 12/4 17/19 17/20 20/4 24/18 35/11 38/7 49/8 50/1 52/5 66/14 67/6 71/2 74/5 74/9 74/17 74/18 77/1 81/17 87/5 90/10 90/23 94/8 94/10 95/10 112/6 119/17 120/18 122/5

**N**

name [1] 103/2
namely [2] 31/22 100/3
narrow [1] 101/19
nature [2] 51/18 109/5
necessarily [3] 17/23 22/19 91/25
need [12] 4/14 4/16 49/7 49/17 53/10 59/22 66/10

93/17 97/9 97/21 120/7 120/16
needed [1] 118/7
needs [3] 70/18 104/7 104/8
negate [1] 72/21
neither [3] 17/21 26/19 27/6
neutralizes [1] 33/2
never [9] 40/16 40/18 40/19 42/20 60/18 60/24 64/17 115/21 121/5
nevertheless [1] 40/14
new [4] 67/11 68/1 84/15 103/1
next [7] 40/13 50/17 50/18 70/8 104/21 104/25 107/7
nexus [1] 57/7
nicely [1] 24/17
NICHOLS [3] 1/22 3/8 3/14
Nine [1] 73/1
nip [3] 100/14 103/19 103/21
no [66] 1/6 11/16 11/24 13/9 14/3 16/6 18/21 21/15 24/11 29/5 30/24 34/1 37/25 39/10 39/25 40/24 42/3 42/3 42/12 42/18 43/9 43/9 43/12 45/24 47/15 55/5 56/11 56/22 57/7 57/16 61/6 61/22 66/1 67/2 68/9 69/1 69/16 70/14 71/18 71/22 74/4 75/16 76/3 76/3 80/2 82/7 83/5 88/19 89/19 89/19 89/19 90/5 91/14 93/9 94/6 94/23 105/12 107/12 109/3 109/18 110/24 111/25 115/4 115/22 117/16 119/8
NOAH [3] 2/14 3/22 36/7
Noah Frank [2] 3/22 36/7
non [1] 11/6
non-Appellate [1] 11/6
none [1] 56/25
nonexclusive [1] 26/16
noon [1] 119/6
normally [1] 115/13
Northern [2] 12/20 13/2
Northern District [1] 13/2
not [152]
noted [1] 54/5
notes [2] 119/17 122/5
nothing [3] 20/25 39/23 64/22
notion [1] 30/8
notwithstanding [1] 94/7
now [44] 6/15 13/6 13/15 13/17 16/23 17/19 17/23 18/10 19/6 19/25 20/6 21/17 22/9 24/3 25/14 26/10 27/2 33/22 38/13 52/14 53/4 55/18 56/22 63/19 64/21 65/24 66/20 67/5 68/10 72/12 81/1 84/18 87/13 94/5 95/21 96/2 99/1 101/3 108/5 110/18 112/25 115/20 119/23 120/8
number [40] 5/4 14/1 15/6 15/15 35/12 45/5 51/11 52/14 52/14 52/19 53/8 53/12 58/3 58/4 65/17 69/6 69/12 69/12 73/15 73/16 73/24 74/12 74/14 75/3 75/16 75/17 75/18 78/15 78/16 78/19 79/2 94/9 95/16 96/5 98/15 109/21 109/23 111/17 111/18 112/25
Number 1 [7] 15/6 15/15

74/12 75/16 95/16 96/5 98/15 52/19
Number 2 [3] 52/14 52/14 52/19
Number 3 [8] 51/11 53/8 53/12 58/3 58/4 109/21 109/23 111/17
Number 4 [2] 111/18 112/25
Number 94-1476 [1] 35/12
numbers [9] 65/11 65/12 79/4 79/8 79/11 79/12 79/13 79/15 93/24

**O**

object [2] 99/19 107/1
objected [1] 78/13
objection [1] 111/13
objections [1] 112/16
obtained [1] 50/13
obviously [10] 6/25 18/4 18/20 59/25 77/25 80/7 93/10 94/15 101/21 112/20
occupied [1] 67/19
occur [3] 19/13 19/14 33/22
occurred [3] 17/17 43/18 47/8
occurs [1] 5/1
odd [3] 18/10 86/18 86/19
off [3] 56/17 61/16 64/3
offer [1] 10/3
Official [1] 122/8
oftentimes [1] 80/13
oh [12] 5/8 20/3 24/13 44/8 49/23 74/23 82/7 83/12 103/9 109/15 112/13 117/13
okay [108] 4/11 5/14 7/18 8/16 9/1 9/4 9/19 12/2 13/21 14/4 14/5 15/10 15/11 15/13 17/11 18/21 19/5 22/2 22/11 25/13 30/11 31/16 32/24 38/25 42/23 43/14 43/21 44/3 45/18 49/15 50/17 51/17 52/6 52/24 53/7 53/13 53/17 54/10 56/13 56/22 57/25 58/3 58/9 59/18 60/14 61/9 61/11 62/23 63/11 63/18 64/12 64/13 64/21 65/15 66/7 66/16 69/23 71/9 71/11 71/12 72/6 72/21 73/9 73/13 73/20 74/1 74/8 75/25 79/14 79/18 80/6 81/12 82/9 82/10 83/13 88/9 90/6 93/13 95/25 96/2 96/7 96/13 96/19 97/10 97/15 97/23 99/24 102/4 102/11 104/2 104/20 104/22 105/23 107/1 107/6 109/11 109/15 111/15 112/10 112/13 113/9 114/7 114/8 117/18 118/1 118/4 121/11 121/13
old [3] 25/15 89/11 89/15
once [2] 27/24 41/22
one [67] 5/1 5/12 5/16 6/5 6/20 7/14 8/14 8/17 10/3 10/8 10/22 15/12 19/19 19/21 22/12 23/3 24/24 25/1 30/25 32/25 33/24 34/4 34/6 34/17 34/22 36/9 39/1 42/25 43/19 47/15 48/12 48/16 49/4 49/15 49/22 51/9 53/14 55/14 55/23 56/5 60/1 60/11 62/22 71/1 71/12 72/11 75/22 77/25 78/9 82/5 82/23 83/12 84/11 85/5

one... [13] 85/5 87/6 90/4
90/13 93/20 97/8 97/13
100/22 102/23 109/7 115/11
116/4 118/18
only [25] 10/8 20/10 32/9
36/10 45/11 53/1 54/14 56/9
56/10 58/13 60/25 66/4 66/13
66/14 66/22 68/25 70/18
70/22 72/24 82/23 85/21
109/23 114/12 118/2 118/17
open [2] 114/23 115/1
opening [3] 78/12 79/12 103/8
openings [1] 115/2
operated [1] 119/11
operative [1] 121/4
operator's [2] 60/8 60/13
opinion [2] 6/4 77/16 119/15
opinions [1] 11/6
opportunity [2] 36/22 69/16
opposed [2] 37/17 84/16
opposing [1] 104/11
oral [1] 14/2
order [8] 4/19 57/24 62/15
68/5 70/6 96/20 116/14
120/13
origin [1] 88/23
original [2] 32/10 47/7
originally [2] 58/20 61/10
other [52] 5/7 5/16 6/18 7/1
7/24 9/7 10/3 10/8 12/14
13/14 23/12 25/14 34/9 34/13
34/14 34/17 34/22 34/24
35/25 36/2 36/4 36/18 39/1
40/22 47/22 49/9 50/22 54/14
57/3 62/11 66/8 68/19 70/20
72/9 72/17 73/12 79/4 79/19
80/17 81/16 85/22 85/24 90/8
90/14 91/8 92/1 93/20 95/14
109/3 114/24 116/4 119/6
others [1] 85/21
ought [1] 4/25
our [27] 4/9 4/19 6/23 10/7
11/9 19/7 44/13 53/6 56/8
58/22 59/22 64/3 70/11 72/2
77/2 82/25 84/11 86/9 96/5
109/8 113/18 115/25 116/20
116/20 117/4 118/23 119/10
ourselves [1] 81/5
out [50] 4/23 4/24 6/2 6/15
12/19 12/19 13/11 13/19
13/24 17/3 21/16 29/4 29/6
32/25 33/11 34/24 36/12 39/2
40/3 45/6 57/6 58/11 59/7
59/21 59/25 60/17 61/9 67/5
68/7 71/1 73/15 79/24 80/1
81/6 81/24 82/20 83/9 84/21
92/14 99/8 99/20 101/14
108/2 108/15 111/12 111/14
113/15 114/14 114/25 116/6
outcome [1] 5/4
outs [1] 105/11
outset [3] 6/4 60/16 61/13
outside [1] 111/6
over [8] 7/24 10/1 34/8 43/6
51/16 59/18 65/14 119/5
overall [1] 79/3
overcome [1] 6/14
overlapping [3] 75/6 76/9

