IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC and AMO SALES AND SERVICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALCON VISION, LLC, ALCON LABORATORIES, INC. and ALCON RESEARCH, LLC <br><br> Defendants. | Civil Action No. 20-842-CFC |

---

Jack B. Blumenfeld, Anthony D. Raucci, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Michael A. Morin, Matthew J. Moore, Rachel W. Cohen, Sarang V. Damle, Holly K. Victorson, Carolyn M. Homer, Susan Y. Tull, Michael E. Bern, LATHAM & WATKINS LLP, Washington, DC; Roger J. Chin, Allison Harms, Joseph R. Wetzel, LATHAM & WATKINS LLP, San Francisco, California; S. Giri Pathmanaban, LATHAM & WATKINS LLP, Menlo Park, California; P. Anthony Sammi, Rachel R. Blitzer, LATHAM & WATKINS LLP, New York, New York; Aaron Macris, LATHAM & WATKINS LLP, Boston, Massachusetts

*Counsel for Plaintiffs*

John W. Shaw, Nathan R. Hoeschen, Andrew Russell, Karen E. Keller, David Fry, SHAW KELLER LLP, Wilmington, Delaware; Jeanne M. Heffernan, James J. Lomeo, Ryan J. Melde, KIRKLAND & ELLIS LLP, Austin, Texas; Gregg F. LoCascio, Sean M. McEldowney, Noah S. Frank, Kelly Tripathi, Elizabeth Hedges, Mary E. Miller, Nicholas Teleky, KIRKLAND & ELLIS LLP, Washington, DC; Joshua L. Simmons, KIRKLAND & ELLIS LLP, New York,

New York; Caroline Lourgos, KIRKLAND & ELLIS LLP, Chicago, Illinois; Kristen P.L. Reichenbach, KIRKLAND & ELLIS LLP, San Francisco, California

*Counsel for Defendants*

# **MEMORANDUM OPINION**

January 25, 2023
Wilmington, Delaware

ii

_____
COLM F. CONNOLLY
CHIEF JUDGE

Plaintiffs AMO Development, LLC, AMO Manufacturing USA, LLC, and AMO Sales and Service, Inc. (collectively, J&J) have sued Defendants Alcon Vision, LLC, Alcon Laboratories, Inc., and Alcon Research, LLC (collectively, Alcon) for copyright infringement. J&J alleges that Alcon's incorporation of certain computer programs as part of the software that operates Alcon's LenSx cataract surgery system infringes J&J's copyrights. D.I. 141 ¶¶ 102, 106.

Pending before me is Alcon's motion to preclude J&J's damages expert, Laura B. Stamm, "from testifying [at trial] regarding her conclusion that J&J is entitled [under the Copyright Act, 17 U.S.C. § 1 *et seq*.,] to disgorge Alcon's profits from the sale of all IOLs [(intraocular lenses)] sold to a LenSx account, totaling $3.1 billion, and any accompanying calculations thereto." D.I. 353 at 1.

I.

Cataract surgery is performed by removing the patient's natural, opacified crystalline lens (i.e., a cataract) and replacing it with an artificial intraocular lens (IOL). The most common cataract removal technique used in the United States is ultrasonic phacoemulsification (USP). D.I. 372 at 409. Another removal technique, which lies at the heart of this case, utilizes a femtosecond laser in combination with imaging technologies to make precise incisions in the patient's

cornea and lens. Femtosecond laser-assisted cataract surgery, often referred to as "FLACS," accounts for approximately 10% of cataract-removal procedures performed in the United States. D.I. 372 at 673. The LenSx is a FLACS system. Alcon makes and sells a wide array of vision care and eye surgery products, including IOLs. IOLs are made by numerous other manufacturers, including J&J. IOLs are interchangeable and not specific to any procedure or equipment used to remove a cataract.

From 2011 to 2021, Alcon sold about $3.1 billion in IOLs to medical providers who also had purchased or leased a LenSx. It is undisputed that Alcon's IOLs are used by doctors, including doctors who own or lease a LenSx, in both USP and FLACS procedures and also in procedures performed with equipment made by other manufacturers, including J&J.

II.

Ms. Stamm has opined that Alcon's $3.1 billion in IOL sales to its LenSx customers is "subject to disgorgement." D.I. 372 at 402–03, 489, 561. Alcon argues that this opinion "is premised on a legally erroneous understanding of the burden borne by the copyright owner to show a causal nexus between the purported infringement and the revenues sought" and is therefore unreliable and should be excluded under Federal Rule of Evidence 702. D.I. 354 at 2. J&J counters that Alcon "misunderstands the burden-shifting framework that applies to

2

disgorgement" under § 504(b) of the Copyright Act. D.I. 412 at 1. According to J&J, Ms. Stamm demonstrated a causal nexus between Alcon's infringement and its $3.1 billion in IOL sales and therefore, under § 504(b), Alcon now "bears the burden of apportioning the profits [of IOL sales] that were not the result of infringement." D.I. 412 at 1 (internal quotation marks and citation omitted).

## III.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," among other things, "the testimony is the product of reliable principles and methods[] and . . . the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "[A]n expert's opinions that are incorrect as a matter of law are inadmissible as . . . unreliable under Rule 702." *VLSI Tech. LLC v. Intel Corp.*, 2022 WL 2304112, at *3 (D. Del. June 27, 2022).

Under § 504(b) of the Copyright Act, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Third Circuit has held that this sentence from § 504(b) confers on the copyright owner the right to disgorgement of "indirect profits" that the infringer "earned not

3

by selling an infringing product, but rather earned from the infringer's operations that were enhanced by the infringement." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (internal quotation marks and citation omitted).