-16/15
overlaps [1] 92/16
owe [1] 44/24
owed [3] 25/23 44/14 44/16
owes [3] 23/25 32/20 48/3
own [2] 39/19 81/17
owner [48] 5/2 7/16 14/25
15/9 22/7 22/14 22/22 23/8
23/25 23/25 24/5 25/1 25/17
25/19 25/22 26/7 26/18 26/22
28/5 29/7 30/4 30/20 30/23
32/8 32/18 34/6 35/14 36/11
36/16 39/6 39/19 40/6 40/17
40/18 40/19 40/20 40/21
42/13 45/7 45/11 46/9 46/24
47/7 47/18 48/7 50/3 50/6
53/3
owner's [2] 31/10 31/14
ownership [41] 8/3 19/8 23/21
23/8 23/18 27/1 28/23 29/16
29/19 29/22 30/3 30/9 30/12
30/15 34/11 34/15 36/3 36/14
36/20 37/4 37/12 37/15 37/18
40/2 38/4 39/5 39/16 40/1
40/17 46/4 46/12 46/14 47/1
47/4 47/10 47/10 50/10 50/12
50/16 81/20 94/23

**P**

p.m [3] 1/13 3/4 121/17
page [3] 16/17 16/24 39/13
41/10 41/12 41/13 42/11
42/15 44/7 44/8 45/4 76/1
83/22
Page 13 [3] 41/12 76/1 83/22
Page 18 [2] 44/7 44/8
Page 7 [1] 39/13
Page 9 [1] 41/13
Pages [2] 41/24 83/24
Pages 16 [1] 83/24
Pages 3 [1] 41/24
paid [5] 44/14 45/3 45/6 45/7
45/23
Pan [10] 24/4 25/14 25/18
25/20 26/4 26/21 26/25 36/18
46/1 46/17
papers [3] 5/19 19/7 96/21
paradigm [1] 33/11
Paragraph [5] 16/24 18/8 40/9
78/12 79/11
Paragraph 123 [1] 40/9
Paragraph 2 [2] 16/24 18/8
Paragraph 277 [2] 78/12
79/11
parent [18] 25/21 25/22 25/23
26/5 26/8 37/4 37/9 37/14
39/14 39/15 39/22 46/5 46/8
46/10 46/12 46/18 48/3 50/15
part [13] 14/22 44/19 51/15
76/8 78/21 79/16 80/1 80/13
95/21 95/24 100/3 103/15
107/23
parted [1] 35/15
participates [1] 45/12
particular [7] 25/3 29/4 33/4
34/1 61/3 61/23 62/3
particularly [2] 55/6 61/14
parties [14] 16/9 18/4 18/20
18/20 20/17 40/4 40/9 43/12
67/22 68/8 69/2 69/10 104/8

120/12
partly [2] 58/2 63/8
partner [1] 5/12
parts [1] 97/13
party [12] 8/3 14/10 14/10
14/18 14/20 14/24 16/22
21/17 43/6 52/22 55/15 81/19
pass [4] 10/23 41/19 74/17
82/5
passage [1] 45/4
passed [1] 17/2
passing [1] 110/24
patent [8] 20/1 28/16 34/18
43/7 57/1 71/21 88/12 108/18
pathways [2] 15/3 15/5
patient [3] 106/10 106/14
112/9
payment [2] 34/12 37/15
Payne [5] 10/15 85/8 85/8
86/14 87/10
pays [1] 44/19
peace [1] 90/10
pending [2] 5/4 49/14
people [4] 13/23 100/2 100/8
121/4
per [1] 118/20
percentage [1] 35/16
perfectly [1] 89/2
perhaps [7] 33/25 43/16 71/1
97/11 99/2 99/22 101/18
period [2] 27/19 48/15 69/1
81/20
permanent [1] 84/22
permeates [1] 59/8
permission [1] 67/15
perpetuity [1] 20/23
person's [4] 30/21 31/1 31/3
31/5
persuade [2] 6/2 13/15
persuaded [1] 21/25
Peter [10] 24/4 25/14 25/18
25/20 26/4 26/21 26/25 36/18
46/1 46/17
Peter Pan [9] 24/4 25/14
25/18 25/20 26/4 26/21 26/25
46/1 46/17
Petrella [43] 6/3 7/1 11/9
11/24 53/20 53/22 53/23
53/24 60/17 61/8 61/11 62/5
62/19 63/3 63/20 63/23 65/19
65/25 66/25 67/8 68/11 68/13
68/20 69/15 70/15 72/8 72/9
80/17 90/25 90/25 91/11
91/13 92/21 92/25 93/2 93/3
93/7 108/3 108/7 108/9
108/15 108/25 109/10
Petrella's [1] 68/24
phase [1] 116/17
photography [1] 27/4
phrase [1] 18/13
phrased [1] 110/23
physician [3] 105/2 106/10
106/15
pick [3] 10/4 113/13 113/21
picked [4] 17/24 21/4 21/5
108/17
picture [1] 21/16
piece [3] 7/3 8/10 73/12
Pimpin' [1] 82/15
pipe [1] 42/25

pitch [2] 84/8 84/10
place [5] 55/3 55/7 102/20
100/16
plaintiff [7] 2/7 26/6 57/16
61/24 62/4 68/5 95/16
plaintiff's [1] 62/6
plaintiffs [10] 1/5 3/8 14/13
36/24 43/13 48/13 58/5 69/18
80/13 112/16
plaintiffs' [3] 94/7 105/2 107/8
plan [6] 7/11 67/16 73/22
73/23 114/3 120/9
planned [1] 120/19
planning [1] 111/7
plant [2] 10/9 10/22
play [6] 18/16 36/15 56/3
102/7 102/9 109/17
plays [1] 6/15
please [5] 4/18 74/24 75/23
76/19 82/7
pleasure [1] 105/6
plus [4] 8/9 8/13 8/15 32/6
point [52] 6/24 7/8 7/22 11/25
12/3 12/12 20/6 29/4 32/25
33/1 35/21 36/16 37/3 39/1
39/12 39/24 40/3 40/6 41/6
41/9 43/17 44/9 44/12 45/25
49/1 54/15 55/13 56/5 57/3
58/13 58/16 62/11 70/21 71/5
71/7 72/24 75/12 75/15 77/1
83/23 84/2 85/14 85/14 86/14
92/5 92/22 93/2 93/20 95/4
98/13 104/7 106/24
point's [1] 81/17
point-blank [2] 70/21 71/7
pointed [2] 36/12 91/8
pointing [1] 65/12
points [3] 27/2 90/18 98/13
polite [1] 74/5
portion [2] 15/4 107/14
position [11] 22/5 36/25 38/21
41/1 42/6 53/19 74/14 94/7
94/7 98/15 103/3
posits [2] 46/8 47/17
possess [1] 16/2
possessed [2] 36/25 42/12
possibility [1] 116/12
possible [4] 37/13 65/17
85/16 109/6
possibly [2] 15/21 114/9
post [2] 13/12 90/25
post-Petrella [1] 90/25
post-trial [1] 13/12
potential [1] 38/10
potentially [1] 6/16
powers [2] 108/19 108/21
pre [1] 90/25
pre-Petrella [1] 90/25
preclude [7] 55/11 59/12
60/19 95/19 100/21 108/8
112/3
predate [1] 38/10
predates [1] 63/6
predecessor [1] 46/3
predominant [1] 89/15
predominate [2] 120/20
120/20
predominates [1] 89/21
preference [3] 106/11 106/15
114/11

prejudice [2]  99/6 112/15
prejudiced [1]  110/17
prejudicial [4]  73/25 106/24
110/14 112/20
preliminary [5]  96/15 99/23
101/22 113/19 114/13
preparation [1]  116/20
prepared [5]  13/15 114/16
114/19 119/25 121/12
presence [2]  90/1 111/6
present [4]  7/20 36/25 69/17
74/12
presentation [1]  116/14
presented [8]  70/10 70/18
70/19 70/21 75/19 102/22
105/12 116/16
pressed [1]  105/7
pretrial [3]  1/14 4/19 120/13
pretty [4]  16/16 54/16 77/11
96/24
prevail [1]  93/3
prevailing [1]  103/3
prevent [1]  55/7
preview [3]  10/9 12/4 67/9
previously [1]  36/10
primary [3]  98/20 103/5
104/11
principal [2]  102/1 102/2
principle [7]  89/9 89/10 98/9
108/15 108/17 108/19 108/24
principles [5]  30/9 83/9 87/18
88/24 103/24
prior [4]  19/20 26/22 32/9
54/1
privilege [7]  98/16 110/4
110/20 111/5 111/8 111/9
112/17
privileged [1]  107/9
probably [6]  5/18 65/21
101/22 110/15 113/14 119/5
probative [1]  110/7
problem [3]  75/16 108/21
109/18
procedural [4]  14/14 14/15
96/14 117/12
proceeding [1]  122/6
proceedings [2]  3/3 121/17
proceeds [4]  25/2 25/6 25/10
26/2
product [5]  57/1 58/22 59/25
64/3 64/23
products [16]  23/1 26/1 31/24
32/1 32/11 32/12 45/13 45/14
45/15 45/16 45/16 46/19
47/20 47/22 47/22 82/25
profited [1]  81/3
profits [38]  6/8 8/13 8/22 9/5
9/14 9/23 14/11 14/20 14/24
15/4 15/5 28/14 39/21 43/12
52/23 54/9 57/17 58/6 62/9
62/13 65/3 65/7 68/12 71/19
77/25 78/3 78/11 80/9 80/11
80/24 82/22 86/11 88/14
88/21 88/23 96/3 96/8 106/12
programmers [2]  98/20 100/3
programming [1]  101/9
programs [1]  40/11
progress [1]  95/15