Section 504(b) further provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." § 504(b). The Copyright Act does not define "gross revenue," but "courts interpret the term to mean the gross revenue that is 'reasonably related to the infringement.'" *Leonard*, 834 F.3d 376 at 395 (quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 443 (3d Cir. 2009)). In *Leonard*, the Third Circuit held that § 504(b) created

> a two-step framework for recovery of indirect profits. First, the plaintiff must demonstrate a causal nexus between the infringement and the infringer's gross revenue, or put differently, show that the infringement contributed to the infringer's profits. Second, once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement and may adduce evidence of offsets permitted by the statute.

*Leonard*, 834 F.3d at 395 (cleaned up).

4

IV.

Resolution of Alcon's motion turns on whether Ms. Stamm demonstrated a causal nexus between Alcon's alleged infringement and its $3.1 billion in IOL sales to its LenSx customers. J&J argues that Ms. Stamm demonstrated that nexus in paragraphs 116 and 122 of her Opening Report. *See* D.I. 412 at 2.

In paragraph 116, Ms. Stamm wrote that "Alcon documents are replete with discussion establishing a nexus between the placement of a LenSx machine and consumable sales including IOLs." D.I. 413-1 at 178. The documents in question describe "LenSx accounts" as "an anchoring technology for IOLs," "a key lever for []IOLs," "a reliable anchor for []IOLs both in current accounts and also as an upside in a competitive flip scenario," and as "[d]riv[ing] [s]ubstantial IOL [u]sage." D.I. 413-1 at 178–79.

In paragraph 122 of her report, Ms. Stamm identified "two ways in which Alcon's IOL sales benefit from a LenSx placement." D.I. 413-1 at 181. One of those ways is "increased IOL sales to that customer account in the form of 'pull-through' revenue." D.I. 413-1 at 182. In Ms. Stamm's words, "pull-through relates to the concept that the placement of the [LenSx] machine causes that customer to increase its purchases of IOLs and other consumables." D.I. 413-1 at 182. In other words, pull-through revenues are increased indirect revenues that can lead to increased indirect profits. Ms. Stamm discussed in her report "[s]everal

5

analyses prepared by Alcon [that] attempt[ed] to estimate the 'pull-through' revenue attributable to the placement of a LenSx"; and based on those analyses, she concluded that Alcon's total pull-through revenue was approximately $511 million. D.I. 413-1 at 182–83.

Ms. Stamm identified the second way "Alcon's IOL sales benefit from a LenSx placement" as "maintainin[ing] its sales of IOLs to that account rather than potentially losing them to a different FLACS provider." D.I. 413-1 at 181–82. Ms. Stamm stated in her report that she "ha[d] not seen any information from Alcon that attempts to estimate the portion of IOL sales that are maintained (i.e., not lost) by Alcon by virtue of a LenSx placement to an existing IOL account" and "[a]ccordingly, [she] . . . included all [$3.1 billion in] sales of IOLs to LenSx customer accounts in Alcon's revenues to be disgorged." D.I. 413-1 at 183. She further stated that she "understand[s] the legal burden for the disgorgement remedy requires the infringer to prove any elements of profits attributable to factors other than the infringement, and [she] reserve[s] the right to respond to a position from Alcon that any portion of the maintained IOL sales to LenSx accounts is not properly included in the disgorgement base." D.I. 413-1 at 183–84.

Alcon makes one argument in support of its motion: namely, that "Ms. Stamm's conclusion that $3[.1] billion of IOL sales should be disgorged rests on an incorrect understanding of the causal nexus required for disgorgement" because

6

she "has not shown how or why all $3[.1] billion in IOL sales occurred as a result of a LenSx placement." D.I. 354 at 5–6; *see also* D.I. 455 at 1 (arguing that J&J cannot demonstrate requisite causal nexus because "it cannot show Stamm proved *all* of the revenues sought were 'reasonably related to the infringement' as she '[did] not attempt[] to establish that all of the IOL sales to LenSx accounts occurred as a result of the LenSx placement.'" (alterations and emphasis in the original)). But Alcon overstates J&J's initial burden under *Leonard*'s two-step framework. Under that framework, once the copyright owner establishes a causal nexus between the gross revenue and the infringement, "the infringer bears the burden of apportioning the profits *that were not the result of infringement*." 834 F.3d at 395 (emphasis added) (internal quotation marks and citation omitted); *see also* § 504(b) (stating that "the infringer is required to prove his or her deductible expenses *and the elements of profit attributable to factors other than the copyrighted work*" (emphasis added)). Thus, as a matter of logic, it cannot be the case that to establish a causal nexus for § 504(b) purposes the copyright owner must show that *all* the "gross revenue" is the result of the infringement. Rather, the copyright owner's burden is to demonstrate that the infringement contributed to (i.e., at least partially caused) the supposedly enhanced revenues. *Cf. Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) ("[T]o survive summary judgment, a copyright infringement plaintiff seeking to recover indirect profits damages under

7

17 U.S.C. § 504(b) must proffer some evidence to create a triable issue regarding whether the infringement *at least partially* caused the profits that the infringer generated as the result of the infringement." (emphasis added)).

In this case, Alcon's admissions in its internal documents provided a nonspeculative basis for Ms. Stamm to opine that LenSx sales contributed to Alcon's IOL sales to its LenSx customers. Accordingly, her opinion that the gross revenue from those sales is subject to disgorgement is not premised on a legally erroneous understanding of the burden borne by the copyright owner, and I will therefore deny Alcon's motion.