Prokop [1]  3/24
prongs [2]  51/21 70/24
properly [1]  14/18
proposition [1]  62/20
propounded [1]  99/3
protean [5]  86/21 91/20 92/4
92/7 92/11
protect [1]  44/25
prove [4]  40/1 80/20 81/4
82/21
provides [3]  17/14 28/3 28/3
provision [4]  16/19 17/8 86/9
86/20
provisions [2]  85/22 85/24
proxy [8]  9/23 11/16 11/17
71/22 71/23 77/8 77/9 77/15
Publications [1]  67/12 68/1
published [2]  68/3 68/4
pull [1]  61/16
pulling [1]  113/6
purchased [1]  69/2
pure [1]  84/18
purpose [2]  30/22 30/23
purposes [8]  19/10 28/10
28/12 43/23 91/17 91/21
91/22 117/4
pursue [1]  60/22
purveyed [1]  52/18
put [9]  7/12 10/2 11/5 13/25
53/7 68/24 74/14 81/16 82/25
putting [3]  12/21 23/19 95/9

Q

qualification [1]  76/16
qualifies [1]  65/23
quantify [1]  79/13
quantum [1]  65/2
Queen [7]  72/18 88/16 89/1
89/4 89/9 89/19 91/25
question [73]  7/10 8/1 14/14
14/19 15/7 16/12 16/17 18/11
24/18 28/13 36/14 36/15
36/20 39/5 50/25 51/6 51/6
51/14 51/17 52/22 54/12
54/19 54/20 54/22 55/19
56/15 56/22 57/10 57/19 61/7
61/10 61/19 62/23 64/15
66/13 66/14 66/21 69/16
69/24 70/1 70/9 70/14 70/17
70/24 71/2 71/4 71/23 71/24
75/19 76/21 81/21 83/5 85/17
87/10 87/14 88/4 88/8 90/22
91/6 92/3 93/9 94/18 97/25
99/18 103/14 109/14 110/10
110/23 111/4 111/7 111/12
114/2 114/23
questions [7]  40/22 54/19
60/10 75/21 94/18 112/16
116/22
quick [2]  84/23 117/25
quickly [5]  70/8 90/14 95/14
103/25 106/3
quintessentially [2]  104/12
104/15
quite [3]  18/8 24/3 102/19
quits [1]  52/6
quote [11]  30/15 35/14 37/8
37/9 37/11 40/25 42/6 62/1
68/23 98/17 100/2
quoted [1]  35/13

quoting [1]  92/8

R

Rachael [1]  3/11
Rachael Blitzer [1]  3/11
RACHEL [3]  2/4 2/6 3/11
RACHEL COHEN [2]  2/6 3/11
Raging [1]  16/8 68/19
Railway [1]  87/23
raise [7]  6/24 6/25 17/23
36/19 36/23 70/1 112/15
raised [3]  7/7 17/22 36/24
ramifications [1]  117/12
range [1]  27/11
rather [5]  18/10 39/18 49/16
50/8 50/13
rationale [2]  26/20 86/25
RAUCCI [2]  1/23 3/13
Re [2]  87/23 90/24
read [7]  19/21 86/16 86/16
87/1 89/8 89/8 90/9
reading [3]  19/24 92/24 99/9
reads [1]  19/19
ready [1]  114/10
real [5]  5/8 52/3 69/8
real-life [1]  52/3
realign [2]  10/6 41/16
realist [1]  116/8
really [17]  14/6 29/14 30/14
31/4 39/5 47/23 54/14 54/18
54/21 72/24 82/13 85/13
85/13 101/19 101/23 115/11
115/19
reason [8]  23/12 38/14 51/13
71/15 80/22 104/11 109/25
114/21
reasonable [10]  8/24 57/17
73/24 76/10 77/2 78/4 78/7
78/8 78/20 78/21
reasonably [2]  111/5 111/8
reasons [1]  7/1
recall [4]  65/13 96/15 96/17
101/22
recalled [1]  119/16
receive [1]  39/24
receives [2]  34/7 39/21
recent [1]  86/8
receptive [1]  115/13
reclaim [1]  21/1
recognition [1]  88/20
recognizing [1]  89/22
recollection [1]  38/19
recommend [1]  113/9
record [3]  39/23 84/14 84/16
recover [6]  48/14 53/1 79/24
80/10 80/15 80/24
recoverable [1]  88/22
recovered [1]  15/3
red [1]  118/24
reference [1]  41/18
referred [3]  62/1 74/17 74/19
referring [5]  41/5 41/20 41/23
92/5 92/7
reflect [1]  1/7
regard [1]  106/5
regarding [1]  104/8
regardless [1]  81/19
regards [2]  3/19 4/20
regime [1]  91/2
relate [1]  38/8

related [1]  109/14
relates [1]  53/5
relationship [5]  39/15 39/23
46/13 48/4 50/15
relevance [1]  111/25
relevant [13]  6/7 7/2 23/4 23/5
23/12 75/14 76/6 76/14 83/18
83/21 93/25 106/11 107/25
relied [4]  50/4 50/4 50/5 50/14
relief [20]  54/8 54/22 57/23
61/1 61/3 61/23 62/2 62/3
62/8 62/16 62/23 64/2 66/12
68/6 68/13 83/1 86/12 86/21
93/5 93/9
relies [1]  48/2
rely [1]  34/23
remainder [1]  60/4
remaining [1]  94/24
remains [3]  24/1 54/12 95/24
remedial [2]  59/12 62/7
remedy [8]  54/4 57/11 65/18
68/12 72/24 86/20 92/20 95/4
remember [2]  38/14 38/15
remind [3]  4/18 99/22 118/1
reminds [1]  4/13
renamed [1]  98/11
RENEE [1]  2/4
repeat [1]  60/1
relates [1]  53/5
reply [4]  40/25 41/13 42/1
90/17
report [5]  35/12 50/9 78/12
78/24 79/12
reporter [4]  4/17 24/15 122/2
122/8
represent [1]  37/10
representation [1]  105/17
representations [2]  96/21
100/1
request [6]  57/5 65/22 67/24
68/20 76/14 115/4
requested [5]  61/3 61/23 62/3
75/3 115/7
requests [1]  115/14
require [2]  110/19 112/17
reraise [1]  112/20
RESEARCH [11]  1/8 96/8
97/13 98/12 100/22 100/25
101/25 102/1 102/3 103/1
103/10
Research's [1]  97/4
residing [1]  67/23
resolve [2]  4/24 79/25
resolved [1]  70/7
respect [2]  64/1 86/15
respond [1]  74/3
response [6]  6/25 41/10 43/23
55/2 84/23
responses [1]  44/13
responsibility [2]  32/15 45/1
rest [3]  75/7 112/24 113/4
restatement [4]  92/8 92/10
98/7 98/22
restraining [1]  68/5
result [2]  9/18 68/15
resume [2]  113/4 118/5
retain [5]  16/1 23/17 37/14
38/3 47/2
retained [5]  25/4 25/4 25/5
26/2 39/6
retaining [1]  35/22

R

retains [3]  25/1 34/11 39/20
retention [2]  37/25 39/3
retroactive [1]  18/12
retroactively [3]  17/21 47/13 47/14
retry [1]  116/25
return [1]  39/24
revenue [6]  37/18 44/13 65/11 75/2 75/17 77/20
revenues [4]  43/11 77/3 77/8 78/10
revisit [1]  70/15
Rick [2]  40/6 40/7
Rick Duff [1]  40/6
right [182]
rights [34]  15/17 15/25 16/1 16/25 17/2 18/9 19/3 19/20 19/21 20/3 20/4 20/7 20/11 20/13 21/2 21/13 21/20 21/23 22/15 22/23 31/13 31/15 32/16 32/17 32/22 33/3 33/5 33/6 37/25 39/11 42/12 46/4 47/25 68/3
ringing [1]  11/1 38/23
risk [2]  68/24 99/12
road [3]  64/9 64/11 98/6
Robinson [1]  72/6
ROGER [4]  2/5 3/10 5/12 14/13
ROGER CHIN [4]  2/5 3/10 5/12 14/13
rogue [1]  103/9
role [1]  51/16
roll [2]  55/18 57/14
Root [1]  87/23
round [1]  114/2
route [2]  117/2 117/3
row [1]  3/12
royal [1]  8/9
royalties [6]  35/16 35/23 35/24 36/4 36/13 50/12
royalty [32]  8/15 8/24 9/6 22/16 24/8 24/18 24/20 24/22 25/4 25/4 26/17 27/11 34/7 34/12 37/15 39/3 45/23 47/3 48/1 57/17 76/6 76/10 77/2 77/3 78/4 78/7 78/8 78/9 78/20 78/21 79/13 94/1
rubber [1]  98/5
rule [14]  6/5 6/10 6/13 60/18 60/25 62/5 62/6 65/25 69/15 75/13 89/11 89/15 99/13 108/7
Rule 2 [1]  65/25
ruled [2]  79/23 80/10
rules [5]  6/3 6/5 60/16 63/13 66/25
ruling [3]  46/22 94/8 100/15
rulings [2]  4/19 49/12
run [1]  95/14

S

said [44]  11/22 11/25 12/13 13/9 17/6 17/8 19/2 24/13 24/17 36/21 36/22 37/6 38/17 39/22 40/3 40/9 40/18 43/5 54/7 60/9 64/18 67/25 68/12 68/23 74/11 75/5 76/24 77/14
83/20 84/20 87/3 90/10 90/23 93/5 96/13 96/23 100/24 105/15 108/19 111/21 111/23 112/6 118/6 120/18
sake [1]  9/8
sale [1]  57/1
sales [18]  14/14 14/20 14/21 14/21 23/1 35/16 47/19 48/14 48/15 50/13 56/24 65/9 78/10 79/3 79/11 79/24 81/19 95/7
same [14]  13/4 14/19 32/21 58/19 59/8 73/8 75/15 77/2 85/14 86/20 88/15 89/4 93/8 114/1
SAMMI [3]  2/5 3/10 105/4
SARANG [1]  2/4
sat [1]  65/4
saw [2]  5/18 93/23
say [80]  4/16 5/8 5/9 10/8 11/10 11/20 17/20 18/11 18/17 20/2 21/20 22/1 26/1 28/2 32/25 37/3 37/6 39/13 39/17 40/6 41/18 46/3 50/15 51/25 53/18 54/3 55/13 55/14 55/16 57/6 57/8 61/6 61/12 61/14 61/25 63/25 64/2 64/4 64/16 64/23 65/1 65/6 65/7 65/18 65/21 70/17 71/2 71/21 72/9 72/20 73/23 74/8 75/10 76/5 77/11 80/11 86/23 88/9 90/16 90/18 92/1 92/4 92/23 92/25 102/12 102/12 102/13 102/17 102/17 102/20 103/21 106/1 108/9 108/18 110/3 110/3 110/14 114/21 119/1 120/3
saying [14]  11/25 13/8 44/24 52/13 61/21 67/6 73/15 76/8 76/13 80/15 108/4 109/5 115/22 119/16
says [68]  10/16 10/17 12/15 12/22 13/5 13/5 15/24 16/25 18/2 19/1 20/22 21/2 27/6 30/19 30/24 35/4 35/5 40/13 42/5 42/17 42/19 46/11 52/20 53/24 54/5 54/17 55/5 61/8 61/11 61/22 61/25 62/1 70/20 71/7 71/18 72/8 73/1 74/12 75/16 83/22 84/4 85/20 85/22 86/4 86/6 86/7 86/9 86/15 86/17 86/18 87/8 87/9 87/10 87/10 87/24 88/13 88/16 88/19 89/19 91/1 91/6 91/20 91/21 92/19 93/24 100/20 100/21 108/7
SBK [18]  24/4 24/7 24/9 24/14 24/17 24/19 24/24 24/25 25/3 26/5 26/20 27/1 33/4 33/10 34/3 34/23 36/13 50/2
SCA [3]  108/18 108/25 109/10
SCA Hygiene [1]  109/10
scenario [2]  36/12 36/17
scope [3]  7/19 98/2 101/6
scoring [1]  75/2
second [16]  6/10 28/17 47/17 49/22 51/9 60/25 62/5 62/22 67/12 68/1 75/22 96/1 118/14 118/14 118/17 120/15
secret [1]  71/20
section [2] 87/18 87/17
section [1]  42/15
see [16]  4/22 9/19 49/13 63/21 86/4 86/11 94/19 99/8 103/22 104/1 107/2 114/8 114/13 119/3 120/5 121/10
seek [8]  28/4 28/4 28/14 43/11 52/23 56/16 64/16 72/20
seeking [5]  62/16 62/16 64/3 68/13 73/8
seeks [1]  95/19
seems [8]  7/17 8/21 20/7 62/18 73/24 101/4 118/20 119/24
seen [1]  3/16
selection [2]  4/14 113/9
sell [2]  28/14 64/22
sells [1]  20/20
send [8]  13/6 13/10 13/19 71/3 73/13 75/10 84/4 84/21
sends [1]  3/19
senior [1]  101/25
sense [6]  5/12 6/21 17/19 33/15 82/11 115/11
sensing [1]  116/1
sent [1]  87/3
sentence [3]  42/10 54/5 90/4
separate [2]  20/14 116/17
separately [2]  74/22 75/1
separates [1]  66/14
separation [2]  108/18 108/21
seriously [1]  102/16
serve [1]  115/2
SERVICE [1]  1/4
set [6]  12/16 54/1 73/16 108/15 108/16 120/8
settled [1]  87/4
seven [2]  59/4 60/2
seven months [2]  59/4 60/2
Seventh [1]  71/18
shaking [1]  7/18
shall [2]  46/3 86/6
shape [1]  114/14
shared [1]  26/9
shares [3]  22/24 47/18 47/21
SHAW [2]  2/10 3/19
she [9]  12/23 12/25 12/25 12/25 12/25 13/5 78/8 79/12 84/20
shoes [3]  15/20 16/22 21/13
shore [1]  43/7
short [1]  16/16
shot [1]  63/24
should [22]  7/7 14/10 14/20 14/21 23/2 28/2 43/24 48/10 57/6 57/21 70/9 74/22 74/25 78/25 85/18 89/3 93/3 95/6 110/4 114/16 119/7 120/9
shouldn't [5]  57/7 57/14 73/20 74/12 112/1
show [4]  37/11 63/15 78/23 82/13
shows [1]  34/8
Sid [2]  73/1 87/6
Sid Krofft [1]  73/1
side [16]  6/23 7/24 8/7 9/14 34/1 35/25 54/15 57/3 72/17 80/9 82/23 86/20 86/20
118/20 120/8 120/14
sidebar [1]  111/13
sides [4]  22/13 47/13 48/21 118/12
sides' [1]  26/19
significance [1]  25/5
significant [1]  99/5
silently [1]  65/4
similar [1]  68/11
SIMMONS [2]  2/15 3/23
simple [1]  8/19
simplest [1]  53/18
simplifies [1]  101/19
simply [1]  26/16
since [3]  56/2 58/12 60/11
sit [1]  10/4
sitting [1]  88/2
situation [21]  22/19 23/2 23/19 25/9 25/20 26/21 27/5 27/8 31/8 31/8 33/11 36/2 46/8 46/17 67/14 67/21 77/12 82/18 83/17 94/20 121/7
six [2]  60/3 61/15
six years [2]  60/3 61/15
Sixth [1]  67/11
Sixth Circuit [1]  67/11
skim [1]  93/23
skimming [2]  76/4 76/12
slide [1]  7/22
smack [1]  54/24
small [1]  117/2
smaller [1]  73/16
so [188]
sofar [2]  34/21 45/23
software [8]  23/7 23/21 60/8 98/24 101/24 102/2 103/2 103/10
sold [4]  43/12 48/15 100/2 100/8
solely [2]  33/19 109/8
some [37]  4/25 5/18 7/22 8/8 8/12 9/22 18/1 37/4 37/18 38/14 41/6 43/3 43/4 47/23 49/12 50/1 52/7 52/18 58/14 70/7 71/5 75/21 88/17 89/19 90/13 95/12 95/15 103/7 103/18 104/7 109/6 110/5 114/24 116/11 117/8 117/11 117/23
somebody [8]  7/17 20/2 43/5 43/10 61/16 82/3 112/19 115/10
somehow [1]  33/2
someone [6]  8/1 80/18 80/18 80/24 82/12 84/15
something [22]  9/21 10/9 33/13 34/13 35/5 36/3 38/17 39/7 39/24 49/24 54/5 61/13 69/21 80/18 82/12 98/1 99/6 101/5 106/2 112/11 112/11 112/19
Sometime [1]  116/17
sometimes [4]  11/20 92/15 92/15 92/15
somewhere [2]  35/5 73/23
song [5]  80/18 82/12 82/14 82/19 82/19
sorry [20]  12/25 24/11 24/14 41/9 52/12 70/18 74/6 74/23 86/5 87/20 95/25 96/2 97/4

S

sorry... [7] 106/23 109/17 112/14 113/6 113/13 113/25 118/14
sort [13] 7/23 7/23 8/8 11/14 13/11 13/19 37/4 38/3 51/13 58/19 73/15 84/21 115/8
sorts [2] 86/16 95/7
sought [4] 65/18 68/5 68/6 73/17
sounds [6] 49/19 49/19 98/22 101/3 101/15 113/17
source [4] 38/8 98/20 103/5 115/23
speak [2] 8/5 44/6
speaks [1] 53/22
special [1] 23/15
specific [3] 92/12 99/16 100/13
specifically [3] 11/24 30/2 72/15
speculating [1] 42/24
spells [1] 33/11
spend [2] 66/10 67/13
spent [1] 22/3
spill [1] 119/5
spoke [1] 37/24
spreadsheets [1] 118/23
squarely [1] 36/23
stage [5] 59/12 62/7 69/13 115/4 115/5
stake [1] 11/6
Stamm [3] 56/18 57/7 70/5
stand [2] 89/9 89/10
standard [3] 39/3 98/7 98/23
standing [9] 7/15 14/8 43/4 43/7 48/9 52/22 56/13 56/23 57/16
stands [4] 15/20 16/22 21/13 62/20
start [9] 5/5 11/15 50/21 50/21 51/11 72/18 74/9 95/16 113/16
started [4] 12/6 12/7 18/15 71/15
starting [1] 12/4
stated [3] 6/3 18/8 19/7
statement [2] 40/24 54/16
states [3] 1/1 1/18 18/8
statue [1] 108/16
status [1] 23/15
statute [12] 5/17 7/25 50/7 54/1 54/2 60/6 60/10 60/20 61/12 63/3 85/15 108/20
statutory [3] 85/5 87/8 91/7
steal [1] 115/23
stenographic [1] 122/5
step [1] 49/8
stick [1] 64/14
sticking [2] 58/3 105/17
still [12] 7/8 11/20 19/22 56/3 65/14 77/23 89/21 94/8 95/24 106/5 119/7 121/2
stipulated [1] 58/21
stock [1] 12/21
stole [5] 82/24 102/12 102/13 102/17 115/18
stolen [6] 80/19 80/24 82/12 102/23 115/24 115/24
stop [4] 17/4 17/11 53/21 54/2
stopped [1] 62/22
story [1] 52/3
straight [2] 8/14 15/22
streams [1] 37/19
Street [1] 1/16
stretch [1] 119/22
strike [1] 78/14
strong [1] 54/7
strongly [2] 78/20 115/11
structured [1] 38/11
stuck [1] 52/13
stuff [1] 115/19
subject [2] 37/1 45/16
submit [1] 4/16
subsection [1] 86/10
subsequent [1] 74/18
subsequently [1] 19/21
subsidiary [13] 25/21 25/21 25/24 26/23 39/14 39/23 44/22 44/23 46/13 47/24 48/4 50/15 109/13
substantive [1] 14/16
such [5] 40/10 63/15 69/2 103/11 111/10
sue [2] 26/15 27/4
sued [1] 58/15
suffer [1] 69/9
suffered [1] 56/23
suggest [7] 9/22 38/13 38/16 46/1 96/8 97/3 103/19
suggested [1] 114/22
suggesting [1] 100/21
suggestion [2] 110/5 110/18
suggestions [1] 6/18
suit [5] 68/24 69/18 93/6 107/15 109/8
summarizing [1] 47/23
summary [23] 7/25 41/10 43/23 50/22 51/4 51/11 51/15 51/19 53/5 54/24 55/3 55/24 56/3 56/8 56/9 57/4 58/4 59/16 62/20 66/15 66/23 69/13 69/14
Supp [1] 36/21
support [2] 42/2 55/8
suppose [1] 100/13
supposed [1] 101/12
Supreme [14] 63/3 63/22 67/10 67/24 68/18 68/21 85/15 86/1 86/7 86/7 86/13 86/22 87/24 88/16
sure [28] 5/11 6/3 9/8 10/11 14/12 17/7 28/24 29/14 33/8 34/19 41/17 42/4 49/6 74/20 79/22 82/5 93/19 96/4 98/18 99/21 102/19 105/12 106/4 106/9 108/13 109/22 110/9 120/24
surprised [1] 6/1
surprising [1] 44/17
Sy [1] 3/10
Sy Damle [1] 3/10
Sy's [1] 108/11
Sysco [3] 12/19 13/20 84/20
system [2] 98/21 103/6
systems [1] 40/11

T

table [2] 3/9 56/17
tackle [3] 6/19 6/21 8/18
take [20] 16/23 38/21 51/7 51/19 52/20 56/16 56/20 64/3 65/3 70/19 73/5 75/20 93/6 96/18 110/4 112/5 113/1 113/23 114/20 120/13
taken [1] 81/24
takes [3] 10/15 49/15 53/19
taking [4] 22/4 84/16 95/1 99/12
talk [11] 13/21 21/7 49/3 50/18 78/13 79/3 95/12 107/14 115/9 117/23 119/11
talked [7] 55/21 77/18 78/3 78/5 87/15 87/19 87/21
talking [10] 17/19 21/24 24/7 42/8 77/3 86/13 90/23 91/19 92/11 92/16
talks [6] 13/25 24/7 35/10 46/2 46/4 46/7
TAOS [6] 11/12 71/18 72/11 73/4 90/25 91/3
taught [1] 74/5
teaches [1] 33/5
teachings [1] 34/23
team [4] 49/8 49/17 49/18 114/18
Tech [1] 90/25
technicality [1] 76/22
Technologies [2] 72/2 87/23
tell [18] 5/25 8/19 14/9 16/6 17/25 30/2 33/17 44/9 52/2 54/18 77/17 84/7 85/7 101/11 101/13 115/12 119/24 120/6
telling [1] 119/8
tells [1] 91/4
ten [1] 87/2
term [2] 35/13 86/10
terms [9] 8/19 14/20 19/6 21/10 27/25 39/9 107/8 107/13 114/12
terrible [1] 82/19
testimony [1] 121/1
Texas [2] 71/1 85/9
than [8] 8/6 26/5 34/14 36/2 36/4 94/21 101/16 121/3
Thank [19] 3/7 3/15 4/1 14/12 36/6 36/7 43/14 70/13 74/1 74/2 90/20 90/21 105/4 105/5 111/15 112/22 112/23 121/14 121/16
Thanks [1] 76/3
that [595]
that's [113] 5/5 5/14 5/15 7/4 7/13 10/23 13/3 15/12 16/10 16/13 19/11 21/19 22/8 23/10 25/8 25/8 26/15 27/3 28/13 28/17 28/19 28/19 29/10 29/10 29/14 30/1 30/3 30/6 30/17 30/22 30/23 31/4 31/6 33/12 35/21 35/22 37/3 37/20 37/21 37/23 38/23 39/17 40/19 42/3 42/19 44/17 45/9 45/19 48/3 48/16 48/23 48/25 49/2 49/10 49/19 51/12 53/22 58/1 58/8 61/4 61/17 61/20 62/5 62/21 64/3 64/9 66/22 67/25 69/6 69/12 70/6 72/6 72/22 73/25 76/3 77/6 79/6 79/16 80/2 83/2 83/7 83/10 83/22 85/16 89/23 91/9 92/6 92/13 92/20 93/14 93/18 94/1 94/6 96/11 98/4 102/22 103/14 105/9 105/25 106/20 106/20 108/17 108/24 109/7 110/9 110/11 110/12 111/10 113/1 114/25 115/19 119/14 120/8
theft [3] 81/3 83/1 83/2
their [50] 7/18 8/14 9/12 10/5 10/17 10/24 14/24 30/4 37/18 38/7 39/12 40/5 40/25 41/10 42/2 45/14 45/15 51/8 54/9 55/2 55/23 56/14 60/4 64/2 64/16 65/3 65/3 65/12 65/16 65/22 72/17 75/16 81/22 82/25 83/1 83/10 84/4 87/17 87/18 88/23 96/21 98/17 99/7 101/1 102/7 102/9 109/3 109/7 111/25 116/24
them [21] 3/10 14/23 38/19 39/8 43/8 56/25 58/17 60/2 62/15 69/25 73/5 74/14 94/19 96/24 100/9 100/21 101/13 103/17 103/25 113/13 118/24
themselves [1] 26/5
then [73] 8/24 9/6 10/4 11/11 11/13 14/1 16/1 16/1 19/2 19/22 21/12 30/14 32/21 36/24 39/17 40/13 43/8 44/9 48/10 49/13 50/14 51/17 53/2 53/7 53/8 54/3 55/13 57/14 57/22 58/13 58/25 59/3 59/18 61/15 64/12 66/8 66/13 66/17 67/19 68/23 70/8 71/17 71/25 72/8 72/12 72/25 73/12 73/21 78/18 79/24 81/23 83/4 85/25 86/25 87/9 88/10 88/15 89/15 91/8 100/6 101/8 104/9 107/1 111/18 113/9 113/16 114/13 117/23 118/4 118/5 119/16 119/19 120/5
theories [1] 8/14
theory [3] 39/4 47/17 88/22
there [81] 4/24 5/7 6/24 10/12 10/12 10/13 10/19 13/1 13/24 15/2 15/5 17/11 23/11 24/18 33/25 34/17 34/18 34/21 36/9 36/11 38/1 38/18 39/25 43/4 43/6 45/24 46/8 55/5 56/21 58/21 58/22 59/17 59/23 60/7 60/7 60/8 60/8 61/9 61/17 63/15 64/12 65/13 67/24 68/7 69/6 71/18 73/24 74/18 79/2 79/5 79/9 79/10 79/12 80/19 80/22 81/23 81/23 82/18 83/15 87/12 89/10 89/20 93/9 94/21 97/12 97/21 98/13 101/24 104/9 104/10 106/8 107/13 109/6 109/13 110/5 110/15 110/16 113/19 114/22 118/22 119/14
there's [56] 7/1 7/3 7/24 8/8 8/12 9/21 9/21 11/12 11/24 12/18 13/24 14/14 17/20 20/25 34/16 37/25 39/23 54/12 55/1 56/11 57/2 57/7 57/16 60/16 63/19 64/2 65/13 69/15 70/14 70/24 71/22 75/6 76/9 78/2 82/24 84/1 85/4

**T**

there's... [19] 86/15 86/16 91/14 94/18 99/5 101/21 101/23 103/7 105/7 105/10 107/20 110/7 110/15 113/21 113/21 115/4 116/11 117/23 119/8

therefore [4] 22/21 39/6 48/8 80/14

these [14] 19/10 28/4 48/7 58/14 62/17 65/11 66/16 70/7 80/17 89/2 90/9 98/16 108/19 114/24

they [157]

they'll [2] 74/13 107/14

they're [31] 6/3 9/16 30/4 33/8 41/5 41/20 42/8 44/22 53/5 64/3 65/12 66/9 73/2 74/14 91/19 92/4 92/8 92/16 99/6 99/19 100/24 101/3 101/16 101/16 102/12 102/19 103/16 103/22 103/23 105/15 106/19

they've [8] 7/7 9/15 16/2 30/4 58/11 60/5 60/11 78/10

thing [22] 8/17 10/3 10/8 12/9 13/4 20/10 39/1 47/17 49/20 54/14 58/13 75/7 79/19 84/6 84/11 84/14 88/15 89/4 96/7 103/11 115/5 116/4

things [17] 7/12 9/1 10/20 28/14 47/24 49/9 55/2 79/4 80/7 95/7 101/19 106/10 106/11 113/15 114/14 116/1 116/14

think [168]

thinking [5] 4/4 8/21 13/1 43/10 50/1

thinks [1] 115/11

third [16] 6/5 6/13 40/9 48/2 62/6 67/22 68/8 69/1 69/9 69/15 71/25 84/13 86/25 88/3 95/10

this [154]

thorough [1] 85/13

those [33] 6/16 9/1 9/2 21/14 24/3 26/24 32/21 34/14 47/9 47/11 47/21 48/6 51/8 51/13 60/9 60/11 63/12 63/23 73/10 79/4 79/8 79/12 87/6 102/5 102/23 102/25 103/9 103/24 104/15 105/10 115/13 115/22 116/1

though [8] 6/18 7/3 7/14 53/10 56/1 71/16 80/23 114/11

thought [19] 7/19 9/8 9/20 9/24 24/13 29/7 30/11 41/3 43/3 49/3 63/9 64/5 65/8 86/12 97/15 97/17 118/16 118/17 118/18

three [30] 6/3 7/23 8/22 9/1 9/2 26/12 41/4 42/9 42/19 50/23 51/2 51/3 52/5 60/7 60/16 63/12 65/10 71/10 77/19 77/22 77/23 77/24 78/2 101/23 102/5 102/23 102/25 109/12 109/16 118/13

three days [1] 118/13

three hours [1] 52/5

three-headed [5] 7/23 8/22

77/19 77/22 77/24 threshold [14] 4/25 7/4 53/24 54/21 60/22 61/2 61/18 61/23 62/3 62/23 62/25 63/17 69/24 77/6

through [27] 4/7 19/8 25/11 25/11 27/18 32/18 32/19 32/20 47/7 50/21 51/7 51/24 61/18 70/6 71/20 71/20 73/5 85/13 90/14 91/1 91/9 95/14 103/8 108/20 119/6 119/25 121/13

throw [1] 73/15

thrown [2] 61/9 69/5

Thursday [4] 118/7 119/2 119/13 120/18

thus [1] 42/13

Thynge's [1] 55/12

tied [8] 32/1 33/14 37/16 47/24 48/4 64/23 69/24 69/25

time [35] 11/15 17/3 22/4 23/9 26/8 27/17 27/19 29/5 38/9 45/6 49/8 49/9 63/9 66/4 66/10 67/13 82/11 90/3 90/10 92/5 93/9 105/7 113/2 113/7 114/20 116/18 119/10 119/20 120/7 120/12 120/21 120/22 120/22 121/9 121/15

time's [1] 89/6

timeline [1] 19/7

times [1] 9/23

timing [2] 23/20 43/2

title [19] 15/15 22/22 23/17 23/25 23/25 25/21 28/4 28/7 28/9 28/16 31/10 32/5 33/12 34/10 35/15 36/13 52/8 53/10 57/22

titleholder [12] 21/18 22/15 22/24 29/11 29/17 29/20 29/24 29/25 31/12 32/3 32/10 32/22

titleholders' [1] 31/14

titles [1] 21/2

today [14] 3/20 3/21 4/8 4/14 4/19 5/14 21/22 32/4 60/16 64/6 64/8 64/16 78/5 94/8

together [4] 31/24 51/14 56/20 69/25

told [1] 65/8

TONY [3] 2/5 3/10 105/4

too [5] 6/19 7/4 8/24 87/20 97/17

took [5] 21/15 55/18 69/18 98/15 103/3

top [1] 108/23

tore [1] 58/22

total [3] 68/6 68/15 77/8

totally [1] 81/10

touched [2] 7/3 57/20

towards [2] 16/24 93/17

town [1] 113/15

trade [3] 71/20 87/16 87/16

trademark [2] 71/21 72/19

transcript [3] 17/5 119/12 122/5

transfer [32] 16/8 16/18 16/19 16/22 16/25 17/8 17/12 17/14 17/17 18/6 18/19 19/3 20/14 20/18 23/10 23/17 23/20 27/14 28/6 37/24 38/2 38/17

38/21 39/7 40/8 41/1 41/7 41/10 41/16 41/16 47/18 47/18 47/19

transferred [16] 20/9 20/10 20/11 20/15 20/16 20/25 21/1 21/12 22/23 23/16 23/23 23/24 27/20 38/5 46/25 47/9

transfers [4] 16/25 18/9 20/21 22/15

treat [3] 43/24 73/2 91/22

treated [3] 11/15 63/4 72/12

treatises [1] 90/8

trial [22] 4/17 10/16 13/12 37/11 54/20 59/19 84/15 88/20 89/16 89/21 89/25 100/6 102/22 106/21 107/2 111/11 112/15 116/20 117/7 117/20 118/2 120/1

trick [1] 80/21

tried [2] 17/22 61/15

true [6] 26/19 40/20 50/8 79/7 79/16 122/4

trust [2] 30/8 96/22

try [7] 7/11 13/15 99/22 113/18 117/6 117/8 119/7

trying [8] 4/23 44/5 61/4 99/8 99/20 100/14 101/14 118/21

Tuesday [4] 118/17 119/16 119/18 120/15

TUNNELL [1] 1/22

turn [1] 16/8

two [37] 4/4 7/25 9/5 15/2 15/5 15/12 15/14 27/2 34/14 50/22 50/22 50/24 54/17 60/9 63/19 63/23 67/8 68/4 69/25 70/24 73/25 78/1 80/7 83/9 83/15 85/4 90/18 91/8 94/18 97/3 97/13 98/13 98/19 100/25 107/20 112/9 117/7

two hours [1] 4/4

two years [1] 68/4

two-day [1] 117/7

type [2] 75/6 109/6

typically [1] 112/6

**U**

U.S [1] 122/9

Uh [1] 85/2

Uh-huh [1] 85/2

ultimate [1] 106/16

ultimately [12] 44/15 44/19 45/3 45/6 45/7 51/14 57/10 59/19 69/25 91/11 93/3 93/8

unable [1] 48/13

unavailable [3] 53/21 53/21 62/21

uncertain [1] 107/13

uncharted [1] 11/23

uncontested [2] 48/25 53/2

under [20] 7/5 8/14 8/15 9/6 15/19 18/22 18/25 19/24 21/3 21/9 23/14 26/25 27/1 27/7 53/25 66/25 69/15 70/14 89/15 99/5

underlying [1] 72/21

understand [6] 16/4 60/15 63/11 66/6 110/25 115/15

understanding [1] 112/7

understood [2] 96/25 112/18

undisputed [9] 28/8 28/15 41/1 59/23 59/24 60/12

66/24 95/21 99/3

urdoe [1] 99/8

unfairly [1] 110/14

unfold [1] 64/20

unfolds [1] 69/21

unfortunately [2] 5/20 34/20

Uniloc [8] 73/14 75/9 75/12 75/25 76/1 83/17 83/20 94/19

UNITED [2] 1/1 1/18

unjust [7] 8/23 68/14 69/1 81/18 81/24 92/16 95/5

unless [3] 45/24 54/18 115/19

unlike [3] 85/20 85/22 85/24

unnecessary [1] 105/11

unquote [5] 35/17 37/10 42/7 62/4 68/22

until [6] 58/15 68/4 115/6 119/5 119/11 120/18

unusual [1] 80/17

up [50] 9/14 9/25 10/4 10/23 15/24 15/25 16/2 19/17 19/20 21/5 21/8 21/9 21/11 23/11 24/3 24/6 24/17 25/8 27/13 33/11 34/8 36/1 39/25 40/17 43/7 52/12 52/12 52/12 54/16 55/18 56/1 69/6 72/14 74/17 74/21 82/5 85/4 95/25 99/18 99/23 100/15 101/15 106/2 108/17 109/25 113/6 118/13 118/25 118/25 118/25

upholding [1] 98/16

upsetting [1] 87/4

upstairs [2] 44/19 84/15

us [16] 5/20 33/5 43/9 49/4 49/13 64/18 64/22 84/18 84/19 91/4 100/3 115/2 115/9 115/11 116/13 116/19

USA [1] 1/3

use [13] 30/21 31/1 31/3 31/5 31/9 32/2 33/14 35/3 68/21 85/23 86/9 108/8 120/21

used [4] 6/7 9/23 40/11 77/14

useful [1] 119/21

uses [1] 82/20

using [1] 67/15

utilize [1] 36/22

**V**

vacation [1] 3/19

vague [1] 111/10

valid [2] 38/17 38/22

value [6] 30/20 30/25 31/3 31/6 32/15 75/12

Vardin [2] 98/19 102/1

Vardin's [1] 103/4

varies [1] 92/11

various [1] 77/22

Venn [1] 8/13

verdict [11] 7/7 11/21 12/1 12/17 71/3 72/1 73/14 75/18 93/21 105/12 116/23

version [2] 38/8 43/1

versions [1] 8/8

versus [1] 87/23

very [23] 4/20 6/1 8/19 12/5 13/18 49/20 56/22 61/2 61/23 62/3 62/25 63/13 63/13 79/6 79/6 80/22 93/16 95/18 96/2 115/13 119/12 119/25 119/25

vestige [1] 43/4

**V**

via [5]  22/21 23/22 24/2 26/22
32/12
victim [1]  82/24
view [3]  59/22 61/8 108/3
vigorous [1]  115/22
violate [1]  103/12
violates [1]  103/23
virtue [4]  22/22 32/18 46/10
48/3
vis [2]  55/14 55/14
VISION [2]  1/7 55/19
voidance [1]  85/18

**W**

wait [12]  29/5 29/5 29/5 29/5
64/5 76/11 79/8 79/21 108/5
108/5 108/5 108/5
waived [1]  17/22
wake [2]  11/18 72/9
walk [4]  51/24 73/5 119/25
121/12
walks [4]  71/19 71/20 91/1
91/9
want [31]  7/20 8/17 14/6
14/17 29/21 31/16 35/8 49/3
50/17 70/23 71/9 79/6 90/16
90/18 93/20 94/8 96/7 105/11
106/1 106/4 106/9 109/24
110/9 112/10 114/2 114/16
115/5 116/8 116/16 120/17
121/3
wanted [2]  38/10 39/1
wants [2]  75/20 105/11
warranties [1]  100/1
was [116]  8/21 11/10 12/3
12/12 13/1 13/1 16/18 16/21
17/13 18/12 19/3 19/15 20/9
22/21 23/6 23/7 25/20 25/21
25/23 25/23 25/24 26/6 26/7
26/8 26/14 26/16 26/17 27/18
27/19 27/20 28/6 33/1 36/11
36/14 36/15 38/9 39/22 40/25
40/25 41/1 41/7 41/8 41/18
42/6 42/13 43/11 44/5 46/18
46/23 47/14 47/14 47/15
50/12 50/24 52/13 52/21 53/2
53/25 57/21 58/17 58/20
58/21 58/22 59/17 59/23
59/25 59/25 60/7 60/8 61/9
67/19 67/20 67/24 68/1 68/2
68/3 68/5 68/10 68/11 68/13
68/16 68/17 71/1 74/11 74/18
75/3 75/12 77/11 77/12 77/14
82/21 83/11 83/17 84/2 88/12
89/11 89/25 98/1 98/2 101/8
101/9 102/23 107/23 108/11
108/15 108/17 109/13 111/25
112/10 114/1 115/24 115/24
118/16 118/18 119/12 120/14
wasn't [8]  43/10 47/6 60/12
65/21 68/3 73/6 73/7 83/21
waste [1]  121/8
wasted [1]  120/22
watch [1]  121/3
watched [2]  64/20 64/22
WATKINS [2]  2/3 3/9
way [33]  8/5 10/13 10/19
12/14 14/6 18/14 18/14 19/22

20/4 21/19 31/17 34/17 34/23
47/23 53/18 55/18 72/14 73/3
75/24 77/2 77/21 81/16 82/9
84/10 86/16 87/16 88/17
91/24 101/16 108/4 110/17
119/8 120/19
ways [4]  85/4 86/16 88/1
90/24
we [191]
we'd [1]  59/19
we'll [26]  8/18 13/21 14/2 33/9
53/7 53/8 53/9 56/6 91/22
95/12 104/9 104/23 107/2
111/13 111/13 113/3 113/4
113/10 113/13 113/16 113/18
115/9 119/10 119/11 120/9
121/10
we're [42]  4/3 4/7 5/13 9/16
10/6 10/7 12/4 12/21 13/16
20/6 39/18 40/20 42/24 43/8
43/11 45/24 52/14 61/11
61/20 83/1 87/4 87/13 90/23
94/25 97/8 97/18 97/21 97/24
100/14 105/7 109/5 109/24
112/11 112/25 114/13 118/2
118/9 118/21 119/17 119/21
120/22 121/7
we've [11]  7/22 32/4 40/18
43/18 52/19 78/3 110/2
111/11 112/7 115/7 120/19
Weaner [1]  36/22
Wednesday [2]  1/13 119/20
week [11]  4/17 55/22 56/18
74/16 74/17 118/2 118/14
118/17 118/18 119/13 120/15
week's [1]  74/18
weekend [2]  113/14 118/5
weighed [1]  63/4
weight [1]  85/10
well [64]  5/22 5/24 5/25 8/16
9/19 10/3 12/6 14/15 18/21
18/21 19/19 20/18 21/6 23/13
23/13 31/8 32/19 33/20 35/2
39/5 39/8 40/6 40/8 41/25
45/11 45/13 46/19 47/21
49/13 50/4 51/17 51/23 52/11
52/16 53/7 54/16 55/3 55/16
55/20 56/7 57/23 58/14 59/3
59/6 59/18 61/8 73/23 81/14
88/9 90/24 94/6 97/18 102/15
102/19 103/18 106/18 107/1
107/18 107/20 111/22 118/19
118/21 119/3 121/10
went [3]  68/23 85/20 110/18
were [29]  19/21 26/18 30/11
34/17 36/9 38/1 40/16 44/16
60/7 60/9 67/15 67/18 67/19
67/22 67/23 68/7 75/3 83/15
88/13 89/15 97/15 100/8
104/13 109/25 110/15 110/23
111/2 111/4 111/7
Westlaw [1]  72/3
what [130]
what's [9]  37/21 50/19 50/25
52/8 71/6 72/7 76/24 77/19
95/6
whatever [7]  21/15 36/25
58/11 75/10 83/18 106/20
109/25
when [24]  9/18 18/8 19/13

19/13 30/11 37/3 37/5 48/22
56/20 57/13 57/16 64/18 65/9
73/3 86/8 103/12 103/21
104/9 104/13 108/19 112/6
116/25 117/9 120/24
whenever [1]  5/24
where [50]  8/8 11/19 23/2
23/10 25/9 26/17 26/21 27/8
29/10 30/13 30/18 31/2 31/18
31/19 32/1 33/12 33/20 34/10
34/13 36/2 39/24 46/8 49/13
49/25 51/5 60/14 61/15 62/21
66/15 66/21 67/14 67/21 68/2
70/20 71/22 74/9 74/16 80/2
80/20 80/21 84/1 87/2 87/4
94/23 96/16 98/5 108/9
108/15 121/1 121/7
where's [2]  30/14 56/19
whereas [2]  40/13 88/23
whether [29]  4/15 5/2 6/15
6/16 10/6 10/7 10/14 13/12
13/13 14/10 53/13 53/14 54/19
54/20 60/10 66/23 74/22
74/25 81/19 81/19 84/3 84/3
84/22 84/25 89/24 98/1 98/2
101/5 114/25
which [66]  5/22 7/7 9/24 10/6
13/9 13/20 14/15 16/8 22/12
24/24 25/16 27/19 29/17 30/9
37/24 38/15 42/17 43/11 45/4
46/2 46/2 48/15 50/12 51/5
51/5 51/5 51/15 51/18 53/20
54/1 54/18 56/10 58/20 62/16
62/21 63/6 65/19 65/25 68/7
68/11 69/24 69/25 70/24
71/18 72/4 72/8 73/1 73/17
76/15 77/24 81/7 84/3 86/1
86/8 86/11 87/16 88/3 89/24
91/1 98/11 106/11 107/25
111/18 116/23 118/20 120/14
while [5]  3/17 25/3 35/9 62/22
101/9
who [37]  3/12 3/13 7/5 9/12
11/1 11/4 22/15 23/16 23/17
24/5 25/23 26/22 27/4 27/9
27/10 34/7 35/14 46/18 50/9
55/18 67/22 67/23 68/8 69/2
70/1 85/12 85/23 93/7 100/2
100/3 100/8 102/6 102/25
103/1 103/9 104/13 120/2
who's [2]  26/7 101/20
whoever [1]  99/14
whole [4]  30/8 39/4 86/14
106/20
whom [1]  104/13
why [43]  14/9 14/9 14/17
14/19 14/21 21/5 22/9 23/4
23/5 23/15 27/14 27/21 27/22
35/2 35/9 38/5 41/3 42/25
44/8 44/9 51/10 52/7 54/21
57/13 58/2 67/3 69/22 69/24
70/6 73/12 73/17 73/25 74/9
75/25 77/17 78/23 79/25 80/4
84/9 88/9 88/10 89/23 107/18
107/25
Wiley [9]  26/11 26/13 26/14
27/3 30/18 30/18 31/7 35/13
50/4
will [28]  5/12 5/25 6/20 10/13
11/20 13/6 36/5 48/13 49/24
55/19 69/1 74/14 77/3 84/7

937 94/17 97/1 102/19
102/22 104/18 107/3 107/13
110/24 113/3 115/2 119/9
120/4 120/13
willful [4]  55/4 55/10 55/24
83/2
willfulness [3]  55/6 114/24
115/6
willing [1]  103/22
Wilmington [1]  1/16
win [3]  56/2 61/4 63/14
Wisdom [1]  78/8
withdrawn [1]  60/5
withholding [1]  95/9
within [4]  60/2 60/19 62/17
64/4
without [3]  67/15 110/4
112/15
witness [1]  103/8
witnesses [5]  75/6 116/14
116/20 120/2 120/25
won [1]  112/4
won't [5]  7/18 70/15 80/21
120/22 121/8
wondering [3]  7/14 94/6 96/20
word [8]  5/9 6/6 35/3 85/23
85/24 86/4 86/5 96/18
words [12]  13/14 25/16 62/11
68/19 68/22 70/20 77/14
81/16 81/17 86/10 102/20
119/6
work [10]  21/7 23/5 27/19
27/20 47/7 47/8 52/5 69/1
113/18 116/20
workable [1]  4/6
worked [2]  102/25 103/1
working [1]  101/9
works [1]  4/11
world [2]  17/13 115/2
worried [1]  119/23
worthy [1]  55/3
would [82]  5/8 5/19 6/24 7/8
7/17 7/20 7/21 8/18 9/17 9/20
9/24 16/7 17/23 19/22 19/22
20/10 20/11 20/14 20/16
21/13 23/12 33/10 34/18
36/24 37/16 38/24 46/1 47/11
47/18 48/6 48/18 49/2 50/18
55/7 56/10 59/7 61/6 62/11
63/25 64/1 65/1 65/18 66/13
67/1 68/15 68/24 69/9 76/23
78/9 80/1 82/6 82/13 84/13
84/18 85/7 86/19 88/20 90/11
91/4 97/19 100/13 101/4
103/11 103/12 105/13 108/3
110/16 110/19 110/20 110/25
112/16 114/18 114/21 116/13
116/19 116/19 117/3 121/7
wouldn't [2]  20/15 103/10
Wright [1]  90/7
write [5]  49/24 69/21 80/18
82/12 82/19
writes [1]  82/19
writing [5]  50/1 98/20 98/24
103/5 103/10
written [1]  118/19
wrong [1]  116/2
wrote [2]  39/10 85/9

Y
year [2]  65/9 85/9
years [5]  20/3 60/3 61/15 65/5
68/4
Yep [4]  105/3 105/23 112/21
120/16
yes [31]  3/18 16/7 24/9 24/16
28/10 35/18 41/16 44/23
57/20 60/23 65/16 70/24 72/6
76/16 76/20 76/21 92/19
96/10 96/12 96/12 105/18
105/19 105/22 106/3 106/7
106/14 107/16 108/6 110/12
117/13 118/8
you [356]
you'd [3]  5/24 7/8 105/1
you'll [2]  84/8 93/18
you're [39]  6/8 6/13 9/20
10/24 13/18 18/16 21/16 22/6
24/7 30/13 33/13 41/22 44/24
52/25 56/2 58/8 61/4 62/16
63/14 63/14 66/20 66/21
83/17 88/2 88/11 97/6 99/11
99/12 99/18 100/18 100/18
106/22 110/16 113/14 116/6
116/23 118/10 119/8 120/24
you've [19]  14/7 19/17 21/8
21/9 22/5 42/20 53/4 62/17
66/5 69/5 69/11 80/10 84/15
89/19 92/14 97/6 114/18
116/11 118/19
your [141]
Your Honor [67]  3/7 3/18 4/10
5/14 5/17 8/11 8/25 9/3 10/25
12/8 12/10 12/12 12/18 13/8
14/12 28/12 36/7 38/24 39/12
53/16 57/11 58/17 58/20 59/9
60/9 60/12 65/2 65/23 66/11
66/14 66/15 66/18 71/4 74/3
75/20 76/1 77/1 80/2 84/7
84/25 85/3 86/1 87/1 87/14
90/9 90/19 91/5 93/15 94/4
96/12 104/3 104/6 104/7
105/19 105/22 108/6 110/11
111/15 112/19 112/23 113/12
113/20 115/17 116/5 116/24
120/23 121/14
Your Honor's [3]  49/9 66/25
114/11